IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Circuit City Stores, Inc., *et al.*    )    Case No. 08-35653-KRH
                              Inc.,    )    Chapter 11
                                             )
                Debtor    )
_____    )    Jointly Administered

**AMENDED MOTION TO ALLOW LATE FILED PROOF OF CLAIM AND**
**MEMORANDUM OF POINTS AND AUTHORITIES**

**COMES NOW** WCC Properties, LLC ("WCC), by counsel, to respectfully move

the Court to permit the late filing of a proof of claim in this case (the "Motion"), and in

support thereof, shows the Court as follows:

**PARTIES**

1.      WCC is a Utah limited liability company with offices at 1660 Union Street,

4th Floor, San Diego, California. It was the landlord under a certain lease of real property

to Circuit City Stores West Coast, Inc., of premises in the Las Palmillas Shopping Center

in Yuma, Arizona (the "Lease").

2.      Circuit City Stores West Coast, Inc. ("CC"), is one of a number of debtor's

subsidiary companies in the instant proceeding.

**JURISDICTION and VENUE**

3.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding

DOUGLAS A. SCOTT, PLC
Suite 311, 1805 Monument Avenue
Richmond, Virginia 23220
Counsel for WCC Properties, LLC

as defined in 28 U.S.C. § 157(b)(2)(B). The predicates for the Motion are FED.R.BANKR.PROC. 3002, 3003(c)(3) and 9006(b)(1)(2).

## PROCEDURAL BACKGROUND

4.      CC voluntarily commenced its Chapter 11 case on November 10, 2008. CC is no longer operating its business but is rather liquidating as a debtor-in-possession.

## FACTS

5.      CC rejected the Lease effective on February 23, 2009. The Lease Rejection Order allowed thirty (30) days from that date, or to March 23, 2009, for WCC to file its lease rejection proof of claim. *See* Docket No. 2400.

6.      On June 22, 2009, WCC filed Proof of Claim Number 13480 ("POC")[1]. Its counsel in Tucson, Arizona, Clifford Altfeld ("Altfeld"), filed the Lease Rejection POC for WCC.

7.      By letter dated February 17, 2009, faxed on February 20, 2009, CC informed WCC of the lease rejection. Thus, WCC and Altfeld's office knew on February 23, 2009 that the Tenant would be leaving the premises, but not much more than that.

8.      Previously, however, on November 18, 2008, Mr. George Codling of WCC had informed Altfeld that Paul McClellan of CC had told him about the CC bankruptcy

---

[1] Subsequently, on January 29, 2012, WCC file an Amended Lease Rejection Claim, that was given the claim number 15261. On June 22, 2012, WCC sent a Second Amended Lease Rejection Claim by courier to the Trustee's Claims Agent. It was delivered at 9:24 a.m. western time on June 26, 2012.

and had stated to him that CC did not intend to close the store in the Las Palmillas Shopping Center in Yuma, Arizona.   Mr. Codling directed WCC to the website of Kurtzman Carson Consultants, LLC ("KCC").

9.   Mr. Altfeld consulted the KCC website.   There were numerous bankruptcies reported at the KCC website but only Circuit City Stores, Inc. and Circuit City West Coast, Inc., seemed to be correct possible debtors.   The KCC website had posted a number of deadlines, including January 30, 2009 (general bar date); May 11, 2009 (governmental units bar date); June 30, 2009 (administrative bar date); and various other dates.

10.   Mr. Altfeld believes that he also consulted the Circuit City Stores, Inc. docket on PACER and further believes that by February 2009, there were several thousand documents filed in that docket.

11.   Based upon Docket No. 2400, WCC's Lease Rejection POC was untimely. The debtor certainly thinks so, objecting to the WCC proof of claim as, *inter alia*, untimely in its Fourteenth Omnibus Objection to Claims. [Docket 10052].

12.   On April 7, 2011, WCC filed a timely response to the debtor's objection to its POC 13480 [Docket No.10492]. In that response, WCC, by counsel, stated: "Moreover, the claim itself, while filed after the general bar date, *was filed prior to the December 8, 2010 rejection damages bar date*." (Emphasis supplied). Altfeld never received the Lease Rejection Bar Dar Date Order, Docket No. 2400.

3

13.    On October 18, 2011, WCC filed an Amended Response to the debtor's objection to its POC 13480. [Docket No. 11365].

14.    On January 4, 2012, WCC filed an Amended POC to reduce its Lease Rejection claim as required by 11 U.S.C. § 502(b)(6)(A).

15.    On January 4, 2012, WCC filed a Motion to Extend Time to File Proof of Claim [Docket No. 11633].

16.    The present Amended Motion to Extend Time to File Proof of Claim followed.

## AUTHORITY

17.    FED.R.BANKR.PROC. 3002(c)(4) provides as follows:    "A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct."

18.    FED.R.BANKR.PROC. 3003(c)(3) states:

Filing Proof of Claim or Equity Security Interest in Chapter 9 Municipality or Chapter 11 Reorganization Cases...

(3) Time for filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

19.    FED.R.BANKR.PROC. 9006(b)(1) provides as follows:

> Except as provided in paragraphs (2) and (3) of
> this subdivision, when an act is required or
> allowed to be done at or within a specified
> period by these rules or by a notice given
> thereunder or by order of court, the court for
> cause shown may at any time in its
> discretion... (2) on motion made after the
> expiration of the specified period permit the act
> to be done where the failure to act was the
> result of excusable neglect.

## ARGUMENT

*FED.R.BANKR.PROC. 3002 and 9006(b)(1) provide support
under the facts of this matter for the Court to allow a late
filed Proof of Claim.*

FED.R.BANKR.PROC. 9006(b)(1)(2) provides, in pertinent part, that the Court can

enlarge the time allowed to perform an act after the time to perform that act has expired

upon a motion to do so and a finding by the Court that the "failure to act was the result of

excusable neglect." This, of course, raises the seminal case interpreting "excusable

neglect", *Pioneer Inv. Servs. Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 123 L. Ed.

2d 74, 113 S. Ct. 1489 (1993).

In permitting a creditor's late filing under Rule 9006(b)(1), the Supreme Court

explained that Congress, "by empowering the courts to accept late filings 'where the

failure to act was the result of excusable neglect,' plainly contemplated that courts would

be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or

carelessness, as well as by intervening circumstances beyond the party's control." 507

U.S. at 388. The majority in *Pioneer* specifically rejected a "narrow view of 'excusable

5

neglect' under Rule 9006(b)(1), which would have required a showing that the delay was caused by circumstances beyond the movant's control." *Pioneer*, 113 S.Ct. at 1494 n.3. When considering a time enlargement for filing proofs of claim in a Chapter 11 case, the Court looked at the purpose of a reorganization, which it found to be "to preserve rather than to forfeit rights." *Id.* at 1495 (*citing* Advisory Committee Note to predecessor Rule 10-401(b).)

In *Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761 (Bankr. E.D. Va. 1993), Judge Shelly discussed *Pioneer* at some length:

> The Court stated that the purpose of requiring that "neglect" be "excusable" is to "deter . . . parties from freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve". *Id.* In consideration of the policy against forfeiture in a Chapter 11, the *Pioneer* Court did find "neglect" and granted such a reprieve based on a weighing of the factors in that case. The attorney in *Pioneer* inadvertently failed to file a proof of claim prior to a bar date of which the majority felt he was unaware. However, the Supreme Court found that the movant acted in good faith, there was no prejudice to the non-movant, and there was no disruption to efficient administration of justice. The Court gave little weight to "upheaval in his law practice" experienced by movant's counsel and attached special significance to the fact that the notice of the bar date was outside the ordinary course in bankruptcy cases. The Court found that the peculiar and inconspicuous placement of the bar date in a notice of a creditor's meeting, without any indication of its significance, created a dramatic ambiguity in the notification.

*Huennekens*, 156 B.R. at 766.

The Supreme Court further held that the second stage of the analysis, that of determining whether a claimant's neglect of a deadline is excusable, is basically an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. These equitable considerations include (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

Not all these factors need favor the moving party. *See In re Keene Corp.*, 188 B.R. 903, 909 (Bankr. S.D.N.Y. 1995). As one bankruptcy court concluded, "no single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998).

1. Prejudices to the Debtor.

WCC asserts that its delay in filing its Proof of Claim is *di minimus* in the context of the Debtor's bankruptcy case and will not prejudice the Debtor or the course of these proceedings. As of January 4, 2012, the Debtors had at least 119 pages of claims objections pending. *See* Docket No. 11632.

The Debtor may argue that if the Debtor is continually subjected to receiving and evaluating late-filed claims, the Debtor will have to incur additional expense and time analyzing these claims that would delay conclusion of the case.

The bankruptcy court in *Keene, supra*, noted that while *Pioneer* did not define "prejudice", the term goes beyond concerns about harm to the debtor, requiring consideration of "the adverse impact that a late claim may have on the judicial administration of the case." 188 B.R. at 910. *Keene* pointed out that cases subsequent to *Pioneer* have evaluated a number of factors in this light, including (1) "the size of the late claim in relation to the estate," (2) "whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim," and (3) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." *Id.*

WCC's Second Amended Lease Rejection Claim is for $465,466.00. While this cannot be dismissed as mere peanuts, the Claim is not material compared to the amount of the claims in the case already. As an unsecured claim, allowance of such a claim would diminish the payout to unsecured claimants by a vanishingly small percentage.

Of course, the Debtor is long past Plan Confirmation. It is a Liquidation Plan rather than Reorganization, so the Debtor's "economic model" is largely irrelevant.

There is no significant prejudice here. WCC's Second Amended POC is not particularly substantial in relation to the rest of the claims filed against the estate. There

8

are many similar contested claims. The Court, therefore, should find that this *Pioneer* factor weighs in favor of WCC.

## 2. Length of Delay and its Potential Impact on Judicial Proceedings

Doubtlessly, the Debtors will say that they rely on the Bar Date to provide a final deadline so that an accurate accounting of their liabilities may be made. That is almost certainly true. But that factor is much more important in a reorganization case than a liquidation case. It is also true that the requirements of a Bar Date Order in a case of this magnitude may constitute a trap for the unwary, particularly those unschooled in bankruptcy "mega cases".

The Debtor has been aware of their potential liability to WCC at least since the rejection of the Lease. The Court should find that that the three month delay in filing the POC will not cause any undue delay in the case. The Debtor continues to file claims objection up to the present, so one more claim would not add appreciably to the Debtor's workload. Therefore, the short length of delay factor also weighs in WCC's favor.

## 3. Reason for Delay, Including whether it was Within Reasonable Control of Movant

The Debtors will also argue that it was within WCC's reasonable control to file the POC on a timely basis. But this argument rolls back to the "neglect" issue. The policy implicated in *Pioneer* was to "deter . . . parties from freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve". No deadlines have been *ignored* here: WCC's April 7, 2011 Response to the Debtor's objection plainly demonstrates that

counsel was aware that there some type of rejection bar date but got it wrong because, after looking, he couldn't find it. *See* Docket No.10492.

When first engaged by WCC, the undersigned spent literally hours researching the Docket trying to find the Bar Date Order and any reference to a subsequent order related to a "December 8, 2010 rejection damages bar date." Counsel was successful with the former but not the later.

What has happened is that WCC's counsel inadvertently failed to locate the Bar Date Order after making a genuine effort to look for it. He never actually *received* the Bar Date Order. *See* Exhibit 1.

In *In re Broadmoor Country Club & Apt.*, 158 B.R. 146-47, 149 (Bankr. W.D. Mo. 1993), the bankruptcy court found:

> Colonial's [the creditor's] counsel received the bar date notice and noted "5/3" on his daily calendar. He carried the notation on his daily calendar each day from March 15 until April 5. When counsel copied the bar date from April 5 to April 6, he mistakenly wrote "5/13."...Applying the third factor, Colonial knew the bar date. Colonial received the bar date notice, and Colonial's attorney entered it into his personal calendar. Colonial admits and the Court finds that the error and delay were entirely within the reasonable control of counsel. The third *Dix* factor weighs against Colonial...This case, as in *Pioneer*, has only the third factor weighing against the enlargement of time. The teaching of *Pioneer* is that excusable neglect is not limited to those circumstances where untimely filing is due to circumstances beyond the attorney's control. Thus, as in *Pioneer*, the request for enlargement of time to file should be granted.

Thus, Colonial's counsel actually *received* the bar date notice but jotted down the wrong date when transferring it in his daily calendar. This was found to be excusable neglect. Here, Altfeld's Declaration, attached hereto as Exhibit 1, plainly states that he *never got the Bar Date Order* despite maintaining a thoroughly professional system at his law firm for receiving and processing mail and faxes.

In *Pioneer*, the attorney inadvertently failed to file a proof of claim prior to a bar date of which the majority felt he was unaware. In this case, it is plain that counsel was unaware of the correct Bar Date Order.

Being unaware of the Bar Date Order, what did Altfeld do to inform himself? He consulted the KCC website, as Paul McClellan of CC had told Mr. George Codling of WCC to do. He did not find the Lease Rejection Order there. He also consulted the Circuit City Stores, Inc. docket through PACER. He found that "the thousands of filings in the docket made it very difficult to ascertain correct claims deadlines." So, he looked but did not find the Lease Rejection Order there either. Moreover, he "was confused by the deadlines on the KCC website and by [his] inability to find the Lease Rejection Motion or Order as to WCC on the PACER docket."

There is good reason to believe that it has become difficult to keep up with the docket in a large case like this one.

So, how do we characterize counsel's actions? He did not sit on his hands but rather took action to find the applicable bar date order. He most certainly was not ignoring a deadline set by the Court. At the end of the day, he did not locate the Lease Rejection Bar Date Order but rather came to believe that another deadline was in fact applicable. Excusable? WCC would urge the Court to find that to be the case. Altfeld took reasonable, professional steps to locate the applicable bar date which, when he could not find it, led him to believe that another bar date was applicable.

4. Whether WCC Acted in Good Faith

There is no indication that WCC acted in any manner other than in good faith. The Court should find that WCC had a good faith intention to file the Lease Rejection Proof of Claim in a timely manner. Accordingly, the good faith factor also favors WCC.

Weighing of the *Pioneer* Factors:

Did WCC act in good faith? Yes.

Was there prejudice to the Debtor? No.

Was there a disruption of the efficient administration of justice? No.

Was the "delay" within the reasonable control of WCC? Possibly.

Three of these considerations weigh heavily in favor of WCC.

It is obvious that WCC was not "freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve", the policy that the *Pioneer* Court was addressing; instead WCC failed to file a timely proof of claim due to a mistake about the Bar Date.

The act was plainly inadvertent. The balancing of the equities favors WCC, which should be permitted a reasonable opportunity to comply with the requirements of the Bar Date Order.

**WHEREFORE**, WCC respectfully moves the Court to deem its proof of claim timely filed, or, in the alternative, to relieve WCC from the operation of the Bar Date Order by reason of FED.R.BANKR.PROC. 9006(b)(1), and to award WCC such other and further relief as may be just and proper.

Date:  June 26, 2012.

/s/ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23230
☎ 804.353.0287
BankruptcyCounsel@gmail.com

-and-

Clifford Altfeld, *pro hac vice*
Altfeld & Battaile, P.C.
250 North Meyer
Tucson, Arizona 85701
☎ 520.622.7733

Counsel for WCC Properties, LLC


## CERTIFICICATE OF SERVICE

I, the undersigned, hereby certify that on this day, a true and correct copy of the foregoing Amended Motion for Late Filed Claim was served electronically using the ECF

system on all registered users of the CM/ECF system who have made an appearance in
this matter.

\s\ Douglas Scott

Macintosh HD:Case Files:Case Files:W:WCC Properties LLC- Circuit City:Motion for Late Filed POA FINAL.doc

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: | Case No. 08-35653 (KRH) |
| | Jointly Administered |
| CIRCUIT CITY STORES INC., et al., | |
| | Chapter 11 |
| Debtors. | DECLARATION OF CLIFFORD B. ALTFELD RE: WCC PROPERTIES' CLAIMS |

Clifford B. Altfeld, pursuant to 28 U.S.C. § 1746, hereby deposes and says under penalty of perjury:

1.    I am a partner with the firm of Altfeld & Battaile P.C. I am one of the attorneys for WCC Properties, LLC ("WCC"). WCC was the landlord of the Circuit City store in Yuma, Arizona. The Circuit City store was in the Las Palmillas Shopping Center at 1232 South Castle Dome Avenue, Yuma, Arizona. Under the lease, WCC was the Landlord and Circuit City Stores West Coast, Inc. was the Tenant.

2.    I am a graduate of the University of Michigan (1974) and of the University of Arizona College of Law (1978). I graduated from both institutions with honors.

3.    I practiced as a trial attorney with the United States Department of Justice from 1978 to 1982. I served in the Department's Honors Program in the Antitrust Division, and also in the U.S. Attorney's Office as a criminal prosecutor. Thereafter, I have practiced with the Firm. I have practiced in the state, federal and bankruptcy courts in Arizona and other states since 1982.

**EXHIBIT**

**1**

4.    I am a member in good standing of the State Bar of Arizona, the Bar of the District of Columbia and am admitted to practice before the United States Supreme Court. The State Bar of Arizona from 1985 to 2005 certified me as a specialist in real estate law. I serve as a Judge Pro Tempore of the Arizona Superior Court and have served as an adjunct professor at the University of Arizona College of Law, lecturing in real estate litigation, and at Pima County Community College, teaching Business Law. I have completed training as a Superior Court. I have also taught over ten seminars on real estate law; serve on the Arizona Bankruptcy Court Mediation Panel; and serve as a lecturer for the State Bar of Arizona's Professionalism Seminars.

5.    On November 18, 2008, Mr. George Codling of WCC informed me that Paul McClellan of Circuit City had told him about the Circuit City bankruptcy; that Circuit City did not intend to close the store in Yuma; and directed him to the website of Kurtzman Carson Consultants, LLC ("KCC").

6.    I then consulted the KCC website. There are 18 bankruptcies referred to at the KCC website but only Circuit City Stores, Inc. and Circuit City West Coast, Inc., seemed to be the applicable debtors. The KCC website has, and I believe at that time had, posted a number of deadlines including January 30, 2009 (general bar date); May 11, 2009 (governmental units bar date); June 30, 2009 (administrative bar date); and various other dates.

7.    I believe I also consulted the Circuit City Stores, Inc. docket through PACER. By February 2009, there were several thousand documents filed in that docket.

8.      I do not know when Circuit City sent the Notice of Rejection to WCC, but by letter dated February 17, 2009, faxed on February 20, 2009, Circuit City informed WCC of the lease rejection. A copy of that letter and the fax transmittal are attached hereto as Exhibit A. Thus, WCC and my office knew on February 23, 2009 that the Tenant would be leaving the premises.

9.      In May 2009, I was able to print Docket Number 3354, the Order setting a June 30, 2009 administrative claims bar date.

10.     We have filed the following claims:

June 23, 2009:  Lease Rejection Claim on behalf of WCC Properties. [No. 13480]

June 23, 2009:  Administrative Claim. [No. 13846]

June 29, 2009:  Administrative Claim (corrected).

January 29, 2012:  Amended Lease Rejection Claim.

April 24, 2012:  Amended Administrative Claim.

June 22, 2012: Second Amended Lease Rejection Claim

11.     I never received the Bar Date Order. George Codling of WCC has informed me that he does not believe he received the Bar Date Order either. *See* Exhibit B. If WCC received the Bar Date Order, I doubt WCC would have appreciated its importance. The lease rejection provision is on page five, ¶ 5 of the Order, and would not give a layperson a hint of its significance. WCC is listed in small print among many landlords on Exhibit A to the Order. I believe WCC was receiving numerous other Circuit City pleadings by the mail at that time.

12.   My    firm    regularly    receives    time    sensitive    litigation pleadings.   Accordingly,  we  employ  very  strict  mail,  fax  and  calendaring procedures.  Mail is opened, date stamped, calendared and received several times each day.  Based upon our procedures, I can only conclude that I did not receive the Rejection Order from WCC or any other source. It is not in our files.

12.   Based on the pleadings, the Liquidating Trustee apparently believes that at least $445,361.58 of the Lease Rejection Claim is valid. CC knew it rejected the Lease and knew, absent extraordinary circumstances, that a lease rejection claim would be forthcoming. Both the Administrative Claim and the Amended Administrative Claim were timely filed.

13.   Since receiving the objections by the Trustee, WCC has retained local counsel, DOUGLAS A. SCOTT, PLC, to address both the filing deadlines and the substantive objections of the Trustee.

14.   I respectfully request that the Court allow the late filing of the Lease Rejection Claim. The factors I suggest that the Court consider include:

> (A)   Shortly after the filing of the bankruptcy, WCC was assured by Circuit City that it did not intend to reject its lease with WCC, and accordingly, I was not requested to prepare a Proof of Claim. The amounts then due at that time were not substantial and the client did not anticipate a substantial claim.
>
> (B)   The fact that the lease was rejected _after_ the general bar date of January 30, 2009.
>
> (C)   WCC was provided with notice of the lease rejection date by letter received on February 20, 2009. The Proofs of Claim, filed June 23, 2009, were filed only four (4) months later. CC must have been aware that WCC

4

would have a lease rejection claim. I do not think that Circuit City has been prejudiced because it was aware that such claims would be forthcoming.

(D)   I do not know whether WCC received a copy of the Order rejecting the Lease. I did not receive the Bar Date Order [Docket No. 2400]. We calculated lease rejection damages based upon the letter sent by CC, not from any Order.

(E)   I ask the Court to excuse this neglect in light of not receiving the Lease Rejection Order and of the difficulty of finding the actual Order in the 2,000 plus filings as of February 2009. The thousands of filings in the docket made it very difficult to ascertain correct claims deadlines. I looked but did not find the Lease Rejection Order.

(F)   I was confused by the deadlines on the KCC website and by my inability to find the Lease Rejection Motion or Order as to WCC on the PACER docket.

(G)   We did file our claims prior to the June 30, 2009 administrative claims bar date. I had no intention of ignoring a deadline set by the Court.

(H)   I acted in good faith, but when I filed the Lease Rejection Claim, I was unaware of the Lease Rejection Bar Date Order and believed that another deadline was applicable.

(I)   The Lease was rejected in February 2009. Since it was possible that the premises would be re-leased, the amount of the claim would remain uncertain for months or even years.

\s\ Clifford B. Altfeld
(by permission)

Executed on: June 26, 2012.

/s/ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
☎ 804.257.9860

Clifford B. Altfeld, *pro hace vice*
(Arizona State Bar No. 005573/PCCN: 1360)
Altfeld Battalie & Goldman, PC
250 North Meyer Avenue
Tucson, Arizona 85701
Telephone: (520) 622-7733
Facsimile: (520) 622-7967
Email: cbaltfeld@abazlaw.com

Attorneys for Claimant WCC Properties, LLC

Macintosh HD:Case Files:Case Files:W:WCC Properties LLC- Circuit City:Declaration of CBA Final.doc

2009-02-20 16:53                    804-486-8248 >> 6192318389              P 1/2

# FAX

### Circuit City Stores, Inc.
#### 9950 Mayland Drive
#### Richmond, VA 23233-1464



fax

Date    February 20, 2009

Number of pages including cover sheet   2

To:                                              From:

_____       _____
          Landlord                              Property Management
_____                department
_____       _____

Phone                                            _____
Fax Phone    (619)231-8389               Phone   _____
CC:                                      Fax Phone _____
                                         E-mail:

**REMARKS:**

☐ Urgent    ☐ For your review    ☐ Reply ASAP    ☐ Please comment

RE: Circuit City store #03748 -- Yuma, AZ

Please find attached a REVISED letter to replace a letter included in a FedEx package your office should have received today. Thank you.



EXHIBIT

A

2009-02-20 16:53                      804-486-8248 >> 6192318389                    P 2/2



Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233-1464

February 17, 2009


Re:    Store # 03748
       1232 SOUTH CASTLE DOME AVENUE
       LAS PALMILLAS SHOPPING CENTER
       YUMA, AZ  85365

Dear Landlord:

The property referenced above was included in a Rejection Motion made with the United States
Bankruptcy Court, a copy of which you were previously provided.  Enclosed please find a key or
keys to the entrance to the store.

Accordingly, effective Monday, February 23, 2009, we will be turning off and discontinuing any
and all services in our name for this property.  This will include all utilities (see attached for list,
if no attachment there are no utilities in our name), phone, alarm monitoring, etc.  In addition, we
will no longer include this property in our insurance coverage.

As a result of the foregoing, no alarm codes are being provided as the system will be disarmed.

The service for burglar alarm monitoring was being provided by Vector.  If you wish to establish
a new account with Vector, please contact Tracie Cline 704-938-5725.  The service for fire alarm
monitoring was being provided by ADT.  To establish a new account with ADT, please contact
800-238-7887 OPTION 3.  If you are interested in obtaining information with regard to the
building automation system, please contact Tim Zimmerman of NOVAR at 800-348-1236.

Very truly yours,

CIRCUIT CITY STORES, INC.
PROPERTY MANAGEMENT DEPT.

THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES INC., et al.,<br><br>Debtors. | Case No. 08-35653 (KRH)<br>Jointly Administered<br><br>Chapter 11<br><br>DECLARATION OF GEORGE CODLING UNDER THE PENALTY OF PERJURY<br>(RE: WCC Properties, LLC's Claim) |

I, George Codling, declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746:

1.      I have personal knowledge of the matters set forth herein. Were I called as a witness, this would be the substance of my testimony.

2.      I am a manager of WCC Properties, LLC ("WCC"), the owner of Las Palmillas shopping center in Yuma, Arizona. WCC was the landlord and Circuit City Stores was formerly the tenant of a store in that shopping center (the "Lease").

3.      My office is located in San Diego. My contact information is as follows: Mr. George Codling, ADI Properties, 2750 Womble Road, Suite 107, San Diego, California 92106; 619-990-8510; gcodling3@gmail.com.

4.      By letter dated February 17, 2009, faxed on to me February 20, 2009, Circuit City informed me of the lease rejection. A copy of that letter and the fax

EXHIBIT

B

transmittal are attached hereto as Exhibit A. Thus, I knew on or about February 20, 2009 that the Tenant would be leaving the premises effective February 23, 2009.

5.    Recently, my counsel provided me with a copy of the Order rejecting the Lease [Docket No. 2400]. I do not recall ever receiving such a document.

6.    My office deals with important, time-sensitive correspondence regularly. My office utilizes strict procedures to account for mail and facsimile transmissions. Mail is opened, date stamped, calendared and received several times each day.

I declare that the foregoing is true and correct.

George Codling

Executed: June 26, 2012

/s/ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
☎ 804.257.9860

Clifford B. Altfeld, *pro hace vice*
(Arizona State Bar No. 005573/PCCN: 1360)
Altfeld Battalie & Goldman, PC
250 North Meyer Avenue
Tucson, Arizona 85701
Telephone: (520) 622-7733
Facsimile: (520) 622-7967
Email: cbaltfeld@abazlaw.com

Attorneys for Claimant WCC Properties, LLC

Macintosh HD:Case Files:Case Files:W:WCC Properties LLC+ Circuit City:Backup of DECl. 2 George C 6 18 12.docx