UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et. al., | ) | Case No. 08-35653 (KRH) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| _____ | ) | |

**RESPONSE OF RONUS MEYERLAND PLAZA LP TO LIQUIDATING
TRUST'S FORTY-FIRST OMNIBUS OBJECTION TO LANDLORD CLAIMS
(REDUCTION OF CERTAIN INVALID CLAIMS-MITIGATION)**
**(Claim No. 12424)**

Ronus Meyerland Plaza LP ("Ronus"), by and through undersigned counsel, hereby files its Response to the Circuit City Stores, Inc. Liquidating Trust's (the "Liquidating Trust") Forty-First Objection to Landlord Claims (the "41st Objection") (Doc. 11852). In the 41st Objection, the Liquidating Trust asserts that Ronus' Proof of Claim No. 12424 (the "Claim"), which Ronus timely filed on April 28, 2009 in the amount of $604,658.47 with Ronus as a General Unsecured Creditor, should be reduced and allowed only in the sum of $99,458.47. *See* 41st Objection (Doc. 11852) at 55. Ronus opposes the relief sought by the Liquidating Trust in the 41st Objection as to Ronus and asks that the Claim be allowed in the full amount in which it was filed. In support of this Response, Ronus states as follows:

1.    The Liquidating Trust's 41st Objection asserts that Ronus' Claim should be reduced to the extent that the Claim asserts "amounts for which the Debtors are not liable unless the claimant at issue [i.e., Ronus] has met its applicable mitigation burden." *Id.* at 12.

17833265.1                                                                 1

2.    The Liquidating Trust's 41st Objection thereafter lists a number of claims that the Liquidating Trust asserts should be reduced on the basis of failure to mitigate damages.  *See id.*, Ex. B.

3.    The Liquidating Trust offers no additional factual or legal support for its assertion that the various claims, including the Ronus Claim, should be reduced. Notably, the Liquidating Trust offers no basis for alleging that Ronus did not mitigate the losses asserted in the Claim.  Furthermore, the Liquidating Trust cites no legal authority for the proposition that Ronus has the burden of establishing or proving mitigation of damages or that Ronus had any applicable legal obligation to even attempt to mitigate the damages set forth in the Claim.  Therefore, as an initial matter, the Liquidating Trust has failed to overcome the primary validity of the Ronus Claim pursuant to Federal Rule of Bankruptcy Procedure 3001(f) (providing that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim"); *see also, e.g., In re Harford Sands Inc.*, 372 F.3d 637, 640-41 (4th Cir. 2004) ("The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim.  The burden then shifts to the [objecting party] to object to the claim.  The [objecting party] **must introduce evidence to rebut the claim's presumptive validity**.") (emphasis added; internal citations omitted).

4.    The Liquidating Trust, again without any substantive discussion, asserts that the Ronus Claim should be reduced from the as-filed amount of $604,658.47 to $99,458.47. Comparing these figures to the actual Ronus Claim (attached hereto as Exhibit A for ease of reference, and previously filed as Claim No. 12424), it appears that

the Liquidating Trust has simply removed the entirety of Ronus' asserted "Rejection Damages" from the Ronus Claim to arrive at the amount to which the Liquidating Trust believes the Claim should be reduced.

5.  Ronus timely filed its Claim on April 28, 2009. The Ronus' Claim involves losses incurred by Ronus as a result of the Liquidating Trust's rejection of the unexpired lease between Circuit City Stores, Inc. and Ronus regarding Circuit City Store Number 3579, located in the Meyerland Plaza Shopping Center in Houston, Texas (the "Lease"). *See* Lease, attached hereto as Exhibit B (without voluminous exhibits). The Liquidating Trust rejected the Lease effective as of March 10, 2009, pursuant to Bankruptcy Code Section 365(d)(2) and the procedures approved by this Court. *See* Doc. 2408 (Notice of Rejection of Unexpired Leases and Abandonment of Personal Property) (reference Exhibit A to same and Location Number 3579).

6.  The Ronus Claim includes "Rejection Damages" incurred as a result of the rejection of the Lease. The damages Ronus would be entitled to in the event of a tenant default, such as a Lease rejection in Bankruptcy, are specifically provided for in the Lease. *See* Lease (Ex. B), Art. 28(b) (providing that Ronus is entitled to any obligation of tenant owed at time of rejection and "the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation."). Under the terms of the Lease, Ronus is entitled to unpaid amounts through the end of the Lease term, discounted by an eight percent (8%) discount rate to net present value. *Id.* The Lease has an initial term of ten (10) years,

meaning that the rejection of the Lease in 2009 occurred in just the fifth year of the Lease, leaving over four years of the original term remaining, during which Ronus would have been entitled to collect over $2 million in rent. *See id.*; Arts. 3, 4.

7. The Lease is governed by Texas law. *Id.*, Art. 34(j). The amount of Ronus' damages arising out of the rejection of the Lease is determined by the terms of the Lease and in accordance with applicable non-Bankruptcy law regarding rejection of leases—in this case, Texas law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests are determined by state law). Under Texas law, a landlord has a duty to mitigate damages caused by the rejection of the lease, but this duty merely "requires the landlord to use objectively reasonable efforts to fill the premises then the tenants vacates . . . ." *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997). Notably, the "tenant properly bears the burden of proof to demonstrate that the landlord mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced its damages." *Id.* The terms of the Lease are consistent with this Texas case law. *See* Lease (Ex. B), Art. 28(b)(ii). The Liquidating Trust has not met its burden to show that Ronus did not properly mitigate its damages using objectively reasonable efforts. In fact, the Liquidating Trust provides no factual basis for even alleging that Ronus did not attempt to or did not actually mitigate its damages regarding the Lease.

8. Ronus, though incurring over $2 Million in actual rejection damages as a result of the rejection of the Lease, submitted its "Rejection Damages" claim in only the amount of $505,200.00. *See* Ronus Claim (Ex. A.). Ronus' Claim is subject to the

statutory cap on rejected lease damages found in 11 U.S.C. § 502(b)(6), which limited the Ronus' Claim to one year of unpaid rent (twelve months at $42,100 per month).  Other Bankruptcy Courts have held that mitigation is an irrelevant inquiry when claim damages are calculated using the limitations of Section 502(b)(6), provided that actual mitigation is considered in the calculation.  *See, e.g., In re Shane Co.*, 464 B.R. 32, 43-44 (Bankr. D. Colo. 2012).[1]  As noted above, Ronus' actual rejection damages, calculated in accordance with the terms of the Lease, far exceed the amount of Ronus' Claim.  As noted below, Ronus considered any applicable mitigation in this calculation because Ronus was not able to acquire a replacement tenant for over a year after the rejection, despite using objectively reasonable efforts to locate a new tenant.

9. To the extent mitigation is relevant and, *assuming arguendo*, that it should be Ronus' burden to demonstrate its mitigation, the Ronus Claim should not be reduced because Ronus was not able to find a new tenant for the location until May 2010, over one year after the rejection of the Lease and after the expiration of the "Rejection

---

[1] "The effect of mitigation is an element of the calculation of damages under state law and is properly considered in the calculation of damages.  But to import mitigation into the calculation of the cap set out in § 502(b)(6) would be to judicially amend a statute that is plain on its face.  The statutory language is devoid of any reference to—or even logical suggestion of—taking mitigation into account in calculating the damages cap under § 502(b)(6).

The statute speaks of "the rent reserved by such lease" for one year or for 15% of the remaining term, whichever is greater, not to exceed three years.  The calculations required under § 502(b)(6) are not complicated and may be accomplished solely by reference to the agreement between the parties.  It is only that agreement that is cited in the statute as the standard by which the damage cap is calculated.  If Congress had intended the courts to import mitigation into that calculation, it provided no evidence of that intent in the statutory language it chose." *Id.*

Damages" as calculated in accordance with 11 U.S.C. § 502(b)(6).  The premises that Circuit City Stores, Inc. rented pursuant to the Lease was eventually re-let to Best Buy, which began occupying the space on or about May 17, 2010 and began paying rent to Ronus as of May 15, 2010.  As discussed above, the actual damages to Ronus from the rejection of the Lease are significantly more than the damages presented in the Claim; however, the "Rejection Damages" in the Ronus Claim were reduced pursuant to the cap in 11 U.S.C. § 502(b)(6) to one year's rent.

10. Ronus utilized objectively reasonable efforts to find a replacement tenant.  Following the rejection of the Lease, Ronus employed an outside broker, Page Partners, to immediately market the space to potential tenants.  Among other things, the broker immediately placed a site leasing sign at the location and made phone calls or sent e-mails to specific potential retailers and retail brokers who might need to rent a space the size of a former Circuit City store, which for this location was approximately 33,862 square feet.  *See* Lease (Ex. B), Art. 1.  The specifically-targeted and aggressive approach of Ronus' outside leasing broker resulted in Ronus finding a new tenant for the space within less than a year and a half of the rejection of the Lease—in fact, a remarkable turnaround given the economic environment at the time.

11. While Ronus did everything available to find a new tenant for the rejected Lease's premises, Ronus was not able to re-let the space until over a year after the Lease rejection.  Therefore, Ronus was unable to mitigate its damages that the rejection of the Lease caused, and Ronus is entitled to its "Rejection Damages" as set forth in the Claim, in accordance with the Lease and applicable Texas law.

12. The party with authority to discuss mitigation issues and the facts stated in this Response is the following:

> Margaret Garrett, CPM, CSM
> Agent for Meyerland Plaza and Ronus Meyerland Plaza, L.P.
> Ronus Properties
> Piazza at Paces
> 3290 Northside Parkway
> Suite 250
> Atlanta, Georgia 30327
> Telephone: (713) 664-1166
> mgarrett@ronusproperties.com

WHEREFORE, Ronus requests that the Court deny the Liquidating Trust's Objection to Ronus's Claim No. 12424 and that the Claim be allowed by the Court in its entirety in the amount of $604,658.47.[2]

Respectfully submitted this 26th Day of June, 2012.

**SUTHERLAND ASBILL & BRENNAN LLP**

__/s/ *James J. Broidy*_____
James J. Briody, Virginia Bar No. 32128
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415
Tel: (202) 383-0100
Fax: (202) 637-3593
jim.briody@sutherland.com

*Counsel for Ronus Meyerland Plaza, L.P.*

---

[2] As noted in the Objection of Ronus Meyerland, L.P. to Liquidating Trust's Eighth Omnibus Objection to Landlord Claims (Doc. 10409), the attorneys' fees incurred on behalf of Ronus were split evenly between Ronus and an affiliate entity, Johnson City Crossing, L.P. The total amount outstanding on the invoices is $27,853.12, which split evenly results in $13,926.56 attributable to this landlord's lease. Accordingly, pending resolution of that objection (which has not yet occurred), Ronus intends to file an amended proof of claim including that amount of attorneys' fees rather than the $8,979.00 previously included.

## **CERTIFICATE OF SERVICE**

I, James J. Briody, hereby certify that on the 26th Day of June, 2012, a true and correct copy of the foregoing RESPONSE OF RONUS MEYERLAND PLAZA LP TO LIQUIDATING TRUST'S FORTY-FIRST OMNIBUS OBJECTION TO LANDLORD CLAIMS (REDUCTION OF CERTAIN INVALID CLAIMS-MITIGATION) (Claim No. 12424) has been served electronically using the Court's CM/ECF System on all registered users of the CM/ECF System who have appeared in this matter.

                                                  __/s/ *James J. Broidy*_____
                                                  James J. Briody