## DEED-IN-LIEU OF FORECLOSURE AGREEMENT

THIS DEED-IN-LIEU OF FORECLOSURE AGREEMENT (this "**Agreement**") is made as of December 27 2010 (the "**Effective Date**"), by and between DEBORAH LANDMAN, an individual ("**D. Landman**"), ELI LANDMAN, an individual ("**E. Landman**"), ANNA SCHWARTZ, an individual ("**A. Schwartz**") and ZOLTAN SCHWARTZ, an individual ("**Z. Schwartz**") (D. Landman, E. Landman, A. Schwartz and Z. Schwartz are sometimes referred to individually as a "**Borrower**" and collectively, as "**Borrowers**") and NATIONAL WESTERN LIFE INSURANCE COMPANY, a Colorado insurance corporation ("**Lender**").

### R E C I T A L S

A.      Lender is the current owner and holder of that certain Cognovit Promissory Note dated March 28, 2000 (the "**Note**"), executed by Borrowers in favor of Lender in the original principal amount of Two Million Five Hundred Eighty-Three Thousand and 00/100 Dollars ($2,583,000.00).

B.      The Note is secured by the following: (i) that certain Open-End Mortgage, Security Agreement and Financing Statement dated as of March 28, 2000 (the "**Mortgage**") executed by Borrowers in favor of Lender and recorded on March 30, 2000 in Volume 362, Page 161 of Jefferson County, Ohio Records; (ii) that certain Collateral Assignment of Rents, Income and Profits dated as of March 28, 2000 (the "**Assignment**") executed by Borrowers in favor of Lender and recorded on March 30, 2000 in Volume 362, Page 213 of Jefferson County, Ohio Records; (iii) those two certain UCC Financing Statements filed with the Secretary of State of Ohio as Financing Statement No. AP0228757 and in Volume 362, Page 240 of Jefferson County, Ohio Records (such financing statements, collectively, the "**Financing Statements**"); (iv) that certain Certificate and Indemnity Regarding Hazardous Substances and Certificate and Indemnity Regarding Exceptions to Non-Recourse Provisions, as referenced in the Note (the "**Certificates**"); and (v) that certain Modification Agreement dated as of January 1, 2006 (the "**Modification Agreement**") between Borrowers and Lender and recorded on March 6, 2006 in Volume 741, Page 140 of Jefferson County, Ohio Records.

C.      Borrowers have defaulted on certain obligations to Lender and the parties hereto desire to enter into this Agreement to resolve such defaults and all matters between Borrowers and Lender as provided herein.

NOW, THEREFORE, in consideration of the mutual agreements and releases set forth herein, and the transfer of the Property (hereinafter defined) to Lender, as provided herein, and intending to be legally bound hereby, Borrowers and Lender agree as follows:

1.      The foregoing Recital paragraphs are incorporated into this Agreement as if fully set forth herein. The Note, Mortgage, Assignment, Financing Statements, the Certificates, the Modification Agreement and all other documents and instruments executed in connection with the indebtedness evidenced by the Note are herein collectively called the "**Loan Documents.**"

2.      Borrowers represent and warrant to Lender that Borrowers are the owner of fee title to that certain real property and improvements known for street numbering purposes as



**EXHIBIT** 1

4130 Mall Drive, Steubenville, Ohio, as more particularly described on **Exhibit A** attached hereto and made a part hereof (the "**Property**"), which is encumbered by the Mortgage.

3.    Lender represents and warrants to Borrowers that Lender is the current owner and holder of the Note and the other Loan Documents and any and all rights and interests therein and related thereto.

4.    Simultaneously with Borrowers' execution and delivery of this Agreement to Lender, Borrowers shall execute and deliver to Lender a Quit-Claim Deed to the Property in the form of **Exhibit B** attached hereto and made a part hereof (the "**Deed**"), and Borrowers shall deliver possession of the Property to Lender. Within five (5) days following the Effective Date, Lender shall cause the Deed to be filed of record in Jefferson County, Ohio Records.

5.    Lender acknowledges and agrees that Lender is accepting title to and possession of the Property in its "AS IS," "WHERE IS", "WITH ALL FAULTS" condition. Lender further acknowledges and agrees that Borrowers do not make and have not made any representations or warranties of any kind or nature, either oral or written, directly or indirectly, express, implied, statutory or otherwise, with respect to the Property, including, without limitation, any representations or warranties with respect to the applicability of any laws, rules or regulations concerning zoning, building, environmental, health or safety matters, or as to the presence or absence of any hazardous or toxic waste, substance or material or pollutants or contaminants, including petroleum, petroleum-containing products and asbestos (as such terms are defined in any federal, state or municipal law, rule or regulation).

6.    As of the Effective Date, and notwithstanding anything to the contrary as contained in the Loan Documents, but subject to Section 8 of this Agreement, Lender (for itself and its affiliates, successors and assigns) does hereby: (i) fully and unconditionally RELEASE, ACQUIT AND DISCHARGE Borrowers, and the respective heirs, administrators, executors, personal representatives, successors and assigns of each Borrower, and whether as borrower, guarantor, owner, mortgagor, surety, obligor, or otherwise, from liability for any and all known and unknown claims, demands, actions, causes of action, liabilities, debts, liens, contracts, sums of money, compensation, promises, damages, costs, losses, deficiencies and expenses of any nature whatsoever, liquidated or unliquidated, fixed or contingent, foreseeable or unforeseeable, or suits at law or in equity of any kind, whether sounding in tort, contract or otherwise, which Lender has had, now has, or may hereafter have, or which may hereafter accrue, arising out of, or related in any manner without limitation to, the Property, the Loan Documents, any indebtedness, obligations or liabilities evidenced by the Loan Documents (including, without limitation, the provisions of Section 12 of the Note), or arising out of the transactions contemplated by the Loan Documents; and (ii) agree not to bring any action, suit or proceeding, whether at law or in equity, against Borrowers, or the respective heirs, administrators, executors, personal representatives, successors and assigns of each Borrower, and whether as borrower, guarantor, owner, mortgagor, surety, obligor, or otherwise, based on seeking to enforce any claims, obligations, liabilities, duties, rights, causes of action, demands, controversies, damages, costs and expenses by or in favor of Lender, or any person or entity claiming by or through Lender, in any way arising out of or relating to the Property and/or to any of the terms and conditions of the Loan Documents. Lender expressly understands and acknowledges that it is possible that unknown losses or claims may exist or that present losses may have been

2

underestimated in amount or severity, and Lender explicitly has taken such understanding into account in executing this Agreement. The covenant not to sue as contained herein includes matters that may be liquidated, unliquidated, known, unknown, apparent, concealed, mature, and immature, past, present, and future; and Lender hereby waives the benefit of any statute, rule or principle of law or equity that otherwise limit this covenant not to sue.

7.       As of the Effective Date, Borrowers (for themselves and their heirs and assigns) do hereby fully and unconditionally RELEASE, ACQUIT AND DISCHARGE Lender, its successors and assigns, and all members, managers, officers, directors, shareholders, agents, attorneys, employees and servants of Lender, its successors and assigns, and the respective heirs, administrators, executors, personal representatives, successors and assigns of each of said members, managers, officers, directors, shareholders, agents, attorneys, employees and servants, from liability for any and all known and unknown claims, demands, actions, causes of action, liabilities, debts, liens, contracts, sums of money, compensation, promises, damages, costs, losses, deficiencies and expenses of any nature whatsoever liquidated or unliquidated, fixed or contingent, foreseeable or unforeseeable, or suits at law or in equity of any kind, whether sounding in tort, contract or otherwise, which Borrowers have had, now have, or may hereafter have, or which may hereafter accrue, arising out of, or related in any manner without limitation to, the Property, the Loan Documents, any indebtedness, obligations or liabilities evidenced by the Loan Documents, or arising out of the transactions contemplated by the Loan Documents.

8.       Notwithstanding anything to the contrary as contained herein or in the Loan Documents, Lender hereby retains all rights and remedies against Borrower provided for in the Assignment, as limited solely to Borrower's rights to and interest in all bankruptcy claims relating to the Lease (as defined in the Note) pending with respect to the bankruptcy of the Tenant (as defined in the Note) and the assignment thereof to Lender pursuant to the Assignment, and only if and to the extent any monies are actually received by Borrower in connection therewith and are not promptly delivered to Lender in accordance with the Assignment and/or applicable laws, rules and regulations.

9.       Within fifteen (15) days following the Effective Date, Lender will dismiss with prejudice the lawsuit filed by Lender as Case No. 2010-CV-71 and each party will bear its respective costs in connection with such lawsuit.

10.      There will be no prorations made with respect to real estate taxes and assessments, general or special, or with respect to any other matters relating to the Property, and as of the Effective Date Borrowers shall have no further obligations or liability in connection therewith or related thereto. Lender shall be solely responsible for any and all title costs, fees and expenses, transfer taxes and recording costs in connection with this Agreement and the recording of the Deed.

11.      This Agreement represents the complete agreement of Borrowers and Lender with respect to the subject matter hereof and supersedes and supplants any and all contracts and/or agreements, oral or written, express or implied, which heretofore did exist, or may have existed, between Borrowers and Lender with respect to the subject matter hereof, and all such contracts and/or agreements, if any, are fully and finally terminated and shall be of no further force and

3

effect, and are merged herein, effective as of the Effective Date. This Agreement shall survive the Effective Date and the filing of the Deed of record.

12.    The mutual covenants, agreements and releases set forth herein, and Borrowers' delivery of the Deed to Lender, are the sole consideration for this Agreement and the parties hereto voluntarily accept said consideration for the purpose of making a full and final comprise, adjustment and settlement of all matters stated herein. Lender represents and warrants that no promise, inducement or agreement has been made to it in connection with this Agreement, except as expressly set forth herein.

13.    This Agreement shall not be amended or modified in any manner unless expressly done so in writing and signed by the party to be bound by any such modification or amendment. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, administrators, executors, personal representatives, successors and assigns.

14.    This Agreement may be executed in one or more counterparts, each of which shall be binding on the party executing such counterpart, and all of which taken together shall constitute one and the same instrument. This Agreement shall be governed exclusively by the laws of the State of Ohio, notwithstanding the application of any principles of conflicts of laws.

15.    Each individual executing this Agreement in a representative capacity on behalf of Borrowers or Lender, as the case may be, represents and warrants that he or she is duly authorized by all requisite action to execute and deliver this Agreement and to bind Borrowers or Lender, as the case may be, to the terms of this Agreement.

16.    Each of Lender and Borrowers, respectively, represents and warrants to the other that it is duly authorized and has all requisite power and authority to enter into this Agreement and to bind itself to the terms hereof. Each of Lender and Borrowers have entered into this Agreement freely and voluntarily, and with and upon advice of counsel.

17.    This Agreement shall not be considered as an admission of liability against the Lender or Borrowers or their respective heirs, successors, assigns, members, managers, officers, directors, shareholders, agents, attorneys, employees and servants and shall be inadmissible in any court of law other than to enforce its terms.

18.    If any action or proceeding is brought or asserted against Borrowers in violation of any provision of this Agreement, then, without limiting any right of Borrowers, this Agreement may be pleaded as a full and complete defense thereto, as the basis for an abatement of or injunction against said action or other proceeding. If any transfer of the Loan Documents subsequently occurs, then Lender shall: (i) obtain the agreement of its successor that the enforcement of the Loan Documents is limited by this Agreement; and (ii) place a legend in red ink on the Note clearly stating that enforcement of the Loan Documents is limited by this Agreement.

19.    The provisions of this Agreement are severable and if any one or more provisions are determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions will be binding and enforceable.

4

The parties have executed this Agreement as of the Effective Date.

_____
Deborah Landman

_____
Eli Landman

_____
Anna Schwartz

_____
Zoltan Schwartz

NATIONAL WESTERN LIFE INSURANCE
COMPANY, a Colorado insurance corporation

By: _____
Name: _____
Title: _____

5

The parties have executed this Agreement as of the Effective Date.

_Deborah Landman_   12-17-10
Deborah Landman

_____
Eli Landman

_Anna Schwartz_   12-17-201(
Anna Schwartz

_Zoltan Schwartz_   12-17-2010
Zoltan Schwartz

NATIONAL WESTERN LIFE INSURANCE
COMPANY, a Colorado insurance corporation

By: _____
Name: _____
Title: _____

5

The parties have executed this Agreement as of the Effective Date.

_____
Deborah Landman

_____
Eli Landman

_____
Anna Schwartz

_____
Zoltan Schwartz

NATIONAL WESTERN LIFE INSURANCE
COMPANY, a Colorado insurance corporation

By: _____
Name: _____
Title: _____

5

STATE OF TEXAS             )
                          )   SS
COUNTY OF _Galveston_     )

    Before me, the undersigned, a Notary Public in and for said County and State, appeared the above-named NATIONAL WESTERN LIFE INSURANCE COMPANY, a Colorado insurance corporation, by _Charles D Milos_____, its _Vice President_____, who acknowledged that he/she did sign the foregoing instrument for and on behalf of said corporation, and that the same is his/her free act and deed individually and as such officer and the free act and deed of said corporation.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Galveston_, Texas, this _22_ day of _December_, 2010.

           _Charlene R Watts_____
           Notary Public
           My Commission Expires: _6-1-12_

CHARLENE R. WATTS
Notary Public,
State of Texas
Comm. Exp. 06-01-12

8

STATE OF _____        )
                                )  SS
COUNTY OF _____       )

    Before me, the undersigned, a Notary Public in and for said County and State, personally appeared the above-named DEBORAH LANDMAN, who acknowledged that she did sign the foregoing instrument and that the same was her free act and deed..

    IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____, this _____ day of _____, 2010.

_____
Notary Public
My Commission Expires: _____

STATE OF _New York_             )
                                )  SS
COUNTY OF _Kings_               )

    Before me, the undersigned, a Notary Public in and for said County and State, personally appeared the above-named ELI LANDMAN, who acknowledged that he did sign the foregoing instrument and that the same was his free act and deed.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _1441-E.14"St, Bklyn, NY_, this _17th_ day of _December_, 2010.

_____
Notary Public
My Commission Expires: _1/31/0_

FAIGIE SELENGUT
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SE4712319
Qualified in Kings County
My Commission Expires _1-31-11_

6

# ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On December 17th 2010                , before me,   Brenda M Macias                                      Notary Public,

personally appeared          Deborah Landman, Anna Schwartz and Zoltan Schwartz                , who

proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to

the within instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity

upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

        Notary Public

```
        BRENDA M MACIAS
         COMM. # 1872670
      NOTARY PUBLIC-CALIFORNIA
        LOS ANGELES COUNTY
      MY COMM. EXP. DEC. 6, 2013
```

(Seal)

---

Description of attached document

        Title or type of document:        Deed In-Lieu Foreclosure Agreement

        Number of pages:                  6 Including this page

        Document date:                    12/17/2010

        Signer(s) other than named above:          N/A

rev Jon/08

STATE OF _____ )
                                              ) SS
COUNTY OF _____ )

     Before me, the undersigned, a Notary Public in and for said County and State, personally appeared the above-named ANNA SCHWARTZ, who acknowledged that she did sign the foregoing instrument and that the same was her free act and deed.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____, this _____ day of _____, 2010.

                                  Notary Public
                                  My Commission Expires: _____

STATE OF _____ )
                                              ) SS
COUNTY OF _____ )

     Before me, the undersigned, a Notary Public in and for said County and State, personally appeared the above-named ZOLTAN SCHWARTZ, who acknowledged that he did sign the foregoing instrument and that the same was his free act and deed.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____, this _____ day of _____, 2010.

                                    Notary Public
                                  My Commission Expires: _____

7

STATE OF TEXAS        )
                        )  SS
COUNTY OF _____  )

Before me, the undersigned, a Notary Public in and for said County and State, appeared the above-named NATIONAL WESTERN LIFE INSURANCE COMPANY, a Colorado insurance corporation, by _____, its _____, who acknowledged that he/she did sign the foregoing instrument for and on behalf of said corporation, and that the same is his/her free act and deed individually and as such officer and the free act and deed of said corporation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, Texas, this _____ day of _____, 2010.

_____
Notary Public
My Commission Expires: _____

8

<u>Exhibit A</u>

<u>**Legal Description of the Property**</u>

[see attached]

EXHIBIT "A"

THE FOLLOWING TRACT OF LAND IS SITUATED ON THE SOUTHERLY SIDE OF MALL DRIVE
(FORMERLY EAST-WEST DRIVE), CITY OF STEUBENVILLE, SECTION 12, TOWNSHIP 6, RANGE
2, CROSS CREEK TOWNSHIP, JEFFERSON COUNTY, OHIO, AND BEING MORE PARTICULARLY
BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN IN THE SOUTHERLY LINE OF MALL DRIVE (FORMERLY EAST-WEST
DRIVE), SAID BEGINNING POINT LOCATED THE FOLLOWING SIX (6) COURSES AND DISTANCES
FROM A POINT IN THE WESTERLY LINE OF JOHN SCOTT MEMORIAL HIGHWAY:  (SAID POINT
BEING LOCATED SOUTH 78 DEG. 59' 00" WEST 63.70 FEET FROM CENTERLINE STATION
18+05.06).
  1.   SOUTH 78 DEG. 59' 00" WEST 50.49 FEET TO A POINT
  2.   THENCE WITH A CURVE TO THE LEFT HAVING A RADIUS OF 710.00 FEET AN  ARC
DISTANCE OF  99.62 FEET TO A POINT, SAID CURVE HAVING A CHORD BEARING OF SOUTH
74 DEG. 57' 50" WEST AND A DISTANCE OF 99.54 FEET
  3.   THENCE SOUTH 13 DEG 00' 00" EAST 91.32 FEET TO A POINT
  4.   THENCE WITH A CURVE TO THE LEFT HAVING A RADIUS OF 565.00 FEET   AND AN ARC

DISTANCE OF 189.51 FEET TO A POINT, SAID CURVE HAVING A CHORD  BEARING OF SOUTH  66
DEG. 22' 32" WEST AND A DISTANCE OF 188.62 FEET 5.   THENCE SOUTH 54 DEG. 48' 00"
WEST 323.14 FEET TO A POINT 6.   THENCE SOUTH 35 DEG. 14' 00" EAST 60.00 FEET
CROSSING MALL DRIVE  TO AN IRON PIN  AT THE TRUE PLACE OF BEGINNING;

THENCE FROM SAID TRUE PLACE OF BEGINNING, ALONG THE SOUTHERLY LINE OF MALL DRIVE THE
FOLLOWING TWO (2) COURSES AND DISTANCES 1.   NORTH 54 DEG. 48' 00" EAST, 323.14 FEET
TO AN IRON PIN 2.   THENCE WITH A CURVE TO THE RIGHT HAVING A RADIUS OF 505.00 FEET
AN ARC DISTANCE OF 166.25 FEET TO AN IRON PIN, SAID CURVE HAVING A CHORD BEARING OF
NORTH 64 DEG. 11' 56" EAST AND A DISTANCE OF 165.50 FEET; THENCE ALONG THE LINE
DIVIDING LANDS OF MAGNUS PROPERTIES INC. AND LAND OF HUBERTA MINING COMPANY THE
FOLLOWING TWO (2) COURSES AND DISTANCES: 1.   SOUTH 21 DEG. 13' 21" WEST 418.47 FEET
TO AN IRON PIN; 2.   THENCE ALONG THE SAME SOUTH 35 DEG. 14' 00" EAST 41.64 FEET TO
AN IRON PIN; THENCE THROUGH LANDS OF HUBERTA MINING COMPANY SOUTH 54 DEG. 46' 00"
WEST 137.62 FEET TO AN IRON PIN; THENCE CONTINUING THROUGH LANDS OF HUBERTA MINING
COMPANY AND ALONG LINE DIVIDING SAME LANDS OF AUDI INC. NORTH 35 DEG. 14' 00" WEST
300.00 FEET TO AN IRON PIN, AT THE TRUE PLACE OF BEGINNING

HAVING AN AREA OF 89,611 SQ. FT. (2.06 ACRES) MORE OR LESS

<u>Exhibit B</u>

<u>Quit-Claim Deed</u>

[see attached]

--- 3-2 -2000

62 00                                                124362                                    OR VOL 362 PG 213

## COLLATERAL ASSIGNMENT OF RENTS, INCOME, AND PROFITS

THIS COLLATERAL ASSIGNMENT OF RENTS, INCOME, AND PROFITS, dated to be effective as of __March 28_____, 2000 (hereinafter, together with all supplements and amendments hereto, referred to as the "Assignment"), is made by DEBORAH LANDMAN, ELI LANDMAN, ANNA SCHWARTZ, AND ZOLTAN SCHWARTZ (hereinafter referred to collectively and individually as "Assignor"), having a postal address of Landman, 617 N. Detroit Street, Los Angeles, California 90036, to NATIONAL WESTERN LIFE INSURANCE COMPANY (hereinafter referred to as "Assignee"), a Colorado insurance corporation having a postal address at 850 East Anderson Lane, Austin, Texas 78752-1602, Attn: Mortgage Loan Department.

Assignor owns a fee simple interest, as Tenants In Common, in the parcel of land described in **Exhibit "A"** attached hereto and incorporated herein by reference for all purposes and in the improvements located thereon (such land parcel, together with such improvements, is referred to as the "Property"). Assignor, simultaneously with the execution and delivery hereof, is borrowing from Assignee the amount of TWO MILLION FIVE HUNDRED EIGHTY-THREE THOUSAND AND NO/100 DOLLARS ($2,583,000.00) (the "Loan"), such borrowing being evidenced by its secured promissory note finally due April 1, 2010 (hereinafter referred to as the "Note"). The Note is secured by, among other things, the grant of a Mortgage lien on the Property from Assignor to Assignee as evidenced by that certain Open-End Mortgage, Security Agreement and Financing Statement dated of even date herewith (hereinafter together with all supplements and amendments thereto, referred to as the "Mortgage") and executed by Assignor.

Assignor is desirous of further securing to Assignee the performance of the terms, covenants and agreements hereof and of the Note, the Mortgage, and all other instruments evidencing, securing, guaranteeing, or otherwise executed in connection with the Note (the Mortgage and such other instruments, as each of the foregoing may from time to time be amended, consolidated, renewed or replaced, are collectively referred to herein as the "Security Instruments").

NOW THEREFORE, in consideration of the making of the Loan evidenced by the Note and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby irrevocably and unconditionally transfer, sell, assign, grant, pledge and convey to Assignee, its successors and assigns, all of the right, title and interest of Assignor in and to:

1.      All deposits (whether for security or otherwise), rents, issues, profits, revenues, royalties, accounts, rights, benefits and income of every nature of and from the Property, including without limitation, minimum rents, additional rents, termination payments, forfeited security deposits, liquidated damages following default and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability due to destruction or damage to the Property, together with the immediate and continuing right to collect and receive the same, whether now due or hereafter becoming due, and together with all rights and claims of any kind that Assignor may have against any tenant, lessee or licensee under the "Lease" described on **Exhibit "B"** attached

44707.3

hereto and incorporated herein by reference for all purposes, leases entered into hereafter and under any sublease or assignment of the Lease (as described in Section 18 of the Lease), and against any other occupant of the Property (collectively, the "Rents"). The Lease, sublease, and any leases entered into hereafter with respect to the Property are referred to as the "Leases".

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns.

2.       The execution and delivery hereof shall not in any way impair or diminish the obligations of Assignor under the provisions of the Lease nor shall any of the obligations contained in the Leases be imposed upon Assignee unless and until Assignee takes possession or control of the Property. Upon the payment of the principal of and prepayment charge, if any, and all accrued interest on the Note and of all other sums payable under the Mortgage and the performance and observance of the provisions thereof, or upon a satisfaction of the Mortgage or a release of the Property from the lien of the Mortgage pursuant to the provisions of the Mortgage, said assignment and all rights herein assigned to Assignee shall cease and terminate and all the estate, right, title and interest of Assignor in and to the above-described property shall revert to Assignor, and Assignee shall, at the request of Assignor, deliver to Assignor an instrument in recordable form canceling this Assignment and reassigning to Assignor the above-described assigned property.

3.       Assignor hereby designates Assignee to receive all payments of Rents payable to the lessor under the Leases and to receive duplicate original copies of all notices, undertakings, demands, statements, documents and other communications which any lessee is required or permitted to give, make, deliver to or serve upon the lessor under the Leases. Assignee shall apply such payments of Rents to all sums due under the Loan evidenced by the Note and Assignee shall remit to Assignor any remaining balance of the payment of Rents following such application, together with an accounting showing (i) the amount of the payment of Basic Rent (as defined in the Lease) received by Assignee; (ii) the amount of such payment of Basic Rent applied by Assignee to the portions of the Loan then due and payable; and (iii) the balance therewith remitted to Assignor. Upon Assignor's execution of this Assignment, Assignor shall execute and deliver to the Tenant (as described in **Exhibit "B"**) under the Lease the "Instruction Letter" (hereafter defined) which, among other things directs the Tenant to deliver to Assignee, at its address set forth above or at such other address as Assignee shall designate, the rent payments due under the Lease and duplicate original copies of all such notices, undertakings, demands, statements, documents and other communications and no delivery thereof by Tenant shall be of any force or effect unless made to Assignor and also made to Assignee as herein provided. Notice of this Assignment shall be incorporated into all subleases and leases of all or a portion of the Property which are entered into after the date of this Assignment.

4.       Assignor represents to Assignee that Assignor has not executed any other assignment of the subject matter of this Assignment other than the Mortgage and that the Lease is in full force and effect and Tenant is not in default thereunder.

5.        Assignor agrees that said assignment and the designation and direction to the Tenant hereinabove set forth are irrevocable, and that it will not take any action as the Landlord (as defined in Exhibit "B") under the Leases or otherwise which is inconsistent with said assignment, or make any other assignment, designation or direction inconsistent therewith, and that any assignment, designation or direction inconsistent therewith shall be void. Assignor will, from time to time upon the request of Assignee execute all reasonable instruments of further assurance and all such supplemental instruments with respect to this Assignment as Assignee may reasonably request to further evidence the understanding and intent of the Assignor and Assignee in connection with this Assignment.

6.        Assignor hereby agrees to deliver to Tenant at the closing of the Loan, a letter (the "Instruction Letter") instructing Tenant as follows:

(a).      Tenant shall pay and deliver to Assignee all rentals and other sums assigned to Assignee pursuant to this Assignment, without offset, deduction, defense, deferment and subject to the provisions of the Lease, abatement or diminution, and will not, for any reason whatsoever, seek to recover from Assignee any monies paid to Assignee by virtue of this Assignment.

(b).      Tenant also will be instructed (i) that all sums payable to Assignee pursuant to the preceding sentence shall be paid in such manner that Assignee shall have received funds on each date on which such sums are due and payable, and addressed to Assignee at its address first shown above (with sufficient information identifying such payment as a payment on the Note), or to such other address or manner as may be specified by Assignee by written notice to the Tenant, and (ii) to deliver to Assignee duplicate original copies of all notices and other instruments which it may deliver pursuant to the Lease. No such payment or delivery made by Tenant shall be of any force or effect with respect to Assignee until paid to Assignee or delivered to Assignee and Assignor as provided above.

(c).      Assignor and Tenant shall not enter into any agreement subordinating, amending, modifying or terminating (except as provided in the Lease) the Lease with respect to the Property without the consent thereto in writing of Assignee (except only for those modifications made in the ordinary course of Assignor's business which are not adverse to Assignee, in which event only Assignee's consent shall not be required) and any such attempted subordination, amendment, modification or termination without such consent shall be void. In the event that the Lease shall be amended as herein permitted, the Lease as so amended shall continue to be subject to the provisions of this Assignment without the necessity of any further act by any of the parties hereto. Tenant will remain obligated under the Lease in accordance with its terms, and will not take any action to terminate (except as expressly permitted by the Lease), rescind or avoid the Lease, notwithstanding any action with respect to the Lease which may be taken by an assignee or receiver of Assignor or of any such assignee or by any court in any such proceeding.

44707.3                                                3

7.     IT IS FURTHER AGREED that this Assignment is made upon the following terms, covenants and conditions:

(a).    This Assignment shall not operate to place responsibility for the control, care, management or repair of the Property upon Assignee, nor for the performance of any of the terms and conditions of any of the Leases, nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other party or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control of the Property except the gross negligence or willful misconduct of Assignee. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure or inability to collect Rents, proceeds or other payments, or to let the Property or from any other act or omission of Assignee in managing the Property. **ASSIGNOR SHALL AND DOES HEREBY INDEMNIFY AND HOLD ASSIGNEE HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY, LOSS, CLAIM, DEMAND OR DAMAGE WHICH MAY OR MIGHT BE INCURRED BY REASON OF THIS ASSIGNMENT, INCLUDING, WITHOUT LIMITATION, CLAIMS OR DEMANDS FOR SECURITY DEPOSITS FROM TENANTS OF SPACES IN THE IMPROVEMENTS DEPOSITED WITH ASSIGNOR, AND FROM AND AGAINST ANY AND ALL CLAIMS AND DEMANDS WHATSOEVER WHICH MAY BE ASSERTED AGAINST ASSIGNEE BY REASON OF ANY ALLEGED OBLIGATIONS OR UNDERTAKINGS ON ITS PART TO PERFORM OR DISCHARGE ANY OF THE TERMS, COVENANTS OR AGREEMENTS CONTAINED IN ANY OF THE LEASES. SHOULD ASSIGNEE INCUR ANY LIABILITY BY REASON OF THIS ASSIGNMENT OR IN DEFENSE OF ANY CLAIM OR DEMAND FOR LOSS OR DAMAGE AS PROVIDED ABOVE, THE AMOUNT THEREOF, INCLUDING, WITHOUT LIMITATION, COSTS, EXPENSES AND ATTORNEYS' FEES, TOGETHER WITH INTEREST THEREON AT THE DEFAULT INTEREST RATE (AS DEFINED IN THE NOTE) FROM THE DATE PAID OR INCURRED BY ASSIGNEE UNTIL REPAID BY ASSIGNOR, SHALL BE IMMEDIATELY DUE AND PAYABLE TO ASSIGNEE BY ASSIGNOR UPON DEMAND AND SHALL BE SECURED BY THE MORTGAGE AND BY ALL OF THE OTHER SECURITY INSTRUMENTS.**

Notwithstanding the foregoing, such indemnity shall not apply to acts accruing following the termination of this Assignment or a foreclosure or deed in lieu of foreclosure or other transfer of the Property pursuant to Assignee's exercise of its remedies hereunder and under the Mortgage and such indemnities shall not apply to liability, loss, claim, demand or damage arising by reason of Assignee's gross negligence or willful default.

(b).    This Assignment shall not be construed as making Assignee a mortgagee-in-possession.

Case 08-35653-KRH   Doc 12121-1   Filed 06/26/12   Entered 06/26/12 15:40:56   Desc
Exhibit(s) Exh 1: Deed in Lieu   Page 20 of 29

OR VOL 362 PG 217

(c).   Assignee is obligated to account to Assignor only for such Rents as are actually collected or received by Assignee.

(d).   Assignor further presently and absolutely assigns to Assignee, subject to the terms and provisions of this Assignment: (i) any award or other payment which Assignor may hereafter become entitled to receive with respect to any of the Leases as a result of or pursuant to any bankruptcy, insolvency or reorganization or similar proceedings involving the tenants under such Leases; and (ii) Assignor's right, title and interest in and to any and all payments made by or on behalf of any tenant of any part of the Property in lieu of Rents. Assignor hereby irrevocably appoints Assignee as its attorney-in-fact to, from and after the occurrence of a default by Assignor hereunder or under any of the other Security Instruments which has not been cured within any applicable grace or cure period, if any, to appear in any such proceeding and to collect any such award or payment, which power of attorney is coupled with an interest by virtue of this Assignment and is irrevocable so long as any sums are outstanding under the Loan evidenced by the Note.

8.   Assignor represents, warrants and covenants to and for the benefit of Assignee: (a) that Assignor now is (or with respect to any Leases not yet in existence, will be immediately upon the execution thereof) the absolute owner of the landlord's interest in the Lease, with full right and title to assign the Rents due or to become due thereunder; (b) that, other than this Assignment and those assignments, if any, specifically permitted in the Mortgage, there are no outstanding assignments of the Leases or Rents; (c) that no Rents have been anticipated, discounted, released, waived, compromised or otherwise discharged, except for prepayment of rent of not more than one (1) month prior to the accrual thereof; (d) that there are no material defaults now existing under the Lease by the Landlord or Tenant, and there exists no state of facts which, with the giving of notice or lapse of time or both, would constitute a default under the Lease by Landlord or Tenant, except as disclosed in writing to Assignee; (e) that Assignor has and shall duly and punctually observe and perform all covenants, conditions and agreements in the Lease on the part of Landlord to be observed and performed thereunder, and (f) the Lease is in full force and effect and is the valid and binding obligation of Assignor, and, to the knowledge of Assignor, is the valid and binding obligation of Tenant thereto.

9.   Assignor covenants and agrees that Assignor shall, at their sole cost and expense, appear in and defend any action or proceeding arising under, growing out of, or in any manner connected with the Leases or the obligations, duties or liabilities of the Landlord or Tenant thereunder, and shall pay on demand all costs and expenses, including, without limitation, attorneys' fees, which Assignee may incur in connection with Assignee's appearance, voluntary or otherwise, in any such action or proceeding, together with interest thereon at the Default Interest Rate from the date incurred by Assignee until repaid by Assignor.

10.   At any time, Assignee may, at its option, notify any tenants or other parties of the existence of this Assignment. Assignor does hereby specifically authorize, instruct and direct each and every present and future tenant, lessee and licensee of the whole or any part of the Property to

44707.3                                    5

OR VOL 362 PG 218

pay all unpaid and future Rents to Assignee upon receipt of demand from Assignee to so pay the same, and Assignor hereby agrees that each such present and future tenant, lessee and licensee may rely upon such written demand from Assignee to so pay said Rents without any inquiry into whether there exists a default hereunder or under the other Security Instruments or whether Assignee is otherwise entitled to said Rents. Assignor hereby waives any right, claim or demand which Assignor may now or hereafter have against any present or future tenant, lessee or licensee by reason of such payment of Rents to Assignee, and any such payment shall discharge such tenant's, lessee's or licensee's obligation to make such payment to Assignor.

11.     Assignee may take or release any security for the indebtedness evidenced by the Note, may release any party primarily or secondarily liable for the indebtedness evidenced by the Note and may apply any other security therefore held by it to the satisfaction of any indebtedness evidenced by the Note without prejudice to any of its rights hereunder or under any of the Security Instruments.

12.     The acceptance of this Assignment and the collection of the Rents in the event Assignor's license is terminated, as referred to above, shall be without prejudice to Assignee. The rights of Assignee hereunder are cumulative and concurrent, may be pursued separately, successively or together and may be exercised as often as occasion therefore shall arise. It is agreed by Assignor that the exercise of any one or more of the rights provided for herein shall not be construed as a waiver of any of the other rights or remedies of Assignee, at law or in equity or otherwise, so long as any obligation under the Security Instruments remains unsatisfied.

13.     All rights of Assignee hereunder shall inure to the benefit of its successors and assigns; and all obligations of Assignor shall bind its successors and assigns and any subsequent owner of the Property provided however, Assignor shall not be liable for any acts or failure to perform any obligation under the Security Instruments after a transfer of the Property to a third party as permitted under the Security Instruments. All rights of Assignee in, to and under this Assignment shall pass to and may be exercised by any assignee of such rights of Assignee. Assignor hereby agrees that if Assignee gives notice to Assignor of an assignment of said rights, upon such notice the liability of Assignor to the assignee of the Assignee shall be immediate and absolute. Assignor will not set up any claim against Assignee or any intervening assignee as a defense, counterclaim or set-off to any action brought by Assignee or any intervening assignee for any amounts due hereunder or for possession of or the exercise of rights with respect to the Leases or the Rents.

14.     It shall be a default hereunder (a) if any representation or warranty made herein by Assignor is determined by Assignee to have been false or misleading in any material respect at the time made, or (b) upon any failure by Assignor to comply with the provisions of Section 6 above, or (c) upon any failure by Assignor in the performance or observance of any other covenant or condition hereof and, to the extent such failure described in this Sub-Section (c) is susceptible of being cured, the continuance of such failure for ten (10) days after written notice thereof from Assignee to Assignor. Any such default shall be a default under each of the other Security Instruments, entitling Assignee to exercise any or all rights and remedies available to Assignee under the terms hereof or of any or all of the other Security Instruments, and any default under any other

44707.3                                          6

OR VOL 362 PG 219

Security Instruments which is not cured within any applicable grace or cure period shall be deemed a default hereunder subject to no grace or cure period, entitling Assignee to exercise any or all rights provided for herein.

15.    Failure by Assignee to exercise any right which it may have hereunder shall not be deemed a waiver thereof unless so agreed in writing by Assignee, and the waiver by Assignee of any default hereunder shall not constitute a continuing waiver or a waiver of any other default or of the same default on any future occasion. No collection by Assignee of any Rents pursuant to this Assignment shall constitute or result in a waiver of any default then existing hereunder or under any of the other Security Instruments.

16.    In addition to, but not in lieu of, any other rights hereunder, Assignee shall have the right to institute suit and obtain a protective or mandatory injunction against Assignor to prevent a breach or default, or to enforce the observance of the agreements, covenants, terms and conditions contained herein, as well as the right to damages occasioned by any breach of default by Assignor.

17.    The undersigned,  by their signatures below evidence their understanding and agreement that each individual Assignor is jointly and severally liable under this Assignment, the other Security Instruments, and the Note.

18.    Assignor hereby covenants and agrees that Assignee shall be entitled to all of the rights, remedies and benefits available by statute, at law, in equity or as a matter of practice for the enforcement and perfection of the intents and purposes hereof. Assignee shall, as a matter of absolute right, be entitled, upon application to a court of applicable jurisdiction, to the appointment of a receiver to obtain and secure the rights of Assignee hereunder and the benefits intended to be provided to Assignee hereunder.

19.    This Assignment shall continue and remain in full force and effect during any period of foreclosure with respect to the Property. This Assignment shall be in full force and effect continuously from the date hereof to and until the Mortgage shall be released of record, and the release of the Mortgage shall, for all purposes, automatically terminate this Assignment and render this Assignment null and void and of no effect whatsoever.

20.    Notwithstanding anything to the contrary contained in this Assignment, the liability of Assignor, for the indebtedness secured hereby and for the performance of the other agreements, covenants and obligations contained herein and in the Security Instruments shall be non-recourse except as set forth in the Note, in that certain Certificate of Indemnity Regarding Exceptions to Non-Recourse Provisions, and in that certain Certificate and Indemnity Regarding Hazardous Substances, each executed by Assignor in connection with the Loan.

21.    IT IS EXPRESSLY AGREED AND UNDERSTOOD THAT THIS ASSIGNMENT INCLUDES INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THE INDEMNIFICATION PROVISIONS CONTAINED IN SECTION 7

OR VOL 362 PG 220

WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY ASSIGNOR OF ASSIGNEE FROM CLAIMS OR LOSSES ARISING AS A RESULT OF ASSIGNEE'S OWN NEGLIGENCE, OTHER THAN GROSS NEGLIGENCE OR WILLFUL DEFAULT.

22.    If any provision under this Assignment or the application thereof to any entity, person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Assignment and the application of the provisions hereof to other entities, persons or circumstances shall not be affected thereby and shall be enforced to the fullest extent permitted by law.

23.    This Assignment may not be amended, modified or otherwise changed except by a written instrument duly executed by Assignor and Assignee.

24.    All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be given and become effective as provided in the Mortgage.

25.    This Assignment may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Assignment may be detached from any counterpart of this Assignment without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Assignment identical in form hereto but having attached to it one or more additional signature pages.

26.    This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective estates, heirs, successors, and assigns.

29.    THIS ASSIGNMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF OHIO, EXCEPT TO THE EXTENT THAT ANY OF SUCH LAWS MAY NOW OR HEREAFTER BE PREEMPTED BY FEDERAL LAW, IN WHICH CASE SUCH FEDERAL LAW SHALL SO GOVERN AND BE CONTROLLING; AND PROVIDED FURTHER THAT THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED SHALL GOVERN AS TO THE CREATION, PRIORITY, AND ENFORCEMENT OF LIENS AND SECURITY INTERESTS IN PROPERTY LOCATED IN SUCH STATE.

30.    All references in this Assignment or other Security Instrument to a default or Event of Default shall mean default after any applicable notice and cure period. All references in this Assignment or any Security Instruments to an obligation of Assignor to reimburse or pay attorneys' fees to or for Assignee shall be deemed to include all attorney and paralegal fees through and including suit and appeal.

OR VOL 362 PG 221

IN WITNESS WHEREOF, Assignor has caused this Assignment to be signed as of the date first above written.

ASSIGNOR:

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _Diane Manuel_

DEBORAH LANDMAN
Social Security No. _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_

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _KATHY FAVONS_

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _Diane Manuel_

ELI LANDMAN
Social Security No. _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_

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _KATHY FAVONS_

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _Diane Manuel_

ANNA SCHWARTZ
Social Security No. _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_

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _KATHY FAVONS_

(CONTINUED ON EXT PAGE)

44707.3

9

OR VOL 362 PG 222

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _Diane Manure_

ZOLTAN SCHWARTZ
Social Security No. _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_

SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:

Print Name: _KATHY FAVORS_

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_

On _3-22-00_, before me, _The Undersigned_, a Notary Public in and for said County and State, personally appeared _Deborah Howard_ personally known to me (or personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

For Notary Seal or Stamp

D. R. SHEWFELT
Commission #1111572
Notary Public - California
Los Angeles County
My Comm. Expires Sep 17, 2000

(CONTINUED ON NEXT PAGE)

44707.3                    10

OR VOL 362 PG 223

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_

On _2-22-00_, before me, _The undersigned_, a Notary Public in and for said County and State, personally appeared _Eli Landman_ personally known to me (or personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

For Notary Seal or Stamp

D. R. SHEWFELT
Commission #1111572
Notary Public - California
Los Angeles County
My Comm. Expires Sep 17, 2000

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_

On _2-22-00_, before me, _The undersigned_, a Notary Public in and for said County and State, personally appeared _Anna Schwartz_ personally known to me (or personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

For Notary Seal or Stamp

D. R. SHEWFELT
Commission #1111572
Notary Public - California
Los Angeles County
My Comm. Expires Sep 17, 2000

(CONTINUED ON NEXT PAGE)

44707.3                                    11

OR VOL 362 PG 224

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_

On _3-22-00_, before me, _THE UNDERSIGNED_, a Notary Public in and for said County and State, personally appeared _Zorida Schwartz_ personally known to me (or personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

For Notary Seal or Stamp

WITNESS my hand and official seal.

Signature

D. R. SHEWFELT
Commission #1111572
Notary Public - California
Los Angeles County
My Comm. Expires Sep 17, 2000

**AFTER RECORDING, RETURN TO:**

Greer, Herz & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
Attention: Marilyn L. Soloway, Esq.

44707.3                    12

OR VOL 362 PG 225

EXHIBIT "A"

THE FOLLOWING TRACT OF LAND IS SITUATED ON THE SOUTHERLY SIDE OF MALL DRIVE
(FORMERLY EAST-WEST DRIVE), CITY OF STEUBENVILLE, SECTION 12, TOWNSHIP 6, RANGE
2, CROSS CREEK TOWNSHIP, JEFFERSON COUNTY, OHIO, AND BEING MORE PARTICULARLY
BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN IN THE SOUTHERLY LINE OF MALL DRIVE (FORMERLY EAST-WEST
DRIVE), SAID BEGINNING POINT LOCATED THE FOLLOWING SIX (6) COURSES AND DISTANCES
FROM A POINT IN THE WESTERLY LINE OF JOHN SCOTT MEMORIAL HIGHWAY: (SAID POINT
BEING LOCATED SOUTH 78 DEG. 59' 00" WEST 63.70 FEET FROM CENTERLINE STATION
18+05.06).
  1.   SOUTH 78 DEG. 59' 00" WEST 80.49 FEET TO A POINT
  2.   THENCE WITH A CURVE TO THE LEFT HAVING A RADIUS OF 710.00 FEET AN  ARC
DISTANCE OF  99.62 FEET TO A POINT, SAID CURVE HAVING A CHORD BEARING OF SOUTH
74 DEG. 57' 50" WEST AND A DISTANCE OF 99.54 FEET
  3.   THENCE SOUTH 13 DEG 00' 00" EAST 91.32 FEET TO A POINT
  4.   THENCE WITH A CURVE TO THE LEFT HAVING A RADIUS OF 565.00 FEET  AND AN ARC

DISTANCE OF 188.81 FEET TO A POINT, SAID CURVE HAVING A CHORD  BEARING OF SOUTH  64
DEG. 22' 32" WEST AND A DISTANCE OF 188.62 FEET 5.   THENCE SOUTH 54 DEG. 48' 00"
WEST 323.14 FEET TO A POINT 6.   THENCE SOUTH 35 DEG. 14' 00" EAST 50.00 FEET
CROSSING MALL DRIVE  TO AN IRON PIN  AT THE TRUE PLACE OF BEGINNING;

THENCE FROM SAID TRUE PLACE OF BEGINNING, ALONG THE SOUTHERLY LINE OF MALL DRIVE THE
FOLLOWING TWO (2) COURSES AND DISTANCES 1.   NORTH 54 DEG. 46' 00" EAST. 323.14 FEET
TO AN IRON PIN 2.   THENCE WITH A CURVE TO THE RIGHT HAVING A RADIUS OF 505.00 FEET
AN ARC DISTANCE OF 166.25 FEET TO AN IRON PIN, SAID CURVE HAVING A CHORD BEARING OF
NORTH 64 DEG. 11' 56" EAST AND A DISTANCE OF 165.50 FEET; THENCE ALONG THE LINE
DIVIDING LANDS OF MAGNUS PROPERTIES INC, AND LAND OF HUBERTA MINING COMPANY THE
FOLLOWING TWO (2) COURSES AND DISTANCES;1.   SOUTH 21 DEG. 13' 21" WEST 418.47 FEET
TO AN IRON PIN; 2.   THENCE ALONG THE SAME SOUTH 35 DEG. 14' 00" EAST 41.64 FEET TO
AN IRON PIN; THENCE THROUGH LANDS OF HUBERTA MINING COMPANY SOUTH 54 DEG. 46' 00"
WEST 137.62 FEET TO AN IRON PIN; THENCE CONTINUING THROUGH LANDS OF HUBERTA MINING
COMPANY AND ALONG LINE DIVIDING SAME LANDS OF ALDI INC. NORTH 35 DEG. 14' 00" WEST
300.00 FEET TO AN IRON PIN, AT THE TRUE PLACE OF BEGINNING

HAVING AN AREA OF 89,611 SQ. FT. (2.06 ACRES) MORE OR LESS

OR VOL 362 PG 226

## EXHIBIT "B"

Lease by and between Circuit City Stores, Inc., as Tenant, and CC Investors #17, L.P., as Landlord dated June 18, 1999.