

# ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

THIS ABSOLUTE ASSIGNMENT OF LEASES AND RENTS (this "Assignment") is made by Tire Distributors, Inc., a California corporation (hereinafter called "Assignor") to and in favor of AMERICAN NATIONAL INSURANCE COMPANY, a Texas corporation (American National Insurance Company, its successors or assigns being hereinafter called "Assignee").

FOR AND IN CONSIDERATION of the loan made to Assignor by Assignee, as evidenced by that certain Promissory Note (the "Note") of even date herewith in the original principal amount of FIVE MILLION SEVEN HUNDRED THOUSAND AND NO/100 DOLLARS ($5,700,000.00), payable to the order of Assignee and made and executed by Assignor, which is described in and secured by that certain Mortgage, Security Agreement and Financing Statement (the "Mortgage") of even date herewith executed by Assignor to Assignee, covering the real property described in **Exhibit A** attached hereto and made a part hereof, which, together with all buildings, improvements, fixtures and equipment located thereon owned by Assignor, is hereinafter referred to as the "Mortgaged Property", and for other good and valuable consideration, Assignor has GRANTED, TRANSFERRED and ASSIGNED, and by these presents does hereby GRANT, TRANSFER and ASSIGN unto Assignee its entire right, title and interest in and to the following:

1. All leases, written or oral, and all agreements for use or occupancy of all or any portion of the Mortgaged Property, any and all amendments, extensions and renewals of said leases and agreements and any and all further leases or agreements, including subleases thereunder, upon or covering the use or occupancy of all or any part of the Mortgaged Property, all such leases, agreements, subleases and tenancies heretofore mentioned being hereinafter individually referred to as a "Lease" and collectively referred to as the "Leases" and such lessees, sublessees and tenants under any Lease being hereinafter individually referred to as a "Lessee";

2. Any and all guaranties of the performance, payment and/or collection of any of the Leases (individually referred to as a "Guaranty" and collectively referred to as "Guaranties") by any guarantor, surety or other liable party thereunder (collectively referred to as a "Guarantor"); and

3. The immediate and continuing right to collect, retain, use, enjoy and receive all of the rents, income, receipts, revenues, issues and profits now due or which may become due, or to which Assignor may now or shall hereafter (including during the period of redemption, if any) become entitled or may demand or claim, arising or issuing from or out of the Leases or from or out of the Mortgaged Property, or any part thereof, including but not limited to minimum rents, additional rents, percentage rents, common area maintenance charges, parking charges, tax and insurance premium contributions, and liquidated damages following default, the premium payable by any Lessee under any Lease upon the exercise of any cancellation privilege provided for in any of the Leases, payments from any Guarantor and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Mortgaged Property, together with any and all rights and claims of any kind which Assignor may have against any Lessee in connection with the Leases or against any subtenants, occupants or users of the Mortgaged Property, all such monies, rights and claims in this paragraph described being hereinafter referred to as the "Rents."

155684.3                                            1

To induce Assignee to lend the funds evidenced by the Note, Assignor hereby makes the following REPRESENTATIONS AND WARRANTIES:

That Assignor has good title to the Leases, Guaranties and Rents hereby assigned and good right to assign the same, and that no other person, corporation or entity has any right, title or interest therein; that Assignor has duly and punctually performed all and singular the terms, covenants, conditions and warranties of the existing Leases on Assignor's part to be kept, observed and performed; that Assignor has not previously sold, assigned, transferred, mortgaged or pledged the Leases, Guaranties or the Rents, whether now due or hereafter to become due; that any of the Rents due for any period subsequent to the date hereof have not been collected and that payment of any of the Rents has not otherwise been anticipated, waived, released, discounted, set off or otherwise discharged or compromised; that Assignor has not received any funds or deposits (other than security deposits) from any Lessee in excess of one (1) month's rent for which credit has not already been made on account of accrued rents; and that the Lessee under any existing Lease is not in default of any of the terms thereof.

Assignor further COVENANTS AND AGREES:

1. To observe, perform and discharge all obligations, covenants and warranties provided for under the terms of the Leases and Guaranties to be kept, observed and performed by Assignor, and to give prompt notice to Assignee in the event Assignor fails to observe, perform and discharge same;

2. To notify in writing each Lessee, Guarantor and occupant of the Mortgaged Property or any part thereof that any security deposits or other deposits heretofore delivered to Assignor have been retained by Assignor or assigned and delivered to Assignee as the case may be;

3. To enforce or secure, in the name of the Assignee if Assignee should so request, the performance of each and every obligation, term, covenant, condition and agreement to be performed by (a) any Lessee under the terms of the Leases and (b) any Guarantor under the terms of the Guaranties;

4. To appear in and defend any action or proceeding arising under, occurring out of, or in any manner connected with the Leases, the Guaranties or the obligations, duties or liabilities of Assignor and any Lessee thereunder, and, upon request by Assignee, to do so in the name and on behalf of Assignee but at Assignor's sole cost and expense, and to pay all costs and expenses of Assignee, including reasonable attorneys' fees, in any action or proceeding in which the Assignee may appear;

5. Not to receive or collect any Rents from any present or future Lessee of the Mortgaged Property or any part thereof or from any Guarantor for a period of more than one (1) month in advance, or pledge, transfer, mortgage or otherwise encumber or assign future payments of the Rents;

6. Not to waive, excuse, condone, discount, set off, compromise, or in any manner release or discharge any Guarantor or Lessee of the Mortgaged Property of and from any

155684.3

2

obligations, covenants, conditions and agreements by said Lessee or Guarantor to be kept, observed and performed, including the obligation to pay rent in the manner and at the place and time specified in any Lease;

7. Not to cancel, terminate or consent to any surrender of any Lease or any Guaranty, or modify or in any way alter the terms of any Lease or any Guaranty without, in each such instance, the prior written consent of Assignee;

8. To notify each Lessee, Guarantor and occupant of the Mortgaged Property in writing of the rights granted to Assignee hereunder, and, immediately upon receipt of demand from Assignee, to direct, in writing, each Lessee, Guarantor and occupant of the Mortgaged Property to pay all Rents then due or to become due from such Lessee, Guarantor and occupant directly to Assignee upon such Lessee's, Guarantor's or occupant's receipt of written notice from Assignee of Assignee's exercise of Assignee's rights under this Agreement;

9. To provide Assignee with copies of all notices, complaints, demands and petitions regarding (a) any actual, potential or alleged default on the part of the landlord or the tenant under a Lease, or (b) Hazardous Materials, as such term is defined in the Mortgage, sent or received by Assignor immediately upon Assignor's sending same or within five (5) days of Assignor's receipt of same, as applicable; and

10. To promptly remit to Assignee any and all Rents received by Assignor after Assignor's receipt from Assignee of termination of Assignor's license to collect Rents granted herein.

Notwithstanding anything to the contrary set forth herein, so long as there shall exist no default by Assignor in the payment of any indebtedness and obligations secured hereby or in the observance and performance of any other obligation, covenant or warranty set forth herein or in the Note, the Mortgage or any other instrument executed by Assignor evidencing, securing or relating to the Note (such documents being herein referred to collectively as the "Loan Documents"), Assignor shall have the privilege under a license granted hereby (but limited as provided in the following paragraph) to collect, retain, use, enjoy and receive, but not prior to accrual, all of the Rents arising from or out of the Leases.

Upon default in the payment of any indebtedness secured hereby or in the observance or performance of any obligation, covenant or warranty set forth herein or in the Loan Documents (an "Event of Default"), the license granted to Assignor herein shall immediately and automatically terminate and Assignee, at its option, shall then or at any time thereafter have the right, power and authority to exercise and enforce any or all of the rights and remedies of the landlord under the Leases or the Assignee hereunder, including the following: (a) to collect the Rents as aforesaid, and, without taking possession of the Mortgaged Property, to, in Assignee's own name, demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittances therefor, and, after deducting all necessary and reasonable costs and expenses of collection, including reasonable attorneys' fees, to apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, upon any indebtedness secured hereby or obligation provided for in any of the Loan Documents and in such order as Assignee may determine; (b) to declare all sums secured by the Mortgage or due hereunder to be

immediately due and payable and, at Assignee's option, to exercise all of the rights and remedies provided for in the Loan Documents or under the terms hereof; and (c) without any action or proceeding, through any person or by agent, or by a receiver to be appointed pursuant to the Mortgage, to enter upon, take possession of, manage and operate the Mortgaged Property or any part thereof, and irrespective of Assignor's possession of the Mortgaged Property, to make, modify, enforce, cancel or accept surrender of any of the Leases and Guaranties, to remove and evict any Lessee or other occupant, to increase or reduce rents, to decorate, clean and make repairs, and to otherwise do any act or incur any cost or expenses Assignee shall deem proper to protect the Leases, Guaranties and the Mortgaged Property, as fully and to the same extent as Assignor could do if in possession, and in such event to apply any funds so collected to the operation and management of the Mortgaged Property, but in such order as Assignee shall deem proper, and including payment of reasonable management, brokerage and attorneys' fees, and then, to the extent funds are available and to the extent deemed appropriate by Assignee, to the maintenance, without interest thereon, of a reserve for replacement of items on the Mortgaged Property, and then, if any of such funds remain, to the payment of any indebtedness evidencing, securing or relating to the terms of the Loan Documents whether or not then due.

The exercise by Assignee of any of the rights and remedies described above, including collection of the Rents and application thereof as aforesaid and/or the entry upon and taking possession of the Mortgaged Property, shall not cure or waive any Event of Default or waive, modify or affect any notice of default under the Loan Documents or hereunder, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Assignee, once exercised, shall continue for so long as Assignee shall elect, notwithstanding that the collection and application as aforesaid of the Rents may have cured the original Event of Default. If Assignee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent Event of Default.

Notwithstanding the aforesaid license of Assignor to collect the Rents accruing under the Leases prior to an Event of Default, Assignee shall at all times be the creditor of each Lessee under the Leases in respect of assignments for the benefit of creditors, bankruptcy, reorganization, rearrangement, insolvency, dissolution, or receivership proceedings, with Assignee having the option to apply any monies received by the Assignee as such creditor to reduction of the principal or interest or other indebtedness evidencing, securing or relating to the Loan Documents. Notwithstanding the aforesaid license of Assignor to collect rents under the Leases prior to an Event of Default, Assignee may collect, retain, use, enjoy and receive all payments, premiums and considerations paid by any Lessee, whether or not pursuant to the terms of any Lease, for the right to terminate, cancel or modify a Lease, with an option to apply any money so received by the Assignee to reduction of the principal or interest or any other indebtedness evidencing, securing or relating to the Loan Documents in any order or manner Assignee elects. Further, Assignor covenants and agrees to immediately pay over to Assignee any and all sums received by Assignor as creditor in respect to an assignment for the benefit of creditors in bankruptcy, reorganization, arrangement, insolvency, dissolution or receivership proceedings, or as payment, premium or other consideration in connection with the cancellation or modification of any Lease, whereupon Assignee shall have the option to apply any funds so

received to reduction of the principal or interest or any other indebtedness evidencing, securing or relating to the Loan Documents in any order or manner Assignee elects.

This Assignment shall remain in effect as long as any part of the indebtedness evidencing, securing or relating to the Loan Documents remains unpaid, and upon payment in full of said indebtedness, Assignee shall execute a release of this Assignment upon request of Assignor and at the expense of Assignor.

Notwithstanding any law to the contrary, if there is an Event of Default, and if there is any law requiring Assignee to take actual possession of the Mortgaged Property (or some action equivalent thereto, such as securing the appointment of a receiver) in order for Assignee to "perfect" or "activate" its rights and remedies as set forth herein, then to the maximum extent permitted by law Assignor waives the benefits of such law and agrees that such law shall be satisfied solely by: (1) Assignee sending Assignor written notice that Assignee intends to enforce, and is enforcing, its rights in and to the Mortgaged Property and the rents, revenues, profits, and other items assigned herein, and (2) Assignee sending written notice to any or all tenants on the Mortgaged Property that said tenants should commence making payments under the Leases directly to Assignee or its designee.

In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

Reference is made to the Mortgage for the limitations on recourse as to the Assignor.

This Assignment shall run with the land and shall inure to the benefit of and bind all parties hereto and their respective heirs, executors, administrators, successors and assigns.

EXECUTED this the ___03___ day of ___February___, 2005.

ASSIGNOR:

TIRE DISTRIBUTORS, INC.

By: _____
Name: Paul Resnick,
Its:    President

155684.3                                    5

STATE OF CALIFORNIA    )
                       : ss:
County of _Los Angeles_ )

On this _18_ day of ~~January~~ Feb 2005, before me, the undersigned notary public for said state, personally appeared PAUL RESNICK, known to me to be the President of Tire Distributors, Inc., a California corporation, the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same on behalf of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public
Residing at _Los Angeles_
Comm. Expires _08-16-06_



EIMEE AGUILAR DE GUZMAN
Commission # 1370447
Notary Public - California
Los Angeles County
My Comm. Expires Aug 16, 2006

RECORD AND RETURN TO:

Lawrence D. Ross, Esq.
Bressler, Amery & Ross, P.C.
P.O. Box 1980
Morristown, NJ 07962

155684.3                           6



EXHIBIT A

ALL THAT TRACT OR PARCEL OF LAND, situate in part of Town Lot 8, Range 4, Township 12, Range 7, Town of Henrietta, County of Monroe, State of New York, known and described as Lot R-101B as shown on a map of Marketplace Center Subdivision being a resubdivision of Lots 101, R-102-A, and R-102B.1 made by Charles J. Costich, P.E., L.S., P.C., dated January 30, 1992 and filed in the Monroe County Clerk's Office on April 16, 1992 in Liber 271 of Maps at page 1. **

Together with the benefits of the Reciprocal Access Easements contained in the Warranty Deed from Fedele V. Scutti to Wegmans Enterprises, Inc., dated and recorded December 29, 1982 in Liber 6253 of Deeds, page 34 and also contained in the Warranty Deed from Ray Hylan to Wegmans Enterprises, Inc., dated and recorded December 29, 1982 in Liber 6253 of Deeds, page 48.

Also together with the benefits of the Reciprocal Access Easements contained in the Executor's Deed from Sandra Lee Rueckwald and Chase Lincoln First Bank, N.A., as Executors under the Last Will and Testament of Raymond P. Hylan, Deceased, to Fedele V. Scutti, dated June 10, 1986 and recorded June 20, 1986 in Liber 6918 of Deeds, page 315.

Also together with the benefits of the (Cross Easement) Agreement made by K. L. Glaser and Rochester Associates, L.P. dated November 30, 1994 and recorded September 1, 1995 in the Monroe County Clerk's Office in Liber 8649 of Deeds, page 294.

Also together with the benefits set forth in the Memo of Lease from F. V. Scutti to Mobil Oil Corporation dated November 21, 1990 and recorded February 25, 1991 in Liber 8055 of Deeds at page 546.

Together with Easements contained in the Memo of Lease from F. V. Scutti to Mobil Oil Corporation, dated November 21, 1990 and recorded February 25, 1991 in Liber 8055 of Deeds, page 546.

Together with the rights and obligations set forth in Easement Agreement made by and between Kimmie, LLC and Marketplace, a New York limited liability company, recorded January 11, 2005 in the Monroe County Clerk's Office in Liber 10073 of Deeds, at Page 638.

**Above-described Lot R-101B is also described as follows:

ALL THAT TRACT OR PARCEL OF LAND, situate in Town Lot 8 of the 4th Range of Lots, Township 12, 7th Range, County of Monroe, State of New York, and being more particularly described as follows:

COMMENCING at a point in the centerline of Marketplace Drive, said point being located 1125.26 feet from the centerline intersection of Fisons Drive; thence

N 01°-15'-24" W, a distance of 30.92 feet to a point on the north right-of-way line of Marketplace Drive, said point being the true point and place of beginning; thence

Westerly, on a cure to the right, along the north right-of-way line of Marketplace Drive, having a radius of 545.00 feet, an arc length of 55.09 feet and a delta angle of 05°-47'-29" to a point; thence

S 80°-07'-40" W, along the north right-of-way line of Marketplace Drive, a distance of 268.77 feet to a point; thence

Westerly, on a curve to the left, having a radius of 630.00 feet, an arc length of 83.38 feet and a delta angle of 07°-34'-59" to a found rebar; thence

N 29°-51'-52" W, a distance of 180.76 feet to a rebar found; thence

S 60°-08'-08" W, a distance of 271.49 feet to a mag nail set on the easterly right-of-way line of Hylan Drive; thence

Northerly, on a curve to the right, along the easterly right-of-way line of Hylan Drive, having a radius of 904.93 feet, an arc length of 172.59 feet and a delta angle of 10°-55'-40" to a mag nail set; thence

N 73°-01'-26" E, a distance of 659.33 feet to a rebar found; thence

S 01°-15'-24" E, a distance of 93.53 feet to a mag nail set; thence

N 88°-44'-36" E, a distance of 160.50 feet to a railroad spike found; thence

S 01°-15'-24" E, a distance of 202.47 feet to the point and place of beginning.