# EXHIBIT A

## STEMPEL BENNETT CLAMAN & HOCHBERG, P.C.

### 675 THIRD AVENUE
### NEW YORK, NEW YORK 10017-5704

RICHARD C. STEMPEL
JAMES R. BENNETT
RICHARD L. CLAMAN
STEVEN R. HOCHBERG
JOELLE B. TAUB
EDMOND P. O'BRIEN

SHARON V. RYAN
DENNIS H. McCOOBERY
RACHEL E. WILLIAMS
CHRISTOPHER O'MALLEY
HEATHER R. OHLBERG
A. ALLIE PUTHIYAMADAM

TEL (212) 681-6500
FAX (212) 681-4041
E-MAIL attorneys@sbchlaw.com

OF COUNSEL
STEPHEN J. FALLIS

February 8, 2010

Peter Strniste, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103

Re:   Circuit City/ Green 521 Fifth Avenue

Dear Peter:

As we discussed, enclosed please find my client's check, in the agreed upon settlement amount ($65,000), payable to your firm as attorneys for Schimenti Construction.  As we have agreed, you will deposit the check in your firm's escrow account, but will not release any portion thereof to your client (or anyone else) until you have received confirmation from me that I have received the agreed upon releases/ satisfactions of lien, etc.

It has been a pleasure working with you on this matter.

Sincerely,

Edmond O'Brien

521 FIFTH AVENUE HOLDING LLC
By SL Green Management LLC, its Agent
420 Lexington Avenue
New York, NY 10170

TO THE
ORDER OF

**** SIXTY FIVE THOUSAND AND 00/100 DOLLARS ****

Robinson & Cole LLP as attorneys for Settlement Construction Co., LLC
885 Third Avenue
New York, NY 10022

01/18/10

$65,000.00*

3652

DATE:01/18/10    CK#:13652    TOTAL:$65,000.00**    BANK:521oper - 521 Operating Account
PAYEE:Robinson & Cole LLP(robincol)

| Property Account | (Date)Invoice | Description | Amount |
|---|---|---|---|
| 521jv 6865-0000 | 12/23/09 | 521, 5th Ave Circuit City Settlement | 65,000.00 |
|  |  |  | 65,000.00 |

Security features. Details on back.

# EXHIBIT B

# SCHEDULE 1
## Pre-Petition

| Description | Charges | Running Balance |
|---|---|---|
| Retail Rent (11/1/2008 – 11/10/2008) **(pro-rated)** | $104,662.50 | $104,662.50 |
| Elec Sub (8/27/08 – 9/26/08) | $16,266.58 | $120,929,08 |
| Sales Tax – Elec Sub (8/27/08 – 9/26/08 | $ 1,362.33 | $122,291.41 |
| Elec Sub (9/26/08 – 10/27/08) | $12,826.42 | $135,117.83 |
| Sales Tax–Elec Sub (9/26/08 – 10/27/08) | $1,074.21 | $136,192.04 |
| Elec Sub (10/27/08 – 11/26/08) **(pro-rated)** | $5,218.98 | $141,411.02 |
| Sales Tax – Elec Sub **(pro-rated)** | $437.09 | $141,848.11 |

# EXHIBIT C

# SCHEDULE 2

## Administrative

| Description | Charges | Running Balance |
|---|---|---|
| Retail Rent (11/10/08 – 11/30/08) **(pro-rated)** | $244,212.50 | **PAID** [on July 1,2009 - check # 0004608180] |
| Elec Sub (11/10/08 – 11/30/08) **(pro-rated)** | $6,824.91 | $6,824.91 |
| Sales Tax – Elec Sub (11/10/08 – 11/26/08) | $ 571.59 | $7,396.50 |
| Plan Review – Highland Assc. Invoice # 62053 Billed on: (1/05/08) | $ 1,200.00 | $8,596.50 |
| WO # 455558743 (Tenant Charges Misc) | $225.50 | $8,822.00 |
| WO # 455558743 (Tenant Charges Misc – Sales Tax) | $17.17 | $8,839.17 |
| Elec Sub (11/26/08 – 12/30/08) | $11, 870.45 | $20,709.62 |
| Sales Tax - Elec Sub (11/26/08 – 12/30/08) | $ 994.15 | $21,703.77 |
| Elec Sub (12/30/08 – 01/30/09) | $10,963.32 | $32,667.09 |
| Sales Tax - Elec Sub (12/30/08 – 01/30/09) | $918.18 | $33,585.27 |
| Elec Sub (01/30/09 – 03/03-09) | $8,496.43 | $42,081.70 |
| Sales Tax - Elec Sub (01/30/09 – 03/03-09) | $711.58 | $42,793.28 |
| Elec Sub (03/03-09 – 03/09/09) | $1,063.58 | $43,856.86 |
| Sales Tax – Elec Sub (03/03/09 – 03/09/09) | $89.07 | $43,945.93 |
| Rent (3/1/09 – 3/10/09) **(pro-rated)** | $112,540.32 | PAID [on March 13, 2009 – check # 0004606261) |

# EXHIBIT D

Tenant Ledger
Circuit City Stores, Inc. (circuit1)
521 Fifth Avenue

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | - |
| 8/13/2007 | Plan Review (TPG Architecture Inv#82526) | 2,947.50 | | 2,947.50 |
| 8/13/2007 | Plan Review (Highland Inv#56096) | 1,200.00 | | 4,147.50 |
| 11/1/2007 | Retail Rent (11/2007) | 104,662.50 | | 108,810.00 |
| 12/1/2007 | Retail Rent (12/2007) | 348,875.00 | | 457,685.00 |
| 12/5/2007 | chk# 4447992 | | 453,537.50 | 4,147.50 |
| 12/26/2007 | chk# 4489848 | | 348,875.00 | (344,727.50) |
| 1/1/2008 | Retail Rent (01/2008) | 348,875.00 | | 4,147.50 |
| 2/1/2008 | Retail Rent (02/2008) | 348,875.00 | | 353,022.50 |
| 2/2/2008 | Elec Sub (11/29/07 - 12/31/07) | 11,634.97 | | 364,657.47 |
| 2/2/2008 | Sales Tax-Elec Sub (11/29/07 - 12/31/07) | 974.43 | | 365,631.90 |
| 2/5/2008 | chk# 4475370 | | 348,875.00 | 16,756.90 |
| 3/1/2008 | Retail Rent (03/2008) | 348,875.00 | | 365,631.90 |
| 3/2/2008 | Elec Sub (12/31/07 - 01/30/08) | 10,383.21 | | 376,015.11 |
| 3/2/2008 | Sales Tax-Elec Sub (12/31/07 - 01/30/08) | 869.59 | | 376,884.70 |
| 3/6/2008 | Plan Review (Brookbridge Inv#22751) | 450.00 | | 377,334.70 |
| 3/6/2008 | chk# 4489752 | | 348,875.00 | 28,459.70 |
| 3/28/2008 | chk# 4497758 | | 348,875.00 | (320,415.30) |
| 4/1/2008 | Retail Rent (04/2008) | 348,875.00 | | 28,459.70 |
| 4/2/2008 | Elec Sub (01/30/08 -02/29/08) | 11,848.84 | | 40,308.54 |
| 4/2/2008 | Sales Tax-Elec Sub (01/30/08 -02/29/08) | 992.34 | | 41,300.88 |
| 4/11/2008 | chk# 4504068 | | 36,676.38 | 4,624.50 |
| 4/30/2008 | chk# 0004510450 | | 348,875.00 | (344,250.50) |
| 5/1/2008 | Retail Rent (05/2008) | 348,875.00 | | 4,624.50 |
| 5/2/2008 | Elec Sub (02/29/08 - 03/31/08) | 12,192.20 | | 16,816.70 |
| 5/2/2008 | Sales Tax-Elec Sub (02/29/08 - 03/31/08) | 1,021.10 | | 17,837.80 |
| 5/12/2008 | chk# 0004514868 | | 13,240.30 | 4,597.50 |
| 5/30/2008 | chk# 0004520270 | | 348,875.00 | (344,277.50) |
| 5/31/2008 | WO# 373982977 Tenant Charges miscinc Fir | 205.00 | | (344,072.50) |
| 5/31/2008 | WO# 373982977 Tenant Charges salestax Fi | 17.17 | | (344,055.33) |
| 5/31/2008 | WO# 373979773 Tenant Charges miscinc Fir | 207.00 | | (343,848.33) |
| 5/31/2008 | WO# 373979773 Tenant Charges salestax Fi | 17.33 | | (343,831.00) - |
| 6/1/2008 | Retail Rent (06/2008) | 348,875.00 | | 5,044.00 |
| 6/2/2008 | Elec Sub (03/31/08 - 04/29/08) | 13,380.44 | | 18,424.44 |
| 6/2/2008 | Sales Tax-Elec Sub (03/31/08 - 04/29/08) | 1,120.61 | | 19,545.05 |
| 6/12/2008 | chk# 0004525101 | | 14,501.05 | 5,044.00 |
| 6/30/2008 | chk# 0004530715 | | 348,875.00 | (343,831.00) |
| 7/1/2008 | Retail Rent (07/2008) | 348,875.00 | | 5,044.00 |
| 7/2/2008 | Elec Sub (04/29/08 - 05/29/08) | 12,742.61 | | 17,786.61 |
| 7/2/2008 | Sales Tax-Elec Sub (04/29/08 - 05/29/08) | 1,067.19 | | 18,853.80 |
| 7/7/2008 | chk# 0004533959 | | 13,809.80 | 5,044.00 |
| 7/28/2008 | chk# 0004541781 | | 348,875.00 | (343,831.00) |
| 8/1/2008 | Retail Rent (08/2008) | 348,875.00 | | 5,044.00 |
| 9/1/2008 | Retail Rent (09/2008) | 348,875.00 | | 353,919.00 |
| 9/2/2008 | Elec Sub (05/29/08 - 06/27/08) | 19,958.47 | | 373,877.47 |
| 9/2/2008 | Sales Tax-Elec Sub (05/29/08 - 06/27/08) | 1,671.52 | | 375,548.99 |
| 9/2/2008 | Elec Sub (06/27/08 - 07/29/08) | 19,013.79 | | 394,562.78 |

| Date | Description | | | |
|---|---|---|---|---|
| 9/2/2008 | Sales Tax-Elec Sub (06/27/08 - 07/29/08) | 1,592.40 | | 396,155.18 |
| 9/5/2008 | chk# 4555020 | | 348,875.00 | 47,280.18 |
| 9/12/2008 | chk# 0004557243 | | 42,236.18 | 5,044.00 |
| 9/26/2008 | chk# 0004562816 | | 5,043.50 | 0.50 |
| 9/29/2008 | chk# 004562816 | | 348,875.00 | (348,874.50) |
| 10/1/2008 | Retail Rent (10/2008) | 348,875.00 | | 0.50 |
| 10/2/2008 | Elec Sub (07/29/08 - 08/27/08) | 16,340.99 | | 16,341.49 |
| 10/2/2008 | Sales Tax-Elec Sub (07/29/08 - 08/27/08) | 1,368.56 | | 17,710.05 |
| 10/8/2008 | chk# 0004565031 | | 17,709.55 | 0.50 |
| 11/1/2008 | Retail Rent (11/2008) | 348,875.00 | | 348,875.50 |
| 11/2/2008 | Elec Sub (08/27/08 - 09/26/08) | 16,266.58 | | 365,142.08 |
| 11/2/2008 | Sales Tax-Elec Sub (08/27/08 - 09/26/08) | 1,362.33 | | 366,504.41 |
| 12/1/2008 | Retail Rent (12/2008) | 348,875.00 | | 715,379.41 |
| 12/2/2008 | Elec Sub (09/26/08 - 10/27/08) | 12,826.42 | | 728,205.83 |
| 12/2/2008 | Sales Tax-Elec Sub (09/26/08 - 10/27/08) | 1,074.21 | | 729,280.04 |
| 12/5/2008 | chk# 0004581733 | | 348,875.00 | 380,405.04 |
| 1/1/2009 | Retail Rent (01/2009) | 348,875.00 | | 729,280.04 |
| 1/2/2009 | Elec Sub (10/27/08 - 11/26/08) | 12,043.89 | | 741,323.93 |
| 1/2/2009 | Sales Tax-Elec Sub (10/27/08 - 11/26/08) | 1,008.68 | | 742,332.61 |
| 1/5/2009 | Plan Review-Highland Assc-Inv#62053 | 1,200.00 | | 743,532.61 |
| 1/5/2009 | chk# 0004591198 | | 348,875.00 | 394,657.61 |
| 1/19/2009 | WO# 455558743 Tenant Charges miscinc Fir | 225.50 | | 394,883.11 |
| 1/19/2009 | WO# 455558743 Tenant Charges salestax Fi | 17.17 | | 394,900.28 |
| 2/1/2009 | Retail Rent (02/2009) | 348,875.00 | | 743,775.28 |
| 2/2/2009 | Elec Sub (11/26/08 - 12/30/08) | 11,870.45 | | 755,645.73 |
| 2/2/2009 | Sales Tax-Elec Sub (11/26/08 - 12/30/08) | 994.15 | | 756,639.88 |
| 2/5/2009 | chk# 0004599745 | | 348,875.00 | 407,764.88 |
| 3/1/2009 | Retail Rent (03/2009) | 348,875.00 | | 756,639.88 |
| 3/2/2009 | Elec Sub (12/30/08 - 01/30/09) | 10,963.32 | | 767,603.20 |
| 3/2/2009 | Sales Tax-Elec Sub (12/30/08 - 01/30/09) | 918.18 | | 768,521.38 |
| 3/13/2009 | chk# 0004606261 | | 112,540.32 | 655,981.06 |
| 4/2/2009 | Elec Sub (01/30/09 - 03/03/09) | 8,496.43 | | 664,477.49 |
| 4/2/2009 | Sales Tax-Elec Sub (01/30/09 - 03/03/09) | 711.58 | | 665,189.07 |
| 5/2/2009 | Elec Sub (03/03/09 - 03/09/09) | 1,063.58 | | 666,252.65 |
| 5/2/2009 | Sales Tax-Elec Sub (03/03/09 - 03/09/09) | 89.07 | | 666,341.72 |
| 7/1/2009 | chk# 0004608180 | | 244,212.50 | 422,129.22 |

| Current | | 30 Days | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0 | | - | - | 422,129.22 | 422,129.22 |

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com₅

| | |
|---|---|
| Postage | $ 1.39 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.49 |

Postmark Here

Sent To Kellan Grant, Esg.
Street, Apt. No.: Skadden, Arps, Slate, Meagher + Flom LLP
or PO Box No. 155 North Wacker Drive
City, State, ZIP+4 Chicago IL 60606

PS Form 3800, August 2006          See Reverse for Instructions

---

**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com₅

| | |
|---|---|
| Postage | $ 1.39 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.49 |

Postmark Here

Sent To Circuit City Stores, Inc.
Attn: Katie W. Bradshaw, Dir. of Accounting
Street, Apt. No.; or PO Box No. P.O. Box 5695
City, State, ZIP+4 Glen Allen, VA 23058-5695

PS Form 3800, August 2006          See Reverse for Instruction

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.39 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.49 |

Postmark Here

Sent To Gregg M. Galardi, Esg. + Ian S. Fredericks, Esg.
Skadden, Arps, Slate, Meagher + Flom, LLP
Street, Apt. No.; or PO Box No. One Rodney Square, P.O. Box 36
City, State, ZIP+4 Wilmington, DE 19899

PS Form 3800, August 2006          See Reverse for Instruction

**GREEN 521 FIFTH AVENUE, LLC**
c/o SL Green Realty Corp.
420 Lexington Avenue
New York, New York 10170

Direct Dial (212) 216-1760
E-mail. kathy.crocco@slgreen.com

August 3, 2010

**BY FEDERAL EXPRESS**

Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Attn: Austin S. Faberman, Esq.

Re:    Lease dated as of June 30, 2010 (the "Lease") between Green 521 Fifth Avenue, LLC
("Landlord") and Urban Outfitters, Inc. ("Tenant"), rentable portion of the ground level and
second level (the "Premises") in the building known as and located at 521 Fifth Avenue,
New York, New York (the "Building").

Dear Austin:

Reference is hereby made to the Lease. Terms not otherwise described herein shall have the same
meanings ascribed to them in the Lease.

This letter shall serve to confirm the correction of an inadvertent typographical error contained in the
Lease. Landlord and Tenant hereby agree that in the column titled "Initial Lease Term" set forth in
Paragraph N of the Schedule of Terms, the numbers "6-12" are hereby deleted and the following numbers
shall be substituted in their place and stead: "10-12".

Kindly confirm your acknowledgement of the foregoing and that an executed counterpart of this
letter sent by portable document format (pdf) or by facsimile shall be binding upon the parties, by executing
a counterpart of this letter where indicated below and returning an executed copy to the attention of Kathleen
A. Crocco, Esq. via electronic mail at kathy.crocco@slgreen.com via facsimile at (646) 293-1370, with the
original to follow by overnight mail to the above address. Thank you for your courtesy.

Very truly yours,

GREEN 521 FIFTH AVENUE, LLC,
as Landlord

By: _____
Name.
Title:       Kathleen A. Crocco
             Senior Vice President,
             Leasing Counsel

Acknowledged and Agreed:
URBAN OUTFITTERS, INC., as Tenant

By. _____
Name:
Title:

cc.    Steven Durels, SL Green Realty Corp.

L.  **RENT COMMENCEMENT DATE:** The date which is seven (7) months after the Commencement Date; subject, however, to the application of any Rent credits provided by the provisions of Section [3](g) hereof

M.  **EXPIRATION DATE:** 11 59 p.m. (New York, New York time) on the day immediately preceding the date which is fifteen (15) Lease Years after the Rent Commencement Date; subject, however, to Tenant's Options to Extend.

N.  **ANNUAL MINIMUM RENTAL RATE:**

| Lease Year | Annual Minimum Rental Rate | Monthly Installments |
|---|---|---|
| Initial Lease Term | | |
| 1-3 | $ 3,600,000 | $ 300,000 00 |
| 4-6 | 3,888,000 | 324,000.00 |
| 7-9 | 4,199,040 | 349,920 00 |
| 10-12 | 4,534,963 | 377,913 58 |
| 13-15 | 4,897,760 | 408,146.67 |
| First Extension Term | | |
| 16-20 | The "Market Rental Rate" as determined pursuant to the provisions of Section [8] hereof | One-twelfth (1/12) of the annual Market Rental Rate |
| Second Extension Term | | |
| 21-25 | The Market Rental Rate as determined pursuant to the provisions of Section [8] hereof | One-twelfth (1/12) of the annual Market Rental Rate |

O  **ADDITIONAL RENT:** All costs and charges other than Minimum Rent and Percentage Rent payable by Tenant to Landlord pursuant to the provisions of this Lease

P.  **PERCENTAGE RENT:** See Section [6] hereof

Q.  **BASE TAX YEAR:** July 1, 2010 through and including June 30, 2011

R.  **DEFAULT RATE:** One and one-half percent (1.5%) per month, but in no event higher than the maximum rate permitted by law.

S.  **PERMITTED USES:** Subject to Section [15] hereof, **Exhibit F** hereto and as may otherwise be provided in this Lease, any general retail use, including the display and sale of apparel, shoes and accessories, gifts, cards, furniture, home furnishings, housewares, pre-packaged food and food stuffs for off-premises consumption (in accordance with the Operating Standard, as defined below), plants, fresh and dried flowers, pots, containers

- II -

GREEN 521 FIFTH AVENUE LLC
c/o SL Green Realty Corp.
420 Lexington Avenue
New York, New York 10170

July __, 2010

Mr. Hector Pacheco
Senior Development Manager,
  Architecture & Design
Urban Outfitters, Inc.
5000 South Broad Street
Building 12
Philadelphia, PA  19112

Re:   Lease between Urban Outfitters, Inc. and Green 521 Fifth Avenue,
LLC (the "Lease") for "Premises" at 521 Fifth Avenue, New York,
New York

Dear Hector:

Reference is hereby made to the Lease.  Terms not otherwise defined herein shall
have the same meanings ascribed to them in the Lease.

Landlord is in receipt of the letter from you dated June 30, 2010, relating to
substantial completion of Landlord's Work ("Landlord's Work Letter").  This letter shall
confirm the agreement of Landlord and Tenant that, notwithstanding that Landlord's
Work has been completed in accordance with the terms of the Lease, the following punch
list items shall be performed by Landlord in the Premises:

1.      Landlord shall, promptly upon receipt of notice from Tenant, repair any gaps,
floor penetrations or similar damage to the concrete floor slab, provided that
any such gaps, penetrations and/or damage were not caused by Tenant;

2       Landlord shall, prior to the Commencement Date, perform any repairs
necessary to make the elevator within the Premises operational and shall
provide Tenant with reasonable documentation (such as, by way of example,
an inspection certificate) evidencing that the elevator has been properly
repaired; and

3.      Landlord shall not be able to sever the existing Class E notifier alarm system
for the Premises from the Building system, pursuant to Paragraph II.13.d. of
Exhibit C to the Lease, as doing so would be a code violation.

Landlord and Tenant acknowledge and agree that, other than as expressly set forth
herein, Landlord shall have no obligation to perform any other work referenced in the

Landlord Work Letter; provided, however, this letter is not intended to alter the rights and responsibilities of Landlord or Tenant, as set forth in the Lease

Kindly evidence your acknowledgement of the foregoing, and that an executed counterpart of this letter sent by facsimile shall be binding upon the parties, by executing a counterpart of this letter where indicated below and returning an executed copy to the attention of Kathleen A Crocco, Esq. via facsimile at (646) 293-1370, with the original document to follow by overnight mail to the above address. Please feel free to contact us with any questions.

Sincerely,

Green 521 Fifth Avenue LLC

Name:
Title:

Steven M. Durels
Executive Vice President,
Director of Leasing and Real Property

Acknowledged and Agreed:

Urban Outfitters, Inc.

Name: Glen T. Senk
Title: Chief Executive Officer

cc: Austin S. Faberman, Esq.

PHBF/ 765911 2

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

This AGREEMENT made as of the 30th day of ____June____, 2010, by and between URBAN OUTFITTERS, INC., a Pennsylvania corporation, having an address at 5000 South Broad Street, Philadelphia, Pennsylvania 19112 (hereinafter referred to as "Lessee") and ANGLO IRISH BANK CORPORATION LIMITED, formerly known as Anglo Irish Bank Corporation plc, a private limited company incorporated under the laws of Ireland, having its principal place of business at Stephen Court, 18/21 St. Stephen's Green, Dublin 2, Ireland (hereinafter referred to as "Mortgagee", and in Mortgagee's capacity as Agent for the Lenders)

WHEREAS, Mortgagee made a loan to 104-521 Fee LLC and 300-521 Fee LLC, each a Delaware limited liability company (collectively, the "Borrower"), secured by a certain Mortgage Consolidation and Modification Agreement, dated as of April 7, 2006, and recorded in the Office of the City Register, New York County on June 1, 2006 as CRFN# 2006000305808, as amended by that certain First Amendment to Mortgage Consolidation and Modification Agreement, dated as of January 2, 2008, and recorded in the Office of the City Register, New York County on March 19, 2008 as CRFN# 2008000112515 (collectively, the "Security Agreement"), on land owned by Lessor located at 521 Fifth Avenue in City of New York, New York County, State of New York (the "Premises"), upon which is situated an office building with attendant retail uses (hereinafter referred to as the "Building"). Any and all capitalized terms as used herein and not otherwise specifically defined shall have the same meaning herein as in the Security Agreement;

WHEREAS, Borrower has leased the entire Premises to Green 521 Fifth Avenue LLC (hereinafter referred to as "Lessor") pursuant to that certain operating lease, dated as of March 10, 2006, between Borrower, as landlord, and Lessor, as tenant, which operating lease provides that Lessor would be responsible for the day to day operation and management of the Premises; and

WHEREAS, Lessee has entered into a written lease, dated June 30, 2010 (the "Lease") with Lessor for a portion of the Building located on the ground floor and second floor, containing approximately 25,866 square feet of space (the "Demised Premises").

NOW, THEREFORE, in consideration of the mutual covenants herein contained, Lessee and Mortgagee do hereby agree as follows:

1.    Lessee and Mortgagee hereby consent and agree that:

(a)    the lien of the Lease shall be, and the same hereby is, made subordinate in each and every respect to the lien of the Security Agreement and to all advances made thereunder and to all extensions, renewals and modifications thereof and amendments thereto; and

(b)    any of the foregoing notwithstanding, if the interests of Lessor in the Premises shall be acquired by Mortgagee by reason of foreclosure of the Security Agreement or other proceedings brought to enforce the rights of Mortgagee, by deed in lieu of foreclosure or by any other method, or acquired by any other purchaser or purchasers pursuant to a foreclosure

sale (Mortgagee or such purchaser(s), as the case may be, being referred to as "Purchaser"), (i) the Lease and the rights of Lessee thereunder shall continue in full force and effect and shall not be terminated or disturbed, except in accordance with the terms of the Lease, and (ii) Mortgagee will not join Lessee as a party defendant in any action or proceeding to foreclose the Security Agreement for the purpose of terminating the Lease. Lessee shall be bound to Purchaser, and Purchaser shall be bound to Lessee, under all of the terms, covenants, and conditions of the Lease for the balance of the term thereof remaining, and any extensions or renewals thereof which may be effected in accordance with any option therefor contained in the Lease, with the same force and effect as if Purchaser were the lessor under the Lease; provided that:

(i)     Lessee is not in default, beyond the expiration of any applicable grace or notice period, under any provision of the Lease or this Agreement at the time Mortgagee exercises any such right, remedy, or privilege;

(ii)    the Lease at that time is in force and effect according to its original terms or with such amendments or modifications as Mortgagee shall have approved as provided below;

(iii)   Lessee thereafter continues to fully and punctually perform all of its obligations under the Lease without default thereunder beyond the expiration of any applicable grace or notice period, and

(iv)    Lessee attorns to Purchaser as provided below; and

(c)     in the event of any foreclosure of the Security Agreement by Mortgagee, its successors or assigns, or at the request of Mortgagee at any time pursuant to the assignment of the Lease to Mortgagee, Lessee will recognize Mortgagee, its successors and assigns, as the new lessor under the Lease and will attorn to and continue to be bound by each and every term of the Lease; and upon such attornment, the Lease and the rights of Lessee shall continue in full force and effect as if it were a direct Lease between Mortgagee, or any Purchaser, and Lessee upon all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining; provided however, Mortgagee, or any Purchaser, shall not be:

(i)     liable for any act or omission of any prior landlord (including Lessor) unless of a continuing nature and provided Mortgagee has received notice of such act or omission pursuant to Paragraph 5 below, or

(ii)    subject to any offsets or defenses which Lessee might have against any prior landlord (including Lessor); provided, however, Mortgagee or such Purchaser shall be bound by any offset or defense which may arise from any default of any landlord (including Lessor) which Mortgagee received notice of

pursuant to Paragraph 5 below, but failed to cure in accordance with such Paragraph 5; or

(iii)      bound by any rent or additional rent which Lessee might have paid for more than one (1) month in advance to any prior landlord (including Lessor); or

(iv)      bound by any material amendment or modification of the Lease without Mortgagee's written consent; or

(v)      liable for any security deposit or other sums held by any prior landlord (including Lessor) not actually received by Mortgagee, or

(vi)      required to rebuild or repair the Building or any part thereof in the event of casualty damage to or condemnation of any material portion of the Building or the Demised Premises (provided, however, that if Lessor is required to do so under the Lease, and Mortgagee or Purchaser elects not to fulfill such obligation, Tenant shall have the right, within sixty (60) days of receipt of written notice from Mortgagee or Purchaser stating its election not to fulfill such obligation, to terminate the Lease); or

(vii)      required, or liable for any obligation of Lessor under the Lease, to complete construction of or improvements to the Demised Premises and/or the Building (which limitation shall not apply to Lessor's maintenance and repair obligations); and

(d)      Mortgagee may at any time unilaterally subordinate (or cause to be subordinated) the lien of the Security Agreement on the Premises to the Lease.

2.      Lessee hereby: (a) acknowledges receipt of notice that pursuant to an Assignment of Leases and Rents from Lessor, all leases and rents involving the Building, including the Lease of Lessee, are assigned to Mortgagee as security for its loan; (b) acknowledges that it has received no notice of any sale, transfer or assignment of the Lease or of rentals thereunder, by Lessor, other than pursuant to said Assignment of Leases and Rents; and (c) agrees that it will not join in any material change or modification of the Lease, anticipate rentals thereunder or agree to terminate the Lease or surrender said Demised Premises (except pursuant to any express rights under the Lease), without the prior written consent of Mortgagee.

3.      Lessee hereby agrees that upon Mortgagee's demand, it will make all payments of rent then and thereafter due to Lessor directly to Mortgagee and not to Lessor or any independent rental agent which Lessor might at any time utilize.

4.      Lessee hereby agrees that the interest of the Lessor in the Lease has been assigned to Mortgagee solely as security for the purposes indicated in the said instrument of assignment,

and that, until such time as Mortgagee has taken possession of the Premises and exercised its rights under said Assignment, Mortgagee assumes no duty, liability or obligation whatever under the Lease, or any extension or renewal thereof, by virtue of said assignment.

5.       Lessee hereby: (a) agrees to notify Mortgagee, its successors and assigns, in writing at the notice address set forth above for Mortgagee, or at any other address specified in writing to Lessee, of any default on the part of Lessor under the Lease; and (b) grants to Mortgagee, its successors and assigns, the right and opportunity to cure any such default within the same grace period as is given to Lessor for remedying such default, plus, in each case, an additional period of thirty (30) days after the later of (i) the expiration of such grace period, or (ii) the date on which Lessee has served notice of such default upon Mortgagee, its successors or assigns.  Lessee's failure to so notify Mortgagee shall not constitute a default by Lessee, however, Lessee acknowledges that Mortgagee shall not be bound by any action taken on Lessee's behalf with respect to Lessor's default unless and until Mortgagee receives such notice and opportunity to cure such default.

6.       Any notice, request, demand, statement or consent made hereunder shall be in writing and shall be deemed to have been duly given upon receipt if delivered by hand (by professional messenger service) or two business days after the same is mailed, by registered mail, return receipt requested, postage prepaid, or one business day after the same is sent by a nationally recognized courier service that regularly maintains records of items picked up and delivered, as follows:

If to Lessee:

Urban Outfitters, Inc.
5000 South Broad Street
Philadelphia, PA  19112
Attention: General Counsel

If to Lessor:

Green 521 Fifth Avenue, LLC
420 Lexington Avenue
New York, NY  10170
Attention: Director of Leasing

If to Mortgagee:

Anglo Irish Bank Corporation Limited
Stephen Court
18/21 St. Stephen's Green
Dublin 2, Ireland
Attn: Paula O'Reilly

Copy by ordinary
first class mail to:

> Anglo Irish New York Corporation
> 222 East 41st Street, 24th Floor
> New York, New York 10017
> Attn: Kevin Kelly, Vice President

> and

> Sullivan & Worcester LLP
> 1290 Avenue of the Americas, 29th Floor
> New York, New York 10104
> Attn: Karen M. Kozlowski, Esq.

7.      This Agreement shall be binding upon and shall inure to the benefit of Lessee and Mortgagee and their respective heirs, executors, administrators, successors and assigns, as the case may be.

8.      Each person executing this Agreement on behalf of Lessee, Mortgagee and Lessor, respectively, has the full power, authority and legal right to execute this Agreement on behalf of such party.

9.      This Agreement may not be modified, amended, changed or terminated except by an agreement in writing signed by all the parties hereto.

10.      This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

11.      This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts or choice of laws principles.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, under seal, as of the day and year first written above.

LESSEE.

URBAN OUTFITTERS, INC

By:

Name: Glen T. Senk

Title: Chief Executive Officer

LESSOR.

GREEN 521 FIFTH AVENUE LLC

By:

Name: Steven M. Durels

Title Executive Vice President,
Director of Leasing and Real Property

MORTGAGEE·

ANGLO IRISH BANK CORPORATION LIMITED

By:

Name: Dominick D. Scali

Title: Vice President

COMMONWEALTH OF PENNSYLVANIA:
: SS:
COUNTY OF PHILADELPHIA        :

ACKNOWLEDGMENT

On the 30ᵗʰ day of _June_____, in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared __Glen Tsak__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her individual and/or corporate capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument. [LESSEE]

Notary Public

NOTARIAL SEAL
MEREDITH L BOICE
Notary Public
PHILADELPHIA CITY, PHILADELPHIA COUNTY
My Commission Expires Feb 16, 2011

STATE OF _New York_____       :
: SS:
COUNTY OF _New York_

ACKNOWLEDGMENT

On the 12ᵗʰ day of _July_____, in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared Steven M Dueas personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her individual and/or corporate capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument [LESSOR]

Notary Public

LISA MANNING
Notary Public, State of New York
No 4846914
Qualified in Westchester County
Commission Expires December 31, 20/5

{N0175988. 1}
PHBF/ 757018 5

STATE OF ___*New York*___ :
: SS
COUNTY OF ___*New York*___ :

ACKNOWLEDGMENT

On the 2ⁿᵈ day of *August*___, in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared *Danniele Scali* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her individual and/or corporate capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument. [MORTGAGEE]

_____
Notary Public

ALEXANDER S. MEJEAN
Notary Public, State of New York
No 01ME6165451
Qualified in New York County
Commission Expires May 7, 2011