EXHIBIT "A"

Land

ALL that certain plot, piece of parcel of land, situate, lying and being in the Borough of
Manhattan, County of New York, City and State of New York, known as and by Lot Nos 2, 3, 4,
5, 6, 7 and 8 on "Map of Property in the 19th Ward, belonging to the heirs of Isaac Burr,
deceased, surveyed by Isaac T Ludlam, C.S. with other property", together bounded and
described as follows:

BEGINNING at the northeasterly corner of Fifth Avenue and 43rd Street,

RUNNING THENCE Northerly along the easterly side of Fifth Avenue, 104 feet,

THENCE Easterly parallel with 43rd Street, 150 feet;

THENCE Southerly and parallel with Fifth Avenue, 3 feel 7 inches to the center line of the
block,

THENCE Easterly parallel with 43rd Street, 34 feel 4 inches,

THENCE Southerly parallel with Fifth Avenue, 100 feet 5 inches to the northerly side of 43rd
Street and

THENCE Westerly along 43rd Street, 184 Feet 4 inches to the point or place of BEGINNING

A-1

EXHIBIT "B"

Leased Space

(Attached)

PHBF/ 739688 8





521 5TH AVENUE
2ND FLOOR

43RD STREET

CHILLER PLANT



SL GREEN REALTY CORP.
420 LEXINGTON AVENUE
NEW YORK N.Y. 10170
(212) 594-2700

B-2

PHBF/ 739688 8



B-3

EXHIBIT "C"

Landlord's Work

I    Delivery of Leased Space

    1    The delivery of the Leased Space free and clear of any and all hazardous substances pertaining to the environment, including but not limited to asbestos and asbestos-containing materials (encapsulated or not), toxic and non-toxic molds, radon, and transformers containing or contaminated by PCBs, whether or not presently regulated under any Laws   Landlord shall provide an ACP-5 report as required by the governing jurisdiction

    2    The delivery of the Leased Space in compliance with all applicable Laws, including but not limited to those concerning handicapped accessibility   Tenant acknowledges that Landlord is only responsible for ADA compliance up to and outside of the lease line of the Leased Space in its existing condition

    3    Delivery of possession of the Leased Space to Tenant, broom swept, and free of all machinery, equipment, and fixtures   Landlord shall provide fully demised Leased Space with studs extending to the underside of the roof deck or the floor above   Any proposed or future Landlord-installed interior utility lines, conduit, flexible conduit, BX conduit, pipes, ducts, shafts and chases within the Leased Space shall be located tight to the deck above, layout and location to be approved by Tenant acting in a reasonable manner.

II    Vanilla Shell Construction Requirements

    1    Floor

        a    Landlord shall provide a substantially smooth, level at a single elevation on the upper floor, and clean concrete slab for the entire Leased Space   Tenant acknowledges the three existing level changes on the ground floor, as well as ramp condition at the existing Leased Space entrance

        b.    Landlord shall be responsible for assuring that the floor, on all levels, is designed to meet the governing building code load requirements of Tenant for (i) retail use, and (ii) full height stock room/storage use

    2    Elevator

        a    Landlord shall provide the existing passenger elevator assembly, in good working order and free of any material defect, with all necessary and current certification and inspection certificates

PHBF/ 739688 8

3    Cut-outs

    a    Tenant shall be responsible for the infill of the existing stair cutout and removal of the existing staircase. Tenant shall also be responsible for the installation of Tenant's grand staircase, to Tenant's design and specifications, and which shall not constitute an egress staircase.

4    Walls

    a.    Interior Demising Walls - the delivery of the Leased Space fully demised with all demising walls  All walls throughout Leased Space sheathed on Tenant-side, and repaired to good condition with like materials, extending to the underside of the roof deck on the floor above, unless otherwise directed by Tenant in writing

    b.    All demising walls (interior and exterior) shall substantially be true and plumb.

5.    Watertightness

    a.    All levels, if more than one, including those at grade and below grade, are to be watertight. All penetrations through the upper floor ceiling deck to be watertight with no insulation (foam or otherwise) visible within the Tenant's Leased Space

6    Utilities

    a.    Provide to the Leased Space and install, or cause to be installed, separate sub-meters or for utilities and services to be used or consumed on the Leased Space by Tenant, including, but not limited to, electric and water

7    Electrical

    a    Landlord shall provide existing conduit for Tenant's electrical service (1600A 3PH 120/208V), with existing feeder wires pulled from a meter room identified on the site plan to the existing panels within the Leased Space, with meter socket identified by a meter socket number and capacity per Tenant's electrical service, and unrestricted access provided to Tenant upon request

8.    Telephone / Data

    a    Landlord shall provide the existing conduit from Telephone Company switching equipment location to the Leased Space for Tenant's use

C-2

9       Heating, Ventilation and Air-Conditioning (HVAC)

    a       Landlord shall provide existing HVAC units to provide Tenant with a
tonnage of 85 tons, with 35 tons serving the ground floor and 50 tons
serving the upper floor

    b       Landlord shall provide within the Building, existing access for connection
points for any necessary or code-required chases, shafts or exhausts

    c       Landlord shall provide low-pressure steam to the Leased Space, in
sufficient capacity to operate the existing perimeter radiators

10      *Plumbing*

    a       Sewer - Landlord shall provide the existing sanitary sewer line within the
Leased Space   Tenant shall be responsible for the tie-in to the sewer lines
Landlord represents that the sewer line is in good working order and free
of obstructions

    b       Water - Landlord shall provide the existing domestic water service within
the Leased Space with sufficient capacity for Tenant's use

    c       Vent Connection Points - Landlord shall provide within the Leased Space
connection points for sanitary vents, fresh air intakes, and rest room
exhaust fans

11      Storefront.

    a       Subject to the next paragraph, storefront façade constructed for attachment
of Tenant's storefront, including but not limited to all bulkheads, soffits,
neutral pier and intermediate Landlord column finishes   Provide
dimensions of the rough openings and façade (solid portions of the
building exterior) to Landlord design finishes, including but not limited to,
sign bands, neutral piers, parapets, etc

    b       Landlord shall provide the existing storefront and facade on the upper
floor, in good condition, free of any leaks, and free of any material defect

    c.      Second means of egress – Landlord shall supply a second means of egress
and full door assembly for each floor of the Leased Space shell condition,
in compliance with all laws and egress and accessibility requirements

12      Structure

    a       Landlord shall ensure that the existing structure, both in the Leased Space
and adjacent dependent structure, is structurally sound, and meets or

PHBF/ 739688 8

exceeds all applicable and governing structural code requirements, including as same relate to seismic reinforcement

b.    Any modifications to the existing structure, including seismic bracing, required to maintain compliance with local or governmental codes, shall be performed by Landlord at its sole cost and expense prior to Tenant taking possession of the Leased Space, unless an alternative schedule is mutually agreed-upon by Landlord and Tenant in writing

c    Tenant's only responsibility for structural improvements or reinforcement to the Leased Space shall be that which arises from Tenant's modification of the existing structural elements of the Leased Space

13    Fire Requirements and Life-Safety Systems.

a.    Scope - Any fire separation work (e g  mixed-use buildings), fire rated construction or fireproofing of any kind for the retail building shell condition shall be at Landlord's expense

b    Fire Suppression System - Landlord to provide the existing fire sprinkler system to the Leased Space, in accordance with New York Department of Building and Fire code requirements, inclusive of a sprinkler riser and main trunk  Tenant shall be responsible for the modification of the existing distribution grid, and upright heads to provide the required sprinkler coverage for the Leased Space

c    Modifications to Landlord's Fire Sprinkler System - If Landlord requires Tenant to use a designated sprinkler contractor, then Landlord will guarantee that said contractor's rates and fees are comparable to equivalent contractors in the area  Tenant may provide alternative bid pricing to Landlord for review against Landlord's subcontractor rates, with approval not to be unreasonably withheld

d    Landlord shall provide Tenant with the existing Class E notifier fire alarm system, which shall not be tied to the building

C-4

Exhibit "D"

Acoustical Specifications

[Attached]

PHBF/ 739688 8



# ROBERT A. HANSEN ASSOCIATES, INC
## ACOUSTICAL / AUDIO / VIDEO CONSULTANTS

Revised: June 28, 2010
Project No.: 5278

SUBJECT    Acoustical Work Letter for Tenant Lease

PROJECT.    1st and 2nd Floor Retail Tenant – Urban Outfitters
521 Fifth Avenue
New York, NY

ATTN·    Nancy Merriman – SL Green

FROM    Robert Lee

I    Acoustical Design Criteria

The Tenant agrees to achieve the following acoustical design criteria established
for airborne noise levels attributable to the operation of the music sound system

A    Airborne Intrusive Noise

1.    The Tenant agrees to limit noise transmission in Tenant's space to
limits as listed in Table A. The Tenant agrees that operation of
music sound system shall not exceed the following decibel levels
within their space   Note that the decibel levels indicated below are
C-weighted and represent the average sound levels produced by
the speakers as measured 1 meter away from them·

### Table A
#### Permissible Sound Pressure Levels – Own Space

| Octave Bands Center Frequency (Hz) | Maximum Peak SPL in dB |
|---|---|
| 31 5 | 74 |
| 63 | 77 |
| 125 | 80 |
| 250 | 77 |
| 500 | 74 |
| 1000 | 71 |
| 2000 | 68 |
| 4000 | 65 |
| 8000 | 62 |

2   The Tenant also agrees to limit noise transmission into other tenant spaces to limits as listed in Table B.  The Tenant agrees that operation of music sound system shall not exceed the following decibel levels within other tenant spaces, exclusive of competing noises and sounds:

### Table B
#### Permissible Sound Pressure Levels – Other's Space

| Octave Bands Center Frequency (Hz) | Maximum Peak SPL in dB |
|---|---|
| 31 5 | 54 |
| 63 | 54 |
| 125 | 44 |
| 250 | 37 |
| 500 | 31 |
| 1000 | 27 |
| 2000 | 24 |
| 4000 | 22 |
| 8000 | 21 |

B.   <u>Acoustical Control Measures - Music Sound System</u>

The Tenant agrees to implement the following noise control measures

1.   *Loudspeakers are not permitted to be mounted on the ceiling nor suspended from the ceiling structure   Loudspeakers shall be either floor mounted or wall mounted. If wall mounted, vibration isolation resilient mounting hardware shall be installed to isolate structureborne sound energy transmission by a minimum of 95 percent isolation efficiency. In addition separate bass, or subwoofer, loudspeakers are not permitted to be wall mounted These are permitted to be floor mounted.  Wall mounted speakers shall be frequency band limited to 125 Hz and above*

2.   The frequency response of the music sound system shall be calibrated and tuned to eliminate undesirable acoustical peaks and balanced for a uniform frequency response, particularly in the bass frequency region of 250 Hz and lower.  A One-third Octave Band Graphic Equalizer shall be installed and professionally equalized using a calibrated pink noise source and spectrum analyzer / sound level meter.  *The equalizer shall also have adjustable high pass filtering capability to permit further attenuation of low frequency energy below 100 Hz.*



ROBERT A  HANSEN ASSOCIATES, INC
ACOUSTICAL / AUDIO / VIDEO CONSULTANTS
124 EAST 40th STREET  NEW YORK  NY 10016

3.     To ensure continual acoustical isolation, the Tenant must install an automatic audio device to monitor and control the transmission of music sound levels. This shall be accomplished by installing a Compressor/Limiter device at the input of the Audio Power Amplifier and adjusting the sound system source input volume controls to regulate the overall loudness levels To prevent tampering by unauthorized persons, the controls for the Compressor/Limiter and the Audio Power Amplifier shall be covered with locked security panels

3 of 3

RAH ASSOCIATES

ROBERT A HANSEN ASSOCIATES, INC
ACOUSTICAL / AUDIO / VIDEO CONSULTANTS
124 EAST 40th STREET  NEW YORK  NY 10016

Exhibit "E"

[Approved Tenant Signage]


(Attached)





EXHIBIT "F"

## Prohibited Uses

"Prohibited Uses" shall mean any one or more of the following uses.

(a)   food or beverage sales (except as expressly permitted as part of the Permitted Use);

(b)   a bowling alley;

(c)   a billiard or bingo parlor,

(d)   a flea market,

(e)   a massage parlor,

(f)   a funeral home,

(g)   a facility for the sale of paraphernalia for use with illicit drugs,

(h)   a facility for the sale or display of pornographic material,

(i)   an off-track betting parlor,

(j)   a carnival, amusement park or circus,

(k)   a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (k)),

(l)   a facility for the sale of new or used motor vehicles, trailers or mobile homes,

(m)   a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with a Class-A office building have a retail component in the Midtown Manhattan submarket, the parties hereby agreeing that the UO Use is not inconsistent with such a Class-A office building;

(n)   a skating rink,

(o)   an arcade, pinball or computer game room (provided, however, the inclusion of one or more video game machines as a novelty as a part of the operation of the UO Use shall not be prohibited),

(p)   service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments);

(q)   a banquet hall, auditorium or other place of public assembly,

(r)   a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers),

(s)   a theater of any kind,

(t)   a facility for the sale or rental of used goods (including thrift shops, secondhand or consignment stores) or any facility selling new or used merchandise as a wholesale operation, a liquidation operation, odd lots, lot sales, factory close-outs or imperfect goods,

(u)   a gymnasium, sport or health club or spa,

(v)   hotel or residential facility, or

(w)   a drug store or variety store with a prescription drug department or facility

EXHIBIT "G"

Non-Disturbance Agreement

(Attached)

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

This AGREEMENT made as of the ___ day of _____, 2010, by and between URBAN OUTFITTERS, INC , a Pennsylvania corporation, having an address at 5000 South Broad Street, Philadelphia, Pennsylvania 19112 (hereinafter referred to as "Lessee") and ANGLO IRISH BANK CORPORATION LIMITED, formerly known as Anglo Irish Bank Corporation plc, a private limited company incorporated under the laws of Ireland, having its principal place of business at Stephen Court, 18/21 St. Stephen's Green, Dublin 2, Ireland (hereinafter referred to as "Mortgagee", and in Mortgagee's capacity as Agent for the Lenders)

WHEREAS, Mortgagee made a loan to 104-521 Fee LLC and 300-521 Fee LLC, each a Delaware limited liability company (collectively, the "Borrower"), secured by a certain Mortgage Consolidation and Modification Agreement, dated as of April 7, 2006, and recorded in the Office of the City Register, New York County on June 1, 2006 as CRFN# 2006000305808, as amended by that certain First Amendment to Mortgage Consolidation and Modification Agreement, dated as of January 2, 2008, and recorded in the Office of the City Register, New York County on March 19, 2008 as CRFN# 2008000112515 (collectively, the "Security Agreement"), on land owned by Lessor located at 521 Fifth Avenue in City of New York, New York County, State of New York (the "Premises"), upon which is situated an office building with attendant retail uses (hereinafter referred to as the "Building"). Any and all capitalized terms as used herein and not otherwise specifically defined shall have the same meaning herein as in the Security Agreement,

WHEREAS, Borrower has leased the entire Premises to Green 521 Fifth Avenue LLC (hereinafter referred to as "Lessor") pursuant to that certain operating lease, dated as of March 10, 2006, between Borrower, as landlord, and Lessor, as tenant, which operating lease provides that Lessor would be responsible for the day to day operation and management of the Premises, and

WHEREAS, Lessee has entered into a written lease, dated _____, 2010 (the "Lease") with Lessor for a portion of the Building located on the ground floor and second floor, containing approximately 25,866 square feet of space (the "Demised Premises")

NOW, THEREFORE, in consideration of the mutual covenants herein contained, Lessee and Mortgagee do hereby agree as follows

    1      Lessee and Mortgagee hereby consent and agree that

       (a)     the lien of the Lease shall be, and the same hereby is, made subordinate in each and every respect to the lien of the Security Agreement and to all advances made thereunder and to all extensions, renewals and modifications thereof and amendments thereto, and

       (b)     any of the foregoing notwithstanding, if the interests of Lessor in the Premises shall be acquired by Mortgagee by reason of foreclosure of the Security Agreement or other proceedings brought to enforce the rights of Mortgagee, by deed in lieu of foreclosure or by any other method, or acquired by any other purchaser or purchasers pursuant to a foreclosure

sale (Mortgagee or such purchaser(s), as the case may be, being referred to as "Purchaser"), (i) *the Lease and the rights of Lessee thereunder shall continue in full force and effect and shall not* be terminated or disturbed, except in accordance with the terms of the Lease, and (ii) Mortgagee will not join Lessee as a party defendant in any action or proceeding to foreclose the Security Agreement for the purpose of terminating the Lease.  Lessee shall be bound to Purchaser, and Purchaser shall be bound to Lessee, under all of the terms, covenants, and conditions of the Lease for the balance of the term thereof remaining, and any extensions or renewals thereof which may be effected in accordance with any option therefor contained in the Lease, with the same force and effect as if Purchaser were the lessor under the Lease, provided that

       (i)      Lessee is not in default, beyond the expiration of any applicable grace or notice period, under any provision of the Lease or this Agreement at the time Mortgagee exercises any such right, remedy, or privilege;

       (ii)     the Lease at that time is in force and effect according to its original terms or with such amendments or modifications as Mortgagee shall have approved as provided below,

       (iii)    Lessee thereafter continues to fully and punctually perform all of its obligations under the Lease without default thereunder beyond the expiration of any applicable grace or notice period, and

       (iv)    Lessee attorns to Purchaser as provided below, and

     (c)     in the event of any foreclosure of the Security Agreement by Mortgagee, its successors or assigns, or at the request of Mortgagee at any time pursuant to the assignment of the Lease to Mortgagee, Lessee will recognize Mortgagee, its successors and assigns, as the new lessor under the Lease and will attorn to and continue to be bound by each and every term of the Lease; and upon such attornment, the Lease and the rights of Lessee shall continue in full force and effect *as if it were a direct Lease between Mortgagee, or any Purchaser, and Lessee upon all* of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining; provided however, Mortgagee, or any Purchaser, shall not be

       (i)      liable for any act or omission of any prior landlord (including Lessor) unless of a continuing nature and provided Mortgagee has received notice of such act or omission pursuant to Paragraph 5 below, or

       (ii)     subject to any offsets or defenses which Lessee might have against any prior landlord (including Lessor), provided, however, Mortgagee or such Purchaser shall be bound by any offset or defense which may arise from any default of any landlord (including Lessor) which Mortgagee received notice of

pursuant to Paragraph 5 below, but failed to cure in accordance with such Paragraph 5; or

(iii)    bound by any rent or additional rent which Lessee might have paid for more than one (1) month in advance to any prior landlord (including Lessor); or

(iv)    bound by any material amendment or modification of the Lease without Mortgagee's written consent, or

(v)    liable for any security deposit or other sums held by any prior landlord (including Lessor) not actually received by Mortgagee; or

(vi)    required to rebuild or repair the Building or any part thereof in the event of casualty damage to or condemnation of any material portion of the Building or the Demised Premises (provided, however, that if Lessor is required to do so under the Lease, and Mortgagee or Purchaser elects not to fulfill such obligation, Tenant shall have the right, within sixty (60) days of receipt of written notice from Mortgagee or Purchaser stating its election not to fulfill such obligation, to terminate the Lease), or

(vii)    required, or liable for any obligation of Lessor under the Lease, to complete construction of or improvements to the Demised Premises and/or the Building (which limitation shall not apply to Lessor's maintenance and repair obligations), and

(d)    Mortgagee may at any time unilaterally subordinate (or cause to be subordinated) the lien of the Security Agreement on the Premises to the Lease

2.    Lessee hereby (a) acknowledges receipt of notice that pursuant to an Assignment of Leases and Rents from Lessor, all leases and rents involving the Building, including the Lease of Lessee, are assigned to Mortgagee as security for its loan; (b) acknowledges that it has received no notice of any sale, transfer or assignment of the Lease or of rentals thereunder, by Lessor, other than pursuant to said Assignment of Leases and Rents; and (c) agrees that it will not join in any material change or modification of the Lease, anticipate rentals thereunder or agree to terminate the Lease or surrender said Demised Premises (except pursuant to any express rights under the Lease), without the prior written consent of Mortgagee

3    Lessee hereby agrees that upon Mortgagee's demand, it will make all payments of rent then and thereafter due to Lessor directly to Mortgagee and not to Lessor or any independent rental agent which Lessor might at any time utilize.

4    Lessee hereby agrees that the interest of the Lessor in the Lease has been assigned to Mortgagee solely as security for the purposes indicated in the said instrument of assignment,

and that, until such time as Mortgagee has taken possession of the Premises and exercised its rights under said Assignment, Mortgagee assumes no duty, liability or obligation whatever under the Lease, or any extension or renewal thereof, by virtue of said assignment

5.      Lessee hereby· (a) agrees to notify Mortgagee, its successors and assigns, in writing at the notice address set forth above for Mortgagee, or at any other address specified in writing to Lessee, of any default on the part of Lessor under the Lease, and (b) grants to Mortgagee, its successors and assigns, the right and opportunity to cure any such default within the same grace period as is given to Lessor for remedying such default, plus, in each case, an additional period of thirty (30) days after the later of (i) the expiration of such grace period, or (ii) the date on which Lessee has served notice of such default upon Mortgagee, its successors or assigns  Lessee's failure to so notify Mortgagee shall not constitute a default by Lessee, however, Lessee acknowledges that Mortgagee shall not be bound by any action taken on Lessee's behalf with respect to Lessor's default unless and until Mortgagee receives such notice and opportunity to cure such default

6      Any notice, request, demand, statement or consent made hereunder shall be in writing and shall be deemed to have been duly given upon receipt if delivered by hand (by professional messenger service) or two business days after the same is mailed, by registered mail, return receipt requested, postage prepaid, or one business day after the same is sent by a nationally recognized courier service that regularly maintains records of items picked up and delivered, as follows

If to Lessee

Urban Outfitters, Inc
5000 South Broad Street
Philadelphia, PA  19112
Attention  General Counsel

If to Lessor.

Green 521 Fifth Avenue, LLC
420 Lexington Avenue
New York, NY  10170
Attention. Director of Leasing

If to Mortgagee

Anglo Irish Bank Corporation Limited
Stephen Court
18/21 St. Stephen's Green
Dublin 2, Ireland
Attn: Paula O'Reilly

Copy by ordinary
first class mail to·

      Anglo Irish New York Corporation
      222 East 41st Street, 24th Floor
      New York, New York 10017
           Attn· Kevin Kelly, Vice President

and

      Sullivan & Worcester LLP
      1290 Avenue of the Americas, 29th Floor
      New York, New York 10104
      Attn  Karen M  Kozlowski, Esq

7     This Agreement shall be binding upon and shall inure to the benefit of Lessee and Mortgagee and their respective heirs, executors, administrators, successors and assigns, as the case may be

8     Each person executing this Agreement on behalf of Lessee, Mortgagee and Lessor, respectively, has the full power, authority and legal right to execute this Agreement on behalf of such party

9     This Agreement may not be modified, amended, changed or terminated except by an agreement in writing signed by all the parties hereto

10     This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument

11     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts or choice of laws principles

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, under seal, as of the day and year first written above.

LESSEE

URBAN OUTFITTERS, INC

By._____
Name _____
Title _____

LESSOR·

GREEN 521 FIFTH AVENUE LLC

By _____
Name _____
Title. _____

MORTGAGEE

ANGLO IRISH BANK CORPORATION LIMITED

By· _____
Name _____
Title. _____

COMMONWEALTH OF PENNSYLVANIA
  SS
COUNTY OF PHILADELPHIA          :

ACKNOWLEDGMENT

      On the ___ day of _____, in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her individual and/or corporate capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument [LESSEE]

                                     _____
                                     Notary Public

STATE OF _____
: SS
COUNTY OF _____

ACKNOWLEDGMENT

      On the ___ day of _____, in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her individual and/or corporate capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument. [LESSOR]

                                     _____
                                     Notary Public

STATE OF _____.
  SS
COUNTY OF _____:

ACKNOWLEDGMENT

On the ___ day of _____, in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her individual and/or corporate capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument [MORTGAGEE]

_____
Notary Public

EXHIBIT "H"

Initial Form of Gross Sales Statement

(Attached)

PHBF/ 739688 8

# Percentage Rent Annual Sales Statement

**Property Name**         **Store Name**    Urban –

**Property Address**

**City/State/Zip**

**Landlord Name**

**Landlord Email**                              **Landlord Fax**

| Lease Year | 2009 | | | |
|------------|------------|-------------|------------|-----------|
| Period | Sales Year | Gross Sales | Deductions | Net Sales |
| February | 2009 | | $0 00 | |
| March | 2009 | | $0 00 | |
| April | 2009 | | $0 00 | |
| May | 2009 | | $0 00 | |
| June | 2009 | | $0 00 | |
| July | 2009 | | $0 00 | |
| August | 2009 | | $0 00 | |
| September | 2009 | | $0 00 | |
| October | 2009 | | $0 00 | |
| November | 2009 | | $0 00 | |
| December | 2009 | | $0 00 | |
| January | 2010 | | $0 00 | |

I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THIS IS A TRUE AND CORRECT
STATEMENT OF GROSS RECEIPTS FOR THE MONTHS SHOWN ABOVE IN ACCORDANCE WITH
THE TERMS OF THE LEASE

BY_____DATE_____

NAME _____TITLE_____

Report Version 12      PERUSE







EXHIBIT "I"

Conceptual Storefront Elevation

I-1

EXHIBIT "J"

UTILITIES

Water  2" cold water line serving the 2nd floor restrooms, pantry and slop sink  There are additional wet columns within the space with cold water, sanitary and vents

Electric  1,600 amps (4 disconnect switches @ 400 amps each with 208 service) which shall be submetered at Landlord's cost

Phone  Base building phone service available for the phone closet located on the 2nd floor in Stair C

Steam  Low pressure steam in sufficient capacity to operate the existing perimeter radiators, which shall be submetered at Landlord's cost

J-1

## SCHEDULE 1

## RULES AND REGULATIONS

1.      No animals (other than "guide" dogs), birds, bicycles or vehicles shall be brought into or kept in the Leased Space  The Leased Space shall not be used for manufacturing or commercial repairing or for sale or display of merchandise or as a lodging place, or for any immoral or illegal purpose, nor shall the Leased Space be used for a public stenographer or typist; barber or beauty shop, telephone, secretarial or messenger service, employment, travel or tourist agency; school or classroom, commercial document reproduction, or for any business other than specifically provided for in this Lease  Tenant shall not permit any odors, noise or vibrations to emanate from the Leased Space.  Tenant shall, within ten (10) days after written notice from Landlord, install at its cost and expense, control devices or procedures to eliminate such odors, noise or vibrations (as the case or cases may be) if any  In the event such condition is not remedied within said ten (10) day period, Landlord may, at its sole discretion, either (a) cure such condition and thereafter add the reasonable cost and expense incurred by Landlord therefor to the next monthly rental to become due and Tenant shall pay said amount, as additional rent, or (b) treat such failure on the part of Tenant to eliminate such odors, noise or vibrations (as the case or cases may be) as a material default hereunder entitling Landlord to enforce any or all of the rights and remedies provided for under the terms of this lease, including but not limited to its termination  Landlord shall have the right to enter the Leased Space at any reasonable time, upon reasonable prior notice, to inspect the same and ascertain whether they are clean and free of odors, noise and vibration.  In the event Landlord requires Tenant to install such control devices or procedures to eliminate such odors, noise or vibrations (as the case or cases may be) the material, size and location of such installations shall be subject to Landlord's prior written approval.  Such work shall not be commenced until plans and specifications therefor have been submitted to and approved by Landlord  Canvassing, soliciting and peddling in the Building are prohibited, and each tenant shall cooperate so as to prevent the same  Notwithstanding anything to the contrary set forth herein, Landlord hereby agrees that Tenant shall, at all times, be deemed to be in compliance with this Paragraph, with respect to noise transmission, if Tenant is in compliance with the terms and conditions of the "Acoustical Specifications" attached to this Lease as **Exhibit D.**

2      The toilet rooms and other water apparatus shall not be used for any purposes other than those for which they were constructed, and no sweepings, rags, ink, chemicals or other unsuitable substances shall be thrown therein  Tenant shall not place anything out of doors, windows or skylights, or into hallways, stairways or elevators, nor place food or objects on outside window sills  Tenant shall not obstruct or cover the halls, stairways and elevators, or use them for any purpose other than ingress and egress to or from the Leased Space

3      Tenant shall not place a load upon any floor of the Leased Space in excess of the load per square foot which such floor was designed to carry and which is allowed by law.  Landlord reserves the right to prescribe the weight and position of all safes, file cabinets and filing equipment in the Leased Space.  Business machines and mechanical equipment shall be placed and maintained by Tenant, at Tenant's expense, only with Landlord's consent and in

settings approved by Landlord to control weight, vibration, noise and annoyance. Smoking or carrying lighted cigars, pipes or cigarettes in the elevators of the Building is prohibited

4.      *Tenant shall move any heavy or bulky materials into or out of the Building and* make or receive large deliveries of goods, furnishings, equipment or other items only during such hours and in such manner as Landlord shall approve and in accordance with the Rules and Regulations pertaining thereto, such approval not to be unreasonably withheld, conditioned or delayed. *If any material or equipment requires special handling, Tenant shall employ only* persons holding a Master Rigger's License to do such work, and all such work shall comply with all legal requirements. Landlord reserves the right to inspect all freight to be brought into the Building, and to exclude any freight which violates any rule, regulation or other provision of this Lease

5      Except in accordance with <u>Section [13]</u> of this Lease, no sign, advertisement, notice or thing shall be inscribed, painted or affixed on any part of the Building, without the prior written consent of Landlord.

6.      *No article shall be fastened to, or holes drilled or nails or screws driven into, any* structural portions of the Leased Space.

7      At the termination of this Lease, Tenant shall deliver to Landlord all keys for any portion of the Leased Space or Building. Before leaving the Leased Space at any time, Tenant shall close all windows and close and lock all doors

8      [Intentionally Omitted]

9      [Intentionally Omitted]

10      The use in the Leased Space of auxiliary heating devices, such as portable electric heaters, heat lamps or other devices whose principal function at the time of operation is to produce space heating, is prohibited

11      *Tenant shall keep all doors from any interior Building hallway to the Leased* Space closed at all times except for use during ingress to and egress from the Leased Space Tenant acknowledges that a violation of the terms of this paragraph may also constitute a violation of codes, rules or regulations of governmental authorities having or asserting jurisdiction over the Leased Space, and Tenant agrees to indemnify Landlord from any fines, penalties, claims, action or increase in fire insurance rates which might result from Tenant's violation of the terms of this paragraph

12.      [Intentionally Omitted]

13      *Tenant will be entitled to three (3) listings on the Building lobby directory board,* without charge. Any additional directory listing (if space is available), or any change in a prior listing, with the exception of a deletion, will be subject to a fourteen ($14 00) dollar service charge, payable as Additional Rent.

14      In case of any conflict or inconsistency between any provisions of this Lease and any of the rules and regulations as originally or as hereafter adopted, the provisions of this Lease shall control