EXHIBIT A-1

Alta Plain
Language Commitment

**OR-9533667**
TITLE OFFICER - HUETER

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF FULLERTON,** DESCRIBED AS FOLLOWS:

ALL OF BLOCKS 1 AND 2 IN THE PFENINGER TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 7, PAGE 26 OF MISCELLANEOUS MAPS, IN THE OFFICE OF SAID COUNTY.

## EXHIBIT "A-2"

PERMISSIBLE BUILDING AREAS
(See Attached)

EXHIBIT A-2

## Permissible Building Areas



"New Building"
Location

## EXHIBIT "A-3"

### REMAINING AREAS
(See Attached)

EXHIBIT "A-3"

Remaining Areas which Landlord
Shall be Obligated to Reconstruct













## EXHIBIT "B"

## INDEX OF DEFINITIONS

| **Term** | **Paragraph where defined** |
| --- | --- |
| Assessment(s) | Exh. "C", para. 1(a) |
| Base Rent | 4(a) |
| Building | 2 |
| CAM Charges | 7(b) |
| CAM Year | 7(c) |
| Certificate | 15(a)(i) |
| City | 1 |
| Commencement Date | 4 |
| Common Area Easement | 6(d) |
| Common Area Maintenance | 7(a) |
| Common Areas | 7(a) |
| Concept Plans | Exh. "C", para. 2(b) |
| Construction Term | 3 |
| CPI-U | 4(a)(iii) |
| Date of Taking | 16(a) |
| Default Rate | 9(b) |
| Delivery of the Land | Exh. "C", para. 1(b) |
| Demolition Deadline | Exh. "C", para. 3(a) |
| Earthquake Insurance | 14(a) |
| Escrow Agent | 15(a)(i) |
| Event of Default (Landlord) | 31 |
| Event of Default (Tenant) | 29 |
| Foreclosure | 21(a) |
| Grading Plans | Exh. "C", para. 1(b) |
| Ground Lessor | 21(a) |
| Hazardous Substances | Exh. "C", para. 1(a) |
| Improvements | 2 |
| Land | 1 |
| Landlord | Introduction |
| Landlord's Premises | 1 |
| Landlord Work | Exh. "C", para. 1(d) |

| Term | Paragraph where defined |
|------|-------------------------|
| Lease Year | 3 |
| Main Portion | 19(a)(viii) |
| Main Term | 3 |
| Modified Proctor | Exh. "C", para. 2(a) |
| Mortgage | 21(a) |
| Mortgagee | 21(a) |
| Option Periods | 3 |
| Other Improvements | 2 |
| Permissible Building Areas | Exhibit "A" |
| Permitted Title Encumbrances | Exhibit "F-2" |
| Person | 20 |
| Personalty | 23 |
| Plans and Specifications | Exh. "C", para. 2(b) |
| Premises | 1 |
| Rear Portion | 19(a)(viii) |
| Real Estate Taxes | 9(a) |
| Remaining Areas | 15(a)(3) |
| Renewal Option | 3 |
| Shopping Center | 1 |
| Site Covenants | 19(a)(ix) |
| Site Work | Exh. "C", para. 1(b) |
| Site Plan | 1 |
| Staging Area | 6(a) |
| State | 1 |
| Substantial Completion | Exh. "C", para. 2(e) |
| Substantially All of the Premises | 16(a) |
| Successor | 22 |
| Taking | 16(a) |
| Tax Parcel | 9(b) |
| Tenant | Introduction |
| Tenant Improvement Allowance | Exh. "C", para. 3 |
| Tenant's Preferred Area | Exhibit "A" |
| Tenant's Pro Rata Share | 7(c) |
| Term | 3 |

| Term | Paragraph where defined |
|------|-------------------------|
| Transfer | Exh. "C", para. 3 |
| Utility and Drainage Plan | Exh. "C", para. 1(c) |
| Work | 15(a)(i) |
| Worth at the time of the award | 30(b) |

Orangefair Mall

## EXHIBIT "C"

### CONSTRUCTION PROVISIONS

THESE CONSTRUCTION PROVISIONS (herein so called) are hereby made a part of the Lease between Landlord and Tenant to which these Construction Provisions are attached as Exhibit "C". All defined terms shall have the meanings attributed to them in the Lease unless otherwise specifically defined in these Construction Provisions.

1.    <u>Landlord's Delivery of the Premises; Other Landlord Work</u>.  All of the work set forth in subparagraphs (a), (b) and (c) below is, collectively, the "Landlord Work":

(a)    <u>Hazardous Substances</u>.  Landlord shall deliver the Premises to Tenant free of any pollution or contamination from toxic or hazardous substances, asbestos or any other chemicals or substances in amounts which exceed standards for public health or welfare as established and regulated by any local governmental authority, the State or the United States Government (herein collectively referred to as "Hazardous Substances").  Landlord hereby grants Tenant and its agent access to the Premises and Shopping Center to enable Tenant to conduct such soil and environmental tests as its deems necessary.

Landlord has provided Tenant with copies of Landlord's environmental site assessment(s) (the "Assessment(s)") of the Premises; a list of the Assessments provided to Tenant is attached hereto as <u>Exhibit "J"</u>.

(b)    <u>Site Work</u>.  Landlord, at its sole cost and expense, shall:  (i) cause the Premises to be free and clear of any known or unknown (which, but for Landlord's failure to discover same, should be removed prior to "Delivery of the Premises" (as defined below) to Tenant) obstructions, foundations, footings, utilities, easements,

1

improvements and tenancies, except as to foundations or footings for adjacent structures, which Tenant acknowledges will remain; provided, however, that Delivery of the Premises shall be permitted in spite of the fact that all easements affecting the Premises may not have been reconveyed, so long as Landlord commences and diligently proceeds with whatever processes are necessary for reconveyance of such easements and causes the same to be reconveyed prior to the date on which Tenant opens for business in the Premises; (ii) complete grading of the Premises in accordance with the "Standards for Grading Work" attached hereto as Attachment "1", and with the final plans prepared by Tenant's civil engineer (the "Grading Plans"), which Grading Plans are described on Attachment "2" hereto; (iii) completion of Tenant's building pad strictly in accordance with Tenant's geotechnical report, a copy of which report is attached to this Lease as Exhibit "L"; (iv) obtain approvals and all on and off-site permits which may be a prerequisite to the issuance of Tenant's building permit; and (v) obtain site plan approval and conditional use approval, if any, from governmental authorities having jurisdiction over the Shopping Center, permitting Tenant's construction of the Improvements (subject to issuance of Tenant's building permit). All of the work described in (i) through (v) above is, collectively, the "Site Work". No changes shall be made to any of the Site Work, including but not limited to any plans and specifications therefor, without Tenant's prior written consent. The Site Work shall be performed in accordance with the construction schedule attached hereto as Attachment "3" (sometimes referred to herein as the "Construction Schedule"). Landlord specifically covenants and agrees that any problems or delays it encounters in removing the existing improvements, footings and foundation and/or in grading the Premises in satisfaction of the Site Work requirements set forth above in connection with the condition of the soils, including environmental or hazardous waste issues, subsidence sinking, surface waters, subsurface waters, unforeseen site conditions or the like shall be its sole responsibility, shall not cause a

force majeure delay, and in no event shall the cost associated with such problems or conditions be passed on to Tenant in any manner.

If the items of Site Work to be performed on the Premises are completed earlier than forty-five (45) days prior to Tenant's scheduled commencement of construction of the Improvements (as provided below), the Premises shall be overbuilt and sloped to drain and, within such forty-five (45) day period, shall be regraded and recompacted.

Subject to force majeure, Landlord covenants and agrees to complete, at its sole cost and expense, each item of the Site Work, as contemplated in paragraph 2(b) below, and to designate an area for use as a Staging Area, in accordance with the dates established therefor in Attachment "3", to the end that promptly upon completion of such requirements (collectively "Delivery of the Premises"), Tenant shall be able, subject to issuance of its building permit and matters within Tenant's control, to commence construction of the Improvements. Tenant shall arrange for the provisions of temporary utilities to within five (5) feet of the Premises at Tenant's designated points of entry as set forth in the Plans and Specifications, as contemplated in paragraph 2(b) below, and shall arrange for the provision of temporary telephone service to the Premises, provided that Landlord shall, upon written request of Tenant, reimburse Tenant for Tenant's actual out-of-pocket costs in installing such temporary utilities and telephone service to the Premises; provided, however, that Tenant shall be obligated to pay all bills for the use of such temporary utilities.

Landlord acknowledges that Tenant's ability to obtain a building permit for its construction may be delayed due to the failure by Landlord to obtain necessary approvals or permits or to pay necessary fees in connection with Tenant's construction of the Improvements, exclusive of Tenant's building permit and any fees associated therewith. Landlord agrees that Delivery of the Premises shall not be deemed to have occurred until all such aforesaid approvals and permits shall have been obtained and all such fees, including but not limited to impact fees and assessments, shall have been paid, if and to

3

the extent that such approvals, permits and fees shall be prerequisites to the issuance of Tenant's building permit.  Landlord agrees to keep Tenant advised on a monthly basis as to Landlord's progress in completing the Site Work.  Upon the Delivery of the Premises, Landlord shall certify to Tenant that all elements of the Site Work have been completed in the form of the Site Work Certificate attached hereto as <u>Attachment "4"</u>.

Should the Site Work require minor adjustments in order to be in accordance with <u>Attachments "1"</u> and/or <u>"2"</u>, Tenant may direct its contractor to make such adjustments, the total cost of which shall be reimbursed by Landlord to Tenant upon demand in a sum not to exceed Five Thousand Dollars ($5,000.00).

(c)    <u>Paving, Lighting, Utilities, Landscaping, Drainage, and Renovation of Shopping Center</u>.  Landlord, at its sole cost and expense, and in accordance with <u>Attachment "3"</u>, shall cause a contractor licensed in the State to complete (i) the construction and installation within five (5) feet of the Building, of permanent telephone service and permanent utilities, including but not limited to gas, electric, domestic water and fire water (in size sufficient to satisfy local fire codes), each at Tenant's required entry points shown in Tenant's Plans and Specifications, at depths adequate for Tenant's tie-in without additional cost; (ii) the construction and installation of curbing in front of the Building, if any, to the extent depicted on Tenant's Plans and Specifications; (iii) the completion of landscaping at the Shopping Center in accordance with Landlord's governmentally approved landscaping plan; (iv) Landlord's installation of the pylon and/or monument sign(s) identifying the Shopping Center as described in paragraph 8 of the Lease, all no later than the dates established therefor in <u>Attachment "3"</u>; and (v) the completion of the renovation of the Shopping Center in accordance Landlord's Plans (as defined in subparagraph (d) below).  Furthermore, Landlord and Tenant specifically acknowledge that Landlord shall be responsible for performing the following tasks as part of Landlord Work, at Landlord's sole cost and expense: (1) The installation landscaping and irrigation in those planters located at the north easterly end of the Premises which

4

are to be relocated by Tenant pursuant to Paragraph 2(a) of this Exhibit "C," the plans for which installation shall be subject to Tenant's reasonable prior approval; (2) the relocation of the fire hydrant located near the north easterly end of the Premises to a location mutually agreeable to Landlord and Tenant; (3) the redesign of the proposed sewer plan for the Shopping Center to eliminate any sewer lines from running underneath any portion of the area in which the Improvements are to be constructed, to such a location and in such a manner as Tenant and Landlord mutually agree; (4) the abandonment and relocation of the existing electrical vaults located upon or adjacent to the Premises; and (5) the installation of a permanent 8" fire water line and a permanent 2" domestic water line stubbed to such location as depicted on the Plans and Specifications, or such other location on the Premises and Tenant may reasonably request.

        (d)    Landlord Work. All of the work described to be performed by Landlord in this paragraph 1 is collectively referred to as "Landlord Work". As of the Lease Date, Landlord has provided plans and specifications to Tenant describing in detail Landlord Work to be performed at the Shopping Center ("Landlord's Plans"). Within fifteen (15) days of the Lease Date Tenant shall notify Landlord in writing as to Tenant's approval or disapproval of Landlord's Plans, such approval not to be unreasonably withheld. In the event that Tenant disapproves of Landlord's Plans, Tenant shall provide with such notice of disapproval a detailed explanation of the reasons for such disapproval, and Landlord and Tenant shall thereafter work in good faith to resolve their disagreements as to the final form of Landlord's Plans. Landlord shall not alter or amend Landlord's Plans without Tenant's prior written consent, such consent not to be unreasonably withheld by Tenant, provided that, with respect to any changes in Landlord's Plans pertaining to Tenant's Preferred Area, Tenant such approval shall be in Tenant's sole and absolute discretion. All Landlord Work shall be performed in accordance with all applicable laws, Landlord's Plans, and this Lease, in a good and

workmanlike manner, as appropriate by engineers, surveyors, architects and consultants, who are bondable, licensed in the State and of good reputation.

    2.    <u>Tenant Improvements</u>.

    (a)    <u>Building Construction</u>.  Upon completion of all requirements therefor, Landlord shall give Tenant written notice (which shall include any required certifications, including but not limited to those required by <u>Attachment "1"</u>) of Delivery of the Premises in the form of <u>Attachment "4"</u>.  Tenant shall promptly notify Landlord if any such requirement has not been met to Tenant's reasonable satisfaction, provided the Tenant does not elect its self-help remedies set forth in this Lease.  Upon completion of any such previously unmet requirements, Tenant shall promptly commence and pursue to completion with due diligence the construction of the Improvements.  The construction work on the Improvements shall be performed by a duly licensed contractor chosen by Tenant, shall be done in a good and workmanlike manner, in compliance with all applicable laws and in substantial accordance with the "Plans and Specifications" (defined below).  Furthermore, Tenant shall be responsible for performing the following tasks, at Tenant's sole cost and expense (unless otherwise indicated below):  (1) the creation and/or relocation of planters located to the immediate north and west of the Premises, and the relocation of the driveway to the north of the Premises, including the preparation of plans for the same, which plans shall be subject to Landlord's reasonable prior approval;  (2) the raising and/or relocation of one (1) vault and two (2) vents located near the north end of the Premises necessitated by the extension of the sidewalk in such area, which relocation shall be subject to Landlord's reasonable prior approval as to location and manner;  (3) the demolition of the existing trash enclosure located near the southerly side of the Premises, provided that Tenant shall have no obligation to reconstruct the same or pay any portion of the cost of such reconstruction;  (4) all modifications to the asphalt paving immediately adjacent to the Premises necessitated by work to be performed by Tenant hereunder; (5) the relocation of the storm drain pursuant

6

to the Tenant's Plans and Specifications; provided, however, that upon written request Landlord shall reimburse Tenant for all costs incurred by Tenant in connection with such relocation, up to but not exceeding Thirty-Two Thousand Dollars ($32,000), with any costs in excess of such amount being the sole responsibility of Tenant; and (6) the cost of installation of Tenant's water meter and the cost of the "detector check" of the fire sprinkler system.

(b)    <u>Plans and Specifications</u>.    As of the Lease Date, Tenant has furnished to Landlord, and Landlord has approved, complete architectural drawings and specifications and building elevations (the "Plans and Specifications") for the construction of the Building and Other Improvements. The Plans and Specifications shall not be substantially changed by Tenant without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.

(c)    <u>Permits</u>.    Tenant, at its sole cost and expense, shall obtain or cause to be obtained those certain building permits, licenses, other governmental approvals and temporary and permanent certificates of occupancy which may be required for the lawful construction and occupancy of the Premises as a retail shopping facility in accordance with the Plans and Specifications. Landlord agrees to assist and cooperate fully with Tenant in obtaining such permits, licenses, approvals and certificates.

(d)    <u>Landlord Inspections</u>.    During the course of construction of the Improvements, Landlord may, at its own risk and in cooperation with Tenant's contractor, enter upon the Premises for purposes of inspecting the work, provided that such inspections shall not interfere with Tenant's construction.

(e)    <u>Substantial Completion</u>.    Substantial completion of the Improvements ("Substantial Completion") shall be deemed to occur when a certificate of occupancy, whether temporary and subject to minor items to be completed, or permanent, as the case may be, has been issued by the applicable governmental authority, and Tenant has opened its store facility for business with the public. The foregoing shall

7

to assist and cooperate fully with Tenant in obtaining such permits, licenses, approvals and certificates.

(d)    Landlord Inspections.  During the course of construction of the Improvements, Landlord may, at its own risk and in cooperation with Tenant's contractor, enter upon the Premises for purposes of inspecting the work, provided that such inspections shall not interfere with Tenant's construction.

(e)    Substantial Completion.    Substantial completion of the Improvements ("Substantial Completion") shall be deemed to occur when a certificate of occupancy, whether temporary and subject to minor items to be completed, or permanent, as the case may be, has been issued by the applicable governmental authority, and Tenant has opened its store facility for business with the public.  The foregoing shall not be deemed to relieve Tenant of its responsibility to complete the Improvements in accordance with the Plans and Specifications. Following substantial completion of the Premises, upon the written request of Landlord, Tenant shall provide Landlord with copies of the certificate of occupancy for the Building, Tenant's building permit, or such other similar documentation evidencing that Tenant has constructed the Premises in accordance with applicable laws and codes as Landlord's lender may reasonably request.

3.  Construction Delays.

(a)    Delays by Landlord.  In the event, subject to force majeure, Landlord shall fail to complete the Site Work and accomplish Delivery of the Premises in the condition specified by the date set forth on Attachment "3" hereto, Landlord agrees that it shall reimburse Tenant for its fixed and ascertainable costs incurred as a result thereof in the exercise of all reasonable efforts to open for business by February 15, 1996.  Such costs shall be limited to Tenant's out-of-pocket expenses of construction overtime, acceleration charges and bonuses paid to Tenant's contractors or subcontractors, charges for the scheduling of construction

8

crews on days on which work cannot be performed due to the delays by Landlord and construction period interest charges actually incurred to the extent that such charges exceed those which would have accrued without such delay.

In the event, for any reason whatsoever and regardless of force majeure, Landlord shall fail to complete demolition and removal of all structures, footings, foundations, utilities, and other obstructions from the Premises prior to that date ("Demolition Deadline") which is the later of (i) August 15, 1995, or (ii) forty-five (45) days following the Lease Date, Tenant shall be entitled to terminate this Lease at any time prior to the completion of such items by providing written notice to Landlord, and receive from Landlord promptly thereafter a sum equal to the actual out-of-pocket and substantiated third-party legal, architectural and engineering costs incurred by Tenant to the date of termination, not to exceed One Hundred Thousand and No/100 Dollars ($100,000.00).

In the event, subject to force majeure, Landlord shall fail to accomplish Delivery of the Premises by the date which is the later of (i) September 1, 1995, or (ii) sixty (60) days following the Lease Date, or to complete any other element of Landlord Work by the completion date established therefor in Attachment "3", Tenant, at its option and upon five (5) days' prior written notice to Landlord, which notice may be given prior to or at any time after the applicable date for performance, may in addition to any other rights and remedies set forth herein, enter the Shopping Center and perform any task required for Delivery of the Premises or, as applicable, any element of Landlord Work which has not been timely completed.  In the event that Tenant performs any element of Landlord Work pursuant hereto, Landlord shall reimburse Tenant for its reasonable and actual costs thereof, including interest on such costs at the Default Rate, plus an administrative and supervisory fee equal to thirty percent (30%) of the total of costs.  Such amounts shall be reimbursed by Landlord to Tenant within five (5) days after

9

receipt of written request from Tenant, which request shall be reasonably supported by invoices and/or written description of Landlord Work performed by Tenant, lien releases, and/or certification by Tenant that all contractors and suppliers involved in Tenant's performance of said portions of Landlord Work have been paid the amounts to which they are legally entitled or otherwise satisfied in-full. If any such amounts owed by Landlord to tenant pursuant hereto are not reimbursed to Tenant as hereinabove contemplated, Tenant shall be entitled to offset such amounts against Base Rent, CAM Charges, Real Estate Taxes, and other payments otherwise due under the Lease, together with interest at the Default Rate from the date of expenditure by Tenant until such costs, fees, and accrued interest are reimbursed in full.

Tenant shall exercise its right to perform any portion of Landlord Work by providing Landlord with written notice thereof, which notice shall reasonably detail those portions of Landlord Work which Tenant elects to complete. In the event and to the extent that Tenant exercises its right to perform any portion of Landlord Work hereunder, Tenant shall provide Landlord with copies of all contracts entered into by Tenant in connection with Tenant's performance of said portions of Landlord Work. Landlord agrees to cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete said portions of Landlord Work.

Subject to extension by events of "force majeure," in the event that Landlord fails to substantially complete Landlord Work as required under this Lease by that date which is one (1) year following the Lease Date, Tenant's obligation to pay Base Rent under this Lease shall be abated in its entirety until such time as Landlord Work is completed in accordance with this Lease.

(b)    _Miscellaneous_.    Notwithstanding the foregoing, a delay by Tenant in exercising its cure rights or other remedies hereunder shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by Landlord.    All sums owing to Tenant under paragraph 1 hereof and/or subparagraph (a) above shall be paid timely as required herein yet in no event later than thirty (30) days following request therefor if no date for payment is specified herein; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Base Rent, CAM Charges and Real Estate Taxes otherwise due hereunder.

Notwithstanding anything contained herein to the contrary, Landlord covenants that it shall complete its construction and delivery obligations in accordance with the "Completion Dates" set forth in the Construction Schedule.    In the event that Landlord fails to complete its construction and delivery obligations in accordance with such Completion Dates, Tenant may, at its sole election, exercise such remedies as are set forth in this Exhibit "C" and the Lease.

4.    _Attachments_.

"1"    Standards for Grading Work

"2"    Grading Plans

"3"    Construction Schedule

"4"    Site Work Certification

"5"    Utilities Specifications

Attachment "1"

Standards for Grading Work

1.    The Premises shall be graded in accordance with the Site Grading, Paving, and Drainage Plans dated June 6, 1995, prepared by AMPAC Engineering, which plans Landlord acknowledges it has received and approved.

2.    The Site Work shall comply with the following additional requirements:

(a)    Landlord shall be responsible for preparing the Premises subgrades to within plus or minus one-tenth of a foot as set by Tenant's architect.  Tenant's subgrades are typically 8"-10" below finish floor elevation.  Landlord will complete compaction in accordance with the appropriate engineering standards and building code requirements, but in no event less than those compaction specifications set forth in Tenant's geotechnical report attached to this Lease as Exhibit "L,"  so as to enable Landlord to perform construction work necessary to provide completed Improvements in accordance with the "Plans and Specifications" (defined in the Construction Provisions), with standard footings and without the necessity of pilings or spread footings or other extraordinary foundation work.  Tenant's minimum slab thickness and under slab fill will be established in accordance with the report of an independent professional soils engineer.  Such report has been obtained by Tenant at its sole expense, and has been delivered to Landlord.   All compacted areas of the site shall be verified by an independent professional soils engineering test laboratory and a certificate from such independent laboratory indicating compliance with the soils report shall be furnished to Tenant upon completion of the Site Work.

(b)    The Premises soil shall have the bearing capacity required by the local building codes and as approved by Tenant.  Earth stabilization and/or replacement shall be performed by Landlord as necessary to meet this minimum requirement.

(c)    During the preparation of the Premises, Landlord shall at its expense have an independent professional soils engineering test laboratory monitor and certify the preparation of the Premises in accordance with the independent soils engineer's report referenced in Attachment "2" (II) above.  The greater of three in-place compaction tests per work day or one in-place compaction test per 5,000 square feet of pad area must be completed.

(d)    On or before the date of Delivery of the Premises, Landlord shall provide Tenant with:

2

(i)      An independent soils engineer's written certification that all pad work was completed in accordance with the Grading Plans and the Plans and Specifications.  This report shall include the results of all compaction and other tests performed during the pad preparation phase and any tests performed prior to the date of such certification.

(ii)      A surveyor's written elevation certification stating that the Premises is at the prescribed elevation within the stated tolerance of plus or minus one-tenth of a foot.  This certification shall be based on elevation shots taken on a 50-foot grid minimum including pad perimeter and corners.  Promptly upon completion of the Site Work, Landlord shall cause its surveyor or engineer to designate the corners of the Premises by means of standard surveying monuments.

(e)      Top soil excavated during grading of the Premises shall be stockpiled by Landlord and made available for use during final landscaping operations including landscaping inside perimeter sidewalks around the Building, if found agronomically suitable by an independent soils analysis lab.   Other excavated soil material shall be stockpiled and made available for use as backfill if required, but only if a soil report indicates it is suitable.

(f)      All material, including native and fill, within 3 feet of any surface of the building including foundation concrete, shall be nonexpansive with a plasticity index of 12 or less.  The material shall also have sufficient cohesion to stand vertically for 3 feet.  No oversize material or lumps greater than 6" in diameter will be allowed and not more than 15% of the material shall be greater than 2-1/2" diameter.

(g)      The Grading Plans shall not be materially changed by Landlord without the prior consent of Tenant, which consent shall not be unreasonably withheld or delayed.

3

Attachment "2"

Grading Plans
(To Be Supplied)

Attachment "3"

Construction Schedule

| Landlord's Task | Completion Date |
|---|---|
| 1. Landlord's Designation of Staging Area and Delivery of the Premises to Tenant. | September 1, 1995 or 60 days after Lease Date, whichever is later |
| 2. Landlord's Plan Approval. | 45 Days following Lease Date |
| 3. Construction and installation of permanent utilities including permanent telephone service. | 45 Days after Delivery of the Premises |
| 4. Completion of landscaping at Shopping Center. | Prior to Tenant's opening for business in the Shopping Center |
| 5. Construction and installation of pylon and/or monument sign(s). | Prior to Tenant's opening for business in |

the Shopping Center

1

Attachment "4"

Site Work Certification


To:  Circuit City Stores
     9950 Mayland Drive
     Richmond, Virginia 23233
     Attention:  Vice President-Real Estate


Re:  Circuit City Store/Orangefair Mall-Lease Agreement dated _____ __, 1995

Ladies and Gentlemen:

The undersigned, as Landlord under the Lease has caused "Delivery of the Premises" to occur, and accordingly, completion of the Site Work, all in accordance with the terms of the Lease. Specifically the undersigned hereby certifies that the grading of the Premises has occurred in accordance with the Standards for Grading Work, attached as Attachment "1" to the Lease and has been prepared strictly in accordance with your geotechnical report.

All conditions precedent to issuance of your building permit have been satisfied by Landlord, and we certify that all elements of the Site Work and Delivery of the Premises have been satisfied in accordance with the Lease.


The Orangefair Company LLC


By:_____

Name:_____

Title:_____

1

Attachment "5"

Utilities Specifications

Landlord will provide the following temporary utilities to within five (5) feet of the Building no later than the date for completion of such temporary utilities set forth in the Construction Schedule:

> water (2" line, with sufficient pressure that pumping is not necessary) and electric power (200 amps, 1-phase, 4-wire, 120 volts, with weatherproof and rainproof fused disconnect switch) for use by Tenant in its construction of the Improvements.

Landlord will provide the following permanent utilities to within five (5) feet of the Building at Tenant's identified entry points and at depths adequate for Tenant's tie-in without extra cost, no later than the date for completion of such permanent utilities set forth in the Construction Schedule:

> gas (if available), telephone, permanent electricity (adequate for 800-amp panel, 3-phase, 277/480 volt), sanitary sewer (6" line), domestic water (8" line), fire protection water (8" line, 50 pounds per square inch residual pressure, 2000 gallons per minute or at least sufficient capacity to service Tenant's sprinkler system without the need for any water pump, as approved by Tenant's fire protection consultant), backflow preventor

Tenant shall be obligated to pay all costs connected with the installation of utility meters servicing the Improvements, and Tenant shall use commercially reasonable efforts to utilize the existing utility lines which currently service the area in which the Improvements are to be constructed; provided, however, that in the event that Tenant deems such existing utility lines inadequate for its intended use of the Premises, Landlord shall be obligated to upgrade or replace such utility lines so that they will be adequate, in Tenant's sole and absolute discretion, to service the Improvements.

1

## EXHIBIT "D"

STORE FIXTURES

ALL STORAGE RACKING

ALL SECURITY SYSTEM ITEMS

TELEPHONES AND PAGING SYSTEMS

COMPUTER SYSTEM

OFFICE FURNITURE AND TRASH RECEPTACLES

BATTERY CHARGER

TRASH COMPACTOR

SIGNS (INTERIOR/EXTERIOR)

ANTENNA SYSTEM

ELECTRONIC SWITCHING

AIR COMPRESSOR (ROADSHOP)

SAFE

CONVEYOR

MEDECO CYLINDER LOCKS (5)

~~REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES~~

TACK BOARDS

WATER COOLER

FIRE EXTINGUISHERS

AUDIO ROOM FIXTURES AND SWITCHGEAR

PICTURES

WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS,

DOLLIES, ETC.)

TRACK LIGHTS (CANS ONLY, NOT TRACKS)

<u>EXHIBIT "E"</u>

SIGN CRITERIA

(See Attached)

EXHIBIT E



CIRCUIT CITY
STORES INC.
9950 MAYLAND DRIVE
RICHMOND VA. 23233

R-95X

804 527 4165        02-02-94 01:35PM  P002 #08



CIRCUIT CITY
STORES INC.
9950 MAYLAND DRIVE
RICHMOND VA. 23233



804 527 4155        02-02-94 01:35PM  P006 #08