UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

```
IN RE:                          .  Case No. 08-35653 (KRH)
                                .  Adv. No. 10-3382 (KRH)
                                .  Adv. No. 10-3657 (KRH)
CIRCUIT CITY STORES, INC.,      .
et al.,                         .  701 East Broad Street
                                .  Richmond, VA  23219
                                .
                                .
         Debtors.               .  August 23, 2012
. . . . . . . . . . . . . . . . .  2:13 p.m.
```

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

```
For the Official           Tavenner & Beran PLC
Committee of Unsecured     By:  PAULA S. BERAN, ESQ.
Creditors:                 20 North Eighth Street, Second Floor
                           Richmond, VA  23219

For Karl Elgelke:          Foley & Lardner LLP
                           By:  BRITTANY JANE NELSON, ESQ.
                           3000 K Street, N.W.
                           Suite 600
                           Washington, D.C.  20007-5109

TELEPHONIC APPEARANCE:

For the Official           Pachulski Stang Ziehl & Jones LLP
Committee of Unsecured     By:  ANDREW W. CAINE, ESQ.
Creditors:                 10100 Santa Monica Boulevard
                           Los Angeles, CA  90067-4100
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

1    COURTROOM DEPUTY:  In the matter of Circuit City
2 Stores, Incorporated, hearing on Items 1 through 5 as set out
3 on the proposed agenda.
4    MS. BERAN:  Good afternoon, Your Honor.
5    THE COURT:  Good afternoon, Ms. Beran.
6    MS. BERAN:  For the record, Paula Beran with the law
7 firm of Tavenner & Beran.  With me this afternoon at counsel
8 table is Ms. Anne Pietrantoni -- and I think I got it right the
9 first time -- on the first time.
10    THE COURT:  You've been doing well the last couple of
11 times, so --
12    MS. BERAN:  As Your Honor is --
13    THE COURT:  She's no longer rolling her eyes.
14             (Laughter)
15    MS. BERAN:  In addition, Your Honor, on the phone I
16 believe is Mr. Andrew Caine of the Pachulski firm.
17    THE COURT:  All right.
18    MS. BERAN:  Your Honor, there are only a couple of
19 items on today's docket.  The first and foremost -- the first
20 one is the motion to dismiss in the B.R. Fries adversary
21 proceeding.  Your Honor may recall this has been continued
22 several times.  There was an underlying mediation that was
23 conducted.  The parties exchanged additional information after
24 that mediation.  Your Honor, at this point in time we'd
25 respectfully request that this go ahead and be continued again

1  until September 19th.
2          THE COURT: All right. It will be continued to
3  September 19th.
4          MS. BERAN: Thank you, Your Honor. The next two
5  items on the Court's -- on the agenda are the two matters in
6  the Siegel v. SYNNEX Corporation. As Your Honor is aware that
7  matter was scheduled for trial later this month, and we
8  previously informed Your Honor that it had settled in concept
9  and we were awaiting documentation as well as consummation. I
10 am happy to report, Your Honor, that it was documented, it was
11 executed, and settlement has been consummated, and we have
12 submitted to you through the BOP system an order that will
13 address these two items as well as the underlying adversary
14 proceeding.
15         THE COURT: All right. I think I may have already
16 seen that order.
17         MS. BERAN: Great. Thank you, Your Honor. Your
18 Honor, the next item, Item Number 4, is the motion to approve
19 -- to allow the filing of an amended proof of claim that was
20 filed by Mr. Gray of Sands Anderson. Your Honor, in connection
21 with that, as the agenda indicates that matter has settled.
22 However, we are still in the process of documenting it, as well
23 as thereafter then going to consummation of the settlement.
24 So, in discussions with Mr. Gray we would respectfully request
25 that we continue this matter out until the October 9th Circuit

1  City omnibus hearing date for documentation and consummation.
2  And I indicated to Mr. Gray yesterday on the phone that I would
3  represent all that to Your Honor, and Mr. Gray said based on
4  the same he did not intend to appear today.
5           THE COURT:  And that's perfectly fine as far as the
6  Court's concerned, so that's Matter Number 4, the Gateway
7  Woodside matter, right?
8           MS. BERAN:  Yes, Your Honor.
9           THE COURT:  Okay.  That will be continued to October
10 9th.
11          MS. BERAN:  Thank you, Your Honor.  Your Honor, the
12 next matter on the docket is a motion to reconsider order
13 disallowing claim.  That was filed by Ms. Nelson, and I will
14 step aside and let her address it.
15          THE COURT:  All right.  Very good.  Ms. Nelson?
16          MS. NELSON:  Good afternoon, Your Honor.
17          THE COURT:  Good afternoon.
18          MS. NELSON:  For the record, Brittany Nelson of Foley
19 Lardner on behalf of Mr. Engelke.  I am here today on Mr.
20 Engelke's motion for reconsideration of the Court's order
21 disallowing his claim.  Mr. Engelke had sustained personal
22 injuries in a slip and fall accident at Circuit City.
23 Initially Mr. Engelke had filed a proof of claim in the
24 bankruptcy in the amount of $450,000.  Mr. Engelke's prior
25 bankruptcy counsel, Ms. Bosch (phonetic), had filed an

1 administrative expense request on June 8th of 2009, and the
2 debtor had consolidated those and filed an objection to both
3 claims.  Unfortunately Mr. Engelke's prior counsel did not file
4 a response to the objection, and this Court ordered -- entered
5 an order sustaining the debtor's objection disallowing the
6 claim.

7          Both parties agree that it is within the Court's
8 discretion to reconsider an order for cause pursuant to
9 Bankruptcy Rule of Procedure 9024, which incorporates Federal
10 Rule of Civil Procedure 60(b), and here Mr. Engelke's motion is
11 based on excusable neglect, which is an equitable consideration
12 by this Court.  Mr. Engelke's prior counsel, Ms. Bosch,
13 mistakenly believed that he could pursue insurance coverage
14 held by the debtor outside and after the bankruptcy, which is
15 of course not the case.  She has since been replaced and they
16 are now pursuing other -- Mr. Engelke is now pursuing all other
17 remedies available to him.  Other Courts have found that legal
18 negligence is a basis for excusable neglect, for example in the
19 <u>Carter v. Albert Einstein Medical</u> case, which is cited by the
20 Third Circuit and cited in our motion.  Mr. Engelke has hired
21 new counsel and is an attempt -- in a good faith attempt to
22 pursue his claim.  While we understand that there is a burden,
23 the burden of the debtor is relatively minor as the bankruptcy
24 case is still operating and being administered, while, on the
25 other hand, the burden on our client would be high, as he would

1  have no other -- he would have limited other remedies to pursue
2  his claim.  So, for that reason we're asking Your Honor today
3  to reconsider Mr. Engelke's claim -- reconsider your order
4  disallowing the claim.
5         THE COURT:  All right.  Well, before you leave I've
6  got a couple of questions.
7         MS. NELSON:  Okay.
8         THE COURT:  I usually do.  But what I'd like to do is
9  discuss with you the Pioneer case, because that seems to me to
10 be the standard that I would apply --
11        MS. NELSON:  I agree.
12        THE COURT:  -- in this case.  And in fact, that case,
13 if I recall correctly, actually involved the filing of a proof
14 of claim in a bankruptcy case.  And in that case there was an
15 attorney, again, who had failed to file a proof of claim, and
16 the issue -- the Bankruptcy Court had found that there was no
17 excusable neglect and the Supreme Court took a look at it and
18 said, well, that there could be excusable neglect and in fact
19 found that there was excusable neglect because the notice that
20 was issued -- and if I'm wrong on this you can correct me --
21        MS. NELSON:  No --
22        THE COURT:  -- but that the notice that was issued
23 was not a standard type of notice and could be confusing or
24 whatever.  But the Court went out of its way, near the end of
25 the opinion anyway, to say that there was absolutely no

1  prejudice -- if any prejudice at all had been shown from the --
2  to the bankruptcy estate or to -- that the decision would have
3  been much different than it was.  So, I guess what I would like
4  to do is ask you two things.  I mean, if you agree with that,
5  then --
6          MS. NELSON:  I agree with that basic premise.
7          THE COURT:  Okay.  Very good.  Now, so I want to
8  focus on two things.  The first is the standard there.  You
9  know, you said that legal negligence can constitute excusable
10 neglect.  Okay, but, you know, did we have some confusion here?
11 Or what -- I mean, it seems to me that this sort of falls more
12 in the category where somebody fails to attend a pretrial
13 conference, or somebody whose counsel, you know, fails to, you
14 know, file a responsive pleading in a case, or something, and
15 that's more in tune with what happened here, where the parties
16 had actually been engaged and there was an objection filed with
17 the attorney.  The objection -- the attorney doesn't say didn't
18 see the objection, but just, you know, failed to respond.  And
19 how does that, you know, meet the standard that the Court
20 adopted in the Pioneer case?
21         MS. NELSON:  I agree with Your Honor that there is
22 factual distinctions between the Pioneer case and this case,
23 and I agree with Your Honor.  However, I think the analogy is
24 that the -- I mean, failure to file a proof of claim would also
25 be legal negligence, and the former counsel believed that she

1  didn't need to pursue any remedies in the Bankruptcy Court
2  because she believed mistakenly, of course, that she could
3  pursue remedies outside of the Bankruptcy Court, and instead
4  entered into that course of action.  I think that the <u>Pioneer</u>
5  case to us shows that Your Honor has great discretion under
6  this standard and could, you know, could choose to treat this
7  legal malpractice as excusable neglect.
8           THE COURT:  Okay.  Now, you mentioned that excusable
9  neglect could be shown by way of legal negligence, and you said
10 that there was a Third Circuit case, and I assume that that's
11 the <u>Carter v. Albert Einstein Medical</u> case --
12          MS. NELSON:  It is.
13          THE COURT:  -- that is cited in your brief.
14          MS. NELSON:  It is.
15          THE COURT:  Tell me what was the legal negligence
16 that -- there that was held to be excusable neglect?
17          MS. NELSON:  Your Honor, I'm not a hundred percent
18 sure of the facts of that case right now, Your Honor, but I
19 believe it was a -- the legal malpractice was also missing a
20 deadline.  That's my recollection.
21          THE COURT:  Okay.  Well, let's turn to the second
22 standard, which is the harm to the estate and such.  And I want
23 to break this down into two parts, because we're sort of
24 nearing the end of this case, and we've dealt with lots and
25 lots of claims, and, you know, Ms. Beran will tell you that

1  whenever she comes in here to the podium I'm constantly asking
2  her, you know, okay, where are we?  How many more do we have to
3  do?  You know?  And we've got a very limited number of people
4  left at the trust that are continuing to work these through,
5  and, you know, they'll tell me that they don't get vacations
6  and things like that because they're trying to meet deadlines
7  and the like.
8         So, you know, why would I, you know, pile this claim
9  back on to all of the other claims that they have to deal with,
10 especially given the nature of this claim?  It could
11 significantly delay the administration of this case if we had
12 to, you know, go and try a personal injury claim in another
13 Court someplace, and it could be a couple years before we got
14 it resolved.
15         MS. NELSON:  Well, Your Honor, I would hope that it
16 would not be a couple years, that we could resolve it more
17 quickly than that.  And I understand that the Court is trying
18 to wrap up this case.  And we're not arguing that it would not
19 be an administrative burden.  We're just saying as weighed
20 against Mr. Engelke's lack of recovery we would just ask the
21 Court to use its equitable powers to consider that.
22         THE COURT:  Okay.
23         MS. NELSON:  But we understand -- we are well
24 understanding of the fact that this would -- would be an
25 administrative burden on the estate.

1        THE COURT:  All right.  Very good.  Now, my last
2   thing that I wanted to ask you about was the order that I had
3   entered that disallowed this claim was entered back in 2010.
4        MS. NELSON:  Yes, Your Honor.
5        THE COURT:  And here we are in 2012, and we've got a
6   motion filed to reconsider.  Obviously two years have gone by
7   since then.  Why has there been two years of delay before
8   somebody said, oh, wait a second, maybe we should have gone
9   back and asked the Court to give us another bite at that apple?
10       MS. NELSON:  Your Honor, I was retained only --
11       THE COURT:  Well, I'm not --
12       MS. NELSON:  I agree.  I'm just --
13       THE COURT:  You don't have to justify your actions.
14  I'm asking from a global standpoint.
15       MS. NELSON:  Right.
16       THE COURT:  You understand what I have to do?
17       MS. NELSON:  No.  I a hundred percent agree.  We were
18  retained only slightly before we filed the motion from --
19       THE COURT:  And I'm confident that you filed it as
20  early as you possibly could.
21       MS. NELSON:  That being said I understand that -- and
22  I actually inquired of all of our other counsel in Florida
23  about, you know, the delay.  Some of the delay was the lack of
24  understanding when it came up in 2011, and they were trying to
25  see if they could pursue other remedies besides asking Your

1  Honor to reconsider this claim, because they realize this is a
2  drastic measure, and would, you know -- is not something that,
3  you know, they normally would do.
4           THE COURT:  All right.  Anything further?
5           MS. NELSON:  That's it, Your Honor.
6           THE COURT:  Thank you very much.  Ms. Beran?
7           MS. BERAN:  Your Honor, just very briefly.  As
8  articulated in the response, and as Your Honor has already
9  indicated here, we are all well aware of the movant's burden
10 here, and that's the excusable neglect standards established in
11 the <u>Pioneer</u> case.  The trust respectfully submits, Your Honor,
12 that the movant has failed to establish any type of excusable
13 neglect, and waited almost two years to try to plead some type
14 of excusable neglect.  Here it's undisputed.  The only fact
15 asserted for excusable neglect is the attorney misunderstood
16 the facts and law.  There is no other allegations.  There's no
17 other facts before the Court as it relates to anything other
18 than the attorney misunderstood facts in law.  And the trust
19 would respectfully submit to Your Honor that that just can't be
20 enough, in and of itself, under <u>Pioneer</u> and then under the case
21 law that has developed in the Fourth Circuit and specifically
22 in the Eastern District of Virginia.
23          The trust would just say, Your Honor, from a -- just
24 a practical standpoint, think of the floodgates that that would
25 open if the attorney made a mistake in and of itself was

1  enough.  Then you would always blame -- the attorneys always
2  get blamed, but you would just still come in here, Your Honor,
3  I didn't do something, it's excusable neglect because my
4  attorney didn't explain it to me right.  So, you would always
5  have people blaming it on the attorneys, and if the attorneys
6  are diligently representing their client why would they every
7  say anything but yup, it was my fault, because they would have
8  no exposure to malpractice because Your Honor would fix it or
9  the Court would fix the malpractice forum, and therefore it
10 would make no sense for them to come in here and say yes it was
11 my fault.

12         Your Honor, as we've indicated in the response, we
13 did try to address the other factors.  We were open and candid
14 with the Court as it relates to the percentage of this claim in
15 connection with the whole claims percentage pool, but we would
16 remind the Court that there is prejudice to the estate, as Your
17 Honor was alluding to in this instance, and we'd remind Your
18 Honor of what's happened in those last two years.  We did have
19 a plan confirmed.  We do have a claims reconciliation process
20 ongoing.  Your Honor is understandably so concerned about where
21 we are in that process.  Since those two years the liquidating
22 trust, in addition to all the objections that the debtor had
23 filed we have filed 46 omnibus objections, filed two more just
24 yesterday.  We are working diligently to address all the claims
25 in the hopes we can have all those addressed before the

1  upcoming deadline in the fall.  As Your Honor is well aware,
2  and as Ms. Pietrantoni could testify to, we are especially
3  right now focusing on trying to resolve and/or reconcile all
4  the employee claims, because we told Your Honor, I think a
5  couple times now, as we are -- the trust is sensitive to these
6  employee claims because notwithstanding that we bankruptcy
7  lawyers and practitioners try and make the process to work the
8  way the code has made it, it does appear at times from a
9  layman's perspective to be confusing, so the trust is really
10 trying not to object needlessly to any claims from the employee
11 perspective, to try and come up with a number, and then
12 whatever objection we do we're trying to ascertain the number.
13 So, a lot of time and energy is being put in connection with
14 addressing these remaining employee claims.
15         In addition, Your Honor, as we've stated on the open
16 record there have been two interim distributions.  We're very
17 proud of that.  The liquidating trust wants to get allowed
18 claims, these creditors money that they are due and owing as
19 soon as possible, and so we've made these two interim
20 distributions.  But those interim distributions, Your Honor, as
21 you can imagine having been a Chapter 7 Trustee yourself,
22 they're not an easy task.  There's a lot that goes into those
23 interim distributions.  There are checks and balances and
24 people want to make sure -- we need to make sure that it's only
25 allowed claims being paid, and it's the correct percentage

1  being paid, and that there's the proper reserve.

2       So, Your Honor, there are a lot of moving parts and
3  pieces, and while someone may say, okay, throwing a four
4  hundred and fifty claim back into all this mix wouldn't add
5  that much disruption, Your Honor, it could.  It could add some
6  disruption, and at this point in time the trust would
7  respectfully submit after two years of delay of no one filing
8  any type of response the it could far outweighs any benefit to
9  -- as been alleged from the movant's perspective.

10      We've heard nothing that the movant doesn't have
11 another remedy.  I mean, that one case that's cited saying
12 sometimes judgment can -- from a malpractice perspective is
13 hard to collect, I can't imagine why it would be hard to
14 collect if it truly is malpractice. Unfortunately -- we all
15 cringe about it, but you have malpractice insurance, and that's
16 what the coverage is for.

17      So, from the trust's perspective, once again, there
18 has been no prejudice -- no facts to support any type of
19 prejudice to the movant in this instance.  Based on the same,
20 Your Honor, we'd respectfully request that the Court deny the
21 request.

22      THE COURT:  All right.  Very good.  Anything further,
23 Ms. Nelson?

24      MS. NELSON:  No, Your Honor.

25      THE COURT:  All right.  The Court has before it the

1  motion to reconsider the dismissal of the claim.  The Court has
2  read the briefs that were submitted and the motions that were
3  submitted in connection with this matter, and obviously has
4  taken to heart the argument of counsel.  The Court finds that
5  the neglect that occurred in this case was more akin to, you
6  know -- well, the neglect was not excusable.  It was more
7  intentional than anything else.  It was very, very clear.  And
8  the claimant voluntarily chose the attorney in this case to
9  represent the client and to file the claim, which was done.
10 And the fact that no response was filed for the reason that has
11 been cited to the Court just doesn't meet the standard that has
12 been adopted in Pioneer or in subsequent cases interpreting
13 that decision in the Fourth Circuit.

14         The Court also is bothered by the fact that there's
15 been a huge delay since the order was entered denying the
16 claim.  It's not like it was entered yesterday and all of a
17 sudden we're back here and the passage of time would have had
18 no impact on this, but it does.  We're winding up this estate,
19 and to start over on this one would have huge repercussions.
20 It would also set extremely bad precedent from all the other
21 claims that have been disallowed in this case if all of a
22 sudden we received an avalanche of new claims to be
23 reconsidered.  The bar has to be set at a high level in these
24 kinds of situations.  And most importantly though is the
25 prejudice to this estate that would result.  I can't emphasize

1  enough the skeleton crew that we have left that is working
2  diligently on behalf of the trust to try to get all of these
3  claims resolved, and has been doing a very, very good job at
4  getting us to where we are right now, and it would be a huge
5  burden if we had to revisit these types of claims.
6       So, for those reasons the Court is going to deny the
7  motion.  Ms. Beran, I'm going to ask you to please submit an
8  order to that effect.  Ms. Nelson, obviously you know that once
9  the order is entered you have the right to appeal the Court's
10 order.  You have 14 days, I believe it is, to appeal.  If your
11 client does decide to appeal I would appreciate just letting my
12 chambers know.  Sometimes we're the last ones to find out.  And
13 then in that event I would write a memorandum opinion.
14 Otherwise I don't intend to do that.  And then the Court's oral
15 statements here today will be the Court's findings of fact and
16 conclusions of law pursuant to Rule 7052.
17       Any questions regarding the Court's ruling or the
18 Court's requests in any of these regards?
19       MS. NELSON:  No, Your Honor.
20       MS. BERAN:  No, Your Honor.
21       THE COURT:  All right.  Ms. Beran, do we have any
22 other business to take up today?
23       MS. BERAN:  Your Honor, that is the last matter on
24 today's agenda, but as indicated I do believe that Mr. Caine is
25 on the line.  To the extent Your Honor has any questions that

1  either Mr. Caine, myself and/or Ms. Pietrantoni can answer,
2  we're happy to do so.
3             THE COURT: All right. Mr. Caine, it's always good
4  to have you with us, sir, and I -- unless we've had some change
5  since the last time, because I got a fairly detailed report
6  last time on where we were, unless something has changed I
7  don't need an additional update. Is everything still on track?
8             MS. BERAN: Your Honor, I believe everything is still
9  on track. We're still making progress, as indicated by Mr.
10 Cain and Ms. Tavenner at the last omnibus hearing date.
11            THE COURT: Okay. Well, thank you very much, then.
12 We will be adjourned.
13            MS. BERAN: Thank you, Your Honor.
14            COURT OFFICER: All rise. The Court is now
15 adjourned.
16                              * * * * *
17                         **C E R T I F I C A T I O N**
18       I, TAMMY DeRISI, court approved transcriber, certify
19 that the foregoing is a correct transcript from the official
20 electronic sound recording of the proceedings in the above-
21 entitled matter to the best of my ability.
22
23 /s/ Tammy DeRisi              Date:  September 6, 2012
24 TAMMY DeRISI
25 J&J COURT TRANSCRIBERS, INC.

**WWW.JJCOURT.COM**