Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | **:** Chapter 11 |
| | **:** |
| CIRCUIT CITY STORES, INC., <u>et al.</u>,. | **:** Case No. 08-35653-KRH |
| | **:** |
| Debtors. | **:** (Jointly Administered) |
| | **:** |
| | **:** |

### NOTICE OF LIQUIDATING TRUST'S FIFTY-FIRST OMNIBUS
### OBJECTION TO CLAIMS: DISALLOWANCE OF CERTAIN INVALID CLAIMS
### <u>(SEVERANCE – NO CONTRACT)</u>

**PLEASE TAKE NOTICE** that the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" and/or "Trust"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims in the above-captioned cases of the above referenced estates of Circuit City Stores, Inc. et al. (collectively, the "Debtors") filed the Liquidating Trust's Fifty-First Omnibus Objection to Claims: Disallowance of Certain Invalid Claims (Severance – No Contract) (the "Objection") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  A copy of the Objection is attached to this notice (this "Notice") as <u>Exhibit 1</u>.  By the Objection, the Liquidating Trust is seeking to disallow certain invalid claims.

**PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections (Docket No. 2881) (the "Order"), by which the Bankruptcy Court approved procedures for filing omnibus objections to proofs of claim and requests for allowance and payment of administrative expenses and/or cure claims (collectively, the "Claims") in connection with the above-captioned chapter 11 cases (the "Omnibus Objection Procedures").

Specifically, the Objection seeks to reduce, disallow, or reclassify certain claims, including your claim(s), listed below, all as set forth in the Objection.

TO:                                                Claim            Claim            Reference
                                                   Number           Amount           Objection

SPECIFIC INFORMATION PROVIDED ON INDIVIDUALIZED NOTICE

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE PROOF(S) OF CLAIM LISTED HEREIN THAT YOU FILED AGAINST ONE OR MORE OF THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES ARE SUBJECT TO THE OBJECTION. YOUR RIGHTS MAY BE AFFECTED BY THE OBJECTION. THEREFORE, YOU SHOULD READ THIS NOTICE (INCLUDING THE OBJECTION AND OTHER ATTACHMENTS) CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**MOREOVER, PURSUANT TO RULE 3007-1 OF THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND THE OMNIBUS OBJECTION PROCEDURES, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY BY 4:00 P.M. (EASTERN TIME) ON NOVEMBER 29, 2012, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE OBJECTION AS CONCEDED AND ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.**

**Critical Information for Claimants
Choosing to File a Response to the Objection**

Who Needs to File a Response:  If you oppose the relief requested in the Objection and if you are unable to resolve the Objection with the Liquidating Trust before the deadline to respond, then you must file and serve a written response (the "Response") to the Objection in accordance with this Notice.

If you do not oppose the relief requested in the Objection, then you do not need to file a written Response to the Objection and you do not need to appear at the hearing.

Response Deadline:  The Response Deadline is **4:00 p.m. (Eastern Time) on November 29, 2012 (the "Response Deadline")**.

**THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED AND RECEIVED BY THE RESPONSE DEADLINE.**

Your Response will be deemed timely filed only if the Response is **actually received** on or before the Response Deadline by the Bankruptcy Court at the following address:

Clerk of the Bankruptcy Court
United States Bankruptcy Court
701 East Broad Street – Room 4000
Richmond, Virginia 23219

Your Response will be deemed timely served only if a copy of the Response is actually received on or before the Response Deadline by the Liquidating Trust's attorneys:

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083 |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:   (804) 783-0178 |
| Telecopy:   (310) 201-0760 | |

The status hearing on the Objection will be held at **2:00 p.m. (Eastern Time) on December 6, 2012 at:**

United States Bankruptcy Court
701 East Broad Street – Courtroom 5000
Richmond, Virginia 23219

If you file a timely Response, in accordance with the Objection Procedures, you do <u>not</u> need to appear at the status hearing on the Objection.

## **Procedures for Filing a Timely Response and Information Regarding the Hearing on the Objection**

**Contents**.  To facilitate a speedy and non-judicial resolution of a Claim subject to the Objection, any claimant filing a Response shall use its best efforts to include the following (at a minimum) in its filed Response, to the extent such materials are not attached to its proof of claim:

    a.    a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;

    b.    the claimant's name and an explanation for the amount of the Claim;

    c.    a concise statement, executed by (or identifying by name, address and telephone number) a person with personal knowledge of the relevant facts that support the Response, setting forth the reasons why the Bankruptcy Court should overrule the Objection as to the claimant's claim, including, without limitation (to the extent not set forth in its proof of claim), the

specific factual and legal bases upon which the claimant intends to rely in support of its Response and its underlying Claim;

d. a copy of or identification of any other documentation or other evidence of the Claim, to the extent not already included with the Claim that the claimant presently intends to introduce into evidence in support of its Claim at the hearing; provided, however, that for a Response filed in support of a Claim arising out of a lease of real property, the Response need not attach such lease if the claimant indicates its willingness to provide such documentation upon request;

e. a declaration of a person with personal knowledge of the relevant facts that support the Response;

f. the claimant's address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of the claimant's attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Address"). If a Response contains Notice Address that is different from the name and/or address listed on the Claim, the Notice Address will control and will become the service address for future service of papers with respect to all of the claimant's Claims listed in the Objection (including all Claims to be reduced or disallowed) and only for those Claims in the Objection; and

g. to the extent such person differs from the person identified pursuant to subjection e, above, the name, address, telephone number, facsimile number, and electronic mail address of the representative of the claimant (which representative may be the claimant's counsel) party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf (collectively, the "Additional Addresses"). Unless the Additional Addresses are the same as the Notice Addresses, the Additional Address will not become the service address for future service of papers.

**Additional Information**. To facilitate a resolution of the Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf. Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

**Failure to File Your Timely Response**. If you fail to file and serve your Response on or before the Response Deadline in compliance with the procedures set forth in this Notice, the Liquidating Trust will present to the Bankruptcy Court an appropriate order granting the relief requested in the Objection without further notice to you.

**Each Objection Is a Contested Matter**. Each Claim subject to the Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy

Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to such claim.

### Additional Information

**Requests for Information**.  You may also obtain a copy of the Objection or related documents on the internet, by accessing the website of www.kccllc.net/circuitcity.

**Reservation of Rights**.  Nothing in this Notice or the Objection constitutes a waiver of the Debtors' and/or the Trust's right to assert any claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent-transfer actions or any other claims against you by the Liquidating Trust.  Unless the Bankruptcy Court allows your Claims or specifically orders otherwise, the Liquidating Trust has the right to object on any grounds to the Claims (or to any other Claims or causes of action you may have filed or that have been scheduled by the Debtors) at a later date on any grounds or bases.  In such event, you will receive a separate notice of any such objections.


Dated:    September 13, 2012

*/s/ Lynn L. Tavenner*
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
            pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile: 310/201-0760
E-mail: jpomerantz@pszjlaw.com
            acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

- and –

Robert J. Feinstein, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[1], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**LIQUIDATING TRUST'S FIFTY-FIRST OMNIBUS OBJECTION TO CLAIMS:**
**DISALLOWANCE OF CERTAIN INVALID CLAIMS**
**(SEVERANCE – NO CONTRACT)**

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through Alfred

H. Siegel, the duly appointed trustee of the Liquidating Trust, pursuant to the *Second Amended*

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

*Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims* (the "Plan") in the above-captioned cases, hereby files this *Liquidating Trust's Fifty-First Omnibus Objection to Claims:  Disallowance of Certain Invalid Claims (Severance – No Contract)* (the "Objection"), and hereby moves this court (the "Court"), pursuant to sections 105 and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for entry of an order in the form attached hereto as **Exhibit A**, granting the relief sought by this Objection, and in support thereof states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502, Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

## BACKGROUND

2.      On November 10, 2008 (the "Petition Date"), the debtors in the above-captioned cases (the "Debtors") filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

3.      On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

4.      On November 12, 2008, the Court appointed Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

5.      On December 10, 2008, the Court entered that certain *Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof* (Docket No. 890) (the "Claims Bar Date Order").

6.      Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009.  The deadline for governmental units to file claims that arose before November 10, 2008 was 5:00 p.m. (Pacific) on May 11, 2009.  Pursuant to the Claims Bar Date Order, this Court approved the form and manner of the claims bar date notice, which was attached as Exhibit A to the Claims Bar Date Order (the "Claims Bar Date Notice").

7.      On December 17 and 19, 2008, KCC served a copy of the Claims Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other parties (Docket No. 1314).  In addition, the Debtors published the Claims Bar Date Notice in The Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

8.      On April 1, 2009, this Court entered an *Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections* (Docket No. 2881) (the "Omnibus Objection Procedures Order").

9.      On August 9, 2010, the Debtors and the Creditors' Committee filed the Plan, which provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code.

10.     On September 10, 2010, the United States Bankruptcy Court, Eastern District of Virginia, signed an Order confirming the Plan.

11.     The Plan became effective on November 1, 2010 (the "Effective Date"), and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Liquidating Trust assumed the right and responsibility to liquidate the Debtors' remaining assets, evaluate

and administer asserted claims, including prosecution of objections to claims, and to distribute the assets to creditors.

### B.      The Severance Plan

12.      Shortly prior to the Petition Date, the Board of Directors of Circuit City Stores, Inc. adopted the *Circuit City Stores, Inc. Severance Plan* (the "Severance Plan").  A copy of the Severance Plan is attached hereto as **Exhibit D**.  The Severance Plan was never communicated to employees.

13.      The Severance Plan states:

> There is, however, no legal requirement that the Company pay any Severance Pay and the Company reserves the right not to pay Severance Pay or to pay a lesser amount of Severance Pay than is set forth in these guidelines.  Rather, these guidelines confirm the Company's general philosophy of assisting its employees in difficult circumstances wherever it reasonably can.

Severance Plan, p. 1, Introduction, **Exh. D**.  The Severance Plan adds:

> Notwithstanding anything in this Plan to the contrary, the company expressly reserves the right not to pay Severance Pay or to pay a lesser amount of Severance Pay than is set forth in this Plan.

Severance Plan, p. 5, section 2.6, **Exh. D**.

14.      The Severance Plan also required the employee to sign a written release of all claims against Circuit City in order to be eligible for severance.  *See* Severance Plan, p. 5, section 2.3.

### OBJECTION

15.      By this Objection, the Liquidating Trust seeks entry of an order, in substantially the form attached hereto as **Exhibit A**, pursuant to Bankruptcy Code sections 105(a), 502 and 503, Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1, disallowing the claims identified on **Exhibit C** attached hereto.

16.      For ease of reference, attached hereto as **Exhibit B** is an alphabetical listing of all claimants (the "Claimants") whose claims (the "Claims") are included in this Objection, with a cross-reference by claim number.

4

17.    The basis for disallowance of the Claims listed on **Exhibit C** attached hereto is that each of the Claims asserts, in its entirety, amounts for which the Debtors are not liable.

18.    Specifically, each of the Claims seeks severance under the Severance Plan; however, the Severance Plan explicitly stated that it was a goodwill gesture to assist employees when it reasonably could – not an enforceable promise to pay severance.  Moreover, this is no evidence that the holders of each of these Claims signed the required release agreement.

19.    Accordingly, the Liquidating Trust requests that the Claims identified on **Exhibit C** be disallowed in their entirety.

## RESERVATION OF RIGHTS

20.    At this time, the Liquidating Trust has not completed its review of the validity of all claims/expenses filed against the Debtors' estates, and reserves the right to further object to any and all claims, whether or not the subject of this Objection, for allowance and/or distribution purposes, and on any other grounds, including the right to modify, supplement and/or amend this Objection as it pertains to any Claim or Claimant herein.

## NOTICE AND PROCEDURE

21.    Notice of this Objection has been provided to the Claimants identified on **Exhibit C**, and to parties-in-interest in accordance with the Court's *Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures* (entered on December 30, 2009 at Docket No. 6208) (the "Case Management Order").  The Liquidating Trust submits that the following methods of service upon the Claimants should be deemed by the Court to constitute due and sufficient service of this Objection:  (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004 and the applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for the

5

Claimants is not known to the Liquidating Trust, by first class mail, postage prepaid, on the signatory of the Claimant's proof of claim form or other representative identified in the proof of claim form or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Claimant's behalf in the Debtors' bankruptcy cases.  The Liquidating Trust is serving the Claimant with this Objection and the exhibit on which the Claimant's claim is listed.

22.     To the extent any Claimant timely files and properly serves a response to this Objection by 4:00 P.M. (Eastern) on November 29, 2012, as required by the Case Management Order and under applicable law, and the parties are unable to otherwise resolve the Objection, the Liquidating Trust requests that the Court conduct a status conference  with respect to any such responding claimant at 2:00 P.M. (Eastern) on December 6, 2012, and thereafter schedule the matter for a future hearing as to the merits of such claim.  However, to the extent any Claimant fails to timely file and properly serve a response to this Objection as required by the Case Management Order and applicable law, the Liquidating Trust requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, disallowing each of the claims identified on **Exhibit C** attached hereto.

## COMPLIANCE WITH BANKRUPTCY RULE 3007 AND THE OMNIBUS OBJECTION PROCEDURES ORDER

23.     This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the Liquidating Trust submits that this Objection is filed in accordance with the Omnibus Objection Procedures Order.

## WAIVER OF MEMORANDUM OF LAW

24.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion, the Liquidating Trust requests that the requirement that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

25.    No previous request for the relief sought herein has been made to this

Court or any other court.

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an

Order sustaining this Objection and granting such other and further relief as the Court deems

appropriate.

Dated: Richmond, Virginia          TAVENNER & BERAN, PLC
      September 13, 2012

                       */s/ Lynn L. Tavenner*
                       Lynn L. Tavenner, Esq. (VA Bar No. 30083)
                       Paula S. Beran, Esq. (VA Bar No. 34679)
                       20 North Eighth Street, 2nd Floor
                       Richmond, Virginia 23219
                       (804) 783-8300

                                 - and -

                       PACHULSKI STANG ZIEHL & JONES LLP
                       Jeffrey N. Pomerantz, Esq.
                       Andrew W. Caine, Esq.
                       10100 Santa Monica Boulevard
                       Los Angeles, California 90067-4100
                       (310) 277-6910

                               - and –

                       PACHULSKI STANG ZIEHL & JONES LLP
                       Robert J. Feinstein, Esq.
                       780 Third Avenue, 36th Floor
                       New York, New York 10017
                       (212) 561-7700

                       *Counsel to the Circuit City Stores, Inc.*
                       *Liquidating Trust*

## EXHIBIT A

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

- and –

Robert J. Feinstein, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Telecopy: (212) 561-7777

*Counsel to the Liquidating Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                                     :        Chapter 11
                                           :
CIRCUIT CITY STORES, INC., et al.,   :        Case No. 08-35653 (KRH)
                                           :
              Debtors.                :
- - - - - - - - - - - - - - :        Jointly Administered
                                           x

**ORDER SUSTAINING LIQUIDATING TRUST'S FIFTY-FIRST OMNIBUS
OBJECTION TO CLAIMS: DISALLOWANCE OF CERTAIN INVALID CLAIMS
(SEVERANCE – NO CONTRACT)**

THIS MATTER having come before the Court[2] on the *Liquidating Trust's Fifty-*

*First Omnibus Objection to Claims:  Disallowance of Certain Invalid Claims (Severance – No*

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

*Contract*) (the "Objection"), which requested, among other things, that the claims specifically identified on Exhibit C attached to the Objection be disallowed for those reasons set forth in the Objection; and it appearing that due and proper notice and service of the Objection as set forth therein was good and sufficient and that no other further notice or service of the Objection need be given; and it further appearing that no response was timely filed or properly served by the Claimants being affected by this Order; and it appearing that the relief requested on the Objection is in the best interest of the Liquidating Trust, the Debtors' estates and creditors and other parties-in-interest; and after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.     The Objection is SUSTAINED.

2.     The Claim identified on Exhibit A as attached hereto and incorporated herein is forever disallowed in its entirety for all purposes in these bankruptcy cases.

3.     The Court will conduct a status conference on _____, 2012 at 2:00 p.m. for all Claims identified on Exhibit B attached hereto.

4.     The Liquidating Trust's rights to object to any claim including (without limitation) the Claims subject to the Objection, on any grounds that applicable law permits, are not waived and are expressly reserved.

5.     The Liquidating Trust shall serve a copy of this Order on the claimants included on the exhibits to this Order on or before five (5) business days from the entry of this Order.

6.     This Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

Dated: Richmond, Virginia
        September __, 2012


_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

TAVENNER & BERAN, PLC


_____
Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
                        - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910
                        - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Lynn L. Tavenner*
Lynn L. Tavenner

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

**EXHIBIT B**
**ALPHABETICAL LISTING OF CLAIMANTS**

| Claim Holder | Claim Number | Exhibit |
|---|---|---|
| CALABREE, LEONARD<br><br>176 WILLIAM FEATHER DR<br><br><br>VOORHEES, NJ 08043-2992 | 7335<br><br>2000733501 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| CATHCART, MICHAEL E<br><br>616 BRIGHTON DRIVE<br><br><br>RICHMOND, VA 23235-5000 | 8178<br><br>2000817801 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| GREG HARRIS JR<br><br>5622 Gatewood St<br><br><br>Houston, TX 77053 | 14451<br><br>2001445101 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| HOLLAND, VERNESSA D<br><br>8547 ALDEBURGH DR<br><br><br>RICHMOND, VA 23294-5108 | 8197<br><br>2000819701 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| JACQUELINE HARRIS<br><br>1581 Oakland Chase Pkwy<br><br><br>Richmond, VA 23231-5745 | 14531<br><br>2001453101 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| NINO MICHAEL A<br><br>7100 Lakeshore Dr<br><br><br>Quinton, VA 23141 | 9263<br><br>2000926301 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| OWEN, LINDA M<br><br>2003 WINDBLUFF CT<br><br><br>RICHMOND, VA 23238 | 9555<br><br>2000955501 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |
| POWELL, THERESA<br><br>6445 SPRING CREST LANE<br><br><br>RICHMOND, VA 23231-5325 | 3686<br><br>2000368601 | Exhibit C<br><br>INVALID CLAIMS TO BE EXPUNGED |

severance - no agreement

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

**EXHIBIT C**

**INVALID CLAIMS TO BE EXPUNGED**

| Date Filed | Claim Number | Name  Address | Notice Name | Docketed Claim Amount | Docketed Claim Class | Debtor(s) | Proposed Modified Claim Amount | Comments |
|---|---|---|---|---|---|---|---|---|
| 1/13/2009 | 3686 2000368601 | POWELL, THERESA<br><br>6445 SPRING CREST LANE<br><br>RICHMOND, VA 23231-5325 | | $15,786.00 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |
| 1/28/2009 | 7335 2000733501 | CALABREE, LEONARD<br><br>176 WILLIAM FEATHER DR<br><br>VOORHEES, NJ 08043-2992 | | $109,272.00 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |
| 1/29/2009 | 8178 2000817801 | CATHCART, MICHAEL E<br><br>616 BRIGHTON DRIVE<br><br>RICHMOND, VA 23235-5000 | | $8,064.00 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |
| 1/29/2009 | 8197 2000819701 | HOLLAND, VERNESSA D<br><br>8547 ALDEBURGH DR<br><br>RICHMOND, VA 23294-5108 | | $8,505.00 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |
| 1/30/2009 | 9263 2000926301 | NINO MICHAEL A<br><br>7100 Lakeshore Dr<br><br>Quinton, VA 23141 | | $20,670.00 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |

severance - no agreement

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

**EXHIBIT C**

**INVALID CLAIMS TO BE EXPUNGED**

| Date Filed | Claim Number | Name  Address | Notice Name | Docketed Claim Amount | Docketed Claim Class | Debtor(s) | Proposed Modified Claim Amount | Comments |
|---|---|---|---|---|---|---|---|---|
| 1/30/2009 | 9555<br><br>2000955501 | OWEN, LINDA M<br><br>2003 WINDBLUFF CT<br><br>RICHMOND, VA 23238 | | $216,200.00 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |
| 7/1/2009 | 14451<br><br>2001445101 | GREG HARRIS JR<br><br>5622 Gatewood St<br><br>Houston, TX 77053 | | $13,011.84 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |
| 7/23/2009 | 14531<br><br>2001453101 | JACQUELINE HARRIS<br><br>1581 Oakland Chase Pkwy<br><br>Richmond, VA 23231-5745 | | $6,307.20 | U | CIRCUIT CITY STORES, INC. | $0.00 | The Trust's books and records do not reflect any severance due to the claimant. |

8

severance - no agreement

# CIRCUIT CITY STORES, INC.
## SEVERANCE PLAN

Circuit City Stores, Inc. (the "Company") hereby adopts the Circuit City Stores, Inc. Severance Plan (the "Plan") for the benefit of certain employees of the Company on the terms and conditions hereinafter stated.

The Plan, as set forth herein, is intended to help retain qualified employees, maintain a stable work environment, provide guidelines for the payment of Severance Pay (as hereinafter defined), and alleviate in part or in full any financial hardship which may be experienced by certain of those Employees of the Company in the event of a Severance (as hereinafter defined) of employment under certain enumerated circumstances. The Plan applies to covered employees whose employment is terminated on and after the Effective Date, as hereinafter defined.  There is, however, no legal requirement that the Company pay any Severance Pay and the Company reserves the right not to pay Severance Pay or to pay a lesser amount of Severance Pay than is set forth in these guidelines.  Rather, these guidelines confirm the Company's general philosophy of assisting its employees in difficult circumstances wherever it reasonably can.

This document serves as the Plan document for the Company and, other than the Summary Plan Description, there are no other Plan documents. This Plan supersedes any and all prior plans, policies or practices, written or oral, with respect to severance or severance pay, which may have previously applied.

The Plan, as a "severance pay arrangement" within the meaning of Section 3(2)(B)(i) of ERISA, is intended to be excepted from the definitions of "employee pension benefit plan" and "pension plan" set forth under Section 3(2) of ERISA, and is intended to meet the descriptive requirements of a plan constituting a "severance pay plan" within the meaning of regulations published by the Secretary of Labor at Title 29, Code of Federal Regulations, § 2510.3-2(b).

SECTION 1. DEFINITIONS.   As hereinafter used:

1.1     "Board" means the Board of Directors of the Company.

1.2     "Company" means Circuit City Stores, Inc. and, where applicable, shall include its subsidiaries and affiliates.

1.3     "Effective Date" means October 20, 2008.

1.4     "Employee" means a person who regularly is employed by the Company, excluding (i) any person who is included in a unit of employees covered by a collective bargaining agreement unless otherwise provided pursuant to agreement between the Company and such person's collective bargaining representative, (ii) any person who enters into and is

subject to an individual employment or severance agreement with the Company, and (iii) any temporary, occasional or seasonal employee.

1.5    "ERISA" means the Employee Retirement Income Security Act of 1974, as it may be amended from time to time.

1.6    "Hourly Employee" means an Employee whose Pay is calculated based on the number of hours worked each week.

1.7    "Pay" means an amount equal to an Employee's Salary, calculated in terms of a "day rate." For Salaried Employees, a "Week of Pay" shall mean the amount of Salary such employee would be paid over the course of seven consecutive calendar days. For Hourly Employees, a "Week of Pay" shall mean the amount of Salary such employee would be paid over the course of five consecutive business days. With respect to Hourly Employees, the "day rate" shall be calculated such that (i) there are 8 hours in a day for Employees classified as full-time employees and (ii) there are 4 hours in a day for Employees classified as part-time employees.

1.8    "Plan" means the Circuit City Stores, Inc. Severance Plan as set forth herein, as may be amended from time to time.

1.9    "Plan Administrator" means the Compensation and Personnel Committee of the Board or such other person or persons appointed by the Board to administer the Plan.

1.10   "Salary" means an Employee's annual base salary or base hourly wage, as applicable, as in effect on his or her Severance Date. Salary does not include overtime, shift differential, bonus, commission or any other remuneration.

1.11   "Salaried Employee" means an "exempt" Employee.

1.12   "Service" means the Employee's most recent period of continuous employment with the Company.

1.13   "Severance" means the termination of an Employee's employment by the Company on or after the Effective Date due to (i) an elimination of a position, (ii) a closing of a division, or (iii) any other restructuring of the Company, in each case as determined by the Company in its sole discretion. An Employee will not have incurred a Severance under this Plan if his or her employment is discontinued for any other reason, including, but not limited to, termination of employment on account of (i) poor performance or a violation of Company policy, as determined by the Company in its sole discretion; (ii) voluntary retirement; (iii) death; (iv) a physical or mental condition causing the Employee's inability substantially to perform his or her duties with the Company, including, without limitation, such condition entitling him or her to benefits under any sick pay or disability income policy or program of the Company; or (v) a sale of assets, sale of stock, any licensing arrangement or any other arrangement, whereby control of the unit, subunit or division of the Company in which the Employee works, is transferred from the Company to another company, if the Employee is offered employment by

2

the acquiring company, whether or not on the same terms and conditions of employment and whether or not the Employee actually accepts such offer of employment.

1.14    "<u>Severance Date</u>" means the date on which an Employee incurs a Severance.

1.15    "<u>Severance Multiplier</u>" means the number of weeks of Pay per Year of Service (as set forth on Schedule 2.1) that a Severed Employee may be entitled to under Section 2.1.

1.16    "<u>Severance Pay</u>" means payments made to Employees pursuant to Sections 2.1 and 2.2 hereof.

1.17    "<u>Severed Employee</u>" means an Employee who has experienced a Severance.

1.18    "<u>WARN Act</u>" means the Worker Adjustment and Retraining Notification Act.

1.19    "<u>Year of Service</u>" shall mean each 365-day period of the Employee's Service, commencing on the Employee's date of hire, or the anniversary of such date of hire, as applicable.

SECTION 2.<u>Severance Pay.</u>

2.1    Subject to Sections 2.3, 2.4, 2.5 and 2.6 hereof (a) each Employee who incurs a Severance shall be entitled to receive Severance Pay, which shall be calculated by multiplying the applicable Severance Multiplier by each full Year of Service (which, for purposes of determining Severance Pay hereunder, shall be rounded down to the nearest whole number in the event that of a fractional Year of Service), to determine the total number of weeks of Pay that a Severed Employee is entitled to receive; (b) such amount shall be increased or decreased in accordance with the Minimum Severance Pay and Maximum Severance Pay amounts, as set forth in Schedule 2.1 below and (c) such amount shall be paid less all applicable payroll taxes and authorized withholdings.  Notwithstanding the foregoing, (i) if an Employee is rehired by the Company prior to his or her Severance Date, such Employee shall no longer be eligible to receive Severance Pay and no such payments shall be made, and (ii) if an Employee is rehired by the Company following his or her Severance Date, such Employee shall no longer be eligible to receive Severance Pay and, effective as of the Employee's date of rehire, no further payments shall be made.

3

**Schedule 2.1**

| Division | Position / Level | Severance Multiplier | Minimum Severance Pay | Maximum Severance Pay |
|---|---|---|---|---|
| **Store Support Center** | Levels 9 – 13 | 2 weeks of Pay per Year of Service | 12 weeks of Pay | 24 weeks of Pay |
| | Levels 7 – 8 | 2 weeks of Pay per Year of Service | 4 weeks of Pay | 8 weeks of Pay |
| | Levels 4 – 6 | 2 weeks of Pay per Year of Service | 4 weeks of Pay | 4 weeks of Pay |
| | Levels 1 – 3 | 1 week of Pay per Year of Service | 2 weeks of Pay | 4 weeks of Pay |
| **Field Region and District** | S13 – S15 | 2 weeks of Pay per Year of Service | 12 weeks of Pay | 24 weeks of Pay |
| | S10 – S12 | 2 weeks of Pay per Year of Service | 4 weeks of Pay | 8 weeks of Pay |
| **Stores** | Store Directors | 2 weeks of Pay per Year of Service | 2 weeks of Pay | 8 weeks of Pay |
| | Department Managers and all other Exempt Employees | 2 weeks of Pay per Year of Service | 2 weeks of Pay | 4 weeks of Pay |
| | Exempt Employees with at least 10 years of Service | N/A | N/A | 12 weeks of Pay |
| | All Hourly Associates | 1 week of Pay per Year of Service | 2 weeks of Pay | 4 weeks of Pay |
| | Non-Exempt Employees with at least 10 Years of Service | N/A | N/A | 8 weeks of Pay |

2.2    A Severed Employee's Severance Pay shall be paid in the form of salary continuation payments in accordance with the Company's regular payroll cycles for the number of weeks of Pay such Severed Employee is entitled to under Section 2.1; provided, however, that if a Severed Employee is an Hourly Employee, such Hourly Employee's Severance Pay shall be paid in a lump sum. Payment shall commence or shall be made as soon as practicable but in no

4

event later than 60 days following the Employee's Release Effective Date (as hereinafter defined).

2.3     No Employee who incurs a Severance shall be eligible to receive any payments under the Plan unless he or she first executes a Release Agreement (substantially in the form of Exhibit A to the Plan, or in such other form as is required to comply with applicable law) releasing all claims of any kind against the Company and others set forth on Exhibit A (and, among other things, confirming the Employee's obligation not to disclose any of the Company's confidential information), no later than the date specified by the Company (which shall be at least 45 days but no more than 90 days following the Employee's receipt of a copy of the Release Agreement); provided that the Employee may not sign the Release Agreement prior to the Severance Date.  If the Employee executes the Release Agreement in accordance with the requirements of this Section 2.3, and does not revoke it within seven days, the Release Agreement will become effective on the eighth day following the Employee's execution (the "Release Effective Date).  If the Employee does not execute and return such Release Agreement, or if the Employee revokes the Release Agreement within seven days following execution, such that it does not become effective within the aforesaid period, the Employee shall not be entitled to any payments under this Plan.

2.4     Where the Company provides an Employee with advance notice of a Severance, the Employee will be eligible to receive Severance Pay under the Plan only if he or she remains employed by the Company until the Employee's Severance Date as specified by the Company .  Without limiting the generality of the foregoing, if an Employee transfers to another position within the Company or terminates employment with the Company prior to his or her Severance Date on account of (i) a voluntary resignation, or (ii) poor performance or a violation of a Company policy, as determined by the Company in its sole discretion, such Employee shall not be eligible to receive Severance Pay under the Plan.

2.5     In the event of the Severed Employee's death after the Severance Date, but prior to full payment of Severance Pay, any unpaid portion of the Severance Pay will be paid to the Severed Employee's designated beneficiary (or to the Severed Employee's estate if no beneficiary is designated) as if the Severed Employee had survived under the same terms and conditions provided hereunder, except that such payment will be made in a lump sum as soon as practicable, but in no event later than 45 days after the Company receives notice of such Employee's death.

2.6     Notwithstanding anything in this Plan to the contrary, the Company expressly reserves the right not to pay Severance Pay or to pay a lesser amount of Severance Pay than is set forth in this Plan.

SECTION 3. PLAN ADMINISTRATION.

3.1     The Plan shall be interpreted, administered and operated by the Plan Administrator, which shall have complete authority in its sole discretion subject to the express provisions of the Plan, to determine who shall be eligible for Severance Pay, to interpret the Plan, to prescribe, amend and rescind such rules and regulations relating to the Plan as it shall

5

deem necessary or appropriate, and to make all other determinations necessary or advisable for the administration of the Plan.

3.2     All questions of any character whatsoever arising in connection with the interpretation of the Plan or its administration or operation shall be submitted to and settled and determined by the Plan Administrator in accordance with the procedure for claims and appeals described in Section 6.  Any such settlement and determination shall be final and conclusive, and shall bind and may be relied upon by the Company, each of the Employees and all other parties in interest.

3.3     The Plan Administrator may delegate any of its duties hereunder to such person or persons from time to time as it may designate.

3.4     The Plan Administrator is empowered, on behalf of the Plan, to engage accountants, legal counsel and such other personnel as it deems necessary or advisable to assist it in the performance of its duties under the Plan.  The functions of any such persons engaged by the Plan Administrator shall be limited to the specified services and duties for which they are engaged, and such persons shall have no other duties, obligations or responsibilities under the Plan.  Such persons shall exercise no discretionary authority or discretionary control respecting the management of the Plan.  All reasonable expenses thereof shall be borne by the Company.

3.5     In no event shall the Plan Administrator be personally liable for any action, determination or interpretation made in good faith with respect to the Plan.  The Plan Administrator shall be indemnified and held harmless by the Company against any cost or expense (including counsel fees) reasonably incurred by the Plan Administrator or liability (including any sum paid in settlement of a claim with the approval of the Company) arising out of any act or omission to act in connection with this Plan, unless arising out of the Plan Administrator's own fraud or bad faith.  Such indemnification shall be in addition to any rights of indemnification the Plan Administrator may have as an officer or director or otherwise under the bylaws of the Company.

SECTION 4. PLAN MODIFICATION OR TERMINATION.

4.1     The Plan may be modified, amended or terminated by the Board at any time.

4.2     The benefits provided for in this Plan are not vested benefits and the Plan shall not be funded.  No Employee shall have any right to or interest in any assets of the Company or other rights under this Plan.

SECTION 5. GENERAL PROVISIONS.

5.1     Nothing in the Plan shall be deemed to give any Employee the right to be retained in the employ of the Company or any subsidiary thereof, or to interfere with the right of the Company to discharge him or her at any time and for any reason, with or without notice or cause.

6

5.2     Except as otherwise provided herein or by law, no right or interest of any Employee under the Plan shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including without limitation by execution, levy, garnishment, attachment, pledge or in any manner; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Employee under the Plan shall be liable for, or subject to, any obligation or liability of such Employee.  When a payment is due under this Plan to an Employee who is unable to care for his or her affairs, payment may be made directly to his or her legal guardian or personal representative.

5.3     If the Company is obligated by law (including the WARN Act or any similar state or foreign law) or by contract to pay severance pay, a termination indemnity, notice pay, or the like, or if the Company is obligated by law or by contract to provide advance notice of separation, then the Company may elect to reduce any Severance Pay hereunder by the amount of any such severance pay, termination indemnity, notice pay or the like, as applicable.

5.4     If any provision of the Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and the Plan shall be construed and enforced as if such provisions had not been included.

5.5     The Company intends that this Plan constitute a "welfare plan" as such term is defined under ERISA. The Plan shall be governed by and construed in accordance with ERISA and all applicable rules and regulations thereunder and to the extent not pre-empted by ERISA, the laws of the Commonwealth of Virginia.

5.6     The Plan shall be effective as of the Effective Date and shall remain in effect unless and until terminated by the Board pursuant to Section 4.1 hereof.

5.7     Section 409A.  It is intended that the Plan constitute a "separation pay plan," as defined in Section 409A of the Internal Revenue Code ("Section 409A"), and that each of the Severance payments constitute separate payments for purposes of Section 409A. Accordingly, to the maximum extent permitted, the payments under this Plan shall be interpreted and administered in a manner such that they do not constitute deferred compensation within the meaning of Section 409A.  No Severance Pay shall be paid later than the last day of the second taxable year of the Employee following the taxable year of the Employee in which the Employee's Severance occurs.

SECTION 6.   CLAIMS, INQUIRIES, APPEALS.

6.1     Applications for Benefits and Inquiries.  Any application for benefits, inquiries about the Plan or inquiries about present or future rights under the Plan must be submitted to the Plan Administrator in writing, as follows:

7

Plan Administrator
Circuit City Stores, Inc.
9950 Maryland Drive
Richmond, Virginia 23233
Attention:  Vice President, Human Resources

6.2    Denial of Claims.  In the event that any application for benefits is denied in whole or in part, the Plan Administrator must notify the applicant, in writing, of the denial of the application, and of the applicant's right to review the denial.  The written notice of denial will be set forth in a manner designed to be understood by the employee, and will include specific reasons for the denial, specific references to the Plan provision upon which the denial is based, a description of any information or material that the Plan Administrator needs to complete the review and an explanation of the Plan's review procedure.

This written notice will be given to the employee within 90 days after the Plan Administrator receives the application, unless special circumstances require an extension of time, in which case, the Plan Administrator has up to an additional 90 days for processing the application.  If an extension of time for processing is required, written notice of the extension will be furnished to the applicant before the end of the initial 90-day period.

This notice of extension will describe the special circumstances necessitating the additional time and the date by which the Plan Administrator is to render his or her decision on the application.  If written notice of denial of the application for benefits is not furnished within the specified time, the application shall be deemed to be denied.  The applicant will then be permitted to appeal the denial in accordance with the Review Procedure described below.

Request for a Review.  Any person (or that person's authorized representative) for whom an application for benefits is denied (or deemed denied), in whole or in part, may appeal the denial by submitting a request for a review to the Plan Administrator within 60 days after the application is denied (or deemed denied).  The Plan Administrator will give the applicant (or his or her representative) an opportunity to review pertinent documents in preparing a request for a review and submit written comments, documents, records and other information relating to the claim.  A request for a review shall be in writing and shall be addressed to:

Plan Administrator
Circuit City Stores, Inc.
9950 Maryland Drive
Richmond, Virginia 23233
Attention:  Vice President, Human Resources

A request for review must set forth all of the grounds on which it is based, all facts in support of the request and any other matters that the applicant feels are pertinent.  The Plan Administrator may require the applicant to submit additional facts, documents or other material as he or she may find necessary or appropriate in making his or her review.

6.3    Decision on Review.  The Plan Administrator will act on each request for review within 60 days after receipt of the request, unless special circumstances require an

8

extension of time (not to exceed an additional 60 days), for processing the request for a review. If an extension for review is required, written notice of the extension will be furnished to the applicant within the initial 60-day period.  The Plan Administrator will give prompt, written notice of his or her decision to the applicant.  In the event that the Plan Administrator confirms the denial of the application for benefits in whole or in part, the notice will outline, in a manner calculated to be understood by the applicant, the specific Plan provisions upon which the decision is based.  If written notice of the Plan Administrator's decision is not given to the applicant within the time prescribed in this Section 6.4 the application will be deemed denied on review.

6.4     Rules and Procedures.  The Plan Administrator may establish rules and procedures, consistent with the Plan and with ERISA, as necessary and appropriate in carrying out his or her responsibilities in reviewing benefit claims.  The Plan Administrator may require an applicant who wishes to submit additional information in connection with an appeal from the denial (or deemed denial) of benefits to do so at the applicant's own expense.

6.5     Exhaustion of Remedies.  No legal action for benefits under the Plan may be brought until the claimant (a) has submitted a written application for benefits in accordance with the procedures described by Section 6.1 above, (b) has been notified by the Plan Administrator that the application is denied (or the application is deemed denied due to the Plan Administrator's failure to act on it within the established time period), (c) has filed a written request for a review of the application in accordance with the appeal procedure described in Section 6.3 above and (d) has been notified in writing that the Plan Administrator has denied the appeal (or the appeal is deemed to be denied due to the Plan Administrator's failure to take any action on the claim within the time prescribed by Section 6.4 above).

**EXHIBIT A**

**[DATE]**

**[EMPLOYEE NAME]**
**[ADDRESS]**
**[ADDRESS]**

**Re:     Release Agreement**

This letter confirms that your employment with Circuit City Stores, Inc. (the "Company") will terminate on **[DATE]** (your termination date).  This Release Agreement below is being provided for your review and consideration.  Do not sign this Release Agreement before your termination date.

1.     Subject to your execution and continued compliance with the terms and conditions of this Release Agreement, the Company has agreed to provide you with severance in an amount equal to _____ weeks of your base pay, totaling $_____ (gross), less all applicable payroll taxes and withholdings, pursuant to the Circuit City Stores, Inc. Severance Plan of October 2008 (the "Plan")[1].

2.     Hourly associates will be paid their severance in a lump sum.  Salaried associates will be paid their severance in the form of salary continuation payments, on a bi-weekly basis, consistent with the Company's regular payroll practices.  Such payments shall commence or be paid as soon as practicable but no later than 60 days following the Release Effective Date (as defined in Paragraph 10 below).  If you are offered and accept another employment opportunity with the Company before severance payments have been made or commenced, you will no longer be eligible for severance pay under the Plan, and this Release Agreement will be null and void.  Further, if severance payments have been made or commenced pursuant to the Plan, and you are then offered re-employment with the Company, the Company will have the right to require you to return the severance you received as a condition of re-employment and not provide you with any additional severance, in which case this Release Agreement will be null and void.  In order to be eligible for severance you must remain employed by the Company through your termination date.  If you transfer to another position within the Company prior to your termination date, or your employment is terminated prior to your termination date on account of your voluntary resignation or your poor performance or a violation of a Company policy, as determined by the Company in its sole discretion, you will not be eligible to receive severance.  You understand and agree that the Plan and the payments provided thereunder shall in no way be deemed to constitute or give rise to a continuing employment relationship between you and the Company after your termination date or entitle you to any other benefits to which employees of the Company may be entitled after your termination date.  Severance payments under the Plan are in addition to all wages and unused paid time off accrued through the date of termination.

---

[1]     A Summary Plan Description describing the Plan will be made available to you.

A-1

3.      You acknowledge and agree that you are not otherwise entitled to receive the payments under the Plan unless you agree to the terms of this Release Agreement.  In exchange for the payments under the Plan, you, on behalf of yourself and your heirs, executors, administrators, successors and assigns, hereby knowingly and voluntarily release the Company and all of its affiliated or related companies, together with each of their officers, stockholders, directors, employees, agents, insurers and reinsurers, attorneys and representatives, and all of their, predecessors, successors, heirs, and assigns (collectively, the "Releasees"), from all claims, demands, causes of action, obligations, damages and liabilities of every kind or character whatsoever, whether presently known or unknown, suspected or unsuspected, both in law and equity ("Claims"),which you ever had, now have or may hereafter claim to have against any of the Releasees by reason of any matter, cause or thing whatsoever arising from the beginning of time until the date you sign this Release Agreement (the "Release").  This Release includes, without limitation, any Claims in connection with your employment and/or the termination of your employment; Claims of libel, slander, wrongful discharge, intentional infliction of emotional harm, fraud or any other state or federal tort; Claims under any statute or regulation, including but not limited to, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, Sections 1981 through 1988 of Title 42 of the United States Code, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act of 1988, the Sarbanes Oxley Act of 2002, each as amended, or under any other federal, state or local law, regulation, ordinance or common law; and all Claims under any policy, agreement, understanding or promise, written or oral, formal or informal, between you and the Company or any of the other Releasees.  The parties recognize, however, that nothing contained in this Release shall (i) release any claim that cannot be waived under applicable law, including but not limited to, any rights to indemnification under applicable state law, (ii) affect any vested employee benefits or pension payments to which you may be entitled under any existing employee benefit plans of the Company, or (iii) be construed to prohibit you from instituting legal action to enforce any of the provisions of the Plan or this Release Agreement.  By signing this Release Agreement, you represent that neither you nor your heirs, executors, administrators, successors or assigns shall be entitled to any personal recovery in any action or proceeding that may be commenced on your behalf arising out of the matters released above.

4.      You acknowledge and agree that except as specified in Paragraph 1 above, all compensation, benefits, and other obligations due you by the Company, whether by contract or law, have been paid or otherwise satisfied in full.

5.      You expressly acknowledge that the Release set forth in Paragraph 2 above is intended to include in its effect, without limitation, all claims which you do not know or suspect to exist in your favor at the time of execution hereof, and that the Release contemplates the extinguishment of any such claim or claims.

For California Associates, it is further understood and agreed that all rights under Section 1542 of the California Civil Code, or any statutory or common law principle of similar effect, are hereby expressly waived by you.  Said Section 1542 reads as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

6.      You represent that you have returned to the Company all of its property that you received in connection with your employment with the Company.

7.      You agree to keep confidential and not disclose any of the terms or provisions of this Release Agreement to anyone other than your immediate family or as may be required for obtaining legal or tax advice, unless such disclosure is required by law or consented to in writing by the Company.

8.      You are also reminded that you are still bound under the Circuit City Code of Business Conduct and you agree that at all times in the future you will not use or disclose to any person or entity Circuit City's confidential information learned during the course of your employment.

9.      If any clause or provision of this Release Agreement is illegal, invalid or unenforceable under present or future laws, then the remainder of this Release Agreement shall not be affected thereby, and in lieu of each clause or provision of this Release Agreement which is illegal, invalid or unenforceable, there shall be added, as part of this Release Agreement, a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and as may be legal, valid and enforceable.

10.      A waiver by any party of a breach of any of the provisions of this Release Agreement shall not operate or be construed as a waiver of any other provision of this Release Agreement or of any subsequent breach of the same or any other provision of this Release Agreement.  The understandings and representations of the parties set forth in this Release Agreement shall survive any breach of this Release Agreement and be enforceable by any non-breaching party.

11.      You understand that you have at least forty-five (45) days following your receipt of this Release Agreement to review this Release Agreement and its terms and to reflect upon them and consider whether you want to sign it, although you may sign it sooner; provided, however, that you may not sign this Release Agreement prior to your termination date.  If you sign this Release Agreement, you will have seven (7) days from the date of execution to revoke your acceptance of its terms.  If no such revocation occurs, this Release Agreement will become effective on the eighth (8th) day following your execution of this Release Agreement (the "Release Effective Date").

12.      This Release Agreement does not waive any rights or claims that may arise after the date you sign this Release Agreement.

13.    The Company advises you to consult with an attorney of your choosing prior to signing this Release Agreement.  By signing this Release Agreement, you are confirming that you entered into this Release Agreement and specifically, the Release in Paragraph 2, knowingly and voluntarily, in exchange for valuable consideration, after having had adequate time to consider it and have been given the opportunity to discuss it with an attorney of your choice. You acknowledge and agree that the payments provided under the Plan are sufficient consideration to require you to abide with your obligations under this Release Agreement, including but not limited to the Release set forth in Paragraph 2.

14.    The Plan and this Release Agreement are being offered to you in connection with a group termination.  In accordance with 29 C.F.R. § 1625.22, attached hereto as Attachment 1 is a listing of the ages and job titles of persons who were selected for this severance program and persons in the same decisional unit who were not selected for this severance program.  You represent that you have read and fully understand the information provided on Attachment A and have been given the opportunity to discuss it with an attorney of your choice.

15.    To revoke your acceptance of this Release Agreement you must deliver your revocation in writing to Circuit City Stores, Inc., c/o Manager, HR Administration, 9954 Mayland Drive, Deep Run III, 2nd Floor, Richmond, Virginia 23233, within seven (7) days from the date of your signature.  In the event that you properly revoke this Release Agreement, it shall become null and void and shall not become effective and you will not be entitled to the severance payments described in the Plan.

16.    The Plan and this Release Agreement set forth the entire agreement between you and the Company relating to your employment and termination and supersedes any other prior agreements or understandings between you and the Company.

17.    This Release Agreement shall be construed, interpreted, and enforced according to Virginia law, without regard to the choice of law provisions thereof.

18.    This Release Agreement expires ninety (90) days from the date of this Release Agreement.  If it is not signed and returned within this time period, you will no longer be eligible for severance pay and this Release Agreement will be null and void.

Very truly yours,

[                              ]

A-4

I will not sign this Release Agreement before the last day of my employment with Circuit City. By signing below, I agree to the above terms.

_____
Print Name

_____
Signature

Date:_____

**Return this signed agreement in the enclosed self-addressed stamped envelope to Circuit City Stores, Inc., HR Administration, 9954 Mayland Drive, Deep Run III, Second Floor, Richmond, VA 23233.**