Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | **:** | Chapter 11 |
| | **:** | |
| CIRCUIT CITY STORES, INC., et al., | **:** | Case No. 08-35653-KRH |
| | **:** | |
| Debtors. | **:** | (Jointly Administered) |
| | **:** | |

## NOTICE OF LIQUIDATING TRUST'S SIXTY-FIFTH OMNIBUS OBJECTION TO CLAIMS ARISING UNDER NON-COMPETE AGREEMENTS: <u>REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS</u>

**PLEASE TAKE NOTICE** that the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust" and/or "Trust"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims in the above-captioned cases of the above referenced estates of Circuit City Stores, Inc. et al. (collectively, the "Debtors") filed the Liquidating Trust's Sixty-Fifth Omnibus Objection to Claims Arising Under Non-Compete Agreements: Reduction of Certain Partially Invalid Claims (the "Objection") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  A copy of the Objection is attached to this notice (this "Notice") as <u>Exhibit 1</u>.  By the Objection, the Liquidating Trust is seeking to reduce certain partially invalid claims arising under non-compete agreements.

**PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections (Docket No. 2881) (the "Order"), by which the Bankruptcy Court approved procedures for filing omnibus objections to proofs of claim and requests for allowance and payment of administrative expenses and/or cure claims (collectively,

the "Claims") in connection with the above-captioned chapter 11 cases (the "Omnibus Objection Procedures").

Specifically, the Objection seeks to reduce, disallow, or reclassify certain claims, including your claim(s), listed below, all as set forth in the Objection.

| TO: | Claim Number | Claim Amount | Reference Objection |
|---|---|---|---|

SPECIFIC INFORMATION PROVIDED ON INDIVIDUALIZED NOTICE

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE PROOF(S) OF CLAIM LISTED HEREIN THAT YOU FILED AGAINST ONE OR MORE OF THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES ARE SUBJECT TO THE OBJECTION.  YOUR RIGHTS MAY BE AFFECTED BY THE OBJECTION. THEREFORE, YOU SHOULD READ THIS NOTICE (INCLUDING THE OBJECTION AND OTHER ATTACHMENTS) CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**MOREOVER, PURSUANT TO RULE 3007-1 OF THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND THE OMNIBUS OBJECTION PROCEDURES, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY BY 4:00 P.M. (EASTERN TIME) ON NOVEMBER 29, 2012, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE OBJECTION AS CONCEDED AND ENTER AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT A HEARING.**

<u>**Critical Information for Claimants
Choosing to File a Response to the Objection**</u>

<u>Who Needs to File a Response</u>:  If you oppose the relief requested in the Objection and if you are unable to resolve the Objection with the Liquidating Trust before the deadline to respond, then you must file and serve a written response (the "Response") to the Objection in accordance with this Notice.

If you do not oppose the relief requested in the Objection, then you do not need to file a written Response to the Objection and you do not need to appear at the hearing.

<u>Response Deadline</u>:  The Response Deadline is **4:00 p.m. (Eastern Time) on November 29, 2012 (the "Response Deadline")**.

**THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED <u>AND</u> RECEIVED BY THE RESPONSE DEADLINE.**

Your Response will be deemed timely filed only if the Response is **actually received** on or before the Response Deadline by the Bankruptcy Court at the following address:

> Clerk of the Bankruptcy Court
> United States Bankruptcy Court
> 701 East Broad Street – Room 4000
> Richmond, Virginia 23219

Your Response will be deemed timely served only if a copy of the Response is actually received on or before the Response Deadline by the Liquidating Trust's attorneys:

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:   (804) 783-0178 |
| Telecopy:   (310) 201-0760 | |

The status hearing on the Objection will be held at **2:00 p.m. (Eastern Time) on December 6, 2012 at:**

> United States Bankruptcy Court
> 701 East Broad Street – Courtroom 5000
> Richmond, Virginia 23219

If you file a timely Response, in accordance with the Objection Procedures, you do <u>not</u> need to appear at the status hearing on the Objection.

## Procedures for Filing a Timely Response and Information Regarding the Hearing on the Objection

**Contents**.  To facilitate a speedy and non-judicial resolution of a Claim subject to the Objection, any claimant filing a Response shall use its best efforts to include the following (at a minimum) in its filed Response, to the extent such materials are not attached to its proof of claim:

> a.    a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;
>
> b.    the claimant's name and an explanation for the amount of the Claim;
>
> c.    a concise statement, executed by (or identifying by name, address and telephone number) a person with personal knowledge of the relevant facts that support the Response, setting forth the reasons why the Bankruptcy

Court should overrule the Objection as to the claimant's claim, including, without limitation (to the extent not set forth in its proof of claim), the specific factual and legal bases upon which the claimant intends to rely in support of its Response and its underlying Claim;

d.     a copy of or identification of any other documentation or other evidence of the Claim, to the extent not already included with the Claim that the claimant presently intends to introduce into evidence in support of its Claim at the hearing; provided, however, that for a Response filed in support of a Claim arising out of a lease of real property, the Response need not attach such lease if the claimant indicates its willingness to provide such documentation upon request;

e.     a declaration of a person with personal knowledge of the relevant facts that support the Response;

f.     the claimant's address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of the claimant's attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Address").  If a Response contains Notice Address that is different from the name and/or address listed on the Claim, the Notice Address will control and will become the service address for future service of papers with respect to all of the claimant's Claims listed in the Objection (including all Claims to be reduced or disallowed) and only for those Claims in the Objection; and

g.     to the extent such person differs from the person identified pursuant to subjection e, above, the name, address, telephone number, facsimile number, and electronic mail address of the representative of the claimant (which representative may be the claimant's counsel) party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf (collectively, the "Additional Addresses").  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Address will not become the service address for future service of papers.

**Additional Information**.  To facilitate a resolution of the Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Objection on the claimant's behalf.  Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

**Failure to File Your Timely Response**.  If you fail to file and serve your Response on or before the Response Deadline in compliance with the procedures set forth in this Notice, the Liquidating Trust will present to the Bankruptcy Court an appropriate order granting the relief requested in the Objection without further notice to you.

**Each Objection Is a Contested Matter**. Each Claim subject to the Objection and the Response thereto shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014, and any order entered by the Bankruptcy Court will be deemed a separate order with respect to such claim.

## Additional Information

**Requests for Information**.  You may also obtain a copy of the Objection or related documents on the internet, by accessing the website of www.kccllc.net/circuitcity.

**Reservation of Rights**.  Nothing in this Notice or the Objection constitutes a waiver of the Debtors' and/or the Trust's right to assert any claims, counterclaims, rights of offset or recoupment, preference actions, fraudulent-transfer actions or any other claims against you by the Liquidating Trust.  Unless the Bankruptcy Court allows your Claims or specifically orders otherwise, the Liquidating Trust has the right to object on any grounds to the Claims (or to any other Claims or causes of action you may have filed or that have been scheduled by the Debtors) at a later date on any grounds or bases.  In such event, you will receive a separate notice of any such objections.


Dated:    September 28, 2012

/s/ Lynn L. Tavenner
_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
          pberan@tb-lawfirm.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile:  310/201-0760
E-mail: jpomerantz@pszjlaw.com
          acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

**EXHIBIT 1**

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

*Counsel to the Circuit City Stores, Inc.
Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.
Liquidating Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.,[1] *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## LIQUIDATING TRUST'S SIXTY-FIFTH OMNIBUS OBJECTION TO CLAIMS ARISING UNDER NON-COMPETE AGREEMENTS: <u>REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS</u>

The Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), through

Alfred H. Siegel, the duly appointed trustee of the Liquidating Trust, pursuant to the *Second*

*Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and*

*Debtors in Possession and its Official Committee of Creditors Holding General Unsecured*

---

[1] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

Claims (the "Plan") in the above-captioned cases, hereby files this *Liquidating Trust's Sixty-Fifth*

*Omnibus Objection to Claims Arising Under Non-Compete Agreements: Reduction of Certain*

*Partially Invalid Claims* (the "Objection"), and hereby moves this court (the "Court"), pursuant

to sections 105 and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as

amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for entry of an order in the form

attached hereto as **Exhibit A**, granting the relief sought by this Objection, and in support thereof

states as follows:

**I.**

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Objection under 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and

legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502,

Bankruptcy Rule 3007 and Local Bankruptcy Rule 3007-1.

**II.**

**BACKGROUND**

2.      On November 10, 2008 (the "Petition Date"), the debtors in the above-

captioned cases (the "Debtors") filed voluntary petitions in this Court for relief under chapter 11

of the Bankruptcy Code.

3.      On November 12, 2008, the Office of the United States Trustee for the

Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Creditors' Committee").

2

4.      On November 12, 2008, the Court appointed Kurtzman Carson
Consultants LLC ("KCC") as claims, noticing, and balloting agent for the Debtors in these
chapter 11 cases pursuant to 28 U.S.C. § 156(c).

5.      On December 10, 2008, the Court entered that certain *Order Pursuant to
Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I)
Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form
and Manner of Notice Thereof* (Docket No. 890) (the "Claims Bar Date Order").

6.      Pursuant to the Claims Bar Date Order, the deadline for filing all "claims"
(as defined in 11 U.S.C. § 105(5)) arising before November 10, 2008 against the Debtors by any
non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009.  The deadline for
governmental units to file claims that arose before November 10, 2008 was 5:00 p.m. (Pacific)
on May 11, 2009.  Pursuant to the Claims Bar Date Order, this Court approved the form and
manner of the claims bar date notice, which was attached as Exhibit A to the Claims Bar Date
Order (the "Claims Bar Date Notice").

7.      On December 17 and 19, 2008, KCC served a copy of the Claims Bar
Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all
of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other
parties (Docket No. 1314).  In addition, the Debtors published the Claims Bar Date Notice in The
Wall Street Journal (Docket No. 1395) and The Richmond Times-Dispatch (Docket No. 1394).

8.      On April 1, 2009, this Court entered an *Order Establishing Omnibus
Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections*
(Docket No. 2881) (the "Omnibus Objection Procedures Order").

9.      On August 9, 2010, the Debtors and the Creditors' Committee filed the

Plan, which provides for the liquidation of the Debtors' assets and distribution of the proceeds

thereof under chapter 11 of the Bankruptcy Code.

10.      On September 10, 2010, the United States Bankruptcy Court, Eastern

District of Virginia, signed an Order confirming the Plan.

11.      The Plan became effective on November 1, 2010 (the "Effective Date"),

and pursuant to the Plan and Liquidating Trust Agreement approved therewith, the Liquidating

Trust assumed the right and responsibility to liquidate the Debtors' remaining assets, evaluate

and administer asserted claims, including prosecution of objections to claims, and to distribute

the assets to creditors.

**B.      The Non-Compete Claims.**

12.      Each of the two claims (the "Non-Compete Claims") listed on **Exhibit B**

attached hereto seeks payment on a general unsecured basis pursuant to a non-compete

agreement (collectively, the "Non-Compete Agreements").

13.      On or about January 30, 2009, Richard L. Sharp ("Sharp") filed a proof of

claim, which was assigned Claim No. 9165 (the "Sharp Claim"), pursuant to which Sharp has

asserted the right to payment on a general unsecured basis in the amount of $1,650,000.  Sharp

alleges that this sum is due pursuant to a Memorandum Agreement (the "Sharp Non-Compete

Agreement") that was entered into by Sharp and Circuit City Stores, Inc. (the "Company").  A

copy of the Sharp Claim and referenced agreement is attached hereto as **Exhibit C**.

14.      According to the Debtors' books and records, the Company paid $1.825

million to Sharp in 73 monthly installments of $25,000 beginning in October 2002 and ending in

November 2008, pursuant to the Sharp Non-Compete Agreement.  The Debtors did not make any

monthly payments to Sharp after the Petition Date.

4

15.     On or about January 30, 2009, Richard S. Birnbaum ("Birnbaum") filed a proof of claim, which was assigned Claim No. 9330 (the "Birnbaum Claim"), pursuant to which Birnbaum has asserted the right to payment on a general unsecured basis in the amount of $2,153,297  under a non-compete agreement (the "Birnbaum Non-Compete Agreement") that is substantively identical to the Sharp Non-Compete  Agreement.  A copy of the Birnbaum Claim and referenced agreement is attached hereto as **Exhibit D**.

16.     According to the Debtors' books and records, the Company paid $566,504.10 to Birnbaum in 30  monthly installments of $18,883.47 beginning on May 24, 2006, and ending on October 21, 2008,  pursuant to the Birnbaum Non-Compete Agreement.  The Debtors did not make any monthly payments to Birnbaum after the Petition Date.

17.     The Sharp Claim and the Birnbaum Claim are referred to herein collectively as the "Non-Compete Claims."  Sharp and Birnbaum are referred to herein collectively as the "Non-Compete Claimants."

**C.     The Non-Compete Agreements**

18.     Birnbaum and Sharp entered into substantively identical non-compete agreements (the "Non-Compete Agreements").  Their specific agreements are included with their claims, which are attached hereto as **Exhibits C** and **D**, respectively.

19.     Article 1 of the Non-Compete Agreements provided that "in exchange for the restrictive covenants set forth in Article 2 below, the Company" would pay a certain amount in equal monthly installments of $25,000 over a certain payment period.   Sharp Claim (attachment), **Exh. C**; Birnbaum Claim (attachment), **Exh. D**.  Birnbaum's Non-Compete Agreement provided that payments would begin in May, 2008.  However, Birnbaum elected to receive reduced monthly payments in the amount of $18,883.47 starting in June, 2006.

20.     Article 2 of the Non-Compete Agreements provided that during the payment period, the employee "shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business that is engaged in the same or similar business of the Company in one or more Metropolitan Statistical Areas ("MSAs") in which the Company is doing business on [the last day of the employee's employment]." *Id.*

21.     Article 2.4 of the Non-Compete Agreements contained an important limitation on the Company's obligation:

> To the extent any of the restrictive covenants herein are finally determined by a court to be unenforceable and the Court refuses to modify such covenant to become enforceable, the Company shall have no further obligation to make any of the payments set forth in Article 1.

Sharp Claim (attachment), **Exh. C**; Birnbaum Claim (attachment), **Exh. D**.

## III.

## SUMMARY OF RELIEF REQUESTED

22.     The Liquidating Trust respectfully asks the Court for a determination that the restrictive covenants set forth in the Non-Compete Agreements were unenforceable after March 8, 2009, when the Debtors closed their last remaining stores and ceased conducting business, and that, accordingly, no further payments were due after that date.

23.     The Liquidating Trust further requests that the Non-Compete Claims be reduced to reflect only the amounts due under the Non-Compete Agreements before the Debtors went out of business and the Non-Compete Agreements became unenforceable.  These amounts are listed in **Exhibit E**, attached hereto.

## IV.

## OBJECTION

### A.    Burden of Proof

24.    Pursuant to 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), a properly

filed proof of claim is *prima facie* evidence of the validity of the claim.  However, when an

objection to a proof of claim raises sufficient evidence, the burden of proof shifts to the claimant

to establish that the claim is allowable.  *See In re Garvida*, 347 B.R. 697 (9th Cir. BAP 2006); *In

re Stoecker*, 143 B.R. 879, 883 (N.D. Ill. 1992).  Moreover, the holder of a claim always bears

the burden of persuasion.  *Id.*

25.    As demonstrated below, this Objection rebuts the *prima facie* validity of

the Non-Compete Claims.  Therefore, the Non-Compete Claimants bear both the burden of proof

and the burden of persuasion to establish such Claims.  Those burdens cannot be met.

### B.    The Restrictive Covenant Is Unenforceable

26.    As set forth above, Article 2.4 of the Non-Compete Agreements included

an important limitation on the Company's obligation to pay the Non-Compete Claimants.  It

provided that if the restrictive covenant is "determined by a Court to be unenforceable," then the

Company "shall have no further obligation to make any of the payments set forth in Article 1."

Sharp Claim (attachment), **Exh. C**; Birnbaum Claim (attachment), **Exh. D**.  As set forth below,

this provision protected the Company by preventing it from having to make payment under the

Non-Compete Agreement if the Court found it unenforceable.  In other words, it protected the

Company from having to make payments under an agreement that it could not enforce.

27.    The Court should find that the restrictive covenant was unenforceable as

of March 8, 2009 because after that date the Company was no longer conducting business.

"Generally, the termination of an employer's business also terminates the restrictive employment covenant, because the abandonment or termination of the business extinguishes the covenant altogether." *Herring Gas Co., Inc. v. Pine Belt Gas, Inc.*, 2 So. 3d 636, 640 (Miss. 2009). *See also Premier Assocs., Ltd. v. Loper,* 149 Ohio App.3d 660, 778 N.E.2d 630, 637 (2002) (quoting *Gibson v. Eberle,* 762 P.2d 777, 779 (Colo. Ct. App. 1988)) (The right to enforce "a covenant ends with the termination or abandonment of the business to which the covenant was ancillary"); *Gibson,* 762 P.2d at 779 ("if the covenant is construed to permit the purchaser to enforce it after the business has been terminated or abandoned, it constitutes a void and unenforceable restraint of trade"); *Marcus v. Baker,* 221 S.W.2d 575, 576 (Tex. Civ. App. 1949); *George M. Danke Co. v. Marten,* 207 Wis. 290, 241 N.W. 359, 361 (1932) ("Since such contracts have no validity except as they are reasonably necessary to protect the vendee in the enjoyment of his business, it follows that the vendee's right to enforce the contract ends with his abandonment or transfer of the business."). *See also PHP Healthcare Corp. v. EMSA Ltd. P'ship*, 14 F.3d 941, 948 (4th Cir. 1993) (applying Florida law, former employer that was no longer engaged in business described in restrictive covenant could not enforce non-compete clause against former employee).

      28.      These cases and this rule are consistent with Virginia's approach to restrictive covenants and their enforceability.  In Virginia, restrictive covenants, such as non-compete clauses and non-solicitation clauses, are enforceable only if they are reasonable.  *Foti v. Cook,* 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980).  The reasonableness of the covenant is determined by a three-part test, which asks:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest?; (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his

> legitimate efforts to earn a livelihood?; [and] (3) Is the restraint
> reasonable from the standpoint of a sound public policy?

*Alston Studios, Inc. v. Lloyd V. Gress & Assoc.,* 492 F.2d 279, 282–83 (4th Cir.1974) (citing

*Meissel v. Finley,* 198 Va. 577, 95 S.E.2d 186 (1956)).  *Accord Lanmark Tech., Inc. v. Canales*,

454 F. Supp. 2d 524, 528 (E.D. Va. 2006) (agreement that failed the first prong is unreasonable

and unenforceable).

29.    Under each of these prongs, the restrictive covenant in the Non-Compete

Agreements was unreasonable as of March 8, 2009.  The first prong views the restrictive

covenant from the employer's perspective.  Is it is "greater than necessary to protect the

employer in some legitimate business interest?"  The answer is yes.  The covenant is greater than

necessary because the Company is no longer in business.  As of March 8, 2009, the covenant

could not protect any legitimate business interest from the competition of the former employees

because the Company was no longer conducting business.  Therefore, it is unreasonable and

unenforceable from the employer's perspective.

30.    The second prong views the restrictive covenant from the employee's

perspective.  Does it harshly and oppressively curtail the employee's "legitimate efforts to earn a

livelihood?"  Again, the answer is yes.  If it is no longer in business, the Company could not

reasonably prevent an employee from "competing" against it.  Therefore, the restrictive covenant

is unreasonable and unenforceable from the employee's perspective.

31.    The third prong views the restrictive covenant from the standpoint of the

public.  Is it against sound public policy for a defunct company to enforce a non-compete

agreement, given that it would be impossible to compete against the company?  To ask the

question is to answer it.  The covenant is unreasonable and unenforceable from a public policy

perspective.

32.     The Non-Compete Claimants may argue that the point of this test is to *protect* employees from overly broad restrictive covenants.  However, the test looks at the covenant from more than one perspective. Further, the Non-Compete Agreements clearly provide that if the covenant is deemed unenforceable, then the Company is no longer required to make the payments, and the employee is no longer bound to refrain from engaging in a competing business.  There is nothing in the Non-Compete Agreement stating that this clause was intended to protect only the employee.  To the contrary, it appears intended to protect the Company from having to continue to make payments in exchange for nothing – which is precisely what the Non-Compete Claimants are now requesting. *See Lanmark Tech., Inc.*, 454 F. Supp. 2d at 529 ("Importantly, courts applying this three-part test must take the non-compete provision as written; there is no authority for courts to "'blue pencil' or otherwise rewrite the contract" to eliminate any illegal overbreadth.") (quotations and citations omitted).

33.     Accordingly, the Non-Compete Claims became unenforceable when the Company went out of business, and no further payments were due and owing after that date. Therefore, the Non-Compete Claims should be reduced, as set forth in **Exhibit E**, to reflect only those unpaid amounts that came due before March 8, 2009, when the Company went out of business.

**V.**

**RESERVATION OF RIGHTS**

34.    At this time, the Liquidating Trust has not completed its review of the validity of all claims/expenses filed against the Debtors' estates, and reserves the right to further object to any and all claims, whether or not the subject of this Objection, for allowance and/or distribution purposes, and on any other grounds, including the right to modify, supplement and/or amend this Objection as it pertains to any Non-Compete Claim or Non-Compete Claimant herein.

**VI.**

**NOTICE AND PROCEDURE**

35.    Notice of this Objection has been provided to the Non-Compete Claimants identified on **Exhibit B**, and to parties-in-interest in accordance with the Court's *Supplemental Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management and Administrative Procedures* (entered on December 30, 2009 at Docket No. 6208) (the "Case Management Order").  The Liquidating Trust submits that the following methods of service upon the Non-Compete Claimants should be deemed by the Court to constitute due and sufficient service of this Objection:  (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004 and the applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for the Non-Compete Claimants is not known to the Liquidating Trust, by first class mail, postage prepaid, on the signatory of the Non-Compete Claimant's proof of claim form or other representative identified in the proof of claim form or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Non-Compete Claimant's behalf in the Debtors' bankruptcy cases.  The Liquidating Trust is serving the Non-Compete Claimant with this Objection and the exhibit on which the Non-Compete Claimant's claim is listed.

36.     To the extent any Non-Compete Claimant timely files and properly serves a response to this Objection by 4:00 P.M. (Eastern) on November 29, 2012, as required by the Case Management Order and under applicable law, and the parties are unable to otherwise resolve the Objection, the Liquidating Trust requests that the Court conduct a status conference with respect to any such responding claimant at 2:00 P.M. (Eastern) on December 6, 2012, and thereafter schedule the matter for a future hearing as to the merits of such claim.  However, to the extent any Non-Compete Claimant fails to timely file and properly serve a response to this Objection as required by the Case Management Order and applicable law, the Liquidating Trust requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A** reducing each of the Non-Compete Claims and allowing such Claims in the reduced amount as set forth in **Exhibit E**, attached hereto.

## VII.

## COMPLIANCE WITH BANKRUPTCY RULE 3007 AND THE OMNIBUS OBJECTION PROCEDURES ORDER

37.     This Objection complies with Bankruptcy Rule 3007(e).  Additionally, the Liquidating Trust submits that this Objection is filed in accordance with the Omnibus Objection Procedures Order.

## VIII.

## WAIVER OF MEMORANDUM OF LAW

38.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Objection, the Liquidating Trust requests that the requirement that all motions be accompanied by a written memorandum of law be waived.

*[This Objection continues on the next page.]*

## IX.

## NO PRIOR RELIEF

39.     No previous request for the relief sought herein has been made to this
Court or any other court.

WHEREFORE, the Liquidating Trust respectfully requests that the Court enter an
Order sustaining this Objection and granting such other and further relief as the Court deems
appropriate.

Dated: Richmond, Virginia
    September 28, 2012

TAVENNER & BERAN, PLC

*/s/ Lynn L. Tavenner*     
Lynn L. Tavenner (VA Bar No.
30083)
Paula S. Beran (VA Bar No.
34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300

- and -

PACHULSKI STANG ZIEHL &
JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-
4100
(310) 277-6910

- and –

PACHULSKI STANG ZIEHL &
JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores,
Inc. Liquidating Trust*

Jeffrey N. Pomerantz, Esq.                          Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Andrew W. Caine, Esq.                               Paula S. Beran, Esq. (VA Bar No. 34679)
(admitted *pro hac vice*)                           TAVENNER & BERAN, PLC
PACHULSKI STANG ZIEHL & JONES LLP                   20 North Eighth Street, 2nd Floor
10100 Santa Monica Boulevard                        Richmond, Virginia 23219
Los Angeles, California 90067-4100                  Telephone: (804) 783-8300
Telephone: (310) 277-6910                           Telecopy:   (804) 783-0178
Telecopy:   (310) 201-0760

*Counsel to the Circuit City Stores, Inc.*          *Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*                                 *Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653-KRH |
| | ) | |
| CIRCUIT CITY STORES, INC.[2], et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**ORDER SUSTAINING LIQUIDATING TRUST'S SIXTY-FIFTH OMNIBUS
OBJECTION TO CLAIMS ARISING UNDER NON-COMPETE AGREEMENTS:
REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS**

THIS MATTER having come before the Court on the *Liquidating Trust's Sixty-Fifth Omnibus Objection to Claims Arising Under Non-Compete Agreements:  Reduction of Certain Partially Invalid Claims* (the "Objection"),[3] which requested, among other things, that the claims specifically identified on Exhibit B attached to the Objection be reduced for those reasons set forth in the Objection; and it appearing that due and proper notice and service of the Objection as set forth therein was good and sufficient and that no other further notice or service of the Objection need be given; and it further appearing that no response was timely filed or properly served by the Non-Compete Claimants being affected by this Order; and it appearing

---

[2] The Debtors in these cases include: Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp, Prahs, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.
[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

that the relief requested in the Objection is in the best interest of the Liquidating Trust, the

Debtors' estates and creditors and other parties-in-interest; and after due deliberation thereon

good and sufficient cause exists for the granting of the relief as set forth herein,

IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1. The Objection is SUSTAINED.

2. The Non-Compete Claims identified on **Exhibit A-1** as attached hereto

and incorporated herein are allowed in the reduced amounts listed on **Exhibit A-1** for all

purposes in these bankruptcy cases.

3. The Liquidating Trust's rights to object to any claim including (without

limitation) the Non-Compete Claims subject to the Objection, on any grounds that applicable law

permits, are not waived and are expressly reserved.

4. The Liquidating Trust shall serve a copy of this Order on the Non-

Compete Claimants included on **Exhibit A-1** to this Order on or before five (5) business days

from the entry of this Order.

5. This Court shall retain jurisdiction to hear and determine all matters

arising from or relating to this Order.

Dated: Richmond, Virginia
_____, 2012


_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

TAVENNER & BERAN, PLC

_____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
(804) 783-8300
                              - and -

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
(310) 277-6910
                              - and –

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing
proposed order has been endorsed by or served upon all necessary parties.

                              */s/ Lynn L. Tavenner*
                              Lynn L. Tavenner

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

# Exhibit A-1

**REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS**

| Date Filed | Claim Number | Name  Address | Notice Name | Docketed Claim Amount | Docketed Claim Class | Debtor(s) | Modified Claim Amount | Modified Claim Class | Debtor(s) |
|---|---|---|---|---|---|---|---|---|---|
| 1/30/2009 | 9165 2000916501 | RICHARD L SHARP<br><br>PO Box 42333<br><br>Richmond, VA 23242 | | $1,650,000.00 | U | CIRCUIT CITY STORES, INC. | $81,450.00 | General Unsecured | CIRCUIT CITY STORES, INC. |
| 1/30/2009 | 9330 2000933001 | RICHARD S BIMBAUM<br><br>10480 Cherokee Rd<br><br>Richmond, VA 23235-1007 | | $2,153,297.00 | U | CIRCUIT CITY STORES, INC. | $81,522.35 | General Unsecured | CIRCUIT CITY STORES, INC. |

non-compete

# <u>Exhibit B</u>

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

**EXHIBIT B**
**ALPHABETICAL LISTING OF CLAIMANTS**

| Claim Holder | Claim Number | Exhibit |
|---|---|---|
| RICHARD L SHARP<br><br>PO Box 42333<br><br><br>Richmond, VA 23242 | 9165<br><br>2000916501 | Exhibit  C<br><br>REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS |
| RICHARD S BIMBAUM<br><br>10480 Cherokee Rd<br><br><br>Richmond, VA 23235-1007 | 9330<br><br>2000933001 | Exhibit  C<br><br>REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS |

2

# Exhibit C

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Eastern District of Virginia | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Circuit City Stores, Inc. | Case Number:<br>08-35653 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Richard L. Sharp | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br><br>Richard L. Sharp<br>P.O. Box 42333<br>Richmond, VA 23242-2333<br><br>Telephone number:<br>(804) 327-0710 | Court Claim Number:_____<br>(If known)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>SAME<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**  $_____1,650,000.00<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |

**2. Basis for Claim:**   Memorandum Agreement
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
      (See instruction #3a on reverse side.)

| | |
|---|---|
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property:$_____  Annual Interest Rate____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____  Basis for perfection: _____<br><br>Amount of Secured Claim: $_____  Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| | |
|---|---|
| Date:<br>01/29/2009<br><br>Richard L. Sharp | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br> |

| FOR COURT USE ONLY |
|---|
| RECEIVED<br><br>JAN 30 2009 |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571.


KURTZMAN CARSON CONSULTANTS

✓ ☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

0835653090130000000000370

VIVIEON E. KELLEY
404.885.3838 telephone
vivieon.kelley@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
Bank of America Plaza
600 Peachtree Street, NE
Suite 5200
Atlanta, Georgia  30308-2216
404.885.3000 telephone
404.885.3900 facsimile
troutmansanders.com

January 29, 2009

**VIA FEDERAL EXPRESS**

Circuit City Claims Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA  90245

**In re:  Circuit City Stores, Inc.**, Case No. 08-35653, United States
Bankruptcy Court for the Eastern District of Virginia

Dear Sir or Madam:

Enclosed for filing are an original and one copy of the following Proofs of Claim with
reference to the above-captioned matter.

1.      Four Proofs of Claim for Richard S. Birnbaum;

2.      Three Proofs of claim for Richard L. Sharp; and

3.      Proof of Claim of Jerry L. Lawson.

Please file same and return our copies stamped "filed" in the enclosed self-addressed,
stamped envelope.

Should you have any questions or comments, please give me a call.

Sincerely,

Vivieon E. Kelley

VEK:bkf

Enclosures

2027342_4.DOC

Circuit City Stores, Inc., Case No. 08-35653
United States Bankruptcy Court
Eastern District of Virginia, Richmond Division

### Attachment to Proof of Claim filed by Richard L. Sharp

Richard L. Sharp (the "Claimant") was a party to an employment contract by virtue of his position of Chairman and Chief Executive Officer of Circuit City Stores, Inc. (the "Debtor"). The Claimant retired from his employment with the Debtor on September 30, 2002. In connection with the Claimant's retirement, the Claimant and the Debtor entered into a "Memorandum Agreement" dated October 1, 2002 (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit A. In consideration for certain restrictive covenants from the Claimant, the Agreement provided that the Debtor would pay the sum of $2,875,000 during the period of October 1, 2002 through April 12, 2012. As of the petition date Claimant possessed a claim for payments due under the Agreement in an amount not less than $1,650,000.00. *

* The dollar amount of the claim referenced in the proof of claim will be further quantified, if necessary, at the appropriate time and then the Claimant will amend this proof of claim to reflect the additional amounts, credits or amendments. Nothing herein or otherwise, including, but without limitation, any later appearance, pleading, claim, or action is intended or shall be deemed to be a waiver, release or modification by the Claimant of his (a) right to assert an administrative expense claim for sums that became due after the petition date; (b) right to have final orders in noncore matters entered after de novo review by a District judge; (c) right to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case; (d) right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (e) other rights, remedies, setoffs, or recoupments to which the Claimant is or may be entitled, all of which are hereby expressly reserved.

Richard L. Sharp
P.O. Box 42333
Richmond, VA 23242

Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233

### MEMORANDUM AGREEMENT

NOW COME Richard L. Sharp ("Sharp") and Circuit City Stores, Inc. (the "Company") and memorialize the agreement entered the 1st day of October, 2002 ("Effective Date").

WHEREAS Sharp was previously employed by the Company as its President;

WHEREAS Sharp retired from employment with the Company on October 1, 2002;

WHEREAS at the time of his retirement, the Company agreed to pay Sharp $2,875,000 during the period October 1, 2002, through April 12, 2012 in exchange for certain restrictive covenants from Sharp, said agreement to subsequently be memorialized in writing;

WHEREAS the parties agree that this writing accurately and completely memorializes the terms of the October 1, 2002 agreement between the parties;

NOW THEREFORE, the parties agree as follows:

**Article 1.**

In exchange for the restrictive covenants set forth in Article 2, below, the Company will pay Sharp a total of $2,875,000 during the period October 1, 2002, through April 12, 2012. This amount will be paid in equal monthly installments of $25,000. In the event of Sharp's death before all of these payments have been made, his surviving spouse, if applicable, will receive monthly installments of $12,500 for the remainder of the period October 1, 2002, through April 12, 2012, in which she is living.

**Article 2. Noncompetition and Confidentiality**

**2.1. Noncompetition.**

(a)   During the period October 1, 2002, to April 12, 2012, Sharp shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business that is engaged in the same or similar business of the Company in one or more Metropolitan Statistical Areas ("MSAs") in which the Company is doing business on October 1, 2002. A business will not be considered to be in competition with the Company for purposes of this paragraph 2.1(a) or paragraph 2.1(b) below if:

Richard L. Sharp
Memorandum Agreement
October 1, 2002

    (i)    The business or the operating unit of the business in which Sharp is employed or with which Sharp is associated (collectively the "Business Unit") is not engaged in the retail sales of consumer electronics;

    (ii)    If sales of the Business Unit's products or services in the retail sales and service of consumer electronics constitute less than ten percent (10%) of such Business Unit's sales; or

    (iii)    If the sales of the Business Unit in the retail sales and service of consumer electronics do constitute more than ten percent (10%) of the sales of the Business Unit, but there is no geographic overlap between such Business Unit's and the Company's business locations.

Notwithstanding the foregoing, nothing herein shall be deemed to prevent or limit the right of Sharp to invest in the capital stock or other securities of any corporation whose stock or securities are regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent Sharp from investing in real estate for his/her own benefit (as long as such investment is not related to or in support of any entity engaged in the same or similar business as the Company in competition with the Company in one or more MSA's in which the Company was doing business during Sharp's employment).

(b)    During the period October 1, 2002, to April 12, 2012, Sharp shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business engaged in the same or similar business of the Company in one or more MSAs where, on the last day of Sharp's employment, the Company is engaged in real estate site selection or has taken further steps toward the commencement of operations in the future, of which Sharp is aware.

(c)    Sharp agrees that competition, as set forth in (a) above, shall include, but not be limited to, engaging in competitive activity, as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity.

(d)    It is the specific intent of the parties that Sharp shall be restricted from competing directly or indirectly with any segment of the Company's business in which Sharp engaged prior to the last day of his employment and from any segment of the Company's business about which Sharp acquired proprietary or confidential information during the course of his employment.

(e)    If any provision of this Article relating to the time period, geographic area or scope of restricted activities shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope of activities, as applicable, that

2

Richard L. Sharp
Memorandum Agreement
October 1, 2002

such court deems reasonable and enforceable, said time period, geographic area or scope of activities shall be deemed to be, and thereafter shall become, the maximum time period, scope of activities or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(f)     This Covenant Not to Compete specifically exempts Sharp's role as Chairman of Flextronics Corporation from this provision and shall not be deemed to be in competition with the Company.

(g)     Sharp and the Company have examined in detail this Covenant Not to Compete and agree that the restraint imposed upon Sharp is reasonable in light of the legitimate interests of the Company, and it is not unduly harsh upon Sharp's ability to earn a livelihood.

**2.2. Non-Solicitation of Employees.**  Sharp agrees that during the period October 1, 2002, to April 12, 2012, he shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever or hire any individual employed by the Company, except with the written permission of an authorized representative of the Company.  For purposes of this Article 2.2, employee shall mean any individual employed by the Company on the last day of Sharp's employment or within the three-month period prior to the last day of Sharp's employment.

**2.3. Confidentiality.**  The Company has advised Sharp and Sharp acknowledges that it is the policy of the Company to maintain as secret and confidential all Protected Information (as defined below), and that Protected Information has been and will be developed at substantial cost and effort to the Company.  Sharp agrees to hold in strict confidence and safeguard any information of or about the Company gained by Sharp in any manner or from any source during Sharp's employment.  Sharp shall not, without the prior written consent of the Company, at any time, directly or indirectly, divulge, furnish, use, disclose or make accessible to any person, firm, corporation, association, or other entity any Protected Information, or cause any such information of the Company to enter the public domain.

Sharp understands and agrees that any information, data and/or trade secrets about Company or its suppliers and/or distributors is the property of the Company and is essential to the protection of the Company's goodwill and to the maintenance of the Company's competitive position and accordingly should be kept secret.  For purposes of this Agreement, "Protected Information" means trade secrets, confidential and proprietary business information of or about the Company, and any other information of the Company, including, customer lists (including potential customers), sources of supply, processes, plans, materials, pricing information, internal memoranda, marketing plans, promotional plans, internal policies, research, purchasing, accounting and financial information, computer programs, hardware, software, and products and services which may be developed from time to time by the Company and its agents or

3

Richard L. Sharp
Memorandum Agreement
October 1, 2002

employees; provided, however, that information that is in the public domain (other than as a result of a breach of this Agreement), approved for release by the Company or lawfully obtained from third parties who are not bound by a confidentiality agreement with the Company, is not Protected Information.

This provision, however, specifically exempts the "run-rate" sales methodology developed and implemented by Sharp while he was an employee of the Company. Therefore, Sharp shall retain the right to use and implement this specific methodology in his discretion and in his endeavors.

Nothing contained in this Article is intended to reduce in any way protection available to the Company pursuant to the Uniform Trade Secrets Act as adopted in Virginia or any other state or other applicable laws which prohibit the misuse or disclosure of confidential or proprietary information.

2.4.    **Acknowledgement of Covenants.**    The parties hereto acknowledge that Sharp's services to the Company were of a special, extraordinary, and intellectual character which gives him unique value, and that the business of the Company and its subsidiaries is highly competitive, and that violation of any of the covenants provided in this Article 2 would cause immediate, immeasurable, and irreparable harm, loss, and damage to the Company not adequately compensable by a monetary award. Sharp acknowledges that the time, scope of activities and geographical area restrained by the provisions of this Article 2 are reasonable and do not impose a greater restraint than is necessary to protect the goodwill of the Company's business. In the event that the Company has probable cause to believe that Sharp has breached any one or more of the covenants in this Article 2, the Company shall pay any subsequent payments remaining due to Sharp into an escrow account until the existence or non-existence of such breach is finally determined in a court of law or equity. If it is finally determined that Sharp has not breached, the monies in escrow shall be immediately paid to Sharp; if however, it is finally determined that Sharp has breached, such monies shall be paid to the Company. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or in equity for such breach or threatened breach, including injunctive relief and the recovery of damages. To the extent any of the restrictive covenants herein are finally determined by a court to be unenforceable and the Court refuses to modify such covenant to become enforceable, the Company shall have no further obligation to make any of the payments set forth in Article 1. Finally, in this regard, Sharp acknowledges that he and the Company have negotiated and bargained for the terms of this Agreement and that Sharp accepts the promise by the Company to pay $2,875,000 from October 1, 2002, to April 12, 2012, as sufficient consideration for the restrictive covenants set forth herein.

## Article 3

The status of Sharp's participation in the Benefits Plans upon his termination of employment is as follows. If additional information is needed, Sharp should contact the Benefits

4

Richard L. Sharp
Memorandum Agreement
October 1, 2002

Helpline at 1-800-288-6353. A Helpline Specialist can help to provide the personalized information needed.

**3.1.** **Benefits:** According to the Company's records, you are currently enrolled in the Welfare Benefits Plans for the Board of Directors of Carmax.

**3.2.** **Retirement Plan:** Sharp is eligible to start monthly benefits as of November 1, 2002, or the first of any month thereafter; however, benefits must start no later than May 1, 2012.

**3.3.** **Retirement Benefit Restoration Plan:** Sharp is eligible to receive a supplemental monthly retirement benefit upon the commencement of receipt of benefits from the Retirement Plan. Sharp's benefit from the Restoration Plan will be paid in the same form as his Retirement Plan benefits.

**3.4.** **Attachment:** Attached is a copy of the Statement of your benefits under the Retirement and Restoration Plans dated November 4, 2002. Please contact the Benefits Department when you wish to start your benefits.

## Article 4. Governing Law

To the extent not preempted by federal law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, without reference to Virginia's choice of law statutes or decisions.

IN WITNESS WHEREOF, Sharp and the Company have executed this Agreement as of the Effective Date.

CIRCUIT CITY STORES, INC.                    RICHARD L. SHARP

By:_____          _____
    Jeffrey S. Wells, SVP, Human Resources

# Exhibit D

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Eastern District of Virginia | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Circuit City Stores, Inc. | Case Number:<br>08-35653 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Richard S. Birnbaum<br><br>Name and address where notices should be sent:<br><br>Richard S. Birnbaum<br>10480 Cherokee Road<br>Richmond, VA 23235<br>Telephone number: | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>SAME<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**       $                2,153,297.00<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**   SERP<br>(See instruction #2 on reverse side.)<br>**3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>   3a. Debtor may have scheduled account as:<br>   (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property:$_____ Annual Interest Rate____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim.<br><br>if any: $_____ Basis for perfection:_____<br><br>Amount of Secured Claim: $_____  Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>   Amount entitled to priority:<br><br>   $_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | | |
|---|---|---|
| Date: 1/29/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>R. D. Rm. | FOR COURT USE ONLY<br>RECEIVED<br>JAN 30 2009 |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571. CARSON CONSULTANTS

☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return


0835653090130000000000374

VIVIEON E. KELLEY
404.885.3838 telephone
vivieon.kelley@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
Bank of America Plaza
600 Peachtree Street, NE
Suite 5200
Atlanta, Georgia  30308-2216
404.885.3000 telephone
404.885.3900 facsimile
troutmansanders.com

January 29, 2009

**VIA FEDERAL EXPRESS**

Circuit City Claims Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA  90245

**In re:  Circuit City Stores, Inc.**, Case No. 08-35653, United States
Bankruptcy Court for the Eastern District of Virginia

Dear Sir or Madam:

Enclosed for filing are an original and one copy of the following Proofs of Claim with reference to the above-captioned matter.

1.      Four Proofs of Claim for Richard S. Birnbaum;

2.      Three Proofs of claim for Richard L. Sharp; and

3.      Proof of Claim of Jerry L. Lawson.

Please file same and return our copies stamped "filed" in the enclosed self-addressed, stamped envelope.

Should you have any questions or comments, please give me a call.

Sincerely,

Vivieon E. Kelley

VEK:bkf

Enclosures

2027342_4.DOC

ATLANTA     CHICAGO     HONG KONG     LONDON     NEW YORK     NEWARK     NORFOLK     ORANGE COUNTY
RALEIGH     RICHMOND     SAN DIEGO     SHANGHAI     TYSONS CORNER     VIRGINIA BEACH     WASHINGTON, DC

Circuit City Stores, Inc., Case No. 08-35653
United States Bankruptcy Court
Eastern District of Virginia, Richmond Division

## Attachment to Proof of Claim filed by Richard S. Birnbaum

Richard S. Birnbaum (the "Claimant") formerly employed in the position of Executive Vice President of Circuit City Stores, Inc. (the "Debtor"). In connection with the Claimant's employment, the Claimant participated in the Debtor's Senior Executive Early Retirement Program ("SERP"). A copy of the SERP is attached hereto as Exhibit A. The SERP provided the claimant with a maximum benefit equal to 50% of the participant's average base pay for the three years before his retirement. The Claimant retired from his employment with the Debtor on October 1, 2002. Claimant is entitled to receive monthly benefit payments pursuant to the terms of the SERP in the sum of $18,888.47. As of the petition date Claimant possessed a claim for payments due under the SERP in an amount not less than $2,153.297. *

* The dollar amount of the claim referenced in the proof of claim will be further quantified, if necessary, at the appropriate time and then the Claimant will amend this proof of claim to reflect the additional amounts, credits or amendments. Nothing herein or otherwise, including, but without limitation, any later appearance, pleading, claim, or action is intended or shall be deemed to be a waiver, release or modification by the Claimant of his (a) right to assert an administrative expense claim for sums that became due after the petition date; (b) right to have final orders in noncore matters entered after de novo review by a District judge; (c) right to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case; (d) right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (e) other rights, remedies, setoffs, or recoupments to which the Claimant is or may be entitled, all of which are hereby expressly reserved.

Richard S. Birnbaum                              Circuit City Stores, Inc.
10480 Cherokee Road                              9954 Mayland Drive
Richmond, VA 23235                               Richmond, VA  23233

## MEMORANDUM AGREEMENT

NOW COME Richard S. Birnbaum ("Birnbaum") and Circuit City Stores, Inc. (the "Company") and enter into this Memorandum Agreement this 25th day of April 2003 ("Effective Date").

WHEREAS Birnbaum was previously employed by the Company as its Executive Vice President;

WHEREAS Birnbaum retired from employment with the Company on October 1, 2002;

WHEREAS the Company desires to obtain the benefit of certain restrictive covenants from Birnbaum in exchange for a promise to pay Birnbaum $3,000,000 during the period May 1, 2008, through April 30, 2018;

NOW THEREFORE, the parties agree as follows:

**Article 1.**

In exchange for the restrictive covenants set forth in Article 2, below, the Company will pay Birnbaum a total of $3,000,000 during the period May 1, 2008, through April 30, 2018. This amount will be paid in equal monthly installments of $25,000. In the event of Birnbaum's death before all of these payments have been made, his surviving spouse, if applicable, will receive monthly installments of $12,500 for the remainder of the period May 1, 2008, through April 30, 2018, in which she is living.

**Article 2. Noncompetition and Confidentiality**

**2.1. Noncompetition.**

(a)  During the period May 1, 2003, to April 30, 2018, Birnbaum shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business that is engaged in the same or similar business of the Company in one or more Metropolitan Statistical Areas ("MSAs") in which the Company is doing business on October 1, 2002. A business will not be considered to be in competition with the Company for purposes of this paragraph 2.1(a) or paragraph 2.1(b) below if:

Richard S. Birnbaum
Memorandum Agreement
April 25, 2003

(i)     The business or the operating unit of the business in which Birnbaum is employed or with which Birnbaum is associated (collectively the "Business Unit") is not engaged in the retail sales of consumer electronics;

(ii)    If sales of the Business Unit's products or services in the retail sales and service of consumer electronics constitute less than ten percent (10%) of such Business Unit's sales; or

(iii)   If the sales of the Business Unit in the retail sales and service of consumer electronics do constitute more than ten percent (10%) of the sales of the Business Unit, but there is no geographic overlap between such Business Unit's and the Company's business locations.

Notwithstanding the foregoing, nothing herein shall be deemed to prevent or limit the right of Birnbaum to invest in the capital stock or other securities of any corporation whose stock or securities are regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent Birnbaum from investing in real estate for his/her own benefit (as long as such investment is not related to or in support of any entity engaged in the same or similar business as the Company in competition with the Company in one or more MSA's in which the Company was doing business during Birnbaum's employment).

(b)     During the period May 1, 2003, to April 30, 2018, Birnbaum shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business engaged in the same or similar business of the Company in one or more MSAs where, on the last day of Birnbaum's employment, the Company is engaged in real estate site selection or has taken further steps toward the commencement of operations in the future, of which Birnbaum is aware.

(c)     Birnbaum agrees that competition, as set forth in (a) above, shall include, but not be limited to, engaging in competitive activity, as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity.

(d)     It is the specific intent of the parties that Birnbaum shall be restricted from competing directly or indirectly with any segment of the Company's business in which Birnbaum engaged prior to the last day of his employment and from any segment of the Company's business about which Birnbaum acquired proprietary or confidential information during the course of his employment.

Birnbaum may obtain the express written permission from an authorized company representative to engage in professional endeavors unrelated to the sale, distribution

2

Richard S. Birnbaum
Memorandum Agreement
April 25, 2003

and repair of consumer electronics, computers and entertainment software. This express written permission shall be obtained whenever the provisions of Article 2 are implicated. This express written permission will be reasonably granted by the Company.

(e)    If any provision of this Article relating to the time period, geographic area or scope of restricted activities shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope of activities, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope of activities shall be deemed to be, and thereafter shall become, the maximum time period, scope of activities or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(f)    Birnbaum and the Company have examined in detail this Covenant Not to Compete and agree that the restraint imposed upon Birnbaum is reasonable in light of the legitimate interests of the Company, and it is not unduly harsh upon Birnbaum's ability to earn a livelihood.

**2.2. Non-Solicitation of Employees.** Birnbaum agrees that during the period May 1, 2003, to April 30, 2018, he shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever or hire any individual employed by the Company. For purposes of this Article 2.2, employee shall mean any individual employed by the Company on the last day of Birnbaum's employment or within the three-month period prior to the last day of Birnbaum's employment.

**2.3. Confidentiality.** The Company has advised Birnbaum and Birnbaum acknowledges that it is the policy of the Company to maintain as secret and confidential all Protected Information (as defined below), and that Protected Information has been and will be developed at substantial cost and effort to the Company. Birnbaum agrees to hold in strict confidence and safeguard any information of or about the Company gained by Birnbaum in any manner or from any source during Birnbaum's employment. Birnbaum shall not, without the prior written consent of the Company, at any time, directly or indirectly, divulge, furnish, use, disclose or make accessible to any person, firm, corporation, association, or other entity any Protected Information, or cause any such information of the Company to enter the public domain.

Birnbaum understands and agrees that any information, data and/or trade secrets about Company or its suppliers and/or distributors is the property of the Company and is essential to the protection of the Company's goodwill and to the maintenance of the Company's competitive position and accordingly should be kept secret. For purposes of this Agreement, "Protected Information" means trade secrets, confidential and proprietary business information of or about the Company, and any other information of the Company, including, customer lists (including

3

Richard S. Birnbaum
Memorandum Agreement
April 25, 2003

potential customers), sources of supply, processes, plans, materials, pricing information, internal memoranda, marketing plans, promotional plans, internal policies, research, purchasing, accounting and financial information, computer programs, hardware, software, and products and services which may be developed from time to time by the Company and its agents or employees; provided, however, that information that is in the public domain (other than as a result of a breach of this Agreement), approved for release by the Company or lawfully obtained from third parties who are not bound by a confidentiality agreement with the Company, is not Protected Information.

Nothing contained in this Article is intended to reduce in any way protection available to the Company pursuant to the Uniform Trade Secrets Act as adopted in Virginia or any other state or other applicable laws which prohibit the misuse or disclosure of confidential or proprietary information.

2.4. **Acknowledgement of Covenants.** The parties hereto acknowledge that Birnbaum's services to the Company were of a special, extraordinary, and intellectual character which gives him unique value, and that the business of the Company and its subsidiaries is highly competitive, and that violation of any of the covenants provided in this Article 2 would cause immediate, immeasurable, and irreparable harm, loss, and damage to the Company not adequately compensated by a monetary award. Birnbaum acknowledges that the time, scope of activities and geographical area restrained by the provisions of this Article 2 are reasonable and do not impose a greater restraint than is necessary to protect the goodwill of the Company's business. In the event that the Company has probable cause to believe that Birnbaum has breached any one or more of the covenants in this Article 2, the Company shall pay any subsequent payments remaining due to Birnbaum into an escrow account until the existence or non-existence of such breach is finally determined in a court of law or equity. If it is finally determined that Birnbaum has not breached, the monies in escrow shall be immediately paid to Birnbaum; if however, it is finally determined that Birnbaum has breached, such monies shall be paid to the Company. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or in equity for such breach or threatened breach, including injunctive relief and the recovery of damages. To the extent any of the restrictive covenants herein are finally determined by a court to be unenforceable and the Court refuses to modify such covenant to become enforceable, the Company shall have no further obligation to make any of the payments set forth in Article 1. Finally, in this regard, Birnbaum acknowledges that he and the Company have negotiated and bargained for the terms of this Agreement and that Birnbaum accepts the promise by the Company to pay $3,000,000 from May 1, 2008, to April 30, 2018, as sufficient consideration for the restrictive covenants set forth herein.

**Article 3**

The status of Birnbaum's participation in the Benefits Plans upon his termination of employment is as follows. If additional information is needed, Birnbaum should contact the

4

Richard S. Birnbaum
Memorandum Agreement
April 25, 2003

Benefits Helpline at 1-800-288-6353. A Helpline Specialist can help to provide the personalized information needed.

**3.1.    COBRA:** Birnbaum is currently enrolled in COBRA for both medical and dental with a monthly premium of $701.45. Birnbaum's COBRA participation began on November 1, 2002, with an end date of April 30, 2004.

**3.2.    Group Life Insurance: Participation** ended on Birnbaum's Termination Date of October 1, 2002.

**3.3.    Group Life Insurance: Participation** ended on Birnbaum's Termination Date of October 1, 2002.

**3.4.    Retirement Plan:** Birnbaum is eligible to start monthly benefits as of May 1, 2008, or the first of any month thereafter; however, benefits must start no later than May 1, 2018.

**3.5.    Retirement Benefit Restoration Plan:** Birnbaum is eligible to receive a supplemental monthly retirement benefit upon the commencement of receipt of benefits from the Retirement Plan. Birnbaum's benefit from the Restoration Plan will be paid in the same form as his Retirement Plan benefits.

**3.6.    Attachment:** Attached is a copy of the Statement of your benefits under the Retirement and Restoration Plans dated March 25, 2003. Please contact the Benefits Department when you wish to start your benefits.

**Article 4.  Governing Law**

To the extent not preempted by federal, law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, without reference to Virginia's choice of law statutes or decisions.

IN WITNESS WHEREOF, Birnbaum and the Company have executed this Agreement as of the Effective Date.

CIRCUIT CITY STORES, INC.                    RICHARD S. BIRNBAUM

By: _____                    _____
    Jeffrey S. Wells, SVP, Human Resources          May 3, 03

5

## CIRCUIT CITY STORES, INC.

### Executive Summary
### of
### Senior Executive Early Retirement Program

I.   **Early Retirement Program For Senior Executives.**

    A.   The Early Retirement Program has three components:

        1.   Senior Executive Early Retirement Plan.
        2.   Stock Option Exercise Provisions.
        3.   Health Care Continuation.

    B.   The three components are designed to work together to create a reasonable package for the senior executive to retire early.

II.  **Major Elements of Senior Executive Early Retirement Plan.**

    A.   The Senior Executive Early Retirement Plan ("Plan") covers senior vice presidents and above and presidents of divisions or subsidiaries.  The division or subsidiary must be designated by the Board as coverd by the Plan.

    B.   A eligible senior executive must be at least age 55 and have at least 10 years of service to receive a benefit.

    C.   The Plan will pay benefits to senior executives who retire before age 65.

    D.   The maximum benefit under the Plan is equal to 50% of the participant's average base pay for the last three years before retirement.

    E.   The maximum benefit is payable if the participant has 20 years of service at early retirement.  The maximum 50% is reduced by 1.25% for each year of service less than 20 years.  The minimum benefit is 37.5% of base pay with 10 years of service.

    F.   The benefit is payable from the participant's early retirement date until the participant is age 65.

    G.   The maximum annual benefit from the Plan is $250,000 ($125,000 for a surviving spouse).  The $250,000 is adjusted for inflation at the same rate as the IRS adjusts the $120,000 benefit limit on qualified plans.

    H.   The benefit is paid in monthly installments, with one exception.  The Company may pay a lump sum or other

form at its discretion.  This discretion can be used to address individual situations with executives.

I.    The surviving spouse of a participant is also provided a survivor benefit equal to 50% of the amount payable to the participant.  The survivor benefit ends when the participant would have been age 65.

J.    One-half of the Supplemental Benefit is payable in exchange for the executive's agreement not to compete and one-half of the Supplemental Benefit is payable as additional retirement benefits.

K.    The entire Supplemental Benefit would terminate if the executive actually violates the noncompetition, confidentiality or non-solicitation provisions of his employment agreement while receiving payments under the Plan.

L.    The Plan is a non-qualified deferred compensation plan.

M.    The Plan is administered by the Compensation & Personnel Committee.

III. Implementation Procedure For Early Retirement Plan.

A.    The Board of Directors would approve the Plan.

B.    An exemption letter would be filed with the Department of Labor that eliminates any future filing obligations. There are no IRS filings.

C.    At this time, the Plan would be unfunded.  The Plan could be funded in the future.

D.    Disclosure of the Plan will be made in the Company's next proxy statement.

IV. Tax Consequences of Early Retirement Plan.

A.    A participant will have no taxable income when he becomes a participant.  The participant will be taxable on the distributions from the Plan as ordinary income.

B.    Upon payment of distributions to a participant, Circuit City will receive a tax deduction equal to the amount that is taxable to the participant.

2

**V.   Major Elements of Stock Option Program.**

    **A.**   The same senior executives would be eligible as under the Early Retirement Plan.  The executive would have to be at least age 55 and have at least 10 years of service.

    **B.**   Upon termination of employment, the senior executive would continue to vest in any previously granted options for five years as if the executive were an employee.

    **C.**   The senior executive could exercise any vested option for five years after retirement (subject to termination at the normal expiration date).  This would include options that vested before or after retirement.

    **D.**   The extended vesting and exercise provisions would terminate if the executive violates the noncompetition provisions of his employment agreement during the extended exercise period.

    **E.**   The provisions would apply only to nonstatutory options and would not apply to incentive stock options.

**VI.   Implementation Procedure For Stock Option Program.**

    **A.**   The Compensation & Personnel Committee would approve the change in the existing and future options for these executives.  No change in the Stock Incentive Plan is needed.  There is no shareholder approval required.

    **B.**   The changes in the options would be reported on a Form 4 or Form 5.  The changes in the existing options would start a new six-month period for the executives during which any stock acquired under the revised option could not be sold.

    **C.**   Disclosure of any amended options will be made in the Company's next proxy statement.

**VII.    Tax Consequences of Stock Option Program.**

    The executive will have the same tax consequences from exercising the revised options as the prior options.

**VIII.   Major Elements of Health Care Continuation Program.**

    **A.**   The same senior executives would be eligible as under the Early Retirement Plan.  The executive would have to

3

be at least age 55 and have at least 10 years of service.

B.   Upon termination of employment, the senior executive and his or her family would be eligible for health care coverage under a separate plan from the Circuit City plan.

C.   The coverage would continue until the executive is age 65. If the executive died before age 65, the spouse could continue coverage until the executive would have been age 65.

D.   The executive would pay 75% of the cost and Circuit City would pay 25% of the cost.

E.   The coverage would be provided under a separate insurance policy for these executives.

F.   The health care continuation would terminate if the executive violates the noncompetition provisions of his employment agreement.

G.   The health care continuation would terminate if the executive becomes eligible for coverage under any other group health plan of a subsequent employer.

IX.   **Implementation Procedure For Health Care Continuation Program.**

A.   The Compensation & Personnel Committee would approve the program.

B.   The program would be communicated to the senior executives.

X.   **Tax Consequences of Health Care Continuation Program.**

A.   The benefits under the health care continuation program would be nontaxable to the executive.

B.   Circuit City would deduct its payments under the program.

WA9A\1701\CIRCUIT\SERP\EXECSUMM.SEP

4

## AMENDMENT TO EMPLOYMENT AGREEMENT

THIS AMENDMENT is to the EMPLOYMENT AGREEMENT of May 12, 1995, by and between CIRCUIT CITY STORES, INC., ("the Company"), a Virginia corporation, and RICHARD S. BIRNBAUM, (the "Employee").

Effective April 11,1997 the The Compensation Committee of the Circuit City Board of Directors approved the following changes to your Employment Agreement:

Providing that Mr. Birnbaum provides one year's notice prior to his terminating employment; he will receive the following:

1) He will receive one year's salary as severance and benefit continuation.

2) In addition, Mr.Birnbaum may retain 25% of non-vested options in the event of termination on or before February 28, 1998; 50% of these options if such termination occurs from March 1, 1998 through February 28, 1999; 75% of these options if such termination occurs from March 1, 1999 through February 28, 2000 and 100% if such termination occurs after March 1, 2000.

3) Also, if Mr. Birnbaum continues employment through March 1, 2000:

- A full SERP will be provided to him consistent with the approach previously approved by the Board as a guideline for early retirement of senior officers and described in Attachment A.
- He will be eligible to participate in the restoration of benefits plan as described in Attachment B.(Which was implemented 2/28/99)

Birnbaum
8/24/99
Page 2


If the Company terminates Mr. Birnbaum for cause, as
defined in the EMPLOYMENT AGREEMENT, he may retain the
non-vested options at one half of the above
percentages.



By: _____          9/23/8c
    Richard L. Sharp                    ‾‾‾‾‾‾‾‾‾‾
    Chairman and                        Date Signed
      Chief Executive Officer


AGREED: _____          9/30/99
        Richard S. Birnbaum            ‾‾‾‾‾‾‾‾‾‾
        Executive Vice President       Date Signed

# <u>Exhibit E</u>

In re Circuit City Stores, Inc, et al.
Case No. 08-35653 (KRH)

EXHIBIT E

**REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS**

| Date Filed | Claim Number | Name  Address | Notice Name | Docketed Claim Amount | Docketed Claim Class | Debtor(s) | Proposed Modified Claim Amount | Proposed Modified Claim Class | Debtor(s) | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/30/2009 | 9165 2000916501 | RICHARD L SHARP  PO Box 42333  Richmond, VA 23242 | | $1,650,000.00 | U | CIRCUIT CITY STORES, INC. | $81,450.00 | General Unsecured | CIRCUIT CITY STORES, INC. | The Trust seeks to reduce the claim to only the amount due between the petition date and the date of cessation of the debtors' business operations.  The proposed claim amount represents the payments due for December 2008, January 2009, February 2009 and the first 8 days of March 2009. |
| 1/30/2009 | 9330 2000933001 | RICHARD S BIMBAUM  10480 Cherokee Rd  Richmond, VA 23235-1007 | | $2,153,297.00 | U | CIRCUIT CITY STORES, INC. | $61,522.35 | General Unsecured | CIRCUIT CITY STORES, INC. | The Trust seeks to reduce the claim to only the amount due between the petition date and the date of cessation of the debtors' business operations.  The proposed claim amount represents the payments due for December 2008, January 2009, February 2009 and the first 8 days of March 2009. |

2

non-compete