IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*, | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**RESPONSE TO LIQUIDATING TRUST'S SIXTY-FIFTH OMNIBUS OBJECTION
TO CLAIMS ARISING UNDER NON-COMPETE AGREEMENTS:
REDUCTION OF CERTAIN PARTIALLY INVALID CLAIMS**

Richard L. Sharp ("Sharp") and Richard S. Birnbaum ("Birnbaum") (collectively, the

"Non-Compete Claimants"), by counsel, and pursuant to Fed. R. Bankr. P. 3007, Local

Bankruptcy Rule 3007-1(D), and this Court's April 1, 2009 Order Establishing Omnibus

Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections

[Docket No. 2881], hereby file their response to the objection of Circuit City Stores, Inc.

Liquidating Trust (the "Liquidating Trust") to Claim No. 9165 (the "Sharp Claim") and Claim

No. 9330 (the "Birnbaum Claim") (collectively, the "Non-Compete Claims"), as set forth in the

Liquidating Trust's Sixty-Fifth Omnibus Objection to Claims Arising under Non-Compete

Agreements: Reduction of Certain Partially Invalid Claims (the "Objection") [Docket No.

12456], and in support thereof state as follows:

_____

Richard E. Hagerty
VSB No. 47673
*Attorney for Richard L. Sharp & Richard S. Birnbaum*
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
703-734-4326
703-448-6520 (facsimile)
richard.hagerty@troutmansanders.com

<u>RELEVANT FACTS</u>

1.      Sharp retired from his position as President of Circuit City Stores, Inc. (the

"Company" or "Circuit City") on October 1, 2002.  That same day, Sharp and Circuit City

entered into an Agreement (the "Sharp Agreement").  The Sharp Agreement allowed that he

would receive deferred compensation for a period of ten years, pursuant to the following

pertinent provisions:

**Article 1.**

In exchange for the restrictive covenants set forth in Article 2, below, the
Company will pay Sharp a total of $2,875,000 during the period October 1, 2002,
through April 12, 2012.  This amount will be paid in equal monthly installments
of $25,000.  In the event of Sharp's death before all of these payments have been
made, his surviving spouse, if applicable, will receive monthly installments of
$12,500 for the remainder of the period October 1, 2002, through April 12, 2012,
in which she is living.

**Article 2. Noncompetition and Confidentiality**

**2.1 Noncompetition**

(a)      During the period October 1, 2002, to April 12, 2012, Sharp shall not
directly or indirectly compete with the Company by engaging, in a competitive
capacity, in any business that is engaged in the same or similar business of the
Company in one or more Metropolitan Statistical Areas ("MSAs") in which the
Company is doing business on October 1, 2002. . . .

(b)      During the period October 1, 2002, to April 12, 2012, Sharp shall not
directly or indirectly compete with the Company by engaging, in a competitive
capacity, in any business engaged in the same or similar business of the Company
in one or more MSAs where, on the last day of Sharp's employment [October 1,
2002], the Company is engaged in real estate site selection or has taken further
steps toward the commencement of operations in the future, of which Sharp is
aware. . . .

**2.4 Acknowledgement of Covenants.**  . . . In the event that the Company has
probable cause to believe that Sharp has breached any one or more of the
covenants in this Article 2, the Company shall pay any subsequent payments

remaining due to Sharp into an escrow account until the existence or non-existence of such breach is finally determined in a court of law or equity.  If it is finally determined that Sharp has not breached, the monies in escrow shall be immediately paid to Sharp; if however, it is finally determined that Sharp has breached, such monies shall be paid to the Company. . . .

To the extent any of the restrictive covenants herein are finally determined by a court to be unenforceable and the Court refuses to modify such covenant to become enforceable, the Company shall have no further obligation to make any of the payments set forth in Article 1.  Finally, in this regard, Sharp acknowledges that he and the Company have negotiated and bargained for the terms of this Agreement and that Sharp accepts the promise by the Company to pay $2,875,000 from October 1, 2002, to April 12, 2012, as sufficient consideration for the restrictive covenants set forth herein.

*See* Exhibit C to the Objection ("Ex. C").

2.      Birnbaum also retired from his position as Executive Vice President of the Circuit City on October 1, 2002.  Birnbaum and Circuit City entered into an Agreement on April 25, 2003 (the "Birnbaum Agreement").  The Birnbaum Agreement also allowed that he would receive deferred compensation for a period of ten years, pursuant to the following pertinent provisions:

**Article 1.**

In exchange for the restrictive covenants set forth in Article 2, below, the Company will pay Birnbaum a total of $3,000,000 during the period May 1, 2008, through April 30, 2018.  This amount will be paid in equal monthly installments of $25,000.  In the event of Birnbaum's death before all of these payments have been made, his surviving spouse, if applicable, will receive monthly installments of $12,500 for the remainder of the period May 1, 2008, through April 30, 2018, in which she is living.

**Article 2. Noncompetition and Confidentiality**

**2.1 Noncompetition**

(a)      During the period May 1, 2003, to April 30, 2018, Birnbaum shall not directly or indirectly compete with the Company by engaging, in a competitive capacity, in any business that is engaged in the same or similar business of the

Company in one or more Metropolitan Statistical Areas ("MSAs") in which the
Company is doing business on October 1, 2002. . . .

(b)      During the period May 1, 2003, to April 30, 2018, Birnbaum shall not
directly or indirectly compete with the Company by engaging, in a competitive
capacity, in any business engaged in the same or similar business of the Company
in one or more MSAs where, on the last day of Birnbaum's employment [October
1, 2002], the Company is engaged in real estate site selection or has taken further
steps toward the commencement of operations in the future, of which Birnbaum is
aware. . . .

**2.4 Acknowledgement of Covenants.**  . . . In the event that the Company has
probable cause to believe that Birnbaum has breached any one or more of the
covenants in this Article 2, the Company shall pay any subsequent payments
remaining due to Birnbaum into an escrow account until the existence or non-
existence of such breach is finally determined in a court of law or equity.  If it is
finally determined that Birnbaum has not breached, the monies in escrow shall be
immediately paid to Birnbaum; if however, it is finally determined that Birnbaum
has breached, such monies shall be paid to the Company. . . .

To the extent any of the restrictive covenants herein are finally determined by a
court to be unenforceable and the Court refuses to modify such covenant to
become enforceable, the Company shall have no further obligation to make any of
the payments set forth in Article 1.  Finally, in this regard, Birnbaum
acknowledges that he and the Company have negotiated and bargained for the
terms of this Agreement and that Birnbaum accepts the promise by the Company
to pay $3,000,000 from May 1, 2008, to April 30, 2018, as sufficient
consideration for the restrictive covenants set forth herein.

*See* Exhibit D to the Objection ("Ex. D").  The language of the Sharp Agreement and the

Birnbaum Agreement (collectively, the "Agreements") are substantially the same, although the

relevant dates and monetary amounts differ.  *See* Objection, ¶ 18 ("Birnbaum and Sharp entered

into substantively identical non-compete agreements.").  The non-compete provisions in Article

2 of the Agreements are referred to herein as the "Non-Compete Agreements."

3.      Sharp filed a proof of claim, the "Sharp Claim," on January 30, 2009, asserting

the right to payment on a general unsecured basis in the amount of $1,650,000, which is the

remaining amount due under the Sharp Agreement.  *See* Objection, Ex. C.  Birnbaum filed a

proof of claim, the "Birnbaum Claim," on January 30, 2009, asserting the right to payment on a general unsecured basis in the amount of $2,153,297, which is the remaining amount due under the Birnbaum Agreement.  *See* Objection, Ex. D.

4.     The Liquidating Trust objected to the Non-Compete Claims on September 28, 2012, based on the erroneous argument that the Non-Compete Agreements became "unenforceable" on the date Circuit City went out of business, March 8, 2009.  *See* Objection, ¶¶ 22, 27-33.

5.     The Liquidating Trust seeks two forms of relief: (1) a determination by this Court that the Non-Compete Agreements became "unenforceable" after March 8, 2009, because Circuit City ceased conducting business on that date; and (2) a corresponding reduction in the Non-Compete Claims so that no payments would be due after March 8, 2009.  *See* Objection, ¶¶ 22-23, 33.

### ARGUMENT

6.     The Liquidating Trust argues that the Non-Compete Agreements are unenforceable restraints of trade because Circuit City had no legitimate business interest to protect after March 8, 2009, when it ceased conducting business.  The Liquidating Trust contends that under the three-pronged reasonableness inquiry applied pursuant to Virginia law when employers seek to enforce non-competes and restrain trade via an *injunction* (the "reasonableness" test), the Agreements are unenforceable because Circuit City is out of business. The Liquidating Trust argues that it is no longer obligated to make payments due after March 8,

2009, notwithstanding that Sharp and Birnbaum have abided by (and continue to abide by) the

terms of the Non-Compete Agreements.  *See* Objection, ¶¶ 22, 27-33.  ¶ 7.[1]

7.      The Liquidating Trust's attempt to evade its payment obligations should be

rejected for a number of reasons.  First, no restraint of trade is at issue here, so the

reasonableness test should not be applied in analyzing the Non-Compete Agreements.  The

Liquidating Trust does not seek to *enjoin* Sharp and Birnbaum from working and no such

remedy is even available, particularly where Sharp and Birnbaum have never breached the

Agreements.  Instead, the remedy available under the Agreements in the event that Sharp and

Birnbaum were to breach is a forfeiture of their benefits.  Thus, this is a case where Sharp and

Birnbaum face the loss of their payments if they breach, rather than an injunction stopping them

from working.  In these types of "forfeiture" cases, courts must analyze non-compete agreements

under a traditional contract analysis, rather than through the reasonableness test applied when an

employer seeks to restrain trade via an injunction.  In other words, when only *money* is at stake,

rather than a restraint of trade, a traditional contract analysis applies in enforcing a non-compete

agreement.  Here, if Sharp or Birnbaum breached the Non-Compete Agreements, the Liquidating

Trust would have every right to *enforce* the Non-Compete Agreements in accordance with their

terms through the forfeiture of benefits provisions.  Accordingly, as explained below in more

detail, the Non-Compete Agreements cannot be held "unenforceable" under Article 2.4 of the

Agreements and the Objection should be overruled for this reason alone.

8.      Second, each of the cases cited and relied upon by the Liquidating Trust involved

attempts by employers to *enjoin* former employees from working *after* the employer ceased

---

[1] In Birnbaum's case, this meant that he did not compete with Circuit City for 5 years – from May 1, 2003 to May 1, 2008 – before he received any compensation.  *See* Objection, Ex. D.

doing business.  None of those cases involved agreements like those at issue here, where the

employer can enforce the Non-Compete Agreements through the forfeiture of benefits remedy in

the event of a breach.  Accordingly, because the cases cited by the Liquidating Trust involved

only attempts to enjoin former employees from working, the non-competes were analyzed to

determine whether they were reasonable restraints of trade.  This analysis is wholly inapplicable

here because no one is seeking to enjoin Sharp or Birnbaum from working, and the remedy

available in the event of a breach by them is a forfeiture of benefits.  For this reason, the

reasonableness analysis applicable in cases where a former employer seeks to restrain trade is not

germane to the instant case.

9.      Finally, there is no case or controversy here because there has been no breach or

threatened breach by Sharp or Birnbaum.  Because Sharp and Birnbaum have been abiding by

the terms of the Non-Compete Agreements, there is no reason for a Court to adjudicate

enforceability.

**I.      The Agreements Provide For The Forfeiture Of Benefits In The Event Of A Breach
And No Restraint Of Trade (An Injunction) Is At Issue.**

10.     The entire premise of the Liquidating Trust's argument is flawed because the

Agreements expressly provide for the forfeiture of benefits as the primary remedy in the event of

a breach of the Non-Compete Agreements.  There has been no attempt by Circuit City at any

time to enjoin either Sharp or Birnbaum from working in any manner.  Accordingly, neither the

Liquidating Trust nor Circuit City has sought to impose a restraint of trade, *i.e.*, the restriction of

business. To the contrary, agreements that expressly provide for a forfeiture of benefits do not

operate to prohibit or restrain competition and are fully enforceable without resort to analysis

under the strict reasonableness test applicable when an employer seeks an injunction.  Forfeiture

remedies merely deny an employee, who has chosen to compete in violation of a covenant, the

right to monetary benefits otherwise payable.  Thus, cases where an employer seeks to enforce a

forfeiture of benefits provision (rather than an injunction to stop a former employee from

working) are analyzed under a traditional contract analysis.  That is precisely what is at issue

here and the forfeiture of benefits provision is fully enforceable.

> **A.    The Non-Compete Agreements Contain Forfeiture Of Benefit Provisions
> That Are Fully Enforceable, And No Restraint Of Trade Is At Issue.**

11.    Covenants not to compete are often enforced by injunction, which operates as a

restraint on trade.  *See, e.g., Richardson v. Paxton Co.*, 203 Va. 790, 791, 127 S.E.2d 113, 114

(1962).  Where "a restraint sought to be imposed restricts the employee in the exercise of a

gainful occupation, it is a restraint in trade . . . ."  *Id.* at 795, 127 S.E.2d at 117.  Where an

employer does not seek an injunction based on a violation of a non-compete, but instead seeks

simply a forfeiture of benefits, the enforceability of the covenant is analyzed in an entirely

different manner.  Covenants providing for a forfeiture of benefits are analyzed under a

traditional contract analysis and are *not* subject to the reasonableness test applied to restraints on

trade, which is the analysis advocated by the Liquidating Trust.  As the Fourth Circuit has

explained:  "forfeitures [of benefits] for engaging in subsequent competitive employment [in

violation of a non-compete], . . . , are valid, even though [the agreement is] unrestricted in time

or geography."  *Rochester Corp. v. Rochester*, 450 F.2d 118, 123 (4th Cir. Va. 1971) (applying

Virginia law).  Thus, under Virginia law, a court may refuse to grant injunctive relief if a non-

compete lacks reasonable restrictions on time or geography, but the agreement will be fully

enforced if the employer seeks only to obtain a forfeiture of benefits pursuant to a provision that

allows for such relief.

12.     Here, Article 2.4 of the Agreements expressly provides that if Sharp or Birnbaum

breach the Non-Compete Agreements, they will forfeit their rights to future benefits.  Moreover,

if Sharp and Birnbaum wished to compete and challenged the enforceability of the Agreements,

they would forfeit their benefits if a court found the Agreements unenforceable.  The forfeiture

of their benefits is the remedy expressly provided by Circuit City in the Non-Compete

Agreements.  Accordingly, the Non-Compete Agreements should be analyzed in the same

manner as the cases cited below, which address the enforceability of otherwise overly broad

covenants not to compete that expressly provide for the forfeiture of benefits as a remedy.[2]

13.     In *Nationwide Mutual Ins. Co. v. Tatem*, 210 Va. 693, 695, 173 S.E.2d 818, 820

(1970), the Supreme Court of Virginia enforced a non-compete agreement imposing a forfeiture

on "extended earnings" of an insurance agent *without subjecting the non-compete to the

reasonableness analysis applicable when restraints of trade (injunctions) are sought*.  In *Tatem*,

the agreement provided that the employee, an insurance agent, would be entitled to "extended

earnings" (*i.e.*, continued commissions), but such entitlement would be immediately forfeited if

the employee should "induce, or attempt to induce, any existing policyholders to replace, lapse,

forfeit or cancel any policies issued by the Companies."  210 Va. at 694, 173 S.E.2d at 818.

There were no temporal or geographic limits in the non-compete agreement which would have

otherwise rendered it invalid and unenforceable under the reasonableness test applicable when

---

[2] While the Non-Compete Agreements do not prohibit the Company from pursuing "other remedies available at law
or in equity for such breach or threatened breach, including injunctive relief and the recovery of damages," the Non-
Compete Agreements do not expressly authorize injunctive relief.  *See* Objection, Ex. C, ¶ 2.4; Objection, Ex. D, ¶
2.4.  Further, no such relief has been requested here, nor could it have been requested because Sharp and Birnbaum
have not breached the Non-Compete Agreements, and the Liquidating Trust makes no such allegation.  Because the
Liquidating Trust is not seeking to restrain trade by seeking an injunction, there is no reason for the Court to apply
the reasonableness test in analyzing the Non-Compete Agreements, and no basis for declaring the Non-Compete
Agreements unenforceable.

injunctive relief is sought.  Nevertheless, the Court enforced the agreement after the agent sent a

letter to policyholders soliciting their business, which voided the agent's right to further

"extended earnings."  210 Va. at 696, 173 S.E.2d at 820.  Because the employer sought to

enforce the agreement through the forfeiture of benefits provision, and that was the only remedy

sought, the agreement was not analyzed as a restraint of trade and subjected to the strict

reasonableness test that the Liquidating Trust seeks here.

14.       In *Rochester Corp., supra*, the Fourth Circuit applied Virginia law and relied on

*Tatem* in its analysis of a non-compete contained in a pension plan.[3]  The covenant at issue

provided that all rights and benefits under the pension plan would be forfeited for any employees

who "'after retirement or termination of [their] service' engaged in employment competitive with

[the employer]."  450 F.2d at 119.  There were no time limits or geographic restrictions in the

covenant.  The plaintiff employee violated the covenant and then sued the employer, seeking to

recover his benefits on the grounds that the covenant was not enforceable.  *Id*. at 122.  The

United States District Court for the Eastern District of Virginia held that the plaintiff was entitled

to continued benefits because the covenant "represented an invalid restraint, violative of public

policy." *Id*.  The Fourth Circuit, however, reversed the District Court and explained that the

enforcement of otherwise overly broad covenants not to compete through a forfeiture of benefits

does not involve a restraint of trade:

> The strong weight of authority holds that *forfeitures* for engaging in subsequent
> competitive employment, included in pension retirement plans, are valid, even
> though unrestricted in time or geography.  *The reasoning behind this conclusion is
> that the forfeiture,* unlike the restraint included in the employment contract, *is not a*

---

[3] *Rochester Corp.* was decided prior to the enactment of the Employee Retirement Income Security Act of 1974
("ERISA") and therefore applied Virginia law in analyzing the plan provisions.

> *prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage.*

*Id.* at 123 (emphasis added). *See also Johnson v. MPR Assocs., Inc.*, 894 F. Supp. 255, 257 (E.D. Va. 1994) (enforcing a non-compete in the context of a stock transfer agreement and explaining that "[t]his circuit has recognized a distinction between restraints against a former employee's subsequent right to work and ancillary forfeitures of benefits resulting from an employee's work for a competitor"). Where an employer does not seek to restrict an employee's "ability to work," but merely seeks to deny him a monetary benefit because he violated a non-compete, "[*t*]*he denial of such a benefit does not operate as a restraint of trade.*" *Id.* (Emphasis added).

15.    The rationale applied in *Tatem*, *Rochester* and *Johnson* is equally applicable here. The Non-Compete Agreements expressly provide that benefits will be forfeited in the event of a breach, and no one has sought to restrain trade by enjoining Sharp and Birnbaum from working. Accordingly, the Non-Compete Agreements are fully enforceable, even they could not be applied to enjoin Sharp and Birnbaum from working. If Sharp and Birnbaum had breached the Non-Compete Agreements, the Court could plainly enforce them to cause a forfeiture of benefits. Accordingly, the Non-Compete Agreements are enforceable here, just like the agreements in *Tatem, Rochester Corp.* and *Johnson*.

**B.    The Non-Compete Agreements Cannot Be Held "Unenforceable" Under Article 2.4 Of The Agreements.**

16.    In order for the Liquidating Trust's Objection to be sustained, it must satisfy the requirement of Article 2.4 of the Agreements, which provides that no further payments are required if the restrictive covenants "are finally determined by a court to be unenforceable . . ." This is the provision that forms the entire basis for the Objection. The Objection should be

overruled for the simple reason that the Liquidating Trust cannot satisfy the test imposed by

Article 2.4.

17.    The litigation posture of this case is not only unusual, it is unique as far as Sharp

and Birnbaum's research has uncovered.  Indeed, Sharp and Birnbaum are aware of no case

where an employer who *drafted* a non-compete (here the Liquidating Trust on behalf of Circuit

City) has asked a Court to hold it unenforceable.  Perhaps it is for this reason, among many

others, that the arguments made by the Liquidating Trust are an attempt to fit square pegs into

round holes.

18.    The provision of Article 2.4 that would allow the Liquidating Trust to avoid its

payment obligations upon a final determination of "unenforceability" cannot be triggered here

because the Non-Compete Agreements are not "unenforceable."  As explained above, the Non-

Compete Agreements set forth various prohibitions against competition in Articles 2.1, 2.2 and

2.3.  If Sharp or Birnbaum violate or have violated any of those prohibitions, they would forfeit

their right to future benefits.  As explained above, this right to impose a forfeiture remains fully

in effect and enforceable, even if the Non-Compete Agreements were found to be otherwise

overly broad or unduly burdensome and therefore could not provide a basis for injunctive relief.

*See Tatem, Rochester Corp.* and *Johnson, supra*.  Accordingly, even if the Liquidating Trust

could not obtain an injunction against Sharp or Birnbaum (in the event of a breach) because

Circuit City has ceased doing business, there is no doubt that the Liquidating Trust could enforce

the Non-Compete Agreements through their forfeiture provisions.  By way of example, if the

Liquidating Trust learned that Sharp had breached the Non-Compete Agreement in 2008, then it

would have every right to invoke the forfeiture provisions in Article 2.4, cease all payments to

Sharp and enforce the Non-Compete Agreement in that manner.  For this reason alone, the Court

cannot find that the Non-Compete Agreements are "unenforceable" and the Liquidating Trust

cannot avoid its obligations under Article 2.4.  Therefore, the Objection should be overruled and

the Court's analysis need go no further.

### C.     The Cases Cited By The Liquidating Trust Are Inapposite Because They Each Involve A Request For Injunctive Relief.

19.     Each one of the cases cited by the Liquidating Trust for the proposition that the

termination of an employer's business renders a restrictive covenant unenforceable involved a

situation where an employer sought to enforce a non-compete by seeking an injunction.  Thus,

the employers were seeking to restrain trade and the courts applied the "reasonableness" test in

assessing whether to award injunctive relief.  *See Herring Gas Co., Inc. v. Pine Belt Gas, Inc.*, 2

So. 3d 636, 640 (Miss. 2009) (where *employer* sought an *injunction,* the court held that "the

termination of [employer's] business operations ended its right to enforce the covenant not to

compete"); *Premier Assocs., Ltd. v. Loper*, 149 Ohio App. 3d 660, 669, 778 N.E.2d 630, 637

(2002) (holding that "an employer which abandons its business may not enforce a covenant not

to compete" through an injunction); *Gibson v. Eberle*, 762 P.2d 777, 778 (Colo. Ct. App. 1988)

(where employer sought injunction, the trial court held that the employer's "right to enforce [the]

covenant . . . ceased to exist" when the business ceased to exist); *Marcus v. Bake*, 221 S.W.2d

575, 575-76 (Ct. Civ. App. Tex. 1949) (denying injunction where former employees did not

violate restrictive covenant that restricted them from competing only with a single location that

had since been sold); *George M. Danke Co. v. Marten*, 207 Wis. 290, 294, 241 N.W. 359, 361

(1932) (where plaintiff sought injunction, the court held that "the vendee's right to enforce the

contract ends with his abandonment or transfer of the business").

20.     The lone Fourth Circuit case cited by the Liquidating Trust was also decided in the context of whether a covenant is "invalid and unenforceable in the single respect in which [the plaintiff] sought their enforcement in this litigation: to enjoin the [defendants] . . . ." *PHP Healthcare Corp. v. EMSA Ltd. P'ship*, 14 F.3d 941, 944 n. 2 (4th Cir. 1993).  This case construed *a Florida statute* governing enforceability of *restraints on trade*, and interpreted specific language within that statute, which required that the employer continue to carry on a "like business" in the restricted area in order to maintain its right to enforce a non-compete via an injunction.

21.     The present case is easily distinguishable from the cases cited by the Liquidating Trust.  The cases cited by the Liquidating Trust, without exception, examine the ability of an employer to enforce a non-compete by *injunction* after the employer has ceased operations.  In this case, the Non-Compete Agreements contain forfeiture of benefits provisions that are fully enforceable and no injunction has been sought.  The Non-Compete Agreements are therefore subject to a traditional contract analysis and not to the strict scrutiny applicable when an employer seeks an injunction.  Finally, the rationale for applying the reasonableness test when an injunction is sought pervades each and every one of the cases cited by the Liquidating Trust: "Contracts which restrict one in the exercise of a trade or profession are viewed with disfavor *if* their effect is unreasonably to interfere with the covenantor's right of free exercise of his liberty of occupation and employment."  *See Eberle*, 762 P.2d at 779 (emphasis added).  As discussed in detail above, when an employer seeks to enforce a forfeiture of benefits provision, rather than seeking an injunction, there is no attempt to restrain trade.  Thus, the rationale for applying a

heightened standard is not present here.  For all of these reasons, the cases cited by the

Liquidating Trust are inapposite, and do not support the Objection.

> **D.    The Continuation Of The Payments Is Consistent With The Intent Of The Parties, The Language Of The Agreements And Basic Principles Of Virginia Contract Law.**

22.    Agreements containing forfeiture of benefits are interpreted under traditional

principles of contract law.  *See, e.g., Tatem*, 210 Va. at 696, 173 S.E.2d at 820.  Under Virginia

contract law, the Agreements are fully enforceable as written, despite Circuit City's bankruptcy

and the cessation of its business.

23.    Virginia contract law provides that parties to a contract must abide by its terms,

without regard to whether the contract remains favorable or profitable.  The mere fact that

"performance has become economically burdensome or unattractive is not sufficient for

performance to be excused . . . .  We will not allow a party to a contract to escape a bad bargain

merely because it is burdensome.'"  *In re Westinghouse Electric Corp. Uranium Contract

Litigation*, 517 F. Supp. 440, 454 (E.D. Va. 1981) (overruled on other grounds) (quoting *Neal-

Cooper Grain v. Texas Gulf Sulphur Co.*, 508 F.2d 283, 293-94 (7th Cir. 1974)); *see also Smyth

Bros. v. Beresford*, 128 Va. 137, 170, 104 S.E. 371, 382 (1920) ("[E]very person . . . is entitled to

dispose of [his] property, in such a manner and upon such terms as he chooses, and whether his

bargains are wise, or discreet, or profitable, or unprofitable or otherwise, are considerations not

for courts of justice, but for the party himself to deliberate upon.").

24.    The possibility that Circuit City would cease business, change lines of business or

experience bankruptcy at some future date was not unforeseeable.  Thus, if Circuit City, the

drafter of the Agreements, had wished for its obligations to be discharged upon the occurrence of

bankruptcy or the cessation of the business, it could and should have included such terms. The

Supreme Court of Virginia recognized this principle in an analogous case, *Musselman v. Glass

Works, LLC.,* 260 Va. 342, 533 S.E.2d 919 (2000). In *Musselman,* defendant Glass Works, the

purchaser of a business, entered into non-compete contracts with the three former owners of the

business, whereby the former owners agreed to refrain from competing in exchange for periodic

payments. *Id.*, at 347, 533 S.E.2d at 921. One of the former owners, Young, died and Glass

Works ceased making payments to his estate. *Id.* at 345, 533 S.E.2d at 920. The executor of

Young's estate, Musselman, sued Glass Works for the balance of the payments, and the trial

court entered final judgment in favor of Glass Works. *Id.* The Supreme Court of Virginia,

however, reversed this decision, explaining that "[i]f Glass Works had intended to be excused

on Young's death from its duty to pay this particular part of the purchase price for [the business],

Glass Works should have inserted a provision to this effect in the purchase agreement." *Id.* at

347, 533 S.E.2d at 921. The Court refused to re-write the agreement to remedy Glass Work's

failure to include a provision that could have been foreseen: "We will not, by construction,

insert a term in a contract that the parties to the contract omitted." *Id.* at 347, 533 S.E.2d at 921-

22 (citing *Lansdowne Dev. Co. v. Xerox Realty Corp.*, 257 Va. 392, 400, 514 S.E.2d 157, 161

(1999); *Hutter v. Heilmann*, 252 Va. 227, 231, 475 S.E.2d 267, 270 (1996);

*Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661,

664 (1995)). The Court also found no merit in Glass Works' argument that the former owner's

death "prevented him from performing his duty of forbearance from competition." *Id.* at 348,

533 S.E.2d at 922. The former owner's death "did not constitute a breach of his agreement to

refrain from competition . . . and did not deprive Glass Works of the benefit of its bargain." *Id.*

25. *Musselman* is important for a number of reasons and involves a situation that is strikingly comparable to the instant case. After Young's death, the non-compete agreement could no longer provide the basis for Glass Works to obtain an injunction. Similarly, in the present case, Circuit City may no longer be able to obtain an injunction against Sharp and Birnbaum. In *Musselman*, no injunction was available because Young died. In the present case, the Liquidating Trust may not be able to obtain an injunction because Circuit City effectively "died." Nevertheless, the Supreme Court of Virginia recognized in *Musselman* that even though injunctive relief was no longer available as a remedy in the event of a breach of a non-compete, the employer's obligation to pay money should be enforced in accordance with the terms of the agreement. The result should be the same here.

26. The traditional contract analysis applicable in *Musselman* is equally applicable here and the Agreements should be enforced in accordance with their terms. Moreover, the payments here were promised upon the *retirements* of Sharp and Birnbaum, and were obviously intended as a form of deferred compensation. The parties plainly intended that the payments would be made even if Circuit City could no longer enforce the Non-Compete Agreements via an *injunction*. For example, the Agreements expressly provide that in the event of Sharp or Birnbaum's *death*, in which circumstance Circuit City could not possibly obtain an injunction, payments would continue to be made to their spouses. *See* Ex. C, ¶ 1; Ex. D, ¶ 1. Thus, the Agreements, applied plainly and fairly, do *not* condition the payments on the ability of Circuit City to obtain injunctive relief as a means of enforcing the Non-Compete Agreements. Similarly, the Agreements restrict competition only to the extent Circuit City was engaged in a particular business as of October 1, 2002. Thus, if at some point during the next ten years,

Circuit City ceased selling all products that it sold on October 1, 2002, and began engaging in *different* lines of business, the obligations to make the payments would have nevertheless remained.  Based on these indisputable facts, it is clear that the parties' intent was to continue the payments even if (1) Sharp and Birnbaum no longer posed a competitive threat, (2) Circuit City received no competitive benefit by their adherence to the Non-Compete Agreements, and (3) no injunctive relief was available.  This is precisely the current posture.

27.     In the end, neither Sharp nor Birnbaum has breached his Agreement in any way and therefore has not deprived Circuit City of the benefit of its bargain.  The Liquidating Trust cannot be allowed to add new terms to the Agreements, effectively creating a provision stating: "If the Company ceases operations, all payment obligations are null and void."  This would contravene the intent of the parties, Virginia law does not permit such a result and the terms of the Agreements must be applied as written.  *See Musselman*, 260 Va. at 347, 533 S.E.2d at 921-22 (citing *Lansdowne Dev.*, 257 Va. at 400, 514 S.E.2d at 161; *Hutter*, 252 Va. at 231, 475 S.E.2d at 270; *Bridgestone/Firestone*, 250 Va. at 407, 463 S.E.2d at 664); *see also Pysell v. Keck*, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002) ("courts cannot read into contracts language which will add to or take away the meaning of words already contained therein" (quoting *Southerland v. Southerland*, 249 Va. 584, 590, 457 S.E.2d 375, 378 (1995))); *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (same) (citing *Virginian Ry. Co. v. Avis*, 124 Va. 711, 719, 98 S.E. 638, 640 (1919)).

28.     To the extent there is any question as to the interpretation of the terms of the Agreements, which there is not, any ambiguity should be construed against Circuit City, which drafted the Agreement.  "[I]n the event of an ambiguity in the written contract, such ambiguity

must be construed against the drafter of the agreement." *Cappo Mgmt. v. V Britt*, 282 Va. 33, 37,

711 S.E.2d 209, 211 (2011) (quoting *Martin & Martin, Inc. v. Bradley Enters., Inc.*, 256 Va. 288,

291, 504 S.E.2d 849, 851 (1998)); *see also Mahoney v. NationsBank of Virginia*, 249 Va. 216,

222, 455 S.E.2d 5, 9 (1995) ("When an ambiguity exists, a court will construe a contract more

strictly against the party who prepared it"); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307, 315

S.E.2d 193, 195 (1984) ("a contract will be construed more strictly against the party who

prepared it."). The Agreements, however, are not ambiguous. The Agreements do not allow the

Liquidating Trust to avoid its obligations under the present circumstances, and the Objection

should be overruled.

## II.    The Requested Relief Requires The Court To Issue An Impermissible Advisory Opinion Because There Is No Case Or Controversy.

29.    Finally, the question of the enforceability of the covenant does not present a case

or controversy because neither Sharp nor Birnbaum are threatening to breach the Agreements.

Here, the Liquidating Trust effectively seeks a declaratory judgment that it (representing Circuit

City's interests) has no legal obligation to pay Sharp or Birnbaum any further monthly

installments, despite their ongoing forbearance from any competitive activities prohibited by the

Non-Compete Agreements. *See* Objection, ¶ 22 (seeking "a *determination* that the restrictive

covenants set forth in the Non-Compete Agreements were unenforceable after March 8, 2009,

when Circuit City closed its last remaining stores and ceased conducting business, and that,

accordingly, no further payments were due after that date") (emphasis added).

30.    While courts have the power to issue declaratory judgments, there are limits

regarding whether a court should exercise its discretion and entertain actions seeking declaratory

relief. Generally, declaratory relief is not available to secure judicial answers to questions that

are merely theoretical or hypothetical.  Instead, declaratory judgments will be awarded only where there is a justifiable controversy.  The Declaratory Judgment Act provides that "[i]n a case of *actual controversy* within its jurisdiction . . . any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  The Declaratory Judgment Act applies to Bankruptcy matters in Bankruptcy courts, and Bankruptcy courts will refuse to adjudicate a matter that does not present a case or controversy.  *See, e.g., In re Martino*, 2012 Bankr. LEXIS 1835 (Bankr. D. Colo. Apr. 26, 2012); *In re Hartley*, 39 B.R. 281, 285 (Bankr. N.D. Ohio 1984), *cited with approval by In re LCS Homes, Inc.*, 103 B.R. 736, 742 n.4 (Bankr. E.D. Va. 1989) (Bostetter, J.).

31.     To determine whether an actual controversy exists, a court will ask "whether the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment."  *In re Hartley*, 39 B.R. at 285 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); citing *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972)).  "Furthermore, whether the controversy is of sufficient immediacy and reality to permit a declaratory judgment is a question of degree, to be worked out on a case-by-case basis." *Id.* (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Evers v. Dwyer*, 358 U.S. 202, 203 (1958)).  For example, in *In re LCS Homes*, the Court noted that the debtor sought to have the court declare that the claimant had breached the contract, thus a substantial controversy existed.  *See In re LCS Homes, Inc.*, 103 B.R. at 742 n.4.

32.     Standing, ripeness, and mootness are factors to consider in whether a case or controversy exists.  *See, e.g., In re Mlincek*, 350 B.R. 764, 767 (Bankr. N.D. Ohio 2006) (citing

*Oldham v. Am. Civ. Liberties Union Found. of Tenn., Inc.*, 849 F. Supp. 611, 614 (M.D. Tenn.

1994)).  "In order for a party to have the standing necessary to invoke federal jurisdiction, the

plaintiff must have suffered actual or threatened injury, the injury must be traceable to the

defendant's conduct and the injury must likely be redressed by the requested relief."  *In re*

*Johnson*, 55 B.R. 800, 802 (Bankr. E.D. Va. 1985) (Bostetter, J.) (citing *Allen v. Wright*, 468

U.S. 737 (1984); *Valley Forge Christian College v. Americans United for Separation of Church*

*and State, Inc.*, 454 U.S. 464, 472 (1982)).  "Lack of standing to bring a cause of action is a

threshold issue that warrants dismissal."  *In re Dameron*, 213 B.R. 482, 484 (Bankr. E.D. Va.

1997) (Tice, J.) (citing *In re Carver*, 144 B.R. 643, 648 (S.D.N.Y. 1992); *In re North East*

*Projects, Inc.*, 133 B.R. 59, 60 (W.D. Pa. 1991)).  In cases where a plaintiff seeks a declaratory

judgment that a non-compete provision is unenforceable, the case is not yet ripe for adjudication

when there has been no breach, threatened breach or threatened suit for alleged breach.  *See*

*Bruhn v. Stp Corp.*, 312 F. Supp. 903, 906-07 (D. Colo. 1970) ("In the present dispute, there has

been no threat of suit by the defendant, nor has the defendant claimed that any action heretofore

taken by plaintiffs has resulted or will result in the immediate future in a breach of the

covenant.")

33.    At both the state and federal level, in cases where a party seeks a declaratory

judgment that a non-compete agreement is unenforceable, such a remedy is improper if there is

no allegation of breach or threatened breach, and dismissal of the claim is therefore appropriate.

*See, e.g., Tomlin v. IBM Corp.*, No. CL-2011-8763, 2012 Va. Cir. LEXIS 26, at *3-8 (Cir. Ct.

Fairfax Co. Feb. 13, 2012) (finding no justifiable controversy where plaintiff failed to plead

breach or intent to breach the non-compete) (citing *Yukon Pocahontas Coal Co. v. Ratliff*, 175

Va. 366, 368-69, 8 S.E.2d 303 (1940); *Graves v. Ciraden, Inc.*, 65 Va. Cir. 127 (Cir. Ct. Fairfax

Co. 2004)); *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 590, 347 S.E.2d 25,

32 (1986) (finding no evidence that the plaintiffs will compete with the defendant or that they

have the intention of doing so, no justifiable controversy existed); *see also Cohen v. Orthalliance*

*New Image, Inc.*, 252 F. Supp. 2d 761, 766 (N.D. Ind. 2003) ("Unenforceability, however, is

generally a defense to a breach-of-contract action.  Assessing the success of a defense to a

potential claim (breach-of-contract or otherwise) is generally the type of hypothetical question

federal courts endeavor to avoid.  The 'actual controversy' difficulty becomes compounded

when one adds the fact . . . that both parties have fulfilled their contractual promises." (internal

citations omitted)); *see generally OfficeMax Inc. v. Sousa*, No. 9-631-P-W, 2010 U.S. Dist.

LEXIS 67642, at *5 (D. Me. July 7, 2010) ("There was no live controversy until [one party]

asserted breach of the [relevant] agreements.").  This principle is fully applicable here to the

extent that the Liquidating Trust is asking whether the Non-Compete Agreements could be

enforced for purposes of obtaining an injunction.  Because Sharp and Birnbaum have not

breached or threatened to breach, this issue is not ripe.

34.     Sharp and Birnbaum have not breached the Agreements, nor have they threatened

to do so, and the Liquidating Trust makes no allegation to the contrary.  Given that the

Agreements are contracts analyzed like any other, only a breach or threatened breach, *i.e.*, actual

or threatened injury, would render the issue of enforceability of the Agreements appropriate for

adjudication by a court.

35.     For these reasons, there is no case or controversy, and the Court should forego

issuing an opinion on the enforceability of the Agreements.

## CONCLUSION

For all of the reasons set forth above, and for others that may be advanced at a hearing on

the merits of the Liquidating Trust's Objection, this Court should overrule the Liquidating

Trust's Objection and allow Sharp's and Birnbaum's claims in their full amount.

Respectfully submitted this 28th day of November 2012.

> /s/ Richard E. Hagerty
> Richard E. Hagerty
> VSB No. 47673
> Troutman Sanders LLP
> *Counsel for Richard L. Sharp and Richard S. Birnbaum*
> 1660 International Drive, Suite 600
> McLean, VA  22102
> (703) 734-4326
> (703) 448-6520 (facsimile)
> richard.hagerty@troutmansanders.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of November 2012, I caused a copy of the

foregoing Response to Liquidating Trust's Sixty-Fifth Omnibus Objection to Claims Arising

under Non-Compete Agreements: Reduction of Certain Partially Invalid Claims to be served on

the following registered persons via the Court's CM/ECF System and by e-mail:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219

PACHULSKI STANG ZIEHL &
JONES LLP
Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100

PACHULSKI STANG ZIEHL &
JONES LLP
Robert J. Feinstein, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017

*Counsel to the Circuit City Stores,
Inc. Liquidating Trust*

/s/ Richard E. Hagerty
Richard E. Hagerty

#20180672

- 24 -