UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA


```
IN RE:                      .    Case No. 08-35653 (KRH)
                            .
                            .
                            .    Chapter 11
                            .    Jointly Administered
CIRCUIT CITY STORES,        .
INC., et al.,               .    701 East Broad Street
                            .    Richmond, VA 23219
                            .
          Debtors.          .
                            .    December 6, 2012
. . . . . . . . . . . . ..        2:03 p.m.
```


TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

```
For the Debtor:          Tavenner & Beran, PLC
                         By:  LYNN L. TAVENNER, ESQ.
                              PAULA S. BERAN, ESQ.
                         20 North Eighth Street, 2nd Floor
                         Richmond, VA 23219

                         Pachulski Stang Ziehl & Jones LLP
                         By:  ANDREW W. CAINE, ESQ.
                         10100 Santa Monica Boulevard
                         Los Angeles, CA 90067

For InnerWorkings,       DLA Piper
Inc.:                    By:  JAMES R. IRVING, ESQ.
                         203 North LaSalle Street
                         Suite 1900
                         Chicago, IL 60601
```


Proceedings recorded by electronic sound recording, transcript
produced by transcription service

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

For InnerWorkings,          Sands Anderson
Inc.:                       By:  WILLIAM A. GRAY, ESQ.
                            1111 E. Main Street
                            Suite 2400
                            Richmond, VA 23219

For Robert Gentry,          Righetti Glugoski, P.C.
Jonathan Card, Joseph       By:  MICHAEL C. RIGHETTI, ESQ.
Skaf, Jack Hernandez:       456 Montgomery Street
                            Suite 1400
                            San Francisco, CA 94104

                    - - -

1          COURTROOM DEPUTY:  All rise.  The United States

2  Bankruptcy Court for the Eastern District of Virginia is now in

3  session, the Honorable Kevin R. Huennekens presiding.  Please

4  be seated and come to order.

5          COURT CLERK:  In the matter of Circuit City Stores,

6  Incorporated, hearings on Items 1 through 77 on proposed

7  agenda.

8          MS. BERAN:  Good afternoon, Your Honor.

9          THE COURT:  Good afternoon, Ms. Tavenner.

10          MS. BERAN:  For the record, Paula Beran on behalf of

11  Circuit City Stores, Inc. Liquidating Trust.  With me this

12  afternoon on behalf of the trust are several individuals.

13  Specifically Mr. Andrew Caine is with us in person today, as

14  well as my law partner, Ms. Lynn Tavenner.  And then, at

15  counsel's table is Ms. Katie Bradshaw who Your Honor is

16  well-aware of.  And then, sitting behind counsel's table is Mr.

17  Jeff McDonald of the trust, as well.

18          Your Honor, there are a number of matters on today's

19  docket.  In keeping with other agendas, I tried to divide them

20  up from the motions type matters and then the claims

21  objections.  The first several matters are motions,

22  specifically in adversary proceedings.  And the first two items

23  will be handled today by Mr. Caine.

24          MR. COURT:  All right.  Thank you, Ms. Beran.

25          MS. BERAN:  Your Honor, and I would indicate here

1    that they are the defendant's motions so I think it would be

2    most appropriate then to turn the podium over to the defendant.

3         THE COURT:  I think that would be, thank you.  Mr.

4    Gray.

5         MR. GRAY:  I would, as well.  Thank you, Your Honor.

6    Good afternoon.  William Gray for InnerWorkings, Inc.  With me

7    is co-counsel James Irving of DLA Piper.  Your Honor has

8    previously admitted him pro hac on this matter and I would --

9    if I could turn over the podium to Mr. Irving.

10        THE COURT:  Thank you, Mr. Gray.  Mr. Irving, welcome

11   to the court.

12        MR. IRVING:  Thank you, Your Honor.  As Mr. Gray

13   introduced, Jim Irving from DLA Piper in Chicago, representing

14   InnerWorkings.  And I would like to thank you, as well, for

15   granting my application to appear before you pro hac.

16        THE COURT:  It was a close call.

17                      (Laughter)

18        MR. IRVING:  Well, I'm glad you decided the way you

19   did then, Your Honor.

20        I represent the defendant InnerWorkings, Inc. which

21   has been sued in a preference case by the Circuit City

22   Liquidating Trust.  And just for -- as a bit of background,

23   InnerWorkings was a supplier of printed promotional materials,

24   signs, banners, et cetera, that it sold to Circuit City.  My

25   colleague, Tim Brink who was at the pretrial hearing this May

1 was unavailable today but he will be at the trial scheduled

2 later this month and I anticipate that I will be back here, as

3 well.

4         As Your Honor knows, you entered a pretrial order in

5 May setting trial for the 17th and 18th of the month.  And in

6 compliance with the deadline set forth in the pretrial order,

7 InnerWorkings timely filed its motion for partial summary

8 judgment and -- by which InnerWorkings both seeks to rebut the

9 presumption of solvency and for a determination that Circuit

10 City was a going concern when the alleged preferential payments

11 were made.

12         THE COURT:  And you can assume that I've read all of

13 your papers and I'm familiar with the complaint in this case

14 and everything else.

15         MR. IRVING:  Oh, thank you, Your Honor.  It might be

16 helpful at this time -- I've prepared a binder of documents you

17 may already have but in case you don't, it's --

18         THE COURT:  I can't imagine I don't have one of them

19 but I'll take your binder.

20         MR. IRVING:  -- the pleadings.  Thank you, Your

21 Honor.  As Your Honor also knows, we filed a motion in limine

22 today to exclude the late designated expert testimony regarding

23 solvency because it's closely related to the motion summary

24 judgment; they were filed together.  And, as an aside, I'm sure

25 Your Honor is aware that the trustee recently filed his own

1  motion in limine seeking to prohibit InnerWorkings' own CFO

2  from testifying as a lay expert about the payment practices of

3  InnerWorkings' own customers.  That is not before you today,

4  but --

5          THE COURT:  Thank goodness because I did not read

6  that.

7          MR. IRVING:  It goes without saying that

8  InnerWorkings will be filing an objection to that.

9          THE COURT:  Okay.

10          MR. IRVING:  Now, Your Honor, would you like to hear

11  arguments on the motions today or reserve judgment on them?

12  I'm prepared to argue them but I know that we're a short ways

13  away from trial, as well.  So, it's -- I'd defer to you about

14  what you'd like to do.

15          THE COURT:  You can argue your motion.  I guess the

16  first thing I would like you to address, if you would please,

17  you said that you had timely filed a motion for summary

18  judgment.  I think you're aware that that is somewhat in

19  dispute.  The plaintiff has taken issue, saying that you were

20  two days late.  And the pretrial order had provided that

21  summary judgment motions should be filed no later than 30 days

22  prior to trial and your pleading was filed 28 days prior to

23  trial.  And I assume that you're relying on 9006 and I want to

24  figure out how you get to where you are.

25          MR. IRVING:  Absolutely, Your Honor.  I am relying on

1    9006.  Specifically, Your Honor, the 30 days fell on November

2    17th, 2012.  That was a Saturday.  9006(a)(1)(C) says that if

3    -- for a deadline set by an order, the Federal Rules of

4    Bankruptcy Procedure or otherwise, that if a deadline falls on

5    a holiday, Saturday or Sunday, the deadline is continued to the

6    next workday, which is Monday --

7           THE COURT:  Well, it depends which way you're

8    counting, doesn't it?  I mean, we're counting backwards as

9    opposed to forward.

10          MR. IRVING:  Well, that's my reading of the rule,

11   Your Honor, is that you do count forward to the next day.

12          THE COURT:  So if we're going backwards, backwards,

13   backwards and the rule goes next and you don't go backward, you

14   go forward?

15          MR. IRVING:  Yes, Your Honor, I believe that's

16   correct.  I can look through the text of the rule, if you'd

17   like.

18          THE COURT:  Well, that would be wonderful, 9006,

19   because the order was rather precise.  It didn't say file it 30

20   days prior; it said no later than 30 days.

21          MR. IRVING:  Yes, Your Honor.  I'm looking at

22   9006(a), computing time, and it says, "The following rule is

23   applied in computing any time period specified in these rules,

24   The Federal Rules of Civil Procedure, any local rule or court

25   order" -- which I believe applies here -- "and any statute that

1 does not specify a method of computing time." And then 9006(1)

2 says, "When the period is stated in days or longer unit of

3 time" -- which is the case here -- "include the last day of the

4 period but if the last day is a Saturday, Sunday or legal

5 holiday, the period continues to run" -- which would be forward

6 --

7        THE COURT:  What do you mean?  No, we're running

8 backwards.  That's what I'm saying.  So it continues to run in

9 the direction we're going, isn't it?

10        MR. IRVING:  Well, Your Honor, I think that the

11 period -- it seems to me that the period would continue to run,

12 that -- until Monday, that, you know, that the days would be

13 added.

14        THE COURT:  They continue -- well, then you think it

15 would stop and then start going the other way, not continue to

16 run.

17        MR. IRVING:  Are you saying that because it's 30 days

18 before trial?

19        THE COURT:  That's right.  We're counting backward.

20 That's what I'm saying.  And so we have a period that's

21 continuing and then it continues to run in the direction in

22 which it's going.  Isn't that what continue means?

23        MR. IRVING:  Well, as I read continue, I -- as I read

24 the order, it set basically the deadline as a Saturday and the

25 length of time that we have to file the motion continues.

1          THE COURT:  All right.  I hear you.  Okay.  Well,

2 let's go with the substance of your motion.

3          MR. IRVING:  Thank you, Your Honor.  And it's my --

4 it was not any intention to, you know, to play with the

5 deadline.  That was really how we had computed it.

6          But, Your Honor, as regards the motion for summary

7 judgment, you know that it is on a -- to both rebut the

8 presumption of insolvency and confirm that the debtors were a

9 going concern for purposes of making a solvency analysis.

10          THE COURT:  All right.  Now, let's focus on that

11 second issue.

12          MR. IRVING:  Yes, Your Honor.

13          THE COURT:  All right.  Because I think that that,

14 for my mind anyway, is a little bit clearer.  Isn't that a

15 factual analysis about whether or not it was a going concern?

16 How can I do that on a summary judgment motion?

17          MR. IRVING:  Well, I think Your Honor did it yourself

18 on a summary judgment motion in the <u>Heiliq-Meyers</u> case, if I

19 remember --

20          THE COURT:  No, I did and if you want to hear about

21 how I did it, I'd be more than happy to tell you.  But tell me

22 how we're going to do it here.

23          MR. IRVING:  Well, I think that there's actually no

24 genuine issue of material facts, that Circuit City was a going

25 concern.  The -- whether or not something is a going concern

1  is, you know, a question of, was it on its death bed or was it

2  operating?  And basically was liquidation imminent?  And here,

3  liquidation was not imminent.

4       We have the 10-Qs which show that there was an equity

5  cushion.  We have the monthly operating report which shows that

6  there is equity, that the debtors were solvent.  We have the

7  Besanko declaration which states that the debtor is operating

8  and again refers to pre-petition financials to say that there's

9  -- that they're solvent.  We have the statements of Mr.

10 Galardi, now my colleague at DLA Piper, but who was with the

11 Skadden firm representing the debtors.

12       THE COURT:  So now you have to believe him, right?

13                      (Laughter)

14       MR. IRVING:  That's right.  Absolutely.  He's my boss

15 now.  So I have to believe him.

16       And as Mr. Galardi told Your Honor during the first

17 day hearings, the -- he said that the debtor was a going

18 concern.  They anticipated a sale of the assets.  Sales were

19 ongoing.  The stores were still operational, certainly at the

20 times the transfers were made.

21       And it's a legal question, Your Honor.  The fact that

22 Circuit City ultimately ended up liquidating doesn't mean that

23 they weren't a going concern --

24       THE COURT:  Well, I agree with you on all that.  But

25 let's go back to that first day, you know, because I was there

1  too when Mr. Galardi made his things and I was asking a lot of

2  questions --

3         MR. IRVING:  Yes, Your Honor.

4         THE COURT:  -- because one of the things that Mr.

5  Galardi wanted to do that day, of course, was to enter into

6  post-petition financing agreement.  And there was a financial

7  expert that was offered that day.  And I asked questions of

8  that financial expert because I was skeptical about entering

9  into a financing order that was going to tie up the debtor on

10 the very first day.  And I said to the financial expert, can

11 this company survive without this financing?  Can it live off

12 of cash collateral, even for a week?  And the answer was no.

13 So, I mean, you've got those kinds of things that happen on the

14 first day too.

15         And then, when I look at your 10-Qs that you're

16 talking about, there for the second and the third quarter --

17 and as I understand it, these transfers were alleged to have

18 occurred in the time period between September 30 and December

19 -- and November 3.  So isn't -- are we kind of mixing some

20 things up?  Don't I need to have somebody over in the witness

21 box say, okay, Judge, this is how you tie that together,

22 because as you had suggested a moment ago there is this cushion

23 and he couldn't have possibly eaten into that cushion within a

24 period -- but I can't just divine that, can I?

25         MR. IRVING:  I think that's true.  Well, I think that

1  it's true that you do need facts in the record, that you can't

2  just divine that fact.  But I think that they exist because the

3  monthly operating report, the Besanko declaration and the

4  Galardi statements, I think they -- what they do is, they all

5  tether the last 10-Q which shows the -- what I refer to as the

6  equity cushion or shows that there is solvency.  They refer to

7  that document and --

8        THE COURT:  -- and rely on it completely.  Meanwhile,

9  the debtor was preparing schedules and would come in on --

10 again, on the first day, saying, we don't know and we need

11 extra time to prepare our schedules.  And then when those

12 schedules ultimately got filed, the schedules showed a

13 different story.

14        And so when that first monthly operating report, of

15 course, was due before the schedules were filed, if I recall

16 correctly --

17        MR. IRVING:  That's correct, Your Honor.

18        THE COURT:  Okay, thank you.  And so, you know, they

19 were tethering, as you say, back to the -- to that 10-Q because

20 that's the best information anybody had at that point.

21        MR. IRVING:  That's correct, Your Honor.  But I think

22 what matters here isn't just what happened, even if it was just

23 a matter of weeks or about a month after the hearing.  It's,

24 was the debtor a going concern as of the date it made those

25 transfers?  And all of the best information at that time or

1 before that and immediately after that said that it was a going

2 concern.

3      I also think that before you today, Your Honor, if I

4 may, in the trustee's objection to the motion for summary

5 judgment, although he cites to certain points in the record

6 with regard to the first part, the presumption of insolvency, I

7 don't think that he's raised a genuine issue of material fact

8 as regards a going concern.  In fact, the trustee's own expert

9 report, which I would actually seek to exclude by the motion in

10 limine, itself assumes that the debtor was a going concern in

11 doing its own calculation.

12      THE COURT:  I was going to ask you that question,

13 whether -- because I looked at that.  And I was wondering

14 whether I was allowed to consider that or not, if I exclude it.

15      MR. IRVING:  Well, self-servingly, Your Honor, I

16 think that because it's before you today, I think you can

17 consider it.  And one of the things I'd like to make clear

18 about the motion in limine, and I'll get to this later, is not

19 necessarily to exclude the evidence that the expert relies on.

20 We wouldn't attempt to do that but we would try and prevent the

21 trustee from designating someone after the deadline and

22 basically, you know, preventing us from kind of having a fair

23 trial on the issue of solvency.

24      THE COURT:  Well, what they're going to tell me when

25 they stand up is that, well, they did file it timely because

1  they did it within the 21-day period after the designations

2  were due and they did it only for purposes of rebuttal.  And so

3  that -- and they're not going to offer it unless you offer

4  solvency evidence to the contrary.

5          MR. IRVING:  I can address that now if you'd like,

6  Your Honor.

7          THE COURT:  Sure.  Let's go ahead.

8          MR. IRVING:  Well, Your Honor, I think that if you

9  review the pretrial order there -- and this is to show that we

10 really did try and read the pretrial order carefully and follow

11 Your Judge's intentions -- but if you read it there, when it

12 refers to rebuttal testimony, it refers to testimony offered in

13 rebuttal of -- or evidence offered in rebuttal of testimony

14 under Rule 9026(a)(2)(B) which is explicitly expert opinion

15 testimony.  So the rebuttal testimony is supposed to be

16 rebuttal to an expert designated by the other side.  And that's

17 why the deadline is explicitly connected, not necessarily to a

18 date certain, but 21 days after the other side has offered its

19 expert testimony.

20         Your Honor, Circuit --

21         THE COURT:  But what happens if one side doesn't

22 offer any but you're concerned that they may try to get it --

23 evidence of that in and you just want to rebut it in case they

24 do.  For instance, what they're more than likely going to argue

25 to me -- and I don't mean to put words in Mr. Caine's mouth but

1    just anticipating -- that it's their burden to shift the

2    presumption and if they do then we're going to want to rebut

3    that and so here's the rebuttal.

4          MR. IRVING:  Exactly.  I think -- I understand that

5    argument but I would disagree with it --

6          THE COURT:  Okay.

7          MR. IRVING:  -- because what they're referring to is

8    rebuttal on, you know, an element of a claim.  And, you know,

9    Your Honor, to make an analogy of, say, a negligence claim or

10   something like that, if a party thinks, for example, that

11   they're going to win because there's no cause so we're not

12   going to put -- because there's no duty, so we're not going to

13   put forward a causation expert, we're only going to do that as

14   a rebuttal expert, I think would be wrong.

15         What the trustee should have done is said -- well,

16   they should have anticipated that we might win, we might rebut

17   the presumption, and they should have designated their expert

18   on the deadline.  Basically, Your Honor, what I'm saying is,

19   that's a possible element of their case.

20         THE COURT:  Okay.

21         MR. IRVING:  Even though they have -- even though we

22   have the presumption at this time, if they felt that we were in

23   -- they were in danger of having the presumption rebutted, they

24   should have designated an expert the 60 days before trial, just

25   as, if we had an expert on, for example, ordinary course of

1  business, the 547(b) -- (c)(2)(D), even though Mr. Caine and

2  the trustee bears the burden of proof on all the other elements

3  of a preference action, we wouldn't have waited until three

4  weeks after he failed to designate an expert to say, well, just

5  in case you carry your burden on the other elements of your

6  ordinary course -- or the elements of your preference case,

7  here's our expert.  No, instead we would have designated the

8  expert 60 days before trial.

9         THE COURT:  Well, this is a presumption, I guess --

10  my problem I guess with this is that the statute is, obviously

11  -- and you know the statute is clear about the presumption of

12  insolvency in the 90 days preceding the filing of the petition

13  and such.  And I'm -- all these things go together with the

14  filing of the motion for summary judgment and when parties know

15  when they're supposed to be filing certain things.

16         By way of example, you mentioned the <u>Heiliq</u> case, and

17  I was very involved in that case but there, we filed our

18  motions in connection with the presumption well over a year

19  prior to the filing of the trial date so that that could be

20  established before we did all of this discovery stuff.  And, of

21  course, if you look at our local rules, not to mention whether

22  we're counting including one way or the other but the local

23  rule in Rule 9013-1 on summary judgments puts the -- that a

24  party desiring to file a motion for summary judgment must act

25  with dispatch so that we don't have this problem of getting a

1 person trapped because they didn't know they needed to have an

2 expert or something like that.  And aren't we playing a little

3 bit of gamesmanship here with sort of gotchas and such and the

4 like right before trial?

5          MR. IRVING:  I really don't think so, Your Honor,

6 because it's always been InnerWorkings' position.  We've been

7 very up-front about solvency and contesting solvency.  We've

8 gone through an extensive mediation process where many of these

9 issues were discussed.  And InnerWorkings always tried to make

10 it clear that we were -- we believed that we could carry our

11 solvency case on non-expert testimony.  And when we exchanged

12 discovery with the trustee, it appeared that they were also

13 relying on non-expert testimony to make their solvency case.

14          For example, the people that they designated as, with

15 information about solvency, we were deposing.  In fact, we were

16 deposing them the same day that we received the expert

17 designation.  And we've been exchanging discovery both formally

18 and informally about solvency issues throughout the mediation

19 in the summer.

20          It really is not a form of gotcha.  In fact, we were

21 kind of under the presumption -- and I think it's a reasonable

22 one because of their discovery responses and what they had

23 provided us and what they had listed in their disclosures --

24 that both sides were going forward with the solvency case

25 without using expert testimony, that we both had --

1            THE COURT:  Really?

2            MR. IRVING:  Yes, Your Honor.  Which is possible to

3   do.  There are cases where it's been done.  And to be quite

4   frank with you, it's a combination of economics, of how much

5   our client is willing and able to pay to contest solvency.

6   And, I mean, this is a $3.2 million case with new value

7   reducing it to a certain extent, as you saw in the stipulation.

8   It becomes less than that.  And there's only a certain amount

9   that our client can really pay.  And it said, you know, we

10  think that solvency is worth this much.  We're going with

11  non-expert testimony.

12            We've always been up-front about that.  We've never

13  designated an expert.  We never updated our Rule 26(a)

14  disclosures or answers to written discovery that were done last

15  spring or over the summer.  And the trustee didn't either.  In

16  fact, it was only almost three weeks after the deadline to

17  designate experts while we were taking the final depositions

18  that we learned of this expert.  And many of the documents

19  relied upon were not provided to InnerWorkings during -- or

20  seemingly were not provided to InnerWorkings during discovery.

21  I don't allege there was bad faith and there's a longer

22  explanation about it but InnerWorkings was very much caught by

23  surprise when it learned that the trustee was designating an

24  expert.

25            It was not a game of gotcha on our part at all.  But

1  what it does do, Your Honor, aside from the fact that we think

2  that the designation is late under the local rules and pretrial

3  order, under Federal Rule of Civil Procedure 37 and the case

4  law in the Fourth Circuit, there's the five factors for

5  excluding untimely designated evidence.  We think that the five

6  factors view in favor of the expert being excluded because it

7  caused us an unfair surprise, which I just described to you.

8  We really were not -- we were very caught off-guard, especially

9  in context of mediation, discovery, settlement negotiations,

10  deep into depositions.  The first we heard of it was when it

11  was served.

12         Second, Your Honor, it's almost impossible -- in fact

13  it is impossible for the unfair surprise to be cured by

14  InnerWorkings because there's not very much time; there was a

15  month and a week between the designation of the expert and the

16  trial.  So even excluding the fact that, you know, there's a

17  motion for summary judgment, et cetera -- we haven't even filed

18  a motion for summary judgment yet -- that is not very much time

19  to go through documents, some of which we've never seen before,

20  to prepare, possibly depose, their expert, and even more, to

21  retain our own counter-expert within 21 days.  The cost would

22  reach well into the six figures for counsel and experts.  It's

23  something that InnerWorkings simply doesn't have the resources

24  to pay.

25         Instead, what we think is more fair and what we think

1   should happen under Federal Rule 37, the local rules, the

2   pretrial order, is to exclude the expert testimony and unlike

3   many exclusionary motions where that will handicap one side or

4   another, we think that what it would actually do is set this on

5   a fair even field, Your Honor, because what it would do is, it

6   would put the trustee back into their seeming choice before

7   they designated the expert, when the first deadline to

8   designate experts passed, to go with non-expert testimony.

9          As of now, because you have not ruled on the motion

10  for summary judgment, the presumption is in their favor.  They

11  seemingly believed before designating their expert that they

12  could carry the burden -- or they could carry their case on

13  solvency with the employees -- former employees of Circuit City

14  with the documents available to them.

15         We believe that we can carry it and you'll be able to

16  see all of the evidence, the financial statements.  You'll be

17  able to see the, you know, the leases.  All of the accounting

18  is done.  We would just ask that you exclude the expert and

19  have a real trial on the issue, Your Honor.

20         THE COURT:  As opposed to a pretend trial?

21         MR. IRVING:  Well, it's not a pretend trial, Your

22  Honor, but just a simple fact that if you allow the expert, and

23  based on the what I again think is unfair surprise and just the

24  realistics of the economics of this case, you're going to hear

25  a solvency case from an expert and people that worked at

1  Circuit City and then you're going to have our non-expert

2  testimony.  That is not a level field, and it's not a level

3  field that we had time to adjust for.

4         THE COURT:  All right.  Let me hear from Mr. Caine.

5         MR. IRVING:  Yes, Your Honor.  Do you have any other

6  questions about the -- rebutting the presumption?

7         THE COURT:  No, I'll probably get you back up here in

8  just a minute though.

9         MR. IRVING:  Thank you, Your Honor.

10        THE COURT:  Thank you very much.  We're sort of

11 taking all of this together --

12        MR. CAINE:  Yeah, this is fine.

13        THE COURT:  -- in a holistic kind of fashion so

14 that's --

15        MR. CAINE:  It's fine.  First of all, Your Honor, if

16 we take a look at the big picture in this case, the fact that

17 the motions for summary judgment and in limine were not timely

18 filed under the pretrial order, they were filed here at the

19 last minute, that the defendant did not designate any expert on

20 any issue, that as we set forth at length in our opposition to

21 the motion in limine, that the defendant did virtually nothing

22 to pursue discovery on insolvency, that the comments of counsel

23 here are simply not credible.

24        It is not true to suggest that InnerWorkings was

25 candid and honest about its position on insolvency from the

1  beginning.  If you look at the record that we submitted to Your

2  Honor in opposition to the motion in limine, you can see that

3  the trustee's counsel, primarily through Mr. Nolan and then

4  through me, continued to press defendant's counsel as to

5  whether or not they were going to proceed with the solvency

6  issue, to the point where we sent them, as a settlement

7  communication, a preliminary adjusted balance sheet and said,

8  you know that gap financials are simply not sufficient under

9  all the applicable case authority.  Here's what an adjusted

10 balance sheet looks like, just simply adding the lease

11 liabilities.  It's not a close call.  Circuit City was

12 overwhelmingly insolvent.  Are we really going to waste our

13 time on all of this?

14        Your Honor, we retained AlixPartners at least a year

15 ago because we thought someone might contest solvency.  We've

16 been ready for this the whole time.  But the issue of solvency

17 is dead and done if they don't overcome the presumption in

18 Section 547(f).  In a few minutes, I'm hoping to convince you

19 that they haven't and that they can't.  And --

20        THE COURT:  Well, if they don't, for purposes of

21 summary judgment, they can still do that at trial, can't they?

22        MR. CAINE:  They can.  But witness lists and exhibit

23 lists are all in and there's nothing additional.  But yes, they

24 have that opportunity.

25        THE COURT:  Okay.

1          MR. CAINE:  Right.  So we could come here on the 17th

2   and they could submit evidence to try and overcome the

3   presumption, maybe something they haven't already submitted.

4   And if they do overcome the presumption, Your Honor, then we're

5   ready with our expert.

6          THE COURT:  Well, for instance, if I decide that

7   continuing means in the same direction, that the motion is

8   untimely filed, and I don't consider it today, that doesn't

9   mean that they have lost their right to be able to argue any of

10  that at trial.  They can raise exactly the same things at trial

11  and just try it then.

12         MR. CAINE:  Yes.

13         THE COURT:  All right.

14         MR. CAINE:  I agree with that, Your Honor.

15         THE COURT:  Okay, thank you.

16         MR. CAINE:  But as we argue at length in our papers,

17  it is unreasonable to assume that the trustee was going to

18  submit an expert report that could have no purpose other than

19  rebuttal and to do it at the very first time.  Counsel's

20  analogy to the ordinary course defense exactly works against

21  the argument that he's trying to make because it is a defendant

22  who has the burden of proof with respect to the ordinary course

23  defense.  And if they were going to use an expert on ordinary

24  course, it absolutely would be anticipated that they would do

25  it at the initial deadline and the trustee would only submit

1  any kind of rebuttal at the rebuttal deadline.  So it is our

2  position that the expert report was indeed filed in a timely

3  manner and at the time when it would have been anticipated that

4  any rebuttal expert report would have been submitted.

5          Should Your Honor decide otherwise, we believe that

6  the Southern States factors in fact do suggest that this expert

7  report ought to be let in.  And let's start with this notion of

8  harmlessness and the unfair surprise.

9          THE COURT:  Well, let's -- before we get into all of

10 that, you'd be only offering the expert report for purposes of

11 rebutting any solvency arguments or testimony that they would

12 put on --

13         MR. CAINE:  That's correct, Your Honor.  Otherwise,

14 we have the presumption and we --

15         THE COURT:  And that's the only reason that you're

16 going to offer that report.

17         MR. CAINE:  That's correct.  In the party's

18 stipulation, we have a stipulation that the trustee has

19 satisfied every other element of Section 547(b).  So that is

20 the only purpose for that report, if they overcome the

21 presumption of 547(f).

22         THE COURT:  All right.  Thank you.

23         MR. CAINE:  Should I continue with the Southern

24 States factors then?

25         THE COURT:  I know the Southern States factors.

1          MR. CAINE:  Okay.

2          THE COURT:  I've argued the Southern States factors.

3  And so, I mean, if you want to go through the Southern States

4  factors, you're more than welcome to, but I know what they are.

5          MR. CAINE:  Only with respect to the application of

6  the facts here, Your Honor.

7          THE COURT:  Okay, go ahead.

8          MR. CAINE:  Innnerworkings suggests an unfair

9  surprise.  But again, Your Honor, we submit that that's simply

10 not credible if you look at the time line as set forth in our

11 opposition and the efforts by Mr. Nolan over and over to try

12 and get an answer out of InnerWorkings' counsel as to whether

13 they were going to contest solvency and the fact that they

14 submitted discovery requests in the summer which we responded

15 to as saying, hey, you know what?  You've asked for every

16 financial document that Circuit City ever had so if you want to

17 try and figure out a way to get some documents, let's sit down

18 and let's be more specific.  That's in July.

19          We hear nothing until October and depositions are

20 going to start to happen.  And there's an initial conversation

21 at which time we produce a few documents that are agreed to and

22 I send this adjusted preliminary balance -- preliminary

23 adjusted balance sheet and say, hey, you're wasting your time.

24 Can we agree this is done?

25          The fact that they can -- they're claiming that they

1  were unfairly surprised is not credible.  And on top of that,

2  Your Honor, this report was sent to them on November 7th and

3  they've made no effort to take a deposition.

4          So, not only is there no surprise that this is

5  coming, they haven't asked to take the deposition of the expert

6  and they deposed Mr. McDonald and Michelle Mosier, the former

7  controller of Circuit City, in their recipient witness

8  depositions about line items out of the preliminary adjusted

9  balance sheet and out of the expert report.  So --

10          THE COURT:  If I was to allow this report to be used

11  as rebuttal, would your expert be available for a deposition

12  between now and trial?

13          MR. CAINE:  Absolutely.  I expected that they would

14  have asked for one.

15          THE COURT:  All right.  Very good.  Now, why don't

16  you move to the summary judgment issue.

17          MR. CAINE:  Okay.  Did you want to hear further from

18  counsel on summary judgment because we started on the going

19  concern part and then kind of transitioned into motion in

20  limine?

21          THE COURT:  No.  Look, no, I've read the papers.

22  I've got a pretty good idea.  Is my reading of Rule 9006 wrong?

23  Does continue mean going backwards or is -- am I wrong on that

24  and we stop and then go forward to the next business day,

25  because I don't have to lay a trap for counsel here?

1          MR. CAINE:  We read it the way you do, Your Honor.

2     If you're counting backwards, you go to the day before the

3     weekend and if you're counting forward, you go to the day after

4     the weekend.

5          THE COURT:  All right.

6          MR. CAINE:  That's the way we read that rule.

7          THE COURT:  All right.  Very good.  And then, with

8     regard to the motion itself and -- I would assume that your

9     position is that there are no facts in dispute here -- or there

10    are facts in dispute and -- with regard to whether or not they

11    can rebut the presumption and that they're not entitled to

12    summary judgment on that, that that is a highly factual

13    situation and that we cannot rely on gap balance sheets where

14    they're not even for the appropriate times.

15         MR. CAINE:  Particularly with respect to going

16    concern, Your Honor, there's no question that there are a

17    number of material facts that are in dispute as to whether or

18    not the debtor was on its deathbed.  But I would concede that

19    the issue is probably moot because if our expert comes in, he

20    used going concern valuation of assets.

21         THE COURT:  That's why I didn't think the going

22    concern was that big a deal, to be perfectly honest.  In the

23    cases that I tried before coming on the bench, it was always

24    going concern that the Court found, ultimately, no matter what

25    you were arguing.

28

1    MR. CAINE:  And whether or not you could find that

2 the deathbed liquidation is appropriate here, the expert didn't

3 use it and second of all even if you use book value, and going

4 concern's not even going to get you the book value of assets,

5 the liabilities overwhelm the assets.  So it really is kind of

6 moot.

7    THE COURT:  Right.  And, of course, the opinions all

8 talk about fair value because that's what the statute says.

9    MR. CAINE:  Right.

10    THE COURT:  And so -- and anyway, I don't have much

11 problem with that.  And then, with regard to rebutting the

12 presumption, the -- you would contend that there are still

13 facts in dispute.

14    MR. CAINE:  Well, I would contend this, Your Honor,

15 and I don't mean to dance around your question.  The evidence

16 that's been submitted by the defendant on this motion, even if

17 it isn't in dispute, is insufficient to overcome the

18 presumption of insolvency.  There is a lot of other evidence

19 out there that would put the solvency of the debtor in dispute.

20 And as the Miller & Rhoads case says, for example, you've got

21 to rely on accurate evidence, appraisals, opinion testimony --

22    THE COURT:  I tried that one too but I lost that one.

23    MR. CAINE:  Right, so we've got none of that from the

24 defendant.  So yes, if we have a trial, there's going to be a

25 lot of evidence that's going to come in that I think Your Honor

1  will conclude -- results in the debtor's insolvency but as far

2  as summary judgment here, whether or not it's in dispute, they

3  don't meet the second piece of the puzzle which is that as a

4  matter of law they're entitled to this determination because

5  all the evidence that they've brought in is in fact

6  insufficient to overcome the presumption of insolvency.

7          THE COURT:  All right, thank you.  Mr. Irving, you

8  can get another chance now.  What I would like to know is

9  exactly what I was asking Mr. Caine about there at the end.

10  What are the facts that when I add them all up tell me that I

11  have to rule for you on summary judgment, that you've rebutted

12  the presumption?

13         MR. IRVING:  Well, Your Honor, I think that the

14  question is that we provided some evidence, which is the

15  requirement to rebut the presumption and --

16         THE COURT:  Okay.  Well, tell me what the some

17  evidence is.

18         MR. IRVING:  We have the two 10-Qs, the first 10-Q

19  filed during the summer --

20         THE COURT:  -- which don't go to our time period.

21         MR. IRVING:  Well, the second 10-Q is during the

22  preference -- was filed -- covers parts of the preference

23  period, Your Honor.

24         THE COURT:  But it ended August 31 and the

25  preference, as I understand it, allegedly began a month later,

1   at the end of September.

2          MR. IRVING:  No, the preference period actually

3   started earlier.

4          THE COURT:  I know the preference period started

5   earlier.  But, I mean, the alleged preferences that are the

6   subject of the litigation, as I understand it, occurred between

7   September 30 and November 3.

8          MR. IRVING:  There were certain preferences that are

9   zeroed out by new -- by subsequent new value that are during

10  the period between the start of the preference period and

11  September 30.

12         THE COURT:  Okay, well, you win on those then.

13         MR. IRVING:  Thank you, Your Honor.  And then, the

14  November monthly operating report again shows solvency.  And

15  what I would suggest, Your Honor --

16         THE COURT:  Yes, so I'm going to write that, November

17  operating report, okay?

18         MR. IRVING:  November operating report.

19         THE COURT:  All right.

20         MR. IRVING:  The Besanko declaration which was made

21  on the petition date.

22         THE COURT:  But that addresses the third quarter

23  10-Q, doesn't it?

24         MR. IRVING:  Yes, it does, Your Honor.  And I think

25  that that's an important fact because it bridges the third

1  quarter 10-Q through the petition date.  Mr. Besanko, Circuit

2  City's CFO, was testifying that the best information about the

3  debtor's financial condition was still that they were solvent

4  and he cited to the September 10-Q.

5          THE COURT:  All right.  I've written that down.  What

6  else?

7          MR. IRVING:  Those are the primary documents that we

8  rely upon.  You know, once we get to trial, Your Honor, I think

9  that there are real issues about how much are the leases -- or

10  what value should be given to the leases when deducting from

11  what I referred to before as the equity cushion.  In some

12  cases, it's as high as $4 billion, but I think it's actually

13  much less than that, Your Honor.

14          We also think that once we start to have testimony

15  from certain individuals at Circuit -- at InnerWorkings who

16  dealt closely with Circuit City, who were at Circuit City

17  offices during this period of time, that we can address the

18  other issues regarding solvency.

19          But I think that now, the combination of some

20  financial statement, which is enough under certain case law

21  cited in our brief, some evidence, it's a financial statement,

22  it's enough to rebut the presumption.

23          Your Honor, the evidence that they cite, it might

24  create an ultimate genuine issue of material fact as to whether

25  or not the debtor was solvent, but I don't think it creates a

1  genuine issue of material fact as to whether there is some

2  evidence that it was solvent.

3       THE COURT:  All right, thank you.  All right.  The

4  Court has before it the two motions -- you can go ahead, thank

5  you very much --

6       MR. IRVING:  Thank you.

7       THE COURT:  -- the defendant's motion for summary

8  judgment on the two issues concerning the presumption and the

9  going concern and then also the motion in limine.

10      Turning first to the motion for summary judgment, the

11  Court is going to consider the motion for summary judgment.  I

12  had been under the clear impression that my pretrial order

13  provided that not later meant not later and that we continued

14  to count backwards.  But I'm going to take counsel at his word

15  and I will amend my pretrial orders going forward to correct

16  that so that no one is taken off guard.

17      So dealing with the merits of the motion for summary

18  judgment, I find that there are material facts in dispute about

19  whether there is some evidence of whether or not the debtor was

20  solvent.  I certainly cannot find that I can rely on

21  exclusively the November operating report and the Besanko

22  affidavit in order to make that leap.

23      When comparing, as the motion does, this case to

24  Heilig, there were mountains of other evidence that were

25  offered to the Court, suggesting that the presumption should be

1  rebutted which the Court ultimately did in that case.  But I

2  think that some means some and the evidence itself is in

3  dispute given the gap between the third quarter and the filing

4  date.  And the Court is not willing to do that on a summary

5  judgment basis.

6       So that issue obviously will be preserved for trial

7  and counsel can argue that at trial with other facts and such.

8  And the Court then can make a factual finding based on evidence

9  that it has presented before it.

10       As far as the going concern, I think that the Court

11  has indicated that more likely than not, going concern value is

12  probably the proper value.  I just don't think, again, that's

13  something the Court should do on a summary judgment basis,

14  given the opposition.  And if the debtor at trial wants to

15  argue death knell, they can -- deathbed, rather -- they can.

16  And the Court will decide that at trial, although as you know

17  I'm aware that the expert report, which we're going to turn to

18  next, actually does it on a going concern basis.  So I don't

19  know that that issue really is much of an issue.

20       With regard to the motion in limine, I'm going to

21  deny the motion in limine.  I think that the report can be used

22  for rebuttal and that's clearly what the order intended.  It

23  can only be used for rebuttal and Mr. Caine had said that's the

24  only reason it was going to be used, if it had to be used at

25  all.  I will give plaintiffs -- or defendants rather the

1 opportunity to depose the expert between now and trial.  Mr.

2 Caine said that they would make him available.  And while

3 discovery is closed, I'm going to reopen it so that there is no

4 surprise to the extent that the defendant wants to depose that

5 expert.

6         Any questions regarding the Court's ruling on either

7 of the two motions?

8                   (No audible response)

9         THE COURT:  All right.  I'm sorry, Mr. --

10         MR. IRVING:  I don't have any questions regarding the

11 motions, Your Honor, but there are a couple of other questions

12 that I wanted to address, Your Honor, while we're before you,

13 --

14         THE COURT:  Okay.  Well, before you do that, I'm

15 going to ask Mr. Caine to draft the orders in each -- with

16 regard to each of those motions.

17         MR. CAINE:  Very well, Your Honor.

18         THE COURT:  All right.  You may address the Court,

19 sir.

20         MR. IRVING:  Thank you, Your Honor.  Your Honor,

21 they're largely housekeeping but we are less than two weeks

22 away from trial at this time.  I was wondering, to confirm, I

23 know that the trustee has filed its own motion in limine, that

24 -- I don't think there's been a notice of that but I assume

25 that that will be done at the beginning of trial on Monday, the

1  17th?

2         THE COURT:  I'm not making any presumptions.  Until

3  somebody files a notice of something, then if we haven't dealt

4  with it prior to that time, I certainly would deal with it at

5  the trial date.

6         MR. IRVING:  Just to confirm then, InnerWorkings will

7  be filing an objection to that.

8         Also, Your Honor, because our witnesses are all

9  coming in from out of town, if we do have a motion in limine

10  up, then we may have opening arguments, et cetera.  Would Your

11  Honor be amenable to having InnerWorkings' witnesses arrive on

12  the afternoon of the 17th rather than the morning of the 17th?

13         THE COURT:  Is it possible that we'd be -- I haven't

14  read this other motion so I'm at a bit of a disadvantage here,

15  but is it possible that they're arguing that a witness you'd be

16  flying in from out of town should not be allowed to testify?

17  Is that what it is, as opposed to just restricting their

18  testimony in some way?

19         MR. IRVING:  Well, I don't want to -- I'm always

20  reluctant to characterize someone else's motion, Your Honor.

21         THE COURT:  Well, is that your concern?

22         MR. IRVING:  No.  My concern is a logistical one,

23  that we have a number of -- basically the entire financial

24  department of our client is flying in, flying them in over the

25  weekend versus flying them in Monday morning.  That's a large

1  part of my concern, Your Honor.

2         THE COURT:  All right.  Well, would it help you if we

3  dealt with the motion in limine before trial?  I guess I'm

4  trying to figure out what you're asking me to do.

5         MR. IRVING:  I think deciding it at the beginning of

6  trial is fine.  I just wanted to confirm that we won't need to

7  have our witnesses here the -- Monday morning, so that they can

8  fly in Monday morning rather than fly in on Sunday afternoon.

9         THE COURT:  All right.  And if -- they would be

10  available after you make your opening argument is what you're

11  saying.

12         MR. IRVING:  Yes, Your Honor.

13         THE COURT:  Okay, very good.  What else?

14         MR. IRVING:  The other issue was largely the order of

15  the case.  I know that we have both the plaintiff's preference

16  case, their claims objections, as well.  We have our

17  affirmative defenses.  It's something that, you know, we'd be

18  happy to talk with opposing counsel with, but it seems to us

19  that it makes sense to have the plaintiff's case in full --

20  sorry, the motion in limine go forward first on the 17th, then

21  opening arguments, the plaintiff's case in full, then

22  InnerWorkings' defenses and then InnerWorkings' responses to

23  the claims objections.

24         THE COURT:  Okay.  Anything else?

25         MR. IRVING:  I think that's it, Your Honor.

37

1          THE COURT:  Okay, very good.  Mr. Caine, you wish to

2  address the order in which -- does that do violence to your

3  world view?

4                        (Laughter)

5          MR. CAINE:  Very little does violence to me, Your

6  Honor.

7          THE COURT:  All right.

8          MR. CAINE:  There is not any witness that we are

9  attempting to entirely exclude by the motion in limine.

10         THE COURT:  All right.

11         MR. CAINE:  I have no problem if their witnesses want

12 to come in the afternoon.  It makes sense -- it would appear to

13 make sense, Your Honor, we suggest, that the defendant's

14 opening statement with respect to overcoming the presumption of

15 insolvency should be the first aspect of the trial and Your

16 Honor may decide that you -- it makes sense to bifurcate that

17 issue from the defense issues.  But, in light of the party's

18 stipulation, the trustee does not bear the burden at this point

19 with anything other than the claim objection.  And I'm really

20 hoping we can settle that part of it before we get to trial,

21 but there --

22         THE COURT:  Okay.

23         MR. CAINE:  It would make -- seem like it would make

24 sense for the 547(f) argument to go first.

25         THE COURT:  All right.  As I understand it, what Mr.

1    Irving was suggesting was that we do the motion in limine

2    first.  Are you planning on doing that at trial or were you

3    going to bring --

4              MR. CAINE:  Yes, Your Honor.  Yes.

5              THE COURT:  Okay.  That solves that problem.  So yes,

6    we'll do that first.  That makes some good sense.  And then,

7    we'd have opening statements after that.

8              MR. CAINE:  Yes.

9              THE COURT:  Okay.  And so that would be second.  And

10   then third, Mr. Irving was suggesting third that you would go

11   forward with your case.  You were saying, no, really what we

12   ought to do there is take up this presumption so we know what

13   your case should look like, you know, because your case is

14   going to be very short, you're saying, because you're going to

15   rely on the presumption at that point.  So, really, I don't

16   care.  I mean, why don't we go ahead and have you put on your

17   things that rely on the presumption and then he can put on his

18   defenses after that, including why the presumption should

19   shift.  And then we can do it that way.

20             MR. CAINE:  However Your Honor wants to do it is

21   fine.  It's just in terms of laying out the opening statement,

22   since I'm going to be rebutting not only whatever they are

23   going to bring in with respect to the overcoming the

24   presumption but with respect to all of their defenses, it

25   would, in my humble opinion, make sense for defendants to do an

1  opening statement on rebutting the presumption of insolvency

2  and --

3          THE COURT:  I see what you're saying.

4          MR. CAINE:  -- then we address insolvency.  And if

5  for some reason the defendant prevails, then there's no more

6  preference case, right?  I'm confident that the trust is going

7  to prevail on that, but it's their burden to more forward at

8  this point.

9          So what I respectfully suggest, Your Honor, is that

10 when the trial starts, we have an opening statement from

11 defendant as to how they're going to rebut the presumption of

12 insolvency.  We would then have a very brief opening statement

13 with respect to that issue.  We could put on the evidence on

14 insolvency.  Once that's done, then we can move to the rest of

15 the case.

16         THE COURT:  All right.  I understand what you're

17 saying, okay.  Mr. Irving, is that acceptable from your

18 standpoint.  That makes some sense, it seems to me.

19         MR. IRVING:  Your Honor, I think that there's some

20 sense in that.  But --

21         THE COURT:  Well, that's good.  We're getting close

22 now.

23                     (Laughter)

24         MR. IRVING:  I think that there's some sense in that

25 as long as -- it's basically a bifurcated issue and then we'll

1   address the affirmative defenses later.

2          THE COURT:  Well, it almost has to be bifurcated,

3   doesn't it, because it depends on then what we're going to

4   really try?  Because if you overcome the presumption, then that

5   changes a lot of things, as far as how the case is going to be

6   presented, so --

7          MR. IRVING:  Well, the one issue that it does

8   complicate, Your Honor, is, certain people could be called

9   twice then, where they're broken up on different days.  For

10  example, certain witnesses -- for example, Mr. Busky.  Mr.

11  Busky is InnerWorkings' CFO.  He's also, you know, an

12  experienced accountant.  He was a PWC.  He would testify to

13  certain facts -- or likely testify to certain facts about

14  solvency.  But then, as InnerWorkings' CFO who also had

15  conversations with management at Circuit City, he would have to

16  come back and testify again about ordinary course.

17         And I think that that's where yes, it makes sense as

18  far as opening arguments.  But as far as actually presenting

19  witnesses and testimony, I think it's easier to go forward with

20  the trustee's case in full and then the defense's case in full.

21  That way, although opening arguments might be somewhat more

22  muddled, that's attorneys and I think that we often bend

23  ourselves to what's easiest for our client.  But for our

24  clients it will be easier and for witnesses, especially if

25  they're flying in or driving, they might all be done in one day

1   this time, rather than waiting around to testify later in the

2   afternoon or the next day.

3         THE COURT:  All right.  Well, here's what I'd like to

4   do.  I think that with regard to the order of how we do things,

5   I think that Mr. Caine makes good sense and we ought to do it

6   that way.  But I want counsel to talk with each other and if

7   you can work something out that will allow witnesses to be

8   better convenienced, I would encourage that.  But, other than

9   that, we'll go as Mr. Caine had just suggested, which is

10  basically in your order except that we're going to bifurcate

11  the issue with regard to the presumption on solvency.

12        MR. IRVING:  And as regards the second case, the

13  trustee would go first and then InnerWorkings?

14        THE COURT:  Yes.

15        MR. IRVING:  And then, we would conclude with the

16  claims issues.

17        THE COURT:  Right.  But, again, coordinate between

18  yourselves on those.  To the extent that they overlap, you

19  know, we can take care of those at the same time.

20        MR. IRVING:  Thank you, Your Honor.

21        THE COURT:  All right.

22        MR. CAINE:  Your Honor, I'm sorry.  May I just beg

23  your indulgence to make one other comment?

24        THE COURT:  Certainly.  Does it completely undo what

25  I just said?

1          MR. CAINE:  I'm not sure.

2          THE COURT:  Okay.

3          MR. CAINE:  It might.  If the trustee prevails with

4    respect to insolvency --

5          THE COURT:  Right.

6          MR. CAINE:  -- and he will have proven his prima

7    facie case under Section 547(b), it is then up to defendant --

8          THE COURT:  -- to put on their case.

9          MR. CAINE:  -- to put on their case.  And so, to the

10   extent that counsel might think that it's then upon the trustee

11   to argue why the ordinary course of defense is going to lose,

12   that I would suggest does not make sense.  It would then be up

13   to defendant --

14         THE COURT:  No, no, and I understand how that was

15   going to work.  They'd have to put on their case --

16         MR. CAINE:  Okay.

17         THE COURT:  -- and their defenses.

18         MR. CAINE:  Okay, thank you.

19         THE COURT:  All right.  All right.  Anything further

20   on this adversary?

21         MR. CAINE:  No, thank you, Your Honor.

22         THE COURT:  All right.  Mr. Caine's going to get the

23   order for me on that.  All right.

24         MR. IRVING:  Thank you, Your Honor.

25         MR. CAINE:  Yes.

1          THE COURT:  Mr. Irving, you're more than welcome to

2     stay for the rest of these proceedings but -- and Mr. -- but

3     you don't have to.  And so you're excused if you would like to

4     leave.  And Mr. Gray, you can be excused too if you would like.

5     But, as I say, you're welcome to stay, you know, because this

6     is when it gets really exciting when we go through the rest of

7     the claims.

8                              (Laughter)

9          MR. IRVING:  Thank you, Your Honor.

10         MR. GRAY:  I believe we'll take our leave, Your

11    Honor.  Thank you.

12         THE COURT:  All right, very good.

13         MS. BERAN:  Your Honor, I've been called a lot of

14    things in my life, but I'm not sure if I've ever been called

15    boring so eloquently.

16         THE COURT:  I thought I said exciting.

17         MS. BERAN:  May it please the Court, Your Honor,

18    Paula Beran, again, for the record.  Your Honor, turning back

19    then to the items on today's agenda, we do have a couple of

20    exciting matters in the motions category, and that specifically

21    first is in connection with an adversary proceeding and a

22    motion to dismiss.

23         As Your Honor may recall, we did conduct initial

24    mediation.  There's been additional exchange of information.

25    And we would respectfully request that this matter be continued

44

1  until the January 8th omnibus date.

2           THE COURT:  It'll be continued to the 8th.

3           MS. BERAN:  Thank you, Your Honor.  Your Honor, the

4  -- similarly, there was a motion to strike in connection with

5  the Interactive Toy adversary proceeding.  Your Honor may

6  recall at the last omnibus hearing, we indicated that that

7  matter had been settled in concept.  We are still waiting to

8  consummate that settlement so we'd respectfully request that

9  this matter be continued until the January 8th omni.  I

10 apologize, Your Honor.  The status actually says the 18th, but

11 it is January 8th that we were asking for.

12          THE COURT:  Okay.  And the other side is aware of

13 that?

14          MS. BERAN:  Yes.  I actually talked with defendant's

15 counsel outside the courtroom today and indicated the same.

16          THE COURT:  Okay, very good.

17          MS. BERAN:  And indicated -- more than likely, Your

18 Honor, we'll be able to remove it from the docket because

19 hopefully it will be consummated by then.

20          THE COURT:  All right, very good.

21          MS. BERAN:  Thank you, Your Honor.  Your Honor, that

22 then takes us to the various claims objections on Page 6.  In

23 connection with Items Number 4 through 9 and Item 9 is on Page

24 22, as indicated on Exhibit A, we respectfully request that all

25 of those claims objections as it relates to those claims

45

1  indicated on Exhibit A be continued until the 2/7 omnibus

2  objection.

3         THE COURT:  Okay.  That'll be continued to February

4  7.

5         MS. BERAN:  Thank you, Your Honor.  Your Honor, that

6  then brings us to a page number that doesn't make any sense in

7  mine, so we're going to 4 through Number 9.

8         THE COURT:  I'm sorry, we're doing what?

9         MS. BERAN:  That brings us to Page 25.

10        THE COURT:  Right.

11        MS. BERAN:  Okay, Your Honor.  On Item Number 10.

12        THE COURT:  Okay.

13        MS. BERAN:  Items 10 through 16 all involve what

14  we've commonly referred to the one-off tax objections.  For all

15  of those items, Your Honor, Items 10 through 16, we'd

16  respectfully request that they be continued for status purposes

17  until the February 7th omnibus date.

18        THE COURT:  And Items 16 is on Page 39, okay.

19        MS. BERAN:  Correct, Your Honor.  That would then

20  bring us to Page 41 which is Item Number 17.  And this begins

21  the Liquidating Trust's set of omnibus objections that are

22  referenced on Exhibit B.

23        THE COURT:  All right.

24        MS. BERAN:  Your Honor, I will indicate, since the

25  filing of Exhibit B two days ago, there have been one noted

46

1  settlement, as well as discussions with two additional

2  claimants, as well as a pickup of one typographical error on my

3  part.  And so I do have an amended Exhibit B.  Instead of

4  filing that moments before court, then having everyone in a

5  panic, and killing some more trees, I would respectfully submit

6  that I can hand this up to Your Honor, as well as to the

7  Court's scheduling clerk, so they can adequately reflect on the

8  Court's docket this.  And then I will just walk Your Honor

9  through the simple amendments.

10          THE COURT:  Okay.  That'll --

11          MS. BERAN:  And this is blacklined, Your Honor.

12          THE COURT:  That'll be good.  And I have to confess,

13  I missed the typographical error when I went through Exhibit B.

14          MS. BERAN:  Ms. McLemore caught it and pointed it out

15  for me yesterday.

16          THE COURT:  All right.

17          MS. BERAN:  Your Honor, just quickly if I -- and I'll

18  flip Your Honor through the amendments and then I'll just go

19  through.  On Page 32, Your Honor, of Exhibit B, Your Honor will

20  see that one of the matters was a claimant on Woodlawn

21  Trustees.  Above and below, we had previously indicated the

22  matter had been settled but actually there was an additional

23  claim that had been resolved, as well.  So we have indicated

24  that that matter has been resolved.

25          Similarly, this is my typographical error.  In

47

1  connection with Omni 13, the claims of Mr. Bruce Besanko, there

2  was a typo previously that said December 6th, 2011 so when my

3  paralegal and I did the global replace for December 6th, 2012

4  to February 7, 2013, that did not get picked up because it was

5  2011.  So it was actually a typographical error from two

6  agendas ago.

7          Similarly, Your Honor --

8          THE COURT:  So, I missed it twice is what you're

9  saying.

10         MS. BERAN:  As did I, I apologize, Your Honor.

11         THE COURT:  All right, very good.  So we've got that

12 corrected now.  All right.

13         MS. BERAN:  Thank you, Your Honor.  Then, Your Honor,

14 I will address this in more detail but the other additional

15 amendments that are on the documents that I just handed to Your

16 Honor and that I will file after this hearing would be found on

17 Page 138, dealing with Liquidating Trust Omni Objection 48,

18 specifically dealing with Mr. Telegadas --

19         THE COURT:  All right.

20         MS. BERAN:  -- as well then, flipping the page, to

21 Page 140, Your Honor will see two blacklines in connection with

22 Omni 57 and that deals with Mr. Telegadas, as well as Ms. Laura

23 McDonald.  And I will address them when the time comes in

24 connection with the respective omnis.

25         THE COURT:  All right.

1          MS. BERAN:  I would represent to Your Honor that Mr.

2  Telegadas was here earlier out in front of the courtroom

3  because he thought he had to be because he filed a response.  I

4  indicated to him that I had modified the agenda per his request

5  and I would make the representation that he was here.  And he

6  has gone back to his place of employment and I represented to

7  him that I thought Your Honor would be fine with that.

8          THE COURT:  I am fine with that.  Thank you for that

9  representation.

10          MS. BERAN:  Thank you, Your Honor.  Okay then, Your

11  Honor, turning back to Page 41, Item Number 17, and actually 17

12  and 18 if Your Honor is so inclined.  I have gone through to

13  try to lump similarly situated claim objections in the interest

14  of moving this matter along.  But Items Number 17 and 18 are

15  the first and second omnibus objection of the trust.   In

16  connection with that, Your Honor, there remains still a handful

17  of claims that either a response has been filed and/or upon

18  which we've agreed to extend the response deadline and try and

19  informally reconcile the claims.  On all of those listed on

20  Exhibit B, we'd respectfully request that this matter be

21  continued for status purposes until 2/7.

22          THE COURT:  They'll be continued to the 7th of

23  February.

24          MS. BERAN:  Thank you, Your Honor.  We then can turn

25  to Page 54, Item Number 19.  In connection with 19, I would

49

1    submit that 19 and 20 are similar in that they're Liquidating

2    Trust's 3rd and 4th --

3            THE COURT:  So do I need to be going back and forth

4    between Exhibit Bs?

5            MS. BERAN:  Your Honor, I try to summarize them --

6            THE COURT:  I don't see Exhibit --

7            MS. BERAN:  -- as it relates to B.  I apologize.  I'm

8    on Page 54.

9            THE COURT:  Right.

10           MS. BERAN:  And Item Number 19 is the 3rd omnibus

11   objection.

12           THE COURT:  Oh, okay.

13           MS. BERAN:  And Item 20 is the 4th omnibus objection.

14           THE COURT:  Got it.

15           MS. BERAN:  As indicated on Exhibit B, there are a

16   handful of those items that have been resolved pursuant to

17   settlement procedures previously approved by Your Honor, so

18   they may be removed from the docket.  There's others remaining

19   on those two omnibus objections that we'd respectfully be (sic)

20   continued until the February omnibus date.

21           THE COURT:  All right, very good.

22           MS. BERAN:  That then brings us to Page 66 on the

23   agenda.

24           THE COURT:  All right.

25           MS. BERAN:  Starting with Item 21, Your Honor, Items

50

1  21, 22 and 23 are similar omnibus objections, specifically

2  Omnis 5, 6 and 7 from the Liquidating Trust's perspective.  As

3  indicated on Exhibit B, there still are a handful of claims

4  that remain unresolved.  We'd respectfully request that they be

5  continued until the February omni.

6           THE COURT:  They'll be continued.

7           MS. BERAN:  Thank you, Your Honor.  That then allows

8  us to turn to Page 83 --

9           THE COURT:  All right.

10          MS. BERAN:  -- and specifically Item Number 24 in the

11 agenda.

12          THE COURT:  Right.

13          MS. BERAN:  I would submit, Your Honor, as it relates

14 to Items 24 and 25 which are the Liquidating Trust's 8th and

15 9th objection, as indicated on Exhibit B, there are a handful

16 of matters that have been resolved pursuant to procedures

17 previously approved by Your Honor and they now may be removed

18 from the court's docket.

19          In addition, Your Honor, there are a -- items that

20 remain outstanding either where responses have been filed

21 and/or where the trust has agreed to extend the deadline and we

22 continue to informally try and reconcile.  We would

23 respectfully request that those be continued until the February

24 omni as indicated on Exhibit B.

25          THE COURT:  They'll be continued to the February

1  omni.

2           MS. BERAN:  Thank you, Your Honor.  That allows us to

3  turn to Page 96 which brings us to the Liquidating Trust's 13th

4  omnibus objection.  In connection with that matter, Your Honor,

5  the claims of Mr. Besanko remain outstanding.  We'd

6  respectfully request that that be continued until the February

7  omni.

8           THE COURT:  It'll be continued.

9           MS. BERAN:  Thank you, Your Honor.  That allows us to

10 turn to Page 100, Item Number 27.  We'd respectfully submit to

11 Your Honor that Items 27 and 28 are similar in that they deal

12 with the trust's 14th and 15 omnibus objection.  As indicated

13 on Exhibit B, there are certain of those matters that have been

14 resolved and may be removed from the court's docket pursuant to

15 settlement procedures previously approved by Your Honor.

16           In addition, Your Honor, there are several --

17 numerous additional claims that are subject of either responses

18 and/or informal responses which we continue to reconcile and

19 we'd respectfully request those listed on Exhibit B be

20 continued until the February omni.

21           THE COURT:  They'll be continued.

22           MS. BERAN:  Thank you, Your Honor.  That allows us to

23 turn to Page 112.  On Page 112, Item Number 29 is the

24 Liquidating Trust's 17th omnibus objection.  In connection with

25 that matter, Your Honor, as indicated on Exhibit B, certain of

1  them have been resolved and therefore may be removed from the

2  court's docket.   There are additional ones outstanding under

3  the categories of either response filed and we haven't resolved

4  them and/or the informal discussions between the parties where

5  there has been an agreement of the extension of the response

6  date.

7        For all of those listed on Exhibit B, Your Honor,

8  we'd respectfully request that they be continued until the

9  February omni.

10       THE COURT:  All right.  They'll be continued to

11 February 7.

12       MS. BERAN:  Thank you, Your Honor.  That allows us to

13 turn to Page 118.  This is the Liquidating Trust's 18th omnibus

14 objection dealing with certain tax claims.  There are still a

15 handful of those that remain outstanding and unresolved and

16 we'd respectfully request that those listed on Exhibit B can be

17 continued until the February omni.

18       THE COURT:  They'll be continued to the February 7

19 date.

20       MS. BERAN:  Thank you, Your Honor.  That allows us to

21 turn to Page 123.  Your Honor, in connection with the -- Item

22 Number 31, the Liquidating Trust's 20th omni, as indicated on

23 Exhibit B, certain of those items have been settled.  The rest,

24 as indicated on Exhibit B, of the two categories previously

25 described, we'd respectfully request that they be continued

53

1  until the February omni.

2              THE COURT:  They'll be continued to February 7.

3              MS. BERAN:  Thank you, Your Honor.  That allows us to

4  turn to Page 129.  The good news here, Your Honor, is there is

5  a string of them that are similarly situated.  That would be

6  Items 32, 33, 34, 35 and 36 which are the Liquidating Trust's

7  21st through 26th omnibus objections.

8              THE COURT:  All right.

9              MS. BERAN:  As indicated on Exhibit B, Your Honor,

10  there are a number of settlements that have been indicated on

11  Exhibit B that resolved the claims and therefore the claims may

12  be taken off the court's docket.

13              In addition, Your Honor, then there are a handful

14  that remain unresolved and therefore we would respectfully

15  request that those be continued until the 2/20 -- I mean,

16  excuse me -- until the 2/7 date.

17              THE COURT:  They'll be continued to the 7th of

18  February.

19              MS. BERAN:  Thank you, Your Honor.  That allows us to

20  move to Page 152.  Your Honor, as indicated on Exhibit B, Item

21  Number 37, the omnibus objection to claims for the 27th omnibus

22  objection, there still remains one claim outstanding.  We'd

23  respectfully request that that be continued for status purposes

24  until the February 7th omni.

25              THE COURT:  That's the Ohio Department of Taxation.

1          MS. BERAN:  Yes, Your Honor.

2          THE COURT:  All right.

3          MS. BERAN:  That allows us to turn to Page 156, Your

4   Honor, which is the Liquidating Trust's 28th omnibus objection.

5   As indicated on Exhibit B, certain claims have been resolved,

6   then may be removed from the court's docket.

7          In addition, Your Honor, the rest of the claims as

8   identified on Exhibit B we'd respectfully request that they be

9   continued until the February 7th omni.

10          THE COURT:  All right.  They'll be continued to the

11  7th of February.

12          MS. BERAN:  Thank you, Your Honor.  That allows us

13  then to turn to Page 161, Your Honor.  Your Honor, in

14  connection with Item Number 39, the Liquidating Trust's 29th

15  omnibus objection, there do still remain a couple claims

16  outstanding on that omni and we'd respectfully request that

17  they be continued for status purposes until the February omni.

18          THE COURT:  They'll be continued to February 7.

19          MS. BERAN:  Thank you, Your Honor.  That allows us to

20  turn to Page 164.  As indicated on Exhibit B, there still are a

21  handful of claims outstanding on the Liquidating Trust's 30th

22  omnibus objection.  We'd respectfully request that they be

23  continued for status purposes until the February 7th omni.

24          THE COURT:  They'll be continued.

25          MS. BERAN:  Thank you, Your Honor.  Turning to Page

55

1    168, Item Number 41, the Liquidating Trust's 31st omnibus

2    objection.  As indicated on Exhibit B, certain of those claims

3    have been resolved and may be removed from the court's docket.

4    The remaining ones identified on Exhibit B pursuant to the two

5    categories previously described, we'd respectfully request that

6    they be continued until the February 7th omni.

7            THE COURT:  They'll be continued to February 7.

8            MS. BERAN:  Thank you, Your Honor.  That --

9            MR. RIGHETTI:  Your Honor, Ms. Beran?

10           THE COURT:  I'm sorry.  Who's on the phone?

11           MR. RIGHETTI:  Thank you, Your Honor.  This is

12   Michael Righetti.  I am an attorney in San Francisco and I

13   represent four of the creditors.  Ms. Beran, you and I have

14   e-mailed and I've actually had discussions with Mr. Caine.  I

15   apologize for interrupting the Court but I did want to say

16   something very briefly on behalf of the creditors -- four

17   creditors that I represent who are subject to the 30th and 31st

18   omnibus objections, if that's okay with the Court.

19           THE COURT:  All right, Mr. Righetti.  You may

20   certainly do so.  And that's in connection with the 30th

21   omnibus objection and the 31st omnibus objection, as I

22   understand it.

23           MR. RIGHETTI:  That's correct, Your Honor.  Thank you

24   very much for allowing me to interject here briefly.

25           I just -- at the last status conference, the Court

1   instructed myself and Mr. Caine to get together and see about

2   working to resolve the claims of creditors Gentry, Card, Skaf

3   and Hernandez and provide an update for the Court on this date.

4   And I would simply like to inform the Court that I have

5   submitted demands to Mr. Caine and we have been working

6   together to try and resolve those.  I'm currently awaiting a

7   response from Mr. Caine on the creditors' demands.  And I

8   suppose that I have no objection to them being continued to

9   February 7th and we can inform the Court about the status of

10  those discussions at that time, if that's okay.

11          THE COURT:  That'll be certainly fine, Mr. Righetti,

12  and I thank you for that report.

13          MR. RIGHETTI:  Okay.  Thank you, Your Honor.  I will

14  jet off and good luck to you all.

15          THE COURT:  You may be excused, Mr. Righetti.  Thank

16  you.

17          MR. RIGHETTI:  Thank you.

18          THE COURT:  All right, Ms. Beran, if you could

19  continue.

20          MS. BERAN:  Thank you, Your Honor.  I believe, Your

21  Honor, then we have addressed 40 and 41 which were the

22  Liquidating Trust's 30th and 31st.  That allows us to turn to

23  Page 171.  Item Number 42 is the Liquidating Trust's 32nd.

24  There still remains outstanding the claims subject to that

25  objection of Mr. Besanko.  We'd respectfully request that they

57

1  be continued until the February 7th omni.

2          THE COURT:  They'll be continued to February 7.

3          MS. BERAN:  Thank you, Your Honor.  That allows us to

4  turn to Page 174.  As indicated on B, there still is one claim

5  that remains outstanding in the Liquidating Trust's 33rd

6  omnibus objection.  We'd respectfully request that it be

7  continued for status purposes until 2/7.

8          THE COURT:  It'll be continued to the 7th.

9          MS. BERAN:  Thank you, Your Honor.  Your Honor,

10 turning then to Page 176, Item Number 44, I am happy to reply

11 -- to report, Your Honor, that those claims have now all been

12 resolved and so that we can completely take this omnibus

13 objection off of the Court's docket.

14         THE COURT:  Okay.  Best news we've had today.  Next

15 one.

16         MS. BERAN:  Your Honor, there's -- I think I have --

17 I'm going to say that maybe close to ten times I believe so

18 that's good news that the agenda may actually decrease.

19         THE COURT:  A little foreshadowing, huh?

20         MS. BERAN:  Your Honor, turning then to Page 178,

21 there is one claim that remains subject to the 35th omnibus

22 objection, and we'd respectfully request that that be continued

23 until the February 7th omni.

24         THE COURT:  It'll be continued to the 7th of

25 February.

1          MS. BERAN:  Thank you, Your Honor.  Turning then to

2   Page 181, I would submit as it relates to Items 46 and 47 which

3   is the 36th and 37th omnibus objections, Your Honor, all claims

4   subject to those have been resolved and/or otherwise addressed.

5   Therefore, those two items will be taken off this agenda the

6   next time.

7          THE COURT:  All right, very good.

8          MS. BERAN:  And we can then turn to Page 186, Your

9   Honor, Item Number 48, the Liquidating Trust's 38th omnibus

10  objection.  There are still a handful of claims that remained

11  outstanding as it relates to that omnibus objection.  We'd

12  respectfully request that they be continued until two -- the

13  February 7th omni.

14         THE COURT:  They'll be continued to the 7th of

15  February.

16         MS. BERAN:  Thank you, Your Honor.  Your Honor, that

17  allows us to turn to Page 188.  And as it relates to Page 188,

18  Item Number 49 -- actually Item 49, 50, 51 and 52, it just so

19  happens that they correspond with Omnis 39, 40, 41 and 42, four

20  specific omnis where, as indicated on Exhibit B, there have

21  been a number of claims resolved pursuant to procedures

22  approved by Your Honor and therefore those claims may be taken

23  off of those -- the court's docket as it relates to those.

24  We'd respectfully request the rest as identified on Exhibit B

25  be continued until the February omnibus date.

1          THE COURT:  All right.  On Page 83 of Exhibit B,

2  you've got the claim of Berkadia Commercial Mortgage and then

3  you've got -- actually in Number 43.  Is that covered by the

4  43rd omnibus, or is that covered in the 39th omnibus, or is it

5  covered twice?

6          MS. BERAN:  Your Honor, what we have done as

7  responses are filed and received and docketed by the Court, we

8  try to indicate specifically what's been received by the Court

9  and said by the claimant and that's what the claimant has said,

10  39th.  So the Court has there docketed it.  But from the

11  trust's records, it's really the 43rd.

12          THE COURT:  Okay, because you make this reference a

13  number of places and I was just confused what that meant.  And

14  so that's what that is?

15          MS. BERAN:  Correct, Your Honor.  We tried to track

16  it in different ways and to make it clear.  A claimant may

17  think they're subject to a certain omni; therefore, the case

18  administrator links it to that omni.  And as we receive it, we

19  will go in and we research each and every one of them to make

20  sure and we try and put it in the proper place.

21          THE COURT:  Okay, very good.

22          MS. BERAN:  But we want people to be able to find it

23  if they ever came in and said, wait a minute, I filed a

24  response.

25          THE COURT:  Okay.

60

1        MS. BERAN:  Your Honor, then turning to Page 198.  In

2 connection with Item Number 53 which is the Liquidating Trust's

3 43rd, and Item Number 54 which is the Liquidating Trust's 44th,

4 there still are a handful of claims that remained unresolved as

5 identified on Exhibit B and we'd respectfully request that they

6 be continued till the February 7th omni.

7        THE COURT:  They'll be continued.

8        MS. BERAN:  Thank you, Your Honor.  That then allows

9 us to turn to Page 203, the Liquidating Trust's forty-fifth

10 omnibus objection.  There is one claim that still remains

11 unsolved in connection with that.  We'd respectfully request

12 that the matter be continued for status purposes until the

13 February 7th omni.

14        THE COURT:  It'll be continued.

15        MS. BERAN:  Thank you, Your Honor.  That allows us to

16 turn to Page 205, Item Number 56.  This is another one that I'm

17 happy to say that all claims subject to this omni have been

18 resolved.  Therefore this matter may be taken off the court's

19 docket going forward.

20        THE COURT:  Excellent.

21        MS. BERAN:  On Item Number 57, Your Honor, there are

22 still a handful of claims -- or handful of responses in

23 connection with the Liquidating Trust's 47th omnibus objection

24 and based on that and/or the concept where we've agreed to

25 extend the deadline, we'd respectfully request that those

1   claims be continued until the February omni.

2          THE COURT:  They'll be continued.

3          MS. BERAN:  Thank you, Your Honor.  Your Honor, on

4   Item Number 58, there is one claim related to the Liquidating

5   Trust's 48th omnibus that hasn't been resolved and we'd request

6   that that one claim be continued for status purposes to the

7   February omni.

8          THE COURT:  It'll be continued.

9          MS. BERAN:  Thank you, Your Honor.  The next item,

10  Item Number 59, the Liquidating Trust's 49th omnibus objection,

11  that is still subject to the one claim -- or one claim of Mr.

12  Besanko is still subject to that omni and we'd respectfully

13  request that his be continued until February 7th for status

14  purposes.

15         THE COURT:  That'll be continued.

16         MS. BERAN:  Thank you, Your Honor.  Your Honor, on

17  Item Number 60 is the Liquidating Trust's 50th omnibus

18  objection.  As identified on Exhibit B, there are several

19  claims which responses were received and/or upon which we

20  agreed to extend the response deadline and continue for status

21  purposes.  We'd respectfully request all those identified on

22  Exhibit B be continued for status purposes to the February 7th

23  omni.

24         THE COURT:  They'll be continued.

25         MS. BERAN:  Thank you, Your Honor.  Your Honor, on

1  Item Number 61, in this instance, this is actually one where in

2  connection with it, there have been no responses received and

3  there is a method to our madness.  We try and assume that

4  responses are going to be received, especially with a lot of

5  these later ones because they deal with employee claims and

6  there -- most of them are proceeding pro se and we will

7  sometimes receive claims in our -- I mean, letters in our

8  office that aren't yet docketed and we wait for the docket to

9  hit.  So, we try and preserve rights until the very last

10 minute.  At this point in time, there have been no responses

11 received so we would submit that an order will be tendered

12 resolving that omni in full.

13        THE COURT:  All right.  And this is in connection

14 with the 51st omni objection?

15        MS. BERAN:  Yes, Your Honor.

16        THE COURT:  All right.  Does any party wish to be

17 heard in connection with the Liquidating Trust's 51st omnibus

18 objection to claims?

19                (No audible response)

20        THE COURT:  All right.  I'll look for that order.

21        MS. BERAN:  Thank you, Your Honor.  Similarly, on the

22 -- Item Number 62 which is the Liquidating Trust's 52nd.  To

23 date we've seen no responses being received by the Court and/or

24 any type of letter responses received either myself, my law

25 partner or Mr. Caine and/or Mr. Pomerantz who the notices

63

1   usually come to.  And based on the same, Your Honor, we would

2   respectfully request the Court grant the objection as provided

3   or sustain the objection.

4        THE COURT:  Does any party wish to be heard in

5   connection with the Liquidating Trust's 52nd omnibus objection

6   to claims?

7                        (No audible response)

8        THE COURT:  All right.  Those claims will be

9   sustained, as well.

10       MS. BERAN:  Thank you, Your Honor.  Item Number 63 is

11  the Liquidating Trust's 53rd omnibus objection.  In connection

12  with that, Your Honor, there have been either responses

13  received and/or agreement to continue the objection deadline

14  and continue this hearing for status purposes as identified on

15  Exhibit B.  For those, we'd respectfully request that they be

16  continued for status purposes until the 2/7th.  For all others,

17  Your Honor, we intend to submit an order that would sustain the

18  objection.

19       THE COURT:  All right.  Does any party wish to be

20  heard in connection with the 53rd omnibus objection to claims?

21                       (No audible response)

22       THE COURT:  All right.  With the exception of the

23  claims listed on Exhibit B, those objections will be sustained.

24  With regard to those that are listed on Exhibit B, they'll be

25  continued to February 7.

64

1             MS. BERAN:  Thank you, Your Honor.  Your Honor, that

2    then brings us to the Liquidating Trust's 54th omnibus

3    objection.  In connection with that, Your Honor, to date there

4    have been no claims docketed by the court's -- no responses

5    docketed on the court's website and none received by either the

6    Tavenner & Beran or Pachulski law firm.  We'd respectfully

7    request then that the Court sustain the objection as filed.

8             THE COURT:  Does any party wish to be heard in

9    connection with the Liquidating Trust's 54th omnibus objection?

10                        (No audible response)

11            THE COURT:  All right.  Those objections will be

12   sustained.

13            MS. BERAN:  Similarly, Your Honor, on Item Number 65

14   is the Liquidating Trust's 55th omnibus objection.  To date, no

15   responses have been received.  We respectfully would submit

16   then that the Court may sustain the objection as filed.

17            THE COURT:  Does any party wish to be heard in

18   connection with the Liquidating Trust's 55th omnibus objection

19   to claims?

20                        (No audible response)

21            THE COURT:  All right.  Those claims will be

22   sustained.

23            MS. BERAN:  Likewise, Your Honor, on Item Number 66

24   is the Liquidating Trust's 56th omnibus objection.  To date,

25   there have been none docketed and/or received by the Tavenner

1  or Pachulski firm.  And therefore we respectfully submit that

2  the Court may sustain the objection as it relates to those

3  claims.

4         THE COURT:  All right.  Does any party wish to be

5  heard in connection with the Liquidating Trust's 56th omnibus

6  objection?

7              (No audible response)

8         THE COURT:  All right.  Those will be sustained.

9         MS. BERAN:  Thank you, Your Honor.  That then brings

10 us to Item Number 67 which is the Liquidating Trust's 57th

11 omnibus objection.  Your Honor may recall that this is where

12 there are two amendments to Exhibit B.  And specifically those

13 amendments would be with Mr. Telegadas and Ms. McDonald.

14         As it relates to those two individuals, Your Honor,

15 they originally filed responses.  As is the practice in this

16 instance with these employees that are not represented by

17 counsel, Ms. Pietrantoni, who Your Honor has met several times

18 in connection with being a trust representative, reaches out to

19 the former employees.  And in connection with that, after

20 walking through the objection with Mr. Telegadas and Ms.

21 McDonald, they both now understand what the trust was doing and

22 they would like to withdraw their response, such that they will

23 have an allowed claim as modified pursuant to that objection.

24 And we indicated that we would so note on the agenda and

25 represent the same to Your Honor.

1          THE COURT:  All right.

2          MS. BERAN:  As it relates to their other employees

3   who have filed responses and/or who we have agreed to continue

4   the response deadline and we would ask as it relates to those

5   identified on Exhibit B that the matter be continued for status

6   purposes.  But for all other claim objections or other claims

7   subject to that objection, we would respectfully submit that

8   the Court may sustain the objection as provided.

9          THE COURT:  All right.  Does any party wish to be

10  heard in connection with the Liquidating Trust's 57th omnibus

11  objection to claims?

12               (No audible response)

13         THE COURT:  All right.  So then the claims of Ms.

14  McDonald and Mr. Telegadas will be approved as modified.  The

15  four other claims that are listed on Exhibit B will be

16  continued to February 7.  And all other claims will be -- the

17  objections will be sustained.

18         MS. BERAN:  Thank you, Your Honor.  Your Honor, on

19  Item Number 68, the Liquidating Trust's 58th omnibus objection,

20  we did receive one response as it relates to that.  We'd

21  respectfully ask that the objection be continued as to that one

22  respondent but then be granted and/or sustained as it relates

23  to all other claimants who haven't otherwise responded and/or

24  contacted the trust so that there could be some type of an

25  agreement.

1       THE COURT:  Does any party wish to be heard in

2   connection with the 58th omnibus objection?

3                   (No audible response)

4       THE COURT:  All right.  Except for the one claimant

5   listed on Exhibit B whose claim will be continued to February

6   7, those claims objections will be sustained.

7       MS. BERAN:  Thank you, Your Honor.  Item Number 69 is

8   the Liquidating Trust's 59th omnibus objection.  As indicated

9   on Exhibit B, there are a handful of respondents who have

10  either filed responses and/or who have contacted the trust and

11  the trustee has agreed to extend the response deadline and

12  continue this hearing for status purposes until February.  For

13  all remaining claimants subject to that omnibus objection, Your

14  Honor, we'd respectfully request that the Court sustain the

15  objection.

16      THE COURT:  Does any party wish to be heard in

17  connection with the 59th omnibus objection?

18                  (No audible response)

19      THE COURT:  All right.  There being no objection,

20  those claims will be sustained except for those that are set

21  forth on Exhibit B whose claims will be continued for status on

22  February 7.

23      MS. BERAN:  Thank you, Your Honor.  Your Honor, Item

24  Number 70 is the Liquidating Trust's 60th omnibus objection.

25  As indicated on Exhibit B, there have been some responses

68

1  and/or informal inquiries from which we've agreed to extend.

2       In addition, Your Honor, even on relatively new

3  omnibus objections, the trust continues to work with people in

4  trying to resolve and you will see, as indicated on Exhibit B,

5  and Item Number -- Omni 60, the trustee after a further

6  exchange of information with two former employees has agreed

7  that they will be withdrawing their objection to those

8  employees' claims.

9       So, Your Honor, we'd respectfully request as it

10 relates to those parties on Exhibit B that the status purposes

11 -- the hearing for status purposes be continued until the

12 February omni.  The trust will withdraw its objection to the

13 claims of Jamie Lamar and Susan Richardson and that all others

14 would be -- subject to the objection would be sustained.

15      THE COURT:  Does any party wish to be heard in

16 connection with the Liquidating Trust's 60th omnibus objection?

17                (No audible response)

18      THE COURT:  All right.  So the two claims objections

19 against Ms. Lamar and Ms. Richardson will be deemed withdrawn.

20 The others listed on Exhibit B will be continued to February 7

21 and all other objections will be sustained.

22      MS. BERAN:  Thank you, Your Honor.  Your Honor, Item

23 Number 71, the Liquidating Trust's 61st omnibus objection, to

24 date there have been no responses received from either the

25 Tavenner or Pachulski firm and/or none listed on the court's

69

1  docket.  Therefore, we would respectfully submit that the --

2  this objection may be sustained as submitted to the Court.

3          THE COURT:  Does any party wish to be heard in

4  connection with the Trust's Omnibus Objection 61?

5                  (No audible response)

6          THE COURT:  All right.  Those objections will be

7  sustained.

8          MS. BERAN:  Thank you, Your Honor.  Your Honor, Item

9  Number 72 is the Liquidating Trust's 62nd omnibus objection.

10 In this instance, Your Honor, the trust -- similarly the trust

11 has agreed to withdraw its objections to certain of the claims

12 as identified on Exhibit B.  For the other claimants on Exhibit

13 B for Item Number 62, we'd respectfully request that the

14 omnibus objection be continued for those claimants.  But for

15 all other claimants other than as identified on Exhibit B

16 specifically related to 62, we'd respectfully request that the

17 Court sustain the objection as filed.

18         THE COURT:  Does any party wish to be heard in

19 connection with the Liquidating Trust's 62nd omnibus objection

20 to claims?

21                 (No audible response)

22         THE COURT:  All right.  Those -- for the claims

23 identified on Exhibit B, they'll be either continued or

24 withdrawn.  With regard to the remaining objections, they'll be

25 sustained.

1          MS. BERAN:  Thank you, Your Honor.  Your Honor, that

2    then brings us to Item Number 73.  And I do apologize in

3    connection with Item Number 73.  I believe that I -- I think --

4    I can't even say it's a paralegal's fault.  I think this final

5    edit was done by me and I got a little bit too happy with the

6    cut and paste, specifically the cut, and cut too much off of

7    the status from this and so there is no status on that.  But I

8    believe your law clerk previously caught that and I would

9    expect nothing less than catching my errors from a blonde from

10   Maryland.

11          In connection with that, Your Honor, the status is,

12   there are a handful of responses as indicated on Exhibit B.

13   We'd respectfully request those handful be continued until the

14   February omni.  In connection with all others on the -- on that

15   omnibus objection, given that no responses were timely filed

16   and/or received, we'd respectfully request that the Court grant

17   as it relates to all remaining ones.

18          THE COURT:  Does any party wish to be heard in

19   connection with the Liquidating Trust's 63rd omnibus objection

20   to claims?

21                  (No audible response)

22          THE COURT:  All right.  Ms. Beran, let me ask a

23   question here.  Now, since no status was indicated on here for

24   73, could parties be confused as to what might be transpiring

25   today when they received a copy of this agenda?

1            MS. BERAN:  Your Honor, there -- it's potential that

2  there could have been some type of confusion and I do --

3            THE COURT:  I'm just wondering if we ought to

4  continue this one just generally to the next omnibus hearing

5  date and then --

6            MS. BERAN:  Your Honor --

7            THE COURT:  -- you can make your same motion and --

8  just so that anybody who may have been confused -- I would have

9  expected they would have been on the phone or in the courtroom

10 if they were, but just so that we don't have that come up and

11 we've given everybody the process to which they're due.

12           MS. BERAN:  Certainly, Your Honor.  We can continue

13 73 as it -- Item Number 73 generally and then --

14           THE COURT:  That would be the Court's preference.

15           MS. BERAN:  Certainly.

16           THE COURT:  And then, next time we'll put the status

17 on there and -- because they're in default as of today but

18 they'll get double notice that way.

19           MS. BERAN:  Correct, Your Honor.  And I apologize.

20 That is 100 percent my cut and pasting.

21           THE COURT:  It's not a problem.  Not a problem.

22           MS. BERAN:  Item Number 74, Your Honor, is the

23 Liquidating Trust's 64th omnibus objection.  As indicated on

24 Exhibit B, we have actually already resolved some of those, I'm

25 happy to report.  Others we've agreed to continue and/or

1  responses have been filed so we'd respectfully request that

2  those as identified on Exhibit B be continued until the

3  February omni.  For all others, we would respectfully submit

4  that the Court may sustain the objection as filed.

5       THE COURT:  All right.  Does any party wish to be

6  heard in connection with the Liquidating Trust's 64th omnibus

7  objection?

8            (No audible response)

9       THE COURT:  All right.  So for those claims

10 identified on Exhibit B, they will be accorded the treatment

11 set forth on Exhibit B.  And for all others, the objection will

12 be sustained.

13      MS. BERAN:  Thank you, Your Honor.  Your Honor, that

14 then brings us to Item Number 75 which is the Liquidating

15 Trust's 65th omnibus objection.  As indicated on Exhibit B,

16 there have been some responses received and/or -- well,

17 actually, two responses received.  In connection with those two

18 responses received, we'd respectfully request that the hearing

19 be continued for status purposes for those two claimants.  But

20 for all others, we'd respectfully request that the Court

21 sustain the objection as filed.

22      THE COURT:  Does any party wish to be heard in

23 connection with the Liquidating Trust's 65th omnibus objection?

24            (No audible response)

25      THE COURT:  All right.  The two that are identified

1  on Exhibit B will be continued to February 7.  All others, the

2  objection will be sustained.

3          MS. BERAN:  Thank you, Your Honor.  Your Honor, that

4  brings us to the two remaining items on the docket, which are

5  standalone objections that the trust filed specifically as it

6  relates to the claim of PNY Technologies, as well as then the

7  claim by Chase Bank USA.

8          In connection with both of those objections, Your

9  Honor, we'd respectfully request that they be continued until

10 the February 7th omni.

11         THE COURT:  All right.  Those two items will be

12 continued to February 7th.

13         MS. BERAN:  Your Honor, that brings us to the end of

14 the agenda.  We are happy to address any additional comments,

15 concerns Your Honor may have as it relates to the status of

16 this case.  You do have Mr. Caine here today, as well as Ms.

17 Tavenner and myself and we're happy to answer any questions you

18 may have and/or Ms. Bradshaw and/or Mr. McDonald.

19         I can, you know, just generally state and then if

20 there's specific questions, I would dodge them and turn it over

21 to Mr. Caine.  But as Your Honor is seeing, we're rapidly

22 resolving a number of these, which is by their very nature

23 leaving some of the larger, more complicated claims resolutions

24 left unresolved.  And there may come a point in time in the

25 very near future, Your Honor, where it may make sense to

1   approach Your Honor about some mediation protocol since there

2   has been such great success in connection with the adversary

3   proceedings and in fact certain of the claimants have even

4   asked if there were going to be any such protocol in resolving

5   some of these remaining claims.  So just wanted to alert Your

6   Honor to that, that it's more than likely that we will be

7   filing some mediation protocol type things for unresolved

8   claims.

9           THE COURT:  And are you looking at having some sort

10  of judicial mediation on these or are you looking for using the

11  mediators that we've already identified or some combination of

12  the two of those things?

13          MS. BERAN:  Your Honor, I think it would be almost

14  maybe -- probably a combination of the three.  I must concede

15  that I don't think a final decision has been made by the --

16  from the trust's perspective.  There's been couple of calls,

17  you know, trying to flush out what makes sense to make it work

18  like the adversary proceedings have worked and I think what

19  ultimately -- what would transpire is, there would be a list

20  approved by Your Honor, maybe not necessarily the exact same

21  people, maybe some different people since it's a little bit

22  different issues with claims than there are with AP but

23  something similar and then with the reservation to come back

24  before Your Honor specifically as it relates to judicial

25  mediation on items that we think might be more appropriate for

1   judicial mediation as we've done in connection with the APs.

2        THE COURT:  All right, very good.  Now, one last --

3   one question the Court had.  As we saw earlier today, there

4   apparently was some question with the interpretation of the

5   Judge -- of the Court's pretrial order with regard to counting

6   of days.  And I used to live in fear of counting days when I

7   was an attorney and I don't want to be unfair to anybody.  I

8   would be amenable to any other pretrial orders we have out

9   there that have been entered in this case, that is -- if you

10  think that it's appropriate to amend those pretrial orders so

11  that we can address this.

12       I think that the easiest way to address it or my

13  suggestion would be to make the -- whatever those dates are

14  divisible by seven so that where we have 30 days prior to

15  trial, we'd make it 35.  If it's 60 days prior to trial, we'll

16  make it 63.  And I hope that my fifth grade math is in place

17  here and I'm remembering my times tables.  But whatever that

18  would be, that's what I would suggest.

19       And I don't know whether it's necessary or not, given

20  my comments in court today, but if it is, I would entertain it.

21  If it's not, then that's fine, too.  But -- because I had

22  clearly intended that continue meant we're going in the same

23  direction.  But --

24       MS. BERAN:  Your Honor, I could say that that's a

25  question that is regularly asked of Tavenner & Beran when we

1    service co-counsel and/or local counsel with people.  And we

2    always err on the other side.  But, nonetheless, Your Honor, I

3    would suggest, specifically as it relates to the pending APs,

4    that we go back and Mr. Caine, Ms. Tavenner and I look at the

5    pending trials, our trial calendar, to see if it might be

6    appropriate and/or informally contact parties to see if there's

7    any issue.  And then, going forward, as it relates to any

8    additional AP trials that may be set, which there are still a

9    handful in mediation, Your Honor, that may or may not settle

10    and we'd be providing notices as it relates to pretrial

11    conferences and being before Your Honor and having the pretrial

12    order entered after that pretrial hearing.  So maybe we could

13    do it at that point in time.  But we will get back with Your

14    Honor on that.

15            THE COURT:  Well, I fully intend to amend my pretrial

16    order to do that going forward.

17            MS. BERAN:  Okay.

18            THE COURT:  But I had thought that I had made it

19    perfectly clear and I obviously failed to get the point across.

20    But we'll try to do that because everybody's entitled to know

21    what dates are -- and what dates are firm and such and there

22    should never be ambiguity in that and everybody should be able

23    to rely on it, it just seems to me, so in any event.

24            All right.  Anything else we need to take up in this

25    case?

77

1          MS. BERAN:  Not that I'm aware of, Your Honor, but if

2    I may defer and turn back to make sure that --

3          THE COURT:  You may.

4          MS. BERAN:  -- I haven't missed anything from Mr.

5    Caine or Ms. Tavenner's perspective.

6          THE COURT:  All right.  All right.  I would like to

7    see Mr. Caine in chambers on another unrelated matter if that's

8    okay.  You're invited, as well, if you'd like to come along,

9    although it's not necessary.  Thank you.

10         MS. BERAN:  Thank you, Your Honor.

11         COURTROOM DEPUTY:  All rise.  Court is now adjourned.

12                      * * * * *

13              **C E R T I F I C A T I O N**

14         I, STEPHANIE SCHMITTER, court approved transcriber,

15   certify that the foregoing is a correct transcript from the

16   official electronic sound recording of the proceedings in the

17   above-entitled matter, and to the best of my ability.

18

19

20   /s/ Stephanie Schmitter

21   STEPHANIE SCHMITTER

22   J&J COURT TRANSCRIBERS, INC.          DATE:  December 18, 2012

23

24