UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                          .     Case No. 08-35653 (KRH)
                                .
                                .
                                .     Chapter 11
                                .     Jointly Administered
CIRCUIT CITY STORES,            .
INC., et al.,                   .     701 East Broad Street
                                .     Richmond, VA 23219
                                .
          Debtors.              .
                                .     June 25, 2013
. . . . . . . . . . . . ..       2:04 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             Tavenner & Beran, PLC
                            By:  LYNN S. TAVENNER, ESQ.
                            20 North Eighth Street, 2nd Floor
                            Richmond, VA 23219


For Sony Electronics,       Kutak Rock, LLP
Inc.:                       By:  PETER J. BARRETT, ESQ.
                            Bank of America Center
                            1111 East Main Street, Suite 800
                            Richmond, VA 23219


For Credit Suisse           Blankingship & Keith, PC
Loan Funding, LLC:          By:  JEREMY BRIAN ROOT, ESQ.
                            4020 University Drive, Suite 300
                            Fairfax, VA 22030




Proceedings recorded by electronic sound recording, transcript
produced by transcription service
_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311   Fax No. (609) 587-3599

2

TELEPHONIC APPEARANCES:

For the Debtor:              Pachulski Stang Ziehl & Jones LLP
                             By:  ANDREW W. CAINE, ESQ.
                             10100 Santa Monica Boulevard
                             Los Angeles, CA 90067

For Credit Suisse            Cohen Tauber Spievack & Wagner, LLP
Loan Funding, LLC:           By:  LEO L. ESSES, ESQ.
                             420 Lexington Avenue, Suite 2400
                             New York, NY 10170

- - -

1          COURTROOM DEPUTY:  All rise.  Court is now in

2    session.  Please be seated and come to order.

3          COURT CLERK:  Circuit City Stores, Incorporated,

4    Items 1 through 4 on proposed agenda.

5          MS. TAVENNER:  Good afternoon, Your Honor.  Lynn

6    Tavenner of the law firm of Tavenner & Beran appearing today on

7    behalf of the trust.  Also on the telephone is Mr. Andrew Caine

8    of the Pachulski firm and seated at counsel table is Mr.

9    Jeffrey McDonald.

10          Your Honor, the first matter that's set out on the

11   agenda is the status conference in the adversary proceeding

12   Siegel against Sony Electronics, et al., Case Number 10-03600.

13   Your Honor had noticed this status conference.

14          THE COURT:  I had.

15          MS. TAVENNER:  Mr. Peter Barrett is here today on

16   behalf of the defendant Sony Electronics, as well as Jeremy

17   Root of the Blankingship law firm is here as local counsel, and

18   I believe Mr. Leo Esses is here, as well, on behalf of Credit

19   Suisse on the telephone.

20          MR. ESSES:  Yes, good afternoon, Your Honor.

21          THE COURT:  Mr. Esses, is that -- am I saying that

22   correctly, sir?

23          MR. ESSES:  Yes, Your Honor.

24          THE COURT:  All right.  Thank you, Mr. Esses.

25          MS. TAVENNER:  Your Honor, as brief background, I'm

4

1  sure you're well aware of the amended complaint that's been

2  filed in this matter.  It seeks a large preference claim

3  against the defendant Sony Electronics and, in addition to

4  that, there are other issues related to a 503(b)(9) claim,

5  proofs of claim, receivables, a multitude of legal issues in

6  which we have been working diligently, all sides, Your Honor,

7  to try and mediate the matter.  We appreciate Your Honor's

8  assistance in allowing us to utilize judicial mediator, Judge

9  Santoro.

10       We have had two meetings with Judge Santoro to date

11  and despite the efforts of the parties prior to the last

12  meeting, I think, Your Honor, we were all going like this.

13  Judge Santoro has recognized that and has put together a

14  protocol for all the parties and identified certain specific

15  baby steps, if you will, to assist the parties in at least at

16  the end of the day coming together in the middle to recognize

17  specifically what the real facts are and what the legal issues

18  are.

19       We're hopeful at the end of that day that we can --

20  once we can come to terms on that, that we can reach a

21  resolution.  In the event that we don't, we believe that we

22  will be in a much better position to be able to efficiently

23  litigate the matter before Your Honor.

24       When we were before Judge Santoro and we discussed

25  the next steps and the procedural mechanism that he put in

1  place, the parties also discussed the need for a protective

2  order in conjunction with the same, because we --

3          THE COURT:  That's what triggered my inquiry.

4          MS. TAVENNER:  Yes.  And we recognized that -- and

5  Judge Santoro has suggested that in order -- because the stakes

6  are so high in this matter, the amounts at issue, in order to

7  most effectively take advantage of the mediation process, we

8  need to be able to come to the table and present all facts and,

9  if you will, leave the litigation tactics outside the door

10 before we come in.

11          And, because of that, the parties have agreed to a

12 procedure that Judge Santoro has suggested but certainly we're

13 hopeful that Your Honor would recognize the need for a

14 protective order, given that we are baring our souls in this

15 mediation.  And I'm happy for --

16          THE COURT:  Well, Ms. Tavenner, my problem was not so

17 much with the protective order.  As you well know, I have

18 entered protective orders --

19          MS. TAVENNER:  Sure.

20          THE COURT:  -- on numerous occasions and the form of

21 the protective order did not bother me at all.  What bothered

22 me and what shocked me actually, quite frankly, when I got the

23 motion for the entry of the protective order, was that this

24 case was filed in November of 2010, all right, we are --

25 pursuant to procedures that I established at the beginning of

6

1  this case which required all of these types of cases, avoidance

2  actions, to be mediated and we went through a mediation in this

3  case.

4        And in connection with that particular mediation, I

5  entered four separate orders extending the time within which

6  the debtors -- the debtor and the defendant could extend the

7  mediation in the hope of getting it resolved.  And there were

8  many plaintiff requests to extend the time and that we're

9  getting close and all the rest of it and then of course it fell

10  apart.

11       And then the parties came back to me and that was

12  basically in the fall of last year and said, please, we would

13  like to do a judicial mediation.  And I said, will that really

14  help?  And you said, yes, it would.  Mr. Barrett said, yes, it

15  would.  I said, okay.  And you asked specifically for Judge

16  Santoro.  I prevailed upon him and got him to agree to conduct

17  a mediation.

18       Once again, the same pattern occurs where I get

19  orders that are being submitted, asking me to extend the time

20  after I've entered my mediation protocol order to extend the

21  mediation period so the parties might be able to further

22  discuss and go on.  And, again, by my count I've now entered

23  five of those orders and we were coming up on June 30th when

24  the time was going to expire.

25       And that's when I got this motion for a protective

1  order.  And I'm trying to figure out in my way how in the world

2  we're going to resolve this mediation by June 30th, given the

3  fact that for some reason that was beyond my ken, the parties

4  were now for the first time trying to exchange some critical

5  documents.

6          I would have thought that that would have been done

7  back in the first mediation back when we were trying to do all

8  of the other stuff.  And here we are, three years into the

9  case, and we haven't even exchanged some documents that are

10  apparently pivotal to the parties being able to reconcile their

11  differences.  And I'm just getting to think what in the world

12  is going on, all right?  And I'm going to give Mr. Barrett a

13  chance at the podium, too.

14          But -- and then, after I'd noticed this hearing

15  because I wanted to know how in the world we're going to finish

16  by June 30, I've now got a request on my desk to continue this

17  mediation out to next February.  I could try this case ten

18  times between now and February.  And so, I'm not pleased with

19  where we are, the progress that is, quote, not being made.  We

20  shouldn't be taking baby steps.  We should be taking giant

21  steps.  And I don't understand why we are where we are.

22          I know one thing and that is that Judge Santoro

23  doesn't need any help getting -- knocking heads together and

24  things of that sort.  But, obviously, people aren't listening

25  to him.  At least that's my impression and so that -- and my

1 concern.  And I'm trying to figure out why I should not set

2 this case down for trial right away and just get on with it and

3 move on.

4 　　　　MS. TAVENNER:  Well, Your Honor, I can appreciate

5 that, given the time that has elapsed.  I am hopeful that you

6 can also appreciate that we do not take Judge Santoro lightly

7 and are working very hard to abide by everything that he is --

8 has put into place and it is, at this point, demands of him.

9 And we specifically discussed with him the protective order

10 that's before you and shared it with him prior to even

11 submitting it to you.  And he was on board with the process

12 that has been put into place.

13 　　　　THE COURT:  Is he the one that wants this mediation

14 scheduled out until February of next year?

15 　　　　MS. TAVENNER:  I don't -- we did not specifically

16 discuss with Judge Santoro the extension time.  We did, though,

17 in -- the last time that he was here a few weeks ago discuss

18 certain benchmarks of information to be shared amongst each

19 other.  Each side has different time periods to do things.  And

20 with that time line that he set up, it necessarily would put us

21 out into those dates.

22 　　　　THE COURT:  Let me hear from Mr. Barrett.

23 　　　　MR. BARRETT:  Thank you, Your Honor.  Peter Barrett

24 on behalf of Sony Electronics, Inc.

25 　　　　Your Honor, we'd echo much of what Ms. Tavenner said

1  as far as the summary of where the case goes --

2        THE COURT:  Since she just took the brunt of my

3  spieling.

4        MR. BARRETT:  And I certainly appreciate that.

5                    (Laughter)

6        MR. BARRETT:  I will offer just a little bit of

7  explanation.  I don't know that the protective order was

8  something that any of counsel was advocating for very strongly.

9        THE COURT:  I could care less about the protective

10 order.  I want to know why documents have not been exchanged

11 until this point and why we're just now getting around to doing

12 some discovery that should have been done eons ago.

13       MR. BARRETT:  Your Honor, documents have been

14 exchanged.  Documents were -- I mean, as far back as six months

15 before they filed the lawsuit against us, Skadden Arps and our

16 firm were exchanging information about reconciliation of

17 certain claims.  Since the trust took over and Ms. Tavenner and

18 Ms. Beran, there's been document exchange back and forth.

19 They've provided a CD-ROM full of documents supporting certain

20 parts of their case.  Our business people have been in contact

21 with one another.  So I don't want the Court to be under the

22 misimpression that there has not been any exchange.

23       The mediator had suggested to us that his protocol

24 was going to be based on a concept of full transparency and,

25 like Ms. Tavenner said, sort of leaving the litigation at the

1  door and coming in, open kimono and --

2      THE COURT:  Why wouldn't that have been done back in

3  the first mediation?

4      MR. BARRETT:  Well, I mean, the first -- there was

5  some.  I think that the, you know, the discussion now is that

6  there needs to be more and there needs to be a lot more.

7      THE COURT:  How open?  I mean, coming in, I would

8  expect that that would be how you would do a mediation.  I

9  mean, why is anybody hiding the ball at this point?

10     MR. BARRETT:  I don't know that people are hiding the

11 ball, but we are far -- I mean, it's a complicated case, even

12 though preference cases are not terribly complicated.

13     This case involves $191 million of preference, so

14 that's that piece.  Then, $71 million of accounts receivable,

15 which is incredibly complicated because accounts receivable

16 encompasses scores of programs.  And then, another, you know --

17 millions, tens of millions in claim objection to both the

18 general unsecured claim and the 503(b)(9) claim.  So there are

19 a number of factual and legal issues.  So I don't think

20 anybody's hiding the ball but I do think -- and now we have

21 from Judge Santoro a very clear protocol with a specified set

22 of deadlines, timetables.

23     And the reason why we go so far -- and I think that

24 date may have come up just between counsel.  I don't know that

25 Judge Santoro said, you know, it needs to go to 2014.  But we

1  do have homework assignments or deliverables that go all the

2  way through the -- towards the end of October of this year.  So

3  I think the idea, at least in my mind, was with deliverables

4  occurring that late and with the normal sort of, you know, lag

5  time, that we probably would need until the beginning of next

6  year in order to, you know, hopefully come to a resolution in

7  this case or at least narrow the issues for trial.

8            THE COURT:  Are you lead counsel in this case?

9            MR. BARRETT:  Yes.

10           THE COURT:  You're going to be trying it when we set

11  it for trial?  I'm not very confident this is going to actually

12  settle in mediation.  I guess given how many times I've set

13  this out and everything, that's why I inquire.

14           MR. BARRETT:  Yes, Your Honor.  Sony has no other

15  counsel than our firm.

16           THE COURT:  Is Judge Santoro -- well, Ms. Tavenner

17  said he's not the one that's asking for February of '14 but

18  he's given you assignments out to October?

19           MR. BARRETT:  Yes, Your Honor.  Our last assignment

20  is due on October 17th, is when we have to send something out

21  the door.  We have a simultaneous exchange of certain

22  information, so February (sic) 18th would really be the day

23  that we have the exchange.

24           THE COURT:  Are your financial consultants talking

25  with their financial consultant?

 1          MR. BARRETT:  Yes, our businesspeople -- the trust

 2  has businesspeople that are employed, and Sony has people in

 3  its credits department that are employed by Sony that are in

 4  contact -- I don't know how recent the contact is, but they

 5  have been previously and they seem to communicate, you know, as

 6  pleasantly as possible in a quarter of a billion dollar

 7  lawsuit.

 8          THE COURT:  Is Judge Santoro satisfied with the pace

 9  that this case is going?

10          MR. BARRETT:  I'd hate to put words in his mouth.  I

11  don't think anybody's satisfied with the pace that it's going.

12  I think --

13          THE COURT:  I know at least one person who's not.

14          MR. BARRETT:  And I understand that.  And, Your

15  Honor, I don't think either one of our clients is particularly

16  pleased with the pace that it's going but I think Judge Santoro

17  is satisfied that he's put a strong fulsome protocol out there

18  to do his best to bring the parties together.  And I think, and

19  I feel comfortable putting these words in his mouth, that if

20  this protocol doesn't work to either bring the parties together

21  or significantly narrow the issues for trial, then nothing

22  will.

23          THE COURT:  I'm assuming that if the mediation breaks

24  down and we don't get it done, we're not going to have a long

25  period of any kind of discovery, that all of that is going to

1   already have been accomplished?

2              MR. BARRETT:  That's the idea.  I mean, there are

3   still certain things to be ironed out but that -- yes, that is

4   the idea, that much of this information exchange is not going

5   to have to be -- you know, we're not going to have to reinvent

6   the wheel through a formal discovery process down the road.

7              THE COURT:  All right.  Mr. Root, did you wish to be

8   heard?

9              MR. ROOT:  No, Your Honor.  I think Mr. Esses is

10  more involved in the mediation and is probably more likely to

11  have something to say.

12             THE COURT:  All right.  Is your firm providing some

13  sort of credit or support or what is Credit Suisse's

14  involvement in the case?

15             MR. ESSES:  Your Honor, it's Mr. Esses.  May I

16  address that?

17             THE COURT:  Yes, you may, Mr. Esses.  And I

18  apologize.  I just thought Mr. Root was in the courtroom and I

19  know him.

20             MR. ESSES:  No problem.  I mean, Credit Suisse is

21  involved in this tangentially to the extent it is holding

22  certain claims that Sony had with Circuit City.  So, to the

23  extent that there are any effect of those claims with regards

24  to Sony and Circuit City, Credit Suisse is here to address

25  those issues now, as opposed to having to come in later and

1  have to worry about it later.  We -- instead, we have real time

2  as to what's going on.  But we have no underlying facts or

3  information regarding that.  So we're taking a seat and

4  providing whatever information the parties ask of us.

5          THE COURT:  Are you actively involved in

6  participating in the mediation?

7          MR. ESSES:  I have personally been involved in the

8  first two mediations, the third one with permission of Judge

9  Santoro and the parties.  I did not fly down -- I'm in New York

10 City.  I did not fly down to Virginia for that one.  It is

11 really, you know, facts that have been exchanged between

12 Circuit City and Sony at this point.

13         THE COURT:  All right, very good.  Ms. Tavenner,

14 you're going to be trying the case on behalf of Circuit City?

15         MS. TAVENNER:  Yes, Your Honor.

16         THE COURT:  All right.  I'm going to enter the

17 protocol -- or the protective order so that the parties can

18 exchange the information.  I expect that the information that's

19 going to be exchanged is going to be completely forthcoming and

20 that we're not going to have any hold backs or anything else,

21 that we're going to get to the bottom line.

22         I expect everyone to speed up the pace.  When Ms.

23 Tavenner says certain baby steps, I expect everybody to start

24 walking broadly at this point and to get to the conclusion of

25 this thing.  I am not going to extend this mediation protocol

1   out to February.  I'm going to extend it to November 30, which

2   gives you 30 days after the October homework assignment that

3   Mr. Barrett told me about.

4        If there is some reason why this mediation can't be

5   completed within that time period, then I would strongly

6   recommend -- we will have another hearing where you can request

7   that -- but I would strongly recommend that Judge Santoro call

8   me and ask for it specifically, because otherwise I'm going to

9   be disinclined to extend anything further, and you could expect

10   a trial well before your February 14 day.

11        Any questions regarding the Court's concerns in

12   connection with this adversary proceeding?

13        MS. TAVENNER:  No, Your Honor.

14        THE COURT:  Does any counsel have any questions?

15           (No audible response)

16        THE COURT:  All right.  Thank you all for being here

17   today.

18        UNIDENTIFIED ATTORNEY:  Thank you.

19        MR. ESSES:  Thank you, Your Honor.

20        THE COURT:  You may be excused, Mr. Esses.

21        MS. TAVENNER:  I don't see anybody else running up to

22   the lectern so may I continue, Your Honor?

23        THE COURT:  You may continue, Ms. Tavenner.

24        MS. TAVENNER:  The second item on today's agenda is

25   the objection to Claim Number 14787 filed by Chase Bank.  Your

1  Honor, the parties are in active discussions to resolve this

2  and would like to continue the status hearing until August the

3  27th at 10 a.m.

4          THE COURT:  All right.  It'll be continued to August

5  27.

6          MS. TAVENNER:  Thank you, Your Honor.  Item 3 is the

7  motion to reconsider filed by G&S Livingston Realty, Inc.  Your

8  Honor will recall that Mr. Vogel was here last time and we

9  advised you that we were in the midst of settlement discussions

10 and asked for one additional continuance in the hopes that it

11 would be resolved.  I'm happy to report that it has indeed been

12 resolved.

13         THE COURT:  All right.  That's excellent news, okay.

14 So I can take that off the docket?

15         MS. TAVENNER:  Yes, Your Honor.

16         THE COURT:  All right, super.

17         MS. TAVENNER:  That leaves Item 4 which is the

18 liquidating trust's motion for order striking Docket Number

19 12918.  We also discussed this matter at the last hearing, Your

20 Honor.  It involved a claim filed by Johannes F. de Wolf.  I

21 told you that I had been in personal contact with him by

22 telephone and we have continued to be in contact with him by

23 phone.

24         At this point, the trust is prepared to withdraw its

25 motion that's before Your Honor and we will proceed under the

17

1    mediation protocol that Your Honor has put into place

2    previously with respect to PI claimants.

3              THE COURT:  All right, very good.  All right.

4              MS. TAVENNER:  Then, that concludes the matter --

5              THE COURT:  That concludes our docket.  Is there any

6    other matter that's not on the docket that we need to take up

7    in the Circuit City matter today?

8              MS. TAVENNER:  Not today, Your Honor, thank you.

9              THE COURT:  Okay, thank you very much.  Thank you,

10   Mr. Caine.

11             MR. CAINE:  Thank you, Your Honor.

12                       * * * * *

13                   **C E R T I F I C A T I O N**

14             I, STEPHANIE SCHMITTER, court approved transcriber,

15   certify that the foregoing is a correct transcript from the

16   official electronic sound recording of the proceedings in the

17   above-entitled matter, and to the best of my ability.

18

19   /s/ Stephanie Schmitter

20   STEPHANIE SCHMITTER

21   J&J COURT TRANSCRIBERS, INC.          DATE:  July 8, 2013

22

23

24

25