**KUTAK ROCK LLP**
Michael A. Condyles (VSB No. 27807)
Jeremy S. Williams (VSB No. 77469)
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700
 *Counsel for Chase Bank USA,*
*National Association*

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

CIRCUIT CITY STORES, INC., et al.,

Case No. 08-35653-KRH
Chapter 11

Debtors.

_____

Alfred H. Siegel, Trustee,

Objector,

v.

Contested Matter

Chase Bank USA, National Association
(Claim No. 14787),

Claimant.

_____

## CHASE BANK USA, NATIONAL ASSOCIATION'S
## MOTION FOR PROTECTIVE ORDER AND TO DIRECT THE APPLICATION OF
## F.R.C.P. 12(c) TO THIS CONTESTED MATTER AND MEMORANDUM IN SUPPORT
## THEREOF

Chase Bank USA, National Association ("Chase"), by counsel, pursuant to Rule 26(c)

of the Federal Rules of Civil Procedure (the "Rules") as made applicable to this proceeding by

Rule 7026 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby

moves for the entry of a protective order (the "Motion") temporarily suspending discovery in this

matter and directing the application of Rule 12(c) to this contested matter.  In support of its

Motion and memorandum, Chase states the following:

4852-2853-3014.5                                    -1-

## BACKGROUND

### Claim and Objection

1.  On January 16, 2004, Bank One, Delaware, N.A., now known and referred to herein as Chase[1] and Circuit City Stores, Inc. (the "Circuit City") entered into a Consumer Credit Card Program Agreement ("Program Agreement").  In connection with the Program Agreement, Chase purchased and then operated Circuit City's existing credit card program, which involved, among other things, the issuance of private label credit cards and co-branded credit cards to individual cardholders and the extension of credit by Chase to these cardholders.  The effective date of the Program Agreement was in May 2004 and extended through May 2012, but performance by Circuit City was cut short by more than three years as a result of Circuit City's bankruptcy filing and subsequent rejection of the Program Agreement.

2.  On November 10, 2008, Circuit City and its related entities (the "Debtors") filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On February 27, 2009, the Court entered a *Stipulation, Agreement and Order for the Rejection and Termination of Consumer Credit Card Agreement Program* [Docket No. 2338], which provided that the Program Agreement was rejected as of February 28, 2009.

3.  Chase incurred substantial damages as a result of the rejection of the Program Agreement and on January 7, 2010, Chase filed an amended proof of claim ("Claim No. 14787") asserting a general unsecured claim in the amount of $33,789,082.00.  Claim No. 14787 is comprised of the following categories and amounts of damages:

---

[1]  In October 2004, the institution known as Chase Manhattan Bank, USA merged with Bank One, Delaware, and subsequently changed its name to Chase Bank USA, National Association.

4852-2853-3014.5

Personnel costs related to closing of Kennesaw and Richmond sites:  $8,601,082[2]
IT/facility costs related to closing of Kennesaw and Richmond sites:  $1,187,044[3]
Present value of costs of product trade:  $509,386
Unamortized costs related to platform conversion:  $20,846,025
Unamortized bounties  $2,114,886
Surplus plastic and other supplies  $292,671
Attorneys' Fees (Weil, Gotshal & Manges LLP):  $167,212
      (Kutak Rock LLP):  $70,776

4.      On April 24, 2012, Alfred H. Siegel, the duly appointed trustee for The Circuit City Stores, Inc. Liquidating Trust (the "Trustee") filed his *Objection of the Circuit City Stores, Inc. Liquidating Trust to Claim No. 14787* [Docket No. 11868] seeking to disallow Claim No. 14787 in its entirety and for all purposes (the "Claim Objection").   In the Claim Objection the Trustee, among other arguments, sets forth a single dispositive legal issue which directly impacts whether this matter can proceed to trial.

5.      In the Claim Objection and since its filing, the Trustee has disputed the allowance of Claim No. 14787 on the basis that Section 11.26 of the Program Agreement precludes any recovery by Chase.   Section 11.26 of the Program Agreements provides as follows (the "Exculpatory Clause"):

> in the absence of gross negligence, bad faith, willful misconduct, or **intentional breach** or repudiation of a party's obligations, [Chase] and [Circuit City] shall not be liable to the other under or in connection with this Agreement or the Program for any indirect, consequential or other damages relating to prospective profits, income, anticipated sales or investments, or goodwill, or for any punitive or exemplary damages.

Program Agreement § 11.26 (emphasis added).

6.      Specifically, the Trustee has asserted that Section 11.26 of the Program Agreement precludes any recovery of consequential and indirect damages unless there is an intentional breach.

---

[2] Upon further analysis, Chase has determined the amount associated with this category of damages equals $7,730,449.
[3] Upon further analysis, Chase has determined the amount associated with this category of damages equals $851,335, thereby making the total sought for the Richmond and Kennesaw closure expenses identified in categories 1 and 2 herein equal $8,581,784.

3

The Trustee asserts both that Claim No. 14787 is comprised solely of consequential and indirect damages and that there was no intentional breach of the Program Agreement. As a result, the Trustee contends that, as a result, Chase is not entitled to any recovery in connection with Claim No. 14787.

7.     On August 20, 2013, Chase filed its Response of Chase Bank USA, National Association to the Objection of the Circuit City Stores, Inc. Liquidating Trust to Claim No. 14787 [Docket No. 13090] (the "Chase Response").

8.     In connection with the Chase Response, Chase asserts that the Exculpatory Clause does not apply because (i) Circuit City intentionally breached the Program Agreement, (ii) the damages sought by Chase, if determined to be consequential, are not consequential damages precluded by the Exculpatory Clause, and (iii) the damages sought by Chase are direct, not consequential. Each of these legal issues - which relate to whether the Exculpatory Clause bars Chase's recovery of damages - can be determined by the Court based on the pleadings, without the need for discovery:

(i) The Exculpatory Clause does not apply if there is, among other things, an "intentional breach" of the Program Agreement. As a matter of law, the rejection of the Program Agreement by Circuit City constitutes an "intentional breach" of the Program Agreement, so the Exculpatory Clause does not apply.

(ii) If it is determined that Circuit City did not intentionally breach the Program Agreement, the plain language of the Exculpatory Clause does not preclude all consequential damages; it only precludes "consequential . . . damages relating to prospective profits, income, anticipated sales or investments, or goodwill." Chase is not seeking consequential damages relating to prospective profits, income, anticipated sales

4

or investments, or goodwill, so the Exculpatory Clause does not apply.

(iii) If it is determined that (a) Circuit City did not intentionally breach the Program Agreement and (b) the Exculpatory Clause precludes all consequential damages, the Exculpatory Clause still does not apply because Chase is seeking direct damages, not consequential damages.

9.    Although Chase vigorously disputes that the Exculpatory Clause applies to or bars recovery of the damages claimed by Chase, if Chase is precluded from recovering the damages it seeks, then there is no need for the pursuit of any discovery in this case.  In such instance, the extraordinary expense required to conduct discovery and the potential need for judicial resources to determine various discovery disputes related to the overly broad and oppressive nature of the Discovery Requests (as defined herein) will have been expended unnecessarily.  Accordingly, Chase seeks a temporary suspension of discovery pending a determination based on the pleadings whether the legal issues raised by the Trustee bar any recovery by Chase.

### Discovery

10.    On September 12, 2013, the Court entered a Pretrial Order [Docket No. 13107] scheduling a trial on the Claim Objection for five days starting on August 18, 2014.[4]

11.    On October 22, 2013, Chase was served with the *Liquidating Trustee's First Set of Requests for Inspection and Production of Documents to Chase Bank USA, National Association Re: Claim #14787* (the "Discovery Requests"), a copy of which are attached hereto as **Exhibit A.** In response to the Discovery Requests, on November 5, 2013, Chase served on the Trustee *Chase Bank USA, National Association's Objections to Trustee's First Set of Requests for Inspection and*

---

[4] Prior to setting this matter for trial, Chase and the Trustee conducted a mediation in an effort to resolve the Claim Objection.  Following the initial mediation, in response to various requests made by the Trustee, Chase provided numerous documents and other information in support of its claim.  Despite the efforts of the parties to resolve the dispute, the mediation was unsuccessful.

5

4852-2853-3014.5

*Production of Documents* (the "<u>Discovery Objection</u>").

12.     As previously noted herein and as set forth in the Discovery Objection, the Discovery Requests are oppressive in their scope and nature, seeking irrelevant information not calculated to lead to the discovery of admissible evidence.

13.     The effect of the Discovery Requests is to impose significant costs on Chase and a major diversion of its resources in an effort to uncover documents that are often irrelevant to the determination of any objections raised by the Trustee in the Claim Objection.

14.     The burden placed on Chase by the discovery is exacerbated by the fact that hundreds of employees were involved in the matters for which discovery was sought and almost all of the documents will have to be obtained through retrieval of archived electronic files.

15.     Even assuming the scope of the discovery is narrowed to address more appropriately the issues in the case, the cost of retrieving information that may be stored in electronic archived files will still be exorbitant.  The Court's ruling on very narrowly defined legal issues, however, could make the incurrence of such costs moot.

16.     In order to determine whether the legal issues raised by the Trustee bar any recovery by Chase, Chase will file a motion seeking a ruling on the pleadings addressing these issues ("<u>Dispositive Motion</u>").   In connection therewith, Chase seeks as part of this Motion: (i) an expeditious briefing and hearing schedule on the Dispositive Motion to prevent any prejudice to either party in the event discovery is required to proceed; and (ii) a directive that Rule 12(c), as incorporated by Bankruptcy Rule 7012, shall apply with this contested matter pursuant to Bankruptcy Rule 9014.  *See In re American Continental Corporation*, 119 B.R. 216 (D. Ariz. 1990) (applying Rule 12(c) to the determination of legal issues in the context of an objection to a proof of claim); *In re Eagle-Picher Industries, Inc.*, 158 B.R. 713 (Bankr. S.D. Ohio 1993) (same).

4852-2853-3014.5

17.    A determination of the Dispositive Motion will resolve substantive issues that may significantly limit the issues in dispute in this contested matter and the scope of discovery in this case.

## ARGUMENT

### Motion for Protective Order

18.    Chase is entitled to a protective stay suspending discovery pursuant to Rule 26(c), which provides that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery; . . . Fed. R. Civ. P. 26(c).

19.    Rule 26 and "the power inherent in every court to control the disposition of the causes on its docket" grant courts the discretion to enter orders staying discovery. *Estate of Booker v. City & Cnty. of Denver,* 2012 WL 2360905, *3 (D. Colo. June 20, 2012) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936) (citing *Kansas City S. Ry. Co. v. United States,* 282 U.S. 760, 763 (1931))).   In appropriate instances, such discretion, in light of a dispositive motion, should be exercised and discovery stayed. *See, e.g., Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 382 (5th Cir. 1987) (finding that lower court appropriately suspended discovery pending hearing on motion for summary judgment); *Harper v. Receivables Performance Management, LLC*, 2012 WL 5936544, *1 (D. Col. 2012) (citing *Nankivil v. Lockheed Martin Corp.*, 216 F.R. D. 689, 692 (M.D. Fla. 2003)).

20.    Compelling Chase to respond to the Discovery Requests pending a ruling on the Dispositive Motion would serve no benefit in this case and would only prejudice Chase.   Courts

4852-2853-3014.5

examining motions for a stay of discovery under Rule 26(c) have weighed the following interests: (i) the plaintiff's interest in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (ii) the burden on the defendant; (iii) the convenience to the court; (iv) the interests of persons not parties to the civil litigation; and (iv) the public interest. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, *2 (D. Col. 2006) (citing *FDIC v. Renda*, 1987 WL 348635, *2 (D. Kan. 1987)). Based on the application of these factors to the case before the Court, Chase is entitled to a protective order temporarily suspending discovery pending the outcome of the Dispositive Motion.

**The Trustee is Not Harmed by a Stay of Discovery**

21.     Chase is entitled to a stay suspending discovery as the Trustee is not harmed by such stay. The Trial is not scheduled to occur until the week of August 18, 2014, approximately nine months from now. Furthermore, the discovery deadline pursuant to this Court's Pretrial Order [Docket No. 13107] is 21 days prior to the trial date, approximately eight months from now. There is no threat that the parties will not have sufficient time to complete discovery following a ruling on the Dispositive Motion.

22.     In addition, discovery would not aid the Trustee in resolving the issues to be determined in the Dispositive Motion. The Dispositive Motion will seek determination of narrowly defined legal issues raised by the Trustee. Proceeding with discovery would serve no purpose in resolving these issues.

**Proceeding with Discovery Would Be Burdensome and Wasteful**

23.     For Chase, the cost of responding to the Discovery Requests is substantial and the cost of retrieving archived electronic data alone will could be $200,000 or more. The Trustee is seeking information which could have originated from hundreds of employees. When the number of

8

individuals involved is multiplied by the number of communications sent over the period for which discovery is sought, the number of potentially responsive documents regarding communications alone is staggering.

**Convenience to the Court**

24.     Granting the Motion preserves the Court's resources by allowing for potential resolution of this case significantly in advance of the trial date. Currently, the Discovery Objection is outstanding and such objection will need to be resolved prior to moving forward with discovery. By granting the relief requested and entering a protective order, it may be unnecessary for the Court to decide matters raised in the Discovery Objection.

**Forcing Discovery Is Not of Interest to Third Parties or the Public**

25.     The final factor examined by courts in determining whether a protective order should otherwise be granted concerns the interests of third parties or the public. This case, however, does not lend itself to such interests. Claim No. 14787 revolves solely around the contractual damages incurred by Chase as a result of the Debtors' rejection of the Program Agreement. Whether Chase responds to the Discovery Requests before or after the ruling on the Dispositive Motion does not impact any third party and is not an issue of interest to the general public.

## CONCLUSION

26.     Under any applicable standard invoked by this Court, including the factors analyzed above under *String Cheese Incident, LLC v. Stylus Shows, Inc.*, a protective order suspending discovery is appropriate. A protective order and consequent determination of the legal issues that would be set forth in the Dispositive Motion does not harm the Trustee in light of the scheduled trial date and discovery deadline. On the other hand, the lack of such an order and determination of such legal issues will cause Chase to incur significant costs without even knowing whether it maintains a

viable claim for damages in this case. Accordingly, a balancing of the equities in this instance heavily weighs in favor of granting the Motion.

WHEREFORE, Chases respectfully requests that this Court: (i) enter a protective order under Rule 26(c) staying all discovery in this proceeding; (ii) provide for an expeditious briefing and hearing schedule on the Dispositive Motion; (iii) direct that Rule 12(c), as incorporated by Bankruptcy Rule 7012, shall apply to this contested matter pursuant to Bankruptcy Rule 9014; and (iv) grant any further relief this Court deems appropriate.

Dated:  November 21, 2013                      Respectfully submitted,


By: /s/ Michael A. Condyles
Michael A. Condyles, Esq. (Va. Bar No. 27807)
Jeremy S. Williams, Esq. (Va. Bar No. 77469)
KUTAK ROCK, LLP
1111 East Main Street, Suite 800
Richmond, Virginia  23219
(804) 644-1700

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer, Esq.
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Chase Bank USA, National Association*

## CERTIFICATION OF GOOD FAITH

I, Michael A. Condyles, counsel for Chase Bank USA, National Association, certify in good faith and pursuant to Rule 26(c) that I conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

By: /s/ Michael A. Condyles _____
Counsel

4852-2853-3014.5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 21, 2013, a true and exact copy of the foregoing was served via CM/ECF or first class mail, postage prepaid, as follows:

Jeremy V. Richards, Esq.
Ellen M. Bender, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, VA 23219

<u>/s/  Michael A. Condyles</u>
Counsel

4852-2853-3014.5

Jeremy V. Richards, Esq.
(admitted *pro hac vice*)
Ellen M. Bender, Esq.
(admitted *pro hac vice*)
Shirley S. Cho, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4003
Telephone: (310) 277-6910
Telecopy:   (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:   (804) 783-0178

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 08-35653 (KRH) |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| Alfred H. Siegel, Trustee, | ) | |
| | ) | |
| Objector, | ) | |
| | ) | |
| v. | ) | |
| | ) | Contested Matter |
| Chase Bank USA, National Association | ) | |
| (Claim No. 14787), | ) | |
| | ) | |
| Claimant. | ) | |
| _____ | ) | |

**LIQUIDATING TRUSTEE'S FIRST SET OF REQUESTS FOR
INSPECTION AND PRODUCTION OF DOCUMENTS TO CHASE BANK
USA, NATIONAL ASSOCIATION RE: CLAIM #14787**

Plaintiff, The Circuit City Stores, Inc. Liquidating Trust (the "Trust"), established

pursuant to the *Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its*

*Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding*

DOCS_LA:271275.1 12304/003



*General Unsecured Claims* (the "Plan"), through Alfred H. Siegel, the duly appointed trustee of

the Trust (the "Trustee"), pursuant to Bankruptcy Rule 7034 and Federal Rule of Civil Procedure

34, hereby requests that Chase Bank USA, National Association (Claim No. 14787) ("Chase

Bank" or "Claimant") produce for inspection the documents and things set forth below.  Unless

otherwise agreed to by counsel for Trustee and Claimant, the production and inspection shall

occur at the offices of Pachulski Stang Ziehl & Jones LLP, located at 10100 Santa Monica Blvd.,

13th Floor, Los Angeles, California (Attn: Jeremy V. Richards, Esq.), on November 22, 2013 at

10:00 a.m..  As used herein, the following terms shall have these meanings:

### DEFINITIONS

1.      "CLAIMANT", "YOU" and "YOUR" shall mean Chase Bank, its

respective current and former parents, subsidiaries, other affiliates, partners, officers, directors,

employees, representatives, agents, and any other person acting, or purporting to act, on its

behalf, and any predecessor or successor of the foregoing.

2.      "COMMUNICATIONS" shall mean and include, without limitation, any

documents, telephone conversations, discussions, facsimiles, e-mails, meetings, memorandum

and any other medium through which any information is conveyed.

3.      "DOCUMENTS" shall mean and include, without limitation, any written,

recorded, or graphic matter, whether produced, reproduced or stored on paper, cards, tape, film,

electronic facsimile, computer storage devices, disks, or other media or data compilation from

which information can be obtained, including originals, copies (with or without notes or changes

thereon) and drafts, including, without limitation, papers, books, letters, tangible things,

correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers,

transcripts, minutes, reports, recordings of telephone conversations, interviews, conferences or

other meetings, affidavits, statements, summaries, reports, studies, analyses, evaluations,

appraisals, estimates, projections, charts, schedules, work sheets, proposals, contracts,

agreements, statistical records, desk calendars, appointment books, diaries, lists, tabulations,

sound recordings, computer print-outs, data processing output and input, microfilms,

photographs or negatives thereof, all other records kept by electronic, photographic or

mechanical means, and things similar to any of the foregoing however denominated and any or

all matter or material attached or affixed to any of the above.  Any copy of excerpt of a document

which bears any notes, additions, inserts or other markings of any kind is to be considered a

separate "document" for purposes of responding hereto.

      4.    "CCS" shall mean Circuit City Stores, Inc. and all other debtors in the

above-captioned consolidated cases, their affiliates, divisions or departments, and all of their

officers, directors, agents, servants, employees, contractors and anyone else acting on their

behalf or otherwise subject to their control.

      5.    "CONCERNING" shall mean relating to, constituting, concerning,

referring to, regarding, bearing upon, supporting or negating, summarizing, pertaining to,

alluding to, commenting upon, touching upon, recording, consisting of, affecting, reflecting,

discussing, describing, evidencing, mentioning or having any logical or factual connection with

the matter in question.

6.    "CLAIM" shall refer to CLAIMANT'S Claim No. 14787.

"OBJECTION" shall refer to the Trustee's objection to the CLAIM. The "CHASE RESPONSE"

refers to the response filed by CLAIMANT to the OBJECTION.

7.    "PERSON" is defined as all natural individuals, corporations,

partnerships, or other business associations, and all legal entities.

8.    "IDENTIFY" when used in reference to a document shall mean to state its

(1) author(s), recipient(s) and addressee(s); (2) date; (3) general subject matter; (4) current or last

known location; and (5) current or last known custodian.

9.    "PROGRAM AGREEMENT" means that certain Consumer Credit Card

Program Agreement entered into in January 2004, together with all amendments thereto; unless

otherwise specifically referenced as the "ORIGINAL PROGRAM AGREEMENT" entered into

in January 2004, the "FIRST AMENDMENT TO THE PROGRAM AGREEMENT" dated May

25, 2004, the "SECOND AMENDMENT TO PROGRAM AGREEMENT" dated May 25, 2004,

the "THIRD AMENDMENT TO PROGRAM AGREEMENT" dated October 24, 2007, or the

"FOURTH AMENDMENT TO PROGRAM AGREEMENT" dated August 26, 2008.

10.    The "SALE AGREEMENT" means that certain purchase and sale

agreement entered into by and among CC, First North American National Bank ("FNANB"), a

wholly owned subsidiary of CCS , and Bank One Delaware, N.A. ('BANK ONE"), now known

as Chase Bank USA, NA.

11.    The "KENNESAW SUBLEASE" means that certain sublease between

CCS and BANK ONE attached to the SALE AGREEMENT as Exhibit "L".

12.     The "RICHMOND SUBLEASE" means that certain sublease between CCS and BANK ONE attached to the SALE AGREEMENT as Exhibit "M" thereto.

13.     The "CREDIT PLATFORM CONVERSION" means and refers to the conversion of CCS's credit platform used for its co-branded credit cards with CLAIMANT which commenced in or about May 2007, and is referenced in the recitals to the THIRD AMENDMENT TO PROGRAM AGREEMENT.

14.     "PETITION DATE" refers to the date that CLAIMANT's chapter 11 bankruptcy petition was filed; i.e., November 10, 2008.

15.     "THE CASE" refers to CLAIMANT'S chapter 11 bankruptcy case.  "THE BANKRUPTCY COURT" refers to the bankruptcy court assigned to the CASE.

16.     "STIPULATION RE REJECTION / TERMINATION" means that certain Stipulation, Agreement and Order for Rejection and Termination of Consumer Credit Card Program Agreement approved by the BANKRUPTCY COURT on February 26, 2009, docket #2338 in this CASE.

## <u>INSTRUCTIONS</u>

1.     Each document is to be produced with all non-identical copies of drafts thereof, in its entirety, without abbreviations or redactions.

2.     You are requested to produce all documents responsive to these requests within your possession, custody and/or control.

3.      You are requested to produce the documents as they are kept in the usual course of business, or to organize and label them to correspond with each category in these requests.

4.      If any responsive document is to be withheld or redacted under a claim of attorney-client privilege, and/or work product immunity, each such document must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged documents called for by these requests, and which shall include: (a) the document number; (b) the document date; (c) the document type; (d) the author(s) of the document; (e) the recipient(s) of the document; (f) a specific description of the subject matter of the document; and (g) a designation of the privilege claimed.

5.      This is a continuing request for production and you are requested to promptly provide supplemental responses if you create, receive, identify or locate any additional documents responsive to these requests.

6.      In each instance where the responding party denies having or being able to obtain materials responsive to this request for production which said answering party admits exists or existed, the answering party is to:

(a)      In the case of documents in existence, identify the documents by date, type (e.g., letter, memorandum, chart, etc.) and content and identify the last known person, persons or entity in control of said documents by specifying the name, address and telephone number of the last person, persons or entity who has possession of such documents.

(b)      In the case of documents which the answering party contends are

no longer in existence, the answering party is to identify the document as in subparagraph (a) above and set forth the last known date on which the documents existed, the person, persons or entity in control of the documents at such time, the reason for destruction of the documents, and the manner of destruction of the documents.

       7.     Unless otherwise specifically set forth herein, this document request calls for the production of all Documents in Your possession, custody, or control that were authored, compiled, generated, possessed, prepared, read, received, recorded, referred to, reviewed, sent to or by, transmitted, utilized, or written by or on behalf of You, in the period **commencing with January 1, 2003 and continuing through the present date.**

## REQUESTS

       1.     All DOCUMENTS CONCERNING COMMUNICATIONS between YOU and CCS regarding the PROGRAM AGREEMENT.

       2.     All draft DOCUMENTS, including redlines and markups, of the PROGRAM AGREEMENT; including, but not limited to, drafts, redlines, and mark-ups of the FIRST AMENDMENT TO PROGRAM AGREEMENT, the SECOND AMENDMENT TO PROGRAM AGREEMENT, the THIRD AMENDMENT TO PROGRAM AGREEMENT, and the FOURTH AMENDMENT TO PROGRAM AGREEMENT.

       3.     All DOCUMENTS CONCERNING COMMUNICATIONS between YOU and CCS regarding the KENNESAW SUBLEASE.

       4.     All DOCUMENTS CONCERNING COMMUNICATIONS between YOU and CCS regarding the RICHMOND SUBLEASE.

5.    All DOCUMENTS CONCERNING the CREDIT PLATFORM CONVERSION.

6.    All DOCUMENTS which YOU contend contain any contractual obligations CONCERNING the CREDIT PLATFORM CONVERSION.

7.    All COMMUNICATIONS between YOU and CCS CONCERNING the CREDIT PLATFORM CONVERSION; including, without limitation, any and all presentations, instructions, power points, training and/or training documents provided by YOU to CCS in respect to the CREDIT PLATFORM CONVERSION.

8.    All back-up DOCUMENTS CONCERNING expenditures and/or costs incurred by YOU in connection with the CREDIT PLATFORM CONVERSION.

9.    All DOCUMENTS CONCERNING projections regarding savings or potential savings to YOU as a result of the CREDIT PLATFORM CONVERSION.

10.    All DOCUMENTS CONCERNING projections regarding savings or potential savings to CCS as a result of the CREDIT PLATFORM CONVERSION.

11.    All DOCUMENTS CONCERNING the CCS support payment made in connection with the CREDIT PLATFORM CONVERSION; including, without limitation, DOCUMENTS CONCERNING the reason or reasons such support payment was to be made to CCS; how the amount of such support payment was calculated; and any DOCUMENTS CONCERNING negotiations with CCS CONCERNING the same.

12.    All DOCUMENTS CONCERNING YOUR decision as to how to amortize the costs of the CREDIT PLATFORM CONVERSION.

13.    All DOCUMENTS CONCERNING any platform conversion or other technological support provided by YOU to other private label and/or co-branded credit card programs identified as "Competition Programs" in Exhibit 3.2(a) of the PROGRAM AGREEMENT; including, without limitation, Best Buy, Sears, Tweeter, Wal-Mart, and/or Comp USA / Good Guys (hereafter, "Competition Programs").

14.    All contractual documents relating to the private label and/or co-branded credit card programs between YOU and the Competition Programs.

15.    All DOCUMENTS and COMMUNICATIONS concerning YOUR calculations of Net Yield under the PROGRAM AGREEMENT from inception of the PROGRAM AGREEMENT to present.

16.    All financial statements, spreadsheets, reports, summaries, or other DOCUMENTS CONCERNING total revenues received by YOU from the private label and/or co-branded CCS credit card accounts generated as a result of the PROGRAM AGREEMENT, from inception to present.  If no such DOCUMENTS exist, then all backup DOCUMENTS from which such revenues can be calculated.

17.    All financial statements, spreadsheets, reports, summaries, or other DOCUMENTS which refer to, reflect, or otherwise provide a breakdown of how YOUR total revenues received from the private label and/or co-branded CCS credit accounts generated as a result of the PROGRAM AGREEMENT were calculated.

18.    All financial statements, spreadsheets, reports, summaries, or other DOCUMENTS CONCERNING net profits received by YOU from the private label and/or co-

branded CCS credit card accounts generated as a result of the PROGRAM AGREEMENT, from

inception to present.  If no such DOCUMENTS exist, then all backup DOCUMENTS from

which such profits can be calculated.

19.    All spreadsheets, reports, summaries, or other DOCUMENTS

CONCERNING a breakdown of how YOUR net profits under the PROGRAM AGREEMENT

were calculated.

20.    All spreadsheets, reports, summaries, or other DOCUMENTS

CONCERNING  the credit card customers who converted their CCS private label and/or co-

branded credit cards to another credit card program offered by YOU since the PETITION

DATE.

21.    Any and all internal and external audit reports of CLAIMANT which refer

to, directly or indirectly, the PROGRAM AGREEMENT or any revenues generated thereunder.

22.    Any and all internal and external audit reports of CLAIMANT which refer

to, directly or indirectly, the CREDIT PLATFORM CONVERSION.

23.    Any and all minutes and meeting notes of CLAIMANTS' Board or Boards

of Directors, or any subcommittee or special committee appointed by such Board or Boards, or

any formal or informal management or business unit committee, subcommittee, special

committee, or working group, which refer to, directly or indirectly, the PROGRAM

AGREEMENT, the CREDIT PLATFORM CONVERSION, the KENNESAW LEASE, the

RICHMOND LEASE, and / or the CASE.

24.    Any and all reports prepared for CLAIMANTS' Board or Boards of Directors, or any subcommittee or special committee appointed by such Board or Boards, CONCERNING the PROGRAM AGREEMENT, the CREDIT PLATFORM CONVERSION, the KENNESAW LEASE, and/or the RICHMOND LEASE.

25.    Any and all reports prepared for CLAIMANTS' Board or Boards of Directors, or any subcommittee or special committee appointed by such Board or Boards, CONCERNING the CLAIM, the OBJECTION, the CHASE RESPONSE, and/or the CASE.

26.    All DOCUMENTS (including specific backup documentation) CONCERNING the personnel costs claimed by YOU as damages due to closing of the KENNESAW LEASE site and RICHMOND LEASE site, as set forth in the CLAIM.

27.    All DOCUMENTS (including specific backup documentation) CONCERNING the IT / Facility costs claimed by YOU as damages due to closing of the KENNESAW LEASE site and RICHMOND LEASE site, as set forth in the CLAIM.

28.    All DOCUMENTS (including specific backup documentation) CONCERNING the present value of costs and product trade claimed by YOU as damages, as set forth in the CLAIM.

29.    All DOCUMENTS (including specific backup documentation) CONCERNING the unamortized costs related to the CREDIT PLATFORM CONVERSION claimed by YOU as damages, as set forth in the CLAIM.

30.    All DOCUMENTS (including specific backup documentation) CONCERNING the unamortized bounties claimed by YOU as damages, as set forth in the

CLAIM.  YOUR response to this request should include, without limitation, all supporting data

for the assumptions made by YOU in calculating YOUR alleged damages for unamortized

bounties; such as, the average life of a CCS credit account, average customer in-store purchasing

activity, average initial purchase, average subsequent aggregate spending by customer, reduction

in average spending activity due to the CCS liquidation, and any and all other assumptions relied

upon by you in calculating such damages.

      31.     All DOCUMENTS CONCERNING the attorneys' fees claimed by YOU

as damages; including, without limitation, attorney billing statements.

      32.     All DOCUMENTS CONCERNING any and all steps taken by YOU to

mitigate any of the damages set forth in your CLAIM.

      33.     All DOCUMENTS, including without limitation, reports and opinions,

issued by and/or relied upon by any person retained by YOU, or who will otherwise serve as an

expert in this action.

      34.     All DOCUMENTS YOU intend to rely on at trial and/or in connection

with any dispositive motions.

      35.     All COMMUNICATIONS by and among YOUR officers, directors,

employees, agents and/or representatives, and/or any other PERSON, concerning CCS' financial

condition.

      36.     All DOCUMENTS CONCERNING the STIPULATION RE REJECTION

/ TERMINATION.

                

Dated: Los Angeles, California
       October 22, 2013

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Jeremy V. Richards
Jeremy V. Richards, Esq. (admitted *pro hac vice*)
Ellen M. Bender, Esq. (admitted *pro hac vice*)
Shirley S. Cho, Esq. (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone:   310-277-6910
Facsimile:    310-201-0760
Email: jrichards@pszjlaw.com
       ebender@pszjlaw.com
       scho@pszjlaw.com

-and-

TAVENNER & BERAN, P.L.C.
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone:   804-783-8300
Facsimile:    804-783-0178
Email: ltavenner@tb-lawfirm.com
      pberan@tb-lawfirm.com

*Counsel for Alfred H. Siegel, as Trustee of the Circuit City
Stores, Inc. Liquidating Trust*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on the 22nd day of October, 2013, a true and correct copy of the foregoing **LIQUIDATING TRUSTEE'S FIRST SET OF REQUESTS FOR INSPECTION AND PRODUCTION OF DOCUMENTS TO CHASE BANK USA, NATIONAL ASSOCIATION RE: CLAIM #14787** was served by overnight delivery (Federal Express) and email on the following:

Attys for *Chase Bank USA, National Association*

Kutak Rock LLP
Michael A. Condyles
1111 East Main Street, Suite 800
Richmond, VA 23219
Michael.condyles@kutakrock.com

Weil Gotshal & Manges LLP
Gary T. Holtzer
767 Fifth Avenue
New York, NY 10153-00119
Gary.holtzer@weil.com


/s/ *Jeremy V. Richards*
Counsel