UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                    .      Case No. 08-35653 (KRH)
                          .
                          .
                          .
CIRCUIT CITY STORES,      .      701 East Broad Street
INC.,                     .      Richmond, VA 23219
                          .
                          .
          Debtor.         .      December 4, 2013
. . . . . . . . . . . . ..       3:09 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:           Tavenner & Beran, LLC
                          By:  LYNN L. TAVENNER, ESQ.
                          20 North 8th Street, 2nd Floor
                          Richmond, VA 23219

For Chase Bank USA,       Kutak Rock, LLP
National Association:     By:  MICHAEL A. CONDYLES, ESQ.
                          1111 East Main Street, Ste. 800
                          Richmond, VA 23219

TELEPHONIC APPEARANCES:

For the Debtor:           Pachulski Stang Ziehl & Jones LLP
                          By:  ANDREW W. CAINE, ESQ.
                               JEREMY V. RICHARDS, ESQ.
                          10100 Santa Monica Boulevard
                          Los Angeles, CA 90067

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com
Website:  www.jjcourt.com

(609) 586-2311    Fax No. (609) 587-3599

1             COURT CLERK:  Items 85 and 86, Circuit City Stores,

2  Incorporated, motion to expedite hearing on motion for a

3  protective order.

4             THE COURT:  Good afternoon, Mr. Condyles.

5             MR. CONDYLES:  Good afternoon, Your Honor, Michael

6  Condyles here on behalf of Chase Bank USA, National

7  Association.

8             Your Honor, would you like me to address the

9  expedited hearing motion first?

10             THE COURT:  I think that would probably be best since

11  there is opposition that's been filed.

12             MR. CONDYLES:  Thank you, Your Honor.

13             THE COURT:  It would be hard to take them in inverse

14  order.

15             MR. CONDYLES:  Well, we could take them

16  simultaneously.  But, Your Honor, we have requested an

17  expedited hearing today in order to address the motion to stay

18  discovery and for authority to direct the use of Rule 12(c) of

19  the Federal Rules of Civil Procedure.  And the basis, Your

20  Honor, for requesting an expedited hearing is the avoidance of

21  any prejudice that would exist to either of the parties by

22  delaying a hearing which would be roughly a couple of weeks

23  until the next scheduled omnibus hearing in this case.

24             And the purpose there is that we cannot file the --

25  we don't have authority to file a Rule 12(c) judgment on the

1    pleadings without the application of Rule 12(c) being

2    authorized under Rule 9014.  So what we are seeking is the

3    authorization so that we can file as expeditiously as possible

4    that pleading, and get the pleading schedule moving as quickly

5    as possible in that regard and avoid the loss of two weeks for

6    the responses and everything else.

7            It would be our objective to have a hearing on the

8    entire motion for judgment on the pleadings in this year if,

9    you know, it's approved by the Court and convenient to opposing

10   counsel and so forth.  We're not looking to delay this case

11   even though there's almost nine months before the trial that's

12   scheduled in August.  We're trying to move as expeditiously as

13   possible.  So that's the purpose for this.

14           Now, there have been a number of comments in both

15   pleadings raised regarding the meet and confer standard and I

16   think that the whole argument that's been made in both

17   pleadings is reflective of a misstatement of the pleadings

18   themselves.  We're not looking to have a protective order with

19   regard to the objections that have been filed in this instance.

20   Instead we would be looking even if there weren't any

21   objections even if discovery wasn't onerous and burdensome as

22   we contend it is and there was the need to file objections we'd

23   be asking the Court for the same relief for stay of discovery

24   in order to still allow for a hearing on a motion for judgment

25   on the pleadings.

4

1          And the reason for that, Your Honor, and I'll go into

2   more detail about the extraordinary expense and costs related

3   to -- and use of resources related to any discovery even more

4   narrowly tailored and more reasonable requests as we plead in

5   our motion for the stay in the first instance there would still

6   be an enormous amount of expense and cost related to that.

7          So what the Trust has focused on and I think

8   misconstrued our pleadings as seeking to have a stay in order

9   to prevent the need to address their -- the objections and the

10  over -- what we contend are over zealous nature of the

11  discovery itself.  And that's not the case.  Again, we'd be

12  asking for that regardless of whether the discovery was

13  objectionable.  So we had sought a -- to get a compromise with

14  the Trust to address the matter on a consensual basis that we

15  had filed and is set regarding the motion to stay.

16         So as reflected in a letter that I had sent in

17  response to the November 19th letter that was sent requesting

18  to address the objections that the Trust sent I responded to

19  that letter stating -- reflecting the very fact that we had had

20  a meeting and that our meeting on November 4th was my

21  opportunity to request a consensual moving forward with this

22  proceeding.  They declined that.

23         They said we would only do it after the discovery was

24  responded to which defeats the whole purpose of the motion in

25  the first place, because conceivably the outcome of the matter

1  we are looking to have heard would either determine in total

2  the issue of liability in Wells' favor -- in Chase's favor, or

3  it would result in a complete denial of the claim.  And there's

4  some in betweens that could, you know, result in there as well.

5         But best case for us is there's an outcome and a

6  judgment determined on the pleadings that as a matter of law

7  Chase maintains liability on the claim.  And then there's only

8  a question of damages that need to be resolved as a part of the

9  ongoing litigation.  The worse case for us our claim's knocked

10  out in total and we go home and no discovery has to be heard at

11  all.  So as a result we are trying to move that process along

12  as quickly as possible.  We have met and conferred, and, Your

13  Honor, I've got a copy of my correspondence to opposing counsel

14  which I can hand up to the Court that addresses the -- their

15  letter as well as the opportunity to meet and confer that

16  occurred on November 4th.

17         So the assertion that there has been no -- that

18  procedurally this is incorrect is completely incorrect in

19  itself.  And everything has been done that is necessary to be

20  done to address this matter.  So the obligation to meet and

21  confer consists of is with regard to the protective order which

22  is before the Court, not the objections.  So on that basis

23  we've addressed the procedural merits and are, we contend, are

24  properly before this Court and appropriately we should proceed

25  on an expedited basis.

6

1          The other thing that is argued by the Trust in this

2    instance is that there is -- we delayed by not filing sooner

3    our motion for an expedited hearing and a motion for a

4    protective order .  The prior omnibus hearings before the

5    December 17th hearing were set on November 14th and October

6    24th.  Discovery was served on October 22nd.  So there's a 20

7    day notice requirement for any discovery -- for any pleading to

8    be noticed on any omnibus hearing date without leave of court

9    as we have sought here.  So as a result there is virtually no

10   way that we could get filed a pleading to meet either of those

11   omnibus hearing dates.

12          So regardless of whether or not we had a hearing date

13   today or a week from now the only other option would be to wait

14   until December 17th.  Curiously the Trust argues in their

15   motion -- in their response opposing the motion for a stay that

16   we're just seeking to delay the discovery in this case in the

17   case.  Well, it's interesting that they argue that at the same

18   time they're arguing that they are opposing an expedited

19   hearing.  I mean, they can't have it both ways.  And we're not

20   looking to delay, we're looking to move forward as

21   expeditiously as possible, because that's in all the parties'

22   interest to do so.

23          The other issue that they raised in connection with

24   the motion for opposing the expedited hearing is just that the

25   merits don't allow for the 12(c) action.  And I'll go into that

1  in more detail on the underlying pleading if we get to that.

2  But just in summary what Chase is looking for, as I mentioned

3  before, is a determination, a judgment on the pleadings and it

4  may actually end up being a partial judgment because we're

5  looking for a determination of liability or no liability.

6  We're saying there's liability on the underlying debt.  And

7  that turns on the application that exculpatory clause 1126(c).

8          And what we are asking for is a judgment determining

9  the existence of liability on our claim and that would leave

10  only the issue of consideration of damages as a part of the one

11  week trial we have scheduled in the middle of August.  So as a

12  result there's a basis to move forward.  We have standing, we

13  have -- we're using Rule 12(c) exactly as it's provided for,

14  and the only condition that's imposed is that it doesn't

15  interfere with a scheduled trial date which is more than far

16  enough out in August, almost nine months that it's not going to

17  interfere with that.  There'll be plenty of time to conduct

18  discovery.

19          So the application of Rule 12(c) is being complied

20  with just as it's contemplated by the Federal Rules and it has

21  no -- and it's appropriate in this instance.  So for those

22  reasons, Your Honor, I would ask that the Court support -- that

23  the Court grant the motion for an expedited hearing and let us

24  proceed with a determination of the underlying motion itself.

25          THE COURT:  All right.  Thank you.  Ms. Tavenner.

1          MS. TAVENNER:  Good afternoon.  For the record again

2   today, Your Honor, Lynn Tavenner of the law firm of Tavenner &

3   Beran.  We're local counsel to the Circuit City Stores

4   Liquidating Trust.  We very much appreciate Your Honor

5   approving co-counsel from the Pachulski firm appearing by

6   telephone today.  And on the phone at this time is Mr. Andy

7   Caine who you know well as well as Mr. Jeremy Richards who has

8   recently been approved to and admitted to appear pro hac vice.

9   And he is specifically working on the Chase matter and would

10  like to address the Court, Your Honor.

11          THE COURT:  All right.  You may proceed.  Do we have

12  Mr. Richards on the phone?

13          MR. RICHARDS:  My apologies, Your Honor.  My phone

14  was on mute.  My apologies.

15          THE COURT:  I hope I didn't miss the best part of

16  your argument.

17          MR. RICHARDS:  I think you probably did, Your Honor,

18  but I'm glad you said something otherwise I probably would have

19  gone on for the next ten minutes.

20          Your Honor, first and foremost I'd like to also

21  extend my thanks to the Court for allowing me to appear and

22  argue telephonically.  I am going to limit my comments at least

23  initially to the motion to expedite the hearing on the

24  underlying substantive motion.  And I will be brief, Your

25  Honor, because obviously as the Court is aware we have also

1  addressed the merits of the underlying motion itself.

2         But first with respect to the meet and confer

3  requirements obviously we disagree with the characterization of

4  Chase's counsel.  The only issues that are currently pending in

5  the case are the discovery requests that were served on behalf

6  of the liquidating trust on October 26th.  And the request to

7  stay this proceeding is clearly related to those discovery

8  requests.  If one looks at the relief sought in the motion for

9  stay itself it is clearly limited to simply a stay of

10 discovery.  It does not seek to stay anything else in this

11 contested matter for the obvious reason that Chase wishes to

12 proceed with its -- what I will address shortly as a

13 procedurally inappropriate motion for judgment on the

14 pleadings.  So to argue that somehow the request for a stay is

15 unrelated to the pending discovery and to therefore argue that

16 the meet and confer requirements not only of the local

17 bankruptcy rules, but also Federal Rules of Civil Procedure

18 26(c) are inapplicable is frankly an argument that is without

19 merit.

20        And as the Court is aware from the declaration that I

21 have filed my colleague Ellen Bender sent to Chase's counsel a

22 very extensive letter addressing the objections that were

23 raised to the pending discovery offering various compromises

24 and requesting that Chase's counsel meet and confer with us to

25 address the issues of alleged irrelevance, burdensome, and

1    impressive nature of the request, et cetera.  And rather than

2    call to discuss these pending matters we instead received the

3    motion to stay matters and also the motion to expedite a

4    hearing on the stay request which in and of itself violates

5    local Bankruptcy Rule 9013 in that there was no discussion with

6    us whatsoever as to the timing or scheduling of that motion.

7          For what it's worth, Your Honor, there is certainly

8    every desire on our part to move this matter forward.  And to

9    be honest it's my firm believe that had this motion for stay

10   not been filed the pending discovery issues could and should

11   have been resolved without the intervention of this Court.  I

12   will also add, Your Honor, although it's more germane to the

13   substantive motion that the issue of obtaining responses to our

14   pending discovery is not a light or insubstantial issue.  As we

15   have made clear both to Chase's counsel and I believe in our

16   pleadings as well we, too, wish to move forward with

17   dispositive motions in this case.

18         However, I believe that Mr. Condyles somewhat narrows

19   the issues that we believe are subject or may be subject to

20   some readjudication.  And the one issue which I think is

21   important to point out is that we dispute liability.  It is the

22   liquidating trust's contention that there was no breach of this

23   contract that would in fact implicate damages at all let alone

24   Section 1126 the damage limitation provision which would be the

25   subject of any motion for judgment on the pleadings brought by

1  Chase.

2         But furthermore, we believe that even if there was a

3  breach of this contract the consensual termination of it

4  pursuant to stipulation and court order essentially eviscerates

5  and eliminates any damage remedy that Chase would have.  So I

6  think it's very important for the Court to understand that in

7  the context of our contemplated motion for summary judgment the

8  issue of liability is first and foremost and would come before

9  any need for the Court to determine what may be the ambiguous

10 terms of Section 1126.

11         Having said that, Your Honor, and having said that we

12 are preparing to move forward with motions for summary judgment

13 as we indicated to Chase in our response to their request that

14 we stay proceedings and bring cross motions for summary

15 adjudication we did indicate that we needed to see responses to

16 the pending discovery request first.  And that issue remains

17 our position.  There are or may be potential ambiguities in the

18 key contracts which are the program agreement and the third

19 amendments to the program agreement and frankly we believe that

20 we are entitled to discovery on that and various other issues

21 before anyone moves for summary adjudication before this Court

22 let alone before we are required to do so.

23         So the issue of discovery is really what this hearing

24 is all about.  It is very important to us.  We are anxious to

25 move forward with our summary judgment motion.  We believe that

1  if we get responses to our discovery request we may be in a

2  position to do that without further discovery or hopefully with

3  minimal discovery and therefore the goal of expediting this

4  matter and limiting the costs and expense of litigation is not

5  one that is unique to Chase.  Obviously our client is a

6  fiduciary and has an obligation to limit the costs and expenses

7  of this case.

8          Your Honor, with respect to the -- and I'll be brief

9  with respect to the remainder of my comments, but this is

10 clearly a self-generated emergency and I think shows more in

11 the nature of delay than it does a desire to move this case

12 forward.  As the papers make clear our discovery request was

13 served on October 26th.  We were not approached about a

14 potential stay of these proceedings pending what I believe were

15 to be cross motions for summary adjudication.  We were not

16 approached by counsel for Chase until November 4th.  And we

17 promptly responded the very same day saying that we were

18 amendable to considering that, but that we wished to receive

19 discovery responses first.  Thereafter objections to our

20 pending discovery were timely served by Chase.

21         My colleague Ms. Bender sent a lengthy meet and

22 confer letter which I've already indicated was not a pro forma

23 letter.  It was many pages long and carefully considered and

24 thought out.  And instead two days later without any

25 consultation with us the motion for stay was filed, and that,

1 | Your Honor, I will point out was just four calendar days before

2 | discovery responses were due. So right now as we argue before

3 | the Court Chase is in default of its obligations to produce

4 | documents pursuant to their -- the pending discovery requests.

5 | The only other point that I will make briefly and

6 | otherwise I will reserve my arguments for the underlying

7 | substantive motion assuming we move forward with that, but as

8 | we did point out in our opposition to the motion to expedite

9 | even assuming that the Court applies Rule 12(c), and even

10 | assuming that Chase's motion for judgment on the pleadings is

11 | procedurally appropriate as we have pointed out it will not

12 | lead to a disposition of this case. At best I believe as Mr.

13 | Condyles conceded in his opening argument if Chase is

14 | successful all it will succeed in doing is resulting in a

15 | ruling that's Section 1126 which as I pointed out may be

16 | ambiguous in and of itself, but that's Section 1126 the damage

17 | limitation provision does not apply in this instance.

18 | However, even without that issue set aside as I've

19 | already indicated there are numerous liability issues that need

20 | to be resolved, there are issues regarding the effect of the

21 | consensual termination of the program agreement, and there are

22 | still all of the damage issues, the reliance damage issues to

23 | be determined. So in sum and substance, Your Honor, even if

24 | the Court did allow a motion for judgment on the pleadings to

25 | be filed and even if Chase was successful I would respectfully

1  submit that it would have a minuscule if indeed any impact on

2  the scope and the need for ongoing discovery in this matter.

3      So having said that, Your Honor, I will -- I'll rest

4  and reserve my additional arguments for the underlying motion.

5      THE COURT:  All right.  Thank you, Mr. Richardson.  I

6  do have a question for you before I hear back again from Mr.

7  Condyles.  And that has to do with the motion for the expedited

8  hearing specifically.  If I was to deny that motion as you are

9  requesting that I do how would you see this matter proceeding?

10     MR. RICHARDS:  Your Honor, to be honest, and I felt

11 uncomfortable interrupting the court proceeding particularly

12 when I had not yet been introduced to the Court, but to be

13 honest given the procedural status of where we are now the fact

14 that we have briefed the underlying motion and we are firmly of

15 the belief that the underlying motion is without merit, and

16 given that we are desirous of getting discovery quickly, and

17 that we are more than willing to discuss with Mr. Condyles a

18 narrowing and a limitation of the scope of discovery, and given

19 that we believe we have a meritorious motion for summary

20 judgment waiting in the wings on issues of liability,

21 causation, damage limitation, et cetera I think at this point

22 notwithstanding my lengthy argument I would just assume the

23 Court proceed and rule on the underlying motion, because in the

24 event that it is denied, as we indicate in our opposition to

25 that motion, we would like the Court to order Chase to comply

1    with its meet and confer obligations so that we may proceed

2    with discovery and we may proceed with our motion for summary

3    judgment.

4            THE COURT:  All right.  Thank you, Mr. Richards.

5            MR. RICHARDS:  I hope that addresses the Court's

6    question.

7            THE COURT:  It does.  It addresses it very

8    thoroughly.  So, Mr. Condyles, it looks like I won your motion

9    for you.  So let's proceed with the underlying motion.

10           MR. CONDYLES:  I will, Your Honor.  But I do think,

11   and I don't want to take victory out of the jaws of victory --

12           THE COURT:  You're just about to.

13           MR. CONDYLES:  -- but I think there are issues that

14   still go to the heart of this that I at least want to clear up

15   from the Court's perspective for the purpose of addressing what

16   has been alleged that Chase has acted improperly or in bad

17   faith.

18           THE COURT:  I didn't make any ruling that anybody's

19   acted improperly or in bad faith.  All I've said is let's

20   proceed, because I'm trying to figure out when I asked Mr.

21   Richards what is the procedure we should follow in this case

22   one way or the other and since we're here and the underlying

23   issue has been fully briefed why don't we address it.  And I

24   think that I heard him say that he thought that made good

25   sense.  And I think that's what you were asking me to do to

1  begin with.  So I was going to suggest let's proceed on the

2  underlying motion.

3        MR. CONDYLES:  And again, that's fine.  My only

4  statement would be for the record to make it clear that Chase

5  has fulfilled it's meet and confer obligations, and that Rule

6  26(c) has been met as has Local Rule 9013 in meeting and

7  conferring by asking them to consent to this request and their

8  denying it constitutes meeting and conferring.  But I'll move

9  forward.

10        THE COURT:  You still win.

11        MR. CONDYLES:  Thank you, Your Honor.

12        THE COURT:  Let's proceed with the underlying motion.

13        MR. CONDYLES:  So, Your Honor, in addressing the

14  underlying motion we have -- the relief being sought here is a

15  temporary stay for a very limited period of time to address a

16  pivotal issue in the case.  And that goes to the extent of the

17  liability that exists with respect to the underlying claim.

18  And it is not as narrow as just determining the application of

19  1126(c) as Mr. Richards suggests, but instead what the motion

20  that will be filed by Chase will address is the liability in

21  total.

22        And as I mentioned in my prior argument on the best

23  case scenario for Chase, Chase will have a determination on the

24  pleadings without having to go through summary judgment,

25  without having to go through discovery, and as it allowed by

1   Rule 12(c) in a determination of liability.  And that will be

2   based on the pleadings.  And that determination would be made

3   based on the pleadings that have been alleged.  The facts that

4   have been alleged and the law that's been alleged and the

5   defenses that have been alleged.  And if you listen to the

6   arguments of the Trust here they're raising issues that --

7   regarding whether there's a breach in causation, all types of

8   things that were not raised in connection with their objection.

9   Their objection was very limited.  They didn't object to the

10  category of the damages, they didn't object to -- what they did

11  object to was the application of 1120(c) and whether these were

12  consequential or direct damages.  And then they objected to the

13  actual damages and the appropriateness of the amounts of the

14  damages being claimed itself.  So it's being argued here is

15  much broader than what's been pled in the pleadings.

16  Nonetheless the pleading itself will address the scope and the

17  appropriateness of the 12(c) action.  But all I can assert to

18  you, Your Honor, is that the assertions that have been made by

19  the Trust previously and I expect will be made again that

20  they're entitled -- that you can't address all of the liability

21  issues is incorrect.  And it's not reflective of the pleadings

22  themselves.

23         In addition, the determination of the liability will

24  either result in half the case being resolved, or if we lose

25  the whole case being resolved.  So either way you have a very

18

1  efficient process for addressing a very large potential portion

2  of the case itself.  So the purpose of this pleading that we're

3  looking to file will have a significant benefit both to the

4  Court, to opposing counsel and to -- the opposing party as well

5  as to Chase itself, and will be very determinative.

6         Now, how do we get there, and what would be we

7  looking for?  We would be looking for the application and the

8  determination of liability is all intertwined with the

9  exculpatory clause and the different provisions that relate to

10 that.  And there are a couple different levels that you have to

11 address in getting there.

12        The first is 1126 provides is that for purposes of

13 what we're addressing whether it -- if there's an intentional

14 breach then you're not entitled to consequential damages and we

15 contend it means consequential damages just related to profits.

16 But that's an interpretation issue that's out there.  The Trust

17 has argues that you need discovery for that to make that

18 determination.  We contend you don't.  But that should be

19 decided in a 12(c) motion not here today on the application of

20 12(c) and a stay of discovery.  But really looking at the

21 language itself and the four corners of the document there's no

22 ambiguity, we contend, that exists there and therefore you

23 don't need to go outside.  But that ultimately is a ruling for

24 the Court to make.

25        So you've got then the question of is there an

1  intentional breach, and we contend, and the case law supports

2  us, that the law is clear that a rejection of an executory

3  contract constitutes a breach as allowed for in 365(g) as well

4  as an intentional breach.  Well, what we're hearing for the

5  first time in these pleadings and then today is that they're

6  even contending there's not a breach of the contract which is

7  specifically counter to 365(g) and is not something that, has

8  previously been asserted.  But, again, that's a legal issue

9  that can be addressed.  And whether it's an intentional breach

10 can just as readily be addressed as well.

11          If it's found that it is not -- that the rejection is

12 not an intentional breach there's still the question of whether

13 or not the damages are direct damages as we contend they are,

14 or whether or not the damages are consequential damages.  So

15 even if -- where we would -- where Chase would lose across the

16 board would be if the Court determined that the rejection of

17 the contract was not an intentional breach, the interpretation

18 of the language of 1126 does not apply just to profits, and

19 that the damages themselves, the categories of damages sought

20 which can be determined on their face as a matter of law

21 whether or not they are direct damages or consequential damages

22 whether that category of damages which the parties don't

23 dispute are consequential instead of direct.  And if they do --

24 if the Court ruled down the line on a 12(c) motion in the

25 Trust's favor in that regard then Chase goes home and is done.

1  And they don't have to go through discovery.  They don't have

2  to spent, you know, potentially hundreds of thousands of

3  dollars and enormous man hours that would go into retrieving

4  electronic documents for hundreds of employees for more than

5  ten years worth of time as sought, and the enormous cost and

6  man hours that would be involved in that would be alleviated.

7        If Chase is successful they would -- if they were --

8  if the Court were to find in its favor in any one of those

9  three areas then there would either be -- the damages would

10 either be direct damages or consequential damages, but

11 liability would be established either way.  And then the only

12 question would be what are the amount of damages that need to

13 be established?  And at that point it would appropriate to get

14 into the documents to review the documents for determination of

15 what are appropriate damages and everything else.  But all of

16 those issues can be addressed as a matter of law on the

17 pleadings based on what has been pled without any factual

18 disputes existing between the parties without the need for

19 summary judgment.

20        And I respectfully submit that the argument that

21 they're prepared to move forward with summary judgment and

22 therefore we should wait, incur all these costs for discovery

23 to allow for that and everything else, one, it's a red herring,

24 because that wasn't raised until we started to raise 12(c), but

25 two, that's not the reason for 12(c).  12(c) is to alleviate,

1  streamline the process and limit those type of expenses that

2  would otherwise be incurred.  And I would submit that that's

3  even more appropriate here where the enormous amount of costs

4  and effort and work that would go into responding even to the

5  narrowly tailored discovery response would be significant if it

6  wasn't necessary in the first place.

7        THE COURT:  Why do you think then that the rules of

8  bankruptcy procedure omit reference to Rule 12 in Rule 9014?

9        MR. CONDYLES:  Because, Your Honor, in your typical

10 proceeding the types of matters that Rule 12 -- you look at

11 Rule 12(b) and 12(b)(6) and all the different items that apply

12 there are more tailored towards specific adversary proceedings

13 and the types of pleadings that relate to that.  But if you

14 look at the application at Rule 12(c) the bankruptcy courts

15 very generously apply that rule and it's particularly very

16 generously applied in the context of objections to claims.  And

17 we sited a couple of those cases in connection with our papers

18 here today.

19       So their by no means having excluded it takes it out

20 of the tool box of usage in connection with the appropriate

21 application which I contend is very much tailored to the exact

22 situation we've got here where we got a one week trial that's

23 scheduled and this could very significantly tailor those types

24 of issues.

25       THE COURT:  But why didn't you bring this up at the

1  pretrial conference?

2        MR. CONDYLES:  Your Honor, the matter really did not

3  get focused on until the discovery was served and the enormous

4  expense.  And by way of background Chase is -- JPMorgan Chase

5  is one of the largest banks in the country, very defused

6  operations, and once the discovery was served and we got into

7  the process of how would we go about responding, they then

8  enacted their discovery team.  And there's a group that sort of

9  parachutes in that, you know, takes control of this process and

10 there's a, you know, checklist that you implement and you have

11 to determine all of the parties that would have documents that

12 would relate to the discovery requests.  So you have to canvass

13 the organization to figure out who was involved and at that

14 point it was determined that hundreds of employees were

15 involved in this determination.

16        It was then determined that those documents relating

17 to the hundreds of employees would, because of the length of

18 time that's passed, what's being requested here are more than

19 ten years, more than -- almost 11 years worth of documents for

20 hundreds of employees all of which are archived -- most of

21 which, to the extent they exist at all, have been archived in

22 electronic formats.  Some may, because of the length on spools,

23 literally tapes, the old time tapes you would see in these, you

24 know, big old mainframe computers, some may be on disks.  And

25 the process that has to be pursued in, (1) tracking down all of

23

1  the records for those individuals.

2         And what do those records consist of?  There are

3  really three primary areas that would need to be focused on.

4  One would be e-mail messages.  And if you look at how many e-

5  mail messages are going -- go through -- you know, it's

6  estimated that, you know, each employee for any given month,

7  you know, could have, you know, several thousand e-mails that

8  have been archived.

9         You multiply that by 12 months and you multiply that

10  by almost 11 years, then you multiply that by over 200

11  employees, you're talking about millions of potential e-mails

12  that have to be extracted, determined and then sent out to an

13  e-discovery service to run searches and compute database words

14  that would extract relevant documents and everything else.  So

15  that's just for e-mails.  So potentially millions of documents,

16  I would imagine, that would have to be reviewed or searched in

17  some format.

18         Then you've got I-messaging that would take place,

19  and then you've got software applications that exist between

20  the various employees.  And then you've got -- and so that

21  would all be on the electronic data side of things and on the

22  archive side of things.  Then you've got individuals' personal

23  files that would have to be reviewed and searched through.  And

24  when you're talking about hundreds of employees, you're talking

25  an enormous task.  So that's a long way of answering.

1          Until the discovery came in, the wheels of the

2     discovery procedures of Chase were put into action based on the

3     scope of the discovery that was being sought.  And, again, I'm

4     not saying that it would be easier if it was more narrow.  It

5     would be a lot easier obviously if it was, you know, four years

6     or five years instead of 11 years and all those are issues

7     that, you know, would have to be addressed at some point.

8          But even addressing, you know, four or five years and

9     keeping in mind that this agreement went into effect -- that a

10    lot of the damages, more than $20 million in damages that are

11    being sought relate to a conversion of this computer system

12    that went into effect in 2007 and 2008, you're looking at more

13    than five years just in pulling out documents related to that

14    area.  So at a minimum you'll be talking about, you know, five

15    years or more potential, you know, records that would have to

16    be searched which is still an enormous amount of information.

17         So once that was all learned, it was determined what

18    is the most efficient way of going about addressing this both

19    from a cost standpoint and incurring, you know, what could be

20    200,000 and more in e-discovery costs and as well as the use of

21    man hours and that's when, you know, it was addressed let's

22    look at streamlining the process in a very efficient way.

23    That's when I reached out to Mr. Caine and Mr. Richards to try

24    to address a consensual approach to going forward.

25         In fact, this approach was something I had suggested

1  to Mr. Caine earlier on in this proceeding, earlier this year,

2  in fact.  And his response was, well, let's go through

3  mediation and let's go through negotiations instead, and we

4  did.  So we started last January, December with a mediation

5  settlement process.  We provided substantial documents and

6  information.  We had a mediation in March and then negotiated

7  four, about five months after that in which time we provided

8  substantial documents and information already to the opposing

9  side and they contended that, you know, we haven't provided any

10 information at all and that's just not true because we have, as

11 a part of that negotiation process, provided substantial

12 information.

13        So going back, Your Honor, to the underlying question

14 here, in looking at what -- I think it's helpful to provide a

15 little background so you better understand the enormity of the

16 task at hand in responding to the discovery.  And in that

17 regard, it's helpful to understand what the underlying claim is

18 for and what the context is in which it arose.  And Chase had

19 provided under a credit card program agreement the

20 administration and use of all the Circuit City credit cards.

21        And going back in time before 2004, Circuit City

22 managed their own credit cards.  They had their own bank, in

23 fact, their own private bank.  And as a part of that bank, they

24 had credit cards -- they administered, owned the underlying

25 credit card in the accounts.  And then they made a

1  determination that for cost savings and, you know, whatever

2  went into it, they would sell their credit card portfolio and

3  all the assets related to it.  And that occurred in 2004.  And

4  the assets were sold to Bank One of Delaware which ultimately

5  merged soon thereafter with Chase.  And that's how Chase really

6  inherited this account.

7          So when that sale occurred, it was just not of the

8  credit card portfolio of accounts which would be hundreds of

9  thousands of accounts conceivably and hundreds of millions of

10 dollars worth of accounts, but it was also the infrastructure

11 that went in behind it.  And there were contractual obligations

12 that existed to maintain a team of Chase employees in Richmond

13 to monitor the accounts and to assist in the marketing and

14 everything else.  And then there was the service center in

15 Kennesaw, Georgia, which was being leased to Circuit City and

16 that lease was assigned as part of the overall sale.  And, you

17 know, all these are the damages we contend as part of this

18 overall proceeding that are recoverable here.

19         So as part of that process, ultimately the overall

20 program agreement was originally on the Circuit City platform

21 and that was converted over to a Chase platform and that is

22 what resulted in a good portion, about 20 million of the

23 underlying damages, seven of which was money that was actually

24 paid to Circuit City directly as consideration for their time

25 and effort in assisting or just being patient while that

1    conversion of the underlying program occurred.

2           And the credit cards, just so you understand, you
3    know, would consist both of private label credit cards -- when
4    you go into Circuit City and they say, you know, you want to
5    buy our big screen tv with a Circuit City card, we'll give you
6    ten percent and it can only be used in that store and they give
7    you, you know, perks and everything else.  That's one option.
8    The other option would be like a Visa card with a Circuit City
9    logo.  You're not getting the same benefits and rewards, but
10   those are both the types of cards that were being provided as
11   part of this underlying agreement.

12          So with that number of accounts and with the number
13   of employees involved, it all goes into the enormous amount of
14   information and documents and then you factor in the time that
15   has lapsed since programs in effect before Circuit City was
16   even operating and the contract itself was rejected in February
17   of 2009.  So you've got almost five years since the rejection
18   there alone of different damages -- of time that has expired
19   that you have to be looking back towards.

20          So all of that is what goes into the cost that would
21   be involved as far as having to move forward with discovery.
22   If it's not -- and, again, if it's not necessary and if there's
23   not any prejudice to the other side by a slight delay, then,
24   you know, what's the harm when they benefit, at least one of
25   the parties could be very significant?

1        So in looking at the legal argument on this, we're

2   proceeding under 26(c).  And 26(c) of the Federal Rules of

3   Civil Procedure says the Court may for good cause issue an

4   order to protect a person or person from annoyance,

5   embarrassment, oppression, undue burden or expense including

6   one or more of the following.  So first, the controlling word

7   is good cause and then, you know, what we would be proceeding

8   under is, (a) forbidding the disclosure of discovery, and (b)

9   specifying terms including time, place -- time and place for

10  the disclosure of discovery.

11       So there's built in procedurally under Rule 26(c).

12  We're not asking the Court to assert equity or anything else.

13  We're going under a tried and true rule of civil procedure and

14  one that's often used in --

15       THE COURT:  That's good because this morning I had

16  someone actually make a 105 argument so I'm glad we've got

17  something we can sink our teeth into.

18       MR. CONDYLES:  And not only can we sink our teeth

19  into it, Your Honor, this is something that, you know, as we

20  pointed out in our papers, is addressed quite frequently by

21  other Courts and allow quite frequently where you have

22  dispositive motions at hand.

23       So what do those Courts look out in determining

24  whether a stay of discovery should be allowed?  The primary

25  items they look out concern the potential prejudice to the

opposing party of a delay, the burden on moving party if the

stay of discovery isn't allowed which the convenience that the

Court will receive by allowing the stay of discovery, is there

a convenience?

And then there are two other issues that I would

assert aren't really applicable to this analysis but that goes

to what are the interests of persons that are not parties to

the litigation or the dispute and what is the impact on public

policy?  And neither of those, I would submit, really have any

real focus or impact here but instead the first three dealing

with the prejudice to the opposing party of a delay, the impact

on Chase and the convenience of the Court I think are very

relevant here.

In first looking at the impact on the Trust in this

instance, what prejudice will they incur as a result of a

delay?  And I would submit, Your Honor, the very fact that the

papers filed by the Trust has failed to assert any prejudice.

You know, all they say is oh, we don't say standing, oh, we

didn't meet and confer or they complain about, you know, that

we're just looking to delay things, but they don't say what

their prejudice would be.  Well, there is no prejudice because

we're almost nine months out from trial.  And even considering

the 21-day cutoff before trial, we're almost eight months out

from trial.  So we've got plenty of time to address the issues

that we're looking to address.

1          And Rule 12(c) takes that into account.  It says if

2    it will not result in a delay relevant to a trial, then you

3    know, you can proceed.  And I would submit that in light of the

4    amount of time we've got, there would not be in any prejudice

5    to -- can't be prejudice to the Trust and we fit right into the

6    application of Rule 12(c).

7          Next, looking at what would be the impact on Chase,

8    and basically this is creating a balancing of the equities test

9    for -- going back to really what we're examining is the

10   requirement of good cause that's referenced in 26(c), you know

11   present here in balancing the equities here, the impact on

12   Chase.

13         You know, if we went all the way to trial and then,

14   you know, concluded we went all the way through discovery into

15   summary judgment as the Trust wants to do, well, you know,

16   sorry, but 11(c) knocks you -- 11.26 knocks you out and you

17   just don't have a claim.  Chase has incurred an enormous cost,

18   exerted an enormous amount of resources to something that is

19   fruitless.  And that, I would submit, would not be an equitable

20   result when the impact of a slight delay on the opposing side

21   is not nonexistent.  And, again, the cost of, you know,

22   potentially over $200,000 of going through this would be very

23   significant.

24         The final element addressing the convenience of the

25   Court, one, the issues are going to be streamlined, I would

1 submit, one way or another.  Hopefully they'll be streamlined

2 all the way in Chase's favor and there will be a determination

3 of full liability and all we'll be fighting over is the amount

4 of damages.

5          Worse case scenario, the case goes away, the Court

6 going to have a one-week trial in the middle of August.  And in

7 between all of that, the potential discovery -- hopefully we

8 can resolve the issues and we're not going to have to give 11

9 years, almost 11 years worth of documents for all these

10 employees as sought.  And all of the onerous requests that have

11 been made wouldn't be complied with and we can work through all

12 those issues.  But -- and we won't need to come to the Court to

13 decide those factors.

14          But those are potential areas that we would need the

15 Court's assistance with so we would conceivably eliminate those

16 issues as well and obviously promote judicial economy.  So

17 those three elements, I submit, all weigh heavily, not

18 exclusively, in favor of the granting of the 12(c).  And,

19 again, I would point out in looking at the papers filed by the

20 Trust, none of those have been addressed at all.  And I

21 mentioned before that the prejudice to the Trust wasn't

22 mentioned but none of the other two have been either.

23          Instead, they just throw -- raise issues relating to

24 other matters regarding the ability to bring the action and the

25 meet and confer issue and so forth.  And because they did raise

1   to meet and confer in their underlying pleading, again, I think

2   I need to come back to that.  And addressing Rule 26(c), which

3   we're proceeding under for a protective order, that states the

4   motion must include a certification that the movant has in good

5   faith conferred or attempted to confer with the other affected

6   parties in an effort to resolve the dispute, and that's the

7   controlling language, in an effort to resolve the dispute

8   without court action, and that's what we did, Your Honor.

9          On November 4th I reached out to Mr. Caine and Mr.

10  Richards and asked them if they would consent to stay discovery

11  while we proceeded to bifurcate the two issues of liability and

12  damages before this Court.  They said they would consider it.

13  I said, you know, it was important to Chase because of the

14  expense incurred in responding to their discovery.  Within a

15  couple of hours I get back a response.  Their consideration

16  obviously wasn't very intense because they said well, we want

17  all the discovery first and then we'll consider it.  That

18  defeats the whole purpose.  And, again, in meeting the meet and

19  confer that addressed the 26(c) requirement and that's --

20         THE COURT:  Mr. Richards said they came back and said

21  that they were going to narrow the discovery request

22  dramatically in order to tailor them specifically to certain

23  things that they thought were critical.

24         MR. CONDYLES:  They came back with a letter dated

25  November 19th that went through each of the discovery requests.

1   I can go through each one of those if you want, but --

2            THE COURT:  No, no, no, no, please.

3            MR. CONDYLES:  But they are not narrowly -- many of

4   them say, you know, we disagree but you explain it to me.  The

5   overall letter itself was you tell us why we're wrong on these

6   issues and, you know, and to their credit I will say there were

7   some that they said we may not need this or may not -- we'll

8   backtrack on that.  But the vast majority is well, we don't

9   follow your objection and, you know, tell us why you need it.

10           But, Your Honor, as I mentioned earlier, even if we

11  agreed, even if we never objected because they gave us the most

12  pristine request and the most reasonable request for discovery,

13  all of that analysis would still need to be done because there

14  are 36 discovery requests.  They're not 36 files sitting in

15  Chase's vault or in their file room that respond to each one of

16  those.  The only way you're going to get those documents

17  because they're in archives is to take a massive search of all

18  the documents to determine what relates to Circuit City first,

19  and then once we corral every document, reviewing every

20  document and find out what applies to Circuit City, then you

21  have to go in and see which would apply to those 36 requests.

22           So you're starting off with potentially millions of

23  documents, having an e-discovery firm, you know, do word

24  searches after your able to extract all those different

25  documents from all the different, you know, resources that were

1  utilized at the time.  And then have somebody goes through,

2  once the word searches are done, to find out what responds to

3  each of those.

4         So the most narrowing factor, obviously, is reducing

5  from 11 years to a more reasonable period because that, you

6  know, could cut in half in theory.  But even if you're at five

7  or six years, you're still talking, for all the reasons I

8  mentioned earlier, an enormous amount of work that goes into

9  it.  So that was the whole purpose of my point earlier that

10 this isn't -- were not moving for a determination or a

11 protective order because of their massive discovery requests.

12 We doing it because any discovery in the case as it has turned

13 out after implementing the discovery policy within Chase is

14 going to be extraordinarily expensive.

15        So, Your Honor, I've tried to address as I've gone

16 along the different issues that the opposing party has raised

17 as well, you know, they've really raised three issues as to why

18 the relief isn't appropriate.  The first is that Chase doesn't

19 have the ability to proceed with the motion.  I've addressed

20 that.  We're falling smack dab in the middle of what 12(c) is

21 about.  We're looking for a judgment on the pleadings to

22 determine Chase has -- that the Trust has liability under the

23 claim.  And, you know, granted, it's more akin to a partial

24 judgment on the pleadings, but you look at the cases, 12(c) is

25 just as applicable to a partial judgment on the pleadings as it

1  is a judgment on the pleadings.  So --

2          THE COURT:  Why can't we do that under just regular

3  rule -- motion of summary judgment which the rules do make

4  applicable to this proceeding?

5          MR. CONDYLES:  I'm willing to go under that route,

6  but my point is we don't need discovery.  And if I were --

7          THE COURT:  I just want to give the scenario.  It's

8  not so much about 12(c) or whether we're doing -- there's going

9  to be a determination or a narrowing of the issues and we do

10  have vehicles to do that under the rules.  The question is

11  whether or not we're going to do discovery and that's really

12  the issue.

13          MR. CONDYLES:  That's right, but my point is, Your

14  Honor, you don't need discovery.  Now, if Your Honor were to

15  say the parties can proceed with summary judgment without use

16  of discovery for these narrowed issues without precluding the

17  ability of the Trust to proceed subsequently with discovery,

18  that would be fine.  But there's no magic to 12(c).  It's just,

19  you know, that's a mechanism that exists for relief of the

20  Court and that's why we're coming.  If I had come under the

21  summary judgment, the Trust would be saying we can't do that

22  because we're entitled to discovery and, you know, we're being

23  prejudiced by doing that.  My point is we don't need discovery.

24  These are legal issues.

25          THE COURT:  I guess that sort leads to my next

36

1   question.  Why didn't you just go ahead and file a motion for

2   summary judgment already?

3          MR. CONDYLES:  Because the other side would oppose

4   that because they would want to use --

5          THE COURT:  They always oppose summary judgment, but

6   if you're right, you're right, aren't you?

7          MR. CONDYLES:  Well, no, they would not -- they'd

8   consent -- if they'd consent to a stay of discovery, that would

9   be fine.  Or if the Court ordered a stay of discovery, that

10  would be fine.  But if we filed a motion for summary judgment,

11  their pleading would say we can't -- we'll be prejudiced

12  without discovery and we can't move forward with a summary

13  judgment without discovery and, you know, Chase is just trying

14  to, you know, divert the Court's attention or what have you.

15         I'm trying to be up front with both parties here and

16  place this, (1) within a framework that I feel is appropriate,

17  but (2) to show to the Court that we're as firm on being able

18  to proceed with this matter without the use of discovery to

19  determine these legal issues that we don't need a summary

20  judgment proceeding.  But if the Court, you know, determines it

21  to be appropriate, we're willing to go that route.  We're

22  willing to go that route with, you know, affidavits to the best

23  of our knowledge of information.

24         I should take that back because I don't know with a

25  number of people and without having talk to the client if

1  affidavits would even be appropriate in the context of a

2  summary judgment.  I think it would have to be more than 12(c)

3  strictly on the pleadings type of approach.  But that's

4  certainly something that we would, in that context, be amenable

5  to.

6          The other issues they raise were the meet and confer,

7  you know, the lack of meeting, that procedural requirement of

8  26(c).  I've already addressed that and that applies to meeting

9  and conferring as to the appropriateness of the protective

10 order and that was the very purpose of the November 4th call

11 which is documented in the letter I handed to the Court.

12         And then the other point that they raise concerns

13 just the -- goes to the merits and they just contend that the

14 merits of pursuing a 12(c) action is inappropriate and I've

15 already explained why this is actually a proper mechanism for

16 that.  And, in fact, you know, ultimately the 12(c) motion will

17 have to be before the Court and the Court would have to rule on

18 that.

19         But all those issues can't be addressed here now but

20 clearly the issues are very streamlined in the case and we

21 contend that this is ripe for a determination along the lines

22 sought and that a stay ought to be imposed and authority to

23 proceed under Rule 12(c) so we can file our motion as soon as

24 possible and limit the time that discovery doesn't go forward

25 as much as possible.  And we're prepared again, Your Honor, to

1  -- if the Court were willing to grant our motion to move

2  forward on an expeditious basis as, you know, the Court and

3  opposing counsel is prepared to proceed and, you know, have

4  this addressed this year, in this month if possible.

5          THE COURT:  All right, thank you.

6          MR. CONDYLES:  Thank you.

7          THE COURT:  All right, Mr. Richards, are you still

8  with us?

9          MR. RICHARDS:  Yes, I am, Your Honor.

10         THE COURT:  Okay, you wish to respond?

11         MR. RICHARDS:  Yes, I do, please.  Number 1, Your

12 Honor, I'd like to point out that the Court asked Mr. Condyles

13 two very interesting and I think very relevant questions.

14         In reverse order, the second question was why Chase

15 has not proceeded by Rule 50 -- by virtue of Rule 56 which is

16 automatically applicable to this contested matter.  And I would

17 submit, Your Honor, that the reason for that is that Rule 56,

18 in particular, Rule 56(d) would allow us to take discovery

19 before any summary judgment motions are brought.  And to be

20 honest, that is the crux of this whole hearing and in a sense

21 the prejudice that Chase is trying to visit upon the

22 Liquidating Trust by attempting to go forward with its

23 purported summary adjudication motion first without allowing us

24 to do discovery that we need to proceed with ours.

25         Mr. Condyles has asked us to identify what prejudice

1  there would be in going forward with the procedure that they're

2  proposing.  And the prejudice is precisely the one I've

3  identified which is if we are going to have dispositive

4  motions, and we've indicated to Chase that we have no objection

5  to that, frankly we believe we have dispositive motions.  But

6  we also believe that we need to and, frankly, under Rule 56,

7  are entitled to take some discovery before being required to

8  bring those motions.

9       And the whole crux of this motion is for whatever

10  reason, whether it be burdensomeness or something else, and

11  I'll get to the burdensomeness issue in a minute, but for

12  whatever reason Chase does not want to produce a single

13  document.  And without them producing at least some documents,

14  again, I will identify those more specifically later, our

15  ability, the Trust's ability to bring a summary judgment

16  proceeding is prejudiced.

17       And in terms of judicial economy and in terms of the

18  Court making an adjudication on this claim on a full record,

19  again, issues that Mr. Condyles just raised, it would seem to

20  me that the best way to proceed is for the Court to consider

21  all of the dispositive issues brought by both sides at once

22  rather than piecemealing this and allowing Chase to bring forth

23  a motion which will not result in a judgment on the pleadings.

24       And I believe Mr. Condyles is wrong when he says that

25  Rule 12(c) is applicable to partial adjudications.  I believe

1    the Circuit decision we cite in our pleadings makes quite clear

2    that a motion for judgment on the pleadings which, frankly, is

3    generally brought by the defendant, not the plaintiff turning

4    around and bringing a motion on its own claim, the case law

5    that we have cited makes quite clear that the motion must lead

6    to the entry of a judgment.  And their motion under no stretch

7    of the imagination would be dispositive of this entire claim.

8          The Court also asked another very interesting

9    question of Mr. Condyles which is why is Rule 12(c) not

10   generally applicable to contested matters?  And I think the

11   answer is somewhat different to the one that he gave but is

12   also somewhat obvious which is in a contested matter you do not

13   have pleadings.  You gently do not have a complaint and you do

14   not have an answer which ostensibly frame the issues for

15   adjudication.

16         And in this instance that leads to -- the lack of

17   those pleadings actually leads to a number of uncertainties,

18   some of which we need to flush out in discovery.  For example,

19   aside from alleging that the rejection of the program agreement

20   in and of itself constitutes a breach, Chase has nowhere

21   alleged or been required to allege what breach of the program

22   agreement was committed or perpetrated by Chase -- by Circuit

23   City rather.  And so the lack of formal pleadings in this case

24   is -- has been prejudicial to the Liquidating Trust.  And

25   frankly, if one looks at some of the discovery requests, some

1  of them are designed to elicit a response to that specific

2  issue.

3          Secondly, Your Honor, while it may or may not be true

4  that the Liquidating Trust has not already identified the fact

5  that it disputes liability, in particular that it disputes that

6  there has been a breach of the program agreement or,

7  alternatively, that the consensual termination of the program

8  agreement in essence resulted in a termination of the agreement

9  without Chase having any ability to sue for damages, if it is

10  indeed the case that those issues have not been raised, then

11  frankly, the Liquidating Trust would like the ability to amend

12  its pleadings to raise those issues because we believe very

13  strongly that there is no liability here.

14          And as I said when I addressed the Court on the

15  expediting motion, if there is no liability because there has

16  been no breach or because the consensual termination vitiates

17  any claim to damages, then there is really no need for the

18  Court to get to Section 11.26 and for it to analyze and

19  determine the true meaning of that provision when, in fact,

20  there's no underlying liability, at all.

21          Without getting too far ahead and without getting

22  into the merits of a summary judgment motion which we have not

23  yet filed, I do want to address one of the issues that Mr.

24  Condyles raised which I think goes somewhat to the core of the

25  infirmity of their claim.  At least as currently framed, the

1 only breach, as I've already said that Chase has alleged, is

2 the rejection of the contract.

3       And while Section 365(m) of the Bankruptcy Code does

4 say that a rejection will be treated as a breach as of the

5 petition date, there are other relevant provisions in the five

6 series of the Bankruptcy Code, and in particular there is Ninth

7 Circuit authority which dictates that the rejection of a

8 contract or lease is not dispositive of whether there has been

9 a breach for the purposes of damages and for the purposes of

10 asserting an allowed claim under Section 502.

11       And, therefore, the issue of whether Chase is, in

12 fact, alleging a breach other than the rejection, an issue

13 which is not clear because we don't have formal pleadings here,

14 that issue is really rather important and I would submit to the

15 Court is one that should go before any consideration of damage

16 limitation for the obvious reason that if there is no liability

17 here, if there's no breach, our termination has addressed any

18 breach issues, and there is in terms of judicial economy, there

19 really is no need the Court to get to the interpretation of the

20 damage limitation provision of Section 11.26.

21       As I've already pointed out, Your Honor, even if the

22 Court does apply Rule 12(c), which I would submit given the

23 absence of formal pleadings in this case would not be

24 appropriate, and even if Chase does bring and is successful on

25 its motion for judgment on the pleadings, there are still going

1  to be a myriad of other issues that need to be resolved, all of

2  which we need discovery on, all of which for all -- which

3  issues discovery is already pending, most notably some of the

4  issues I've just addressed, in particular the liability issues

5  and the impact of termination, consensual termination of the

6  agreement.

7          Further, Your Honor, it should be fairly apparent to

8  the Court that even if the only issue for adjudication was

9  Section 11.26, we would be entitled to discovery for the very

10 simple reason that the facts that the Liquidating Trust and

11 Chase have such diametrically opposed interpretations of the

12 agreement in and of itself would allow us to take discovery as

13 to the negotiation of the program agreement and in particular

14 Section 11.26 to see what contemporaneous documents there are,

15 how that provision was negotiated and what the parties' mutual

16 understandings were regarding the provisions, and in particular

17 just by way of example, the word intentional which Mr. Condyles

18 has highlighted a number of times, but which is a word that is

19 embedded in a whole string of other provisions and conditions,

20 many of which may or could shed light on the true meaning of

21 the word intentional.  And, frankly, there may well be

22 documents out there which we are entitled to see that may shed

23 light either favorably or unfavorably on the interpretation of

24 that provision.

25          So to argue that a provision that the parties

1  disagree vehemently on how it should be interpreted can and

2  should be adjudicated by this Court without us being able to

3  take any discovery on the issue, I think is somewhat of a

4  disingenuous position.

5       Where that leaves me, Your Honor, because I -- I'm

6  very mindful that the Court is anxious to move this litigation

7  forward as quickly as possible, I take Mr. Condyles at his word

8  that he is anxious to do so as well and I think it is in the

9  interest of everyone involved to do this as efficiently and as

10 inexpensively as possible, however, in a fair way that is not

11 prejudicial to the Trust and is not also wasteful of this

12 Court's time and energy.

13      The way I would propose we proceed is as follows,

14 Your Honor.  Is that Chase be ordered to meet and confer

15 regarding the pending discovery.  As Mr. Condyles pointed out,

16 there are a number of concessions that are contained in this

17 vendor's letter regarding the discovery disputes.  Frankly, if

18 we had had a discussion outside of this courtroom rather than

19 arguing the burdensomeness of the discovery within the four

20 walls of this courtroom, I am fairly confident we could have

21 reached an agreement as to the discovery we need.

22      In particular, provided there is an understanding

23 that focused discovery that we need for our summary judgment

24 motion is produced expeditiously and provided there is an

25 understanding that that is without prejudice to other documents

1  we may need and that in the event that the motions or cross

2  motions for summary adjudication are unsuccessful and that we

3  will need access to those other documents, that they will be

4  produced timely and efficiently, than I believe we have a

5  template as to how to move forward.

6          But I think, (a) to ask the Court to adjudicate

7  potentially dispositive issues in a piecemeal fashion, (b) to

8  ask the Court to adjudicate a damage liability issue which may

9  in and of itself be ambiguous and which the Court may not need

10 to adjudicate in the event it determines that there is no

11 liability here, and (3) (sic) to sort of procedurally short

12 circuit this whole proceeding -- and I believe the Court really

13 put its finger on the issue, what we are really talking about

14 here are motions or cross motions for summary judgment.

15     Certainly that is what the Liquidating Trust intends to

16 file.  And in order to do that, the Liquidating Trust counsel

17 has determined that it needs discovery on certain issues and I

18 had promised earlier I would specifically identify where we

19 really need discovery for our summary judgment and I will do

20 that for the Court.  As the Court is probably well aware at

21 this point, there are or may be ambiguities regarding the

22 original program agreement.  It certainly appears there is a

23 dispute as to the meaning of Section 11.26 and I dare say there

24 will be disputes as to the threshold liability issues that we

25 will assert in a motion for summary judgment.

1          So, at a minimum, targeted discovery regarding the

2   negotiation of the program agreement, drafts, contemporaneous

3   exchanges of communications, et cetera, to me seems a very

4   reasonable discovery request and one that we should clearly

5   have access to even if Section 11.26 was the only issue that

6   this Court was going to adjudicate.

7          Secondly, as Mr. Condyles has pointed out, fully 20

8   of the $34 million that are being claimed here relate to a

9   third amendment to the program agreement which was negotiated

10  in 2007.  And there are clearly issues raised by Chase's proof

11  of claim over who bore the burden for the expenses of that

12  program agreement and who would bear the risk of those expenses

13  in the event the program agreement terminated early for

14  whatever reason and again, I think to argue that tailored

15  discovery regarding that very germane issue is burdensome and

16  oppressive especially without even engaging in a conversation

17  with the Liquidating Trust counsel is really indicative not of

18  an intent to cooperate and move this proceeding forward, but

19  rather to stymie the trustee and prevent him from receiving any

20  discovery to which he is clearly entitled.

21         Third, Your Honor, another major issue which is very

22  important to our motion for summary judgment, is discovery on

23  the profits that Chase has made or did make on this contract

24  through the date of termination.  Because it is and will be our

25  position that even assuming they are entitled to any of the $34

1 million of damages alleged in this claim, those damages should

2 be offset by all of the profits that have been made by Chase

3 through the date of termination.  And while we have a very

4 strong suspicion that their profits exceed that 34 million

5 number by a significant multiple, we have not had a chance to

6 take discovery on that issue, nor have we received any

7 documents.

8       And frankly on that issue, I will point out that Ms.

9 Bender's letter offered an alternative to an expensive

10 discovery which was specifically an offer to Chase that they

11 could provide the information by way of a spreadsheet or other

12 summary form of document.  So, where this leaves me, Your Honor

13 -- and like Mr. Condyles, I am adamant that this matter can and

14 should be determined summarily, however, our legal theories are

15 very different to Chase's and they do require that we undertake

16 some discovery -- where I would suggest the Court proceed from

17 here is frankly where I started, which is to require Chase to

18 meet and confer regarding the discovery.

19       If there are still disputes regarding the discovery

20 then we will either have to come back to the Court on a motion

21 to compel or ask the Court for an expedited resolution of

22 discovery disputes as they then exist, but to be honest, I

23 believe we can eliminate many, if not all of them, especially

24 if we simply focus on what we need for our summary judgment

25 motion first, and defer everything else until later with an

1 understanding that those documents can and will be produced in

2 time for an August trial, if there is no summary adjudication

3 here and then once we have received the discovery that we think

4 we need, and I can assure the Court we are not looking to take

5 more discovery than is necessary and to be honest, I'm hopeful

6 that if documents are timely produced, we may not even need to

7 take any depositions and if we do, I suspect they will not be

8 of more than one or two key people that were involved in the

9 negotiation of this agreement.

10         At that point, the liquidating trustee and Chase can

11 sit down and we can work on a stipulation of facts -- on facts

12 we do agree upon -- to the extent that we believe they're

13 irrelevant but we agree on them, we can stipulate to those as

14 well, and we can bring cross motions for a summary adjudication

15 or summary of determination before this Court in an orderly

16 fashion simultaneously on a full record in a way that neither

17 side is prejudiced.

18         And that, Your Honor, I think addresses everything

19 that Mr. Condyles has raised.  I believe it addresses the two

20 questions that the Court had of Chase and at this point I would

21 simply ask if the Court has any further questions of me?

22         THE COURT:  No, I do not, Mr. Richards.  Thank you

23 very much, sir.  All right.  Mr. Condyles, anything further?

24         MR. CONDYLES:  Yes, Your Honor.  Just a couple of

25 points.  One statement that was made was that a 12(c) action is

1  only brought by defendants and that's -- and that they're not

2  brought on a partial judgment basis, and that's just flat out

3  wrong.  And, I would be glad to submit to the Court authority,

4  both plaintiffs and defendants bring the actions and --

5        THE COURT:  I think Mr. Richards was referring to the

6  fact that usually you see this in the context of a defense type

7  of motion as opposed to one the plaintiff brings.  I don't

8  think he said that you couldn't do it that way but it's

9  certainly been my experience that you see a 12(c) type of

10 motion filed by a defendant rather than a plaintiff.

11       MR. CONDYLES:  It may be and I haven't done a polling

12 of the cases but all I can say is that I know of a number of

13 cases that it's brought by the plaintiff just as well.

14       THE COURT:  But I have not seen it ever before though

15 done on a partial basis.  I've always seen if for a judgment on

16 the pleadings type of basis.

17       MR. CONDYLES:  Your Honor, there are Eastern District

18 of Virginia District Court cases that I could refer Your Honor

19 to specifically that address it in the context.

20       THE COURT:  That -- I'm not as concerned about that

21 issue so you don't need to do that but I -- let me tell you the

22 issue I am concerned about that I'd like you to address.  And

23 it was really the crux of the question that I had asked you

24 originally, which is why do you think that the Federal Rules

25 don't include a reference to Rule 12 and Rule 9014, and what I

1  was getting at was the very issue that Mr. Richards amplified

2  in his response, which is, you know, normally in an adversary

3  proceeding we have a complaint and an answer and they frame the

4  issues and we can look at the issues as pled and the pleadings

5  narrow the issues for adjudication and they are ripe than

6  either on a motion to dismiss under 12(b) or for judgment on

7  the pleadings under 12(c) or other disposition under Rule 12.

8         We don't have that normally in motions, in fact, you

9  know, many motions, you know, don't even have a response filed.

10 And now, you know, objections to claims are a little

11 differently -- are different but they're still treated as

12 contested matters where there you have a proof of claim that is

13 filed and then you'll have an objection to the proof of claim,

14 which is often not in the form of a pleading because it's just,

15 you know, we object and you know, for, you know, whatever

16 summary reason but the -- those types of pleadings don't really

17 frame the issues and how is that going to be helpful to the

18 Court in having to adjudicate something under a Rule 12(c) type

19 of basis?  Isn't this more akin to summary judgment where

20 you're going to have to allege other facts and bring in other

21 things that might not be in the proof of claim you filed or in

22 the objection that they have asserted?

23        MR. CONDYLES:  Your Honor, that was Number 2 on my

24 list that I was getting to.

25        THE COURT:  Excellent.  Okay.

1          MR. CONDYLES:  So thank you for the nice lead-in.

2   And I would submit the very opposite is the case particularly

3   on a proof of claim situation.  A -- the pleadings that relate

4   (1) to contested matters, actually go into more detail.  They

5   have to include a memorandum of law, they have to set out the

6   grounds and they go into more --

7          THE COURT:  Did you file a memorandum of law with

8   your proof of claim?

9          MR. CONDYLES:  We did with our response to their

10  objection.

11         THE COURT:  I know.  I was -- I'm familiar with the

12  pleadings.

13         MR. CONDYLES:  But --

14         THE COURT:  It was a rhetorical question.

15         MR. CONDYLES:  But, Your Honor, with the proof of

16  claim we are asserting that -- specific areas of damages and as

17  Your Honor knows from reviewing it, we go through the same

18  category of damages in that proof of claim that we do in the

19  context of our response that sets that out.

20         So, I would submit to Your Honor that the pleadings

21  in a contested matter go into more detail than in a standard

22  adversary proceeding where you just have the bare bones, you

23  know, just take up a preference action where you would assert

24  all the elements of a preference and then you got opposing

25  party, you know, admit or deny or state it's a conclusion of

1    law.  You know, you come away with that with very little meat

2    on the bones, if you will.

3         In a contested matter, you've actually got the

4    grounds in the proof of claim in this instance that sets out

5    what is the basis for the claim itself.  Then you've got the

6    objection that opposes it.  And if that objection doesn't

7    assert a basis for the objection, the objection doesn't say it

8    was late filed.  Well, you know, you're not going to be able to

9    at a trial on the proof of claim just bring in anything that's

10   outside your objection anymore than you could on a -- on

11   pleadings that are filed and an answer filed to a complaint in

12   an adversary proceeding that doesn't raise the statute of

13   limitations or something of that nature.

14        So there is really no difference as far as the

15   specific nature of what is pled in the context here and I

16   would, you know, say in fact that there's more information that

17   -- that's provided and I see Your Honor wants to raise a --

18        THE COURT:  I just like to read the rules and follow

19   along.  I'm just, you know, paging to catch up with where you

20   are I guess because I didn't realize that rule -- affirmative

21   defenses had to be pled as part of contested matters either.

22   And I was just looking at Rule 9014 to see if that was a

23   requirement.  I don't see that it is.  But, so --

24        MR. CONDYLES:  Your --

25        THE COURT:  -- I guess I'm still having -- I'm

1   struggling with this concept that Rule 12 is really going to be

2   all that helpful.  I mean, from a judicial economy standpoint,

3   why isn't it beneficial to have you file your dispositive

4   motion, which you think is dispositive of as many issues as

5   possible and maybe all of them and to have Mr. Richards file

6   his dispositive motion, which is dispositive of all of the

7   issues he believes or as many as possible and so that the Court

8   then can take it up at one time and consider both positions in

9   harmony and then resolve them so that I can narrow, if there is

10  going to be an issue to be tried, what that issue or issues are

11  and do it that way as opposed to doing it on a Rule 12 motion

12  and then a subsequent motion for summary judgment and then, you

13  know, and doing it that way?

14          MR. CONDYLES:  By bringing the 12(c), I mean it is

15  not an involved -- it's a very expeditious process to get to

16  the heart of the underlying issues and it does not prejudice --

17          THE COURT:  Okay.  Well, let me ask --

18          MR. CONDYLES:  -- Mr. Richards --

19          THE COURT:  -- a dumb question then because, you

20  know, let's assume you file your 12(c), okay, and Mr. Richards

21  raises an issue such as consensual termination?  How are you

22  going to deal with that in the 12(c) context other than to say

23  there wasn't?

24          MR. CONDYLES:  Your Honor, that's a pure -- and

25  another point down on my list, but that --

1          THE COURT:  I'm sorry.  I'm accelerating your --

2          MR. CONDYLES:  Then -- I appreciate that.  It gives a

3  good roadmap, but it is perfectly tailored again, to address

4  the consensual breach because that's a legal issue.  I mean,

5  there is a stipulation that exists between the parties that

6  sets out the terms under which the claim is rejected.  And

7  that's a legal analysis of whether or not it constitutes a

8  consensual breach under which no damages are allowed or not.

9          And my point was that really Mr. Richards has made

10  our argument for us as to why you don't need discovery.  And

11  there wasn't any indication by him as to discovery that was

12  needed in determining that but instead you're going to have a

13  document that was stipulated between the parties that

14  specifically rejects it and then it's just a matter of the

15  application of law to the terms of that agreement as to whether

16  or not there is a claim for breach of contract or not.

17          So, I mean, that doesn't require anything outside the

18  four corners of the agreement or the law itself.  The

19  affirmative -- and that's really the case on every one of these

20  issues.  And, Your Honor, again, what I am proposing is a

21  straightforward process that can easily be addressed in a very

22  limited period of time.  What Mr. Richards is proposing opens

23  the whole discovery floodgate and I'm not clear on what he is

24  saying today he's willing to narrow --

25          THE COURT:  Here's the words I heard Mr. Richards

1  say.  I heard him say, tailored.  I heard him say, targeted.  I

2  heard him say, focused, when he was talking about discovery.

3  And he -- and so why can't we talk about that and so that each

4  party -- because I mean, he makes a point and I think that it's

5  one that, at least I can't take lightly, that, you know, Rule

6  12 is not referenced in Rule 9014.  I can certainly add it but

7  Rule 56 is and Rule 56 clearly provides for a mechanism of

8  discovery if it's needed at the front-end of the cases.  This

9  is your claim, he's playing defense, why isn't he entitled to

10 some limited discovery on a claim you're asserting against him?

11         MR. CONDYLES:  He certainly is.  In the --

12         THE COURT:  Well, is -- why are we here then?

13         MR. CONDYLES:  In the proper context.  After the

14 legal issues have been resolved and addressed and everything

15 else.  The limited areas that I heard today are not the limited

16 areas that were in the November 19th letter.

17         THE COURT:  So I'm helping you once again.

18         MR. CONDYLES:  You got -- I appreciate that.  And,

19 you know, it could be that if we're not having to get into the

20 e-discovery and open the floodgates of --

21         THE COURT:  I didn't hear Mr. Richards say floodgates

22 once.

23         MR. CONDYLES:  Well, I heard him say --

24         THE COURT:  I heard tailored --

25         MR. CONDYLES:  -- tailored but how --

1          THE COURT:   -- targeted, focused.

2          MR. CONDYLES:   But how does tailored, targeted and

3   focused convert into the terms of a document request when there

4   are 36 different categories of documents?  And when --

5   basically, again, putting into context the framework that Chase

6   has to work in for obtaining the documents and assuming that

7   you've got -- you don't have file folders you go to to get

8   these tailored, targeted and focused documents, you're still

9   having to do a review of everybody's mess -- e-mails,

10  everybody's software applications and -- just to find out what

11  -- which documents pertain to this area.

12          So, as soon as you get into electronic discovery, I

13  mean, if we could somehow limit to not going into, you know,

14  electronic discovery but those documents that are readily

15  available, you know, and then that may be a -- and that can be

16  a, you know, obtained readily in that manner.  And they're very

17  tailored, targeted and focused, maybe that's more feasible.

18          But, my concern is, as soon as you -- after you get

19  in -- because you're really looking for a -- you're proving a

20  negative or you're looking for a needle in a haystack because

21  you're having to go through all the documents of everyone of

22  these employees to get responses to even tailored, targeted and

23  focused areas.  And as soon as you go through all those

24  documents, then you're opening up, you know, the whole

25  e-discovery process and the whole procedure that has to be

1  internally pursued by Chase.

2        So, you know, that, Your Honor, is sort of the

3  confines under which, you know, we're dealing with here, so as

4  soon as, you know, you go beyond what is readily available and

5  you start having to scour everyone's electronic files just to,

6  you know, determine whether there's anything that exists in

7  these categories is when it, you know, opens the floodgates,

8  unfortunately.  So, I -- I'm not that sure that having

9  tailored, targeted and focused makes a whole lot of difference.

10       THE COURT:  All right.  I'm not -- rather than ask,

11  I'll let you go through the rest of your list before I start

12  asking more questions.

13       MR. CONDYLES:  All right.  Well, we're almost there.

14  The -- one of the points made is that, you know, adjudication

15  through discovery is necessary to interpret 11.26(c).  I

16  contend it's not.  If, you know, once we get the pleadings

17  before the Court --

18       THE COURT:  One thing I'm confident of after this

19  hearing is that you contend it's not necessary to do discovery

20  to interpret 11.26 and that Mr. Richards believes that it is.

21  Now, you know, that's a different issue and that's one that

22  I'll get to resolve on another day.  I don't have to resolve

23  that today.

24       MR. CONDYLES:  And that's my point, that it ought to

25  be addressed in the context of the underlying pleading as

58

1 opposed to taking his word or taking my word, but you know, if

2 we have a --

3          THE COURT:  Tell me the -- this -- I'm really having

4 a problem with that and I don't know that you did address that.

5 What pleading am I looking at for purposes of 12(c)?  I just

6 don't understand this.  In an adversary proceeding, I can

7 figure it out.  But in this context, I just don't understand.

8 What am I going to look at?

9          MR. CONDYLES:  You're going to look at the proof of

10 claim and you're going to look at the objection to the proof of

11 claim.

12          THE COURT:  Which says I object.

13          MR. CONDYLES:  No.  I mean, it's a 12 page -- I don't

14 have it in front of me but --

15          THE COURT:  I've read it.

16          MR. CONDYLES:  Okay.

17          THE COURT:  I do.  But if we look at Rule 3007, it

18 doesn't say anything after list 20 reasons.  It doesn't say

19 that if you have 20 reasons, you might only have to list 15 of

20 them.  It doesn't say anything.  It just says you have to file

21 an objection to the claim in writing.  I object.

22          MR. CONDYLES:  Your Honor --

23          THE COURT:  And that's why I'm having a problem.  I

24 mean, you heard Mr. Richards say, well, wait a second, if

25 they're going to raise this issue -- and I frankly forget which

1   issue he was talking about at the time but -- then we would

2   like to have leave to amend, you don't grant leave to amend in

3   these kinds of things.  I mean, we don't have that kind of

4   pleading structure here.

5            Now, if the parties come in and ask to make all of

6   the federal rules applicable, then we would have, you know,

7   Federal Rule 8 come in, we would have, you know, Rule 12 come

8   in.  We would have the other rules and such, you know, and so,

9   I guess I'm having a little bit of difficulty seeing how this

10  applies.

11           MR. CONDYLES:  Your Honor, I would submit that the

12  objection controls and that -- through -- whether -- and if I

13  had some time, I may be able to garner a rule and cavil an

14  argument that addresses the need to specifically plead but I

15  would submit that you can't just --

16           THE COURT:  Well, I'm looking at Rule 3007 right now

17  and it says, an objection to the allowance of a claim shall be

18  in writing -- they did that -- and filed -- they did that.

19  Period.  It doesn't say that the grounds have to be pled with

20  specificity.  It doesn't say there has to be a memorandum of

21  law.  It doesn't say anything.  It just says that.

22           MR. CONDYLES:  I -- Your Honor, the -- in the context

23  of an objection, I mean, what I hear Your Honor saying is that

24  a objection to a proof of claim is really a trial by ambush and

25  you --

1          THE COURT:  No.

2          MR. CONDYLES:  -- don't know --

3          THE COURT:  No, no, no.  Because we do have discovery

4   available and we have Rule 56 available and that we can narrow

5   the issues using those kinds of tools rather than using, you

6   know, this -- these pleading concepts which have no

7   applicability here.  The -- anymore than I have had ordered you

8   to file your proof of claim with any more specificity than

9   you've included in your proof of claim.  You know, the same

10  kind of thing.  And the way that you ferret that out, in this

11  context, is usually through discovery and then on a motion for

12  either full or partial summary judgment.

13          MR. CONDYLES:  Your Honor, the -- if I filed a proof

14  of claim that did not set forth a valid cause of action or a

15  clear cause of action -- didn't attach a promissory note or

16  didn't check the box that this is an obligation, that in itself

17  would be a basis for objecting to the claim.

18          THE COURT:  You could say they didn't check the box.

19  What do they do?  They come back and they check the box.

20          MR. CONDYLES:  Amend the claim --

21          THE COURT:  Say they didn't attach the promissory

22  notes.  What do they do?  They file a lost note affidavit.  I

23  mean, that happens all the time.

24          MR. CONDYLES:  But there are -- you're amending the

25  claim in that context and in the same sense, if the objection

1  sets forth what the terms are, then they -- what the basis of

2  the objection is, I would submit they're bound, if not

3  estopped.  And let's go into 105 at this point, if, Your Honor

4  --

5        THE COURT:  Twice in one day --

6        MR. CONDYLES:  -- will.

7        THE COURT:  -- I don't know if I can take that.

8        MR. CONDYLES:  But, from an equity standpoint, if we

9  had zoomed all the way to trial on this matter, and, you know,

10  we're sitting here on August 18th, today, and they raise for

11  the first time this consensual breach argument and never, you

12  know, pled it, you know, before --

13        THE COURT:  There's no pleading.  The -- if you ask

14  them in a discovery, you know, the basis for their objection

15  and they don't tell you, then you've got grounds based on the

16  answer to the discovery request you received for knocking out

17  that argument.  But if you don't ask any of those questions and

18  they come in at the trial date and you haven't done that then

19  it would be fair because there aren't any pleadings.

20        MR. CONDYLES:  Well, and very oftentimes and in most

21  less complicated objections, there is no discovery.  And people

22  are going in on -- at trial with the proof of claim and the

23  objection and the response.  And I would be surprised, in the

24  same context as what I'm describing here, if a new ground of

25  objection was raised for the first time and objected to by the

1  creditor that Your Honor would allow that new ground to be

2  submitted as a basis for the objection at that time.  I think

3  they're bound by their pleading.  If they want to amend their

4  pleading and there's sufficient grounds to, I would submit

5  that's their right but once you set out what your grounds are

6  in your pleadings, you'd be bound to that.  But, I understand I

7  may be on the losing end of that argument but I think that that

8  would be the process there.

9       THE COURT:  Well, perhaps you could ask Judge Wedoff

10 to amend the rules to include objections to proofs of claim in

11 Part 7 of the rules and then you would have a better argument

12 there.

13      MR. CONDYLES:  Well, and Your Honor, again, there

14 are, you know, cases that are out there and particularly

15 objections to proofs of claim cases, so I'm not asking for

16 anything novel here and you know, the application of that rule

17 has been, you know, addressed but, you know, I understand the

18 Court's concerns in that regard.

19      THE COURT:  Okay.  Anything further?

20      MR. CONDYLES:  Again, going back to a point that was

21 made that Chase has refused to produce, you know, a single

22 document that again, as indicated earlier is not the case.  We

23 produced substantial information in support of our claim in the

24 context of the negotiations and provided other information in

25 informal discovery throughout that process.  So, the Trust is

1  well aware of what our positions are regarding the claim and,

2  you know, the process that we would submit does not preclude

3  the ability at a later date for -- or whenever, to proceed and

4  does not prejudice Mr. Richards' ability.  I would just submit

5  that this motion to determine the issues on the pleadings could

6  be heard on a very expeditious basis and resolved with little

7  cost as compared to the enormous cost once we get into the

8  discovery piece of this.

9       If Your Honor is not inclined to follow our -- or

10 grant our relief, I understand that and would ask that there --

11 that the tailored, targeted, focused discovery be in such a

12 narrow focus not to have to open the e-discovery floodgates in

13 a way that would result in the enormous, you know, costs and,

14 you know, frankly time just to go through that process as well

15 because, you know, that -- it's not going to be something that

16 could be turned around on an expeditious basis in any event if

17 we were to have to pursue that route.  Thank you, Your Honor.

18      THE COURT:  Thank you.  All right.  The Court has

19 before the motion for protective order to -- and to direct the

20 application of Federal Rule of Civil Procedure 12(c) to the

21 contested matter.  With regard to the latter motion, the Court

22 is going to deny the motion to direct the application of

23 Federal Rule 12(c) to this matter.  I -- and there may be much

24 more learned judges out there than I that can see how that can

25 apply in this context but I really have trouble seeing it given

1  the way that pleadings or the lack thereof really -- on no kind

2  of formalized basis in contested matters, could possibly form

3  the issues and I don't think that's the way that the procedures

4  were designed.  I think that was thought out that Rule 12 was

5  not going to be part of Rule 9014 of contested matters and that

6  there are other vehicles to narrow the issues.

7        Now, with regard to the motion for the protective

8  order, I'm going to deny that for the time being as well but

9  without prejudice.  And I want to make some comments about that

10 because one of the things that I do want is for Chase to meet

11 and confer with the Trust regarding the discovery requests and

12 see where they can be narrowed.

13       As I said, I heard the words tailored, targeted,

14 focused in three separate distinct portions of the argument

15 that Mr. Richards made with regard to the discovery that would

16 need to be produced and I also heard the word expeditiously and

17 those are all things that I would think would come out of this

18 meet and confer session.  And if they don't, then Mr. Condyles,

19 you're welcome to come back to this Court and get appropriate

20 relief framed in the proper way but as I heard what was needed

21 and -- which was basically discovery resolving the ambiguities

22 of the original agreement and then next, the third amendment to

23 the agreement and who bore the burden of certain costs and then

24 the profits, you know, which were offered to be received in a

25 spreadsheet type of format, it didn't sound all that ominous to

1  me, but if they're -- all of a sudden the floodgate word is

2  used and you need to come back here for protection, the Court

3  will certainly hear you, sir, because that's not what I would

4  intend at this point.

5          What I would hope is, the parties could meet and

6  confer with focused discovery could be done in some sort of a

7  rolling basis without prejudice to either side.  If something

8  additional is needed after it's produced, that that could then

9  be focused and targeted and there could be, you know, other

10 documents that could be forthcoming, again, without prejudice

11 to either side but the idea being that we would try to get to a

12 place.

13         And what I would like the counsel to do at this

14 meeting -- confer meeting, is discuss a time frame and

15 parameters for bringing on the disposition motions, schedule a

16 time, get it on my docket, get it on now, it doesn't need to be

17 in August when we're all at the beach.  We could do it a

18 different time, you know, early on in this case after you've

19 done -- both sides have done whatever focused discovery they

20 needed to do.

21         Again, you know, and if we bring on the dispositive

22 pleading and it's not dispositive for whatever reason, then

23 it's without prejudice to either party doing further discovery

24 they need to prepare for trial.  But we don't have to, you

25 know, obviously have all the trial documents produced, you

1  know, in December.  So, that's what I'm trying to say.

2          Now, I'm saying this without ordering specific things

3  because I know counsel in this case on both sides and I know

4  that everybody is very reasonable and can figure this out.

5  You've done it before.  You've done it before in this court and

6  so I'm absolutely confident that you can have this session, you

7  know exactly what I'm talking about and that you can get to

8  this resolution.

9          But again, knowing that if you need to come back

10  here, you're welcome to come back, it's without prejudice so

11  when I deny your motion, Mr. Condyles, it's -- you can -- if

12  it's, you know, the floodgates open as you say and you need to

13  come back for relief, do that but please talk to Mr. Richards

14  and Ms. Tavenner before you do that and say, look at, this is

15  what I need to raise with the Court and I think that you're

16  going to find a reason -- or a reasonable response.

17          And if not, though, I'm here.  And I will make a

18  decision and actually lay it out, you know, in ink if

19  necessary.  I won't be very happy, I'll be kind of grumpy but

20  that will be done and I'll make sure that everybody can get

21  through this without expending untold hundreds of thousands of

22  dollars on stuff that might not be necessary.

23          All right.  Now those -- it's not necessary -- you

24  heard the Court's ruling which is pretty easy but the Court's

25  explanation -- are there any questions that either side has for

1  the Court.  Mr. Condyles?

2           MR. CONDYLES:  I believe I understand, Your Honor.

3  You're in effect saying that as long as we don't get into the

4  broader, costly discovery aspects of this and we can narrowly

5  tailor this and the parties can proceed and if we do, we can

6  come back to Your Honor for --

7           THE COURT:  Right.  You're saying no floodgates,

8  other side's saying tailored, focused and something else --

9  targeted.  There we go.

10          MR. CONDYLES:  Thank you, Your Honor.

11          THE COURT:  All right.  Thank you.  Mr. Richards, any

12  question?

13          MR. RICHARDS:  No.  None, Your Honor.  I -- your

14  direction is very clear.

15          THE COURT:  Okay.  Ms. Tavenner, would you submit the

16  order?

17          MS. TAVENNER:  Yes, Your Honor.

18          THE COURT:  All right.  Thank you very much.  All

19  right.  Any further business we need to take up today?

20          MR. CONDYLES:  No, Your Honor.

21          THE COURT:  All right.  Mr. Condyles, thank you for

22  your argument.  Mr. Richards, thank you for your argument.

23          MR. RICHARDS:  Thank you, Your Honor.

24          COURTROOM DEPUTY:  All rise.  Court is now adjourned.

25                        * * * * *

# C E R T I F I C A T I O N

We, KIMBERLY UPSHUR, MARY POLITO and CINDY POST, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.


/s/ Kimberly Upshur
KIMBERLY UPSHUR


/s/ Mary Polito
MARY POLITO


/s/ Cindy Post
CINDY POST

J&J COURT TRANSCRIBERS, INC.      DATE:  December 6, 2013