| | |
|---|---|
| Jeremy V. Richards, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| (admitted *pro hac vice*) | Paula S. Beran, Esq. (VA Bar No. 34679) |
| Victoria A. Newmark, Esq. | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard, 13th Floor | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy:  (804) 783-0178 |
| Telecopy:  (310) 201-0760 | |
| | *Counsel to the Circuit City Stores, Inc.* |
| *Counsel to the Circuit City Stores, Inc.* | *Liquidating Trust* |
| *Liquidating Trust* | |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

In re:

CIRCUIT CITY STORES, INC., et al.,

            Debtors.

Case No. 08-35653-KRH

Chapter 11

---

Alfred H. Siegel, solely as Liquidating Trustee for the Circuit City Stores, Inc. Liquidating Trust,

            Objector,

v.

CarMax, Inc.
(Claim No. 14809),

            Claimant.

Contested Matter

---

**MOTION OF ALFRED H. SIEGEL, TRUSTEE,
FOR SUMMARY ADJUDICATION DISALLOWING IN FULL CLAIM NO. 14809
FILED BY CARMAX, INC. AND CARMAX AUTO SUPERSTORES, INC.; AND
<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF</u>**

Alfred H. Siegel, solely as liquidating trustee to the Circuit City Stores, Inc. Liquidating

Trust (the "Trustee") hereby moves this Court, pursuant to Bankruptcy Rule 9014(c) and 7056

and Federal Rules of Civil Procedure, Rule 56 for a summary adjudication disallowing in full, with prejudice, Claim No. 14809 (the "CarMax Claim") filed against the estate (the "Estate") of Circuit City Stores, Inc. ("Circuit City," the "Debtor" or the "Company") by CarMax, Inc. ("CarMax") and CarMax Auto Superstores, Inc. ("CarMax Superstores" and, together with CarMax, the "CarMax Entities").  A true and correct copy of the CarMax Claim is attached hereto as Exhibit "A."

Pursuant to his Forty-Third Omnibus Objection to Claims [Dkt. No. 11854], the Trustee objected to the CarMax Claim and numerous other claims, seeking to expunge the CarMax Claim on the basis that the Debtor's records show no liability to the claimant.  CarMax responded by reaffirming the allegations of the CarMax Claim supported by the two-paragraph declaration of Daniel G. Bloor, who asserted, without foundation, that he had "personal knowledge" of facts relevant to the CarMax Claim and summarily contending that the Estate had liability to CarMax "pursuant to the terms and conditions of [the] Separation Agreement. . . ." [Dkt. No. 12059].  As a result, the Trustee's objection to the CarMax Claim has been continued from time to time.

The CarMax Claim in fact asserts two separate claims: the first, a contractual indemnity claim (the "Indemnity Claim") in an unliquidated amount; and the second, which can best be described as a partial refund claim (the "Partial Refund Claim"), for approximately $21 million.  As more fully set forth below, the CarMax Claim, which does not raise any relevant disputed facts, is devoid of merit and should be summarily disallowed in full.

# I.

## RELEVANT FACTS

The Trustee is informed and believes that the following relevant facts are not disputed by either the Trustee or the CarMax Entities:

1. CarMax was a wholly owned direct subsidiary of Circuit City; one of its subsidiaries was and still is CarMax Superstores. On or about May 22, 2002, Circuit City and CarMax entered into that certain Separation Agreement (the "Separation Agreement"), in anticipation of, and to facilitate a spin-off of CarMax as a separately traded public company. A true and correct copy of the Separation Agreement is attached to the CarMax Claim and a full and complete copy is attached hereto as Exhibit "B." The spin-off was effectuated on or about October 1, 2002.

2. The Separation Agreement provided for a transfer by Circuit City of certain assets to CarMax and its subsidiaries (referred to as the "CarMax Group") and an assumption by the CarMax Group of liabilities pertaining to the CarMax business. In particular, the Separation Agreement contemplates the execution of various "Deeds and Assignments" (defined in section 2.3 thereof) providing for a transfer of assets, including the "Real Property," and various "Instruments of Assumption" (defined in section 2.5 thereof), providing for the assumption of "CarMax Group Liabilities."[1]

3. In connection with the Separation Agreement, Circuit City assigned to CarMax Superstores its leasehold in interest in twenty-three real property leases (collectively, the

---

[1] "Real Property" is defined in Schedule 2.2(a) to the Separation Agreement. Schedule 2.2(a) sets forth a series of leases to be transferred to the CarMax Group, including some of the Subject Leases (defined below).

"Specific Leases") for locations leased by Circuit City from third party landlords at which the CarMax Entities conducted and continue to conduct business. Circuit City's leasehold interests in the Specific Leases were assigned to CarMax Superstores pursuant to assignments of lease (individually, an "Assignment of Lease" and collectively, the "Assignments of Lease"), all of which were in the form, or substantially in the form attached hereto as Exhibit "C." Pursuant to each Assignment of Lease, CarMax Superstores "hereby assumes and agrees to be bound by all of the obligations of the tenant under the Lease to be paid or performed during the period beginning on the date hereof."

4. There are two specific provisions of the Separation Agreement that are implicated in the CarMax Claim. The first is section 4.2 (the "Indemnification Provision") which provides, inter alia, that Circuit City will indemnify CarMax and CarMax Superstores for losses incurred by them arising directly or indirectly out of the following:

> (a) any breach of any covenant, agreement or obligation of Circuit City Stores or a Circuit City Subsidiary contained in this Agreement or any of the Ancillary Contracts or in the Deeds and Assignments or the Instruments of Assumption;
>
> (b) any and all liabilities arising out of or relating to the Circuit City Stores Information; or
>
> (c) any failure to perform or satisfy any liabilities attributed to the Circuit City Group (including any Excluded Liabilities).

5. The second relevant provision is section 8.6 (the "Contingent Lease Payment Provision"), which provides, in relevant part, as follows:

> In recognition of Circuit City Stores' continuing contingent liability on 23 leases previously assigned by Circuit City Stores to a subsidiary of CarMax, on the Closing date and immediately prior

> to the Separation, CarMax shall make a one-time special dividend payment (the "Special Dividend") to Circuit City Stores in the amount of $28.4 million.

The Trustee is informed and believes that the Special Dividend was paid to Circuit City.

## II.

## THE CARMAX CLAIM

**A.    The Indemnification Claim.**

6.    The CarMax Claim asserts two separate and distinct claims. The first (the "Indemnification Claim") is based on the Indemnification Provision and is summarized in the following two paragraphs of the Schedule to the CarMax Claim:

> Under the terms of the Separation Agreement, the Debtor indemnified and agreed to hold CarMax and its subsidiaries harmless for any and all losses incurred by any of the CarMax companies arising out of, relating to or due to or in connection with, directly or indirectly, any breach of any covenant, agreement, or obligation of Circuit City contained in various documents, including the assigned leases.
>
> Circuit City remained obligated on the leases when they were assigned to CASI. Under the terms of the assigned leases, there are representations and obligations of Circuit City, which if breached or not complied with could result in defaults in the assigned leases.

7.    The CarMax Entities acknowledge that as of the date of the filing of the CarMax Claim, neither of them has received notification from any landlord that any breach has occurred under any of the Specific Leases. Indeed, the CarMax Entities go on to state that the Indemnification Claim is "being filed in order to preserve any potential claim" that either of them may have against the Debtor.

B.  **The Partial Recovery Claim.**

8. The second claim (the "Partial Recovery Claim") made by the CarMax Entities is based on the Contingent Lease Payment Provision. The CarMax Entities contend that the Special Dividend of $28.4 million made pursuant to that provision was paid "in exchange" for Circuit City's "continued contingent liability" on the Specific Leases and further contend that in the event that this continued contingent liability is discharged in Circuit City's bankruptcy, the CarMax Entities should be reimbursed and refunded a portion of that payment. Exhibit "C" purports to calculate that refund at approximately $21.4 million, using the "weighted average life" of the Specific Leases and a discount rate of 9.3%.[2]

### III.

### THE INDEMNIFICATION CLAIM MUST BE DENIED

A.  **Circuit City Did Not Indemnify the CarMax Entities for any Breaches Under the Specific Leases.**

9. The CarMax Entities contend that under the Separation Agreement, Circuit City agreed to indemnify them for "any breach of any covenant, agreement, or obligation of Circuit City contained in various documents, <u>including the assigned leases</u>," [emphasis added]. However, a review of the Indemnification Provision reveals that Circuit City's indemnity obligation under section 4.2(a) is limited to "any breach of any covenant, agreement or obligation of Circuit City Stores or a Circuit City Subsidiary contained in this Agreement or any of the Ancillary Contracts or in the Deeds and Assignments or the Instruments of

---

[2] It appears that the "weighted average life of leases" used in the CarMax Entities' damage calculation includes not only the initial term of the Specific Leases, but any and all options to extend the term of those leases.

Assumption". "Ancillary Contracts" are limited to the Tax Allocation Agreement, the Transition Services Agreement, the Employee Benefits Agreement and the Confidentiality Agreement.[3]

10.  Thus, on its face, the Separation Agreement does not provide for an indemnity by Circuit City arising out of a breach of any of its obligations under any of the Specific Leases.[4] On the contrary, pursuant to the Assignments of Lease, CarMax Superstores expressly assumed Circuit City's obligations under the Specific Leases and, as between itself and Circuit City, became the primary obligor with respect to performance of the Specific Leases.

B.  **The CarMax Claim Must Be Disallowed Pursuant to Bankruptcy Code § 502(e)(1)(B).**

11.  Even if the Indemnification Provision encompassed losses to the CarMax Entities arising out of breaches by Circuit City of its obligations under the Specific Leases, the CarMax Claim would still be subject to disallowance under Bankruptcy Code § 502(e)(1)(B), which provides that a claim for reimbursement or contribution must be disallowed to the extent that "such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." A claim for indemnity is a claim for "reimbursement" within the scope of section 502(e). *See Sorensen v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92 (S.D.N.Y. 1992); *Capital Industries, Inc. v. Regal Cinemas, Inc. (In re Regal Cinemas, Inc.)*, 393 F.3d 647, 650 (6th Cir. 2004); *In re Pacor, Inc.,* 110 B.R. 686, 690 (E.D. Pa. 1990); *In re Pettibone Corp.,* 162

---

[3] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Separation Agreement.

[4] Any attempt by the CarMax Entities to imply an indemnity obligation is foreclosed by section 11.6 of the Separation Agreement, which provides that the Separation Agreement and ancillary documents constitute the entire agreement of the parties with respect to the subject matter thereof.

B.R. 791, 809 (Bankr. N.D. Ill. 1994) ("a claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within the meaning of section 502(e)(1)(B)").

12. As the CarMax Entities acknowledge, no claim for breach of any of the Specific Leases had been asserted against them and the CarMax Entities do not allege they have incurred any losses on account of any alleged breach by Circuit City of any of its obligations under the Specific Leases. Accordingly, the entirety of the CarMax Claim remains contingent and should be disallowed.

### IV.

### THE PARTIAL RECOVERY CLAIM MUST BE DISALLOWED IN FULL

13. The CarMax Entities' claim to recover a portion of the Special Dividend due to lack of consideration is based upon an inaccurate paraphrasing of the Contingent Lease Payment Provision. Specifically, the CarMax Entities contend that the $28.4 million paid to Circuit City was a contractual payment made "in exchange for" Circuit City's "continued contingent liability" on the Specific Leases. This assertion is inaccurate and at odds with the precise language of the Separation Agreement for at least two reasons.

14. First, the payment made to Circuit City was not a contractual payment, but rather a "one-time special dividend payment," made by a subsidiary to its parent. A dividend is a type of distribution on account of shares in a corporation. Va. Code Ann. § 13.1-603 (2014). Under Virginia law, distributions do not need to be supported by any consideration. Va. Code Ann. § 13.1-653 (2014).

15. Secondly, the Special Dividend was not made "in exchange" for Circuit City's "continuing contingent liability" on the assigned leases. Rather, section 8.6 states that the dividend was made "in recognition of" Circuit City's continuing contingent liability, i.e., to compensate Circuit City for potential liability on those leases even though the obligations thereunder had been expressly assumed by CarMax Superstores. Clearly, the Special Dividend could not have been made "in exchange for" Circuit City's "continuing contingent liability," which was a pre-existing liability running from Circuit City to the Landlords under the Specific Leases and, thus, one that could only be released by those landlords, not by the CarMax Entities. *See* 2-17 Powell on Real Property § 17.04 (2014) (while an assignment subjects the assignee to liability, it does not relieve the tenant unless the lease otherwise provides; the tenant remains liable and, if sued by the landlord, has a cause of action over against the assignee). Indeed, the CarMax Entities obtained no benefit (contractual or otherwise) from Circuit City's "continuing contingent liability," which, as noted, runs to the benefit of the Landlords, not the CarMax Entities. Under the Assignment of Leases, CarMax Superstores expressly assumed those "continuing contingent liabilities" and, as between itself and Circuit City, became the primary obligor thereon.

## V.

## **CONCLUSION**

16. For all of the reasons set forth herein, both the Indemnification Claim and the Partial Recovery Claim are, on their face, without merit and thus, the CarMax Claim should be summarily disallowed in its entirety.

| | |
|---|---|
| Dated: March 31, 2014 | TAVENNER & BERAN, PLC |

                                                                       /s/ Lynn L. Tavenner
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Facsimile: (804) 783-1078

                  - and -

Jeremy V. Richards, Esq.
(admitted *pro hac vice*)
Victoria A. Newmark, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

*Counsel for Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

## CERTIFICATE OF SERVICE

   I hereby certify under penalty of perjury that on the 31st day of March 2014, a true and correct copy of the foregoing Motion of Alfred H. Siegel, Trustee for Summary Adjudication Disallowing in Full Claim No. 14809 Filed by CarMax, Inc. and CarMax Auto Superstores, Inc.; and Memorandum of Points and Authorities in Support Thereof was served via CM/ECF or first class mail, postage prepaid, as follows:

Paul S. Bliley Jr.<br>
Williams Mullen<br>
Williams Mullen Center<br>
200 South 10th Street, Suite 1600<br>
Richmond, VA 23219

        /s/  *Lynn L. Tavenner*
           Counsel