IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In re:

CIRCUIT CITY STORES, INC., et al., ) Case No. 08-35653-KRH
) Chapter 11
Debtors. )
) (Jointly administered)

DECLARATION OF TRUSTEE ALFRED H. SIEGEL
IN SUPPORT OF MOTION FOR AUTHORITY TO (A) EMPLOY PROCESS
GENERAL, LLC AS NOTICING AGENT AND (B) UTILIZE TRUST STAFF TO
PROVIDE SERVICES AS CLAIMS AGENT

I, Alfred H. Siegel, declare as follows:

1. I am the Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), having been duly appointed pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), which was confirmed by the Bankruptcy Court on September 10, 2010, and which became effective on November 1, 2010.

2. Pursuant to the Plan and the Confirmation Order, the Liquidating Trust succeeded to all of the rights and powers of a debtor-in-possession under sections 1107 and 1008 of the Bankruptcy Code as of the effective date, and is now entrusted to administer the Trust and its assets. Under the Plan and the Liquidating Trust Agreement, as the Trustee, I am deemed to be the representative of the Debtors as the party in interest in their chapter 11 cases, and am specifically authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations thereunder.

3.      I make this Declaration in support of the Liquidating Trust's Motion for Authority (a) employ Process General, LLC as noticing agent, and (b) utilize Trust staff to provide services as claim agent (the "Motion"). All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Motion.

4.      Since the effective date of the Plan, the Trust has employed a staff comprised of former Circuit City personnel, who have been integrally involved in assisting me with respect to all operations of the Trust. Under my direction, the Trust staff has maintained a master database of all claims filed and scheduled in these cases, and has worked closely with KCC to ensure that the official claims register in these cases accurately reflects the claims as filed and as modified by Court order or agreement of the parties pursuant to procedures approved by this Court. Currently, the Trust staff provides the requisite Court orders or settlement agreements to KCC so that it may modify the official claims register.

5.      I make the Motion as part of my ongoing efforts to minimize costs wherever possible in order to maximize the distribution to unsecured creditors in these cases. The Debtors' bankruptcy cases have been pending since November, 2008. The Plan was confirmed over three years ago, and the Trust has made significant progress liquidating assets, pursuing and resolving litigation, and objecting to claims. The Trust no longer requires the substantial claims agent services that were necessary to assist the administration of these cases in their earlier phases. Of the over 17,000 claims filed in the cases, fewer than 700 claims remained unresolved. External activity on the claims register is minimal; all adjustments to the claims register arise

DOCS_LA:278510.1 12304/003

from the occasional settlement agreement or Court order modifying the claim, which are already internally processed by the Trust staff.

6.  Particularly in light of the reduced obligations of KCC as claims and noticing agent at this stage in the cases, I have determined that the Trust can obtain the services provided by KCC at a significantly lower cost through (a) the employment of PG and (b) the utilization of Trust staff, without any disruption of services or sacrifice of quality of services.

7.  Despite the reduced requirements of KCC, its invoices remain substantial. In the past 6 months, KCC's average invoice has totaled approximately $40,000, including monthly website maintenance cost of $22,415. The balance of the invoices is primarily related to claims register adjustment. There have been very few recent filings that have required KCC to perform noticing services.

8.  In an effort to reduce expenses and conserve estate resources, I and my staff have been conducting due diligence for some time into an alternative claims administration platform. After considering the size and scope of the services required by these estates, the Trustee has determined that PG and the Trust staff can provide the necessary services (including maintaining the official claims register) at a greatly reduced expense. First, all of the claims register maintenance and adjustment services will be performed by the Trust staff at no additional cost to the Trust. Second, PG's monthly website maintenance fee is $8,000, far lower than the fee charged by KCC, which will result in annualized savings of approximately $170,000. Finally, PG will perform the few likely required noticing services at rates lower than those charged by KCC.

3

9.    On April 22, 2014, the Liquidating Trust served KCC with a notice of termination of services as required pursuant to Section VI(A) of the KCC Agreement for Services (the "KCC Agreement"), which was approved pursuant to the KCC Order. At my direction, the Trust has filed a Motion to Terminate Employment of Kurtzman Carson Consultants LLC as Claims and Noticing Agent.

10.    The Trust seeks the authority to retain PG as noticing agent on the terms and conditions set forth in the PG Services Agreement, dated April 11, 2014 (the "PG Agreement"), a true and correct copy of which is attached as Exhibit A hereto. As set forth more fully in the PG Agreement, PG will provide the following services at the request of the Trust, at rates that are lower than those currently charged by KCC:

    A.    Prepare and serve required notices that the Trustee and/or the Court deem necessary or appropriate.

    B.    File a proof of service for each notice that includes (i) an alphabetical list of persons on whom PG served the notice along with their addresses and (ii) the date and manner of service.

    C.    Maintain a website (www.processgeneral.com/circuit city) specifically for these bankruptcy cases, from which anyone may download certain claim information and obtain other relevant information and documents pertaining to these cases at no charge. (Additional information about claims may be obtained by contacting a designated claims hotline that will be maintained by the Trust staff.)

    D.    Provide other noticing and related administrative services as may be requested from time to time by the Trustee.

11.    I believe that PG has the experience and expertise to render the necessary services in a professional and efficient manner in accordance with the Federal Bankruptcy Rules and the Local Bankruptcy Rules. The compensation to be provided to PG for services rendered is set forth in the PG Agreement. I believe that the proposed compensation is fair

4

and reasonable under the circumstances. PG's fees shall be at the expense of the Trust and shall be paid directly by the Trust in the ordinary course of business as administrative expenses as permitted by the Plan.

12. The Trust also seeks to utilize the Trust staff to perform the remaining "claims agent" services. The Trust staff consists of several former Circuit City managers with substantial expertise and experience in accounting, and great familiarity with Circuit City's accounting processes in particular, as well as with the claims asserted against the Debtors. As a result, at no additional cost to the Trust, the Trust staff can provide the claims agent services more efficiently and effectively than the current process, particularly given that no additional proof of claim may be filed other than by Court order or consent of the Trust, and the staff already maintains a complete internal database of claims from which it provides direction to KCC to adjust the official claims register as claims are modified by agreement or Court order.

13. The Trust proposes that the Trust staff will:

    A.    Obtain from KCC and thereafter maintain all proofs of claim or interest (and any amendments thereto) filed in these cases.

    B.    Maintain an official claims register in these cases by docketing all proofs of interest or claims (and their amendments) in a claims database (which is already maintained by the Trust) that includes the following information for each such claim or interest asserted:

        i.    The name and address of the claimant or interest holder and any agent thereof (if the proof of claim or interest was filed by an agent);
        ii.    The date that the proof of claim or interest was received by KCC;
        iii.    The claim number assigned to the proof of claim or interest;
        iv.    The asserted amount and classification of the claim;
        v.    Claim transfer information, if the transfer was completed prior to the Distribution Record Date as provided in the Plan;
        v.    The amount allowed, when appropriate, either by Court order or agreement of the parties pursuant to procedures previously approved by this Court; and

5

      vi.    Updated address or other information as may be submitted by claimants from time to time.

C.     Implement security measures to ensure the completeness and integrity of the claims register. Periodically audit the claims information to assure the Clerk's Office that the claims information is being appropriately and accurately recorded in the official claims register.

D.     Transmit to the Clerk of Court a summary of and/or a copy of the claims register as frequently as requested by the Clerk of Court.

E.     Provide the public access to copies of the proofs of claim or interest filed in these chapter 11 cases without charge by appointment during the business hours of 10:00 a.m. – 4:00 p.m. Eastern Time in a viewing area at the following address: 200 Westgate Parkway, Richmond, VA 23233.

F.     Allow the Clerk of Court to independently audit the claims information at any time (during regular business hours).

G.     Maintain a designated claims hotline (to be identified in the website proposed to be maintained by PG) by which interested parties may request claims information, to which the Trust staff will respond promptly.

H.     Comply with such further conditions and requirements as the Clerk of Court or the Court may at any time require or request.

14.     I believe that the Trust staff has the experience and expertise to provide claims administration services more efficiently and effectively than the current process. The Trust's proposal would eliminate the current duplication of efforts and substantial costs of claims agent services.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that if called as a witness, I could and would competently testify as to all of the matters stated herein.

Executed this 16th day of June, 2014, at Woodland Hills, California.

_____
Alfred H. Siegel

DOCS_LA:278510.1 12304/003