1             IN THE UNITED STATES BANKRUPTCY COURT
2               EASTERN DISTRICT OF VIRGINIA (RICHMOND)

In re                         )    Case No. 08-35653-KRH
3                             )    Richmond, Virginia
CIRCUIT CITY STORES, INC.,    )
4         Debtor.             )    July 30, 2014
_____ )    2:08 PM
5                             )
Alfred H. Siegel,             )    Adv. Proc. No. 10-03600-KRH
6         Plaintiff,          )
v.                            )
7                             )
Sony Electronics Inc.,        )
8         Defendant.          )
_____ )
9                             )
Alfred H. Siegel,             )    Adv. Proc. No. 10-03571-KRH
10        Plaintiff,          )
v.                            )
11                            )
State of Illinois Department  )
12 of Revenue, through Brian  )
Hamer, its Director,          )
13        Defendant.          )
_____ )
14
                    TRANSCRIPT OF HEARING ON
15 FOR ADV. PROC. NO. 10-03600-KRH:  MOTION OF PLAINTIFF TRUSTEE
  ALFRED H. SIEGEL FOR PARTIAL SUMMARY ADJUDICATION AS TO CLAIMS
16    III, V, VI AND VII OF THE SECOND AMENDED COMPLAINT, AND
        MEMORANDUM IN SUPPORT THEREOF [DOCKET No. 107];
17
FOR ADV. PROC. NO. 10-03571-KRH:  MOTION FOR SUMMARY JUDGMENT
18        ON BEHALF OF ALFRED H. SIEGEL [DOCKET NO. 7];

19  FOR 08-35653-KRH:  DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION TO
  CLAIMS (DISALLOWANCE OF CERTAIN LEGAL CLAIMS) (DOCKET NO.
20   4585) - MOTION OF ALFRED H. SIEGEL, TRUSTEE, FOR SUMMARY
   ADJUDICATION DISALLOWING IN FULL CLAIM NO. 6555 FILED BY
21        UNICAL ENTERPRISES, INC. [DOCKET NO. 13373];

22  LIQUIDATING TRUST'S THIRTY-FIRST OMNIBUS OBJECTION TO CLAIMS
     (DISALLOWANCE OF CERTAIN INVALID CLAIMS) AND NOTICE OF
23   LIQUIDATING TRUST'S THIRTIETH OMNIBUS OBJECTION TO CLAIMS
  (DISALLOWANCE OF CERTAIN INVALID CLAIMS) [DOCKET NO. 11809]
24
              BEFORE THE HONORABLE KEVIN R. HUENNEKENS,
25                UNITED STATES BANKRUPTCY JUDGE

```
1   APPEARANCES:

2   Plaintiff:              ROBERT J. FEINSTEIN, ESQ.
                            PACHULSKI STANG ZIEHL & JONES LLP
3                           780 Third Avenue
                            34th Floor
4                           New York, NY 10017

5                           ANDREW W. CAINE, ESQ.
                            PACHULSKI STANG ZIEHL & JONES LLP
6                           10100 Santa Monica Boulevard
                            13th Floor
7                           Los Angeles, CA 90067

8                           LYNN L. TAVENNER, ESQ.
                            PAULA S. BERAN, ESQ.
9                           TAVENNER & BERAN, PLC
                            20 North Eighth Street, Second Floor
10                          Richmond, VA

11  Defendant:              ERIC SEILER, ESQ.
                            FRIEDMAN KAPLAN SEILER & ADELMAN LLP
12                          7 Times Square
                            New York, NY 10036
13
                            PETER BARRETT, ESQ.
14                          TIMOTHY S. BAIRD, ESQ.
                            KUTACK ROCK L.L.P.
15                          1111 East Main Street
                            Suite 800
16                          Richmond, VA 23219

17

18

19

20

21  Transcription Services:         eScribers
                                    700 West 192nd Street
22                                  Suite #607
                                    New York, NY 10040
23                                  (973) 406-2250

24  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

1            THE CLERK: All rise.  Court is now in session.

2    Please be seated and come to order.

3            THE CLERK:  Circuit City Stores, Inc., items 1

4    through 4 on proposed agenda.

5            MR. FEINSTEIN:  Good afternoon, Your Honor.

6            THE COURT:  Good afternoon.

7            MR. FEINSTEIN:  For the record, Robert Feinstein,

8    Pachulski Stang Ziehl & Jones, counsel for the Circuit City

9    Trust.  With me today, Your Honor, is my partner, Mr. Caine,

10   my cocounsel, Ms. Beran and Ms. Tavenner, and from the Circuit

11   City Trust Ms. Ferguson, Ms. Bradshaw, and Ms. Fose.

12           THE COURT:  All right.  Very good.

13           MR. FEINSTEIN:  Your Honor, the Sony matter is the

14   first item up on the calendar, and on that basis let's propose

15   to take that up first.

16           THE COURT:  I think that'd be a great idea.

17           MR. FEINSTEIN:  Okay.  Thank you.

18           Your Honor, the matter before you today is the

19   Trust's motion for partial summary judgment.  As we indicated

20   in the opening paragraph of that motion, it was necessitated

21   by our efforts to get Sony to reconcile the credits, that are

22   asserted through various causes of action in the complaint, of

23   approximately seventy-three million dollars, and Sony's

24   refusal -- despite continued protestations to the contrary in

25   their papers --Sony's refusal to engage in a reconciliation of

Colloquy                                                                          4

1    those credits on a substantive basis that the credits were

2    duly earned under the applicable program requirements.

3          Sony has indicated they were prepared to stipulate

4    that certain matters were submitted, but we really wanted to

5    get to the heart of the matter to try to narrow the issues for

6    trial, because the seventy-three million of credits, the

7    chargebacks, bill backs, et cetera, are quite voluminous, as

8    we indicated in our paper.  The evidence supporting those

9    credits fills binders that are taller than I am.  And I know

10   that's not much, but still, it's a lot of paper.

11         Now, we have tried, but failed, to get Sony to engage

12   on this.  So we moved, really, in an effort to substantially

13   minimize the evidence that we would have to adduce at trial.

14   And we would also like to flush out --and it turns out, by way

15   of cross-motion, I think we have, in part --some of Sony's

16   asserted legal defenses, because they've been dancing around

17   these issues, really, for years at this point.

18         But I do want to focus on the relief that's sought in

19   our motion, which was largely for a factual determination that

20   the seventy-three million in credits were earned under various

21   programs or for bill backs and warranty claims and the like

22   and that under the terms of the programs that gave rise to the

23   earning of those credits that Circuit City was in compliance

24   and that the credits are good, reserving for a later date,

25   whether by subsequent motion practice or at trial, any kind of

Colloquy                                                                      5

1   legal arguments, overarching legal arguments that Sony might

2   have with respect to Circuit City's entitlement to those

3   credits or to use those credits.

4          And in that respect the motion served its purpose.

5   On Friday Sony filed its opposition to the motion as well as

6   two declarations.  They also filed a cross-motion and,

7   finally, a motion, I guess seeking to have today's hearing

8   continued and to have today's motion consolidated with their

9   cross-motion for summary judgment, to be heard sometime in

10  August.  They noticed their motion for the August 27th omni

11  but asked to have it heard earlier.  As I'll get to Your

12  Honor, we're actually prepared to schedule an earlier hearing

13  on a summary judgment motion, and we'd like to make a cross-

14  motion as well.

15         But let me come back to what's on for today.  We

16  think the motion should go forward today insofar as it seeks a

17  determination by the Court that the credits were validly

18  earned under the applicable programs.  And I think Sony's

19  responsive papers actually made matters quite easy, because,

20  as we'll demonstrate, they've conceded that fifty million of

21  the seventy-three million of credits and chargebacks were

22  earned under and in compliance with the programs.

23         And, in fact, I have a demonstrative, if I could hand

24  up to Your Honor?

25         So, Your Honor, Sony submitted both an opposition and

1   two declarations, and specifically in the declaration of Ms.

2   Chang, who's an attorney with the Friedman Kaplan firm, she so

3   much as acknowledged that 49.8 million dollars worth of

4   credits were proper and earned under the program, subject to,

5   again, whatever overarching legal arguments Sony may have.

6          So in the demonstrative that I presented to Your

7   Honor the top box, if you will, the total receivables of 72.8

8   million, these are the items that are listed in the adversary

9   complaint.

10          In the middle box there are several line items that

11  add up to forty-nine million.  The first line item is 40.9

12  million, and in Ms. Chang's declaration and in column 6 of

13  Schedule Ashe acknowledges, on Sony's behalf, that 40.9

14  million of the credits were in compliance with the program

15  requirements and not disputed on that basis.  So that's a huge

16  relief from an evidentiary standpoint in that so much of what

17  had been the subject of a general denial before we now know is

18  admitted.

19          In addition, Ms. Chang points out that 7.8 million,

20  the next line item in the middle box, is also acknowledged as

21  in compliance with the program requirements.  The difference

22  that the parties have over this bucket, if you will, of

23  credits is that Sony said that they basically set off these

24  claims before they filed their proof of claim, their general

25  unsecured claim.  So while there's been a lot of dancing

1   around in this case about whether or not Circuit City can use

2   credits as offsets against pending receivables, here Sony's

3   actually done it in the context of preparing and filing a

4   proof of claim that took 7.8 million of credits, which Ms.

5   Chang says, on Sony's behalf, are undisputed, earned under the

6   program, and Sony chose to apply them to their pre-petition

7   claim.

8         The Trust's position is that we agree the credits are

9   valid but that they're usable by the Trust to offset, in the

10   first instance, Sony's 503(b)(9) claims.  So we just differ on

11   how these undisputed credits would be used as offsets, whether

12   to the 503(b)(9) or the pre-petition.

13         The last two items are rather relatively small dollar

14   amounts, warranty claims and pricing deductions and shortage

15   claims.  These are also acknowledged in Sony's papers as valid

16   and undisputed on a factual basis, once again, subject to

17   whatever arguments they want to make on an overarching basis

18   about statute of limitations or the rider or otherwise.  So

19   you get to a total of 49.8 million dollars of credits that are

20   factually undisputed, in compliance with the programs or the

21   other pertinent provisions of the agreements, subject to their

22   legal defenses.

23         So the balance of 22.9 million is identified by Sony

24   as being in dispute.  And this was what we were trying to

25   flesh out by way of this motion.  So we now know the universe

1    of claims that they contend are either not adequately

2    documented or not in compliance with the programs, and we're

3    happy to deal with these at trial.  We think we have

4    substantial evidentiary support.  We will prove those claims

5    out.  But at least for today what we'd like the Court to find

6    is that approximately fifty million dollars of credits are now

7    conceded, undisputed, and that we don't have to go through any

8    evidentiary hearings, testimony, what have you, to prove out

9    those claims at trial.

10           Now, aside from the statute of limitations argument,

11   which we're going to propose, Your Honor, we address at the

12   same time as Sony's cross-motion for summary judgment, the

13   only other argument made by Sony in their motion papers is an

14   assertion that the plaintiff, the Trust, hasn't come up with

15   adequate evidence on this motion, competent, admissible

16   evidence to establish the credit claims.  And it is correct

17   that the only submission made by the Trust was the declaration

18   of Ms. Fose, who's in the courtroom, who has extensive

19   knowledge of the company's business records and programs and,

20   more to the point, can establish through Circuit City's

21   business records how these programs functioned, how the

22   credits were earned.  And so we think her evidence is more

23   than competent and admissible.  But even the attack on Ms.

24   Fose's knowledge or competence, if you will, is really, kind

25   of, academic at this point, because in their papers Sony has

1   admitted that fifty million dollars of the credits were

2   earned.

3         So we think there is no bar to the entry of an order

4   today finding that at least as to the fifty million dollars of

5   conceded credits there is no disputed issue of fact and that

6   these credits were duly earned under the program, because

7   Circuit City met all their requirements, because this has been

8   admitted by Sony in the context of these motion papers.

9         So now let me address the final argument that Sony

10  made, which is the statute of limitations argument.  Sony's

11  made a cross-motion.  What we would propose, Your Honor, is

12  that the portion of their opposition to this motion dealing

13  with the statute of limitations issue be consolidated with the

14  hearing on their motion.  And what we would propose in terms

15  of trying to expedite that determination that Sony requested,

16  subject to Your Honor's calendar, is that that matter be heard

17  on August the 21st, which is one of the few days in August

18  that we don't have a deposition scheduled.

19        And as I indicated, Your Honor, we'd like to cross

20  move.  And the purpose of the cross-motion is to assert that

21  even assuming for the sake of argument that these claims are

22  time barred, and we will lay out why they're not, but even

23  assuming for the sake of argument that they were, under the

24  doctrine of equitable recoupment the Trust can use those very

25  same claims, without any limitations being applicable, to

Colloquy                                                    10

1  offset Sony's claims.  These all arise out of the master

2  dealer agreement.

3        We'll lay this out in our briefs and affidavits in

4  connection with the summary judgment motion to be heard in

5  August, but under the doctrine of equitable recoupment the

6  fifty to seventy-three million dollars of claims could be used

7  to offset Sony's claims without regard to limitations.

8        And Sony's asserted a 503(b)(9) claim of, I believe,

9  forty-two million dollars, a general unsecured claim in the

10  neighborhood of fourteen million dollars.  If you take back

11  the credits that they apply, that seven million dollars of

12  credits that they apply to the unsecured, their claim goes up

13  a bit.  But we feel that we have enough in the way of valid

14  credits to offset the entirety of their claims.

15        And so even if statute of limitations is an issue,

16  and we don't think it's a valid one, through recoupment we get

17  to, essentially, the same place, which is the cancellation of

18  all their claims.  And at that point we're only talking about

19  a dispute over the excess of the seventy-three million over

20  the amount of their claims and whether those can be asserted

21  affirmatively.  I think that's where the no cash value issue

22  comes into play.  But in terms of offsetting Sony's -- the

23  entirety of Sony's claims -- recoupment will clearly work,

24  even if the statute of limitations is an issue.

25        Again, just to preview, Your Honor, we don't think

1    statute of limitations is an issue, because Sony's argument

2    conflates when the credits were earned with when the statute

3    of limitations begins to run, because a limitations period

4    runs when there's a breach of contract.  So Sony's argument

5    that the credits were earned on day one and therefore you had

6    eighteen months, really, it misses the mark, because at some

7    point along the way Sony denied the use of those credits.

8    That would be the dishonoring of the contract.  That's the

9    action that gives rise to the breach of contract claim as to

10   which an eighteen-month statute --

11          We don't think that that occurred until, perhaps,

12   2010, because -- and, again, we'll prove this out in the next

13   set of briefing -- from the time that Circuit City shut down

14   through the time this adversary was commenced there was a lot

15   of back-and-forth with Sony asking about the credits, but they

16   never really denied them.  And, as I've said, for years since

17   then, Your Honor, we've been hearing there's a rider argument.

18   There is cash value.  We've never really heard a clear

19   defense, but we never really heard clearly no, these credits

20   won't be honored until well after the time period that the

21   credits were earned.  So, again, we'll brief that in the next

22   go-around.  But I think the appropriate way to do that, Your

23   Honor, would be to cross move to their motion on statute of

24   limitations to brief the recoupment issue to show how it

25   works.

1          So, Your Honor, I think I might stop here, because I

2     think through their concession about the fifty million we've

3     really accomplished what we set out to do with this motion,

4     which is to substantially narrow the factual issues.  We think

5     it's ripe for a judicial determination that as to those

6     credits they're undisputed in terms of their compliance with

7     the program requirements.  And the balance of the issues that

8     are raised we can address in the context of Sony's summary

9     judgment motion and our cross-motion.

10         THE COURT:  All right.  Well, let me ask.  I guess

11    the question that immediately comes to my mind, which is if

12    I'm coming back on the 21st or the 27th or whatever to hear

13    cross-motions for summary judgment why don't I entertain

14    Sony's motion today to continue this hearing to that date and

15    just decide everything at one time, as I had suggested last

16    time it would probably be best to do, rather than to take it

17    in a piecemeal thing?  Because I suspect that I'm going to

18    hear in just a second that no, they haven't conceded fifty

19    million dollars.  I'm just thinking that might happen.  But

20    why wouldn't that be the better procedure to follow here?

21         MR. FEINSTEIN:  Your Honor, honestly, we don't have a

22    strong feeling about this.  I mean, the important thing was

23    fleshing out that there was no contest as to the validation of

24    fifty million dollars of credits.  Whether Your Honor puts it

25    in an order or not, it's in Sony's papers.

Colloquy                                                             13

1   We have got a month of depositions coming up.  We've

2   really been trying to narrow the issues.  So we've achieved

3   that, and we have no problem with Your Honor deferring the

4   entry of an order on this point until sometime in August when

5   the matter's heard.

6   There are other respects, Your Honor, in which we'd

7   like to get the rest of their legal arguments on the table.

8   It's been a struggle, but I'm going to, I think, reserve on

9   that for now.

10   THE COURT:  Okay.  Thank you.

11   MR. BARRETT:  Good afternoon, Your Honor.  Peter

12   Barrett on behalf of Sony Electronics Inc., here with Eric

13   Seiler from Friedman Kaplan in New York and my colleague, Tim

14   Baird, from Kutak Rock.  Mr. Seiler's going to present Sony's

15   opposition to the motion for partial summary judgment.

16   THE COURT:  What happened to Mr. Goldwater?

17   MR. BARRETT:  Mr. Goldwater will be back soon.

18   He's --

19   THE COURT:  Oh, excellent.

20   MR. BARRETT:  You haven't scared him away.

21   THE COURT:  Okay.  Well, I was hoping not, I mean,

22   but -- welcome, Mr. Seiler.

23   MR. SEILER:  Well, thank you, Your Honor.  And even

24   though I've been pro haced in this case for a while it's my

25   first time before the Court, so thank you for allowing me to

1    appear before you.

2              THE COURT:  Of course.

3              MR. SEILER:  And it's much appreciated.

4              So let me start where Your Honor ended.  I think it

5    makes complete sense to do this once, but now that you've

6    heard at least a preview of the position I think it's fair for

7    my client for me to give you my preview, as well, on the key

8    issues.  But I think -- and, by the way, we did suggest

9    exactly what Your Honor just proposed to the trustee's

10   counsel, and they --

11             THE COURT:  Oh, I remember.  Mr. Goldwater said that.

12             MR. SEILER:  Right.

13             THE COURT:  And I suggested that that might be a

14   better procedure as well.

15             MR. SEILER:  And we were told they wouldn't do it.

16   Indeed, we asked to make our motion as a cross-motion to their

17   motion, and they told us they didn't think it was a proper

18   cross-motion.  So when you look at our motion, which is now

19   returnable at the end of August, it's not styled as a cross-

20   motion, because they didn't agree to let us do it.  I think it

21   would have been fine if they had agreed to it, but anyway,

22   that's where we are on that.

23             And I think it's worth just a minute to understand

24   why we couldn't work out the objective of not having six big

25   boxes of documents but just one schedule, because we thought

 1  we were working toward.

 2          THE COURT:  I got all your box right here.  That's --

 3          MR. SEILER:  Okay.  Well, this is the box on the

 4  papers that relate to the motion.

 5          THE COURT:  Oh.

 6          MR. SEILER:  But there are these bigger boxes that

 7  are the underlying documents that relate to the individual

 8  claims for credit that add up to the seventy-two (sic) million

 9  dollars.  And we told them all along we will sit with you and

10  go through each of the claims and tell you where there's a

11  disagreement as to amount, the date, when it was submitted.

12  And where there's no disagreement as to whether the program

13  event -- did you sell enough goods, did you put on the

14  advertising, whether they occurred or not -- we'll tell you

15  where there's no agreement and where there is agreement.

16  Because we were able to confirm that there were program

17  fulfillments for lots of them.

18          But they wanted something more.  They wanted us to

19  stipulate to the validity of the claims.  And we said wait a

20  minute.  We don't think any of these claims are valid.  Not

21  just the vast majority that are barred by the statute of

22  limitations, but all of them, because our position is they

23  can't get cash for claims where they --what they could have

24  done was say we have a credit.  We've earned it.  And we'd

25  like to buy some more goods.

1        But they went out of business.  And they liquidated.

2   On January of 2009 they stopped buying goods.  And we said

3   wait a minute.  You can't use your credits.  Sort of like

4   frequent flyer miles.  You can use them to buy flights.

5   Sometimes even magazines.  But you can't get cash.  And our

6   position is you can't get cash.

7        And they say well, that's fine.  That's your defense.

8   Just stipulate to the validity of our claim, and then you'll

9   have your defense.  The Court will deal with it later.  But

10  it's not a defense.  It's one of the elements of their claim.

11       Take claim number 3, breach of contract.  Is there a

12  contract?  We agree about that.  Did the plaintiff fulfill all

13  of its obligations under the contract?  We say no.  Because

14  one of their obligations was -- let's say it was an

15  advertising program.  Did they put the ad up?  Sure on some of

16  them.  But then did they say we would like to buy more goods

17  because we put the ad up?  No.  They never ordered more goods.

18  So we say plaintiff, you didn't fulfill your obligations under

19  the contract.

20       And so we say that's your burden.  That's not my

21  defense.  Yes, my argument might defeat you.  But it's your

22  burden to go forward.  So I don't think it was right for our

23  client to be asked or for the Court to enter an order that

24  validated the claim subject to my defense, because it's their

25  element, their burden of proof.

Colloquy                                    17

1       And you'll notice in the argument today counsel never

2   said the word validity, but that's what's in his motion.

3   That's what was the problem.  If they hadn't been seeking

4   validity this would have been the kind of discussion you

5   have -- I think it's Federal Rule of Evidence 1006.

6       You have a big mountain of underlying material.  One

7   side puts together a schedule.  I'm sure it happens all the

8   time in bankruptcy court for preference claims and the like.

9   And the other side says I don't agree with this.  I do agree

10  with that.  And then the amount of proof that has to come in

11  is reduced, because no Court would tolerate either party

12  putting on a witness to say yes, I had this document.  This

13  document's true.  This document's true.  The parties should

14  work that out.

15      And we would have worked that out.  And I think we

16  are working it out now through these papers that have been

17  submitted to the Court, which was an inefficient way to do it,

18  but that's why we got here.  And -- but we do, by the way,

19  they wanted us to agree that all seventy-two million had been

20  fulfilled.  And we said well, wait a minute.  We've agreed

21  with you.  And we could use Mr. -- the demonstrative is

22  perfect.  We agreed with you that 7,878,000, not only were

23  they fulfilled.  That's the second line of the second box

24  of --

25      THE COURT:  I see that.

1       MR. SEILER:  Right.  We've agreed that they met the

2  fulfillment and that we've already given them credit for

3  those.  The question is does it count against our unsecured

4  claim or does it count against our -- like a claim from the

5  last twenty days.  And we're going to try and work that out

6  too.  But the Court has nothing to find with respect to that

7  7.8 million dollars of claims, because they're going to get

8  credit for it.  It's not going to be a dispute the Court needs

9  to adjudicate.

10       So the seventy-two million comes down to sixty-three

11  million.  And then the sixty-three million basically -- you

12  don't see that number here, but it's seventy-two --

13       THE COURT:  No.  I'm writing it down.

14       MR. SEILER:  -- right.  If you --

15       THE COURT:  -- so I'll remember it.

16       MR. SEILER:  Right.  So -- sorry.  So it's exactly at

17  63.8 million, to be more precise.  And so of that amount we

18  think 22,950,000 of it -- that's the subtotal of the third

19  box -- are claims that Ms. Fose included in her affidavit but

20  which there are documents that either dispute them or there

21  are no documents that support them.  Nine million had a

22  document --I'll give you an example, that one of them, they

23  had to sell fifty-three million dollars of a certain kind of

24  good to earn the credit.  And they sold twenty-four million.

25  And so it's on the list.

Colloquy                                                                19

1          It came through the system that Ms. Fose is

2    responsible for bringing to the Court's attention, which, by

3    the way, she didn't do any of the inputting for.  We don't

4    challenge her competence to do things.  We just say she didn't

5    do this thing.  So she's just looking at a printout.  But

6    that -- it includes that line item for a credit for that

7    program.  Well, they only did half the program.  So we say you

8    didn't finish the program, you don't get the money.

9          And I believe now counsel agrees that he's going to

10   have to come forward with proof to show they did the things if

11   he wants to get the twenty-two million.  Now, that's not so

12   terrible.  It's less than a hundred categories of claims, and,

13   as often is the case, there are a few big ones and a lot of

14   tiny ones.  So we'll probably focus on the big ones.  They

15   probably won't spend the Court's time over a 500 dollar claim

16   in the middle of our trial.

17         But as to the other ones, the forty million dollar

18   number, we have said we have confirmatory information that you

19   did the things the program required with the exception of

20   ordering more goods.  You can't get cash.  And that's why --

21   that's an issue the Court's going to have to decide.  Can they

22   or can't they get cash?  And that'll be an important issue,

23   just as the statute of limitations issue will be important.

24         And let me just spend a minute on that, because I

25   think through a somewhat inefficient process we've gotten to a

Colloquy                                                                  20

1    coherent place, although we've wasted some of the Court's time

2    and a lot of the parties' money.  They know which ones we

3    think we have confirmatory information, which ones we think

4    don't.  I don't think there's any order for the Court to

5    enter, either today or in three weeks, on this motion, because

6    we'll work out a list of what is in each box.  And then the

7    question will be whether they can prove that they win the

8    claim.  For that they're going to have to prove that they can

9    get cash affirmatively.

10             But on the statute of limitations it sounds like --

11   well, I don't want to preclude them, but it sounds like they

12   don't dispute that the eighteen-month statute applies to post-

13   petition claims.  And it sounds like they say but the time to

14   start running isn't the day the claim was submitted, because

15   if it is they're all -- they waited too long, because they

16   went out of business in the winter of '09.  They didn't sue

17   until November of 2010.  They put in for these claims before

18   eighteen months before they sued.

19             And so he's saying well, the clock doesn't start

20   running when we submit the claim.  We earn the claim.  We

21   submit the claim.  That's the last step.  You don't pay the

22   claim.  It starts running in the middle of the mediation that

23   didn't work.  I don't know what the event is.  But it's pretty

24   clear from these programs that when they earn the claim by

25   performing the steps under the program and submit the request

Colloquy                                                        21

1   it's either due in zero days or thirty days.  Ninety-five

2   percent of the credits are due in zero days.  They get

3   immediate credit.  And a few of them were thirty days.

4          And we didn't pay.  We didn't pay any of them.  And

5   they waited until November of 2010.  Not counsel here.  I

6   think it was the predecessor counsel in the bankruptcy.  They

7   didn't bring the case.

8          So it either is barred by the statute of limitations

9   or it's not.  I think it's a pretty clear legal issue that the

10  Court will be able to address when it's returnable later in

11  August.  Maybe there'll be a factual dispute about the accrual

12  event, so it's possible there'll be the factual issue, but I

13  think it's probably not.

14         And then there is this other issue.  They're saying

15  well, wait a minute.  Even if our claims 3, 5, 7, and 8 are

16  barred, our affirmative claims are barred, we still think we

17  can get recoupment or offset from these otherwise barred

18  claims.  And we think that the law is against that, and we'll

19  address that.  I think it's perfectly sensible, if that's

20  their argument, for that to be addressed by the Court all at

21  one time, because --

22         And now you take the whole case, our whole dispute

23  with them.  Our preference claims that Kutak Rock lawyers have

24  been diligently done, and the contract claims, which I've been

25  doing.  The statute of limitations applies to a big chunk of

1    what's between us.  Or it doesn't.  Because it's, like, fifty-

2    five million dollars of claims.  And when we get the Court's

3    guidance on that that will help the parties understand what

4    the dispute between them is one way or the other, and that

5    might help parties talk further, because my understanding is

6    these kinds of preference actions usually get resolved.  And

7    this is an unusual event that we're here both on the

8    preference action and the contract dispute, and we haven't

9    resolved anything, and we're on the -- not verge of trial, but

10   within weeks of trial.

11        And I think those are important things to be done.

12   I'm glad that counsel is willing to move the date a little

13   earlier if it's convenient for the Court, and we would address

14   any schedule.

15        I would like the opportunity to respond to their

16   cross-motion, if that's the way the Court -- it makes sense to

17   me for it to be a cross-motion.  But whatever it is, there

18   ought to be an agreed upon briefing schedule between the

19   parties, with enough time for the Court to review the

20   materials and hold that oral argument on the arguments.

21        So my recommendation, just to sum up at the end, is

22   that this motion be held in abeyance.  I don't think it would

23   be appropriate to enter an order under 7056 granting anything,

24   because it's not a claim or part of a claim.  What it is is

25   allowing a summary of evidence instead of underlying evidence.

Colloquy                                          23

1         We will work that out without the need for a court

2    order.  And where we don't, where there is need for additional

3    proof, I think counsel is willing to go forward.  So I think

4    you could deny it without prejudice or hold it in abeyance.  I

5    would request that the Court not enter an order today, and

6    then we hear argument on the issues that really will affect

7    the statute of limitations issue and any cross-motion at the

8    time the Court concludes.

9         And I thank you for attention to my argument.

10        THE COURT:  All right.  Thank you very much, Mr.

11   Seiler.

12        MR. FEINSTEIN:  Your Honor, today is very

13   illuminating.  I've never met Mr. Seiler before seeing him in

14   the hallway before.  I have dealt with his partner.  And I do

15   need to put on the record, Your Honor, several conversations

16   that really contradict what Mr. Seiler just represented to the

17   Court.

18        When we were last before Your Honor and discussing

19   the summary judgment motion that we had just filed, and Mr.

20   Goldwater was urging that the Court hear them at the same

21   time, we said can you tell us what your motion is about so

22   that we can understand whether or not it's a cross-motion,

23   because our motion was seeking a determination as to the

24   validity, the earning of the credits under the programs.

25        And I asked Mr. Goldwater point blank, is your motion

1   seeking a determination that these were not earned under the

2   applicable requirements of each of the programs?  And he said

3   I'm not going to tell you.  I'm not going to tell you what our

4   motion's about.  And we've been fishing for a long time.

5          And, again, it's been very illuminating today to try

6   to found out whether there is a defense based on the rider,

7   whether there is a defense based on the notion of cash value

8   and future purchases.  And we've been getting the runaround.

9   Plain and simple.  We asked him could you please tell us.  Is

10  your motion about the rider?  Well, it's -- I don't -- I can't

11  tell you.  It might.  It might not be.  We only found out

12  about the statute of limitations argument when they finally

13  made their motion.  So I'm glad we made our motion, because it

14  fleshed out a very important issue six weeks before trial.

15         Now, as to whether or not Sony ever was willing to

16  engage us in reconciling the credits, I spoke with Mr.

17  Goldwater.  So Mr. Caine was on the line as well.  And this

18  was before we made the motion.  And his words were they're all

19  in dispute.  When we asked him could you please -- could we

20  sit and go through the credits?  We tendered the schedule that

21  was attached to our complaint along with a separate

22  stipulation that we actually did make progress on.  They were

23  willing to reconcile the preference payments, the amounts that

24  were paid and the invoices and so forth, but they were

25  unwilling to engage on reconciling the credits.  And it seemed

Colloquy                                                          25

1   to us that they were playing hide the ball, because, like I

2   said, their view was everything is in dispute.

3           So it is incredible, Your Honor, for Mr. Seiler, whom

4   I've never met before today, to address the Court and tell you

5   that Sony was always willing to reconcile these credits.  They

6   simply weren't.  Their unwillingness is what forced us to file

7   this motion.

8           But now I've got to come back, Your Honor, to an

9   issue that has been -- it's the subject of probably half a

10  dozen depositions that are coming up.  It's the subject of

11  subpoenas that have been served on third parties.  And that is

12  this very crisp, narrow issue.

13          If Circuit City or the Trust establishes the validity

14  of these credits, it goes past the factual compliance with the

15  program, and it either -- because it defeats statute of

16  limitations or, by way of recoupment, it has these credits to

17  use.  Can the Trust offset these against Sony's claims against

18  the estate?  Some fifty-five, sixty million dollars of claims.

19  And we've been trying to find out whether there is a defense

20  based on the rider.

21          In the complaint, Your Honor, we brought one of the

22  counsels a declaratory judgment that the rider didn't form the

23  basis for a defense.  Why did we do this?  Because Mr.

24  Barrett, dating back to 2010, dealing with Skadden Arps, who

25  tried to reconcile it back then, and we'll bring this out on

1   the next motion on the statute of limitations, simply wrote

2   back no cash value.  And that's it.  And we pressed and

3   pressed for answers for years and never got a straight answer

4   as to what Sony thinks this rider means and how Sony thinks

5   this rider and the language about cash value and the like

6   might operate as a defense to offset, because offset is most

7   of this case.

8           I mean, there's a very modest amount, a few million

9   dollars of credits above and beyond the amount of Sony's

10  claims, as to which seeking affirmative cash recovery would be

11  a live issue.  But most of this case is about offset.  And we

12  tried to get a straight answer whether Sony thinks the rider

13  and the no cash value precludes offset.  And they won't talk

14  to us.

15          So now Mr. Seiler gets up in front of the Court, and

16  I think I'm hearing that this is a live issue, that their view

17  is if the Trust establishes the validity of these credits that

18  they could only have been used for purchases after Circuit

19  City went out of business and that they can't be used to

20  offset Sony's proofs of claim.

21          Now, our discovery that we've taken already, one of

22  Sony's witnesses, one of the Trust's witnesses -- and, again,

23  I'm sorry to put evidence in front of Your Honor, but this has

24  been a festering issue -- it is that routinely through the

25  life of this relationship, Sony-Circuit City, these credits

1  were earned, and they were applied to pending invoices.  They

2  weren't applied to future purchases in the sense that a credit

3  was earned, that Circuit City would say I'd like to buy new

4  material and I'm going to use this as currency.

5        Instead, what happened routinely -- and their witness

6  testified to this in California last week -- is that when the

7  credits were earned Circuit City would cut a check for open

8  invoices, deduct the credit amount, so it was applying it to

9  old purchases, at least as of the time that the credits were

10 earned.  These were, I suppose, future purchases, if you go

11 back to when the initial goods were purchased that gave rise

12 to the credit.  But the parties practiced an industry

13 practice -- is that these credits are applied to open

14 invoices.

15       That's all we want to do in this case is establish

16 the validity -- it's not all that we want to do, but a major

17 portion of what we want to do is establish that we have enough

18 credits to offset the entirety of Sony's claims.

19       And I still don't know from hearing Mr. Seiler

20 whether he thinks that that's prohibited by the no cash value

21 concept, because offset is very different than affirmatively

22 recovering cash from Sony.

23       So I guess it's still a live issue, and I guess we

24 still have to go forward with subpoenas to Costco and Target

25 and all these other companies who've been doing business with

1   Sony, because our belief is that the same offsetting process

2   was routinely used in those relationships as it was in this

3   one.  But this mantra of no cash value on future purchases has

4   been thrown at us without any further substance beyond what I

5   just heard today, which was the most illuminating thing I've

6   heard on the issue.  So I guess it's still a live issue.

7        So in that respect the motion today served its

8   purpose.  We've eliminated fifty million dollars of credits.

9   We've figured out that they have been sitting on this

10  eighteen-month limitation issue for a very long time, because

11  I don't think that was raised in the mediations or to us,

12  certainly, other than, kind of, a boilerplate allegation and

13  the answer.

14       So here we are.  So I guess we understand that this

15  is going to have to be litigated, and I guess it's a contract

16  instruction and a legal issue, but our view is based on years

17  of history between the parties that if -- and to the extent

18  that the Trust establishes the validity of these credits,

19  regardless of the no cash value language, which is irrelevant,

20  regardless of the future purchase language, which is

21  irrelevant, these credits can be used to offset Sony's claims.

22       THE COURT:  All right.  Well, what I would like to do

23  is I think that the one thing that is clear to me is that you

24  accomplished what you needed to accomplish by filing your

25  motion for summary judgment.  But I don't want to decide this

1  today.  I want to decide it in the context of the cross-

2  motions for summary judgment where the issue is going to come

3  up, and I'm going to take it at one time and decide

4  everything.  I think that is the much more efficient way to do

5  that.

6          I mean, I know exactly what your position is.  I

7  mean, I'm not surprised at your position.  I know exactly what

8  Mr. Seiler's position is.  I'm not surprised by his position.

9  I mean, I can read these documents and go through it and see

10 it.  I know exactly the arguments I'd be making.  If you were

11 on the other side you know what arguments you'd be making.  If

12 Mr. Seiler was sitting at this table he knows the arguments

13 you'd be making.

14         So, I mean, there's a lot of mysteries that are not

15 really mysteries.  We all can figure this stuff out pretty

16 clearly as far -- not necessarily what the answer is, but at

17 least what the positions are.

18         MR. FEINSTEIN:  Well, I'm smarter today than I was

19 yesterday, Your Honor.  I'll tell you that.

20         THE COURT:  Well, I'm glad for that.

21         MR. FEINSTEIN:  But, Your Honor --

22         THE COURT:  I don't believe you, but I'm glad for

23 that.

24         MR. FEINSTEIN:  Well, I'm better educated today.

25         THE COURT:  I meant that in a kind way.  I'm sorry.

1          MR. FEINSTEIN:  Actually --

2          THE COURT:  But I could have been --

3          MR. FEINSTEIN:  -- I might be a little less smart

4    today, as I'm getting old.

5          But, Your Honor, going forward into the discovery, I

6    think we want to -- again, if there's a question about this I

7    guess this would be a good time for Sony to raise it.  We

8    don't intend to litigate, or through discovery and otherwise,

9    Circuit City's compliance with the program requirements, save

10   for what Mr. Seiler mentioned.  Did it require that future

11   purchases be made?  I don't think so.  But in terms of whether

12   or not the program requirements in terms of sales amounts and

13   so forth were met, we think that we're done on that fifty

14   million.  If there's a problem with that, before we begin a

15   dozen depositions and third-party subpoenas, we'd like to know

16   that.

17         And in terms of a briefing schedule, Your Honor, I

18   neglected to mention this in the opening, but what we propose

19   is that we file both an opposition to their summary judgment

20   motion and our cross-motion on the recoupment issue by next

21   Friday, the 8th, and have their response due the following

22   Friday, the 15th, with the hope that Your Honor could hear us

23   on the 21st, which, as I said, is one of the few days where

24   there's no deposition scheduled.

25         THE COURT:  All right.

1        MR. SEILER:  Could we just have till the Monday

2   instead of the Friday to respond?

3        THE COURT:  I'm sorry.  I'm going to let you -- yes.

4   I'm going to let both of you talk about this so we can figure

5   out what the dates are going to be and the like.  I'm not

6   going to set a schedule without hearing from both sides.

7        But what you're proposing, Mr. Feinstein, is the 8th

8   for filing your motion --

9        MR. FEINSTEIN:  In opposition to theirs.  Right.

10       THE COURT:  -- in opposition to theirs.  Their

11  response on the 15th, and then we would hear this on the 21st

12  of August, which is a Thursday.

13       MR. FEINSTEIN:  And, Your Honor, counsel just said

14  he'd like, I guess, until Monday the 18th.  It's cutting into

15  Your Honor's time, not mine, because we can't reply.  So, I

16  mean, I have no objection to that, but that's up to the Court.

17       THE COURT:  Well, I'm not back until the 18th, and I

18  promise you I'm not going to read it until I get back.  I

19  mean, I am going to --

20       MR. FEINSTEIN:  That's a good choice.

21       THE COURT:  -- read everything.  I'll be back on the

22  18th, and so I would have no problem with it being -- if it's

23  filed on the 15th I'm not going to look at it until the 18th

24  anyway, so the 18th would be fine with me.

25       MR. SEILER:  Thank you, Your Honor.

1          Excuse me for one second.

2          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

3          MR. FEINSTEIN:  Excuse me for one second.

4          Your Honor, I have one other matter off point.  I

5    know Your Honor will be gone for two weeks, and without

6    getting into the substance of it, we tried to initiate a meet

7    and confer on two document production issues that are, kind

8    of, hampering our ability to prepare for depositions.  And I'm

9    not sure how we can arrange, if need be, to have motion

10   practice heard while Your Honor is away.

11         One is not producing, I think, what was required by

12   the order on the motion to compel, and the other is simply

13   that we produced a bunch of documents, communications between

14   the parties, and the production from Sony that came back

15   didn't have the very same documents.  And we put them on

16   notice last week.  There's a problem here.  There's a hole in

17   their production where they were not prepared to meet and

18   confer with us this morning, but we're going to have to meet

19   and confer on this, and this could result in further motion

20   practice.

21         THE COURT:  Okay.  I will address that in just a

22   second.  Let's get the briefing schedule down when we're going

23   to have a hearing.

24         Mr. Seiler, the 8th, I assume, is okay with you, but

25   you wanted to go with response on the 18th as opposed to the

1    15th.  And then is the 21st available for you?

2            MR. SEILER:  It's not perfect, but I'll make it -- if

3    it's good for the Court, it's good for me.

4            THE COURT:  Okay.  How much time do you think we're

5    going to need for the summary judgment?

6            MR. SEILER:  Argument?

7            THE COURT:  Yes.  For the argument.

8            MR. SEILER:  I think this -- I mean, I've never been

9    before Your Honor before today, so I don't know how much you

10   engage.  I would think it would, you know, I would think a

11   couple --

12           THE COURT:  I never ask any questions.  I promise.

13           MR. SEILER:  Somehow don't believe that, Your Honor.

14   A couple of hours.  I can't imagine it would take more than

15   that.  And maybe less.

16           THE COURT:  Okay.

17           MR. SEILER:  I don't think it's --

18           THE COURT:  I'd like to do it in the morning, but

19   just because I have a dentist appointment in the afternoon.

20   If it was absolutely necessary I could reschedule that, but,

21   actually --

22           MR. SEILER:  I was going to say --

23           THE COURT:  --anything to get away from going to the

24   dentist.

25           MR. SEILER:  I was going to say, if I had a -- I

1  would say --

2          THE COURT:  I mean even listening to summary judgment

3  motions.  But --

4          MR. SEILER:  I'll bring my drill, Your Honor.

5          THE COURT:  But if we could do it in the morning on

6  the 21st I can accommodate that.  So if we set it, like, at 10

7  o'clock, would that work?

8          MR. SEILER:  Sure.  I mean, I would come down from

9  New York in the morning to do it, but that should be fine.

10          THE COURT:  Okay.  Does that work for you, Mr.

11  Feinstein?

12          MR. FEINSTEIN:  Yes.  We have depositions in the --

13  well, the depositions are here.

14          UNIDENTIFIED SPEAKER:  They're here.

15          MR. FEINSTEIN:  Yes.  That's fine.

16          THE COURT:  All right.

17          MR. FEINSTEIN:  That's fine.

18          UNIDENTIFIED SPEAKER:  That's right.  I may be --

19          THE COURT:  I thought you'd said that was a day where

20  you did not have depositions.

21          MR. FEINSTEIN:  No, no.  I'm sorry.  The day before,

22  on the 20th --

23          THE COURT:  Oh.

24          MR. FEINSTEIN:  -- we have depositions, but they're

25  in Richmond.

Colloquy                                          35

1           THE COURT:  They're in Richmond.  Okay.

2           MR. FEINSTEIN:  So we'll be here.

3           THE COURT:  So the 21st.  Okay.  So the 21st, then,

4   will be the day, with the cross-motion due on the 8th and then

5   your reply on the 18th of August.

6           MR. SEILER:  That's fine, Your Honor.

7           THE COURT:  Does that suit?

8           MR. SEILER:  That's fine, Your Honor.

9           THE COURT:  Okay.

10           MR. SEILER:  Thank you.

11           THE COURT:  Very good.  All right.

12           Now, we got that out of the way.  Let's figure out

13   how you guys are going to meet me and argue these motions that

14   need to be argued about.  Can we have a meet and confer --

15           MR. SEILER:  Sure.  So on the meet and confer we

16   certainly can.  The request for the meet and confer came

17   eighteen minutes before the time that was set for the meet and

18   confer this morning.

19           THE COURT:  Okay.

20           MR. SEILER:  So we could meet and confer tomorrow.

21   I'm not the one who has the --

22           THE COURT:  Excellent, because I'm around tomorrow,

23   so let's do --

24           MR. FEINSTEIN:  Okay.  That'd solve our problem.

25           THE COURT:  Okay.  We'll do that tomorrow.

1          MR. SEILER:  It may not be -- it may be people who

2     are here, but I think -- let me just -- I think from --

3     because I know what their concerns are.  Their concerns are

4     that their knowledge of the universe of documents that they

5     found makes them think that our search was less than complete.

6          So let's assume we meet and confer.  What I'm going

7     to say to them, I'll say it now, is if you have this concern

8     we should investigate it.  So I'm not going to have finished

9     the investigation by tomorrow.

10         So one of two things will happen when we investigate.

11    We'll either find that they're right, and we have more

12    documents, and we will give them to them, or we will find that

13    we can't find any more documents, and they'll either on that

14    be satisfied or they'll think no, we didn't do a good job, and

15    they'll want to make an application.  And so I don't think

16    tomorrow is the day they're going to be in a position to make

17    that application, because I know I'm not going to have been

18    able to investigate their concerns through the client --

19         THE COURT:  Right.

20         MR. SEILER:  -- in twenty-four hours.  So I think

21    saving time tomorrow is not really a useful place to do it.

22         I'm happy --

23         THE COURT:  Well, I think --

24         MR. SEILER:  --to make sure that we try to

25    accommodate their concerns.  I don't know if their concerns

1    are valid or not valid, but I can't --

2         THE COURT:  But talk to each other.  Okay.  You're

3    going to meet and confer tomorrow.

4         MR. SEILER:  We'll talk to them tomorrow.

5         THE COURT:  Okay.

6         MR. SEILER:  The people from our side who are

7    knowledgeable about these issues will be available to talk to

8    them tomorrow.

9         THE COURT:  That's what I want.  And what you need to

10   let your client know is that I'm not going to tolerate

11   documents not being produced.  I mean --

12        MR. SEILER:  Right.

13        THE COURT:  -- everything has to be produced.  I

14   think I made that very clear last time.  And if I didn't, I'm

15   making it --

16        MR. SEILER:  Okay.

17        THE COURT:  -- more clear today.

18        MR. SEILER:  It was clear.  But that we agree and

19   search doesn't mean we find what they expect we'll find.

20        THE COURT:  I understand what you're saying.

21        MR. SEILER:  And that's what may be the problem.  But

22   because they think we should have found something more than we

23   found, that gives me the ammunition to tell the client wait a

24   minute.  Why didn't you find this, this and this?  Where did

25   you look?  And so we will push them to do that.

Colloquy                                                              38

1      And it isn't worth -- even if I disagreed with the

2  scope of what Your Honor has ordered that we produce, it isn't

3  worth our time or the Court's time or our money to fight about

4  it.  We'll find it if it exists.  We'll give it to them.  If

5  it's irrelevant, it'll be irrelevant.

6           THE COURT:  It's irrelevant.

7           MR. SEILER:  And so I'm --

8           THE COURT:  That's what I said last time.

9           MR. SEILER:  We're past that.  If it turns out that

10  we have to look in ten million places I'll come back to you,

11  because I'm not going to cause someone to do something that's

12  incredibly stupid without at least asking the Court.  But

13  short of that we're going to do it.  And I don't even know

14  what the shortage is.

15           THE COURT:  That's why you want to --

16           MR. SEILER:  It wasn't my issue.

17           THE COURT:  -- talk to each other.

18           MR. SEILER:  That's right.

19           THE COURT:  That's what I want you to do.

20           MR. FEINSTEIN:  But, Your Honor, we sent a detailed

21  e-mail last Thursday, so this wasn't a fresh topic from this

22  morning with seventeen minutes --

23           THE COURT:  I am confident.  I know how this stuff

24  works.

25           MR. FEINSTEIN:  -- with copies of documents that we

Colloquy                                                                    39

1   got that should have come from them.  We have a key deposition

2   tomorrow of their 30(b)(6) witness, so we're being put behind

3   the eight ball here when they drag their feet.  We didn't get

4   an acknowledgement from last week's e-mail that they even

5   received it.  So we had to call this morning saying could we

6   meet and confer sometime before court.  It wasn't on seventeen

7   minutes notice.  We said anytime this morning before court.

8   So we're getting slow walked here, and we're being prejudiced

9   in a number of depositions we're trying to take.  They were

10  supposed to produce these documents.

11         THE COURT:  Okay.  And I can promise you that if

12  there are games being played then we're going to expand

13  depositions.  I'm not going to tolerate that kind of thing.

14  But I want you to talk to each other.

15         MR. FEINSTEIN:  Okay.

16         THE COURT:  I mean, you're both saying this is what I

17  think the other person's going to say.  I am confident you

18  sent an e-mail.  I am confident that everybody is acting just

19  the way they should in this kind of litigation.  But I want

20  you to talk with each other, see if you can narrow this down,

21  and if there are documents that should have been produced and

22  there is some sort of a slow walk going on, you will let me

23  know that, and I will take appropriate action if I find that

24  that's what happened.

25         I don't want it to happen, and I'm saying that very

Colloquy                                                    40

1   clearly.  I don't expect it to happen.  But if it does I will

2   address that.

3           MR. SEILER:  Your Honor, and this witness, we've

4   already agreed, because we knew we weren't likely to be able

5   to produce everything in time.  We agreed, Your Honor will

6   remember, to carve -- they could choose how much of the time

7   they wanted to carve out of the seven hours and save, and we

8   would bring the witness back again.  So that is an issue.

9           But we want to get this done.  We didn't agree that

10  it was relevant, but you ruled, and so we are going to comply.

11  And as to --

12          But one thing I would say.  I don't think we've been

13  communicating well.  Not just the two of us.  We never

14  communicated at all before today.  But I don't think

15  collectively the two sides have effectively communicated,

16  because we wouldn't be having these discussions in front of

17  you if we did.  And so I think it's our job to do better, even

18  if you weren't telling us to do better.  And you may be

19  suspicious about whether we will do better, but we'll prove --

20  at least on our side we will prove we can do better.

21          THE COURT:  Now that the two of you have met each

22  other I'd like you to become best friends.

23          UNIDENTIFIED SPEAKER:  No.

24          THE COURT:  And -- yes, exactly.

25          MR. FEINSTEIN:  Your Honor, before we become so

 1  friendly I need to correct something that's really important

 2  that Mr. Seiler just said to the Court.

 3          We talked in the context of the motion to compel

 4  about reserving some time for Ms. Sanscartier's deposition to

 5  the extent that a circumscribed set of information, which was

 6  communications with other vendors, was going to roll in later.

 7  And we haven't gotten that yet.  So I guess we'll have to

 8  continue for that purpose.

 9          But what I'm talking about in terms of failure to

10  produce is something that was called for by our initial

11  document request, which were communications between Sony and

12  Circuit City.  That hasn't been produced.  There is no

13  provision in any order that lets us take a second bite at Ms.

14  Sanscartier on stuff that -- communications between the

15  parties that are being produced late or not at all.  That's

16  very different.

17          MR. SEILER:  Look, if there --

18          MR. FEINSTEIN:  And that's what we're troubled by.

19          MR. SEILER:  If there are documents that we have that

20  we should have produced, and we find them late for some

21  reason, whether defendable or not, he'll have appropriate

22  remedy, and I won't fight with him about it.  It sounds like

23  some of these documents he actually has.  Sometimes one party

24  still has a document and the other one doesn't.  So if he has

25  the document he can ask about it.  He doesn't need to get it

 1    from me.

 2          But if we fall short in our document production we

 3    understand there'll be consequences.  And whether it's just

 4    because that's what happens in life or some other reason,

 5    we're not trying to hide the ball, and we're doing it as fast

 6    as we can and as competently as we can.

 7          THE COURT:  All right.  And --

 8          MR. SEILER:  And we will communicate better than we

 9    have.  Yes.

10          THE COURT:  And if there are problems with the

11    documents, I mean, we'll go into stoppage time with regard to

12    the deposition and make sure that you have an adequate

13    opportunity to be able to examine the witness at the --

14          MR. FEINSTEIN:  Well, what I'm going on record today,

15    Your Honor, we have Ms. Sanscartier's deposition tomorrow on

16    Sony-Circuit City issues.  Forget about Target and Costco.  We

17    don't think we have all the documents.  We've shown them

18    documents that were exchanged between the parties that we

19    produced and they didn't.  So we think there's a shortage.

20          THE COURT:  Okay.

21          MR. FEINSTEIN:  And our deposition is tomorrow, so --

22          THE COURT:  And you're going to talk, the two of you,

23    and see if that can't be worked out.  And if it can, great.

24    If it can't, then I'll hear you at the appropriate time.  And

25    I promise if I agree with your position that there'll be an

1    appropriate remedy.

2            MR. FEINSTEIN:   Thank you.   Now, there is an issue

3    about their production under the order that Your Honor entered

4    on our motion to compel.   And Your Honor may recall there were

5    three buckets of documents.   The first one that came

6    immediately was the dealer agreements with the ten or so

7    vendors.   The third bucket was the communications, the e-mails

8    and the like, and that's -- everybody understood that was

9    going to roll in, they would do the best that they can, and if

10   they didn't, we would continue Ms. Sanscartier's deposition.

11           It's the second one that we're concerned about.   The

12   second one was data that shows how the credits were applied.

13   And this goes to the offset issue, because our view is that

14   all of the dealers were routinely taking earned credits and

15   not applying them to future purchases but applying them to

16   pending invoices.   So we asked for -- deliberately asked for

17   the information, how were these credits applied, to prove out

18   that this was Sony's custom and practice with all dealers, to

19   take credits and apply them to open invoices.

20           So what we get back was here's a list of the credits

21   and here's the dates that they were applied.   But it doesn't

22   tell us what they were applied to, which was really the heart

23   of what we were seeking:   Were they applied to open invoices?

24   And Sony could cut this all short by just acknowledging yes,

25   everybody applies credits to open invoices.   But they're not;

1   they won't do that.  So we have to prove this, and this is a
2   critical piece of evidence that they were ordered to produce
3   and failed to.

4         MR. SEILER:  All right.  So we haven't had the meet
5   and confer.  And I'm not the one who has most of the
6   knowledge, so I say this all with some modest trepidation, but
7   we don't believe every vendor is the same, so we don't share
8   their view on relevance.  But I don't think their request,
9   fairly read in the first instance, had the degree of
10  particularity that their request now does, as it evolves.  But
11  we will deal with their request as it evolves.  And if it's
12  something that we can physically do, because we have the
13  information, and it isn't unbelievably burdensome to do, we
14  will just do it, without troubling anyone any further and
15  we'll do it as quickly as we can.  If it is ridiculously
16  burdensome, we'll suggest a less burdensome way.  And if you
17  don't want to take the deposition tomorrow, because you really
18  want to have everything lined up, you should talk to me about
19  that too.

20        None of this -- we're not trying to create problems.
21  And I think all of this has illustrated to me that,
22  collectively, we've not communicated very well.  I will take
23  responsibility for that on our side, and I will try and do
24  better.  But I don't see why we should be wasting the Court's
25  time to have these conversations.  I don't think it's the

1     appropriate thing to do; we should try and work it out first.

2             MR. FEINSTEIN:  On this point, Your Honor, we met, we

3     conferred, we moved to compel, we got a court order.  Now

4     we're at sanctions time.  They were supposed to produce that.

5     If there was some --

6             MR. SEILER:  See, that's --

7             MR. FEINSTEIN:  If there was some ambiguity, we were

8     in front of Your Honor the last time.  We worked on a form of

9     order; we submitted it:  Give us the data that shows how the

10    credits were applied.  And what we got back fell way short.

11            MR. SEILER:  So we think we've complied with the

12    order, but maybe this is why we haven't gotten along so well,

13    because we escalate from let's have a meet and confer, in

14    eighteen minutes' notice, to its sanctions time, in the space

15    of five minutes.  That's not how --

16            THE COURT:  We're not --

17            MR. SEILER:  -- we should practice law.

18            THE COURT:  -- going to do that today.  I agree.  And

19    that's not what we're going to do.  But what Mr. Feinstein's

20    saying is exactly correct; I did issue an order and did

21    compel, and the order has to be complied with.  So take a good

22    look at the order, meet with Mr. Feinstein, make sure that

23    complying with the spirit of the order, and get whatever needs

24    to be done.  That's what I'm saying.

25            MR. SEILER:  Okay.

1          THE COURT:  Okay?

2          MR. SEILER:  Thank you.

3          THE COURT:  Thank you.

4          MR. FEINSTEIN:  Thank you, Your Honor.

5          THE COURT:  All right.

6          MS. TAVENNER:  Good afternoon, Your Honor.  Lynn

7    Tavenner, also appearing on behalf of the trust.

8          While we still have Sony's counsel in here, I was

9    rising to address item 2, but I have been involved in the Sony

10   matter for more than eighteen minutes, and have been involved

11   since the inception when the adversary was filed.  And despite

12   the communication that has been promised today, I would

13   respectfully request from Your Honor, hearing that you are

14   going out of town, and hearing that there are issues that

15   potentially could be percolating, serious issues relating to

16   moving forward to prepare for trial, that Your Honor advise us

17   of appropriate chambers that we could contact in your absence,

18   in the event that matters can't wait for the two weeks that

19   you're gone.

20         THE COURT:  I will check with my colleagues, both on

21   this court and in the district court, and see who might be

22   available to be able to do that.  I know that Judge Phillips

23   is not available, which would be the logical person.  But

24   perhaps Judge Payne or Judge Hudson would be available; I can

25   talk with them.  I know that obviously Judge Spencer is not

Colloquy                                                          47

1    available --

2             MS. TAVENNER:  Other --

3             THE COURT:  -- for anything.  I mean, quite frankly,

4    I just don't know what their calendars are and what they would

5    be doing.  Or I might be able to get one of my colleagues in

6    one of the other courts.  Judge Santoro would not be able to

7    do it because he conducted the mediation.  But perhaps Judge

8    Kenney or Judge Mayer, if they're around.  But I will see

9    about that.

10            And what I will do is let you and Mr. Barrett know,

11   and my chambers will call your office and Mr. Barrett's office

12   tomorrow with what would be the appropriate way of handling

13   it.  But actually, the appropriate way of handling it is that

14   nobody be called while I'm gone, because that's going to make

15   me very upset, which I was hoping I was communicating,

16   obviously very ineffectively, beforehand, but we'll see how it

17   plays out.

18            MS. TAVENNER:  Thank you, Your Honor.

19            THE COURT:  All right.

20            MS. TAVENNER:  That does bring us to item 2 then on

21   today's docket.

22            THE COURT:  May Mr. Seiler be excused?

23            MR. BARRETT:  And Mr. Barrett?

24            THE COURT:  Okay.  Mr. Barrett has to sit here,

25   but --

1          MS. TAVENNER:  I'm happy for them to be excused, Your

2    Honor.

3          THE COURT:  Oh, you may be excused, Mr. Barrett.

4          MR. BARRETT:  Thank you, Your Honor.

5          MR. SEILER:  Thank you very much, Your Honor.

6          THE COURT:  You're welcome.

7          MS. TAVENNER:  Your Honor, with respect to the next

8    matter on the docket, this one we will not take up a great

9    deal of your time.  It's in the adversary against the State of

10   Illinois.  We had filed a motion for summary judgment and

11   actually had reported to you that we had reached a resolution

12   and were asking for additional time to have the settlement

13   documented, consummated, and had provided in our agenda that

14   we were going to request additional time.  I'm happy to report

15   that we do not need that now --

16         THE COURT:  Okay.

17         MS. TAVENNER:  -- and we will be filing the

18   appropriate paperwork to have the matter dismissed.

19         THE COURT:  Excellent.  Okay.

20         MS. TAVENNER:  And then that does bring us to two

21   additional matters that are on the docket that Mr. Caine will

22   handle today.

23         THE COURT:  All right.  Mr. Caine?

24         MR. CAINE:  Good afternoon, Your Honor.  For the

25   record, Andrew Caine, Pachulski Stang Ziehl & Jones for the

 1   liquidating trust.  I believe the first matter is Unical.

 2        THE COURT:  I would just note for the record that

 3   we're three games up.

 4        MR. CAINE:  Yes.

 5        THE COURT:  Okay.  Go on.

 6        MR. CAINE:  Yes.  Thank you, Your Honor, very happy

 7   about that.  I confirmed with Ms. Beran she would display a

 8   Dodger bobble head in her office if I gave her one; she said

 9   yes.

10        In the matter of the claim of Unical Enterprises,

11   Your Honor, the trust has filed a motion for summary judgment

12   in order to eliminate this claim.  There has been no response

13   by Unical, which is not surprising to us.  Unical and Circuit

14   City, prior to the bankruptcy petition, engaged in litigation

15   in federal court in California, and the result was a victory

16   by Circuit City.  Unical appealed and the bankruptcy petition

17   was then filed.  Unical sought relief from stay in order to

18   prosecute its appeal before the Ninth Circuit, and that

19   application was denied.

20        A number of years go by, Unical files a claim for

21   over four million dollars in this court on the identical

22   breach of contract claim that it asserted in the district

23   court in California, upon which it lost, and it was then

24   appealing to the Ninth Circuit.

25        After a number of years, we approached Unical and

Colloquy                                                            50

1    suggested that we grant them relief from the plan injunction

2    to liquidate their claim, if they could, through the

3    prosecutions at appeal before the Ninth Circuit.  Unical

4    declined.  They wanted to be able to enforce whatever judgment

5    they got.  So we filed a motion before this Court for relief

6    from the preliminary injunction to allow Unical to proceed

7    with their Ninth Circuit appeal, and then we'd come back to

8    this Court, depending upon how that happened.

9         Your Honor granted that motion.  We then gave notice

10   to the Ninth Circuit of that motion.  The Ninth Circuit then

11   set a briefing schedule.  Unical did not file its appellate's

12   opening brief.  The Ninth Circuit, as a result, dismissed the

13   appeal.  So we have now come back to Your Honor with evidence

14   of all of that procedure, and the motion includes copies of

15   all of the various orders and the dismissal by the Ninth

16   Circuit, and asked, under the doctrines of claim preclusion

17   and issue preclusion, all in the general doctrine of res

18   judicata, that the Unical claim be disallowed in its entirety,

19   for it has no validity.  They lost in the district court;

20   their appeal was dismissed.  So Your Honor, we ask that you

21   grant an order disallowing the Unical claim in its entirety.

22        THE COURT:  Does any party wish to be heard in

23   connection with the motion to disallow the Unical claim in its

24   entirety?

25        All right.  There being no objection and no objection

1    have been filed, the Court will grant that motion and will

2    disallow the Unical claim in full.

3           MR. CAINE:  Thank you, Your Honor.  We will prepare

4    an order.

5           The next matter we're here on, Your Honor, is the

6    trust's thirty-first omnibus objection with respect to the

7    claims of Vadim Rylov.  Those are two claims, 15022 and 15023.

8    We have set this matter for a substantive hearing with respect

9    to those claims, Your Honor, and Ms. Ferguson is here from the

10   trust, prepared to testify, if need be, with respect to the

11   matter.

12          Mr. Rylov filed two claims, Your Honor, as a putative

13   member, to use his terms, of a class that was proposed in a

14   class claim under the name of Mr. Skaf.  Your Honor might

15   recall that this class claim intended to prosecute a claim

16   based on overtime, lunch time, and other nonexempt employee

17   claims under the laws of the State of California.

18          The putative class plaintiffs attempted to proceed

19   with this class claim.  Your Honor denied that.  They went up

20   on appeal all the way to the Fourth Circuit, and it was denied

21   all the way up to the Fourth Circuit.  So the individuals

22   whose names were the proposed class plaintiffs then filed

23   individual claims, and those claims have been resolved, Your

24   Honor.

25          Mr. Rylov never filed any substantive claim, other

1    than to say I'm a member of this putative claim, so the trust

2    objected.  The trust objected on both procedural and

3    substantive grounds.  First, with respect to procedure, Your

4    Honor, which is independent of grounds to dismiss and disallow

5    both of the claims, the claims are duplicative.  And second,

6    they were filed late.  The claims bar date was in January of

7    2009 and the claims were filed in May of 2010.

8          Ms. Ferguson, if Your Honor wishes, can testify with

9    respect to the bar dates, the notices that went out, and the

10   timing of the filings of the claims.  Those are all

11   identified, Your Honor, in the objection -- on this objection

12   itself at pages 3 of 4.

13         THE COURT:  And the Court is very familiar with the

14   bar dates that have been established in this case.

15         MR. CAINE:  So on lateness alone, Your Honor, and

16   duplication, both of those claims should be disallowed in

17   their entirety.

18         With respect to substance, Your Honor, as I

19   mentioned, Mr. Rylov claims to be a member of the putative

20   class.  His response to the claim objection says only that he

21   would produce evidence, when the time comes, of his

22   entitlement to some claim.  He didn't respond to the lateness.

23   He didn't address any of the substance itself.

24         We have done a thorough investigation of these

25   claims, prior to resolving the matters with the putative class

Colloquy                                                              53

 1  plaintiffs, and determined, through conversations with both

 2  inside Circuit City counsel and outside counsel, that they've

 3  done a thorough investigation.  We're very much aware of the

 4  exempt versus nonexempt issues over time, that these are

 5  managerial employees, and that they were not entitled to

 6  overtime.  And we're confident that the trust would prevail if

 7  the substance ever came to an adjudication.

 8          I'm not at liberty to speak to the terms of the

 9  settlements we reached with the putative plaintiffs, but they

10  were pretty nominal.

11          So Your Honor, unless you wish to hear from Ms.

12  Ferguson, or have any further questions, we ask that you

13  disallow both Rylov claims in their entirety.

14          THE COURT:  All right.  Does any party wish to be

15  heard in connection with the claims 15022 and 15023 of

16  claimant Rylov?

17          All right.  There being no response, the Court will

18  sustain the objection to both claims of Mr. Rylov and ask you

19  to submit an order to that effect.

20          MR. CAINE:  We'll do so.

21          THE COURT:  All right.

22          MR. CAINE:  Thank you very much,  Your Honor.

23          THE COURT:  Are there any other matters that we need

24  to take up in the Circuit City case today?

25          MS. TAVENNER:  No, Your Honor.

1        THE COURT:  Okay.  Very good.  As I indicated, I'll

2   be in touch with your office, but I sincerely help that

3   everything is going to get worked out.  And good luck with

4   those depositions.

5        MS. TAVENNER:  Thank you, Your Honor.

6        THE COURT:  All right.

7        THE CLERK:  All rise.  Court is now adjourned.

8     (Whereupon these proceedings were concluded at 3:14 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NaN

1                          I N D E X

2

3    RULINGS:                                    PAGE   LINE

4    Unical Enterprise claim disallowed          51      1

5    in full

6    Mr. Rylov's claims 15022 and 15023          53     18

7    disallowed

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Hana Copperman, the court approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Hana Copperman*

September 9, 2014

_____        _____

HANA COPPERMAN                          DATE

AAERT Certified Electronic Transcriber CET**D 487

## A

**abeyance (2)**
22:22;23:4
**ability (1)**
32:8
**able (9)**
15:16;21:10;
36:18;40:4;42:13;
46:22;47:5,6;50:4
**above (1)**
26:9
**absence (1)**
46:17
**absolutely (1)**
33:20
**academic (1)**
8:25
**accommodate (2)**
34:6;36:25
**accomplish (1)**
28:24
**accomplished (1)**
12:3;28:24
**accrual (1)**
21:11
**achieved (1)**
13:2
**acknowledged (3)**
6:3,20;7:15
**acknowledgement (1)**
39:4
**acknowledges (1)**
6:13
**acknowledging (1)**
43:24
**acting (1)**
39:18
**action (4)**
3:22;11:9;22:8;
39:23
**actions (1)**
22:6
**actually (9)**
5:12,19;7:3;24:22;
30:1;33:21;41:23;
47:13;48:11
**ad (2)**
16:15,17
**add (2)**
6:11;15:8
**addition (1)**
6:19
**additional (4)**
23:2;48:12,14,21
**address (11)**
8:11;9:9;12:8;
21:10,19;22:13;
25:4;32:21;40:2;
46:9;52:23
**addressed (1)**
21:20

**adduce (1)**
4:13
**adequate (2)**
8:15;42:12
**adequately (1)**
8:1
**adjourned (1)**
54:7
**adjudicate (1)**
18:9
**adjudication (1)**
53:7
**admissible (2)**
8:15,23
**admitted (3)**
6:18;9:1,8
**adversary (4)**
6:8;11:14;46:11;
48:9
**advertising (2)**
15:14;16:15
**advise (1)**
46:16
**affect (1)**
23:6
**affidavit (1)**
18:19
**affidavits (1)**
10:3
**affirmative (2)**
21:16;26:10
**affirmatively (3)**
10:21;20:9;27:21
**afternoon (6)**
3:5,6;13:11;33:19;
46:6;48:24
**again (9)**
6:5;7:16;10:25;
11:12,21;24:5;
26:22;30:6;40:8
**against (7)**
7:2;18:3,4;21:18;
25:17,17;48:9
**agenda (2)**
3:4;48:13
**agree (10)**
7:8;14:20;16:12;
17:9,9,19;37:18;
40:9;42:25;45:18
**agreed (7)**
14:21;17:20,22;
18:1;22:18;40:4,5
**agreement (3)**
10:2;15:15,15
**agreements (2)**
7:21;43:6
**agrees (1)**
19:9
**allegation (1)**
28:12
**allow (1)**
50:6
**allowing (2)**

13:25;22:25

**alone (1)**
52:15
**along (4)**
11:7;15:9;24:21;
45:12
**although (1)**
20:1
**always (1)**
25:5
**ambiguity (1)**
45:7
**ammunition (1)**
37:23
**amount (7)**
10:20;15:11;
17:10;18:17;26:8,9;
27:8
**amounts (3)**
7:14;24:23;30:12
**Andrew (1)**
48:25
**appeal (6)**
49:18;50:3,7,13,
20;51:20
**appealed (1)**
49:16
**appealing (1)**
49:24
**appear (1)**
14:1
**appearing (1)**
46:7
**appellate's (1)**
50:11
**applicable (4)**
4:2;5:18;9:25;24:2
**application (3)**
36:15,17;49:19
**applied (9)**
27:1,2,13;43:12,
17,21,22,23;45:10
**applies (3)**
20:12;21:25;43:25
**apply (4)**
7:6;10:11,12;
43:19
**applying (3)**
27:8;43:15,15
**appointment (1)**
33:19
**appreciated (1)**
14:3
**approached (1)**
49:25
**appropriate (11)**
11:22;22:23;
39:23;41:21;42:24;
43:1;45:1;46:17;
47:12,13;48:18
**approximately (2)**
3:23;8:6
**argue (1)**

35:13

**argued (1)**
35:14
**argument (18)**
8:10,13;9:9,10,21,
23;11:1,4,17;16:21;
17:1;21:20;22:20;
23:6,9;24:12;33:6,7
**arguments (9)**
5:1,1;6:5;7:17;
13:7;22:20;29:10,11,
12
**arise (1)**
10:1
**around (4)**
4:16;7:1;35:22;
47:8
**Arps (1)**
25:24
**arrange (1)**
32:9
**Ashe (1)**
6:13
**aside (1)**
8:10
**assert (1)**
9:20
**asserted (5)**
3:22;4:16;10:8,20;
49:22
**assertion (1)**
8:14
**assume (2)**
32:24;36:6
**assuming (2)**
9:21,23
**attached (1)**
24:21
**attack (1)**
8:23
**attempted (1)**
51:18
**attention (2)**
19:2;23:9
**attorney (1)**
6:2
**August (10)**
5:10,10;9:17,17;
10:5;13:4;14:19;
21:11;31:12;35:5
**available (6)**
33:1;37:7;46:22,
23,24;47:1
**aware (1)**
53:3
**away (3)**
13:20;32:10;33:23

## B

**back (19)**
5:15;10:10;12:12;
13:17;25:8,24,25;

26:2;27:11;31:17,18,
21;32:14;38:10;
40:8;43:20;45:10;
50:7,13

**back-and-forth (1)**
11:15
**backs (2)**
4:7,21
**Baird (1)**
13:14
**balance (2)**
7:23;12:7
**ball (3)**
25:1;39:3;42:5
**bankruptcy (4)**
17:8;21:6;49:14,
16
**bar (1)**
9:3;52:6,9,14
**barred (6)**
9:22;15:21;21:8,
16,16,17
**BARRETT (11)**
13:11,12,17,20;
25:24;47:10,23,23,
24;48:3,4
**Barrett's (1)**
47:11
**based (5)**
24:6,7;25:20;
28:16;51:16
**basically (2)**
6:23;18:11
**basis (2)**
3:14;4:1;6:15;
7:16,17;25:23
**become (2)**
40:22,25
**beforehand (1)**
47:16
**begin (1)**
30:14
**begins (1)**
11:3
**behalf (4)**
6:13;7:5;13:12;
46:7
**behind (1)**
39:2
**belief (1)**
28:1
**Beran (2)**
3:10;49:7
**best (5)**
12:16;40:22;43:9
**better (9)**
12:20;14:14;
29:24;40:17,18,19,
20;42:8;44:24
**beyond (2)**
26:9;28:4
**big (5)**
14:24;17:6;19:13,

14;21:25
**bigger (1)**
15:6
**bill (2)**
4:7,21
**binders (1)**
4:9
**bit (1)**
10:13
**bite (1)**
41:13
**blank (1)**
23:25
**bobble (1)**
49:8
**boilerplate (1)**
28:12
**both (13)**
5:25;22:7;30:19;
31:4,6;39:16;46:20;
52:2,5,16;53:1,13,18
**box (8)**
6:7,10,20;15:2,3;
17:23;18:19;20:6
**boxes (2)**
14:25;15:6
**Bradshaw (1)**
3:11
**breach (4)**
11:4,9;16:11;
49:22
**brief (3)**
11:21,24;50:12
**briefing (5)**
11:13;22:18;
30:17;32:22;50:11
**briefs (1)**
10:3
**bring (6)**
21:7;25:25;34:4;
40:8;47:20;48:20
**bringing (1)**
19:2
**brought (1)**
25:21
**bucket (2)**
6:22;43:7
**buckets (1)**
43:5
**bunch (1)**
32:13
**burden (3)**
16:20,22,25
**burdensome (3)**
44:13,16,16
**business (6)**
8:19,21;16:1;
20:16;26:19;27:25
**buy (4)**
15:25;16:4,16;
27:3
**buying (1)**
16:2

## C

**Caine (12)**
3:9;24:17;48:21,
23,24,25;49:4,6;
51:3;52:15;53:20,22
**calendar (2)**
3:14;9:16
**calendars (1)**
47:4
**California (4)**
27:6;49:15,23;
51:17
**call (2)**
39:5;47:11
**called (2)**
41:10;47:14
**came (5)**
19:1;32:14;35:16;
43:5;53:7
**can (33)**
7:1;8:20;9:24;
10:20;12:8;16:4;
19:21;20:7,8;21:17;
23:21,22;25:17;
28:21;29:9,15;31:4;
32:9;34:6;35:14,16;
39:11,20;40:20;
41:25;42:6,6,23;
43:9;44:12,15;
46:24;52:8
**cancellation (1)**
10:17
**carve (2)**
40:6,7
**case (10)**
7:1;13:24;19:13;
21:7,22;26:7,11;
27:15;52:14;53:24
**cash (17)**
10:21;11:18;
15:23;16:5,6;19:20,
22;20:9;24:7;26:2,5,
10,13;27:20,22;28:3,
19
**categories (1)**
19:12
**cause (1)**
38:11
**causes (1)**
3:22
**certain (2)**
4:4;18:23
**certainly (2)**
28:12;35:16
**cetera (1)**
4:7
**challenge (1)**
19:4
**chambers (2)**
46:17;47:11
**Chang (3)**

6:2,19;7:5
**Chang's (1)**
6:12
**chargebacks (2)**
4:7;5:21
**check (2)**
27:7;46:20
**choice (1)**
31:20
**choose (1)**
40:6
**chose (1)**
7:6
**chunk (1)**
21:25
**Circuit (29)**
3:3,8,10;4:23;5:2;
7:1;8:20;9:7;11:13;
25:13;26:18;27:3,7;
30:9;41:12;49:13,16,
18,24;50:3,7,10,10,
12,16;51:20,21;53:2,
24
**circumscribed (1)**
41:5
**City (18)**
3:3,8,11;4:23;7:1;
9:7;11:13;25:13;
26:19,25;27:3,7;
41:12;42:16;49:14,
16;53:2,24
**City's (3)**
5:2;8:20;30:9
**claim (43)**
6:24,25;7:4,7;
10:8,9,12;11:9;16:8,
10,11,24;18:4,4;
19:15;20:8,14,20,20,
21,22,24;22:24,24;
26:20;49:10,12,20,
22;50:2,16,18,21,23;
51:2,14,15,15,19,25;
52:1,20,22
**claimant (1)**
53:16
**claims (58)**
4:21;6:24;7:10,14,
15;8:1,4,9,16;9:21,
25;10:1,6,7,14,18,20,
23;15:8,10,19,20,23;
17:8;18:7,19;19:12;
20:13,17;21:15,16,
18,23,24;22:2;25:17,
18;26:10;27:18;
28:21;51:7,7,9,12,
17,23,23;52:5,5,6,7,
10,16,19,25;53:13,
15,18
**class (8)**
51:13,14,15,18,19,
22;52:20,25
**clear (7)**
11:18;20:24;21:9;

28:23;37:14,17,18
**clearly (4)**
10:23;11:19;
29:16;40:1
**CLERK (3)**
3:1,3;54:7
**client (5)**
14:7;16:23;36:18;
37:10,23
**clock (1)**
20:19
**cocounsel (1)**
3:10
**coherent (1)**
20:1
**colleague (1)**
13:13
**colleagues (2)**
46:20;47:5
**collectively (2)**
40:15;44:22
**column (1)**
6:12
**coming (3)**
12:12;13:1;25:10
**commenced (1)**
11:14
**communicate (1)**
42:8
**communicated (3)**
40:14,15;44:22
**communicating (1)**
40:13;47:15
**communication (1)**
46:12
**communications (5)**
32:13;41:6,11,14;
43:7
**companies (1)**
27:25
**company's (1)**
8:19
**compel (5)**
32:12;41:3;43:4;
45:3,21
**competence (2)**
8:24;19:4
**competent (2)**
8:15,23
**competently (1)**
42:6
**complaint (4)**
3:22;6:9;24:21;
25:21
**complete (2)**
14:5;36:5
**compliance (9)**
4:23;5:22;6:14,21;
7:20;8:2;12:6;25:14;
30:9
**complied (2)**
45:11,21
**comply (1)**

40:10
**complying (1)**
45:23
**conceded (4)**
5:20;8:7;9:5;12:18
**concept (1)**
27:21
**concern (1)**
36:7
**concerned (1)**
43:11
**concerns (5)**
36:3,3,18,25,25
**concession (1)**
12:2
**concluded (1)**
54:8
**concludes (1)**
23:8
**conducted (1)**
47:7
**confer (13)**
32:7,18,19;35:14,
15,16,18,20;36:6;
37:3;39:6;44:5;
45:13
**conferred (1)**
45:3
**confident (4)**
38:23;39:17,18;
53:6
**confirm (1)**
15:16
**confirmatory (2)**
19:18;20:3
**confirmed (1)**
49:7
**conflates (1)**
11:2
**connection (3)**
10:4;50:23;53:15
**consequences (1)**
42:3
**consolidated (2)**
5:8;9:13
**consummated (1)**
48:13
**contact (1)**
46:17
**contend (1)**
8:1
**contest (1)**
12:23
**context (5)**
7:3;9:8;12:8;29:1;
41:3
**continue (3)**
12:14;41:8;43:10
**continued (2)**
3:24;5:8
**contract (11)**
11:4,8,9;16:11,12,
13,19;21:24;22:8;

Case 08-35653-KRH    Doc 13413    Filed 09/09/14    Entered 09/09/14 15:47:49    Desc
CIRCUIT CITY STORES, INC.    Main Document    Page 59 of 67
Case No. 08-35653-KRH

July 30, 2014

28:15;49:22

**contradict (1)**
23:16

**contrary (1)**
3:24

**convenient (1)**
22:13

**conversations (3)**
23:15;44:25;53:1

**copies (2)**
38:25;50:14

**Costco (2)**
27:24;42:16

**counsel (12)**
3:8;14:10;17:1;
19:9;21:5,6;22:12;
23:3;31:13;46:8;
53:2,2

**counsels (1)**
25:22

**count (2)**
18:3,4

**couple (2)**
33:11,14

**course (1)**
14:2

**Court (137)**
3:1,6,12,16;5:17;
8:5;12:10;13:10,16,
19,21,25;14:2,11,13;
15:2,5;16:9,23;17:8,
11,17,25;18:6,8,13,
15;20:4;21:10,20;
22:13,16,19;23:1,5,
8,10,17,20;25:4;
26:15;28:22;29:20,
22,25;30:2,25;31:3,
10,16,17,21;32:21;
33:3,4,7,12,16,18,23;
34:2,5,10,16,19,23;
35:1,3,7,9,11,19,22,
25;36:19,23;37:2,5,
9,13,17,20;38:6,8,12,
15,17,19,23;39:6,7,
11,16;40:21,24;41:2;
42:7,10,20,22;45:3,
16,18;46:1,3,5,20,21,
21;47:3,19,22,24;
48:3,6,16,19,23;
49:2,5,15,21,23;
50:5,8,19,22;51:1;
52:13,13;53:14,17,
21,23;54:1,6,7

**courtroom (1)**
8:18

**courts (1)**
47:6

**Court's (7)**
19:2,15,21;20:1;
22:2;38:3;44:24

**create (1)**
44:20

**credit (11)**

8:16;15:8,24;18:2,
8,24;19:6;21:3;27:2,
8,12

**credits (62)**
3:21;4:1,1,6,9,20,
23,24;5:3,3,17,21;
6:4,14,23;7:2,4,8,11,
19;8:6,22;9:1,5,6;
10:11,12,14;11:2,5,
7,15,19,21;12:6,24;
16:3;21:2;23:24;
24:16,20,25;25:5,14,
16;26:9,17,25;27:7,
9,13,18;28:8,18,21;
43:12,14,17,19,20,
25;45:10

**crisp (1)**
25:12

**critical (1)**
44:2

**cross (2)**
9:19;11:23

**cross- (1)**
5:13;14:19;29:1

**cross-motion (15)**
4:15;5:6,9;8:12;
9:11,20;12:9;14:16,
18;22:16,17;23:7,22;
30:20;35:4

**cross-motions (1)**
12:13

**currency (1)**
27:4

**custom (1)**
43:18

**cut (2)**
27:7;43:24

**cutting (1)**
31:14

## D

**dancing (2)**
4:16;6:25

**data (2)**
43:12;45:9

**date (5)**
4:24;12:14;15:11;
22:12;52:6

**dates (4)**
31:5;43:21;52:9,
14

**dating (1)**
25:24

**day (6)**
11:5;20:14;34:19,
21;35:4;36:16

**days (7)**
9:17;18:5;21:1,1,
2,3;30:23

**deal (4)**
8:3;16:9;44:11;
48:9

**dealer (2)**
10:2;43:6

**dealers (2)**
43:14,18

**dealing (2)**
9:12;25:24

**dealt (1)**
23:14

**decide (5)**
12:15;19:21;
28:25;29:1,3

**declaration (3)**
6:1,12;8:17

**declarations (2)**
5:6;6:1

**declaratory (1)**
25:22

**declined (1)**
50:4

**deduct (1)**
27:8

**deductions (1)**
7:14

**defeat (1)**
16:21

**defeats (1)**
25:15

**defendable (1)**
41:21

**defense (11)**
11:19;16:7,9,10,
21,24;24:6,7;25:19,
23;26:6

**defenses (2)**
4:16;7:22

**deferring (1)**
13:3

**degree (1)**
44:9

**deliberately (1)**
43:16

**demonstrate (1)**
5:20

**demonstrative (3)**
5:23;6:6;17:21

**denial (1)**
6:17

**denied (5)**
11:7,16;49:19;
51:19,20

**dentist (2)**
33:19,24

**deny (1)**
23:4

**depending (1)**
50:8

**deposition (9)**
9:18;30:24;39:1;
41:4;42:12,15,21;
43:10;44:17

**depositions (11)**
13:1;25:10;30:15;
32:8;34:12,13,20,24;

39:9,13;54:4

**despite (2)**
3:24;46:11

**detailed (1)**
38:20

**determination (6)**
4:19;5:17;9:15;
12:5;23:23;24:1

**determined (1)**
53:1

**differ (1)**
7:10

**difference (1)**
6:21

**different (2)**
27:21;41:16

**diligently (1)**
21:24

**disagreed (1)**
38:1

**disagreement (2)**
15:11,12

**disallow (4)**
50:23;51:2;52:4;
53:13

**disallowed (2)**
50:18;52:16

**disallowing (1)**
50:21

**discovery (3)**
26:21;30:5,8

**discussing (1)**
23:18

**discussion (1)**
17:4

**discussions (1)**
40:16

**dishonoring (1)**
11:8

**dismiss (1)**
52:4

**dismissal (1)**
50:15

**dismissed (3)**
48:18;50:12,20

**display (1)**
49:7

**dispute (11)**
7:24;10:19;18:8,
20;20:12;21:11,22;
22:4,8;24:19;25:2

**disputed (2)**
6:15;9:5

**district (3)**
46:21;49:22;50:19

**docket (3)**
47:21;48:8,21

**doctrine (3)**
9:24;10:5;50:17

**doctrines (1)**
50:16

**document (7)**
17:12;18:22;32:7;

39:9,13;54:4

**documented (2)**
8:2;48:13

**documents (20)**
14:25;15:7;18:20,
21;29:9;32:13,15;
36:4,12,13;37:11;
38:25;39:10,21;
41:19,23;42:11,17,
18;43:5

**document's (2)**
17:13,13

**Dodger (1)**
49:8

**dollar (3)**
7:13;19:15,17

**dollars (20)**
3:23;6:3;7:19;8:6;
9:1,4;10:6,9,10,11;
12:19,24;15:9;18:7,
23;22:2;25:18;26:9;
28:8;49:21

**done (9)**
7:3;15:24;21:24;
22:11;30:13;40:9;
45:24;52:24;53:3

**down (6)**
11:13;18:10,13;
32:22;34:8;39:20

**dozen (1)**
25:10;30:15

**drag (1)**
39:3

**drill (1)**
34:4

**due (4)**
21:1,2;30:21;35:4

**duly (2)**
4:2;9:6

**duplication (1)**
52:16

**duplicative (1)**
52:5

## E

**earlier (3)**
5:11,12;22:13

**earn (1)**
18:24;20:20,24

**earned (19)**
4:2,20;5:18,22;
6:4;7:5;8:22;9:2,6;
11:2,5,21;15:24;
24:1;27:1,3,7,10;
43:14

**earning (2)**
4:23;23:24

**easy (1)**
5:19

**educated (1)**
29:24

**effect (1)**

CIRCUIT CITY STORES, INC.
Case No. 08-35653-KRH

July 30, 2014

53:19

**effectively (1)**
40:15

**efficient (1)**
29:4

**effort (1)**
4:12

**efforts (1)**
3:21

**eight (1)**
39:3

**eighteen (5)**
11:6;20:18;35:17;
45:14;46:10

**eighteen-month (3)**
11:10;20:12;28:10

**either (9)**
8:1;17:11;18:20;
20:5;21:1,8;25:15;
36:11,13

**Electronics (1)**
13:12

**element (1)**
16:25

**elements (1)**
16:10

**eliminate (1)**
49:12

**eliminated (1)**
28:8

**e-mail (3)**
38:21;39:4,18

**e-mails (1)**
43:7

**employee (1)**
51:16

**employees (1)**
53:5

**end (2)**
14:19;22:21

**ended (1)**
14:4

**enforce (1)**
50:4

**engage (5)**
3:25;4:11;24:16,
25;33:10

**engaged (1)**
49:14

**enough (4)**
10:13;15:13;
22:19;27:17

**enter (4)**
16:23;20:5;22:23;
23:5

**entered (1)**
43:3

**Enterprises (1)**
49:10

**entertain (1)**
12:13

**entirety (8)**
10:14,23;27:18;

50:18,21,24;52:17;
53:13

**entitled (1)**
53:5

**entitlement (2)**
5:2;52:22

**entry (2)**
9:3;13:4

**equitable (2)**
9:24;10:5

**Eric (1)**
13:12

**escalate (1)**
45:13

**essentially (1)**
10:17

**establish (4)**
8:16,20;27:15,17

**established (1)**
52:14

**establishes (3)**
25:13;26:17;28:18

**estate (1)**
25:18

**et (1)**
4:7

**even (13)**
8:23;9:21,22;
10:15,24;13:23;
16:5;21:15;34:2;
38:1,13;39:4;40:17

**event (5)**
15:13;20:23;
21:12;22:7;46:18

**everybody (3)**
39:18;43:8,25

**evidence (12)**
4:8,13;8:15,16,22;
17:5;22:25,25;
26:23;44:2;50:13;
52:21

**evidentiary (3)**
6:16;8:4,8

**evolves (2)**
44:10,11

**exactly (7)**
14:9;18:16;29:6,7,
10;40:24;45:20

**examine (1)**
42:13

**example (1)**
18:22

**excellent (3)**
13:19;35:22;48:19

**exception (1)**
19:19

**excess (1)**
10:19

**exchanged (1)**
42:18

**Excuse (2)**
32:1,3

**excused (3)**

47:22;48:1,3

**exempt (1)**
53:4

**exists (1)**
38:4

**expand (1)**
39:12

**expect (2)**
37:19;40:1

**expedite (1)**
9:15

**extensive (1)**
8:18

**extent (2)**
28:17;41:5

**F**

**fact (2)**
5:23;9:5

**factual (6)**
4:19;7:16;12:4;
21:11,12;25:14

**factually (1)**
7:20

**failed (2)**
4:11;44:3

**failure (1)**
41:9

**fair (1)**
14:6

**fairly (1)**
44:9

**fall (1)**
42:2

**familiar (1)**
52:13

**far (1)**
29:16

**fast (1)**
42:5

**Federal (2)**
17:5;49:15

**feel (1)**
10:13

**feeling (1)**
12:22

**feet (1)**
39:3

**FEINSTEIN (37)**
3:5,7,7,13,17;
12:21;23:12;29:18,
21,24;30:1,3;31:7,9,
13,20;32:3;34:11,12,
15,17,21,24;35:2,24;
38:20,25;39:15;
40:25;41:18;42:14,
21;43:2;45:2,7,22;
46:4

**Feinstein's (1)**
45:19

**fell (1)**
45:10

**Ferguson (4)**
3:11;51:9;52:8;
53:12

**festering (1)**
26:24

**few (5)**
9:17;19:13;21:3;
26:8;30:23

**fifty (10)**
5:20;8:6;9:1,4;
10:6;12:2,18,24;
28:8;30:13

**fifty- (1)**
22:1

**fifty-five (1)**
25:18

**fifty-three (1)**
18:23

**fight (2)**
38:3;41:22

**figure (3)**
29:15;31:4;35:12

**figured (1)**
28:9

**file (3)**
25:6;30:19;50:11

**filed (16)**
5:5,6;6:24;23:19;
31:23;46:11;48:10;
49:11,17;50:5;51:1,
12,22,25;52:6,7

**files (1)**
49:20

**filing (4)**
7:3;28:24;31:8;
48:17

**filings (1)**
52:10

**fills (1)**
4:9

**final (1)**
9:9

**finally (2)**
5:7;24:12

**find (12)**
8:5;18:6;25:19;
36:11,12,13;37:19,
19,24;38:4;39:23;
41:20

**finding (1)**
9:4

**fine (8)**
14:21;16:7;31:24;
34:9,15,17;35:6,8

**finish (1)**
19:8

**finished (1)**
36:8

**firm (1)**
6:2

**first (10)**
3:14,15;6:11;7:10;
13:25;43:5;44:9;

45:1;49:1;52:3

**fishing (1)**
24:4

**five (2)**
22:2;45:15

**flesh (1)**
7:25

**fleshed (1)**
24:14

**fleshing (1)**
12:23

**flights (1)**
16:4

**flush (1)**
4:14

**flyer (1)**
16:4

**focus (2)**
4:18;19:14

**follow (1)**
12:20

**following (1)**
30:21

**forced (1)**
25:6

**Forget (1)**
42:16

**form (2)**
25:22;45:8

**forth (2)**
24:24;30:13

**forty (1)**
19:17

**forty-nine (1)**
6:11

**forty-two (1)**
10:9

**forward (7)**
5:16;16:22;19:10;
23:3;27:24;30:5;
46:16

**Fose (4)**
3:11;8:18;18:19;
19:1

**Fose's (1)**
8:24

**found (5)**
24:6,11;36:5;
37:22,23

**four (1)**
49:21

**fourteen (1)**
10:10

**Fourth (2)**
51:20,21

**frankly (1)**
47:3

**frequent (1)**
16:4

**fresh (1)**
38:21

**Friday (4)**
5:5;30:21,22;31:2

**Friedman (2)**
  6:2;13:13
**friendly (1)**
  41:1
**friends (1)**
  40:22
**front (4)**
  26:15,23;40:16;
  45:8
**fulfill (2)**
  16:12,18
**fulfilled (2)**
  17:20,23
**fulfillment (1)**
  18:2
**fulfillments (1)**
  15:17
**full (1)**
  51:2
**functioned (1)**
  8:21
**further (5)**
  22:5;28:4;32:19;
  44:14;53:12
**future (7)**
  24:8;27:2,10;28:3,
  20;30:10;43:15

**G**

**games (2)**
  39:12;49:3
**gave (4)**
  4:22;27:11;49:8;
  50:9
**general (4)**
  6:17,24;10:9;
  50:17
**gets (1)**
  26:15
**given (1)**
  18:2
**gives (2)**
  11:9;37:23
**glad (4)**
  22:12;24:13;
  29:20,22
**go-around (1)**
  11:22
**goes (3)**
  10:12;25:14;43:13
**Goldwater (6)**
  13:16,17;14:11;
  23:20,25;24:17
**Good (17)**
  3:5,6,12;4:24;
  13:11;18:24;30:7;
  31:20;33:3,3;35:11;
  36:14;45:21;46:6;
  48:24;54:1,3
**goods (7)**
  15:13,25;16:2,16,
  17;19:20;27:11

**grant (3)**
  50:1,21;51:1
**granted (1)**
  50:9
**granting (1)**
  22:23
**great (3)**
  3:16;42:23;48:8
**grounds (2)**
  52:3,4
**guess (10)**
  5:7;12:10;27:23,
  23;28:6,14,15;30:7;
  31:14;41:7
**guidance (1)**
  22:3
**guys (1)**
  35:13

**H**

**haced (1)**
  13:24
**half (2)**
  19:7;25:9
**hallway (1)**
  23:14
**hampering (1)**
  32:8
**hand (1)**
  5:23
**handle (1)**
  48:22
**handling (2)**
  47:12,13
**happen (4)**
  12:19;36:10;
  39:25;40:1
**happened (4)**
  13:16;27:5;39:24;
  50:8
**happens (2)**
  17:7;42:4
**happy (5)**
  8:3;36:22;48:1,14;
  49:6
**head (1)**
  49:8
**hear (8)**
  12:12,18;23:6,20;
  30:22;31:11;42:24;
  53:11
**heard (13)**
  5:9,11;9:16;10:4;
  11:18,19;13:5;14:6;
  28:5,6;32:10;50:22;
  53:15
**hearing (12)**
  5:7,12;9:14;11:17;
  12:14;26:16;27:19;
  31:6;32:23;46:13,
  14;51:8
**hearings (1)**

8:8
**heart (2)**
  4:5;43:22
**held (1)**
  22:22
**help (3)**
  22:3,5;54:2
**here's (2)**
  43:20,21
**hide (2)**
  25:1;42:5
**history (1)**
  28:17
**hold (2)**
  22:20;23:4
**hole (1)**
  32:16
**honestly (1)**
  12:21
**Honor (87)**
  3:5,9,13,18;5:12,
  24,25;6:7;8:11;9:11,
  19;10:25;11:17,23;
  12:1,21,24;13:3,6,
  11,23;14:4,9;23:12,
  15,18;25:3,8,21;
  26:23;29:19,21;30:5,
  17,22;31:13,25;32:2,
  4,5,10;33:9,13;34:4;
  35:6,8;38:2,20;40:3,
  5,25;42:15;43:3,4;
  45:2,8;46:4,6,13,16;
  47:18;48:2,4,5,7,24;
  49:6,11;50:9,13,20;
  51:3,5,9,12,14,19,24;
  52:4,8,11,15,18;
  53:11,22,25;54:5
**honored (1)**
  11:20
**Honor's (2)**
  9:16;31:15
**hope (1)**
  30:22
**hoping (2)**
  13:21;47:15
**hours (3)**
  33:14;36:20;40:7
**Hudson (1)**
  46:24
**huge (1)**
  6:15
**hundred (1)**
  19:12

**I**

**idea (1)**
  3:16
**identical (1)**
  49:21
**identified (2)**
  7:23;52:11
**Illinois (1)**

48:10
**illuminating (3)**
  23:13;24:5;28:5
**illustrated (1)**
  44:21
**imagine (1)**
  33:14
**immediate (1)**
  21:3
**immediately (2)**
  12:11;43:6
**important (6)**
  12:22;19:22,23;
  22:11;24:14;41:1
**Inc (2)**
  3:3;13:12
**inception (1)**
  46:11
**included (1)**
  18:19
**includes (2)**
  19:6;50:14
**incredible (1)**
  25:3
**incredibly (1)**
  38:12
**Indeed (1)**
  14:16
**independent (1)**
  52:4
**indicated (5)**
  3:19;4:3,8;9:19;
  54:1
**individual (2)**
  15:7;51:23
**individuals (1)**
  51:21
**industry (1)**
  27:12
**ineffectively (1)**
  47:16
**inefficient (1)**
  17:17;19:25
**information (5)**
  19:18;20:3;41:5;
  43:17;44:13
**initial (2)**
  27:11;41:10
**initiate (1)**
  32:6
**injunction (2)**
  50:1,6
**inputting (1)**
  19:3
**inside (1)**
  53:2
**insofar (1)**
  5:16
**instance (2)**
  7:10;44:9
**instead (3)**
  22:25;27:5;31:2
**instruction (1)**

28:16
**intend (1)**
  30:8
**intended (1)**
  51:15
**into (5)**
  10:22;30:5;31:14;
  32:6;42:11
**investigate (3)**
  36:8,10,18
**investigation (3)**
  36:9;52:24;53:3
**invoices (8)**
  24:24;27:1,8,14;
  43:16,19,23,25
**involved (2)**
  46:9,10
**irrelevant (5)**
  28:19,21;38:5,5,6
**issue (33)**
  9:5,13;10:15,21,
  24;11:1,24;19:21,22,
  23;21:9,12,14;23:7;
  24:14;25:9,12;26:11,
  16,24;27:23;28:6,6,
  10,16;29:2;30:20;
  38:16;40:8;43:2,13;
  45:20;50:17
**issues (13)**
  4:5,17;12:4,7;
  13:2;14:8;23:6;32:7;
  37:7;42:16;46:14,
  15;53:4
**item (6)**
  3:14;6:11,20;19:6;
  46:9;47:20
**items (4)**
  3:3;6:8,10;7:13

**J**

**January (2)**
  16:2;52:6
**job (2)**
  36:14;40:17
**Jones (2)**
  3:8;48:25
**Judge (7)**
  46:22,24,24,25;
  47:6,7,8
**judgment (18)**
  3:19;5:9,13;8:12;
  10:4;12:9,13;13:15;
  23:19;25:22;28:25;
  29:2;30:19;33:5;
  34:2;48:10;49:11;
  50:4
**judicata (1)**
  50:18
**judicial (1)**
  12:5

## K

**Kaplan (2)**
6:2;13:13
**Kenney (1)**
47:8
**key (2)**
14:7;39:1
**kind (9)**
4:25;8:24;17:4;
18:23;28:12;29:25;
32:7;39:13,19
**kinds (1)**
22:6
**knew (1)**
40:4
**knowledge (4)**
8:19,24;36:4;44:6
**knowledgeable (1)**
37:7
**knows (1)**
29:12
**Kutak (2)**
13:14;21:23

## L

**language (3)**
26:5;28:19,20
**largely (1)**
4:19
**last (12)**
7:13;12:15;18:5;
20:21;23:18;27:6;
32:16;37:14;38:8,
21;39:4;45:8
**late (3)**
41:15,20;52:6
**lateness (2)**
52:15,22
**later (4)**
4:24;16:9;21:10;
41:6
**law (2)**
21:18;45:17
**laws (1)**
51:17
**lawyers (1)**
21:23
**lay (2)**
9:22;10:3
**least (7)**
8:5;9:4;14:6;27:9;
29:17;38:12;40:20
**legal (8)**
4:16;5:1,1;6:5;
7:22;13:7;21:9;
28:16
**less (5)**
19:12;30:3;33:15;
36:5;44:16
**lets (1)**

41:13
**liberty (1)**
53:8
**life (2)**
26:25;42:4
**likely (1)**
40:4
**limitation (1)**
28:10
**limitations (21)**
7:18;8:10;9:10,13,
25;10:7,15,24;11:1,
3,3,24;15:22;19:23;
20:10;21:8,25;23:7;
24:12;25:16;26:1
**line (2)**
6:10,11,20;17:23;
19:6;24:17
**lined (1)**
44:18
**liquidate (1)**
50:2
**liquidated (1)**
16:1
**liquidating (1)**
49:1
**list (3)**
18:25;20:6;43:20
**listed (1)**
6:8
**listening (1)**
34:2
**litigate (1)**
30:8
**litigated (1)**
28:15
**litigation (2)**
39:19;49:14
**little (2)**
22:12;30:3
**live (2)**
26:11,16;27:23;
28:6
**logical (1)**
46:23
**long (3)**
20:15;24:4;28:10
**look (6)**
14:18;31:23;
37:25;38:10;41:17;
45:22
**looking (1)**
19:5
**lost (2)**
49:23;50:19
**lot (6)**
4:10;6:25;11:14;
19:13;20:2;29:14
**lots (1)**
15:17
**luck (1)**
54:3
**lunch (1)**

51:16
**Lynn (1)**
46:6

## M

**magazines (1)**
16:5
**major (1)**
27:16
**majority (1)**
15:21
**makes (3)**
14:5;22:16;36:5
**making (4)**
29:10,11,13;37:15
**managerial (1)**
53:5
**mantra (1)**
28:3
**mark (1)**
11:6
**master (1)**
10:1
**material (2)**
17:6;27:4
**materials (1)**
22:20
**matter (13)**
3:13,18;4:5;9:16;
32:4;46:10;48:8,18;
49:1,10;51:5,8,11
**matters (6)**
4:4;5:19;46:18;
48:21;52:25;53:23
**matter's (1)**
13:5
**may (10)**
6:5;34:18;36:1,1;
37:21;40:18;43:4;
47:22;48:3;52:7
**Maybe (3)**
21:11;33:15;45:12
**Mayer (1)**
47:8
**mean (17)**
12:22;13:21;26:8;
29:6,7,9,14;31:16,
19;33:8;34:2,8;
37:11,19;39:16;
42:11;47:3
**means (1)**
26:4
**meant (1)**
29:25
**mediation (2)**
20:22;47:7
**mediations (1)**
28:11
**meet (15)**
32:6,17,18;35:13,
14,15,16,17,20;36:6;
37:3;39:6;44:4;

45:13,22
**member (3)**
51:13;52:1,19
**mention (1)**
30:18
**mentioned (2)**
30:10;52:19
**met (7)**
9:7;18:1;23:13;
25:4;30:13;40:21;
45:2
**middle (4)**
6:10,20;19:16;
20:22
**might (13)**
5:1;12:1,19;14:13;
16:21;22:5;24:11,
11;26:6;30:3;46:21;
47:5;51:14
**miles (1)**
16:4
**million (44)**
3:23;4:6,20;5:20,
21;6:3,8,11,12,14,
19;7:4,19,23;8:6;9:1,
4;10:6,9,10,11,19;
12:2,19,24;15:8;
17:19;18:7,10,11,11,
17,21,23,24;19:11,
17,22;22:25;18:26;8;
28:8;30:14;38:10;
49:21
**mind (1)**
12:11
**mine (1)**
31:15
**minimize (1)**
4:13
**minute (7)**
14:23;15:20;16:3;
17:20;19:24;21:15;
37:24
**minutes (5)**
35:17;38:22;39:7;
45:15;46:10
**minutes' (1)**
45:14
**misses (1)**
11:6
**modest (2)**
26:8;44:6
**Monday (2)**
31:1,14
**money (3)**
19:8;20:2;38:3
**month (1)**
13:1
**months (2)**
11:6;20:18
**more (15)**
8:20,22;15:18,25;
16:16,17;18:17;
19:20;29:4;33:14;

45:13,22
36:11,13;37:17,22;
46:10
**morning (8)**
32:18;33:18;34:5,
9;35:18;38:22;39:5,
7
**most (4)**
26:6,11;28:5;44:5
**motion (59)**
3:19,20;4:19,25;
5:4,5,7,8,10,13,14,
16;7:25;8:13,15;9:8,
12,14;10:4;11:23;
12:3,9,14;13:15;
14:16,17,18,20;15:4;
17:2;20:5;22:22;
23:19,21,23,25;
24:10,13,13,18,25:7;
26:1;28:7,25;30:20;
31:8;32:9,12,19;
41:3;43:4;48:10;
49:11;50:5,9,10,14,
23;51:1
**motions (3)**
29:2;34:3;35:13
**motion's (1)**
24:4
**mountain (1)**
17:6
**move (3)**
9:20;11:23;22:12
**moved (2)**
4:12;45:3
**moving (1)**
46:16
**much (12)**
4:10;6:3,16;14:3;
23:10;29:4;33:4,9;
40:6;48:5;53:3,22
**mysteries (2)**
29:14,15

## N

**name (1)**
51:14
**names (1)**
51:22
**narrow (5)**
4:5;12:4;13:2;
25:12;39:20
**necessarily (1)**
29:16
**necessary (1)**
33:20
**necessitated (1)**
3:20
**need (12)**
23:1,2,15;32:9;
33:5;35:14;37:9;
41:1,25;48:15;
51:10;53:23
**needed (1)**

28:24

**needs (2)**
18:8;45:23

**neglected (1)**
30:18

**neighborhood (1)**
10:10

**New (3)**
13:13;27:3;34:9

**next (7)**
6:20;11:12,21;
26:1;30:20;48:7;
51:5

**Nine (1)**
18:21

**Ninety-five (1)**
21:1

**Ninth (8)**
49:18,24;50:3,7,
10,10,12,15

**nobody (1)**
47:14

**nominal (1)**
53:10

**None (1)**
44:20

**nonexempt (2)**
51:16;53:4

**note (1)**
49:2

**notice (5)**
17:1;32:16;39:7;
45:14;50:9

**noticed (1)**
5:10

**notices (1)**
52:9

**notion (1)**
24:7

**November (2)**
20:17;21:5

**number (6)**
16:11;18:12;
19:18;39:9;49:20,25

## O

**objected (2)**
52:2,2

**objection (8)**
31:16;50:25,25;
51:6;52:11,11,20;
53:18

**objective (1)**
14:24

**obligations (3)**
16:13,14,18

**obviously (2)**
46:25;47:16

**occurred (2)**
11:11;15:14

**o'clock (1)**
34:7

**off (2)**
6:23;32:4

**office (4)**
47:11,11;49:8;
54:2

**offset (15)**
7:9;10:1,7,14;
21:17;25:17;26:6,6,
11,13,20;27:18,21;
28:21;43:13

**offsets (2)**
7:2,11

**offsetting (1)**
10:22;28:1

**often (1)**
19:13

**old (2)**
27:9;30:4

**omni (1)**
5:10

**omnibus (1)**
51:6

**once (2)**
7:16;14:5

**one (35)**
9:17;10:16;11:5;
12:15;14:25;16:10,
14;17:6;18:22;
21:21;22:4;25:21;
26:21,22;28:3,23;
29:3;30:23;32:1,3,4,
11;35:21;36:10;
40:12;41:23,24;43:5,
11,12;44:5;47:5,6;
48:8;49:8

**ones (6)**
19:13,14,14,17;
20:2,3

**only (8)**
8:13,17;10:18;
17:22;19:7;24:11;
26:18;52:20

**open (5)**
27:7,13;43:19,23,
25

**opening (3)**
3:20;30:18;50:12

**operate (1)**
26:6

**opportunity (2)**
22:15;42:13

**opposed (1)**
32:25

**opposition (7)**
5:5,25;9:12;13:15;
30:19;31:9,10

**oral (1)**
22:20

**order (24)**
3:2;9:3;12:25;
13:4;16:23;20:4;
22:23;23:2,5;32:12;
41:13;43:3;45:3,9,

12,20,21,22,23;
49:12,17;50:21;
51:4;53:19

**ordered (3)**
16:17;38:2;44:2

**ordering (1)**
19:20

**orders (1)**
50:15

**otherwise (3)**
7:18;21:17;30:8

**ought (1)**
22:18

**out (41)**
4:14,14;6:19;7:25;
8:5,8;9:22;10:1,3;
11:12;12:3,23;
14:24;16:1;17:14,15,
16;18:5;20:6,16;
23:1;24:6,11,14;
25:19,25;26:19;
28:9;29:15;31:5;
35:12,12;38:9;40:7;
42:23;43:17;45:1;
46:14;47:17;52:9;
54:3

**outside (1)**
53:2

**over (6)**
6:22;10:19,19;
19:15;49:21;53:4

**overarching (3)**
5:1;6:5;7:17

**overtime (2)**
51:16;53:6

## P

**Pachulski (2)**
3:8;48:25

**pages (1)**
52:12

**paid (1)**
24:24

**paper (2)**
4:8,10

**papers (9)**
3:25;5:19;7:15;
8:13,25;9:8;12:25;
15:4;17:16

**paperwork (1)**
48:18

**paragraph (1)**
3:20

**part (2)**
4:15;22:24

**partial (2)**
3:19;13:15

**particularity (1)**
44:10

**parties (11)**
6:22;17:13;22:3,5,
19;25:11;27:12;

28:17;32:14;41:15;
42:18

**parties' (1)**
20:2

**partner (2)**
3:9;23:14

**party (4)**
17:11;41:23;
50:22;53:14

**past (2)**
25:14;38:9

**pay (3)**
20:21;21:4,4

**payments (1)**
24:23

**Payne (1)**
46:24

**pending (5)**
7:2;27:1;43:16

**people (2)**
36:1;37:6

**percent (1)**
21:2

**percolating (1)**
46:15

**perfect (2)**
17:22;33:2

**perfectly (1)**
21:19

**performing (1)**
20:25

**perhaps (3)**
11:11;46:24;47:7

**period (2)**
11:3,20

**person (1)**
46:23

**person's (1)**
39:17

**pertinent (1)**
7:21

**Peter (1)**
13:11

**petition (3)**
20:13;49:14,16

**Phillips (1)**
46:22

**physically (1)**
44:12

**piece (1)**
44:2

**piecemeal (1)**
12:17

**place (3)**
10:17;20:1;36:21

**places (1)**
38:10

**Plain (1)**
24:9

**plaintiff (3)**
8:14;16:12,18

**plaintiffs (4)**
51:18,22;53:1,9

**plan (1)**
50:1

**play (1)**
10:22

**played (1)**
39:12

**playing (1)**
25:1

**plays (1)**
47:17

**Please (3)**
3:2;24:9,19

**PM (1)**
54:8

**point (9)**
4:17;8:20,25;
10:18;11:7;13:4;
23:25;32:4;45:2

**points (1)**
6:19

**portion (2)**
9:12;27:17

**position (5)**
7:8;14:6;15:22;
16:6;29:6,7,8,8;
36:16;42:25

**positions (1)**
29:17

**possible (1)**
21:12

**post- (1)**
20:12

**potentially (1)**
46:15

**practice (6)**
4:25;27:13;32:10,
20;43:18;45:17

**practiced (1)**
27:12

**precise (1)**
18:17

**preclude (1)**
20:11

**precludes (1)**
26:13

**preclusion (2)**
50:16,17

**predecessor (1)**
21:6

**preference (5)**
17:8;21:23;22:6,8;
24:23

**prejudice (1)**
23:4

**prejudiced (1)**
39:8

**preliminary (1)**
50:6

**prepare (3)**
32:8;46:16;51:3

**prepared (4)**
4:3;5:12;32:17;
51:10

**preparing (1)**
7:3
**pre-petition (2)**
7:6,12
**present (1)**
13:14
**presented (1)**
6:6
**pressed (2)**
26:2,3
**pretty (4)**
20:23;21:9;29:15;
53:10
**prevail (1)**
53:6
**preview (3)**
10:25;14:6,7
**pricing (1)**
7:14
**printout (1)**
19:5
**prior (2)**
49:14;52:25
**pro (1)**
13:24
**probably (5)**
12:16;19:14,15;
21:13;25:9
**problem (7)**
13:3;17:3;30:14;
31:22;32:16;35:24;
37:21
**problems (2)**
42:10;44:20
**procedural (1)**
52:2
**procedure (4)**
12:20;14:14;
50:14;52:3
**proceed (2)**
50:6;51:18
**proceedings (1)**
54:8
**process (2)**
19:25;28:1
**produce (7)**
38:2;39:10;40:5;
41:10;44:2;45:4;
52:21
**produced (8)**
32:13;37:11,13;
39:21;41:12,15,20;
42:19
**producing (1)**
32:11
**production (5)**
32:7,14,17;42:2;
43:3
**program (18)**
4:2;6:4,14,21;7:6;
9:6;12:7;15:12,16;
16:15;19:7,7,8,19;
20:25;25:15;30:9,12

**programs (11)**
4:21,22;5:18,22;
7:20;8:2,19,21;
20:24;23:24;24:2
**progress (1)**
24:22
**prohibited (1)**
27:20
**promise (4)**
31:18;33:12;
39:11;42:25
**promised (1)**
46:12
**proof (6)**
6:24;7:4;16:25;
17:10;19:10;23:3
**proofs (1)**
26:20
**proper (2)**
6:4;14:17
**propose (5)**
3:14;8:11;9:11,14;
30:18
**proposed (4)**
3:4;14:9;51:13,22
**proposing (1)**
31:7
**prosecute (2)**
49:18;51:15
**prosecutions (1)**
50:3
**protestations (1)**
3:24
**prove (9)**
8:4,8;11:12;20:7,
8;40:19,20;43:17;
44:1
**provided (1)**
48:13
**provision (1)**
41:13
**provisions (1)**
7:21
**purchase (1)**
28:20
**purchased (1)**
27:11
**purchases (8)**
24:8;26:18;27:2,9,
10;28:3;30:11;43:15
**purpose (4)**
5:4;9:20;28:8;41:8
**push (1)**
37:25
**put (8)**
15:13;16:15,17;
20:17;23:15;26:23;
32:15;39:2
**putative (6)**
51:12,18;52:1,19,
25;53:9
**puts (2)**
12:24;17:7

**putting (1)**
17:12

**Q**

**quickly (1)**
44:15
**quite (3)**
4:7;5:19;47:3

**R**

**raise (1)**
30:7
**raised (2)**
12:8;28:11
**rather (2)**
7:13;12:16
**reached (2)**
48:11;53:9
**read (4)**
29:9;31:18,21;
44:9
**really (17)**
4:4,12,17;8:24;
11:6,16,18,19;12:3;
13:2;23:6,16;29:15;
36:21;41:1;43:22;
44:17
**reason (2)**
41:21;42:4
**recall (2)**
43:4;51:15
**receivables (2)**
6:7;7:2
**received (1)**
39:5
**recommendation (1)**
22:21
**reconcile (4)**
3:21;24:23;25:5,
25
**reconciliation (1)**
3:25
**reconciling (2)**
24:16,25
**record (5)**
3:7;23:15;42:14;
48:25;49:2
**records (2)**
8:19,21
**recoupment (8)**
9:24;10:5,16,23;
11:24;21:17;25:16;
30:20
**recovering (1)**
27:22
**recovery (1)**
26:10
**reduced (1)**
17:11
**refusal (2)**
3:24,25

**regard (2)**
10:7;42:11
**regardless (2)**
28:19,20
**relate (2)**
15:4,7
**relating (1)**
46:15
**relationship (1)**
26:25
**relationships (1)**
28:2
**relatively (1)**
7:13
**relevance (1)**
44:8
**relevant (1)**
40:10
**relief (5)**
4:18;6:16;49:17;
50:1,5
**remedy (2)**
41:22;43:1
**remember (3)**
14:11;18:15;40:6
**reply (2)**
31:15;35:5
**report (1)**
48:14
**reported (1)**
48:11
**represented (1)**
23:16
**request (9)**
20:25;23:5;35:16;
41:11;44:8,10,11;
46:13;48:14
**requested (1)**
9:15
**require (1)**
30:10
**required (2)**
19:19;32:11
**requirements (8)**
4:2;6:15,21;9:7;
12:7;24:2;30:9,12
**res (1)**
50:17
**reschedule (1)**
33:20
**reserve (1)**
13:8
**reserving (2)**
4:24;41:4
**resolution (1)**
48:11
**resolved (3)**
22:6,9;51:23
**resolving (1)**
52:25
**respect (11)**
5:2,4;18:6;28:7;
48:7;51:6,8,10;52:3,

9,18
**respectfully (1)**
46:13
**respects (1)**
13:6
**respond (3)**
22:15;31:2;52:22
**response (6)**
30:21;31:11;
32:25;49:12;52:20;
53:17
**responsibility (1)**
44:23
**responsible (1)**
19:2
**responsive (1)**
5:19
**rest (1)**
13:7
**result (3)**
32:19;49:15;50:12
**returnable (2)**
14:19;21:10
**review (1)**
22:19
**Richmond (2)**
34:25;35:1
**rider (9)**
7:18;11:17;24:6,
10;25:20,22;26:4,5,
12
**ridiculously (1)**
44:15
**right (29)**
3:12;12:10;14:12;
15:2;16:22;18:1,14,
16;23:10;28:22;
30:25;31:9;34:16,
18;35:11;36:11,19;
37:12;38:18;42:7;
44:4;46:5;47:19;
48:23;50:25;53:14,
17,21;54:6
**ripe (1)**
12:5
**rise (5)**
3:1;4:22;11:9;
27:11;54:7
**rising (1)**
46:9
**Robert (1)**
3:7
**Rock (2)**
13:14;21:23
**roll (2)**
41:6;43:9
**routinely (4)**
26:24;27:5;28:2;
43:14
**Rule (1)**
17:5
**ruled (1)**
40:10

**run (1)**
11:3
**runaround (1)**
24:8
**running (3)**
20:14,20,22
**runs (1)**
11:4
**Rylov (7)**
51:7,12,25;52:19;
53:13,16,18

## S

**sake (2)**
9:21,23
**sales (1)**
30:12
**same (7)**
8:12;9:25;10:17;
23:20;28:1;32:15;
44:7
**sanctions (2)**
45:4,14
**Sanscartier (1)**
41:14
**Sanscartier's (3)**
41:4;42:15;43:10
**Santoro (1)**
47:6
**satisfied (1)**
36:14
**save (2)**
30:9;40:7
**saving (1)**
36:21
**saying (8)**
20:19;21:14;
37:20;39:5,16,25;
45:20,24
**scared (1)**
13:20
**schedule (11)**
5:12;6:13;14:25;
17:7;22:14,18;
24:20;30:17;31:6;
32:22;50:11
**scheduled (2)**
9:18;30:24
**scope (1)**
38:2
**search (2)**
36:5;37:19
**seated (1)**
3:2
**second (10)**
12:18;17:23,23;
32:1,3,22;41:13;
43:11,12;52:5
**seeing (1)**
23:13
**seeking (6)**
5:7;17:3;23:23;

24:1;26:10;43:23
**seeks (1)**
5:16
**seemed (1)**
24:25
**Seiler (62)**
13:13,22,23;14:3,
12,15;15:3,6;18:1,
14,16;23:11,13,16;
25:3;26:15;27:19;
29:12;30:10;31:1,
25;32:24;33:2,6,8,
13,17,22,25;34:4,8;
35:6,8,10,15,20;
36:1,20,24;37:4,6,
12,16,18,21;38:7,9,
16,18;40:3;41:2,17,
19;42:8;44:4;45:6,
11,17,25;46:2;47:22;
48:5
**Seiler's (2)**
13:14;29:8
**sell (2)**
15:13;18:23
**sense (3)**
14:5;22:16;27:2
**sensible (1)**
21:19
**sent (2)**
38:20;39:18
**separate (1)**
24:21
**serious (1)**
46:15
**served (3)**
5:4;25:11;28:7
**session (1)**
3:1
**set (9)**
6:23;11:13;12:3;
31:6;34:6;35:17;
41:5;50:11;51:8
**settlement (1)**
48:12
**settlements (1)**
53:9
**seven (2)**
10:11;40:7
**seventeen (2)**
38:22;39:6
**seventy-three (6)**
3:23;4:6,20;5:21;
10:6,19
**seventy-two (4)**
15:8;17:19;18:10,
12
**several (2)**
6:10;23:15
**share (1)**
44:7
**short (4)**
38:13;42:2;43:24;
45:10

**shortage (3)**
7:14;38:14;42:19
**show (2)**
11:24;19:10
**shown (1)**
42:17
**shows (2)**
43:12;45:9
**shut (1)**
11:13
**sic (1)**
15:8
**side (6)**
17:7,9;29:11;37:6;
40:20;44:23
**sides (2)**
31:6;40:15
**simple (1)**
24:9
**simply (3)**
25:6;26:1;32:12
**sincerely (1)**
54:2
**sit (3)**
15:9;24:20;47:24
**sitting (2)**
28:9;29:12
**six (2)**
14:24;24:14
**sixty (1)**
25:18
**sixty-three (2)**
18:10,11
**Skadden (1)**
25:24
**Skaf (1)**
51:14
**slow (2)**
39:8,22
**small (1)**
7:13
**smart (1)**
30:3
**smarter (1)**
29:18
**sold (1)**
18:24
**solve (1)**
35:24
**Somehow (1)**
33:13
**someone (1)**
38:11
**sometime (3)**
5:9;13:4;39:6
**Sometimes (2)**
16:5;41:23
**somewhat (1)**
19:25
**Sony (31)**
3:13,21;4:3,11;
5:1,5,25;6:5,23;7:6,
23;8:13,25;9:8,9,15;

11:7,15;13:12;
24:15;25:5;26:4,4,
12;27:22;28:1;30:7;
32:14;41:11;43:24;
46:9
**Sony-Circuit (2)**
26:25;42:16
**Sony's (30)**
3:23,25;4:15;5:18;
6:13;7:2,5,10,15;
8:12;9:10;10:1,7,8,
22,23;11:1,4;12:8,
14,25;13:14;25:17;
26:9,20,22;27:18;
28:21;43:18;46:8
**soon (1)**
13:17
**sorry (5)**
18:16;26:23;
29:25;31:3;34:21
**Sort (2)**
16:3;39:22
**sought (2)**
4:18;49:17
**sounds (4)**
20:10,11,13;41:22
**space (1)**
45:14
**speak (1)**
53:8
**SPEAKER (4)**
32:2;34:14,18;
40:23
**specifically (1)**
6:1
**Spencer (1)**
46:25
**spend (2)**
19:15,24
**spirit (1)**
45:23
**spoke (1)**
24:16
**standpoint (1)**
6:16
**Stang (2)**
3:8;48:25
**start (3)**
14:4;20:14,19
**starts (1)**
20:22
**State (2)**
48:9;51:17
**statute (20)**
7:18;8:10;9:10,13;
10:15,24;11:1,2,10,
23;15:21;19:23;
20:10,12;21:8,25;
23:7;24:12;25:15;
26:1
**stay (1)**
49:17
**step (1)**

20:21
**steps (1)**
20:25
**still (8)**
4:10;21:16;27:19,
23,24;28:6;41:24;
46:8
**stipulate (3)**
4:3;15:19;16:8
**stipulation (1)**
24:22
**stop (1)**
12:1
**stoppage (1)**
42:11
**stopped (1)**
16:2
**Stores (1)**
3:3
**straight (2)**
26:3,12
**strong (1)**
12:22
**struggle (1)**
13:8
**stuff (3)**
29:15;38:23;41:14
**stupid (1)**
38:12
**styled (1)**
14:19
**subject (8)**
6:4,17;7:16,21;
9:16;16:24;25:9,10
**submission (1)**
8:17
**submit (4)**
20:20,21,25;53:19
**submitted (6)**
4:4;5:25;15:11;
17:17;20:14;45:9
**subpoenas (3)**
25:11;27:24;30:15
**subsequent (1)**
4:25
**substance (5)**
28:4;32:6;52:18,
23;53:7
**substantial (1)**
8:4
**substantially (2)**
4:12;12:4
**substantive (4)**
4:1;51:8,25;52:3
**subtotal (1)**
18:18
**sue (1)**
20:16
**sued (1)**
20:18
**suggest (2)**
14:8;44:16
**suggested (3)**

12:15;14:13;50:1

**suit (1)**
35:7
**sum (1)**
22:21
**summary (17)**
3:19;5:9,13;8:12;
10:4;12:8,13;13:15;
22:25;23:19;28:25;
29:2;30:19;33:5;
34:2;48:10;49:11
**support (2)**
8:4;18:21
**supporting (1)**
4:8
**suppose (1)**
27:10
**supposed (2)**
39:10;45:4
**Sure (8)**
16:15;17:7;32:9;
34:8;35:15;36:24;
42:12;45:22
**surprised (2)**
29:7,8
**surprising (1)**
49:13
**suspect (1)**
12:17
**suspicious (1)**
40:19
**sustain (1)**
53:18
**system (1)**
19:1

---

**T**

**table (2)**
13:7;29:12
**talk (12)**
22:5;26:13;31:4;
37:2,4,7;38:17;
39:14,20;42:22;
44:18;46:25
**talked (1)**
41:3
**talking (2)**
10:18;41:9
**taller (1)**
4:9
**Target (2)**
27:24;42:16
**Tavenner (12)**
3:10;46:6,7;47:2,
18,20;48:1,7,17,20;
53:25;54:5
**telling (1)**
40:18
**ten (2)**
38:10;43:6
**tendered (1)**
24:20

**terms (10)**
4:22;9:14;10:22;
12:6;30:11,12,17;
41:9;51:13;53:8
**terrible (1)**
19:12
**testified (1)**
27:6
**testify (2)**
51:10;52:8
**testimony (1)**
8:8
**that'd (2)**
3:16;35:24
**that'll (1)**
19:22
**theirs (2)**
31:9,10
**therefore (1)**
11:5
**there'll (4)**
21:11,12;42:3,25
**thinking (1)**
12:19
**third (3)**
18:18;25:11;43:7
**third-party (1)**
30:15
**thirty (2)**
21:1,3
**thirty-first (1)**
51:6
**thorough (2)**
52:24;53:3
**though (1)**
13:24
**thought (2)**
14:25;34:19
**three (3)**
20:5;43:5;49:3
**thrown (1)**
28:4
**Thursday (2)**
31:12;38:21
**till (1)**
31:1
**Tim (1)**
13:13
**timing (1)**
52:10
**tiny (1)**
19:14
**today (27)**
3:9,18;5:15,16;
8:5;9:4;12:14;17:1;
20:5;23:5,12;24:5;
25:4;28:5,7;29:1,18,
24;30:4;33:9;37:17;
40:14;42:14;45:18;
46:12;48:22;53:24
**today's (3)**
5:7,8;47:21
**together (1)**

17:7
**told (3)**
14:15,17;15:9
**tolerate (3)**
17:11;37:10;39:13
**tomorrow (14)**
35:20,22,25;36:9,
16,21;37:3,4,8;39:2;
42:15,21;44:17;
47:12
**took (1)**
7:4
**top (1)**
6:7
**topic (1)**
38:21
**total (2)**
6:7;7:19
**touch (1)**
54:2
**toward (1)**
15:1
**town (1)**
46:14
**trepidation (1)**
44:6
**trial (10)**
4:6,13,25;8:3,9;
19:16;22:9,10;
24:14;46:16
**tried (4)**
4:11;25:25;26:12;
32:6
**troubled (1)**
41:18
**troubling (1)**
44:14
**true (2)**
17:13,13
**Trust (17)**
3:9,11;7:9;8:14,
17;9:24;25:13,17;
26:17;28:18;46:7;
49:1,11;51:10;52:1,
2;53:6
**trustee's (1)**
14:9
**Trust's (4)**
3:19;7:8;26:22;
51:6
**try (6)**
4:5;18:5;24:5;
36:24;44:23;45:1
**trying (7)**
7:24;9:15;13:2;
25:19;39:9;42:5;
44:20
**turns (2)**
4:14;38:9
**twenty (1)**
18:5
**twenty-four (2)**
18:24;36:20

**twenty-two (1)**
19:11
**two (14)**
5:6;6:1;7:13;32:5,
7;36:10;40:13,15,21;
42:22;46:18;48:20;
51:7,12

---

**U**

**unbelievably (1)**
44:13
**under (20)**
4:2,20,22;5:18,22;
6:4;7:5;9:6,23;10:5;
16:13,18;20:25;
22:23;23:24;24:1;
43:3;50:16;51:14,17
**underlying (3)**
15:7;17:6;22:25
**understood (1)**
43:8
**undisputed (6)**
7:5,11,16,20;8:7;
12:6
**Unical (15)**
49:1,10,13,13,16,
17,20,25;50:3,6,11,
18,21,23;51:2
**UNIDENTIFIED (4)**
32:2;34:14,18;
40:23
**universe (2)**
7:25;36:4
**unless (1)**
53:11
**unsecured (4)**
6:25;10:9,12;18:3
**unusual (1)**
22:7
**unwilling (1)**
24:25
**unwillingness (1)**
25:6
**up (21)**
3:14,15;5:24;6:11;
8:14;10:12;13:1;
15:8;16:15,17;
22:21;25:10;26:15;
29:3;31:16;44:18;
48:8;49:3;51:19,21;
53:24
**upon (3)**
22:18;49:23;50:8
**upset (1)**
47:15
**urging (1)**
23:20
**usable (1)**
7:9
**use (10)**
5:3;7:1;9:24;11:7;
16:3,4;17:21;25:17;

27:4;51:13
**used (6)**
7:11;10:6;26:18,
19;28:2,21
**useful (1)**
36:21
**usually (1)**
22:6

---

**V**

**Vadim (1)**
51:7
**valid (7)**
7:9,15;10:13,16;
15:20;37:1,1
**validated (1)**
16:24
**validation (1)**
12:23
**validity (10)**
15:19;16:8;17:2,4;
23:24;25:13;26:17;
27:16;28:18;50:19
**validly (1)**
5:17
**value (9)**
10:21;11:18;24:7;
26:2,5,13;27:20;
28:3,19
**various (3)**
3:22;4:20;50:15
**vast (1)**
15:21
**vendor (1)**
44:7
**vendors (2)**
41:6;43:7
**verge (1)**
22:9
**versus (1)**
53:4
**victory (1)**
49:15
**view (5)**
25:2;26:16;28:16;
43:13;44:8
**voluminous (1)**
4:7

---

**W**

**wait (6)**
15:19;16:3;17:20;
21:15;37:23;46:18
**waited (2)**
20:15;21:5
**walk (1)**
39:22
**walked (1)**
39:8
**wants (1)**
19:11

CIRCUIT CITY STORES, INC.
Case No. 08-35653-KRH

July 30, 2014

**warranty (2)**
4:21;7:14
**wasted (1)**
20:1
**wasting (1)**
44:24
**way (22)**
4:14;7:25;10:13;
11:7,22;14:8;17:17,
18;19:3;22:4,16;
25:16;29:4,25;
35:12;39:19;44:16;
45:10;47:12,13;
51:20,21
**week (2)**
27:6;32:16
**weeks (5)**
20:5;22:10;24:14;
32:5;46:18
**week's (1)**
39:4
**welcome (2)**
13:22;48:6
**weren't (4)**
25:6;27:2;40:4,18
**what's (3)**
5:15;17:2;22:1
**Whereupon (1)**
54:8
**whole (2)**
21:22,22
**who's (2)**
6:2;8:18
**whose (1)**
51:22
**who've (1)**
27:25
**willing (5)**
22:12;23:3;24:15,
23;25:5
**win (1)**
20:7
**winter (1)**
20:16
**wish (3)**
50:22;53:11,14
**wishes (1)**
52:8
**within (1)**
22:10
**without (9)**
9:25;10:7;23:1,4;
28:4;31:6;32:5;
38:12;44:14
**witness (6)**
17:12;27:5;39:2;
40:3,8;42:13
**witnesses (2)**
26:22,22
**word (1)**
17:2
**words (1)**
24:18

**work (10)**
10:23;14:24;
17:14;18:5;20:6,23;
23:1;34:7,10;45:1
**worked (4)**
17:15;42:23;45:8;
54:3
**working (2)**
15:1;17:16
**works (2)**
11:25;38:24
**worth (4)**
6:3;14:23;38:1,3
**writing (1)**
18:13
**wrote (1)**
26:1

**Y**

**years (6)**
4:17;11:16;26:3;
28:16;49:20,25
**yesterday (1)**
29:19
**York (2)**
13:13;34:9

**Z**

**zero (2)**
21:1,2
**Ziehl (2)**
3:8;48:25

**0**

**09 (1)**
20:16

**1**

**1 (1)**
3:3
**10 (1)**
34:6
**1006 (1)**
17:5
**15022 (2)**
51:7;53:15
**15023 (2)**
51:7;53:15
**15th (4)**
30:22;31:11,23;
33:1
**18th (7)**
31:14,17,22,23,24;
32:25;35:5

**2**

**2 (2)**
46:9;47:20

**2009 (2)**
16:2;52:7
**2010 (5)**
11:12;20:17;21:5;
25:24;52:7
**20th (1)**
34:22
**21st (8)**
9:17;12:12;30:23;
31:11;33:1;34:6;
35:3,3
**22,950,000 (1)**
18:18
**22.9 (1)**
7:23
**27th (2)**
5:10;12:12

**3**

**3 (3)**
16:11;21:15;52:12
**3:14 (1)**
54:8
**30b6 (1)**
39:2

**4**

**4 (2)**
3:4;52:12
**40.9 (2)**
6:11,13
**49.8 (2)**
6:3;7:19

**5**

**5 (1)**
21:15
**500 (1)**
19:15
**503b9 (3)**
7:10,12;10:8

**6**

**6 (1)**
6:12
**63.8 (1)**
18:17

**7**

**7 (1)**
21:15
**7,878,000 (1)**
17:22
**7.8 (3)**
6:19;7:4;18:7
**7056 (1)**
22:23
**72.8 (1)**

6:7

**8**

**8 (1)**
21:15
**8th (4)**
30:21;31:7;32:24;
35:4