Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to Plaintiff, Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST, | ) Adv. Pro. No. 10-_____ |
| Plaintiff, | ) |
| v. | ) |
| STATE OF CALIFORNIA FRANCHISE TAX BOARD, through JOHN CHIANG, Treasurer of the State of California, | ) |
| Defendant. | ) |

**THE LIQUIDATING TRUST'S COMPLAINT FOR TURNOVER, UNJUST
<u>ENRICHMENT AND DECLARATORY RELIEF</u>**

The Circuit City Stores, Inc. Liquidating Trust (the "Trust"), established pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), through Alfred H. Siegel, the duly appointed trustee of the Trust (the "Trustee"), for its complaint and for objections claim (the "Complaint") against the State of California Franchise Tax Board, through John Chiang, State Treasurer ("Defendant"), alleges as follows:

## SUMMARY OF THE ACTION

1. The Trust brings this action to recover a prepetition tax overpayment refund that Defendant concedes is valid and due. Post-petition, Defendant filed unwarranted claims against the Debtors' estates, to which the Debtors objected. Rather than respond to the objections, Defendant offset the refund against its claim, and then chose to default on the claim objections, as a result of which, Defendant's claims were disallowed. The Trust submits that Defendant holds the refund as property of the Debtors' estates, and that its action in offsetting the refund against its invalid claims was legally unwarranted.

## THE PARTIES

2. The Trustee ("Trustee" or "Plaintiff") is the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Trust"). Pursuant to Articles II and III of the Trust, the Trustee has the sole authority to pursue claims transferred to the Trust by the Debtors through the Plan, and to litigate objections to claims asserted against the Debtors' estates.

3. Prior to the Effective Date of the Plan, Circuit City Stores, Inc. and its affiliated debtors in possession (collectively "Circuit City" or the "Debtors")[1] were corporations that maintained their respective principal places of business in the locations set forth below, and were the debtors in the above-captioned chapter 11 bankruptcy cases.

4. Upon information and belief, defendant State of California Franchise Tax Board, through John Chiang, State Treasurer, is the official representative of the applicable state taxing authority with respect to the matters set forth herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding under 28 U.S.C. § 157(b).

7. Venue of these chapter 11 cases and this adversary proceeding in this district and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory and legal predicates for the relief requested by the Complaint are sections 105, 502, 503, 541 and 542 of title 11, United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

**PERTINENT FACTS**

A. **General Case Background**

9. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code, and until the effective date of the Plan, continued to operate as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

10. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

11. On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales at all of the Debtors' retail locations (the "Stores") pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going out of business sales at the Stores pursuant to the Agency Agreement. As of March 8, 2009, the "going out of business" sales at the Debtors' stores were completed.

12. On September 10, 2010, the United States Bankruptcy Court, Eastern District of Virginia, signed an Order confirming the Plan. The Plan became effective on November 1, 2010 (the "Effective Date").

B. **Background of Circuit City's Involvement with Defendant**

13. Prior to the commencement of these bankruptcy cases, the Debtors were a leading specialty retailer of consumer electronics and operated large nationwide electronics stores that sold, among other things, televisions, home theatre systems, computers, camcorders,

furniture, software, imaging and telecommunications products, and other audio and video electronics.

14. Debtor Circuit City Stores, Inc. ("CCSI") was a retailer of products and services that operated retail stores across the United States, and was headquartered and commercially domiciled in Virginia. Debtor Circuit City Stores West Coast, Inc. ("CCS-WC") was an entity established in order to allow the Debtors to more effectively manage the performance of their retail operations in the western United States, and was headquartered in Colorado. Also prior to the Petition Date, CCSI formed its subsidiary, Circuit City Purchasing Company, LLC ("CC-PC") for the purpose of efficient administration of the consolidated groups Use Tax administration.

15. Prior to the Petition Date, in the ordinary course of business, the Debtors recorded liabilities, if any, on their books and records based on state and local tax laws and regulations applicable to businesses operating in California. Debtors CCSI, CCSWC and CC-PC timely filed tax returns or other necessary regulatory filings with respect to taxes owed in the state of California.

**C.    The California FTB Claims**

16. On or about May 8, 2009, Defendant filed a claim against Debtor CCSI, asserting a priority unsecured claim in the amount of $1,040,412.95 on account of alleged franchise taxes owed. The claims agent designated this claim as Claim 12927.

17. On or about May 8, 2009, Defendant filed a claim against Debtor CC-PC, asserting (a) a priority unsecured claim in the amount of $12,236.75 and (b) a general unsecured claim in the amount of $800.48, on account of alleged franchise taxes owed. The claims agent designated this claim as Claim 12928.

18. On or about May 8, 2009, Defendant file a claim against Debtor CCS-WC, asserting a priority unsecured claim in the amount of $985,745.68 on account of alleged franchise taxes owed. The claims agent designated this claim as Claim 12929.

19. On or about June 22, 2009, Defendant filed a claim against Debtor CC-PC, asserting administrative expense priority in the amount of $844.22 on account of alleged franchise taxes owed for the fiscal year ending February 28, 2010. The claims agent designated this claim as Claim 13593.

20. On or about June 22, 2009, Defendant filed a claim against Debtor CCSI, asserting administrative expense priority in the amount of $5,019.62 on account of alleged franchise taxes owed for the fiscal year ending February 28, 2010. The claims agent designated this claim as Claim 13594.

21. On or about February 28, 2011, the Trust filed its *Liquidating Trustee's Objection to the Claim Nos. 12927, 12928, 12929, 13593 and 13594 Filed By the State of California Franchise Tax Board* (the "FTB Objection"), seeking to expunge all of Defendant's claims as unwarranted in fact and law. Defendant failed to respond to the FTB Objection, and the claims were expunged by order entered on May 18, 2011.

22. On or about March 7, 2011, Defendant filed a claim against Debtor CCSI, asserting administrative expense priority, a secured claim and general unsecured status for $0.00, on account of alleged income taxes owed. The claims agent designated this claim as Claim 15218.

23. On or about November 14, 2011, the Trust filed its *Liquidating Trustee's Twenty-Seventh Omnibus Objection to the Claims of Taxing Authorities* (the "Omnibus Objection"), seeking to expunge Claim No. 15218, among others, as unwarranted in fact and

law. Defendant failed to respond to the Omnibus Objection, and the claims were expunged by order entered on February 2, 2012.

**D.**     **Circuit City's Overpayment of Income Taxes to Defendant**

24.     As noted above, the Debtors operated a number of retail stores in the State of California, and incurred liability to the state for income taxes on retail sales and purchases occurring within the state. The Debtors timely submitted tax returns for all tax years prior to the cessation of their business. Debtor CCSI is entitled to a tax refund from the State of California in the amount of not less than $898,564, based on valid and timely filed tax returns and amended tax returns seeking refunds of California tax that had been paid by the Debtors. These amended returns were necessary to reflect adjustments made by the Internal Revenue Service to the Debtors' Federal taxable income, which had a net effect of decreasing the Debtors' California tax liability. CCSI timely filed requests for refunds based on those adjustments.

25.     The Debtors' tax returns were based on the Debtors' books and records of their transactions in the state, which the Debtors maintained on a regular basis as an essential part of their business (the "Books and Records"). According to the Books and Records, the Debtors overpaid not less than $898,564.00 to Defendant for income tax liability (the "Overpayments").

26.     Defendant was in the process of auditing the Debtors on the Petition Date. Defendant's claims in the Debtors' bankruptcy case were based on audit work-papers that were not "finalized" prior to the Petition Date. A Notice of Proposed Assessment was issued on or about May 8, 2009. The Debtors had previously properly notified Defendant that they were being examined by the IRS for years 2004 – 2006, and notified Defendant of the IRS adjustments to taxable income at the conclusion of the audit.

27. The adjustments resulted in a refund claim in the amounts of $411,974 and $948,239 for FYE 2004 and FYE 2005, respectively, and additional tax of $343,159 for FYE 2006. These amounts were confirmed by Notices issued to Circuit City by Defendant.

28. The work-papers upon which Defendant based its claims in the bankruptcy cases contained numerous errors and incorrectly applied federal RAR changes. For example, Defendant made calculation errors in the audit work-papers based on an improper application of the Federal Revenue Agent Report for FYE 2005 and FYE 2007. These errors result in an over-assessment of principal tax due of $98,529 for FYE 2005 and an over-assessment of principal tax due of $199,314 for FYE 2007.

29. In addition, Defendant improperly calculated the interest due for the year ended February 28, 2003. Interest was due for FYE 2003 resulting from an IRS audit settlement that resulted in an increase in the amount of tax due to Defendant in the amount of $841,349. The interest on that underpayment of tax was fully paid by CCSI on September 30, 2008 in the amount of $281,159. As a result of this improper calculation of interest, Claim No. 12927 was overstated by $33,168 and Claim No. 12929 was overstated by $87,835.

30. As a further example, the audit work-papers on which Defendant relied to validate its claims fail to properly allow California Enterprise Zone credits to which CCSI was entitled in the amounts of $198,473, $252,331 and $184,349 for FYEs 2005, 2006 and 2007 respectively.

31. Taken together, the sum of these errors alone results in the overstatement of the tax principal portion of Defendants' claims by $932,996, which exceeds the total tax principal claim of $855,124 thereby nullifying Defendant's claims for any tax principal amount due. Removal of any claim for principal nullifies the interest portion of the claims.

**Defendant's Offsets of the Overpayments Refund**

32.     By a Notice of Account Adjustment issued on October 16, 2009, and Notices of Action on Cancellation, Credit or Refund dated November 23, 2010, Defendant applied the Overpayment Refund to tax assessments purported to be due for tax years 2003-2008.  These actions left a balance of the Overpayments of $127,603.61.  Defendant refunded $118,490, plus interest of $20,094.05, to the Debtors on June 29, 2011.

33.     Defendant claims that it intentionally defaulted on the FTB Objection and Omnibus Objection because its claims had already been fully satisfied through offset against the Overpayments.  Defendant asserts that it filed Claim No. 15218 as an amended claim for $0.00 to reflect that no further amounts were due on its prior claims.  This action was taken after the Trust filed the FTB Objection, publicly revealing Defendant's claims as factually unwarranted.  The offset and covering "amended claim" constitute a calculated effort to avoid payment of the Overpayments Refund to the Debtors by its application to invalid claims.

## FIRST CLAIM FOR RELIEF

## (TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 542)

34.     The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

35.     Defendant is in possession, custody, and control of the Overpayments in an amount not less than $898,564.

36.     Defendant is not a custodian for the Overpayments.

37.     The Overpayments constitute valid and existing debts, due and owing by Defendant to the Debtors.

38. The Overpayments are property of the Debtors' estates under section 541 of the Bankruptcy Code, and constitute debts that are matured, payable on demand, or payable on order.

39. Despite being requested to do so, Defendant has not turned over or paid the Overpayments to the Debtors.

40. Accordingly, pursuant to Bankruptcy Code section 542, Defendant should be compelled to immediately turn over and deliver to the Trust the Overpayments in an amount not less than $898,564.00.

## SECOND CLAIM FOR RELIEF

### (UNJUST ENRICHMENT)

41. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

42. In the alternative to Count I, but without waiving any allegation with respect thereto, the Trustee makes the following additional allegations in support of Count II.

43. The Debtors conferred a benefit upon Defendant pursuant to the Overpayments, leaving Defendant in possession of amounts to which it is not entitled under any applicable fact or law.

44. Defendant insisted upon, actively pursued and knowingly accepted the benefit conferred by the Debtors, and indeed, assessed tax purported to be due in order to offset and avoid refunding the Overpayments to the Debtors.

45. The Debtors reasonably expected to be compensated by Defendant by return of the Overpayments in accordance with applicable law.

46. Defendant's receipt of benefit without just compensation to the Debtors has unjustly enriched Defendant in an amount not less than $1,043,808.00.

47. The Trust has no adequate remedy at law to recover the Overpayments.

48. Accordingly, as a result of Defendant's unjust enrichment at the Debtors' expense, the Trust is entitled to restitution from the Defendant in an amount not less than $898,564.00.

### THIRD CLAIM FOR RELIEF

### (DECLARATORY RELIEF)

49. The Trustee repeats and realleges each of the allegations set forth above as if fully set forth herein.

50. An actual, present controversy exists between the Trustee and Defendant in that Defendant contends that it properly offset the Overpayments against its then pending asserted claims against the Debtors. The Trustee asserts that Defendant's claims were not valid at the time of the offset, and that Defendant offset the Overpayments against its claims with knowledge that its claims were unwarranted in fact and law.

51. The Trustee is informed and believes and thereon alleges, that Defendant disputes the Trustee's contentions and that the Trustee would be entitled to any of the relief sought in this complaint.

### PRAYER FOR RELIEF

WHEREFORE, the Trust respectfully requests and prays that the Court:

i. Pursuant to Count I, enter judgment requiring Defendant to immediately turn over and deliver to the Trust the Overpayments Refund in an amount not less than $898,564.00; and

11

    ii. Pursuant to Count II, enter judgment against Defendant for unjust enrichment and award the Trust restitution damages on account of Defendant's unjust enrichment in an amount not less than $898,564.00; and

    iii. Pursuant to Count III, for declaratory relief that the setoffs by Defendant were improper and unwarranted in fact and law; and

    iv. Award the Trustee prejudgment interest at the legally allowed applicable rate;

    v. Award the Trustee costs, and expenses of suit herein; and

    vi. Grant the Trustee such other and further relief the Court deems just and appropriate.

Dated: Richmond, Virginia  TAVENNER & BERAN, PLC
   December 11, 2014

           /s/ Lynn L. Tavenner
          Lynn L. Tavenner (VA Bar No. 30083)
          Paula S. Beran (VA Bar No. 34679)
          20 North Eighth Street, 2nd Floor
          Richmond, Virginia 23219
          Telephone: (804) 783-8300
          Email: ltavenner@tb-lawfirm.com
            pberan@tb-lawfirm.com

          - and -

          PACHULSKI STANG ZIEHL & JONES LLP
          Andrew W. Caine, Esq.
          (admitted *pro hac vice*)
          10100 Santa Monica Boulevard, 13th Floor
          Los Angeles, California 90067-4100
          Telephone: (310) 277-6910
          Email: acaine@pszjlaw.com

          *Counsel to Plaintiff*
          *Alfred H. Siegel, Trustee of the Circuit City*
          *Stores, Inc. Liquidating Trust*

13