Andrew W. Caine, Esq.
Jeremy V. Richards, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel to the Circuit City Stores, Inc.*
*Liquidating Trust*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:

CIRCUIT CITY STORES, INC., et al.,

              Debtors.

---

Alfred H. Siegel, solely as Liquidating Trustee
for the Circuit City Stores, Inc. Liquidating
Trust,

              Objector,

v.

Chase Bank USA, N.A., (Claim No. 7065),

              Claimant.

---

Case No. 08-35653-KRH
Chapter 11

Contested Matter

# MOTION OF ALFRED H. SIEGEL, TRUSTEE, FOR SUMMARY ADJUDICATION DISALLOWING IN FULL CLAIM NO. 7065 FILED BY CHASE BANK USA, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JEREMY V. RICHARDS IN SUPPORT THEREOF

Alfred H. Siegel, solely as liquidating trustee to the Circuit City Stores, Inc. Liquidating

Trust (the "Trustee"), hereby moves this Court, pursuant to Bankruptcy Rule 9014(c) and 7056

and Federal Rules of Civil Procedure, Rule 56 for a summary adjudication disallowing in full,

with prejudice, Claim No. 7065 (the "Chase Claim") filed against the estate (the "Estate") of

Circuit City Stores, Inc. ("Circuit City," the "Debtor" or the "Company") by Chase Bank USA,

N.A. ("Chase" or the "Bank").  The Chase Claim comprises an original proof of claim (the

"Original Claim"), filed on or about January 28, 2009, and an amended proof of claim (the

"Amended Claim"), filed on or about December 12, 2014, pursuant to an order approving a

stipulation by and between the Trustee and Chase permitting the filing of the Amended Claim

[Dkt. No. 13504]. [1]  Pursuant to the Chase Claim, Chase seeks indemnification from the Estate

pursuant to a credit card program agreement by and between Circuit City and Chase in the total

amount of approximately $7.15 million, comprising: (a) $5.5 million paid by Chase pursuant to

the settlement of a class action brought against Chase alleging the improper application of credit

card payments made by holders of co-branded credit cards issued and administered by Chase for

customers of Circuit City; and (b) attorney's fees and costs incurred by Chase in defending and

resolving said litigation, in the alleged amount of approximately $1.65 million.  As more fully set

forth herein, the Chase Claim is devoid of any legal foundation and, accordingly, should be

summarily disallowed in full.

---

[1] True and correct copies of the Original Claim and the Amended Claim are attached as Exhibits "A" and "B," respectively, to the Declaration of Jeremy V. Richards filed in support of this Motion (the "Richards Declaration").

# I.

## OVERVIEW

From May of 2004 until shortly after the instant bankruptcy case was commenced, Chase ran a private label and co-branded credit card program (the Program) for the benefit of customers of Circuit City pursuant to a written and integrated Program Agreement with Circuit City. Pursuant to the Program Agreement, Chase was required to perform "all of the services necessary to establish, operate and actively market the Program" in accordance with the Program Agreement, including the obligations to: "[e]stablish, operate and market" the Program; "[p]rovide all required disclosures, terms and conditions to Cardholders, including Credit Card Agreements"; "[p]rocess and apply Cardholder payments in a timely manner to the applicable Accounts"; and "[o]perate the Program and service all Cardholders in accordance with [the Program] Agreement."  Chase was specifically charged with the obligation to develop and produce all marketing, promotional and solicitation materials for the Program.  Under the Program Agreement, each party agreed to indemnify the other party for certain losses incurred as a result of certain of its breaches relating to the Program.

In June of 2006, Gary Davis sued Chase and Circuit City in the Los Angeles Superior Court, asserting in his Original Class Action Complaint claims on behalf of himself and similarly situated individuals arising out of Chase's "fraudulent and unfair business practice of charging its California credit card holders finance charges in connection with purchases at Circuit City advertised as 'no interest, no payment,' 'no interest with minimum monthly payment,' or 'interest and payment-free' . . . ."  Specifically, Davis asserted that while Chase promoted certain

interest free transactions, in reality, by invoking a provision in its Cardmember Agreement that allegedly permitted it to allocate payments and credits in a manner most favorable to itself, Chase applied Cardmembers' monthly payments first to balances outstanding with respect to interest-free transactions (payment on which was supposed to be deferred until the interest-free period expired), then to interest-bearing balances, and improperly assessed interest and finance charges on the interest-bearing portion of the Cardmember balances left unpaid as a result of its payment allocation practices.  In this way, Cardmembers carrying interest-free balances would nonetheless incur monthly interest and finance charges even if they had made a monthly payment equal to the full outstanding balance of interest-bearing charges.

The Davis Action was subsequently removed by Chase to the District Court.  After Circuit City filed for bankruptcy protection, Davis filed a First Amended Class Action Complaint with the District Court, naming Chase as the sole defendant, and filed two, identical proofs of claim against Circuit City in these proceedings, both attaching the Original Class Action Complaint, which claims have been disallowed in full.

Ultimately, Chase settled with Davis, joined as plaintiff by Gene Castillo (on behalf of themselves and a certified Settlement Class) for the payment of $5.5 million.  In their motion in support of the Settlement Agreement, Davis and Castillo make clear that the settlement relates exclusively to allegations ". . . that Chase misled consumers and failed to properly apply its customer's payments first to regular balance purchases before promotional purchases," and that Chase's conduct resulted in damages to class members who were "wrongly assessed finance charges on those purchases."  The settlement motion further contends that the misallocation of

customer payments by Chase was in violation of Chase's advertising and its Cardmember

Agreement.  The Settlement Agreement itself (in section 1.1) reaffirms the gravamen of the class

action lawsuit, namely the allegations "that Chase improperly allocated payments or credits to

regular purchase balances on Circuit City Rewards Credit Cards after promotional or deferred

interest balances and that, as a result, cardholders paid excessive finance charges."

The Settlement Class, which shares the settlement fund after deduction of attorneys' fees,

is defined as anyone who was a Circuit City Rewards Credit Cardmember (i.e., the obligor,

payor or authorized user on a credit card issued by Chase and co-branded with Circuit City) with

a California billing address who, between May 26, 2004 and June 5, 2014 "made a promotional

or deferred-interest purchase at Circuit City and who, as a result of payments or credits being

allocated to a regular purchase balance after the promotional or deferred-interest balance, paid

more in finance charges than they would have paid if the payments or credits had first been

applied to the regular purchase balance."  The Settlement Class is, thus, defined solely with

respect to Chase's conduct, there being absolutely no requirement that a member of the

Settlement Class allege or demonstrate any acts or omissions on the part of Circuit City or

reliance on any specific advertising.  In sum, settlement payments are being made to

Cardmembers who have suffered damages as a result of Chase's alleged improper allocation of

their credit card payments and credits.

Nonetheless, by its proof of claim herein, Chase seeks to recover from the Liquidating

Trust the class action damages, paid as a direct result of its own alleged wrongdoing, together

with fees and expenses allegedly incurred in defending the Davis Action, asserting that the

"core" issue in the Davis litigation was "whether Circuit City's advertising was misleading and deceptive."  Amended Claim, ¶ 4.[2]  Chase's conceit in attempting to shift its liability to the Liquidating Trust is even more breathtaking given that not only is there no basis under the Program Agreement to make such a demand, but on the contrary, the facts and circumstances would clearly support an indemnification claim by Circuit City (or the Liquidating Trust) against Chase.  Indeed, in 2007, early on in the litigation with Davis, after repeated requests by Circuit City for indemnification from Chase, Chase's representative responded by informing Circuit City in writing that "[i]f the payment allocation issue becomes the only remaining issue at any time going forward, Chase will agree to indemnity" Circuit City.  The history of the Davis Action, the assertions of Davis, the terms and conditions of the Settlement Agreement and the parameters of the certified Settlement Class all demonstrate beyond any reasonable doubt that the only issue presented in the Davis Action and certainly the only basis upon which Chase is paying substantial damages was Chase's allegedly wrongful conduct in misallocating Cardmember payments and credits.

## II.

## RELEVANT FACTS

The Trustee is informed and believes that the following relevant facts (supported by the Richards Declaration filed in support hereof) are not, and cannot be disputed by claimant Chase:

---

[2] Although consistent with the terms and conditions of the Settlement Agreement, the allegations in the underlying litigation have now been superseded by the terms of the Settlement Agreement.  That agreement clearly defines Chase's liability and, more importantly, the Settlement Class, to whom payment is owed (after deduction of class fees and expenses).

A.    **The Program Agreement**

1.    On or about January 16, 2004, Circuit City and Bank One, Delaware,

N.A., predecessor in interest to Chase, entered into that certain Consumer Credit Card Program

Agreement (the "Program Agreement"), which agreement became effective on or about May 25,

2004.[3] [4]

2.    Pursuant to the Program Agreement, Chase established the Program,

namely a private label and co-branded credit card program for Circuit City.  Program Agreement,

¶ 2.1(a).[5]  The Program Agreement is an integrated contract which governs all aspects of the

Program.  Program Agreement, ¶ 11.2.

3.    Under the Program Agreement, Chase was obligated to "perform all of the

services necessary to establish, operate and actively market the Program in accordance with the

terms and conditions of [the Program Agreement] . . . ."  Program Agreement, ¶ 2.1(a); (d).  In

particular, Chase was obligated to perform the following services: (a) "[a]ctively solicit, accept,

and review Credit Card Applications from, or on behalf of, prospective Cardholders"

(¶ 2.1(d)(ii)); (b) "[p]rovide all required disclosures, terms and conditions to Cardholders,

---

[3] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Program Agreement.

[4] Pursuant to that certain Motion to File Certain Documents Under Seal (the "Sealing Motion") [Dkt. No. 5901], filed herein by Chase, this Court entered its Order Granting Motion to File Documents Under Seal (the "Sealing Order"), on or about December 15, 2009.  Pursuant to the Sealing Order, this Court, *inter alia*, permitted Chase to file the Program Agreement under seal.  On or about November 20, 2014, Chase filed, *inter alia*, the Program Agreement as Exhibit "2" to the Sealed Exhibit [Dkt. No. 13489].  Although the Trustee disputes that the Program Agreement is proprietary and should in fact be sealed, a copy of the Program Agreement has not been filed with this Motion.  Instead, the Court is referred to a copy of the document filed under seal as Docket No. 13489.  Notwithstanding the foregoing, references are made herein to certain provisions of the Program Agreement which do not, and cannot be construed as containing any proprietary or confidential information, but rather are boilerplate provisions describing the parties' rights and responsibilities under the Program Agreement and not the economic terms and conditions.

[5] As noted above, the Chase Claim involves only the co-branded credit card program.

including Credit Card Agreements" (¶ 2.1(d)(v)); (c) "[s]upport the marketing efforts in this

Agreement with respect to Accounts" (¶ 2.1(d)(ix)); and (d) "[p]rocess and apply Cardholder

payments in a timely manner to the applicable Accounts" (¶ 2.1(d)(xi)).  Paragraph 2.1(e) of the

Program Agreement obligates Chase to perform all of the Services "in compliance with

Applicable Law".

4.     Pursuant to paragraph 2.3(b) of the Program Agreement, all Credit Card

Applications and other promotional signage were to be provided by Chase.  Any approval given

by Circuit City "of any materials that contain billing or credit terms is not intended to be and will

not be construed to be an approval of such terms".  *Id*. Any marketing materials developed by

Circuit City "must be approved with respect to legal requirements, in writing by Bank prior to

distribution by Company; however, any Credit Card Application used for the Program must be

supplied to Company by Bank".  *Id*.  Paragraph 3.1(a) of the Program Agreement provides that

Chase "shall be responsible for ensuring that Account Documentation [which definition includes

Credit Card Applications and Credit Card Agreements] complies with Applicable Law."

**B.     The Davis Action**

5.     On June 26, 2006, Gary Davis, on behalf of himself and as private

attorney general on behalf of similarly situated plaintiffs ("Davis"), filed a class action complaint

(the "Original Class Action Complaint") against Chase and Circuit City in the Los Angeles

Superior Court, Central District (the "Los Angeles Superior Court").[6]  The Original Class Action

Complaint alleged numerous causes of action against Chase and Circuit City based upon

---

[6] A true and correct copy of the Original Class Action Complaint is attached to the Original Claim as Exhibit "1."

allegations that they both misled customers of Circuit City in California who made "Promotional

Purchases" (*i.e.*, purchases advertised as being "no interest, no payment" transactions for a

specified period of time) from and after June, 2002 using a Circuit City Rewards Card.

Specifically, the Original Class Action Complaint alleges that if, during the specified interest

free, no payment period, the cardholder was required to make a minimum or greater payment on

account of a pre-existing or other account balance, such payment was applied first to the

Promotional Purchase, thereby leaving an unpaid, interest bearing deficiency on the balance of

the cardholder's outstanding obligations.

6.      Chase removed the Davis Action to the United States District Court,

Central District of California (the "District Court") and then sought to compel arbitration with

Davis based upon arbitration provisions purportedly imposed upon cardholders pursuant to the

"change of terms" clause in their Cardholder Agreements (or "Cardmember Agreements").  The

District Court denied Chase's motion but stayed the Davis Action while Chase appealed its

ruling to the Ninth Circuit Court of Appeals (the "Ninth Circuit").  The Ninth Circuit affirmed

the District Court's ruling denying Chase's motion to compel arbitration and the matter was

remanded to the District Court in late 2008.  At around the same time, on November 10, 2008,

Circuit City filed its chapter 11 proceeding.

7.      Thereafter, on January 26, 2009, Davis and Chase submitted a Joint Status

Report and Request for Status Conference (the "Joint Status Report") to the District Court, a true

and correct copy of which is attached to the Richards Declaration as Exhibit "C."  In the Joint

Status Report, Davis contended that the District Court stay should be lifted in order to allow the

action to proceed, asserting that:

> Chase's liabilities and obligations are not dependent on those of
> Circuit City.  Chase's wrongdoing extends to its own disclosures
> set forth in the cardmember agreement, the adequacy or
> inadequacy of those disclosures, and the improper allocation of
> credit card payments to promotional items before crediting them
> first to higher interest non-promotional items.  <u>None of this
> conduct has anything to do with the conduct alleged against Circuit
> City</u>.  [Emphasis added.]

Joint Status Report, p. 3, lines 5-11.

8.      Bifurcating his claims against Chase and Circuit City, on January 27,

2009, Davis filed two identical proofs of claim in the Circuit City bankruptcy, Claim Nos. 6104

and 7011 (the "Davis Claims"), asserting damages "in excess of $25,000 according to proof at

trial" and attaching the Original Class Action Complaint.  Pursuant to Circuit City's Thirty-First

Omnibus Objection to Claims, the Davis Claims were disallowed in full, by order entered

October 16, 2009 [Dkt. No. 5294].

9.      On March 17, 2009, after the District Court lifted its stay of the Davis

Action, Davis filed a First Amended Class Action Complaint, naming only Chase as a defendant.

10.      The First Amended Class Action Complaint, a true and correct copy of

which is attached to the Richards Declaration as Exhibit "D," alleged four claims for relief

against Chase: violation of the Consumer's Legal Remedies Act (the "CLRA"); violation of the

California Business and Professions Code § 17200 *et seq*. (unlawful and unfair business

practices) (the "Unfair Competition Law" or the "UCL"); breach of the Cardmember Agreement;

and breach of the implied covenant of good faith and fair dealing.  Paragraph 47 of the First

Amended Class Action Complaint sets forth a non-exhaustive list of Chase's alleged unfair,

fraudulent and deceptive business practices, as follows:

> (a) Advertising promotional items as interest and payment free
> when purchased with a Chase Circuit City Rewards Card when in
> fact, interest and finance charges were frequently applied;

> (b) Charging a finance fee despite Payment of the monthly balance
> in part or in full, without deducting the Payment made before
> assessing any finance charge;

> (c)Applying monthly Payments to Promotional Purchases not yet
> billed or owing instead of to the balance as billed in the monthly
> statement due; and

> (d) Inserting an unconscionable arbitration and class action waiver
> clause and "change of terms" clause in its Cardmember
> Agreement.

11.    Chase brought a number of motions before the District Court, seeking

either to eliminate, or significantly reduce the scope of the claims asserted in the First Amended

Class Action Complaint.

12.    As a result, by order entered September 3, 2009 (the "First Dismissal

Order"), a true and correct copy of which is attached to the Richards Declaration as Exhibit "E,"

the District Court dismissed, on federal preemption grounds: (a) the First Claim for Relief under

the CLRA to the extent that it sought money damages; and (b) the Second Claim for Relief

brought under the UCL, but only to the extent that the claim sought to invalidate Chase's

payment structure "as unfair."[7]

---

[7] Specifically, the District Court upheld the Second Claim for Relief to the extent that it asserted a claim for
deceptive advertising, but found the claim subject to federal preemption to the extent that it challenged "the
allocation of payments *apart* from the way that allocation interacts with deceptive advertising…."  First Dismissal
Order, p. 22, lines 23-24.

13.     The First Dismissal Order is of particular significance because it focuses on the specific disclosures that Davis alleged were misleading and deceptive, namely inconsistent and conflicting provisions of the Cardholder Agreement.  Thus, at page 6 of the First Dismissal Order, the District Court cites to the section of the Cardholder Agreement relating to special promotional purchase balances, which reads as follows:

> "special promotional purchase balances. . . . Finance charges accruing on these balance types are not added to your Account balance, but instead they are accumulated from billing cycle to billing cycle and added to your account as Accumulated Finance Charges only if the Interest Free Special Purchase . . . has not been paid in full by the end of the time period specified in the promotional offer. . . . Until accumulated charges are posted to your account, we refer to these amounts as "Accumulated Deferred Finance Changes."

14.     The District Court goes on to note that "[t]he Cardholder Agreement repeatedly represented that no payment would be due, and no interest would be charged, until after the end of the time period specified in the promotional offer.  [Citations omitted]".  First Dismissal Order, p. 6, lines 19-22.  The District Court observes that in contradistinction to the foregoing:

> The Cardholder Agreement also states: "[Y]ou agree that we will and you authorize us to collect your payments and credits in a way that is most favorable to or convenient for us.  For example, you authorize us, in our discretion, to apply your payments and credits to balances with lower Annual Percentage Rates (such as promotional Annual Percentage Rates) before balances with higher Annual Percentage Rates."  [Citations and footnote omitted.]

First Dismissal Order, p. 6, line 23 – p. 7, line 2.  The District Court states that "[a]ccording to Plaintiff, although the quoted language addresses lower and higher APR balances, it should not

be read to include 'interest-free balances,' with no APR being posted to Plaintiff's monthly

account balance.  [Citation omitted]" First Dismissal Order, p. 6, lines 4-7.

15.     Subsequently, by order entered November 15, 2010, a true and correct

copy of which is attached to the Richards Declaration as Exhibit "F," the District Court held that

Chase was not liable on any of the Claims for Relief for "conduct prior to Chase's acquisition of

FNANB's credit card assets on May 25, 2004."[8]  Finally, by order entered on January 16, 2015, a

true and correct copy of which is attached to the Richards Declaration as Exhibit "G," the

District Court dismissed the Fourth Claim for Relief (for breach of the implied covenant of good

faith and fair dealing).

16.     Thus, the only surviving and operative portions of the First Amended

Class Action Complaint seeking damages were: (a) the Second Claim for Relief under the UCL,

but only to the extent that it alleges deceptive advertising practices but not to the extent that it

asserts that Chase's payment structure (or application of payments) is inherently unfair; and (b)

the Third Claim for Relief for breach of the Cardmember Agreement.

17.     On April 23, 2014, Davis filed a motion (the "Preliminary Approval

Motion"), seeking Court approval of that certain Stipulation and Agreement of Settlement (the

"Settlement Agreement"), entered into by and between Davis (and Gene Castillo, both as

putative representatives of the Settlement Class, defined below) and Chase, pursuant to which

Chase would pay the Settlement Class $5.5 million in exchange for full and complete releases

from each and every Settlement Class Member.

---

[8] FNANB refers to First North American National Bank, Chase's predecessor in interest from whom it purchased
assets pertaining to the Circuit City credit card program on May 25, 2004.

18.     By order (the "Preliminary Approval Order") entered by the District Court on June 5, 2014, the District Court approved the Settlement Agreement on a preliminary basis and preliminarily certified the Settlement Class as set forth in the Settlement Agreement.

19.     On August 29, 2014, Davis and Castillo filed their motion (the "Final Approval Motion"), a true and correct copy of which is attached to the Richards Declaration as Exhibit "H," seeking final approval of the Settlement Agreement and final certification of the Settlement Class.

20.     In the Final Approval Motion, Davis and Castillo summarized the class action as a lawsuit alleging "that Chase misled consumers and failed to properly apply its customers' payments first to regular balance purchases before promotional purchases".  In summarizing the allegations of the operative complaint, the Final Approval Motion contended that: "Chase misled and deceived consumers in the manner in which it applied credit card payments to promotional purchases made at Circuit City"; ". . . Chase engaged in a deceptive and unfair business practice of misrepresenting a promotional purchase program and then misallocating payments made by customers participating in the program"; Chase "wrongly assessed finance and interest charges in violation of Chase's cardmember agreement"; ". . . Chase improperly applied credit card payments to the 'interest free' balances that were not due before applying them to interest-bearing, non-promotional balances"; and that all of Chase's conduct was "in direct contradiction to Chase's advertising and its cardmember agreement". Final Approval Motion, p. 2, lns 5-27.

21.    Paragraph 3.2 of the Settlement Agreement defines the Settlement Class as follows:

> All Chase Circuit City Rewards Credit Cardmembers with California billing addresses who, between May 26, 2004 and the entry of this Preliminary Approval Order (inclusive), made a promotional or deferred-interest purchase at Circuit City and who, as a result of payments or credits being allocated to a regular purchase balance after the promotional or deferred-interest balance, paid more in finance charges than they would have paid if the payments or credits had first been applied to the regular purchase balance.[9]

22.    The Settlement Class is thus defined without any reference to acts or omissions on the part of Circuit City nor is the Settlement Class defined with reference to any advertising.  Indeed, membership of the Settlement Class is based solely on being a victim of the alleged misconduct of Chase, in violation of its Cardmember Agreements.

23.    By amended order entered on October 29, 2004 (the "Final Approval Order"), a true and correct copy of which is attached to the Richards Declaration as Exhibit "I," the District Court approved the Settlement Agreement on a final basis and certified the Settlement Class on a final basis.  Concurrently, the District Court entered its Judgment pursuant to the terms of the Final Approval Order, a true and correct copy of which is attached to the Richards Declaration as Exhibit "J," thereby terminating the Davis Action.

## C.    The Chase Claim

24.    Shortly after the Davis Action was commenced, Circuit City asked Chase to indemnify it in connection with the action.  Eventually, by e-mail dated April 23, 2007, Chase

---

[9] The Settlement Agreement defines "Circuit City Rewards Credit Card Members" as holders of "Circuit City Rewards Credit Cards," which are in turn defined to mean a "credit card issued by Chase and co-branded with Circuit City . . . ."  Settlement Agreement, ¶ 2.8, 2.9.

advised Circuit City that it wished to defer making a decision on Circuit City's indemnification request, but added that "[i]f the payment allocation issue becomes the only remaining issue at any time going forward, Chase will agree to indemnify" Circuit City.  Richards Declaration, Exh. "K."

25.       Notwithstanding the foregoing, or the fact that it had never previously raised the issue of indemnification from Circuit City with respect to the Davis Action, on January 28, 2009, Chase filed the Original Claim, asserting an unliquidated claim "for defense and indemnity" against Circuit City relating to the Davis Action and contending that any liability it might have to Davis or the class arose out of "specific advertising challenged in the Underlying Complaint" that "was produced by the Debtor and not by Chase."  Original Claim, ¶ 2.

26.       Thereafter, pursuant to the Debtor's Thirty-First Omnibus Objection to Claims (Disallowance of Certain Legal Claims) [Dkt No. 4585], filed on August 20, 2009, the Debtor sought disallowance of, inter alia, the Original Claim on the basis of lack of legal liability.  On September 15, 2009, Chase filed a response (the "Response") [Dkt. No. 4899], asserting indemnification under the Program Agreement and again contending that the Davis Action "centers on the Debtor and its advertising to its customers."  Response, ¶ 3.  Thereafter, the objection to the Original Claim has been continued from time to time.  Most recently, after entry of the Final Approval Order and pursuant to a stipulation with the Trust [Dkt. No. 13476] and this Court's order thereon [Dkt. No. 13504], Chase filed the Amended Claim, which, notwithstanding the express terms of the Settlement Agreement, continues to contend that the

liability it settled in the Davis Action "centered on Circuit City and its advertising to its

customers."  Amended Claim, ¶ 4.

27.     The scope of indemnification of Chase by Circuit City is dealt with

exclusively in Paragraph 10.2 of the Program Agreement; likewise, the scope of indemnification

of Circuit City by Chase is governed exclusively by section 10.3.[10]  In general, Circuit City only

agreed to indemnify Chase for certain specified acts, omissions, breaches of the Program

Agreement or breaches of obligations owed to third parties which resulted in "Indemnified

Losses" to Chase.  By the same token, Chase agreed to indemnify Circuit City for its own

specified acts, omissions, breaches of the Program Agreement and breaches of obligations owed

to third parties that caused Indemnified Losses to Chase.

28.     Among the indemnification obligations assumed by Chase was the

obligation to compensate Circuit City for Indemnified Losses arising out of, relating to, or

resulting from: "[a]ny acts or omissions of Bank with respect to the extension of credit pursuant

to the Program" (¶ 10.3(a)); "[a]ny breach by Bank of any of the terms, covenants,

representations, warranties, or other provisions contained in this Agreement" (¶ 10.3(b)); "[t]he

failure of Bank or its Affiliates, or the failure of Account Documentation, or procedures provided

by Bank relating to the Program, to comply with Applicable Law" (¶ 10.3(c)); and "[a]ny

negligent act, willful misconduct or negligent omission where there was a duty to act by Bank or

---

[10] Sections 10.4 through 10.7 of the Program Agreement deal with the procedural aspects by which one party must claim indemnification from the other.  While Circuit City contends that Chase did not comply with these procedural requirements, those issues have not been raised in the context of this Motion.  Nonetheless, the Liquidating Trustee is not hereby waiving such claims and assertions and reserves the right to assert all such additional defenses in the event this Motion is denied.

its Affiliates relating to an Account, a Cardholder, a prospective Cardholder, Account

Documentation or any items of Indebtedness" (¶ 10.3(d)).[11]

29.    As noted above, the payment allocation issue was ultimately the one and

only issue on which Chase agreed to settle with the Settlement Class.

## III.

## ARGUMENT

**A.    The Davis Action and the Settlement Agreement Relate Solely to Chase's Breaches**

**of Duties and Obligations Owed to the Settlement Class**

30.    The First Amended Complaint and, more specifically, the remaining

operative claims for relief set forth in that complaint, alleged misconduct exclusively on the part

of Chase.  Indeed, Davis filed separate proofs of claim against the bankruptcy estate of Circuit

City, both of which were disallowed in full.  As Davis and Castillo stated in the Final Approval

Motion, the operative allegations of the Settlement Class are that: "Chase misled consumers and

failed to properly apply its customers' payments first to regular balance purchases before

promotional purposes," as a result of which ". . . class members were wrongly assessed finance

charges on those purchases."  Final Approval Motion, p. 1, ln. 7-10.  The definition of the

Settlement Class is devoid of any references to acts or omissions on the part of Circuit City.

31.    As noted by the District Court in the First Dismissal Order, the deception

arose from two inconsistent provisions of the Cardholder Agreement, one which promised that

Chase would honor its interest-free commitments with respect to promotional purchase balances,

---

[11] "Account Documentation" is defined to include Credit Card Applications and Credit Card Agreements;
"Indebtedness" is defined to mean any amount owing by a Cardholder under an Account with Chase.

the other, apparently allowing Chase, in its discretion, to apply payments and credits in a manner

most favorable to Chase.  The alleged damage to Cardholders arose when Chase elected to

invoke the latter provision to trump the former.

32.    The fact that the sole basis of liability resolved by the Settlement

Agreement is Chase's alleged failure to properly allocate credit card payments in accordance

with the Cardmember Agreement is borne out by the definition of the Settlement Class.  In order

to qualify for a settlement payment, a class member need only satisfy the following conditions:

(a) it was a Cardmember with a California billing address; (b) who, between May 26, 2004 and

June 5, 2014, made a promotional or deferred interest purchase at Circuit City; and (c) who, as a

result of payments or credits being allocated to a regular purchase balance after the promotional

or deferred interest balance, paid more in finance charges than it would have paid if the

payments or credits had first been applied to the regular purchase balance.  The definition of the

Settlement Class eloquently demonstrates that the sole issue in controversy being settled

pursuant to the Settlement Agreement is Chase's alleged wrongful misallocation of credit card

payments and credits.  Pursuant both the Cardmember Agreement with members of the

Settlement Class and, inter alia, Section 2.1(d)(xi) of the Program Agreement, the responsibility

to properly and timely process and apply cardholder payments and charges rested exclusively

with Chase, as acknowledged by Chase as early as April, 2007, in its email communication

referenced in paragraph 24, above.

33.    Contrary to the assertions made by Chase in its Proof of Claim that any

liability owed to the class arose out of wrongful and deceptive advertising created by Circuit

City, members of the Settlement Class are not required to show that they relied on any

advertising in order to establish their claims, let alone advertising generated by Circuit City.

Further, as noted above, pursuant to Paragraph 2.3(b) of the Program Agreement, any marketing

materials developed by Circuit City had to "be approved with respect to legal requirements, in

writing by Bank prior to distribution by Company".  There is no evidence in the record that

Circuit City ever used or distributed marketing materials not pre-approved by Chase with respect

to "legal requirements" and no evidence that Chase ever notified Circuit City of a default under

the Program Agreement for such alleged conduct.

## B.   **Accordingly, Chase Is Not Entitled to Seek Indemnification Against Circuit City or the Liquidating Trust**

34.     As noted above, the Davis Action, the definition of the Settlement Class

and the Settlement Agreement itself all relate to alleged misconduct or breaches by Chase with

respect to the allocation of credit card payments under the relevant terms of the Cardholder

Agreement.  The only plausible basis upon which Chase could seek indemnity from Circuit City

with respect to the Program is pursuant to Section 10.2(b1), which provides that Circuit City will

indemnify Chase for Indemnified Losses arising out of the "use by Company of advertising,

marketing, promotion or solicitation materials not approved by Bank or not consistent with the

marketing copy specifications manual referred to Section 2.3(b)".  However, as noted above,

Chase's liability under the Settlement Agreement to members of the Settlement Class is not

contingent upon them proving that they relied on any specific advertising, whether generated by

Chase, Circuit City, or otherwise.  Further, there has been no evidence produced by Chase that

Circuit City every disseminated marketing materials not properly approved by Chase.

35.    Rather, as is clear both from the record and from Chase's conduct, if

indemnity is due from anyone with respect to the Davis Action it is from Chase to Circuit City

and not the other way around.

C.    **Even if Circuit City is Co-Liable with Chase to the Davis Class, The Chase Claim
Should be Disallowed Pursuant to Bankruptcy Code § 502(e)(1)(A)**

36.    As more fully discussed above, Chase's alleged liability to the Settlement

Class is based exclusively on its own acts, omissions, and breaches and in no way relates to, or

implicates any conduct by Circuit City.  Further, to the extent that Davis, Castillo or the class

they represent had any claims against Circuit City, those claims have been disallowed in full.

Under these circumstances, even if Circuit City was co-liable with Chase to the Settlement Class

in connection with the liabilities settled pursuant to the Settlement Agreement (and it clearly is

not), the Chase Claim must still be disallowed.

37.    Bankruptcy Code § 502(e)(1) provides, in relevant part, that any claim for

reimbursement or contribution of an entity that is liable with the debtor on the claim of a creditor

"shall" be disallowed to the extent that "such creditor's claim against the estate is disallowed."

38.    A claim for indemnity is a claim for "reimbursement" within the scope of

section 502(e).  *See Sorensen v. Drexel Burnham Lambert Group (In re Drexel Burnham

Lambert Group, Inc.)*, 146 B.R. 92 (S.D.N.Y. 1992); *Capital Industries, Inc. v. Regal Cinemas,

Inc. (In re Regal Cinemas, Inc.)*, 393 F.3d 647, 650 (6th Cir. 2004); *In re Pacor, Inc.*, 110 B.R.

686, 690 (E.D. Pa. 1990); *In re Pettibone Corp.*, 162 B.R. 791, 809 (Bankr. N.D. Ill. 1994) ("a claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within the meaning of section 502(e)(1)(B)"). The mandate of section 502(e)(1)(A) is clear and unequivocal that when a creditor's claim against the estate is disallowed, the claim of an entity for reimbursement relating to that claim must be disallowed to the same extent. *See In re Regal Cinemas, Inc., supra* at 651 (noting that the language of section 502(e)(1)(A) is "clear"); see also *In re Altheimer & Gray*, 393 B.R. 603, 610 (Bankr. N.D. Ill. 2008) (noting that one of the policies of section 502(e)(1) is to "prevent co-debtors from achieving more favorable terms than the underlying creditor" and further noting that the language of section 502(e)(1)(A) is "plain" and must therefore be enforced according to its terms).

39.    In this instance, Chase seeks indemnity and reimbursement with respect to the Davis Claims. The Davis Claims have been disallowed. Therefore, under the mandate of section 502(e)(1)(A), the Chase Claim must be similarly disallowed.

## IV.

## CONCLUSION

Chase seeks indemnification from the Liquidating Trust based upon losses and damages it incurred as a result of its own alleged wrongful conduct. Ironically, under the Program Agreement which governs the indemnification obligations of the parties, the facts and circumstances as alleged by Chase in fact give rise to an indemnification obligation running in the opposite direction, from Chase to Circuit City, as was acknowledged by Chase as early as April of 2007. For all of the reasons set forth herein, the Chase Claim should be disallowed, in full.

Dated: December 18, 2014                    TAVENNER & BERAN, PLC

                                            _____/s/ Paula S. Beran_____
                                            Lynn L. Tavenner (VA Bar No. 30083)
                                            Paula S. Beran (VA Bar No. 34679)
                                            20 North Eighth Street, 2nd Floor
                                            Richmond, Virginia 23219
                                            Telephone: (804) 783-8300
                                            Facsimile:  (804) 783-1078

                                                    - and -

                                            Andrew W. Caine, Esq.
                                            Jeremy V. Richards, Esq.
                                            (admitted *pro hac vice*)
                                            PACHULSKI STANG ZIEHL & JONES LLP
                                            10100 Santa Monica Blvd., 13th Floor
                                            Los Angeles, CA  90067
                                            Telephone: (310) 277-6910
                                            Facsimile:  (310) 201-0760

                                            *Counsel for Alfred H. Siegel, as Trustee of the*
                                            *Circuit City Stores, Inc. Liquidating Trust*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on the 18th day of December, 2014, a true and correct copy of the foregoing ***MOTION OF ALFRED H. SIEGEL, TRUSTEE, FOR SUMMARY ADJUDICATION DISALLOWING IN FULL CLAIM NO. 7065 FILED BY CHASE BANK USA, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JEREMY V. RICHARDS IN SUPPORT THEREOF*** was served via CM/ECF, electronic delivery and/or first class mail, postage prepaid, as follows:

Frank A. Merola
STROOCK & STROOCK & LAVAN
2020 Century Park East
Los Angeles, CA  90067-3086
fmerola@stroock.com

Michael A. Condyles
Jeremy S. Williams
KUTAK ROCK LLP
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Michael.condyles@kutakrock.com

Robert B. Van Arsdale, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA  23219


*/s/     Paula S. Beran*
Counsel