Class Counsel, on behalf of the Settlement Class, are authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Agreement to effectuate its terms.

7.     The Final Fairness Hearing will take place before the Honorable Dean D. Pregerson on **October 27, 2014 at 11:00 a.m.,** at the United States District Court, Central District of California, Courtroom #3, 312 Spring Street, Los Angeles, California 90012, to determine:  whether the proposed Settlement of the Lawsuit on the terms and conditions provided for in the Agreement is fair, adequate and reasonable as to the Settlement Class Members and should be approved; whether the Judgment, as provided for in the Agreement, should be entered; and whether the amount of fees and costs that should be awarded to Class Counsel, and the amount of the service awards that should be awarded to Plaintiffs, as provided for in the Agreement.  The Court will also hear and consider any properly lodged objections at that time.

8.     This Court approves Gilardi & Co. LLC as the Settlement Administrator.  The Settlement Administrator is directed to implement the notice program set forth in Sections 7.2 and 7.3 of the Agreement.

9.     This civil action was commenced after February 18, 2005.  To the extent it has not already done so, the Court directs Chase to notify the appropriate Federal and State officials under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and, at or before the Final Fairness Hearing, file proof that such notice has been given.

10.     This Court finds that notice as set forth in Sections 7.2 and 7.3 of the Agreement are the only notice required, and that such notice satisfies the requirements of due process, the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constitutes the best notice practicable under the circumstances and will constitute due and sufficient notice to all persons entitled thereto.  This Court approves the form

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51732215

and content of the Postcard Notice and Long-form Notice attached as Exhibits C and D to the Agreement.

11.    All Settlement Class Members who do not request exclusion ("opt-out") from the Settlement Class certified pursuant to Federal Rule of Civil Procedure 23(b)(3), pursuant to the procedure set forth in Paragraph 12 below, will be bound by all determinations and judgments in this Lawsuit concerning the Settlement, including, but not limited to, the validity, binding nature and effectiveness of the releases set forth in Sections 6.1 and 6.2 of the Agreement.

12.    Any Settlement Class Member who wishes to opt-out of the Settlement Class will submit to the Settlement Administrator an appropriate written request for exclusion by mail, postmarked no later than one hundred and five (105) days after entry of this Order.   The request for exclusion must be personally signed by the Settlement Class Member, and include:  (i) the Settlement Class Member's name, address, telephone number; (ii) the last four digits of the Settlement Class Member's Chase credit card account number(s); (iii) a sentence certifying that he or she is a Settlement Class Member; and (iv) the following statement: "I request to be excluded from the class settlement in Davis v. Chase Bank USA, N.A., United States District Court, Central District of California, Case No. 2:06-CV-04804-DDP-PJW."   No Settlement Class Member, or any person acting on behalf of or in concert or participation with a Settlement Class Member, may exclude any other Settlement Class Member from the Settlement Class.

13.    Any Settlement Class Member, who has not previously opted-out in accordance with the terms of Paragraph 12 above, may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service awards to Plaintiffs; provided, however, that no Settlement Class Member will be heard, and no objection may be considered, unless the Settlement Class Member files with this Court a written statement of the objection postmarked no later

- 4 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

than one hundred and five (105) days following entry of this Order. Copies of all objection papers also must be served electronically via the Court's ECF system or mailed, postmarked no later than one hundred and five (105) days following entry of this Preliminary Approval Order, to each of the following: Class Counsel, Drew Pomerance, Esq., Roxborough, Pomerance, Nye & Adreani, LLP, 5820 Canoga Avenue, Woodland Hills CA 91367-6549; and counsel for Chase, Julia B. Strickland, Esq. and Stephen J. Newman, Esq., Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, California 90067. All objections must include: (i) the objector's name, address and telephone number; (ii) the last four digits of the objector's Circuit City Rewards Credit Card account number(s); (iii) a sentence certifying he or she is a Settlement Class Member; (iv) the factual basis and legal grounds for the objection to the Settlement; (v) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; (vi) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing; (vii) a sentence certifying that the objector has not been promised anything in return for objecting; and (viii) the personal signature of the objector.

14.    Class Counsel will submit their papers in support of final approval of the Settlement and their application for attorneys' fees and reimbursement of expenses by no later than twenty (20) days before the objection deadline set by Paragraph 13 above.

15.    Class Counsel will submit their papers in response to any objections by no later than seven (7) days before the Final Fairness Hearing.

16.    The costs of notice and settlement administration shall be paid as described in Section 4 of the Agreement.

17.    All proceedings in this Lawsuit are stayed pending final approval of the Settlement, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 4 of 75
Case 2:08-cv-35653-KRHDP-CRW   Document 34   Filed 12/20/14   Page Exhibit(s) Page ID #:1850
of 129

1   18.   Pending final determination of whether the Settlement should be

2   approved, Plaintiffs, all Settlement Class Members and any person or entity allegedly

3   acting on behalf of Settlement Class Members, either directly, representatively or in

4   any other capacity, are preliminarily enjoined from commencing or prosecuting

5   against the Released Parties any action or proceeding in any court or tribunal

6   asserting any of the Released Claims, provided, however, that this injunction will not

7   apply to individual claims of any Settlement Class Members who timely exclude

8   themselves in a manner that complies with Paragraph 12 above.  This injunction is

9   necessary to protect and effectuate the Settlement, this Order, and this Court's

10  flexibility and authority to effectuate this Settlement and to enter judgment when

11  appropriate, and is ordered in aid of this Court's jurisdiction and to protect its

12  judgments pursuant to 28 U.S.C. section 1651(a).

13  19.   This Court reserves the right to adjourn or continue the date of the Final

14  Fairness Hearing without further notice to Settlement Class Members, and retains

15  jurisdiction to consider all further applications arising out of or connected with the

16  Settlement.  This Court may approve or modify the Settlement without further notice

17  to Settlement Class Members.

IT IS SO ORDERED.

Dated:   June 05, 2014   _____

DEAN D. PREGERSON
United States District Judge

LA 51732215

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

# EXHIBIT D

## Final Judgment

1

2

3

4

5                                                                    JS-6

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   GARY DAVIS, an individual; on          Case No. CV 06-04804 DDP (PJWx)
11   behalf of himself, and as PRIVATE
     ATTORNEY GENERAL, and on              Honorable Dean D. Pregerson
12   behalf of all others similarly situated,
13                                          **JUDGMENT**
                    Plaintiff,
14                                          **Date:**        **October 27, 2014**
15   v.                                     **Time:**        **11:00 a.m.**
                                            **Courtroom:**   **3**
16   CHASE BANK U.S.A., N.A., a
     Delaware corporation; and DOES 1
17   through 50, inclusive,
18
                    Defendants.
19

20

21       Judgment is hereby entered pursuant to the terms of the Final Approval

22   Order.

23       IT IS SO ORDERED.

24

25   Dated:  October 29, 2014

26                                          DEAN D. PREGERSON
                                            United States District Judge
27

28

─────────────────────────────────────────────
                    JUDGMENT
            CASE NO. CV 06 4804 DDP (PJWx)

187

# EXHIBIT E

## Amended Final Approval Order

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 8 of 75
Case 2:06-cv-04804-DDP-PJW   Document 255   Filed 10/29/14   Page 1 of 15   Page ID #:5601
of 129

1

2

3

4

5  **NO JS-6**

6

7

8  **UNITED STATES DISTRICT COURT**

9  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 | GARY DAVIS, an individual; on | Case No. CV 06-04804 DDP (PJWx)
11 | behalf of himself, and as PRIVATE
   | ATTORNEY GENERAL, and on | Honorable Dean D. Pregerson
12 | behalf of all others similarly situated,
13 | | **AMENDED FINAL APPROVAL**
   | Plaintiff, | **ORDER**
14 |
15 | v. | **Date:**        **October 27, 2014**
16 | CHASE BANK U.S.A., N.A., a | **Time:**        **11:00 a.m.**
   | Delaware corporation; and DOES 1 | **Courtroom:**   **3**
17 | through 50, inclusive,
18 |
19 | Defendants.
20

21

22

23

24

25

26

27

28

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 9 of 75
Case 2:06-cv-04804-DDP-PJW Document 255 Filed 12/12/14   Page Exhibit(s) Page 1 of 602
of 129

1   Plaintiff Gene Castillo ("Plaintiff"), on his own behalf and on behalf of all

2   others similarly situated, submitted to the District Court a Motion for Final

3   Approval of Settlement ("Motion") seeking final approval of the Stipulation and

4   Agreement of Settlement (the "Agreement" or the "Settlement"), and the exhibits

5   attached thereto, entered into by and between Plaintiff and Defendant Chase Bank

6   U.S.A., N.A. ("Chase").  Chase does not oppose Plaintiff's Motion.

7       By Order dated June 5, 2014, the District Court entered an Order that

8   preliminarily approved the Agreement and conditionally certified the Settlement

9   Class for settlement purposes only (the "Preliminary Approval Order").  Due and

10  adequate notice having been given to the Settlement Class in compliance with the

11  procedures set forth in the Agreement and the Preliminary Approval Order, this

12  Court having considered all papers filed and proceedings had herein, and

13  otherwise being fully informed of the premises and good cause appearing

14  therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

15      1.   This Final Approval Order incorporates by reference the definitions

16  in the Agreement, and all terms used herein will have the same meanings as set

17  forth in the Agreement.

18      2.   This Court has jurisdiction over the subject matter of the above-

19  captioned action (the "Lawsuit") and, for purposes of this Settlement only,

20  personal jurisdiction over the Parties and all Settlement Class Members.

21      3.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

22  consistent with due process, this Court hereby approves the Agreement and finds

23  that the settlement consideration is fair and that said Settlement is, in all respects,

24  fair, reasonable and adequate to the Settlement Class Members, and the Parties are

25  hereby directed to consummate the Settlement in accordance with the terms and

26  provisions of the Agreement.

27      4.   Pursuant to Federal Rule of Civil Procedure 23(b)(3), this Court

28  hereby certifies the Settlement Class solely for purposes of effectuating this

1

1    Settlement.

2         a.    The Settlement Class is defined as follows:

3    All Chase Circuit City Rewards Credit Cardmembers with

4    California billing addresses who, between May 26, 2004 and

5    June 5, 2014 (inclusive), made a promotional or deferred-

6    interest purchase at Circuit City and who, as a result of

7    payments or credits being allocated to a regular purchase

8    balance after the promotional or deferred-interest balance, paid

9    more in finance charges than they would have paid if the

10   payments or credits had first been applied to the regular

11   purchase balance.

12        b.    Settlement Class Members had the right to exclude themselves

13   by way of the opt-out procedure set forth in the Preliminary Approval Order.

14   Excluded from the Settlement Class are 22 persons who validly and timely

15   requested exclusion from the Settlement Class by way of the opt-out procedure,

16   and 2 persons who submitted an untimely request for exclusion, but for whom

17   Chase is waiving its objection.  These 24 individuals are identified in Exhibit 1

18   hereto (the "Opt-Outs").

19        5.    For purposes of this Settlement only, this Court finds and concludes

20   that: (a) the Settlement Class Members are so numerous that joinder of all

21   Settlement Class Members is impracticable; (b) there are questions of law and fact

22   common to the Settlement Class which predominate over any individual

23   questions; (c) Plaintiff's claims are typical of the claims of the Settlement Class;

24   (d) Plaintiff and Class Counsel have fairly and adequately represented and

25   protected the interests of all of the Settlement Class Members; and (e) a class

26   action is superior to other available methods for the fair and efficient adjudication

27   of the controversy, considering: (i) the interests of the Settlement Class Members

28   in individually controlling the prosecution of separate actions; (ii) the desirability

1 or undesirability of continuing the litigation of these claims in this particular

2 forum; and (iii) the difficulties likely to be encountered in the management of this

3 class action.

4       6.    This Court finds that the notice provided to Settlement Class

5 Members was the best notice practicable and fully satisfied the requirements of

6 due process, the Federal Rules of Civil Procedure, the Class Action Fairness Act

7 of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constituted the best

8 notice practicable under the circumstances and constituted due and sufficient

9 notice to all persons entitled thereto.  Class Counsel has filed with the Court proof

10 that notice was provided to Settlement Class Members in compliance with the

11 procedures set forth in the Agreement and the Preliminary Approval Order.

12 Chase's counsel has filed with the Court proof of compliance with the Class

13 Action Fairness Act of 2005.

14       7.    There were no objections to the Settlement.

15       8.    This Court hereby dismisses with prejudice on the merits and without

16 costs (except as otherwise provided in the Agreement) the above-captioned action

17 (subject to retention of jurisdiction to enforce the Settlement).

18       9.    By operation of this Final Approval Order and upon the occurrence

19 of the Effective Date, Plaintiff and each Settlement Class Member, their

20 respective heirs, executors, administrators, representatives, agents, attorneys,

21 partners, successors, predecessors-in-interest, assigns and all persons acting for or

22 on their behalf, are deemed to have fully, finally and forever released the Released

23 Parties (as defined below) from all Claims (as defined below).

24       a.    "Released Parties" means Chase, together with its

25 predecessors, successors (including, without limitation, acquirers of all or

26 substantially all of its assets, stock or other ownership interests) and assigns; the

27 past, present, and future, direct and indirect, parents (including but not limited to

28 holding companies and JPMorgan Chase & Co.), subsidiaries and affiliates of any

3

1  of the above; and the past, present and future principals, trustees, partners, claims

2  administrators (including, without limitation, the Settlement Administrator),

3  officers, directors, employees, agents, attorneys, shareholders, advisors,

4  predecessors, successors, assigns, representatives, heirs, executors, and

5  administrators of any of the above.

6         b.   "Claim" and "Claims" mean any and all actual or potential

7  claims, actions, causes of action, suits, counterclaims, cross-claims, third party

8  claims, contentions, allegations, and assertions of wrongdoing, and any demands

9  for any and all debts, obligations, liabilities, damages (whether actual,

10  compensatory, treble, punitive, exemplary, statutory or otherwise), attorneys' fees,

11  costs, expenses, restitution, disgorgement, injunctive relief, any other type of

12  equitable, legal or statutory relief, any other benefits, or any penalties of any type

13  whatsoever, whether known or unknown, suspected or unsuspected, contingent or

14  non-contingent, or discovered or undiscovered, whether asserted in federal court,

15  state court, arbitration or otherwise, and whether triable before a judge or jury or

16  otherwise, including, without limitation, those that were alleged, or that could

17  have been alleged based on the same or similar facts and circumstances, in the

18  Lawsuit.

19         c.   Without limiting the foregoing, the claims released pursuant to

20  Paragraph 9b (the "Released Claims") specifically extend to Claims that

21  Settlement Class Members do not know or suspect to exist in their favor as of or

22  prior to the Effective Date.

23       10.   The Parties, and all Settlement Class Members, agree that the

24  releases in Paragraph 9 constitute a waiver of Section 1542 of the California Civil

25  Code and any similar or comparable provisions, rights and benefits conferred by

26  the law of any state or territory of the United States or any jurisdiction, and any

27  principle of common law.  Section 1542 of the California Civil Code provides:

28

1   A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

2   WHICH THE CREDITOR DOES NOT KNOW OR

3   SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE

4   TIME OF EXECUTING THE RELEASE, WHICH IF

5   KNOWN BY HIM OR HER MUST HAVE MATERIALLY

6   AFFECTED HIS OR HER SETTLEMENT WITH THE

7   DEBTOR.

8       Plaintiff and each Settlement Class Member understand and acknowledge

9   the significance of these waivers of California Civil Code Section 1542 and/or of

10   any other applicable law relating to limitations on releases.  In connection with

11   such waivers and relinquishment, Plaintiff and each Settlement Class Member

12   acknowledge that they are aware that they may hereafter discover facts in addition

13   to, or different from, those facts which they now know or believe to be true with

14   respect to the subject matter of the Settlement, but that they release fully, finally

15   and forever all Claims, and in furtherance of such intention, the releases will

16   remain in effect notwithstanding the discovery or existence of any such additional

17   or different facts.  The Parties acknowledge (and all Settlement Class Members by

18   operation of law are deemed to have acknowledged) that the release of unknown

19   Claims as set forth herein was separately bargained for and was a key element of

20   the Settlement.

21       11.    This Final Approval Order, the Preliminary Approval Order, the

22   Agreement, and any act performed or document executed pursuant to or in

23   furtherance thereof:

24       a.    Will not be offered or received against the Released Parties as

25   evidence of, or be construed as or deemed to be evidence of, any admission or

26   concession by the Released Parties as to the truth or relevance of any fact alleged

27   by Plaintiff, the existence of any class alleged by Plaintiff, the propriety of class

28

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 14 of 75
Case 2:06-cv-04804-DDP-PJW    Document 255    Filed 11/05/14    Page 14 of 129
of 129

1   certification had the Lawsuit been litigated rather than settled, or the validity of

2   any claim that has been or could have been asserted in the Amended Complaint or

3   in any other litigation, or the deficiency of any defense that has been or could have

4   been asserted to the Amended Complaint or in any other litigation, or of any

5   liability, negligence, fault, or wrongdoing of the Released Parties;

6           b.    Will not be offered as or received against any of the Released

7   Parties as evidence of, or construed as or deemed to be evidence of, any admission

8   or concession of any liability, negligence, fault or wrongdoing, or in any way

9   referred to for any other reason as against any of the parties to the Agreement, in

10  any other civil, criminal or administrative action or proceeding, other than such

11  proceedings as may be necessary to effectuate the provisions of the Agreement,

12  except that the Released Parties may refer to it to effectuate the liability protection

13  granted them thereunder;

14          c.    Will not be deemed an admission by Chase that it is subject to

15  the jurisdiction of any court;

16          d.    Will not be construed against Chase as an admission or

17  concession that the consideration to be given under the Agreement represents the

18  amount which could be or would have been recovered after trial.

19      12.    The Released Parties may file the Agreement and/or this Final

20  Approval Order in any action that may be brought against them in order to support

21  a defense or counterclaim based on principles of res judicata, collateral estoppel,

22  release, good faith settlement, judgment bar, reduction, set-off or any other theory

23  of claim preclusion or issue preclusion or similar defense or counterclaim.

24      13.    Settlement Class Members, and any person or entity allegedly acting

25  on behalf of Settlement Class Members, either directly, representatively or in any

26  other capacity, are enjoined from commencing or prosecuting against the Released

27  Parties any action or proceeding in any court or tribunal asserting any of the

28  Released Claims, provided, however, that this injunction will not apply to non-

1   released claims of Opt-Outs.

2       14.    The Court finds that the Parties and their counsel have complied with

3   each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all

4   proceedings herein.

5       15.    Class Counsel are hereby awarded the sum of $1,500,000 in

6   attorneys' fees and costs, which sum the Court finds to be fair and reasonable,

7   which will be paid to Class Counsel from the Settlement Fund.  The award of

8   attorneys' fees and costs will be allocated among Class Counsel in a fashion

9   which, in the opinion of Class Counsel, fairly compensates Class Counsel for their

10  respective contributions in the prosecution of the Lawsuit.

11      16.    Plaintiff Gene Castillo and Gary Davis are hereby awarded $5,000

12  each from the Settlement Fund.  These service awards are for their time and

13  efforts spent conferring with and assisting Class Counsel to help further the

14  Lawsuit for the benefit of the Settlement Class.

15      17.    In making the award of attorneys' fees and costs to Class Counsel

16  and service awards to Plaintiff Gene Castillo and Gary Davis, the Court has

17  considered and found that:

18          a.    The Parties entered into arm's-length discussions regarding

19  attorneys' fees for Class Counsel, including extensive discussions through and

20  with the assistance of a third-party mediator, Hon. Edward A. Infante (Ret.);

21          b.    The Settlement created a benefit with a substantial value to the

22  Settlement Class and numerous Settlement Class Members.

23          c.    438,969 copies of the Postcard Notice were disseminated to

24  putative Settlement Class Members.  No objections were filed against the terms of

25  the proposed Settlement;

26          d.    Class Counsel conducted the Lawsuit and achieved the

27  Settlement with skill, perseverance and diligent advocacy;

28          e.    The Lawsuit involves complex factual and legal issues and was

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 16 of 75
Case 2:06-cv-04804-DDP-PJW    Document 255    Filed 12/02/14    Desc Exhibit(s) Page 1 of 609
of 129

1  actively prosecuted over seven years and, in the absence of a settlement, would

2  involve further lengthy proceedings with uncertain resolution of the complex

3  factual and legal issues;

4        f.    Had Class Counsel not achieved the Settlement there would

5  remain a significant risk that the Settlement Class may have recovered less or

6  nothing from the defendant;

7        g.    The separate declarations submitted by each of the three firms

8  prosecuting this case on behalf of the Class state that, to achieve the Settlement,

9  Roxborough, Pomerance, Nye & Adreani, LLP devoted over 3,152 hours, with a

10 lodestar value of over $1,440,200.00, Westerman Law Corp. devoted over 33

11 hours, with a lodestar value of over $26,000, and Milberg LLP devoted over 2,741

12 hours with a lodestar value of over $1,435,076.00.

13       h.    The amount of attorneys' fees and costs awarded and the

14 amount of the service awards are fair and reasonable and consistent with awards

15 in similar cases.

16     18.    Without affecting the finality of this Final Approval Order in any

17 way, this Court retains continuing jurisdiction of all matters relating to the

18 modification, interpretation, administration, implementation, effectuation and

19 enforcement of the Settlement.  Class Counsel are to continue in their role to

20 oversee all aspects of the Settlement.  Upon notice to Class Counsel, Chase may

21 seek from this Court, pursuant to 28 U.S.C. § 1651(a), such further orders or

22 process as may be necessary to prevent or forestall the assertion of any of the

23 Released Claims in any other forum, or as may be necessary to protect and

24 effectuate the Settlement and this Final Approval Order.

25     19.    If an appeal, writ proceeding or other challenge is filed as to this

26 Final Approval Order, and if thereafter the Final Approval Order is not ultimately

27 upheld, all orders entered, stipulations made and releases delivered in connection

28

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 17 of 75
Case 2:06-cv-04804-DDP-PJW Document 355 Filed 12/29/14 Desc Exhibit(s) 13 Page 120
of 629

1    herewith, or in the Agreement or in connection therewith, will be null and void to

2    the extent provided by and in accordance with the Agreement.

3      20.    There is no just reason for delay in the entry of this Final Approval

4    Order and immediate entry by the Clerk of the Court is expressly directed

5    pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

6

7      IT IS SO ORDERED.

8

9    Dated: October 29, 2014

10                  DEAN D. PREGERSON
                    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED FINAL APPROVAL ORDER
CASE NO. CV 06 4804 DDP (PJWx)

Case 08-35653-KRH    Doc 12249    Filed 12/04/12    Desc Exhibit(s) 13 Page 425
of 629

# EXHIBIT 1

## OPT-OUT LIST

1.    Vicky Williams

2.    Juanito D. Doce

3.    Richard T. Rodarte

4.    Clarice Mirzakhanian

5.    Genee B. Aleksandrovi

6.    Amy L. Norris

7.    Pedro Gomez

8.    Veronica E. Siy

9.    Gordon Tam

10.   Thomas Condos, Jr.

11.   Robin B. Hansen

12.   Sandra Pimentel

13.   Thirin Has

14.   Lida Salas

15.   Edward Sanches

16.   Scott A. Bidnick

17.   Charla Pinney

18.   Charles J. Yi

19.   Wayne E. White

20.   Geraldin D. Denser

21.   Elaine Hanley

22.   Joseph Meza

23.   Noe Flores

24.   Anthony Lewis

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 20 of 75
Case 2:06-cv-04804-DDP-PJW Document 355 Filed 12/29/14 Page 1 of 13 Page ID #:613

## CERTIFICATE OF SERVICE

1

2       I hereby certify that, on October 23, 2014, a true and correct copy of the

3   foregoing AMENDED [PROPOSED] FINAL APPROVAL ORDER was filed

4   electronically and served by U.S. Mail on anyone unable to accept electronic

5   filing. Notice of this filing will be sent by e-mail to all parties by operation of the

6   court's electronic filing system or by facsimile to anyone unable to accept

7   electronic filing as indicated on the Notice of Electronic Filing. Parties may

8   access this filing through the court's CM/ECF System.

9

10

11                                    s/ Elia Ramirez

12                                    Elia Ramirez

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

**Service and Expense Remittance Summary**

# STROOCK

## SERVICE AND EXPENSE REMITTANCE SUMMARY

| | |
|---|---|
| DATE | November 7, 2014 |
| CLIENT | JPMorgan Chase Bank |
| | 560 Mission Street |
| | 3rd Floor |
| | Mail Code: CA1-0301 |
| | San Francisco, CA  94105-2907 |
| RE | 720524 JPMorgan Chase Bank |
| | 0940 Davis, Gary J. |

| | |
|---|---|
| PREVIOUS PAYMENTS RECEIVED FOR FEES BILLED THROUGH SEPTEMBER 31, 2014 | $1,610,450.37 |
| PREVIOUS PAYMENTS RECEIVED FOR EXPENSES BILLED THROUGH SEPTEMBER 31, 2014 | $36,627.46 |
| UNBILLED FEES OCTOBER 1 – 31, 2014 | $5,093.00 |
| UNBILLED EXPENSES OCTOBER 1 – 31, 2014 | $61.46 |
| TOTAL | $1,652,232.29 |

| WIRE TRANSFER INSTRUCTIONS | |
|---|---|
| BANK NAME | JPMorgan Chase Bank |
| BANK ADDRESS | 500 Stanton Christiana Road, Newark, DE 19713 |
| ACCOUNT NAME | Stroock & Stroock & Lavan LLP |
| ACCOUNT NUMBER | 006 028356 |
| ABA/ROUTING NUMBER | 021000021 |
| INTERNATIONAL SWIFT CODE | CHASUS33 |
| DESCRIPTION/REFERENCE | Client/Matter:  720524.0940 |

Any disbursement balances shown are compiled from original sources as entered on our records to the billing date shown.  Any disbursements/charges invoiced to us or posted by us subsequent to that date will be reflected in future billing.

STROOCK & STROOCK & LAVAN LLP • NEW YORK • LOS ANGELES • MIAMI • WASHINGTON, DC
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

203

# EXHIBIT C

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 24 of 75
Case 2:06-cv-04804-DDP-PJW    Document 81    Filed 01/26/09    Page 1 of 9    Page ID #:99

1  Drew E. Pomerance, Esq. (SBN 101239)
   Michael L. Phillips, Esq. (SBN 232978)
2  **ROXBOROUGH, POMERANCE & NYE LLP**
   5820 Canoga Avenue, Suite 250
3  Woodland Hills, California 91367
   Telephone:  (818) 992-9999
4  Facsimile:   (818) 992-9991

5  Jeff Westerman, Esq. (SBN. 94559)
   Sabrina Kim, Esq. (SBN. 186242)
6  **MILBERG LLP**
   One California Plaza
7  300 South Grand Avenue, Suite 3900
   Los Angeles, California 90071
8  Telephone: (213) 617-1200
   Facsimile: (213) 617-1975
9
   Attorneys for Plaintiff GARY DAVIS,
10 individually and on behalf of himself,
   as Private Attorney General and
11 on behalf of all others similarly situated

12 Stephen J. Newman, Esq. (SBN 181570)
   **STROOCK & STROOCK & LAVAN, LLP**
13 2029 Century Park East, Suite 1800
   Los Angeles, California 90067-3086
14
15 Attorneys for Defendant
   CHASE BANK U.S.A., N.A.
16
17                **UNITED STATES DISTRICT COURT**
18          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
19

| | |
|---|---|
| 20  GARY DAVIS, an individual; on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated, | Case No. CV 06 4804 DDP (PJWx) |
| 21 | **JOINT STATUS REPORT AND REQUEST FOR STATUS CONFERENCE** |
| 22                      Plaintiff, | |
| 23  vs. | *(Hon. Dean D. Pregerson – Courtroom 3)* |
| 24 | |
| 25  CHASE BANK U.S.A., N.A., a Delaware corporation; CIRCUIT CITY STORES, INC., a Virginia corporation, and DOES 1 through 50, inclusive, | |
| 26 | |
| 27 | |
| 28                      Defendants. | |

                                          1

205

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 25 of 75
Case 2:06-cv-04804-DDP-PJW   Document 81   Filed 01/26/09   Page 2 of 9   Page ID #:100

1    Plaintiff, Gary Davis, on behalf of himself and all others similarly situated,
2  and Defendant Chase Bank U.S.A., N.A., submit this Joint Status Report and
3  request that the Court set a Status Conference at the earliest opportunity to discuss
4  the current status of this case, including whether the stay should be lifted, and if so,
5  the setting of various dates pertaining to discovery, pretrial, and trial.  Two recent
6  developments warrant a status conference:

7    (1)   The Ninth Circuit rendered a final decision on appeal, affirming this
8  Court's Order denying Chase's Motion to Compel Arbitration; and

9    (2)   The recent bankruptcy filing by co-defendant Circuit City.

10 I.   Plaintiff's Position With Respect to the Current Stay

11    Plaintiff requests that the stay be lifted immediately so as to further prosecute
12 this class action.  The sole purpose for the stay was to enable Chase to appeal this
13 Court's order denying its Motion to Compel Arbitration.  "The court finds that it
14 would be more cost-effective and efficient to wait until the Ninth Circuit rules on
15 the Arbitration Order before permitting litigation to continue." (Court's Order
16 granting stay, 6-1-07, p. 4) The appellate process has now come to an end, with the
17 Ninth Circuit's decision affirming this Court's Order, having become final.  There
18 is no further reason to stay this case.

19    Circuit City recently filed for bankruptcy protection, and Plaintiff recognizes
20 that the automatic stay would preclude any further prosecution against Circuit City.
21 Yet, there is no reason that the case should likewise be stayed as to Chase.  The
22 conduct of Chase and Circuit City that is at issue in this case is separate and distinct,
23 and there is no reason why Plaintiff cannot proceed just against Chase.  This case
24 was filed June 26, 2006 – 2 ½ years ago – and it is now time that Plaintiff be
25 allowed to prosecute his claims.

26    Defendants argue that the automatic stay is extended to a co-defendant when
27 unusual circumstances arise and a judgment against the non-debtor would in effect
28 be a judgment or finding against the debtor. *A.H. Robbins Company, Inc. vs.*

1  *Piccinin* 788 F.2d 994 (4th Cir. 1986), and that this principle is especially true when

2  the non-debtor co-defendants' obligations are dependent on those of the debtor.

3  *O'Malley Lumber v. Lockard* 884 F.2d 1171 (9th Cir. 1989).  In this case, however,

4  there are no unusual circumstances and a judgment against Chase would not be

5  tantamount to a judgment or finding against Circuit City.  Chase's liabilities and

6  obligations are not dependent on those of Circuit City.  Chase's wrongdoing extends

7  to its own disclosures set forth in the cardmember agreement, the adequacy or

8  inadequacy of those disclosures, and the improper allocation of credit card

9  payments to promotional items before crediting them first to higher interest non-

10  promotional items.  None of this conduct has anything to do with the conduct

11  alleged against Circuit City.

12      In that respect, Circuit City is not an "indispensable party" pursuant to FRCP

13  19.  Given the nature of this case, and the acts of wrongdoing as alleged against

14  Chase, a final decree can certainly be rendered against Chase without affecting

15  Circuit City's interests.

16      Finally, Chase makes the unsupported argument that any discovery directed

17  to Circuit City would somehow burden Circuit City and impair the administration of

18  its Chapter 11 bankruptcy case.  But Chase does not indicate how responding to

19  discovery in the normal course would work an undue burden on Circuit City or

20  otherwise somehow interfere with its current plans to liquidate.

21      Staying this case in its entirety until all of the bankruptcy issues are resolved

22  against Circuit City is simply not in the interests of justice and would work an

23  undue prejudice upon the thousands of class members who are waiting for their day

24  in court against Chase.

25  II.   <u>Defendant's Position With Respect to the Current Stay</u>

26      With Circuit City recently filing for Chapter 11 bankruptcy, as a matter of

27  law, this action is stayed pursuant to Section 362 of the Bankruptcy Code.  When a

28  defendant files bankruptcy, the litigation proceedings automatically are stayed as to

**PARTIES' JOINT STATUS REPORT AND REQUEST FOR STATUS CONFERENCE**

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 27 of 75
Case 2:06-cv-04804-DDP-PJW   Document 81   Filed 01/26/09   Page 4 of 9   Page ID #:102

1    that particular defendant.  See 11 U.S.C.A. Section 362(a)(1).  Moreover, the stay

2    also applies to co-defendants in circumstances like those present here.  If Plaintiff

3    wishes to avoid the automatic stay, he must amend his complaint to avoid conflict

4    with Circuit City's pending bankruptcy proceedings.

5         On November 12, 2008, Circuit City filed Notices of Filing of Bankruptcy

6    with the Ninth Circuit and this Court in what has become a massive, highly

7    publicized bankruptcy reflective of the current economy.  Indeed, on its Schedule F

8    filed in the bankruptcy proceedings, Circuit City has listed Chase as a creditor

9    holding an unsecured nonpriority claim based upon Circuit City's indemnity

10   obligations to Chase resulting from this specific litigation.  (See In re Circuit City

11   Stores, Inc., No. 08-35653 (E.D. Va.), Docket No. 1130).

12        Plaintiff's current complaint centers on Circuit City and its advertising to its

13   customers.  Without Circuit City, Plaintiff's claims cannot proceed in this

14   litigation.  As an initial matter, Plaintiff's class definition as currently framed

15   reaches back to 2002 when Circuit City and First North American National Bank,

16   not Chase, owned the credit card portfolio at issue.  (See Declaration of William J.

17   Mahoney In Support of Motion To Compel Arbitration, Exhibit C, Docket No. 25.)

18   Moreover, the specific advertisements Plaintiff challenges were produced by

19   Circuit City and not by Chase.  (Complaint, Exhibit A.)  Notably, both Plaintiff and

20   the Court have stated that Circuit City's advertising is at the core of this litigation –

21   the issue being whether the advertisement was misleading and deceptive.  As stated

22   by the Court:

23        MR. NEWMAN:  And given the nature – here, this is –
          what the dispute is about is, well I timed my credit to my
24        payments so that I would zero my balance before I
          bought this next thing.  And as a result there was the
25        SNAFU where the credits hit too late so as a result they
          were applied all to the low interest rate balances as
26        opposed to the high interest rate balance.  This kind of
          dispute, which is the kind of dispute that actually is well-
27        suited for arbitration.

28

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 28 of 75
Case 2:06-cv-04804-DDP-PJW   Document 81   Filed 01/26/09   Page 5 of 9   Page ID #:103

THE COURT: That isn't what happened here. The argument is that there was a misrepresentation about the nature of the zero-interest program. That's a completely different situation than the one you just postulated. The one you just postulated is a sort of a garden variety contract interpretation dispute about when something vests or something hits. I understand that. I just don't see it as the case here.

MR. NEWMAN: That seems to be the factual claim here. There is certainly an argument in the complaint that. . . and by the way, the bank's policy in applying payments to low balances before high balances, that's a real problem. That's the sort of – that's the big sort of policy question.
And I would suggest that –

THE COURT: Well, it's a question of whether that was disclosed to the consumer. If it was disclosed appropriately, I don't see any problem with it.

(Transcript of December 6, 2006 Hearing on Motion to Compel Arbitration, p. 12, 3-5, 17-19, Docket No. 38.) Plaintiff's complaint also targets the advertisement as the alleged misrepresentation at issue: "Another benefit of the Circuit City Rewards Card was access to Defendants' advertised promotion of 'no interest, no payment' for a specified period of time on certain types of Circuit City purchases." (Complaint, ¶ 6.)

Automatic stays are extended to co-defendants when "unusual circumstances" arise and a judgment against the non-debtor would in effect be a judgment or finding against the debtor. A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). This is particularly true when the non-debtor co-defendant's obligations are dependent on those of the debtor. See, e.g., O'Malley Lumber Co. v. Lockard (In re Lockhard), 884 F.2d 1171, 1179 (9th Cir. 1989); Circle K. Corp. v. Marks (In Re Circle K), 121 B.R. 257, 261 (Bankr. D. Ariz. 1990) (staying litigation against officers of the debtor); Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital (In re Family Health Servs.), 105 B.R. 937, 942 (Bankr. C.D. Cal. 1989) (staying litigation against nondebtor members of debtor health maintenance organizations).

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 29 of 75
Case 2:06-cv-04804-DDP-PJW   Document 81   Filed 01/26/09   Page 6 of 9   Page ID #:104

1    In addition, a debtor's bankruptcy stay extends to non-debtor co-defendants
2   when the debtor is an "indispensable party" in accordance with Federal Rule of
3   Civil Procedure 19.  The United States Supreme Court has defined Rule 19
4   "indispensable" parties as "[p]ersons who not only have an interest in the
5   controversy, but an interest of such a nature that a final decree cannot be made
6   without either affecting the interest, or leaving the controversy in such a condition
7   that its final termination may be wholly inconsistent with equity and good
8   conscience."  Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1955).
9    Based on the above, Chase's indemnity claim against Circuit City presents
10  the requisite "unusual circumstances" to stay the case as to Chase.  Increased
11  liability on Chase causes an increase in the scheduled indemnity claim and
12  therefore impairs the rights of Circuit City and other creditors and administrators of
13  the estate.  Moreover, Circuit City is an indispensable party to this litigation
14  because the putative class as currently proposed reaches back to 2002, before
15  Chase had even acquired the card portfolio at issue, and because Circuit City, not
16  Chase, created and distributed the advertisement at issue.
17   In this Joint Report, Plaintiff identifies at least five areas for which
18  information needs to be discovered.  Specifically, Plaintiff requests information
19  about "the promotion program's marketing and implementation."  Indeed, this
20  information is necessary and belongs only to Circuit City.  However, for either
21  Plaintiff or Chase to seek this information would burden Circuit City and impair
22  the administration of its Chapter 11 bankruptcy case.  This means that Chase and
23  Plaintiff cannot proceed with their claims against Circuit City.  For these reasons,
24  this litigation should remain stayed in its entirety until the claims are substantially
25  re-shaped.
26  //
27  //
28  //

PARTIES' JOINT STATUS REPORT AND REQUEST FOR STATUS CONFERENCE

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 30 of 75
Case 2:06-cv-04804-DDP-PJW   Document 81   Filed 01/26/09   Page 7 of 9   Page ID #:105

III.   The Parties' Position with Respect to Discovery

    A.   Plaintiff's Statement

Assuming the stay is lifted, Plaintiffs seek to do discovery permitted under the federal rules to prosecute the case to conclusion.  Such discovery, at a minimum, would include information about:

    (1)   Identifying Chase cardmembers who made promotional purchases and were assessed finance charges;

    (2)   Chase's methods for identifying those cardmembers in number 1 above; and

    (3)   The promotional program's marketing and implementation.

    (4)   The manner in which Chase discloses to cardmembers how payments are allocated between promotional and non-promotional items.

    (5)   The methods and means for assessing the finance charges that would comprise the damages to the class.

    B.   Defendant's Statement With Respect To Discovery

Discovery is premature at this point because Plaintiff needs to amend his complaint to avoid the bankruptcy stay and because Chase intends to file a motion for judgment on the pleadings on federal preemption grounds.  Under the Final Rule on Unfair Credit Card Acts or Practices recently set forth by the Federal Reserve Board and other financial regulators, the exact payment allocations at issue in this case have been deemed fair and lawful until the middle of 2010:

> Because broad regulations, such as those in the final rule, can require large numbers of institutions to make major adjustments to their practices, there could be more harm to consumers than benefit if the regulations were effective earlier than the effective date.  If institutions were not provided a reasonable time to make changes on their operations and systems to comply with the final rule, they would either incur excessively large expenses, which would be passed on to consumers, or cease engaging in the regulated activity altogether, to the detriment of consumers.  And because the Agencies find an act or practice unfair only when the harm outweighs the benefits to consumers or to competition, the

7

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 31 of 75
Case 2:06-cv-04804-DDP-PJW    Document 81    Filed 01/26/09    Page 8 of 9    Page ID #:106

1
2

implementation period preceding the effective date set forth in the final rule is integral to the Agencies' decision to restrict or prohibit certain acts or practices by regulation.

3

    . . . .

4
5
6
7
8
9

The Agencies recognize that, as discussed above with respect to specific prohibitions, the final rule prohibits some long-standing practices that have been expressly or implicitly permitted under state or federal law or the guidance of the federal banking agencies. . . .  Indeed, prior to the effective date, institutions may change interest rates on existing balances and take other actions that will be prohibited once the final rule is effective. . . . institutions are not required to comply with the final rule before the effective date [July 2010].

10
11

Final Rule on Unfair Credit Card Acts or Practices, pgs. 192-95. In light of this Final Rule, Plaintiff's claims as currently framed would fail as a matter of law.

12
13

IV.    Proposed Relevant Dates

14

    Plaintiff requests that the court lift the stay now, so that the discovery referenced above can immediately commence.

15
16
17
18
19

    With respect to the various discovery cut-off, class certification, Pre-Trial and Trial dates, Plaintiff believes those can be set at a Rule 26(f) Scheduling Conference, so Plaintiff further requests that the Court set a Rule 26 (f) Scheduling Conference within the next 45 days or as soon thereafter as the Court's schedule permits.

20
21

V.    Defendant's Position With Respect To Proposed Relevant Dates

22
23
24

    Chase proposes that Plaintiff file an amended complaint by February 28, 2009.  Chase should file its motion for judgment on the pleadings or a motion to dismiss by March 31, 2009, with hearing noticed for May 2009.  A further case management conference should be set for early June 2009.

25

VI.    Conclusion

26
27
28

    The parties would like to discuss these various issues with the Court at its earliest convenience, and request that the Court set a Status Conference at the first

PARTIES' JOINT STATUS REPORT AND REQUEST FOR STATUS CONFERENCE

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 32 of 75
Case 2:06-cv-04804-DDP-PJW    Document 81    Filed 01/26/09    Page 9 of 9    Page ID #:107

1 | available date and time.

2 | Dated: January 22, 2009      ROXBOROUGH, POMERANCE & NYE, LLP

3

4 | By: _____
 | DREW E. POMERANCE

5 | MICHAEL L. PHILLIPS
 | Attorneys for Plaintiff

6 | GARY DAVIS, individually and on behalf of
 | himself, as Private Attorney General and on

7 | behalf of all others similarly situated

8 | Dated: January 26, 2009      MILBERG LLP

9

10

11 | By: _____
 | JEFF WESTERMAN

12 | Attorneys for Plaintiff
 | GARY DAVIS, individually and on behalf of

13 | himself, as Private Attorney General and on
 | behalf of all others similarly situated

14

15 | Dated: January 26, 2009      STROOCK & STROOCK & LAVAN, LLP

16

17 | By: _____
 | STEPHEN J. NEWMAN

18

19 | Attorneys for Defendant
 | CHASE BANK U.S.A., N.A.

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT STATUS REPORT AND REQUEST FOR STATUS CONFERENCE**

# EXHIBIT D

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 34 of 75
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 1 of 33    Page ID #:161

1  Drew E. Pomerance, Esq. (SBN. 101239)
   Burton E. Falk, Esq. (SBN. 100644)
2  ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
   5820 Canoga Avenue, Suite 250
3  Woodland Hills, California 91367
   Telephone:  (818) 992-9999
4  Facsimile:  (818) 992-9991

5  Jeff Westerman, Esq. (SBN. 94559)
   Sabrina Kim, Esq. (SBN. 186242)
6  **MILBERG LLP**
   One California Plaza
7  300 South Grand Avenue, Suite 3900
   Los Angeles, California 90071
8  Telephone: (213) 617-1200
   Facsimile: (213) 617-1975

9

10 Attorneys for Plaintiff GARY DAVIS,
   individually and on behalf of himself, and
11 as Private Attorney General and on behalf of
   all others similarly situated

12

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

16 GARY DAVIS, an individual; on behalf )   Case No. CV 06 4804 DDP (PJWx)
   of himself, and as PRIVATE           )
17 ATTORNEY GENERAL, and on behalf )
   of all others similarly situated,        )   *(Hon. Dean D. Pregerson, Courtroom 3)*
18                                       )
              Plaintiff,                 )   FIRST AMENDED CLASS ACTION
19                                       )     COMPLAINT FOR:
   v.                                    )   (1) Violation of the Consumers Legal
20                                       )       Remedies Act;
   CHASE BANK U.S.A., N.A., a            )   (2) Violation of the *California Business*
21 Delaware corporation; and DOES 1      )       *and Professions Code Section* 17200
   through 50, inclusive,                )       et seq.: Unlawful and Unfair
22                                       )       Business Practices;
              Defendants.                )   (3) Breach of Contract;
23                                       )   (4) Breach of the Implied Covenant of
   _____        )       Good Faith and Fair Dealing;
24                                           
                                             DEMAND FOR JURY TRIAL
25

26

27

28

                                    1

1    Plaintiff Gary Davis, on behalf of himself and all other similarly situated, for

2  his complaint against CHASE BANK U.S.A., N.A. ("Chase Bank"), complains and

3  alleges as follows:

4

5                              **INTRODUCTION**

6        1.    This case arises from Chase Bank 's fraudulent and unfair business

7  practice of charging its California credit card holders finance charges in connection

8  with purchases at Circuit City advertised as "no interest, no payment," "no interest

9  with minimum monthly payment," or "interest and payment free" (collectively

10 "Promotional Purchase"). Plaintiff, on behalf of himself and all individuals similarly

11 situated, seeks damages and equitable relief for violations of the California

12 Consumers Legal Remedies Act, the *California Business and Professions Code*

13 (Unfair Business Practices), for breach of contract and breach of the covenant of

14 good faith and fair dealing. Chase Bank's fraudulent and unfair business practices

15 violate the rights of unsuspecting California consumers throughout the state, for

16 which California consumer protection laws were designed.

17

18                              **THE PARTIES**

19        2.    Plaintiff, Gary Davis ("Plaintiff") is now, and at all relevant times was, a

20 resident of the County of Los Angeles, State of California.

21        3.    At all relevant times, the class of Plaintiffs on behalf of which Plaintiff

22 is bringing this suit, were residents of the State of California. Such persons shall

23 hereinafter be referred to as the "Class" or "Class Members."

24        4.    Plaintiff is informed and believes, and based thereon alleges that

25 Defendant Chase Bank ("Chase") is a corporation, organized and existing under the

26 laws of the State of Delaware, duly qualified as a foreign corporation to transact

27 business in the State of California, and doing business throughout the State of

28 California. Plaintiff is informed and believes, and based thereon alleges, that

**FIRST AMENDED CLASS ACTION COMPLAINT**

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 3 of 33    Page ID #:163
Exhibit(s) Part 3    Page 36 of 75

1  Defendant Chase Bank is presently and/or has engaged in business in the County of

2  Los Angeles, State of California.

3      5.    At all times relevant herein, Defendant Chase Bank and Circuit City

4  Stores Inc. (herein Circuit City) offered a credit card called the "Circuit City Rewards

5  Card". This credit card conferred certain benefits to consumers who utilized the

6  credit card to make their purchases such as earning reward points redeemable at

7  Circuit City stores. Another benefit of the Circuit City Rewards Card was access to

8  Defendants' advertised promotions of "no interest, no payment" or "no interest, with

9  minimum payments" for a specified period of time on certain types of Circuit City

10  purchases. ("Promotional Purchases")

11      6.    Plaintiff is informed and believes, and based thereon alleges that at all

12  times herein mentioned, Defendant Chase Bank and DOES 1 through 50, inclusive

13  (hereinafter jointly referred to as "Defendants"), are each responsible in some manner

14  for the transactions, events and occurrences herein alleged and that damages herein

15  alleged were proximately caused thereby. Plaintiff is informed and believes, and

16  based thereon alleges that each of the Doe Defendants was intentionally, negligently,

17  or in some other manner the cause, or contributing cause of, or otherwise responsible

18  for the events and happenings alleged in this complaint and for Plaintiff's injuries

19  and damages and those of the Class. Plaintiff will seek leave to amend this complaint

20  to allege the true names and capacities of each such Doe Defendant, together with

21  such additional allegations as may be appropriate, when their names, capacities, and

22  the nature of their involvement have been ascertained.

23      7.    Plaintiff is informed and believes and thereon alleges that at all times

24  herein mentioned, Defendants, and each of them, were the agents, joint venturers,

25  trustees, servants, partners, alter-egos, parent corporations, contractors, and/or

26  employees of each of the remaining Defendants, and that the acts and/or omissions

27  herein alleged were done by them acting individually, through such capacity or

28  through the scope of their authority, and that such conduct was thereafter ratified by

**FIRST AMENDED CLASS ACTION COMPLAINT**

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 37 of 75
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 4 of 33   Page ID #:164

1  the remaining Defendants.

2    8.    At all relevant times, Defendants, and each of them, solicited business

3  from residents and other individuals within the State of California, conducted

4  business with consumers in the State of California, conducted business with Plaintiff

5  and others similarly situated with him herein, and solicited business from Plaintiff

6  and others similarly situated with Plaintiff, said business being the subject matter of

7  this complaint.

8                    **CLASS ACTION ALLEGATIONS**

9    9.    Plaintiff brings this class action, on behalf of himself and all others

10  similarly situated in California during all or part of the class period, as more fully

11  explained below.  The questions of law or fact common to the class predominate over

12  questions affecting the individual members and, on balance, a class action is superior

13  to other methods available for adjudicating the controversy.

14    10.    The proposed class Plaintiff seeks to represent is presently defined as

15  follows:

16    All persons who, in the past four years, used their Chase-Circuit City Rewards

17  Card to

18    (a) make a Non-Promotional and a Promotional Purchase in California;

19    (b) had made the minimum (or greater) payment for their non-promotional

20  purchase(s) on their prior statement closing balance ("Payment"); and

21    (c) were assessed a finance charge on their prior balance without Chase having

22  applied that Payment to their prior balance because Chase applied the payment to the

23  Promotional Purchase rather than to the prior balance.

24    11.    There is a well-defined community of interest in the litigation and the

25  proposed class is easily ascertainable.

26    12.    Numerosity: The Plaintiff Class is potentially so numerous that the

27  individual joinder of all members is impracticable under the circumstances of the

28  case.  While the exact number of class members is unknown to Plaintiff at this time,

1   Plaintiff is informed and believes and thereon alleges that Chase's Circuit City

2   Reward Card Promotional Purchase program was a widespread program marketed

3   and promised to numerous individuals within the customer base of Defendants.

4       13.   Common Questions Predominate:  Common questions of law and fact

5   exist as to all class members, and predominate over any questions that affect only

6   individual members of the class.  The common questions of law and fact include, but

7   are not limited to:

8       (a)   Whether Defendants have engaged in practices proscribed by the

9   Consumer Legal Remedies Act, *Civil Code* section 1770, subsection (a)(9), by

10   "advertising goods or services with intent not to sell them as advertised";

11       (b)   Whether Defendants have engaged in practices proscribed by the

12   Consumer Legal Remedies Act, *Civil Code* section 1770, subsection (a)(14),

13   by "representing that a transaction confers or involves rights, remedies or

14   obligations which it does not have or involve, or which are prohibited by law";

15       (c)   Whether Defendants have engaged in practices proscribed by the

16   Consumer Legal Remedies Act, *Civil Code* section 1770, subsection (a)(19),

17   by "inserting an unconscionable provision in the contract";

18       (d)   Whether Defendants have violated the Consumer Legal Remedies

19   Act, *Civil Code* section 1750 et seq., by engaging in other and/or additional

20   practices proscribed therein;

21       (e)   Whether Defendants' conduct is "unlawful," "unfair" or

22   "fraudulent" within the meaning of California's Unfair Business Practices Act,

23   *Business and Professions Code* section 17200, et seq.

24       (f)   Whether in their uniform, written credit applications and

25   marketing materials, Defendants have failed to disclose material terms of

26   Defendants' Promotional Purchase offer;

27       (g)   Whether Defendants made uniform, material false representations

28   to the effect that consumers would not be charged interest on Promotional

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 6 of 33   Page ID #:166
Exhibit(s) Part 3   Page 39 of 75

1    Purchases.

2        14.    Typicality: Plaintiff's claims are typical of the claims of the members of

3    the Plaintiff Class.  Due to Defendants' common course of conduct, Plaintiff and all

4    members of the Plaintiff Class have been unwittingly forced to pay off the

5    Promotional Purchases prior to the expiration of the advertised grace period for such

6    payments and have been assessed a finance charge or charges in connection with a

7    purchase advertised as "interest and payment free" if made with their Circuit City

8    Rewards Card.

9        15.    Adequacy: Plaintiff will fairly and adequately protect the interests of the

10   members of Plaintiff Class.  Plaintiff resides in California and has been charged

11   finance fees in connection with one or more Promotional Purchases.  Plaintiff has

12   retained counsel who have substantial experience in complex civil litigation and class

13   actions.

14       16.    Superiority: The class action is superior to other available means for the

15   fair and efficient adjudication of the claims of Plaintiff.  The damages suffered by

16   each individual Class Member may be limited.  Damages of such magnitude are small

17   given the burden and expense of individual prosecution of the complex and extensive

18   litigation necessitated by Defendants' conduct.  Further, it would be virtually

19   impossible for the members of the Class individually to redress effectively the

20   wrongs done to them.  Even if the Class Members themselves could afford such

21   individual litigation, the court system could not.  Individualized litigation presents a

22   potential for inconsistent or contradictory judgments.  Individualized litigation

23   increases the delay and expense to all parties and the court system presented by the

24   complex legal and factual issues of the case.  By contrast, the class action device

25   presents far fewer management difficulties, and provides the benefits of single

26   adjudication, economy of scale, and comprehensive supervision by a single court.

27   Certification is also appropriate given the anticipated need to create a fluid recovery

28   fund.

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 40 of 75
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 7 of 33    Page ID #:167

17.     Plaintiff is unaware of any particular difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

18.     Defendants solicited Plaintiff and others similarly situated to make purchases at Circuit City using Defendants' Circuit City Rewards Card and in exchange for using its services, Plaintiff and others similarly situated were eligible to receive an interest and payment free period in which to pay off the balance on certain purchases described herein as "Promotional Purchases."

19.     From time to time, Defendants advertise the ability to make Promotional Purchases. These advertisements offer "no interest, no payments" or "no interest with minimum payments" for a variable period based on the amount of the purchase.  For example, a Circuit City Rewards Card promotional item offered to consumers in 2006, states in large writing: "No interest! No payments!  For six months when you spend $499 or more.  For 90 days when you spend $299 or more."  "It is easy to take advantage of this offer!  When you make a purchase with your Circuit City credit card, present this certificate to the store associate to scan."  (A true and correct copy of this Circuit City Rewards Card promotional material  is attached hereto as Exhibit A).

20.     Plaintiff is informed and believes and thereon alleges that this promotional material as well as variations of this promotional material, advertising "no interest, no payment" for a specified period of time, was provided or made available, from time to time, to each of the Class Members.

21.     On March 3, 2006, Plaintiff purchased a television set from Circuit City, charging $2,000 to his Chase Circuit City Rewards Card.  Although Plaintiff did not request that this item be treated as a Promotional Purchase, Defendants nevertheless automatically treated this item as a Promotional Purchase, with the term of no interest with minimal payment until January 2008.

FIRST AMENDED CLASS ACTION COMPLAINT

22.    Prior to the purchase of the subject television, Defendant Chase Bank billed Plaintiff for purchases made between January 14, 2006, and February 13, 2006 ("February Statement"), on his Circuit City Rewards Card.  Payment was due by March 10, 2006, and if Payment was posted by March 10, 2006, no finance charge should be applied because the balance would have been paid in full.  Alternatively, if partial Payment was made either of the minimum amount or a greater amount, then a finance charge should be applied only against the remaining balance after subtracting the Payment made.  Plaintiff returned two items and made two on-line payments consisting of the total amount owing on March 4, 2006, and March 6, 2006, thereby paying the February Statement balance in full and on time.

23.    Based on the language appearing in each of his monthly statements, Plaintiff was informed and believed that he would not be assessed a finance charge if his monthly billings were paid in full, or that any finance charge would be based only on the remaining balance after any partial Payment had been subtracted from the outstanding balance.  Each billing statement received by Plaintiff states: "[W]e do not charge periodic finance charges on new purchases billed during the billing cycle if we receive payment of your New Balance by the date and time your payment is due as shown on your billing statement and we received payment of your New Balance on your previous billing statement by the date and time your payment was due as shown on that billing statement."  (A true and correct copy of the February Statement is attached hereto as Exhibit B).

24.    Sometime after March 13, 2006, Plaintiff received his monthly statement from Defendant Chase Bank for purchases made between February 14, 2006, and March 13, 2006 ("March Statement').  Although plaintiff had paid the February Statement balance in full and in a timely manner, Defendant Chase Bank assessed a $77.25 finance charge which appeared on the March Statement.  (A true and correct copy of the March Statement is attached hereto as Exhibit C).

25.    Plaintiff is informed and believes, and based thereon alleges that he was

8

222

1   assessed the $77.25 finance charge because his entire February Statement Payment
2   was applied against the $2,000 Promotional Purchase, payment for which was not
3   due, instead of to the February Statement balance, thereby leaving a balance due
4   against which finance charges were charged.   The $2,000 charge for the television
5   was made subsequent to the issuance of the February Statement, and no Payments of
6   any kind were due and owing for the Promotional Purchase until January 2008.
7   Nevertheless, Defendant Chase Bank allocated the entire $1,736.91 that Plaintiff paid
8   on his February Statement to the March 3, 2006, Promotional Purchase, even though,
9   as advertised, no amounts were due and owing on that item.

10   26.   Chase assessed similar finance charges against Plaintiff on at least two
11   (2) other prior occasions involving the same type of Promotional Purchase, where
12   payments were not due for a specified period of time, but Chase nevertheless
13   allocated all of Plaintiff's payments to the Promotional Purchase.   Plaintiff is
14   informed and believes, and based thereon alleges that thousands of other similarly
15   situated Class Members made similar types of Promotional Purchases at Circuit City
16   using Chase's Circuit City Rewards Card, which Chase treated as Promotional
17   Purchases subject to terms of "no interest, no payment" or "no interest with minimal
18   payment" for a specified period of time, but were thereafter charged a finance charge
19   in a manner similar, or identical to that of Plaintiff.

20   27.   Chase fails to disclose that all payments made by the consumer on his or
21   her regular monthly statement are given priority of payment to the promotional item,
22   even if not yet billed and even if not due for many months.

23   28.   The promotional offer conveys that the consumer will receive a benefit
24   of a grace period of anywhere from a few months to two (2) years or more.   Plaintiff
25   is informed and believes, and based thereon alleges, however, that the offer is a scam
26   used to induce consumers into believing that they will have an extended time period
27   in which to pay off their Promotional Purchases, when in fact, the consumer has less
28   time to pay off the Promotional Purchases due to Chase's practice of allocating

223
**FIRST AMENDED CLASS ACTION COMPLAINT**

1  consumers' Payments as described herein.

2      29.    Plaintiff is informed and believes, and based thereon alleges that

3  Defendant Chase Bank knows of the terms and conditions of such Promotional

4  Purchases, and that Chase's practice of prioritizing the allocation of credit card

5  payments to purchases not yet due and owing is deceptive, misleading, fraudulent,

6  unfair and in violation of California law.   Plaintiff further is informed and believes,

7  and based thereon alleges that Defendant Chase Bank's practice of prioritizing the

8  allocation of credit card payments to purchases advertised as "interest and payment

9  free" is especially egregious and violative of California law as this practice directly

10  contradicts the concept of "interest and payment free."

11      30.    Plaintiff, on behalf of himself and all others similarly situated, seeks

12  damages and equitable relief, including restitution, for violations of the California

13  Consumers Legal Remedies Act, the *California Business and Professions Code*

14  (Unfair Business Practices), breach of contract and of the covenant of good faith and

15  fair dealing.   On behalf of himself and the proposed Class Members, and to the

16  extent appropriate, on behalf of the general public of California, Plaintiff seeks,

17  among other things, injunctive relief, equitable relief, including restitution and

18  disgorgement, and actual and punitive damages, and attorney's fees.

19      31.    Following the filing of this case, Chase moved to compel arbitration and

20  to enforce a class action waiver on the basis of an arbitration clause contained in its

21  cardmember agreement.   An arbitration clause containing a class action waiver was

22  not part of Plaintiff's original cardmember agreement, but subsequent to the issuance

23  of Plaintiff's credit card, Chase introduced a new arbitration clause containing a class

24  action waiver in a "bill stuffer" that was sent to its Cardmembers as part of their

25  monthly billing.   Chase sought to change the arbitration clause pursuant to the

26  "change of terms"  clause in the Cardmember agreement,  which Chase contends

27  gives it the right to unilaterally change any provision of the cardmember agreement at

28  any time, without any consideration provided to the cardholder.

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 11 of 33   Page ID #:171
Exhibit(s) Part 3   Page 44 of 75

32.     On March 26, 2007, the trial court denied Chase's motion, finding Chase's arbitration clause to be both procedurally and substantively unconscionable under California law.  Plaintiff's counsel had to expend time and effort in opposing Chase's motion, and Plaintiffs incurred attorneys fees in opposing the motion.

33.     Chase then appealed the trial court's order, and the matter was tied up at the 9th Circuit Court of Appeal for about 1 ½ years, until the Court of Appeal rendered its decision on November 3, 2008, affirming the trial court's determination that Chase's arbitration clause and class action waiver are unconscionable and unenforceable.

34.     The Plaintiff Class has been damaged by Chase's assertion of both an unconscionable arbitration clause as well as unconscionable "Change of Terms" provision, in that they expended significant attorneys fees at both the trial and appellate level to defeat Chase, and has been further damaged because the case has been stayed for almost 2 years while the matter was pending at the 9th Circuit. During that time, Chase continued its illegal practices, and continued to collect finance charges and penalties from class members to which Chase is not entitled. Accordingly, pursuant to the recent California Supreme Court decision of *Meyer v. Sprint Spectrum* (2009) WL197560, Plaintiff has standing under the Consumer Legal Remedies Act to seek removal of Chase's unconscionable contract provisions.

## FIRST CAUSE OF ACTION

(Violation of the Consumers Legal Remedies Act)

(Against All Defendants)

35.     Plaintiff incorporates by reference paragraphs 1 – 34 above as though fully set forth herein.

36.     Defendant is a "person" and it provides "goods" and "services" within the meaning of the *Civil Code* sections 1761(c) and 1770.

37.     Purchasers of Circuit City Promotional Purchases with the Chase Circuit City Rewards Card, including Plaintiff and Class Members, are "consumers" within

1  the meaning of the *Civil Code* section 1761(d) and 1770.  Plaintiff's and each Class

2  Member's Promotional Purchase with the Chase Circuit City Rewards Card

3  constitutes a "transaction" within the meaning of *Civil Code* sections 1761(e) and

4  1770.

5      38.    As set forth herein, Defendants' acts, practices, representations,

6  omissions, cardmember agreement and course of conduct violates section 1770

7  (a)(9), (14), and (19) of the Consumers Legal Remedies Act in that Defendants: (a)

8  advertised goods or services with the intent not to sell them as advertised; (b)

9  represented  that the transaction conferred or involved rights, remedies or obligations

10  that it did not have or involve; and (c) inserted unconscionable provisions in the

11  Cardmember agreement.

12      39.    The original complaint constituted notice to Defendants pursuant to

13  *California Civil Code* section 1782 of the unlawful, unfair and fraudulent business

14  practices as complained herein and formally demanded that Defendants: (1) cease

15  and desist all advertising, promotional and sales activities and practices described

16  herein; (2) cease the promotion of its "interest and payment free" credit card through

17  the use of deceptive and misleading advertising devices as described herein; (3) cease

18  the practice of prioritizing the application of consumers' credit card payments to

19  Promotional Purchases; (4) disclose to all consumers' Defendants' deceptive and

20  illegal practices; and (5) remove the unconscionable provisions from its cardmember

21  agreements.

22      40.    Defendants failed to comply with the demands as stated above, and

23  therefore this First Amended Complaint seeks an order, pursuant to *California Code*

24  *of Civil Procedure* section 1780 et seq.: (1) directing Defendants to cease and desist

25  all advertising, promotional and sales activities and practices described herein; (2)

26  enjoining Defendants from the promotion of its "interest and payment free" credit

27  card through the use of deceptive and misleading advertising devices as described

28  herein; (3)  directing Defendants to disgorge, for the benefit of Class Members, its

1   profits and compensation emanating from its "interest and payment free" scheme,

2   and/or make full restitution to Plaintiff and Class Members; and (4) enjoining

3   Defendant Chase Bank from prioritizing the application of consumers' credit card

4   payments to Promotional Purchases; and (5) enjoining Defendants from any further

5   use of an arbitration clause with a class action waiver, or a "change of terms"

6   provision within its Cardmember agreements.  Moreover, Plaintiffs now also seek all

7   available compensatory and punitive damages, costs of litigation, attorneys' fees and

8   such other relief as is authorized under applicable provisions of the CLRA.

9                              **SECOND CAUSE OF ACTION**

10          (For Violation of the *California Business and Professions Code*

11          *Section* 17200 et seq.: Unlawful and Unfair Business Practices)

12                              (Against All Defendants)

13          41.    Plaintiff incorporates by reference paragraphs 1 – 40 above as though

14   fully set forth herein.  Plaintiff has suffered injury in fact and has suffered financial

15   loss as a result of Defendants' conduct as alleged in this cause of action.

16          42.    Defendants' acts, conduct and practices as described herein constitute

17   unlawful business acts and practices within the meaning of *California Business and*

18   *Professions Code* sections 17200 et seq.

19          43.    Defendants' acts, conduct and practices were unlawful, in that

20   Defendants violated the Consumers Legal Remedies Act, as alleged herein.

21          44.    Defendants' acts, conduct, practices, and unconscionable cardmember

22   agreement as described herein, constitute unfair, fraudulent, and deceptive business

23   acts and practices within the meaning of *California Business and Professions Code*

24   sections 17200 et seq.

25          45.    Defendants' acts, conduct and practices, as alleged herein, were unfair,

26   in that any utility for Defendants' conduct is outweighed by the gravity of the

27   consequences to Plaintiff, Class Members, and the general public, and/or Defendants'

28   conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to

1    Plaintiff, Class Members and the general public.

2        46.    Defendants' acts, conduct and practices, as alleged herein, were

3    fraudulent, in that they were likely to and did deceive Plaintiff, Class Members and

4    the general public, and Defendants engaged in such acts, conduct, and practices

5    knowingly.

6        47.    Defendants' unfair, fraudulent, and deceptive business acts and practices

7    are described herein and include, but are not limited to, the following:

8            (a)    Advertising promotional items as interest and payment free when

9        purchased with a Chase Circuit City Rewards Card when in fact, interest and

10        finance charges were frequently applied;

11            (b)    Charging a finance fee despite Payment of the monthly balance in

12        part or in full, without deducting the Payment made before assessing any

13        finance charge;

14            (c)    Applying monthly Payments to Promotional Purchases not yet

15        billed or owing instead of to the balance as billed in the monthly statement

16        due; and

17            (d)    Inserting an unconscionable arbitration and class action waiver

18        clause and "change of terms" clause in its Cardmember Agreement.

19        48.    As a direct and proximate result of Defendants' unfair, unlawful and

20    fraudulent business practices as alleged herein, Defendants were able to: (a) issue

21    more credit cards to Chase customers than they otherwise would have; (b) receive

22    more credit card purchases than they otherwise would have; and/or (c) charge more

23    finance charges than they otherwise would have, and accordingly, Defendants

24    received and are in possession of excessive and unjust revenues and profits.

25        49.    Plaintiff, on behalf of himself and all others similarly situated in

26    California, and where appropriate, on behalf of the general public of California, seeks

27    an order including, but not limited to (1) directing Defendants to cease and desist all

28    advertising, promotional and sales activities and practices described herein; (2)

1   enjoining Defendants from the promotion of their "interest and payment free" credit

2   card through the use of deceptive and misleading advertising devices as described

3   herein; (3) directing Defendants to disgorge, for the benefit of Class Members, their

4   profits and compensation emanating from their "interest and payment free" scheme,

5   and/or make full restitution to Plaintiff and Class Members; (4) enjoining Defendant

6   Chase Bank from prioritizing the application of consumers' credit card payments to

7   Promotional Purchases; and (5) removing the unconscionable arbitration and class

8   action waiver and change of terms provisions from its cardmember agreements.

9   Plaintiff also seeks any other relief the Court deems acceptable, in accordance with

10  section 17203 of the Business and Professions Code.  Plaintiff also seeks costs of

11  litigation, attorneys' fees pursuant to *California Code of Civil* Procedure §1021.5,

12  and such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION

(Breach of Contract)

(Against Defendant Chase Bank and Does 1 - 50)

16      50.    Plaintiff incorporates by reference paragraphs 1 – 49 above as though

17  fully set forth herein.

18      51.    Defendant Chase Bank offered Plaintiff and Class Members a no

19  interest, no payment grace period on Promotional Purchases made using their Chase

20  Circuit City Rewards Card.

21      52.    Plaintiff and Class Members made Promotional Purchases as offered by

22  Defendant Chase Bank.

23      53.    Defendant Chase Bank breached these contracts by prioritizing the

24  allocation of credit card Payments to purchases offered and accepted as interest and

25  payment free ahead of non-promotional items appearing on the monthly statement.

26  Defendant Chase Bank further breached these contracts by charging an interest fee on

27  balances that remained due to this allocation of Payments.

28      54.    By reason of Defendants' breach of Plaintiff's and other Class Members'

respective contracts, Plaintiffs and other Class Members have been damaged in the manner set forth herein, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against Defendant Chase Bank and Does 1 – 50)

55.    Plaintiff incorporates by reference paragraphs 1 – 54 above as though fully set forth herein.

56.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance.  The Promotional Purchases made by Plaintiff and Class Members with their Circuit City Rewards Card contained an implied covenant of good faith and fair dealing.  The covenant requires that neither party to the Promotional Purchase agreement do anything to infringe upon the other party's rights to the benefits of the agreement.

57.    Defendant Chase Bank's conduct, as set forth herein, has breached each of the implied covenants of good faith and fair dealing.

58.    For example, Defendant Chase Bank has materially breached the implied covenant of good faith and fair dealing by:

(a)    Promising purchasers of Circuit City Promotional Purchases they would receive a payment free period in which to payoff their purchase, when, in fact, Defendant Chase Bank prioritized the allocation of Payments to Promotional Purchases;

(b)    Promising purchasers of Circuit City Promotional Purchases they would receive an interest free period in which to payoff their purchase, when, in fact, Defendant Chase Bank charged interest fees in connection with Promotional Purchases.

59.    As a direct result of material breaches of the implied covenant of good faith and fair dealing by Defendants, as set forth herein, Plaintiffs have been damaged as may be shown according to proof at the time of trial.

1      **WHEREFORE**, Plaintiff, on Plaintiff's own behalf and on behalf of the Class

2 Members, prays for judgment as follows:

3      1.     For an order certifying the Plaintiff Class and appointing Plaintiff and

4 his counsel to represent the Class;

5      2.     For an order awarding compensatory damages in an amount which may

6 be proven at trial, together with interest thereon;

7      3.     For an order awarding restitution and/or disgorgement and other

8 equitable relief as the Court deems proper;

9      4.     For an order awarding exemplary damages in an amount to deter and

10 punish;

11      5.     For an order awarding pre-judgment and post-judgment interest, as well

12 as their reasonable attorneys' and experts' witness fees and other costs;

13      6.     For an order enjoining Defendants from continuing to engage in unfair

14 business practices and false advertising; and,

15      7.     For an order awarding such other and further relief as this Court may

16 deem just and proper.

17

18 DATED: March _11_, 2009     ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP

19

20             By: _____

21              DREW E. POMERANCE

22              BURTON E. FALK
               Attorneys for Plaintiff GARY DAVIS,

23              individually and on behalf of himself, and as
               Private Attorney General and on behalf of all

24              others similarly situated

25

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3   Page 51 of 75
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 18 of 33   Page ID #:178

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all matters for which a jury trial is guaranteed.

DATED: March 11, 2009    ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP

By: _____
DREW E. POMERANCE
BURTON E. FALK
Attorneys for Plaintiff GARY DAVIS,
individually and on behalf of himself, and as
Private Attorney General and on behalf of all
others similarly situated

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 19 of 33    Page ID #:179
Exhibit(s) Part 3    Page 52 of 75

EXHIBIT



A



## APPLICATION
Please process immediately

**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL   PERMIT NO 218   KENNESAW, GA

POSTAGE WILL BE PAID BY ADDRESSEE

CHASE CARD SERVICES
PO BOX 100017
KENNESAW GA 30144-9909

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 54 of 75
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 21 of 33   Page ID #:181



## RATE, FEE AND OTHER COST INFORMATION

| | Circuit City Rewards Visa | Circuit City Rewards Proprietary Card |
|---|---|---|
| Annual Percentage Rate (APR) for purchases | 15.24% variable or 17.24% variable, depending on our review of your application and credit history. | 21.74% variable or 24.00% fixed, depending on our review of your application and credit history. |
| Other APRs | Balance Transfer APR: 15.24% variable or 17.24% variable, depending on our review of your application and credit history.<br>Cash Advance APR: 21.49% variable<br>Default rate: 24.99% fixed. See explanation below.²<br>Deferred/Accumulated Finance Charge Rate: 22.24% variable. | Cash Advance APR: Not available<br>Default rate: 24.99% fixed or 26.9% fixed, depending on our review of your application and credit history. See explanation below.²ᵉ<br>Deferred/Accumulated Finance Charge Rate: 22.24% variable or 24.00% fixed, depending on our review of the Cardmember Agreement and Terms and Conditions of the Circuit City Rewards Program. |
| Variable rate information | The following APRs may vary monthly based on the Prime Rate:²<br>Purchase and Balance Transfer APR equals the Prime Rate plus, as applicable, 9.49% or 11.49%, but not less than 13.99% or 15.99% respectively.<br>Cash advance APR equals the Prime Rate plus 15.74%, but not less than 19.99%.<br>Deferred/Accumulated Finance Charge APR equals the Prime Rate plus 16.49%, but not less than 20.49%. | The following APRs may vary monthly based on the Prime Rate:²<br>Purchase APR equals the Prime Rate plus 15.99%, but not less than 20.49% or more than 24.00%.<br>The variable Deferred/Accumulated Finance Charge APR equals the Prime Rate plus 16.49%, but not less than 20.49%. |
| Grace period for repayment of purchase balances | At least 20 days, but none for balance transfers, convenience checks, or overdraft advances, if applicable. | At least 20 days. |
| Method of computing the balance for purchases | Two-cycle average daily balance method (including new purchases). | |
| Annual fee | None | |
| Minimum finance charge | $1.00 | |
| Transaction fee for convenience checks | All cash advances: 3% of the amount of the advance, but not less than $10.00. | Not available |
| Transaction fees for cash advances | All cash advances: 3% of the amount of the advance, but not less than $10.00 or more than $75.00. | Not available |
| Late Payment fee: Circuit City Rewards Visa: $15.00 on balances up to but not including $250, $35.00 on balances of $250 and over. However, if you already have made one or more late payments in the prior 12 month period, $35.00 regardless of the amount of your balance. Circuit City Rewards Card: $35.00 | | |
| Over-the-Credit-Limit fee: $35.00 for Circuit City Rewards Visa; None for Circuit City Rewards Card. | | |
| International Transactions: 3% of the converted transaction amount. None for Circuit City Rewards Card. | | |

You understand that the terms of your account, including the APRs, are subject to change. This means that the APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. We reserve the right to change the terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. Any changes will be made in accordance with your Cardmember Agreement.

Your APRs may increase if you default under any Cardmember Agreement you have with us for any of the following reasons: we do not receive, or any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due; you exceed your credit line on this Account, if applicable; you fail to make payment to another creditor when due; you make a payment to us that is not honored by your bank; or, if at any time after your Account is closed, we demand immediate payment of your outstanding balance and we do not receive payment within the time we specify.

We may consider the following factors to determine the default rate: the length of time your Account has been open; the existence, seriousness and timing of defaults; other indications of your Account usage and performance; and information about your other relationships with us; and of our relative companies or from consumer credit

5

## TERMS & CONDITIONS

**Authorization:** When you sign and return this form for this credit card offer from Chase Bank USA, N.A. ("Chase", "we" or "us"), you agree to the following:
1. You authorize us to obtain credit bureau reports in connection with your request for an account. If an account is opened, we may obtain credit bureau reports in connection with extensions of credit or the review or collection of your account. If you ask, we will tell you the name and address of each credit bureau from which we obtained a report about you.
2. If an account is opened, you will receive a Cardmember Agreement and Terms and Conditions of the Circuit City Rewards Program with your card(s). By using the account or any card, or authorizing their use, you agree to the terms of the Cardmember Agreement and Terms and Conditions of the Circuit City Rewards Program.
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. **As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.**

We will review your credit history and income to determine if you qualify for an account and, if so, your APRs and credit line. Based on this review, you may not receive a card or you may receive a card with a credit line as low as $500.

The minimum gross annual income required for an account is $14,400. You must be at least 18 years old to qualify (19 in AL and NE).

We reserve the right to change the benefit features associated with your card at any time.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all customers, and that credit reporting agencies maintain separate histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

**Notice to Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement, or court decree adversely affects our interest, unless you give us a copy of such agreement, statement or court order before we open your account, or we have actual knowledge of the adverse obligation. All obligations on this account will be incurred in the interest of your marriage or family. You understand that we may be required to give notice of this account to your spouse. Married Wisconsin residents must furnish their (the applicant's) name and social security number as well as the name and address of their spouse to Cardmember Service at P.O. Box 15298, Wilmington, DE 19850-5298.

**Affiliate Information Sharing:** Chase Bank USA, N.A. is part of JPMorgan Chase & Co. We and our JPMorgan Chase & Co. affiliates may share information about you among affiliates in order to offer products and services of interest to you. If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-800-279-7138. For more information about our information sharing policies, visit us on the web at: http://www.chase.com/privacy-policy.

Omission of any information requested on the form may be reason for denial of an account. This offer is available only to applicants who reside in the United States of America. The credit disclosures given on this offer were printed in the print date indicated and were accurate as of that date. The printed information might have changed after the printing date. You should contact us for any change in this information before you accept the Cardmember Service, P.O. Box 100645, Kennesaw, GA 30156-9245.

We comply with Section 326 of the USA PATRIOT Act. This law mandates that we verify certain information about you while processing your account application.

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3 - Page 55 of 75
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 22 of 33    Page ID #:182

# CIRCUIT CITY REWARDS VISA CREDIT CARD APPLICATION

Circuit City Rewards VISA credit card account with Chase Bank USA ("Chase" or the "Bank"). The applicant: If married, may apply for a separate account. After credit approval each applicant shall have the right to use the credit card account up to the credit limit of the account. Each applicant may be liable for amounts extended under the plan to any joint applicant.

**YOU ARE APPLYING FOR A CIRCUIT CITY REWARDS VISA ACCOUNT. IF YOU DO NOT QUALIFY FOR THIS ACCOUNT, CHASE MAY CONSIDER YOU FOR A CIRCUIT CITY REWARDS CARD ACCOUNT.**

• You may contact us with any questions by calling us toll-free at 1-800-603-8987 or by writing us at P.O. Box 100045, Kennesaw, GA 30156-9245 •

## APPLICANT INFORMATION Please Print Clearly

(form fields: LAST NAME (AS JOINT) (Required), FIRST NAME (Required), M.I., DATE OF BIRTH (Required) Month Day Year, SOCIAL SECURITY NUMBER (Required), HOME PHONE # (Required))

STREET ADDRESS (NO P.O. BOXES) (Required), APT., CITY (Required), STATE, ZIP (Required), PURCHASE CATEGORY □ TV □ AUDIO, □ VCR/CAMCORDER □ HOME OFFICE, □ CAR STEREO/PHONE □ PERSONAL STEREO/MW □ N/A

HOME TYPE: □ OWN HOUSE, CONDO, TOWNHOUSE □ OWN MOBILE HOME, □ LIVE WITH PARENTS □ OTHER

PRIOR ADDRESS IF LESS THAN 2 YEARS AT CURRENT ADDRESS, CITY, STATE, ZIP

GROSS MONTHLY INCOME FROM ALL SOURCES $ _____
Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

EMPLOYER'S NAME OR NAME OF BUSINESS IF SELF-EMPLOYED, JOB TITLE (IF MAJOR) (IF PRESENT JOB), TIME AT PRESENT JOB, POSITION/SOURCE OF INCOME □ RETIRED OR □ SELF-EMPLOYED

WORK PHONE # (   ), NAME (LAST, FIRST) (IF MAJOR LIST PW GRADE), RELATIVE'S PHONE # (   )

DRIVER'S LICENSE #, DRIVER'S LICENSE STATE (Required), STATE

PLEASE CHECK WHICH ACCOUNTS ARE IN YOUR NAME: □ CHECKING ACCOUNT □ SAVINGS ACCOUNT □ VISA □ MASTERCARD □ DISCOVER □ AMERICAN EXPRESS □ DEPARTMENT STORE CARDS □ OTHER LOAN

## CO-APPLICANT INFORMATION

LAST NAME (AS JOINT) (Required), FIRST NAME (Required), M.I., DATE OF BIRTH (Required) Month Day Year, SOCIAL SECURITY NUMBER (Required), HOME PHONE # (Required)

STREET ADDRESS (NO P.O. BOXES) (Required), APT., CITY (Required), STATE, ZIP (Required)

GROSS MONTHLY INCOME FROM ALL SOURCES $ _____
Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

EMPLOYER'S NAME OR NAME OF BUSINESS IF SELF-EMPLOYED, JOB TITLE (IF MAJOR) (IF PW GRADE), WORK PHONE # (   ), RELATIONSHIP TO APPLICANT

PLEASE CHECK WHICH ACCOUNTS ARE IN YOUR NAME: □ CHECKING ACCOUNT □ SAVINGS ACCOUNT □ VISA □ MASTERCARD □ DISCOVER □ AMERICAN EXPRESS □ DEPARTMENT STORE CARDS □ OTHER LOAN

## CREDIT CARD AGREEMENT AND SIGNATURES

I have read and agree to the terms of the Credit Card Agreement... As permitted by applicable law, I authorize and direct Chase to furnish from Chase (the "Agreement")...

X _____ APPLICANT'S SIGNATURE    DATE    X _____ CO-APPLICANT'S SIGNATURE    DATE

## OPTIONAL TOTAL PROTECTION PLAN

YES Please enroll me in the optional Total Protection Debt Cancellation Plan at a cost of 89¢ per $100 of my average daily balance. I acknowledge receipt of the "Important Debt Cancellation Information" located within this offer.

X _____ APPLICANT'S SIGNATURE    DATE

---

Please detach along the perforated line. Moisten here, fold, seal and mail.

---

APPLY NOW for the Circuit City® Rewards Visa® and get 5% rewards

# Your Circuit City Rewards Visa comes loaded with extra value

## You Choose What's Best

If a special financing offer is available, you can select the financing offer instead of the rewards points. You make the choice!

## Auto Rental Insurance

Save up to $13 a day on additional insurance costs with the Visa Auto Rental Collision Damage Waiver.

Just decline the collision damage waiver offered by the rental company.

## Worldwide Acceptance and Cash Access

Your Circuit City Rewards Visa® is accepted at any location worldwide that accept Visa credit cards.

Plus, if you ever need quick cash, just use your card in the Visa Global ATM Network.

## Zero Liability[3]

You're protected from unauthorized use of your card or account information—so you pay nothing for unauthorized transactions.

**1%**
Rewards everywhere else Visa is accepted

---

# Apply Now!

- See a store associate
- Mail in your application
- Apply online at circuitcity.com

---

- You are applying for a Circuit City Rewards Visa account. If you do not qualify for this account, Chase may consider you for a Circuit City Rewards Card account.

- Rewards points are not earned on balance transfers, cash advances, convenience checks (including those used for purchases at Circuit City Stores and circuitcity.com), sales tax, Circuit City gift cards, money orders, finance charges, unauthorized charges, or fees of any kind, including fees for products that protect or insure the balances of the cardmember's account. Points are also not earned when the cardholder elects to take advantage of some special financing offers that provide more favorable rates and terms than those disclosed in the Cardmember Agreement. Points will expire on a first-earned, first-expired basis. Points will expire 36 months from the month in which the points were earned. Your rewards disclosure will be included with your Cardmember Agreement.

- U.S.-issued cards only. Visa's Zero Liability policy does not apply to ATM transactions or to PIN transactions not processed by Visa.

**Total Protection™ Debt Cancellation Plan Summary***

Total Protection™ is an optional account feature that can help protect your balance during a covered Involuntary Unemployment, Disability or employer-approved Leave of Absence by providing monthly cancellation of 4% of the protected account balance or $20, whichever is greater, not to exceed $500 per month, up to 6 months for Leave of Absence and 12 months for Involuntary Unemployment or Disability. In addition, should you or the joint accountholder die, or if you become totally and permanently disabled, the balance on the account may be canceled in full up to a maximum of $10,000. Once Total Protection is added to your account, you will receive a Welcome Package within 7-10 days.

**Important Total Protection™ Debt Cancellation Information**

Your purchase of Total Protection™ is optional. Whether or not you purchase Total Protection will not affect your application for credit or the terms of any existing credit agreement you have with Chase Bank USA, N.A. The monthly fee for Total Protection is $.89 per $100 of your account balance based on your Average Daily Balance on the last day of your billing cycle. You have the right to cancel Total Protection at any time. Total Protection will automatically cancel if your account becomes more than 90 days delinquent. The bank may cancel Total Protection upon 30 days written notice to you. There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under Total Protection. You will find a complete explanation of the eligibility requirements, conditions, and exclusions (in sections 4, 5, 6, 7, 8, 11, and 13 of the Total Protection Program Terms and Conditions ("Terms and Conditions") that will be mailed to you upon our receipt of your enrollment.

*The above is merely a summary of the Total Protection Terms and Conditions that you will receive in your enrollment package. In the event of a conflict between this summary and the Total Protection Terms and Conditions, the Terms and Conditions shall control.

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 57 of 75
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 24 of 33   Page ID #:184

EXHIBIT

B

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3 - Page 58 of 75
Case 2:06-cv-04804-DDP-PJW   Document 91   03/17/09   Page 25 of 33   Page ID #:185

**VISA**   021306 Statement

CHASE

4104140014934039000011000000752685

CHASE CARDMEMBER SERVICE
PO BOX 100044
KENNESAW, GA 30156-9244

| | |
|---|---|
| ACCOUNT # | 4104 1400 1493 4039 |
| NEW BALANCE | $2,752.68 |
| PAYMENT DUE DATE | 03/10/06 |
| MINIMUM PAYMENT DUE | $110.00 |

CHASE CARDMEMBER SERVICE
PO BOX 94010
PALATINE, IL 60094-4010

MAIL
◄ CHECK
TO:

MAKE CHECKS PAYABLE TO CHASE

$ 

AMOUNT ENCLOSED

GARY J DAVIS
3126 ROBERTS AVE
CULVER CITY CA 90232-7415

M0117867

PLEASE INDICATE ANY CHANGE TO ADDRESS OR TELEPHONE BELOW OR VISIT WWW.CIRCUITCITYREWARDS.COM

Street Address_____   Home Telephone (____)_____
City-State-Zip_____   Business Telephone (____)_____   ✂ Detach Here

---

**NCE SUMMARY**

| | |
|---|---|
| ous Balance | $1,495.99 |
| Payments and Credits | $1,781.13 |
| Cash Advances | $0.00 |
| Purchases/Adjustments | $2,955.45 |
| FINANCE CHARGES | $82.37 |
| New Balance | $2,752.68 |

**ACCOUNT INFORMATION**

| | |
|---|---|
| Statement Closing Date | 02/13/06 |
| Days in Billing Cycle | 31 |
| New Balance | $2,752.68 |
| Credit Line | $6,000.00 |
| Available Credit | $3,247.32 |
| Available Cash Advance** | $1,800.00 |

ACCOUNT #   4104140014934039
Payment Due Date 03/10/06
MINIMUM PAYMENT DUE $110.00

CALL 1-866-522-7587 TO MAKE YOUR
PAYMENT OVER THE PHONE OR
VISIT US ONLINE AT
WWW.CIRCUITCITYREWARDS.COM

---

**NSACTION DETAILS**

| ting | Transaction Date | Reference Number | Transactions | Charges & Credits |
|---|---|---|---|---|
| | 01/12 | 60132251401103/ | SOUPLANTATION #12 LOS ANGELES CA | 11.24 |
| | 01/12 | 60133495441616981 | RALPHS #0284   SE4 CULVER CITY CA | 7.80 |
| | 01/12 | 03977180004397000 | CIRCUIT CITY PURCHASE | 933.53 |
| | | | 121 30" AND LARGER TVS | |
| | 01/14 | 6015730150278528 | ROLL N RYE    CULVER CITY CA | 13.78 |
| | 01/14 | 6015070214459019 | CARY PHOTO LAB   CULVER CITY CA | 23.59 |
| | 01/16 | 7083000000000000 | CIRCUIT CITY PURCHASE | 5.51 |
| | | | 395 COMPUTER MEDIA | |
| | | | 077 DVD SOFTWARE | |
| | 01/15 | 6016118000100172 | SUBWAY SANDWICHES #15 LOS ANGELES CA | 19.54 |
| | 01/16 | 6016020000433553 | SUBWAY SANDWICHES #15 LOS ANGELES CA | 5.89 |
| | 01/16 | 6017205599700305 | BURGER KING # 9216 Q07 LOS ANGELES CA | 2.48 |
| | 01/16 | 6017749054440174 | RITE AID STORE 5444  LOS ANGELES CA | 3.91 |
| | 01/19 | 6018138019801123 | EL POLLO LOCO 3301  LOS ANGELES CA | 7.65 |
| | 01/18 | 6019882650290191 | LA TIMES SUB*1378846016 800-528-4637 CA | 107.03 |
| | 01/18 | 6019018000632678 | BUFFET CITY    LOS ANGELES CA | 14.90 |
| | 01/18 | 6019690192291106 | SMART & FINAL CO.   WEST LOS ANGELES CA | 17.21 |
| | 01/20 | 6020191472401 | DOMINOS PIZZA #08306  LOS ANGELES CA | 27.71 |
| | 01/20 | 6020022566981108 | SAT PROS*    626-5992222 CA | 420.00 |
| | 01/24 | 6025007403494143 | 5 DE MAYO TACOS   CULVER CITY CA | 6.77 |
| | 01/25 | 7675300000000000 | CIRCUIT CITY PURCHASE | 1.62 |
| | | | 395 COMPUTER MEDIA | |
| | 01/25 | 2130800000000000 | CIRCUIT CITY PURCHASE | 82.24 |
| | | | 142 DIGITAL VIDEO | |
| | 01/25 | 6025000139810579 | HHF ONE CARD ELECTRONICS 800-340-4770 WA | 284.02 |
| | 01/25 | 6025710009432154 | DENNY'S INC   CULVER CITY CA | 7.48 |
| | 01/25 | 6026360143699162 | OFFICE DEPOT #351  CULVER CITY CA | 34.64 |
| | 01/25 | 6026701066620484 | HUS SZECHWAN    310-8370262 CA | 30.90 |
| | 01/27 | 6028130283159454 | NEW PANDA BUFFET   LOS ANGELES CA | 20.53 |

---

EXPLANATION OF CODES ON REVERSE
LABLE CASH ADVANCE IS INCLUDED IN AVAILABLE CREDIT LIMIT
REVIATIONS : "py" = Payment, "cr" = Credit

MAIL BILLING AND OTHER INQUIRIES TO:
CHASE CARDMEMBER SERVICE
PO BOX 100045
KENNESAW, GA 30156-9245
See form on reverse side.

CHASE

239

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 59 of 75
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 26 of 33    Page ID #:186

ng of Payments: For payments by regular U.S. mail, send at least your minimum payment our post office box designated for payments shown on this statement. Your payments by ust comply with the instructions on this statement, and must be made by check or money payable in U.S. Dollars, and drawn on or payable through a U.S. financial institution or the anch of a foreign financial institution. Do not send cash. Write your account number on neck or money order. Payments must be accompanied by the payment coupon in the pe provided with our address visible through the envelope window; the envelope cannot 1 more than one payment or coupon; and there can be no staples, paper clips, tape or rondence included with your payment. If your payment is in accordance with our payment tions and is made available to us on any day except December 25 by 1:00 p.m. local time at st office box designated for payments on this statement, we will credit the payment to your ts as of that day. If your payment is in accordance with our payment instructions, but is vailable to us after 1:00 p.m. local time at our post office box designated for payments on atement, we will credit it to your account as of the next day. If you do not follow our nt instructions or if your payment is not sent by regular U.S. mail to our post office box ated for payments, crediting of your payment may be delayed for up to 5 days. Payments electronically through our automated telephone service, Customer Service advisors, or our ce will be subject to any processing times disclosed for those payments.

nt Information Reported to Credit Bureaus: We may report information about your ts to credit bureaus. Late payments, missed payments or other defaults on your account may ected in your credit report. If you think we have reported inaccurate information to a credit t, you may write to us at the Cardmember Service address listed on your billing statement.

tional Payments: Any payment check or other form of payment that you send us for less he full balance due that is marked "paid in full" or contains a similar notation, or that you vise tender in full satisfaction of a disputed amount, must be sent to Cardmember Service, ox 100045, Kennesaw, GA 30156. We reserve all our rights regarding these payments (e.g. is determined there is no valid dispute or if any such check is received at any other address, ay accept the check and you will still owe any remaining balance). We may refuse to accept ch payment by returning it to you, not cashing it or destroying it. All other payments that ake should be sent to the appropriate payment address.

lation of Finance Charges: The balance calculation method for purchases is the Two-iverage Daily Balance (including new purchases). If your annual percentage rate (APR) is le, the index and margin used to determine that rate and its corresponding APR are ied in your Cardmember Agreement, as amended. Finance charges for each billing cycle nputed for transactions in the following manner:

mpute a portion of your finance charge by multiplying a daily periodic rate by a daily e for each day in the billing cycle for each balance type. We calculate periodic finance es separately for each balance associated with a different balance type. These ations for each balance type may include different transactions with the same daily ic rates. The balance types are the average daily balance of:

ance Type A – Purchases (including new Purchases) are your regular purchases to Interest Free Special Purchase and Special Purchase promotional terms do not apply or erminated, and also includes all unpaid debt cancellation charges, expedited payment id any other charges except cash advances and finance charges on cash advances. ance Type B – Previous Cycle Purchases (including previous cycle new purchases) gular purchases for the previous billing cycle using the same kinds of purchases and charges as used in computing Balance Type A for the current billing cycle. ance Type C – Cash Advances (including new cash advances) are your regular cash ces to which Reduced Rate Cash Advance promotional terms do not apply and finance s on regular cash advances. ance Type D – Interest Free Special Purchases (including new Interest Free Special ases) are special promotional purchase balances and Balance Type E – Interest Free dvances (including new Interest Free Cash Advances) are special promotional cash ce balances. Finance charges accruing on these balance types are not added to your it balance, but instead they are accumulated from billing cycle to billing cycle and l to your account as Accumulated Finance Charges only if the Interest Free Special ase or Interest Free Cash Advance has not been paid in full by the end of the time period ed in the promotional offer. Accumulated Finance Charges also may be added to your t balance and the Interest Free promotion will terminate if the default rate takes effect ir account balances because you default under your Agreement. Until accumulated e charges are posted to your account, we refer to these amounts as "Accumulated ed Finance Charges." For each billing cycle during which Accumulated Finance Charges r terminated Interest Free Special Purchase or Interest Free Cash Advance are posted to ccount, your statement will also disclose the average daily balance of such purchases or dvances for that billing cycle. ance Type F – Special Purchases (including new Special Purchases) are special tional purchase balances to which special promotional terms (other than Interest Free described above) apply until the expiration of any time period specified in the tional offer. A Special Purchase promotion also will terminate if the default rate takes on your account balances because you default under your Agreement. ance Type G – Reduced Rate Cash Advances (including new Reduced Rate Cash ces) are special promotional cash advance balances to which a special reduced daily ic rate applies.

ermine the daily balance for each balance type we (i) take the beginning balance of ctions of that type in your account each day (including any unpaid finance charges, fees er charges applicable to that balance type), and (ii) add any new transactions of that nd add any new fees or other charges of the kinds referred to in (i) above, and (iii) ct the applicable portion of any payments and credits applied to your account as of that d (for Balance Types D, E and F) subtract the unpaid balance of any purchases or cash ces for which the Interest Free Special Purchase feature, Interest Free Cash Advances or l Purchase feature, as applicable, terminated as of that day.

ctions, balance transfer/convenience check fees and cash advance fees are added to a e as of the date of the transaction or a later date of our choice. Other charges of the eferred to in (i) above are added as of the date the charge is posted to your account. ulated Finance Charges on any Interest Free Special Purchases are added for Balance , and Accumulated Finance Charges on any Interest Free Special Cash Advances are

---

In Case of Errors or Questions About Your Bill: If you think your bill is wrong or if you need more information about a transaction on your bill, write us using a copy of the form below or on a separate sheet at P.O. Box 100045 Kennesaw, GA 30156-9245 as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
You do not have to pay the amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we are investigating your question, we cannot report you as delinquent on the disputed amount or take any action to collect the amount you question. If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter or call (using the Cardmember Service or telephone number shown on this statement) must reach us at least three business days before the automatic payment is scheduled to occur.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of goods or services that you purchased with a credit card (excluding purchases made with a check), and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

added to Balance Type C, as of the first day of the next billing cycle following the day on which the Interest Free feature expires if Interest Free Special Purchases or Cash Advances have not been paid in full by that date, or as of the first day of the billing cycle that includes the day on which the Interest Free feature is terminated early because the default rate takes effect on all account balances. This gives us the daily balance for each balance type for each day in the billing cycle for each balance type. We add each day's daily periodic finance charge to the beginning daily balance for the next day.

There is a minimum finance charge of $1 on purchases (with regard to balance types A and B) and a minimum finance charge of $1 on cash advances in any billing cycle in which you owe periodic finance charges on these balance types. There is a transaction fee finance charge for each balance transfer, balance transfer/convenience check, or cash advance, in the amounts stated in your Cardmember Agreement, as amended. To get the total periodic finance charge for the billing cycle, we add all of the daily periodic finance charges for each day during that billing cycle for each balance type. Your total finance charge for the billing cycle is the sum of (1) any balance transfer/convenience check fee and cash advance transaction fees, (2) the periodic finance charges computed as described above on cash advance balances in balance types C, E and G, and (3) the periodic finance charges computed as described above on purchase balance types A, B, D, and F, except that the periodic finance charges on balance type D and E are accumulated from billing cycle to billing cycle and are only added to your account as Accumulated Finance Charges under the circumstances mentioned above.

For each balance type we calculate an average daily balance (including new transactions) for the billing cycle by adding all your daily balances and dividing that amount by the number of days in the billing cycle. If you multiply the average daily balance for a balance type by that balance type's daily periodic rate, and multiply the result by the number of days in the billing cycle, the total will equal the periodic finance charges for that balance type attributable to that billing cycle, except for minor variations due to rounding.

**Grace Period:** We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your daily balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive payment of your New Balance by the date and time your payment is due as shown on your billing statement and we received payment of your New Balance on your previous billing statement by the date and time your payment was due as shown on that billing statement. This exception to "grace period" of at least 20 days only applies to purchases, except it does not apply to Balance Type F – Special Purchases, balance transfers, balance transfer/convenience checks or any cash advances, including cash advance checks: A finance charge is computed on Balance Type B – Previous Cycle Purchases only if the New Balance shown on your billing statement for the previous billing cycle was not paid in full by the date and time shown on your previous billing statement and the Previous Balance shown on your billing statement for the previous billing cycle was zero, was a credit balance, or was paid in full during the previous billing cycle.

**Annual Renewal Notice:** If your account has an annual fee, it will be billed each year or in monthly installments, whether or not you use your account, and you agree to pay it when billed. The annual fee is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your statement on which the annual fee is charged and at the same time, you pay your outstanding balance in full. Your payment of the annual fee does not affect our rights to close your account and to limit your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the annual fee until you pay your outstanding balance in full and terminate your account relationship.

R4006-CCCB

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 27 of 33   Page ID #:187
Exhibit(s) Part 3   Page 60 of 75

# EXHIBIT

# C

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 2   Page 61 of 75
Case 2:06-cv-04804-DDP-PJW   Document 91-1   Filed 03/17/11   Page 28 of 33   Page ID #:188

VISA

4104140014934039000011900000449 7579

CHASE CARDMEMBER SERVICE
PO BOX 100044
KENNESAW, GA 30156-9244

| ACCOUNT # | 4104 1400 1493 4039 |
| --- | --- |
| NEW BALANCE | $4,497.57 |
| PAYMENT DUE DATE | 04/07/06 |
| MINIMUM PAYMENT DUE | $119.00 |

CHASE CARDMEMBER SERVICE
PO BOX 94010
PALATINE, IL 60094-4010

MAIL
CHECK
TO:

MAKE CHECKS PAYABLE TO CHASE

$ [          ]
AMOUNT ENCLOSED

GARY J DAVIS
3126 ROBERTS AVE
CULVER CITY CA 90232-7415

M0114178

PLEASE INDICATE ANY CHANGE TO ADDRESS OR TELEPHONE BELOW OR VISIT WWW.CIRCUITCITYREWARDS.COM

Street Address _____  Home Telephone ( )
City-State-Zip _____  Business Telephone ( )    Detach Here

## CE SUMMARY

| | |
| --- | --- |
| s Balance | $2,752.68 |
| yments and Credits | $2,752.88 |
| sh Advances | $0.00 |
| rchases/Adjustments | $4,420.32 |
| ANCE CHARGES | $77.25 |
| w Balance | $4,497.57 |

### ACCOUNT INFORMATION

| | |
| --- | --- |
| Statement Closing Date | 03/13/06 |
| Days in Billing Cycle | 28 |
| New Balance | $4,497.57 |
| Credit Line | $6,000.00 |
| Available Credit | $1,502.43 |
| Available Cash Advance** | $1,502.43 |

| ACCOUNT # | 4104140014934039 |
| --- | --- |
| Payment Due Date | 04/07/06 |
| MINIMUM PAYMENT DUE | $119.00 |

CALL 1-866-522-7587 TO MAKE YOUR
PAYMENT OVER THE PHONE OR
VISIT US ONLINE AT
WWW.CIRCUITCITYREWARDS.COM

## MOTIONAL SUMMARY

| ding ons | Average Daily Balance | Deferred Average Daily Balance | Daily Periodic Rate*** | Corresponding Annual Percentage Rate | Periodic FINANCE CHARGE | Accumulated Deferred Finance Charges | Promotional Payoff Balance | Promotional Ending Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 22 MOS NIWP | $218.00 | | 0.0657% | 23.99% | | $3.99 | $263.09 | 01/14/2008 |

CCOUNT BALANCE MAY CONTAIN PURCHASES THAT REQUIRE A MINIMUM MONTHLY
NT BY THE DUE DATE ON THIS STATEMENT. PLEASE REFER TO THE MINIMUM
NT DUE FOR THAT AMOUNT. ACCUMULATED DEFERRED FINANCE CHARGES WILL BE
 IF YOUR PROMOTIONAL BALANCE(S) IS PAID IN FULL BY THE PROMOTIONAL
 DATE SHOWN IN THE PROMOTIONAL SUMMARY SECTION. THE PROMOTIONAL END
AY DIFFER FROM YOUR DUE DATE.

## ACTION DETAIL

| Transaction Date | Reference Number | Transactions | Charges & Credits |
| --- | --- | --- | --- |
| | | Purchases | |
| 02/13 | 6044295110835675 | BEST BUY   00003939  W HOLLYWOOD CA | 1,765.96 |
| 02/12 | 6044690441473768 | SMART & FINAL CO.   WEST LOS ANGECA | 17.21 |
| 02/12 | 6044980003861934 | ASIAN KITCHEN   CULVER CITY CA | 9.71 |
| 02/13 | 6045207599700376 | BURGER KING # 9218 Q07  LOS ANGELES CA | 3.78 |
| 02/14 | 6046980002575183 | QUIZNO'S VENICE & ROBERTSCULVER CITY CA | 7.35 |
| 02/15 | 6047585315218229 | PIZZA HUT   07055015  CULVER CITY CA | 14.60 |
| 02/17 | 6048512022011264 | NORM'S LA CIENEGA #50  LOS ANGELES CA | 13.89 |
| 02/18 | 6050049000289276 | SUPER STAR BUFFET RESTAURCULVER CITY CA | 16.75 |
| 02/18 | 6050381831192827 | RALPHS #0284   SF4  CULVER CITY CA | 12.75 |
| 02/20 | 6051295111972634 | BEST BUY   00003939  W HOLLYWOOD CA | 8.65 |
| 02/21 | 4889500000000000 | CIRCUIT CITY CREDIT PURCHASE | 82.24cr |
| | | 142 DIGITAL VIDEO | |

PLANATION OF CODES ON REVERSE
LE CASH ADVANCE IS INCLUDED IN AVAILABLE CREDIT LIMIT
ATIONS : "py" = Payment, "cr" = Credit
ER TO INTEREST FREE SPECIAL PURCHASES ON REVERSE.

MAIL BILLING AND OTHER INQUIRIES TO:
CHASE CARDMEMBER SERVICE
PO BOX 100045
KENNESAW, GA 30156-9245
See form on reverse side.

CHASE

242

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 62 of 75
Case 2:06-cv-04804-DDP-PJW    Document 91    Filed 03/17/09    Page 20 of 33    Page ID #:189

| Customer Name | Account Number |
|---|---|
| GARY J DAVIS | 4104-1400-1493-4039 |

Page 2 of 3

Payment Tips

- ➤ Call 1-866-522-7587 to make your payment over the phone! (A small fee will apply.)
- ➤ Mail your payment 7-10 days in advance of your payment due date to allow for mail delivery.
- ➤ Checks should be made payable to Chase.
- ➤ Write your account number on your check or money order.
- ➤ Include the payment coupon with your payment in the envelope provided.
- ➤ Written correspondence should be sent to:

**CHASE CARDMEMBER SERVICE
PO BOX 100044
KENNESAW, GA 30156-9244**

| Transaction Date | Reference Number | Transactions | Charges & Credits ◆ |
|---|---|---|---|
| 02/20 | 6052118000100573 | WOK ON FIRE INC        LOS ANGELES  CA | 26.17 |
| 02/20 | 6052383117291564 | COMPUSA/GOOD GUYS #740  LOS ANGELES  CA | 151.54 |
| 02/20 | 6052207599700368 | BURGER KING # 9218 Q07  LOS ANGELES  CA | 2.48 |
| 02/21 | 6053384323115341 | KFC 2610052  26100529  CULVER CITY  CA | 4.85 |
| 02/21 | 4889899004897000 | CIRCUIT CITY CREDIT PURCHASE | 933.53cr |
|  |  | #21 30" AND LARGER TV'S |  |
| 02/23 | 6054000594427855 | TWX*PWROSS*MAGAZNE P&H  877-813-0001 NY | 2.00 |
| 02/23 | 6055470096300020 | TASTE OF INDIA - C      CULVER CITY  CA | 14.27 |
| 02/22 | 6055138011473500 | EZ NEW WEB LAUNDROMAT   CULVER CITY  CA | 5.45 |
| 02/23 | 6055690551481334 | SMART & FINAL CO.       WEST LOS ANGECA | 42.10 |
| 02/24 | 6056286299800195 | PAPA JOHN'S PIZZA #2380  LOS ANGELES  CA | 19.73 |
| 02/24 | 6056286299800476 | PAPA JOHN'S PIZZA #2380  LOS ANGELES  CA | 2.00 |
| 02/26 | 6058101912692422 | IHOP #782              LOS ANGELES  CA | 12.07 |
| 02/27 | 6058123365012788 | GABY'S MEDITERRANEAN R  LAS ANGELES  CA | 17.70 |
| 02/27 | 6059783000102064 | JITB #0293  00002931  LOS ANGELES  CA | 2.15 |
| 02/27 | 6059701066620476 | HUS SZECHWAN          LOS ANGELES  CA | 22.64 |
| 02/27 | 6059207599700437 | BURGER KING # 9218 Q07  LOS ANGELES  CA | 2.48 |
| 03/02 | 6061000257186393 | XM *SATELLITE RADIO    800-XMRADIO  DC | 19.94 |
| 03/03 | 0211022004959000 | CIRCUIT CITY PURCHASE | 2,000.00 |
|  |  | 126 PLASMA TV |  |
|  |  | 127 MOUNTS |  |
| 03/07 | 6067197310661034 | PANDA EXPRESS 00006189  CULVER CITY  CA | 6.92 |
| 03/07 | 6067396799783853 | RALPHS #0086    SF4  CULVER CITY  CA | 29.43 |
| 03/07 | 6069442545100024 | INDUSTRY CAFE AND      CULVER CITY  CA | 9.75 |
| 03/09 | 6069293015400299 | KRISTINA S ITALIAN     LOS ANGELES  CA | 16.27 |
| 03/09 | 6069398348919784 | AUTOZONE #5433         LOS ANGELES  CA | 4.32 |
| 03/10 | 6069398535629554 | RALPHS #0086    SF4  CULVER CITY  CA | 3.85 |
| 03/10 | 6069200079900237 | 20/20 VIDEO #12        LOS ANGELES  CA | 12.99 |
| 03/10 | 6070295111993272 | BEST BUY    00001792  CULVER CITY  CA | 39.05 |
| 03/10 | 6070295111993322 | BEST BUY    00001792  CULVER CITY  CA | 40.55 |
| 03/10 | 6070116340010813 | BAJA FRESH 10142       CULVER CITY  CA | 7.63 |
| 03/11 | 6071503106450066 | BESTBUYCOM  88994009  888-BESTBUY MN | 20.54 |
| 03/12 | 6072120726208791 | NEW PANDA BUFFET       LOS ANGELES  CA | 10.80 |
| 03/13 |  | PURCHASE *FINANCE CHARGE* | 77.25 |
|  |  | Payments/Credits |  |
| 03/04 | 6065001000000010 | ONLINE PMT RCVD-THANK YOU | 1,006.00py |
| 03/06 | 6066001000000019 | ONLINE PMT RCVD-THANK YOU | 730.91py |

RTANT INFORMATION

NTION**
COUNT IS IN DISPUTE FOR $396.43. THIS AMOUNT HAS NOT BEEN INCLUDED IN THE FINANCE CHARGE OR MINIMUM PAYMENT
ATIONS.

PLANATION OF CODES ON REVERSE
BLE CASH ADVANCE IS INCLUDED IN AVAILABLE CREDIT LIMIT
/IATIONS : 'py' = Payment, 'cr' = Credit
FER TO INTEREST FREE SPECIAL PURCHASES ON REVERSE.

MAIL BILLING AND OTHER INQUIRIES TO:
CHASE CARDMEMBER SERVICE
PO BOX 100045
KENNESAW, GA 30156-9245
See form on reverse side.

CHASE ○

243

**VISA**

| | |
|---|---|
| **Customer Name** | **Account Number** |
| GARY J DAVIS | 4104-1400-1493-4039 |

Page 3 of 3

**Payment Tips**

➤ Call 1-866-522-7587 to make your payment over the phone! (A small fee will apply.)
➤ Mail your payment 7-10 days in advance of your payment due date to allow for mail delivery.
➤ Checks should be made payable to Chase.
➤ Write your account number on your check or money order.
➤ Include the payment coupon with your payment in the envelope provided.
➤ Written correspondence should be sent to:

**CHASE CARDMEMBER SERVICE**
**PO BOX 100044**
**KENNESAW, GA 30156-9244**

Use your Circuit City credit card and take advantage of special financing
promotions available at your local Circuit City stores!

As a Valued Cardmember, you can claim high-quality merchandise
from top brands such as Lenox, Harley-Davidson, Cross and many
more! Just go to www.rewardcenter.com and enter 157511 where
it asks for your certificate number. These products are not
available to the general public, so act now!

Redeem your rewards points today and use your Rewards Certificates towards
your next purchase at Circuit City. For every 500 points you earn, you'll
receive a $5 Rewards Certificate. Just visit circuitcityrewards.com anytime
to check your point balance and redeem for Rewards Certificates.

**WARDS POINTS SUMMARY**

Your Circuit City Rewards ID Number is 70021534100

| | |
|---|---|
| The number of Rewards Points you have earned (through 03/10/2006) | 50,421 |
| The total number of Rewards Points that are available for you to redeem | 1,790 |
| The number of Rewards Points that are pending in your account | -2,369 |

**NCE CHARGE SUMMARY**

| | Average Daily Balance | Daily Periodic Rate*** | Corresponding Annual Percentage Rate | Periodic FINANCE CHARGE | ANNUAL PERCENTAGE RATE | |
|---|---|---|---|---|---|---|
| Purchases A | $4,232.35 | 0.0652% | 23.79% | $77.25 | 22.45% | SEE REVERSE SIDE FOR IMPORTANT INFORMATION |
| Purchases B | $0.00 | 0.0652% | 23.79% | $0.00 | | |
| Cash Advances C | $0.00 | 0.0761% | 27.79% | $0.00 | | |

RIODIC RATE MAY VARY FROM MONTH TO MONTH

XPLANATION OF CODES ON REVERSE
BLE CASH ADVANCE IS INCLUDED IN AVAILABLE CREDIT LIMIT
VIATIONS : "py" = Payment, "cr" = Credit
our automated information call 1-866-522-7587
er Service Advisors are available Monday - Friday 10am - 9pm ET
t your credit card lost or stolen 24 hours a day call (888) 899-4142
.D. (Telephone Device for the Hearing Impaired), call (800) 925-1794
FER TO INTEREST FREE SPECIAL PURCHASES ON REVERSE.

MAIL BILLING AND OTHER INQUIRIES TO:
CHASE CARDMEMBER SERVICE
PO BOX 100045
KENNESAW, GA 30156-9245
See form on reverse side.

**CHASE** ⬡

244

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 3    Page 64 of 75
Case 2:06-cv-04804-DDP-PJW    Document ...    Filed ...    Page ... of ...    Page ID ...91

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 3   Page 65 of 75
Case 2:06-cv-04804-DDP-PJW   Document 91   Filed 03/17/09   Page 32 of 33   Page ID #:192

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF LOS ANGELES      )

    I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

    On **March 17, 2009**, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒   **BY U.S. MAIL:** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒   **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **March 17, 2009**, at Woodland Hills, California.

*Lourdes Casas*

LOURDES CASAS

- 1 -

246

# SERVICE LIST

Julia B. Strickland, Esq.
Stephen J. Newman, Esq.
David W. Moon, Esq.
Nancy M. Lee, Esq.
STROOCK & STROOCK
& LAVAN, LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086
Telephone:  310-556-5800
Facsimile:  310-556-5959
E-mail:   lacalendar@stroock.com

Jeff Westerman, Esq.
Sabrina Kim, Esq.
MILBERG, LLP
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

Peter E. Glick, Esq.
400 Capitol Mall, Suite 1100
Sacramento, CA 95814
Telephone:  916-558-6182
Facsimile:   916-448-2434

247

# EXHIBIT E

Case 08-35653-KRH   Doc 13532-3   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/09   Page 1 of 32   Page ID #:428
Exhibit(s) Part 3   Page 68 of 75

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY DAVIS, an individual,<br>on behalf of himself, and as<br>PRIVATE ATTORNEY GENERAL,<br>and on behalf of all others<br>similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>CHASE BANK U.S.A., N.A., a<br>Delaware corporation;<br>CIRCUIT CITY STORES, INC., a<br>Virginia corporation ,<br><br>              Defendants. | Case No. CV 06-04804 DDP (PJWx)<br><br>**ORDER DENYING IN SIGNIFICANT PART<br>AND GRANTING IN PART DEFENDANT'S<br>MOTION TO DISMISS**<br><br>[Motion filed on May 1, 2009] |

Before the Court is Defendant Chase Bank U.S.A., N.A.'s Motion to Dismiss the First Amended Complaint.  The First Amended Complaint, filed as a potential class action, seeks to bring four California state law causes of action against Chase,[1] all arising from Chase's servicing of a credit card Chase offered with Circuit City Stores Inc.  The First Amended Complaint claims that Chase (1)

---

[1]Because Circuit City is in bankruptcy, this case is actively proceeding only against Chase.

Case 08-35653-KRH    Doc 13532-3    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/09    Page 2 of 32    Page ID #:429
Exhibit(s) Part 3    Page 69 of 75

1  violated California's Consumer Legal Remedies Act, (2) violated

2  California Business and Professions Code § 17200, (3) breached its

3  contracts, and (4) breached the implied covenant of good faith and

4  fair dealing.   Chase moves to dismiss the First, Second, and Fourth

5  Causes of Action on the basis that they are federally preempted

6  under the National Bank Act.   Alternatively, Chase moves to dismiss

7  all four causes of action on the basis that they fail to state a

8  claim upon which relief can be granted.   Additionally, Chase argues

9  that the First and Second Causes of Action must be dismissed for

10  failure to plead those claims with specificity pursuant to Federal

11  Rule of Civil Procedure 9(b).   After reviewing the materials

12  submitted by the parties, hearing oral argument, and considering

13  the issues raised in both, the Court denies the motion in

14  significant part and grants the motion in part for the reasons

15  discussed below.

16  I.   BACKGROUND

17       A.   Circuit City Rewards Card and Program

18       Defendant Chase is a national bank incorporated in Delaware.

19  First Amended Compl. ("FAC") ¶ 4.   Chase and Circuit City offered a

20  credit card called the "Circuit City Rewards Card," which conferred

21  certain benefits on consumers who utilized the credit card to make

22  their purchases.   Id. at ¶ 5.   Those benefits included earning

23  reward points redeemable at Circuit City stores and access to

24  Chase's advertised promotions of "no interest, no payment" or "no

25  interest, with minimum payments" for a specified period of time on

26  certain types of Circuit City purchases.   Id.   The FAC alleges that

27  Chase solicited Plaintiff and others similarly situated to make

28  purchases at Circuit City using the Circuit City Rewards Card.   Id.

1    ¶ 18.   In exchange for using its services, Plaintiff was eligible

2    to receive an interest- and payment-free period in which to pay off

3    the balance on certain "Promotional Purchases."   Id.

4         Plaintiff alleges that Chase offers a misleading promotional

5    program with the card.   Defendants from time to time advertised the

6    ability to make Promotional Purchases.   Id. at ¶ 19.   For example,

7    a Circuit City Rewards Card promotional item offered to customers

8    in 2006 states in large writing: "No interest! No payments! For six

9    months when you spend $499 or more. For 90 days when you spend $299

10   or more."; and "It is easy to take advantage of this offer! When

11   you make a purchase with your Circuit City credit card, present

12   this certificate to the store associate to scan."   Id.   According

13   to the FAC, the promotional offer conveys that the consumer will

14   receive the benefit of a grace period of anywhere from a few months

15   to two years or more.   Id. at ¶ 28.   In fact, however, all payments

16   made by the consumer on his or her regular monthly statement are

17   given priority of payment to the promotional item, even if not yet

18   billed and even if not due for many months.   Id. at ¶ 27.   That is,

19   Plaintiff alleges that Chase prioritized the allocation of credit

20   card payments to purchases not yet due and owing – the Promotional

21   Purchases subject to a grace period – rather than to purchases that

22   were accruing interest.   Id. at ¶ 28.   According to the FAC, Chase

23   fails to disclose that it allocates payments in this way.   Id. at

24   ¶ 27.   As a result, Plaintiff alleges, the promotional offer is a

25   scam used to induce customers into believing that they will have an

26   extended time period in which to pay off their Promotional

27   Purchases, when in fact the consumer has less time to pay off those

28

3

1  purchases because of how Chase allocates consumers' payments.  Id.

2  at ¶ 28.

3      On March 3, 2006, Plaintiff purchased a television set from

4  Circuit City, charging $2,000 to his Chase Circuit City Rewards

5  Card.  Id. at ¶ 21.  Defendants treated the item as a Promotional

6  Purchase, with the term of no interest with minimal payment until

7  January 2008.  Id.  Prior to the purchase of the television, Chase

8  billed Plaintiff for purchases made between January 14, 2006 and

9  February 13, 2006 (the "February Statement").  Id. at ¶ 22.  Based

10 on the language appearing in his monthly statements, Plaintiff

11 believed that he would not be assessed a finance charge if his

12 monthly billings were paid in full, or that any finance charge

13 would be based only on the remaining balance after any partial

14 payment had been subtracted from the outstanding balance.  Id. at

15 ¶ 23 & Ex. B.  Thus, if payment was due on the February Statement

16 by March 10, 2006 and payment was posted by March 10, 2006, no

17 finance charge should be applied because the balance would have

18 been paid in full.  Id. at ¶ 22.  Alternatively, if partial payment

19 was made either of the minimum or a greater amount, then a finance

20 charge should be applied only against the remaining balance after

21 subtracting the payment made.  Id.  Plaintiff returned two items

22 and made two on-line payments consisting of the total owing on

23 March 4, 2006 and March 6, 2006, thereby paying the February

24 Statement balance in full and on time.  Id.

25      When Plaintiff received his statement for purchases made

26 between February 14, 2006 and March 13, 2006 ("March Statement"),

27 the statement showed that although Plaintiff had paid the February

28 Statement balance in full and in a timely manner, Chase assessed a

4

1   $77.25 finance charge which appeared on the March Statement.  Id.

2   at ¶ 24 & Ex. C.   Plaintiff alleges that he was assessed the

3   finance charge because his entire February Statement Payment was

4   applied against the $2,000 Promotional Purchase (payment for which

5   was not due and which had not yet appeared on his bill), instead of

6   the February Statement balance.  Id. at ¶ 25.  Plaintiff alleges

7   that the $2,000 charge for the television was made subsequent to

8   the issuance of the February Statement, and no Payments of any kind

9   were due and owing for the Promotional Purchase until January 2008.

10  Id.  Chase nevertheless allocated the entire $1,736.91 that

11  Plaintiff paid on his February Statement to the March 3, 2006

12  Promotional Purchase.  Id.  Chase assessed similar charges in at

13  least two other situations.  Id. at ¶ 26.

14       **B.   Language of the Cardholder Agreements**

15       The terms and conditions of the Application to the Circuit

16  City Rewards Card state that, by signing and returning the form for

17  the credit card offer from Chase, an applicant agrees to numerous

18  terms.[2]  Those terms include the following:

19       3.   You authorize us to allocate your payments and credits in

20            a way that is most favorable to or convenient for us.

21            For example, you authorize us to apply your payments and

22            credits to balances with lower APRs (such as promotional

23            APRs) before balances with higher APRs.

24       4.   Claims and disputes are subject to arbitration.

25       5.   As described in the Cardmember Agreement, we reserve the

26            right to change the terms of your account (including the

27  _____

28       [2]The Application is attached as Exhibit A to the FAC.

5

1           APRs) at any time, for any reason, in addition to APR

2           increases that may occur for failure to comply with the

3           terms of your account.

4 FAC, Ex. A at 2.  According to Plaintiff, although the quoted

5 language addresses lower and higher APR balances, it should not be

6 read to include "interest free" balances, with no APR being posted

7 to Plaintiff's monthly account balance.  Opp'n at 6.

8     The various cardholder agreements describe Interest Free

9 Special Purchases as

10           special promotional purchase balances. . . . Finance charges

11           accruing on these balance types are not added to your Account

12           balance, but instead they are accumulated from billing cycle

13           to billing cycle and added to your account as Accumulated

14           Finance Charges only if the Interest Free Special Purchase . .

15           . has not been paid in full by the end of the time period

16           specified in the promotional offer. . . . Until accumulated

17           charges are posted to your account, we refer to these amounts

18           as "Accumulated Deferred Finance Changes."

19 FAC, Ex. B at 2, col. 1.  The Cardholder Agreements repeatedly

20 represented that no payment would be due, and no interest would be

21 charged, until after the end of the time period specified in the

22 promotional offer.  See Falk Decl., Ex. B at 6, ¶ 9(a) & Ex. E at

23 10, ¶ 10(a).  The Cardholder Agreement also states: "[Y]ou agree

24 that we will and you authorize us to allocate your payments and

25 credits in a way that is most favorable to or convenient for us.

26 For example, you authorize us, in our discretion, to apply your

27 payments and credits to balances with lower Annual Percentage Rates

28

1   (such as promotional Annual Percentage Rates) before balances with

2   higher Annual Percentage Rates." Falk Decl., Ex. E at 10, ¶ 9.[3]

3     **C.** **Challenge to Initial Complaint**

4     After Plaintiff first filed his Complaint, Chase moved to

5   compel arbitration and enforce a class action waiver on the basis

6   of an arbitration clause contained in its cardmember agreement.

7   Id. at ¶ 31.  An arbitration clause was not part of Plaintiff's

8   original cardmember agreement, but rather had been introduced

9   through a "bill stuffer" that was sent to Chase's cardmembers as

10  part of their monthly billing.  Id.  This Court denied Chase's

11  motion, finding the arbitration clause to be unconscionable under

12  California law.  Id. at ¶ 32; Dkt. No. 42 (March 26, 2007).  The

13  Ninth Circuit affirmed that decision.  Id. at ¶ 33; Dkt. No. 80

14  (November 25, 2008).

15    **D.** **Alleged Violations of Law**

16    On behalf of himself and others similarly situated, Plaintiff

17  brings four causes of action.  The First Cause of Action seeks to

18  allege a violation of the Consumers Legal Remedies Act, Cal. Civil

19  Code §§ 1770(a)(9), (14), and (19).  Plaintiff alleges that

20  Defendants (a) advertised goods or services with the intent not to

21  sell them as advertised, (b) represented that the transaction

22  conferred or involved rights, remedies, or obligations that it did

23  not have or involve, and (c) inserted unconscionable provisions in

24

25    [3]The Cardmember Agreements, on which both parties rely but
which are not attached to the FAC, are attached to Defendant's
26  Request for Judicial Notice and a larger copy is attached to the
Falk Declaration.  As the FAC refers to the cardmember agreements
27  and no party questions the authenticity of these documents, they
are appropriate for consideration in this Motion to Dismiss.  See
28  pp. 9-10, infra.

1    the Cardmember agreement.   FAC ¶ 38.   The Second Cause of Action

2    seeks to allege a violation of California's unfair competition law,

3    California Business & Professions Code § 17200 *et seq.*   Plaintiff

4    alleges that Defendants' unfair, fraudulent, and deceptive

5    practices include: (1) advertising promotional items as interest-

6    and payment-free when purchased with a Chase Circuit City Rewards

7    Card when in fact interest and finance charges were frequently

8    applied; (2) charging a finance fee despite payment of monthly

9    balance; (3) applying monthly payments to promotional purchases not

10   yet billed or owing instead of to the balance as billed in the

11   monthly statement due; and (4) inserting an unconscionable

12   arbitration and class action wavier clause and "change of terms"

13   clause in the cardmember agreement.   FAC ¶ 47.

14       The Third Cause of Action seeks to allege breach of contract.

15   Plaintiff alleges that Chase breached its contract by prioritizing

16   the allocation of credit card payments to purchases offered and

17   accepted as interest and payment free ahead of non-promotional

18   items appearing on the monthly statement, and by charging an

19   interest fee on balances that remained due to this allocation of

20   payments.   Id. at ¶ 53.   Finally, Plaintiff alleges that Chase

21   breached the implied covenant of good faith and fair dealing by (1)

22   promising purchasers of Circuit City Promotional Purchases they

23   would receive a payment-free period in which to pay off their

24   purchase when, in fact, Chase prioritized the allocation of

25   payments to Promotional Purchases, and (2) by promising purchasers

26   of Circuit City Promotional Purchases that they would receive an

27   interest-free period in which to pay off their purchase when, in

28

256