1  fact, Chase charged interest fees in connection with Promotional

2  Purchases.  Id. at ¶ 58.

3      The Court heard oral argument on June 29, 2009.  Plaintiff

4  subsequently requested the opportunity to present limited

5  additional briefing in light of the Supreme Court's decision in

6  Cuomo v. Clearing House Ass'n, L.L.C., 129 S. Ct. 2710 (2009).

7  Plaintiff filed a Supplemental Brief on July 7, 2009 and Chase

8  filed a Supplemental Brief on July 14, 2009.

9  **II.   PROCEDURAL STANDARD - RULE 12(b)(6)**

10      Under Rule 12(b)(6), a complaint or counterclaims must be

11  dismissed when the allegations fail to state a claim upon which

12  relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When considering

13  a 12(b)(6) motion, "all allegations of material fact are accepted

14  as true and should be construed in the light most favorable to the

15  plaintiff."  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

16  A court properly dismisses a claim under Rule 12(b)(6) based upon

17  the "lack of a cognizable legal theory" or "the absence of

18  sufficient facts alleged under the cognizable legal theory."

19  Baliesteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.

20  1990).  The pleading party's obligation requires more than "labels

21  and conclusions" or a "formulaic recitation of the elements of a

22  cause of action." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955,

23  1964-65 (2007) (internal quotation marks omitted).  Rather, taking

24  Plaintiff's allegations as true, the alleged violation of law must

25  be plausible.  See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

26  (2009).

27      On a motion to dismiss pursuant to Federal Rule of Civil

28  Procedure 12(b)(6), a district court generally "may not consider

257

1   any material beyond the pleadings." <u>Lee v. City of Los Angeles</u>, 250

2   F.3d 668, 688 (9th Cir. 2001).  When "matters outside the pleadings

3   are presented to and not excluded by the court, the motion must be

4   treated as one for summary judgment under Rule 56." Fed. R. Civ.

5   P. 12(d).  Two exceptions exist to the requirement that

6   consideration of extrinsic evidence converts a 12(b)(6) motion to a

7   summary judgment motion: that material properly submitted as part

8   of the complaint (including attachments to the complaint) and

9   material subject to judicial notice under Federal Rule of Evidence

10  201.  <u>Lee</u>, 250 F.3d at 688-89.  Documents whose contents are

11  alleged in a complaint and whose authenticity no party questions,

12  but which are not physically attached to the pleading, may be

13  considered on a 12(b)(6) motion without converting the motion to

14  dismiss into a motion for summary judgment.  <u>Branch v. Tunnell</u>, 14

15  F.3d 449, 454 (9th Cir. 1994), <u>overruled on other grounds by</u>

16  <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002).

17  **III. DISCUSSION**

18      Chase attacks the FAC on a number of grounds.  The Court

19  denies Defendant's motion in significant part and grants it in

20  part.

21      **A.    Preemption**

22      Chase first argues that Plaintiff's First, Second, and Fourth

23  Causes of Action are preempted by the National Bank Act, 12 U.S.C.

24  § 21 <i>et seq.</i> ("NBA") and regulations promulgated by the Office of

25  the Comptroller of the Currency ("OCC"), 12 C.F.R. § 7.4008,

26  because Chase is a national bank.  Plaintiff argues that there is

27  no preemption because Plaintiff seeks to hold Chase accountable

28  under laws of general applicability that have only an incidental

1  effect on bank operations.  The authority on NBA preemption points

2  in both directions, but the Court ultimately finds that Plaintiff's

3  CLRA claims are not preempted by the NBA or 12 C.F.R. § 7.4008,

4  that Plaintiff's UCL claims are preempted in part and not preempted

5  in part, and that Plaintiff's Fourth Cause of Action is not

6  preempted.

7             1.    <u>General Principles Surrounding Preemption and the</u>

8                  <u>NBA</u>

9      State laws that are preempted by federal law will be invalid

10  by reason of the Supremacy Clause of the Constitution.  A federal

11  law "may pre-empt state law in three different ways": by express

12  terms, where federal law is so pervasive that it occupies the

13  entire field, or where state law conflicts with federal law or

14  stands as an obstacle to the accomplishment and execution of the

15  full purpose and objectives of Congress.  <u>Bank of Am. v. City and</u>

16  <u>County of S.F.</u>, 309 F.3d 551, 557-58 (9th Cir. 2002).  "'Federal

17  regulations have no less pre-emptive effect than federal

18  statutes.'"  <u>Id.</u> at 560 (quoting <u>Fidelity Federal Sav. & Loan Ass'n</u>

19  <u>v. de la Cuesta</u>, 458 U.S. 141, 153 (1982)).

20      National banks are protected from state regulation by a

21  tradition of broad preemption.  Although there is normally a

22  presumption against the preemption of state laws, in the banking

23  context, the Supreme Court has "interpreted grants of both

24  enumerated and incidental 'powers' to national banks as grants of

25  authority not normally limited by, but rather ordinarily pre-

26  empting, contrary state law."  <u>Watters v. Wachovia Bank, N.A.</u>, 550

27  U.S. 1, 12 (2007) (internal quotation marks omitted); <u>Wells Fargo</u>

28  <u>Bank N.A. v. Boutris</u>, 419 F.3d 949, 956 (9th Cir. 2005); <u>Bank of</u>

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/09   Page 12 of 32   Page ID #:439
Exhibit(s) Part 4   Page 4 of 75

1  <u>Am.</u>, 309 F.3d at 558-59.  The NBA vests in nationally-chartered

2  banks enumerated powers and "all such incidental powers as shall be

3  necessary to carry on the business of banking."  12 U.S.C. § 24

4  (Seventh).  The Act "shields national banking from unduly

5  burdensome and duplicative state regulation"; however, federally

6  chartered banks remain "subject to state laws of general

7  application in their daily business to the extent such laws do not

8  conflict with the letter or the general purposes of the NBA."

9  <u>Watters</u>, 550 U.S. at 11.  "States are permitted to regulate the

10  activities of national banks where doing so does not prevent or

11  significantly interfere with the national bank's or the national

12  bank regulator's exercise of its powers."  <u>Id.</u> at 12.  State law

13  "may not curtail or hinder a national bank's efficient exercise of

14  any . . . power, incidental or enumerated under the NBA."  <u>Id.</u> at

15  13.  Incidental powers "include activities closely related to

16  banking and useful in carrying out the business of banking."  <u>Bank</u>

17  <u>of Am.</u>, 309 F.3d at 562.

18                2.   <u>Authority for and Regulations Governing Preemption</u>

19                     <u>with Respect to Credit Card Lending</u>

20       Credit card lending falls under the purview of national banks'

21  authorized powers.  The NBA authorizes national banks to exercise

22  "all such incidental powers as shall be necessary to carry on the

23  business of banking," including "by loaning money on personal

24  security."  12 U.S.C. § 24 (Seventh).  Additionally, 12 C.F.R.

25  § 7.4008(a) authorizes a national bank to "make, sell, purchase,

26  participate in, or otherwise deal in loans and interests in loans

27  that are not secured by liens on, or interests in, real estate,

28  subject to such terms, conditions, and limitations prescribed by

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/09   Page 13 of 32   Page ID #:440
Exhibit(s) Part 4   Page 5 of 75

1  the Comptroller of the currency and any other applicable Federal

2  law." Section 7.4008 also discusses preemption with respect to

3  non-real estate lending. Subsection (d), titled "Applicability of

4  state law," provides, in relevant part:

> (1)  Except where made applicable by Federal law, state laws
> that obstruct, impair, or condition a national bank's
> ability to fully exercise its Federally authorized non-
> real estate lending powers are not applicable to national
> banks.
>
> (2)  A national bank may make non-real estate loans *without
> regard to state law limitations concerning*: . . .
>
> (iv) The terms of credit, including the schedule for
> repayment of principal and interest, amortization of
> loans, balance, payments due, minimum payments, or
> term to maturity of the loan, including the
> circumstances under which a loan may be called due
> and payable upon the passage of time or a specified
> event external to the loan; . . .
>
> (viii) Disclosure and advertising, including laws
> requiring specific statements, information, or other
> content to be included in credit application forms,
> credit solicitations, billing statements, credit
> contracts, or other credit-related documents;
>
> (ix) Disbursements and repayments; and
>
> (x)  Rates of interest on loans.

12 C.F.R. § 7.4008(d) (emphasis added). Subsection (e) sets out

the types of state laws that are not preempted. In particular, it

provides:

> State laws on the following subjects are not inconsistent with
> the non-real estate lending powers of national banks and apply
> to national banks to the extent that they only incidentally
> affect the exercise of national banks' non-real estate lending
> powers: [¶] (1) Contracts; [¶] (2) Torts; . . . [¶] (8) Any
> other law the effect of which the OCC determines to be
> incidental to the non-real estate lending operations of
> national banks or otherwise consistent with the powers set out
> in paragraph (a) of this section.

<u>Id.</u> § 7.4008(e).

3.  <u>Preemption of Plaintiff's Claims</u>

13

261

1    Because Defendant focuses its preemption challenge on express

2    preemption, the parties primarily debate whether Plaintiff's CLRA,

3    UCL, and breach of the implied covenant of good faith and fair

4    dealing claims fall under the preemptive scope of § 7.4008.

5                    a.   Predicate Legal Duty

6    Whether framed by the Supreme Court in <u>Watters</u> or the more

7    specific applicable regulations, a critical threshold task in the

8    preemption analysis is identification of the proper state law that

9    is the subject of the preemption analysis.  In the context of

10   generally-applicable laws, the Court's focus is essentially on the

11   law "as applied."  Where a plaintiff brings a claim under an unfair

12   competition law, the Court's inquiry is "whether the legal duty

13   that is the predicate of Plaintiffs' state law claim falls within

14   the preemptive power of the NBA or regulations promulgated

15   thereunder."  <u>Rose v. Chase Bank USA, N.A.</u>, 513 F.3d 1032, 1038

16   (9th Cir. 2008) (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S.

17   504, 524 (1992)); <u>see also</u> <u>Gibson v. World Savings & Loan Ass'n</u>,

18   103 Cal. App. 4th 1291, 1301-02 (2002).  For example, in <u>Rose</u>, the

19   plaintiffs brought their actions under California's Unfair

20   Competition Law, Cal. Bus. & Prof. Code § 17200, and alleged that

21   the defendant had engaged in unlawful business practices because

22   the defendant's credit card "convenience checks" did not have the

23   disclosures required by California Civil Code § 1748.9.  513 F.3d

24   at 1034-35.  The court's analysis focused not on the general

25   applicability of the UCL but on California Civil Code § 1748.9.

26   <u>Id.</u> at 1036-38.

27   Plaintiff's Complaint rests on four state law claims, three of

28   which are relevant here.  First, Plaintiff alleges a Consumer Legal

14

1  Remedies Act claim for false advertising, misrepresentation, and
2  inserting an unconscionable provision in the contract.  FAC ¶ 38.
3  See Cal. Civ. Code § 1770(a)(9), (14), (19).  Second, Plaintiff
4  alleges that Defendant engaged in unfair business practices that
5  include the credit card advertising, the charge of the finance fee,
6  the application of the monthly payments, and inserting an
7  unconscionable arbitration and class action waiver clause.  FAC
8  ¶ 47.  Fourth, Plaintiff alleges breach of the covenant of good
9  faith and fair dealing for the allocation of payments.  Id. at
10 ¶ 58.

11            b.   12 C.F.R. § 7.4008(d)-(e)

12      The critical point in the analysis is to determine whether
13 Plaintiff's claims fall into 12 C.F.R. § 7.4008's express
14 preemption provision.  As the Court reads § 7.4008, it sets up the
15 following framework for analysis.  First, consistent with the
16 general principles of NBA preemption, see Watters, 550 U.S. at 11-
17 12, it is governed by a general preemption statement provideing
18 that state laws that "obstruct, impair, or condition a national
19 bank's ability to fully exercise its Federally authorized non-real
20 estate lending powers" are simply "not applicable" to national
21 banks.  § 7.4008(d)(1).  Second, it sets out specific laws that are
22 preempted.  § 7.4008(d)(2).  Third, it provides guidance on
23 subjects that are not preempted "to the extent that they only
24 incidentally affect the exercise of national banks' non-real estate
25 lending powers," such as contracts, torts, and criminal law.
26 § 7.4008(e).  Where a state law does not fall into the express
27 preemption provisions of § 7.4008, it will be preempted where it
28 runs afoul of the broader preemption principles discussed above.

i.   _Silvas_, OTS, and OCC

Cases provide some guidance on how to apply these principles. Although the parties each marshal precedent in their favor and distinguish their opponents' cases, the Court has not found a case that is exactly on point.

Defendant argues that the Court is bound by the Ninth Circuit's decision in _Silvas v. E*Trade Mortgage Corp._, 514 F.3d 1001 (9th Cir. 2008).   In _Silvas_, the Ninth Circuit considered whether the plaintiffs' claim was preempted by the regulations promulgated under a related but distinct statute.   There, the plaintiffs sued E*Trade, a federal thrift with whom they had refinanced their mortgage, alleging that E*Trade violated the unfair advertising section of California's UCL, by representing to its customers that its lock-in fee is non-refundable when, under the law, it is refundable under some circumstances.   _Id._ at 1003; _see Silvas v. E*Trade Mortg. Corp._, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006).   Against the backdrop of the significant federal presence in the realm of national banking, the Ninth Circuit considered whether provisions regulating banks under the Home Owners' Loan Act of 1933 ("HOLA") preempted Plaintiff's claim. Specifically, the court looked to a preemption regulation promulgated by HOLA's enforcing authority, the Office of Thrift Supervision ("OTS"), 12 C.F.R. § 560.2.   The court noted that § 560.2(a) expressly established that OTS "occupies the entire field of lending regulation for federal savings associations."   _Id._ at 1005 (quoting 12 C.F.R. § 560.2(a)).

Following the guidance by OTS on how to interpret and apply its regulation, the court then applied a two-step process to

1  determining whether a claim was preempted by the regulation.

2  First, the court looked to whether the state law was a type

3  contemplated by the list in § 560.2(b), which listed preempted

4  statutes.  Id. at 1006.  To determine whether the claim fell into

5  the list of preempted statutes, the court focused on how the

6  statute – California's UCL – would apply in the particular case,

7  even if the statute applied more generally.  See id.  If the law

8  was one contemplated by the list, the preemption analysis would end

9  and the claim would be preempted.  Id.  The court would only reach

10  the question of whether the law fit within the confines of

11  subsection (c) (a provision similar to § 7.4008(e)) if the claim

12  did not fit within the list of specifically preempted laws.  Id. at

13  1006-07; see 12 C.F.R. § 560.2(c).  The Ninth Circuit did not reach

14  the second step; instead, it held that because the claim was

15  "entirely based on E*Trade's *disclosures and advertising*," the

16  claim "[fell] within the specific type of law listed in

17  § 560.2(b)(9)," and was therefore preempted.  514 F.3d at 1006

18  (emphasis in original).  See also Weiss v. Washington Mutual Bank

19  et al., 147 Cal. App. 4th 72, 77-78 (2007).

20      At first glance, Silvas would seem to control the result here.

21  The OTS regulations it considered contain language that is largely

22  parallel to the OCC regulations at issue here.  Compare 12 C.F.R.

23  § 560.2(b)-(c) with 12 C.F.R. § 7.4008(d)-(e); cf. Office of the

24  Comptroller of the Currency, Preemption Final Rule, 69 Fed. Reg.

25  1904-01, 1912 n.62 ("As noted in the proposal, the OTS has issued a

26  regulation providing generally that state laws purporting to

27  address the operations of Federal savings associations are

28  preempted.  See 12 CFR 545.2.  The extent of Federal regulation and

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/09   Page 18 of 32   Page ID #:445
Exhibit(s) Part 4   Page 10 of 75

1   supervision of Federal savings associations under the Home Owners'

2   Loan Act is substantially the same as for national banks under the

3   national banking laws, a fact that warrants similar conclusions

4   about the applicability of state laws to the conduct of the

5   Federally authorized activities of both types of entities.").

6   Additionally, <u>Silvas</u> considers whether false advertising and unfair

7   competition claims fall in the scope of comparable preemption

8   language.  Thus, if <u>Silvas</u> controlled, the Court would be inclined

9   to find that some of Plaintiff's claims - which, like those in

10  <u>Silvas</u>, sound in part in false advertising - are expressly

11  preempted by § 7.4008(d)(2)(viii), which governs "[d]isclosures and

12  advertising."

13      The Court agrees with Plaintiff, however, that <u>Silvas</u> does not

14  control.  First, <u>Silvas</u> involved a field preemption provision and

15  specific guidance from the agency as to how to apply the provisions

16  of the exemption.  Although the phrasing of the two regulations is

17  similar, OTS preemption is more sweeping because "OTS occupies the

18  entire field of lending regulation for federal savings

19  associations" in connection with HOLA.  12 C.F.R. § 560.2(a).

20  Courts have cautioned against wholesale application of an OTS/HOLA

21  analysis in the OCC context.  <u>See, e.g.</u>, <u>Munoz v. Fin. Freedom</u>

22  <u>Senior Funding</u>, 567 F. Supp. 2d 1156, 1162 n.4 (C.D. Cal. 2008)

23  (Carney, J.); <u>Gutierrez v. Wells Fargo Bank, N.A.</u>, 2008 WL 4279550,

24  *12 (N.D. Cal. Sept. 11, 2008) (Alsup, J.) ("The language employed

25  by the OCC in its regulations and interpretive letters evidence

26  that application of a more narrow preemption analysis is more

27  appropriate than that applied in <u>Silvas</u> (where the OTS had

28  specifically defined a proper preemption test to be employed).

1  Here, the OCC itself has attempted to reconcile banking practices

2  with state law in an interpretive letter."); id. at *10-11 (citing

3  OCC Advisory Letter AL 2002-3).[4]

4       Cases considering whether the NBA and OCC regulations preempt

5  UCL and CLRA claims have tended to distinguish between those claims

6  that arise from generally-applicable duties such as contractual

7  obligations and the duty to refrain from deceptive acts and those

8  claims that rest on alleged violations of statutes specifically

9  aimed at NBA duties. See Miller v. Bank of Am., N.A., 170 Cal.

10 App. 4th 980, 989-90 (2009).  In the former case, courts have found

11 no preemption either by applying general NBA preemption principles

12 or by finding that § 7.4008(e) applies.  See, e.g., Jefferson v.

13 Chase Home Finance, 2008 WL 1883484 (N.D. Cal. April 29, 2008)

14 (Henderson, J.); Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th

15 1463, 1475-84 (2005).[5]  In the latter, courts have found that the

16 state law claims are preempted.  See, e.g., Rose, 513 F.3d at 1032;

17 Miller, 170 Cal. App. 4th at 980; Montgomery v. Bank of Am. Corp.,

18 515 F. Supp. 2d 1106 (C.D. Cal. 2007) (Snyder, J.)(in part, finding

19 that UCL claims based on specific means of charging fees conflict-

20 preempted).  This distinction is supported by commentary from the

21 OCC, see OCC Advisory Letter AL 2002-3 at 3 n.2, though at least

22 one court has suggested that the OCC's regulations and authority

23 are broad enough that it should be the enforcing body for all

24 _____

25      [4]That said, courts have not uniformly distinguished the two
   statutes and regulatory schemes in all circumstances.
26 Additionally, Plaintiff does not suggest that the OTS cases are
   wholly unhelpful.  See Gibson, 103 Cal. App. 4th at 1302-04.

27      [5]The Court notes that Smith appears to apply the presumption
   against preemption, despite the Ninth Circuit's holdings to the
28 contrary.  See Smith, 135 Cal. App. 4th at 1475-76 & n.5.

1  deceptive practices, see Weiss v. Wells Fargo Bank, N.A., 2008 WL

2  2620886 (W.D. Mo. July 1, 2008).  See also Augustine v. FIA Card

3  Services, N.A., 485 F. Supp. 2d 1172, 1175-76 (E.D. Cal. 2007) (OCC

4  regulations do not preempt claims regarding behavior that is

5  unconscionable or contrary to public policy).

6      Instead, Plaintiff urges the Court to follow the reasoning of

7  Jefferson v. Chase Home Finance, 2008 WL 1883484 (N.D. Cal. April

8  29, 2008), which focused on whether the law to be applied was one

9  of general applicability.  In that case, the plaintiff sued his

10  mortgage servicer under California's Consumer Legal Remedies Act

11  for, inter alia, making misrepresentations about how it would apply

12  his mortgage payments.  The defendant argued that two OCC

13  regulations, 12 C.F.R. §§ 34.4(a) and 7.4009, preempted the

14  plaintiff's claims.  Although the regulations provided that banks

15  could make real estate loans without regard to state law

16  limitations regarding terms of credit, disclosure and advertising,

17  processing and servicing of mortgages, repayments, and rates of

18  interest, the court held that the plaintiff's allegations under

19  laws of "general application" like the CLRA and the False

20  Advertising Act, "which merely require all business (including

21  banks) to refrain from misrepresentations and abide by contracts

22  and misrepresentations to customers[,] do not impair a bank's

23  ability to exercise its lending powers."  2008 WL 1883484 at *10.

24  Because they only "'incidentally affect' the exercise of a Bank's

25  power," the court held, they "do not fall into the enumerated

26  categories of § 34.4(a), and are therefore not preempted."  Id.

27  The court cited to a California Court of Appeal case in which the

28  court had held that a plaintiff's UCL claims for breaches of

20

268

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/09    Page 21 of 32    Page ID #:448
Exhibit(s) Part 4 - Page 13 of 75

1  contractual duties were not preempted.  <u>Id.</u> (citing <u>Gibson v. World</u>

2  <u>Savings & Loan Ass'n</u>, 103 Cal. App. 4th 1291 (2002)).

3       With these principles in mind, the Court turns to whether the

4  allegations are expressly preempted by the OCC regulations.

5                      ii.  Application

6       The Court begins by noting that, based on the plain language

7  of the regulation, its reading of generally how to apply the

8  preemption provisions of § 7.4008 is largely consistent with that

9  of the OTS regulations.[6]  That is, on the Court's reading of the

10  regulation, the first step is to determine whether the predicate

11  legal duty falls in the scope of § 7.4008(d)(2) or § 7.4008(e).  If

12  it falls into neither, the Court must consider whether it violates

13  the general NBA preemption principles.[7]  However, the Court's

14  reading of the specific provisions and applications of those

15  provision do not necessarily yield the same result as in the field-

16  preempted OTS context.

17       The Court finds that Plaintiff's CLRA claims and UCL

18  advertising claims do not fall into the express provisions of

19  § 7.4008(d)(2).  Defendant focuses on the false advertising claim

20  and argues that, like in <u>Silvas</u>, a false advertising claim falls

21  into 12 C.F.R. § 7.4008(d)(2)(viii), which provides that a national

22  bank "may make non-real estate loans without regard to state law

23

---

24       [6]Given that they use somewhat similar language, this makes

25  sense.  <u>See</u> 69 Fed. Reg. at 1912 n.62.

26       [7]The <u>Jefferson</u> court appears to rest on the conclusion that
    the law at issue is one of general application and move straight to
    the analysis of whether there was an incidental effect.  <u>See</u>

27  <u>Jefferson</u>, 2008 WL 1883484 at *10.  The Court's approach therefore
    differs slightly from the <u>Jefferson</u> court's, though the Court finds

28  that case's reasoning persuasive overall.

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Case 2:06-cv-04804-DDP-PJW   Document 112   Filed 09/03/09   Page 22 of 32   Page ID #:449
Exhibit(s) Part 4   Page 14 of 75

1  limitations concerning . . . (viii) Disclosure and advertising,

2  including laws requiring specific statements, information, or other

3  content to be included in credit application forms, credit

4  solicitations, billing statements, credit contracts, or other

5  credit-related documents[.]"  The Court finds that this language

6  does not expressly preempt generally-applicable laws regarding

7  deceptive advertising.  Rather, the specific examples listed

8  suggest that the provision expressly preempts laws regarding

9  particular types of disclosures, such as those like APR that might

10  be included in a state version of the Federal Truth in Lending Act.

11  Although the Court recognizes that the list is exemplary rather

12  than exclusive, the Court notes that the language is aimed at

13  *specific* types of disclosures, rather than general "false

14  advertising" laws.  As false advertising laws are widespread, the

15  Court would expect to see such an example.[8]  Because the OTS

16  regulations have broader preemptive force, and because the Silvas

17  court considered a UCL claim premised on a TILA violation, a

18  distinction between the Court's finding here and the result in

19  Silvas is not problematic.  The predicate duty – to avoid deceptive

20  disclosures – is significantly broader than a specific duty to

21  disclose certain provisions that would fall within the scope of

22  subsection (d)(2)(viii).

23      To the extent Plaintiff's UCL claims are challenge the

24  allocation of payments *apart* from the way that allocation interacts

25  with deceptive advertising, the Court finds that those claims are

26  expressly preempted by § 7.4008(d)(2)(iv).  In part, Plaintiff's

27  ─────────────

28      [8]But see Montgomery, 515 F. Supp. 2d at 1114; Weiss, 2008 WL
2620886 at *2-3.

1   UCL claim appears to be based on an argument regarding Defendant's

2   charging of a finance fee and the application of monthly payments.

3   See FAC ¶ 47.  The exact nature of this claim is unclear to the

4   Court.  To the extent Plaintiff alleges that Defendant's allocation

5   of payments violates the UCL because it is contrary to

6   advertisements or the contract, these claims are not preempted.  To

7   the extent Plaintiff alleges that the allocation of payments or the

8   charging of a finance fee is generally an unfair act,[9] the Court

9   finds that such a claim seeks to regulate the way in which Chase

10  allocates payments, and falls squarely within § 7.4008(d)(2)(iv).

11  Although the claim could be framed as a "general" attack (like any

12  claim could), the result it seeks squarely impedes on the decision

13  to employ certain lending terms.  Unlike the other claims, an

14  attack on the allocation of payments in this way in and of itself

15  does not say "speak the truth" or "comply with the contracts you

16  make," but rather "do not apply payments in this specific way, even

17  if your contract allows as much and even if you have not done so

18  deceptively."

19       The Court finds that the other CLRA and UCL claims (those

20  related to unconscionable provisions and breach of the implied

21  covenant of good faith and fair dealing) are based in contract, and

22  therefore fall into the scope of § 7.4008(e) so long as they only

23  incidentally affect the exercise of Chase's non-real estate lending

24  practices.  Plaintiff's challenge to specific terms on the ground

25  that they are unconscionable does not seek to dictate the terms of

26  _____

27       [9]Given the parties' discussion of forthcoming regulations, it
appears that Plaintiff's UCL claim rests in part on declaring
28  unfair the specific way that Chase allocates payments.

1  credit in a way that would run afoul of either § 7.4008(d)(iv) or

2  the NBA's broader preemption principles: it does not seek to impose

3  a specific term of credit, but rather is part of a general rule of

4  contract law.

5      The Court finds that the false advertising and contract-based

6  claims have only an incidental affect on lending practices.

7  Contrary to Defendant's argument, the Court does not read all parts

8  of Plaintiff's complaint to seek to preclude Defendant from

9  applying payments in a certain way altogether.  (To the extent

10  Plaintiff does seek such a declaration, his claims are expressly

11  preempted by 12 C.F.R. § 7.4008(d)(2)(iv), as discussed above)  For

12  the reasons discussed by the _Jefferson_ court, the Court finds that

13  this application of the CLRA and UCL in the advertising-based

14  claims is consistent with the exceptions to NBA preemption.  _See_

15  _Jefferson_, 2008 WL 1883484 at *12-14.  With respect to the claims

16  the Court has identified as contract-related, the Court finds that

17  these claims have at most an incidental effect on the exercise of

18  Chase's lending powers.  Such a claim does not seek to force Chase

19  to set its contracts in a certain way, but rather merely to _adhere_

20  to the contracts it does create.  A breach of contract claim that

21  concerns lending terms is perhaps closer to preemption than one

22  centered on a contract for employment or maintenance, but the Court

23  does not consider such a claim to fall within the fundamental

24  purposes of the broad national banking preemption.

25      Thus, on the record before it, the Court denies Defendant's

26  motion on preemption grounds with respect to all but the UCL claims

27  that challenge the allocation of payments or fees as inherently

28  unfair, which the Court dismisses with leave to amend.

24

**B.   Failure to State a Claim**

Defendant alternatively argues that Plaintiff has failed to state a claim under the CLRA, the UCL, and state contract law.

    1.   <u>CLRA Allocation of Payments Claim (Cal. Civil Code § 1770(a)(9), (14)</u>

Defendant argues that Plaintiff's allegations regarding the allocation of payments fail to state a claim for violation of the CLRA.  As discussed above, Plaintiff's First Cause of Action seeks to allege violations of three provisions of the CLRA. Specifically, Plaintiff alleges that Defendant's acts violate § 1770(a)(9) and (14) in that Defendant (1) advertised goods or services with the intent not to sell them as advertised and (2) represented that the transaction conferred or involved rights, remedies, or obligations that it did not have or involve.  FAC ¶ 38.

Defendant argues that Plaintiff fails to plead a CLRA claim because "Plaintiff nowhere alleges that the relied on any supposedly misleading advertising or other statements by Chase concerning promotional purchases, or that any supposed advertisement or representation cause him any harm."  Def.'s Mem. at 13.  Rather, Defendant argues, "as to the only specific transaction identified. . . , Plaintiff expressly alleges that he did not even request his purchase to be treated as a promotional purchase."  <u>Id.</u> (citing FAC ¶ 21).  Defendant also argues that the advertisements say nothing about the allocation of payments, and that Plaintiff's claim independently fails for that reason.

"[R]elief under the CLRA is limited to any consumer who suffers any damage *as a result* of the use or employment by any

1  person of a method act, or practice unlawful under the act." Mass.

2  Mutual Life Ins. Co. v. Super. Ct., 97 Cal. App. 4th 1282, 1292

3  (2002) (internal quotation marks and alteration omitted) (emphasis

4  in Mass. Mutual).   This limitation on relief "requires that

5  plaintiffs in a CLRA action show not only that a defendant's

6  conduct was deceptive but that the deception caused them harm."

7  Id.   Put differently, causation is "a necessary element of proof"

8  for relief.   Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th

9  746, 754 (2003).

10      The Court finds Plaintiff's allegations sufficient to state a

11  claim for reliance.   Although Plaintiff's allegations preclude him

12  from arguing that he relied on the advertising campaign in

13  purchasing the item that was subject to the promotional purchase

14  (and therefore limit his damages accordingly), the Court finds his

15  allegations regarding his payment choices after Chase treated his

16  purchase as a promotional payment sufficient to state a claim at

17  the pleading stage.   Likewise, at this stage, Defendant's second

18  argument is unavailing, as the Court finds that the FAC pleads a

19  plausible claim.

20          2.   UCL Allocation of Payments Claims

21      Defendant challenges Plaintiff's allegations regarding his

22  allocation of payments UCL claim on three grounds: (1) that

23  Plaintiff has not sufficiently alleged reliance, (2) that there is

24  nothing unfair about the payment allocation method, and (3) that

25  the doctrine of judicial abstention applies to Plaintiff's claims.

26  Plaintiff's Second Cause of Action seeks relief under the UCL for

27  acts that include (1) advertising promotional items as interest and

28  payment free, (2) charging a finance fee, (3) applying monthly

1  payments to Promotional Purchases not yet billed or owing instead

2  of to the balance as billed in the monthly statement due, and (4)

3  inserting an unconscionable arbitration and class action waiver

4  clause and "change of terms" clause in its Cardmember Agreement.

5  The Court has dismissed this claim as preempted in part, but some

6  allegations remain.

7      For the reasons discussed immediately above with respect to

8  reliance and the CLRA claim, the Court denies Defendant's motion on

9  that ground.   The remaining challenges appear to go to Plaintiff's

10  allegations regarding the allocation of payments in general, and it

11  therefore appears to the Court that it has already dismissed on

12  preemption grounds the claims to which Defendant's remaining

13  arguments apply.

14          3.   <u>Contract Claims</u>

15      Defendant argues that Plaintiff has failed to state a claim

16  for breach of contract or for breach of the implied covenant of

17  good faith and fair dealing.   Plaintiff alleges that Chase offered

18  Plaintiff a no interest, no payment grace period on Promtional

19  Purchases made using their Rewards Card, and that Plaintiff

20  accepted Chase's offer by making Promotional Purchases.   FAC ¶¶ 51-

21  52.   Plaintiff alleges that Chase breached these contracts by (1)

22  "prioritizing the allocation of credit card Payments to purchases

23  offered and accepted as interest and payment free ahead of non-

24  promotional items appearing on the monthly statement" and (2)

25  "charging an interest fee on balances that remained due to this

26  allocation of Payments."   <u>Id.</u> at ¶ 53.   Plaintiff alleges that the

27  same facts show a violation of the implied covenant of good faith

28  and fair dealing.   <u>Id.</u> at ¶ 58.

27

1    Defendant argues that Plaintiff has failed to state a claim
2  because the contract does not promise to allocate payments in the
3  manner proposed by Plaintiff, but rather the application and
4  cardholder agreement specifically provide that Chase may "allocate
5  [Plaintiff's] payments and credits in a way that is most favorable
6  to or convenient for [Chase]."  FAC, Ex. B at 2; Falk Decl., Ex. E
7  at 10, ¶ 9.  Defendant argues that, as alleged by Plaintiff,
8  Chase's promotional offer provided only that the promotional
9  balance would be "interest free," not that other balances would not
10  be subject to finance charges and that nothing in the promotional
11  offer provided that the balance did not need to be repaid or that
12  payments would not be allocated to the promotional balance.  Reply
13  at 15.  Plaintiff argues that the payment allocation clauses of the
14  contract do not undermine his claim.  First, Plaintiff notes that
15  the Defendant allocated the payment to amounts that were not yet
16  due or owing as they had not even appeared on Plaintiff's February
17  Statement.  Opp'n at 3-4; FAC ¶¶ 24-25.  Additionally, Plaintiff
18  argues that the various agreements define "interest free" offers as
19  exempt from the reach of Defendant's payment allocation powers.
20  Opp'n at 4-5.
21    The Court finds that Plaintiff has stated a claim for breach
22  of contract and breach of the implied covenant of good faith and
23  fair dealing sufficient to survive Defendant's Motion to Dismiss.
24  Although Defendant seems to generally challenge Plaintiff's
25  contract interpretation, the Court is not prepared, on the briefing
26  before it, to perform a contract interpretation analysis that would
27  be required in order to determine whether Plaintiff's
28  interpretation of the contract is the proper one.

4.   <u>CLRA Claim for Damages on Unconscionable Contract</u>

<u>Provisions</u>

Defendant argues that Plaintiff's CLRA claim for damages with respect to the arbitration clause and change-in-terms provisions is procedurally defective and must be dismissed.

The CLRA includes certain mandatory procedural requirements regarding notice.  In particular, California Civil Code § 1782 provides that at least thirty days "prior to the commencement of an action for damages," the consumer "shall" notify the alleged offender of the particular alleged violatiosn and demand that the person "correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation" of the CLRA.  Cal. Civil Code § 1782(a)(1)-(2).  The notice "shall be in writing and shall be sent by certified or registered mail, return receipt requested." <u>Id.</u>  Although it is not jurisdictional, compliance with the notice requirement "is necessary to state a claim." <u>Cattie v. Wal-Mart Stores, Inc.</u>, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).  All of the authorities cited to the Court by the parties have explained that these procedural requirements are strictly adhered to by dismissing a claim with prejudice.  As one California District Court noted, even prior litigation on an injunctive relief claim that provides actual notice and an opportunity to correct the behavior does not excuse a party from providing notice in the manner required by § 1782(a).  <u>See Laster v. T-Mobile USA, Inc.</u>, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) ("While § 1782(d) authorizes the filing of an action for injunctive relief without first providing notice to the vendor, the statute further directs that such an action may not be converted into an action for damages

277

1  unless the consumer first complies with the notice provisions of §
2  1782(a). Accordingly, § 1782 scrupulously prohibits any action for
3  damages unless its notice provisions are met. As stated, the
4  Legislative goals would be eviscerated if consumers were allowed to
5  sue for damages without first providing the statutorily mandated
6  period for remediation."). Plaintiff's attempt to distinguish
7  these cases is unavailing.

8      Plaintiff acknowledges that he did not provide notice in the
9  form required by § 1782(a). Instead, he argues that Defendant
10  received actual notice because the parties litigated whether the
11  arbitration clause applied for two years. Because actual notice is
12  not sufficient, the Court dismisses this claim, with prejudice.
13  See, e.g., Outboard Marine Copr. v. Super. Ct., 52 Cal. App. 3d 30
14  (1975). A claim for injunctive relief remains.

15          5.   CLRA and UCL "Unconscionable Arbitration Clause"
16               Claims

17      Defendant next challenges Plaintiff's CLRA and UCL claims that
18  seek relief on the ground that Defendant inserted an unconscionable
19  arbitration clause into the contract. As Defendant's argument
20  rests in part on finding that all of Plaintiff's other claims are
21  without merit, the Court denies the Motion.

22          6.   CLRA and UCL Change-in-Terms Provision

23      Defendant also challenges Plaintiff's allegation that the
24  change-in-terms provision of the original Cardmember Agreement is
25  unconscionable because it gave Chase the right unilaterally to
26  change the Cardmember Agreement at any time. FAC ¶ 31. Defendant
27  argues that Plaintiff fails to state a claim because the term is
28  not unconscionable as a matter of law. In light of the sparse

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 23 of 75
Case 2:06-cv-04804-DDP-PJW    Document 112    Filed 09/03/09    Page 31 of 32    Page ID #:458

1  briefing on this issue, the Court denies the motion on this ground,

2  without prejudice.[10]

3       **C.   Pleading with Specificity**

4       Finally, Defendant argues that the FAC fails to plead the CLRA

5  and UCL claims with the specificity required by Federal Rule of

6  Civil Procedure 9(b).  Although Plaintiff does not assert fraud as

7  one of his causes of action, Defendant argues that the claim sounds

8  in fraud and therefore is subjec to Rule 9(b)'s heightened

9  particularity requirement.  Plaintiff does not exactly dispute this

10  legal argument so much as its implications on Plaintiff's pleading

11  here.

12       Rule 9(b) applies when (1) a complaint specifically alleges

13  fraud as an essential element of a claim, (2) when the claim

14  "sounds in fraud" by alleging that the defendant engaged in

15  fraudulent conduct, but the claim itself does not contain fraud as

16  an essential element, and (3) to any allegations of fraudulent

17  conduct, even when none of the claims in the complaint "sound in

18  fraud."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102-06 (9th

19  Cir. 2003).  Rule 9(b) requires that a plaintiff set forth what is

20  false or misleading about a statement, why it is false, including

21  the "who, what, when, where, and how of the misconduct charged."

22  Id. at 1106.

23       The Court is satisfied that the FAC has specific enough

24  allegations to satisfy this standard as to those portions of the

25

26  _____

27       [10]For example, previously the Court's and the Ninth Circuit's
unconscionability discussion considered, among other issues, choice
28  of law and discussed unconscionability against California law.
Neither party briefs these issues.

1  CLRA and UCL claims that sound in misrepresentation.  Accordingly,

2  the Court denies this portion of the Motion.

3  **IV.   CONCLUSION**

4      For the foregoing reasons, the Court denies Defendant's motion

5  in significant part.  The Court grants Defendant's motion with

6  respect to (1) the UCL claims seeking to invalidate the payment

7  structure as unfair and (2) the CLRA damages claim.

8  IT IS SO ORDERED.

9

10

11 Dated: September 3, 2009

12                              DEAN D. PREGERSON
                                United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 26 of 75
Case 2:06-cv-04804-DDP-PJW    Document 203    Filed 11/15/10    Page 1 of 10    Page ID #:3957

1

2

3                                                                    **O**

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   GARY DAVIS, an individual,      )   Case No. CV 06-04804 DDP (PJWx)
     on behalf of himself, and as    )
12   PRIVATE ATTORNEY GENERAL,       )   [Motion filed on 5/28/10]
     and on behalf of all others     )
13   similarly situated,             )
                                     )   **ORDER GRANTING DEFENDANT'S MOTION**
14                  Plaintiffs,      )   **FOR PARTIAL SUMMARY JUDGMENT**
                                     )
15        v.                         )
                                     )
16   CHASE BANK U.S.A., N.A., a      )
     Delaware corporation;           )
17   CIRCUIT CITY STORES, INC., a    )
     Virginia corporation ,          )
18                                   )
                    Defendants.      )
19                                   )
                                     )
20   _____ )

21        Presently before the court is Defendant Chase Bank U.S.A.,

22   N.A. ("Chase")'s Motion for Partial Summary Judgment.  After

23   reviewing the parties' moving papers, the court grants the motion

24   and adopts the following order.

25   **I.    Background**

26        As described more fully in this court's previous orders,

27   Circuit City Stores, Inc. ("Circuit City") offered a special credit

28   card to California residents, who used the card to make purchases

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 27 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 2 of 10   Page ID #:3958

1  at Circuit City stores. First North American National Bank

2  ("FNANB"), a Georgia bank owned by Circuit City, issued the Circuit

3  City credit cards. Plaintiff Gary Davis opened a Circuit City

4  credit card in August 2003.

5       Certain credit card purchases were eligible for

6  advertised promotions of "no interest, no payment" or "no interest,

7  with minimum payments" for a specified period of time. First

8  Amended Compl. ("FAC") ¶ 5). According to the FAC, the promotional

9  offer conveyed that the consumer would receive the benefit of a

10  grace period of anywhere from a few months to two years or more to

11  make payments on the promotional item. (Id. ¶ 28.) In fact, all

12  payments made by the consumer on his or her regular monthly

13  statement were allocated first to the promotional item, even if not

14  yet billed and not yet due for many months, rather than to existing

15  balances that were accruing interest. (Id. ¶ 27-28.) As a result,

16  Plaintiff alleges that the promotional offer was a scam used to

17  induce customers into believing that they would have an extended

18  time period in which to pay off their Promotional Purchases, when

19  in fact the consumer had less time to pay off those purchases. (Id.

20  ¶ 28.)

21       Circuit City financed its (and FNAMBs) credit card operation

22  through a "Master Trust." FNANB, which issued the Circuit City

23  cards and serviced the borrower accounts, transferred credit card

24  receivables to a subsidiary, Tyler Funding. Tyler Funding, in

25  turn, transferred the receivables to the Master Trust. The Master

26  Trust then issued securities, backed by the credit card

27  receivables, to investors ("Certificate holders"). The

28  relationships between FNANB, Tyler Funding, and the Master trust

2

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 28 of 75
Case 2:06-cv-04804-DDP-PJW    Document 203    Filed 11/15/10    Page 3 of 10    Page ID #:3959

1  were governed by a "Pooling Agreement." The Pooling Agreement

2  allowed FNANB to transfer its interests in the Master Trust assets,

3  but only under certain conditions that would protect the value of

4  the receivables-backed securities.

5       In January 2004, Circuit City agreed to sell its finance

6  operations, including FNANB's credit card operation, to Bank One,

7  Delaware, N.A. ("Bank One"), a Delaware Bank. In October 2004, Bank

8  One merged with Chase Bank USA, N.A. ("Chase").[1] Under the terms

9  of a Purchase and Sale Agreement ("PSA" or "Purchase Agreement"),

10  the finance operation transaction between Chase and FNANB closed on

11  May 25, 2004 (the "closing date").[2],[3]

12       Chase now moves for partial summary judgment. Chase argues

13  that it is not liable for FNANB's conduct toward Plaintiff prior to

14  the closing date, and seeks to limit Plaintiff's action to the time

15  period after May 25, 2004.

16  **II.  Legal Standard**

17       A motion for summary judgment must be granted when "the

18  pleadings, depositions, answers to interrogatories, and admissions

19  on file, together with the affidavits, if any, show that there is

20  no genuine issue as to any material fact and that the moving party

21  is entitled to a judgment as a matter of law." Fed. R. Civ. P.

22  56(c).  A party seeking summary judgment bears the initial burden

23  _____

24  [1] For simplicity's sake, this order refers to both Bank One
    and Chase as "Chase."

25  [2]FNANB, Tyler Funding, Circuit City, and Chase (Bank One) were
    all parties to the PSA.  (Declaration of Daniel Tierney, Exhibit
26  F.)

27  [3] This court's explanation of these complex financial
    arrangements is not drawn from any one source, but rather from the
28  various, separate agreements described herein.

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 29 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 4 of 10   Page ID #:3960

1  of informing the court of the basis for its motion and of

2  identifying those portions of the pleadings and discovery responses

3  that demonstrate the absence of a genuine issue of material fact.

4  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

5      Where the moving party will have the burden of proof on an

6  issue at trial, the movant must affirmatively demonstrate that no

7  reasonable trier of fact could find other than for the moving

8  party.  On an issue as to which the nonmoving party will have the

9  burden of proof, however, the movant can prevail merely by pointing

10  out that there is an absence of evidence to support the nonmoving

11  party's case.  See id.  If the moving party meets its initial

12  burden, the non-moving party must set forth, by affidavit or as

13  otherwise provided in Rule 56, "specific facts showing that

14  there is a genuine issue for trial." Anderson v. Liberty Lobby,

15  Inc., 477 U.S. 242, 250 (1986).

16      It is not the Court's task "to scour the record in search of a

17  genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,

18  1278 (9th Cir. 1996). Counsel have an obligation to lay out their

19  support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d

20  1026, 1031 (9th Cir. 2001).  The Court "need not examine the entire

21  file for evidence establishing a genuine issue of fact, where the

22  evidence is not set forth in the opposition papers with adequate

23  references so that it could conveniently be found." Id.

24  III. Discussion

25      As an initial matter, the parties differ as to which state's

26  law controls this issue.  Both FNANB and Chase included choice of

27  law clauses in their cardmember agreements with account holders,

28  such as Plaintiff.  Chase argues that the law of Georgia, where

4

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 30 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 5 of 10   Page ID #:3961

1  FNANB was located, should govern this dispute, or that, in the

2  alternative, the law of Delaware, where Chase is incorporated,

3  controls.  (Motion for Partial Summary Judgment ("MSJ") at 17, 20.)

4  Plaintiff acknowledges that his claim could not survive under

5  Georgia or Delaware law, and argues that California law controls.

6  (Opposition at 11-14.)  The court need not resolve the choice of

7  law issue, however, because even under California law, Plaintiff

8  cannot show that Chase is liable for FNANB's conduct prior to the

9  closing date.

10     Generally, an asset purchaser does not assume the seller's

11  liabilities.  Ray v. Alad Corp., 19 Cal.3d. 22, 28 (1977).  There,

12  are, however, exceptions to this general rule.  A purchasing

13  corporation may assume a selling corporation's liabilities if, as

14  relevant here, (1) the purchaser expressly or impliedly agrees to

15  assume liability or (2) the purchasing corporation is a mere

16  continuation of the seller.[4]  Id.  The court addresses each

17  potential exception in turn.

18  A.  Express Assumption

19     Plaintiff first argues that Chase expressly assumed all of

20  FNANB's liabilities for pre-closing date conduct toward cardholders

21  such as Plaintiff.  (Opp. at 6).  The court disagrees.  Section

22  2.04 of the Purchase Agreement listed Chase's assumed liabilities.

23  As relevant here, such liabilities included:

24

25  ─────────────────────────

26     [4] Though Plaintiff invokes the "mere continuation" exception
   to the general rule against successor liability, California courts
27  have held that the "mere continuation" exception is a subset of a
   closely related inquiry: whether the asset transaction amounts to a
28  consolidation or merger.  Franklin v. USX Corp., 105 Cal.Rptr.2d
   11, 17 (Ct. App. 2001).

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Case 2:06-cv-04804-DDP-PJW    Document 203    Filed 11/15/10    Page 6 of 10    Page ID #:3962
Exhibit(s) Part 4    Page 31 of 75

1    [A]ll obligations and Liabilities of Sellers to
     Borrowers under the Account Agreements that exist as
2    of, or are incurred or accrue <u>after</u>, the Cut-Off Time,
     other than any such obligation of Liability that arises
3    from any breach or default or violations of any
     Requirements of Law by Sellers occurring before the
4    Cut-Off Time

5

6    (Tierny Dec., Exhibit F at 72 (emphasis added).)   Section 2.04 also

7    states that Chase "shall not assume any liability . . . of Circuit

8    City, FNANB and Tyler Funding . . . arising from or related to the

9    operation of the Sellers' business prior to or after the Cut-Off

10   Time." <u>Id.</u> at 73.   This language explicitly disclaims liability

11   for FNANB's conduct toward borrowers, such as Plaintiff, prior to

12   the closing date.

13        Plaintiff argues that the PSA alone does not fully describe

14   Chase's obligations.   Indeed, Section 12.04 of the PSA does refer

15   to and incorporate "Related Agreements," as well as exhibits and

16   schedules attached to those agreements. <u>Id.</u> at 138.   Among these

17   related agreements is an "Assumption Agreement." <u>Id.</u> at 63.   The

18   Pooling Agreement is listed under Schedule 1 to the Assumption

19   Agreement.   (Declaration of Andrew J. Sokolowski, Exhibit B at

20   133.)

21        The Pooling Agreement allowed FNANB to transfer its interest

22   in the Master Trust, but only under certain conditions.   Among

23   those conditions was the requirement that Chase, as the acquiring

24   Transferor and Servicer, "expressly assume . . . the performance of

25   every covenant and obligation of the Transferor [and Servicer]. . .

26   ." (<u>Id.</u> at 239, 241.)   No covenant contained in the Pooling

27   Agreement, however, makes any reference to borrowers.   The Pooling

28   Agreement explicitly lists the parties, Certificate Owners, and

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 32 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 7 of 10   Page ID #:3963

1  Certificateholders as the only beneficiaries of the Pooling

2  Agreement.  (Id. at 270.)

3      Furthermore, each of the covenants cited by Plaintiff clearly

4  refers to and is intended to protect investor interests, not those

5  of borrowers.  Section 2.5(c), for example, requires the bank to

6  comply with all Account Agreements, except insofar as failure to do

7  so "would not materially and adversely affect the rights of the

8  Trust or the Investor Certificateholders . . . ."[5]  (Id. at 202

9  (emphasis added)).  Section 2.5(c) also obliges the bank to comply

10 with "all Requirements of Law[,] the failure to comply with which

11 would have a material adverse effect on the Investor

12 Certificateholders . . . ."  (Id. (emphasis added).)  Similarly,

13 Section 3.3(g) requires the Servicer to "comply in all material

14 respects with all other Requirements of Law in connection with

15 servicing each Receivable and the related Account the failure to

16 comply with which would have a material adverse effect on the

17 Certificateholders . . . ."  (Id. at 214 (emphasis added).)  These

18 covenants make no mention of borrowers such as Plaintiff.

19     The Pooling Agreement's liability and indemnity provisions

20 also focus solely on investors.  Section 8.4 obligates the

21 Transferor to accept liability to "the injured party" for injuries

22 arising out of the Pooling Agreement, and to "pay, indemnify, and

23 hold harmless each Investor Certificateholder against and from any

24 and all such losses . . . ."  (Id. at 241 (emphasis added.))

25 Section 8.4 obligates the Servicer to indemnify the Master Trust

26 for liabilities arising out of the Pooling Agreement "for the

27 _____

28      [5] Section 3.1(f) contains virtually identical language.
   (Sokolowski Dec., Exhibit B at 212.)

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 33 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 8 of 10   Page ID #:3964

1   benefit of the Certificateholders." (<u>Id.</u> at 243).   None of the

2   Pooling Agreement's covenants or obligations create duties or

3   obligations to borrower such as Plaintiff.

4        Under the Assumption Agreement, Chase agreed to perform the

5   covenants contained in the Pooling Agreement, as it was required to

6   do to satisfy the Pooling Agreement itself.   As both Servicer (of

7   the credit card accounts) and Transferor (of the receivables),

8   Chase agreed, under the Assumption Agreement, to be liable "to the

9   Certificateholders [] [and] the Trustee . . . ."   (<u>Id.</u>, Exhibit A at

10  126.)   Though Chase agreed in the Assumption Agreement to perform

11  the covenants of the Pooling Agreement, no provision of either

12  agreement constituted an express assumption of pre-closing date

13  liabilities to Plaintiff.   The "express assumption" exception to

14  the general rule against successor liability therefore does not

15  apply.

16  B.   Mere Continuation

17       In the alternative, Plaintiff argues that Chase was a "mere

18  continuation" of FNANB.   "The general rule of successor liability

19  is that a corporation that purchases all of the assets of another

20  corporation is not liable for the former corporation's liabilities

21  unless, among other theories, the purchasing corporation is a mere

22  continuation of the selling corporation." <u>Katzir's Floor and Home</u>

23  <u>Design, Inc. v. M-MLS.com</u>, 394 F.3d 1143, 1150 (9th Cir. 2004).   To

24  demonstrate mere continuation, Plaintiff must show (1) a lack of

25  adequate consideration for the selling corporation's assets or (2)

26  that at least one person was an officer, director, or shareholder

27  of both corporations.   <u>Id.</u>   Lack of inadequate consideration is an

28  "essential ingredient" of a "mere continuation" claim.   <u>Id.</u>

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 34 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 9 of 10   Page ID #:3965

1     As the Ninth Circuit has held, the "mere continuation" inquiry

2  is only relevant where one corporation acquires "all of the assets

3  of another corporation." Id. There is no evidence that Chase

4  acquired all FNAMB or Circuit City assets.  Indeed, under the

5  Purchase Agreement, FNANB retained several assets, including cash,

6  furniture, fixtures, and all Circuit City customer data.  (Tierney

7  Dec., Exhibit F at 71-72.)  FNANB received $475.9 million in cash

8  from Chase under the Purchase Agreement.  (Declaration of Stephen

9  J. Newman, Exhibit D at 42.)  At the time FNANB liquidated in July

10  2004, over two months after the asset sale, FNANB possessed almost

11  $84 million in assets.  (Id., Exhibit G at 49.)  Circuit City

12  continued operations for over four years after the Chase asset

13  purchase (Id., Exhibit 0 at 85.)  Because Plaintiff has not

14  demonstrated that Chase acquired all of FNAMB's assets, there is no

15  issue of material fact as to whether Chase was a "mere

16  continuation" of FNANB.[6]

17

18

19  ///

20  ///

21  ///

22

---

23     [6] Plaintiff requests additional discovery to show that Chase

24  and FNAMB shared common officers, directors, and employees, and
   that the $1.1 billion in consideration (including $475.9 million in
25  cash) Chase paid to FNAMB was inadequate.  Such evidence could
   prove relevant to a "mere continuation" inquiry.  As discussed
26  above, however, under Katzir, the "mere continuation" analysis is
   only applicable where one corporation has acquired all of the
27  assets of a second corporation.  Because Plaintiff has not
   demonstrated that Chase acquired all FNAMB assets, the additional
28  evidence Plaintiff seeks would not be sufficient to defeat summary
   judgment.

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 35 of 75
Case 2:06-cv-04804-DDP-PJW   Document 203   Filed 11/15/10   Page 10 of 10   Page ID
#:3966

**IV.   Conclusion**

For the reasons set forth above, the Court GRANTS the Partial Motion for Summary Judgment with respect to all claims related to conduct prior to Chase's acquisition of FNANB's credit card assets on May 25, 2004.

IT IS SO ORDERED.


Dated: November 15, 2010

DEAN D. PREGERSON
United States District Judge

# EXHIBIT G

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 37 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 1 of 14   Page ID #:6419

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY DAVIS, an individual, on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>  v.<br><br>CHASE BANK U.S.A., N.A., a Delaware corporation; CIRCUIT CITY STORES, INC., a Virginia corporation ,<br><br>         Defendants. | Case No. CV 06-04804 DDP (PJWx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IN PART, AND DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br><br><br><br>[Dkt. Nos. 210, 215] |

    Presently before the court is Defendant Chase Bank U.S.A., N.A. ("Chase")'s Motion for Summary Judgment ("Motion") and Plaintiff's Motion for Class Certification ("Cert. Mot."). Having reviewed the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I.  Background**

    As described more fully in this court's previous orders, Circuit City Stores, Inc. ("Circuit City") offered a special credit

293

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 38 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 2 of 14   Page ID #:6420

1  card to California residents, who used the card to make purchases

2  at Circuit City stores.  First North American National Bank

3  ("FNANB"), a Georgia bank owned by Circuit City, issued the Circuit

4  City credit cards.  Plaintiff Gary Davis ("Plaintiff") opened a

5  Circuit City credit card account ("Account") in August 2003.  In

6  January 2004, Circuit City agreed to sell its finance operations,

7  including FNANB's credit card operation, to Bank One, Delaware,

8  N.A.("Bank One"), a Delaware Bank. In October 2004, Bank One merged

9  with Defendant Chase Bank USA, N.A. ("Chase").

10     A.    The Credit Card Agreement

11     Plaintiff's Account was governed by a Cardmember Agreement

12  ("Agreement"). The Agreement stated that "any purchases made under

13  [the Account] will be made for personal, family, and household

14  purposes." (Decl. of Daniel Tierney in Supp. of Mot. ("Tierney

15  Decl."), Exs. 1-3.)  The Agreement also set forth the terms under

16  which payments would be due and interest charged.  The Agreement

17  stated that no interest would be charged if the consumer paid the

18  existing balance of his or her account, as set forth in the last

19  billing statement, by the due date shown on that statement.[1]

20  Paragraph 9 of the Agreement reads:

21

22         . . . [W]e do not charge periodic Finance Charges on new
           purchases billed during a billing cycle if we receive
23         payment of your New Balance by the date and time your
           minimum payment is due as shown on your billing statement
24         and we received payment of your New Balance on your

25  _____

[1]  The Agreement refers to this ending balance as the "New Balance."

26  ("Your billing statement shows your beginning balance and your

27  ending balance (the 'New Balance' on your billing statement).")

28  (Tierney Decl. Ex. 3 at ¶ 7.)

1      previous billing statement by the date and time your
2      payment was due as shown on that billing statement.

3  (Tierney Decl. Ex. 3 at ¶¶ 7, 9.)

4     The Agreement also stated that Chase could "allocate payments

5  and credits in a way that is most favorable to or convenient for

6  [Chase]." (Tierney Decl., Ex. 3 at ¶ 9.)  For example, Chase could

7  "apply. . . payments and credits to balances with lower Annual

8  Percentage Rates (such as promotional Annual Percentage Rates)

9  before balances with higher Annual Percentage Rates."  (Id.)

10     Certain credit card purchases were eligible for advertised

11  promotions of "no interest, no payment" or "no interest, with

12  minimum payments" for a specified period of time.  (First Amended

13  Compl. ("FAC") ¶ 5).  According to the FAC, the promotional offer

14  conveyed that the consumer would receive the benefit of a grace

15  period of anywhere from a few months to two years or more to make

16  payments on the promotional item.  (Id. ¶ 28.)

17     During the promotional grace period, finance charges on the

18  promotional item would accrue, but would not be charged, so long as

19  the consumer paid off the promotional item in full by the end of

20  the promotional period.  Only if the customer failed to pay in full

21  by the end of the grace period would the accumulated finance

22  charges be added to the balance.  Paragraph 10 of the Agreement

23  reads, in relevant part:

24

25      Interest Free Special Purchases. . . are special
    promotional purchase balances. . . for which Finance
26    Charges accruing on the balance are not added to your
    Account balance but instead are accumulated from billing
27    cycle to billing cycle and posted to your Account as
    Accumulated Finance Charges only if the Interest Free
28    Special Purchase . . . has not been paid in full by the

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 40 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 4 of 14   Page ID #:6422

1    end of the time period specified in the promotional
     offer. . . Until Accumulated Finance Charges are posted
2    to your Account, we refer to these amounts as "Deferred
     Finance Charges."
3         . . .

4    Special Promotional Options. We may at various times
     offer special promotional options. These promotions are
5    subject to the terms and conditions in this Agreement, as
     modified by the terms of the promotion, which will be
6    disclosed at the time of the offer. Any transaction
     charging to your Account a purchase ... identified as
7    having any of the special promotional terms described
     herein or other promotional terms disclosed at the time
8    of our offer, will constitute your agreement that the
     applicable promotional terms will apply to that
9    transaction.

10   (Tierney Decl. Ex. 3 at ¶ 10.)  Finally, the Agreement states that

11   where the terms of the promotional offer and the Agreement

12   conflict, the terms of the promotional offer modify the Agreement.

13   (Tierney Decl. Ex. 3 at ¶ 19.)

14        In practice, all payments made by a consumer were allocated

15   first to the promotional interest-free item, even if not yet billed

16   and not fully due for many months, rather than to existing, non-

17   promotional balances that were accruing interest.   (FAC ¶ 27-28.)

18   As a result, Plaintiff incurred finance charges even though he

19   submitted payments sufficient to pay off the balance of his account

20   each month.

21        For example, in March 2006, Plaintiff purchased a $2,000

22   television from Circuit City under a promotional offer in which no

23   interest or payments were to be due until January 2008.   (Id. at ¶

24   25.)  Plaintiff submitted a payment of $1,736.91 to cover his pre-

25   existing February balance.   Instead of allocating Plaintiff's

26   payment to his pre-existing balance, Chase applied the entire

27   payment toward the just-purchased television, despite the

28

4

296

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 41 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 5 of 14   Page ID #:6423

1   promotional interest and payment-free grace period.  Because

2   Plaintiff's entire payment was allocated to the promotional

3   purchase, there were insufficient funds to cover Plaintiff's pre-

4   existing February statement balance.  Accordingly, Chase assessed a

5   finance charge.

6       In June 2006, Plaintiff filed a putative class action complaint

7   in California state court on behalf of himself and others similarly

8   situated.  Defendants removed to this court in August 2006.  In

9   March 2009, Plaintiff filed a First Amended Complaint, alleging

10  that Chase (1) violated the Consumer Legal Remedies Act ("CLRA"),

11  Cal. Civ. Code § 1770, (2) violated California Business and

12  Professions Code § 17200, (3) breached the Agreement, and (4)

13  breached the implied covenant of good faith and fair dealing.  In

14  short, Plaintiff alleges that the promotional offer was a scam used

15  to induce customers into believing that they would have an extended

16  time period in which to pay off their Promotional Purchases, when

17  in fact the consumer had less time to pay off those purchases. (FAC

18  ¶ 28.)

19      This court previously dismissed Plaintiff's CLRA claim.  Chase

20  now moves for summary judgment under Fed. R. Civ. P. 56 on the

21  three remaining claims.

22  **II.  Legal Standard**

23

24      A motion for summary judgment must be granted when "the

25  pleadings, depositions, answers to interrogatories, and admissions

26  on file, together with the affidavits, if any, show that there is

27  no genuine issue as to any material fact and that the moving party

28

5

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 42 of 75
Case 2:06-cv-04804-DDP-PJW    Document 291    Filed 01/16/13    Page 6 of 14    Page ID #:6424

1  is entitled to a judgment as a matter of law." Fed. R. Civ. P.

2  56(c). A party seeking summary judgment bears the initial burden

3  of informing the court of the basis for its motion and of

4  identifying those portions of the pleadings and discovery responses

5  that demonstrate the absence of a genuine issue of material fact.

6  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

7      Where the moving party will have the burden of proof on an

8  issue at trial, the movant must affirmatively demonstrate that no

9  reasonable trier of fact could find other than for the moving

10  party. On an issue as to which the nonmoving party will have the

11  burden of proof, however, the movant can prevail merely by pointing

12  out that there is an absence of evidence to support the nonmoving

13  party's case. See id. If the moving party meets its initial

14  burden, the non-moving party must set forth, by affidavit or as

15  otherwise provided in Rule 56, "specific facts showing that

16  there is a genuine issue for trial." Anderson v. Liberty Lobby,

17  Inc., 477 U.S. 242, 250 (1986).

18      It is not the court's task "to scour the record in search of a

19  genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,

20  1278 (9th Cir. 1996). Counsel have an obligation to lay out their

21  support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d

22  1026, 1031 (9th Cir. 2001). The court "need not examine the entire

23  file for evidence establishing a genuine issue of fact, where the

24  evidence is not set forth in the opposition papers with adequate

25  references so that it could conveniently be found." Id.

26

27

28

6

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 43 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 7 of 14   Page ID #:6425

1       A party seeking class certification bears the burden of

2   showing that each of the four requirements of Rule 23(a) and at

3   least one of the requirements of Rule 23(b) are met.  See Hanon v.

4   Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992).  Rule 23(a)

5   sets forth four prerequisites for class certification:

6

7       (1) the class is so numerous that joinder of all members
        is impracticable, (2) there are questions of law or fact

8       common to the class, (3) the claims or defenses of the
        representative parties are typical of the claims or

9       defenses of the class, and (4) the representative parties
        will fairly and adequately protect the interests of the

10      class.

11  Fed. R. Civ. P. 23(a); Hanon, 976 F.2d at 508.  These four

12  requirements are often referred to as numerosity, commonality,

13  typicality, and adequacy.  See Gen. Tel. Co. v. Falcon, 457 U.S.

14  147, 156 (1982).  A plaintiff seeking to certify a class under

15  Rule 23(b)(3) must show that questions of law or fact common to

16  the members of the class "predominate over any questions affecting

17  only individual members and that a class action is superior to

18  other available methods for the fair and efficient adjudication of

19  the controversy."  Fed. R. Civ. P. 23(b)(3).

20

21      "In determining the propriety of a class action, the question

22  is not whether the plaintiff has stated a cause of action or will

23  prevail on the merits, but rather whether the requirements of Rule

24  23 are met."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178

25  (1974) (internal quotation and citations omitted).  This court,

26  therefore, considers the merits of the underlying claim to the

27  extent that the merits overlap with the Rule 23(a) requirements,

28

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 44 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 8 of 14   Page ID #:6426

1  but will not conduct a "mini-trial" or determine at this stage

2  whether Plaintiffs could actually prevail.   <u>Ellis v. Costco</u>

3  <u>Wholesale Corp.</u>, 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

**III. Discussion**

    A.   Chase's Motion for Summary Judgment

        1.   <u>Breach of Contract</u>

7      A plaintiff suing for breach of contract must show that he

8  has himself performed in accordance with the terms of the

9

10  contract.  <u>Brown v. Dillard's, Inc.</u>, 430 F.3d 1004, 1010 (9th Cir.

11  2005); <u>Cons. World Invs., Inc. v. Lido Preferred, Ltd.</u>, 9 Cal.

12  App. 4th 373, 380 (1992).   Chase argues that Plaintiff breached

13  the Agreement by purchasing products with his Circuit City credit

14  card for business, rather than personal, use.   (Mot. at 7-10.)

15      When deposed, Plaintiff testified that he operated an

16  electronics consulting business.  (Declaration of Joseph A.

17  Escarez in Support of Motion, Ex. 1 ("Davis Depo.") at 44.)[2]  Chase

18  asserts that many of the purchases Plaintiff made with his Circuit

19  City card were connected to Plaintiff's electronics consulting

20  business.  Plaintiff further benefitted from this type of

21

22  activity, Chase contends, by earning Circuit City "Rewards

23       [2] Chase further asserts that Plaintiff earned at least $100
per hour to, in his words, "help friends with electronic issues."

24  (Reply at 2.)   Chase also contends that finding and buying
electronic equipment was part of Plaintiff's business.  (<u>Id.</u>)

25  Though Chase supports its assertions with citations to the Davis
Deposition, several of the cited pages (e.g. pp. 42-43) are not

26  included in the excerpts provided to the court in Exhibit 1 to the
Escarez Declaration.  Plaintiff has not disputed any of Chase's

27  representations regarding the Davis deposition, nor raised any
objection to the transcript excerpts.

28

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 45 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 9 of 14   Page ID #:6427

1  Points," which were exchangeable for goods at Circuit City stores,

2  and by essentially obtaining cash advances on his credit card

3  while avoiding the terms applicable to such advances.[3]  (Id. at 9.)

4      Chase argues that Plaintiff harmed Chase by exposing it to

5  the higher degree of risk associated with a business credit line

6  (Id. at 10-11), by removing from its practical grasp products in

7  which it had a security interest, and by depriving it of the fees

8  it would have been entitled to collect had Plaintiff taken a cash

9  advance on the Account.[4]  (Id. at 14.)

10

11      Plaintiff's credit card statements reveal that between 2005

12  and 2006, he purchased at least ten televisions, as well as

13  several accessories such as flat screen t.v. mounts, audio cables,

14  video recorders, and blank recording media.  (Escarez Decl., Ex.2;

15  Mot. at 8 (citing television purchases).)  Plaintiff lived alone

16  at the time.  (Davis Depo. at 73:12-16.)

17

18      Chase posits that the March 2006 promotional purchase of the

19  $2,000 television set described above was itself part of a

20  business transaction.  (Mot. at 8.)  The parties do not dispute

21  that Plaintiff bought the set for a third party, John Godfrey, who

22  _____

   [3]   The Agreement provides that cardholders may obtain cash
23  advances, as well as "cash-like charges" such as traveler's checks
   and money orders.  (Tierney Decl., Ex. 3 at ¶3.)  These cash and
24  cash-like transactions are subject to higher interest rates and
   transaction fees than normal credit purchases of goods.  (Id. at ¶
25  8.)
   [4]   Paragraph 21 of the Agreement granted Chase "a
26  purchase money security interest. . . in each item of
   merchandise purchased at a Circuit City store or otherwise
27  from Circuit City on [Plaintiff's] Account, to secure payment
   in full of all amounts owed to [Chase] in connection with the
28  purchase of that item."

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 46 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 10 of 14   Page ID
#:6428

1  took original possession of the set and gave Plaintiff $2,000 cash

2  in return (the "Godfrey Transaction"). (Davis Depo. at 92.)

3  Plaintiff testified that he bought the t.v. for Godfrey because

4  "[i]t was helpful for both [Plaintiff and Godfrey.]]" (Id.)

5  Plaintiff explained that he "helped [Godfrey] choose the best

6  television and helped him get the best price," while Plaintiff

7  himself was helped by getting "$2,000 cash in return for putting

8  $2,000 on [the Circuit City] credit card and . . . rewards points,

9  which . . . would have equaled $100." (Id. at 93.)  Godfrey, who

10  Plaintiff described as a "close friend," did not otherwise

11  

12  compensate Plaintiff.  (Id.)

13     Plaintiff denies that these transactions were business-

14  related.  In a declaration submitted in opposition to the instant

15  motion, Plaintiff reiterates that Godfrey "was a close personal

16  friend." (Declaration of Gary Davis at ¶4.)  Plaintiff further

17  states that he "was not paid any fee nor did [Plaintiff] make any

18  profit from Godfrey." (Id.)  Plaintiff also asserts that while he

19  sometimes made Circuit City purchases for other people, he never

20  marked up those purchases or profited from the re-sale of the

21  Circuit City items.  (Id. at ¶ 3.)  The declaration explains that

22  

23  during the relevant time period, "flat-screen TVs were just coming

24  into the mainstream, but some of these early models weren't very

25

26

27

28

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 47 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 11 of 14   Page ID
#:6429

1   good.  This is why [Plaintiff] purchased and returned a number of

2   flat-screen TVs to Circuit City."[5]  (David Decl. at ¶2.)

3       The new declaration also again describes Plaintiff's

4   motivation for conducting the Godfrey transaction.  Plaintiff

5   states that "[t]he purpose of the transaction was to help

6   [Plaintiff's] friend get the best TV at the best price."  (David

7   Decl. ¶ 7.)  Chase argues that this statement is intended to avoid

8   summary judgment by contradicting Plaintiff's prior testimony, and

9

10  should be stricken.  (Reply at 3.)  A party may not, however,

11  create an issue of fact by contradicting prior deposition

12  testimony.  Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th

13  Cir. 2009); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266

14  (9th Cir. 1991).  The court may, therefore, strike contradictory,

15  sham affidavits intended to avoid summary judgment.  Id. at 267.

16  Plaintiff's new statement regarding his motivation for engaging in

17  the Godfrey transaction, however, does not contradict his

18  deposition testimony.  Plaintiff originally testified that he

19  bought the TV to help Godfrey get the best product at the best

20  price (Davis Depo. at 93:1-2.)  Plaintiff also originally

21

22  testified, consistent with his more recent declaration, that he

23  was reimbursed for the purchase and expected to receive Circuit

24  City Rewards Points.  (Id. at 93.)

25       [5] Plaintiff points to no specific evidence, whether in credit
    card statements or elsewhere, showing that he returned any
26  televisions.  While it appears that Plaintiff did return at least
    one TV (Escarez Decl., Ex. 2 at CHAJUN 174), the court notes that
27  it is not the court's task "to scour the record in search of a
    genuine issue of triable fact."  Keenan, 91 F.3d at 1278.
28

11

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 48 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 12 of 14   Page ID
#:6430

1   There exists a genuine dispute of material fact concerning

2   Plaintiff's purpose in entering into the Godfrey transaction and

3   other television and electronics purchases.   Chase has presented

4   evidence that Plaintiff operated an electronics consulting

5   business, purchased many televisions and other electronics in a

6   short time period, and received cash for at least one TV that

7   Plaintiff purchased, but never possessed.   Plaintiff has presented

8   evidence that he never received compensation of any kind from

9   Godfrey, that he simply deposited the cash he received into a

10  checking account and used it to pay his credit card bill (Davis

11  

12  Decl. ¶ 7), bought the TV for Godfrey simply to help a friend get

13  a good deal, and bought ten or more TVs because some of them

14  "weren't very good."   (Id. ¶ 2.)   Whether Plaintiff's explanations

15  are credible is a question reserved for a trier of fact.

16          2.   Implied Covenant

17      Chase also argues that Plaintiff's Fourth Cause of Action for

18  Breach of the Implied Convenant of Good Faith and Fair Dealing is

19  duplicative of the Third Cause of Action for Breach of Contract.

20  (Mot. At 17.)   Because, Chase argues, the parties made an express

21  agreement regarding payment structure and allocations, the implied

22  covenant claim is duplicative of Plaintiff's breach of contract

23  claim.   (Id.)   The court agrees.   Plaintiff's opposition on this

24  issue explains how and why Chase's allocation scheme was a breach

25  of the Agreement's terms.   (Opp. at 13-17.)   Given the apparent

26  conflict between the payment allocation clause of the Agreement

27  

28

12

304

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 49 of 75
Case 2:06-cv-04804-DDP-PJW   Document 291   Filed 01/16/13   Page 13 of 14   Page ID
#:6431

1   and the promotional purchase language, the meaning of the contract

2   has yet to be determined.   That question of contract

3   interpretation is not presently before the court.   Nevertheless,

4   it is clear that the contract does govern the substance of

5   Plaintiff's good faith and fair dealing claim.   "[W]here breach of

6   an actual term is alleged, a separate implied covenant claim,

7   based on the same breach, is superfluous." Guz v. Bechtel Nat.

8   Inc., 24 Cal. 4th 327, 327 (Cal. 2000).[6]   Accordingly, the court

9   grants Chase's motion for summary judgment with respect to the

10   Fourth Cause of Action.

11

12      B.   Class Certification

13      In light of the above discussion of questions of disputed,

14   material fact at issue here, Plaintiff's Motion for Class

15   Certification must be denied.   The factual circumstances

16   surrounding Plaintiff's purchases are so atypical as to fall below

17   the normally permissive standard of Rule 23(a)'s typicality

18   requirement.   See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019

19   (9th Cir. 1998).   Furthermore, questions regarding Plaintiff's

20   individual circumstances are likely to predominate over factual

21   questions common to the class. Fed. R. Civ. P. 23(b)(3).

22

23   **IV.   Conclusion**

24      For the reasons stated above, Defendant's Motion for Summary

25   Judgment is GRANTED in part and DENIED in part.   The court GRANTS

26

27      [6] This court previously ruled that California law applies to

28   this matter.   (Dkt. No. 42.)

13

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 50 of 75
Case 2:06-cv-04804-DDP-PJW    Document 291    Filed 01/16/13    Page 14 of 14    Page ID
#:6432

1  summary judgment with respect to the Fourth Cause of Action for

2  Breach of the Implied Covenant of Good Faith and Fair Dealing.    In

3  all other respects, Defendant's Motion for Summary Judgment is

4  DENIED.    Plaintiff's Motion for Class Certification is DENIED.[7]

5

6

7

8

9  IT IS SO ORDERED.

10

11

12  Dated: January 16, 2013

13                                      DEAN D. PREGERSON
                                        United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
      [7] Having determined that Plaintiff cannot satisfy the
    typicality or predominance of fact requirements under Rule 23, the
28  court does not reach the remaining class certification factors.

14

306

# EXHIBIT H

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 52 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 1 of 27   Page ID #:7354

1   Drew E. Pomerance, Esq. (SBN. 101239), dep@rpnalaw.com
2   Burton E. Falk, Esq. (SBN. 100644), bef@rpnalaw.com
    David R. Ginsburg, Esq. (SBN. 210900), drg@rpnalaw.com
3   ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
4   5820 Canoga Avenue, Suite 250
    Woodland Hills, California 91367
5   Telephone:  (818) 992-9999
6   Facsimile:   (818) 992-9991

7   [Additional Counsel Continued On Next Page]

8
    Attorneys for Plaintiff GENE CASTILLO,
9   individually, and on behalf of
10  all others similarly situated

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

| GARY DAVIS, an individual; on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CHASE BANK U.S.A., N.A., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. CV 06 4804 DDP (PJWx)<br><br>Honorable Dean D. Pregerson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Declarations of Drew E. Pomerance, Jeff S. Westerman, Nicole D. Fricke, and Wyatt Lim-Tepper, and Motion for Attorneys' Fees and Expenses and Service Awards Filed Concurrently]**<br><br>**Date:**    **October 27, 2014**<br>**Time:**    **11:00 a.m.**<br>**Courtroom:**    **3** |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 53 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 2 of 27   Page ID #:7355

1  Jeff Westerman, Esq. (SBN. 94559)
2  jwesterman@jswlegal.com
   **WESTERMAN LAW CORP.**
3  1900 Avenue of the Stars, 11th Floor
4  Los Angeles, California 90067
   Telephone: (310) 698-7450
5  Facsimile:  (310) 775-9777

6
   Nicole Duckett Fricke, Esq. (SBN. 198168)
7  ndfricke@milberg.com
8  **MILBERG, LLP**
   One California Plaza
9  300 South Grand Avenue, Suite 3900
10 Los Angeles, California 90071
   Telephone: (213) 617-1200
11 Facsimile: (213) 617-1975
12

13
   Attorneys for Plaintiff
14 GENE CASTILLO, individually,
   and on behalf of all others similarly situated
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 54 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 3 of 27    Page ID #:7356

# <u>**TABLE OF CONTENTS**</u>

I.     INTRODUCTION .................................................................. 1

II.    BACKGROUND OF THE CASE ............................................. 2

    A.    The Allegations ........................................................ 2

    B.    Procedural History .................................................. 3

    C.    Mediation and Settlement ...................................... 4

III.   THE SETTLEMENT ............................................................ 5

IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL ....................... 7

    A.    Standards for Final Approval ................................ 7

        1.    Plaintiff Has Engaged In Sufficient Discovery and Investigation to Property Evaluate the Propriety of Settlement ................................................ 8

        2.    The Strength of Plaintiff's Case, When Balanced Against the Risk, Expense and Duration of Further Litigation, Supports Approval of This Settlement ........................ 8

        3.    The Recommendations of Experienced Counsel Favor the Approval of Settlement ................................ 10

V.     CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER .......... 11

    A.    The Settlement Class Is So Numerous That Joinder of All Settlement Class Members Is Impracticable ................ 12

    B.    Common Questions of Law and Fact ........................ 12

    C.    Plaintiff's Claims Are Typical of Those of the Settlement Class .... 13

    D.    The Adequacy Requirement Is Satisfied .................... 14

    E.    The Settlement Class Satisfies Rule 23(b)(3) .............. 15

        1.    Common Questions of Law and Fact Predominate .......... 15

        2.    A Class Action Is Superior to Other Available Methods For Resolving this Controversy ............................ 16

VI.    CONCLUSION ................................................................... 17

i

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 55 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 4 of 27   Page ID #:7357

# TABLE OF AUTHORITIES

## Cases

*Amchem Products v. Windsor*
    521 U.S. 591 (1997)........................................................................ 11

*Arnold v. United Artists Theater Circuit, Inc.*
    158 F.R.D. 439 (N.D. Cal. 1994) ............................................... 12

*Blackie v. Barrack*
    524 F.2d 891(9th Cir. 1975) ....................................................... 15

*Blackwell v. Sky West Airlines*
    245 F.R.D. 453 (S.D. Cal. 2007) ............................................... 12

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ................................................... 11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .........................................7, 12, 13, 14

*Harris v. Palm Springs Alpine Estates, Inc.*
    329 F.2d 909 (9th Cir. 1964) ..................................................... 12

*Hernandez v. Alexander*
    152 F.R.D. 192 (D. Nev. 1993) ................................................. 15

*In re Apple iPod iTunes Antitrust Litigation*
    2008 WL 5574487 (N.D. Cal. 2008) ......................................... 14

*In re Juniper Networks, Inc. Securities Litigation*
    264 F.R.D. 584 (N.D. Cal. 2009) .............................................. 17

*In Re Mego Financial Corporation Securities Litigation*
    213 F.3d 454 (9th Cir. 2000) ....................................................... 9

*In Re Washington Public Power Supply Systems Securities Litigation*
    720 F. Supp. 1379 (D. Ariz. 1989) ........................................... 11

*Lowden v. T-Mobile USA, Inc.*
    512 F.3d 1213 (9th Cir. 2008) ................................................... 16

ii

311

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 56 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 5 of 27   Page ID #:7358

1  *Lubin v. Sybedon Corp.*
2      688 F.Supp. 1425 (S.D. Cal. 1988) ........................................ 15
3  *Mejdreck v. Lockformer Co.*
4      2002 WL 1838141 (N.D. Ill. 2002) ........................................ 17
5  *Miletak v. Allstate Ins. Co.*
6      2010 WL 809579 (N.D. Cal. 2010) ........................................ 16
7  *Moore v. Fitness Intern., LLC*
8      2013 WL 3189080 (S.D. Cal. 2013) ........................................ 12
9  *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*
10      221 F.R.D. 523 (C.D. Cal. 2004) ........................................ 11
11  *Officers for Justice v. Civil Serv. Comm'n*
12      688 F.2d 615 (9th Cir. 1982) ........................................ 7
13  *Schaefer v. Overland Express Family of Funds*
14      169 F.R.D. 124 (S.D. Cal. 1996) ........................................ 14
15  *Staton v. Boeing Co.*
16      327 F.3d 938 (9th Cir. 2003) ........................................ 13
17  *Stolz v. United Brotherhood of Carpenters and Joiners, et al.*
18      620 F.Supp. 396 (D. Nev. 1985) ........................................ 13
19  *Torrisi v. Tucson Elec. Power Co.*
20      8 F.3d 1370 (9th Cir. 1993) ........................................ 7
21  *Util. Reform Project v. Bonneville Power Admin.*
22      869 F.2d 437 (9th Cir. 1989) ........................................ 7
23  *Valentino v. Carter-Wallace, Inc.*
24      97 F.3d 1227 (9th Cir. 1996) ........................................ 16
25
26
27
28

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. CV 06 4804 DDP (PJWx)

312

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 57 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 6 of 27   Page ID #:7359

1

**Statutes**

2

Business & Professions Code § 17200 ........................................................ 2

3

Business & Professions Code § 17500 ........................................................ 2

4

5

**Rules**

6

Federal Rule of Civil Procedure 23 .................................. 7, 12, 13, 15, 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. CV 06 4804 DDP (PJWx)

313

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 58 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 7 of 27    Page ID #:7360

1    PLEASE TAKE NOTICE that on October 27, 2014 at 11:00 a.m., or as

2  soon thereafter as the matter may be heard before the Honorable Dean D.

3  Pregerson in Courtroom 3 of the above-entitled court, located at 312 North Spring

4  Street, Los Angeles, California, Plaintiff Gene Castillo will move this Court for an

5  order: (1) granting final approval of the settlement in this case; (2) approving the

6  terms of the settlement as set forth in the Stipulation and Agreement of Settlement

7  filed on April 23, 2014, and for which preliminary approval was granted on June 5,

8  2014; and (3) certifying the class for settlement purposes.

9    Defendant Chase Bank U.S.A., N.A. (Chase) does not oppose this motion,

10  which is being made following conferences between counsel earlier this year,

11  pursuant to L.R. 7-3.

12    This motion is based on this notice and motion, the accompanying

13  memorandum of points and authorities, the declarations of Drew E. Pomerance,

14  Nicole D. Fricke, Jeff S. Westerman, and Wyatt Lim-Tepper, and documents

15  attached thereto, all the matters of record filed with the Court, and such other

16  evidence and argument as may be submitted to the Court.

17

18  DATED: August 29, 2014        ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP

19                    By:   s/ Drew E. Pomerance
                        DREW E. POMERANCE
20                        BURTON E. FALK
                      Attorneys for Plaintiff
21                    GENE CASTILLO, individually,
                      and on behalf of all others similarly situated
22

23

24

25

26

27

28

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 59 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 8 of 27    Page ID #:7361

1  DATED: August 29, 2014          WESTERMAN LAW CORP.

2

3                                    By:    s/ Jeff Westerman
                                           JEFF WESTERMAN
4                                          Attorneys for Plaintiff
                                           GENE CASTILLO, individually,
5                                          and on behalf of all others similarly situated

6

7  DATED: August 29, 2014          MILBERG LLP

8                                    By:    s/ Nicole Duckett Fricke
                                           NICOLE DUCKETT FRICKE
9                                          Attorneys for Plaintiff
                                           GENE CASTILLO, individually,
10                                         and on behalf of all others similarly situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 60 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 9 of 27    Page ID #:7362

I.     **INTRODUCTION**

The settlement reached in this case is the result of an eight year litigation odyssey involving extensive investigation, analysis and discovery, multiple and complex motion work, an appeal to and decision from the Ninth Circuit, three formal mediation sessions, and hard fought negotiations by experienced arm's length counsel. On June 5, 2014, the Court granted preliminary approval of the Stipulation and Agreement of Settlement (Settlement) filed on April 23, 2014, and approved the proposed notice program. *See* Court's Preliminary Approval Order dated June 5, 2014 (Docket No. 340.)

The terms of the settlement more than meet the requirements for final approval. Chase has agreed to pay $5.5 million in <u>cash benefits</u> to resolve this matter, including direct payments to specified Settlement Class Members who need not file a claim. The class action alleged that Chase misled consumers and failed to properly apply its customers' payments first to regular balance purchases before promotional purchases. The result was that class members were wrongly assessed finance charges on those purchases.

This settlement pays real cash benefits back to class members and compensates them for some of the finance charges that Chase assessed against them. The settlement is the result of extensive negotiations that continued on and off for the past four years, substantial discovery, investigation, and analysis to verify the size and extent of the potential class, the potential damages the Class members incurred, as well as a thorough analysis of Plaintiff's legal theories and Chase's defenses – both on the merits and having to do with class certification issues. The parties also twice mediated the dispute before the Honorable Edward Infante, Ret., who helped broker the terms of the Settlement. Judge Infante is a former U.S. Magistrate Judge and respected mediator with significant experience in mediating large, complex class actions like this.

As set forth below, the settlement is fair, reasonable and adequate, and in

1

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 61 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 10 of 27    Page ID
#:7363

1  the best interest of the Settlement Class.  Therefore, final approval should be

2  granted.

3  **II.    BACKGROUND OF THE CASE**

4      **A.    The Allegations**

5          Gary Davis filed this putative class action complaint on June 26, 2006,

6  alleging that Chase misled and deceived consumers in the manner in which it

7  applied credit card payments to promotional purchases made at Circuit City.

8  Mr. Davis alleged causes of action for violation of the Consumers Legal

9  Remedies Act, violation of Business & Professions Code §17200, violation of

10 Business & Professions Code §17500, fraud and deceit, breach of contract, breach

11 of the implied covenant of good faith and fair dealing, and unjust enrichment.  The

12 class action sought restitution and compensatory damages.

13          The basis of the lawsuit is the allegation that Chase engaged in a deceptive

14 and unfair business practice of misrepresenting a promotional purchase program

15 and then misallocating payments made by customers participating in the program.

16 The lawsuit alleged that this resulted in customers not only failing to receive the

17 benefit of Chase's promotional offer, but also being wrongly assessed finance and

18 interest charges in violation of Chase's cardmember agreement.

19          The class action alleged Chase marketed promotional rewards card

20 purchases at Circuit City as "interest free" (or some variant thereof) but charged

21 California credit cardholders interest and fees for those purchases.  (First

22 Amended Complaint (FAC), ¶ 1, Docket No. 91.)  The class action asserted that

23 Chase improperly applied credit card payments to the "interest free" promotional

24 balances that were not due before applying them to interest-bearing, non-

25 promotional balances, causing consumers to incur interest and fees they otherwise

26 would not have and in direct contradiction to Chase's advertising and its

27 cardmember agreement.  (Id. at ¶¶ 1, 20-25.)

28

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 62 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 11 of 27    Page ID
#:7364

## B.    Procedural History

After the June 2006 filing of the case in state court, Defendants removed the action to this Court in August 2006. (Docket No. 1.) After addressing removal and remand issues, the case was stayed for approximately 21 months due to an appeal of the Court's determination that Chase's arbitration clause and class action waiver provisions in its cardmember agreements were unenforceable under California law. This Court's determination was eventually affirmed by the Ninth Circuit. (Docket No. 80.) Around that time, the claims against Circuit City were withdrawn due to its bankruptcy. (Docket No's. 79, 91.)

On March 17, 2009, a First Amended Complaint was filed. (Docket No. 91.) On September 3, 2009, the Court dismissed the Unfair Competition Law claim to the extent it challenged the allocation of payments apart from the way that allocation intersects with deceptive advertising. (Docket No. 112.) The Court subsequently dismissed the Consumers Legal Remedies Act claim, and determined that Chase is not liable for any claims related to conduct prior to Chase's May 25, 2004 acquisition of the credit card assets at issue in the case. (Docket No's. 167, 203.) On January 16, 2013, the Court granted summary judgment on the breach of the implied covenant of good faith and fair dealing claim. (Docket No. 291.) Accordingly, the two claims that remain are breach of contract and a limited claim for violation of the Unfair Competition Law.

The Court also denied the Motion for Class Certification on January 16, 2013. (Docket No. 291.) The denial was based on the Court's finding that the "factual circumstances surrounding [Gary Davis'] purchases are so atypical as to fall below the normally permissive standard of Rule 23(a)'s typicality requirement." The Court found that "questions regarding [Gary Davis'] individual circumstances are likely to predominate over factual questions common to the class." (Docket No. 291.)

Gene Castillo subsequently moved for an order granting leave to file a

3

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 63 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 12 of 27    Page ID
#:7365

1    complaint in intervention. Mr. Davis moved simultaneously, and in the

2    alternative, for leave to file a second amended complaint adding Gene Castillo as

3    a party Plaintiff. (Docket No. 293.) Chase moved to dismiss the entire case as

4    moot. (Docket No. 296.) The Court vacated the hearings on these motions when

5    it granted preliminary approval of the Settlement and set a final approval hearing

6    for October 27, 2014. (Docket No. 339.)

7       **C.**    **Mediation and Settlement**

8       The parties initially participated in private mediation on June 18, 2009.

9    (Declaration of Drew E. Pomerance (Pomerance Decl.), ¶ 2.) A second mediation

10    with a different neutral, the Honorable Edward Infante, Ret., took place on

11    November 16, 2011. The parties remained unable to resolve the litigation.

12    (Pomerance Decl., ¶ 3.)

13       Following the Court's denial of the Motion for Class Certification, the

14    parties participated in a third mediation on October 22, 2013. This mediation was

15    again held with Judge Infante. (Pomerance Decl., ¶ 4.) Drew E. Pomerance of

16    Roxborough, Pomerance, Nye & Adreani, LLP and Jeff Westerman of Westerman

17    Law Corp., attended on behalf of the class, while Chase was represented by its

18    attorneys, Julia Strickland and Stephen Newman of Stroock & Stroock & Lavan,

19    LLP. Also attending the mediation on behalf of Chase were several of its

20    authorized representatives. (Pomerance Decl., ¶ 5.) The mediation session lasted

21    all day, and resulted in a tentative agreement which was subject to confirmatory

22    discovery whereby Chase would have to verify under oath the size of the

23    Settlement Class, the amount of finance charges that Plaintiff contends were

24    improperly charged and collected by Chase, and the period of time in which the

25    promotional purchases were made. (Pomerance Decl., ¶ 6.)

26       Chase produced a detailed declaration under penalty of perjury from

27    Suzanne Morgan, a Risk Director in Chase's Risk Department who has worked

28    for Chase or its predecessor Bank One since 1997. Ms. Morgan is familiar with

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 64 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 13 of 27   Page ID
#:7366

1   and oversaw the compilation of data that produced information necessary for

2   Class Counsel to evaluate the reasonableness of the settlement. (Pomerance Decl.,

3   ¶ 7.) After carefully evaluating Ms. Morgan's declaration, Class Counsel

4   determined that the existing deal adequately compensates the Settlement Class.

5   (Pomerance Decl., ¶ 8.) The parties then formalized and finalized a settlement

6   agreement.

7         The settlement agreement calls for Chase to establish a settlement fund

8   totaling $5.5 million. (Pomerance Decl., ¶ 9.) Class Counsel remain confident

9   that they have properly evaluated the risks of further prosecuting this class action

10  as compared to the benefits of the Settlement preliminarily approved by the Court,

11  and as well have appropriately evaluated the reasonableness of the benefits that

12  will be going to the Settlement Class. (Pomerance Decl., ¶ 10.)

13        Given the substantial delays resulting from further prosecution of this

14  lawsuit, Chase's likely renewal of its motion to dismiss if the Settlement is not

15  approved, the Court's denial of the Motion for Class Certification, and the serious

16  and fundamental question of whether the Settlement Class would ever prevail on

17  the merits, Class Counsel is confident that the Settlement is more than fair and

18  reasonable, and that final approval should be granted by the Court. (Pomerance

19  Decl., ¶ 11.)

20  **III.   THE SETTLEMENT**

21        The Settlement reached by the parties provides real and tangible benefits to

22  the Settlement Class, and as such, more than meets the standards required to be

23  deemed fair and reasonable. This is an <u>all cash</u> settlement, and does <u>not</u> involve

24  the provision of coupons whatsoever. If approved, the key terms of the settlement

25  are as follows:

26        (a)   Chase will contribute $5.5 million for the benefit of the Settlement

27              Class (Pomerance Decl., ¶ 12; Exhibit (Exh.) 2, Settlement

28              Agreement, §4.1.);

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 65 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 14 of 27    Page ID
#:7367

(b)    All Settlement Class Members for whom the settlement administrator is able to determine a valid address shall receive a direct payment. (Exh. 2, §§ 4.4-4.6.) <u>These class members need not make a claim or do anything in order to receive payment.</u> Based on confirmatory discovery provided prior to preliminary approval, there were approximately 439,000 Settlement Class Members who were eligible to receive direct payments. (Pomerance Decl., ¶ 13.)[1] The discovery had also disclosed that this group incurred an average finance charge of approximately $40.33. (Pomerance Decl., ¶ 14.) The direct payments were therefore calculated to be approximately $10 each. (Pomerance Decl., ¶ 15.) Thus, this group is set to receive back approximately 25% of the average finance charge. (Pomerance Decl., ¶ 16.);

(c)    Chase has agreed, subject to this Court's approval, to pay service awards to Plaintiff Gene Castillo and Gary Davis in amounts not to exceed $5,000 each, to compensate them for their time and effort in prosecuting this case (Exh. 2, §5.1.);

(d)    Chase has also agreed, subject to court approval, not to oppose Class Counsel's fee request up to $1.5 million – **which represents about 27% of the $5.5 million common fund.** (Exh. 2, §5.1.) The attorneys' fees were negotiated <u>separately from and after</u> the parties reached their agreement on the benefits going to the Class (Pomerance Decl., ¶ 17.);

(e)    Costs of notice and administration are to be deducted from the settlement fund. (Exh. 2, §§4.2, 4.4.)

---

[1] There were 438,969 class notices subsequently mailed out by the claims administrator.

6

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 66 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 15 of 27   Page ID
#:7368

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this one. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

### A. Standards for Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis. In *Officers for Justice*, the Ninth Circuit set forth the factors the trial court should consider in assessing whether a proposed settlement is fair, reasonable, and adequate.

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate, and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial, the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 67 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 16 of 27    Page ID
#:7369

1.  **Plaintiff Has Engaged In Sufficient Discovery and Investigation to Properly Evaluate the Propriety of Settlement**

As a result of extensive negotiations and discovery, counsel have been able to fairly and properly evaluate the risks of litigation and the propriety of this Settlement. In addition to formal discovery over the course of several years, Class Counsel also conducted a thorough investigation and analysis of data that was voluntarily supplied under oath by Chase's authorized representative. The information Class Counsel received from Chase through both formal and informal discovery was detailed, thorough, and directly responsive to Class Counsel's inquiries. (Pomerance Decl., ¶¶ 18-20.)

After analyzing the discovery, Class Counsel persisted in asking follow up questions which Chase answered. In addition to carefully studying the information obtained through formal and informal confirmatory discovery, Class Counsel have also carefully evaluated the legal issues, including the Court's denial of the Motion for Class Certification, the potential that the Court may grant Chase's motion to dismiss, and the likelihood of prevailing on the merits. (Pomerance Decl., ¶ 21.)

Class Counsel therefore believes that they have sufficiently analyzed both the liability and damages information necessary to properly evaluate the propriety of the Settlement. Based on this analysis, Class Counsel have determined that a settlement of $5.5 million is fair, reasonable, and adequate, and in the best interest of the Settlement Class. (Pomerance Decl., ¶ 22.)

2.  **The Strength of Plaintiff's Case, When Balanced Against the Risk, Expense and Duration of Further Litigation, Supports Approval of This Settlement**

This Settlement is well within the range of possible approval. The Court has denied the Motion for Class Certification. In most such cases that would be

8

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 68 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 17 of 27    Page ID
#:7370

1    the end.  Any potential settlement on behalf of a class would be highly

2    improbable.  Despite this, efforts were made to bring in another class

3    representative.  While these efforts were underway, Chase moved to dismiss the

4    case on the grounds that the case is now moot.  While the Court vacated the

5    hearing on that motion when it granted preliminary approval of the Settlement, it

6    is entirely possible that the Court may grant Chase's motion to dismiss if the

7    Settlement is not finally approved and Chase renews its motion.  In that event, the

8    Settlement Class would get nothing.

9         In addition, even if the Court were to deny Chase's motion to dismiss,

10   several obstacles remain to the Settlement Class prevailing on the merits at trial.

11   A substantial risk will remain that the class will not be certified.  For example,

12   Chase has argued and will undoubtedly continue to argue that the circumstances

13   surrounding each particular transaction, including the possible violation of the

14   terms of the cardmember agreement by cardholders, will result in individualized

15   issues.

16        Finally, even if the class were certified, it is far from certain that the class

17   would prevail on the merits.  Chase has vigorously disputed Plaintiff's claims on

18   the merits.  Chase contends that its cardmember agreement and other materials

19   expressly allowed it to allocate payments to lower-interest balances before higher-

20   interest balances.  And, just getting to a trial on the merits could take up to several

21   years more, on top of the eight years that the case has thus far proceeded.  Final

22   approval of the Settlement eliminates the risks associated with continuing

23   litigation, including possible outright dismissal, as well as the substantial risk of

24   no recovery after several more years of litigation.

25        The immediacy and certainty of recovery is a factor for the court to balance

26   in determining whether the proposed settlement is fair, adequate and reasonable.

27   *See In Re Mego Financial Corporation Securities Litigation*, 213 F.3d 454, 458

28   (9th Cir. 2000).  Hence, the present Settlement must be balanced against the

9

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 69 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 18 of 27   Page ID
#:7371

1   expense, risk and delay of achieving a more favorable result at trial.

2        Approval of the Settlement means a present, tangible and significant

3   recovery for the Settlement Class.  The benefits are all cash – no coupons

4   whatsoever.  Individuals were billed on average approximately $40.33 in improper

5   finance charges, and most of the Settlement Class Members (if the Settlement is

6   approved) will receive approximately $10, without needing to file a claim form or

7   dig up records, which in some cases may be a decade old.  The Settlement Class

8   Members, of which there are approximately 439,000, will be receiving about 25%

9   of their total claimed damages on a completely risk free basis, without any further

10   delay, and without further risk of dismissal of the entire case.

11        Absent the Settlement, the case will likely proceed with a hearing on

12   Chase's motion to dismiss, Gary Davis' motion for leave to amend, and Gene

13   Castillo's motion to intervene.  Additional discovery will proceed, if allowed by

14   the Court, and yet another motion for class certification will take place.  If that is

15   granted, more rounds of motions to dismiss and for summary judgment are

16   expected.  While Class Counsel believes they have well-founded arguments in

17   support of their claims, there is no question that final approval of settlement at this

18   time ensures an immediate and substantial recovery for Settlement Class Members

19   with no further risk whatsoever.

20       **3.**    **The Recommendations of Experienced Counsel Favor the**

21           **Approval of Settlement**

22        Class Counsel have concluded that the settlement is fair, reasonable, and

23   adequate after carefully considering and evaluating, among other things, the

24   relevant legal authorities and the substantial data and information provided by

25   Chase, as well as evaluating the likelihood of prevailing on the merits, the risks,

26   expense and duration of continued litigation, and the likely appeals and

27   subsequent proceedings necessary if Plaintiff did prevail against Chase at trial.

28   There is no question the Settlement is fair, reasonable, and adequate, and in the

10

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 70 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 19 of 27   Page ID
#:7372

1  best interest of the Settlement Class.

2      Due to Class Counsels' extensive efforts over an eight year period on the

3  Settlement Class' behalf and the settlement achieved, Class Counsel have

4  provided fair and adequate representation to the Settlement Class.  Class Counsel

5  have significant experience in complex class action litigation and have negotiated

6  numerous other substantial class action settlements throughout the country.

7  Where, as here, the settlement is the product of serious, informed, non-collusive

8  negotiations, significant weight should be attributed to the belief of experienced

9  Class Counsel that settlement is fair, reasonable, and adequate, and in the best

10  interest of the Settlement Class.  *See National Rural Telecommunications*

11  *Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (finding

12  that "'great weight' is accorded to the recommendation of counsel, who are most

13  closely acquainted with the facts of the underlying litigation."); *In Re Washington*

14  *Public Power Supply Systems Securities Litigation*, 720 F. Supp. 1379, 1392 (D.

15  Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

16  1296 (9th Cir. 1992).

17  **V.**    **CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER**

18      The parties have stipulated to class certification for settlement purposes

19  only.  (Pomerance Decl., ¶ 12; Exh. 2, §3.1.)  The Supreme Court has expressly

20  approved the use of a settlement class.  *See Amchem Products v. Windsor*, 521

21  U.S. 591, 620 (1997).  Plaintiff requests that the court enter an order certifying a

22  class for settlement purposes, defined as follows:

23          All Chase Circuit City Rewards Credit Cardmembers with

24          California billing addresses who, between May 26, 2004 and

25          the entry of preliminary approval of this Settlement (inclusive),

26          made a promotional or deferred-interest purchase at Circuit

27          City and who, as a result of payments or credits being allocated

28          to a regular purchase balance after the promotional or deferred-

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 71 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 20 of 27    Page ID
#:7373

1    interest balance, paid more in finance charges than they would

2    have paid if the payments or credits had first been applied to

3    the regular purchase balance.

4        The agreed upon Settlement Class satisfies all requirements of Federal Rule

5    of Civil Procedure 23(a) and (b)(3).

6        **A.**    **The Settlement Class Is So Numerous That Joinder of All**

7           **Settlement Class Members Is Impracticable**

8        Rule 23(a)(1) requires a class be so numerous that joinder of all class

9    members is "impracticable." That phrase does not require that joinder be

10    impossible, only that it would be difficult or inconvenient to join all class

11    members. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th

12    Cir. 1964). There is no fixed number of class members that either compels or

13    precludes class certification. *Arnold v. United Artists Theater Circuit, Inc.*, 158

14    F.R.D. 439, 448 (N.D. Cal. 1994).

15        Here, there is no question that the Settlement Class satisfies the numerosity

16    requirement. Notices have been mailed out to 438,969 Settlement Class

17    Members, and obviously joinder would be highly impracticable.

18        **B.**    **Common Questions of Law and Fact**

19        Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of

20    law or fact common to the class. A common nucleus of operative facts suffices to

21    satisfy the commonality requirement. *See Moore v. Fitness Intern., LLC,* 2013

22    WL 3189080, 5 (S.D. Cal. 2013); *Hanlon,* 150 F.3d at 1019-1020. Rule 23's

23    "commonality" requirement is not particularly rigorous. Indeed "one significant

24    issue common to the Class may be sufficient to warrant certification . . . the

25    necessary showing to satisfy commonality is minimal." *Blackwell v. Sky West*

26    *Airlines,* 245 F.R.D. 453, 460 (S.D. Cal. 2007).

27        Here, there are numerous questions of fact and law that would satisfy Rule

28    23(a)(2), including:

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 72 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 21 of 27    Page ID
#:7374

1.   Whether Chase's payment allocation policy breached the terms of the cardmember contract when Chase gave priority of payment to promotional items that were not yet due or owing;

2.   Whether Chase's allocation of payments violates the Unfair Competition Law because it is contrary to the advertisements used to promote the promotional purchases;

3.   Whether Chase's allocation of payments violates the Unfair Competition Law because it is contrary to the cardmember contract;

4.   Whether Chase's payment allocation policy was applied in a uniform and consistent manner to the Settlement Class as a whole.

Underlying these basic common questions is a common nucleus of operative facts pertaining to Chase's marketing of its Circuit City Rewards Card promotional purchases, and how it allocated its customers' payments on the card. Thus, the Settlement Class satisfies the commonality requirement of Federal Rule of Civil Procedure 23(a).

### C.    Plaintiff's Claims Are Typical of Those of the Settlement Class

"Representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *accord Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Rule 23(a)(3) requires only that there be no express conflict between the representative parties and the class over the very issue in litigation and that the representative's interests are not antagonistic to those of the class. *Stolz v. United Brotherhood of Carpenters and Joiners, et al.*, 620 F.Supp. 396, 404 (D. Nev. 1985).

While this Court recently determined that Gary Davis could not represent a class if the class were to be certified in a ruling by the Court, Chase has stipulated and agreed, for purposes of certifying a settlement class, to Plaintiff Gene Castillo

13

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 73 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 22 of 27    Page ID
#:7375

1   serving as the class representative, and to his adequacy to serve in that capacity.

2   (Exh. 1, § 3.1.) The typicality requirement is satisfied here through Plaintiff Gene

3   Castillo serving as class representative because he and the Settlement Class

4   Members alleged the same set of operative facts. Mr. Davis is still a putative

5   member of the Settlement Class. They and every putative Settlement Class

6   Member made a promotional or deferred-interest purchase at Circuit City and had

7   their payments or credits allocated to a regular purchase balance after the

8   promotional or deferred-interest balance, which resulted in more finance charges

9   than they would have paid if the payments or credits had first been applied to the

10  regular purchase balance. There is no dispute that the class representative falls

11  directly within these allegations, and thus satisfies the typicality requirement.

12          **D.      The Adequacy Requirement Is Satisfied**

13          Rule 23(a)(4) requires "the representative parties will fairly and adequately

14  protect the interests of the class." Courts have established a two-prong test for

15  this requirement. *See, e.g., In re Apple iPod iTunes Antitrust Litigation*, 2008 WL

16  5574487, 6 (N.D. Cal. 2008) (citing *Hanlon*, 150 F.3d at 1020); *Schaefer v.*

17  *Overland Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996). First,

18  counsel for the class representative must be competent to undertake the particular

19  litigation at hand. Second, there can be no antagonism or disabling conflict

20  between the interests of the named class representative and the members of the

21  class. *See Hanlon*, 150 F.3d at 1020.

22          Plaintiff's claims do not conflict with the Settlement Class' claims. First

23  Mr. Davis, and now Mr. Castillo, have vigorously pursued common claims on

24  behalf of themselves and all Settlement Class Members. All claims are directed at

25  resolving the issues raised by Chase's allocation of payments to promotional and

26  non-promotional purchases, an issue common to all Settlement Class Members.

27  Mr. Davis' and Mr. Castillo's vigorous pursuit of this litigation confirms their

28  strong interest in achieving a successful result for the Settlement Class. Further,

Case 08-35653-KRH   Doc 13532-4   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 4   Page 74 of 75
Case 2:06-cv-04804-DDP-PJW   Document 342   Filed 08/29/14   Page 23 of 27   Page ID
#:7376

1    Class Counsel have extensive experience in the area of consumer class action

2    litigation, and have successfully prosecuted numerous class actions and other

3    complex litigation on behalf of injured consumers in this District and across the

4    country.  There can be no legitimate dispute that Class Counsel has vigorously and

5    skillfully prosecuted this litigation, securing a settlement that is fair, reasonable,

6    and adequate, and in the best interest of the Settlement Class.  In addition, Chase

7    has stipulated and agreed, for purposes of certifying a settlement class, that

8    Plaintiff Gene Castillo is an adequate class representative.

9         The second requirement also is satisfied here.  There is no antagonism

10   between the representative and the absent Settlement Class Members.  All claims

11   arise from the same set of operative facts and course of conduct, and both Plaintiff

12   and absent Settlement Class Members share the common goal of maximizing

13   recovery.  *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1461 (S.D. Cal. 1988).

14        **E.    The Settlement Class Satisfies Rule 23(b)(3)**

15        In addition to meeting the prerequisites of Rule 23(a), the present action

16   satisfies the requirements of Rule 23(b)(3), which mandates that common

17   questions of law or fact predominate over individual questions and that a class

18   action is superior to other available methods of adjudication.  *See Hernandez v.*

19   *Alexander*, 152 F.R.D. 192, 193-94 (D. Nev. 1993).  Here, common questions of

20   law and fact predominate, and a class action is the superior, if not the only,

21   method available to fairly and efficiently litigate these claims.

22        **1.    Common Questions of Law and Fact Predominate**

23        Where a complaint alleges a common course of misrepresentations,

24   omissions and other wrongdoings that affect all members of the class in the same

25   manner, common questions predominate.  *Blackie v. Barrack*, 524 F.2d 891,

26   905-8 (9th Cir. 1975).  The Court's inquiry should be directed primarily toward

27   the issue of liability.  *Id.* at 902.

28        There are a host of common questions of law and fact, which Plaintiff seeks

15

MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. CV 06 4804 DDP (PJWx)

330

Case 08-35653-KRH    Doc 13532-4    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 4    Page 75 of 75
Case 2:06-cv-04804-DDP-PJW    Document 342    Filed 08/29/14    Page 24 of 27    Page ID
#:7377

1  to certify.  As discussed above, Plaintiff seeks certification for causes of action

2  arising under the Unfair Competition Law, and basic contract law.  Three factual

3  issues bear on these claims: (i) Chase's application of the terms of its cardmember

4  agreement with respect to the allocation of payments when a cardholder made

5  promotional and non-promotional purchases; (ii) Chase's assessment of finance

6  charges based on its allocation of payments; and (iii) whether Chase's actions

7  violated the terms of its contract and were contrary to its advertisements.  These

8  common factual issues predominate over any purported individual factual issues.

9        **2.**     <u>**A Class Action Is Superior to Other Available Methods for**</u>

10            <u>**Resolving this Controversy**</u>

11       Rule 23(b)(3) also requires the Court to determine that "a class action is

12  superior to other available methods for fairly and efficiently adjudicating the

13  controversy."  A class action is superior where "classwide litigation of common

14  issues will reduce litigation costs and promote greater efficiency." *Valentino v.*

15  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

16       The class action vehicle is the superior method for adjudicating relatively

17  low-value consumer claims.  *See, e.g., Miletak v. Allstate Ins. Co.* 2010 WL

18  809579, 13 (N.D.Cal. 2010) ("a class action is superior when it is the only realistic

19  form of adjudication available") (citing *Valentino*, 97 F.3d at 1234-35).  Where

20  "each member's claim is likely too small to be worth pursuing in an individual

21  action . . . a class action may be the only method for providing meaningful

22  recovery." *Miletak* 2010 WL 809579 at 13; *see also Lowden v. T-Mobile USA,*

23  *Inc.* 512 F.3d 1213, 1218 (9th Cir. 2008) ("when consumer claims are small but

24  numerous, a class-based remedy is the only effective method to vindicate the

25  public's rights.")

26       Here, Plaintiff presents class-wide allegations premised on common

27  evidence.  Trying each class claim separately would be inefficient, when each of

28  thousands of cases would allege identical misconduct and offer identical proof of