Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 1 of 56
Case 2:06-cv-04804-DDP-PJW    Document 33251    Filed 08/28/14    Page 584 of 738    Page ID
#:7486

d.    Will not be construed against Chase as an admission or concession that the consideration to be given under the Agreement represents the amount which could be or would have been recovered after trial.

12.    The Released Parties may file the Agreement and/or this Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, set-off or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.    Settlement Class Members, and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are enjoined from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims, provided, however, that this injunction will not apply to non-released claims of Opt-Outs.

14.    The Court finds that the Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

15.    Class Counsel are hereby awarded the sum of $_____ in attorneys' fees and costs, which sum the Court finds to be fair and reasonable, which will be paid to Class Counsel from the Settlement Fund.    The award of attorneys' fees and costs will be allocated among Class Counsel in a fashion which, in the opinion of Class Counsel, fairly compensates Class Counsel for their respective contributions in the prosecution of the Lawsuit.

16.    Plaintiff Gary Davis is hereby awarded $_____ from the Settlement Fund.    Plaintiff Gene Castillo is hereby awarded $_____ from the Settlement Fund.    These service awards are for their time and efforts spent conferring with and assisting Class Counsel to help further the Lawsuit for the benefit of the Settlement Class.

407

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 2 of 56
Case 2:06-cv-04804-DDP-FFJW    Document 3251    Filed 04/28/14    Page 59 of 78    Page ID
#:7287

17.   In making the award of attorneys' fees and costs to Class Counsel and service award to Plaintiffs, the Court has considered and found that:

a.   The Parties entered into arm's-length discussions regarding attorneys' fees for Class Counsel, including extensive discussions through and with the assistance of a third-party mediator, Hon. Edward A. Infante (Ret.);

b.   The Settlement created a benefit with a substantial value to the Settlement Class and numerous Settlement Class Members.

c.   _____ copies of the Postcard Notice were disseminated to putative Settlement Class Members. _____ objections were filed against the terms of the proposed Settlement;

d.   Class Counsel conducted the Lawsuit and achieved the Settlement with skill, perseverance and diligent advocacy;

e.   The Lawsuit involves complex factual and legal issues and was actively prosecuted over seven years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

f.   Had Class Counsel not achieved the Settlement there would remain a significant risk that the Settlement Class may have recovered less or nothing from the defendant;

g.   Class Counsel have devoted over _____ hours, with a lodestar value of over $_____ to achieve the Settlement; and

h.   The amount of attorneys' fees and costs awarded and the amount of the service award to Plaintiffs are fair and reasonable and consistent with awards in similar cases.

18.   Without affecting the finality of this Final Approval Order in any way, this Court retains continuing jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of the Settlement. Class Counsel are to continue in their role to oversee all aspects of the

408

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 3 of 56
Case 2:06-cv-04804-DDP-PJW    Document 334251    Filed 08/22/14    Page 65 of 78    Page ID
#:7488

1     Settlement.  Upon notice to Class Counsel, Chase may seek from this Court, pursuant

2     to 28 U.S.C. § 1651(a), such further orders or process as may be necessary to prevent

3     or forestall the assertion of any of the Released Claims in any other forum, or as may

4     be necessary to protect and effectuate the Settlement and this Final Approval Order.

5          19.    If an appeal, writ proceeding or other challenge is filed as to this Final

6     Approval Order, and if thereafter the Final Approval Order is not ultimately upheld,

7     all orders entered, stipulations made and releases delivered in connection herewith,

8     or in the Agreement or in connection therewith, will be null and void to the extent

9     provided by and in accordance with the Agreement.

10         20.    There is no just reason for delay in the entry of this Final Approval

11     Order and immediate entry by the Clerk of the Court is expressly directed pursuant to

12     Rule 54(b) of the Federal Rules of Civil Procedure.

13

14        IT IS SO ORDERED.

15   Dated: _____     _____

16                                 DEAN D. PREGERSON
                                United States District Court Judge

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

LA 51732215

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 5 of 56
Case 2:06-cv-04843-DDP-FJW    Document 3251    Filed 04/28/14    Page 62 of 78    Page ID
#:7490

[Front]

| **Circuit City Rewards Credit Cardmembers who made promotional or deferred-interest purchases at Circuit City may be entitled to payment under a class action settlement.** | TO |
| :--- | :--- |
| ***THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.  PLEASE READ IT CAREFULLY.*** | [name and address here.] |
| This is an official court notice from the United States District Court for the Central District of California | |

[Inside]

You may be entitled to a payment as part of a proposed $5.5 million cash settlement of a class action if you were or are a Chase or Bank One Circuit City Rewards Credit Cardmember with a California billing address and you made a promotional or deferred-interest purchase at Circuit City between May 26, 2004 and _____ ___, 2014 and, as a result of payments or credits being allocated to a regular purchase balance after the promotional or deferred-interest balance, you paid more in finance charges than you would have paid if the payments or credits had first been applied to the regular purchase balance.

The class action lawsuit alleged that Chase, and before it, Bank One, improperly allocated payments or credits on Circuit City Rewards Credit Cards.  No court has decided which side was right and Chase and Bank One deny that they did anything wrong.  Both sides agreed to the Settlement to resolve the case and provide relief to Settlement Class.

If you wish to remain a part of the Settlement Class and are entitled to a payment, you do not have to do anything, as a check will automatically be mailed to you after the Settlement becomes Final.

If you want to exclude yourself from the Settlement, you must send a written request specifically stating that you request exclusion to _____ *Litigation* Settlement Administrator, P.O. Box ____, CITY, ST ZIP postmarked no later than ____ ___, 2014.  If you do not opt out, you will be bound by this Settlement.

If you remain a Settlement Class Member, you may object to the Settlement by writing to the Court and sending copies to counsel no later than ____ ___, 2014.  Full details on how to object or exclude yourself can be found at www._____.com.

The Court will hold a hearing at the United States District Court, Central District of California, Courtroom #3, 312 Spring Street, Los Angeles, California 90012 on _____, 2014 at 10:00 a.m. to

411

consider whether to approve the settlement and award attorneys' fees, costs and service awards as requested, in an amount not to exceed $1,510,000. You or your lawyer may ask to appear and speak at your own expense, but you do not have to. For further and more detailed information about this settlement and your rights, please review the Long-Form Notice available at www._____.com. Write to _____ *Litigation* Settlement Administrator, P.O. Box _____, CITY, ST ZIP to request the Long-Form Notice. This Notice is only a summary.

*Davis v. Chase Bank USA, N.A.*
United States District Court for the Central District of California, Case No. 2:06-CV-04804-DDP-PJW

LA 51732215

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 7 of 56
Case 2:06-cv-04804-DDP-PJW    Document 33-51    Filed 04/29/14    Page 63 of 78    Page ID
#:7492

# EXHIBIT D

LA 51732215

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 8 of 56
Case 2:06-cv-04804-DDP-PJW    Document 3251    Filed 08/29/14    Page 65 of 78    Page ID
#:7293

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING TO CHASE CREDIT CARDHOLDERS

**This Notice summarizes your rights under the proposed settlement of a class action lawsuit as described below. You are eligible for payment if you were a Chase or Bank One Circuit City Rewards Credit Cardholder with a California billing address who between May 26, 2004 and _____ , 2014 made a promotional or deferred-interest purchase at Circuit City and who, as a result of payments or credits being allocated first to the promotional or deferred-interest balance before the regular purchase balance, paid more in finance charges than you would have paid if the payments or credits had first been applied to the regular purchase balance.**

# THIS NOTICE COULD AFFECT YOUR RIGHTS – PLEASE READ IT CAREFULLY

This Notice is provided to you by order of the United States District Court, Central District of California. This summarizes a proposed settlement of a class action lawsuit titled *Davis v. Chase Bank USA, N.A.,* Case No. 2:06-CV-04804-DDP-PJW (the "Lawsuit"). In the Lawsuit, Gary Davis and Gene Castillo ("Plaintiffs") allege that Chase Bank USA, N.A., and before it, Bank One, Delaware, N.A. (together, "Chase"), improperly allocated payments or credits on Circuit City Rewards Credit Cards. Plaintiffs make these claims on behalf of all Chase credit card account holders in California who between May 26, 2004 and _____ , 2014 made a promotional or deferred-interest purchase at Circuit City and who, as a result of payments or credits being allocated first to the promotional or deferred-interest balance, **before the regular purchase balance**, paid more in finance charges than they would have paid if the payments or credits had first been applied to the regular purchase balance. Chase vigorously denies the allegations, and contends that it fully and adequately disclosed the terms of all promotional rate offers and acted in accordance with its contractual authority.

## Who is a Settlement Class Member?

You are a Settlement Class Member if you were or are a Chase or Bank One Circuit City Rewards Credit Cardholder with a California billing address who made a promotional or deferred-interest purchase at Circuit City and who, as a result of payments or credits being allocated first to the promotional or deferred-interest balance, **before the regular purchase balance**, paid more in finance charges than you would have paid if the payments or credits had first been applied to the regular purchase balance between May 26, 2004 and _____ , 2014.

## What are the terms of the proposed Settlement?

The complete terms of the proposed settlement are set forth in a formal Stipulation and Agreement of Settlement (the "Agreement" or the "Settlement") which is on file with the Court and is available here [hyperlink]. This Notice is only a summary of the Agreement, and in case of any conflict or inconsistency between this Notice and the Agreement, the terms of the Agreement will control. The Agreement, if approved, would resolve all of the claims alleged in the Lawsuit.

414

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 9 of 56
Case 2:06-cv-04804-DDP-JW    Document 3251    Filed 04/28/14    Page 62 of 78    Page ID
#:7294

The Settlement benefits are summarized below.

## The Settlement Fund.

Chase has agreed to pay $5,500,000 for the benefit of Settlement Class Members. This money will be used: (1) to pay the costs of notice and administering the Settlement; (2) to pay Settlement Class Counsel's attorneys' fees and litigation expenses and to pay service awards to Plaintiffs; (3) to make payments to Settlement Class Members (described below); and (4) to pay any residual balance of the Settlement Fund, if any, to a charitable organization or organizations.

Counsel for Plaintiffs and the Settlement Class will ask the Court to award them up to $1,500,000 in fees and costs and to award the two Plaintiffs service awards of $5,000 each (for a total of $1,510,000 in fees, costs and service awards). The Court will determine the appropriate amount of the awards to be paid from the Settlement Fund. The Settlement is not conditioned upon approval of any of the attorneys' fees, costs or service award amounts. Class Counsel will also file a motion for an award of attorneys' fees no later than twenty (20) days before the deadline to object, as set forth below. A copy of the motion can be obtained from the Settlement Administrator, and will be available on this website when it is filed.

## Payment to Settlement Class Members.

If the Settlement is approved by the Court, Settlement Class Members will automatically receive payment, which will be mailed to them by the Settlement Administrator. There is no requirement to submit a claim form or take any further action on your part, but please update the Settlement Administrator, at _____, if your address changes.

## What Happens Next?

The Court will hold a "Final Fairness Hearing" on _____ 2014, at _____ at the United States District Court, Central District of California, 312 Spring Street, Courtroom #3, Los Angeles, CA 90012, to hear any objections and to consider whether to give final approval to the Settlement. The Court will only hear objections at the hearing from those who timely object to the Settlement (see below). You may participate in the Final Fairness Hearing with or without an attorney, but if you choose to be represented by an attorney you must do so at your own expense. YOU DO NOT HAVE TO APPEAR AT THE HEARING TO RECEIVE THE BENEFITS OF THE SETTLEMENT.

## What Are Your Options?

### Participate in the Settlement.

If you wish to remain a part of the Settlement Class and are entitled to a payment, a check will automatically be mailed to you after the Settlement becomes Final. You must negotiate any payments within one hundred eighty (180) days of the date indicated on the check. Based on the size of the Settlement Class and the estimated expenses and fees

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 10 of 56
Case 2:06-cv-04804-DDP-PJW    Document 334-1    Filed 04/28/14    Page 63 of 78    Page ID
#:7295

paid from the Settlement Fund, each Settlement Class Member likely will receive a check for at least $8.00.

## Opt Out of the Settlement.

You may exclude yourself from the Settlement. If you choose to exclude yourself, or "opt out," you must send a written statement to the Settlement Administrator that includes: (1) your full name; (2) your address; (3) the last four digits of your Chase credit card account number(s); (4) a sentence certifying that you are a Settlement Class Member; and (5) the following statement: "I request to be excluded from the class settlement in *Davis v. Chase Bank, USA, N.A.*, United States District Court, Central District of California, Case No. 2:06-CV-04804-DDP-PJW." You must personally sign your written "opt-out" statement and mail it postmarked by _____ to the following address:

[Settlement Administrator]

If you do not opt out, you will be bound by this Settlement.

## Object to the Settlement.

You may remain a Settlement Class Member, but object to the terms of the Settlement. You may object to all or any portion of the Settlement at the Final Fairness Hearing, but you must first explain your objections in writing. All objections must include: (i) your name, address and telephone number; (ii) the last four digits of your Circuit City Rewards Credit Card account number(s); (iii) a sentence certifying you are a Settlement Class Member; (iv) the factual basis and legal grounds for the objection to the Settlement; (v) the identity of witnesses whom you may call to testify at the Final Fairness Hearing; (vi) copies of exhibits you may seek to offer into evidence at the Final Fairness Hearing; (vii) a sentence certifying that you have not been promised anything in return for objecting; and (viii) your personal signature. To be considered, objections must be: (1) mailed to the lawyers handling the case for each side postmarked by _____; and (2) filed with the court no later than _____. The three addresses are:

**Counsel for Plaintiff:**
Drew Pomerance, Esq.
Roxborough, Pomerance, Nye & Adreani, LLP
5820 Canoga Avenue
Woodland Hills CA 91367-6549

**Counsel for Chase:**
Julia B. Strickland, Esq.
Stephen J. Newman, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East
Los Angeles, CA 90067

LA 51732215

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 11 of 56
Case 2:06-cv-04804-DDP-FJW   Document 3251   Filed 04/29/14   Page 64 of 78   Page ID
#:7296

**The Court**:
Clerk, United States District Court
Central District of California
312 Spring Street, Courtroom 3
Los Angeles, CA 90012

You have the right to consult with your own attorney, at your own expense, before deciding how best to proceed.

## What claims will be released by this Settlement?

If the Settlement receives final approval from the Court, <u>the Settlement will be legally binding on all Settlement Class Members, including Settlement Class Members who object</u>. This means that, you will be barred from pursuing the claims released by the Settlement unless you validly "opt out" as described above. The full terms of the release, which will bind all Settlement Class Members as to certain claims against Chase and certain affiliates and related entities, are set forth in the Agreement which is on file with the Court and available here [hyperlink]. The Release provides that as of the Effective Date, Plaintiffs and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, will be deemed to have fully, finally and forever released the Released Parties from all Claims, as described in Section 2.10 of the Agreement. Without limiting the foregoing, the Claims released specifically extend to Claims that Settlement Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date.

The Release constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law. Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and each Settlement Class Member are deemed to understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waivers and relinquishment, Plaintiffs and each Settlement Class Member are deemed to have acknowledged that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all Claims, and in furtherance of such intention, the Release will remain in effect notwithstanding the discovery or existence of any such additional or different facts. The Parties acknowledge (and all Settlement Class Members by operation of law will be deemed to have

LA 51732215

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 12 of 56
Case 2:06-cv-04327-DPP-JW    Document 3251    Filed 04/29/14    Page 695 of 78    Page ID
#:7297

acknowledged) that the release of unknown Claims as set forth herein was separately bargained for and was a key element of the Settlement.

In summary, you will release all Claims that were alleged (or that could have been alleged based on the same or similar facts and circumstances, whether known or unknown) in the Lawsuit.   YOU WILL NOT BE PERMITTED TO FILE OR CONTINUE ANY LAWSUIT CHALLENGING ALLOCATION OF PAYMENTS ON CIRCUIT CITY REWARDS CREDIT CARD ACCOUNT BALANCES.

## <u>More Information Is Available.</u>

This Notice is only a summary of the Settlement, which is embodied by the terms of the Agreement.   If you have questions regarding the Settlement, contact the Settlement Administrator at:

[address/phone/email]

You may also review the Court's file during regular court hours at:

U.S. District Court, Central District of California
312 Spring Street
Los Angeles, CA 90012

PLEASE DO NOT TELEPHONE THE COURT, THE JUDGE, OR THE CLERK OF THE COURT.

U.S. District Court, Central District of California
312 Spring Street
Los Angeles, CA 90012

**PLEASE DO NOT TELEPHONE THE COURT, THE JUDGE, OR THE CLERK OF THE COURT.**

Dated:  _____, 2014

By Order of the United States District Court, Central District of California.

LA 51732215

# EXHIBIT E

LA 51732215

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 14 of 56
Case 2:06-cv-04804-DDP-PJW   Document 3451   Filed 08/29/14   Page 76 of 78   Page ID
#:7499

1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10   GARY DAVIS, an individual, on behalf )   Case No. CV 06-04804 DDP (PJWx)
      of himself, as Private Attorney General, )
11   and on behalf of all others similarly )   Assigned to the Hon. Dean D. Pregerson
      situated,                             )
12                                          )   **[PROPOSED] JUDGMENT**
13              Plaintiff,                  )
                                            )
14        v.                                )
                                            )
15   CHASE BANK U.S.A., N.A., a             )
      Delaware corporation; and DOES 1     )
16   through 50, inclusive,                 )
                                            )
17              Defendants.                 )
                                            )
18

19

20

21

22

23

24

25

26

27

28

LA 51732215

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 15 of 56
Case 2:06-cv-04804-DDP-PJW    Document 3251    Filed 04/29/14    Page 78 of 78    Page ID
#:7500

1         Judgment is hereby entered pursuant to the terms of the Final Approval

2 Order.

      IT IS SO ORDERED.

3

4 Dated: _____  _____

                           DEAN D. PREGERSON

5                     United States District Court Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 16 of 56
Case 2:06-cv-04804-DDP-PJW   Document 345   Filed 08/29/14   Page 73 of 73   Page ID
#:7501

1

## CERTIFICATE OF SERVICE

2      I hereby certify that, on August 29, 2014, a true and correct copy of the

3   foregoing DECLARATION OF DREW E. POMERANCE IN SUPPORT OF

4   MOTIONS (1) FOR FINAL APPROVAL OF SETTLEMENT, AND (2) FOR

5   ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS was filed

6   electronically and served by U.S. Mail on anyone unable to accept electronic

7   filing.  Notice of this filing will be sent by e-mail to all parties by operation of the

8   court's electronic filing system or by facsimile to anyone unable to accept

9   electronic filing as indicated on the Notice of Electronic Filing.  Parties may

10  access this filing through the court's CM/ECF System.

11

12

13                          s/ Julie Contreras
                            Julie Contreras
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DREW E. POMERANCE IN SUPPORT OF PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES
CASE NO. CV 06 4804 DDP (PJWx)

422

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 17 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 1 of 24   Page ID #:7510

1 | Nicole D. Fricke (SBN 198168)
ndfricke@milberg.com
2 | **MILBERG LLP**
One California Plaza
3 | 300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
4 | Telephone: (213) 617-1200
Facsimile: (213) 617-1975
5 |
Attorneys for Plaintiff GARY DAVIS,
6 | and GENE CASTILLO, individually,
as Private Attorney General, and on
7 | behalf of all others similarly situation
8 |
9 |
10 |
11 | **UNITED STATES DISTRICT COURT**
12 | **CENTRAL DISTRICT OF CALIFORNIA**
13 | **WESTERN DIVISION**
14 |

| | |
|---|---|
| GARY DAVIS, an individual; on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated, | Case No. CV 06 4804 DDP (PJWx) |
| | (Hon. Dean D. Pregerson) |
| Plaintiff, | DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES |
| v. | |
| CHASE BANK U.S.A., N.A., a Delaware corporation; and DOES 1 through 50, inclusive, | Date:          October 27, 2014 |
| | Time:          11:00 a.m. |
| | Courtroom:   3 |
| Defendants. | |
| | Action Filed: June 26, 2006 |

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 18 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 2 of 24    Page ID #:7511

1    I, Nicole D. Fricke, declare as follows:

2        1.    I am a partner at the law firm of Milberg LLP, one of Class Counsel. I

3    submit this declaration in support of my firm's application for an award of

4    attorneys' fees in connection with services rendered in this case, as well as the

5    reimbursement of expenses incurred by my firm in connection with this litigation.

6        2.    My firm acted as Class Counsel in this class action. In that capacity,

7    my firm has been actively involved in virtually all aspects of the case and has

8    played a major role in every material aspect of the case.

9        3.    The schedule attached hereto as Exhibit 1 is a detailed summary

10    indicating the amount of time spent by the partners, attorneys and professional

11    support staff of my firm who were involved in this litigation, and the lodestar

12    calculation based on my firm's current billing rates.  For personnel who are no

13    longer employed by my firm, the lodestar calculation is based upon the billing

14    rates for such personnel in his or her final year of employment by my firm.  The

15    schedule was prepared from contemporaneous, daily time records regularly

16    prepared and maintained by my firm, which are available at the request of the

17    Court. Time expended in preparing this application for fees and reimbursement of

18    expenses has not been included in this request.

19        4.    I expect my firm to spend at least an additional 50-75 hours, which

20    have not been included in Exhibit 1, preparing for and attending the final approval

21    hearing, addressing class member opt-outs and objections, and consulting with the

22    claims administrator to facilitate settlement administration.

23        5.    The hourly rates for the partners, attorneys and professional support

24    staff in my firm included in Exhibit 1 are the same as the regular current rates

25    charged for their services in non-contingent matters and/or which have been used

26    in the lodestar cross check accepted in other class litigation.

27

28

1

DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

690335v1

424

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 19 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 3 of 24   Page ID #:7512

6.     The total number of hours expended on this litigation by my firm is 2741.95 hours.  The total lodestar for my firm is $1,435,076.25, consisting of $1,242,945.00 for attorneys' time and $192,131.25 for professional support staff time.

7.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.     As detailed in Exhibit 2, my firm has incurred a total of $32,579.05 in un-reimbursed expenses in connection with the prosecution of this litigation.

9.     The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

10.     With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is my firm's resume which includes brief biographies of the attorneys in my firm who were principally involved in this litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 18th day of August, 2014, at Los Angeles, California.

NICOLE D. FRICKE

DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

690335v1

425

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 20 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 4 of 24   Page ID #:7513

# EXHIBIT 1

### Gary Davis v. Chase Bank USA, N.A.
### Case No. CV 06-4804 DDP (PJWx)

## MILBERG LLP

## TIME REPORT — Inception through August 18, 2014

| Name | Total Hrs. | Hourly Rate | Total Lodestar |
|---|---|---|---|
| **PARTNERS:** | | | |
| Paul Andrejkovics | 27.50 | $675 | 18,562.50 |
| Nicole Duckett Fricke | 907.75 | $625 | 567,343.75 |
| Sabrina Kim | 177.50 | $600 | 106,500.00 |
| Leigh Smith | 131.25 | $625 | 82,031.25 |
| Jeff Westerman | 113.85 | $825 | 93,926.25 |
| **ASSOCIATES:** | | | |
| Melissa Clark | 11.25 | $425 | $4,781.25 |
| Michelle Furukawa | 17.00 | $450 | 7,650.00 |
| Christian Keeney | 450.10 | $375 | 168,787.50 |
| Andrew Sokolowski | 400.50 | $475 | 190,237.50 |
| Lois Dix | 5.00 | $625 | 3,125.00 |
| **FORENSIC ACCOUNTANT:** | | | |
| Collin Lowney | 7.00 | $425 | 2,975.00 |
| **INVESTIGATORS:** | | | |
| Investigators | 205.00 | $475-$550 | 97,900.00 |
| **PROFESSIONAL SUPPORT STAFF:** | | | |
| Paralegals | 248.75 | $325 | 80,843.75 |
| Document Clerks | 20.50 | $300 | 6,150.00 |
| Litigation Support | 19.00 | $175-$250 | $4,262.50 |
| **TOTAL LODESTAR** | 2741.95 | | $1,435,076.25 |

3

DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

690335v1

426

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 21 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 5 of 24   Page ID #:7514

# EXHIBIT 2

### Gary Davis v. Chase Bank USA, N.A.
### Case No. CV 06-4804 DDP (PJWx)

## MILBERG LLP

### EXPENSE REPORT — Inception through August 18, 2014

| **Categories:** | **Amount:** |
|---|---|
| Mediation & Arbitration Fees | 9,625.00 |
| Legal Research/Lexis/Westlaw | 12,298.06 |
| Filing/Witness Fees | 1,429.42 |
| Meals, Hotel & Transportation | 4,522.55 |
| Printing | 2,849.50 |
| Photocopies/Reproduction | 1,312.88 |
| Postage | 64.40 |
| Messenger Service/Telephone | 342.90 |
| Secretarial/Support Staff Overtime | 134.34 |
| **TOTAL EXPENSES:** | $32,579.05 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 22 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 6 of 24    Page ID #:7515

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 3**

[FIRM RESUME AND BIOGRAPHIES]

DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

690335v1

428

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 23 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 7 of 24    Page ID #:7516



NEW YORK
LOS ANGELES
DETROIT

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields, including securities, corporate fiduciary, ERISA, consumer, False Claims Act, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, and Detroit.

In its early years, the Firm built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *In re Vivendi Universal, S.A. Securities Litigation* (post-verdict proceedings pending with claims valued at over $1 billion); *In re Tyco International, Ltd. Securities Litigation* ($3.2 billion settlement); *In re Nortel Networks Corp. Securities Litigation* (settlement for cash and stock valued at $1.142 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($600 million recovery); *In re Raytheon Co. Securities Litigation* ($460 million recovery); *In re Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *In re Washington Public Power Supply System Securities Litigation* (settlements totaling $775 million), and the *In re NASDAQ Market-Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

The Firm's lawyers come from many different professional backgrounds. They include prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a 27-year veteran of the Federal Bureau of Investigation, as well as in-house staff with expertise in forensic accounting and financial analysis. In addition, Milberg offers in-house e-discovery specialists and data hosting capabilities. The Firm is regularly recognized as one of the nation's leading plaintiffs' law firms by the *National Law Journal, Legal 500, Chambers USA*, and *Super Lawyers,* among others.

For more information, please visit www.milberg.com.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 24 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 8 of 24    Page ID #:7517

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

## JUDICIAL COMMENDATIONS

Milberg has been commended by countless judges throughout the country for the quality of its representation.

Milberg partners played leading roles in representing class plaintiffs in a nearly four-month jury trial in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), which in January 2010 resulted in a jury verdict for an international class of defrauded investors (with claims valued at over $1 billion; claims procedure pending). At the close of the trial, Judge Richard Holwell commented:

> I can only say that this is by far the best tried case that I have had in my time on the bench. I don't think either side could have tried the case better than these counsel have.

In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case. Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis. But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . . Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . . Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, 307 F. Supp. 2d 633, 641-47 (D.N.J. 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . . [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved. [Milberg was] extraordinarily deft and efficient in handling this most complex matter. [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . . In short, it would be hard to equal the skill class counsel demonstrated here.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 25 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 9 of 24    Page ID #:7518

:::: **MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . . Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .

Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . . This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States. In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine." Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service. In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again. The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing . . . . [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out. I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9, 2003).

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 26 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 10 of 24   Page ID
#:7519



NEW YORK
LOS ANGELES
DETROIT

## NOTEWORTHY RESULTS

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, No. 09-2032 (N.D. Cal.). Milberg served on the Executive Committee representing the class in this action against JP Morgan Chase & Co. The complaint alleged that Chase improperly increased by 150% the minimum monthly payment requirement for customers who entered into balance transfer loans with "fixed" interest rates that were guaranteed to remain so for the "life of the loan." Milberg and its co-counsel, achieved a $100 million settlement for the class.

- In *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The case is now in post-verdict proceedings. Even with claimants who made foreign purchases removed from the class after the Supreme Court's *Morrison* decision, total damage claims exceed $1 billion.

- *Mason v. Medline*, No. 07-05615 (N.D. Ill.). Milberg successfully represented a healthcare worker in a False Claims Act case against his former employer, Medline Industries, Inc., one of the nation's largest suppliers of medical and surgical products, along with its charitable arm, The Medline Foundation. The suit alleged that Medline engaged in a widespread illegal kickback scheme targeting hospitals and other healthcare providers that purchase medical products paid for by federal healthcare programs. Although a party to the settlement agreement, the U.S. Department of Justice chose not to intervene in the lawsuit. Milberg pursued the case on a non-intervened basis and recovered $85 million on behalf of the federal government -- one of the largest settlements of a False Claims Act case in which the government declined to intervene. The whistleblower was awarded 27.5% of the proceeds.

- *Blessing v. Sirius XM Radio, Inc.*, No. 09-10035 (S.D.N.Y.). This antitrust case stemmed from the 2008 merger of Sirius Satellite Radio, Inc. and XM Satellite Holdings, Inc. that created Sirius XM, the nation's only satellite radio company. The plaintiffs alleged that the merger of the only two U.S. satellite radio providers was an illegal move to eliminate competition and monopolize the satellite radio market. Before the merger, Sirius CEO Mel Karmazin convinced regulators not to block the deal by promising that "the combined company will not raise prices" and that the merger would actually result in "lower prices and more choice for the consumer." After the merger, Sirius quickly reversed course, raised prices by 15-40%, and eliminated multiple radio stations. Milberg achieved a settlement for the class valued at $180 million.

- *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a $586 million settlement on October 5, 2009, the court described the law firms comprising the

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 27 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 11 of 24    Page ID
#:7520

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

Plaintiffs' Executive Committee as the "cream of the crop."

- *Carlson v. Xerox*, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws. Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- *In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck & Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved

settlement provided $215 million to compensate class members.

- *In re General Electric Co. ERISA Litigation*, No. 04-1398 (N.D.N.Y.). This ERISA class action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan. Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.). Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA. This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch. Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.). In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class. The Second Circuit denied the defendants' attempted appeal. On January 29, 2007, the court approved a settlement valued at $1.142 billion.

One Pennsylvania Plaza · New York, New York 10119 · T 212.594.5300 · F 212.868.1229 · milberg.com

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 28 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 12 of 24    Page ID
#:7521

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds. The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.). In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues. The settlement provided compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Co. Securities Litigation*, No. 99-12142 (D. Mass.). This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Corp. Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings. Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy

Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock between February 6, 2001, and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems, Inc.*, No. 02-0109

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 29 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 13 of 24    Page ID
#:7522

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

(S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark case challenging Prudential's sales practices that resulted in a recovery exceeding $4 billion for certain policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

- *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 30 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 14 of 24    Page ID
#:7523

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

- In *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn.), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- *In re Comverse Technology, Inc. Derivative Litigation*, No. 601272/2006 (N.Y. Sup. Ct. N.Y. Cnty.). On December 28, 2009, Milberg announced a $62 million settlement for the derivative plaintiffs, which was approved by the Court on June 23, 2010. The settlement also resulted in significant corporate governance reforms, including the replacement of the offending directors and officers with new independent directors and officers; the amendment of the company's bylaws to permit certain long-term substantial shareholders to propose, in the Company's own proxy materials, nominees for election as directors (proxy access); and the requirement that all equity grants be approved by both the

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 31 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 15 of 24    Page ID
#:7524

**MILBERG**LLP

NEW YORK
LOS ANGELES
DETROIT

Compensation Committee and a majority of the non-employee members of the Board.

- *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- *In re Marketspan Corporate Shareholder Litigation*, No. 15884/98 (N.Y. Sup. Ct. Nassau Cnty.). The settlement agreement in this derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 32 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 16 of 24    Page ID
#:7525



NEW YORK
LOS ANGELES
DETROIT

## PRECEDENT-SETTING DECISIONS

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel. The Firm has also been responsible for establishing many important precedents, including the following:

- **Platinum Partners v. Chicago Board Options Exchange, Inc.**, No. 1-11-2903 (Ill. App. Ct. 2012). Milberg represented an investment management group in a case against the Chicago Board Options Exchange, Inc. ("CBOE") and Options Clearing Corp. ("OCC"). The plaintiff investment management group alleged that it was injured when the CBOE and OCC privately disclosed strike price information to certain insiders prior to the information being made public. In the interim between the private disclosure and the public announcements, the plaintiff purchased tens of thousands of affected options. The lower court dismissed the complaint on the grounds that the CBOE and OCC, as self-regulatory organizations, were immune from suit. However, the Appellate Court reversed, holding that a private disclosure to insiders served no regulatory purpose and should not be protected from suit. The Illinois Supreme Court declined the defendants' petition for leave to appeal.

- In **Merck & Co., Inc. v. Reynolds** 130 S. Ct. 1784 (2010), Milberg, along with other co-lead counsel, won a significant victory before the U.S. Supreme Court, which issued a decision addressing when an investor is placed on "inquiry notice" of a securities fraud violation sufficient to trigger the statute of limitations under 28 U.S.C. § 1658(b). The Court unanimously ruled that the two-year statute of limitations was not triggered because plaintiffs did not have actual or constructive knowledge of "the facts constituting the violation," and as such, the case was not time-barred. Importantly, the Court held that the plaintiff must be on actual or constructive notice of facts concerning the defendants' scienter in order to trigger the statute of limitations. This decision is significant in that it potentially enables plaintiffs to bring claims based on misstatements that are more than two years old.

- In re **Lord Abbett Mutual Funds Fee Litigation**, 553 F.3d 248 (3d Cir. 2009). This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims." In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- **Abdullahi v. Pfizer, Inc.**, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs, Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction. The court held that the plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent.

- In re **Comverse Technology, Inc. Derivative Litigation**, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008). In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating. The lower court dismissed the plaintiffs' claims, holding that the plaintiffs failed to make a pre-suit demand on

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 33 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 17 of 24    Page ID
#:7526



NEW YORK
LOS ANGELES
DETROIT

the company's board, and that in any event, the board had already formed a special committee to investigate the misconduct. In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment. The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps. Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). The important opinion issued by the Ninth Circuit in this securities fraud class action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs*, all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with allegations of misrepresentations that were

described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 34 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 18 of 24    Page ID
#:7527

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

- *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cnty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also

rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milbergs' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand. Specifically, the Court held that

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 35 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 19 of 24   Page ID
#:7528

**MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

"where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom*, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. In so holding, the court noted that class actions are necessary to protect the rights of defrauded purchasers of securities.

- *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970). In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968). The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 36 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 20 of 24    Page ID
#:7529

**MILBERG**LLP

NEW YORK
LOS ANGELES
DETROIT

*Partners*

**PAUL J. ANDREJKOVICS** graduated from Union College, Schenectady, NY, in 1992, *Phi Beta Kappa, magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School.

Mr. Andrejkovics's practice concentrates on class action settlements and settlement administration. He was admitted as a member of the New York bar in 1996 and is admitted to practice before the United States District Court for the Northern, Southern, and Eastern Districts of New York.

**LEIGH SMITH** received a B.A. degree, with high honors, and an M.A. degree from Rutgers University. Ms. Smith received a J.D. degree from Cornell Law School in 1999.

Ms. Smith focuses her practice primarily on class actions on behalf of defrauded investors. She also has significant experience with complex commercial litigation and consumer class actions. Her involvement in *In re Tyco International Ltd. Securities Litigation*, No. 02-1335, helped recover an aggregate settlement of $3.2 billion.

While at Rutgers University, Ms. Smith majored in French and was elected to *Phi Beta Kappa* and *Phi Sigma Iota*. As a graduate student, she studied French literature and film and spent a year in France working as an assistant English teacher. Ms. Smith taught French at Rutgers and at the University of Iowa before going to law school. During law school, Ms. Smith served as the Acquisitions Editor for the *Cornell Journal of Law and Public Policy* and was a member of the Cornell Moot Court Board. She also was active in a number of student organizations.

Prior to joining Milberg, Ms. Smith worked at large law firms in New York and New Jersey. She is admitted to practice in the United States District Courts for the Southern District of New York, the Eastern District of New York, the District of New Jersey, the District of Massachusetts, and the United States Courts of Appeals for the First, Second, Third, and Ninth Circuits.

**NICOLE DUCKETT FRICKE** received her B.A. in English from Georgetown University in 1995, where she was on the Dean's List. She graduated from UCLA School of Law in 1998.

Ms. Fricke focuses her practice on securities fraud, antitrust, and consumer class actions. She joined the firm from Mayer Brown LLP where she practiced complex business litigation, white collar criminal defense, and corporate internal investigations. Ms. Fricke has vast trial experience as well as a wide-ranging appellate practice.

Ms. Fricke's recent representative matters include: serving as co-lead counsel in the antitrust class action against Sirius XM for raising prices after creating a monopoly of the satellite radio market; serving as lead counsel in the consumer fraud class action against NVIDIA Corporation for placing allegedly defective computer chips in the market; serving as co-lead counsel in the shareholder derivative action against The Ryland Group, Inc. for fostering egregious lending practices despite reprimands from the U.S. Department of Housing and Urban Development; and serving as co-lead counsel in a securities and shareholder derivative and class action against Beckman Coulter, Inc. Prior representative matters include defending Avon Products, Inc. in a civil and criminal Foreign Corrupt Practices Act investigation conducted by the Department of Justice and the Securities and Exchange Commission; and defending Broadcom Corporation in a civil and criminal options backdating investigation conducted by the U.S. Attorneys' Office and the Securities and Exchange Commission.

Ms. Fricke is a City Commissioner for the Los Angeles Convention Center and related entities including L.A. Live, the Staple Center, and the Los Angeles Visitors Bureau, serving as an advisor to Mayor Villaraigosa.

Ms. Fricke is also a Lawyer Representative for the Central District of California Attorney Delegation to the United States Ninth Circuit Judicial Conference.

Ms. Fricke is on the Leadership Council Board for the Fulfillment Fund, and she is active in the

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 37 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 21 of 24    Page ID
#:7530

National Association of Securities Professionals, the Association of Business Trial Lawyers, and the Los Angeles County Bar Association.

*Los Angeles Magazine* named Ms. Fricke a Southern California Super Lawyers Rising Star each year since 2006.

While in law school, Ms. Fricke was an editor of the *UCLA National Black Law Journal* and a recipient of the Joseph Drowne Fellowship Award.

### *Former Attorneys*

**SABRINA KIM** graduated from the University of California, Los Angeles, in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in Sociology. She received her J.D. degree from the University of California, Hastings College of Law in 1996.

Ms. Kim has extensive public and private sector experience in various areas of complex commercial litigation, including securities, corporate fiduciary, and consumer cases.

Ms. Kim came to Milberg from the California Department of Justice, where she was a deputy attorney general in the Consumer Law Section for several years. During that time, Ms. Kim served as lead prosecutor in complex state and federal fraud cases, including those against predatory lenders, insurance companies, annuity mills, and other corporate defendants who engaged in large financial fraud schemes.

At Milberg, Ms. Kim has litigated numerous securities fraud and other class actions resulting in substantial recoveries for investors and consumers. Ms. Kim is also one of the principal attorneys responsible for two major California Supreme Court cases involving consumer rights and class action procedure: *Pioneer Electronics (USA) v. Superior Court (Olmstead)*, 40 Cal.4th 360 (Cal. 2007); *Branick v. Downey Savings & Loan Assn*, 39 Cal.4th 235 (Cal. 2006).

Ms. Kim has served as a speaker for programs on class action procedure, tactics and strategies in consumer class actions, substantive changes in unfair and deceptive practices statutes, and trends in complex business litigation. Her speaking engagements include: Consumer Attorneys Association of Los Angeles (CAALA) Convention, *Unfair Business Practices Act, What Is Left?* (September 2007); American Bar Association (ABA) Litigation Section Annual Conference, *Tactics and Strategies for Consumer Cases After Proposition 64 and Class Action Fairness Act* (April 2006); LexisNexis Mealey's Section 17200 Conference, *What is the Future of 17200 Claims in Light of Proposition 64?* (November 2005); Los Angeles County Bar Association (LACBA) 25th Annual Labor and Employment Law Symposium, *Minding Your Own Business (And Professions Code §17200) After Proposition 64* (February 2005).

As an adjunct professor at Loyola Law School, Ms. Kim developed and taught a consumer law course which explored federal and state laws that attempt to strike a balance between businesses' need to effectively market goods and services and consumers' right to accurate information and full disclosure. The course emphasized California's unfair competition and false advertising laws and the Consumer Legal Remedies Act.

Ms. Kim is a board member of the Association of Business Trial Lawyers (ABTL) and a member of the Consumer Attorneys of California (CAOC). Ms. Kim was named a Southern California Super Lawyer Rising Star in securities litigation by Los Angeles Magazine from 2006 through 2009.

Ms. Kim is admitted to practice in the courts of the State of California, as well as the United States District Court for the Central, Eastern, and Northern Districts of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

**JEFF S. WESTERMAN** received his B.A. degree from Northwestern University in 1977, where he was selected to be a member of two senior honorary societies. He received his J.D. degree from the University of Pittsburgh in 1980, where he was a member of the Law Review.

Mr. Westerman's practice is primarily in the areas of securities fraud, consumer, and antitrust class actions, shareholder derivative actions, and corporate mergers and acquisitions litigation. He has served as lead or co-lead counsel in cases resulting in significant corporate governance changes, and resulting in recoveries and recognized increased value to plaintiffs totaling more than $800 million.

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 38 of 56
Case 2:06-cv-04804-DDP-PJW   Document 347   Filed 08/29/14   Page 22 of 24   Page ID
#:7531

In 2005, *The Daily Journal* recognized him as one of the top 30 securities litigators in California.

Mr. Westerman regularly serves as a moderator or speaker for programs on complex litigation, developments in class action practice, settlements, the Sarbanes-Oxley Corporate Responsibility Act, shareholder derivative actions, and trends in business litigation.

Mr. Westerman was a member (2001-2003) and Co-Chair (2002-2003) of the Central District of California Attorney Delegation to the United States Ninth Circuit Judicial Conference. He serves on the Central District of California, U.S. Magistrate Judge Merit Selection Panel (2003-present) and he has served on the standing committee on Attorney Discipline (2004-present), and was appointed Vice Chair in 2011. He is also a member of the Central District of California Attorney Settlement Officer Panel (1998-present).

Mr. Westerman was the president of the Association of Business Trial Lawyers (2004-2005); a member of the Board of Governors (1997-2005), Treasurer (2001-2002), Secretary (2002-2003), and Vice President (2003-2004). He is also on the Board of Governors of the Consumer Attorneys Association of Los Angeles (2003-present).

Mr. Westerman is the Treasurer of the Los Angeles County Bar Executive Committee for the Litigation Section, a member of the Bench-Bar Civil Courts Committee, and a member of the Board of the Los Angeles Chapter of the Federal Bar Association. He is also past Chair of the LA County Bar Complex Courts Bench-Bar Committee, and he served as Judge Pro Tem in the Los Angeles Small Claims Court in 1987-1988, 1990, 1992-1993, and 1996-1997. He is a member of the Los Angeles County and Federal Bar Associations. He was on the California State Bar Task Force on Complex Litigation, and Chair of the Judicial Education Subcommittee (1997). He is one of *Lawdragon*'s 3000 Leading Plaintiffs' Lawyers In America (2007-2010).

Mr. Westerman is admitted to practice in the courts of the State of California, as well as the United States District Courts in California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

**CHRISTIAN KEENEY** Mr. Keeney's practice focuses on complex litigation, including litigation related to corporate governance, mergers and acquisitions, consumer protection, and antitrust. He is experienced in all phases of complex litigation, including briefing, taking, and defending depositions, trial, and appeal. Before joining Milberg, LLP, Mr. Keeney litigated numerous high-profile cases in the prestigious Delaware Court of Chancery as an associate in the Delaware office of a highly-regarded national litigation boutique. Notable recoveries that he helped obtain include a multi-million dollar settlement on behalf of shareholders of Landry's Restaurants, Inc. in *In re Louisiana Municipal Police Employees' Retirement System v. Tilman Fertitta, et al.* Mr. Keeney recently guest lectured at California State University-Dominguez Hills on the subject of corporate fraud. He is also co-authoring an article that will be presented at the 2012 annual convention of the Consumer Attorneys Association of Los Angeles. He is a member of the Los Angeles County Bar Association, Association of Business and Trial Lawyers, Inns of Court, and Barristers.

Mr. Keeney received his law degree from Villanova University School of Law. While at Villanova, he published an article in the University of Florida's *Journal of Technology Law and Policy*, which has been cited multiple times since, including being named by Rutgers' *Computer and Technology Law Journal* as one of the "most timely an important" articles of 2008-09. He also served as the Summer Competition Coordinator for the Moot Court Board, a judicial extern for the Hon. Mary Pat Thynge of the United States District Court for the District of Delaware, and a class representative for the Student Bar Association.

Mr. Keeney received a B.A. in Political Science from the University of Kentucky. He also participated in Georgetown University's Washington Semester Program, where he earned Dean's List Honors and served as a columnist for the *Georgetown Voice*. He is admitted to practice law in California, Delaware and Pennsylvania.

**ANDREW SOKOLOWSKI** focuses his practice on consumer class actions, securities class actions, and shareholder derivative lawsuits. Among other cases, Mr. Sokolowski represents consumers prosecuting claims against banks accused of unfair lending and credit practices. Before joining Milberg, Mr. Sokolowski worked for law firms litigating various complex business disputes and real estate matters.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 39 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 23 of 24    Page ID
#:7532

Mr. Sokolowski received his B.A. in History from the University of California, Los Angeles, and his J.D. from Loyola Law School, where he finished in the top 5% of his class and served as an Articles Editor for the *Loyola of Los Angeles Law Review*. Between college and law school, Mr. Sokolowski served in the United States Army as an infantryman, and was stationed at Fort Lewis, Washington.

Mr. Sokolowski is a member of the Board of Governors (2009 – present) for the Association of Business Trial Lawyers' Los Angeles chapter, and he serves as co-editor of the chapter's *ABTL Report*. Mr. Sokolowski is also a member of the Consumer Attorneys Association of Los Angeles and the Los Angeles County Bar Association.

Mr. Sokolowski is admitted to practice in the courts of the State of California, as well as all United States District Courts in California and the United States Court of Appeals for the Ninth Circuit.

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 40 of 56
Case 2:06-cv-04804-DDP-PJW    Document 347    Filed 08/29/14    Page 24 of 24    Page ID
#:7533

1

### CERTIFICATE OF SERVICE

2  I hereby certify that, on August 29, 2014, a true and correct copy of the foregoing

3  DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS'

4  MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS'

5  FEES AND EXPENSES was filed electronically and served by U.S. Mail on

6  anyone unable to accept electronic filing. Notice of this filing will be sent by e-

7  mail to all parties by operation of the court's electronic filing system or by

8  facsimile to anyone unable to accept electronic filing as indicated on the Notice of

9  Electronic Filing. Parties may access this filing through the court's CM/ECF

10  System.

*/s/ Dana Powers*

Dana Powers

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NICOLE D. FRICKE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

690335v1

# EXHIBIT I

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 42 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 1 of 13    Page ID #:7601

NO JS-6

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY DAVIS, an individual; on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>CHASE BANK U.S.A., N.A., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. CV 06-04804 DDP (PJWx)<br><br>Honorable Dean D. Pregerson<br><br>**AMENDED FINAL APPROVAL ORDER**<br><br>**Date:**       **October 27, 2014**<br>**Time:**       **11:00 a.m.**<br>**Courtroom:**    **3** |

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 43 of 56
Case 2:06-cv-04804-DDP-PJW   Document 355   Filed 10/29/14   Page 2 of 13   Page ID #:7602

1    Plaintiff Gene Castillo ("Plaintiff"), on his own behalf and on behalf of all

2  others similarly situated, submitted to the District Court a Motion for Final

3  Approval of Settlement ("Motion") seeking final approval of the Stipulation and

4  Agreement of Settlement (the "Agreement" or the "Settlement"), and the exhibits

5  attached thereto, entered into by and between Plaintiff and Defendant Chase Bank

6  U.S.A., N.A. ("Chase").  Chase does not oppose Plaintiff's Motion.

7    By Order dated June 5, 2014, the District Court entered an Order that

8  preliminarily approved the Agreement and conditionally certified the Settlement

9  Class for settlement purposes only (the "Preliminary Approval Order").  Due and

10  adequate notice having been given to the Settlement Class in compliance with the

11  procedures set forth in the Agreement and the Preliminary Approval Order, this

12  Court having considered all papers filed and proceedings had herein, and

13  otherwise being fully informed of the premises and good cause appearing

14  therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

15    1.    This Final Approval Order incorporates by reference the definitions

16  in the Agreement, and all terms used herein will have the same meanings as set

17  forth in the Agreement.

18    2.    This Court has jurisdiction over the subject matter of the above-

19  captioned action (the "Lawsuit") and, for purposes of this Settlement only,

20  personal jurisdiction over the Parties and all Settlement Class Members.

21    3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

22  consistent with due process, this Court hereby approves the Agreement and finds

23  that the settlement consideration is fair and that said Settlement is, in all respects,

24  fair, reasonable and adequate to the Settlement Class Members, and the Parties are

25  hereby directed to consummate the Settlement in accordance with the terms and

26  provisions of the Agreement.

27    4.    Pursuant to Federal Rule of Civil Procedure 23(b)(3), this Court

28  hereby certifies the Settlement Class solely for purposes of effectuating this

1

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 44 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 3 of 13    Page ID #:7603

1   Settlement.

2         a.    The Settlement Class is defined as follows:

3   All Chase Circuit City Rewards Credit Cardmembers with

4   California billing addresses who, between May 26, 2004 and

5   June 5, 2014 (inclusive), made a promotional or deferred-

6   interest purchase at Circuit City and who, as a result of

7   payments or credits being allocated to a regular purchase

8   balance after the promotional or deferred-interest balance, paid

9   more in finance charges than they would have paid if the

10   payments or credits had first been applied to the regular

11   purchase balance.

12         b.    Settlement Class Members had the right to exclude themselves

13   by way of the opt-out procedure set forth in the Preliminary Approval Order.

14   Excluded from the Settlement Class are 22 persons who validly and timely

15   requested exclusion from the Settlement Class by way of the opt-out procedure,

16   and 2 persons who submitted an untimely request for exclusion, but for whom

17   Chase is waiving its objection.  These 24 individuals are identified in Exhibit 1

18   hereto (the "Opt-Outs").

19         5.    For purposes of this Settlement only, this Court finds and concludes

20   that: (a) the Settlement Class Members are so numerous that joinder of all

21   Settlement Class Members is impracticable; (b) there are questions of law and fact

22   common to the Settlement Class which predominate over any individual

23   questions; (c) Plaintiff's claims are typical of the claims of the Settlement Class;

24   (d) Plaintiff and Class Counsel have fairly and adequately represented and

25   protected the interests of all of the Settlement Class Members; and (e) a class

26   action is superior to other available methods for the fair and efficient adjudication

27   of the controversy, considering: (i) the interests of the Settlement Class Members

28   in individually controlling the prosecution of separate actions; (ii) the desirability

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 45 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 4 of 13    Page ID #:7604

1   or undesirability of continuing the litigation of these claims in this particular

2   forum; and (iii) the difficulties likely to be encountered in the management of this

3   class action.

4       6.    This Court finds that the notice provided to Settlement Class

5   Members was the best notice practicable and fully satisfied the requirements of

6   due process, the Federal Rules of Civil Procedure, the Class Action Fairness Act

7   of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constituted the best

8   notice practicable under the circumstances and constituted due and sufficient

9   notice to all persons entitled thereto.  Class Counsel has filed with the Court proof

10   that notice was provided to Settlement Class Members in compliance with the

11   procedures set forth in the Agreement and the Preliminary Approval Order.

12   Chase's counsel has filed with the Court proof of compliance with the Class

13   Action Fairness Act of 2005.

14       7.    There were no objections to the Settlement.

15       8.    This Court hereby dismisses with prejudice on the merits and without

16   costs (except as otherwise provided in the Agreement) the above-captioned action

17   (subject to retention of jurisdiction to enforce the Settlement).

18       9.    By operation of this Final Approval Order and upon the occurrence

19   of the Effective Date, Plaintiff and each Settlement Class Member, their

20   respective heirs, executors, administrators, representatives, agents, attorneys,

21   partners, successors, predecessors-in-interest, assigns and all persons acting for or

22   on their behalf, are deemed to have fully, finally and forever released the Released

23   Parties (as defined below) from all Claims (as defined below).

24       a.    "Released Parties" means Chase, together with its

25   predecessors, successors (including, without limitation, acquirers of all or

26   substantially all of its assets, stock or other ownership interests) and assigns; the

27   past, present, and future, direct and indirect, parents (including but not limited to

28   holding companies and JPMorgan Chase & Co.), subsidiaries and affiliates of any

3

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 46 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 5 of 13    Page ID #:7605

1    of the above; and the past, present and future principals, trustees, partners, claims

2    administrators (including, without limitation, the Settlement Administrator),

3    officers, directors, employees, agents, attorneys, shareholders, advisors,

4    predecessors, successors, assigns, representatives, heirs, executors, and

5    administrators of any of the above.

6          b.      "Claim" and "Claims" mean any and all actual or potential

7    claims, actions, causes of action, suits, counterclaims, cross-claims, third party

8    claims, contentions, allegations, and assertions of wrongdoing, and any demands

9    for any and all debts, obligations, liabilities, damages (whether actual,

10   compensatory, treble, punitive, exemplary, statutory or otherwise), attorneys' fees,

11   costs, expenses, restitution, disgorgement, injunctive relief, any other type of

12   equitable, legal or statutory relief, any other benefits, or any penalties of any type

13   whatsoever, whether known or unknown, suspected or unsuspected, contingent or

14   non-contingent, or discovered or undiscovered, whether asserted in federal court,

15   state court, arbitration or otherwise, and whether triable before a judge or jury or

16   otherwise, including, without limitation, those that were alleged, or that could

17   have been alleged based on the same or similar facts and circumstances, in the

18   Lawsuit.

19         c.      Without limiting the foregoing, the claims released pursuant to

20   Paragraph 9b (the "Released Claims") specifically extend to Claims that

21   Settlement Class Members do not know or suspect to exist in their favor as of or

22   prior to the Effective Date.

23   10.    The Parties, and all Settlement Class Members, agree that the

24   releases in Paragraph 9 constitute a waiver of Section 1542 of the California Civil

25   Code and any similar or comparable provisions, rights and benefits conferred by

26   the law of any state or territory of the United States or any jurisdiction, and any

27   principle of common law.  Section 1542 of the California Civil Code provides:

28

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 47 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 6 of 13    Page ID #:7606

1    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

2    WHICH THE CREDITOR DOES NOT KNOW OR

3    SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE

4    TIME OF EXECUTING THE RELEASE, WHICH IF

5    KNOWN BY HIM OR HER MUST HAVE MATERIALLY

6    AFFECTED HIS OR HER SETTLEMENT WITH THE

7    DEBTOR.

8    Plaintiff and each Settlement Class Member understand and acknowledge

9    the significance of these waivers of California Civil Code Section 1542 and/or of

10   any other applicable law relating to limitations on releases.  In connection with

11   such waivers and relinquishment, Plaintiff and each Settlement Class Member

12   acknowledge that they are aware that they may hereafter discover facts in addition

13   to, or different from, those facts which they now know or believe to be true with

14   respect to the subject matter of the Settlement, but that they release fully, finally

15   and forever all Claims, and in furtherance of such intention, the releases will

16   remain in effect notwithstanding the discovery or existence of any such additional

17   or different facts.  The Parties acknowledge (and all Settlement Class Members by

18   operation of law are deemed to have acknowledged) that the release of unknown

19   Claims as set forth herein was separately bargained for and was a key element of

20   the Settlement.

21       11.    This Final Approval Order, the Preliminary Approval Order, the

22   Agreement, and any act performed or document executed pursuant to or in

23   furtherance thereof:

24           a.    Will not be offered or received against the Released Parties as

25   evidence of, or be construed as or deemed to be evidence of, any admission or

26   concession by the Released Parties as to the truth or relevance of any fact alleged

27   by Plaintiff, the existence of any class alleged by Plaintiff, the propriety of class

28

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 48 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 7 of 13    Page ID #:7607

1    certification had the Lawsuit been litigated rather than settled, or the validity of

2    any claim that has been or could have been asserted in the Amended Complaint or

3    in any other litigation, or the deficiency of any defense that has been or could have

4    been asserted to the Amended Complaint or in any other litigation, or of any

5    liability, negligence, fault, or wrongdoing of the Released Parties;

6        b.    Will not be offered as or received against any of the Released

7    Parties as evidence of, or construed as or deemed to be evidence of, any admission

8    or concession of any liability, negligence, fault or wrongdoing, or in any way

9    referred to for any other reason as against any of the parties to the Agreement, in

10    any other civil, criminal or administrative action or proceeding, other than such

11    proceedings as may be necessary to effectuate the provisions of the Agreement,

12    except that the Released Parties may refer to it to effectuate the liability protection

13    granted them thereunder;

14        c.    Will not be deemed an admission by Chase that it is subject to

15    the jurisdiction of any court;

16        d.    Will not be construed against Chase as an admission or

17    concession that the consideration to be given under the Agreement represents the

18    amount which could be or would have been recovered after trial.

19        12.    The Released Parties may file the Agreement and/or this Final

20    Approval Order in any action that may be brought against them in order to support

21    a defense or counterclaim based on principles of res judicata, collateral estoppel,

22    release, good faith settlement, judgment bar, reduction, set-off or any other theory

23    of claim preclusion or issue preclusion or similar defense or counterclaim.

24        13.    Settlement Class Members, and any person or entity allegedly acting

25    on behalf of Settlement Class Members, either directly, representatively or in any

26    other capacity, are enjoined from commencing or prosecuting against the Released

27    Parties any action or proceeding in any court or tribunal asserting any of the

28    Released Claims, provided, however, that this injunction will not apply to non-

6

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 49 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 8 of 13    Page ID #:7608

1  released claims of Opt-Outs.

2       14.    The Court finds that the Parties and their counsel have complied with

3  each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all

4  proceedings herein.

5       15.    Class Counsel are hereby awarded the sum of $1,500,000 in

6  attorneys' fees and costs, which sum the Court finds to be fair and reasonable,

7  which will be paid to Class Counsel from the Settlement Fund.  The award of

8  attorneys' fees and costs will be allocated among Class Counsel in a fashion

9  which, in the opinion of Class Counsel, fairly compensates Class Counsel for their

10 respective contributions in the prosecution of the Lawsuit.

11      16.    Plaintiff Gene Castillo and Gary Davis are hereby awarded $5,000

12 each from the Settlement Fund.  These service awards are for their time and

13 efforts spent conferring with and assisting Class Counsel to help further the

14 Lawsuit for the benefit of the Settlement Class.

15      17.    In making the award of attorneys' fees and costs to Class Counsel

16 and service awards to Plaintiff Gene Castillo and Gary Davis, the Court has

17 considered and found that:

18           a.    The Parties entered into arm's-length discussions regarding

19 attorneys' fees for Class Counsel, including extensive discussions through and

20 with the assistance of a third-party mediator, Hon. Edward A. Infante (Ret.);

21           b.    The Settlement created a benefit with a substantial value to the

22 Settlement Class and numerous Settlement Class Members.

23           c.    438,969 copies of the Postcard Notice were disseminated to

24 putative Settlement Class Members.  No objections were filed against the terms of

25 the proposed Settlement;

26           d.    Class Counsel conducted the Lawsuit and achieved the

27 Settlement with skill, perseverance and diligent advocacy;

28           e.    The Lawsuit involves complex factual and legal issues and was

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 50 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 9 of 13    Page ID #:7609

1    actively prosecuted over seven years and, in the absence of a settlement, would

2    involve further lengthy proceedings with uncertain resolution of the complex

3    factual and legal issues;

4              f.    Had Class Counsel not achieved the Settlement there would

5    remain a significant risk that the Settlement Class may have recovered less or

6    nothing from the defendant;

7              g.    The separate declarations submitted by each of the three firms

8    prosecuting this case on behalf of the Class state that, to achieve the Settlement,

9    Roxborough, Pomerance, Nye & Adreani, LLP devoted over 3,152 hours, with a

10    lodestar value of over $1,440,200.00, Westerman Law Corp. devoted over 33

11    hours, with a lodestar value of over $26,000, and Milberg LLP devoted over 2,741

12    hours with a lodestar value of over $1,435,076.00.

13              h.    The amount of attorneys' fees and costs awarded and the

14    amount of the service awards are fair and reasonable and consistent with awards

15    in similar cases.

16        18.    Without affecting the finality of this Final Approval Order in any

17    way, this Court retains continuing jurisdiction of all matters relating to the

18    modification, interpretation, administration, implementation, effectuation and

19    enforcement of the Settlement.  Class Counsel are to continue in their role to

20    oversee all aspects of the Settlement.  Upon notice to Class Counsel, Chase may

21    seek from this Court, pursuant to 28 U.S.C. § 1651(a), such further orders or

22    process as may be necessary to prevent or forestall the assertion of any of the

23    Released Claims in any other forum, or as may be necessary to protect and

24    effectuate the Settlement and this Final Approval Order.

25        19.    If an appeal, writ proceeding or other challenge is filed as to this

26    Final Approval Order, and if thereafter the Final Approval Order is not ultimately

27    upheld, all orders entered, stipulations made and releases delivered in connection

28

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 51 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 10 of 13    Page ID
#:7610

1  herewith, or in the Agreement or in connection therewith, will be null and void to

2  the extent provided by and in accordance with the Agreement.

3      20.    There is no just reason for delay in the entry of this Final Approval

4  Order and immediate entry by the Clerk of the Court is expressly directed

5  pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

6

7      IT IS SO ORDERED.

8

9  Dated:  October 29, 2014

10                      DEAN D. PREGERSON

                    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

457

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 52 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 11 of 13    Page ID
#:7611

# EXHIBIT 1

Case 08-35653-KRH    Doc 13532-6    Filed 12/18/14    Entered 12/18/14 16:55:42    Desc
Exhibit(s) Part 6    Page 53 of 56
Case 2:06-cv-04804-DDP-PJW    Document 355    Filed 10/29/14    Page 12 of 13    Page ID
#:7612

## OPT-OUT LIST

1.   Vicky Williams

2.   Juanito D. Doce

3.   Richard T. Rodarte

4.   Clarice Mirzakhanian

5.   Genee B. Aleksandrovi

6.   Amy L. Norris

7.   Pedro Gomez

8.   Veronica E. Siy

9.   Gordon Tam

10.  Thomas Condos, Jr.

11.  Robin B. Hansen

12.  Sandra Pimentel

13.  Thirin Has

14.  Lida Salas

15.  Edward Sanches

16.  Scott A. Bidnick

17.  Charla Pinney

18.  Charles J. Yi

19.  Wayne E. White

20.  Geraldin D. Denser

21.  Elaine Hanley

22.  Joseph Meza

23.  Noe Flores

24.  Anthony Lewis

Case 08-35653-KRH   Doc 13532-6   Filed 12/18/14   Entered 12/18/14 16:55:42   Desc
Exhibit(s) Part 6   Page 54 of 56
Case 2:06-cv-04804-DDP-PJW   Document 355   Filed 10/29/14   Page 13 of 13   Page ID
#:7613

## CERTIFICATE OF SERVICE

I hereby certify that, on October 23, 2014, a true and correct copy of the foregoing AMENDED [PROPOSED] FINAL APPROVAL ORDER was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


s/ Elia Ramirez
Elia Ramirez

1

2

3

4

5                                                              JS-6

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| GARY DAVIS, an individual; on behalf of himself, and as PRIVATE ATTORNEY GENERAL, and on behalf of all others similarly situated, | Case No. CV 06-04804 DDP (PJWx) <br><br> Honorable Dean D. Pregerson <br><br> **JUDGMENT** |
| Plaintiff, <br> v. | **Date:**     **October 27, 2014** <br> **Time:**     **11:00 a.m.** <br> **Courtroom:**    **3** |
| CHASE BANK U.S.A., N.A., a Delaware corporation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

21        Judgment is hereby entered pursuant to the terms of the Final Approval

22  Order.

23        IT IS SO ORDERED.

24

25  Dated:  October 29, 2014

26                                        DEAN D. PREGERSON
                                          United States District Judge
27

28



<Daniel.P.Tierney@chase.com>

04/23/2007 03:01 PM

To  <Marc_Rubin@circuitcity.com>

cc  <dabeer.m.roshanali@jpmchase.com>,
<Anthony.W.Spencer@chase.com>

Subject  Davis

                    Recently, you inquired as to Chase's position
regarding indemnification with respect to the Davis    litigation in California
where both Chase and CC are named parties

                    Based on guidance from our legal team, Chase
recommends that we defer on deciding the indemnification issue at this time
for the following reasons:

                    1) there are allegations of wrongdoing directed only
at Circuit City;

                    2) Chase has taken the lead in removal, arbitration,
stay of proceedings, notice of appeal, etc. such that the costs of defense to
CC are minimal;

                    3) Chase intends on taking the lead on defending the
case until completion;

                    4) Chase recognizes that the payment allocation issue
is a Chase issue;

                    5) If the payment allocation issue becomes the only
remaining issue at any time going forward, Chase will agree to indemnify.

                    Thanks,
                    Dan


Daniel Tierney
Chase Card Services
(804) 935-6120 (w)
(804) 301-8377 (c)
Daniel.P.Tierney@chase.com

**********************************************************************
This transmission may contain information that is privileged, confidential,
legally privileged, and/or exempt from disclosure under applicable law. If you
are not the intended recipient, you are hereby notified that any disclosure,
copying, distribution, or use of the information contained herein (including
any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and
any attachments are believed to be free of any virus or other defect that
might affect any computer system into which it is received and opened, it is
the responsibility of the recipient to ensure that it is virus free and no
responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and
affiliates, as applicable, for any loss or damage arising in any way from its
use. If you received this transmission in error, please immediately contact
the sender and destroy the material in its entirety, whether in electronic or
hard copy format. Thank you.
**********************************************************************

462