# Exhibit 1

# PROMISSORY NOTE

$4,743,514.27                                                                      November 27, 1996

FOR VALUE RECEIVED, CATAMOUNT A/S EXCHANGE CORPORATION, a Delaware corporation, as trustee of the WEC 96D SPRINGFIELD INVESTMENT TRUST, a Delaware business trust with a principal place of business 6750 Lyndon B. Johnson Freeway, Suite 1100, Dallas, Texas 75240 ("Maker") promises to pay to the order of FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City - Staubach Pass Through Trust, Series 1996-A, having an address at 79 South Main Street, Salt Lake City, Utah, Attention: Corporate Trust Services ("Lender"), the principal sum of FOUR MILLION, SEVEN HUNDRED FORTY-THREE THOUSAND, FIVE HUNDRED FOURTEEN and 27/100 Dollars ($4,743,514.27); with interest thereon at the rate of 7.96% per annum, or on the amount thereof from time to time outstanding, to be computed as hereinafter provided, until such principal sum shall be fully paid. All interest hereunder shall be calculated based upon a 360-day year consisting of twelve 30-day months.

This Note is subject to the terms, provisions and conditions of a Loan Agreement of even date between Maker and Lender. Capitalized terms used herein which are not otherwise specifically defined shall have the same meanings herein as in the Loan Agreement.

Principal and/or interest shall be payable in installments on the date hereof and on the first day of each month (each being a "Loan Payment Date") as follows:

(a)       on the date hereof, the Maker shall make a payment in the amount of $4,195.37, being the amount necessary to pay accrued interest through such date;

(b)       commencing on January 1, 1997 and continuing on each Loan Payment Date thereafter, the Maker shall make a monthly installment of principal and interest in the amount of $38,120.00; and

(c)       on December 1, 2018 ("Maturity Date") the Maker shall pay all outstanding principal, interest and any other sums then owing to Lender.

All payments due on this Note shall be made no later than noon, Eastern Time, on the date said payments are due. If a Loan Payment Date is not a Business Day, then the payment due on such date shall be due and payable on the first Business Day immediately preceding the Loan Payment Date. During the period of any delinquency (which shall mean the failure to pay interest and/or principal on the due date and thereafter until such installment is paid), interest may be charged at the Default Rate as set forth in the Loan Agreement.

Except as permitted in the Loan Agreement, this Note may not be prepaid, in whole or in part at any time.

At the option of the holder, this Note and the entire indebtedness evidenced hereby shall become immediately due and payable without further notice or demand, and notwithstanding any prior waiver of any breach or default, or other indulgence, upon the occurrence at any time of any one or more of the following events: (i) a default in making any payment of interest, principal, or other charges or payments due hereunder beyond the expiration of applicable notice or grace periods, if any; (ii) an Event of Default under or as set forth in the Loan Agreement or any other Loan Document to which Maker is a party or by which

Maker is bound, each as the same may from time to time hereafter be amended; (iii) any sale, conveyance, transfer or encumbrance of all or any portion of the Property except as expressly permitted in the Loan Agreement; (iv) any transfer or assignment of, or granting a security interest in, any of the ownership interests in the Maker, directly or indirectly, except as expressly permitted in the Loan Agreement; or (v) an event which, pursuant to any express provision of the Loan Agreement, or of any other Loan Document to which Maker is a party or by which Maker is bound, gives the Lender the right to accelerate the Loan.

Upon the occurrence of a Prepayment Event, in addition to principal being prepaid, accrued but unpaid interest on the principal balance being prepared as of the date of such prepayment, and any other amounts due in connection with the Loan, Maker shall pay to Lender the Make-Whole Amount.

For the purposes of determining the Make-Whole Amount, the following terms have the following meanings:

**"Make-Whole Amount"** means, with respect to the Note, an amount equal to the excess, if any, of the Discounted Value of the Remaining Scheduled Payments with respect to the Called Principal of such Note over the amount of such Called Principal, provided that the Make-Whole Amount may in no event be less than zero;

**"Called Principal"** means, with respect to the Note, the principal of the Note that is to be prepaid or has become or is declared to be immediately due and payable, as the context requires.

**"Discounted Value"** means, with respect to the Called Principal of the Note, the amount obtained by discounting all Remaining Scheduled Payments with respect to such Called Principal from their respective scheduled due dates to the Settlement Date with respect to such Called Principal, in accordance with accepted financial practice and at a discount factor (applied on the same periodic basis as that on which interest on the Note is payable) equal to the Reinvestment Yield with respect to such Called Principal.

**"Reinvestment Yield"** means, with respect to the Called Principal of the Note, the yield to maturity implied by (i) the yields reported, as of 10:00 A.M. (Missouri time) on the second Business Day preceding the Settlement Date with respect to such Called Principal, on the display designated as Bloomberg Financial Markets Govt PX (or such other display as may replace Bloomberg Financial Markets Govt PX for actively traded U.S. Treasury securities having a maturity equal to the Remaining Average Life of such Called Principal as of such Settlement Date; or (ii) if such yields are not reported as of such time or the yields reported as of such time are not ascertainable, the Treasury Constant Maturity Series Yields reported, for the latest day for which such yields have been so reported as of the second Business Day preceding the Settlement Date with respect to such Called Principal, in Federal Reserve Statistical Release H.15 (519) (or any comparable successor publication) for actively traded U.S. Treasury securities having a constant maturity equal to the Remaining Average Life of such Called Principal as of such Settlement Date. Such implied yield will be determined, if necessary, by (a) converting U.S. Treasury bill quotations to bond-equivalent yields in accordance with accepted financial practice and (b) interpolating linearly between (1) the actively traded U.S. Treasury security with the duration closest to and greater than the Remaining Average Life and (2) the actively traded U.S. Treasury security with the duration closest to and less than the Remaining Average Life.

**"Remaining Average Life"** means, with respect to any Called Principal, the number of years (calculated to the nearest one-twelfth year) obtained by dividing (i) such Called Principal into

2

(ii) the sum of the products obtained by multiplying (a) the principal component of each Remaining Scheduled Payment with respect to such Called Principal by (b) the number of years (calculated to the nearest one-twelfth year) that will elapse between the Settlement Date with respect to such Called Principal and the scheduled due date of such Remaining Scheduled Payment.

**"Remaining Scheduled Payments"** means, with respect to the Called Principal of the Note, all payments of such Called Principal and interest thereon that would be due after the Settlement Date with respect to such Called Principal if no payment of such Called Principal were made prior to its scheduled due date.

**"Settlement Date"** means, with respect to the Called Principal of the Note, the date on which such Called Principal is to be prepaid or has become or is declared to be immediately due and payable, as the context requires.

No delay or omission on the part of the holder in exercising any right hereunder or any right under any instrument or agreement now or hereafter executed in connection herewith, or any agreement or instrument which is given or may be given to secure the indebtedness evidenced hereby or by the Loan Agreement, or any other agreement now or hereafter executed in connection herewith or therewith shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or waiver of the same or of any other right on any future occasion.

Notwithstanding any provision contained herein or contained in the Loan Agreement or the other Loan Documents, the maximum amount of interest and other charges in the nature thereof contracted for, or payable hereunder or thereunder, shall not exceed the maximum amount which may be lawfully contracted for, charged and received in this loan transaction, all as determined by the final judgment of a court of competent jurisdiction, including all appeals therefrom.

All proceeds of the Loan shall be used solely for the purposes more particularly provided for and limited by the Loan Agreement.

The invalidity or unenforceability of any provision hereof, of the Loan Agreement or of the other Loan Documents, shall not impair or vitiate any other provision of any of such instruments, agreements and documents, all of which provisions shall be enforceable to the fullest extent now or hereafter permitted by law.

Any notices given with respect to this Note shall be given in the manner provided for in the Loan Agreement.

THIS NOTE AND ALL AGREEMENTS AND INSTRUMENTS EXECUTED BY MAKER IN CONNECTION HEREWITH AND WITH THE LOAN AGREEMENT OF EVEN DATE, EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH THEREIN OR IN THE LOAN AGREEMENT, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MISSOURI WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

The liability of the Maker and its partners, trustees or beneficiaries or shareholders  (as applicable), with respect to the Loan, is subject to the express limitations set forth in the Loan Agreement.

20300013.04

This Note is secured by, among other things, a Deed of Trust, Security Agreement and Financing Statement, containing provisions for future advances and future obligations governed by Section 443.055 R.S. Mo. (as amended) and which is a lien on the Property therein described, executed of even date herewith encumbering certain real property and improvements located or to be constructed thereon in Greene County, Missouri. All of the terms and conditions set forth in the Loan Documents are hereby made a part of this Note as if fully set forth herein, and Maker covenants and agrees to make all payments and perform all other obligations contained in the Loan Documents in accordance with the terms thereof.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

4

20300013.04

Executed as of the date first above written.

CATAMOUNT A/S EXCHANGE CORPORATION,
a Delaware corporation, Trustee of the WEC 96D
SPRINGFIELD INVESTMENT TRUST, a Delaware
business trust, under instrument dated November 22,
1996

[CORPORATE SEAL]

By: _____
Name:   Greg L. England
Title:    Vice President

5

20300013.04

## ALLONGE TO NOTE

ENDORSEMENT MADE TO $4,743,514.27
PROMISSORY NOTE DATED NOVEMBER 27, 1996
MADE BY CATAMOUNT A/S EXCHANGE CORPORATION,
AS TRUSTEE OF THE WEC 96D SPRINGFIELD INVESTMENT TRUST,
AS ORIGINAL MAKER, TO FIRST SECURITY BANK,
NATIONAL ASSOCIATION, AS PASS THROUGH TRUSTEE
UNDER PASS THROUGH TRUST AGREEMENT DATED
NOVEMBER 27, 1996, KNOWN AS THE CIRCUIT CITY-
STAUBACH PASS THROUGH TRUST, SERIES 1996-A, AS PAYEE,
AS ASSIGNED BY THAT CERTAIN ASSIGNMENT AND ASSUMPTION
AGREEMENT, DATED AS OF NOVEMBER 27, 1996


PAY TO THE ORDER OF LASALLE NATIONAL BANK, AS TRUSTEE
FOR THE REGISTERED HOLDERS OF GMAC COMMERCIAL
MORTGAGE SECURITIES, INC., MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 1998-C2 WITHOUT RECOURSE.



FIRST SECURITY BANK,
NATIONAL ASSOCIATION
a national banking association,
as Pass-Through Trustee


By: _____
   Name:  Dain W. Brown
   Title:  Assistant Vice President



Dated:  As of November __, 1998
New York, New York


::ODMA\PCDOCS\NEWYORK\81456\1
November 13, 1998 (9:29pm)
[Springfield (MO)]

# Exhibit 2

## AMENDED AND RESTATED
### DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT
amending and restating that certain Deed of Trust, Security Agreement and Financing Statement
recorded 12/3/96 with the Greene County Clerk's Office in Book_____ Page _____

**(With Future Advances and Future Obligations
Governed by Section 443.055 R.S.Mo.)**

THIS AMENDED AND RESTATED DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT amending and restating that certain Deed of Trust, Security Agreement and Financing Statement recorded December 3, 1996 with the Greene County Clerk's Office in Book ____, Page ____ (hereinafter referred to as the "Mortgage"), made and entered into as of the 27th day of November, 1996, between CATAMOUNT A/S EXCHANGE CORPORATION, a Delaware corporation, TRUSTEE of the WEC 96D SPRINGFIELD INVESTMENT TRUST, a Delaware business trust, under instrument dated November 22, 1996, whose address or principal place of business is 6750 LBJ Freeway, Suite 1100, Dallas, Texas 75240 (hereinafter referred to as "Borrower" whether one or more), and Lincoln Land Title Co., Inc. , 3256 South Freemont, Springfield, Missouri 65804 (hereinafter referred to as "Trustee")for the benefit of FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City-Staubach Pass Through Trust, Series 1996-A, with an address at 79 South Main Street, Salt Lake City, Utah (hereinafter referred to as "Lender").

WITNESSETH:

Borrower in consideration of the loan hereinafter specified and any future advances or future obligations which may hereafter be advanced or incurred and the trust hereinafter mentioned and the sum of One Dollars ($1.00) to Borrower paid by the Trustee, the receipt and sufficiency of which are hereby acknowledged, does by these presents GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM unto the Trustee the following described real estate situated in the County of Greene, State of Missouri:

See Exhibit "A", attached hereto and incorporated herein.

TOGETHER with Borrower's right, title, and interest in the other Property.

TO HAVE AND TO HOLD THE SAME, together with all the rights, hereditaments, appurtenances, and privileges in anywise appertaining or belonging thereto, unto the Trustee and the Trustee's successors and assigns forever in trust, for the uses and purposes hereinafter set forth, possession of the Property being hereby granted and conveyed to the Trustee.

The term Borrower shall include, wherever the context permits, its successors and assigns. The term Lender shall include, wherever the context permits, its successors and assigns as the holder for the time being of this Deed of Trust, Security Agreement and Fixture Financial Statement (referred to herein as this "Mortgage"), the "Note" (hereinafter defined), and other Obligations hereby secured.

This Mortgage is granted pursuant to the terms, provisions and conditions of a "Loan Agreement" dated as of even date between Borrower and Lender. Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement or, if not therein defined, such meaning as may be assigned to such terms in the Uniform Commercial Code as in effect in the State (hereinafter defined).

The term "Property" shall mean and include all of the following described property:

A.      The land ("Land"), together with the improvements and other structures now or hereafter situated thereon, which Land is more particularly described on **Exhibit "A"** which is annexed hereto and incorporated herein by reference, together with all rights, privileges, tenements, hereditaments, appurtenances, easements, including without

limitation rights and easements for access and egress and utility connections, and other rights now or hereafter appurtenant thereto ("Real Estate");

B.    All real estate fixtures or items which by agreement of the parties may be deemed to be such fixtures, now or hereafter owned by Borrower or in which Borrower has an interest, and now or hereafter located in or upon the Real Estate, or now or hereafter attached to, installed in, or used in connection with any of the Real Estate, including without limitation any and all portable or sectional buildings, bathroom, plumbing, heating, lighting, refrigerating, ice making, ventilating and air-conditioning apparatus and equipment, garbage incinerators and receptacles, elevators and elevator machinery, boilers, furnaces, stoves, tanks, motors, sprinkler and fire detection and extinguishing systems, doorbell and alarm systems, window shades, screens, awnings, screen doors, storm and other detachable windows and doors, mantels, partitions, built-in cases, counters and other fixtures whether or not included in the foregoing enumeration ("Fixtures");

C.    All bridges, easements, rights of way, licenses, privileges, hereditaments, permits and appurtenances hereafter belonging to or enuring to the benefit of the Real Estate and all right, title and interest of Borrower in and to the land lying within any street or roadway adjoining the Real Estate and all right, title and interest of Borrower in and to any vacated or hereafter vacated streets or roads adjoining the Real Estate and any and all reversionary or remainder rights ("Additional Appurtenances");

D.    All of the right, title and interest of Borrower in and to any award or awards heretofore made or hereafter to be made by any municipal, county, state or federal authorities to the present or any subsequent owners of the Land, the Improvements, the Fixtures, the Additional Appurtenances, the Leases (hereinafter defined) or the Personal Property, (hereinafter defined) including without limitation any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of the Land, the Improvements, the Fixtures, the Additional Appurtenances, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Land or any portion thereof; or (iii) any other injury to or decrease in value of the Property; subject, however, to the rights of Tenant (as defined in the Loan Agreement) under the Lease dated as of the date hereof, from Borrower to Circuit City Stores, Inc., a Virginia corporation, a memorandum or notice of which is or will be recorded in the applicable records of the county in which the Property is located (as referenced in the Loan Agreement and as used herein, the "Principal Lease") and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation ("Awards");

E.    All leases or occupancy agreements now or hereafter entered into by Borrower with respect to the Real Estate, or any portion thereof, including, without limitation, the Principal Lease, and all rents, issues, profits, revenues, earnings and royalties therefrom, all payments received in cancellation thereof, all proceeds received upon a tenant's acquisition of Real Estate by reason of a rejectable purchase offer or otherwise, all guaranties thereof and all right, title and interest of Borrower thereunder, including without limitation, cash, letters of credit or securities deposited thereunder to secure performance by the tenants or occupants of their obligations thereunder, whether such cash, letters of credit or securities are to be held until the expiration of the terms of such leases or occupancy agreements or applied to one or more of the installments of rent coming due prior to the expiration of such terms including without limitation, the right to receive and collect the rents thereunder ("Leases"); as used in this instrument, the term "Leases" shall not include Permitted Subleases as defined in the Loan Agreement; and

F.    All tangible and intangible personal property now owned or at any time hereafter acquired by Borrower of every nature and description, and used in any way in connection with the Real Estate, the Fixtures, the Additional Appurtenances, or any other portion of the Property, including, without limitation, all inventory; goods; materials; supplies; equipment; furnishings; fixtures; accounts; accounts receivable; chattel paper; documents; instruments; money; bank accounts; security deposits; claims to rebates, refunds or abatements of real estate taxes or any other taxes; contract rights; plans and specifications; permits, licenses; general intangibles; the rights of Borrower under contracts with respect to the Real Estate or any other portion of the Property; signs, brochures, advertising, and good will; copyrights and trademarks; all proceeds from insurance payable to the landlord or its lender under the Leases or paid to Borrower by other sources for any damage or loss to all or any portion of the Real Estate, the Fixtures, the Additional Appurtenances or any other portion of the Property, together with any unearned insurance premiums paid or payable to Borrower; and all

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 2

proceeds, products, additions, accessions, substitutions and replacements to any one or more of the foregoing (collectively, the "Personal Property").

The term "Obligations" shall mean and include:

A.       The payment of the principal sum, interest, charges and indebtedness evidenced by that certain Promissory Note ("Note") dated as of even date herewith, including any extensions, renewals, replacements, modifications and amendments thereof, in the original amount of $4,743,514.27 given by Borrower, as maker, payable to the order of Lender, with the full debt, if not paid earlier, due and payable on December 1, 2018. The loan evidenced by the Note is sometimes referred to herein as the "Loan";

B.       The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by Borrower under and pursuant to this Mortgage or the Loan Agreement and by the Borrower under each of the other Loan Documents referred to in, or now or hereafter executed in connection with, the Loan Agreement;

C.       The payment of all costs, expenses, legal fees and liabilities incurred by Lender in connection with the enforcement of any of Lender's rights or remedies under this Mortgage, the other Loan Documents, or any other instrument, agreement or document which evidences or secures any other Obligations or collateral therefor, whether now in effect or hereafter executed;

D.       The payment, performance, discharge and satisfaction of every obligation of Borrower, as "assignor", to Lender, as "assignee", under and pursuant to the "Assignment of Leases and Rents" of even date given to Lender to be recorded and filed herewith; and

E.       The payment, performance, discharge and satisfaction of all other liabilities and obligations of Borrower to Lender, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including without limitation each liability and obligation of Borrower under any one or more of the Loan Documents and any amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

Borrower hereby grants to Lender a continuing security interest in all of the Property in which a security interest may be granted under the Uniform Commercial Code as such is in effect in the state where the Real Estate is located (the "State") including, without limitation, the Fixtures and the Personal Property, whether now or at any time hereafter acquired and used in any way in connection with the development, construction, marketing or operation of the Real Estate, to secure all Obligations.

As further security for the Loan, Borrower hereby sells, assigns, conveys, pledges, hypothecates and transfers to Lender, and hereby grants Lender a security interest in, any and all personal property now or hereafter owned by the Borrower or in which the Borrower may now or hereafter have an interest, including without limitation all tangible personal property, all Accounts, Instruments, Documents, General Intangibles, Equipment, Inventory, Chattel Paper, and all accessories to and additions to, substitutions for, and replacements, proceeds and products of any and all of the foregoing.

This instrument is intended to take effect as a security agreement encumbering each and every item of personal property included herein as part of the Property or as to which Borrower has granted a security interest to Lender, pursuant to the Uniform Commercial Code ("UCC") as presently in effect in the State and this Mortgage shall be effective as a financing statement filed as a fixture filing. The name of the record owner of said real estate is the Borrower set forth in page one of this Mortgage. Information concerning the security interest created by this instrument may be obtained from Lender, as secured party, at its address as set forth in page one of this Mortgage. The name and address of the Borrower, as debtor, are as set forth in page one to this Mortgage.

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 3

Borrower covenants, warrants, represents and agrees with Lender that:

1. **Title.** Borrower is the owner and record holder in fee simple of the Real Estate, the Fixtures, the Additional Appurtenances, the Awards, the Leases and the Personal Property and has good right, full power and lawful authority to grant and convey the same in the manner aforesaid; and that the Property are free and clear of all encumbrances and exceptions, except for the Permitted Title Exceptions as set forth on **Exhibit "B"** which is annexed hereto and incorporated herein by reference. Any equipment or Fixtures used by the Borrower and installed upon the Property shall be used solely for business purposes and for Borrower's own use or as the equipment and furnishings leased or furnished by the Borrower, as landlord, to tenants of the Property. Such equipment or Fixtures shall be kept at the buildings located on the Property and shall not be removed therefrom without the consent of the Lender and may be affixed to such building(s) but will not be affixed to any other Real Estate. Unless stated otherwise in this Mortgage the only persons having any interest in the Property are the Borrower, tenants under Leases, and the Lender and no financing statement covering any such property and any proceeds thereof is on file in any public office except pursuant hereto. Borrower will from time to time provide Lender on request with itemizations of all Personal Property.

2. **Performance of Obligations.** Borrower shall pay and perform and observe all of the obligations and conditions set forth in each of the Note, this Mortgage, the Assignment of Leases and Rents, the Loan Agreement, and each other Loan Document or other agreements, if any, executed by Borrower in connection with the Loan.

3. **Protection and Maintenance.** Borrower shall protect and maintain or cause its tenant(s) to maintain in good order, repair and tenantable condition at all times, the buildings and structures now standing or hereafter erected on the Property, and any additions and improvements thereto, and all Personal Property now or hereafter situated therein, and the utility services, the parking areas and access roads, and all Fixtures and equipment and articles of Personal Property now or hereafter acquired and used in connection with the operation of the Property. Borrower promptly shall replace (or cause to be replaced) any of the aforesaid which may become lost, destroyed or unsuitable for use with other property of first-class character. Subject to the provisions of this section, in any instance where Borrower in its sound discretion determines that any item subject to a security interest under this Mortgage has become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary for the operation of the Property, Borrower may, at its expense, subject to the terms of the Principal Lease, remove and dispose of it and substitute and install other items not necessarily having the same function, provided, that such removal and substitution shall not impair the operating utility, unity or value of the Property. All substituted items shall become a part of the Property and subject to the lien of the Mortgage. Any amounts received by or allowed Borrower upon the sale or other disposition of the removed items of property shall be applied first against the cost of acquisition and installation of the substituted items with any remaining funds paid to Lender. Nothing herein contained shall be construed to prevent any tenant or subtenant from removing from the Property trade fixtures, furniture and equipment installed by it and removable by such tenant under the terms of its Lease, on the condition, however, that to the extent required under the Leases, the tenant or subtenant shall, at its own cost and expense, repair any and all damages to the Property resulting from or caused by the removal thereof.

4. **Insurance Coverages.** Borrower shall insure or cause the Tenant under the Principal Lease to insure the Property and the operation thereof with such coverages and in such amounts (including self-insurance) as are required by the provisions of the Principal Lease and shall at all times keep or cause its tenant(s) to keep such insurance in full force and effect and promptly pay all premiums required to keep such insurance in full force and effect. Copies of the original of all such policies of insurance (or certificates or binders thereof issued by the insurer in form, content and manner of execution satisfactory to Lender) or a statement from Tenant that it is self-insuring with a description thereof shall be delivered to Lender, and Borrower shall deliver to Lender a copy of any new policy (or such a certificate) as replacement for an expiring policy (or such a certificate) required to be deposited hereunder together with proof of payment of the premiums therefor (subject to the terms of the Leases). Borrower hereby irrevocably appoints Lender its true and lawful attorney-in-fact, which power is coupled with an interest and with full power of substitution, after an Event of Default, to assign any policy in the event of the foreclosure of this Mortgage. In the event that any of the Leases permits the tenant(s) to self-insure, and such self-insurance is elected by such tenant, Borrower shall use its best efforts to verify that such tenant(s) strictly comply with the self-insurance requirements of such Leases.

5. **Insurance Proceeds.** In the event of a casualty, the proceeds of any hazard insurance (or any amounts owed by a tenant permitted to self-insure pursuant to the Loan Agreement) or other proceeds resulting from such casualty

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 4

shall be applied in accordance with the terms and conditions of the Loan Agreement; subject, however, to the terms of the Principal Lease.

6.    **Eminent Domain.** In the event of any condemnation for public use of, or injury to the Property, the Awards and any other damages on account of such condemnation shall be applied in accordance with the terms and conditions of the Loan Agreement; subject, however, to the terms of the Principal Lease.

7.    **No Waste; Compliance With Law.** Borrower shall: (A) not commit or suffer (i) any waste of the Property, or any portion thereof, or (ii) not commit any violation of any law, rule, regulation, ordinance, license or permit or of the requirements of any licensing authority, affecting the Property, or any portion thereof, or any business conducted thereon; (B) except as permitted in the Leases, not commit or suffer any demolition, removal or material alteration of any of the Property (except for the replacement of Fixtures and Personal Property pursuant to Section 3 above); (C) not violate, nor suffer the violation of, the covenants and agreements, if any, of record against the Property; and (D) in all respects, do or use its best efforts to verify that its tenant(s) do all things necessary to comply with, and keep in full force and effect, all licenses, permits and other governmental authorizations for the operation of the Property for its intended purposes, including, without limitation express or implied, the licenses, permits and authorizations referenced in the Loan Agreement.

8.    **Hazardous Materials, Toxic Substances and Related Matters.** Until such time as all Obligations of Borrower with respect to the Loan have been paid in full, the Borrower shall comply or cause compliance with all Environmental Legal Requirements (as defined in the Loan Agreement), including, but not limited to, Hazardous Materials Legal Requirements (as defined in the Loan Agreement), applicable to the Property, and the Borrower shall take all remedial action necessary to avoid any liability of Borrower or Lender, and to avoid the imposition of, or to discharge, any liens on the Property, as a result of any failure to comply with Environmental Legal Requirements with respect to the Property.

9.    **Payment of Taxes and Prevention of Liens.** Borrower shall pay or cause its tenant(s) to pay before delinquent or before any penalty for nonpayment attaches thereto, all taxes, assessments and charges of every nature and to whomever assessed that now or hereafter may be levied or assessed upon the Property or any part thereof, or upon the rents, issues, income or profits thereof or upon the lien or estate hereby created, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or ad valorem real estate or personal property taxes or as income taxes. Borrower shall provide notice of any such taxes, assessments and charges to Lender within ten (10) days of receipt. Borrower may apply for tax abatements, pay taxes under protest, and prosecute diligently and in good faith claims for refund so long as: (a) no such actions are prosecuted to a position that would allow the institution of any proceedings to divest Borrower of its title to all or any portion of the Property , (b) the Borrower shall have adequate unencumbered (except in favor of Lender) cash reserves with respect thereto, and the Borrower may grant its tenant(s) the right to take such actions, and (c) all other conditions set forth in the Principal Lease have been met (with all references in Paragraph 18 to "Tenant" being read as "Landlord" and all references to "Landlord" as "Lender"; the Tenant may contest any such taxes or assessment as allowed in, and subject to, the terms and provisions of Section 18 of the Principal Lease. Borrower shall or shall cause its tenants to pay all sums which, if unpaid, may result in the imposition of a lien on the Property before such lien may attach (except that real estate taxes need not be paid prior to the delinquency date thereof) or which may result in conferring upon a tenant of any part or all of the Property a right to recover such sums as prepaid rent.

10.    **Due On Sale; No Other Encumbrances; No Transfer of Ownership Interests; Failure to Comply with Permitted Exceptions.** Except as otherwise specifically provided for in the Loan Agreement, it shall be an Event of Default under the Loan Agreement, if, except as expressly permitted in the Loan Agreement without Lender's prior written consent in each instance, (i) there is any sale, conveyance, transfer or encumbrance of all or any portion of the Property; (ii) there is any transfer or assignment of, or grant of any security interest in, any of the ownership interests in Borrower; (iii) there is a failure to materially comply with the provisions of, or there is a default under, any of the Permitted Title Exceptions unless cured within any applicable grace period provided for in the applicable Permitted Title Exception; or (iv) Borrower or Tenant shall create or permit to be created or to remain, any lien or encumbrance on any of the Property or the rents or other sums payable to Borrower under the Principal Lease or other Leases, other than as allowed under the Loan Documents and the Permitted Title Exceptions.

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 5

11.     **Lender's Rights**. If Borrower shall neglect or refuse: (i) to maintain or cause to be maintained and keep or cause to be kept in good repair the Property or any part thereof as required by this Mortgage or the Loan Agreement; (ii) to maintain and pay the premiums for or cause its tenant(s) to maintain and pay the premiums for insurance which may be required by this Mortgage or the Loan Agreement; (iii) to pay and discharge or cause its tenant(s) to pay and discharge all taxes of whatsoever nature, assessments and charges of every nature and to whomever assessed, as required by this Mortgage or the Loan Agreement; (iv) to pay the sums required to be paid by this Mortgage or the Loan Agreement, or (v) to satisfy any other terms or conditions of this Mortgage, or any instrument secured hereby; then Lender may, after thirty (30) days prior written notice (except in the case of an emergency where there is danger to persons or property, or required insurance coverage would lapse, in each of which events no notice shall be required), cause such repairs or replacements to be made, and Lender may, after notice to Borrower, obtain such insurance or pay said taxes, assessments, charges, and sums, incur and pay reasonable amounts in protecting its rights hereunder and the security hereby granted, pay any balance due under any conditional agreement of sale (or lease) of all or any of the Property, and pay any amounts as Lender deems reasonably necessary or appropriate to satisfy any term or condition of this Mortgage, which Borrower shall have failed to satisfy, or to remedy any breach of such term or condition, and any amounts or expenses so paid or incurred, together with interest thereon from the date of payment by Lender at the Default Rate as provided in the Loan Agreement shall be immediately due and payable by Borrower to Lender and until paid shall be secured hereby equally and ratably, and the same may be collected as part of said principal debt in any suit hereon or foreclosure hereof. No payment by Lender shall relieve Borrower from any default hereunder or impair any right or remedy of Lender with consequent thereon.

12.     **Tax Reserve**. Borrower shall not be required to maintain with, or to pay or cause to be paid to, Lender a reserve fund for taxes, assessments, liens and charges on or against the Property. Such payments, if voluntarily made by Borrower or Tenant, shall be invested in an interest-bearing account with the interest earned to be added to the reserve account and shall be paid to or for Borrower's benefit as set forth below. Such reserve fund may be paid to the taxing authority upon written request of Borrower provided that such request is accompanied by the current billing from the taxing authority.

13.     **Certain Expenses**. If any action or proceeding is commenced, including, without limitation, an action to foreclose this Mortgage or to collect the debt hereby secured, to which action or proceeding Lender is made a party by reason of the execution of this Mortgage, or by reason of any obligation which it secures, or by reason of entry or any other action under this Mortgage, or if it becomes necessary in connection with legal proceedings or otherwise to defend or uphold the mortgage hereby granted or the lien hereby created or any act taken to defend or uphold the mortgage hereby granted or the lien hereby created or any act taken under this Mortgage, or if it becomes necessary to employ the services of an attorney at law to collect any of the Obligations, whether or not legal proceedings are commenced, all sums reasonably paid or incurred by Lender for the expense of any litigation or otherwise, in connection with any rights created by this Mortgage or any other Loan Document, shall be paid by Borrower, or may at the option of Lender be added to the debt secured hereby and shall be secured hereby equally and ratably and shall bear interest until paid at the Default Rate set forth in the Loan Agreement.

14.     **Regarding Leases**. As to each of the Leases, Borrower will perform every material obligation of the lessor and will enforce every material obligation of the lessee in the Leases in effect with respect to all or any part or all of the Property at Borrower's sole cost and expense and will not cancel any such Lease, nor terminate or accept a surrender thereof, or reduce the rent payable thereunder or modify or amend or assign any such Lease or accept any prepayment of rent thereunder (except any rent which may be required to be prepaid by the terms of any such Lease), or enter into any new Leases, without first obtaining on each occasion the prior written consent of Lender. Lender may require that all security deposits and similar funds or security provided by a lessee or occupant be deposited with Lender, or with an escrow agent satisfactory to Lender, subject to the rights of the lessee or occupant, but otherwise subject to a security interest in favor of Lender. At the option of Lender, which may be exercised at any time or from time to time, by written notice to Borrower and to any applicable tenant, this Mortgage shall become subject and subordinate, in whole or in part (but not with respect to priority of entitlement to insurance proceeds or condemnation proceeds, which is governed by other provisions of the Loan Documents), to any and all Leases of all or any part of the Property upon the execution by Lender and recording and filing thereof, at any time hereafter in the land records of a unilateral declaration to that effect.

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 6

15.    **Further Assignment by Borrower.**  Borrower hereby further assigns to Lender as security for the Obligations the Borrower's interests in any or all Leases, now or hereafter outstanding, and to the extent it may lawfully do so Borrower's interests in all agreements, contracts, licenses and permits, now or hereafter outstanding, affecting all or any portion of the Property and Borrower shall execute, acknowledge and deliver an assignment of leases and rents as to any new Leases and such further or confirmatory assignments thereof, by instruments in form satisfactory to Lender, as Lender may reasonably require. Borrower hereby authorizes Lender in the event of foreclosure, to sell and assign said interest(s) to the purchaser at foreclosure, but neither such assignment nor any such future assignment shall be construed as binding Lender to any Lease, agreement, contract, license or permit so assigned, or to impose upon Lender any obligations with respect thereto, provided, however, that Borrower shall not indemnify and hold Lender harmless from liability, loss or damage arising from the gross negligence or willful misconduct of the Lender and incurred either (i) after Lender has exercised its right to enter and take possession of the Property pursuant to the Loan Documents and while Lender was actually in possession of the Property at the time such action arose, (ii) after Lender has exercised its rights to foreclose on the Mortgage securing the Obligations or (iii) after Lender has acquired the Property by deed-in-lieu of foreclosure.  Borrower hereby irrevocably appoints Lender, or any agent designated by Lender, its true and lawful attorney-in-fact, which power is coupled with an interest and with full power of substitution, after an Event of Default, to execute, acknowledge and deliver any such assignment on behalf of Borrower.

16.    **Recording and Filing.**  Borrower shall promptly cause this Mortgage and any required financing statements to be recorded and re-recorded, filed and re-filed at Borrower's expense at such times and places as may be required by law, or upon Lender's written request, as may be reasonably deemed advisable by Lender, to create, preserve or protect the priority hereof and of any lien created hereby upon the Property or any part thereof; and Borrower shall from time to time do and cause to be done all such things as may be required by Lender or required by law, including all things which may from time to time be necessary under the Uniform Commercial Code in effect in the State fully to create, preserve and protect the priority hereof and of any lien created hereby upon said property.  Borrower hereby irrevocably appoints Lender, or any agent designated by Lender, its true and lawful attorney-in-fact, which power is coupled with an interest and with full power of substitution, to execute, acknowledge and deliver any such things on behalf of Borrower which Borrower fails or refuses to do.

The filing of a financing statement pursuant to the Uniform Commercial Code shall never limit any of the rights of Lender as determined by this instrument or affect the priority of the Lender's security interest granted hereby or by any other recorded document or instrument, or impair the stated intention of this Mortgage that all Equipment, Personal Property and Fixtures comprising the Property as well as all Awards, insurance payments, Rents and Leases are, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the Real Estate mortgaged hereunder irrespective of whether such item is physically attached to the Real Estate or any such item is referred to or reflected in a financing statement. Borrower shall on demand deliver all financing statements that may from time to time be required by Lender to establish and perfect the priority of Lender's security interest in the Property and shall pay all reasonable expenses incurred by Lender in connection with the renewal or extensions of any financing statements executed in connection with the Property. Borrower shall give advance written notice of any proposed change in Borrower's name, identify or structure and will execute and deliver to Lender prior to or concurrently with such change all additional financing statements that Lender may require to establish and perfect the priority of Lender's security interest.

17.    **Right to Deal with Successor.**  Lender may, without notice to any person, deal with any successor in interest of Borrower herein regarding this Mortgage and the debt hereby secured in all respects as it might deal with Borrower herein, without in any way affecting the liability hereunder or upon the debt hereby secured of any predecessor in interest of the person so dealt with; and no sale of the Property or any part thereof, nor any forbearance on the part of Lender, nor any extension by Lender of the time for payment of the debt hereby secured, shall operate to release, discharge, modify, change or affect the original liability of any predecessor in interest of the equity owner at the time of such sale, forbearance or extension.

18.    **Right to Accelerate.**  Time and the exact performance of Borrower's obligations are material and of the essence hereof. On the happening of any one or more of such Events of Default, or at any time during the continuance of any such Event of Default Lender, at its sole option, and without notice, demand or presentment, which are hereby waived, shall have the right to declare the Obligations or any part thereof immediately due and payable or may, at its option and without notice or demand to Borrower, take immediate possession of the Property and Personal Property, with

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 7

or without appointment of a receiver or application therefor, and let the same either in its own name or in the name of Borrower, and receive the rents, issues, and profits thereof and apply the same, after payment of all necessary charges and expenses including commissions for collection or management services, to the Obligations. Said rents, issues, and profits are hereby assigned to Lender, and Borrower hereby irrevocably appoints Lender its true and lawful attorney-in-fact, upon the occurrence of an Event of Default to manage the Property and the Personal Property and collect the rents, with full power to bring suit for collection of said rents and to do and perform all and every act necessary to be done, provided, however, that this power of attorney and assignment of rents shall not be construed as an obligation upon Lender to make any repairs upon the Property or the Personal Property or to act as attorney-in-fact, and neither the Lender nor the Lender's agents shall be liable for negligence in the event of its management or possession of the Property or the Personal Property.

Upon the occurrence of an Event of Default hereunder Lender shall, at its option and without notice or demand, be entitled to enter upon the Property to take immediate possession of the Personal Property. Upon request, Borrower shall assemble and make the Personal Property available to Lender at a place designated by Lender which is reasonably convenient to both parties. Lender may sell all or any portion of the Personal Property at public or private sale in accordance with the Uniform Commercial Code as adopted in the State of Missouri or in accordance with the foreclosure advertisement and sale provisions under this Mortgage. Borrower agrees that a commercially reasonable manner of disposition of the Personal Property upon the occurrence of an Event of Default shall include, without limitation and at the option of Lender, the sale of the Personal Property, in whole or in part, concurrently with a foreclosure sale of the Property in accordance with the provisions of this Mortgage. In the event the Lender shall dispose of any or all of the Personal Property after the occurrence of an Event of Default, the proceeds of disposition shall be applied in the following order: (a) to the expenses of retaking, holding, preparing for sale, selling, and the like; (b) to the attorneys' fees and legal expenses incurred by Lender; (c) to the satisfaction of the Obligations; and (d) the balance, if any to subordinate lien holders and Borrower as their interests may appear. Borrower hereby waives any right of redeeming the Personal Property.

19.     **Additional Rights of Lender.** Borrower authorizes Lender, in addition to all other rights granted by law or by this instrument, whenever and as long as any default hereunder or under the Loan Agreement shall exist and remain uncured beyond the applicable grace period, if any, and with notice, if any, required to be given by the terms of any of the Loan Documents, or upon the occurrence of an Event of Default under the Loan Agreement, to enter and take possession of all or any part of the Property with or without the appointment of a receiver or an application therefor and to use, operate, manage and control the same and conduct the business thereof, and perform lessor's obligations under any Lease or Borrower's obligations under any other agreement affecting all or any part of the Property, and collect the rents, profits and all receipts of every nature therefrom as Lender shall deem best. Upon every such entry, Lender may from time to time at the expense of Borrower make all such repairs, replacements, alterations, additions and improvements to the Property as Lender may deem proper, but only to the extent allowed under the Principal Lease, but in no event shall Lender be obligated to do so, and may, but shall not be obligated to, exercise all rights and powers of Borrower either in the name of Borrower, or otherwise as Lender shall determine; without limitation express or implied upon the generality of the foregoing, Lender shall have the right to do all things necessary or desirable in order to keep in full force and effect the licenses, permits and authorizations and any amendments thereto. Upon such entry, Lender may, at its option, but without any obligation to do so, do any one or more of the following, but only to the extent allowed under the Principal Lease: pay and incur all expenses necessary or deemed by it appropriate for the holding and operating of the Property, conduct of any business thereon, the maintenance, repair, replacement, alteration, addition and improvement of the Property, including without limitation payments of taxes, assessments, insurance, wages of employees connected with the Property or any business conducted thereon, charges and reasonable compensation for service of Lender, its attorneys and accountants and all other persons engaged or employed in connection with the Property of any business conducted thereon and, in addition, Lender, at its option, may, but shall not be obligated to, make payments or incur liability with respect to obligations arising prior to the date it takes possession. All obligations so paid or incurred by Lender shall be reimbursed or paid for by Borrower upon demand and prior to the repayment thereof shall be added to the debt secured hereby and shall bear interest at the Default Rate provided for in the Loan Agreement in respect of amounts due after maturity, and shall be secured hereby equally and ratably. Lender also may reimburse itself therefor from the income or receipts of the Property or any business conducted thereon, or from the sale of all or any portion of the Property. Lender also may apply toward any of the Obligations any tax reserve account, deposit or any sum credited or due from Lender to Borrower without first enforcing any other rights of Lender against Borrower or the against any endorser or guarantor of any of the Obligations or against the Property. Borrower hereby irrevocably constitutes and appoints Lender, or any agent

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 8

designated by Lender, for so long as this Mortgage remains undischarged of record, as its attorney-in-fact, which power is coupled with an interest, with full power of substitution, after an Event of Default, to execute, acknowledge, seal and deliver all instruments, agreements, deeds, certificates and other documents of every nature and description in order to carry out or implement the exercise of Lender's rights hereunder and under the other Loan Documents.

20.     **Contest of Laws.** Borrower and/or Tenant shall have the right to contest in good faith by appropriate legal proceedings, but without cost or expense to Lender, the validity of any laws, ordinances, orders, rules and regulations affecting the Property, if compliance may be so contested without the imposition during such contest of any charge, lien or liability against the Property, without the loss or suspension during such contest of any license, right or permit with respect to the Property, and without causing any Event of Default to exist under the Loan Agreement or any other Loan Document, and Borrower and/or Tenant may postpone compliance therewith until the final determination of any such proceedings; provided that same is done in accordance with the requirements therefor contained in the Principal Lease.

21.     **Notices.** Any demand, notice or request by either party to the other shall be in writing and shall be sufficiently given if delivered to the party intended to receive the same or if mailed by registered or certified mail addressed to such party at the address of such party and delivered or tendered as more particularly provided for in the Loan Agreement or in the case of any party at such other address as may be stated in a notice delivered or mailed as therein provided.

22.     **Lender Not Obligated; Cumulative Rights.** Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Property or any business conducted thereon, and all options given to Lender, as to remedies or otherwise, are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide.

23.     **Severability.** In case any one or more of the provisions of this Mortgage, the Note, the Assignment of Leases and Rents, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof. Each of the provisions of every such agreement, document or instrument shall be enforceable by Lender to the fullest extent now or hereafter permitted by law.

24.     **No Waiver.** No consent or waiver, express or implied, by Lender to or of any default or Event of Default by Borrower shall be construed as a consent or waiver to or of any other default or Event of Default at the same time or upon any future occasion.

25.     **Foreclosure.** If an Event of Default hereunder occurs, then the Obligations then remaining unpaid shall, at the option of Lender, become immediately due and payable regardless of maturity, without notice or demand other than any applicable cure period and notice requirements other than any applicable cure period and notice requirements otherwise stated herein or in the Note and this Mortgage which shall remain in force, and the Trustee shall, after receiving notice of the election and demand for sale from the Lender, proceed to sell the Property as one parcel in its entirety or any part thereof, either in mass or in parcels, at the absolute discretion of the Trustee at public vendue at the door of the Court House or other location then customarily employed for the purpose, in the County where the Property is located, to the highest bidder for cash, first making or causing to be made or given such demands or notices of the time, terms and place of sale, and a description of the property to be sold, by advertisement published and as is provided by the laws of the State of Missouri then in effect, and upon sale, the Trustee shall (subject to any applicable statutory periods and rights of redemption) execute and deliver a deed of conveyance of the property sold to the purchaser or purchasers thereof, and any statement or recital of fact in such deed, in relation to the non-payment of the Obligations, existence of the Obligations, notice of advertisement, sale, and receipt of the proceeds of sale, shall be presumptive evidence of the truth of such statements or recitals, and the Trustee shall receive the proceeds of such sale out of which the Trustee shall pay in the following order: (1) the cost and expenses of executing this trust, including compensation to the Trustee and to any attorneys employed by the Trustee or the Lender for their services; (2) to the Lender, upon the usual vouchers therefor, all amounts paid for insurance, taxes, lien claims, and other payments made by Lender as provided herein, with interest thereon at a rate per annum equal to the lesser of (i) the highest rate permitted by applicable law, or (ii) the post maturity rate of interest specified in the Note; (3) the amount due on the Note and the Obligations then due and unpaid; (4) the

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 9

amount due on any junior encumbrances, with interest; (5) the remainder of such proceeds, if any, shall be paid to Borrower.

The Lender may bid and become purchaser at any sale under this Mortgage. Any sale of the Property under this Mortgage shall, without further notice, create the relation of landlord and tenant at sufferance between the purchaser and Borrower or any person holding possession of the Property through Borrower, and upon failure of Borrower or such person to surrender possession thereof immediately, Borrower or such person may be removed by a writ of possession of the purchase in any Court having venue.

The Trustee may sell and convey the Property under the power aforesaid, although the Trustee has been, may now be or may hereafter be attorney or agent of the Lender in respect to the Obligations or any part thereof or this Mortgage or in respect to any matter of business whatsoever.

The Trustee hereby lets the Property to the Borrower until a sale be had under the foregoing provisions, upon the following terms and conditions, such letting being to-wit: The Borrower and every and all persons claiming or possessing the Property, or any part thereof, by, through or under Borrower shall pay rent therefor during said term at the rate of one cent per month, payable monthly upon demand, and without notice or demand shall surrender immediate peaceable possession of said premises, to the purchaser thereof, under such sale. Should possession not be surrendered as provided for herein the purchaser shall be entitled to institute proceedings for possession as aforesaid.

In any action or proceeding to foreclose this Mortgage, Lender shall be at liberty to apply, without notice, for the appointment of a receiver for the rents and profits of the property, and shall be entitled to the appointment of such a receiver as a matter of right without regard to the value of the Property as security for the indebtedness due Lender or the solvency of any person, or corporation, liable for the payment of such indebtedness.

26.    **Headings**. Headings and captions in this Mortgage are for convenience and reference only and the words and phrases contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of any of the provisions hereof.

27.    **Time of Essence**. Time shall be of the essence of each and every provision of the Loan Agreement, the Note, this Mortgage and each of the other Loan Documents.

28.    **Governing Law**. This Mortgage and all agreements and instruments executed by Borrower in connection herewith shall be governed by and construed in accordance with the internal laws of the State of Missouri.

29.    **Set-Off**. Borrower grants to Lender a direct and continuing lien and security interest, as security for all of Borrower's Obligations, in and upon all deposits, balances and other sums credited by or due from Lender to Borrower. If any payment is not made when due under any of the Loan Documents, after giving regard to applicable grace periods, if any, or if any Event of Default or other event which would entitle Lender to accelerate the Loan occurs, any such deposits, balances or other sums credited by or due from Lender to Borrower, excluding deposits which Borrower is holding in trust or escrow for the sole benefit of third parties and which Borrower has previously designated to Lender as being so held, to the fullest extent permitted by law at any time or from time to time without notice or compliance with any other condition precedent now or hereafter imposed by statute, rule of law or otherwise, all of which hereby are waived, may be setoff, appropriated and applied by Lender against any and all of Borrower's Obligations irrespective of whether demand shall have been made and although such Obligations may be unmatured, in such manner as Lender in sole and absolute discretion may determine. The rights of Lender under this Section are in addition to and not in limitation of other rights and remedies including other rights of setoff which Lender may have. Borrower shall have no right of setoff.

30.    **Limited Recourse Provisions**. The liability of the Borrower and its partners, trustees and beneficiaries, or shareholders, with respect to the Obligations is subject to the express limitations set forth in the Loan Agreement.

31.    **Lender's Right of Inspection**. Lender and its agents and designees have the right to enter the Property at the times, subject to prior notice, and for all purposes, as are allowed to Borrower under the Principal Lease.

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 10

32.     **Waiver of Statutory Rights**. Except to the extent permitted by applicable law, and in consideration of Lender's making the loan that is secured hereby, Borrower hereby agrees that it shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "moratorium laws," now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, but hereby waives the benefit of such laws. Except to the extent permitted by applicable law, Borrower itself and all who may claim through or under it waives any and all right to have the property and estates comprising the Property marshalled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Property sold as an entirety. Borrower hereby waives, to the extent legally permitted to do so, any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on its behalf and on behalf of each and every person, except decree or judgment creditors of Borrower, acquiring any interest in or title to the Property subsequent to the date of this Mortgage.

Also, except as specifically provided in the Loan Agreement, Borrower hereby expressly (a) waives any and all rights it may have under applicable law to prepay without charge or premium all or any part of the Note, either voluntarily or upon a declaration or acceleration following the occurrence of an Event of Default, and (b) agrees that if, for any reason, Lender declares all or any part of the principal of the Note to become due and payable or accelerates the maturity date of the Note on account of any Event of Default, and prepayment of all or any part of the principal of the Note is made by or on behalf of Borrower, or is otherwise made or occurs in connection with any reinstatement of this Mortgage under any foreclosure proceedings, or any right of redemption is exercised by Borrower or any other party having the right to redeem or prevent any foreclosure of this Mortgage, or prepayment of all or any part of the principal of the Note is made or occurs upon the consummation of any foreclosure sale, then Borrower or any other party making any such prepayment shall be obligated to pay, concurrently therewith, any premium in the amount set forth in the Loan Documents, and the payment of such premium shall be a condition to the making of such prepayment and shall be secured by this Mortgage. In addition, without limiting the scope of any other provision in this Mortgage, waives any right Borrower may have to repay the loan without charge and agrees to pay any premium set forth in any of the Loan Documents pursuant to any declaration, acceleration or otherwise, and Borrower hereby declares that Lender's agreement to make the loan to Borrower at the interest rate and for the term set forth in the Note constitutes adequate consideration for this waiver and agreement by Borrower.

33.     **Estoppel Affidavit**. Borrower, within ten (10) business days after written request from Lender, shall furnish a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defense exists against such indebtedness, and covering such other matters as Lender may reasonably require.

34.     **Binding on Successors and Assigns**. This Mortgage and all provisions hereof shall be binding upon Borrower and all persons claiming under or through Borrower, and shall inure to the benefit of the holders from time to time and of the successors and assigns of the Lender.

35.     **Amendments in Writing; Approvals and Consents by Lender; Lender's Discretion.**. Any amendment, modification, termination, discharge, waiver, release or forbearance of or under this Mortgage must be n writing. Wherever Lender's consent or approval is contemplated or required in this Mortgage, such consent or approval must be in writing and may be granted or withheld in Lender's discretion, unless otherwise expressly provided. Any consent or other decision or judgment to be made by Lender hereunder or under the Loan Documents shall be at Lender's sole discretion unless otherwise specified. Any reference in the Loan Documents to "Lender's discretion" shall mean Lender's sole discretion unless otherwise specified.

36.     **No Partnership or Joint Venture**. No provision of this Mortgage or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender, it being intended that the only relationship created by this Mortgage, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

37.     **Future Advances for Protection of Property**. The total amount outstanding at any one time which is secured by this Mortgage, excluding any interest and any amounts advanced by Lender for the protection of the security

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 11

interest herein granted shall not exceed $4,743,514.27. This Mortgage, shall be governed by all provisions of Section 443.055 of the Revised Statutes of Missouri.

38.     **Business Loan; Not Personal Residence.** Borrower covenants, warrants and represents that all of the proceeds of the Loan shall be used for business or commercial purposes, none of the proceeds of the Loan shall be used for personal, family or household purposes, and that no individual liable for the Loan resides or intends to reside in any portion of the Property, and that no individual liable for the Loan resides or intends to reside in any portion of the Property, and that the Property does not constitute the homestead of the Borrower.

39.     **Conflicts.** Any matters for which there is a conflict or inconsistency between this Mortgage and the Loan Agreement shall be deemed to be governed by the terms and provisions of the Loan Agreement.

40.     **No Merger of Title.** There shall be no merger of any lease of or leasehold estate in the Property into any fee estate or ownership interest in the Property by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, such lease, leasehold estate, fee estate or ownership interest, unless the parties shall join in and record a written instrument effecting such a merger.

41.     **Publicity.** Borrower shall not use the name of Lender or any affiliate of Lender in any advertising or on any sign erected on the Premises without the prior written consent of Lender. Lender shall have the right, with Borrower's prior written approval, to issue a press release or official announcement in respect of the transactions contemplated hereby.

42.     **Participations.** Borrower recognizes that Lender may sell and transfer interests in the loan to one or more participants and that all documentation, financial statements, appraisals, reports and other data, or copies thereof, relevant to the Borrower, the Property, the Indemnitor or any guarantor, may be exhibited to and retained by any prospective participant. Borrower agrees to cooperate with Lender and execute any documents reasonably requested by Lender in connection with such participation and consistent with the terms hereof.

43.     **Assignment by Lender.** Lender shall have the right to assign its interest in the Obligations and the Loan Documents and upon such assignment Lender shall automatically be released from any further obligations hereunder.

44.     **Trustee.** Borrower agrees that the Trustee and any successor or substitute trustee may be an officer, agent, attorney, or employee of the Lender and any objections to such fact which might be made by the Borrower, its heirs, successors, or assigns, are hereby waived.

45.     **Substitute Trustee.** In case of the death, inability, refusal to act, resignation, or absence of the Trustee from the State of Missouri, or in case the holder of the Obligations shall desire for any reason to remove the Trustee or any substitute trustee hereunder and to appoint a new trustee in his place and stead, the holder of the Obligations is hereby granted full power to appoint in writing a substitute trustee for said Trustee, and the substitute trustee shall, when appointed, become successor to the title to the Property and the same shall become vested in him in trust for the purpose and objects of this Mortgage with all the powers, duties, and obligations herein conferred on the Trustee. In the event any foreclosure advertisement is running or has run at the time of such appointment of a substitute trustee, the substitute trustee may consummate the advertised sale without the necessity of republishing such advertisement. The making of oath or giving of bond by Trustee or any successor trustee is expressly waived.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]

EXECUTED as a sealed instrument as of the date first written above.

**BORROWER:**

CATAMOUNT A/S EXCHANGE CORPORATION,
a Delaware corporation, Trustee of the WEC 96D
SPRINGFIELD INVESTMENT TRUST, a Delaware
business trust, under instrument dated November 22, 1996

[CORPORATE SEAL]

By: _____
Name:   Greg L. England
Title:    Vice President

STATE OF TEXAS      §
                    §
COUNTY OF DALLAS  §

On this _16_ day of December, 1996, before me appeared GREG L. ENGLAND, to me personally known, who, by me being duly sworn did say that he is the Vice President of CATAMOUNT A/S EXCHANGE CORPORATION, a Delaware corporation and the said seal affixed to the foregoing instrument is the corporate seal of said corporation and the said corporation is the trustee of the WEC 96D SPRINGFIELD INVESTMENT TRUST, a Delaware business trust under instrument dated November 22, 1996, and said GREG L. ENGLAND acknowledged that the executed and sealed the same on behalf of said corporation and said trust by authority of the Board of Directors of the corporation and said trust instrument and he acknowledged said instrument to be his free act and deed and the free act and deed of said corporation and said trust.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the county or city and state aforesaid, the day and year last above written.

[NOTARY SEAL: J. RICHARD WHITE COMMISSION EXPIRES JULY 1, 2000]

_____
Notary Public

My Term E_____

This Instrument was prepared by and after recording should be returned to:

John M. Vasily, Esq.
Debevoise & Plimpton
875 Third Avenue
22nd Floor
New York, New York 10022

DA960510517
121696 v1
481 14785-16

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 13

Springfield, Missouri

## EXHIBIT A

BEING ALL OF TRACT 1 OF THE MINOR SUBDIVISION AS RECORDED IN THE GREENE COUNTY RECORDER'S OFFICE IN BOOK 2429 AT PAGE 1843 AND BEING ALL OF THAT TRACT OF LAND AS DESCRIBED IN THE GREENE COUNTY RECORDER'S OFFICE IN BOOK 2431 AT PAGE 1191 TO CIRCUIT CITY STORES, INC., A VIRGINIA CORPORATION, AND IN BOOK 2431, AT PAGE 1188 TO CIRCUIT CITY STORES, INC., A VIRGINIA CORPORATION, AND BEING A PART OF LOT 3 AND 4 OF McCALLISTER ESTATES SUBDIVISION AND LYING IN THE NORTH HALF OF SECTION 8, TOWNSHIP 28 NORTH, RANGE 21 WEST, CITY OF SPRINGFIELD, GREENE COUNTY, MISSOURI, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 4 OF McCALLISTER ESTATES SUBDIVISION; THENCE ALONG THE NORTH LINE OF SAID LOT 4 SOUTH 86 DEGREES 51 MINUTES 00 SECONDS EAST, 1014.25 FEET TO THE NORTHEAST CORNER OF LOT 4; THENCE ALONG THE EASTERLY LINE OF SAID LOT 4 SOUTH 54 DEGREES 38 MINUTES 45 SECONDS WEST, 205.58 FEET; THENCE SOUTH 3 DEGREES 08 MINUTES 26 SECONDS WEST, 61.51 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY OF MAC'S COURT; THENCE ALONG SAID RIGHT-OF-WAY 128.92 FEET ALONG A 100.00 FOOT RADIUS CURVE TO THE LEFT WHOSE CHORD BEARS SOUTH 56 DEGREES 02 MINUTES 42 SECONDS WEST, 120.18 FEET; THENCE NORTH 86 DEGREES 50 MINUTES 59 SECONDS WEST, 264.86 FEET; THENCE SOUTH 3 DEGREES 09 MINUTES 01 SECONDS WEST, 19.00 FEET; THENCE NORTH 86 DEGREES 50 MINUTES 59 SECONDS WEST. 268.76 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF GLENSTONE AVENUE (BUSINESS HIGHWAY 65); THENCE ALONG SAID RIGHT-OF-WAY NORTH 35 DEGREES 24 MINUTES 01 SECONDS WEST, 359.31 FEET TO THE POINT OF BEGINNING, ALL LYING IN THE NORTHWEST QUARTER OF SECTION 8, TOWNSHIP 28 NORTH, RANGE 21 WEST.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OF SERVICE VEHICLES AS ESTABLISHED BY THE INSTRUMENT ENTITLED COVENANT AGREEMENT, DATED NOVEMBER 20, 1995, RECORDED MARCH 14, 1996 IN BOOK 2431, PAGE 1193 AND RE-RECORDED APRIL 2, 1996 IN BOOK 2435, PAGE 618.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE DESIGNATED 30 FOOT PRIVATE ROAD ESTABLISHED BY THE RECORDED PLAT OF SAID SUBDIVISION FILED DECEMBER 15, 1975 IN BOOK DD, PAGE 60, AND AGREEMENTS IN BOOK 1543, PAGE 1400, AND IN BOOK 1512, PAGE 1744, AND WARRANTY DEED IN BOOK 1040, PAGE 179.

Springfield, Missouri

## EXHIBIT B

1. The lien of general state, county and city taxes for the year 1997, not yet due and payable.

2. Special sanitary sewer connection in Book 1563, page 327.

3. Easement for sanitary sewer established in Book 1691, page 210.

4. Limited access to U.S. Highway 65 (Glenstone Ave) in agreement for shifting highway entrance as set out in Book 998, paage 140.

5. Easement for electric line established in Book 1055, page 255.

6. Easement for southwestern Bell Telephone Company established in Book 1553, page 1746.

7. Gas and water easement established in Book 1554, page 1680, over the north 30 feet of Lot 4.

8. Utility easement established by the recorded plat filed December 15, 1975 in Book DD, page 60, of said subdivision over the north 35 feet, southwesterly 40 feet, southeasterly 5 feet, southeasterly 10 feet and easterly 5 feet of Lot 4.

9. Building setback line(s) over the southeasterly 25 feet of Lot 4 as shown on the diagram of the recorded plat of said subdivision recorded in Book DD, page 60.

10. Duties, obligations and limitations imposed upon the dominant estate by the private road established by the recorded plat of said subdivision filed December 15, 1975 in Book DD, page 60, and agreements in Book 1512, page 1744, and Book 1543, page 1400.

11. Covenants and restrictions contained in Book 1620, page 2060.

12. Building setback line(s) over the easterly 25 feet of Lot 3 as shown on the diagram of the recorded plat of said subdivision recorded in Book DD, page 60.

13. Covenants and restrictions contained in Book 1040, page 179.

14. Duties, obligations and limitations imposed upon the dominant estate by the Covenant Agreement dated November 10, 1995, recorded March 14, 1996, in Book 2431, page

A:\PEREXC.MO                                    1

**Springfield, Missouri**

1193 and re-recorded April 2, 1996 in Book 2435, page 618.

15.   Easement for electric line established in Book 2447, page 895.

16.   Easement for sanitary sewer established in Book 2447, page 901.

A:\PEREXC.MO

2

## DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT

**(With Future Advances and Future Obligations
Governed by Section 443.055 R.S.Mo.)**

THIS DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT (hereinafter referred to as the "Mortgage"), made and entered into as of the 27th day of November, 1996, between CATAMOUNT A/S EXCHANGE CORPORATION, a Delaware corporation, TRUSTEE of the WEC 96D SPRINGFIELD INVESTMENT TRUST, a Delaware business trust, under instrument dated November 22, 1996, whose address or principal place of business is 6750 LBJ Freeway, Suite 1100, Dallas, Texas 75240 (hereinafter referred to as "Borrower" whether one or more), and Bob Graham of St. Louis, Missouri (hereinafter referred to as "Trustee") and FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City-Staubach Pass Through Trust, Series 1996-A, with an address at 79 South Main Street, Salt Lake City, Utah (hereinafter referred to as "Lender").

WITNESSETH:

Borrower in consideration of the loan hereinafter specified and any future advances or future obligations which may hereafter be advanced or incurred and the trust hereinafter mentioned and the sum of One Dollars ($1.00) to Borrower paid by the Trustee, the receipt and sufficiency of which are hereby acknowledged, does by these presents GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM unto the Trustee the following described real estate situated in the County of Greene, State of Missouri:

See Exhibit "A", attached hereto and incorporated herein.

TOGETHER with Borrower's right, title, and interest in the other Property (hereinafter defined).

TO HAVE AND TO HOLD THE SAME, together with all the rights, hereditments, appurtenances, and privileges in anywise appertaining or belonging thereto, unto the Trustee and the Trustee's successors and assigns forever in trust, for the uses and purposes hereinafter set forth, possession of the Property being hereby granted and conveyed to the Trustee.

The term Borrower shall include, wherever the context permits, its successors and assigns.  The term Lender shall include, wherever the context permits, its successors and assigns as the holder for the time being of this Deed of Trust, Security Agreement and Fixture Financial Statement (referred to herein as this "Mortgage"), the "Note" (hereinafter defined), and other Obligations hereby secured.

This Mortgage is granted pursuant to the terms, provisions and conditions of a "Loan Agreement" dated as of even date between Borrower and Lender.  Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement or, if not therein defined, such meaning as may be assigned to such terms in the Uniform Commercial Code as in effect in the State (hereinafter defined).

The term "Property" shall mean and include all of the following described property:

A.       The land ("Land"), together with the Improvements and other structures now or hereafter situated thereon, which Land is more particularly described on Exhibit "A" which is annexed hereto and incorporated herein by reference, together with all rights, privileges, tenements, hereditaments, appurtenances, easements, including without limitation rights and easements for access and egress and utility connections, and other rights now or hereafter appurtenant thereto ("Real Estate");

B.       All real estate fixtures or items which by agreement of the parties may be deemed to be such fixtures, now or hereafter owned by Borrower or in which Borrower has an interest, and now or hereafter located in or upon the

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 1

Real Estate, or now or hereafter attached to, installed in, or used in connection with any of the Real Estate, including without limitation any and all portable or sectional buildings, bathroom, plumbing, heating, lighting, refrigerating, ice making, ventilating and air-conditioning apparatus and equipment, garbage incinerators and receptacles, elevators and elevator machinery, boilers, furnaces, stoves, tanks, motors, sprinkler and fire detection and extinguishing systems, doorbell and alarm systems, window shades, screens, awnings, screen doors, storm and other detachable windows and doors, mantels, partitions, built-in cases, counters and other fixtures whether or not included in the foregoing enumeration ("Fixtures");

C.        All bridges, easements, rights of way, licenses, privileges, hereditaments, permits and appurtenances hereafter belonging to or enuring to the benefit of the Real Estate and all right, title and interest of Borrower in and to the land lying within any street or roadway adjoining the Real Estate and all right, title and interest of Borrower in and to any vacated or hereafter vacated streets or roads adjoining the Real Estate and any and all reversionary or remainder rights ("Additional Appurtenances");

D.        All of the right, title and interest of Borrower in and to any award or awards heretofore made or hereafter to be made by any municipal, county, state or federal authorities to the present or any subsequent owners of the Land, the Improvements, the Fixtures, the Additional Appurtenances, the Leases (hereinafter defined) or the Personal Property, (hereinafter defined) including without limitation any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of the Land, the Improvements, the Fixtures, the Additional Appurtenances, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Land or any portion thereof; or (iii) any other injury to or decrease in value of the Property; subject, however, to the rights of Tenant (as defined in the Loan Agreement) under the Lease dated as of the date hereof, from Borrower to Circuit City Stores, Inc., a Virginia corporation, a memorandum or notice of which is or will be recorded in the applicable records of the county in which the Property is located (as referenced in the Loan Agreement and as used herein, the "Principal Lease") and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation ("Awards");

E.        All leases or occupancy agreements now or hereafter entered into by Borrower with respect to the Real Estate, or any portion thereof, including, without limitation, the Principal Lease, and all rents, issues, profits, revenues, earnings and royalties therefrom, all payments received in cancellation thereof, all proceeds received upon a tenant's acquisiton of Real Estate by reason of a rejectable purchase offer or otherwise, all guaranties thereof and all right, title and interest of Borrower thereunder, including without limitation, cash, letters of credit or securities deposited thereunder to secure performance by the tenants or occupants of their obligations thereunder, whether such cash, letters of credit or securities are to be held until the expiration of the terms of such leases or occupancy agreements or applied to one or more of the installments of rent coming due prior to the expiration of such terms including without limitation, the right to receive and collect the rents thereunder ("Leases"); as used in this instrument, the term "Leases" shall not include Permitted Subleases as defined in the Loan Agreement; and

F.        All tangible and intangible personal property now owned or at any time hereafter acquired by Borrower of every nature and description, and used in any way in connection with the Real Estate, the Fixtures, the Additional Appurtenances, or any other portion of the Property, including, without limitation, all inventory; goods; materials; supplies; equipment; furnishings; fixtures; accounts; accounts receivable; chattel paper; documents; instruments; money; bank accounts; security deposits; claims to rebates, refunds or abatements of real estate taxes or any other taxes; contract rights; plans and specifications; permits, licenses; general intangibles; the rights of Borrower under contracts with respect to the Real Estate or any other portion of the Property; signs, brochures, advertising, and good will; copyrights and trademarks; all proceeds from insurance payable to the landlord or its lender under the Leases or paid to Borrower by other sources for any damage or loss to all or any portion of the Real Estate, the Fixtures, the Additional Appurtenances or any other portion of the Property, together with any unearned insurance premiums paid or payable to Borrower; and all proceeds, products, additions, accessions, substitutions and replacements to any one or more of the foregoing (collectively, the "Personal Property").

The term "Obligations" shall mean and include:

A.    The payment of the principal sum, interest, charges and indebtedness evidenced by that certain Promissory Note ("Note") dated as of even date herewith, including any extensions, renewals, replacements, modifications and amendments thereof, in the original amount of $4,743,514.27 given by Borrower, as maker, payable to the order of Lender; with the full debt, if not paid earlier, due and payable on December 1, 2018. The loan evidenced by the Note is sometimes referred to herein as the "Loan";

B.    The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by Borrower under and pursuant to this Mortgage or the Loan Agreement and by the Borrower under each of the other Loan Documents referred to in, or now or hereafter executed in connection with, the Loan Agreement;

C.    The payment of all costs, expenses, legal fees and liabilities incurred by Lender in connection with the enforcement of any of Lender's rights or remedies under this Mortgage, the other Loan Documents, or any other instrument, agreement or document which evidences or secures any other Obligations or collateral therefor, whether now in effect or hereafter executed;

D.    The payment, performance, discharge and satisfaction of every obligation of Borrower, as "assignor", to Lender, as "assignee", under and pursuant to the "Assignment of Leases and Rents" of even date given to Lender to be recorded and filed herewith; and

E.    The payment, performance, discharge and satisfaction of all other liabilities and obligations of Borrower to Lender, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including without limitation each liability and obligation of Borrower under any one or more of the Loan Documents and any amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

Borrower hereby grants to Lender a continuing security interest in all of the Property in which a security interest may be granted under the Uniform Commercial Code as such is in effect in the state where the Real Estate is located (the "State") including, without limitation, the Fixtures and the Personal Property, whether now or at any time hereafter acquired and used in any way in connection with the development, construction, marketing or operation of the Real Estate, to secure all Obligations.

As further security for the Loan, Borrower hereby sells, assigns, conveys, pledges, hypothecates and transfers to Lender, and hereby grants Lender a security interest in, any and all personal property now or hereafter owned by the Borrower or in which the Borrower may now or hereafter have an interest, including without limitation all tangible personal property, all Accounts, Instruments, Documents, General Intangibles, Equipment, Inventory, Chattel Paper, and all accessories to and additions to, substitutions for, and replacements, proceeds and products of any and all of the foregoing.

This instrument is intended to take effect as a security agreement encumbering each and every item of personal property included herein as part of the Property or as to which Borrower has granted a security interest to Lender, pursuant to the Uniform Commercial Code ("UCC") as presently in effect in the State and this Mortgage shall be effective as a financing statement filed as a fixture filing. The name of the record owner of said real estate is the Borrower set forth in page one to this Mortgage. Information concerning the security interest created by this instrument may be obtained from Lender, as secured party, at its address as set forth in page one of this Mortgage. The name and address of the Borrower, as debtor, are as set forth in page one to this Mortgage.

Borrower covenants, warrants, represents and agrees with Lender that:

1.    **Title.**  Borrower is the owner and record holder in fee simple of the Real Estate, the Fixtures, the Additional Appurtenances, the Awards, the Leases and the Personal Property and has good right, full power and lawful authority to grant and convey the same in the manner aforesaid; and that the Property are free and clear of all

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 3

encumbrances and exceptions, except for the Permitted Title Exceptions as set forth on **Exhibit "B"** which is annexed hereto and incorporated herein by reference. Any equipment or Fixtures used by the Borrower and installed upon the Property shall be used solely for business purposes and for Borrower's own use or as the equipment and furnishings leased or furnished by the Borrower, as landlord, to tenants of the Property. Such equipment or Fixtures shall be kept at the buildings located on the Property and shall not be removed therefrom without the consent of the Lender and may be affixed to such building(s) but will not be affixed to any other Real Estate. Unless stated otherwise in this Mortgage the only persons having any interest in the Property are the Borrower, tenants under Leases, and the Lender and no financing statement covering any such property and any proceeds thereof is on file in any public office except pursuant hereto. Borrower will from time to time provide Lender on request with itemizations of all Personal Property.

2.   **Performance of Obligations.** Borrower shall pay and perform and observe all of the obligations and conditions set forth in each of the Note, this Mortgage, the Assignment of Leases and Rents, the Loan Agreement, and each other Loan Document or other agreements, if any, executed by Borrower in connection with the Loan.

3.   **Protection and Maintenance.** Borrower shall protect and maintain or cause its tenant(s) to maintain in good order, repair and tenantable condition at all times, the buildings and structures now standing or hereafter erected on the Property, and any additions and improvements thereto, and all Personal Property now or hereafter situated therein, and the utility services, the parking areas and access roads, and all Fixtures and equipment and articles of Personal Property now or hereafter acquired and used in connection with the operation of the Property. Borrower promptly shall replace (or cause to be replaced) any of the aforesaid which may become lost, destroyed or unsuitable for use with other property of first-class character. Subject to the provisions of this section, in any instance where Borrower in its sound discretion determines that any item subject to a security interest under this Mortgage has become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary for the operation of the Property, Borrower may, at its expense, subject to the terms of the Principal Lease, remove and dispose of it and substitute and install other items not necessarily having the same function, provided, that such removal and substitution shall not impair the operating utility, unity or value of the Property. All substituted items shall become a part of the Property and subject to the lien of the Mortgage. Any amounts received by or allowed Borrower upon the sale or other disposition of the removed items of property shall be applied first against the cost of acquisition and installation of the substituted items with any remaining funds paid to Lender. Nothing herein contained shall be construed to prevent any tenant or subtenant from removing from the Property trade fixtures, furniture and equipment installed by it and removable by such tenant under the terms of its Lease, on the condition, however, that to the extent required under the Leases, the tenant or subtenant shall, at its own cost and expense, repair any and all damages to the Property resulting from or caused by the removal thereof.

4.   **Insurance Coverages.** Borrower shall insure or cause the Tenant under the Principal Lease to insure the Property and the operation thereof with such coverages and in such amounts (including self-insurance) as are required by the provisions of the Principal Lease and shall at all times keep or cause its tenant(s) to keep such insurance in full force and effect and promptly pay all premiums required to keep such insurance in full force and effect. Copies of the original of all such policies of insurance (or certificates or binders thereof issued by the insurer in form, content and manner of execution satisfactory to Lender) or a statement from Tenant that it is self-insuring with a description thereof shall be delivered to Lender, and Borrower shall deliver to Lender a copy of any new policy (or such a certificate) as replacement for an expiring policy (or such a certificate) required to be deposited hereunder together with proof of payment of the premiums therefor (subject to the terms of the Leases). Borrower hereby irrevocably appoints Lender its true and lawful attorney-in-fact, which power is coupled with an interest and with full power of substitution, after an Event of Default, to assign any policy in the event of the foreclosure of this Mortgage. In the event that any of the Leases permits the tenant(s) to self-insure, and such self-insurance is elected by such tenant, Borrower shall use its best efforts to verify that such tenant(s) strictly comply with the self-insurance requirements of such Leases.

5.   **Insurance Proceeds.** In the event of a casualty, the proceeds of any hazard insurance (or any amounts owed by a tenant permitted to self-insure pursuant to the Loan Agreement) or other proceeds resulting from such casualty shall be applied in accordance with the terms and conditions of the Loan Agreement; subject, however, to the terms of the Principal Lease.

6.    **Eminent Domain.** In the event of any condemnation for public use of, or injury to the Property, the Awards and any other damages on account of such condemnation shall be applied in accordance with the terms and conditions of the Loan Agreement; subject, however, to the terms of the Principal Lease.

7.    **No Waste; Compliance With Law.** Borrower shall: (A) not commit or suffer (i) any waste of the Property, or any portion thereof, or (ii) not commit any violation of any law, rule, regulation, ordinance, license or permit or of the requirements of any licensing authority, affecting the Property, or any portion thereof, or any business conducted thereon; (B) except as permitted in the Leases, not commit or suffer any demolition, removal or material alteration of any of the Property (except for the replacement of Fixtures and Personal Property pursuant to Section 3 above); (C) not violate, nor suffer the violation of, the covenants and agreements, if any, of record against the Property; and (D) in all respects, do or use its best efforts to verify that its tenant(s) do all things necessary to comply with, and keep in full force and effect, all licenses, permits and other governmental authorizations for the operation of the Property for its intended purposes, including, without limitation express or implied, the licenses, permits and authorizations referenced in the Loan Agreement.

8.    **Hazardous Materials, Toxic Substances and Related Matters.** Until such time as all Obligations of Borrower with respect to the Loan have been paid in full, the Borrower shall comply or cause compliance with all Environmental Legal Requirements (as defined in the Loan Agreement), including, but not limited to, Hazardous Materials Legal Requirements (as defined in the Loan Agreement), applicable to the Property, and the Borrower shall take all remedial action necessary to avoid any liability of Borrower or Lender, and to avoid the imposition of, or to discharge, any liens on the Property, as a result of any failure to comply with Environmental Legal Requirements with respect to the Property.

9.    **Payment of Taxes and Prevention of Liens.** Borrower shall pay or cause its tenant(s) to pay before delinquent or before any penalty for nonpayment attaches thereto, all taxes, assessments and charges of every nature and to whomever assessed that now or hereafter may be levied or assessed upon the Property or any part thereof, or upon the rents, issues, income or profits thereof or upon the lien or estate hereby created, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or ad valorem real estate or personal property taxes or as income taxes. Borrower shall provide notice of any such taxes, assessments and charges to Lender within ten (10) days of receipt. Borrower may apply for tax abatements, pay taxes under protest, and prosecute diligently and in good faith claims for refund so long as: (a) no such actions are prosecuted to a position that would allow the institution of any proceedings to divest Borrower of its title to all or any portion of the Property , (b) the Borrower shall have adequate unencumbered (except in favor of Lender) cash reserves with respect thereto, and the Borrower may grant its tenant(s) the right to take such actions, and (c) all other conditions set forth in the Principal Lease have been met (with all references in Paragraph 18 to "Tenant" being read as "Landlord" and all references to "Landlord" as "Lender"; the Tenant may contest any such taxes or assessment as allowed in, and subject to, the terms and provisions of Section 18 of the Principal Lease. Borrower shall or shall cause its tenants to pay all sums which, if unpaid, may result in the imposition of a lien on the Property before such lien may attach (except that real estate taxes need not be paid prior to the delinquency date thereof) or which may result in conferring upon a tenant of any part or all of the Property a right to recover such sums as prepaid rent.

10.    **Due On Sale; No Other Encumbrances; No Transfer of Ownership Interests; Failure to Comply with Permitted Exceptions.** Except as otherwise specifically provided for in the Loan Agreement, it shall be an Event of Default under the Loan Agreement, if, except as expressly permitted in the Loan Agreement without Lender's prior written consent in each instance, (i) there is any sale, conveyance, transfer or encumbrance of all or any portion of the Property; (ii) there is any transfer or assignment of, or grant of any security interest in, any of the ownership interests in Borrower; (iii) there is a failure to materially comply with the provisions of, or there is a default under, any of the Permitted Title Exceptions unless cured within any applicable grace period provided for in the applicable Permitted Title Exception; or (iv) Borrower or Tenant shall create or permit to be created or to remain, any lien or encumbrance on any of the Property or the rents or other sums payable to Borrower under the Principal Lease or other Leases, other than as allowed under the Loan Documents and the Permitted Title Exceptions.

11.    **Lender's Rights.** If Borrower shall neglect or refuse: (i) to maintain or cause to be maintained and keep or cause to be kept in good repair the Property or any part thereof as required by this Mortgage or the Loan Agreement;

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 5

(ii) to maintain and pay the premiums for or cause its tenant(s) to maintain and pay the premiums for insurance which may be required by this Mortgage or the Loan Agreement: (iii) to pay and discharge or cause its tenant(s) to pay and discharge all taxes of whatsoever nature, assessments and charges of every nature and to whomever assessed, as required by this Mortgage or the Loan Agreement; (iv) to pay the sums required to be paid by this Mortgage or the Loan Agreement, or (v) to satisfy any other terms or conditions of this Mortgage, or any instrument secured hereby; then Lender may, after thirty (30) days prior written notice (except in the case of an emergency where there is danger to persons or property, or required insurance coverage would lapse, in each of which events no notice shall be required), cause such repairs or replacements to be made, and Lender may, after notice to Borrower, obtain such insurance or pay said taxes, assessments, charges, and sums, incur and pay reasonable amounts in protecting its rights hereunder and the security hereby granted, pay any balance due under any conditional agreement of sale (or lease) of all or any of the Property, and pay any amounts as Lender deems reasonably necessary or appropriate to satisfy any term or condition of this Mortgage, which Borrower shall have failed to satisfy, or to remedy any breach of such term or condition, and any amounts or expenses so paid or incurred, together with interest thereon from the date of payment by Lender at the Default Rate as provided in the Loan Agreement shall be immediately due and payable by Borrower to Lender and until paid shall be secured hereby equally and ratably, and the same may be collected as part of said principal debt in any suit hereon or foreclosure hereof. No payment by Lender shall relieve Borrower from any default hereunder or impair any right or remedy of Lender with consequent thereon.

12.     **Tax Reserve**. Borrower shall not be required to maintain with, or to pay or cause to be paid to, Lender a reserve fund for taxes, assessments, liens and charges on or against the Property. Such payments, if voluntarily made by Borrower or Tenant, shall be invested in an interest-bearing account with the interest earned to be added to the reserve account and shall be paid to or for Borrower's benefit as set forth below. Such reserve fund may be paid to the taxing authority upon written request of Borrower provided that such request is accompanied by the current billing from the taxing authority.

13.     **Certain Expenses**. If any action or proceeding is commenced, including, without limitation, an action to foreclose this Mortgage or to collect the debt hereby secured, to which action or proceeding Lender is made a party by reason of the execution of this Mortgage, or by reason of any obligation which it secures, or by reason of entry or any other action under this Mortgage, or if it becomes necessary in connection with legal proceedings or otherwise to defend or uphold the mortgage hereby granted or the lien hereby created or any act taken to defend or uphold the mortgage hereby granted or the lien hereby created or any act taken under this Mortgage, or if it becomes necessary to employ the services of an attorney at law to collect any of the Obligations, whether or not legal proceedings are commenced, all sums reasonably paid or incurred by Lender for the expense of any litigation or otherwise, in connection with any rights created by this Mortgage or any other Loan Document, shall be paid by Borrower, or may at the option of Lender be added to the debt secured hereby and shall be secured hereby equally and ratably and shall bear interest until paid at the Default Rate set forth in the Loan Agreement.

14.     **Regarding Leases**. As to each of the Leases, Borrower will perform every material obligation of the lessor and will enforce every material obligation of the lessee in the Leases in effect with respect to all or any part or all of the Property at Borrower's sole cost and expense and will not cancel any such Lease, nor terminate or accept a surrender thereof, or reduce the rent payable thereunder or modify or amend or assign any such Lease or accept any prepayment of rent thereunder (except any rent which may be required to be prepaid by the terms of any such Lease), or enter into any new Leases, without first obtaining on each occasion the prior written consent of Lender. Lender may require that all security deposits and similar funds or security provided by a lessee or occupant be deposited with Lender, or with an escrow agent satisfactory to Lender, subject to the rights of the lessee or occupant, but otherwise subject to a security interest in favor of Lender. At the option of Lender, which may be exercised at any time or from time to time, by written notice to Borrower and to any applicable tenant, this Mortgage shall become subject and subordinate, in whole or in part (but not with respect to priority of entitlement to insurance proceeds or condemnation proceeds, which is governed by other provisions of the Loan Documents), to any and all Leases of all or any part of the Property upon the execution by Lender and recording and filing thereof, at any time hereafter in the land records of a unilateral declaration to that effect.

15.     **Further Assignment by Borrower**. Borrower hereby further assigns to Lender as security for the Obligations the Borrower's interests in any or all Leases, now or hereafter outstanding, and to the extent it may lawfully do so Borrower's interests in all agreements, contracts, licenses and permits, now or hereafter outstanding, affecting all

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 6

or any portion of the Property and Borrower shall execute. acknowledge and deliver an assignment of leases and rents as to any new Leases and such further or confirmatory assignments thereof. by instruments in form satisfactory to Lender. as Lender may reasonably require. Borrower hereby authorizes Lender in the event of foreclosure, to sell and assign said interest(s) to the purchaser at foreclosure, but neither such assignment nor any such future assignment shall be construed as binding Lender to any Lease, agreement, contract. license or permit so assigned, or to impose upon Lender any obligations with respect thereto, provided, however. that Borrower shall not indemnify and hold Lender harmless from liability, loss or damage arising from the gross negligence or willful misconduct of the Lender and incurred either (i) after Lender has exercised its right to enter and take possession of the Property pursuant to the Loan Documents and while Lender was actually in possession of the Property at the time such action arose. (ii) after Lender has exercised its rights to foreclose on the Mortgage securing the Obligations or (iii) after Lender has acquired the Property by deed-in-lieu of foreclosure. Borrower hereby irrevocably appoints Lender. or any agent designated by Lender, its true and lawful attorney-in-fact. which power is coupled with an interest and with full power of substitution. after an Event of Default. to execute. acknowledge and deliver any such assignment on behalf of Borrower.

16.    **Recording and Filing.**  Borrower shall promptly cause this Mortgage and any required financing statements to be recorded and re-recorded, filed and re-filed at Borrower's expense at such times and places as may be required by law, or upon Lender's written request. as may be reasonably deemed advisable by Lender. to create, preserve or protect the priority hereof and of any lien created hereby upon the Property or any part thereof; and Borrower shall from time to time do and cause to be done all such things as may be required by Lender or required by law. including all things which may from time to time be necessary under the Uniform Commercial Code in effect in the State fully to create, preserve and protect the priority hereof and of any lien created hereby upon said property. Borrower hereby irrevocably appoints Lender. or any agent designated by Lender. its true and lawful attorney-in-fact. which power is coupled with an interest and with full power of substitution, to execute, acknowledge and deliver any such things on behalf of Borrower which Borrower fails or refuses to do.

The filing of a financing statement pursuant to the Uniform Commercial Code shall never limit any of the rights of Lender as determined by this instrument or affect the priority of the Lender's security interest granted hereby or by any other recorded document or instrument, or impair the stated intention of this Mortgage that all Equipment, Personal Property and Fixtures comprising the Property as well as all Awards, insurance payments, Rents and Leases are, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the Real Estate mortgaged hereunder irrespective of whether such item is physically attached to the Real Estate or any such item is referred to or reflected in a financing statement. Borrower will on demand deliver all financing statements that may from time to time be required by Lender to establish and perfect the priority of Lender's security interest in the Property and shall pay all reasonable expenses incurred by Lender in connection with the renewal or extensions of any financing statements executed in connection with the Property. Borrower shall give advance written notice of any proposed change in Borrower's name. identify or structure and will execute and deliver to Lender prior to or concurrently with such change all additional financing statements that Lender may require to establish and perfect the priority of Lender's security interest.

17.    **Right to Deal with Successor.**  Lender may, without notice to any person. deal with any successor in interest of Borrower herein regarding this Mortgage and the debt hereby secured in all respects as it might deal with Borrower herein, without in any way affecting the liability hereunder or upon the debt hereby secured of any predecessor in interest of the person so dealt with; and no sale of the Property or any part thereof. nor any forbearance on the part of Lender. nor any extension by Lender of the time for payment of the debt hereby secured, shall operate to release, discharge. modify, change or affect the original liability of any predecessor in interest of the equity owner at the time of such sale, forbearance or extension.

18.    **Right to Accelerate.**  Time and the exact performance of Borrower's obligations are material and of the essence hereof. On the happening of any one or more of such Events of Default. or at any time during the continuance of any such Event of Default Lender, at its sole option. and without notice. demand or presentment, which are hereby waived, shall have the right to declare the Obligations or any part thereof immediately due and payable or may. at its option and without notice or demand to Borrower. take immediate possession of the Property and Personal Property, with or without appointment of a receiver or application therefor. and let the same either in its own name or in the name of Borrower, and receive the rents, issues, and profits thereof and apply the same. after payment of all necessary charges and expenses including commissions for collection or management services. to the Obligations.  Said rents. issues, and profits

DEED OF TRUST. SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 7

are hereby assigned to Lender, and Borrower hereby irrevocably appoints Lender its true and lawful attorney-in-fact, upon the occurrence of an Event of Default to manage the Property and the Personal Property and collect the rents, with full power to bring suit for collection of said rents and to do and perform all and every act necessary to be done, provided, however, that this power of attorney and assignment of rents shall not be construed as an obligation upon Lender to make any repairs upon the Property or the Personal Property or to act as attorney-in-fact, and neither the Lender nor the Lender's agents shall be liable for negligence in the event of its management or possession of the Property or the Personal Property.

Upon the occurrence of an Event of Default hereunder Lender shall, at its option and without notice or demand, be entitled to enter upon the Property to take immediate possession of the Personal Property. Upon request, Borrower shall assemble and make the Personal Property available to Lender at a place designated by Lender which is reasonably convenient to both parties. Lender may sell all or any portion of the Personal Property at public or private sale in accordance with the Uniform Commercial Code as adopted in the State of Missouri or in accordance with the foreclosure advertisement and sale provisions under this Mortgage. Borrower agrees that a commercially reasonable manner of disposition of the Personal Property upon the occurrence of an Event of Default shall include, without limitation and at the option of Lender, the sale of the Personal Property, in whole or in part, concurrently with a foreclosure sale of the Property in accordance with the provisions of this Mortgage. In the event the Lender shall dispose of any or all of the Personal Property after the occurrence of an Event of Default, the proceeds of disposition shall be applied in the following order: (a) to the expenses of retaking, holding, preparing for sale, selling, and the like; (b) to the attorneys' fees and legal expenses incurred by Lender; (c) to the satisfaction of the Obligations; and (d) the balance, if any to subordinate lien holders and Borrower as their interests may appear. Borrower hereby waives any right of redeeming the Personal Property.

19.    **Additional Rights of Lender**. Borrower authorizes Lender, in addition to all other rights granted by law or by this instrument, whenever and as long as any default hereunder or under the Loan Agreement shall exist and remain uncured beyond the applicable grace period, if any, and with notice, if any, required to be given by the terms of any of the Loan Documents, or upon the occurrence of an Event of Default under the Loan Agreement, to enter and take possession of all or any part of the Property with or without the appointment of a receiver or an application therefor and to use, operate, manage and control the same and conduct the business thereof, and perform lessor's obligations under any Lease or Borrower's obligations under any other agreement affecting all or any part of the Property, and collect the rents, profits and all receipts of every nature therefrom as Lender shall deem best. Upon every such entry, Lender may from time to time at the expense of Borrower make all such repairs, replacements, alterations, additions and improvements to the Property as Lender may deem proper, but only to the extent allowed under the Principal Lease, but in no event shall Lender be obligated to do so, and may, but shall not be obligated to, exercise all rights and powers of Borrower either in the name of Borrower, or otherwise as Lender shall determine; without limitation express or implied upon the generality of the foregoing, Lender shall have the right to do all things necessary or desirable in order to keep in full force and effect the licenses, permits and authorizations and any amendments thereto. Upon such entry, Lender may, at its option, but without any obligation to do so, do any one or more of the following, but only to the extent allowed under the Principal Lease: pay and incur all expenses necessary or deemed by it appropriate for the holding and operating of the Property, conduct of any business thereon, the maintenance, repair, replacement, alteration, addition and improvement of the Property, including without limitation payments of taxes, assessments, insurance, wages of employees connected with the Property or any business conducted thereon, charges and reasonable compensation for service of Lender, its attorneys and accountants and all other persons engaged or employed in connection with the Property of any business conducted thereon and, in addition, Lender, at its option, may, but shall not be obligated to, make payments or incur liability with respect to obligations arising prior to the date it takes possession. All obligations so paid or incurred by Lender shall be reimbursed or paid for by Borrower upon demand and prior to the repayment thereof shall be added to the debt secured hereby and shall bear interest at the Default Rate provided for in the Loan Agreement in respect of amounts due after maturity, and shall be secured hereby equally and ratably. Lender also may reimburse itself therefor from the income or receipts of the Property or any business conducted thereon, or from the sale of all or any portion of the Property. Lender also may apply toward any of the Obligations any tax reserve account, deposit or any sum credited or due from Lender to Borrower without first enforcing any other rights of Lender against Borrower or the against any endorser or guarantor of any of the Obligations or against the Property. Borrower hereby irrevocably constitutes and appoints Lender, or any agent designated by Lender, for so long as this Mortgage remains undischarged of record, as its attorney-in-fact, which power is coupled with an interest, with full power of substitution, after an Event of Default, to execute, acknowledge, seal and

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 8

deliver all instruments, agreements, deeds, certificates and other documents of every nature and description in order to carry out or implement the exercise of Lender's rights hereunder and under the other Loan Documents.

20.     **Contest of Laws.** Borrower and/or Tenant shall have the right to contest in good faith by appropriate legal proceedings, but without cost or expense to Lender, the validity of any laws, ordinances, orders, rules and regulations affecting the Property, if compliance may be so contested without the imposition during such contest of any charge, lien or liability against the Property, without the loss or suspension during such contest of any license, right or permit with respect to the Property, and without causing any Event of Default to exist under the Loan Agreement or any other Loan Document, and Borrower and/or Tenant may postpone compliance therewith until the final determination of any such proceedings; provided that same is done in accordance with the requirements therefor contained in the Principal Lease.

21.     **Notices.** Any demand, notice or request by either party to the other shall be in writing and shall be sufficiently given if delivered to the party intended to receive the same or if mailed by registered or certified mail addressed to such party at the address of such party and delivered or tendered as more particularly provided for in the Loan Agreement or in the case of any party at such other address as may be stated in a notice delivered or mailed as therein provided.

22.     **Lender Not Obligated; Cumulative Rights.** Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Property or any business conducted thereon, and all options given to Lender, as to remedies or otherwise, are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide.

23.     **Severability.** In case any one or more of the provisions of this Mortgage, the Note, the Assignment of Leases and Rents, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof. Each of the provisions of every such agreement, document or instrument shall be enforceable by Lender to the fullest extent now or hereafter permitted by law.

24.     **No Waiver.** No consent or waiver, express or implied, by Lender to or of any default or Event of Default by Borrower shall be construed as a consent or waiver to or of any other default or Event of Default at the same time or upon any future occasion.

25.     **Foreclosure.** If an Event of Default hereunder occurs, then the Obligations then remaining unpaid shall, at the option of Lender, become immediately due and payable regardless of maturity, without notice or demand other than any applicable cure period and notice requirements other than any applicable cure period and notice requirements otherwise stated herein or in the Note and this Mortgage which shall remain in force, and the Trustee shall, after receiving notice of the election and demand for sale from the Lender, proceed to sell the Property as one parcel in its entirety or any part thereof, either in mass or in parcels, at the absolute discretion of the Trustee at public vendue at the door of the Court House or other location then customarily employed for the purpose, in the County where the Property is located, to the highest bidder for cash, first making or causing to be made or given such demands or notices of the time, terms and place of sale, and a description of the property to be sold, by advertisement published and as is provided by the laws of the State of Missouri then in effect, and upon sale, the Trustee shall (subject to any applicable statutory periods and rights of redemption) execute and deliver a deed of conveyance of the property sold to the purchaser or purchasers thereof, and any statement or recital of fact in such deed, in relation to the non-payment of the Obligations, existence of the Obligations, notice of advertisement, sale, and receipt of the proceeds of sale, shall be presumptive evidence of the truth of such statements or recitals, and the Trustee shall receive the proceeds of such sale out of which the Trustee shall pay in the following order: (1) the cost and expenses of executing this trust, including compensation to the Trustee and to any attorneys employed by the Trustee or the Lender for their services; (2) to the Lender, upon the usual vouchers therefor, all amounts paid for insurance, taxes, lien claims, and other payments made by Lender as provided herein, with interest thereon at a rate per annum equal to the lesser of (i) the highest rate permitted by applicable law, or (ii) the post maturity rate of interest specified in the Note; (3) the amount due on the Note and the Obligations then due and unpaid; (4) the amount due on any junior encumbrances, with interest; (5) the remainder of such proceeds, if any, shall be paid to Borrower.

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 9

The Lender may bid and become purchaser at any sale under this Mortgage. Any sale of the Property under this Mortgage shall, without further notice, create the relation of landlord and tenant at sufferance between the purchaser and Borrower or any person holding possession of the Property through Borrower, and upon failure of Borrower or such person to surrender possession thereof immediately, Borrower or such person may be removed by a writ of possession of the purchase in any Court having venue.

The Trustee may sell and convey the Property under the power aforesaid, although the Trustee has been, may now be or may hereafter be attorney or agent of the Lender in respect to the Obligations or any part thereof or this Mortgage or in respect to any matter of business whatsoever.

The Trustee hereby lets the Property to the Borrower until a sale be had under the foregoing provisions, upon the following terms and conditions, such letting being to-wit:  The Borrower and every and all persons claiming or possessing the Property, or any part thereof, by, through or under Borrower shall pay rent therefor during said term at the rate of one cent per month, payable monthly upon demand, and without notice or demand shall surrender immediate peaceable possession of said premises, to the purchaser thereof, under such sale.  Should possession not be surrendered as provided for herein the purchaser shall be entitled to institute proceedings for possession as aforesaid.

In any action or proceeding to foreclose this Mortgage, Lender shall be at liberty to apply, without notice, for the appointment of a receiver for the rents and profits of the property, and shall be entitled to the appointment of such a receiver as a matter of right without regard to the value of the Property as security for the indebtedness due Lender or the solvency of any person, or corporation, liable for the payment of such indebtedness.

26.    **Headings.**  Headings and captions in this Mortgage are for convenience and reference only and the words and phrases contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of any of the provisions hereof.

27.    **Time of Essence.**  Time shall be of the essence of each and every provision of the Loan Agreement, the Note, this Mortgage and each of the other Loan Documents.

28.    **Governing Law.**  This Mortgage and all agreements and instruments executed by Borrower in connection herewith shall be governed by and construed in accordance with the internal laws of the State of Missouri, except that the laws of the State shall govern the exercise of remedies by the Lender to the extent specified in the Loan Agreement.

29.    **Set-Off.**  Borrower grants to Lender a direct and continuing lien and security interest, as security for all of Borrower's Obligations, in and upon all deposits, balances and other sums credited by or due from Lender to Borrower.  If any payment is not made when due under any of the Loan Documents, after giving regard to applicable grace periods, if any, or if any Event of Default or other event which would entitle Lender to accelerate the Loan occurs, any such deposits, balances or other sums credited by or due from Lender to Borrower, excluding deposits which Borrower is holding in trust or escrow for the sole benefit of third parties and which Borrower has previously designated to Lender as being so held, to the fullest extent permitted by law at any time or from time to time without notice or compliance with any other condition precedent now or hereafter imposed by statute, rule of law or otherwise, all of which hereby are waived, may be setoff, appropriated and applied by Lender against any and all of Borrower's Obligations irrespective of whether demand shall have been made and although such Obligations may be unmatured, in such manner as Lender in sole and absolute discretion may determine.  The rights of Lender under this Section are in addition to and not in limitation of other rights and remedies including other rights of setoff which Lender may have.  Borrower shall have no right of setoff.

30.    **Limited Recourse Provisions.**  The liability of the Borrower and its partners, trustees and beneficiaries, or shareholders, with respect to the Obligations is subject to the express limitations set forth in the Loan Agreement.

31.    **Lender's Right of Inspection.**  Lender and its agents and designees have the right to enter the Property at the times, subject to prior notice, and for all purposes, as are allowed to Borrower under the Principal Lease.

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 10

32.    **Waiver of Statutory Rights.** Except to the extent permitted by applicable law, and in consideration of Lender's making the loan that is secured hereby, Borrower hereby agrees that it shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "moratorium laws," now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, but hereby waives the benefit of such laws. Except to the extent permitted by applicable law, Borrower itself and all who may claim through or under it waives any and all right to have the property and estates comprising the Property marshalled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Property sold as an entirety. Borrower hereby waives, to the extent legally permitted to do so, any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on its behalf and on behalf of each and every person, except decree or judgment creditors of Borrower, acquiring any interest in or title to the Property subsequent to the date of this Mortgage.

Also, except as specifically provided in the Loan Agreement, Borrower hereby expressly (a) waives any and all rights it may have under applicable law to prepay without charge or premium all or any part of the Note, either voluntarily or upon a declaration or acceleration following the occurrence of an Event of Default, and (b) agrees that if, for any reason, Lender declares all or any part of the principal of the Note to become due and payable or accelerates the maturity date of the Note on account of any Event of Default, and prepayment of all or any part of the principal of the Note is made by or on behalf of Borrower, or is otherwise made or occurs in connection with any reinstatement of this Mortgage under any foreclosure proceedings, or any right of redemption is exercised by Borrower or any other party having the right to redeem or prevent any foreclosure of this Mortgage, or prepayment of all or any part of the principal of the Note is made or occurs upon the consummation of any foreclosure sale, then Borrower or any other party making any such prepayment shall be obligated to pay, concurrently therewith, any premium in the amount set forth in the Loan Documents, and the payment of such premium shall be a condition to the making of such prepayment and shall be secured by this Mortgage. In addition, without limiting the scope of any other provision in this Mortgage, waives any right Borrower may have to repay the loan without charge and agrees to pay any premium set forth in any of the Loan Documents pursuant to any declaration, acceleration or otherwise, and Borrower hereby declares that Lender's agreement to make the loan to Borrower at the interest rate and for the term set forth in the Note constitutes adequate consideration for this waiver and agreement by Borrower.

33.    **Estoppel Affidavit.** Borrower, within ten (10) business days after written request from Lender, shall furnish a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defense exists against such indebtedness, and covering such other matters as Lender may reasonably require.

34.    **Binding on Successors and Assigns.** This Mortgage and all provisions hereof shall be binding upon Borrower and all persons claiming under or through Borrower, and shall inure to the benefit of the holders from time to time and of the successors and assigns of the Lender.

35.    **Amendments in Writing; Approvals and Consents by Lender; Lender's Discretion.** Any amendment, modification, termination, discharge, waiver, release or forbearance of or under this Mortgage must be n writing. Wherever Lender's consent or approval is contemplated or required in this Mortgage, such consent or approval must be in writing and may be granted or withheld in Lender's discretion, unless otherwise expressly provided. Any consent or other decision or judgment to be made by Lender hereunder or under the Loan Documents shall be at Lender's sole discretion unless otherwise specified. Any reference in the Loan Documents to "Lender's discretion" shall mean Lender's sole discretion unless otherwise specified.

36.    **No Partnership or Joint Venture.** No provision of this Mortgage or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender, it being intended that the only relationship created by this Mortgage, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

37.    **Future Advances for Protection of Property.** The total amount outstanding at any one time which is secured by this Mortgage, excluding any interest and any amounts advanced by Lender for the protection of the security

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 11

interest herein granted shall not exceed $4,743,514.27. This Mortgage, shall be governed by all provisions of Section 443.055 of the Revised Statutes of Missouri.

38.  **Business Loan; Not Personal Residence.** Borrower covenants, warrants and represents that all of the proceeds of the Loan shall be used for business or commercial purposes, none of the proceeds of the Loan shall be used for personal, family or household purposes, and that no individual liable for the Loan resides or intends to reside in any portion of the Property, and that no individual liable for the Loan resides or intends to reside in any portion of the Property, and that the Property does not constitute the homestead of the Borrower.

39.  **Conflicts.** Any matters for which there is a conflict or inconsistency between this Mortgage and the Loan Agreement shall be deemed to be governed by the terms and provisions of the Loan Agreement.

40.  **No Merger of Title.** There shall be no merger of any lease of or leasehold estate in the Property into any fee estate or ownership interest in the Property by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, such lease, leasehold estate, fee estate or ownership interest, unless the parties shall join in and record a written instrument effecting such a merger.

41.  **Publicity.** Borrower shall not use the name of Lender or any affiliate of Lender in any advertising or on any sign erected on the Premises without the prior written consent of Lender. Lender shall have the right, with Borrower's prior written approval, to issue a press release or official announcement in respect of the transactions contemplated hereby.

42.  **Participations.** Borrower recognizes that Lender may sell and transfer interests in the loan to one or more participants and that all documentation, financial statements, appraisals, reports and other data, or copies thereof, relevant to the Borrower, the Property, the Indemnitor or any guarantor, may be exhibited to and retained by any prospective participant. Borrower agrees to cooperate with Lender and execute any documents reasonably requested by Lender in connection with such participation and consistent with the terms hereof.

43.  **Assignment by Lender.** Lender shall have the right to assign its interest in the Obligations and the Loan Documents and upon such assignment Lender shall automatically be released from any further obligations hereunder.

44.  **Trustee.** Borrower agrees that the Trustee and any successor or substitute trustee may be an officer, agent, attorney, or employee of the Lender and any objections to such fact which might be made by the Borrower, its heirs, successors, or assigns, are hereby waived.

45.  **Substitute Trustee.** In case of the death, inability, refusal to act, resignation, or absence of the Trustee from the State of Missouri, or in case the holder of the Obligations shall desire for any reason to remove the Trustee or any substitute trustee hereunder and to appoint a new trustee in his place and stead, the holder of the Obligations is hereby granted full power to appoint in writing a substitute trustee for said Trustee, and the substitute trustee shall, when appointed, become successor to the title to the Property and the same shall become vested in him in trust for the purpose and objects of this Mortgage with all the powers, duties, and obligations herein conferred on the Trustee. In the event any foreclosure advertisement is running or has run at the time of such appointment of a substitute trustee, the substitute trustee may consummate the advertised sale without the necessity of republishing such advertisement. The making of oath or giving of bond by Trustee or any successor trustee is expressly waived.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]

EXECUTED as a sealed instrument as of the date first written above.

**BORROWER:**

CATAMOUNT A/S EXCHANGE CORPORATION,
a Delaware corporation, Trustee of the WEC 96D
SPRINGFIELD INVESTMENT TRUST, a Delaware
business trust, under instrument dated November 22,
1996

By: _____

Name: Greg L. England

Title: Vice President

STATE OF New York §

COUNTY OF New York §

On this ___ day of November, 1996, before me appeared GREG L. ENGLAND, to me personally known, who,
by me being duly sworn did say that he is the Vice President of CATAMOUNT A/S EXCHANGE CORPORATION, a
Delaware corporation and the said seal affixed to the foregoing instrument is the corporate seal of said corporation and
the said corporation is the trustee of the WEC 96D SPRINGFIELD INVESTMENT TRUST, a Delaware business trust
under instrument dated November 22, 1996, and said GREG L. ENGLAND acknowledged that he executed and sealed
the same on behalf of said corporation and said trust by authority of the Board of Directors of the corporation and said
trust instrument and he acknowledged said instrument to be his free act and deed and the free act and deed of said
corporation and said trust.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the
county or city and state aforesaid, the day and year last above written.

_____
Notary Public

My Term Expires: 9/30/98

MARIANNA M. ESPOSITO
Notary Public, State of New York
No. 30-4827074
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Sept. 30, 199_

This Instrument was prepared by and after recording should be returned to:

John M. Vasily, Esq.
Debevoise & Plimpton
875 Third Avenue
22nd Floor
New York, New York 10022

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT - Page 13

# Exhibit 3

2480 1816

## ASSIGNMENT OF LEASES AND RENTS
(With Future Advances and Future Obligations Covered by Section 443.053 RS.Ma)

This ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of November 27, 1996 by CATAMOUNT A/S EXCHANGE CORPORATION, a Delaware corporation, as trustee of the WEC 96D SPRINGFIELD INVESTMENT TRUST, a Delaware business trust, having a principal place of business at 6750 Lyndon B. Johnson Freeway, Suite 1100, Dallas, Texas 75240 (hereinafter called the "Assignor" and the expression "Assignor" shall include, wherever the context permits, its successors and assigns) to FIRST SECURITY BANK, NATIONAL ASSOCIATION, as Pass Through Trustee under Pass Through Trust Agreement dated November 27, 1996, known as the Circuit City - Staubach Pass Through Trust, Series 1996-A, having an address at 79 South Main Street, Salt Lake City, Utah 84111, Attention: Corporate Trust Services (hereinafter called the "Assignee").

This Assignment is granted pursuant to the provisions of a Loan Agreement dated as of even date herewith between Assignor, as borrower, and Assignee, as lender. Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement.

### WITNESSETH THAT:

1.    **Grant of Assignment.** The Assignor, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, hereby sells, grants, transfers, conveys, sets over and assigns to the Assignee, Assignor's right, title and interest in, to and under all leases, rental agreements, licenses and occupancy agreements (excluding Permitted Subleases, defined below) (the "Leases"), including but not limited to that certain Lease (the "Principal Lease") dated of even date herewith between Assignor, as landlord, and Circuit City Stores, Inc., ("Tenant") as tenant, a memorandum or notice of which is or will be recorded in the appropriate records in the county in which the Property is located, together with all renewals, extensions, replacements, amendments and modifications thereof now or hereafter in existence, with respect to the property described on Exhibit "A" annexed hereto ("Property"); Assignor is the owner of the Property. The term "Leases" (including the Principal Lease) shall not include any Permitted Sublease (defined below) and the term "tenant" shall not include any tenant under a Permitted Sublease, and the term "Rents" (defined below) shall not include sums payable to Tenant pursuant to Permitted Subleases except to the extent that Borrower is a party to, or has rights to proceeds under, any such sublease or occupancy arrangement. For purposes of this Assignment, "Permitted Subleases" shall mean the subleases and subtenancies entered into by Tenant in accordance with Section 17 of the Principal Lease. Assignor agrees that all tenants under the Leases are hereby expressly and irrevocably authorized and directed to pay any and all Rents accruing from and after the date hereof directly to Assignee. In the event the Assignor receives any Rents directly from its tenant(s) from and after the date hereof in violation of the terms of this Agreement or the Loan Agreement, Assignor shall immediately remit such Rents to Assignee to be applied in accordance with the requirements of the Loan Agreement.

TOGETHER with all rents, earnings, issues, income and profits arising from said Leases and any renewals, extensions, replacements, amendments or modifications thereof and together with all rents, earnings, issues, income and profits payable to Assignor for the use and occupation of all or any portion of the Property and from all other leases or occupancy agreements with respect to the Property or any portion thereof which may have heretofore been executed by or for the benefit of Assignor or which may be executed by or for the benefit of Assignor in the future during the term of this Assignment ("Rents");

TOGETHER with all of Assignor's interest in all guaranties of Leases;

TOGETHER with all of Assignor's right, title and interest in, to and under any and all rights, powers, privileges, options and other benefits of Assignor as lessor or grantor of an option under the Leases, including, but not by way of limitation:

(1)    The immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, refunds, rebates, surrender payments, cancellation payments, damages, monies and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

ASSIGNMENT OF LEASES AND RENTS - Page 1

2480   1817

(2)     The right to pursue and collect any claim in bankruptcy proceedings of any tenant;

(3)     The right to accept or reject any offer made by a tenant pursuant to its Lease to purchase the Property or any part thereof and any other property subject to a Lease as therein provided and to perform all other necessary or appropriate acts with respect to such purchases as agent and attorney-in-fact for Assignor; notwithstanding the foregoing, Assignee will not accept any offer made by Tenant pursuant to Section 12(b) of the Principal Lease sooner than five (5) days prior to the last day on which Assignor may accept or reject such offer under the Principal Lease, and Assignee agrees to join with Assignor in rejecting such offer if Assignor notifies Assignee prior to the date specified above of its intention to reject such offer and deposits with Assignee an amount equal to the full amount of the Obligations then outstanding or reasonably expected to be outstanding at the time of termination of the Principal Lease, to be applied to repay the full amount of the Obligations at the time of termination of the Principal Lease.

(4)     The right to make all waivers and agreements, to give and receive all notices, consents and releases, and to take such action upon the happening of a default under any Lease as Assignor might have taken, including the right to commence, conduct and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by law;

(5)     To do any and all other things whatsoever which the Assignor is or may become entitled to do under or by virtue of the Leases or any of them.

Together with full power and authority, in the name of Assignor or otherwise, to demand, receive, enforce, collect or receipt for any or all of the foregoing, to endorse or execute any checks or other instruments or orders, to file any claims and to take any action which Assignee may deem necessary or advisable in connection therewith. Assignor hereby irrevocably constituting Assignee the attorney-in-fact of Assignor for such purposes, which appointment is coupled with an interest and is irrevocable. No exercise by Assignee of any rights of Assignor shall release Assignor from its obligations under the Lease.

This Assignment is a perfected present, absolute, direct and unconditional assignment and transfer of all Assignor's right, title and interest in and to the Leases and the Rents made in consideration of the Loan by Assignee to Assignor and as additional security for the repayment of the Obligations (as hereinafter defined).

2.     **Obligations Secured.** The Term "Obligations" shall have the meaning set forth in the Loan Agreement and shall include, without limitation, the following matters:

(1)     The payment and performance of all obligations set forth in that certain Promissory Note ("Note") dated as of even date herewith, including any extensions, renewals, increases, consolidations, replacements, modifications and amendments thereof, in the original amount of $4,743,514.27 and a Maturity Date of December 1, 2018, given by the Assignor, as maker, to the order of the Assignee;

(2)     The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by the Assignor under and pursuant to the Loan Agreement and each of the other Loan Documents;

(3)     The payment of all costs, expenses, legal fees and liabilities incurred by Assignee in connection with the enforcement of any of Assignee's rights or remedies under this Assignment and the other Loan Documents;

(4)     The payment, performance, discharge and satisfaction of every obligation of the Assignor to Assignee under and pursuant to the Deed of Trust, Security Agreement and Financing Statement (referred to herein as the "Mortgage") of even date given to Assignee to be recorded and filed herewith;

(5)     The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and obligation of the Assignor to the Assignee under this Assignment; and

ASSIGNMENT OF LEASES AND RENTS - Page 2

BOOK 2480 PAGE 1818

(6)      The payment, performance, discharge and satisfaction of all other liabilities and obligations of the Assignor to the Assignee, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including without limitation each such liability and obligation of the Assignor under any of the Loan Documents and each amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

**3.      Warranties and Representations.** The Assignor WARRANTS AND REPRESENTS that it is and shall be in the future the sole owner of the entire lessor's interest in the Leases and that no rent reserved in said Leases has been or will be in the future otherwise assigned or anticipated (except as may be provided in the Loan Agreement).

The Assignor further WARRANTS AND REPRESENTS that as of the date hereof: (a) the Principal Lease and the Permitted Subleases are the only Leases or occupancy agreements affecting any or all of the Property; (b) the Principal Lease is in full force and effect and a true and complete copy thereof together with all amendments and modifications have been previously delivered to the Assignee; (c) no default exists on the part of the Tenant or the landlord in the performance of any of the terms, covenants, provisions or agreements in the Principal Lease; (d) Assignor knows of no condition which with the giving of notice or the passage of time or both would constitute a default on the part of the Tenant or the landlord under the Principal Lease; (e) no security deposit or advance rental payment has been made by Tenant under the Principal Lease; and (f) Assignor has good right and authority to make this Assignment.

**4.      Covenants.** The Assignor covenants with the Assignee as follows:

**4.1      Perform Lease Obligations.** Assignor shall observe and perform all the material obligations imposed upon the lessor under every Lease and not do or permit to be done anything to impair the security thereof; not collect any of the rent, income and profits arising or accruing under said Leases or from the Property in violation of the Lease or Assignee's rights hereunder or under the Loan Agreement or other Loan Documents; not execute any other assignment of lessor's interest in said Leases or assignment of Rents arising or accruing from said Leases or from the Property; not alter, modify, amend or change the terms of said Leases or cancel or terminate the same or accept a surrender or assignment or subletting thereof without the prior written consent of the Assignee in each instance; not subordinate any such Lease to any mortgage or other encumbrance, or permit, consent or agree to such subordination, without Assignee's prior written consent in each instance; not convey or transfer or suffer or permit a conveyance or transfer of the premises demised by any such Lease or of any interest therein so as to effect directly or indirectly a merger of the estates and rights, or a termination or diminution of the obligations, of any lessee thereunder; not alter, modify or change the terms of any guaranty of any Lease or cancel or terminate any such guaranty without the prior written consent of Assignee in each instance; not consent to any assignment of or subleasing under any Lease (except for Permitted Subleases pursuant to Section 17 of the Principal Lease), without the prior written consent of the Assignee in each instance; not enter into any future Leases without the Assignee's prior written consent in each instance (provided that nothing herein shall be deemed to prohibit the valid exercise by Tenant of any options it may have under the Principal Lease as approved by Assignee as of the date hereof); upon the execution of any new Leases, assign and transfer to the Assignee any and all subsequent Leases upon all or any part of the Property and to execute and deliver at the request of the Assignee all such further assurances and assignments in the Property as the Assignee shall from time to time require to evidence such assignments or otherwise; promptly (but in any event within five (5) business days from Assignor's receipt or sending thereof) deliver to Assignee a copy of any notice from any tenant and any notice from Assignor to any tenant alleging a default under any Lease; promptly (but in any event within five (5) business days from the time Assignor has actual knowledge thereof) notify Assignee if Assignor believes it or any tenant will be unable to fulfill its obligations under any Lease.

**4.2      License to Operate.** Assignee shall have the right to enter the Property for the purpose of enforcing its interest in the Leases and the Rents, and any income and profits arising therefrom, this Assignment constituting a present, absolute assignment thereof. Assignee grants to Assignor a revocable license to operate and manage the Property; provided, however, Assignee may revoke such license upon and during the continuation of an Event of Default (as such term is defined in the Loan Agreement); provided, further, that such license shall be deemed automatically revoked upon the occurrence of any Bankruptcy Event as that term is defined in the Loan Agreement.

**4.3      After Default; Remedies.** Upon or at any time after an Event of Default, the Assignee, without in any way waiving such Event of Default, at its option, without further notice, and without regard to waste, the

ASSIGNMENT OF LEASES AND RENTS - Page 3

2480 1819

adequacy of the security for the Obligations secured hereby and by the Mortgage, or solvency of the Assignor, may declare all Obligations to be immediately due and payable, may revoke the license described in Section 4.2 above, and may, either in person or by agent, with or without bringing any action or proceedings, or by a receiver appointed by a court, take possession of the Property and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper and, either with or without taking possession of the Property in its own name, demand, sue for, or otherwise collect and receive, all Rents, income and profits of the Property not already collected by Assignee, including those past due and unpaid, with full power (to the extent permitted by the Principal Lease) to make from time to time all improvements, alterations, renovations, repairs and replacements thereto or thereof as may seem proper to the Assignee, and to apply such Rents, income and profits in the following priority:

      (a)    to payment of all reasonable fees of any receiver appointed hereunder,

      (b)    to application of tenant's security deposits as required by applicable law in the state in which the Property are located (the "State"),

      (c)    to payment when due of prior or current real estate taxes or special assessments with respect to the Property or, if the Mortgage so requires, to the periodic escrow for payment of the taxes or special assessments then due,

      (d)    to payment when due of premiums for insurance of the type required by the Mortgage or, if the Mortgage so requires, to the periodic escrow for the payment of premiums then due,

      (e)    to payment of all expenses for normal maintenance of the Property including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees as the Assignee may deem necessary or desirable, and all expenses of operating and maintaining the Property, including, without being limited thereto, the cost of all improvements, alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and

      (f)    any Rents remaining after application of the above items shall be applied to all sums which the Assignor is responsible to pay under the Mortgage, and the principal sum, interest and indebtedness secured hereby and by the Mortgage, and all other Obligations together with all reasonable costs and reasonable attorneys' fees.

The exercise by the Assignee of the right granted it in this Assignment and the collection of the Rents, income and profits and the application thereof as herein provided shall not be considered a waiver by the Assignee of any default under the other Loan Documents or under said Leases, or this Assignment.

Without limiting the foregoing, the right and license granted to Assignor above to operate and manage the Property shall, at Assignee's option, be revoked and terminated upon the occurrence of an Event of Default. During the continuance of an Event of Default, Assignor shall have no further right to function as lessor under any of the Leases.

In any and all circumstances, the parties hereby acknowledge and explicitly express their intent that the Assignee shall have a perfected security interest in the Leases and Rents upon recordation of this Assignment and notification to any of the tenants under the Leases to pay rent directly to the Assignee.

The right of Assignee to collect and receive the rents and the proceeds of any right assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Assignee shall, to the extent not prohibited by law also extend to the period from and after the filing of any suit to foreclose the lien of the Mortgage, including any period allowed by law for the redemption of the Property after any foreclosure sale.

    4.4    **Continuing Effect; Direction to Lessees.** Upon payment in full to the Assignee of the principal sum, interest, and other Obligations, this Assignment shall become and be void and of no effect, but the affidavit of any officer, agent, or attorney of the Assignee made in good faith showing any part of said principal, interest, or other Obligations to remain unpaid or unperformed shall be and constitute prima facie evidence of the validity, effectiveness

ASSIGNMENT OF LEASES AND RENTS - Page 4

and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon. The discharge of record of the Mortgage shall constitute a discharge of this Assignment and a release of the Assignee's interest in the Leases and Rents assigned hereby and the reassignment thereof (without recourse to the Assignee) to the Assignor and all those claiming of record by, through or under the Assignor. The Assignor hereby authorizes and directs the lessees named in said Leases or any other or future lessees or occupants of the Property (except under Permitted Subleases), to pay over to the Assignee all Rents, income and profits arising or accruing under said Leases or from the Property from and after the date hereof and to continue so to do until otherwise notified by the Assignee, or until discharge of this Assignment, whichever is earlier. Subject to the applicable provisions of the Principal Lease, the Assignor further directs such lessees under Leases to pay over to the Assignee any amounts which would be owed by such lessees under Leases to Assignor as a result of a casualty or condemnation or otherwise.

4.5    **No Waiver; Concurrent Rights.** Nothing contained in this Assignment and no act done or omitted by the Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Assignee of its rights and remedies hereunder or any one or more of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Assignee under the terms of any of the other Loan Documents. The right of the Assignee to collect said principal sums, interest and indebtedness and to enforce any other security therefor held by it may be exercised by the Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

4.6    **No Liability.** Nothing herein contained shall be construed as constituting Assignee a mortgagee-in-possession in the absence of the taking of actual possession of the Property. In the exercise of powers herein granted to Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor, except for Assignee's gross negligence or willful misconduct. Without limiting the generality of the foregoing, the Assignee shall not be liable for any loss sustained by the Assignor resulting from any act or omission of the Assignee in managing the Property after a default unless such loss is caused by the gross negligence or willful misconduct of the Assignee. The Assignee shall not be obligated to perform or discharge, nor does the Assignee hereby undertake to perform or discharge, any obligation, duty or liability under said Leases, or under or by reason of this Assignment, and the Assignor shall, and does hereby agree to, indemnify the Assignee for, and to hold the Assignee harmless from, any and all liability, loss or damage which is incurred under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against the Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said Leases; provided, however, that Assignor shall not indemnify and hold Assignee harmless from liability, loss or damage arising solely from the gross negligence or willful misconduct of the Assignee and incurred either (i) after Assignee has exercised its right to enter and take possession of the Property pursuant to the Loan Documents and while Assignee was actually in possession of the Property at the time such action arose, (ii) after Assignee has exercised its rights to foreclose on the Mortgage securing the Obligations or (iii) after Assignee has acquired the Property by deed-in-lieu of foreclosure. Should the Assignee incur any such liability under said Leases or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby and by the Mortgage and by the other collateral for the Obligations and the Assignor shall reimburse the Assignee therefor immediately upon demand and upon the failure of the Assignor so to do, the Assignee may, at its option, declare all sums secured hereby immediately due and payable. It is further understood that this Assignment shall not operate to place responsibility for the control, care, management or repair of said Property upon the Assignee, nor for the carrying out of any of the terms and conditions of said Leases; nor shall it operate to make the Assignee responsible or liable for any waste committed on the Property by tenants or any other parties, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of said Property resulting in loss or injury or death to any tenant, licensee, employee or stranger, except as provided above.

4.7    **Effect of Foreclosure Deed.** Upon the issuance of any deed or deed pursuant to a foreclosure of the Mortgage, all right, title and interest of the Assignor in and to the Leases shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Assignor. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its agent and attorney in fact, after an Event of Default, to execute all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

ASSIGNMENT OF LEASES AND RENTS - Page 5

2480 1821

**4.8     Upon Termination of Lease in Bankruptcy.** In the event any lessee under any of the Leases should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state or local statute which provides for the possible termination or rejection of the Leases assigned hereby, Assignor covenants and agrees that if any of the Leases is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, in each instance, and any check in payment of damages for termination or rejection of any such Lease shall be made payable to the Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that Assignor will duly endorse to the order of Assignee any such check which is made payable to Assignor, the proceeds of which shall be applied to the indebtedness secured by this Assignment. Assignor hereby irrevocably appoints Assignee and its successors and assigns as its attorney-in-fact, which power is coupled with an interest, after an Event of Default, to so endorse any such checks if Assignor does not do so.

**5.     General Provisions.**

**5.1     Conflicts.** This Assignment is intended to be supplementary to, and not in substitution for, or in derogation of, any assignment of Rents to secure the Obligations contained in the Mortgage or in any other Loan Document. In the event of any conflict or inconsistency in any matters contained in this Assignment and the Loan Agreement or Mortgage, the terms and provisions of the Loan Agreement (or Mortgage) shall govern.

**5.2     Notices.** Any notice or communications in connection herewith shall be sufficiently given if given in the manner provided for in the Loan Agreement.

**5.3     Successors and Assigns.** All of the rights, powers, privileges and immunities herein granted and assigned to the Assignee shall also inure to its successors and assigns, including all holders, from time to time, of the Note and all of the burdens created herein shall be binding upon Assignor and its successors and assigns.

**5.4     Governing Law.** This Assignment and all agreements and instruments executed by Assignor in connection herewith shall be governed by and construed in accordance with the internal laws of the State of Missouri, except that the laws of the State where the Property are located shall govern the exercise of remedies by the Assignee to the extent specified in the Loan Agreement.

**5.5     Limited Recourse Provisions.** The liability of the Assignor and its partners, trustees and beneficiaries, or shareholders (as applicable) with respect to the Obligations is subject to the express limitations set forth in the Loan Agreement.

**5.6     Severability.** In case any one or more of the provisions of this Assignment, the Note, the Mortgage, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof. Each of the provisions of every such agreement, document or instrument shall be enforceable by Assignee to the fullest extent now or hereafter permitted by law.

**5.7     Headings.** Headings and captions in this Assignment are for convenience and reference only and the words and phrases contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of any of the provisions hereof.

**5.8     Time of Essence.** Time shall be of the essence of each and every provision of the Loan Agreement, the Note, this Assignment and each of the other Loan Documents.

**5.9     No Partnership or Joint Venture.** No provision of this Assignment or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Assignor and Assignee, it being intended that the only relationship created by this Assignment, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

ASSIGNMENT OF LEASES AND RENTS - Page 6

5.10    **Future Advances for Protection of Property.** The total amount outstanding at any one time which is secured by this Assignment, excluding any interest and any amounts advanced by Assignee for the protection of the security interest herein granted shall not exceed $4,743,514.27. This Assignment, shall be governed by all provisions of Section 443.055 of the Revised Statutes of Missouri.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.]

вк 2480 рс 1824

Springfield, Missouri

## EXHIBIT A

BEING ALL OF TRACT 1 OF THE MINOR SUBDIVISION AS RECORDED IN THE GREENE COUNTY RECORDER'S OFFICE IN BOOK 2429 AT PAGE 1843 AND BEING ALL OF THAT TRACT OF LAND AS DESCRIBED IN THE GREENE COUNTY RECORDER'S OFFICE IN BOOK 2431 AT PAGE 1191 TO CIRCUIT CITY STORES, INC., A VIRGINIA CORPORATION, AND IN BOOK 2431, AT PAGE 1188 TO CIRCUIT CITY STORES, INC., A VIRGINIA CORPORATION, AND BEING A PART OF LOT 3 AND 4 OF McCALLISTER ESTATES SUBDIVISION AND LYING IN THE NORTH HALF OF SECTION 8, TOWNSHIP 28 NORTH, RANGE 21 WEST, CITY OF SPRINGFIELD, GREENE COUNTY, MISSOURI, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 4 OF McCALLISTER ESTATES SUBDIVISION; THENCE ALONG THE NORTH LINE OF SAID LOT 4 SOUTH 86 DEGREES 51 MINUTES 00 SECONDS EAST, 1014.25 FEET TO THE NORTHEAST CORNER OF LOT 4; THENCE ALONG THE EASTERLY LINE OF SAID LOT 4 SOUTH 54 DEGREES 38 MINUTES 45 SECONDS WEST, 205.58 FEET; THENCE SOUTH 3 DEGREES 08 MINUTES 26 SECONDS WEST, 61.51 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY OF MAC'S COURT; THENCE ALONG SAID RIGHT-OF-WAY 128.92 FEET ALONG A 100.00 FOOT RADIUS CURVE TO THE LEFT WHOSE CHORD BEARS SOUTH 56 DEGREES 02 MINUTES 42 SECONDS WEST, 120.18 FEET; THENCE NORTH 86 DEGREES 50 MINUTES 59 SECONDS WEST, 264.86 FEET; THENCE SOUTH 3 DEGREES 09 MINUTES 01 SECONDS WEST, 19.00 FEET; THENCE NORTH 86 DEGREES 50 MINUTES 59 SECONDS WEST, 268.76 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF GLENSTONE AVENUE (BUSINESS HIGHWAY 65); THENCE ALONG SAID RIGHT-OF-WAY NORTH 35 DEGREES 24 MINUTES 01 SECONDS WEST, 359.31 FEET TO THE POINT OF BEGINNING, ALL LYING IN THE NORTHWEST QUARTER OF SECTION 8, TOWNSHIP 28 NORTH, RANGE 21 WEST.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OF SERVICE VEHICLES AS ESTABLISHED BY THE INSTRUMENT ENTITLED COVENANT AGREEMENT, DATED NOVEMBER 20, 1995, RECORDED MARCH 14, 1996 IN BOOK 2431, PAGE 1193 AND RE-RECORDED APRIL 2, 1996 IN BOOK 2435, PAGE 618.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE DESIGNATED 30 FOOT PRIVATE ROAD ESTABLISHED BY THE RECORDED PLAT OF SAID SUBDIVISION FILED DECEMBER 15, 1975 IN BOOK DD, PAGE 60, AND AGREEMENTS IN BOOK 1543, PAGE 1400, AND IN BOOK 1512, PAGE 1744, AND WARRANTY DEED IN BOOK 1040, PAGE 179.

U:\CIRCUIT\STAUBAC4\LEGAL.MO

1