# Exhibit 1

<u>SETTLEMENT AGREEMENT</u>

THIS SETTLEMENT AGREEMENT ("<u>Agreement</u>") is made and entered into on December 9, 2009 (the "<u>Effective Date</u>"), among BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, having a mailing address of 3450 Northlake Blvd., S-210, Palm Beach Gardens, Florida 33403 ("<u>Borrower</u>"), MATHIEU ROSINSKY ("<u>Rosinsky</u>"), individually and on behalf of THE HAROLD ROSINSKY TRUST DATED DECEMBER 29, 1982, a terminated trust (the "<u>Guarantor</u>"), each having a mailing address of c/o Harold Rosinsky, 3450 Northlake, Palm Beach Gardens, Florida 33403, WELLS FARGO BANK, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A. (formerly known as Norwest Bank Minnesota, National Association), as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1998-C1-CTL ("<u>Lender</u>"), having a mailing address of c/o Capmark Finance Inc., Debtor-in-Possession, 700 N. Pearl Street, Suite 2200, Dallas, Texas 75201, Attention: Asset Manager and Benedict A. Silverman, having a mailing address of 13 River Road: P.O. Box 399, Washington Depot, Connecticut 06794 ("<u>Silverman</u>").

## RECITALS

A.      Legg Mason Real Estate Services South, Inc., a Florida corporation ("<u>Original Lender</u>"), heretofore made a loan to Borrower in the original principal amount of $7,244,474.74 (the "<u>Loan</u>"), evidenced by a Mortgage Note (the "<u>Note</u>") dated December 30, 1996 executed by Borrower made payable to Original Lender.

B.      The Loan is secured by (i) a Mortgage, Security Agreement and Assignment of Leases and Rents (the "<u>Mortgage</u>") dated December 30, 1996, executed by Borrower in favor of Original Lender and recorded in Official Records Book 9603, Page 258, of the Public Records of Palm Beach County, Florida, which Mortgage encumbers the real property legally described in attached Exhibit "A" (the "<u>Property</u>"), attached hereto and incorporated herein by this reference, (ii) the Indemnity and Guaranty Agreement dated December 30, 1996 (the "<u>Original Guaranty</u>") executed by Bond-Circuit L.P., an Illinois limited partnership (the "<u>Original Guarantor</u>") in favor of Original Lender, and (iii) certain other loan documents executed in connection with the Loan (the "<u>Other Loan Documents</u>").   The Note, Mortgage, Original Guaranty, the Guaranty (as defined below) and Other Loan Documents may be collectively referred to herein as the "<u>Loan Documents</u>".

C.      Original Lender assigned the Loan Documents to Legg Mason Mortgage Capital Corporation, a Maryland corporation ("<u>Second Lender</u>"), pursuant to (i) that certain Assignment of Mortgage, Security Agreement and Assignment of Leases and Rents dated December 30, 1996, executed by Original Lender in favor of Second Lender and recorded in Official Records Book 9603, Page 325, of the Public Records of Palm Beach County, Florida, (ii) that certain Assignment of Assignment of Leases and Rents from Original Lender, in favor of Second Lender, dated December 30, 1996, executed by Original Lender in favor of Second Lender and recorded in Official Records Book 9603, Page 331, of the Public Records of Palm Beach County, Florida; and (iii) that certain UCC-3 Assignment recorded in Official Records Book 9603, Page 358, of the Public Records of Palm Beach County, Florida.

D.      Guarantor executed that certain Indemnity and Guaranty Agreement (the "<u>Guaranty</u>") dated December 31, 1997, to further secure the Loan and in connection with which Second Lender released the Original Guarantor from liability under the Original Guaranty.

E.      Second Lender assigned the Loan Documents to Daiwa Finance Corp., a New York corporation ("<u>Third Lender</u>"), pursuant to (i) that certain Assignment of Mortgage, Security Agreement and Assignment of Leases and Rents and Assignment of Assignment of Leases and Rents dated March 19, 1998, executed by Second Lender in favor of Third Lender and recorded in Official Records Book

10325, Page 1343, of the Public Records of Palm Beach County, Florida, and (ii) UCC-3 Assignment recorded in Official Records Book 10308, Page 322, of the Public Records of Palm Beach County, Florida.

F.      Third Lender assigned the Loan Documents to Lender, pursuant to (i) that certain Assignment of Mortgage, Security Agreement and Assignment of Leases and Rents and Assignment of Assignment of Leases and Rents dated March 23, 1998, executed by Third Lender in favor of Lender and recorded in Official Records Book 10611, Page 1901, of the Public Records of Palm Beach County, Florida.

G.      On or about August 9, 1999, Guarantor was terminated by its trustees and beneficiary ad all of the assets of Guarantor distributed to the beneficiary.

H.      At the time of the termination of Guarantor, Rosinksy was the sole beneficiary of Guarantor and received the distribution of all of the assets of Guarantor.

I.      There currently exists one or more Events of Default (as defined in the Mortgage), including, without limitation, Borrower's failure to make payments required under the Loan Documents when due and prior to the expiration of any applicable grace period.

J.      Lender heretofore filed in the Circuit Court of the 15th Judicial Circuit, in and for Palm Beach County, Florida, a complaint (the "Foreclosure Complaint") seeking to foreclose the Loan and the Loan Documents on account of those Events of Default by Borrower in the performance of its obligations under the Loan Documents, referenced above (the "Foreclosure Proceedings").

K.      Notwithstanding the aforementioned Events of Default and pending Foreclosure Proceedings, Lender has agreed, at Borrower's request, to accept a discounted payoff of the Loan, all subject to and in strict accordance with the terms and conditions set forth in this Agreement.

L.      In order to induce Lender to accept a discounted payoff of the Loan, all subject to and in strict accordance with the terms and conditions set forth in this Agreement, and to execute this Agreement, Rosinsky has agreed to assume all of Guarantor's liabilities and obligations under the Guaranty. Rosinsky has an ownership interest in Borrower and shall benefit from this Agreement.

M.      In order to induce Lender to accept a discounted payoff of the Loan, all subject to and in strict accordance with the terms and conditions set forth in this Agreement, and to execute this Agreement, Silverman has agreed to deliver the Letter of Credit (as defined below), pursuant to the terms and conditions of this Agreement. Silverman has an ownership interest in Borrower and shall benefit from this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements set forth below, Borrower, Guarantor, Silverman and Lender hereby agree as follows:

1.      Recitals. The foregoing recitals are true and correct and are made a part of this Agreement.

2.      Defined Terms. Unless otherwise defined herein, capitalized terms used herein shall have the meanings given to them in the Mortgage.

3.      Outstanding Principal Balance. Borrower acknowledges and agrees that the outstanding principal balance of the Loan, as of the Effective Date, is $4,737,606.30 (the "Outstanding Principal"), and that Borrower has made no payment of principal or interest since March 1, 2009.

4.     Conditions Precedent.  On or before the Effective Date, and as a condition precedent to the effectiveness of this Agreement:

4.1     Borrower shall pay or cause to be paid to Palm Beach County tax collector all real estate taxes for the Property for calendar year 2008 and all prior years, and shall provide evidence of such payment acceptable to Lender, in its reasonable discretion.

4.2     Borrower shall pay or cause to be paid to Lender, by wire transfer of cleared federal funds in accordance with the wire transfer instructions set forth in Exhibit "B" the sum of $500,000.00 (the "Initial Pay Down").  The Initial Pay Down shall be immediately applied by Lender in accordance with the terms of the Loan Documents.

4.3     Silverman shall deliver or cause to be delivered to Lender a Letter of Credit in the amount of $500,000, substantially in the form attached hereto as Exhibit "C", and in any event acceptable to Lender in its sole discretion (the "Letter of Credit").

4.4     Borrower shall deliver an assignment of any and all claims, actions, causes of action, suits, and demands whatsoever, in law or in equity which Borrower may have under that certain Lease dated December 30, 1996, between Borrower and Circuit City Stores, Inc.

4.5     Borrower and Guarantor shall execute and deliver to Shutts & Bowen LLP (the "Escrow Agent") (a) a general release (the "General Release") in favor of Lender, as to any and all claims pertaining to the Loan, the Loan Documents, the Property and any course of conduct or dealing of Lender, in the form attached hereto as Exhibit "D"; and (b) a Statutory Warranty Deed (the "Deed") conveying the Property to Lender (or its designee or nominee), in the form attached hereto as Exhibit "E".

5.     Discounted Prepayment Amount; Application of Funds.

5.1     Subject to the terms, covenants and conditions set forth herein (including the requirement to deliver the General Release described in Section 5.2 below), Lender has agreed to accept the amount of $3,600,000.00 (the "Discounted Payoff Amount") as payment in full of all of Borrower's obligations under the Loan Documents.  Borrower shall pay the Discounted Payoff Amount on or before January 22, 2010 (the "Payment Deadline"), to Lender by wire transfer of cleared federal funds in accordance with the wire transfer instructions set forth in Exhibit "B", the sum of $3,100,000 (which, together with the Initial Pay Down, shall constitute the full amount of the Discounted Payoff Amount).

5.2     In the event Borrower complies with Section 5.1 hereof, (a) Escrow Agent shall deliver the General Release to Lender, (b) Escrow Agent shall return the Deed to Borrower; (c) Escrow Agent shall return the Letter of Credit to Silverman; and (d) Lender shall either (i) cause a satisfaction of mortgage to be recorded, as required by applicable law, or (ii) upon written notice from Borrower to Lender, delivered not less than fifteen (15) days prior to the Payment Deadline, execute the Assignment (as defined in Section 5.4 below).

5.3     In the event Borrower fails to comply with tender the Discounted Payoff Amount, less the Initial Pay Down, within five (5) business days of the Payment Deadline, then: (a) Escrow Agent shall (i) deliver the General Release to the Lender (and the General Release shall be fully effective, operational and enforceable); and (ii) record the Deed in the Public Records of Palm Beach County (and it shall be effective, for all purposes, to convey title to the Property); and (b) Lender may draw all of the Letter of Credit and apply such amount toward the Debt in such order and priority as Lender may determine in its sole discretion.

5.4    As used herein, the "Assignment" shall mean an assignment of the Note, Mortgage and any and all of Lender's rights in the Foreclosure Proceedings in favor of Lancon, L.P., a Pennsylvania limited partnership ("Lancon") and/or its designee (the "Designee"), provided that:

(A)    The Assignment shall be given without recourse to Lender of any kind whatsoever;

(B)    The Assignment shall be given without any representation or warranty from Lender of any kind whatsoever;

(C)    Borrower and Lancon hereby agree that upon execution of the Assignment by Lender, Borrower and Lancon shall (and shall cause Designee to) defend, indemnify and hold Lender harmless from and against any and all liability, demands, claims, actions, losses, costs, penalties, damages or expenses, including reasonable attorneys' fees (collectively "Claims"), arising out of or in any way related to the Loan or the Foreclosure Proceedings, whether any such Claim is made by or through Borrower, Guarantor or any or any third party claiming by or through Borrower or Guarantor for any reason whatsoever, and whether such Claim arises or is based on events first occurring before or after the date of the Assignment, or as a direct or indirect result of any acts of Lender, Borrower, Guarantor, Lancon, Designee or any agent, employee, nominee, designee, parent, subsidiary, affiliate, Master Servicer, Special Servicer or independent contractor of any of them;

(D)    Lancon or Designee is or shall be, at the time of the Assignment, an affiliate of Silverman; and

(E)    Borrower, Lancon and Designee shall execute any documentation reasonably requested by Lender in connection with the Assignment and the conditions set forth in this Section 5.4.

6.    Assumption of Guaranty.  Rosinsky hereby assumes the Guaranty, and agrees to pay, perform, comply with and abide by all obligations, liabilities and undertakings imposed on Guarantor under or in connection with the Guaranty, to the same extent as if Rosinsky had been an original party to such Guaranty.

7.    Loan Documents Remain Unmodified.  Borrower and Guarantor hereby acknowledge that (a) this Agreement does not constitute a reduction of the Note or the Debt, (b) this Agreement does not constitute a modification or amendment of the Loan or any of the Loan Documents, and (c) if Borrower fails to comply with Sections 5.1 and 5.2 hereof, Borrower and Guarantor shall remain liable for all of their respective obligations under the Loan Documents.

8.    Covenants.  From and after the Effective Date:

8.1    Borrower shall comply with all of the covenants contained in the Loan Documents, including, without limitation, maintenance of all insurance policies and coverages required under the terms of the Loan Documents.

8.2    Borrower shall not (a) convey, grant or encumber the Property by mortgage or any other lien, (b) take any action that would permit any party to have a claim of any lien on the Property, nor (c) permit any party to file any lien or make any claim of lien against the Property.  The reference to liens in this Section shall include, without limitation, any construction liens and/or claims of lien for labor, materials or services.  The Borrower specifically agrees to have any liens which may be filed

against the Property released or bonded within ten (10) days of the date of filing of the same, time being of the essence.

        8.3     Borrower shall not file, nor take any steps to file any petition for relief under any bankruptcy, insolvency, moratorium, receivership, conservatorship or other law concerning debtors' obligations or creditors' rights, and shall not make, nor take any steps to make any general assignment for the benefit of creditors pursuant to any federal or state statute or other applicable law.

        8.4     Borrower shall take no action whatsoever with respect to that certain Cross-Access Agreement dated June 26, 2003 and recorded in Official Records Book 15509, Page 1296, of the Public Records of Palm Beach County, Florida.

        8.5     Borrower shall not be required to make periodic payments of principal and/or interest that may be due and payable under the Note, Mortgage or other Loan Documents.

        8.6     Lender shall not, prior to a Default hereunder, exercise any remedies available to Lender under the Loan Documents, or continue prosecuting the Foreclosure Proceedings, for the existing Events of Default described in Paragraph D of the Recitals or Borrower's failure to make payments of principal and/or interest from the Effective Date until the Payment Deadline.

9.     <u>Representations and Warranties</u>.  The Borrower and Rosinsky represent, warrant, ratify and confirm as follows:

        9.1     The Loan Documents are in full force and effect, have been duly executed and delivered, and constitute the legal, valid and binding agreements and obligations of the Borrower and Guarantor, as applicable, enforceable against the Borrower and Guarantor in accordance with their respective terms.

        9.2     Borrower is a business trust duly formed and validly in existence under the laws of the State of Delaware.  The execution, delivery and performance of this Agreement by Borrower has been duly and validly authorized by all necessary corporate, company, partnership, trust and other action, including, without limitation, obtaining the consent of all members, partners, trustees, beneficiaries and other third parties whose consent may be required.  Borrower has the full right, power and authority to execute and deliver this Agreement, and to perform all of its obligations under this Agreement.

        9.3     To the Borrower's knowledge: (i) there are no actions, suits or proceedings at law or in equity now pending or threatened against or affecting the Borrower that would have a material adverse effect on its ability to perform its obligations under this Agreement and/or the Loan Documents; and (ii) the Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any governmental agency.

        9.4     Guarantor was an irrevocable trust duly formed and validly in existence under the laws of the State of Florida, which has been duly terminated.  At the time Guarantor was terminated, Rosinsky was the sole beneficiary and recipient of all of the assets of Guarantor.

        9.5     To Rosinsky's knowledge: (i) there are no actions, suits or proceedings at law or in equity now pending or threatened against or affecting Rosinsky that would have a material adverse effect on its ability to perform its obligations under this Agreement and/or the Loan Documents; and (ii) Rosinsky is not in default with respect to any order, writ, injunction, decree or demand of any court or any governmental agency.

9.6     Borrower has obtained and is maintaining in full force and effect all licenses and permits which are required under applicable law, rules and regulations, to operate the Property in the manner in which it is currently being operated.

9.7     Borrower has obtained all insurance policies and coverages required under the terms of the Loan Documents and all such policies are in full force and effect (and will be maintained in full force and effect during the term of the Loan).

9.8     The Loan, as evidenced by the Note, shall continue to be secured by, among other things, the Mortgage and the other Loan Documents, without interruption.

9.9     All of the terms, covenants, conditions, representations, warranties and agreements contained in the Note, the Mortgage, the Guaranty and the other Loan Documents are hereby ratified, confirmed and reaffirmed in all respects.

9.10    No payment of interest, which has been made to Lender or contracted to be made to Lender, has resulted or will result in the computation or earnings of interest in excess of the maximum lawful rate.

9.11    No oral representations, statements, or inducements have been made by Lender with respect to the Loan or this Agreement.

10.    Lender's Rights and Remedies on Default.  Each of the following shall constitute a "Default" under this Agreement: (a) Borrower's failure to comply with Section 4 of this Agreement, TIME BEING OF THE ESSENCE, (b) Borrower's failure to pay the Discounted Payoff Amount to Lender on or before the Payment Deadline, TIME BEING OF THE ESSENCE, (c) Borrower's failure to maintain all insurance policies and coverages required under the terms of the Loan Documents, or (d) Borrower's failure to comply with any other covenant or provision of this Agreement.  Upon the occurrence of such a Default:

10.1    All principal, accrued and unpaid interest and all other outstanding sums under the Loan Documents shall be immediately due and payable at the option of the Lender, without further notice of any kind;

10.2    Lender may, at any time thereafter and without further notice of any kind to Borrower, pursue any and all of its rights and remedies under the Loan Documents or applicable law, including prosecuting the Foreclosure Proceedings and pursuing a Final Judgment (as defined below);

10.3    Lender may record the Deed in the Public Records of Palm Beach County (or cause the Escrow Agent to so record the Deed);

10.4    Lender may draw all of the Letter of Credit and apply such amount toward the Debt in such order and priority as Lender may determine in its sole discretion;

10.5    In addition to the rights afforded Lender under Sections 9.1 through 9.4 above, Lender shall have the additional rights specified in Sections 10 and 11.  In the event Lender records the Deed:

(A)     The parties hereby acknowledge and agree that, the Mortgage and other Loan Documents shall remain in full force and effect, shall not be extinguished by the execution and delivery of this Agreement, the Deed or any of the documents in connection with this Agreement, and shall enjoy the same dignity and priority that they

now enjoy. Each of the parties hereto further declares that it is their express intention that the now existing or hereafter arising interest of Lender, its nominees, designees, successors or assigns, in and to the Mortgage and other Loan Documents (as a result of the delivery and recording of the Deed, or otherwise) shall not merge or be merged into any greater estate that Lender, its nominees, designees, successors or assigns, may now or hereafter possess in and to the Property, or any part thereof (as a result of its ownership of the Loan Documents), but that such interests and estates of Lender, its nominees, successors or assigns shall be and remain at all times separate and distinct. The provisions of this Section 9.4(A) shall be set forth clearly in the Deed and other conveyance documents, to reflect, of record, the parties' intent. Such Mortgage and other Loan Documents shall be satisfied, if at all, by separate satisfaction of mortgage and the other Loan Documents executed and delivered by Lender, or otherwise recorded in the public records of Palm Beach County, Florida; and

      (B)    Borrower acknowledges and agrees that any sale, transfer, conveyance and assignment of the Property to Lender, pursuant to Sections 5.4 and 9.3 hereof, is and shall be an absolute sale, transfer, conveyance and assignment of all of Borrower's right, title and interest in and to the Property, is fair and reasonable, in fact as well as in form; and is not intended as a mortgage, trust conveyance, deed of trust or security instrument of any kind. Simultaneously with the recording of the Deed, Borrower shall have no further interest or claim of any kind whatsoever in and to the Property, or in the rents, issues, proceeds and profits that may thereafter be derived therefrom; and

    10.6    Borrower shall cooperate fully with Lender in connection with Lender's exercise of such rights and remedies, including permitting Lender to prosecute the Foreclosure Proceedings and cooperating with Lender in obtaining a Final Judgment, and ensuring that title to the Property is transferred to Lender as expeditiously as possible, all in the manner determined by Lender in its sole discretion.

11.    Foreclosure Proceedings. Without limiting the generality of the foregoing, the Borrower and Rosinsky covenant and agree that upon the occurrence of a Default, Lender may, in addition to, or in lieu of recording the Deed, immediately re-commence prosecution of the Foreclosure Proceedings with respect to the Loan Documents and the Property. In connection with such Foreclosure Proceedings:

    11.1    Appointment of Receiver. The Borrower and Rosinsky hereby stipulate and agree to the appointment of a receiver on such terms and conditions as are acceptable to Lender in its sole discretion (the "Receivership Stipulation"), and authorize and direct Borrower's Counsel to execute and deliver the Receivership Stipulation to Lender's counsel upon written demand therefor by Lender and its counsel. Borrower agrees that Lender shall be and hereby is irrevocably authorized to (i) select the Receiver (subject only to Court approval of same), at any time prior to the submission of the Receivership Stipulation to the Court, and (ii) to negotiate the reasonable compensation payable to the proposed Receiver. The Borrower and Rosinsky further agree not to contest in any manner the appointment or identity of any qualified receiver selected by Lender or the compensation payable to the Receiver, or to take any other action which would delay or frustrate such appointment as a matter of strict right.

    11.2    Foreclosure Judgment. The Borrower and Rosinsky hereby stipulate and agree to the entry of a Final Judgment of Foreclosure (the "Final Judgment") for the amount then shown on Lender's books and records as being due and payable under the Loan Documents. Borrower and Rosinsky hereby authorize and direct Borrower's Counsel to execute and deliver the Final Judgment to Lender's counsel upon written demand therefor by Lender or its counsel. The Final Judgment provides, *inter alia*, that the Loan Documents constitute a first lien on all of the

Property and secure repayment of the full amount of the indebtedness which is then outstanding. The Borrower and Rosinsky covenant and agree not to contest in any manner the form of such Final Judgment or the amounts alleged in good faith by Lender to be due and owing on the Loan (which final amounts will be inserted in the proposed Final Judgment prior to submission to the Court).

12.    Cooperation; No Actions to Frustrate or Delay.    In consideration of Lender's agreement to the Discounted Payoff Amount (subject to and in accordance with the terms and conditions of this Agreement), and in order to assure Lender that the Borrower and Rosinsky will timely perform all of their respective covenants and obligations under this Agreement and the other Loan Documents, the Borrower and Rosinsky covenant and agree that upon a Default: (a) Lender shall be entitled to take title to and possession of the Property without interference, objection or defense by the Borrower or Rosinsky (by recording the Deed and/or prosecuting the Foreclosure Proceedings); and (b) the Borrower and Rosinsky shall cooperate fully with Lender, at no cost or expense to the Lender, and not contest or otherwise take or cause to be taken any actions which would or could prohibit, delay or otherwise limit or frustrate Lender's rights and remedies under this Agreement and/or the other Loan Documents, including permitting Lender to foreclose the Loan Documents, prosecuting the Foreclosure Proceedings, and ensuring that title to the Property is transferred to Lender as expeditiously as possible, all in the manner determined by Lender in its sole discretion. Without limiting the generality of the foregoing, the Borrower and Rosinsky covenant and agree that they shall not directly or indirectly: (i) raise any objection or asserting any defenses to the foreclosure; (ii) contest the entry of the Receivership Order or Final Judgment; (iii) file any counterclaim; (iv) interplead any party; (v) appeal the Receivership Order or Final Judgment; (vi) repudiate or attempt to repudiate the validity of the Loan Documents; (vii) file suit against Lender (or for any other reasons pertaining to this Agreement, the Loan Documents, or the Property); or (viii) take any other action which would delay or frustrate the appointment of a Receiver, the entry of the Final Judgment and/or the completion of the foreclosure sale. As part of this cooperation, Borrower does hereby further stipulate and agree as follows:

12.1    In the event a proceeding under any Chapter of Title 11 of the United States Code ("Bankruptcy Code") is instituted by or against Borrower (a "Bankruptcy Case"), the parties hereto do hereby irrevocably and unconditionally stipulate and agree that the terms of this Agreement coupled with prior concessions made by Lender constitute the type of relief or restructure of Borrower's indebtedness to Lender that Borrower could conceivably have obtained in a Bankruptcy Case and, if a Default has occurred prior to the institution of any such Bankruptcy Case, that any effort to rehabilitate or reorganize Borrower would be fruitless. Therefore, the parties hereto do irrevocably and unconditionally stipulate and agree that in the event of filing of any such Bankruptcy Case, as respects Lender and the Property, such would frustrate the legitimate efforts of Lender in the pursuit of its non-bankruptcy law remedies with respect to the Property, and is without any reasonable prospect for rehabilitation or reorganization of the Borrower within a reasonable time. Based upon the foregoing, therefore, all parties further irrevocably and unconditionally stipulate and agree to the entry of an order by the Bankruptcy Court in any such Bankruptcy Case modifying, terminating and lifting the automatic stay of Section 362 of the Bankruptcy Code with respect to Lender and the Property in order to authorize and permit Lender to pursue any and all non-bankruptcy law rights remedies available to it with respect to the Property, including, without limitation, the filing and prosecution of a Foreclosure Action with respect thereto.

12.2    In the event that, notwithstanding the provisions of the preceding subparagraph, the Bankruptcy Court does not immediately enter an order lifting, modifying and terminating the automatic stay of Section 362 of the Bankruptcy Code as contemplated thereby, Borrower does hereby further irrevocably and unconditionally stipulate and agree to the immediate entry of an order in the Bankruptcy Case requiring Borrower to make payments of interest otherwise due

Lender under the terms of the Loan Documents as and when such becomes due subsequent to the commencement of any such Bankruptcy Case, and Borrower hereby unconditionally irrevocably stipulates and agrees to seek the entry of such an order from the Bankruptcy Court in the Bankruptcy Case contemporaneously with the commencement of any such Bankruptcy Case, and that neither Borrower nor Rosinsky shall oppose Lender's request for such relief in any such Bankruptcy Case. Nothing contained in the preceding sentence shall limit the right of Lender to seek other forms of adequate protection of its interests.

12.3    All parties do stipulate and agree that the foregoing provisions of this Section 11 are material inducements to Lender's entering into, and its execution of, this Agreement. The parties recognize that the relief stipulated to in Sections 11.1 and 11.2 is not within or under the sole control of the parties, but is rather within the control of the Bankruptcy Court.

13.    Recourse for Failure to Comply.  Notwithstanding anything to the contrary contained in the Loan Documents, including, without limitation, Section 54 of the Mortgage and the Guaranty, Silverman shall be personally, jointly and severally liable to Lender for any actual out-of-pocket loss, cost or expense (including, without limitation, reasonable attorneys' fees) incurred by Lender resulting, directly or indirectly, from Borrower's failure to comply with Sections 10 and 11 of this Agreement, or any portion thereof; provided, however, not in excess of the amount of the Letter of Credit.

14.    No Waiver.  Lender's accommodation in agreeing to the Borrower's request to enter into this Agreement shall not be deemed to constitute a waiver of Lender's right to insist upon the strict performance at all times in the future of all of the terms, conditions, covenants and provisions of the Loan Documents. Lender, Borrower and Rosinsky further acknowledge that Lender has not and is not hereby waiving any known or unknown defaults or Events of Default under the Loan Documents.

15.    No Novation.  It is the intent of Lender and Borrower that this Agreement shall not constitute a novation or in any way adversely affect the lien or priority of the Mortgage or the other Loan Documents as a valid and subsisting first lien upon the Property.  To the extent this Agreement or any provision of this Agreement shall be construed by a court of competent jurisdiction as operating to subordinate the lien priority of the Mortgage to any claim which would otherwise be subordinate to same (and provided that ruling is not appealed or appealable), such provision or provisions shall be void and of no force and effect; except that this Agreement shall constitute, as to any provision so construed, a lien upon the Property subordinate to such third person's claims, incorporating by reference the terms of the Mortgage. The Mortgage shall then be enforced pursuant to the terms contained in the Mortgage, independent of any such provisions; provided, however, that notwithstanding the foregoing, Borrower and Lender, as between themselves, shall be bound by all terms and conditions of this Agreement until all Debt owing to Lender shall have been paid in full.

16.    No Obligation to Make Further Advances.  Lender is under no obligation to make any further advances under the Note and the other Loan Documents, to grant or to make any further or additional loans to Borrower or to extend or amend or modify the Note, the Mortgage or the other Loan Documents.

17.    No Modifications.  No term or condition of the Note, the Mortgage, the Guaranty or the other Loan Documents shall be modified.

18.    Ratification of Loan Documents.

18.1    By Borrower.  Borrower hereby ratifies and reaffirms the Note, the Mortgage and the other Loan Documents, and confirms that they remain in full force and effect in accordance with the original terms.

18.2    By Rosinsky.  Rosinsky hereby ratifies and reaffirms the Guaranty and the other Loan Documents and confirm that they remain in full force and effect, in accordance with the original terms.

19.    Lender's Address.  Notwithstanding anything in the Loan Documents to the contrary and commencing on the Effective Date, Lender's and Borrower's addresses for notice, pursuant to the notice provisions in the Loan Documents, shall be:

> *If to Lender:*
> c/o Capmark Finance Inc., Debtor-in-Possession
> 700 N. Pearl Street
> Suite 2200, Dallas, TX 75201
> Attention: Michael O'Hanlon
> Phone: (214) 758-5800
>
> *With copy to:*
> Shutts & Bowen LLP
> 1500 Miami Center
> 201 S. Biscayne Blvd.
> Miami, Florida 33131
> Attn:  J. Donald Wasil, Esq.
> Phone:  (305) 379-9157
> Fax: (305) 347-7857
>
> *If to Borrower:*
>
> Bond-Circuit IV Delaware Business Trust
> 3450 Northlake Blvd.
> S-210, Palm Beach Gardens, Florida  33403
> Attention: Mathieu P. Rosinsky
> Phone: (561) 622-8886
>
> *With a copy to:*
>
> Benedict A. Silverman, Esq.,
> 13 River Road: P.O. Box 399
> Washington Depot, Connecticut 06794
> Phone: (860) 868-7895
> Fax: (860) 868-7963
>
> *With an additional copy to:*
>
> Saraga & Lipshy, P.A.
> 201 N.E. First Avenue
> Delray Beach, Florida 33444
> Attn: Robert S. Saraga, Esq.
> Phone: (561) 330-0660
> Fax: (561) 330-0610
>
> *If to Escrow Agent:*
> Shutts & Bowen LLP
> 1500 Miami Center

201 S. Biscayne Blvd.
Miami, Florida 33131
Attn: J. Donald Wasil, Esq.
Phone: (305) 379-9157
Fax: (305) 347-7857

20.    Escrow Provisions.

20.1    Escrow Agent has agreed to act as such for the convenience of the parties. Escrow Agent shall not be liable for: (i) any act or omission to act except for its own gross negligence or willful misconduct; (ii) any legal effect, insufficiency, or undesirability of any instrument deposited with or delivered by Escrow Agent or exchanged by the parties hereunder, whether or not Escrow Agent prepared such instrument; (iii) any loss or impairment of funds that have been deposited in escrow while those funds are in the course of collection, or while those funds are on deposit in a financial institution, if such loss or impairment results from the failure, insolvency or suspension of a financial institution; (iv) the expiration of any time limit or other consequence of delay, unless a properly executed written instruction, accepted by Escrow Agent, has instructed the Escrow Agent to comply with such time limit; (v) the default, error, action or omission of either party to the escrow; or (vi) Escrow Agent's compliance with any legal process, subpoena, writs, orders, judgments and decree of any court, whether issued with or without jurisdiction, and whether or not subsequently vacated, modified, set aside or reversed. Escrow Agent shall be entitled to rely on any document or paper received by it, believed by Escrow Agent, in good faith, to be bona fide and genuine.

20.2    In the event of any dispute as to the disposition of any documents or funds on deposit with Escrow Agent (the "Deposits"), Escrow Agent shall give written notice to all parties advising same that, in the absence of written instructions signed by all of Borrower, Rosinsky, Silverman and Lender received within the next ten (10) days, Escrow Agent shall interplead the Deposits by filing an interpleader action in the Circuit Court in and for Palm Beach County, Florida (to the jurisdiction of which all parties do hereby consent). If Escrow Agent receives the aforesaid written instruction, it shall continue to hold the Deposits pursuant to such written instruction. If Escrow Agent does not receive the aforesaid written instruction, it shall deliver into the registry of the court the Deposits, including all interest earned thereon, if applicable, whereupon Escrow Agent shall be relieved and released from any further liability as Escrow Agent hereunder.

20.3    Escrow Agent is counsel for Lender. It is agreed that Escrow Agent shall not be disqualified from representing Lender in connection with any dispute or litigation which might arise out of or in connection with this Agreement, the Loan Documents or in any other matter related to the Loan, by virtue of the fact that it has agreed to act as Escrow Agent hereunder.

21.    Governing Law. This Agreement shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida, excluding conflict of law principles.

22.    Binding Effect. This Agreement may not be assigned by Borrower. This Agreement shall be binding upon, and shall inure to the benefit of, the respective heirs, personal representatives, successors, and permitted assigns of Lender, Borrower and Rosinsky.

23.    Entire Agreement. This Agreement and the Loan Documents set forth the entire agreement between the parties with respect to the Loan and supersede all prior and contemporaneous negotiations, understandings and agreements, written or oral, between the parties related to the subject matter of this Agreement. This Agreement and the Loan Documents are to be read *in pari materia*, and shall be construed in such a manner as to afford the greatest possible protection and benefit for Lender. In the event of a conflict between this Agreement and the Loan Documents, this Agreement shall control to the

MIADOCS 3863809 6

extent of the conflict. This Agreement and Loan Documents cannot be modified, except by a written instrument signed by the parties against whom enforcement of the modification is sought.

24.    Captions. The captions and headings contained in this Agreement are for convenience of reference only and shall not be construed as limiting or defining in any way the provisions of this Agreement.

25.    Further Assurances. Upon Lender's request, the Borrower, Guarantor, Rosinsky and Silverman, at their expense, shall execute, acknowledge and deliver such further instruments and do such further acts as may, in the opinion of Lender, be necessary, desirable, or proper to carry out more effectively the purpose of this Agreement.

26.    Time is of the Essence. Time is expressly declared to be of the essence with respect to the performance of all terms, covenants, provisions, and obligations of this Agreement and the other Loan Documents (including, but not limited to, payment of the final payoff amount).

27.    Severability. In case any one or more of the provisions contained in this Agreement or the Loan Documents shall be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired thereby.

28.    Acknowledgment. Each party acknowledges that this Agreement correctly sets forth the terms of the transaction agreed to by the parties and that such party is executing this Agreement under such party's own volition and free will, and not as the result of any undue influence, overreaching, oppression, menace, malice, coercion, fraud, duress, or bad faith on the part of any other party hereto.

29.    Attorneys' Fees. If any Default occurs under this Agreement, Lender shall be entitled to the recovery of all reasonable attorneys' fees and costs incurred in connection therewith, whether suit be brought or not. The term "attorneys' fees" as used in this Agreement shall include, but is not limited to, reasonable attorneys' fees (including legal assistants) incurred in any and all judicial, bankruptcy, reorganization, administrative or other proceedings, including appellate proceedings, whether such proceedings arise before or after entry of a final judgment.

30.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be deemed but one agreement.

31.    RELEASE. AS A MATERIAL INDUCEMENT FOR LENDER TO EXECUTE THIS AGREEMENT, THE BORROWER, GUARANTOR AND ROSINSKY, FOR AND ON BEHALF OF THEMSELVES AND THEIR EXISTING, PAST AND/OR FUTURE PARTNERS, EMPLOYEES AND INDEPENDENT AGENTS AND THE SHAREHOLDERS, OFFICERS, DIRECTORS, EMPLOYEES, TRUSTEES, BENEFICIARIES AND INDEPENDENT AGENTS OF ALL SUCH PARTNERS, AND ANY AND ALL PARTIES OR ENTITIES RELATED TO OR AFFILIATED WITH ANY OF THEM (COLLECTIVELY AND INDIVIDUALLY, JOINTLY AND SEVERALLY, THE "RELEASING PARTIES"), DO HEREBY, NOW AND FOREVER, JOINTLY AND SEVERALLY RELEASE, RELINQUISH, WAIVE, DISCHARGE, COVENANT NOT TO SUE, ACQUIT, SATISFY AND FOREVER DISCHARGE LENDER, ANY AND ALL PARTIES PARTICIPATING AT ANY TIME IN THE LOAN (INCLUDING ALL CERTIFICATEHOLDERS), AND THEIR RESPECTIVE PARENTS, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, REPRESENTATIVES, AGENTS, SERVICERS, AND ATTORNEYS AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS (COLLECTIVELY AND INDIVIDUALLY, JOINTLY AND SEVERALLY, THE "RELEASED PARTIES") FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, COUNTERCLAIMS, CROSS-CLAIMS, DEFENSES (INCLUDING AFFIRMATIVE DEFENSES), ACTIONS, OFFSETS, CAUSES OF ACTION, SUITS, CONTROVERSIES,

AGREEMENTS, PROMISES, ASSERTIONS AND DEMANDS WHATSOEVER IN LAW OR IN EQUITY ACCRUING THROUGH THE EFFECTIVE DATE HEREOF, WHETHER PRESENTLY KNOWN OR HEREAFTER DISCOVERED, ABSOLUTE OR CONTINGENT, WHICH THE BORROWER, GUARANTOR, ROSINSKY AND/OR ANY OF THE OTHER RELEASING PARTIES EVER HAD, NOW HAS, OR HEREAFTER CAN, SHALL OR MAY HAVE AGAINST LENDER AND/OR ANY OTHER RELEASED PARTIES BASED UPON, ARISING OUT OF OR IN CONNECTION WITH, OR IN ANY WAY RELATING TO, DIRECTLY OR INDIRECTLY, THE LOAN, THE NOTE, THE MORTGAGE, THE OTHER LOAN DOCUMENTS, THE PROPERTY, AND/OR ANY RELATIONSHIP, COURSE OF CONDUCT OR DEALINGS OR NEGOTIATIONS BETWEEN THE BORROWER, GUARANTOR AND ROSINSKY (OR ANY OTHER RELEASING PARTIES) AND LENDER (OR ANY OTHER RELEASED PARTIES) PERTAINING TO THE SUBJECT MATTER OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS (COLLECTIVELY, "CLAIMS").  THE BORROWER AND ALL OTHER RELEASING PARTIES FURTHER EXPRESSLY ACKNOWLEDGE, COVENANT, REPRESENT AND WARRANT THAT THE FOREGOING RELEASE AND WAIVER IS INTENDED TO BE AS BROAD AND INCLUSIVE AS PERMITTED BY THE LAWS OF THE STATE OF FLORIDA.  IN ADDITION TO, AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, AND IN CONSIDERATION OF LENDER'S EXECUTION OF THIS AGREEMENT, THE BORROWER, GUARANTOR AND ROSINSKY DO HEREBY ACKNOWLEDGE, COVENANT, REPRESENT AND WARRANT THAT THERE EXISTS NO CLAIM, COUNTERCLAIM, CROSS-CLAIM, DEFENSE, OBJECTION, OFFSET OR CLAIM OF OFFSET AGAINST LENDER OR ANY OF THE OTHER RELEASED PARTIES WITH RESPECT TO THE OBLIGATION OF BORROWER TO PAY THE LOAN TO LENDER WHEN AND AS THE SAME BECOME DUE AND PAYABLE AS OF THE EFFECTIVE DATE HEREOF.   THE BORROWER, GUARANTOR AND ROSINSKY FURTHER ACKNOWLEDGE THAT, NOTWITHSTANDING LENDER'S WILLINGNESS TO ENTER INTO THIS AGREEMENT, LENDER HAS NOT MADE ANY REPRESENTATIONS REGARDING, OR SHALL HAVE ANY OBLIGATION TO MAKE, ANY MODIFICATIONS TO THE LOAN DOCUMENTS.

THE BORROWER, GUARANTOR AND ROSINSKY ACKNOWLEDGE THAT THEY ARE SIGNING THIS AGREEMENT WITH FULL KNOWLEDGE OF ANY AND ALL RIGHTS THEY MAY HAVE, AND THEY ARE NOT RELYING UPON ANY REPRESENTATIONS OR WARRANTIES MADE BY LENDER OR ANY OTHER PARTY, AND THEY HEREBY ASSUME THE RISK OF ANY MISTAKE OF FACT NOW KNOWN OR UNKNOWN TO THEM.  THE BORROWER, GUARANTOR AND ROSINSKY FULLY ACKNOWLEDGE THAT THEY HAVE CONDUCTED WHATEVER INVESTIGATION THEY DEEM NECESSARY TO ASCERTAIN ALL FACTS AND MATTERS RELATING TO THIS AGREEMENT.  THE BORROWER, GUARANTOR AND ROSINSKY REPRESENT AND WARRANT THAT THEY HAVE SECURED INDEPENDENT LEGAL ADVICE CONCERNING THIS AGREEMENT AND THE RELEASES AND WAIVERS CONTAINED HEREIN.

32.    WAIVER OF JURY TRIAL AND CONSEQUENTIAL AND PUNITIVE DAMAGES. BORROWER, GUARANTOR, ROSINSKY, SILVERMAN AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY.   BORROWER, ROSINSKY, GUARANTOR AND SILVERMAN FURTHER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO CLAIM OR RECEIVE CONSEQUENTIAL OR PUNITIVE DAMAGES IN RESPECT OF ANY LITIGATION (INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, CROSS-CLAIMS AND THIRD PARTY CLAIMS) BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE OTHER THE LOAN DOCUMENTS AND THE TRANSACTIONS CONTEMPLATED THEREIN, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF BORROWER,

GUARANTOR, ROSINSKY OR LENDER.  IF THE SUBJECT MATTER OF ANY LITIGATION IS ONE IN WHICH THE WAIVER OF JURY TRIAL IS PROHIBITED, NEITHER BORROWER, NOR GUARANTOR, NOR ROSINSKY, NOR SILVERMAN, NOR LENDER SHALL PRESENT AS A NON-COMPULSORY COUNTERCLAIM IN SUCH LITIGATION ANY CLAIM ARISING OUT OF THIS AGREEMENT.   FURTHERMORE, NEITHER BORROWER, NOR GUARANTOR, NOR ROSINSKY, NOR SILVERMAN, NOR LENDER SHALL SEEK TO CONSOLIDATE ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY LITIGATION IN WHICH A JURY TRIAL CANNOT BE WAIVED.  BORROWER, GUARANTOR, ROSINSKY AND SILVERMAN HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF LENDER NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL   PROVISION.      BORROWER,   GUARANTOR,   ROSINSKY   AND   SILVERMAN ACKNOWLEDGE THAT THE PROVISIONS OF THIS PARAGRAPH ARE A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THIS AGREEMENT.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, Borrower, Guarantor, Silverman and Lender have caused this Agreement to be executed as of the day and year first above written.

BORROWER:

**WILMINGTON TRUST COMPANY not in its individual capacity but solely as Trustee**

BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust

By: _____

Name: ~~David A. Vanaskey, Jr.~~

Title: ~~Vice President~~

STATE OF __Delaware__ )
                     ) SS:
COUNTY OF __New Castle__ )

The foregoing instrument was acknowledged before me this _10th_ day of _December_, 2009, by _David Vanaskey_, as ___VP___ of BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, on behalf of the business trust. He is personally known to me or has produced a State of Florida Driver's license as identification.

_Dianne M. Bruton_

Print Name:
[NOTARIAL SEAL]
Notary Public, State of Florida
My commission expires:
Serial No., if any:

DIANNE M. BRUTON
Notary Public - State of Delaware
My Comm. Expires Nov. 27, 2011



GUARANTOR:

THE HAROLD ROSINSKY TRUST, DATED
DECEMBER 29, 1982, a terminated trust

By:_____

Mathieu Rosinsky, Sole Beneficiary

ROSINSKY:

_____

MATHIEU ROSINSKY, individually

STATE OF _Florida_ )
                         ) SS:
COUNTY OF _Palm Beach_ )

The foregoing instrument was acknowledged before me this ___ day of _____, 2009, by Mathieu Rosinsky, individually and as Sole Beneficiary of THE HAROLD ROSINSKY TRUST, DATED DECEMBER 29, 1982, a terminated trust, on behalf of the trust. He is personally known to me or has produced a State of Florida Driver's license as identification.

_____

Print Name _Julia S. Balboni_

[NOTARIAL SEAL]
Notary Public, State of Florida
My commission expires:
Serial No., if any:

NOTARY PUBLIC-STATE OF FLORIDA
Julia S. Balboni
Commission # DD498383
Expires: DEC. 11, 2009
Bonded Thru Atlantic Bonding Co., Inc.

SILVERMAN:
For purposes of Sections 4.2, 5.2, 5.4, 10, 11 & 12 only

BENEDICT A. SILVERMAN

STATE OF Connecticut )
                      ) SS: Woodbury
COUNTY OF Litchfield )

The foregoing instrument was acknowledged before me this 14 day of Dec, 2009, by BENEDICT SILVERMAN. He is personally known to me or has produced a State of Florida Driver's license as identification.

Print Name: Karen A. Lockwood
[NOTARIAL SEAL]
Notary Public, State of Florida Connecticut
My commission expires: 2/28/2012
Serial No., if any:

KAREN A. LOCKWOOD
Notary Public
State of Connecticut
My Commission Expires February 28, 2012

LENDER:

WELLS FARGO BANK, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A. (formerly known as Norwest Bank Minnesota, National Association), as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1998-C1-CTL

By:   Capmark Finance Inc., Debtor-in-Possession,, formerly known as GMAC Commercial Mortgage Corporation, acting in its capacity as Special Servicer to the Trustee

By: _____

Jackie Brome, Senior Vice President

STATE OF CALIFORNIA    )

COUNTY OF _Orange_    )

On _12/10_____, 2009 before me, _Susan Nelson_, California Notary Public, personally appeared _Jackie Brome_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Susan Nelson_

SUSAN NELSON
COMM. #1864857
Notary Public - California
Orange County
My Comm. Expires Sep. 14, 2013

MIADOCS 3863809 6

## ACKNOWLEDGMENT OF ESCROW AGENT

The undersigned hereby agrees to accept, hold and disburse the Deposits in accordance with the provisions of this Agreement.

SHUTTS & BOWEN LLP

By: _____
J. Donald Wasil

EXHIBIT "A"
Legal Description

PARCEL 1:

A PARCEL OF LAND BEING A PORTION OF "TRACT E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OP PALM BEACH COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTH QUARTER (S 1/4) CORNER OF SECTION 20, TOWNSHIP 43 SOUTH. RANGE 43 EAST, TALLAHASSEE MERIDIAN, PALM BEACH COUNTY, FLORIDA; THENCE NORTH 02°16'15" EAST ALONG THE NORTH-SOUTH QUARTER (NS 1/4) LINE OF SAID SECTION 20, 261.53 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE NORTH 02°16'15" EAST ALONG THE SAID NORTH-SOUTH QUARTER (NS 1/4) LINE 292.93 FEET TO THE SOUTH LINE OF THE ALLEY AS SHOWN ON SAID RECORDED PLAT OF PERINI-WESTWARD COMMERCIAL AREA; THENCE NORTH 87°39'41" WEST ALONG SAID SOUTH LINE 49.42 FEET TO THE POINT OF CURVATURE OF A CIRCULAR CURVE TO THE RIGHT HAVING A CENTRAL ANGLE OF 77°47'17" AND A RADIUS OF 50.00 FEET; THENCE ALONG SAID CURVE 67.88 FEET TO A POINT OF COMPOUND CURVATURE WITH A CIRCULAR CURVE TO THE LEFT, HAVING A CENTRAL ANGLE OF 78°27'47" AND A RADIUS OF 50.00 FEET; THENCE ALONG SAID CURVE 68.47 FEET TO THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUE NORTH 88°20'11" WEST ALONG THE SOUTH LINE OF SAID ALLEY 150.55 FEET; THENCE SOUTH 0°49'49", WEST, 145.77 FEET; THENCE AT A RIGHT ANGLE NORTH 89°10'11" WEST, 13.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 0°49'49" WEST 135.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 100.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 0°49'49" WEST 60.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 38.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 0°49'49" WEST 60.00 FEET; THENCE SOUTH 28°47'26" EAST 60.92 FEET TO THE LIMITED ACCESS RIGHT-OF-WAY OF INTERSTATE HIGHWAY NO. 95; THENCE AT A RIGHT ANGLE NORTH 61°12'34" EAST ALONG SAID RIGHT-OF-WAY LINE 153.77 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

A PARCEL OF LAND, BEING A PORTION OF "TRACT E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTH 1/4 CORNER OF SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST, TALLAHASSEE MERIDIAN, PALM BEACH COUNTY, FLORIDA; THENCE NORTH 02°16'15" EAST, ALONG THE NORTH/SOUTH 1/4 LINE OF SAID SECTION, 261.53 FEET TO A POINT ON THE LIMITED ACCESS RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 95; THENCE SOUTH 61°12'34" WEST, ALONG SAID RIGHT-OF-WAY LINE, 153.77 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE SOUTH 61°12'34" WEST, ALONG SAID RIGHT-OF-WAY LINE, 91.06 FEET;

MIADOCS 3863809 6

THENCE SOUTH 84°44'31" WEST 169.91 FEET; THENCE NORTH 00°49'49" EAST 235.99 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 180.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 00°49'49" WEST 60.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 38.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 00°49'49" WEST 60.00 FEET; THENCE SOUTH 28°47'26" EAST 60.92 FEET TO THE POINT OF BEGINNING.

PARCEL 3:

A PORTION OF "TRACT E", OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTH 1/4 CORNER OF SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST, TALLAHASSEE MERIDIAN, PALM BEACH COUNTY, FLORIDA; THENCE RUN NORTH 02°16'15" EAST, ALONG THE NORTH/SOUTH 1/4 SECTION LINE OF SAID SECTION 20 FOR A DISTANCE OF 261.38 FEET (261.53 PLAT) TO THE SOUTHEAST CORNER OF SAID "TRACT E"; THENCE CONTINUE ON THE LAST DESCRIBED COURSE FOR A DISTANCE OF 292.93 FEET TO A POINT; THENCE RUN NORTH 87°39'41" WEST FOR A DISTANCE OF 49.42 FEET TO THE POINT OF CURVATURE OF A CURVE, CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 50.00 FEET; THENCE RUN NORTHWESTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 77°47'17" FOR A DISTANCE OF 67.88 FEET TO A POINT OF REVERSE CURVATURE OF A CURVE, CONCAVE TO THE SOUTHWEST, HAVING A RADIUS OF 50.00 FEET, SAID POINT BEARING SOUTH 80°07'36" WEST FROM THE CENTER OF THE FIRST CURVE; THENCE CONTINUE NORTHWESTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 78°27'47" FOR A DISTANCE OF 68.47 FEET TO THE POINT OF TANGENCY ON THE NORTH BOUNDARY OF SAID "TRACT E"; THENCE RUN NORTH 88°20'11" WEST, ALONG THE LAST DESCRIBED LINE, FOR A DISTANCE OF 150.55 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREINAFTER TO BE DESCRIBED; THENCE RUN SOUTH 00°49'49" WEST FOR A DISTANCE OF 145.77 FEET TO A POINT; THENCE RUN NORTH 89°10'11" WEST FOR A DISTANCE OF 13.00 FEET TO A POINT; THENCE RUN SOUTH 00°49'49" WEST FOR A DISTANCE OF 135.00 FEET TO A POINT; THENCE RUN NORTH 89°10'11" WEST FOR A DISTANCE OF 80.00 FEET TO A POINT; THENCE RUN SOUTH 00°49'49" WEST FOR A DISTANCE OF 45.00 FEET TO A POINT; THENCE RUN NORTH 89°10'11" WEST FOR A DISTANCE OF 200.09 FEET TO A POINT; THENCE RUN NORTH 00°49'49" EAST FOR A DISTANCE OF 330.04 FEET TO A POINT OF INTERSECTION WITH THE NORTH BOUNDARY OF SAID "TRACT E"; THENCE RUN SOUTH 88°20'11" EAST, ALONG THE LAST DESCRIBED LINE, FOR A DISTANCE OF 293.12 FEET TO THE POINT OF BEGINNING.

PARCEL 4:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE SOUTH 30 FEET OF A CERTAIN PARCEL OF LAND HERETOFORE CONVEYED BY HOWARD JOHNSON INCORPORATED OF FLORIDA TO STANDARD OIL COMPANY (INCORPORATED IN KENTUCKY), RECORDED IN OFFICIAL RECORDS BOOK 1682, PAGE 1415, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

PARCEL 5:

THAT PORTION OF THE ALLEY ABUTTING THE NORTH LINE OF TRACT "E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, AS RECORDED IN PLAT BOOK 26 PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, BOUNDED AS FOLLOWS:

ON THE NORTH BY THE LANDS OWNED BY FLORIDA POWER & LIGHT COMPANY AS CONVEYED BY INSTRUMENT RECORDED IN OFFICIAL RECORDS BOOK 188, PAGE 369, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA; ON THE SOUTH BY THE NORTH LINE OF SAID TRACT "E"; ON THE EAST BY THE EAST LINE OF SAID PLAT OF PERINI-WESTWARD COMMERCIAL AREA EXTENDED NORTHERLY; ON THE WEST BY THE WEST LINE OF PARCEL 3 EXTENDED NORTHERLY.

LEGAL DESCRIPTION - TOTAL PROJECT AREA

ALL THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND SITUATE, LYING AND BEING IN SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST OF TALLAHASSEE BASE MERIDIAN AND BEING A PORTION OF TRACT "E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, AND BEING ALL OF PARCEL NO. 1 AS SHOWN ON THE MINOR SUBDIVISION PLAT OF TRACT "E" PERINI-WESTWARD COMMERCIAL AREA AS RECORDED IN OFFICIAL RECORD BOOK 1674, PAGE 318, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, ALL OF WHICH IS MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO-WIT:

COMMENCING FOR REFERENCE AT THE SOUTH ONE-QUARTER (S 1/4) CORNER OF SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST, PALM BEACH COUNTY, FLORIDA; THENCE, BEARING NORTH ZERO-TWO DEGREES SIXTEEN MINUTES FIFTEEN SECONDS EAST (N 02°16'15" E) ALONG THE NORTH/SOUTH QUARTER (NS 1/4) SECTION LINE OF SAID SECTION 20, A DISTANCE OF TWO HUNDRED SIXTY-ONE AND FIFTY-THREE HUNDREDTHS FEET (261.53') TO A FOUND ONE-HALF INCH (1/2") IRON PIPE IN CONCRETE ON THE LIMITED ACCESS RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 95, SAID POINT BEING THE TRUE POINT AND PLACE OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE CONTINUING ALONG SAID ONE-QUARTER (1/4) SECTION LINE, AND ALONG THE EAST LINE OF AFORESAID TRACT "E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, A DISTANCE OF THREE HUNDRED NINETY-THREE AND ZERO-SEVEN HUNDREDTHS FEET (393.07') TO A FOUND ONE-HALF INCH (1/2") IRON PIPE IN

CONCRETE (PRM) ON THE NORTH LINE OF SAID PLAT OF PERINI-WESTWARD COMMERCIAL AREA; THENCE LEAVING SAID NORTH/SOUTH ONE-QUARTER (1/4) SECTION LINE, BEARING NORTH EIGHTY-EIGHT DEGREES NINETEEN MINUTES NINETEEN SECONDS WEST (N 88°19'19" W) ALONG THE NORTH LINE OF THE TWENTY FOOT (20') ALLEY (NOW ABANDONED) AS SHOWN ON THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, AND ALONG THE SOUTH LINE OF LANDS OF FLORIDA POWER AND LIGHT COMPANY AS RECORDED IN OFFICIAL RECORD BOOK 188, PAGE 369, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, A DISTANCE OF FIVE HUNDRED NINETY-ONE AND SIXTY-ONE HUNDREDTHS FEET (591.61') TO A SET SEVEN-EIGHTHS INCH (7/8") IRON ROD WITH ALUMINUM ALLOY CAP (STAMPED E.C.D. P.L.S. 5179); THENCE, LEAVING SAID NORTH LINE OF TWENTY FOOT (20') ALLEY, BEARING SOUTH ZERO-ONE DEGREES FORTY MINUTES FORTY-ONE SECONDS WEST (S 01°40'41" W), A DISTANCE OF NINETEEN AND NINETY-EIGHT HUNDREDTHS FEET (19.98') TO A POINT ON THE SOUTH LINE OF SAID ALLEY; THENCE, LEAVING SAID SOUTH LINE, BEARING SOUTH ZERO DEGREES FORTY-EIGHT MINUTES FIFTY-EIGHT SECONDS WEST (S 00°48'58" W) ALONG THE WEST LINE OF PARCEL NO. I OF AFORESAID MINOR SUBDIVISION PLAT OF TRACT "E" (OFFICIAL RECORD BOOK 1674, PAGE 318), A DISTANCE OF THREE HUNDRED TWENTY-NINE AND SEVENTY-FIVE HUNDREDTHS FEET (329.75') TO A SET SEVEN-EIGHTHS INCH (7/8") IRON ROD WITH ALUMINUM ALLOY CAP (STAMPED E.C.D. P.L.S. 5179) ON THE NORTH LINE OF LANDS OF STANDARD OIL COMPANY AS RECORDED IN OFFICIAL RECORD BOOK 1682, PAGE 1415, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, (PARCEL NO. 2 AS SHOWN IN OFFICIAL RECORD BOOK 1674, PAGE 318); THENCE, LEAVING SAID WEST LINE, BEARING SOUTH EIGHTY-NINE DEGREES ELEVEN MINUTES ZERO-TWO SECONDS EAST (S 89°11'02" E), ALONG SAID NORTH LINE OF LANDS OF STANDARD OIL COMPANY (OFFICIAL RECORD BOOK 1682, PAGE 1415), A DISTANCE OF TWO HUNDRED AND ZERO-NINE HUNDREDTHS FEET (200.09') TO A SET SEVEN-EIGHTHS INCH (7/8') IRON ROD WITH ALUMINUM ALLOY CAP (STAMPED E.C.D. P.L.S. 5179) ON THE EAST LINE OF LANDS OF STANDARD OIL COMPANY (OFFICIAL RECORD BOOK 1682, PAGE 1415); THENCE, LEAVING SAID NORTH LINE, BEARING SOUTH ZERO DEGREES FIFTY-THREE MINUTES ZERO-SEVEN SECONDS WEST (S 00°53'07" W) ALONG SAID EAST LINE OF LANDS OF STANDARD OIL COMPANY (OFFICIAL RECORD BOOK 1682, PAGE 1415), A DISTANCE OF ONE HUNDRED NINETY-ONE AND THIRTY-THREE HUNDREDTHS FEET (191.33') TO A FOUND FIVE-EIGHTHS INCH (5/8") IRON ROD WITH NYLON CAP (STAMPED BEC "0129") ON THE NORTH RIGHT-OF-WAY LINE OF STATE ROUTE 704 (OKEECHOBEE ROAD, VARIED WIDTH RIGHT-OF-WAY); THENCE, BEARING NORTH EIGHTY-FOUR DEGREES FORTY-SIX MINUTES FORTY-FIVE SECONDS EAST (N 84°46'45" E) ALONG SAID NORTH RIGHT-OF-WAY LINE OF STATE ROUTE 704, A DISTANCE OF SEVENTY-ONE AND THIRTY-NINE HUNDREDTHS FEET (71.39') TO THE BEGINNING OF THE LIMITED ACCESS RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 95; THENCE, CONTINUING ALONG SAID LIMITED ACCESS RIGHT-OF-WAY LINE, BEARING NORTH EIGHTY-FOUR DEGREES FORTY-SIX MINUTES FORTY-FIVE SECONDS EAST (N 84°46'45" E) A DISTANCE OF NINETY-EIGHT AND FIFTY-NINE HUNDREDTHS FEET (98.59') TO A FOUND FIVE-EIGHTHS INCHES (5/8") IRON ROD WITH NYLON CAP (STAMPED "BEC 0129"); THENCE, CONTINUING ALONG SAME, BEARING NORTH SIXTY-ONE DEGREES ZERO-EIGHT MINUTES

THIRTY-SIX SECONDS EAST (N 61°08'36" E), A DISTANCE OF TWO HUNDRED
FORTY-FIVE AND ELEVEN HUNDREDTHS FEET (245.11') TO THE POINT AND PLACE
OF BEGINNING.

<u>EXHIBIT "B"</u>
<u>Wiring Instructions for Lender</u>

## CAPMARK WIRING INSTRUCTIONS

| | |
|---|---|
| Bank: | Capmark Bank |
| Location: | 6955 Union Park Center<br>Suite 300<br>Midvale, Utah  84047 |
| ABA #: | |
| Account: | |
| Credit To: | Capmark Finance Inc., Debtor-in-Possession |
| Reference: | Loan Number 987004870 Circuit City (West Palm Beach) |

EXHIBIT "C"
Form of Letter of Credit

_____ Bank

_____

_____

Beneficiary:                                                      Date of Issue: _____
WELLS FARGO BANK, N.A., successor by
merger to Wells Fargo Bank Minnesota, N.A.
(formerly known as Norwest Bank Minnesota,
National Association), as Trustee for the
Registered Holders of Merrill Lynch
Mortgage Investors, Inc., Mortgage Pass-
Through Certificates, Series 1998-C1-CTL
c/o Capmark Finance Inc.
700 N. Pearl Street
Suite 2200, Dallas, TX 75201
Attention: Michael O'Hanlon

     We hereby open our Irrevocable Standby Letter of Credit No._____ in your favor, for the account of Benedict A. Silverman (the "Applicant"), for a sum not exceeding USD $500,000.00, available by sight draft(s) drawn by Beneficiary on us at the address set forth above.

     All drafts drawn under this credit must be marked "Drawn under _____ Bank Letter of Credit No. _____" and shall be accompanied by an original signed statement on Beneficiary's letterhead, purportedly executed by any Vice President or Senior Vice President of Capmark Finance, Inc. (as Special Servicer for the Beneficiary) of the general partner of Beneficiary stating:

1.    BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, is in Default under that certain Settlement Agreement dated _____, 2009, between BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, Applicant and Beneficiary.

    or

2.    Beneficiary received a notice of non-renewal of this Letter of Credit, and a satisfactory replacement letter of credit has not been provided to Beneficiary by Applicant.

     Drafts must be drawn and negotiated on or before December 1, 2010 ("Expiration Date"). This Letter of Credit shall be deemed automatically extended without amendment for one (1)

year from the Expiration Date and any future extension thereof, unless not less than thirty (30) days prior to such Expiration Date, we have notified you in writing that we elect not to renew this Letter of Credit for such additional period.   This original Letter of Credit and all amendments thereto must be submitted to us together with any drawings hereunder for our endorsement of any payments effected by us and/or for cancellation.

The amount which may be drawn by you under this Letter of Credit shall be automatically reduced by the amount of any drawing hereunder.  Partial drawings are permitted.

We engage with you that each draft drawn under and in compliance with the terms of this credit will be duly honored on delivery of the documents as specified if presented at this office on or before the Expiration Date.

Except as expressly stated herein, this Letter of Credit is subject to the International Standby Practices ("ISP98"), International Chamber of Commerce, Publication 590, and as to matters not governed by ISP98, shall be governed by and construed in accordance with the laws of the State of Florida and applicable US federal law.

Very truly yours,

_____ Bank

EXHIBIT "D"
Form of General Release

## GENERAL RELEASE

BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, and MATHIEU ROSINSKY, individually and on behalf of THE HAROLD ROSINSKY TRUST DATED DECEMBER 29, 1982, a terminated trust (collectively and individually, jointly and severally, the "Releasing Party", which term shall include all heirs, legal representatives, successors, and assigns), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, received from or on behalf of WELLS FARGO BANK, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A. (formerly known as Norwest Bank Minnesota, National Association), as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1998-C1-CTL (the "Lender"), hereby remises, releases, acquits, satisfies, and forever discharges the Lender, Lender's nominees, designees, parents, subsidiaries, affiliates, Master Servicers and Special Servicers, and each of their respective officers, directors, agents, employees, servants, attorneys and representatives, as well as the respective heirs, personal representatives, successors and assigns of any and all of them (collectively, the "Released Parties") of and from all, and all manner of, action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity, which the Releasing Party ever had, now has, or in the future can, shall, or may have, against the Released Parties, for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world through the date of this instrument (collectively, "Claims"), including, without limitation, any Claims which relate to, in whole or in part, directly or indirectly, the Loan Documents (defined below), the Mortgaged Property (defined below), the administration and servicing of the Loan (defined below), any course of conduct by any of the Released Parties in connection with any of the forgoing. As used herein, the following terms shall have the following meanings: (a) the "Loan" shall mean the loan from Legg Mason Real Estate Services South, Inc., a Florida corporation, in favor of BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, dated December 30, 1996, which Loan is currently held by Lender; (b) the "Loan Documents" shall mean any and all of the loan documents evidencing, securing or in any way related to the Loan, including without limitation, the related guaranty from THE HAROLD ROSINSKY TRUST DATED DECEMBER 29, 1982, as assumed by MATHIEU ROSINSKY; and (c) the "Mortgaged Property" shall mean the property which secured the Loan.

*[Remainder of Page Intentionally Left Blank]*

MIADOCS 3863809 6

The Releasing Party has duly executed this instrument on _____, 2009.

Signed, sealed, and delivered
in the presence of:

BORROWER:

BOND-CIRCUIT IV DELAWARE BUSINESS
TRUST, a Delaware business trust

Name: _____

_____
Name: _____

By: _____
Name: _____
Title: _____

GUARANTOR:

THE HAROLD ROSINSKY TRUST, DATED
DECEMBER 29, 1982, a terminated trust

Name: _____

_____
Name: _____

By: _____
    Mathieu Rosinsky, Sole Beneficiary

Name: _____

_____
Name: _____

_____
MATHIEU ROSINSKY, individually

EXHIBIT "E"
Form of Deed

**This instrument prepared by and return to:**

**J. Donald Wasil, Esq.**
**Shutts & Bowen LLP**
**201 S. Biscayne Boulevard**
**1500 Miami Center**
**Miami, Florida 33131**

## SPECIAL WARRANTY DEED

This Special Warranty Deed, made this ____ day of _____, 20___ by BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, whose address is 3450 Northlake Blvd., S-210, Palm Beach Gardens, Florida 33403 ("Grantor"), to and for the benefit of _____, a _____, whose post office address c/o Capmark Finance Inc., Debtor-in-Possession, 700 N. Pearl Street, Suite 2200, Dallas, Texas 75201, Attention: Asset Manager ("Grantee").

> (Wherever used herein the terms "Grantor" and "Grantee" shall include singular and plural, heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, wherever the context so admits or requires.)

### W I T N E S S E T H:

That Grantor, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, has granted, bargained, conveyed and sold, and does hereby grant, bargain, convey and sell, unto Grantee, forever, the following described land, situate, lying and being in Indian River County, Florida:

See **Exhibit "A"**, attached hereto and incorporated herein by this reference.

Together with: (i) all tenements, hereditaments and appurtenances thereunto belonging or in anyway appertaining; (ii) all building and other improvements now or hereafter located thereon; and (iii) all of Grantor's right, title and interest, if any, in and to the streets, avenues, roads, ways, alleys, waterways, and canals, upon or proposed, in front of or adjoining same (collectively, the "Property").

TO HAVE AND TO HOLD the Property in fee simple forever.

**NOTE TO RECORDER:  This Deed is given in lieu of a foreclosure of a mortgage, and as such, documentary stamp taxes are being paid on the outstanding principal balance of the loan secured by such mortgage plus all accrued interest thereon pursuant to Florida Statute Section 201.02.**

MIADOCS 3863809 6

This conveyance is made subject to (i) real estate taxes and assessments, (ii) zoning and other restrictions, regulations and prohibitions imposed by governmental authorities, (iii) encroachments, boundary line disputes and other matters which would be disclosed by a current accurate survey of the Property, and (iv) restrictions, limitations, easements, liens and other matters of record, provided that this reference shall not operate to reimpose any of same (collectively, the "Permitted Exceptions").

Grantor does hereby covenant with Grantee that, except for the Permitted Exceptions, at the time of delivery of this deed, the Property was free from all encumbrances made by the Grantor and that Grantor will warrant and defend the same against the lawful claims of all persons claiming by, through or under Grantor, but no others.

This deed is an absolute conveyance to Grantee of the title to the Property, in effect as well as in form, and is not intended to serve or operate as a mortgage, security agreement, trust conveyance or security interest of any kind.

The lien, operation, effect and dignity of the mortgage and other loan documents establishing and evidencing the outstanding lien on the Property (the "Loan Documents") shall remain unimpaired and unaffected by this deed, and this deed is not intended to, and shall not, operate to effect any merger of the right, title and interest conveyed to Grantee hereunder, and the right and interest of the holder of the Loan Documents, regardless of whether or not such holder is one and the same party as Grantee.

This conveyance is an absolute conveyance for value and is not intended to be additional collateral for any debt owed the grantee.

IN WITNESS WHEREOF, Grantor has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
  in the presence of:

BOND-CIRCUIT IV DELAWARE BUSINESS
TRUST, a Delaware business trust

_____

By:_____
Name:_____

Name:_____

Title:_____

_____

Name: _____

*[Acknowledgement Appears on Following Page]*

STATE OF _____        )
                                 ) ss:
COUNTY OF _____         )

        The foregoing instrument was acknowledged before me this ___ day of _____, 2009, by _____, as _____ of BOND-CIRCUIT IV DELAWARE BUSINESS TRUST, a Delaware business trust, on behalf of the business trust. He is personally known to me or has produced a State of Florida Driver's license as identification.


_____
**NOTARY PUBLIC**

_____
Typed or Printed Name of Notary
My commission expires:
Serial No., if any

MIADOCS 3863809 6

## EXHIBIT A

Legal Description

PARCEL 1:

A PARCEL OF LAND BEING A PORTION OF "TRACT E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OP PALM BEACH COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTH QUARTER (S 1/4) CORNER OF SECTION 20, TOWNSHIP 43 SOUTH. RANGE 43 EAST, TALLAHASSEE MERIDIAN, PALM BEACH COUNTY, FLORIDA; THENCE NORTH 02°16'15" EAST ALONG THE NORTH-SOUTH QUARTER (NS 1/4) LINE OF SAID SECTION 20, 261.53 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE NORTH 02°16'15" EAST ALONG THE SAID NORTH-SOUTH QUARTER (NS 1/4) LINE 292.93 FEET TO THE SOUTH LINE OF THE ALLEY AS SHOWN ON SAID RECORDED PLAT OF PERINI-WESTWARD COMMERCIAL AREA; THENCE NORTH 87°39'41" WEST ALONG SAID SOUTH LINE 49.42 FEET TO THE POINT OF CURVATURE OF A CIRCULAR CURVE TO THE RIGHT HAVING A CENTRAL ANGLE OF 77°47'17" AND A RADIUS OF 50.00 FEET; THENCE ALONG SAID CURVE 67.88 FEET TO A POINT OF COMPOUND CURVATURE WITH A CIRCULAR CURVE TO THE LEFT, HAVING A CENTRAL ANGLE OF 78°27'47" AND A RADIUS OF 50.00 FEET; THENCE ALONG SAID CURVE 68.47 FEET TO THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUE NORTH 88°20'11" WEST ALONG THE SOUTH LINE OF SAID ALLEY 150.55 FEET; THENCE SOUTH 0°49'49" WEST, 145.77 FEET; THENCE AT A RIGHT ANGLE NORTH 89°10'11" WEST, 13.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 0°49'49" WEST 135.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 100.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 0°49'49" WEST 60.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 38.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 0°49'49" WEST 60.00 FEET; THENCE SOUTH 28°47'26" EAST 60.92 FEET TO THE LIMITED ACCESS RIGHT-OF-WAY OF INTERSTATE HIGHWAY NO. 95; THENCE AT A RIGHT ANGLE NORTH 61°12'34" EAST ALONG SAID RIGHT-OF-WAY LINE 153.77 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

A PARCEL OF LAND, BEING A PORTION OF "TRACT E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTH 1/4 CORNER OF SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST, TALLAHASSEE MERIDIAN, PALM BEACH COUNTY, FLORIDA; THENCE NORTH 02°16'15" EAST, ALONG THE NORTH/SOUTH 1/4 LINE OF SAID SECTION, 261.53 FEET TO A POINT ON THE LIMITED ACCESS RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 95; THENCE SOUTH 61°12'34" WEST, ALONG SAID RIGHT-OF-WAY LINE, 153.77 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE SOUTH 61°12'34" WEST, ALONG SAID RIGHT-OF-WAY LINE, 91.06 FEET; THENCE SOUTH 84°44'31" WEST 169.91 FEET; THENCE NORTH 00°49'49" EAST 235.99

MIADOCS 3863809 6

FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 180.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 00°49'49" WEST 60.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 89°10'11" EAST 38.00 FEET; THENCE AT A RIGHT ANGLE SOUTH 00°49'49" WEST 60.00 FEET; THENCE SOUTH 28°47'26" EAST 60.92 FEET TO THE POINT OF BEGINNING.

PARCEL 3:

A PORTION OF "TRACT E", OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTH 1/4 CORNER OF SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST, TALLAHASSEE MERIDIAN, PALM BEACH COUNTY, FLORIDA; THENCE RUN NORTH 02°16'15" EAST, ALONG THE NORTH/SOUTH 1/4 SECTION LINE OF SAID SECTION 20 FOR A DISTANCE OF 261.38 FEET (261.53 PLAT) TO THE SOUTHEAST CORNER OF SAID "TRACT E"; THENCE CONTINUE ON THE LAST DESCRIBED COURSE FOR A DISTANCE OF 292.93 FEET TO A POINT; THENCE RUN NORTH 87°39'41" WEST FOR A DISTANCE OF 49.42 FEET TO THE POINT OF CURVATURE OF A CURVE, CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 50.00 FEET; THENCE RUN NORTHWESTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 77°47'17" FOR A DISTANCE OF 67.88 FEET TO A POINT OF REVERSE CURVATURE OF A CURVE, CONCAVE TO THE SOUTHWEST, HAVING A RADIUS OF 50.00 FEET, SAID POINT BEARING SOUTH 80°07'36" WEST FROM THE CENTER OF THE FIRST CURVE; THENCE CONTINUE NORTHWESTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 78°27'47" FOR A DISTANCE OF 68.47 FEET TO THE POINT OF TANGENCY ON THE NORTH BOUNDARY OF SAID "TRACT E"; THENCE RUN NORTH 88°20'11" WEST, ALONG THE LAST DESCRIBED LINE, FOR A DISTANCE OF 150.55 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREINAFTER TO BE DESCRIBED; THENCE RUN SOUTH 00°49'49" WEST FOR A DISTANCE OF 145.77 FEET TO A POINT; THENCE RUN NORTH 89°10'11" WEST FOR A DISTANCE OF 13.00 FEET TO A POINT; THENCE RUN SOUTH 00°49'49" WEST FOR A DISTANCE OF 135.00 FEET TO A POINT; THENCE RUN NORTH 89°10'11" WEST FOR A DISTANCE OF 80.00 FEET TO A POINT; THENCE RUN SOUTH 00°49'49" WEST FOR A DISTANCE OF 45.00 FEET TO A POINT; THENCE RUN NORTH 89°10'11" WEST FOR A DISTANCE OF 200.09 FEET TO A POINT; THENCE RUN NORTH 00°49'49" EAST FOR A DISTANCE OF 330.04 FEET TO A POINT OF INTERSECTION WITH THE NORTH BOUNDARY OF SAID "TRACT E"; THENCE RUN SOUTH 88°20'11" EAST, ALONG THE LAST DESCRIBED LINE, FOR A DISTANCE OF 293.12 FEET TO THE POINT OF BEGINNING.

PARCEL 4:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE SOUTH 30 FEET OF A CERTAIN PARCEL OF LAND HERETOFORE CONVEYED BY HOWARD JOHNSON INCORPORATED OF FLORIDA TO STANDARD OIL COMPANY (INCORPORATED IN KENTUCKY), RECORDED IN OFFICIAL RECORDS BOOK 1682, PAGE 1415, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

PARCEL 5:

MIADOCS 3863809 6

THAT PORTION OF THE ALLEY ABUTTING THE NORTH LINE OF TRACT "E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, AS RECORDED IN PLAT BOOK 26 PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, BOUNDED AS FOLLOWS:

ON THE NORTH BY THE LANDS OWNED BY FLORIDA POWER & LIGHT COMPANY AS CONVEYED BY INSTRUMENT RECORDED IN OFFICIAL RECORDS BOOK 188, PAGE 369, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA; ON THE SOUTH BY THE NORTH LINE OF SAID TRACT "E"; ON THE EAST BY THE EAST LINE OF SAID PLAT OF PERINI-WESTWARD COMMERCIAL AREA EXTENDED NORTHERLY; ON THE WEST BY THE WEST LINE OF PARCEL 3 EXTENDED NORTHERLY.

LEGAL DESCRIPTION - TOTAL PROJECT AREA

ALL THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND SITUATE, LYING AND BEING IN SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST OF TALLAHASSEE BASE MERIDIAN AND BEING A PORTION OF TRACT "E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA AS RECORDED IN PLAT BOOK 26, PAGE 152, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, AND BEING ALL OF PARCEL NO. 1 AS SHOWN ON THE MINOR SUBDIVISION PLAT OF TRACT "E" PERINI-WESTWARD COMMERCIAL AREA AS RECORDED IN OFFICIAL RECORD BOOK 1674, PAGE 318, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, ALL OF WHICH IS MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO-WIT:

COMMENCING FOR REFERENCE AT THE SOUTH ONE-QUARTER (S 1/4) CORNER OF SECTION 20, TOWNSHIP 43 SOUTH, RANGE 43 EAST, PALM BEACH COUNTY, FLORIDA; THENCE, BEARING NORTH ZERO-TWO DEGREES SIXTEEN MINUTES FIFTEEN SECONDS EAST (N 02°16'15" E) ALONG THE NORTH/SOUTH QUARTER (NS 1/4) SECTION LINE OF SAID SECTION 20, A DISTANCE OF TWO HUNDRED SIXTY-ONE AND FIFTY-THREE HUNDREDTHS FEET (261.53') TO A FOUND ONE-HALF INCH (1/2") IRON PIPE IN CONCRETE ON THE LIMITED ACCESS RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 95, SAID POINT BEING THE TRUE POINT AND PLACE OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE CONTINUING ALONG SAID ONE-QUARTER (1/4) SECTION LINE, AND ALONG THE EAST LINE OF AFORESAID TRACT "E" OF THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, A DISTANCE OF THREE HUNDRED NINETY-THREE AND ZERO-SEVEN HUNDREDTHS FEET (393.07') TO A FOUND ONE-HALF INCH (1/2") IRON PIPE IN CONCRETE (PRM) ON THE NORTH LINE OF SAID PLAT OF PERINI-WESTWARD COMMERCIAL AREA; THENCE LEAVING SAID NORTH/SOUTH ONE-QUARTER (1/4) SECTION LINE, BEARING NORTH EIGHTY-EIGHT DEGREES NINETEEN MINUTES NINETEEN SECONDS WEST (N 88°19'19" W) ALONG THE NORTH LINE OF THE TWENTY FOOT (20') ALLEY (NOW ABANDONED) AS SHOWN ON THE PLAT OF PERINI-WESTWARD COMMERCIAL AREA, AND ALONG THE SOUTH LINE OF LANDS OF FLORIDA POWER AND LIGHT COMPANY AS RECORDED IN OFFICIAL RECORD BOOK 188, PAGE 369, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, A DISTANCE OF FIVE HUNDRED NINETY-ONE AND SIXTY-ONE HUNDREDTHS FEET (591.61') TO A SET SEVEN-EIGHTHS INCH (7/8") IRON ROD WITH ALUMINUM ALLOY CAP (STAMPED E.C.D. P.L.S. 5179); THENCE, LEAVING SAID NORTH LINE OF TWENTY FOOT (20') ALLEY, BEARING SOUTH ZERO-ONE DEGREES FORTY

MIADOCS 3863809 6

MINUTES FORTY-ONE SECONDS WEST (S 01°40'41" W), A DISTANCE OF NINETEEN AND NINETY-EIGHT HUNDREDTHS FEET (19.98') TO A POINT ON THE SOUTH LINE OF SAID ALLEY; THENCE, LEAVING SAID SOUTH LINE, BEARING SOUTH ZERO DEGREES FORTY-EIGHT MINUTES FIFTY-EIGHT SECONDS WEST (S 00°48'58" W) ALONG THE WEST LINE OF PARCEL NO. I OF AFORESAID MINOR SUBDIVISION PLAT OF TRACT "E" (OFFICIAL RECORD BOOK 1674, PAGE 318), A DISTANCE OF THREE HUNDRED TWENTY-NINE AND SEVENTY-FIVE HUNDREDTHS FEET (329.75') TO A SET SEVEN-EIGHTHS INCH (7/8") IRON ROD WITH ALUMINUM ALLOY CAP (STAMPED E.C.D. P.L.S. 5179) ON THE NORTH LINE OF LANDS OF STANDARD OIL COMPANY AS RECORDED IN OFFICIAL RECORD BOOK 1682, PAGE 1415, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, (PARCEL NO. 2 AS SHOWN IN OFFICIAL RECORD BOOK 1674, PAGE 318); THENCE, LEAVING SAID WEST LINE, BEARING SOUTH EIGHTY-NINE DEGREES ELEVEN MINUTES ZERO-TWO SECONDS EAST (S 89°11'02" E), ALONG SAID NORTH LINE OF LANDS OF STANDARD OIL COMPANY (OFFICIAL RECORD BOOK 1682, PAGE 1415), A DISTANCE OF TWO HUNDRED AND ZERO-NINE HUNDREDTHS FEET (200.09') TO A SET SEVEN-EIGHTHS INCH (7/8') IRON ROD WITH ALUMINUM ALLOY CAP (STAMPED E.C.D. P.L.S. 5179) ON THE EAST LINE OF LANDS OF STANDARD OIL COMPANY (OFFICIAL RECORD BOOK 1682, PAGE 1415); THENCE, LEAVING SAID NORTH LINE, BEARING SOUTH ZERO DEGREES FIFTY-THREE MINUTES ZERO-SEVEN SECONDS WEST (S 00°53'07" W) ALONG SAID EAST LINE OF LANDS OF STANDARD OIL COMPANY (OFFICIAL RECORD BOOK 1682, PAGE 1415), A DISTANCE OF ONE HUNDRED NINETY-ONE AND THIRTY-THREE HUNDREDTHS FEET (191.33') TO A FOUND FIVE-EIGHTHS INCH (5/8") IRON ROD WITH NYLON CAP BEC "0129") ON THE NORTH RIGHT-OF-WAY LINE OF STATE ROUTE 704 (OKEECHOBEE ROAD, VARIED WIDTH RIGHT-OF-WAY); THENCE, BEARING NORTH EIGHTY-FOUR DEGREES FORTY-SIX MINUTES FORTY-FIVE SECONDS EAST (N 84°46'45" E) ALONG SAID NORTH RIGHT-OF-WAY LINE OF STATE ROUTE 704, A DISTANCE OF SEVENTY-ONE AND THIRTY-NINE HUNDREDTHS FEET (71.39') TO THE BEGINNING OF THE LIMITED ACCESS RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 95; THENCE, CONTINUING ALONG SAID LIMITED ACCESS RIGHT-OF-WAY LINE, BEARING NORTH EIGHTY-FOUR DEGREES FORTY-SIX MINUTES FORTY-FIVE SECONDS EAST (N 84°46'45" E) A DISTANCE OF NINETY-EIGHT AND FIFTY-NINE HUNDREDTHS FEET (98.59') TO A FOUND FIVE-EIGHTHS INCHES (5/8") IRON ROD WITH NYLON CAP (STAMPED "BEC 0129"); THENCE, CONTINUING ALONG SAME, BEARING NORTH SIXTY-ONE DEGREES ZERO-EIGHT MINUTES THIRTY-SIX SECONDS EAST (N 61°08'36" E), A DISTANCE OF TWO HUNDRED FORTY-FIVE AND ELEVEN HUNDREDTHS FEET (245.11') TO THE POINT AND PLACE OF BEGINNING.

MIADOCS 3863809 6