# Exhibit A

# PROMISSORY NOTE

$3,854,419.00

Independence, Missouri
February 27, 1995

FOR VALUE RECEIVED, the undersigned, **CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP**, a Pennsylvania limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Maker"), promises to pay to the order of **THE PAUL REVERE LIFE INSURANCE COMPANY**, a Massachusetts corporation with a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608-1528 ("Holder"), the principal sum of THREE MILLION EIGHT HUNDRED FIFTY-FOUR THOUSAND FOUR HUNDRED NINETEEN and no/100 ($3,854,419.00) DOLLARS or so much thereof that is currently outstanding (the "Principal Amount"), together with (i) interest at the rate and in the manner hereinafter provided; (ii) all amounts which may become due under the Deed of Trust, Assignment of Leases and Security Agreement (First) dated the date hereof securing this Note (the "Deed of Trust"), which Deed of Trust encumbers that certain real property located at 18701 E. 39th Street, Independence, Missouri (the "Property") or under any other documents securing or further evidencing the indebtedness evidenced by this Note (collectively, the "Loan Documents"); and (iii) any costs and expenses, including reasonable attorneys' and appraisers' fees, incurred in the collection of this Note, or in the foreclosure of the Deed of Trust, or in protecting or sustaining the lien of the Deed of Trust or in any litigation or controversy arising from or connected with this Note or the Deed of Trust. All amounts owing under this Note and interest thereon shall be payable in legal tender of the United States of America.

## 1.  INTEREST RATE

1.1    Interest Rate. The Principal Amount hereof, from time to time outstanding, shall bear interest at a rate equal to eight and nine-tenths (8.9%) percent per annum (the "Interest Rate"). Interest on the Principal Amount shall be calculated on the basis of a three hundred sixty (360) day year based on twelve (12) thirty (30) day months.

1.2    Maximum Interest Rate. Notwithstanding any provisions of this Note, it is the understanding and agreement of Maker and Holder that the interest required to be paid by Maker to Holder under this Note shall not exceed the maximum rate of interest permissible to be charged by Holder under applicable laws. Any amount paid in excess of such rate shall be considered to have been a payment in reduction of principal. All sums paid or agreed to be paid to the Holder hereof for the use, forbearance or detention of the indebtedness of the Maker

Independence, Missouri

evidenced hereby, outstanding from time to time shall, to the extent permitted by applicable law, and only to the extent necessary to preclude exceeding the limit of validity prescribed by law, shall be amortized, pro-rated, allocated and spread from the date of disbursement of the proceeds of this Note until payment in full of the loan evidenced hereby so that the actual rate of interest on account of such indebtedness is uniform throughout the balance of the term hereof. The terms and provisions of this paragraph shall control every other provision of all agreements between Holder and Maker.

## 2. PAYMENTS OF PRINCIPAL AND INTEREST

2.1    Principal and Interest Payments Until Maturity.  A payment consisting of principal and interest in the amount of $33,324.67 (calculated based upon a 22-year self-liquidating amortization schedule) shall be due and payable in arrears, commencing on the first (1st) day of April, 1995 and a like sum of $33,324.67 on the first (1st) day of each and every calendar month thereafter up to and including the first (1st) day of February, 2017.

Holder reserves the right to require that all payments of principal and interest hereunder be made to Holder by wire transfer of immediately available funds.

2.2    Maturity.  The unpaid principal balance hereof, all accrued and unpaid interest and all other obligations due hereunder shall be due and payable on the first (1st) day of March, 2017 (the "Maturity Date").

2.3    Application of Payments.  Payments made under this Note shall be applied in the following order:  first to interest due on payments made by Holder in respect of Maker's obligations under the Deed of Trust; second, to the payments made by Holder in respect of Maker's obligations as may then be due and payable under the Deed of Trust; third, to any late charges to which Maker shall become subject under this Note; fourth, to interest due on this Note; and fifth, to the Principal Amount.

2.4    Business Day.  Whenever any payment hereunder shall be stated to be due on a day other than a "business day" (a day on which banks are open for business in New York, New York), such payment shall be made on the next succeeding business day, unless such extension would cause such payment to be payable in the next following calendar month, in which case such payment shall be made on the business day most immediately preceding such day.

2.5    Prepayment.  Maker shall have the privilege of prepaying the principal balance of this Note as follows:

(a)    Provided no Event of Default (as hereinafter defined) exists under this Note or under the other Loan Documents, the Principal Amount may be prepaid in whole, but not in part, at the election of Maker on any scheduled payment date provided that simultaneously with such prepayment Maker also pays (i) the entire principal amount of all other promissory notes then held by Holder and guaranteed by Maker pursuant to the terms of that certain Agreement

Independence, Missouri                                - 2 -

of Guaranty of even date from Maker to Holder (the "Guaranty") and (ii) the outstanding Principal Amount of that certain promissory note of even date from Maker to Holder in the original principal amount of $2,356,587.00 provided that at the time of payment Maker still owns the Other Property (as defined in the Deed of Trust). The Principal Amount may be prepaid only if accompanied by a fee (the "Prepayment Fee") in an amount equal to the greater of (i) one (1%) percent of the then Principal Amount or (ii) the Yield Maintenance (hereinafter defined).

(b)     Maker may prepay the Principal Amount in whole, but not in part, on any scheduled payment date on or subsequent to November 1, 2016 and prior to the Maturity Date without payment of a Prepayment Fee.

(c)     Maker shall also pay to Holder, as a condition to any permitted prepayment, all interest due up to and including the date of prepayment and any and all amounts due and owing pursuant to this Note, the Deed of Trust and the other Loan Documents. Permitted prepayments may be made only on monthly installment due dates upon thirty (30) days prior written notice to Holder. Prepayments made by virtue of the application by Holder of condemnation awards or insurance proceeds shall not be accompanied by a Prepayment Fee.

(d)     The Yield Maintenance shall be computed as follows:

(i)     The United States Treasury Note or Bond having a maturity date closest to the Maturity Date will be identified by Holder as of thirty (30) days prior to the date of prepayment upon receipt of Maker's notice of prepayment (utilizing a quotations publication designated by Holder). If, for any reason, a quotation is unavailable for such date, quotations for the next preceding date for which such quotations are available shall be used. In the event Holder identifies more than one Note or Bond having the same maturity date, the Note or Bond having a coupon interest rate closest to the Interest Rate shall be employed. The term "Reinvestment Yield" shall mean the yield to maturity of the security identified in the previous sentence, if purchased on the date the Note or Bond is identified by Holder.

(ii)    The monthly interest that would be earned by reinvesting the principal portion of the amount being prepaid at the interest rate equal to the Reinvestment Yield shall then be calculated. The result is the "Reinvestment Payment".

(iii)   The Reinvestment Payment shall be subtracted from the monthly interest which would be earned if the prepayment were not made and the loan continued to its stated Maturity Date. The result, if

Independence, Missouri                        - 3 -

positive, is the "Monthly Payment Differential".  The Monthly Payment Differential shall in no event be less than zero.

(iv) The Monthly Payment Differentials from the prepayment date to the stated Maturity Date shall be discounted to present value at the Reinvestment Yield on a monthly basis.  The result is the "Yield Maintenance".

### 3.  PRINCIPAL SECURITY

3.1    Security.  This Note is secured by the Deed of Trust, the Other Deed of Trust (as defined in the Deed of Trust) and the security set forth in the other Loan Documents.

### 4.  DEFAULT; REMEDIES

4.1    Acceleration.  Upon the occurrence of an Event of Default (as defined below), Holder may, at its option, declare the entire unpaid Principal Amount, together with accrued interest and all other amounts which are evidenced by this Note and the other Loan Documents to be immediately due and payable, without the necessity for prior demand or notice. Notwithstanding anything to the contrary contained herein, in the event Holder exercises its option to accelerate the indebtedness evidenced by this Note upon an Event of Default, there shall be due and payable, in addition to the Principal Amount, all accrued interest thereon, and all other amounts due under the Loan Documents, a default prepayment fee equal to the sum of (i) two (2%) percent of the then Principal Amount plus (ii) the Yield Maintenance.  Such default prepayment fee shall be added to the Principal Amount if not paid upon acceleration of this Note.  Failure to exercise this option shall not constitute a waiver of the right to exercise the same at a later date during the continuation of such Event of Default or in the event of any subsequent Event of Default.

4.2    Event of Default.  For purposes of this Note, the term "Event of Default" shall have the same meaning ascribed to such term in, and shall include any event which would constitute an Event of Default under, the Deed of Trust (regardless of whether or not at such time the Deed of Trust constitutes a valid encumbrance upon the Property) and the Loan Documents.

4.3    Late Charges.  If any installment of principal or interest or any installment of taxes or insurance under the Loan Documents shall not be received within five (5) business days of its due date, the Holder may, at its option, charge a "late charge" equal to the lesser of four cents for each dollar so overdue or the maximum permitted by law.  In connection therewith, Maker and Holder, by its acceptance of this Note, agree as follows:  (1) such late payment will cause Holder to incur administrative costs, collection costs, loss of interest, and other direct and indirect costs in uncertain amounts, (2) it would be impractical or extremely difficult to fix the exact amount of such costs in such event, (3) the late charge is a reasonable estimate of such costs and is fair compensation to Holder for its anticipated losses and additional risks resulting

Independence, Missouri                          - 4 -

from such late payment, and (4) without limiting its rights to recover such installment and to exercise all other rights under this Note, the Deed of Trust and the other Loan Documents, Holder agrees to accept such late charge in lieu of its right to recover its actual damages resulting from such late payment.

4.4    Default Interest Rate.  In the event the Holder exercises its option to accelerate the maturity of this Note by reason of an Event of Default, or upon maturity of this Note, any amount which is not paid shall thereafter bear interest at the alternative rate (the "Default Rate"), equal to the lesser of (i) four (4%) percent per annum above the Interest Rate or (ii) the maximum rate permitted by law, until the required payment is made.

## 5. MISCELLANEOUS PROVISIONS

5.1    Attorneys' Fees.  Should suit be brought to enforce, interpret or collect any part of this Note, the prevailing party shall be entitled to recover, as an element of the costs of suit and not as damages, reasonable attorneys' fees and other costs of enforcement and collection.

5.2    Jurisdiction.  This Note shall be construed and enforced in accordance with the internal laws of the State in which the Property is located.

5.3    Obligation Unconditional.  No provision of this Note or of any other agreement shall alter, impair or render conditional the payment obligations of Maker, which are absolute and unconditional, to pay the principal and interest on this Note at the place and at the respective times herein prescribed.  Time is of the essence under this Note and the Loan Documents.

5.4    Maker's Waivers.  Maker (and all guarantors, endorsers and other parties now or hereafter becoming liable for the payment of this Note) hereby waives diligence, presentment, protest, demand of payment, notice of protest, dishonor and nonpayment, and waives the legal effect of Holder's failure to give all notices not expressly provided for herein.  Maker expressly agrees that, without in any way affecting the liability of Maker hereunder, the Holder may, without notice to Maker, extend the Maturity Date or the time for payment of any amount due hereunder, accept additional security, release any party liable hereunder, and release any security now or hereafter securing this Note.  Maker further waives, to the full extent permitted by law, the right to plead any and all statutes of limitation as a defense to any demand on this Note, or on any agreement now or hereafter securing this Note.

5.5    Loss or Destruction.  Upon receipt of evidence reasonably satisfactory to Maker of the loss or mutilation of this Note, Maker will execute and deliver, in substitution hereof, a replacement note.

5.6    Severance.  Every provision of this Note is intended to be severable.  In the event any term or provision hereof is declared to be illegal or invalid for any reason by a court of competent jurisdiction, such illegality or invalidity shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.  Holder and

Independence, Missouri                          - 5 -

Maker further agree to replace any such void or unenforceable provision of this Note with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

5.7   <u>Waivers and Delays by Holder to be Strictly Limited</u>.  Any waiver, express or implied, of any breach or default hereunder shall not be considered a waiver of any subsequent or different breach or default.  No delay or omission on the part of Holder in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right or of any other right of the Holder hereunder.  Failure to accelerate the indebtedness evidenced hereby by reason of default in the payment of a monthly installment of principal or interest or the acceptance of a past due installment of same shall not be construed as a novation of this Note or as a waiver of the right of the Holder to thereafter insist upon strict compliance with the terms of this Note without previous notice of such intention being given to Maker.

5.8   <u>Modification</u>.  No provision of this Note may be waived, modified or discharged other than by an express writing signed by the party against whom enforcement of such waiver, modification or discharge is sought.

5.9   <u>Exculpatory Provision</u>.  By accepting the Deed of Trust and this Note, the Holder agrees that the promise of the Maker contained in this Note to pay the Principal Amount with interest is included herein for the sole purpose of establishing the existence of said indebtedness. The Holder's source of satisfaction of said indebtedness and of any sum of money which is or may be payable under this Note or the Deed of Trust or other Loan Documents shall be limited to the Property, the rents, issues and profits therefrom whether collected or uncollected, the improvements and the rights in condemnation awards or eminent domain awards, and insurance policies and proceeds and any and all other collateral securing the amounts due and owing under the Loan Documents except to the extent set forth below in this Section 5.9.  Except to the extent set forth below in this Section 5.9, Holder agrees that it will not seek or be entitled to enforce out of any other assets of the Maker or any party constituting the Maker any judgment for any sum of money which is or may be payable under this Note or the Deed of Trust or other Loan Documents or for the performance of any of the obligations of the Maker under the Deed of Trust or other Loan Documents or any deficiency remaining after foreclosure of the Deed of Trust.  The provisions of this Section, however, shall not:

(a)   constitute a waiver, release or impairment of any obligation evidenced or secured by the Loan Documents, as such documents may be subsequently modified or amended;

(b)   limit or impair the right of Holder to name Maker as a party defendant in any action or suit for judicial foreclosure and sale under the Deed of Trust or otherwise arising in connection with the Loan Documents;

(c)   prohibit Holder from pursuing all of its rights and remedies against any guarantor or surety, whether or not such guarantor or surety is a partner of Maker, or affect the validity or enforceability of any guaranty made in connection with the Loan Documents;

Independence, Missouri                          - 6 -

(d)    impair the right of Holder to obtain the appointment of a receiver;

(e)    impair the enforcement of the Assignment of Leases and Rents or any Loan Documents executed in connection herewith;

(f)    impair the right of Holder to obtain all economic incidents associated with the use, occupancy or operation of the Property or any other collateral evidenced by the Loan Documents, inclusive of income, profits and the rents received by Maker after the occurrence of an Event of Default;

(g)    impair the right of Holder to obtain insurance proceeds and condemnation awards due to Holder under the Deed of Trust or any other proceeds derived from the Property, or any other collateral evidenced by the Loan Documents, due to Holder under the Deed of Trust;

(h)    impair the right of Holder after an Event of Default to apply any cash, escrow funds or other collateral which are subject to the security interest of Holder, as well as any funds deposited for payment of taxes, assessments and insurance premiums and the like, to the reduction of the indebtedness hereunder;

(i)    impair the right of Holder to seek any remedy available under the Loan Documents to enforce and realize upon the interest in the Property, the rents, or any other collateral given to Holder as security for repayment of this Note;

(j)    prevent Holder from obtaining injunctive or other equitable relief to secure performance of the obligations of Maker (as distinguished from enforcement against Maker personally to obtain damages or other monetary relief) or to prevent a breach of any of Maker's obligations under the Loan Documents; or

(k)    in any way preclude Holder from enforcing any of its rights or remedies at law or in equity against Maker except as provided in this paragraph.

Further, nothing in this paragraph shall limit the liability of Maker or the personal liability of any general partner of Maker to Holder, or impair the right of Holder to bring suit and seek recovery against any of the foregoing for any of the following:

(i)    fraud or material misrepresentation by Maker or any other person or entity in connection with the Loan Documents;

(ii)    Maker's misappropriation or misapplication of rents, tenant security deposits, rents collected in advance, insurance proceeds, condemnation awards or other proceeds derived from the Property or any other collateral given to secure this Note;

Independence, Missouri                    - 7 -

(iii) Maker's misuse or diversion of any cash or other collateral subject to the security interest of Holder after an Event of Default [e.g., failure to apply cash obtained from the Property to Property-related obligations];

(iv) the obligations undertaken by Maker under that certain hazardous waste indemnity letter from Maker to Holder;

(v) Maker's failure to maintain the Property or any other collateral evidenced by the Loan Documents or any part thereof in a manner consistent with the Property's current condition, use and market;

(vi) Maker's failure to repair or restore the Property or any other collateral evidenced by the Loan Documents in a satisfactory manner after a casualty loss when Holder agreed to make insurance proceeds available for such repair or restoration;

(vii) any casualty to the Property or any other collateral evidenced by the Loan Documents for which insurance coverage was not maintained as required under the terms of the Deed of Trust;

(viii) Maker's failure to comply with the terms and provisions of the Loan Documents prohibiting the sale or further encumbrance of the Property or any other collateral evidenced by the Loan Documents;

(ix) Maker's failure to comply with all federal, state and local laws; and

(x) Maker's failure to pay real and personal property, sale, use or other taxes and insurance premiums when due.

Maker, and its general partners do hereby agree to indemnify, defend and hold Holder harmless with respect to any loss, claim, damage or liability arising in connection with any of the foregoing.

5.10    Binding Effect.  This Note shall bind the successors and assigns of Maker and all endorsers hereto and shall inure to the benefit of Holder and its successors and assigns.

5.11    Parties, Definitions.  Whenever in this Note words of any gender appear, they should be deemed to apply equally to any gender.  Whenever used in this Note, the plural shall include the singular and the singular shall include the plural as the context may require.  In the event Maker consists of more than one person or entity, the obligations of each Maker hereunder

Independence, Missouri                           - 8 -

shall be joint and several. Any capitalized words used in this Note and not herein defined shall have the meanings ascribed to such terms in the Loan Documents.

5.12    Venue. Borrower hereby consents to the exercise of personal jurisdiction over it by any federal or state court in the state where the Property is located and consents to the laying of venue in any jurisdiction or locality in the state where the Property is located. Service shall be effected by any means permitted by the court in which any action is filed, or at Holder's option, by mailing process, postage prepaid, by certified mail, return receipt requested, to Maker at Maker's address set forth on the first page of this Note. Service shall be deemed effective upon receipt. Maker may designate a change of address for purposes of this paragraph by written notice to Holder made in accordance with the notice provisions of the Deed of Trust at least ten (10) days before such change of address is to become effective.

5.13    Maker's Waiver. To the extent permitted by applicable law, Maker hereby waives and releases all errors, defects and imperfections in any proceedings instituted by Holder under the terms of this Note, or of the Deed of Trust or other Loan Documents, as well as all benefit that might accrue to Maker by virtue of any present or future laws exempting the Property, or any other property, real or personal, pledged or mortgaged as security for the payment of this Note, or any part of the proceeds arising from any sale of any such property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment; and Maker agrees that any real estate that may be levied upon pursuant to a judgment obtained by virtue hereof, or any writ of execution issued thereon, may be sold upon any such writ in whole or in part in any order desired by Holder.

## 6. **WAIVER OF JURY TRIAL**

6.1    Waiver. Maker hereby expressly waives any and all rights it may have to trial by jury of any claim, demand, action, or cause of action (1) arising under this Note, the Deed of Trust securing same or any other Loan Document executed or delivered in connection herewith, or (2) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect to this Note, the Deed of Trust securing same or any other Loan Document executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and Maker hereby agrees and consents that any such claim, demand, action, or cause of action shall be decided by court trial without a jury, and holder may file an original counterpart or a copy of this section with any court as written evidence of the consent of each of them to the waiver of its right to trial by jury.

Independence, Missouri                                      - 9 -

**MAKER:**

CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED PARTNERSHIP, a Pennsylvania limited partnership

By:    CIRCUIT GENERAL PARTNER #5-PENNSYLVANIA, INC., a Pennsylvania corporation, General Partner

By: _____

Title: _President_ _____

STATE OF ___Texas_____ )
                                              ) ss.
COUNTY OF ___Dallas____ )

On this _27_ day of February, 1995, before me, the undersigned, a Notary Public in and for said state, personally appeared _Gil J. Besing_ who being by me duly sworn did say that he is the _President_ of Circuit General Partner #5-Pennsylvania, Inc., a Pennsylvania corporation as general partner of Circuit Investors #5-Montgomeryville Limited Partnership, a Pennsylvania limited partnership, and that the within _Promissory Note_ was signed in behalf of said corporation by authority of its board of directors, and acknowledged said instrument to be the free act and deed of said corporation for the purposes therein stated and that said corporation has no corporate seal.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year last above written.



_Lisa Wooldridge_
Printed Name: _____
Notary Public in and for said State
Commissioned in _____ County

[SEAL]

My commission expires:

LISA WOOLDRIDGE
Notary Public, State of Texas
My Commission Expires
MAY 23, 1996

_____

I:\AFZ\27098\6-041.not\022695\LC

Independence, Missouri                    - 10 -

ENDORSEMENT TO NOTE

FOR VALUE RECEIVED, the undersigned, the original or successor payee under that certain promissory note to which this Endorsement is affixed (the "Note"), absolutely assigns, transfers, endorses, negotiates, and sets over to and makes payable to the order of German American Capital Corporation, a Maryland corporation (the "Purchaser"), without recourse, representation or warranty of any kind, except as set forth in that certain Asset Purchase Agreement dated as of August 8, 1997 (the "Purchase Agreement"), by and between the Purchaser and The Paul Revere Life Insurance Company, a Massachusetts corporation and The Paul Revere Variable Annuity Insurance Company, a Massachusetts corporation , as sellers, the Note, all interest, principal, and other sums due or to become due under the Note, and all other rights of any nature accrued or to accrue under the Note.

Dated: As of August ___22___ , 1997.

THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation

By: _____

Its: _____

## Note Allonge

Loan Number:              172760

Loan Name:                VOIT PARTNERS, LTD.

Pay to the order of:

LaSalle National Bank, as trustee for the registered holders of
GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through
Certificates, Series 1997-C1, without recourse

**German American Capital Corporation**

By:

Name: Kenneth Gilison          Robert D Burns

Title: Authorized Signatory    Vice President

# Exhibit B



**Doc Type Group**

L e g a l    D o c u m e n t s

**Document Type**

M o r t g a g e / D e e d    o f    T r u s t

**Loan Number**

9 8 2 0 0 3 7 4 5

**Library**

A

**Doc Date**

0 2 / 2 7 / 9 5

**Class**

S e r v i c i n g

**HEADER**



User : TLYNCH

I95-0332 (3)

11330925

I2664P1811

STATE OF MISSOURI} SS
(COUNTY OF JACKSON)
I CERTIFY INSTRUMENT RECEIVED

3.00
3.00
4.00
254.00    1995 MAR -6 P 3:44.5
264.00    I2664P1811
RECORDED BOOK_____PAGE_____

*n amos*    DIRECTOR OF RECORDS

# DEED OF TRUST,
# ASSIGNMENT OF LEASES
# AND
# SECURITY AGREEMENT (FIRST)

### FROM

*CIRCUIT INVESTORS #5-*
*MONTGOMERYVILLE LIMITED PARTNERSHIP,*
*A PENNSYLVANIA LIMITED PARTNERSHIP*

### TO

*LARRY D. IRICK, AS TRUSTEE FOR THE BENEFIT OF*
*THE PAUL REVERE LIFE INSURANCE COMPANY*
*A MASSACHUSETTS CORPORATION*

Dated February 27, 1995

Pepe & Hazard
Goodwin Square
Hartford, CT  06103-4302

Independence, Missouri

I2664P1812

## TABLE OF CONTENTS

## RECITALS

**GRANTING CLAUSE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### ARTICLE ONE

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

### ARTICLE TWO

**COVENANTS AND AGREEMENTS OF Trustor** . . . . . . . . . . . . . . . . . . . . . 8
    2.1.   Warranty of Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    2.2.   Power and Authority of Trustor . . . . . . . . . . . . . . . . . . . . . . . 9
    2.3.   Performance of Notes, Deed of Trust and Other Documents . . . . . . . . 9
    2.4.   Maintenance, Repair and Alterations . . . . . . . . . . . . . . . . . . . . 9
    2.5.   Required Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    2.6.   Delivery of Policies; Payment of Premiums . . . . . . . . . . . . . . . . . 11
    2.7.   Insurance Proceeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    2.8.   Indemnification; Subrogation; Waiver of Offset . . . . . . . . . . . . . . 15
    2.9.   Taxes and Impositions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    2.10.  Eminent Domain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    2.11.  Utilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    2.12.  Trustor's Lease Obligations . . . . . . . . . . . . . . . . . . . . . . . . . 19
    2.13.  Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    2.14.  Tradenames; Fictitious Name Registration . . . . . . . . . . . . . . . . . 20
    2.15.  Books and Records; Financial Statements . . . . . . . . . . . . . . . . . . 20
    2.16.  Trustor's Existence; Restrictions on Transfer and Encumbrance . . . . . . 21
    2.17.  Compliance with Laws; Notice . . . . . . . . . . . . . . . . . . . . . . . 25
    2.19.  Survival of Covenants, Representations and Warranties . . . . . . . . . . . 26

### ARTICLE THREE

**ASSIGNMENT OF RENTS, ISSUES, PROFITS AND LEASES** . . . . . . . . . . . . . 26
    3.1.   Assignment of Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    3.2.   Collection of Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    3.3.   Assignment of Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    3.4.   Covenants as to Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I2664P1813

# ARTICLE FOUR

SECURITY AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    4.1.   Creation of Security Interest . . . . . . . . . . . . . . . . . . . . . . . . 28
    4.2.   Warranties, Representations and Covenants of Trustor . . . . . . . . . . . 28

# ARTICLE FIVE

REMEDIES UPON DEFAULT . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    5.1.   Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    5.3.   Acceleration Upon Default . . . . . . . . . . . . . . . . . . . . . . . . . 32
    5.4.   Foreclosure and Other Actions by Lender . . . . . . . . . . . . . . . . . . 33
    5.5.   Exercise of Power of Sale . . . . . . . . . . . . . . . . . . . . . . . . . 34
    5.6.   Successor Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    5.7.   Trustee's Rights and Obligations . . . . . . . . . . . . . . . . . . . . . . 35
    5.8.   Recovery of Expenses by Lender . . . . . . . . . . . . . . . . . . . . . . 35
    5.9.   Lender's Right of Possession in Case of Default . . . . . . . . . . . . . . 36
    5.10.  Application of Income Received by Lender . . . . . . . . . . . . . . . . . 37
    5.11.  Appointment of Receiver . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    5.12.  Remedies Not Exclusive . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    5.13.  Counsel Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    5.14.  Exculpation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# ARTICLE SIX

ENVIRONMENTAL REPRESENTATIONS, COVENANTS AND WARRANTIES . . . 40
    6.1.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    6.2.   Representations and Warranties . . . . . . . . . . . . . . . . . . . . . . . 40
    6.3.   Trustor's Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
    6.4.   Lender's Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    6.5.   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# ARTICLE SEVEN

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    7.1.   Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    7.2.   Trustor Waiver of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    7.3.   Limitation of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    7.4.   Giving of Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
    7.5.   Statements by Trustor . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    7.6.   Additional Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
    7.7.   Successors and Assigns . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
    7.8.   Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

- ii -

Independence. Missouri

I2664P1814

7.9.    Lender's Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    49
7.10.   Actions by Lender to Preserve Property; Lender's Own Protection . . . . .    49
7.11.   Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    50
7.12.   Suits to Protect the Property . . . . . . . . . . . . . . . . . . . . . . . .    51
7.13.   Proofs of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    51
7.14.   No Waiver of One Default To Affect Another . . . . . . . . . . . . . . . .    51
7.15.   Remedies Cumulative . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    51
7.16.   Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    52
7.17.   Captions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    52
7.18.   Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    52
7.19.   Invalidity of Certain Provisions . . . . . . . . . . . . . . . . . . . . . .    52
7.20.   Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53
7.21.   No Merger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53
7.22.   Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53
7.23.   Future Advances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53

Independence, Missouri

I2664P1815

## DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (FIRST)

This **DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT** (First) ("Deed of Trust") is made as of the 27th day of February, 1995 and is by **CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP**, a Pennsylvania limited partnership, with a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Trustor"), to **LARRY D. IRICK**, whose address is c/o Smith, Gill, Fisher & Butts, One Kansas City Place, 35th Floor, 1200 Main Street, Kansas City, Missouri 64105 ("Trustee") for the benefit of **THE PAUL REVERE LIFE INSURANCE COMPANY**, a Massachusetts corporation with a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608 ("Lender").

### RECITALS

This Deed of Trust is made pursuant to a certain Loan Application executed by Cardinal Capital Partners, Inc. on January 26, 1995 and accepted by Lender on January 31, 1995 (the "Commitment"), pursuant to which Lender agreed to advance to Trustor the principal sum of Six Million Two Hundred Eleven Thousand Six ($6,211,006) Dollars (the "Loan") to fund acquisition costs associated with the Property (as hereinafter defined) and other purposes and will encumber, as a first mortgage loan, Trustor's interest in and to a certain piece or parcel of real property commonly known as 18701 E. 39th St., Independence, Missouri. The Loan is evidenced by two promissory notes of even date. The Deed of Trust hereby granted will create a valid first mortgage on Trustor's interest in the Property. The security interest granted hereby will, upon the recording of this Deed of Trust and the filing of an appropriate financing statements in the office of the Missouri Secretary of the State in the Jackson County, Missouri Recorder's Office, create a valid and perfected security interest in any and all personal property and fixtures used in conjunction with, located upon or adjunct to the Property.

### GRANTING CLAUSE

NOW, THEREFORE, in consideration of the Indebtedness (as hereinafter defined) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Trustor has granted, conveyed, bargained, sold, aliened, enfeoffed, released, confirmed and mortgaged, and by these presents does hereby grant, convey, bargain, sell, alien, enfeoff, release, confirm and mortgage unto Lender and does agree that Lender shall have a security interest in and to Trustor's interest in that certain real

Independence, Missouri

**I2664P1816**

property and all of the rights, title, benefits and entitlements including any options to extend or options to purchase the real property described in <u>Exhibit A</u> attached hereto and made a part hereof (the "Land").

TOGETHER WITH, all existing and future rents, issues, profits, royalties, income, reversions and remainders, and other benefits derived from the Property (as hereinafter defined) (collectively, the "Rents"), subject to the revocable license hereinafter given to Trustor to collect and apply such Rents; and

TOGETHER WITH, all right, title and interest of Trustor in and to all leases, subleases, permits, licenses, franchises or certificates covering the Property or any portion thereof now existing or hereafter entered into, and all right, title and interest of Trustor thereunder, including, without limitation, all cash or security deposits, advance rentals, and deposits or payments of similar nature (the "Leases"); and

TOGETHER WITH, all interests, estate or other claims, both in law and in equity, which Trustor now has or hereafter may acquire in the Property; and

TOGETHER WITH, all right, title and interest of Trustor, now owned or hereafter acquired, in and to any and all tenements, hereditaments and appurtenances belonging to the Property or any part thereof hereby mortgaged or intended so to be, or in any way appertaining thereto, and all streets, alleys, strips, gores, passages, ways, sewer rights, water courses, water rights and powers and all leasehold estates, easements, rights of way and covenants now existing or hereafter created for the benefit of Trustor or any subsequent owner or tenant of the Property over ground adjoining the Property and all rights to enforce the maintenance thereof, including, without limitation, all other rights, liberties and privileges of whatsoever kind or character, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law or in equity, of Trustor in and to the Property or any part thereof; and

TOGETHER WITH, all right, title and interest of Trustor in and to any and all buildings and improvements now or hereafter erected on the Property, and the fixtures, attachments, appliances, equipment, machinery, and other articles attached to said buildings and improvements (the "Improvements"); and

TOGETHER WITH, all right, title and interest of Trustor in and to all goods, inventory, equipment, machinery, furniture, fixtures and other articles of personal property of every kind and nature whatsoever, now or hereafter located in, upon or about the Property described herein, and used or usable in connection with the present or future operation of said Property, whether or not the same are or shall be attached to said Property in any manner, and specifically in all construction equipment, building materials, supplies and other property stored at or delivered to the Land or at other locations for incorporation into the Improvements and as used in connection with the development and construction of the Improvements, including but not limited to Trustor's books and records with respect to the Property, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems, office air conditioning, heating,

I2664P1817

refrigerating, electronic monitoring, parking ticket dispensing and validation, cash registers, time clocks, entertainment, recreational, window or structural cleaning rigs, equipment used in connection with maintenance, exclusion of vermin or insects, removal of dust, refuse or garbage and all other equipment of every kind), indoor or outdoor furniture (including tables, chairs, planters, desks, partitions, sofas, shelves, lockers and cabinets), decorative accessories, works of art, wall beds, wall safes, furnishings, appliances, (including ice boxes, refrigerators, fans, heaters, stoves, water heaters and incinerators), inventory, rugs, carpets and other floor coverings, draperies and drapery rods and brackets, awnings, window shades, venetian blinds, curtains, lamps, chandeliers and other lighting fixtures and office maintenance and other supplies (the "FF&E"); and

TOGETHER WITH, all right, title and interest of Trustor in and to all unearned premiums, accrued, accruing or to be accrued under insurance policies now or hereafter obtained by Trustor and all proceeds of the conversion, voluntary or involuntary, of any of the Property described herein into cash or liquidated claims, including, without limitation, proceeds of hazard or title insurance and any and all awards and payments hereafter to be made or paid by any governmental authority with respect to the Property for any reason whatsoever, including but not limited to, the exercise of eminent domain or the alteration of the grade of any street or otherwise and all proceeds of any sale or other disposition of the Property described herein, all contract rights, licenses, permits, designs, surveys, plans and specifications, operating or maintenance agreements and other agreement and documents now or hereafter existing with respect to the Property and all right, title and interest of Trustor arising under any contracts and subcontracts, including, without limitation, all rights arising under any performance and payment bonds, now or hereafter executed with respect to the Property, all right, title and interest of Trustor in and to all reserve or escrow agreements now or hereafter created and the funds established thereby pursuant to the Deed of Trust, the Notes or the other Loan Documents (as hereinafter defined), and all modifications and amendments thereto and replacements thereof (collectively, the "Contracts"); and

TOGETHER WITH, all right, title and interest of Trustor in and to all deposits (including tenants' security deposits), funds (including funds received for the use of parking spaces), instruments, accounts receivable, documents and general intangibles arising out of or used in connection with the operation of the Property and all notes and chattel paper arising from or by virtue of any transaction related to the Property (collectively, the "Accounts"); and

TOGETHER WITH, all right, title and interest of Trustor in and to all reserve or escrow agreements now or hereafter created and the funds established thereby pursuant to the Deed of Trust, the Notes, the Tax, Insurance and Capital Reserve Escrow Agreement or the other Loan Documents (hereinafter defined); and

TOGETHER WITH, all right, title and interest of Trustor in and to all proceeds, products, replacements, additions, substitutions, renewals and accessions of and to any item of the Property described herein.

**I2664P1818**

All of the above mentioned portion of Trustor's interest in the Land, the Rents, Leases, Improvements, FF&E, Accounts, Contracts and the balance of the entire estate, property and interest hereby conveyed to Lender is sometimes hereafter collectively referred to as the "Property".

FOR THE PURPOSE OF SECURING:

(a)    Payment of the Indebtedness evidenced by that certain Promissory Note ("Note A") of even date, with a Maturity Date (as defined therein) of March 1, 2017, a copy of which is attached as Exhibit B-1, and any and all modifications, extensions and renewals thereof, and all interest provided for in Note A.

(b)    Payment of the Indebtedness evidenced by that certain Promissory Note ("Note B") of even date with a Maturity Date (as defined therein) of March 1, 2017, a copy of which is attached as Exhibit B-2, and any and all modifications, extensions and renewals thereof, and all interest provided for in Note B (Note A and Note B are hereinafter referred to individually as a "Note" and collectively, for so long as both shall remain secured by this Deed of Trust, as the "Notes").

(c)    Payment and performance of all obligations of Trustor under the Loan Documents (as hereinafter defined).

(d)    Payment of all sums advanced by Lender to protect the Property or its interests therein, to the extent such advances are permitted hereunder or are authorized under the law of the State (hereinafter defined) with interest thereon at the rate of four percent (4%) per annum higher than the Interest Rate (as defined in the Prime Note), or the maximum rate of interest permitted by law in the State, whichever shall be less (the "Default Rate").

(e)    Payment and performance of all obligations and agreements of Trustor contained herein or incorporated herein by reference.

This Deed of Trust, the Notes, and any other instrument given to evidence or further secure the payment and performance of any obligation secured hereby are sometimes hereinafter collectively referred to as the "Loan Documents."

TO HAVE AND TO HOLD the Property hereby conveyed or mentioned and intended so to be, unto Lender, to its own use forever.

PROVIDED ALWAYS, and this instrument is upon the express condition that, if Trustor pays to Lender the Principal Amount (hereinafter defined) of the Loan, the interest thereon and all other sums payable by Trustor to Lender as are secured hereby, in accordance with the provisions of the Loan Documents, at the times and in the manner specified, without deduction, fraud or delay, and Trustor performs and complies with all the agreements, conditions, covenants, provisions and stipulations contained herein and in the other Loan Documents, then

I2664P1819

this Deed of Trust and the estate hereby granted shall cease and become void and upon the request of Trustor, Lender shall execute a release of this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

## ARTICLE ONE
## DEFINITIONS

1.    Definitions.

1.1.    The following terms have the meanings ascribed to them below:

1.1.1.    "Accounts" shall have the meaning ascribed to it in the Granting Clauses herein.

1.1.2.    "Affiliate" shall mean any Person which, directly or indirectly, controls or is controlled by or is under common control with a Person and, for the purpose of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with") means the possession, directly or indirectly (including, but not limited to, control through remote tier partnerships or other entities), of the power to direct or cause the direction of management and policies of such controlled Person, whether through the ownership of voting securities or by contract or otherwise.

1.1.3.    "Circuit City Lease" shall mean that certain lease dated February 22, 1995 entered into between Trustor and the Tenant with respect to the Property.

1.1.4.    "Commitment" shall have the meaning ascribed to it in the Recitals section herein.

1.1.5.    "Condemnation" shall have the meaning ascribed to it in Section 2.10 herein.

1.1.6.    "Contaminant" shall have the meaning ascribed to it in Section 6.5.1 herein.

1.1.7.    "Default Rate" shall mean the default rate identified in the Granting Clauses herein.

**I2664P1820**

1.1.8.    "Enforcement Action" shall have the meaning ascribed to it in Section 6.5.2 herein.

1.1.9.    "Environmental Laws" shall have the meaning ascribed to it in Section 6.5.3 herein.

1.1.10.    "Event of Default" shall have the meaning ascribed to it in Section 5.1 herein.

1.1.11.    "Guaranty" shall mean that Agreement of Guaranty of even date executed by Trustor in favor of Lender and secured by a second priority mortgage of even date of the Property.

1.1.12.    "Impositions" shall have the meaning ascribed to it in Section 2.9.1 herein.

1.1.13.    "Improvements" shall have the meaning ascribed to it in the Granting Clauses herein.

1.1.14.    "Indebtedness" shall have the meaning ascribed to it in Section 2.3 herein.

1.1.15.    "Leases" shall have the meaning ascribed to it in the Granting Clauses herein.

1.1.16.    "Maturity" shall have the meaning ascribed to it in Prime Note.

1.1.17.    "Deed of Trust" shall mean this Deed of Trust and any and all schedules, exhibits or riders annexed hereto and any and all amendments, modifications and supplements hereof.

1.1.18.    "Lender" shall mean the person who is the owner and holder of the Prime Note whether or not specifically named herein as "Lender", or any subsequent owner and holder of the Prime Note and this Deed of Trust.

1.1.19.    "Trustor" shall mean the person named in this Deed of Trust and who executes the same and any subsequent owner of the Property and its respective heirs, executors, administrators, successors and assigns in each case during such person's ownership of the Property. If Trustor consists of more than one person, all agreements, conditions, covenants, provisions, stipulations, warrants of attorney, authorizations, waivers, releases, options, undertakings, rights and benefits made or given by Trustor shall

Independence, Missouri                                    6

**I2664P1821**

be joint and several, and shall bind and affect all persons who are defined as "Trustor" as fully as though all of them were specifically named herein wherever the word "Trustor" is used.

1.1.20.    "Notes" shall mean the Notes or any other evidence of Indebtedness secured by this Deed of Trust.

1.1.21.    "Organizational Documents" shall mean the Certificate of Incorporation, Bylaws and other documents creating or evidencing the existence of a corporation or the Certificate of Limited Partnership of a partnership or the Articles of Organization of a Limited Liability Company or such other documents evidencing the formation, organization and the governance of any entity.

1.1.22.    "Other Property" shall have the meaning ascribed to it in Section 5.2 hereof.

1.1.23.    "Permitted Transfer" shall have the meaning ascribed to it in Section 2.16 herein.

1.1.24.    "Person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity.

1.1.25.    "Personal Property" shall have the meaning ascribed to it in Section 4.1 herein.

1.1.26.    "Phase I Environmental Assessment" shall have the meaning ascribed to it in Section 6.5.5 herein.

1.1.27.    "Phase II Environmental Assessment" shall have the meaning ascribed to it in Section 6.5.6 herein.

1.1.28.    "Prime Note" shall mean and refer to Note A.

1.1.29.    "Principal Amount" shall have the meaning ascribed to it in the Prime Note, provided, however that as used herein, such term shall include total principal balance under all of the Notes secured by this Deed of Trust.

1.1.30.    "Proceeds" shall have the meaning ascribed to it in Section 2.10.1 herein.

I2664P1822

1.1.31.     "Property" shall include any portion of the Property or interest therein.

1.1.32.     "Release" shall have the meaning ascribed to it in Section 6.5.4 herein.

1.1.33.     "Rents" shall have the meaning ascribed to it in the Granting Clause herein.

1.1.34.     "Shopping Center Agreements" shall mean and include reciprocal easement agreements, easements, reciprocal and/or restrictive covenants and the like in effect from time to time for the purpose of governing the rights and obligations of land owners and occupants of any shopping center of which the Property is a part.

1.1.35.     "State" shall mean the state in which the Property is located.

1.1.36.     "Tenant" shall mean Circuit City Stores, Inc., a Virginia corporation.

1.2.     The use of any gender shall include all genders;

1.3.     The singular number shall include the plural and the plural the singular as the context may require.

1.4.     Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms. The words "include," "including," and "such as" shall each be construed as if followed by the phrases "without being limited to." The words "herein," "hereof," "hereunder" and words of similar import shall be construed to refer to this Deed of Trust as a whole and not to any particular Article or Section hereof unless expressly so stated.

## ARTICLE TWO
## COVENANTS AND AGREEMENTS OF Trustor

2.     Covenants and Agreements of Trustor.

2.1.     Warranty of Title.

2.1.1. Trustor warrants that it has good, marketable and insurable (at customary rates) fee simple absolute title to the Property and has good right to bargain, sell and mortgage the same in the manner and in the form as provided herein and that the same is free from all encumbrances, except any encumbrances, easements and other restrictions identified in Exhibit

**I2664P1823**

C attached hereto ("Permitted Exceptions"). This Deed of Trust is and will remain a valid and enforceable first mortgage on the Property subject only to the Permitted Exceptions. Trustor shall preserve such title and will forever warrant and defend the validity and priority of this Deed of Trust against the claims of all persons and parties whatsoever.

2.1.2. Trustor warrants that this Deed of Trust is a valid first lien on the Property, and that Lender, subject to Trustor's right of possession prior to default and Permitted Exceptions, shall quietly enjoy and possess the Property.

2.2.    Power and Authority of Trustor.  Trustor has full power and authority to subject the Property to this Deed of Trust, and to execute and deliver the Notes, this Deed of Trust and all other documents and instruments required of it by Lender.  No consent of any other person or entity and no consent, approval, or authorization is required by Trustor in connection with the foregoing.

2.3.    Performance of Notes, Deed of Trust and Other Documents.  Trustor shall cause to be performed, observed and complied with all provisions of the Notes, this Deed of Trust, the Commitment and each and every other Loan Document, and will promptly pay to Lender the Principal Amount with interest thereon and all other sums required to be paid by Trustor under the Notes and pursuant to the provisions of this Deed of Trust, the Commitment and the other Loan Documents when payment shall become due (the entire Principal Amount of the Notes, all accrued interest thereon and all obligations and indebtedness herein described or described in the other Loan Documents being referred to herein as the "Indebtedness").  All Loan Documents not of record shall be located at Lender's notice address as set forth herein, to which reference may be had after prior written notice to Lender and during reasonable business hours.

2.4.    Maintenance, Repair and Alterations.  Trustor shall keep or cause to keep the Property, including the Land and the Improvements constituting any part thereof, in good order and condition and in a rentable and tenantable state of repair.  Trustor (i) shall not permit, commit or suffer any waste, impairment or deterioration of the Property or any part thereof (ordinary wear and tear excepted); (ii) shall make or cause to be made, as and when necessary, all repairs, renewals and replacements, structural and non-structural, exterior and interior, ordinary and extraordinary, foreseen and unforeseen; (iii) shall not remove, demolish or substantially alter any of the Improvements, except for such alterations (a) as may be required by laws, ordinances or regulations, or (b) which are undertaken by the Tenant under the Circuit City Lease in accordance with the terms thereof or (c) which, upon the prior approval by Lender of plans therefor, will maintain the quality and character of the Property and if made will not diminish the revenues derived from the Property; (iv) shall complete promptly and in good and workmanlike manner any building or other improvement which may be constructed on the Property and promptly restore in like manner any Improvements which may be damaged or destroyed thereon, and promptly pay when due all claims for labor performed and materials furnished therefor; (v) shall comply with all laws, ordinances, regulations, covenants, conditions, restrictions and any agreements now or hereafter affecting the Property or any part thereof

including, but not limited to, the Shopping Center Agreements or requiring any alterations or improvements; (vi) shall not commit or permit any waste or deterioration of the Property; (vii) shall keep and maintain abutting grounds, sidewalks, roads, parking and landscape areas in good and neat order and repair; (viii) shall comply with the provisions of any lease of all or any part of the Property; (ix) shall not commit, suffer or permit any act to be done in or upon the Property in violation of any law, ordinance or regulation or which will increase the risk of fire or other hazards to the Property; (x) shall not during any period when the Circuit City Lease is not in effect permit the improved portions of the Property or any part thereof to become unguarded, and (xi) shall not cancel, transfer, amend, or assign any Shopping Center Agreement without Lender's prior written consent, nor consent to the cancellation, transfer, amendment, or assignment of any Shopping Center Agreement by any party to any such Shopping Center Agreement without Lender's prior written consent.

     2.5.   <u>Required Insurance</u>.  Trustor shall provide, maintain and keep in force the following insurance coverage with respect to the Property:

     2.5.1. Insurance against loss or damage to the Improvements by fire and any of the risks covered by insurance of the type now known as "All-Risk" property and fire insurance (with an extended coverage endorsement, including hurricane, tornado and wind damage coverage) in an amount not less than the full replacement cost of the Improvements including the cost of debris removal (exclusive of the cost of excavations, foundations, and footings below the lowest basement floor), and with a deductible from the loss payable for any casualty in an amount satisfactory to Lender, in its sole discretion.  The policies of insurance carried in accordance with this subparagraph 2.5.1 shall contain a "Replacement Cost Endorsement;"

     2.5.2. Flood insurance, if such insurance is required under the United States Flood Disaster Protection Act of 1973;

     2.5.3. Business interruption insurance and/or loss of "rental value" insurance in an amount equal to one year's scheduled rent;

     2.5.4. Comprehensive general liability insurance (including coverage for employee dishonesty, elevators and escalators, if any, on the Property and, if any construction of new improvements occurs after execution of this Deed of Trust, completed operations coverage for two years after construction of the improvements has been completed) on an "occurrence basis" against claims for "personal injury" including, without limitation, bodily injury, death or property damage occurring on, in or about the Property and the adjoining streets, sidewalks and passageways, such insurance to afford immediate minimum protection to a limit of not less than that required by Lender with respect to personal injury or death to any one or more persons or damage to property;

     2.5.5. Workers' compensation insurance (including employer's liability insurance, if requested by Lender) for all employees of Trustor engaged on or with respect to the Property

I2664P1825

in such amount as is reasonably satisfactory to Lender, or if such limits are established by law, in such amounts;

2.5.6. During the course of any construction or repair of Improvements on the Property, builder's risk insurance, completed value form, against "all risks of physical loss", including collapse and transit coverage, during construction of such Improvements, with deductibles acceptable to Lender in its sole discretion, in non-reporting form, covering the total value of work performed and equipment, supplies and materials furnished. Said policy of insurance shall contain the "permission to occupy upon completion of work or occupancy" endorsement;

2.5.7. Boiler and machinery insurance covering pressure vessels, air tanks, boilers, machinery, pressure piping, heating, air conditioning and elevator equipment and escalator equipment, provided the Improvements contain equipment of such nature, and insurance against loss of occupancy or use arising from any such breakdown, in such amounts as may from time be required by Lender;

2.5.8. Insurance against loss or damage to the Personal Property by fire and other risks covered by insurance of the type now known as "fire and extended coverage;"

2.5.9. Such other insurance, and in such amounts, as may from time to time be reasonably required by Lender against the same or other hazards.

All policies of insurance required by the terms of this Deed of Trust shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Trustor which might otherwise result in forfeiture of said insurance.

2.5.10. Notwithstanding the foregoing, so long as the Tenant is not in default under the Circuit City Lease beyond any applicable grace or notice periods, Trustor shall be deemed to be in compliance with the terms of this Section 2.5.

2.6.    Delivery of Policies; Payment of Premiums.  All policies of insurance required by the terms of this Deed of Trust shall be issued by companies and in amounts as to each company satisfactory to Lender.

2.6.1. All policies of insurance required by the terms of this Deed of Trust shall have attached thereto a lender's loss payable endorsement for the benefit of Lender, not subject to contribution, in form satisfactory to Lender.  Trustor shall furnish Lender with a signed duplicate original policy with respect to all required insurance coverage.  If Lender shall in its discretion consent to Trustor providing any of the required insurance through blanket policies carried by Trustor and covering more than one location, Trustor shall furnish Lender with a certificate of insurance for each such policy setting forth the coverage in respect of the Property,

I2664P1826

the limits of liability, the name of the carrier, the policy number and the expiration date. At least thirty (30) days prior to the expiration of each such policy, Trustor shall furnish Lender with evidence satisfactory to Lender of the reissuance of a policy continuing insurance in force as required by this Deed of Trust. All policies required to be maintained pursuant to this Deed of Trust shall be in form satisfactory to Lender; shall be maintained in full force and effect, with premiums prepaid, as collateral security for payment of the Indebtedness secured hereby; and shall contain a provision that such policies will not be cancelled or materially amended, which term shall include any reduction in the scope or limits of coverage, without at least thirty (30) days prior written notice to Lender.

2.6.2. If Trustor shall at any time fail to provide, maintain, keep in force or deliver and furnish to Lender the policies of insurance required by this Section, Lender may procure such insurance or single-interest insurance for such risks covering Lender's interest, and Trustor will pay or reimburse the cost of all premiums thereon promptly upon demand by Lender, and until such payment is made by Trustor the amount of all such premiums together with interest thereon at the Default Rate, shall be secured by this Deed of Trust. .

2.6.3. At the request of Lender, Trustor shall deposit with Lender, in monthly installments on the day installments of interest are due under the Prime Note, an amount equal to one-twelfth of the estimated aggregate annual insurance premiums on all policies of insurance required by this Deed of Trust (or such greater amount as Lender reasonably estimates will be needed to make the next succeeding scheduled installment ratably deposited over the monthly installments due prior to the payment date of such installment). Trustor further agrees, upon Lender's request, to cause all bills, statements or other documents relating to the foregoing insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements or other documents, and providing Trustor has deposited sufficient funds with Lender pursuant to this Section 2.6.3, and provided that an Event of Default has not then occurred, Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this Section 2.6.3. Lender may commingle said deposits with its own funds and Trustor shall be entitled to no interest on said funds. Lender may impound or reserve for future payment of premiums such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance to the Indebtedness. Should Trustor fail to deposit with Lender (exclusive of any portion of said payments which may have been applied by Lender to the payment of the Indebtedness secured by the Loan Documents) sums sufficient to fully pay such premiums at least thirty (30) days before they may be due, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender immediately upon Lender's demand, and until such payment is made by Trustor the amount of all such premiums together with interest thereon at the Default Rate shall be secured

I2664P1827

by this Deed of Trust (or at its option Lender may, without making any advance whatsoever, apply any sums held by it upon any obligation of the Trustor secured hereby). Should any default occur or exist in the payment or performance of Trustor's and/or any guarantor's obligations under the terms of the Loan Documents, Lender may, at any time at Lender's option, apply any sums or amounts in its hands received pursuant hereto, or as Rents of the Property or otherwise, to the payment or discharge of any Indebtedness of Trustor or obligation of Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any Indebtedness secured by this Deed of Trust or any of the rights or powers of Lender under the terms of the Loan Documents or any of the obligations of Trustor and/or any guarantor under this Deed of Trust.

2.6.4. Notwithstanding the foregoing, so long as the Tenant is not in default under the Circuit City Lease beyond any applicable grace or notice periods, Trustor shall be deemed to be in compliance with the terms of this Section 2.6.

2.7.    Insurance Proceeds. After the happening of any casualty to the Property or any part thereof, Trustor shall within five (5) business days give written notice thereof to Lender, and the following provisions shall apply:

2.7.1. In the event of any damage or destruction of all or any portion of the Improvements, all proceeds of insurance shall be payable to Lender, and Lender is hereby authorized and empowered by Trustor to make proof of loss on and to settle, adjust or compromise any claims for loss, damage or destruction under any policy or policies of insurance; provided, however, that Trustor may participate in the settlement, adjustment or compromise of any such claim but such right of participation shall not affect or diminish the rights of Lender in its sole discretion to make all determinations and decisions in respect of the settlement, adjustment or compromise of any such claim. Each insurance company concerned is authorized and directed hereby to make payment under such insurance policies, including return of unearned premiums, directly to Lender instead of to Trustor and Lender jointly, and Trustor appoints Lender, irrevocably, as Trustor's attorney-in-fact to endorse any draft therefor. All such proceeds of insurance received by Lender shall be held by Lender and applied at Lender's sole discretion as a mandatory prepayment to reduction of the Principal Amount of the Prime Note, without prepayment fee, whether or not such amount is otherwise then due and without regard to whether the Property and Improvements can be repaired or restored, or to restoration of the Property.

2.7.2. Notwithstanding the foregoing, Lender agrees to make insurance proceeds available to Trustor for restoration or repair of the Property provided:

2.7.2.1.    There has been no Event of Default under the Loan Documents in the twelve months immediately prior to the occurrence of such casualty; and

I2664P1828

2.7.2.2.    The cost to repair the Property is not more than 2% of the original Principal Amount of the Prime Note; or

2.7.2.3.    The cost to repair the Property is greater than 2% but is not more than 30% of the original Principal Amount of the Prime Note; and

2.7.2.3.1.    Trustor demonstrates to Lender's satisfaction that Trustor has the ability, during reconstruction, to fulfill the obligations contained in the Loan Documents from the proceeds of rent insurance or otherwise;

2.7.2.3.2.    The casualty in question occurs prior to the last two years immediately preceding the Maturity Date (as defined in the Prime Note) and Trustor demonstrates to Lender's satisfaction that complete restoration is feasible within twelve months after such casualty;

2.7.2.3.3.    The funds are released under escrow/construction funding arrangements satisfactory to Lender which may at Lender's sole discretion include the use of a consulting engineer to review release requests, the costs for which shall be paid by Trustor; and

2.7.2.3.4.    The economics of the Property and the security for the Loan are not materially impaired in Lender's sole opinion and the loan-to-value ratio of the Loan would be no greater than 70% of the Property value as restored based on a current appraisal obtained at Trustor's expense and acceptable to Lender in its sole discretion.

2.7.2.4. Notwithstanding the foregoing, so long as the Tenant is not in default under the Circuit City Lease beyond any applicable grace or notice periods, Lender shall waive the foregoing requirements and disburse the insurance proceeds in accordance with the terms of the Circuit City Lease.

2.7.3.  The balance of any insurance proceeds held by Lender remaining after the completion of any repair, restoration or reconstruction shall, in Lender's discretion, be paid to Trustor or applied by Lender to the Indebtedness secured hereby and in such order as Lender may determine.

I2664P1829

2.7.4. Nothing herein contained shall be deemed to excuse Trustor from repairing or maintaining the Property as provided in Section 2.4 hereof or from restoring all damage or destruction to the Property, regardless of whether or not there are insurance proceeds available or whether any such proceeds are sufficient in amount, nor shall anything provided hereinabove affect or derogate from Lender's right to take such actions as it may in its sole discretion choose to take to protect the security hereof pursuant to Section 7.10 hereinafter, and the application or release by Lender of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

2.8.    Indemnification; Subrogation; Waiver of Offset.

2.8.1. If Lender is made a party defendant to any litigation concerning this Deed of Trust or the Property or any part thereof (including any action concerning or arising out of the occupancy thereof by Trustor or persons claiming through Trustor), then Trustor shall indemnify, defend and hold Lender harmless from all liability arising by reason of such litigation, including reasonable attorneys' fees and expenses incurred by Lender in any such litigation, whether or not any such litigation is prosecuted to judgment. If Lender commences an action against Trustor to enforce any of the terms hereof or because of the breach by Trustor of any of the terms hereof, or for the recovery of any sum secured hereby, Trustor shall pay to Lender reasonable attorneys' fees and expenses, and the right to such attorneys' fees and expenses shall be deemed to have accrued on the commencement of such action, and shall be enforceable whether or not such action is prosecuted to judgment. If Trustor shall violate any term of this Deed of Trust, Lender may employ an attorney or attorneys to protect its rights hereunder, and in the event of such employment following any breach by Trustor, Trustor shall pay to Lender the reasonable attorneys' fees and expenses incurred by Lender, whether or not an action is actually commenced against Trustor by reason of such breach. This indemnification provision is not in derogation of any other indemnification provided for hereunder or in any other Loan Document and all such indemnification obligations of Trustor shall be independent obligations of Trustor and any other indemnitors thereunder.

2.8.2. Trustor waives any and all right to claim or recover against Lender, its officers, employees, agents and representatives, for loss of or damage to Trustor, the Property, property of Trustor or the property of others under the control of Trustor from any cause insured against or required to be insured against by the provisions of this Deed of Trust.

2.8.3. All sums payable by Trustor hereunder shall be payable without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected by reason of: (i) any damage to or destruction of, or any condemnation or similar taking of the Property or any part thereof; (ii) any restriction or prevention of or interference with any use of the Property or any part thereof; (iii) any title defect or encumbrance or any eviction from the Property or the Improvements or any part thereof by title paramount or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating

I2664P1830

to Lender, or any action taken with respect to this Deed of Trust by any trustee or receiver of Lender, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Lender; (vi) any default or failure on the part of Lender to perform or comply with any of the terms hereof or of any other agreement with Trustor; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing; and whether or not Trustor shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Trustor.

2.9.    Taxes and Impositions.

2.9.1. Trustor shall deposit with Lender, in monthly installments on the day installments of principal and interest are due under the Prime Note, an amount equal to one-twelfth of the estimated aggregate of all real property taxes and assessments, general and special, and all other taxes and assessments of any kind or nature whatsoever, including, without limitation, nongovernmental levies or assessments such as maintenance charges, owner association dues or charges or fees, levies or charges resulting from covenants, conditions and restrictions affecting the Property, charges for any easement or agreement maintained for the benefit of the Property, which are assessed or imposed upon any of the Property, or against Trustor or arising in respect of the occupancy, use or possession hereof, or become due and payable in respect thereof, or upon any Personal Property, equipment or other facilities used in the operation or management thereof (all of which taxes, assessments and other governmental charges of a like or different nature are hereinafter referred to as "Impositions"), or such greater amount as Lender reasonably estimates will be needed to make the next succeeding scheduled payment of Impositions if ratably deposited over the monthly installment due prior to the payment date of such next succeeding payment of the Impositions. If the Land described in Exhibit A is not treated as a separate parcel for purposes of any Impositions, Lender retains the right to require that Trustor deposit monthly installments equal to one-twelfth of all Impositions imposed on the parcel or parcels of which the Land forms a part. Trustor further agrees, upon Lender's request, to cause all bills, statements or other documents related to the Impositions to be sent or mailed directly to Lender. Upon receipt of such bills, statements or other documents and providing Trustor has deposited sufficient funds with Lender pursuant to this Section 2.9.1, and provided that an Event of Default has not occurred hereunder, Lender shall pay such amounts as may be due with respect to such Impositions out of funds so deposited with Lender. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this Section 2.9.1. Lender may commingle said deposits with its own funds and Trustor shall be entitled to no interest on said funds. Lender may impound or reserve for future payment of Impositions such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance to the Indebtedness and in such order as Lender may

I2664P1831

determine.   Should Trustor fail to deposit with Lender (exclusive of any portion of said payments which may have been applied by Lender to the payment of the Indebtedness) sums sufficient to fully pay such Impositions at least thirty (30) days before they may be due, Lender may, (i) at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender immediately upon Lender's demand and until such payment is made by Trustor the amount of such payment, together with interest thereon at the Default Rate, shall be secured by this Deed of Trust, or (ii) at its option, and without making any advance whatsoever, apply any sums held by it upon any obligation of the Trustor secured hereby.   Should an Event of Default or any default occur or exist in the payment or performance of Trustor's and/or any guarantor's obligations under the terms of the Loan Documents, Lender may, at any time at Lender's option, apply any sums or amounts in its hands received pursuant hereto, or as Rents of the Property or otherwise, to the payment or discharge of the Indebtedness in such manner and order as Lender may elect.   The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of the Indebtedness or any of the rights or powers of Lender under the terms of the Loan Documents or any of the obligations of Trustor and/or any guarantor under this Deed of Trust.   Notwithstanding the foregoing, so long as the Tenant is not in default under the Circuit City Lease beyond any applicable grace or notice periods, Lender shall waive the foregoing requirements of this Section 2.9.1.

2.9.2.  If under the provisions of any law or ordinance now or hereafter in effect there shall be assessed or imposed (i) a tax or assessment on the Property in lieu of or in addition to the Impositions payable by Trustor pursuant to 2.9.1 hereof, or (ii) a license fee, tax or assessment on Lender measured by or based in whole or in part upon the amount of the outstanding obligations secured hereby, then all such taxes, assessments or fees shall be deemed to be included within the term "Impositions" as defined in 2.9.1 hereof, and Trustor shall pay and discharge the same as herein provided with respect to the payment of Impositions and if such Impositions are not paid by Trustor or if payment thereof by Trustor is prohibited by law, then at the option of Lender, all obligations secured hereby together with all accrued interest thereon, shall immediately become due and payable.   Anything to the contrary herein notwithstanding, Trustor shall have no obligation to pay any franchise, estate, inheritance, income, excess profits or similar tax levied on Lender or on the obligations secured hereby.

2.9.3.  Trustor covenants to furnish Lender within forty-five (45) days after the date upon which any Imposition is due and payable by Trustor, official receipts of the appropriate taxing or other authority, or other proof satisfactory to Lender, evidencing the payment thereof.

2.9.4.  Trustor shall have the right, before any delinquency occurs, to contest or object to the amount or validity of any Imposition by appropriate legal proceedings, but this shall not be deemed or construed in any way as relieving, modifying or extending the covenants of Trustor to pay any Imposition at the time and in the manner provided in this Section 2.9, unless Trustor shall have given prior written notice to Lender of intent to so contest or object to an

I2664P1832

Imposition, and unless, at Lender's sole option, (i) Trustor shall demonstrate to Lender's satisfaction that the legal proceeding shall operate conclusively to prevent the sale of the Property, or any part thereof, to satisfy such Imposition prior to final determination of such proceedings; or (ii) Trustor shall furnish (1) a good and sufficient bond or surety as requested by and satisfactory to Lender; or (2) Trustor shall have provided Lender with a good and sufficient undertaking as may be required or permitted by law to accomplish a stay of such proceedings. The foregoing requirements shall be deemed satisfied with respect to any contest undertaken by the Tenant in compliance with the terms of the Circuit City Lease.

2.9.5. Trustor covenants and agrees that to the fullest extent permitted by law, Trustor will not suffer, permit or initiate the joint assessment of taxes upon the Property and the Personal Property, or any other procedure whereby the lien of any taxes assessed against the Property and the lien of any taxes assessed against the Personal Property would be assessed, levied or charged to the Property as a single lien.

2.9.6. For all periods during which the title to the Property or any part thereof shall be held by a corporation or other entity subject to corporate taxes or taxes similar to corporate taxes, Trustor shall file or cause to be filed returns for such taxes with the proper authorities, bureaus or departments and shall cause to be paid, when due and before interest or penalties are due thereon, all taxes payable by such corporation or other entity to the United States, to such state of incorporation or formation and to the state in which the Property is situated and any political subdivision thereof, and shall produce to Lender receipts showing payment of any and all such taxes, charges or assessments prior to the last dates upon which such taxes, charges or assessments are payable without interest or penalty charges; provided, however, that Trustor shall have the right before any delinquency occurs to contest or object to the amount or validity of any such taxes, charges or assessments in good faith and by appropriate legal proceedings, but this shall not be deemed or construed in any way as relieving, modifying or extending Trustor's obligation to pay any such taxes, charges or assessments at the time such contest, objection and legal proceedings have been terminated or discontinued adversely to Trustor. Within ten (10) days of receipt thereof, Trustor shall produce to Lender all settlements, notices of deficiency or overassessment and any other notices pertaining to Trustor's tax liability, which may be issued by the United States, such state of incorporation, the state in which the Property is situated and any political subdivision thereof. If at any time the United States or any department or bureau thereof shall require Internal Revenue stamps on the Notes secured hereby, Trustor on demand shall pay for them with any interest or penalties payable thereon.

2.10. Eminent Domain. If the Property, or any part thereof or interest therein, is taken or damaged by reason of any public improvement, eminent domain or other similar proceeding or through a conveyance in lieu of the foregoing, or in any other manner ("Condemnation"), or if Trustor receives any notice or other information regarding such proceeding, Trustor shall give prompt written notice thereof to Lender, and the following provisions shall apply:

I2664P1833

2.10.1.    Lender shall be entitled to all compensation for the Property taken or for damage to the Property not taken, awards and other payments or relief therefor whether as a result of such proceedings or in lieu thereof made to Trustor and/or others, and shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceedings; provided, however, that Trustor may participate in any such action or proceedings, but such right of participation shall not affect or diminish the rights of Lender to make all determinations and decisions in respect of such action or proceedings. Lender also shall be entitled to make any compromise or settlement in connection with such condemnation or damage. All such compensation, awards, damages, rights of action and proceeds awarded to Trustor and/or others (the "Proceeds") are hereby assigned by Trustor to Lender and the same shall be received and collected by Lender, and Trustor agrees to execute such further assignments of the Proceeds and other instruments as Lender may require. Such assignment shall not relieve Trustor of its obligations to continue to pay and perform the obligations and Indebtedness secured hereby or such portion thereof as remains unpaid after any application by Lender pursuant to this Section 2.10.1 of the Proceeds to the obligations or Indebtedness so secured.

2.10.2.    If any portion of the Property is taken or damaged by condemnation, Lender shall have the option, in its sole and absolute discretion, to apply all Proceeds, after deducting therefrom all costs and expenses (regardless of the particular nature thereof and whether incurred with or without suit), including attorneys' fees, incurred by it in connection with such Proceeds, against any Indebtedness secured hereby at par, without prepayment charge, and in such order as Lender may determine, or to apply all such Proceeds, after such deductions, to the restoration of the Property upon such conditions as Lender may determine. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. In the event proceeds will be applied by Lender to the repair, restoration or reconstruction of any improvements, such monies will be re-advanced to Trustor, in Lender's discretion, in accordance with Lender's standard construction loan disbursement procedures as described above with respect to re-advance of insurance proceeds.

2.10.3.    Notwithstanding the foregoing, so long as the Tenant is not in default under the Circuit City Lease beyond any applicable grace or notice periods, Lender shall waive the foregoing requirements and disburse the Proceeds in accordance with the terms of the Circuit City Lease.

2.11.    <u>Utilities</u>. Trustor shall pay when due all utility charges incurred by Trustor for the benefit of the Property or which may become a charge or lien against the Property for gas, electricity, water or sewer services furnished to the Property and all other assessments or charges of a similar nature, whether public or private, affecting the Property or any portion thereof, whether or not such taxes, assessments or charges are liens thereon.

2.12.    <u>Trustor's Lease Obligations</u>. Trustor shall pay when due all rents and other payments and perform all covenants and agreements contained in any lease, sublease or ground

I2664P1834

lease which may constitute a portion of or an interest in the Property, and shall not surrender, assign or sublease any such lease, sublease or ground lease, nor take any other action which would affect or permit the termination of any such lease, sublease or ground lease.  Upon Lender's request, Trustor covenants to furnish to Lender within thirty (30) days after such request, receipts or such other evidence satisfactory to Lender evidencing the payment of such rents or other payments as are due and payable by Trustor.

2.13.  Liens.  Prior to the commencement of any construction, renovation, improvement or other work on the Property, Trustor shall file or cause to be filed waivers of mechanics' liens in a form and manner satisfactory to Lender.  Trustor shall pay and promptly discharge, at Trustor's cost and expense, all liens, encumbrances and charges upon the Property, or any part thereof or interest therein; provided, that Trustor shall have the right to contest in good faith the validity of any such lien, encumbrance or charge, as long as (i) such contest operates to stay any proceedings for enforcement of or execution on the lien or encumbrance, (ii) Trustor shall first deposit with Lender a bond or other security reasonably satisfactory to Lender in such amounts as Lender reasonably shall require, and (iii) Trustor shall thereafter diligently proceed to cause such lien, encumbrance or charge to be removed and discharged.  If Trustor shall fail to discharge any such lien, encumbrance or charge, or provide such security, then, in addition to any other right or remedy of Lender, Lender may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond or the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law; and all funds advanced by Lender to pay such obligations, liabilities, costs and expenses shall be reimbursed by Trustor upon demand by Lender together with interest thereon until reimbursement at the Default Rate, and all such advances with interest thereon as aforesaid shall be secured by this Deed of Trust and the other Loan Documents.  The foregoing requirements shall be deemed satisfied with respect to any contest undertaken by the Tenant in compliance with the requirements of the Circuit City Lease.

2.14.  Tradenames; Fictitious Name Registration.  At the request of Lender, Trustor shall execute a certificate in form satisfactory to Lender listing the tradenames under which Trustor intends to operate the Property, and representing and warranting that Trustor does business under no other tradename with respect to the Property.  Trustor promptly shall notify Lender in writing of any change in said tradenames, and will, upon request of Lender, execute additional UCC financing statements and other instruments revised to reflect the change in tradename.  Trustor shall make all filings and take all other steps required in order to comply with applicable fictitious name statutes, and shall provide evidence of such compliance to Lender.

2.15.  Books and Records; Financial Statements.

2.15.1.    Trustor shall keep and maintain at all times complete, true and accurate books of account and records reflecting the results of operation of the Property.  Lender, and its designated agents shall have the right to inspect Trustor's books and records with respect to the Property at all reasonable times.

I2664P1835

2.15.2.        Trustor will cause to be delivered to Lender as soon as practicable, but in any event within 90 days after the close of each fiscal year of Trustor, a statement of condition or balance sheet of Trustor as of the end of each fiscal year, all certified as to accuracy by an independent certified public accountant acceptable to Lender, and an annual operating statement showing in reasonable detail and in form satisfactory to Lender all income and expenses, surplus and rent rolls, together with gross sales of each tenant or occupant of the Property whose rent is based in whole or in part upon such gross sales, of Trustor with respect to the operation of the Property, prepared at Trustor's expense and certified as to accuracy by an independent certified public accountant acceptable to Lender. Trustor agrees to make its books and accounts relating to the Property available for inspection by Lender or its representatives upon request at any time. Notwithstanding the foregoing, Lender shall waive the requirements of this Section 2.15.2 so long as the Circuit City Lease remains in effect.

2.15.3.        Lender shall be furnished with the following documents with respect to the Tenant within the periods set forth below, and in no event later than five (5) business days after the same shall become available to the public (i) annual report on Form 10-K and any and all exhibits thereto, within ninety (90) days after the end of Tenant's fiscal year; (ii) quarterly reports on Form 10-Q, within forty-five (45) days after the end of the quarter in question; (iii) reports on Form 8-K to the extent such reports reveal information related to extraordinary events which may have a related material and adverse affect on the financial condition of the Tenant; and (iv) preliminary and final proxy materials required by Section 14 of the Securities and Exchange Act of 1934, as amended. In addition, Landlord shall be furnished with any and all other documents, instruments, certificates and financial statements which Tenant delivers to its stockholders from time to time which include information related to a material change in the financial condition of the Tenant. Trustor hereby advises that Tenant's fiscal year ends on February 28.

2.16.    Trustor's Existence; Restrictions on Transfer and Encumbrance.

2.16.1.        Trustor and any subsequent owner of any of the Property shall do all things necessary to preserve and keep in full force and effect its and their existence, franchises, rights and privileges as a corporation or partnership, as the case may be, under the laws of the state of its formation and its right to own property and transact business in the state in which the Property is situated. Neither Trustor nor any subsequent owner of all or any portion of the Property shall amend, modify, transfer, assign or cancel the Organizational Documents of Trustor, or such subsequent owner, without the prior written consent of Lender, which consent Lender may grant or deny in its sole discretion. Neither the composition nor form of business association of Trustor may be modified, amended or altered, nor may the ownership of Trustor or the Property, in whole or in part, be sold, transferred, assigned or otherwise disposed of without the prior written consent of Lender, which consent may be withheld in Lender's sole discretion.

2.16.2.        Without the prior written consent of Lender, which consent can be withheld in Lender's sole discretion, Trustor shall not (i) permit to exist any lien on the Property

I2664P1836

or encumber all or any portion of the Property (other than Permitted Exceptions) or any interest in Trustor with subordinate financing or hypothecate all or any portion of its interest in the Property (the foregoing shall not preclude installment purchase agreements or leasing agreements of Personal Property, entered into in the ordinary course of business, provided that any security interest granted in connection therewith relates only to the Personal Property so purchased or leased), (ii) sell, lease (other than equipment leases in the ordinary course of business and Leases in accordance with the terms hereof) or transfer its interest in all or any portion of the Property; (iii) execute a land contract or purchase agreement (unless a condition of closing of such land contract or purchase agreement shall be the repayment in full of the Loan in full compliance herewith and with the Notes); (iv) record a condominium declaration with respect to all or any portion of the Property; or (v) change, directly or indirectly, the ownership or control of Trustor including a direct or indirect transfer of first or more remote tier limited partnership interests or stock or membership interests in corporate entities or voting or non-voting securities or management rights with respect to Trustor or otherwise affect Trustor's composition, form of business association or ownership except as hereinafter specifically provided in Section 2.16.4. hereof.

2.16.3. In connection with any consent requested and granted pursuant to this Section 2.16, Lender may require payment of a fee and/or modification of the terms of the Loan as a condition to giving any such consent. Any such transfer (other than as hereinafter specifically provided in Section 2.16.4) made without Lender's prior express written consent (which may be withheld arbitrarily notwithstanding the provisions hereof setting forth provisions upon which Lender may condition its consent) shall be void and shall constitute an Event of Default hereunder and shall entitle Lender to exercise any and all remedies available to it under the Loan Documents, including, without limitation, acceleration of the Notes. Trustor agrees that if the ownership of the Property or any part thereof becomes vested in a person other than Trustor, Lender may, without notice to Trustor, deal in any way with such successor or successors in interest with reference to this Deed of Trust, the Notes or any other Loan Document without in any way vitiating or discharging Trustor's liability hereunder, under the Notes or under any other Loan Document. No such transaction and no forbearance to any person with respect to this Deed of Trust and no extension granted to any person of the time for payment of the Notes or the Indebtedness, given by Lender shall operate to release, discharge, modify, change or affect the original liability of Trustor either in whole or in part.

2.16.4. Notwithstanding the provisions of 2.16.1, 2.16.2 or 2.16.3 hereof to the contrary, Trustor shall have the right to a one-time sale, transfer, or assignment, in whole or in part, of its interest in the Property to any party of equal qualification and creditworthiness provided:

2.16.4.1. No Event of Default exists under the Notes or any promissory note subject to the Guaranty at the time of transfer;

2.16.4.2. There exists no material deferred maintenance on the Property at the time of transfer;

Independence, Missouri 22

I2664P1837

2.16.4.3.    The proposed transferee is an Institutional Investor (as hereinafter defined) or a Qualified Real Estate Investor (as hereinafter defined) approved by Lender;

2.16.4.3.1.    As used herein, the term "Institutional Investor" means any creditworthy bank, savings and loan association, trust company, insurance company, pension fund, investment advisor, credit union, real estate investment trust, or charitable foundation actively engaged in acquiring or financing commercial real estate properties, subject to Lender's approval;

2.16.4.3.2.    As used herein, the term "Qualified Real Estate Investor" means any reputable corporation, partnership, joint venture, joint stock company, trust or individual with a minimum net worth equivalent to the Principal Amount or greater, a minimum current cash position equal to at least ten percent (10%) of net worth, based in the United States and free from any bankruptcy, reorganization or insolvency proceedings or any criminal charges or proceedings and shall not have been, at the time of transfer or in the past, a litigant (plaintiff or defendant) in any suit brought against or by Lender or any affiliate of Lender. The proposed transferee, its principals, and affiliates shall not have offered a deed in lieu of foreclosure on a previous transaction nor have been in control of a property foreclosed upon by Lender or an affiliate of Lender.

Lender shall act reasonably in determining whether the proposed transferee is an "Institutional Investor" or a "Qualified Real Estate Investor";

2.16.4.4.    The Debt Service Coverage Ratio (as hereinafter defined) on the Loan for at the time of transfer exceeds 1.0x;

2.16.4.4.1.    As used herein, the term "Debt Service Coverage Ratio" means the ratio of (i) net after tax operating income from the Property, the Other Property and each of the properties which secure promissory notes that are then subject to the Guaranty and (ii) the total payments due under the Prime Note, the Note secured by a first mortgage on the Other Property and promissory notes that are then subject to the Guaranty during such period, all as determined in accordance with Generally Accepted Accounting Principles;

2.16.4.5.    The proposed transferee has specific related commercial real estate experience in the Metropolitan Statistical Area where the Property is located;

I2664P1838

2.16.4.6.    Affiliates of the proposed transferee own or manage a minimum of 100,000 square feet of retail space;

2.16.4.7.    The proposed transferee agrees that upon the request of Lender, the proposed transferee will form a single asset entity to take title to the Property;

2.16.4.8.    At least forty-five (45) days prior to such transfer, Trustor provides Lender with all of the material provisions of such transfer including, without limitation the proposed date of transfer, the purchase price and the name, net worth, background, and address of the proposed transferee;

2.16.4.9.    Trustor provides Lender with such evidence as Lender may require demonstrating that the proposed transferee has assumed and shall fulfill each and every obligation of Trustor under the Loan Documents as such obligations pertain to the Property and such transfer shall not affect or impair Lender's security and rights under the Loan Documents;

2.16.4.10.    The notice received under 2.16.4.8 above shall be accompanied by the payment to Lender of a nonrefundable fee in the amount of one percent (1%) of the outstanding Principal Amount of the Prime Note in cash, cashier's check, or certified check in order to induce Lender to allow the proposed transferee to assume the obligations of Trustor under the Loan Documents; such fee shall be returned to Trustor if Lender disapproves of such transfer;

2.16.4.11.    If Tenant is no longer a tenant of the Property, the loan-to-value ratio of the outstanding Principal Amount under the Prime Note and the Property at the time of transfer, based on the sales price and confirmed by a current appraisal obtained at Trustor's expense and acceptable to Lender, must not exceed eighty percent (80%); and

2.16.4.12.    Trustor shall pay for all of Lender's costs and expenses (including reasonable attorney's fees) associated with the transfer.

2.16.5.    Notwithstanding any other provision of Section 2.16.1, 2.16.2, 2.16.3 or 2.16.4 to the contrary, so long as there is no default existing under the Circuit City Lease and the Tenant's credit rating remains "investment grade" (i.e., rated either Moody's "Ba2", Standard and Poor's "BBB-", Duff & Phelps "BBB-" or NAIC"2"), Trustor shall have the right to sell, transfer, or assign its interest in the Property, to any party provided that:

2.16.5.1.    No event of default exists under the Loan Documents at the time of transfer;

2.16.5.2.    There exists no material deferred maintenance on the Property at the time of transfer;

I2664P1839

2.16.5.3.    At least forty-five (45) days prior to such a transfer, Trustor provides Lender with all of the material provisions of such transfer including without limitation the proposed date of transfer, the purchase price and the name, net worth, background, and address of the proposed transferee;

2.16.5.4.    Trustor provides Lender with such evidence as Lender may require demonstrating that the proposed transferee has assumed and shall fulfill each and every obligation of Trustor under the Loan Documents as such obligations pertain to the Property and that such transfer shall not affect or impair Lender's security and rights under the Loan Documents;

2.16.5.5.    Such notice received under 2.16.5.3 above shall be accompanied by the payment to Lender of a nonrefundable fee in the amount of fifty (50) basis points (.005) on the outstanding Principal Amount of the Prime Note in cash, cashier's check, or certified check in order to induce Lender to allow the proposed transferee to assume the obligations of Trustor under the Loan Documents; such fee to be returned to Trustor if Lender disapproves of such transfer;

2.16.5.6.    Borrower shall pay for all of Lender's costs and expenses (including reasonable attorney's fees) associated with such transfer(s);

2.16.6.    Release.  Upon transfer of the Property pursuant to Section 2.16.4 or 2.16.5 hereof, the transferor shall be released from all obligations thereafter accruing hereunder.

2.17.  Compliance with Laws; Notice.  Trustor covenants and warrants that to the best knowledge of Trustor, the Property presently complies with and will continue to comply with all applicable restrictive covenants, applicable zoning and subdivision ordinances and building codes, all applicable health and Environmental Laws and all other applicable laws, rules and regulations (including but not limited to the obligation to maintain on the Property paved parking spaces in sufficient number and size to comply with the minimum parking requirements of all applicable zoning and other municipal regulations). If Trustor receives notice from any federal, state or other governmental body that it or the Property is not in compliance with any such covenant, ordinance, code, law or regulation, Trustor shall provide Lender with a copy of such notice promptly.

2.18.  Single Asset Entity.  Trustor hereby warrants and represents to Lender that except for the Other Property, Trustor is a single asset entity and owns no property other than the Property and the during the term of the Loan, Trustor shall neither acquire, nor own Property other than the Property and the Other Property without Lender's consent.

I2664P1840

2.19.  Survival of Covenants, Representations and Warranties.  Trustor shall fully and faithfully satisfy and perform the obligations of Trustor contained in the Loan Documents and each agreement of Trustor incorporated by reference therein or herein and any modification or amendment therefor.  All representations, warranties and covenants of Trustor contained therein or herein or incorporated by reference therein or herein shall survive the closing and funding of the loan evidenced by the Notes and shall remain continuing obligations, warranties and representations of Trustor during any time when any portion of the Indebtedness secured by this Deed of Trust shall remain outstanding.

## ARTICLE THREE
## ASSIGNMENT OF RENTS, ISSUES, PROFITS AND LEASES

3.    Assignment of Rents, Issues, Profits and Leases.

3.1.    Assignment of Rents.  Trustor hereby assigns and transfers to Lender all the Rents (whether now or hereafter existing), and hereby gives to and confers upon Lender the right, power and authority to collect such Rents.  Trustor irrevocably appoints Lender Trustor's true and lawful attorney-in-fact, at the option of Lender at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Trustor or Lender, for all such Rents and apply them to the Indebtedness secured hereby.  The assignment of the Rents of the Property in this Article Three is intended to be an absolute assignment from Trustor to Lender and not merely the passing of a security interest. Lender may require Trustor to execute a separate instrument also assigning the Rents and Leases with respect to the Property.  If so, such separate document will be deemed to supplement this Article Three and not to supersede this Article and both this Article and such separate instrument may be enforced by Lender against Trustor in accordance with their respective terms.

3.2.    Collection of Rents.  Lender shall apply all Rents collected hereunder to any Indebtedness secured hereby, and in such order as Lender may determine.  The collection of such Rents, or the entering upon and taking possession of the Property, or the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default.

3.3.    Assignment of Leases.  Trustor hereby assigns and transfers to Lender as additional security for the payment of the Indebtedness secured hereby all present and future Leases upon all or any part of the Property and further agrees to execute and deliver, at the request of Lender, all such further assurances and assignments of Leases with respect to the Property as Lender shall from time to time require. Trustor, as lessor under every Lease now or hereafter transferred or assigned to Lender, its successors and assigns, shall perform and fulfill any term, covenant, condition or provision in such Lease, on Trustor's part to be performed or fulfilled, at the times and in the manner in said Lease provided and under such assignment of Lease.

Independence, Missouri                          26

## ARTICLE FOUR
## SECURITY AGREEMENT

4.    Security Agreement.

   4.1.    Creation of Security Interest.  Trustor hereby grants to Lender a security interest in Trustor's interest in all of the FF&E, the Accounts, Contracts and all other elements of personal property within the definition of the "Property" ("Personal Property") and the proceeds thereof, for the purpose of securing all obligations of Trustor contained in any of the Loan Documents.

   4.2.    Warranties, Representations and Covenants of Trustor.  Trustor hereby warrants, represents and covenants as follows:

      4.2.1.  Except for the security interest granted hereby, Trustor is, and as to the portions of the Personal Property to be acquired after the date hereof will be, the sole owner of the Personal Property free from any lien, security interest, encumbrance or claim thereon of any kind whatsoever.  Trustor will notify Lender of, and will defend the Personal Property against, all claims and demands of all persons at any time claiming the Personal Property or any interest therein.

      4.2.2.  Trustor will not assign, pledge, encumber, lease, sell, convey or in any manner transfer the Personal Property or portions thereof without the prior written consent of Lender except as otherwise permitted under the Loan Documents.  All of the Personal Property attached to, incorporated into or to be incorporated into the Property will be kept free and clear of all chattel mortgages, liens, conditional vendor's liens, encumbrances and security interests, except as expressly waived in writing by Lender.

      4.2.3.  The Personal Property is not and will not be used or acquired for personal, family or household purposes.

      4.2.4.  The Personal Property will be kept on or at the Property, and Trustor will not remove any portion or item of Personal Property affixed or attached to the Property without the prior written consent of Lender, except such portions or items of Personal Property which are consumed or worn out in ordinary usage, and are promptly replaced by Trustor with new items of equal or greater quality.

      4.2.5.  At the request of Lender, Trustor will join Lender in executing one or more financing statements and renewals, continuation statements and amendments thereof pursuant to the State Uniform Commercial Code in form satisfactory to Lender, and will pay the cost of filing the same in all public offices wherever filing is deemed by Lender to be necessary or desirable.  Without limiting the foregoing, Trustor hereby irrevocably appoints Lender attorney-in-fact for Trustor to execute, deliver and file such instruments for and on behalf of Trustor, and Trustor will pay the costs of any such filing.

Independence, Missouri

4.2.6. This Deed of Trust constitutes a Security Agreement as defined in the Uniform Commercial Code of the State.

4.2.7. Notwithstanding any release of any or all of the Property which is deemed "real property", any proceedings to foreclose this Deed of Trust or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interest created hereby and referred to above until the repayment or satisfaction in full of the obligations of Trustor as are now or hereafter evidenced by the Notes.

4.2.8. Trustor hereby appoints Lender or substitutes appointed by Lender or its successors and assigns as Trustor's true and lawful attorney, for Trustor and in Trustor's name to perform and do all every act and thing whatsoever requisite and necessary to be done under all contracts, licenses, leases and similar documents and agreements in which Lender has a security interest, upon an Event of Default hereunder. This appointment shall be coupled with an interest and shall be non-cancelable except upon satisfaction of the Indebtedness secured hereby. Trustor hereby ratifies and confirms all that Lender shall lawfully do or cause to be done pursuant hereto.


## ARTICLE FIVE
## REMEDIES UPON DEFAULT

5.      Remedies Upon Default.

5.1.    Events of Default. The occurrence of any one or more of the following events shall constitute a default (an "Event of Default") by Trustor hereunder:

5.1.1. Provided Lender has given Trustor five (5) business days notice of a monetary default, failure by Trustor to pay within five (5) business days of the date when due (i) any periodic installment of interest or principal due under the Notes, or (ii) the outstanding principal balance of the Notes, together with interest accrued thereon and any other expenses then due, at Maturity of the Notes, whether by acceleration or otherwise, or upon prepayment of the Notes; or

5.1.2. A breach of or default by Trustor under any other term, covenant, agreement, condition or provision, contained in this Deed of Trust or any other of the Loan Documents not otherwise expressly the subject of this Section 5.1 which breach or default remains uncured for more than thirty (30) days following Lender's written notice to Trustor thereof provided, however, (i) if such default relates to the failure to pay any Impositions as provided herein or any insurance premiums with respect to any insurance required to be kept in force hereunder, the time within which to cure such default shall be fifteen (15) days following written notice, not thirty (30) days, and (ii) if such default, by its nature, cannot be cured within such thirty (30) day period then Lender shall not be in default hereunder if, during

Independence, Missouri                    29

I2664P1844

such thirty (30) day period Lender commences to cure such default and thereafter diligently pursues such cure to completion; or

5.1.3. Trustor shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors; or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues or rents thereof, or shall make any general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

5.1.4. A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Trustor seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the first day of entry thereof; or any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the Rents thereof, shall be appointed without the consent or acquiescence of Trustor and such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

5.1.5. A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein, and such execution, attachment or similar process or judgment is not released, bonded, satisfied, vacated or stayed within thirty (30) days after its entry or levy; or

5.1.6. There shall have occurred a transfer of title, conveyance, transfer of control or disposition by Trustor of all or any part of Trustor's right, title and interest in and to the Property, or any part thereof, whether voluntarily or by operation of law, or any secondary financing in violation hereof, except as herein otherwise permitted; or

5.1.7. Any representation or warranty made by Trustor in any Loan Document or in any other instrument which pertains to this Deed of Trust or any obligation secured hereby proves to be incorrect, when made, in any material respect; or

5.1.8. A default by Trustor in any payment of principal or interest on any other obligation for borrowed money other than obligations secured under the Loan Documents, if an effect of such default is to cause, or permit such obligation to become due prior to its stated maturity; or

I2664P1845

5.1.9. The occurrence of a default (i) under any encumbrance or other mortgage affecting all or any portion of the Property or any other event permitting acceleration of the maturity of any indebtedness secured thereby, (ii) by Trustor under the terms of any Lease affecting all or any portion of the Property, (iii) under any other indebtedness of Trustor to Lender, or (iv) under any other indebtedness or obligation of Trustor permitting acceleration of any such indebtedness or obligation which is secured by a lien or mortgage on any real property of Trustor; or

5.1.10. A final judgment or judgments for the payment of money in excess of $10,000 shall be rendered against Trustor and the same shall remain undischarged or unbonded for a period of thirty (30) consecutive days; or

5.1.11. Any Improvement or other material part of the Property is demolished, removed, substantially altered (in violation of this Deed of Trust) or is substantially damaged or destroyed by an uninsured casualty and Trustor, unless the obligation to carry insurance has been excused, fails to provide satisfactory evidence to Lender within thirty (30) days of such casualty that the necessary funds for satisfactory restoration of the Improvements will be available at the time of restoration; or

5.1.12. The entry by any court of last resort of a decision that any material undertaking by Trustor herein provided to pay the Indebtedness, Impositions or other obligations assumed by Trustor hereunder is legally inoperative or cannot be enforced; or

5.1.13. Liquidation or dissolution of Trustor; or

5.1.14. The occurrence of an Event of Default under the mortgage which secures the Guaranty; or

5.1.15. The occurrence of an event of default under the Guaranty; or

5.1.16. The occurrence of an event which, pursuant to the terms of any of the other Loan Documents is deemed to constitute an Event of Default thereunder.

5.2.    Cross Default and Cross Collateralization. The occurrence of an Event of Default under that certain mortgage (the "Other Deed of Trust") of even date herewith executed by Trustor in favor of Lender and encumbering the real property (the "Other Property") identified on Exhibit D attached hereto shall constitute an Event of Default hereunder.

5.2.1. Notwithstanding any provision of this Deed of Trust to the contrary, if the Trustor transfers the Property pursuant to the terms of Sections 2.16.4 or 2.16.5 hereof, then upon such transfer this Deed of Trust shall only secure Trustor's obligations under the Prime Note unless the transferee or its affiliate also acquires the Other Property, in which event the cross default and cross collateralization provisions hereof shall remain in effect with respect to the Other Deed of Trust.

**I2664P1846**

5.2.2. Notwithstanding any provision of this Deed of Trust to the contrary, if the Other Property is transferred pursuant to the terms of Sections 2.16.4 or 2.16.5 of the Other Deed of Trust, then upon such transfer the occurrence of an Event of Default under such Other Deed of Trust, or under the "Prime Note" (as identified in the Other Deed of Trust), shall no longer constitute an Event of Default hereunder, unless the purchaser of the Other Property or its Affiliate also purchases the Property in which event the cross default and cross collateralization provisions hereof shall remain in effect with respect to the Other Deed of Trust and the Prime Note identified therein.

5.3.   Acceleration Upon Default. Upon the occurrence of an Event of Default, Lender may declare all Indebtedness secured hereby to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind and Lender may:

5.3.1. Commence an action to foreclose this Deed of Trust (either judicially or pursuant to the power of sale granted herein), appoint a receiver, or specifically enforce any of the covenants hereof;

5.3.2. Exercise any or all of the remedies available to a secured party under the State Uniform Commercial Code, including, but not limited to:

5.3.2.1.    Either personally or by means of a court appointed receiver, taking possession of all or any of the Personal Property and excluding therefrom Trustor and all others claiming under Trustor, and thereafter holding, storing, using, operating, managing, maintaining and controlling, making repairs, replacements, alterations, additions and improvements to and exercising all rights and powers of Trustor in respect of the Personal Property or any part thereof. In the event Lender demands or attempts to take possession of the Personal Property in the exercise of any rights under any of the Loan Documents, Trustor promises and agrees promptly to turn over and deliver complete possession thereof to Lender;

5.3.2.2.    Without notice to or demand upon Trustor, making such payments and doing such acts as Lender may deem necessary to protect its security interest in the Personal Property, including without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior to or superior to the security interest granted hereunder, and in exercising any such powers or authority to pay all expenses incurred in connection therewith;

5.3.2.3.    Require Trustor to assemble the Personal Property or any portion thereof, at a place designated by Lender and reasonably convenient to both parties, and promptly to deliver such Personal Property to Lender, or an agent or representative designated by it. Lender, and its agents and representatives shall have the right to enter upon any or all of Trustor's Property and other property to exercise Lender's rights hereunder;

Independence, Missouri                                          32

5.3.2.4.        Sell, lease or otherwise dispose of the Personal Property at public sale, with or without having the Personal Property at the place of sale, and upon such terms and in such manner as Lender may determine. Lender may be a purchaser at any such sale. Unless the Personal Property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give Trustor at least ten (10) days prior written notice of the time and place of any public sale of the Personal Property or other intended disposition thereof. Such notice may be mailed to Trustor at the address set forth at the beginning of this Deed of Trust.

5.3.3.  Confession of Judgment.  For the purpose of enabling Lender to obtain possession of the Property upon the occurrence of any Event of Default hereunder, Trustor hereby authorizes and empowers any attorney of any court of record in the State or elsewhere, as attorney for Trustor and all persons claiming under or through Trustor, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Trustor, and against all persons claiming under or through Trustor, in favor of Lender, for recovery by Lender of possession thereof, for which this Deed of Trust, or a copy thereof verified by affidavit, shall be sufficient warrant; and thereupon a writ of possession may immediately issue for possession of the Property, without any prior writ or proceeding whatsoever and without any stay of execution. If for any reason after such action has been commenced it shall be discontinued, or possession of the Property shall remain in or be restored to Trustor, or if Lender shall at first obtain possession of only a portion of the Property Lender shall have the right for the same default or any subsequent default to bring one or more further amicable actions as above provided to recover possession of the Property (or the remainder thereof). Lender may bring an amicable action in ejectment and confess judgment therein before or after the institution of proceedings to foreclose this Deed of Trust or to enforce the Notes or any other Loan Document or after entry of judgment therein or on any of the Notes, or after a sheriff's sale of the Property in which Lender is the successful bidder, it being the understanding of the parties that the authorization to pursue such proceedings for obtaining possession and confession of judgment therein is an essential part of the remedies for enforcement of this Deed of Trust, the Notes and the other Loan Documents, and shall survive any execution sale to Lender.

5.4.    Foreclosure and Other Actions by Trustee.    When the Indebtedness hereby secured, or any part thereof, shall become due, whether upon Maturity, by acceleration, or otherwise or on the occurrence of any other Event of Default, Trustee may institute one or more actions of foreclosure (either judicially or pursuant to the power of sale granted herein) against the Property (or any portion thereof), or take such other action at law or in equity for the enforcement of this Deed of Trust and the Notes and realization on the Property or any other security herein or elsewhere provided for as the law may allow, and may proceed therein to final judgment and execution or foreclosure for the entire unpaid balance of the Indebtedness, with interest at the Contract Interest Rate stipulated in the Notes to the date of default, and thereafter at the Default Rate together with all other sums due by Trustor in accordance with the provisions of the Notes, this Deed of Trust, and the other Loan Documents, such amount may include all sums which may have been loaned by Trustee to Trustor after the date of this Deed of Trust and

Independence, Missouri                              33

pursuant to the terms of this Deed of Trust, and all sums which may have been paid, incurred or advanced by or on behalf of Trustee for taxes, water or sewer rents, charges or claims, payments or prior liens, insurance or repairs to the Property, appraiser's fees, outlays for documentary and expert evidence, stenographers' charges, publication costs, and costs (which may be estimated as to items to be expended after entry of judgment) of procuring all such abstracts of title, title searches and examinations, title insurance policies, and similar data and assurances with respect to title as Trustee may deem reasonably necessary either to prosecute such suit or action or to evidence to bidders at any sale the true condition of the title to or the value of the Property, all costs of suit, all expenses and fees as may be incurred in the protection of the Property and the maintenance of this Deed of Trust, including but not limited to reasonable fees of any attorney empowered by Deed of Trust in any litigation or proceeding affecting this Deed of Trust or any other Loan Document including probate and bankruptcy proceedings or in the preparation for the commencement or defense of any proceeding or threatened suit or proceeding and all costs incurred by Trustee in the exercise of its right of possession as set forth herein and any other costs incurred by Trustee in proceeding hereunder. Trustee shall have the option to proceed with foreclosure in satisfaction of any part of the Indebtedness without declaring the whole of the Indebtedness as immediately matured, and such foreclosure may be made subject to the unmatured part of the Indebtedness, and it is agreed that such foreclosure, if so made, shall not in any manner affect the unmatured part of the Indebtedness, but as to such unmatured part, this Deed of Trust, as well as the other Loan Documents, shall remain in full force and effect just as though no foreclosure had been made. Several foreclosures may be made without exhausting the right of foreclosure for any unmatured part of the Indebtedness, it being the intent of the parties to provide for a foreclosure and sale of the security for any matured portion of the Indebtedness without exhausting the power of foreclosure and power to sell the Property for any other part of the Indebtedness. If more than one property, lot, or parcel is encumbered by this Deed of Trust, and if this Deed of Trust is foreclosed upon, or judgment is entered upon any obligation secured hereby, or if Trustee exercises its power of sale, execution may be made upon or Trustee may exercise its power of sale against one or more of the properties, lots or parcels, and not upon the others, or upon all of such properties or parcels, either together or separately, and at different times or at the same time, and execution sales or sales by advertisement likewise may be conducted separately or concurrently, in each case at Trustee's election.

     5.5.   Exercise of Power of Sale. Upon the occurrence of an Event of Default and upon written request of Trustee, the Trustee may proceed to sell the Property and any and every part thereof, at public vendue, to the highest bidder, at the customary place in the county in which the Property is located, for cash, first giving the public notice required by law of the time, terms and place of sale, and of the property to be sold; and upon such sale shall execute and deliver a deed of conveyance of the property sold to the purchase or purchasers thereof, and any statement or recital of fact in such deed in relation to the nonpayment of the Indebtedness hereby secured, existence of the indebtedness so secured, notice of advertisement, sale, receipt of money, and the happening of any of the events whereby any successor trustee became successor as herein provided, shall be prima facie evidence of the truth of such statement or recital; and the Trustee shall receive the proceeds of such sale, and the Trustee covenants faithfully to

I2664P1849

perform the trust herein created. Until a sale shall be held hereunder, the Trustee hereby lets the Property to Trustor upon the following terms and conditions: Trustor, and any and all persons claiming or possessing the Property, and any part thereof, by, through, or under it shall pay rent therefor at the rate of one cent per month, payable monthly upon demand and shall surrender peaceable possession of the Property and any and every part thereof to the Trustee, any of its successors and assignees, or purchasers thereof, without notice or demand therefor, upon the occurrence of any Event of Default.

5.6.    Successor Trustee.  Trustee or its successors or assigns, at any time it or they may desire, may, in their discretion, by an instrument in writing executed and recorded according to law, appoint a substitute trustee to act in place of the Trustee named herein; and it or they are further authorized so to appoint other substitute trustees successively, during the life of this Deed of Trust, and such trustees each shall succeed to the rights and powers of the Trustee named herein.  Trustor does hereby ratify and confirm any and all acts which Trustee, or its successors, lawfully may do by virtue hereof.  Trustee may resign by written instrument delivered to Trustee and shall have not liability for any actions occurring thereafter.

5.7.    Trustee's Rights and Obligations.  Trustee's rights and obligations are limited as follows:

5.7.1. Trustee may rely on any certificate or other writing delivered to Trustee from Trustee as to Events of Default;

5.7.2. Trustee is under no duty to determine the identity of the current Note holder, nor must the Note be presented to Trustee prior to Trustee's undertaking foreclosure;

5.7.3. Trustee may recover from Trustor all of its costs, fees, and expenses, including but not limited to employing legal counsel, whenever Trustee reasonably believes ne needs counsel to determine his responsibilities under this Deed of Trust or in defending all actions against him arising out of his role as Trustee, and all of Trustee's costs and expenses under this Deed of Trust are secured hereby, having priority over other obligations secured by this Deed of Trust; and

5.7.4. In the event Trustee is unable to determine the proper distribution of any foreclosure sale proceeds, he may file a declaratory judgment or interpleader action to determine the property distribution, and all costs and expenses of such action, including attorneys' fees, shall be paid out of the foreclosure sale proceeds.

5.8.    Recovery of Expenses by Lender.  All expenditures and expenses incurred by Lender and added to the Indebtedness hereunder, shall be immediately due and payable by Trustor, with interest thereon at the Default Rate specified in Prime Note and shall be secured by this Deed of Trust. Lender shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Trustor under the terms of this Deed of Trust, as they become due, without regard to whether or not the principal Indebtedness or any other sums evidenced by the Notes and secured by this Deed of Trust shall be due, and without

prejudice to the right of Lender thereafter to bring an action of mortgage foreclosure, or any other action, for any default by Trustor existing at the time the earlier action was commenced.

5.9. <u>Lender's Right of Possession in Case of Default</u>. In any case in which under the provisions of this Deed of Trust, Lender has a right to institute foreclosure proceedings, whether before or after the Indebtedness secured hereby is declared to be immediately due, and whether before or after the institution of legal proceedings to foreclose this Deed of Trust and before or after sale thereunder, Lender in its own discretion, without obligation so to do and without notice to or demand upon Trustor, except as specifically provided herein, and without releasing Trustor from any obligation, may make any payment or do any act in such manner and to such extent as Lender may deem necessary to protect the security hereof, including demanding the surrender of possession of the Property in which case Trustor shall so surrender to Lender and Lender shall be entitled to take actual possession of the Property or any part thereof personally or by its agent or attorneys. In connection therewith Lender shall have and is hereby given the right but not the obligation (without limiting the foregoing general powers) (i) with or without force, or without proceeding by process of law, enter upon and take and maintain possession of all or any part of the Property together with all documents, books, records, papers and accounts of Trustor relating thereto and may exclude Trustor and Trustor's agents or servants wholly therefrom (and if Lender permits Trustor to remain in possession of any part of the Property, Trustor will pay monthly in advance to Lender, on Lender's entry into possession or to any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in the actual possession of Trustor, and upon default of any such payment Trustor will vacate and surrender possession of such part of the Property to Lender or to such receiver and, in default thereof Trustor may be evicted by summary proceeding or otherwise) and may, as attorney-in-fact or agent of Trustor or in its own name as Lender and under the powers herein granted, hold, operate, manage and control the Property and conduct the business, if any, thereof either personally or by its agents and with full power to use such measures legal or equitable as, in its discretion or in the discretion of its successors or assigns, may be deemed proper or necessary to enforce the payment or security of the Rents, value, marketability or rentability of the Property; (ii) to cancel or terminate any Lease for any cause or on any grounds which would entitle Trustor to cancel such Lease; (iii) to extend or modify any then existing Leases and to make new Leases, which extensions, modifications and new leases may provide for terms to expire beyond the maturity date of the Indebtedness secured hereby and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Property are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any discharge or satisfaction of the mortgage Indebtedness, satisfaction of any foreclosure decree or deficiency judgment, or issuance of any bill of sale or deed to any purchaser; (iv) to make all necessary or proper repairs, decorations, renewals, replacements, alterations, additions, betterments and improvements to the Property as may seem judicious to Lender; (v) to insure and reinsure the Property and all risks incidental to Lender's possession, operation and management thereof; (vi) to receive all of such Rents hereby granting full power and authority to exercise each and every

Independence, Missouri                    36

of the rights, privileges and powers herein granted at any and all times hereafter, without notice to Trustor; (vii) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Lender; (viii) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which, in the judgment of Lender, may affect or appears to affect the security of this Deed of Trust or be prior or superior hereto; (ix) in exercising such powers, to pay necessary expenses, including employment of counsel or other necessary or desirable consultants; (x) to elect to disaffirm any lease or sublease, which is then subordinate to the lien hereof. Notwithstanding the foregoing rights and powers of Lender, Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any lease of the Property or any part thereof. Trustor shall and does hereby agree to indemnify and hold Lender harmless of and from any and all liability, loss or damage which it may or might incur under such leases or under or by reason of the assignment thereof and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in such leases, except for the acts of Lender as a tenant under such leases. Should Lender incur any such liability, loss or damage, under such leases or under or by reason of the assignment thereof, or in the defense of any claims or demands with respect thereto, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby, and Trustor shall reimburse Lender therefor immediately upon demand.

5.10. Application of Income Received by Lender. Lender, in the exercise of the rights and powers hereinabove conferred upon it by this Article Five or otherwise herein, shall have full power to use and apply the Rents of the Property to the payment of or on account of the following, in such order as Lender may determine:

5.10.1. to costs of collection and sale of the Property or portions thereof;

5.10.2. to the payment of the operating expenses of the Property, including cost of management and leasing thereof (which shall include reasonable compensation to Lender and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

5.10.3. to the payments of Impositions now due or which may hereafter become due on the Property, and of all rents due or which may hereafter become due under any underlying lease;

5.10.4. to the payment of all repairs, decorating, renewals, replacements, alternations, additions, betterment, and improvements of the Property, including the cost from time to time of installing or replacing the Personal Property therein, and of placing the Property in such condition as will, in the judgment of Lender, make it readily rentable; and/or

5.10.5.       to the payment of any Indebtedness secured hereby or any deficiency which may result from any foreclosure sale upon the Property, or any part thereof.

5.11.  Appointment of Receiver.  Upon, or at any time after the occurrence of an Event of Default hereunder, whether or not Lender has instituted an action in foreclosure, Lender may petition any court of competent jurisdiction for the appointment of a receiver, and Trustor hereby irrevocably and unconditionally waives any right to contest the appointment of such receiver and consents thereto.  Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver and without regard to the then value of the Property, and Lender hereunder or any agent of Lender may be appointed as such receiver.  Such receiver shall have power: (i) to collect the Rents of the Property during the pendency of any foreclosure suit as well as during any other times when Trustor, except for the intervention of such receiver, would be entitled to collect such Rents; (ii) to extend or modify any then existing Leases and to make new Leases, which extensions, modifications and new Leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the maturity date of the Indebtedness secured hereby and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such Leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Property are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any discharge or satisfaction of the mortgage Indebtedness, satisfaction of any foreclosure decree or deficiency judgment, or issuance of any bill of sale or deed to any purchaser; (iii) to exercise all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of such period; and (iv) as may otherwise be granted by the court or under applicable law.  The receiver shall, upon receipt of authority from the court and upon application to the court from Lender, apply the net income in his hands in payment in whole or in part to: (1) the Indebtedness secured hereby, or by any judgment or decree foreclosing this Deed of Trust, or any Imposition or other lien which may be or become superior to the lien hereof or of such judgment or decree, provided such application is made prior to foreclosure sale; (2) and all rents due or which may become due under the superior lease if this is a leasehold mortgage; and (3) the deficiency judgment, in case of a foreclosure sale and deficiency judgment.  Lender shall be liable to account only for Rents actually received by Lender received pursuant to this Section and not for Rents held by the receiver.  Notwithstanding the appointment of any receiver or other custodian, Lender shall be entitled to the continued possession and control of any cash, deposits or instruments at the time held by or payable or deliverable under the terms of this Deed of Trust to Lender.

5.12.  Remedies Not Exclusive.  Trustor hereby agrees that:

5.12.1.       Lender shall be entitled to enforce payment and performance of any Indebtedness or obligation secured hereby and to exercise all rights, remedies and powers under this Deed of Trust or any other Loan Documents and the warrants contained therein or any other agreement or any laws now or hereafter in force, notwithstanding that some or all of such

Independence, Missouri

Indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or other powers herein contained shall prejudice or in any manner affect Lender's right to realize upon or enforce this Deed of Trust and any other security now or hereafter held by Lender in such order and manner as it may in its absolute discretion determine.

       5.12.2.    No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Documents to Lender or to which it may be otherwise entitled may be exercised separately, successively, concurrently or independently, from time to time and as often as it may be deemed expedient by Lender, and Lender may pursue inconsistent remedies.

       5.12.3.    The failure by Lender or any holder of the Notes to exercise any right, power or remedy herein or at law or in equity shall in no event be construed as a waiver or release thereof or of any Event of Default. Any failure by Lender to insist upon strict performance by Trustor of any of the terms and provisions of this Deed of Trust or of the other Loan Documents shall not be deemed to be a waiver of any of the terms or provisions of the Deed of Trust or other Loan Documents, and Lender shall have the right thereafter to insist upon strict performance by Trustor of any and all of them.

       5.12.4.    Neither Trustor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Deed of Trust shall be relieved of such obligation by reason of the failure of Lender to comply with any request of Trustor or of any other person so obligated to take action to foreclose on this Deed of Trust or otherwise enforce any provisions of the Deed of Trust or the other Loan Documents, or by reason of the release, regardless of consideration, of all or any part of the security held for the Indebtedness secured by this Deed of Trust, or by reason of any agreement or stipulation between any subsequent owner of the Property or any interest therein and Lender extending the time of payment or modifying the terms of the Deed of Trust or other Loan Documents without first having obtained the consent of Trustor or such other person; and in the latter event Trustor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Lender.

       5.12.5.    Lender may release, regardless of consideration, any part of the security held for the Indebtedness secured by this Deed of Trust without, as to the remainder of the security, in any way impairing or affecting the lien of this Deed of Trust or its priority over any subordinate lien.

5.13.  Counsel Fees.  If Lender becomes a party to any suit or proceeding affecting the Property or title thereto, the lien created by this Deed of Trust or Lender's interest therein, or if Lender or any successor or assignee of Lender has engaged counsel to prepare or review any of the Loan Documents, in preparation for an assignment by Lender of the Loan Documents or any of them, the costs, expenses and reasonable counsel fees of Lender and such assignee shall be paid by Trustor to Lender or such assignee, as appropriate, on demand, with interest at the then effective Contract Interest Rate set forth in the Prime Note, and until paid they shall be deemed to be part of the Indebtedness evidenced by the Notes and secured by this Deed of Trust.

5.14.  Exculpation.  This Deed of Trust is subject to the exculpation provisions and exceptions therefrom contained in the Prime Note, which provisions are incorporated herein by this reference.

## ARTICLE SIX
## ENVIRONMENTAL REPRESENTATIONS, COVENANTS AND WARRANTIES

6.    Environmental Representations, Covenants and Warranties.

6.1.  General.  The following additional provisions with regard to the environmental status of the Property are a part of this Deed of Trust.

6.2.  Representations and Warranties.  Trustor represents and warrants to Lender that:

6.2.1.  To the best knowledge of Trustor after reasonable inquiry the Property is free of any Contaminants and neither Trustor nor, to the best knowledge of Trustor, any other person (including but not limited to prior owners, occupiers and tenants) has ever caused or permitted any Contaminant to be manufactured, placed, generated, stored, held, transferred, processed, produced, transported or disposed on, at, through or under the Property and neither the Property nor any property adjacent thereto has even been used (whether by Trustor or, to the best knowledge of Trustor, by any other person) as a location for the manufacture, placement, storage, location or disposal of any Contaminants.

6.2.2.  Neither Trustor nor, to the best knowledge of Trustor any other person (including but not limited to prior owners, occupiers and tenants), has ever caused or permitted any Contaminant to be manufactured, placed, stored, held, transferred, processed, produced, transported, located or disposed of on, under or at any other real property owned, occupied (under leases or licenses or otherwise) or operated by Trustor.

6.2.3.  No lien has or is currently attached to any revenues or any real or personal property owned by Trustor (including but not limited to the Property) under any Environmental Law or as a result of any governmental entity expending monies as a result of any alleged Release or the existence of any Contaminant on or about the Property or a breach of an

I2664P1855

Environmental Law. Furthermore, Trustor has no notice, written or oral, that any claim for such lien has or is about to be made.

6.2.4. Trustor has caused no condition to exist (by its action or inaction, intentional or unintentional) and to the best of Trustor's knowledge, after diligent inquiry, no condition does exist, as to any parcel of property contiguous with the Property or located within five hundred (500) yards of the perimeter of the Property which would require disclosure under this Section if such property were the Property.

6.2.5. Neither Trustor nor, to the best knowledge of Trustor any other person (including but not limited to prior owners, occupants and tenants) has received any notice, written or oral, or advice of any contemplated, proposed or pending Enforcement Action with respect to the Property.

6.2.6. Trustor has conducted or caused to be conducted by a consultant acceptable to Lender a site assessment of the Property to confirm the absence of Contaminants on the Property or violations of Environmental Laws with respect to the Property. Trustor's consultant has found no evidence of the presence of such Contaminants or the violation of such Environmental Laws. A copy of said consultant's report has been delivered to Lender and Lender has been authorized by Trustor and its consultant to rely upon said report in agreeing to make the Loan secured by this Deed of Trust.

6.3.    Trustor's Covenants.    Trustor will establish and maintain, at Trustor's sole expense, a system to assure and monitor continued compliance with Environmental Laws and the exclusion of Contaminants from the Property, by any and all owners or operators of the Property, which system shall include annual reviews of such compliance by employees or agents of Trustor who are familiar with the requirements of the Environmental Laws and, at the request of Lender no more than once each year, a detailed review of such compliance of the environmental condition of the Property ("Environmental Compliance Report") in scope satisfactory to Lender by an environmental consulting firm approved in advance by Lender; provided, however, that if any Environmental Compliance Report indicates a violation of any Environmental Law, such system shall include at the request of Lender a detailed review ("Environmental Remediation Report") of the status of such violation by such environmental consultant. Trustor shall furnish each Environmental Compliance Report or Environmental Remediation Report to the Lender within sixty (60) days after Lender so requests, together with such additional information as Lender may reasonably request. So long as the Circuit City Lease remains in effect and the Tenant is not in default beyond any applicable notice and grace periods thereunder, the foregoing requirement shall be waived.

6.3.1. Trustor will keep the Property and any other real property owned, occupied or operated by Trustor free of any Contaminants and in compliance with applicable Environmental Laws.

6.3.2. Trustor will not use the Property or any other real property owned, operated or occupied by Trustor for the manufacture, placement, generation, handling, storage, location or disposal of any Contaminants nor permit the Property or any other property owned, occupied or operated by it to be used in such a manner except in accordance with applicable law.

6.3.3. Trustor shall not cause or permit to exist as a result of any intentional or unintentional action or omission on its part or for which it is responsible under applicable Environmental Laws a Release of any Contaminant unless and to the extent such Release is made pursuant to,and in compliance with the conditions of a permit issued by all appropriate federal and/or state governmental authorities.

6.3.4. Trustor shall at its own expense procure, maintain in effect, and comply with all conditions of any and all permits, licenses, and other governmental and regulatory approvals required under any Environmental Law required for Trustor's use and occupancy of the Property.

6.3.5. In the event of any Release of a Contaminant onto the Property or onto any other property owned, occupied or leased by Trustor or for which Trustor is otherwise responsible under applicable Environmental Laws, it shall promptly remediate such Release in accordance with the provisions of all applicable Loan Documents (if any) and all Environmental Laws of appropriate governmental entities and authorities having jurisdiction.

6.3.6. Trustor shall provide notice in writing to Lender of any of the following within three (3) business days:

6.3.6.1.    A Release of any Contaminant onto the Property or onto any other real property owned, occupied or operated by Trustor for which Release it is or may be responsible or with respect to which such responsibility is asserted by a governmental agency or, in any private cause of action, by a party to such suit under applicable law; or

6.3.6.2.    Any notice of any pending or threatened Enforcement Action with respect to Trustor or the Property including copies of complaints, orders, citations or notices from any person or entity including, without limitation, the U.S. Environmental Protection Agency and applicable state agencies.

6.3.7. In the event Trustor leases or enters into any operating agreement pursuant to which any third party may operate any business or control any portion of the Property, Trustor shall cause to be included in any such lease or operating agreement, representations, warranties and covenants substantially similar to the representations, warranties and covenants contained in this Article. The foregoing requirement shall not apply to the Circuit City Lease.

6.4.    Lender's Rights. Not in limitation but in addition to any other rights Lender may have under this Deed of Trust and/or any other Loan Documents, Lender shall have the following additional rights and remedies with respect to the environmental status of the Property:

6.4.1. Lender shall have the right but not the obligation, and without limitation of Lender's other rights under this Deed of Trust, to enter onto the Property to conduct or to take such actions as it deems necessary or advisable to cleanup, remediate, encapsulate, remove, resolve or minimize the impact of, or otherwise deal with, any Contaminants or Enforcement Actions or breaches of Environmental Laws pertaining to the Property or any part thereof which could result in an order, suit or other action against Trustor and/or which, in the sole opinion of Lender, could jeopardize its security under this Deed of Trust. All reasonable costs and expenses incurred by Lender in the exercise of any such rights shall be secured by this Deed of Trust and shall be payable by Trustor upon demand or charged to Trustor's loan balance at the discretion of Lender. The foregoing provision shall not apply for so long as the Circuit City Lease remains in effect and the Tenant is not in default beyond any applicable grace or notice period thereunder.

6.4.2. Lender shall have the right, in its sole discretion, to require Trustor to periodically (but not more frequently than annually unless an Enforcement Action is then outstanding in which case this limitation will not apply) perform (at Trustor's expense) a Phase I Environmental Assessment and, if deemed necessary by Lender, a Phase II Environmental Assessment, each of which must be satisfactory to Lender, of the Property. Said assessment must be by an environmental consultant satisfactory to Lender. Should Trustor fail to perform said Environmental Assessment within thirty (30) days of Lender's written request, Lender shall have the right but not the obligation to retain an environmental consultant to perform said Environmental Assessment. All costs and expenses incurred by Lender in the exercise of such rights shall be secured by this Deed of Trust and shall be payable by Trustor upon demand or charged to Trustor's loan balance at the discretion of Lender. The foregoing provision shall not apply for so long as the Circuit City Lease remains in effect and the Tenant is not in default beyond any applicable grace or notice period thereunder.

6.4.3. Lender's rights under this Article shall be exercised by it in its sole discretion and for the benefit of Lender only. Lender shall have no obligation to enter onto the Property or to take any other action which it is authorized by this Article to take for the protection of its security. Any action which it may elect to take hereunder shall be for its own benefit and all third party beneficiary rights are hereby expressly negated. Lender shall have no responsibility for the conduct of Trustor's environmental practices on the Property or in any other location. Any action or inaction by Lender hereunder shall not be deemed to constitute the taking of control over Trustor's waste disposal, waste management, or other environmental practices with respect to the Property or any other property.

6.5.   Definitions. As used in this Article, the following terms shall have the meanings ascribed to them below.

6.5.1. "Contaminant" means any pollutants, hazardous or toxic substances or wastes or contaminated materials including but not limited to oil and oil products, asbestos, asbestos containing materials (whether as a waste or incorporated into any structures), urea formaldehyde foam insulation (whether as a waste or incorporated into any structures),

Independence, Missouri                                      43

12664P1858

transformers or other equipment which contain dielectric fluid containing polychlorinated biphenyls, flammables, explosives, radioactive materials, laboratory wastes, biohazardous wastes, chemicals, elements, compounds or any other materials and substances (including materials, substances or things which are composed of or which have as constituents any of the foregoing substances), which are or may be subject to regulation under, or the Release of which or exposure to which is prohibited, limited or regulated under any Environmental Law.

6.5.2. "Enforcement Action" means any action, proceeding or investigation (administrative or judicial, civil or criminal) instituted or threatened by U.S. Environmental Protection Agency, or any other federal, state or local governmental agency related to any alleged or actual violation of any Environmental Law with respect to the Property and/or any business conducted thereon, and/or the Trustor, including, but not limited to, actions seeking Remediation, the Imposition or enforcement of liability pursuant to any Environmental Law and compliance with any Environmental Law.  Enforcement Action shall also include any similar actual or threatened action by any private party pursuant to any Environmental Law.

6.5.3. "Environmental Law(s)" means any and all present and future: federal, state, and local laws, statutes, ordinances, rules, and regulations, relating to protection of human health and the environment from Contaminants including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, as amended, (CERCLA), 42 USC §9601 et seq.; the Resource Conservation and Recovery Act, as amended, (RCRA), 42 USC §6901 et seq.; the Clean Air Act, as amended, 42 USC §7401 et seq.; the Federal Water Pollution Control Act, as amended (including but not limited to as amended by the Clean Water Act), 33 USC §1251 et seq.; the Toxics Substances Control Act, as amended (TSCA), 15 USC §2601 et seq.; the Emergency Planning and Community Right-to-Know Act (also known as SARA Title III), as amended, (EPCRA), 42 USC §11001 et seq.; the Safe Drinking Water Act, as amended, 42 USC §300(f) et seq.; the Federal Insecticide, Fungicide and Rodenticide Act, as amended (FIFRA), 7 USC §136 et seq.; the Occupational Safety and Health Act, as amended, (OSHA), 29 USC §651 et seq.; the Endangered Species Act, as amended, 16 USC §1531 et seq.; the National Environmental Policy Act, as amended, (NEPA), 42 USC §4321 et seq.; the Rivers and Harbors Act of 1899, as amended, 33 USC §401 et seq.; state and local laws, rules and regulations similar to or addressing similar matters as the foregoing federal laws; laws, rules and regulations governing underground or above-ground storage tanks; laws, rules and regulations imposing liens for response costs or costs of other Remediation, whether or not those liens have a higher priority than existing liens; laws, rules and regulations conditioning transfer of property upon a form of negative declaration or other approval of a governmental authority of the environmental condition of a property; laws, rules and regulations requiring the disclosure of conditions relating to Contaminants in connection with transfer of title to or interest in property law; laws, rules and regulations requiring notifying of any government entity with regard to a Release of any Contaminant; conditions or requirements imposed in connection with any permits; government orders and demands and judicial orders pursuant to any of the foregoing; laws, rules and regulations relating to the Release, use, treatment, storage, disposal, transportation, transfer, generation, processing, production, refining, control, management, or handling of Contaminants; any and all other laws, rules, regulations, guidance, guidelines and

I2664P1859

common law of any governmental entity relating to the protection of human health or the environment from Contaminants. Any terms mentioned in the preceding subsection which are defined in any Environmental Law shall have the meanings ascribed to such terms in said laws unless otherwise defined herein; any of such laws are amended so as to broaden the meaning of any term defined therein, such broader meaning shall apply subsequent to the effective date of such amendment.

6.5.4. "Release" means any spilling, leaking, migrating, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment of any Contaminant.

6.5.5. "Phase I Environmental Assessment" means a review by an environmental engineering or consulting firm reasonably acceptable to Lender of all data and other information available regarding the status of the compliance of the Property with applicable Environmental Laws including (i) a review of the history of the Property, (ii) physical examination of the Property (not including physical testing within the scope of a Phase II Environmental Assessment), (iii) examination of the condition and use of adjoining real property (including identifying the location of private and public wells and other potential sources of Contaminants), (iv) a statement of the ground water classification of the Property, (v) review of all industrial or transport or storage processes conducted on the Property which involve the handling, processing, use, transport, generation, disposal or treatment of a Contaminant, (vi) contact with and review of the records of the applicable region of the United States Environmental Protection Agency and appropriate State agencies and authorities, (vii) review of local or municipal records, and (viii) conversations with appropriate State and local officials.  the Phase I Environmental Assessment shall be prepared in accordance with or otherwise meet the minimum standards of "ASTM E1527-93 Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process".

6.5.6. "Phase II Environmental Assessment" means a Phase I Environmental Assessment supplemented with subsurface investigation of the Property and surrounding areas and, if applicable, with appropriate biological, physical and chemical testing of water, soil, materials and air samples for suspected Contaminants. Both Phase I and Phase II Environmental Assessments shall include a professional opinion as to the current environmental status of the Property, the compliance of the Property with applicable Environmental Laws, recommendations for any cleanup deemed appropriate, a statement of the scope of the consultant's services and its qualifications (including its professional opinion that the assessment techniques and procedures undertaken by such consultant were appropriate in order to assess the environmental status of the Property in light of the information developed in the course of the assessment) and insurance coverages and assurances (by way of a separate side letter) that the assessment may be relied upon by Lender.

6.5.7. "Property" for purposes of this Article means the Property as described in this Deed of Trust together with any other property which will be included in the description of the Property for purposes of any applicable Environmental Law.

Independence, Missouri                          45

I2664P1860

## ARTICLE SEVEN
## MISCELLANEOUS

7.     Miscellaneous.

7.1.     Governing Law.  This Deed of Trust shall be subject to and governed by the laws of the State.  In the event that any provision or clause of any of the Loan Documents conflicts with applicable laws, such conflicts shall not affect other provisions of such Loan Documents which can be given effect without the conflicting provision, and to this end the provisions of the Loan Documents are declared to be severable.  This instrument cannot be waived, amended, changed, released, discharged or satisfied orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, release, discharge or satisfaction is sought.

7.2.     Trustor Waiver of Rights.  Trustor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisal before sale of any portion of the Property, and (ii) the benefit of all laws that may be hereafter enacted in any way extending the time for the enforcement of the collection of the Notes or the debts evidenced thereby or creating or extending a period of redemption from any sale made in collecting such debts.  To the fullest extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisal, valuation, stay, marshalling of assets, extension or redemption, and Trustor, for itself and its successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of the secured Indebtedness and marshalling in the event of foreclosure of the liens hereby created. Trustor hereby waives and releases all errors, defects and imperfections in any proceeding instituted by Lender under the Notes or this Deed of Trust or the other Loan Documents, or any of them, and unless specifically required herein, all notices of Trustor's default or of Lender's election to exercise, or Lender's actual exercise of any option under the Notes or this Deed of Trust or the other Loan Documents.  If any law referred to in this Section and now in force of which Trustor, or its successors and assigns or other person may take advantage despite this Section, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section.  Trustor expressly waives and relinquishes any and all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State pertaining to the rights and remedies of sureties.  Further, to the extent allowed under applicable law, Trustor waives demand, presentment for payment, protest, notice of protest, notice of dishonor, diligence in collection, notice of nonpayment with respect to the Indebtedness and any and all notices of a like nature.

7.3.     Limitation of Interest.  It is the intent of Trustor and Lender in the execution of this Deed of Trust and the Notes and all other instruments securing the Notes to contract in strict compliance with the usury laws of the state governing the loan evidenced by the Notes.  In

Independence, Missouri                                    46

furtherance thereof, Lender, and Trustor stipulate and agree that none of the terms and provisions contained in the Loan Documents shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of the state governing the loan evidenced by the Notes. In the event it is determined that any holder of the Notes has collected monies which are deemed to constitute interest and are deemed to increase the effective interest rate on the Notes to a rate in excess of that permitted to be charged by the laws of the state governing the loan evidenced by the Notes, all such sums shall be applied to reduce the outstanding principal amount of the Notes to zero. Any excess thereafter shall be refunded to Trustor. All sums paid or agreed to be paid to the holder hereof for the use, forbearance or detention of the Indebtedness of Trustor evidenced hereby, outstanding from time to time shall, to the extent permitted by applicable law, and only to the extent necessary to preclude exceeding the limit of validity prescribed by law, be amortized, pro-rated, allocated and spread from the date of disbursement of the proceeds of the Notes until payment in full of the Loan so that the actual rate of interest on account of such Indebtedness is uniform throughout the balance of the term hereof. The terms and provisions of this paragraph shall control every other provision of all agreements between Lender and Trustor.

   7.4.   <u>Giving of Notice.</u>

   7.4.1. <u>Notices</u>. All notices, demands, consents, approvals, requests or other communications provided for or required to be given or furnished by either party hereunder shall be in writing and shall be (i) hand-delivered, effective upon receipt, or (ii) sent by United States Express Mail or by private overnight courier, effective upon receipt, or (iii) served by certified mail, postage prepaid, return receipt requested, deemed effective on the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, whichever is the earlier in time; addressed to the party intended to receive the same at the address set forth below:

          <u>Trustor:</u>

          Circuit Investors #5 - Montgomeryville Limited Partnership
          c/o Cardinal Capital Partners, Inc.
          8411 Preston Road, 8th Floor
          Dallas, Texas 75225
          Attention:  Gil Besing
          Telecopier No. (214) 696-9845
          Confirmation No. (214) 696-3600

              with a copy to:

I2664P1862

Goldfarb & Fleece
345 Park Avenue
New York, New York 10154
Attention: Steven Shore
Telecopier No. (212) 751-3738
Confirmation No. (212) 421-2828

Lender:

The Paul Revere Life Insurance Company
c/o The Paul Revere Investment Management Corporation
18 Chestnut Street
Worcester, MA 01608
Attention: Karen Jessey, Esq.
Telecopier No. (508) 793-5854
Confirmation No. (508) 751-7617

with a copy to:

Pepe & Hazard
Goodwin Square
Hartford, Connecticut 06103
Attention: Chairperson, Real Estate/Finance Department
Telecopier No. (203) 522-2796
Confirmation No. (203) 522-5175

7.4.2. Unless otherwise specified to the contrary in this Deed of Trust, notice shall be deemed to have been given on the date the notice is deposited in the United States mail.

7.5.    Statements by Trustor.  Trustor, within ten (10) days after being given written notice of a request by Lender, shall furnish (a) a written statement, duly acknowledged, setting forth the unpaid principal of and interest on the Notes, and whether or not any offsets or defenses exist against such principal and interest or other sums, and (b) a lease ratification and estoppel agreement as to any Lease affecting the Property, in form and substance satisfactory to Lender, which shall be executed by Trustor and by each lessee (if any), stating, if such be the case, that the Lease is in full force and effect, that it has not been amended or modified, and that there is no default thereunder, that the lessee has accepted and is in possession and occupancy of the leased premises, paying the full rental called for therein on a current basis, that no rental payments have been made more than one month in advance, that there are no offsets, claims or defenses to the payment of the rent or enforcement of the terms of the Lease, that all work required to be performed by the lessor under the Lease has been completed, and stating the date of commencement and termination of the original lease term and the terms of any renewals or extensions of the lease term.  If the Circuit City Lease is then in effect, an estoppel

I2664P1863

certificate from the Tenant in substantially the form delivered in connection with the origination of the Loan shall be deemed satisfactory to Lender.

7.6.    Additional Security.  If at any time Lender holds additional security for any of the obligations secured hereby, Lender may enforce the sale thereof or otherwise realize upon such additional security, at its option, either before or concurrently with or after enforcing its remedies hereunder or under any of the Loan Documents.

7.7.    Successors and Assigns.  This Deed of Trust shall apply to, inure to the benefit of and bind all parties hereto, their successors and assigns, subject to the limitations of Sections 2.1 and 2.16 hereof.

7.8.    Inspection.  Upon prior notice (except in the case of an emergency, in which case no such notice shall be necessary), Lender, its agents, representatives and workmen, are authorized to enter at any reasonable time upon or in any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Documents.

7.9.    Lender's Powers.  Without affecting the liability of any other person liable for the payment or performance of any obligation secured hereby, and without affecting the lien or charge of this Deed of Trust upon any portion of the Property not then or theretofore released as security for the full amount and extent of all unpaid and unperformed obligations, Lender may, from time to time and without notice (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation or grant other indulgences, (iii) release or reconvey, or cause to be released or reconveyed at any time at Lender's option, any parcel, portion or interest in all or any part of the Property, (iv) take or release any other or additional security for any obligation herein mentioned, (v) make compositions or other arrangements with debtors in relation thereto, or (vi) advance additional funds to protect the security hereof and pay or discharge the obligations of Trustor hereunder or under the Loan Documents, and all amounts so advanced shall be reimbursed by Trustor upon demand by Lender together with interest thereon at the Default Rate, and all such advances, with interest thereon as aforesaid shall be secured by this Deed of Trust and the other Loan Documents.

7.10.    Actions by Lender to Preserve Property; Lender's Own Protection.  Should Trustor fail to make any payment or to do any act as and in the manner provided in any of the Loan Documents, Lender in its sole discretion, without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation, may upon the expiration of applicable notice and cure periods hereunder (except in the case of emergency, in which case no such delay shall be necessary) make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof.  In connection therewith, without limiting its general powers, Lender shall have and is hereby given the right, but not the obligation, (i) to generally perform or observe the obligations of Trustor hereunder; (ii) to enter upon and take possession of the Property; (iii) to make additions, alterations, repairs and improvements to the Property which it may consider necessary or proper to keep the Property

I2664P1864

in good condition and repair; (iv) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Lender; (v) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of Lender may affect or appears to affect the security of this Deed of Trust or be prior or superior hereto; and (vi) in exercising such powers, to pay all necessary expenses, including the fees and expenses of counsel and/or other necessary or desirable consultants including but not limited to surveyors, appraisers and environmental consultants. The amount so incurred or paid by Lender, together with interest thereon at the Default Rate, from the date incurred until paid by Trustor shall be added to the Indebtedness and secured by this Deed of Trust to the extent permitted by law. Immediately upon demand therefor by Lender, Trustor shall pay or reimburse all costs and expenses incurred by Lender in connection with the exercise by Lender of the foregoing rights. Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to Trustor or any person in possession holding under Trustor. No person not a party to this Deed of Trust shall have or enjoy any rights hereunder and all third-party beneficiary rights are hereby expressly negated.

7.11. Expenses.

7.11.1.    Trustor will pay when due and payable or reimburse Lender on demand for all costs and expenses of every character which have been incurred or which may hereafter be reasonably incurred by Lender including but not limited to appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees, title policy fees, escrow fees, attorneys' fees, court costs and fees of inspecting architect(s) and engineer(s) in connection with: (i) the preparation and execution of Loan Documents; (ii) the funding of the Loan; (iii) in the event an Event of Default occurs, preparation for enforcement of this Deed of Trust or any of the other Loan Documents, whether or not suit or other action is actually commenced or undertaken; (iv) enforcement of this Deed of Trust or any of the other Loan Documents; (v) court or administrative proceedings of any kind to which Lender may be a party, either as plaintiff or defendant, by reason of the Notes, this Deed of Trust or any other Loan Document; (vi) preparation for and actions taken in connection with Lender's taking possession of the Property; (vii) negotiations with Trustor, or any of its agents in connection with the existence or cure of any Event of Default; (viii) any proposed refinancing by Trustor of the Indebtedness secured hereby; (ix) the transfer of the Property in lieu of foreclosure; and (x) the approval by Lender of actions taken or proposed to be taken by Trustor, or other person or entity which approval is required by the terms of this Deed of Trust or any other Loan Document.

7.11.2.    If Lender is made a party to any action arising out of or related to this Deed of Trust or this Loan for any reason whatsoever (including, but not limited to, personal injury) other than arising out of Lender's sole and direct intentional misconduct, Trustor shall and does hereby agree to indemnify, hold harmless and defend Lender and any of its officers or employees from and against and reimburse Lender for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses which may be imposed

Independence, Missouri                    50

I2664P1865

upon, asserted against or incurred or paid by Lender by reason of, on account of, or in connection with, any of the foregoing.

7.12. <u>Suits to Protect the Property</u>.  Lender shall have the power and authority to institute and maintain any suits and proceedings as Lender may deem advisable (i) to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed of Trust, (ii) to foreclose this Deed of Trust, (iii) to preserve and protect its interest in the Property, and (iv) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Lender's interest.

7.13. <u>Proofs of Claim</u>.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial case of proceedings affecting Trustor or any guarantor, its creditors or its property, Lender to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceedings for the entire Indebtedness at the date of the institution of such case or proceedings, and for any additional amounts which may become due and payable by Trustor after such date.

7.14. <u>No Waiver of One Default To Affect Another</u>.  No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies resulting therefrom.  If Lender (i) grants forbearance or an extension of time for the payment of any of the Indebtedness; (ii) takes other or additional security for the payment thereof; (iii) waives or does not exercise any right granted in the Notes, this Deed of Trust or any other Loan Document; (iv) releases any part of the Property from the lien of this Deed of Trust or any other instrument securing the Notes; (v) consents to the filing of any map, plat or replat of the Land; (vi) consents to the granting of any easement on the Land; or (vii) makes or consents to any agreement changing the terms of this Deed of Trust or subordinating this Deed of Trust, no such act or omission shall release, discharge, modify, change or affect the original liability under this Deed of Trust or otherwise of Trustor or any maker, co-signer, endorser, surety or guarantor.  No such act or omission shall preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument or instruments executed by Lender, shall this Deed of Trust be altered thereby.

7.15. <u>Remedies Cumulative</u>.  No right, power or remedy conferred upon or reserved to Lender by the Notes, this Deed of Trust or any other Loan Document is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Notes or any other Loan Document, or now or hereafter existing at law, in equity or by statute.

Independence, Missouri                                         51

I2664P1866

7.16.  Notices.  Trustor shall notify Lender promptly upon Trustor's becoming aware of the occurrence of any of the following:

7.16.1.  A default or threatened or potential default or event which with the passage of time or the giving of notice, or both, would become a default by Trustor under the terms of this Deed of Trust or any other Loan Documents with respect to which default Trustor has knowledge;

7.16.2.  Receipt of notice of Condemnation of the Property or any part thereof;

7.16.3.  Receipt of notice or correspondence, written or otherwise, from any governmental authority relating to the structure, use or occupancy of the Property including any such notice or correspondence from the applicable environmental agencies;

7.16.4.  Receipt of any notice from any tenant of all or any portion of the Property asserting that Trustor is in breach of an obligation to such tenant;

7.16.5.  Substantial change in the use of the Property;

7.16.6.  Commencement of any litigation affecting the Property;

7.16.7.  Receipt of any notice of default under any agreement and contract relating to the construction of any contemplated improvements at the Property or the operation of Trustor's business at the Property;

7.16.8.  Any contract or agreement with respect to any sale, Proposed Lease, partition or other transfer of all or any part of the Property; or

7.16.9.  any fact or representation contained in any certificate, notice, opinion (written or oral), or other document furnished to Lender which ceases to be true and correct, which notification shall set forth the untrue or incorrect statement or misrepresentation, and the action being taken by Trustor in connection therewith.

7.17.  Captions.  The captions or headings at the beginning of each Section hereof are for the convenience of the parties, are not a part of this Deed of Trust and do not affect the meaning of the provisions of this Deed of Trust.

7.18.  Exhibits.  All exhibits attached to this Deed of Trust are incorporated into the Deed of Trust and made a part of the Deed of Trust by this reference.

7.19.  Invalidity of Certain Provisions.  If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Property, the unsecured or partially secured portion of the debt shall be paid completely

prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or not fully secured by the lien of this Deed of Trust.    In the event that any of the covenants, agreements, terms or provisions contained in the Notes, or in this Deed of Trust or in any other Loan Document shall be deemed invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Notes or in any other Loan Document shall be in no way affected, prejudiced or disturbed thereby.

7.20.    Subrogation.  To the extent that proceeds of the loans evidenced by the Notes are used to pay any outstanding lien, charge or prior encumbrance against the Property, and such proceeds are advanced by Lender, Lender shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

7.21.    No Merger.  If both the lessor's and lessee's estates under any lease or any portion thereof which constitutes a part of the Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger, and, in such event, Lender shall continue to have and enjoy all of the rights and privileges of Lender as purchaser at any such foreclosure sale shall so elect.  No act by or on behalf of Lender or any such purchaser shall constitute a termination of any lease or sublease unless Lender or such purchaser shall give written notice thereof to such tenant or subtenant.

7.22.    Amendments.  This Deed of Trust may be amended only by written agreement, executed by all of the parties hereto, and no other purported agreement, written or oral, shall be effective to vary the terms hereof.

7.23.    Future Advances.  In the event further advances are made to Trustor by Lender, such advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that such notes are secured hereby.  At no time shall the principal amount of indebtedness secured by this Deed of Trust exceed the original amount of the Notes nor shall the maturity of such further advances secured hereby extend beyond the time of repayment of the Notes.

Independence, Missouri                                    53

I2664P1868

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be duly executed under seal the day and year first above written.

CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED PARTNERSHIP, a Pennsylvania limited partnership

_____   By:   Circuit General Partner #5 - Pennsylvania, Inc., a Pennsylvania corporation, general partner

_____   By: _____
                                       Gil J. Besing
                                  Its PRESIDENT
                                  (Duly Authorized)

The precise address of
Lender is:

The Paul Revere Life Insurance Company
c/o The Paul Revere Investment Management Corporation
18 Chestnut Street
Worcester, MA  01608

I2664P1869

STATE OF TEXAS       )
                        ) ss.

COUNTY OF DALLAS   )

On this 27th day of February, 1995, before me, the undersigned, a Notary Public in and for said state, personally appeared _Gil J. Besing_ who being by me duly sworn did say that he is the _President_ of Circuit General Partner #5-Pennsylvania, Inc., a Pennsylvania corporation as general Partner of Circuit Investors #5-Montgomeryville Limited Partnership, a Pennsylvania limited partnership, and that the within _Deed of Trust_ was signed in behalf of said corporation by authority of its board of directors, and acknowledged said instrument to be the fee act and deed of said corporation and said partnership for the purposes therein stated and that said corporation has no corporate seal.

IN WITNESS THEREOF, I have hereunto set my hand and affixed my official seal, the day and year last above written.



Printed Name: _____
Notary Public in and for said State
Commissioned in _____ County

[SEAL]

My commission expires:

_____

LISA WOOLDRIDGE
Notary Public, State of Texas
My Commission Expires
MAY 23, 1996

-55-

Independence, Missouri

I2664P1870

## EXHIBIT A

Lot 2, INDEPENDENCE CENTER, a subdivision in Independence,
Jackson County, Missouri.

AND ALSO DESCRIBED AS FOLLOW:

ALL OF LOT 2, INDEPENDENCE CENTER, A SUBDIVISION IN INDEPENDENCE,
JACKSON COUNTY, MISSOURI, BEING DESCRIBED USING STATE PLANE
BEARINGS AT KANSAS CITY CONTROL MONUMENT NO. JA-66, AS  FOLLOWS:
BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 2; THENCE S 02
DEGREES 14 MINUTES 30 SECONDS W, ALONG THE EAST LINE OF SAID LOT,
142.05 FEET; THENCE SOUTHWESTERLY, CONTINUING ALONG SAID LINE, ON
A CURVE TO THE RIGHT, HAVING A RADIUS OF 20.00 FEET AND TANGENT
TO THE LAST DESCRIBED COURSE, AN ARC DISTANCE OF 26.73 FEET;
THENCE SOUTHWESTERLY, ALONG THE SOUTHERLY LINE OF SAID LOT, ON A
CURVE TO THE LEFT, HAVING A RADIUS OF 677.00 FEET AND TANGENT TO
THE LAST DESCRIBED CURVE, AN ARC DISTANCE OF 550.29 FEET; THENCE
N 57 DEGREES 45 MINUTES 30 SECONDS W, CONTINUING ALONG SAID LINE,
51.05 FEET; THENCE NORTHERLY, ALONG THE WESTERLY LINE OF SAID
LOT, ON A CURVE TO THE LEFT, HAVING A RADIUS OF 231.00 FEET, AND
AN INITIAL TANGENT BEARING OF N 14 DEGREES 26 MINUTES 45 SECONDS
E, AN ARC DISTANCE OF 49.20 FEET; THENCE N 02 DEGREES 14 MINUTES
30 SECONDS E, CONTINUING ALONG SAID LINE, 319.29 FEET; THENCE
NORTHEASTERLY, CONTINUING ALONG SAID LINE, ON A CURVE TO THE
RIGHT, HAVING A RADIUS OF 95.00 FEET, AND TANGENT TO THE LAST
DESCRIBED COURSE, AN ARC DISTANCE OF 79.48 FEET (PLAT = 80.20
FEET); THENCE S 89 DEGREES 40 MINUTES 03 SECONDS E, ALONG THE
NORTH LINE OF SAID LOT, 219.84 FEET (PLAT = 219.85 FEET); THENCE
N 02 DEGREES 14 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE,
10.00 FEET; THENCE S 87 DEGREES 45 MINUTES 30 SECONDS E,
CONTINUING ALONG SAID LINE, 232.36 FEET TO THE POINT OF
BEGINNING.

CONTAINING 134.714 SQ.FT. OR 3.0926 ACRES.

\circuit\ccp7\legal.mo

EXHIBIT B — 1

I2664P1871

# PROMISSORY NOTE

$3,854,419.00

Independence, Missouri
February 27, 1995

FOR VALUE RECEIVED, the undersigned, **CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP**, a Pennsylvania limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Maker"), promises to pay to the order of **THE PAUL REVERE LIFE INSURANCE COMPANY**, a Massachusetts corporation with a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608-1528 ("Holder"), the principal sum of THREE MILLION EIGHT HUNDRED FIFTY-FOUR THOUSAND FOUR HUNDRED NINETEEN and no/100 ($3,854,419.00) DOLLARS or so much thereof that is currently outstanding (the "Principal Amount"), together with (i) interest at the rate and in the manner hereinafter provided; (ii) all amounts which may become due under the Deed of Trust, Assignment of Leases and Security Agreement (First) dated the date hereof securing this Note (the "Deed of Trust"), which Deed of Trust encumbers that certain real property located at 18701 E. 39th Street, Independence, Missouri (the "Property") or under any other documents securing or further evidencing the indebtedness evidenced by this Note (collectively, the "Loan Documents"); and (iii) any costs and expenses, including reasonable attorneys' and appraisers' fees, incurred in the collection of this Note, or in the foreclosure of the Deed of Trust, or in protecting or sustaining the lien of the Deed of Trust or in any litigation or controversy arising from or connected with this Note or the Deed of Trust. All amounts owing under this Note and interest thereon shall be payable in legal tender of the United States of America.

## 1. INTEREST RATE

1.1    Interest Rate. The Principal Amount hereof, from time to time outstanding, shall bear interest at a rate equal to eight and nine-tenths (8.9%) percent per annum (the "Interest Rate"). Interest on the Principal Amount shall be calculated on the basis of a three hundred sixty (360) day year based on twelve (12) thirty (30) day months.

1.2    Maximum Interest Rate. Notwithstanding any provisions of this Note, it is the understanding and agreement of Maker and Holder that the interest required to be paid by Maker to Holder under this Note shall not exceed the maximum rate of interest permissible to be charged by Holder under applicable laws. Any amount paid in excess of such rate shall be considered to have been a payment in reduction of principal. All sums paid or agreed to be paid to the Holder hereof for the use, forbearance or detention of the indebtedness of the Maker

Independence, Missouri

I2664P1872

evidenced hereby, outstanding from time to time shall, to the extent permitted by applicable law, and only to the extent necessary to preclude exceeding the limit of validity prescribed by law, shall be amortized, pro-rated, allocated and spread from the date of disbursement of the proceeds of this Note until payment in full of the loan evidenced hereby so that the actual rate of interest on account of such indebtedness is uniform throughout the balance of the term hereof. The terms and provisions of this paragraph shall control every other provision of all agreements between Holder and Maker.

## 2. PAYMENTS OF PRINCIPAL AND INTEREST

2.1   Principal and Interest Payments Until Maturity.  A payment consisting of principal and interest in the amount of $33,324.67 (calculated based upon a 22-year self-liquidating amortization schedule) shall be due and payable in arrears, commencing on the first (1st) day of April, 1995 and a like sum of $33,324.67 on the first (1st) day of each and every calendar month thereafter up to and including the first (1st) day of February, 2017.

Holder reserves the right to require that all payments of principal and interest hereunder be made to Holder by wire transfer of immediately available funds.

2.2   Maturity.  The unpaid principal balance hereof, all accrued and unpaid interest and all other obligations due hereunder shall be due and payable on the first (1st) day of March, 2017 (the "Maturity Date").

2.3   Application of Payments.  Payments made under this Note shall be applied in the following order:  first to interest due on payments made by Holder in respect of Maker's obligations under the Deed of Trust; second, to the payments made by Holder in respect of Maker's obligations as may then be due and payable under the Deed of Trust; third, to any late charges to which Maker shall become subject under this Note; fourth, to interest due on this Note; and fifth, to the Principal Amount.

2.4   Business Day.  Whenever any payment hereunder shall be stated to be due on a day other than a "business day" (a day on which banks are open for business in New York, New York), such payment shall be made on the next succeeding business day, unless such extension would cause such payment to be payable in the next following calendar month, in which case such payment shall be made on the business day most immediately preceding such day.

2.5   Prepayment.  Maker shall have the privilege of prepaying the principal balance of this Note as follows:

(a)   Provided no Event of Default (as hereinafter defined) exists under this Note or under the other Loan Documents, the Principal Amount may be prepaid in whole, but not in part, at the election of Maker on any scheduled payment date provided that simultaneously with such prepayment Maker also pays (i) the entire principal amount of all other promissory notes then held by Holder and guaranteed by Maker pursuant to the terms of that certain Agreement

Independence, Missouri                        - 2 -

I2664P1873

of Guaranty of even date from Maker to Holder (the "Guaranty") and (ii) the outstanding Principal Amount of that certain promissory note of even date from Maker to Holder in the original principal amount of $2,356,587.00 provided that at the time of payment Maker still owns the Other Property (as defined in the Deed of Trust). The Principal Amount may be prepaid only if accompanied by a fee (the "Prepayment Fee") in an amount equal to the greater of (i) one (1%) percent of the then Principal Amount or (ii) the Yield Maintenance (hereinafter defined).

(b)      Maker may prepay the Principal Amount in whole, but not in part, on any scheduled payment date on or subsequent to November 1, 2016 and prior to the Maturity Date without payment of a Prepayment Fee.

(c)      Maker shall also pay to Holder, as a condition to any permitted prepayment, all interest due up to and including the date of prepayment and any and all amounts due and owing pursuant to this Note, the Deed of Trust and the other Loan Documents. Permitted prepayments may be made only on monthly installment due dates upon thirty (30) days prior written notice to Holder. Prepayments made by virtue of the application by Holder of condemnation awards or insurance proceeds shall not be accompanied by a Prepayment Fee.

(d)      The Yield Maintenance shall be computed as follows:

(i)      The United States Treasury Note or Bond having a maturity date closest to the Maturity Date will be identified by Holder as of thirty (30) days prior to the date of prepayment upon receipt of Maker's notice of prepayment (utilizing a quotations publication designated by Holder). If, for any reason, a quotation is unavailable for such date, quotations for the next preceding date for which such quotations are available shall be used. In the event Holder identifies more than one Note or Bond having the same maturity date, the Note or Bond having a coupon interest rate closest to the Interest Rate shall be employed. The term "Reinvestment Yield" shall mean the yield to maturity of the security identified in the previous sentence, if purchased on the date the Note or Bond is identified by Holder.

(ii)     The monthly interest that would be earned by reinvesting the principal portion of the amount being prepaid at the interest rate equal to the Reinvestment Yield shall then be calculated. The result is the "Reinvestment Payment".

(iii)    The Reinvestment Payment shall be subtracted from the monthly interest which would be earned if the prepayment were not made and the loan continued to its stated Maturity Date. The result, if

Independence, Missouri                      - 3 -

12664P1874

positive, is the "Monthly Payment Differential". The Monthly Payment Differential shall in no event be less than zero.

(iv) The Monthly Payment Differentials from the prepayment date to the stated Maturity Date shall be discounted to present value at the Reinvestment Yield on a monthly basis. The result is the "Yield Maintenance".

## 3. PRINCIPAL SECURITY

3.1   Security. This Note is secured by the Deed of Trust, the Other Deed of Trust (as defined in the Deed of Trust) and the security set forth in the other Loan Documents.

## 4. DEFAULT; REMEDIES

4.1   Acceleration. Upon the occurrence of an Event of Default (as defined below), Holder may, at its option, declare the entire unpaid Principal Amount, together with accrued interest and all other amounts which are evidenced by this Note and the other Loan Documents to be immediately due and payable, without the necessity for prior demand or notice. Notwithstanding anything to the contrary contained herein, in the event Holder exercises its option to accelerate the indebtedness evidenced by this Note upon an Event of Default, there shall be due and payable, in addition to the Principal Amount, all accrued interest thereon, and all other amounts due under the Loan Documents, a default prepayment fee equal to the sum of (i) two (2%) percent of the then Principal Amount plus (ii) the Yield Maintenance. Such default prepayment fee shall be added to the Principal Amount if not paid upon acceleration of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at a later date during the continuation of such Event of Default or in the event of any subsequent Event of Default.

4.2   Event of Default. For purposes of this Note, the term "Event of Default" shall have the same meaning ascribed to such term in, and shall include any event which would constitute an Event of Default under, the Deed of Trust (regardless of whether or not at such time the Deed of Trust constitutes a valid encumbrance upon the Property) and the Loan Documents.

4.3   Late Charges. If any installment of principal or interest or any installment of taxes or insurance under the Loan Documents shall not be received within five (5) business days of its due date, the Holder may, at its option, charge a "late charge" equal to the lesser of four cents for each dollar so overdue or the maximum permitted by law. In connection therewith, Maker and Holder, by its acceptance of this Note, agree as follows: (1) such late payment will cause Holder to incur administrative costs, collection costs, loss of interest, and other direct and indirect costs in uncertain amounts, (2) it would be impractical or extremely difficult to fix the exact amount of such costs in such event, (3) the late charge is a reasonable estimate of such costs and is fair compensation to Holder for its anticipated losses and additional risks resulting

Independence, Missouri                           - 4 -

I2664P1875

from such late payment, and (4) without limiting its rights to recover such installment and to exercise all other rights under this Note, the Deed of Trust and the other Loan Documents, Holder agrees to accept such late charge in lieu of its right to recover its actual damages resulting from such late payment.

4.4    Default Interest Rate.  In the event the Holder exercises its option to accelerate the maturity of this Note by reason of an Event of Default, or upon maturity of this Note, any amount which is not paid shall thereafter bear interest at the alternative rate (the "Default Rate"), equal to the lesser of (i) four (4%) percent per annum above the Interest Rate or (ii) the maximum rate permitted by law, until the required payment is made.

## 5. MISCELLANEOUS PROVISIONS

5.1    Attorneys' Fees.  Should suit be brought to enforce, interpret or collect any part of this Note, the prevailing party shall be entitled to recover, as an element of the costs of suit and not as damages, reasonable attorneys' fees and other costs of enforcement and collection.

5.2    Jurisdiction.  This Note shall be construed and enforced in accordance with the internal laws of the State in which the Property is located.

5.3    Obligation Unconditional.  No provision of this Note or of any other agreement shall alter, impair or render conditional the payment obligations of Maker, which are absolute and unconditional, to pay the principal and interest on this Note at the place and at the respective times herein prescribed.  Time is of the essence under this Note and the Loan Documents.

5.4    Maker's Waivers.  Maker (and all guarantors, endorsers and other parties now or hereafter becoming liable for the payment of this Note) hereby waives diligence, presentment, protest, demand of payment, notice of protest, dishonor and nonpayment, and waives the legal effect of Holder's failure to give all notices not expressly provided for herein.  Maker expressly agrees that, without in any way affecting the liability of Maker hereunder, the Holder may, without notice to Maker, extend the Maturity Date or the time for payment of any amount due hereunder, accept additional security, release any party liable hereunder, and release any security now or hereafter securing this Note.  Maker further waives, to the full extent permitted by law, the right to plead any and all statutes of limitation as a defense to any demand on this Note, or on any agreement now or hereafter securing this Note.

5.5    Loss or Destruction.  Upon receipt of evidence reasonably satisfactory to Maker of the loss or mutilation of this Note, Maker will execute and deliver, in substitution hereof, a replacement note.

5.6    Severance.  Every provision of this Note is intended to be severable.  In the event any term or provision hereof is declared to be illegal or invalid for any reason by a court of competent jurisdiction, such illegality or invalidity shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.  Holder and

Independence, Missouri                    - 5 -

Maker further agree to replace any such void or unenforceable provision of this Note with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

5.7    <u>Waivers and Delays by Holder to be Strictly Limited</u>. Any waiver, express or implied, of any breach or default hereunder shall not be considered a waiver of any subsequent or different breach or default. No delay or omission on the part of Holder in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right or of any other right of the Holder hereunder. Failure to accelerate the indebtedness evidenced hereby by reason of default in the payment of a monthly installment of principal or interest or the acceptance of a past due installment of same shall not be construed as a novation of this Note or as a waiver of the right of the Holder to thereafter insist upon strict compliance with the terms of this Note without previous notice of such intention being given to Maker.

5.8    <u>Modification</u>. No provision of this Note may be waived, modified or discharged other than by an express writing signed by the party against whom enforcement of such waiver, modification or discharge is sought.

5.9    <u>Exculpatory Provision</u>. By accepting the Deed of Trust and this Note, the Holder agrees that the promise of the Maker contained in this Note to pay the Principal Amount with interest is included herein for the sole purpose of establishing the existence of said indebtedness. The Holder's source of satisfaction of said indebtedness and of any sum of money which is or may be payable under this Note or the Deed of Trust or other Loan Documents shall be limited to the Property, the rents, issues and profits therefrom whether collected or uncollected, the improvements and the rights in condemnation awards or eminent domain awards, and insurance policies and proceeds and any and all other collateral securing the amounts due and owing under the Loan Documents except to the extent set forth below in this Section 5.9. Except to the extent set forth below in this Section 5.9, Holder agrees that it will not seek or be entitled to enforce out of any other assets of the Maker or any party constituting the Maker any judgment for any sum of money which is or may be payable under this Note or the Deed of Trust or other Loan Documents or for the performance of any of the obligations of the Maker under the Deed of Trust or other Loan Documents or any deficiency remaining after foreclosure of the Deed of Trust. The provisions of this Section, however, shall not:

(a)    constitute a waiver, release or impairment of any obligation evidenced or secured by the Loan Documents, as such documents may be subsequently modified or amended;

(b)    limit or impair the right of Holder to name Maker as a party defendant in any action or suit for judicial foreclosure and sale under the Deed of Trust or otherwise arising in connection with the Loan Documents;

(c)    prohibit Holder from pursuing all of its rights and remedies against any guarantor or surety, whether or not such guarantor or surety is a partner of Maker, or affect the validity or enforceability of any guaranty made in connection with the Loan Documents;

I2664P1877

(d)    impair the right of Holder to obtain the appointment of a receiver;

(e)    impair the enforcement of the Assignment of Leases and Rents or any Loan Documents executed in connection herewith;

(f)    impair the right of Holder to obtain all economic incidents associated with the use, occupancy or operation of the Property or any other collateral evidenced by the Loan Documents, inclusive of income, profits and the rents received by Maker after the occurrence of an Event of Default;

(g)    impair the right of Holder to obtain insurance proceeds and condemnation awards due to Holder under the Deed of Trust or any other proceeds derived from the Property, or any other collateral evidenced by the Loan Documents, due to Holder under the Deed of Trust;

(h)    impair the right of Holder after an Event of Default to apply any cash, escrow funds or other collateral which are subject to the security interest of Holder, as well as any funds deposited for payment of taxes, assessments and insurance premiums and the like, to the reduction of the indebtedness hereunder;

(i)    impair the right of Holder to seek any remedy available under the Loan Documents to enforce and realize upon the interest in the Property, the rents, or any other collateral given to Holder as security for repayment of this Note;

(j)    prevent Holder from obtaining injunctive or other equitable relief to secure performance of the obligations of Maker (as distinguished from enforcement against Maker personally to obtain damages or other monetary relief) or to prevent a breach of any of Maker's obligations under the Loan Documents; or

(k)    in any way preclude Holder from enforcing any of its rights or remedies at law or in equity against Maker except as provided in this paragraph.

Further, nothing in this paragraph shall limit the liability of Maker or the personal liability of any general partner of Maker to Holder, or impair the right of Holder to bring suit and seek recovery against any of the foregoing for any of the following:

(i)    fraud or material misrepresentation by Maker or any other person or entity in connection with the Loan Documents;

(ii)    Maker's misappropriation or misapplication of rents, tenant security deposits, rents collected in advance, insurance proceeds, condemnation awards or other proceeds derived from the Property or any other collateral given to secure this Note;

Independence, Missouri                         - 7 -

I2664P1878

   (iii)     Maker's misuse or diversion of any cash or other collateral subject to the security interest of Holder after an Event of Default [e.g., failure to apply cash obtained from the Property to Property-related obligations];

   (iv)     the obligations undertaken by Maker under that certain hazardous waste indemnity letter from Maker to Holder;

   (v)     Maker's failure to maintain the Property or any other collateral evidenced by the Loan Documents or any part thereof in a manner consistent with the Property's current condition, use and market;

   (vi)     Maker's failure to repair or restore the Property or any other collateral evidenced by the Loan Documents in a satisfactory manner after a casualty loss when Holder agreed to make insurance proceeds available for such repair or restoration;

   (vii)     any casualty to the Property or any other collateral evidenced by the Loan Documents for which insurance coverage was not maintained as required under the terms of the Deed of Trust;

   (viii)     Maker's failure to comply with the terms and provisions of the Loan Documents prohibiting the sale or further encumbrance of the Property or any other collateral evidenced by the Loan Documents;

   (ix)     Maker's failure to comply with all federal, state and local laws; and

   (x)     Maker's failure to pay real and personal property, sale, use or other taxes and insurance premiums when due.

Maker, and its general partners do hereby agree to indemnify, defend and hold Holder harmless with respect to any loss, claim, damage or liability arising in connection with any of the foregoing.

5.10   Binding Effect.  This Note shall bind the successors and assigns of Maker and all endorsers hereto and shall inure to the benefit of Holder and its successors and assigns.

5.11   Parties, Definitions.  Whenever in this Note words of any gender appear, they should be deemed to apply equally to any gender. Whenever used in this Note, the plural shall include the singular and the singular shall include the plural as the context may require. In the event Maker consists of more than one person or entity, the obligations of each Maker hereunder

Independence, Missouri              - 8 -

I2664P1879

shall be joint and several. Any capitalized words used in this Note and not herein defined shall have the meanings ascribed to such terms in the Loan Documents.

5.12    Venue. Borrower hereby consents to the exercise of personal jurisdiction over it by any federal or state court in the state where the Property is located and consents to the laying of venue in any jurisdiction or locality in the state where the Property is located. Service shall be effected by any means permitted by the court in which any action is filed, or at Holder's option, by mailing process, postage prepaid, by certified mail, return receipt requested, to Maker at Maker's address set forth on the first page of this Note. Service shall be deemed effective upon receipt. Maker may designate a change of address for purposes of this paragraph by written notice to Holder made in accordance with the notice provisions of the Deed of Trust at least ten (10) days before such change of address is to become effective.

5.13    Maker's Waiver. To the extent permitted by applicable law, Maker hereby waives and releases all errors, defects and imperfections in any proceedings instituted by Holder under the terms of this Note, the Deed of Trust or other Loan Documents, as well as all benefit that might accrue to Maker by virtue of any present or future laws exempting the Property, or any other property, real or personal, pledged or mortgaged as security for the payment of this Note, or any part of the proceeds arising from any sale of any such property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment; and Maker agrees that any real estate that may be levied upon pursuant to a judgment obtained by virtue hereof, or any writ of execution issued thereon, may be sold upon any such writ in whole or in part in any order desired by Holder.

## 6. WAIVER OF JURY TRIAL

6.1    Waiver. Maker hereby expressly waives any and all rights it may have to trial by jury of any claim, demand, action, or cause of action (1) arising under this Note, the Deed of Trust securing same or any other Loan Document executed or delivered in connection herewith, or (2) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect to this Note, the Deed of Trust securing same or any other Loan Document executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and Maker hereby agrees and consents that any such claim, demand, action, or cause of action shall be decided by court trial without a jury, and holder may file an original counterpart or a copy of this section with any court as written evidence of the consent of each of them to the waiver of its right to trial by jury.

Independence, Missouri                                    - 9 -

I2664P1880

**MAKER:**

CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED PARTNERSHIP, a Pennsylvania limited partnership

By: CIRCUIT GENERAL PARTNER #5-PENNSYLVANIA, INC., a Pennsylvania corporation, General Partner

By:_____

Title:_____

STATE OF _____)
                                                        ) ss.
COUNTY OF _____)


     On this ____ day of February, 1995, before me, the undersigned, a Notary Public in and for said state, personally appeared _____·____, who being by me duly sworn did say that he is the _____ of Circuit General Partner #5-Pennsylvania, Inc., a Pennsylvania corporation as general partner of Circuit Investors #5-Montgomeryville Limited Partnership, a Pennsylvania limited partnership, and that the within _____ was signed in behalf of said corporation by authority of its board of directors, and acknowledged said instrument to be the free act and deed of said corporation for the purposes therein stated and that said corporation has no corporate seal.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year last above written.


_____
Printed Name:_____
Notary Public in and for said State
Commissioned in _____ County

[SEAL]

My commission expires:


_____

I\AFZ\27098\6-041.not\022695\LC


Independence, Missouri                         - 10 -

EXHIBIT B - 2

## PROMISSORY NOTE

$2,356,587.00                                                  Fredericksburg, Virginia
                                                                       February 27, 1995

FOR VALUE RECEIVED, the undersigned, **CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED PARTNERSHIP,** a Pennsylvania limited partnership having a principal place of business at c/o Cardinal Capital Partners, Inc., 8411 Preston Road, 8th Floor, Dallas, Texas 75225 ("Maker"), promises to pay to the order of **THE PAUL REVERE LIFE INSURANCE COMPANY,** a Massachusetts corporation with a principal place of business at 18 Chestnut Street, Worcester, Massachusetts 01608-1528 ("Holder"), the principal sum of TWO MILLION THREE HUNDRED FIFTY-SIX THOUSAND FIVE HUNDRED EIGHTY-SEVEN and NO/100 ($2,356,587.00) DOLLARS or so much thereof that is currently outstanding (the "Principal Amount"), together with (i) interest at the rate and in the manner hereinafter provided; (ii) all amounts which may become due under the Deed of Trust, Assignment of Leases and Security Agreement (First) dated the date hereof securing this Note (the "Deed of Trust"), which Deed of Trust encumbers that certain real property located at 3061 Plank Road, Fredericksburg, Virginia (the "Property") or under any other documents securing or further evidencing the indebtedness evidenced by this Note (collectively, the "Loan Documents"); and (iii) any costs and expenses, including reasonable attorneys' and appraisers' fees, incurred in the collection of this Note, or in the foreclosure of the Deed of Trust, or in protecting or sustaining the lien of the Deed of Trust or in any litigation or controversy arising from or connected with this Note or the Deed of Trust. All amounts owing under this Note and interest thereon shall be payable in legal tender of the United States of America.

## 1. INTEREST RATE

    1.1   <u>Interest Rate</u>. The Principal Amount hereof, from time to time outstanding, shall bear interest at a rate equal to eight and nine-tenths (8.9%) percent per annum (the "Interest Rate"). Interest on the Principal Amount shall be calculated on the basis of a three hundred sixty (360) day year based on twelve (12) thirty (30) day months.

    1.2   <u>Maximum Interest Rate</u>. Notwithstanding any provisions of this Note, it is the understanding and agreement of Maker and Holder that the interest required to be paid by Maker to Holder under this Note shall not exceed the maximum rate of interest permissible to be charged by Holder under applicable laws. Any amount paid in excess of such rate shall be considered to have been a payment in reduction of principal. All sums paid or agreed to be paid to the Holder hereof for the use, forbearance or detention of the indebtedness of the Maker

I2664P1882

evidenced hereby, outstanding from time to time shall, to the extent permitted by applicable law, and only to the extent necessary to preclude exceeding the limit of validity prescribed by law, shall be amortized, pro-rated, allocated and spread from the date of disbursement of the proceeds of this Note until payment in full of the loan evidenced hereby so that the actual rate of interest on account of such indebtedness is uniform throughout the balance of the term hereof. The terms and provisions of this paragraph shall control every other provision of all agreements between Holder and Maker.

## 2. PAYMENTS OF PRINCIPAL AND INTEREST

2.1    Principal and Interest Payments Until Maturity. A payment consisting of principal and interest in the amount of $20,374.67 (calculated based upon a 22-year self-liquidating amortization schedule) shall be due and payable in arrears, commencing on the first (1st) day of April, 1995 and a like sum of $20,374.67 on the first (1st) day of each and every calendar month thereafter up to and including the first (1st) day of February, 2017.

Holder reserves the right to require that all payments of principal and interest hereunder be made to Holder by wire transfer of immediately available funds.

2.2    Maturity. The unpaid principal balance hereof, all accrued and unpaid interest and all other obligations due hereunder shall be due and payable on the first (1st) day of March, 2017 (the "Maturity Date").

2.3    Application of Payments. Payments made under this Note shall be applied in the following order: first to interest due on payments made by Holder in respect of Maker's obligations under the Deed of Trust; second, to the payments made by Holder in respect of Maker's obligations as may then be due and payable under the Deed of Trust; third, to any late charges to which Maker shall become subject under this Note; fourth, to interest due on this Note; and fifth, to the Principal Amount.

2.4    Business Day. Whenever any payment hereunder shall be stated to be due on a day other than a "business day" (a day on which banks are open for business in New York, New York), such payment shall be made on the next succeeding business day, unless such extension would cause such payment to be payable in the next following calendar month, in which case such payment shall be made on the business day most immediately preceding such day.

2.5    Prepayment. Maker shall have the privilege of prepaying the principal balance of this Note as follows:

(a)    Provided no Event of Default (as hereinafter defined) exists under this Note or under the other Loan Documents, the Principal Amount may be prepaid in whole, but not in part, at the election of Maker on any scheduled payment date provided that simultaneously with such prepayment Maker also pays (i) the entire principal amount of all other promissory notes then held by Holder and guaranteed by Maker pursuant to the terms of that certain Agreement

I2664P1883

of Guaranty of even date from Maker to Holder (the "Guaranty") and (ii) the outstanding Principal Amount of that certain promissory note of even date from Maker to Holder in the original principal amount of $3,854,419.00 provided that at the time of payment Maker still owns the Other Property (as defined in the Deed of Trust). The Principal Amount may be prepaid only if accompanied by a fee (the "Prepayment Fee") in an amount equal to the greater of (i) one (1%) percent of the then Principal Amount or (ii) the Yield Maintenance (hereinafter defined).

(b)    Maker may prepay the Principal Amount in whole, but not in part, on any scheduled payment date on or subsequent to November 1, 2016 and prior to the Maturity Date without payment of a Prepayment Fee.

(c)    Maker shall also pay to Holder, as a condition to any permitted prepayment, all interest due up to and including the date of prepayment and any and all amounts due and owing pursuant to this Note, the Deed of Trust and the other Loan Documents. Permitted prepayments may be made only on monthly installment due dates upon thirty (30) days prior written notice to Holder. Prepayments made by virtue of the application by Holder of condemnation awards or insurance proceeds shall not be accompanied by a Prepayment Fee.

(d)    The Yield Maintenance shall be computed as follows:

(i)    The United States Treasury Note or Bond having a maturity date closest to the Maturity Date will be identified by Holder as of thirty (30) days prior to the date of prepayment upon receipt of Maker's notice of prepayment (utilizing a quotations publication designated by Holder). If, for any reason, a quotation is unavailable for such date, quotations for the next preceding date for which such quotations are available shall be used. In the event Holder identifies more than one Note or Bond having the same maturity date, the Note or Bond having a coupon interest rate closest to the Interest Rate shall be employed. The term "Reinvestment Yield" shall mean the yield to maturity of the security identified in the previous sentence, if purchased on the date the Note or Bond is identified by Holder.

(ii)    The monthly interest that would be earned by reinvesting the principal portion of the amount being prepaid at the interest rate equal to the Reinvestment Yield shall then be calculated. The result is the "Reinvestment Payment".

(iii)    The Reinvestment Payment shall be subtracted from the monthly interest which would be earned if the prepayment were not made and the loan continued to its stated Maturity Date. The result, if

**I2664P1884**

positive, is the "Monthly Payment Differential". The Monthly Payment Differential shall in no event be less than zero.

(iv)    The Monthly Payment Differentials from the prepayment date to the stated Maturity Date shall be discounted to present value at the Reinvestment Yield on a monthly basis. The result is the "Yield Maintenance".

## 3.  PRINCIPAL SECURITY

3.1    <u>Security</u>. This Note is secured by the Deed of Trust, the Other Deed of Trust (as defined in the Deed of Trust) and the security set forth in the other Loan Documents.

## 4.  DEFAULT; REMEDIES

4.1    <u>Acceleration</u>. Upon the occurrence of an Event of Default (as defined below), Holder may, at its option, declare the entire unpaid Principal Amount, together with accrued interest and all other amounts which are evidenced by this Note and the other Loan Documents to be immediately due and payable, without the necessity for prior demand or notice. Notwithstanding anything to the contrary contained herein, in the event Holder exercises its option to accelerate the indebtedness evidenced by this Note upon an Event of Default, there shall be due and payable, in addition to the Principal Amount, all accrued interest thereon, and all other amounts due under the Loan Documents, a default prepayment fee equal to the sum of (i) two (2%) percent of the then Principal Amount plus (ii) the Yield Maintenance. Such default prepayment fee shall be added to the Principal Amount if not paid upon acceleration of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at a later date during the continuation of such Event of Default or in the event of any subsequent Event of Default.

4.2    <u>Event of Default</u>. For purposes of this Note, the term "Event of Default" shall have the same meaning ascribed to such term in, and shall include any event which would constitute an Event of Default under, the Deed of Trust (regardless of whether or not at such time the Deed of Trust constitutes a valid encumbrance upon the Property) and the Loan Documents.

4.3    <u>Late Charges</u>. If any installment of principal or interest or any installment of taxes or insurance under the Loan Documents shall not be received within seven (7) days of its due date, the Holder may, at its option, charge a "late charge" equal to the lesser of four cents for each dollar so overdue or the maximum permitted by law. In connection therewith, Maker and Holder, by its acceptance of this Note, agree as follows: (1) such late payment will cause Holder to incur administrative costs, collection costs, loss of interest, and other direct and indirect costs in uncertain amounts, (2) it would be impractical or extremely difficult to fix the exact amount of such costs in such event, (3) the late charge is a reasonable estimate of such costs and is fair compensation to Holder for its anticipated losses and additional risks resulting

Fredericksburg, Virginia    - 4 -

I2664P1885

from such late payment, and (4) without limiting its rights to recover such installment and to exercise all other rights under this Note, the Deed of Trust and the other Loan Documents, Holder agrees to accept such late charge in lieu of its right to recover its actual damages resulting from such late payment.

4.4    Default Interest Rate.  In the event the Holder exercises its option to accelerate the maturity of this Note by reason of an Event of Default, or upon maturity of this Note, any amount which is not paid shall thereafter bear interest at the alternative rate (the "Default Rate"), equal to the lesser of (i) four (4%) percent per annum above the Interest Rate or (ii) the maximum rate permitted by law, until the required payment is made.

## 5. MISCELLANEOUS PROVISIONS

5.1    Attorneys' Fees.  Should suit be brought to enforce, interpret or collect any part of this Note, the prevailing party shall be entitled to recover, as an element of the costs of suit and not as damages, reasonable attorneys' fees and other costs of enforcement and collection.

5.2    Jurisdiction.  This Note shall be construed and enforced in accordance with the internal laws of the State in which the Property is located.

5.3    Obligation Unconditional.  No provision of this Note or of any other agreement shall alter, impair or render conditional the payment obligations of Maker, which are absolute and unconditional, to pay the principal and interest on this Note at the place and at the respective times herein prescribed.  Time is of the essence under this Note and the Loan Documents.

5.4    Maker's Waivers.  Maker (and all guarantors, endorsers and other parties now or hereafter becoming liable for the payment of this Note) hereby waives diligence, presentment, protest, demand of payment, notice of protest, dishonor and nonpayment, and waives the legal effect of Holder's failure to give all notices not expressly provided for herein.  Maker expressly agrees that, without in any way affecting the liability of Maker hereunder, the Holder may, without notice to Maker, extend the Maturity Date or the time for payment of any amount due hereunder, accept additional security, release any party liable hereunder, and release any security now or hereafter securing this Note.  Maker further waives, to the full extent permitted by law, the right to plead any and all statutes of limitation as a defense to any demand on this Note, or on any agreement now or hereafter securing this Note.

5.5    Loss or Destruction.  Upon receipt of evidence reasonably satisfactory to Maker of the loss or mutilation of this Note, Maker will execute and deliver, in substitution hereof, a replacement note.

5.6    Severance.  Every provision of this Note is intended to be severable.  In the event any term or provision hereof is declared to be illegal or invalid for any reason by a court of competent jurisdiction, such illegality or invalidity shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.  Holder and

I2664P1886

Maker further agree to replace any such void or unenforceable provision of this Note with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision.

5.7    <u>Waivers and Delays by Holder to be Strictly Limited</u>.  Any waiver, express or implied, of any breach or default hereunder shall not be considered a waiver of any subsequent or different breach or default.  No delay or omission on the part of Holder in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right or of any other right of the Holder hereunder.  Failure to accelerate the indebtedness evidenced hereby by reason of default in the payment of a monthly installment of principal or interest or the acceptance of a past due installment of same shall not be construed as a novation of this Note or as a waiver of the right of the Holder to thereafter insist upon strict compliance with the terms of this Note without previous notice of such intention being given to Maker.

5.8    <u>Modification</u>.  No provision of this Note may be waived, modified or discharged other than by an express writing signed by the party against whom enforcement of such waiver, modification or discharge is sought.

5.9    <u>Exculpatory Provision</u>.  By accepting the Deed of Trust and this Note, the Holder agrees that the promise of the Maker contained in this Note to pay the Principal Amount with interest is included herein for the sole purpose of establishing the existence of said indebtedness. The Holder's source of satisfaction of said indebtedness and of any sum of money which is or may be payable under this Note or the Deed of Trust or other Loan Documents shall be limited to the Property, the rents, issues and profits therefrom whether collected or uncollected, the improvements and the rights in condemnation awards or eminent domain awards, and insurance policies and proceeds and any and all other collateral securing the amounts due and owing under the Loan Documents except to the extent set forth below in this Section 5.9.  Except to the extent set forth below in this Section 5.9, Holder agrees that it will not seek or be entitled to enforce out of any other assets of the Maker or any party constituting the Maker any judgment for any sum of money which is or may be payable under this Note or the Deed of Trust or other Loan Documents or for the performance of any of the obligations of the Maker under the Deed of Trust or other Loan Documents or any deficiency remaining after foreclosure of the Deed of Trust. The provisions of this Section, however, shall not:

(a)    constitute a waiver, release or impairment of any obligation evidenced or secured by the Loan Documents, as such documents may be subsequently modified or amended;

(b)    limit or impair the right of Holder to name Maker as a party defendant in any action or suit for judicial foreclosure and sale under the Deed of Trust or otherwise arising in connection with the Loan Documents;

(c)    prohibit Holder from pursuing all of its rights and remedies against any guarantor or surety, whether or not such guarantor or surety is a partner of Maker, or affect the validity or enforceability of any guaranty made in connection with the Loan Documents;

I2664P1887

(d)     impair the right of Holder to obtain the appointment of a receiver;

(e)     impair the enforcement of the Assignment of Leases and Rents or any Loan Documents executed in connection herewith;

(f)     impair the right of Holder to obtain all economic incidents associated with the use, occupancy or operation of the Property or any other collateral evidenced by the Loan Documents, inclusive of income, profits and the rents received by Maker after the occurrence of an Event of Default;

(g)     impair the right of Holder to obtain insurance proceeds and condemnation awards due to Holder under the Deed of Trust or any other proceeds derived from the Property, or any other collateral evidenced by the Loan Documents, due to Holder under the Deed of Trust;

(h)     impair the right of Holder after an Event of Default to apply any cash, escrow funds or other collateral which are subject to the security interest of Holder, as well as any funds deposited for payment of taxes, assessments and insurance premiums and the like, to the reduction of the indebtedness hereunder;

(i)     impair the right of Holder to seek any remedy available under the Loan Documents to enforce and realize upon the interest in the Property, the rents, or any other collateral given to Holder as security for repayment of this Note;

(j)     prevent Holder from obtaining injunctive or other equitable relief to secure performance of the obligations of Maker (as distinguished from enforcement against Maker personally to obtain damages or other monetary relief) or to prevent a breach of any of Maker's obligations under the Loan Documents; or

(k)     in any way preclude Holder from enforcing any of its rights or remedies at law or in equity against Maker except as provided in this paragraph.

Further, nothing in this paragraph shall limit the liability of Maker or the personal liability of any general partner of Maker to Holder, or impair the right of Holder to bring suit and seek recovery against any of the foregoing for any of the following:

(i)     fraud or material misrepresentation by Maker or any other person or entity in connection with the Loan Documents;

(ii)    Maker's misappropriation or misapplication of rents, tenant security deposits, rents collected in advance, insurance proceeds, condemnation awards or other proceeds derived from the Property or any other collateral given to secure this Note;

Fredericksburg, Virginia                          - 7 -

I2664P1888

(iii)   Maker's misuse or diversion of any cash or other collateral subject to the security interest of Holder after an Event of Default [e.g., failure to apply cash obtained from the Property to Property-related obligations];

(iv)   the obligations undertaken by Maker under that certain hazardous waste indemnity letter from Maker to Holder;

(v)   Maker's failure to maintain the Property or any other collateral evidenced by the Loan Documents or any part thereof in a manner consistent with the Property's current condition, use and market;

(vi)   Maker's failure to repair or restore the Property or any other collateral evidenced by the Loan Documents in a satisfactory manner after a casualty loss when Holder agreed to make insurance proceeds available for such repair or restoration;

(vii)   any casualty to the Property or any other collateral evidenced by the Loan Documents for which insurance coverage was not maintained as required under the terms of the Deed of Trust;

(viii)   Maker's failure to comply with the terms and provisions of the Loan Documents prohibiting the sale or further encumbrance of the Property or any other collateral evidenced by the Loan Documents;

(ix)   Maker's failure to comply with all federal, state and local laws; and

(x)   Maker's failure to pay real and personal property, sale, use or other taxes and insurance premiums when due.

Maker, and its general partners do hereby agree to indemnify, defend and hold Holder harmless with respect to any loss, claim, damage or liability arising in connection with any of the foregoing.

5.10   Binding Effect.  This Note shall bind the successors and assigns of Maker and all endorsers hereto and shall inure to the benefit of Holder and its successors and assigns.

5.11   Parties, Definitions.  Whenever in this Note words of any gender appear, they should be deemed to apply equally to any gender.  Whenever used in this Note, the plural shall include the singular and the singular shall include the plural as the context may require.  In the event Maker consists of more than one person or entity, the obligations of each Maker hereunder

Fredericksburg, Virginia                        - 8 -

I2664P1889

shall be joint and several. Any capitalized words used in this Note and not herein defined shall have the meanings ascribed to such terms in the Loan Documents.

5.12    Venue. Borrower hereby consents to the exercise of personal jurisdiction over it by any federal or state court in the state where the Property is located and consents to the laying of venue in any jurisdiction or locality in the state where the Property is located. Service shall be effected by any means permitted by the court in which any action is filed, or at Holder's option, by mailing process, postage prepaid, by certified mail, return receipt requested, to Maker at Maker's address set forth on the first page of this Note. Service shall be deemed effective upon receipt. Maker may designate a change of address for purposes of this paragraph by written notice to Holder made in accordance with the notice provisions of the Deed of Trust at least ten (10) days before such change of address is to become effective.

5.13    Maker's Waiver. To the extent permitted by applicable law, Maker hereby waives and releases all errors, defects and imperfections in any proceedings instituted by Holder under the terms of this Note, or of the Deed of Trust or other Loan Documents, as well as all benefit that might accrue to Maker by virtue of any present or future laws exempting the Property, or any other property, real or personal, pledged or mortgaged as security for the payment of this Note, or any part of the proceeds arising from any sale of any such property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment; and Maker agrees that any real estate that may be levied upon pursuant to a judgment obtained by virtue hereof, or any writ of execution issued thereon, may be sold upon any such writ in whole or in part in any order desired by Holder.

## 6. WAIVER OF JURY TRIAL

6.1    Waiver. Maker hereby expressly waives any and all rights it may have to trial by jury of any claim, demand, action, or cause of action (1) arising under this Note, the Deed of Trust securing same or any other Loan Document executed or delivered in connection herewith, or (2) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect to this Note, the Deed of Trust securing same or any other Loan Document executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and Maker hereby agrees and consents that any such claim, demand, action, or cause of action shall be decided by court trial without a jury, and holder may file an original counterpart or a copy of this section with any court as written evidence of the consent of each of them to the waiver of its right to trial by jury.

**I2664P1890**

MAKER:

CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED
PARTNERSHIP, a Pennsylvania limited partnership

By:   CIRCUIT GENERAL PARTNER #5-PENNSYLVANIA,
INC., a Pennsylvania corporation, General Partner

By:_____

Title:_____

STATE OF _____)
                                      )   ss.
COUNTY OF _____)

       I hereby certify that the foregoing instrument was acknowledged before me this
___ day of February, 1995 by _____, _____ of Circuit
General Partner #5-Pennsylvania, Inc., a Pennsylvania corporation as general partner of Circuit
Investors #5-Montgomeryville Limited Partnership, a Pennsylvania limited partnership and that
he executed said instrument in such capacity on behalf of said partnership.

 

_____

NOTARY PUBLIC

(Seal, if any)

MY COMMISSION EXPIRES:_____

I\afx\27098\6-043.not\022695\tmo

I2664P1891

EXHIBIT C

PERMITTED EXCEPTIONS

1.  The lien of general city, state and county taxes for the year 1995, due
    November 1, 1995.  (NONE NOW DUE AND PAYABLE)

2.  Terms and provisions of the Operating Agreement dated October 26, 1973,
    between Homart Development Co., Sears Roebuck and Co., Adcor Realty
    Corporation and R. H. Macy and Co., relative to the integrated use,
    development and improvement of their various parcels of land as a
    shopping center, filed October 26, 1973, as Document No. I-167210, in
    Book I-478, Page 278, including nonexclusive easements for construction,
    use of common areas and mall, utilities, repairs and maintenance, and
    encroachments, created and granted as appurtenances to various parcels
    defined   therein   as   amended   by the First Amendment of Operating
    Agreement, executed in two counterparts, one counterpart dated October
    23, 1974, executed by Homart Development Co., a Delaware Corporation,
    filed October 29, 1974, as Document No. I-557, Page
    1214; the other counterpart dated October 23, 1974, executed by and
    between Homart Development Co., Sears Roebuck and Co., and Adcor Realty
    Corporation, filed October 29, 1974, as Document No. I-197334, in Book
    I-557, Page 1219; and as further amended by Second Amendment to
    Operating Agreement dated December 18, 1974, filed December 30, 1974, as
    Document no. I-201074, in Book I-568, Page 578:  and as further amended
    by Third Amendment to Operating Agreement dated as of June 23, 1981,
    filed September 30, 1981, as Document No. I-468509, in Book I-1103, Page
    1944; and as further amended by Amended and Restated Fourth Amendment to
    Operating Agreement dated April 5, 1986, filed September 21, 1990, as
    Document No. I-1001157, in Book I-2060, at Page 1532 and as further
    amended by Fifth Amendment to Operating Agreement dated June 6, 1994,
    filed as Document No. I-1281032, in Book I-2570, Page 1529.

I2664P1892

3.  Terms, provisions, restrictions, easements and charges contained in
    instrument designated "Reciprocal Agreement" dated June 6, 1994, by and
    between LaSalle Street Fund Incorporated and Circuit City Stores, Inc.,
    filed on June 9, 1994, under Document No. I-1281033, in Book I-2570, at
    Page 1538.

    NOTE:        The Right of First Offer provided for in Section 20 of said
                 instrument is not applicable to this insured transaction,
                 pursuant to Section 20d.-1- and 20d.-2- of said instrument.

    SUBNOTE:     The Company insures the insured against loss or damage
                 sustained by the insured by reason of a judgment or decree
                 which constitutes a final determination and orders the
                 reversion or forfeiture of title as a result of a violation of
                 restrictions contained in Nos. 2 and 3 herein.

4.  Lack of direct access from the land to 39th Street, such right of access
    having been condemned in Suit No. 657485, as described in paragraph
    13.17 of the Commissioners' Report made therein March 16, 1964, recorded
    in Book I-89, Page 489, Document No. I-31083, wherein the court in said
    Suit condemned "...all abutters rights of direct access ... from Station
    18+00 to Station 23+63 on 39th Street and defendant's abutting land in
    the East 1/4 of the Southwest 1/4 of Section 20 and in the North 1/2 of
    the Northeast 1/4 of Northwest 1/4 of Section 29, all in T49N, R31W..."
    and said abutter's rights of direct access to 39th Street between
    Stations 22+81 to Station 24+34.1 on the centerline of 39th Street
    having been conveyed to the State of Missouri, acting by and through the
    State Highway Commission of Missouri, by the deed filed in Book I-597,
    at Page 1210, as Document No. I-211880.

    NOTE:        For your information and not as an exception to title, we
                 point out that by the quitclaim deed filed June 9, 1975, in
                 Book I-599, at Page 1444, as Document No. I-212775, the State
                 of Missouri acting by and through the Stat Highway Commission
                 of Missouri, reconveyed to Homart Development Company that
                 portion of abutter's rights to direct access which lies
                 between Stations 21+22 and 22+81.  Both of said stations lie
                 North of lot 7, INDEPENDENCE CENTER, but both stations are
                 West of lot 2, INDEPENDENCE CENTER, and do not lie adjacent to
                 said lot 2.

5.  Easement granted to Missouri Water Company, by the instrument filed as
    Document No. I-93562, in Book I-279, Page 1904, over a strip 25 feet
    wide along the Northerly boundaries of lot 2 and 6, adjacent to the
    South line of 39th Street.

I2664P1893

6.  A sanitary sewer easement, 15 feet in width, as delineated on the diagram of the recorded plat of Independence Center.

7.  Twenty five foot wide water line easement as shown on the diagram of the recorded plat of Independence Center.

8.  Grade easement and construction easement adjoining 39th Street, filed as Document No. I-141084, in Book I-409, at Page 176.

9.  The permanent easement granted to the City of Independence by the instrument filed in Book I-600, at Page 1873, as Document No. I-213226, affecting an area adjacent to 39th Street for construction and maintenance of a traffic signal and appurtenances.

10. The following matters and/or encroachments disclosed by ALTA/ACSM Land Title Survey dated February 15, 1995, prepared by C.E.K. & Associates d/b/a R. L. Buford & Associates, Job No. J-95005, to-wit:

    a.  Existence of billboard near the Northwest corner of the subject premises.

    b.  Easement, if any, relative to a "10" Private Fire Water Line" along the Easterly boundary line of the premises.

    c.  Encroachment of the 1-story concrete block building over the easements shown at Nos. 3 and 6 herein.

I2664P1894

## Exhibit D

## SCHEDULE OF INDIVIDUAL PROPERTIES

| LOCATION | ACRES | BUILDING IMPROVEMENTS |
|---|---|---|
| 3061 Plank Rd. Fredericksburg, VA | 1.676 | 1 Free-standing retail building |

i\afz\27098\6-070.mtg\022695\ljg

11330925

CHICAGO TITLE INSURANCE COMPANY
ATTN: DEAN A. HUTCHISON
P. O. BOX 26370
KANSAS CITY, MISSOURI 64196

# Exhibit C



*1999I 0035196*

JACKSON COUNTY DEPARTMENT OF RECORDS
308 WEST KANSAS
INDEPENDENCE, MO  64050

**RECORDER OF DEEDS DOCUMENT IDENTIFICATION & CERTIFICATION SHEET**

TYPE OF          PARTIAL PRINCIPALS IDENTIFIED FROM
INSTRUMENT       DOCUMENT FOR DOCUMENT TRACKING  PURPOSES

**ASDT      GERMAN AMERICAN CAPITAL CORP        GMAC COMMERCIAL MTG SECURITIES
INC**

BRIEF PROPERTY
DESCRIPTION:    **LOT 2 INDEPENDENCE CENTER**

> **NOTE:** Document information on this certification sheet is furnished as a convenience only, and in the case of any discrepancy between same and the attached instrument, the attached instrument governs. The Recorder's official Grantor/Grantee indices are created from the information contained in the actual instrument attached hereto.

STATE OF MISSOURI    )
                     )  SS.
COUNTY OF JACKSON )

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of **5** pages (this page inclusive), was filed for record in my office on the **30** day of **April**, **1999**, at **11:20:36** and is truly recorded as the document number shown at the top and/or bottom of this page.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.



Fees:
| | |
|---|---|
| MO HOUSING TRUST FUND 001-2473 | $3.00 |
| HOMELESS 043-250-2195 | $3.00 |
| RECORDING FEE | $17.00 |
| USER FEE | $4.00 |

*Mary H. Murphy*

Director of Records
Jackson County, MO

**A. Garmon**
Recording Deputy

Recording Fee:    **$27.00**
(Paid at time of Recording)

Return to:

STEWART TITLE INC
1220 WASHINGTON STREET
SUITE #100
KANSAS CITY, MO  64105

Document Number / Book & Page:
**1999I 0035196 (1 - 5)**

**PLEASE DO NOT REMOVE THIS
PAGE FROM THE DOCUMENT**

Stewart Title  98050454
1220 Washington  Ste. 100
Kansas City, MO 64105
(816) 472-7841

04/30/1999

RCG#:131.1- MTG Y
LaSalle #: 172760 /172760 PREVERE
Issuer/Pool:  1055/2 GMAC97C1

# GERMAN AMERICAN CAPITAL CORPORATION, A MARYLAND CORPORATION
(Assignor)
and
## LaSalle National Bank, as trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series, 1997-C1
(Assignee)

## ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (FIRST)

DATED:                  _____
PROPERTY LOCATION:      _____
COUNTY & STATE:         Jackson-I, MO
NEW YORK SECTION:
      BLOCK:
      LOT:
PIN # (If Required):

PREPARED BY AND RECORD AND RETURN TO:
S. Richardson, RCG, Inc.
505 San Marin Drive, #110A
Novato, California 94945
415-898-7200
Attn: GMAC97C1 LASALLE 1055/2 PREVERE

## ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (FIRST)

For Value Received, **GERMAN AMERICAN CAPITAL CORPORATION, A MARYLAND CORPORATION**, the undersigned holder of a(n) DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (FIRST) **(herein "Assignor")** whose address is 31 West 52nd Street New York New York 10019, does hereby grant, sell, assign, transfer and convey, without recourse unto **LaSalle National Bank, as trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series, 1997-C1 (herein Assignee")** whose address is 135 S. LaSalle Street, 16th Floor, Attn. Mtg Custody Chicago Illinois 60674,  the mortgage loan documents identified below, hereto (the "Asset"), together with the promissory note(s), related thereto together with all amendments, supplements and modifications thereto ("collectively, the "Loan Documents and Collateral"), recorded in the real estate records of Jackson-I County/jurisdiction, in the Commonwealth or State of MO, described as follows:

DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (FIRST)

| | |
|---|---|
| Borrower Name(s): | CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP, A PENNSYLVANIA LIMITED PARTNERSHIP |
| Original Lender: | THE PAUL REVERE LIFE INSURANCE COMPANY, A MASSACHUSETTS CORPORATION |
| Trustee (if DOT): | LARRY D. IRICK |
| Date of Document: | 2/27/95 |
| Date of Recording: | 3/06/95 |
| Book/Volume: | I2664  Page No.:  1811 |
| Instr/Ref: | I1330925 ✓ |
| Other #: | |
| Township/Borough: | |

See attached Exhibit 'A' for legal description, herein incorporated.

Subject to the right and equity of redemption, if any there be of said mortgagor and their heirs and assigns in the same.

In the event the property securing this loan is in the state of New York, this Assignment is not subject to the requirements of Section 275 or Section 255 of the Real Property Law because it is an assignment within the secondary mortgage market.  The Assignee is not acting as a nominee of the mortgagor and the Mortgage continues to secure a bona fide obligation.

RCG#: 131.1-MTG Y
LaSalle #: 172760/ 172760 PREVERE
Issuer/Pool:  1055/2 LASALLE GMAC97C1

Page 2-RCG#:131.1-MTG Y
LaSalle #: 172760/ 172760 PREVERE
Issuer/Pool:  1055/2LASALLE GMAC97C1

     TO  HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described DEED OF TRUST, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (FIRST).

     IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective the _23_ day of _April_, 199_9_

ASSIGNOR:
GERMAN AMERICAN CAPITAL CORPORATION,
A MARYLAND CORPORATION

By: _michael Kaplan_
_Authorized Signatory_

By: _____
Name: _____ Robert D. Burns
Title: _____ Authorized Signatory

STATE OF _New York_}
           }ss:
COUNTY OF _New York_}

     On the _23_ day of _April_, 199_9_, before me, personally came _michael Kaplan/ Robert Burns_, personally known to me, to be the person whose name is subscribed to the within instrument, who being by me duly sworn, did depose and say that he/she resides at 31 West 52nd Street New York New York 10019, and that he/she is the _authorized Signatories_ of GERMAN AMERICAN CAPITAL CORPORATION, A MARYLAND CORPORATION and who acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or the entity on behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Notary Public: _Joyce C. Landry_          [notary seal]

My Commission Expires: _____

JOYCE C. LANDRY
Notary Public, State of New York
No. 01LA5084146
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Aug. 25, _1999_

EXHIBIT A

Lot 2, INDEPENDENCE CENTER, a subdivision in Independence,
Jackson County, Missouri.

AND ALSO DESCRIBED AS FOLLOW:

ALL OF LOT 2, INDEPENDENCE CENTER, A SUBDIVISION IN INDEPENDENCE,
JACKSON COUNTY, MISSOURI, BEING DESCRIBED USING STATE PLANE
BEARINGS AT KANSAS CITY CONTROL MONUMENT NO. JA-66, AS  FOLLOWS:
BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 2; THENCE S 02
DEGREES 14 MINUTES 30 SECONDS W, ALONG THE EAST LINE OF SAID LOT,
142.05 FEET; THENCE SOUTHWESTERLY, CONTINUING ALONG SAID LINE, ON
A CURVE TO THE RIGHT, HAVING A RADIUS OF 20.00 FEET AND TANGENT
TO THE LAST DESCRIBED COURSE, AN ARC DISTANCE OF 26.73 FEET;
THENCE SOUTHWESTERLY, ALONG THE SOUTHERLY LINE OF SAID LOT, ON A
CURVE TO THE LEFT, HAVING A RADIUS OF 677.00 FEET AND TANGENT TO
THE LAST DESCRIBED CURVE, AN ARC DISTANCE OF 550.29 FEET; THENCE
N 57 DEGREES 45 MINUTES 30 SECONDS W, CONTINUING ALONG SAID LINE,
51.05 FEET; THENCE NORTHERLY, ALONG THE WESTERLY LINE OF SAID
LOT, ON A CURVE TO THE LEFT, HAVING A RADIUS OF 231.00 FEET, AND
AN INITIAL TANGENT BEARING OF N 14 DEGREES 26 MINUTES 45 SECONDS
E, AN ARC DISTANCE OF 49.20 FEET; THENCE N 02 DEGREES 14 MINUTES
30 SECONDS E, CONTINUING ALONG SAID LINE, 319.29 FEET; THENCE
NORTHEASTERLY, CONTINUING ALONG SAID LINE, ON A CURVE TO THE
RIGHT, HAVING A RADIUS OF 95.00 FEET, AND TANGENT TO THE LAST
DESCRIBED COURSE, AN ARC DISTANCE OF 79.48 FEET (PLAT = 80.20
FEET); THENCE S 89 DEGREES 40 MINUTES 03 SECONDS E, ALONG THE
NORTH LINE OF SAID LOT, 219.84 FEET (PLAT = 219.85 FEET); THENCE
N 02 DEGREES 14 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE,
10.00 FEET; THENCE S 87 DEGREES 45 MINUTES 30 SECONDS E,
CONTINUING ALONG SAID LINE, 232.36 FEET TO THE POINT OF
BEGINNING.

CONTAINING 134.714 SQ.FT. OR 3.0926 ACRES.

# Exhibit D

**IC247442**

**247442**                    **32**

| | |
|---|---|
| **Loan Number** | 982003745 |
| **Library** | A |
| **Doc Date** | 03/29/1999 |
| **Class** | Servicing |
| **Descriptor** | Consent,Assumption & Modification Agreement |
| **Prop Seq No** | |
| **Doc Type Group** | Legal Documents |
| **Doc Type** | Mortgage Deed of Trust |
| **Workflow Indicator** | N |

# HEADER

**User : JALBER**

## SECOND CONSENT, ASSUMPTION AND DEED OF TRUST
## MODIFICATION AGREEMENT (FIRST)

### Deed of Trust, Assignment of Leases
### and Security Agreement (First)

THIS SECOND CONSENT, ASSUMPTION AND DEED OF TRUST MODIFICATION AGREEMENT (FIRST), (this "**Agreement**") made as of the ___ day of March, 1999, by and among **MERCANTILE BANK OF KANSAS CITY**, having a mailing address at 6940 Mission Road, Shawnee Mission, Kansas 66208, acting solely in its capacity as Trustee of Voit Partners Missouri Sub-Trust under that certain Revocable Donation and Trust Agreement dated as of January 13, 1997, **VOIT PARTNERS, LTD. I**, a California limited partnership having a mailing address at 21600 Oxnard St., #300, Woodland Hills, CA 91367, acting solely in its capacity as Administrative Trustee of Voit Partners, Ltd. I, Trust #3, a Delaware Business Trust under Trust Agreement dated as of January 13, 1997 (collectively, the "**Borrower**"), **LARRY D. IRICK**, as Trustee ("**Trustee**"), **GMAC COMMERCIAL MORTGAGE CORP.**, as Master Servicer for **LASALLE NATIONAL BANK**, as Trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1 (the "**Lender**") and **CC INDEPENDENCE, LLC**, a Minnesota limited liability company (the "**Purchaser**").

### W I T N E S S E T H:

WHEREAS, Circuit Investors #5-Montgomeryville Limited Partnership, a Pennsylvania limited partnership ("**Circuit Investors**"), executed a Promissory Note in favor of The Paul Revere Life Insurance Company, a Massachusetts corporation ("**Paul Revere**") dated February 27, 1995 in the original principal amount of THREE MILLION EIGHT HUNDRED FIFTY-FOUR THOUSAND FOUR HUNDRED NINETEEN AND no/100 Dollars ($3,854,419.00) (the "**Original Note**") to evidence a loan made by Paul Revere to Circuit Investors in said amount on said date (the "**Loan**"); and

WHEREAS, the Loan is evidenced and secured by various instruments, including: (i) that certain Deed of Trust, Assignment of Leases and Security Agreement (First) dated February 27, 1995, from Circuit Investors to Larry D. Irick, Trustee for the benefit of Paul Revere, and recorded on March 6, 1995 as Document No. 1330925 at Book I2664 Book 1811 of the land records of the Department of Records of Jackson County, Missouri (the "**Recorder's Office**"), as modified by that certain Consent, Assumption and Mortgage Modification Agreement (First) dated January 17, 1997, by and among Circuit Investors, Paul Revere and Borrower (the "**First Modification**"), and recorded January 17, 1997 as Document No. I-3131, in Book I-2950, Page 1906 in the Recorder's Office (as modified, the "**Deed of Trust**"); (ii) that certain Assignment of Leases and Rents dated February 27, 1995 from Circuit Investors to Paul Revere and recorded on March 6, 1995 as Document No. 1330926 at Book I2664 Page 1895 in the Recorder's Office (the "**Assignment of Leases**"); (iii) those certain UCC-1 Financing Statements filed with the Secretary of State of Missouri on April 25, 1995 as Instrument No. 2534415, with the real property records of the Recorder's Office on March 6, 1995 as Document No. 1330928 at Book I2664 page 1980 and with the personal property records of the Recorder's Office on March 6, 1995 as Document No. J350512 (collectively, the "**UCCs**"); (iv) that certain Environmental Indemnity Agreement dated February 27, 1995 from Circuit Investors to Paul Revere (the "**Indemnity Letter**"); and (v) that certain Tax, Insurance and Capital Reserve Escrow

Agreement, dated February 27, 1995 (the "**Tax, Insurance and Capital Reserve Escrow Agreement**"), (the Note, Deed of Trust, Assignment of Leases, UCCs, Indemnity Letter, Tax, Insurance and Capital Reserve Escrow Agreement and all other documents and instruments relating to the Property (as hereinafter defined) and evidencing or securing such Loan, as modified herein, being hereinafter referred to collectively as the "**Loan Documents**"); and

WHEREAS, the Loan Documents encumber that certain real property described in Exhibit A attached hereto and improvements thereon commonly known as 1870 E. 39th Street, Independence, Missouri, and more particularly described in the Deed of Trust (the "**Property**"); and

WHEREAS, pursuant to Section 2.16 of the Deed of Trust, any transfer of the Property without the consent of Lender would constitute an Event of Default; and

WHEREAS, Circuit Investors subsequently sold and transferred the Property to Borrower with the consent of Paul Revere, pursuant to which Borrower assumed the Loan in accordance with the First Modification; and

WHEREAS, Paul Revere subsequently assigned the Loan to German American Capital Corporation pursuant to a certain Assignment dated August 22, 1997; and

WHEREAS, German American Capital Corporation subsequently assigned the Loan to Lender; and

WHEREAS, Lender is willing to allow the sale of the Property from Borrower to Purchaser provided that (i) Purchaser assumes all of the obligations of Borrower under the Loan Documents, and (ii) Borrower and Purchaser execute and deliver to Lender this Agreement and such other miscellaneous assurances and/or documentation as Lender may reasonably require in connection with the proposed transaction, including but not limited to a modification of the Deed of Trust as hereinafter described.

NOW THEREFORE, for good and valuable consideration, and in consideration of the mutual promises of the parties contained herein, the sufficiency and receipt of which are hereby acknowledged, it is hereby agreed as follows:

1.    Trustee, by execution hereof, hereby ratifies and confirms the First Modification to the same effect as if Trustee had been a party to such original First Modification agreement.

2.    The principal balance of the Loan as of March 31, 1999, is THREE MILLION FIVE-HUNDRED EIGHTY-TWO THOUSAND FOUR-HUNDRED SIXTY-TWO AND 65/100 DOLLARS ($3,582,462.65) and the amount of accrued but unpaid interest as of March 31, 1999, is TWENTY-SIX THOUSAND FIVE-HUNDRED SIXTY-NINE AND 93/100 DOLLARS ($26,569.93).

3.    Borrower hereby warrants and covenants to Lender that, as of the date hereof, (i) borrower has received no written notice of, and to the best of its knowledge (without additional inquiry), no Event of Default (as defined in the Deed of Trust) exists under the Loan Documents, (ii)

2

to the best of its knowledge (without additional inquiry) no deferred maintenance exists with respect to the Property, (iii) Borrower has received no written notice of, and to the best of its knowledge (without additional inquiry), there is no default existing under that certain lease of the Property dated February 22, 1995, between Circuit Investors as Landlord and Circuit City Stores, Inc. ("**Circuit City Stores**"), as Tenant, and (iv) Circuit City Stores' credit remains "investment grade" (as that term is defined in the Deed of Trust).

4.    Purchaser hereby (a) assumes and agrees to perform all of the covenants, agreements and obligations contained in the Loan Documents on the part of Borrower thereunder and (b) agrees to make all payments required to be made under the Note and the Loan Documents in accordance with the provisions thereof, subject to the nonrecourse provisions contained therein, provided, however, that notwithstanding anything to the contrary contained herein or in any of the Loan Documents, Purchaser does not (with the exception of interest accrued on the Note on March 31, 1999, which Purchaser expressly agrees to pay upon the next regularly scheduled payment date under the Note) assume any liability of Borrower however arising that accrued before the execution date of this Agreement, including without limitation, any personal liability of Borrower arising out of or in any way relating to the Loan Documents or the Property, all of which are retained by Borrower.

5.    Purchaser hereby restates with respect to itself all of the representations and warranties made by Borrower under the Loan Documents; provided that all representations regarding title to the Property shall be limited solely to Purchaser.

6.    Purchaser hereby stipulates and agrees that its title to the Property is and shall be subject to the liens, security interests and terms and conditions of the Deed of Trust and the other Loan Documents.

7.    Purchaser represents that the lien of the Deed of Trust on the Property is, to the best of its knowledge, a valid and existing first lien and that the Property shall remain in all respects subject to the lien of the Deed of Trust and nothing therein contained, and nothing done pursuant hereto shall affect the lien or conveyance effected by the Deed of Trust or the priority thereof over other liens, charges, encumbrances or conveyances, or release or diminish the liability of any party who is now, or may hereafter be, liable to Lender under the Loan Documents; nor shall anything herein contained affect any other security or instrument, if any, held by Lender as security for or evidence of the Loan, including any of the Loan Documents. Purchaser further represents that, as of the date hereof, Larry J. Rietz owns 100% of the total membership units of Purchaser.

8.    Lender represents and warrants to Purchaser that:

a.    It has not assigned, transferred or conveyed (in any way) its interest in the Loan Documents to any other person or entity;

b.    As to payments of principal and/or interest under the Note, there is no Event of Default by Borrower under the Loan Documents; and

c.    To the best of its knowledge, without inquiry, there is no other Event of Default by Borrower under the Loan Documents.

3

9.      The Deed of Trust is hereby modified as follows:

a.      The Deed of Trust is hereby amended to include the following paragraph on page 1, above the title to the Deed of Trust:

THIS AGREEMENT SECURES AMONG OTHER THINGS FUTURE ADVANCES AND OBLIGATIONS AND IS TO BE GOVERNED BY THE PROVISIONS OF SECTION 443.055 OF THE MISSOURI REVISED STATUTES. THE TOTAL PRINCIPAL AMOUNT OF OBLIGATIONS THAT MAY BE SECURED HEREUNDER IS SHALL NOT EXCEED THE ORIGINAL AMOUNT OF THE NOTES (AS DEFINED HEREIN).

b.      Section 1.1.11 of the Deed of Trust is hereby deleted in its entirety.

Any reference in the Deed of Trust to any Guaranty shall henceforth be deemed null and void.

c.      Section 2.16.4.1 of the Deed of Trust is hereby amended to delete the following language therefrom: "or any promissory note subject to the Guaranty at the time of transfer."

d.      Section 2.16.4.4.1 of the Deed of Trust is hereby amended to delete all references to "promissory notes that are then subject to the Guaranty."

e.      Section 5.1.14 of the Deed of Trust is hereby deleted in its entirety.

f.      Section 5.1.15 of the Deed of Trust is hereby deleted in its entirety.

g.      The Deed of Trust is hereby amended by adding the following new Section 5.1.18 to Article Five:

Any breach by CC Independence, LLC of the Second Consent, Assumption and Deed of Trust Modification Agreement (First) executed, inter alia, by GMAC Commercial Mortgage Corp., as Master Servicer for LaSalle National Bank, as Trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1, Mercantile Bank of Kansas City, Trustee of Voit Partners Missouri Sub-Trust, Voit Partners, Ltd. I, Administrative Trustee of Voit Partners, Ltd. I, Trust #3, and CC Independence, LLC, or any misrepresentations made by CC Independence, LLC, therein.

h.      The Deed of Trust is hereby amended by adding the following new Section 5.1.19 to Article Five:

It shall be an additional Event of Default under Section 5.1 of this Deed of Trust if Trustor shall give any notice pursuant to Section 443.055 of the Revised Statutes of Missouri, or otherwise by which Trustor elects to terminate the operation of this Deed

4

of Trust as security for future advances or future obligations made or incurred after the date Lender receives such notice, or Trustor shall take any other action for the purpose of limiting or attempting to limit the operation of this Deed of Trust as such security.

       i.      Section 5.6 of the Deed of Trust is hereby deleted in its entirety and the following is substituted in its place and stead:

       Successor Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee will succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

       j.      Section 7.23 of the Deed of Trust is hereby deleted in its entirety and the following is substituted in its place and stead:

       Deed of Trust Future Advance Security Instrument. This Deed of Trust is governed by Section 443.055 of the Revised Statutes of Missouri, as amended, is intended and agreed to be a security instrument as defined in said Section, and secures present and future advances and present and future obligations, whether optional or obligatory, in a maximum amount not to exceed the original amount of the Notes. The future advances and future obligations secured hereby may be evidenced not only by the Notes, Agreement and other Loan Documents herein described, but also such other notes, guarantees and other documents executed and delivered by Trustor to Lender subsequent to the date hereof provided that, on the face or within the body thereof, such notes, guarantees or other documents state that they are secured by this Deed of Trust. Neither the existence or priority of this Deed of Trust shall be adversely affected if at anytime or from time to time subsequent to the date hereof there are no obligations secured hereby or the obligations secured hereby are reduced to zero. Subject only to the limitations of said Section 443.055 aforesaid, the total amount of obligations secured hereby may increase or decrease from time to time without affecting the validity or priority of this Deed of Trust.

       k.      Section 7.4.1 of the Deed of Trust is hereby amended to delete Lender's address for notices and the following is substituted in its place and stead:

5

Lender:

LaSalle National Bank, as Trustee for the registered holders of
GMAC Commercial Mortgage Securities, Inc.,
Mortgage Pass-Through Certificates, Series 1997-C1
c/o Starwood Asset Services
100 Great Meadow Road
Suite 603
Wethersfield, Connecticut 06109

     with a copy to:

Hebb & Gitlin
One State Street
Hartford, Connecticut 06103
Attention: John B. D'Agostino, Esq.

     l.     The Deed of Trust is hereby amended by adding the following new Section 7.24
to Article Seven:

     <u>Purchase of Insurance by Lender.</u>     The following notice is given to comply with Section
427.120 of the Revised Statutes of Missouri:

**UNLESS TRUSTOR PROVIDES EVIDENCE OF THE INSURANCE COVERAGE
REQUIRED BY THIS DEED OF TRUST TO LENDER, LENDER MAY PURCHASE
INSURANCE AT TRUSTOR'S EXPENSE TO PROTECT LENDER'S INTERESTS
IN TRUSTOR'S COLLATERAL. THIS INSURANCE MAY, BUT NEED NOT,
PROTECT TRUSTOR'S INTERESTS. THE COVERAGE THAT LENDER
PURCHASES MAY NOT PAY ANY CLAIM THAT TRUSTOR MAKES OR ANY
CLAIM THAT IS MADE AGAINST TRUSTOR IN CONNECTION WITH
TRUSTOR'S COLLATERAL. TRUSTOR MAY LATER CANCEL ANY INSURANCE
PURCHASED BY LENDER, BUT ONLY AFTER PROVIDING EVIDENCE THAT
TRUSTOR HAS OBTAINED INSURANCE AS REQUIRED BY THIS DEED OF
TRUST. IF LENDER PURCHASES INSURANCE FOR THE COLLATERAL,
TRUSTOR WILL BE RESPONSIBLE FOR THE COSTS OF THAT INSURANCE,
INCLUDING THE INSURANCE PREMIUM, INTEREST AND ANY OTHER
CHARGES LENDER MAY IMPOSE IN CONNECTION WITH THE PLACEMENT
OF THE INSURANCE, UNTIL THE EFFECTIVE DATE OF THE CANCELLATION
OR EXPIRATION OF THE INSURANCE. THE COSTS OF THE INSURANCE MAY
BE ADDED TO TRUSTOR'S TOTAL OUTSTANDING BALANCE OR OBLIGATION
HEREUNDER AND UNDER THE OTHER LOAN DOCUMENTS. THE COSTS OF
THE INSURANCE MAY BE MORE THAN THE COST OF INSURANCE TRUSTOR
MAY BE ABLE TO OBTAIN ON ITS OWN.**

10.     Purchaser agrees that except as specifically modified hereby, the rights, privileges, duties and obligations of the parties hereto under the Loan Documents shall remain unchanged and in full force and effect and shall continue in full force and effect and shall be binding upon Purchaser.

11.     Purchaser hereby requests and agrees that its address for notices under the Loan Documents shall be as follows:

          To Purchaser:

                    CC Independence, LLC
                    1355 Lemond Road
                    Owatonna, MN 55060

                    Attention: Larry J. Rietz

                    with a copy to:

                    Vedder, Price, Kaufman & Kammholz
                    222 North LaSalle Street
                    Chicago, Illinois 60601
                    Attention: Eric J. Rietz, Esq.

12.     Subject to the foregoing, Lender hereby consents to the transfer of the Property from Borrower to Purchaser provided, however, that such consent shall not be construed as consent to any further or additional transfer or conveyance of the Property except as specifically provided in the Deed of Trust.

13.     Purchaser and Lender agree that the term "Commitment" shall be used for informational purposes only, and only in the Recital portion of any Loan Document, and all other references to "Commitment" wherever appearing in any Loan Document shall be deemed null, void and of no effect, as the context may require.

14.     Purchaser and Lender agree that in the event of any conflict between the Loan Documents and this Agreement, the provisions of this Agreement shall control.

15.     Effective upon transfer of the Property from Borrower to Purchaser, Lender hereby releases Borrower and Guarantor from all obligations accruing under the Loan Documents from and after the date of such transfer.

16.     This Agreement shall be binding upon the parties hereto and their respective heirs, executors, administrators, personal representatives, survivors, successors and assigns.

17.     This Agreement shall be governed by and construed in accordance with the internal laws of the state in which the Property is located.

7

18.     This Agreement may be executed in two or more counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

19.     Nothing herein shall constitute a novation, release, termination or reissuance of the Deed of Trust, or a novation of the indebtedness evidenced by the Loan Documents. As modified hereby, the Deed of Trust shall remain in full force and effect.

**IN WITNESS WHEREOF**, Purchaser, Lender and Borrower have caused this instrument to be executed as of the date and year first hereinabove written.

Signed and delivered
in the presence of:

**MERCANTILE BANK OF KANSAS CITY**, as Trustee of Voit Partners Missouri Sub-Trust

By: _____

_____
Print name:

       Name: _____
       Title:

_____
Print name:

**VOIT PARTNERS, LTD. I**, a California limited partnership, as Administrative Trustee of Voit Partners, Ltd. I, Trust #3

By: _____

_____
Print name:

       Name: _____
       Title:

_____
Print name:

**LA SALLE NATIONAL BANK**, as Trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1

By:    GMAC Commercial Mortgage Corp., as Master Servicer for LaSalle National Bank, as Trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1

Print name: ROBERTA MOORE

Print name: LENA BAILY. HOLLAND

By: _Diane M Norbury_
    Name: Diane M Norbury
    Title: Vice President

**CC INDEPENDENCE, LLC**, a Minnesota limited liability company

By: _____

Print name: _____

    Name:
    Title:

Print name: _____

9

STATE OF _____ )
                         )    ss:
COUNTY OF _____ )

    On this the ____ day of March, 1999, before the undersigned, personally appeared _____, who acknowledged himself/herself to be the _____ of MERCANTILE BANK OF KANSAS CITY, Trustee of Voit Partners Missouri Sub-Trust, and that he/she, as such _____, being authorized so to do, executed the foregoing instrument as his/her free act and deed and the free act and deed of said Trustee for the purposes therein contained.

    In witness whereof, I hereunto set my hand.


_____

Commissioner of the Superior Court
Notary Public
My Commission expires:


STATE OF _____ )
                         )    ss:
COUNTY OF _____ )

    On this the ____ day of March, 1999, before the undersigned, personally appeared _____, who acknowledged himself/herself to be the _____ of VOIT PARTNERS, LTD. I, a California limited partnership, as Administrative Trustee of Voit Partners, Ltd. I, Trust #3, and that he/she, as such _____, being authorized so to do, executed the foregoing instrument as his/her free act and deed and the free act and deed of said limited partnership and said Trustee for the purposes therein contained.

    In witness whereof, I hereunto set my hand.


_____

Commissioner of the Superior Court
Notary Public
My Commission expires:


10

STATE OF _Illinois_    )
                       )        ss:
COUNTY OF _Cook_       )

    On this the _2d_ day of March, 1999, before the undersigned, personally appeared _Diane Norby_ who acknowledged himself/herself to be the _Vice President_ of GMAC COMMERCIAL MORTGAGE CORP., as Master Servicer for LaSalle National Bank, as Trustee for the registered holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1, and that he/she as such _Vice President_, being authorized so to do, executed the foregoing instrument as his/her free act and deed and the free act and deed of said Trustee for the purposes therein contained.

    In witness whereof, I hereunto set my hand.

                             _Roberta Moore_

                         Commissioner of the Superior Court
                         Notary Public
                         My Commission expires:

                                    "OFFICIAL SEAL"
                                    Roberta Moore
                                Notary Public, State of Illinois
                              My Commission Expires 2/04/00

STATE OF _____    )
                            )        ss:
COUNTY OF _____     )

    On this the ____ day of March, 1999, before the undersigned, personally appeared _____, who acknowledged himself/herself to be the _____ of CC INDEPENDENCE, LLC, a Minnesota limited liability company, and that he/she, as such _____, being authorized so to do, executed the foregoing instrument as his/her free act and deed and the free act and deed of said limited liability company for the purposes therein contained.

    In witness whereof, I hereunto set my hand.

                         _____

                         Commissioner of the Superior Court
                         Notary Public
                         My Commission expires:

11

I2664P1870

# EXHIBIT A

Lot 2, INDEPENDENCE CENTER, a subdivision in Independence, Jackson County, Missouri.

AND ALSO DESCRIBED AS FOLLOW:

ALL OF LOT 2, INDEPENDENCE CENTER, A SUBDIVISION IN INDEPENDENCE, JACKSON COUNTY, MISSOURI, BEING DESCRIBED USING STATE PLANE BEARINGS AT KANSAS CITY CONTROL MONUMENT NO. JA-66, AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 2; THENCE S 02 DEGREES 14 MINUTES 30 SECONDS W, ALONG THE EAST LINE OF SAID LOT, 142.05 FEET; THENCE SOUTHWESTERLY, CONTINUING ALONG SAID LINE, ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 20.00 FEET AND TANGENT TO THE LAST DESCRIBED COURSE, AN ARC DISTANCE OF 26.73 FEET; THENCE SOUTHWESTERLY, ALONG THE SOUTHERLY LINE OF SAID LOT, ON A CURVE TO THE LEFT, HAVING A RADIUS OF 677.00 FEET AND TANGENT TO THE LAST DESCRIBED CURVE, AN ARC DISTANCE OF 550.29 FEET; THENCE N 57 DEGREES 45 MINUTES 30 SECONDS W, CONTINUING ALONG SAID LINE, 51.05 FEET; THENCE NORTHERLY, ALONG THE WESTERLY LINE OF SAID LOT, ON A CURVE TO THE LEFT, HAVING A RADIUS OF 231.00 FEET, AND AN INITIAL TANGENT BEARING OF N 14 DEGREES 26 MINUTES 45 SECONDS E, AN ARC DISTANCE OF 49.20 FEET; THENCE N 02 DEGREES 14 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE, 319.29 FEET; THENCE NORTHEASTERLY, CONTINUING ALONG SAID LINE, ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 95.00 FEET, AND TANGENT TO THE LAST DESCRIBED COURSE, AN ARC DISTANCE OF 79.48 FEET (PLAT = 80.20 FEET); THENCE S 89 DEGREES 40 MINUTES 03 SECONDS E, ALONG THE NORTH LINE OF SAID LOT, 219.84 FEET (PLAT = 219.85 FEET); THENCE N 02 DEGREES 14 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE, 10.00 FEET; THENCE S 87 DEGREES 45 MINUTES 30 SECONDS E, CONTINUING ALONG SAID LINE, 232.36 FEET TO THE POINT OF BEGINNING.

CONTAINING 134.714 SQ.FT. OR 3.0926 ACRES.

\circuit\ccp7\legal.mo

# Exhibit E



**ELECTRONICALLY RECORDED**
JACKSON COUNTY, MISSOURI
**03/27/2009 02:34:02 PM**
TD        FEE: $  48.00    10  Pages

INSTRUMENT NUMBER:
**2009E0028604**



_____

(Space above reserved for Recorder of Deeds certification)

**Title of Document:**  Trustee's Deed

**Date of Document:**    March 26, 2009

**Grantor:**      Traci O. Peterson, Successor Trustee

**Grantee:**       Bank of America, National Association, as successor by merger to LaSalle
Bank, National Association (f/k/a/ LaSalle National Bank), as successor
Trustee for the Registered Holders of GMAC Commercial Mortgage
Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1

**Grantee's Statutory Mailing Address:**

Bank of America, N.A.
c/o Capmark Finance, Inc.
700 N. Pearl Street, Suite 2200
Dallas, Texas 75201

**Legal Description:**    See Exhibit A attached hereto

Chicago Title - RAD
20083909

KC01DOCS\945208.3                                    1

(Space above reserved for Recorder of Deeds certification)

**Title of Document:**  Trustee's Deed

**Date of Document:**   March 26, 2009

**Grantor:**    Traci O. Peterson, Successor Trustee

**Grantee:**    Bank of America, National Association, as successor by merger to LaSalle
Bank, National Association (f/k/a/ LaSalle National Bank), as successor
Trustee for the Registered Holders of GMAC Commercial Mortgage
Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1

**Grantee's Statutory Mailing Address:**

Bank of America, N.A.
c/o Capmark Finance, Inc.
700 N. Pearl Street, Suite 2200
Dallas, Texas 75201

**Legal Description:**    See <u>Exhibit A</u> attached hereto

Chicago Title - RAD
20083909

KC01DOCS\945208.3                    1

## TRUSTEE'S DEED

**WHEREAS**, CC Independence, LLC ("**Borrower**") successor by assumption to Mercantile Bank of Kansas City, acting solely in its capacity as Trustee of Voit Partners Missouri Sub-Trust under that certain Revocable Donation and Trust Agreement dated as of January 13, 1997, and Voit Partners Ltd. 1, acting solely in its capacity as Administrative Trustee of Voit Partners, Ltd. 1, Trust #3, a Delaware business trust under trust agreement dated as of January 13, 1997, successor by assumption to Circuit Investors #5-Montgomeryville Limited Partnership, as last assuming grantor of that certain Deed of Trust, dated February 27, 1995, and recorded March 6, 1995, in Book I-2664, Page 1811, in the Office of the Recorder of Deeds, Jackson County, Missouri (the "**Deed of Trust**") conveyed to Larry D. Irick, as Trustee (the "**Original Trustee**") the property therein described, IN TRUST, to secure to Bank of America, National Association, as successor by merger to LaSalle Bank, National Association (f/k/a/ LaSalle National Bank), successor in interest to German American Capital Corporation, successor in interest to the Paul Revere Life Insurance Company, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 1997-C1 (collectively, "**Lender**"), the payment of the note in said Deed of Trust described; and

**WHEREAS**, by Appointment of Successor Trustee, dated February 13, 2009, and recorded February 19, 2009, as Instrument Number 2009E0015235, in the Office of the Recorder of Deeds, Jackson County, Missouri, Lender, acting by and through its Special Servicer, Capmark Finance, Inc., removed Original Trustee and appointed Traci O. Peterson, as trustee, a citizen of Missouri, with an address at 1200 Main Street, Suite 3500, Kansas City, Missouri 64105, to serve as successor trustee (the "**Successor Trustee**") under the Deed of Trust in the place and stead of the previously appointed successor trustee; and

**WHEREAS**, default was made in the payment of the Promissory Note secured by said Deed of Trust, by reason whereof the undersigned Successor Trustee did, at the request of the legal holder of said Note and Deed of Trust, proceed to execute the powers to said Successor Trustee given by said Deed of Trust, and did, on March 26, 2009, having previously given required legal notice of the time, terms and place of sale, and of the property to be sold, by advertisement printed and published in The Independence Examiner, a newspaper printed and published in the County of Jackson and State of Missouri, a copy of which advertisement, with the affidavit of the publisher of said newspaper proving its publication, is hereto attached as Exhibit B, and made a part hereof, at the South Center Front Door of the Jackson County Courthouse, in the County of Jackson and State of Missouri, expose to sale for cash to the highest bidder, at public auction, the said property herein described, and at said sale Lender, acting by and through its Special Servicer, Capmark Finance, Inc., having an address of 700 N. Pearl Street, Suite 2200, Dallas, Texas 75201, being the highest and best bidder for the sum of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000.00) the same was struck off and sold to said bidder at that price and sum.

**NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS,** that Traci O. Peterson, the undersigned Successor Trustee, party of the first part, in consideration of the premises, and of the sum of $10.00 to the said Successor Trustee paid by the said Lender, party of the second part, does **Bargain, Sell and Convey**, unto the said party of the second part, the Real Estate in said Deed of Trust described, situated in the County of Jackson and State of Missouri, more particularly described on <u>Exhibit A</u> attached hereto.

Subject to any and all easements, restrictions, reservations, tenancies, zoning laws and similar regulations and ordinances, rights of tenants and occupants, rights of public to any parts in public streets or roads, and, to the extent any exist, liens, encumbrances, mortgages, deeds of trust, security agreements, Uniform Commercial Code financing statements, and any and all other rights, titles, interests or estates in other parties whatsoever.

The undersigned Successor Trustee, warrants and certifies that, as required by Section 443.325, RSMo, pertaining to notices of sale under power of sale, a writing in words and figures identical to the notice of sale attached to the publisher's affidavit affixed hereto as <u>Exhibit B</u>, was by her placed in an envelope and deposited in the United States mail on February 25, 2009, being not less than twenty (20) days prior to the scheduled date of sale, certified, marked "Return Receipt Requested", with postage prepaid, as evidenced by the certified mail receipts attached hereto as <u>Exhibit C</u>, to the following at the addresses shown:

> <u>Owner(s) as of 40 days prior to sale date, same as Maker and Grantor named in Deed of Trust</u>:
>
> CC Independence, LLC
> 1355 Lemond Road
> Owatonna, MN 55060
> Attn: Pricilla Rietz

To Have and to Hold the same unto the said party of the second part, and to its successors and assigns **FOREVER**.

**IN WITNESS WHEREOF**, the said party of the first part as Successor Trustee has executed these presents on March 26, 2009.

Traci O. Peterson
Successor Trustee

**STATE OF MISSOURI** )
) SS.
**COUNTY OF JACKSON** )

On this 26th day of March, 2009, before me personally appeared **Traci O. Peterson** to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed as Successor Trustee.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

SHELLY BOXBERGER
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires: Jan. 20, 2013
Commission # 09446866

_Shelly Boxberger_
Notary Public

Shelly Boxberger

My Term Expires:

_January 20, 2013_

## EXHIBIT A

Lot 2, INDEPENDENCE CENTER, a subdivision in Independence, Jackson County, Missouri, according to the recorded plat thereof.

AND ALSO DESCRIBED AS FOLLOWS:

All of Lot 2, INDEPENDENCE CENTER, a subdivision in Independence, Jackson County, Missouri, being described using state plane bearings at Kansas City Control Monument No. JA-66, as follows:

Beginning at the Northeast corner of said Lot 2; thence South 02 degrees 14 minutes 30 seconds West, along the East line of said lot, 142.05 feet; thence Southwesterly, continuing along said line, on a curve to the right, having a radius of 20.00 feet and tangent to the last described course, an arc distance of 26.73 feet; thence Southwesterly, along the Southerly line of said lot, on a curve to the left, having a radius of 677.00 feet and tangent to the last described curve, an arc distance of 550.29 feet; thence North 57 degrees 45 minutes 30 seconds West, continuing along said line, 51.05 feet; thence Northerly, along the Westerly line of said lot, on a curve to the left, having a radius of 231.00 feet, and an initial tangent bearing of North 14 degrees 26 minutes 45 seconds East, an arc distance of 49.20 feet; thence North 02 degrees 14 minutes 30 seconds East, continuing along said line, 319.29 feet; thence Northeasterly, continuing along said line, on a curve to the right, having a radius of 95.00 feet, and tangent to the last described course, an arc distance of 79.48 feet (Plat = 80.20 feet); thence South 89 degrees 40 minutes 03 seconds East, along the North line of said lot, 219.84 feet (Plat = 219.85 feet); thence North 02 degrees 14 minutes 30 seconds East, continuing along said line, 10.00 feet; thence South 87 degrees 45 minutes 30 seconds East, continuing along said line, 232.36 feet to the point of beginning.

## EXHIBIT B

## AFFIDAVIT OF PUBLICATION

**(see attached)**

## AFFIDAVIT OF PUBLICATION

STATE OF MISSSOURI)
County of Jackson)           } SS.

I, **STEVE CURD.,** being duly sworn according to law, state that I am PUBLISHER and agent of THE EXAMINER, a daily newspaper of general circulation in the County of Jackson, State of Missouri, where located; which newspaper has been admitted to the Post Office as a periodical class matter in the City of Independence, Missouri, the city of publication; which newspaper has been published regularly and consecutively for a period of three years and has a list of bona fide subscribers, voluntarily engaged as such who have paid or agreed to pay a stated price for a subscription for a definite period of time, and that such newspaper has complied with the provisions of Section 493.050, Revised Statutes of Missouri 2000, and Section 59.310, Revised Statutes of Missouri 2000. The affixed notice appeared in said newspaper in the following issues:

Commencing on __FEBRUARY 26, 2009_____

and ending on __MARCH 26, 2009_____, being the issues of:

__FEBRUARY 26, 27, 28, 2009; MARCH 3, 4, 5, 6, 7,10, 11, 12, 13, 14,__
__17, 18, 19, 20, 21, 24, 25, 26, 2009__

being Volume __104_____ Numbers: __232, 233, 234, 235, 236, 237,__
                                        238, 239, 240, 241, 242, 243,
                                        244, 245, 246, 247, 248, 249,
                                        250, 251, 252

Signed _____

Subscribed and sworn to before me on this _____26TH_____ day of
_____MARCH_____, __2009__.

_Angela L Dornbrook_
          Notary Public, Angela L Dornbrook

My commission expires _____April 20, 2012_____.

**ANGELA L. DORNBROOK**
Notary Public - Notary Seal
STATE OF MISSOURI - Jackson County
Commission #08538517
My commission expires April 20, 2012

Publishing Fee: _$374.40_____

Received payment _____ per_____

IO#: _____

## NOTICE OF TRUSTEE'S SALE

For default in the payment of debt secured by a Deed of Trust, Assignment of Leases and Rents and Security Agreement (First) dated February 27, 1995, executed by Circuit Investors #5-Montgomeryville Limited Partnership, which such interest was assumed by Mercantile Bank of Kansas City, acting solely in its capacity as Trustee of Voit Partners Missouri Sub-Trust under that certain Revocable Donation and Trust Agreement dated as of January 13, 1997, and Voit Partners Ltd. 1, acting solely in its capacity as Administrative Trustee of Voit Partners, Ltd. 1, Trust #3, a Delaware business trust under Trust Agreement dated as of January 13, 1997, which such interest was further assumed by CC Independence, LLC, recorded March 6, 1995, in Book I-2664, Page 1811, in the Office of the Recorder of Deeds, Jackson County, Missouri, the undersigned Successor Trustee will on Thursday, March 26, 2009, between the hours of 9:00 o'clock a.m. and 5:00 o'clock p.m. (at 2:00 o'clock p.m.), at the South Center Front Door of the Jackson County Courthouse Annex, 308 West Kansas Avenue, in Jackson County, Independence, Missouri, sell at public vendue to the highest bidder for cash and upon such other terms and conditions as are announced by the undersigned Successor Trustee at such sale the following described real property (the "Real Property") in Jackson County, Missouri:

Lot 2, INDEPENDENCE CENTER, a subdivision in Independence, Jackson County, Missouri, according to the recorded plat thereof.

AND ALSO DESCRIBED AS FOLLOWS:

All of Lot 2, INDEPENDENCE CENTER, a subdivision in Independence, Jackson County, Missouri, being described using state plane bearings at Kansas City Control Monument No. JA-66, as follows:

Beginning at the Northeast corner of said Lot 2; thence South 02 degrees 14 minutes 30 seconds West, along the East line of said lot, 142.05 feet; thence Southwesterly, continuing along said line, on a curve to the right, having a radius of 20.00 feet and tangent to the last described course, an arc distance of 26.73 feet; thence Southwesterly, along the Southerly line of said lot, on a curve to the left, having a radius of 677.00 feet and tangent to the last described curve, an arc distance of 550.29 feet; thence North 57 degrees 45 minutes 30 seconds West, continuing along said line, 51.05 feet; thence Northerly, along the Westerly line of said lot, on a curve to the left, having a radius of 231.00 feet, and an initial tangent bearing of North 14 degrees 26 minutes 45 seconds East, an arc distance of 49.20 feet; thence North 02 degrees 14 minutes 30 seconds East, continuing along said line, 319.29 feet; thence Northeasterly, continuing along said line, on a curve to the right, having a radius of 95.00 feet, and tangent to the last described course, an arc distance of 79.48 feet (Plat = 80.20 feet); thence South 89 degrees 40 minutes 03 seconds East, along the North line of said lot, 219.84 feet (Plat = 219.85 feet); thence North 02 degrees 14 minutes 30 seconds East, continuing along said line, 10.00 feet; thence South 87 degrees 45 minutes 30 seconds East, continuing along said line, 232.36 feet to the point of beginning.

to satisfy said debt and costs.

This is an attempt to collect a debt and any information obtained will be used for that purpose. The sale of all of the foregoing property shall be "AS IS, WHERE IS" and shall be subject to all conditions of title, of record and in fact and neither the Successor Trustee, nor any other party makes any representation or warranty of any kind or nature regarding the condition of, the description of, or title to the property.

<div align="right">
Traci O. Peterson<br>
Successor Trustee<br>
Bryan Cave LLP<br>
1200 Main Street, Suite 3500<br>
Kansas City, Missouri  64105<br>
(816) 374-3200
</div>

First Publication:  February 26, 2009.
Daily thereafter, except Sundays and Mondays, through and including March 26, 2009.
February 26, 27, 28, 2009; March 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 24, 25, 26, 2009

# EXHIBIT C

## CERTIFIED MAIL SLIPS

**(see attached)**



2. Article Number

7160 3901 9845 7274 9356

3. Service Type   CERTIFIED MAIL
4. Restricted Delivery? (Extra Fee)        [X] Yes
1. Article Addressed to:

CC Independence, LLC
1355 Lemond Road
Owatonna, MN  55060
Attn: Pricilla Rietz

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)

C. Signature
X Pricilla Rietz

B. Date of Delivery

D. Is delivery address different from item 1?   [ ] Agent
   If YES, enter delivery address below:         [ ] Addressee
                                                 [ ] Yes
                                                 [ ] No

Reference Information

0229383

Traci O. Peterson

Form 3811, January 2005        Domestic Return Receipt

7160 3901 9845 7274 9356

**TO:**   CC Independence, LLC
          1355 Lemond Road
          Owatonna, MN  55060
          Attn: Pricilla Rietz

**SENDER:**   Traci O. Peterson

**REFERENCE:** 0229383

PS Form 3800, January 2005                         0.00

| RETURN RECEIPT SERVICE | Postage | |
|---|---|---|
| | Certified Fee | 42 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 2.20 |
| | Total Postage & Fees | 0.00 |
| | | 5.49 |

POSTMARK OR DATE

US Postal Service
## Receipt for
## Certified Mail
No Insurance Coverage Provided
Do Not Use for International Mail



# Chicago Title Insurance Company

106 W.11th Street, Ste 1800, Kansas City, MO 64105, (816)421-5040 Fax: (816)421-7122

| ORDER NUMBER: | 020083909 | | INVOICE AS OF: | 03/31/09 |
|---|---|---|---|---|
| ESCROW NUMBER: | 20083909 | 001 | ORIGINAL INVOICE: | 01/05/09 |

Janet G. Hatch
Bryan Cave LLP
One Kansas City Place
1200 Main Street
Kansas City, Missouri 64105

BUYER: CIRCUIT INVESTORS #5
PROPERTY: Circuit Investors
Independence, Missouri

---

YOUR REFERENCE:   CIRCUIT INVESTORS #5 - FORECLOSURE RPT.          CUSTOMER # 0275469      - 000

POLICIES APPLIED FOR:

ALTA OWNER'S POLICY (6/17/06)                    $1,300,000.00

---

| CODE | DESCRIPTION | AMOUNT |
|---|---|---|
| FCC | Foreclosure Report | 350.00 |
| MSC | Record Trustee's Deed | 48.00 |
| MSC | E-Filing Fee | 4.00 |
| RSC | Owners Policy - C&I- Resale | 2,165.00 |
| | DEPOSIT/PAYMENT - 01/22/09 | -350.00 |
| | **BALANCE DUE:** | $2,217.00 |

---

Invoices not paid within 30 days of receipt will bear interest at the rate of 1.5% per month on the unpaid balance on your account until paid in full. In the event your account is placed in collection you agree that we will be entitled to recover the unpaid balance due, all accrued interest thereon, and the costs of collection, including our reasonable attorneys fees.

Inquiries should be directed to:

Roger Dains                    at (816)421-5040

INVOICE2-3 5/95