Jeffrey N. Pomerantz, Esq. (admitted *pro hac vice*)
Andrew W. Caine, Esq. (admitted *pro hac vice*)
Beth Levine, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Telecopy:  (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
David N. Tabakin, Esq. (VA Bar No. 82709)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy:  (804) 783-0178

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653-KRH |
| Debtors. | (Jointly Administered) |

## NOTICE OF SUBSTANTIVE HEARING
### (Liquidating Trust's Objection to Claims Number 12898 and 14636)
### (Claimant – Virginia Department of Taxation)

PLEASE TAKE NOTICE that the Circuit City Stores, Inc. Liquidating Trust (the "Trust") of the above referenced estates of Circuit City Stores, Inc. *et al.* (collectively, the "Debtors") , by counsel, **will seek to have the Court reduce Claims Number 12898 and 14636, particularly the corporate income tax claim component, for the reasons stated in the Liquidating Trust's Objection to Claim Numbers 12898 and 14636 Filed by the Commonwealth of Virginia Department of Taxation (the "Claim Objection"), ECF No. 10070, as further expanded in the decision of the Supreme Court of Virginia in *Kohl's Department Stores, Inc. v. Virginia Department of Taxation*, No. 160681 (VA. Aug. 31, 2017), a copy of which is attached hereto as Exhibit 1.**

PLEASE TAKE FURTHER NOTICE THAT the Court will hold a hearing and receive evidence on the Claim Objection on **November 15, 2017 at 2:00 p.m.**, (or such time thereafter as the matter may be heard) and the undersigned will appear before The Honorable Kevin R. Huennekens, United States Bankruptcy Judge, in Room 5000, of the United States Courthouse, 701 E. Broad Street Richmond, Virginia 23219.

PLEASE TAKE FURTHER NOTICE THAT **the undersigned will present evidence, if necessary, on November 15, 2017 at 2:00 p.m., seeking to have the Court reduce Claim Numbers 12898 and 14636.**

PLEASE TAKE FURTHER NOTICE THAT if you do not want the Court to grant the relief described herein, **you must (1) on or before November 3, 2017, file a (A) notice of your intent to attend the hearing and (B) summary of the position you will advocate at the hearing with the Court at:**

> Clerk of the Bankruptcy Court
> United States Bankruptcy Court
> 701 East Broad Street - Room 4000
> Richmond, Virginia 23219

**and (2) attend the hearing on November 15, 2017 at 2:00 p.m.**

PLEASE GOVERN YOURSELVES ACCORDINGLY.

[This space intentionally left blank]

Dated:  September 26, 2017

*/s/Paula S. Beran*
Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
David N. Tabakin, Esq. (VA Bar No. 82709)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219
Telephone:  804-783-8300
Facsimile:  804-783-0178
Email:  ltavenner@tb-lawfirm.com
        pberan@tb-lawfirm.com
        dtabakin@tb-lawfirm.com
-and-

Jeffrey N. Pomerantz, Esq. (admitted *pro hac vice*)
Andrew W. Caine, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California  90067-4100
Telephone: 805-123-4567
Facsimile:  310/201-0760
E-mail: jpomerantz@pszjlaw.com
        acaine@pszjlaw.com

*Counsel for the Circuit City Stores, Inc.*
*Liquidating Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Notice of Substantive Hearing was served on September 26, 2017 via electronic delivery to all of the parties receiving ECF notice in this bankruptcy case and via first-class mail, postage prepaid, on the following:

Commonwealth of Virginia Department of Taxation
Taxing Authority Consulting Services, PC
PO Box 31800
Henrico, VA 23294-1800

Virginia Department of Taxation
P.O. Box 2156
Richmond, VA 23218-2156

*/s/ Paula S. Beran*
Paula S. Beran (VA Bar No. 34679)

EXHIBIT 1

PRESENT:  Lemons, C.J., Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and
Russell, S.J.

KOHL'S DEPARTMENT STORES, INC.

|                          | OPINION BY              |
|--------------------------|-------------------------|
| v.  Record No. 160681    | JUSTICE WILLIAM C. MIMS |
|                          | August 31, 2017         |

VIRGINIA DEPARTMENT OF TAXATION

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

In this appeal, we consider the extent to which a corporate taxpayer must include in its

Virginia taxable income royalties paid to an intangible holding company.

I.  Background and Procedural History

Kohl's Department Stores, Inc. ("Kohl's") is a corporation organized under the laws of

Delaware.  It operates retail stores throughout the United States, including Virginia.  Kohl's

Illinois, Inc. ("Kohl's Illinois"), a corporation organized under the laws of Nevada, is an affiliate

of Kohl's.  Kohl's Illinois operates retail stores in select states, none of which are in Virginia.

Kohl's Illinois also owns, manages, and licenses certain intellectual property.  Kohl's

entered into a license agreement with Kohl's Illinois for the use of this intellectual property.

Pursuant to this agreement, Kohl's paid $441,942,347 in royalties to Kohl's Illinois during the

taxable year that ended on January 31, 2009 and $481,788,205 during the taxable year that ended

on January 30, 2010.  When calculating its federal taxable income for these years, Kohl's

deducted these royalty payments from its income as an ordinary and necessary business expense

under 26 U.S.C. § 162(a).  Conversely, Kohl's Illinois included the royalties as income in its

taxable income calculations.

However, Kohl's Illinois did not ultimately pay state income taxes on a substantial

portion of the royalties.  Each state in which Kohl's Illinois filed a return only taxed an

apportionable share of its taxable income.[1]  This left a substantial portion of the royalties

untaxed, as they were not fairly attributable to Kohl's Illinois's activities in most states.  In this

capacity, Kohl's Illinois functions as an intangible holding company ("IHC").  James A. Amdur,

*State Income Tax Treatment of Intangible Holding Companies*, 11 A.L.R. 6th 543 (2006).

> Under this type of arrangement, a corporation typically transfers
> intangible assets (such as patents, trademarks, and trade names) to
> a subsidiary incorporated for that purpose (an "intangible holding
> company") that is domiciled in a state which does not tax income
> from intangibles, generally Delaware.  The intangible holding
> company then licenses the intangibles to the parent corporation . . .
> in exchange for the payment of royalties, which the licensees
> deduct on their state income tax returns in the states where they
> conduct business.  However, the intangible holding company does
> not file income tax returns in those states because it is not
> physically present there, and thus its royalty income is not subject
> to state income tax.

*Id.* at 552-53.  This mechanism only operates to avoid state taxation in "separate reporting states"

– that is, "states in which each corporation [even within a corporate family] files a separate

income tax return."  *Id.* at 553.  IHC's "do not reduce state income taxes in 'combined reporting'

states," wherein "an affiliated group of corporations engaged in a common enterprise . . . file a

combined income tax return."  *Id.*  In these states, "the intercompany transactions are

eliminated."  *Id.*[2]

---

[1] "Under both the Due Process and the Commerce Clauses of the [United States] Constitution, a State may not, when imposing an income-based tax, 'tax value earned outside its borders.'"  *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983) (quoting *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982)).  Rather, a state is permitted to tax a corporation on "an apportionable share of the multistate business carried on in part in the taxing State."  *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 778 (1992); *see also Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977) ("[A] tax [will be sustained] against [a] Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.").

[2] As a result of its business activities during the years in issue, Kohl's Illinois filed tax returns in both separate and combined reporting states.  Specifically, Kohl's Illinois filed separate returns in the following states: Arkansas, Florida, Iowa, Louisiana, New Jersey, New

Generally speaking, Virginia is a separate reporting state.  Code § 58.1-400.  In 2004, the General Assembly sought to close the IHC loophole by enacting an "add back" statute, Code § 58.1-402(B)(8)(a).  Department of Taxation, 2004 Special Session I, Fiscal Impact Statement for HB 5018 (estimating that the add back statute would increase the Commonwealth's tax revenue by $34 million in 2005).  Under Code § 58.1-402(A), corporate taxpayers calculate their Virginia taxable income by starting with their federal taxable income and then making certain adjustments.  The add back statute requires corporations to add to their federal taxable income "the amount of any intangible expenses and costs" paid to their "related members to the extent such expenses and costs were . . . deducted in computing federal taxable income."  Code § 58.1-402(B)(8)(a).

The parties do not contest that Kohl's royalty payments were "intangible expenses and costs" paid to a "related member."  However, Kohl's claims that they fall within the "subject-to-tax" exception to the add back statute.  This exception provides that the "addition shall not be required for any portion of the intangible expenses and costs if . . . [t]he corresponding item of income received by the related member is subject to a tax based on or measured by net income or capital imposed by . . . another state."  Code § 58.1-402(B)(8)(a)(1).  Kohl's Illinois included the royalties as income in each of its state tax returns.  This income was then apportioned and taxed by each of these states.  The royalties, in Kohl's view, therefore qualify for the subject-to-tax exception, and Kohl's did not add them back when calculating its Virginia taxable income for the taxable year that ended on January 31, 2009.  Kohl's further requested a refund for the royalties

---

Mexico, North Carolina, Oklahoma, and South Carolina (collectively, the "Separate Return States").  Kohl's and Kohl's Illinois filed combined returns in the following states: Alaska, California, Idaho, Illinois, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New York, North Dakota, Oregon, Utah, Vermont, West Virginia, and Wisconsin (collectively, the "Combined Return States").

it mistakenly added back to its taxable income for the taxable year that ended on January 30, 2010.

In February 2011, the Virginia Department of Taxation audited Kohl's returns for both of the taxable years at issue.  The auditor recognized that Kohl's Illinois paid income tax on a portion of the royalties, through the apportionment process, in many of the Separate Return States.  The auditor allowed a "partial exception" to the add back statute corresponding to the amount of the royalties that was actually taxed in these states.[3]  However, Kohl's Illinois did not pay taxes on most of the royalties, and the auditor required that this untaxed portion be added back to Kohl's taxable income.  The Department then issued a Notice of Assessment to Kohl's for the taxable year that ended on January 31, 2009 in the amount of $1,165,318.16 in tax plus $120,682.26 in interest.  For the taxable year that ended on January 30, 2012, the Department issued a Notice of Assessment in the amount of $681,582.84 in tax plus $29,466.79 in interest.

Kohl's appealed to the State Tax Commissioner, requesting corrections to both Notices of Assessment.  The Commissioner found that the auditor correctly "reduced the royalty add back exception to the portion of [Kohl's] royalties paid to [Kohl's Illinois] that corresponds to the portion of [Kohl's Illinois's] income subjected to tax in other states."  Accordingly, the Commissioner upheld the assessments.

Kohl's then filed an "Application for Correction of Erroneous Assessment and Refund of Corporation Income Taxes" in the circuit court.  Kohl's primarily contended that the royalty payments only needed to be included in Kohl's Illinois's taxable income, regardless of whether they were actually taxed, to fall within the subject-to-tax exception.  The Department responded that only the portion of the royalty payments that was actually taxed by other states qualifies for

---

[3] These states were Arkansas, Iowa, Louisiana, New Jersey, New Mexico, North Carolina, Oklahoma, and South Carolina.

4

the exception.  Kohl's alternatively argued that even if the exception only covers the amount that

was actually taxed, the Department's calculation of that amount was incorrect.

The parties submitted a joint stipulation of facts, wherein they agreed that

> it shall not be necessary for Kohl's to put on evidence of the
> amounts of the [subject-to-tax] exception or the resulting
> additional [corporate income tax] and interest that follows from
> [the circuit court's] ruling on the application of [the add back
> statute].  After [the circuit court's] ruling, the parties will confer
> and attempt to agree on any additional [corporate income tax] and
> interest amounts.

Both parties moved for summary judgment, agreeing "that the sole issue for the [circuit court] to

decide is the extent to which Kohl's is entitled to the [subject-to-tax] exception to the add back

statute."  *Kohl's Dep't Stores, Inc. v. Va. Dep't of Taxation*, 91 Va. Cir. 499, 504-05 (2016).  The

circuit court issued an opinion denying Kohl's motion for summary judgment and granting the

Department's.  *Id.* at 506.  It held that "to fall within the [subject-to-tax] exception, the intangible

expenses paid to a related member must not only be subject to a tax in another state, but that tax

must actually be imposed."  *Id.* at 505.  The circuit court's opinion did not address Kohl's

alternative argument.  *Id.* at 504-06.  We granted Kohl's this appeal.

## II. Analysis

A.  Applicability of the Subject-To-Tax Exception

As in the circuit court, the primary contention between the parties on appeal is the extent

to which Kohl's is entitled to the subject-to-tax exception of Code § 58.1-402(B)(8)(a)(1).  The

statute provides, in relevant part:

> B.  There shall be added to the extent excluded from federal
> taxable income:
>
> 8.  a. . . . [T]he amount of any intangible expenses and costs
>     directly or indirectly paid, accrued, or incurred to, or in
>     connection directly or indirectly with one or more direct

5

> or indirect transactions with one or more related members
> to the extent such expenses and costs were deductible or
> deducted in computing federal taxable income for
> Virginia purposes.  This addition shall not be required for
> any portion of the intangible expenses and costs if one of
> the following applies:
>
> (1) The corresponding item of income received by the
>     related member is subject to a tax based on or measured
>     by net income or capital imposed by Virginia [or]
>     another state . . . .

Code § 58.1-402(B).

Kohl's argues that all of the royalties fall within the subject-to-tax exception because they were included in the taxable income of Kohl's Illinois.  In its view, if income is included in the computation of a corporation's taxable income in another state, then it is "subject to a tax based on or measured by net income."  Code § 58.1-402(B)(8)(a)(1).  The Department responds that while all of the royalties were included in the taxable income of Kohl's Illinois, a substantial portion of these royalties was not attributable to any state in which Kohl's Illinois filed its returns and, as a result, not subject to a tax imposed by another state.  In other words, Kohl's argues that the subject-to-tax exception applies on a "pre-apportionment" basis, while the Department argues that the subject-to-tax exception applies on a "post-apportionment" basis.

In resolving this dispute, we note that because the Department is charged with the responsibility of administering and enforcing the tax laws of the Commonwealth under Code § 58.1-202, its interpretation of a tax statute is entitled to great weight.  *Webster Brick Co. v. Department of Taxation*, 219 Va. 81, 84-85, 245 S.E.2d 252, 255 (1978).  However, "[w]hen a [tax] statute, as written, is clear on its face, this Court will look no further than the plain meaning of the statute's words."  *Department of Taxation v. Delta Air Lines, Inc.*, 257 Va. 419, 426, 513 S.E.2d 130, 133 (1999).  The Court's primary objective is to give effect to the legislative intent,

6

which "is initially found in the words of the statute itself, and if those words are clear and

unambiguous, we do not rely on rules of statutory construction." *Crown Cent. Petroleum Corp.*

*v. Hill*, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997).

As stated above, the subject-to-tax exception applies when "[t]he corresponding item of

income received by the related member is subject to a tax based on or measured by net income or

capital imposed by . . . another state." Code § 58.1-402(B)(8)(a)(1).  It is not clear from this

language whether the General Assembly intended the exception to apply on a pre- or post-

apportionment basis.  Notably, the phrase "subject to a tax" is not defined by the Code.  Seeking

to provide a definition, Kohl's points out that the term "taxable" is defined as "subject to

taxation." *Black's Law Dictionary* 1688 (10th ed. 2014).  From this definition, Kohl's reasons

that the royalty payments need only be "taxable" – regardless of whether they are actually taxed

– to fall within the subject-to-tax exception.  But this does not settle the issue, for the Due

Process and Commerce Clauses of the United States Constitution mandate that only the amount

of a corporation's income that is fairly apportionable to a given state is legally subject to that

state's income tax. *Container Corp.*, 463 U.S. at 164.[4]

---

[4] Kohl's also attempts to provide a definition of "subject to a tax" by citing to a 1985
Department regulation, which states that

> [a] corporation is "subject to" [income tax] . . . if it carries on
> sufficient business activity within any other state so that the other
> state has jurisdiction to impose one of the enumerated taxes,
> whether or not such other state actually imposes one of the
> enumerated taxes.

23 VAC § 10-120-120.  In Kohl's view, this regulation indicates that only the "jurisdiction" to
tax is necessary for income to be subject to a tax, regardless of whether that jurisdiction is
exercised.  However, this regulation defines when a corporation, not income, is subject to a tax.
A state's jurisdiction to tax a corporation does not include the authority to tax all of that
corporation's income, which is inherently divisible and only taxable to the extent it can be fairly
apportioned to the state. *Complete Auto Transit*, 430 U.S. at 279.

In fact, both of the parties' positions find support in the statute's language.  Because the royalties were included in Kohl's Illinois's taxable income, they were, to a certain extent, "subject to" the income taxes of other states.  At the same time, a substantial amount of the royalties was not apportioned to, and thereby not legally "subject to" the income tax of, any state in which Kohl's Illinois filed a return.  Phrased differently, an income tax could only by "imposed by" another state on the post-apportioned amounts of the royalties.  Code § 58.1-402(B)(8)(a)(1).  This principle is demonstrated in Kohl's 2009 Virginia Income Tax Return, which indicates that less than 4% of Kohl's "taxable income" was "*apportioned* to Virginia," and that only this post-apportioned amount was "*subject to* Virginia Tax."  (Emphases added.)  Thus, the General Assembly's decision to limit the applicability of the subject-to-tax exception to when the income is "subject to" an income tax "imposed by" another state suggests that it intended the exception to apply on a post-apportionment basis.  Code § 58.1-402(B)(8)(a)(1).[5]

Therefore, looking only at the plain language of the statute, it is doubtful and uncertain whether the General Assembly intended the subject-to-tax exception to apply on a pre- or post-apportionment basis.[6]  *Newberry Station Homeowners Ass'n v. Board of Supervisors*, 285 Va.

---

[5] The parties stipulated that "[t]he royalties that Kohl's Illinois received from Kohl's were subject to a tax based on or measured by net income or capital in each of the Separate Return States."  However, under the Due Process and Commerce Clauses of the United States Constitution, only that income which is fairly apportionable to a state is subject to that state's income taxes.  *Container Corp.*, 463 U.S. at 164.  The parties cannot avoid application of this legal principle through a stipulation.  *Swift & Co. v. Hocking Valley R.R.*, 243 U.S. 281, 289 (1917) ("If [a] stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative.").

[6] The dissent points to legislation that was proposed in, but not enacted by, the General Assembly in 2010 and 2013.  These bills would have amended the subject-to-tax exception to unambiguously apply on a post-apportionment basis.  *See* S.B. 407, Va. Gen. Assem. (Reg. Sess. 2010); S.B. 1036, Va. Gen. Assem. (Reg. Sess. 2013).  The General Assembly subsequently accomplished this goal through its 2014 and 2016 appropriations acts, which state that the subject-to-tax exception "shall be limited and apply *only to the portion* of such income received by the related member, which *portion is attributed to a state* . . . in which the related member has sufficient nexus to be subject to such taxes."  2014 Acts ch. 2, § 3-5.10; 2016 Acts ch. 780, § 3-

604, 614, 740 S.E.2d 548, 553 (2013) (A "statute is ambiguous when its language is capable of

more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or

uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness or

definiteness, particularly where its words have either no definite sense or else a double one."

(citation and internal quotation marks omitted)). "When the proper construction of a law is not

clear from the words of a statute, the legislative intent is to be 'gathered from the occasion and

necessity of the law, . . . the causes which moved the Legislature to enact it.'" *Ambrogi v.*

*Koontz*, 224 Va. 381, 386-87, 297 S.E.2d 660, 663 (1982) (quoting *Vicars v. Sayler*, 111 Va.

307, 309, 68 S.E. 988, 989 (1910)).

By enacting the add back statute, the Commonwealth joined numerous states[7] with

legislation "designed primarily to prevent the deduction of royalties and interest paid to related

intangible holding companies." Amdur, *supra*, 11 A.L.R. 6th at 556. Before the General

Assembly passed House Bill 5018, the relevant portion of which was codified as Code § 58.1-

402(B), the Department estimated in its fiscal impact statement that the add back statute would

raise the Commonwealth's annual tax revenue, specifically by $34 million in 2005. Department

of Taxation, 2004 Special Session I, Fiscal Impact Statement for HB 5018. Yet, accepting

5.09 (emphases added). These legislative acts provide examples of how the subject-to-tax
exception could be unambiguously worded to apply on a post-apportionment basis. But they do
not contradict our conclusion that the version of the statute before us is ambiguous.

[7] In addition to Virginia, the following jurisdictions have enacted legislation aimed at
closing the IHC loophole: Alabama, Ala. Code § 40-18-35(b); Arkansas, Ark. Code Ann. § 26-
51-423(g)(1); Connecticut, Conn. Gen. Stat. § 12-218(c); District of Columbia, D.C. Code § 47-
1803.02; Georgia, Ga. Code Ann. § 48-7-28.3; Illinois, 35 Ill. Comp. Stat. 5/203(a)(2); Indiana,
Ind. Code § 6-3-2-20; Kentucky, Ky. Rev. Stat. Ann. § 141.205; Maryland, Md. Code Ann., Tax-
Gen. § 10-306.1; Massachusetts, Mass. Gen. Laws ch. 63, § 31I; Michigan, Mich. Comp. Laws §
208.1201; Mississippi, Miss. Code Ann. § 27-7-17; New Jersey, N.J. Stat. Ann. § 54:10A-4.4;
New York, N.Y. Tax Law § 208; North Carolina, N.C. Gen. Stat. § 105-130.7A; Ohio, Ohio
Rev. Code Ann. § 5733.042; South Carolina, S.C. Code Ann. § 12-6-1130; Tennessee, Tenn.
Code Ann. § 67-4-2006(b).

Kohl's argument would effectively negate the add back statute's intended operation and

undermine this expected revenue.  Under a pre-apportionment interpretation, corporations could

avoid the application of the add back statute by paying royalties to a related member in a state in

which its apportionment factor is insignificant.  This result would resurrect the loophole that the

add back statute was designed to close.

Moreover, we have repeatedly held that when a statute's language is of doubtful import,

the construction given to it by a state official charged with its administration may be considered.

*Department of Taxation v. Progressive Community Club, Inc.*, 215 Va. 732, 739, 213 S.E.2d 759,

763 (1975) (citing *Commonwealth v. Research Analysis*, 214 Va. 161, 198 S.E.2d 622 (1973));

*Anglin v. Joyner*, 181 Va. 660, 667, 26 S.E.2d 58, 60 (1943) ("[I]n construing a statute of

doubtful import the court should give due weight to the interpretation placed upon the statute by

that branch of the executive department of the State which is specifically charged with the duty

of construing and effectuating its provisions." (citing *City of Richmond v. Drewry-Hughes Co.*,

122 Va. 178, 190, 94 S.E. 989, 991 (1918)).[8]  The Department is "[c]harged with the

responsibility of administering and enforcing the tax laws of the Commonwealth," including the

---

[8] While it is true that

> the rule of interpretation which permits the courts to look at the
> practical construction adopted by executive officers is usually
> applied to cases in which such construction has continued and been
> acquiesced in for a long period of time[,] . . . it is not to be
> confined to such cases.  One reason for the rule is that the officers
> charged with the duty of carrying new laws into effect are
> presumed to have familiarized themselves with all the
> considerations pertinent to the meaning and purpose of the new
> law, and to have formed an independent, conscientious and
> competent expert opinion thereon.

*Richmond Food Stores, Inc. v. Richmond*, 177 Va. 592, 599, 15 S.E.2d 328, 331 (1941) (quoting
*Drewry-Hughes*, 122 Va. at 193, 94 S.E. at 992).

subject-to-tax exception. *LZM, Inc. v. Department of Taxation*, 269 Va. 105, 109, 606 S.E.2d 797, 799 (2004). The construction of this exception which it advocates, and which we apply, is reasonable. *See Verizon Online LLC v. Horbal*, 293 Va. 176, 182, 796 S.E.2d 409, 412 (2017) (As "[t]he Department of Taxation and the Tax Commissioner administer and enforce the Commonwealth's tax laws, . . . a court will afford great weight to their interpretation when the statute's meaning is doubtful.").

In sum, an interpretation of the subject-to-tax exception that would result in a taxpayer's ability to avoid the add back statute would be unreasonable in light of the statute's purpose and intent. We therefore hold that the subject-to-tax exception applies only to the extent that the royalty payments were actually taxed by another state. That is, the exception applies on a post-apportionment, rather than a pre-apportionment, basis.

B. Kohl's Alternative Argument

Kohl's alternatively argues that the Department erred in calculating the amount of the royalties that falls within the subject-to-tax exception. The Department allowed a "partial exception" to the add back statute to the extent that the royalty payments were apportioned and taxed in many of the Separate Return States. However, Kohl's Illinois's income was also included in Kohl's taxable income calculations in the Combined Return States. Additionally, Kohl's was required to add the royalties back to its taxable income when calculating its taxable income for Connecticut, Maryland, and Massachusetts, and it added a portion of the royalties back when calculating its taxable income for Georgia and New Jersey (collectively, the "Addback States"). Kohl's argues that to the extent the royalties were apportioned to and taxed by all of the above states, they fall within the subject-to-tax exception. We agree.

The subject-to-tax exception applies when "[t]he corresponding item of income received

11

by the related member is subject to a tax based on or measured by net income or capital imposed by Virginia [or] another state." Code § 58.1-402(B)(8)(a)(1). This statute only requires that the "item of income received by the related member" – in this case, the royalties – be taxed by another state. It does not require that that the related member be the entity that pays the tax on that "item of income." *Id*.

Nevertheless, the Department notes that the add back statute only applies to any intangible expenses paid to a "related member," Code § 58.1-402(B)(8)(a), and that the subject-to-tax exception only applies to "[t]he corresponding item of income received *by the related member*." Code § 58.1-402(B)(8)(1) (emphasis added). From these provisions, the Department reasons that the Court can only look to Kohl's Illinois's tax returns when determining whether the royalty payments were subject to a tax in another state. In essence, this argument asserts that for the royalty payments to fall within the subject-to-tax exception, the tax must have been paid by the related member.

Simply, Code § 58.1-402(B)(8)(a)(1) contains no such requirement. To the extent that the royalties were actually taxed by the Separate Return States, Combined Return States, or Addback States, they fall within the subject-to-tax exception regardless of which entity paid the tax. The Department should have allowed this portion of the royalties to be excepted from the add back statute.

### III.  Conclusion

The circuit court correctly determined that only the portion of the royalties that was actually taxed by another state falls within the subject-to-tax exception. However, it erred by failing to hold, in accordance with Kohl's alternative argument, that Kohl's Illinois need not be the entity that pays this tax for the exception to apply. Accordingly, we reverse the circuit

12

court's judgment and remand the matter for a determination of what portion of the royalty

payments was actually taxed by another state and, therefore, excepted from the add back statute.

*Reversed and remanded.*


JUSTICE McCLANAHAN, with whom CHIEF JUSTICE LEMONS and JUSTICE KELSEY join, dissenting.

I disagree with the Court's holding in Part II.A. of its opinion that Code § 58.1-402(B)(8)(a)(1) "applies on a post-apportionment, rather than a pre-apportionment, basis."  In my view, the Court has inserted an apportionment calculation into this provision that is not supported by the provision's plain language.

## I.

Code § 58.1-402(B)(8)(a)(1) provides that the addition to taxable income of royalties paid to a related member "shall not be required for *any portion* of the intangible expenses and costs *if* . . . [t]he corresponding item of income received by the related member is subject to a tax based on or measured by net income or capital imposed by . . . another state." (Emphases added.) The parties stipulated that "[t]he royalties that Kohl's Illinois received from Kohl's were subject to a tax based on or measured by net income or capital in each of the Separate Return States." Thus, the addition to income was not required "for *any portion*" of the royalties that Kohl's paid to Kohl's Illinois.  *Id.* (emphasis added).

Although the majority states "it is doubtful and uncertain whether the General Assembly intended" Code § 58.1-402(B)(8)(a)(1) to apply on a pre-apportionment or post-apportionment basis, this provision contains no apportionment language that would support its application on a

13

post-apportionment basis.[1]  The majority has found an ambiguity by crediting the interpretation

of this provision by the Virginia Department of Taxation that does not comport with the

provision's plain language.  The majority then resolves the supposed ambiguity by deferring to

the Department's construction as a reasonable one in consideration of expected revenue as

reflected in a Department fiscal impact statement.  Because I believe Code § 58.1-

402(B)(8)(a)(1) is unambiguous, I would not defer to the Department's contrary interpretation.

*See Verizon Online LLC v. Horbal*, 293 Va. 176, 182, 796 S.E.2d 409, 412 (2017) (noting that

courts do not defer to the Department's interpretation of an unambiguous tax statute).

Since the Virginia Tax Commissioner first issued a ruling in which it imposed an

apportionment limitation on the application of Code § 58.1-402(B)(8)(a)(1), efforts to codify the

Department's interpretation of this provision through amendment of Code § 58.1-402 have been

undertaken.[2]  In 2010, a bill to amend and reenact Code § 58.1-402 was proposed, which would

have revised Code § 58.1-402(B)(8)(a) to provide that the addition to taxable income for

royalties paid to a related member shall not be required "to the extent that" the corresponding

item of income received by the related member is subject to a tax.  *See* S.B. 407, Va. Gen.

Assem. (Reg. Sess. 2010) (offered January 13, 2010) (stating that "[t]his addition shall not be

required for any portion of the intangible expenses and costs ~~if~~ *to the extent that* one of the

---

[1] Under the majority's post-apportionment method, Code § 58.1-402(B)(8)(a)(1) applies
after the income received by the related member is apportioned and only to the extent such
portion is actually taxed in another state.

[2] In 2007, when the Commissioner issued its first ruling interpreting Code § 58.1-
402(B)(8)(a)(1), it limited application of the provision "to the portion of the Taxpayer's royalty
payments to its [affiliate] that correspond to the portion of the [affiliate's] income subjected to
tax in other states, as evidenced by the apportionment percentages shown in the [affiliate's] tax
returns filed with other states."  Va. Dep't of Taxation, Pub. Doc. 07-153 (Oct. 2, 2007).  In
limiting the provision's application in this manner, the Commissioner inserted an apportionment
calculation into the provision that it does not contain.

following applies. . .") (deletion indicated by strikethrough text and additions indicated by

italicized text).  Senate Bill 407 was stricken at the request of its patron.[3]  In 2013, a bill to

amend and reenact Code § 58.1-402 was proposed, which would have made the following

revision to Code § 58.1-402(B)(8)(a)(1): "This addition shall not be required for any portion of

the intangible expenses and costs if one of the following applies *to such portion*: (1) The

~~corresponding~~ item of income *corresponding to such portion* received by the related member is

subject to a tax . . ."  S.B. 1036, Va. Gen. Assem. (Reg. Sess. 2013) (offered January 9, 2013)

(deletion indicated by strikethrough text and additions indicated by italicized text).  Senate Bill

1036 was also stricken at the request of its patron.

     While Code § 58.1-402 has not been amended, the General Assembly enacted budget

bills in 2014 and 2016 that include provisions applying the Department's apportionment

limitation to Code § 58.1-402(B)(8)(a)(1).  The relevant part of these Acts states:

> *Notwithstanding* the provisions of § 58.1-402(B)(8), Code of Virginia, for
> taxable years beginning on and after January 1, 2004:
>
> (i) The exception in § 58.1-402(B)(8)(a)(1) for income that is subject to a
> tax based on or measured by net income or capital imposed by Virginia,
> another state, or a foreign government *shall be limited and apply only to the
> portion of such income received by the related member, which portion is
> attributed to a state or foreign government in which the related member has
> sufficient nexus to be subject to such taxes.*

2014 Acts ch. 2, § 3-5.10 (effective for the biennium ending June 30, 2016); 2016 Acts ch. 780,

§ 3-5.09 (effective for the biennium ending June 30, 2018) (emphases added).[4]

---

[3] The same amendment was included in budget bills introduced during the 2010 session,
*see* H.B. 29, Va. Gen. Assem. (Reg. Sess 2010); S.B. 29, Va. Gen. Assem. (Reg. Sess 2010) and
H.B. 30, Va. Gen. Assem. (Reg. Sess. 2010); S.B. 30, Va. Gen. Assem. (Reg. Sess. 2010), but
was removed prior to enactment.

[4] Although the provisions regarding Code § 58.1-402(B)(8)(a) in these Acts contain
retroactive language, the Department does not invoke these provisions but relies solely on Code
§ 58.1-402(B)(8)(a).  Therefore, the provisions of the 2014 and 2016 budget bills are not at issue
in this case.

"Notwithstanding" is defined as "despite" or "in spite of."  Black's Law Dictionary 1231 (10th ed. 2014).  Thus, the opening clause, "[n]otwithstanding the provisions of § 58.1-402(B)(8)," means that the language that follows imposes an apportionment limitation contrary to the provisions of Code § 58.1-402(B)(8)(a)(1).[5]

In adopting the Department's interpretation of Code § 58.1-402(B)(8)(a)(1), the majority has inserted into this provision apportionment language reflected in proposed amendments that have not been enacted and provisions of the 2014 and 2016 budget bills that are not at issue here.  As we have held, however, "[c]ourts must not construe the plain language of a statute in a way that adds a requirement that the General Assembly did not expressly include in the statute."  *David v. David*, 287 Va. 231, 240, 754 S.E.2d 285, 290 (2014).  The ability to avoid the add back statute, which the majority seeks to prevent, "cannot be remedied through judicial construction by imposing [an apportionment] requirement that effectively would add new language to the statute.  Any such change to the statute must be a legislative, rather than a judicial, undertaking."  *Vaughn, Inc. v. Beck*, 262 Va. 673, 679, 554 S.E.2d 88, 91 (2001).  In fact, the provisions contained in the 2014 and 2016 budget bills that impose an apportionment limitation on the application of Code § 58.1-402(B)(8)(a)(1) are just such a change.  Code § 58.1-402(B)(8)(a)(1), though, which is the only provision at issue in this case, contains no such language.

---

[5] *See also* Craig D. Bell, Annual Survey of Virginia Law: Taxation, 49 U. Rich. L. Rev. 171, 174 (2014) (noting that the budget bill supplied the language missing from § 58.1-402(B)(8)(a)(1) to justify the Commissioner's construction of the provision, "overc[ame] the Tax Department's failure in the 2013 General Assembly to codify its desired interpretation of [Code § 58.1-402(B)(8)(a)(1)]," and enabled the legislature to "avoid the appropriate tax-writing committees" and "debate over the issues and the implications that typically occur in a public setting").

II.

Even if I agreed with the majority that Code § 58.1-402(B)(8)(a)(1) is ambiguous, which I do not, I would nevertheless resolve any ambiguity in favor of Kohl's.

First, because Code § 58.1-402 is a general tax statute, any ambiguity must be resolved in favor of the taxpayer.[6] "Statutes imposing taxes must be construed most strongly against the Commonwealth and in favor of the taxpayer.  Such enactments should not be extended by implication beyond the clear import of the language used." *Commonwealth v. General Elec. Co.*, 236 Va. 54, 64, 372 S.E.2d 599, 605 (1988) (reciting principle in connection with consideration of Code § 58-151.083 (predecessor to Code § 58.1-446) permitting Department to combine income of affiliated corporations and adjust income tax).  "Whenever there is a just doubt, 'that doubt should absolve the taxpayer from his burden.'" *Commonwealth Natural Resources, Inc. v. Commonwealth*, 219 Va. 529, 537-38, 248 S.E.2d 791, 796 (1978) (quoting *Commonwealth v. Appalachian Elec. Power Co.*, 193 Va. 37, 46, 68 S.E.2d 122, 127 (1951)).  Therefore, to the extent there is doubt as to whether Code § 58.1-402(B)(8)(a)(1) applies on a post-apportionment basis, thus requiring the addition to taxable income of some portion of royalties, that doubt should be resolved in Kohl's favor.

Furthermore, the stated purpose of Code § 58.1-402(B)(8)(a) was to close a loophole in connection with Delaware holding companies, not corporations for which income is subject to tax.  The fiscal impact statement referenced by the majority, Department of Taxation, 2004

---

[6] Code § 58.1-402 contains provisions governing the calculation of Virginia taxable income for the taxation of corporations.  Code § 58.1-402(A) states, in pertinent part: "For purposes of this article, Virginia taxable income for a taxable year means the federal taxable income and any other income taxable to the corporation under federal law for such year of a corporation adjusted as provided in [the following] subsections."  Code § 58.1-402(B)(8)(a) requires the addition of "the amount of any intangible expenses and costs directly or indirectly paid, accrued, or incurred to . . . one or more related members to the extent such expenses and costs were deductible or deducted in computing federal taxable income for Virginia purposes."

17

Special Session I, Fiscal Impact Statement for H.B. 5018, states that the addback statute "[c]loses certain loopholes related to Delaware holding companies."  The legislative summary accompanying H.B. 5018 similarly states that the bill "[r]equires additions to federal taxable income for certain deductions for intangible and interest expense, but provides certain safe-harbors related to Delaware holding companies."  *See* H.B. 5018, Summary as Passed, *available at* https://lis.virginia.gov/cgi-bin/legp604.exe?ses=042&typ=bil&val=hb5018.[7]  Thus, the original purpose as stated in the legislative summary and fiscal impact statement accompanying H.B. 5018 reflect the General Assembly's intention to close loopholes related to holding companies for which income is not subject to tax in any state, such as Delaware holding companies.[8]  Construing Code § 58.1-402(B)(8)(a)(1) to require the addition to income of royalties paid to a corporation for which income is subject to tax in another state would exceed the stated purpose of the legislation.

Finally, the efforts to amend Code § 58.1-402(B)(8)(a)(1) to impose an apportionment limitation on its application reveal that the provision contains no such limitation.  As discussed in Part I, the General Assembly failed to enact bills proposed during the 2010 and 2013 legislative sessions, both of which included language that would have codified the apportionment limitation adopted by the Department.  Budget bills enacted in 2014 and 2016 contain provisions purporting to place an apportionment limitation on the application of Code § 58.1-

---

[7] *See also* Craig D. Bell, Annual Survey of Virginia Law: Taxation, 39 U. Rich. L. rev. 413, 424 (2004) ("In a conscious effort to curtail the benefits of using Delaware holding companies in Virginia, the 2004 General Assembly significantly curtailed the benefits by requiring additions to be made to federal taxable income for certain deductions claimed for intangible property and interest expenses related to Delaware holding companies.").

[8] *See, e.g.,* Del. Code Ann. tit. 30, § 1902(b)(8) (providing an exemption from Delaware income tax for corporations "whose activities within [Delaware] are confined to the maintenance and management of their intangible investments").

402(B)(8)(a)(1).  It is reasonable, therefore, to conclude that these efforts were not undertaken in

vain, but rather to provide language that would codify the Department's adoption of the

apportionment limitation.

III.

In sum, I would hold that Code § 58.1-402(B)(8)(a)(1), by its plain language, does not

apply on a post-apportionment basis.  Even if there were doubt as to whether the provision

contained such a limitation, statutory construction principles require that we resolve it in favor of

Kohl's.  For these reasons, I would hold that Kohl's is entitled to a full refund and would,

accordingly, reverse the judgment of the circuit court.[9]

---

[9] Because I would hold that Code § 58.1-402(B)(8)(a)(1) does not apply on a post-apportionment basis and that Kohl's is entitled to a full refund, I would not reach the alternative argument made by Kohl's, which is addressed by the Court in Part II.B. of the majority opinion.