Steven T. Gubner, Esq.
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099

*Special Litigation Counsel for Alfred H. Siegel,
Liquidating Trustee*

Andrew W. Caine (admitted pro hac vice)
PACHULSKI, STANG, ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Facsimile: (804) 783-0178

*Counsel for the Trustee of the Circuit City Stores, Inc.
Liquidating Trust*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| *In re* | Case No. 08-35653 (KRH) |
| CIRCUIT CITY STORES, INC., *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |
| ALFRED H. SIEGEL, solely as Trustee of the Circuit City Stores, Inc. Liquidating Trust, and not in any individual or other capacity, | Adv. No. 18-_____ |
| Plaintiff, | |
| v. | |
| CALIFORNIA SELF-INSUREDS' SECURITY FUND and ANDRÉ SCHOORL, solely in his capacity as Acting Director of the California Department of Industrial Relations, | |
| Defendants. | |

**LIQUIDATING TRUSTEE'S COMPLAINT AGAINST THE CALIFORNIA SELF INSUREDS' SECURITY FUND AND ANDRÉ SCHROOL FOR BREACH OF SETTLEMENT AGREEMENT AND DECLARATORY RELIEF**

Alfred H. Siegel, the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust (the "**Trustee**"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "**Plan**"), files this complaint against the California Self-Insureds' Security Fund (the "**Fund**") and André Schoorl, solely as a nominal defendant in his capacity as Acting Director of the California Department of Industrial Relations (the "**Director**" and collectively with the Fund and the Trustee, the "**Parties**"), and alleges as follows:

**NATURE OF THE ACTION**

1.      On December 23, 2015, the Trustee filed a *Complaint for Declaratory Relief and Damages Owed to the Trust* against the Fund and the Director (the "**Turnover Complaint**"), commencing the adversary proceeding, *Siegel v. California Self Insurers' Security Fund*, Adv. No. 3:15-ap-03477-KRH (the "**Adversary Proceeding**"). The Adversary Proceeding concerned, among other things, the Trustee's demand for turnover from the Fund of excess letter of credit proceeds in the Fund's possession as a result of the Fund's postpetition draw-down on a letter of credit issued by Bank of America, N.A. in the amount of $14,119,256.00 ("**Letter of Credit**"). The Letter of Credit was in place pursuant to California law to ensure that sufficient funds were

1

available to satisfy California employee workers' compensation claims made against the Debtors.[1]

2. After defeating the Fund's motion to dismiss the Turnover Complaint, substantial discovery, and mediation, on or about September 16, 2016, the Trustee, the Fund, and the Director entered into that certain Confidential Settlement Agreement and Mutual Release (the "**Settlement Agreement**"), pursuant to which the Fund agreed to, among other things:

    a. Settle "all claims, disputes, and causes of action they have or may have against [the Trustee] related to, set forth in, or arising out of the Adversary Proceeding, the Proofs of Claim, the L/C Proceeds and all underlying facts, events and occurrences associated therewith, and any other aspect of their relationship and/or claims arising therefrom that exist or may have existed between them;"

    b. Return proceeds of the Letter of Credit in the amount of $5,350,000 (the "**Excess Letter of Credit Proceeds**") in full and final satisfaction of any and obligations the Fund may have to the Trust with respect to the Letter of Credit proceeds;

    c. Waive its right to seek to recover any amounts against the Trust with respect to previously withdrawn proofs of claim (which proofs of claim were extensive in nature and are discussed more fully below) and/or future claims; and

    d. Release the Trust, its beneficiaries, etc. from:[2]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

2

> [A]ny and all claims . . . rights, debts, contracts, agreements, **demands for payment** or other relief, and any obligations of any nature, in law, equity or of an administrative nature, whether now known or unknown, and whether or not such claim is liquidated, or contingent . . . relating to or in connection with any matter described herein, including specifically but not limited to the Proofs of Claim, the L/C, the Return of the L/C Proceeds, the Adversary Proceeding, or **arising out of the Parties' relationship in any way, shape or form whatsoever**.

3. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1** [to be filed under seal per confidentiality clause in Settlement Agreement, until otherwise ordered by the Court].

4. Notwithstanding the broad releases contained in the Settlement Agreement, the Fund has thereafter made demands for payment from the Debtors' excess worker's compensation insurance carrier, Old Republic Insurance Company ("**ORIC**") to satisfy certain Fund obligations that arise in connection with the Debtors' pending California workers' compensation claims that the Fund has been administering since its draw-down on the Letter of Credit.

5. Specifically, the Trustee is informed and believes, and based thereon alleges, that the Fund has received no less than $19,778.23 from ORIC relating to California workers' compensation claims filed against the Debtors, has submitted another demand for reimbursement in the amount of $4,257.94, and will continue to demand further reimbursements from ORIC on California workers' compensation claims filed against the Debtors (collectively, the "**Improper Reimbursements**").

6. By virtue of the Settlement Agreement, the Trust (*i.e.*, the Debtors—and thus, ORIC as the Debtors' excess insurance carrier) has no further liability on any California

---

[2] The Settlement Agreement included a broad release pursuant to California Civil Code § 1542 as well.

3

workers' compensation claims. By seeking reimbursement from ORIC, the Fund is in breach of the broad releases provided by the Settlement Agreement.

7. The Fund's demands for reimbursement payments from ORIC are depleting proceeds that ORIC would otherwise be obligated to pay to the Trustee in response to the Trust's demand for return of excess collateral from ORIC, as discussed in detail below. The Fund's breach of the Settlement Agreement release provision is directly and negatively impacting assets that belong to the Trust. In other words, while the Fund is taking direct action against ORIC, an unnamed beneficiary under the Settlement Agreement, the Fund is also taking indirect action against the Trustee and the Trust, which is in direct violation of the releases in the Settlement Agreement.

8. By this action, the Trust seeks a judgment determining that the Fund's actions constitute a breach of the Settlement Agreement and directing return of the Improper Reimbursements.

## PARTIES

9. The Trustee is the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust ("**Trust**"), successor in interest to the Debtors. Pursuant to Articles II and III of the Trust, the Trustee has the sole authority to pursue claims transferred to the Trust by the Debtors through the Plan and to seek any and all related relief.

10. The Trustee is informed and believes, and based thereon alleges, that the Fund is an entity created pursuant to California statute. The Fund was directed by the Department of Industrial Relations to assume administration of workers' compensation claims against the Debtors. Even though it was created by California law, the Fund is not a governmental unit

4

within the meaning of 11 U.S.C. § 101(27) or "arm of the state" or instrumentality of California. To the extent that the Fund is deemed to be either a governmental unit, an "arm of the state," or an instrumentality of California, then any sovereign immunity has been waived.

11. The Trustee is informed and believes, and based thereon alleges, that Defendant André Schoorl, is an individual and is the Acting Director of the California Department of Industrial Relations. The Trustee asserts claims against the Director solely as nominal defendant.

## JURISDICTION AND VENUE

12. This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

13. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(O) and pursuant to the proofs of claim filed by Defendants in this case.

14. Furthermore, pursuant to the Settlement Agreement, this Court retains exclusive jurisdiction over the Parties to the Adversary Proceeding for purposes of enforcing the terms of the Settlement Agreement.

15. Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409 and the terms of the Settlement Agreement, as the Debtors' underlying bankruptcy cases are pending before this Court.

16. The statutory and legal predicates for the relief requested in this Complaint are sections 105 of Title 11 of the United States Code ("**Bankruptcy Code**"), 28 U.S.C. § 2201, Rule 7065 of the Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rules**"), and applicable California law.

## GENERAL ALLEGATIONS

**A.    The Bankruptcy Case**

17.    On November 10, 2008 ("**Petition Date**"), Circuit City Stores, Inc. ("**Circuit City**") and Circuit City Stores West Coast, Inc. ("**CC-West**" and, with Circuit City, the "**Debtors**") filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

18.    Prior to the commencement of their chapter 11 cases, the Debtors were "self-insured" employers for purposes of their workers' compensation obligations.

19.    Because they elected to self-insure, the Debtors were required to post and maintain security deposits with the State of California Office of Self-Insurance Plans to ensure that sufficient funds were available to satisfy employee claims on an ongoing basis throughout any given year.

20.    In satisfaction of their obligations, on or about July 1, 2008, the Debtors obtained and posted a letter of credit issued by Bank of America, N.A. in the amount of $14,119,256.00 (previously defined as the "**Letter of Credit**").  This Letter of Credit remained in place after the filing of Debtors' bankruptcy petitions.

21.    Under the Labor Code, when a self-insured employer becomes unable to satisfy its workers' compensation obligations, the Fund is authorized to obtain possession of posted security in amounts necessary to satisfy employee claims and take over the administration and payment of the employer's workers' compensation liabilities.

22.    The Debtors also maintained excess coverage for worker's compensation and employer liabilities with ORIC, to whom the Debtors were obligated to pay premiums and to reimburse ORIC for payments on claims up to the deductible / retention level for each

6

occurrence, among other things. ORIC provides excess insurance coverage to the Debtors (and now the Trust) for California as well as many other states.

23.  After the Debtors filed for bankruptcy, the Fund was authorized by the Director to draw down on the entirety of the Debtors' Letter of Credit to satisfy alleged pending claims based on estimations of future liability of approximately $12,389,557.00 with specific excess insurance covering $1,797,219.00 of that sum (meaning that the Fund's admitted maximum possible exposure was significantly less than the full amount of the Letter of Credit). In so doing, the Fund included sums in its calculation amounts that would otherwise have been paid by excess carriers on account of the Debtors' workers compensation liabilities, such as ORIC.

24.  Similar to the Letter of Credit posted for the self-insured (or primary) level of the Debtors' workers' compensation obligations, the Debtors also posted various letters of credit on which ORIC drew down postpetition to secure ORIC's own obligations as an excess insurance carrier.

25.  ORIC continues to cover the Debtors' excess insurance liability in various states and uses the Debtors' posted letters of credit (the "**ORIC Letters of Credit**") to satisfy those obligations.

26.  Importantly, the Debtors' applicable policy with ORIC provides that ORIC will indemnify the Debtors for losses, and losses are defined as "amounts actually paid by you as a self-insurer."

27.  In addition to the Fund's postpetition draw-down on the Letter of Credit, during the Bankruptcy Case, the Fund filed Proof of Claim Nos. 11721, 11811, 14971, 14973, 15004, 15028, 15029, 15030, 15031 (the "**Proofs of Claim**"), pursuant to which the Fund asserted that it

7

was entitled to approximately $60 million in payments from the estates (above and beyond the Letter of Credit), plus additional unliquidated "reimbursement" claims.

28. The Fund's Proofs of Claim filed with the Court were generally based on two categories of contingent and unliquidated claims: (1) claims seeking the Debtors' reimbursement of workers' compensation claims made by employees of the Debtors for prepetition injuries that were filed by the employees postpetition and were paid by the Fund (Claim Nos. 11721, 11811, 14971, 14973, 15004, 15030, and 15031); and (2) claims in approximate amount of $60 million based on the Fund's assertion that it was entitled to reimbursement for prepetition and postpetition workers' compensation claims made by employees and paid by the Fund on behalf of the Debtors (Claim Nos. 15028 and 15029).

29. By these claims, the Fund represented to this Court, under penalty of perjury, that it was entitled to not only all of the Letter of Credit proceeds, but additional payment for the Claims of roughly $60 million, plus additional unliquidated "reimbursement" claims. None of the Fund's claims was accompanied by any supporting documentation concerning the underlying workers' compensation claims – there were no loss run reports or any facts demonstrating how the Fund calculated its claims.

30. After lengthy claims litigation between the Trustee and the Fund, on or about November 20, 2015, the Court entered an *Order Approving Stipulation Between Creditor California Self-Insurer's Security Fund and Circuit City Stores, Inc. Liquidating Trust Allowing Withdrawal of Claim*, pursuant to which the Court approved the Parties' stipulation to withdraw all Proofs of Claim with prejudice.

8

**B.**    **The Adversary Proceeding**

31.    On December 23, 2015, the Trustee filed the Turnover Complaint against the Fund and the Director, commencing the Adversary Proceeding.

32.    By the Turnover Complaint, the Trustee sought a declaration that any excess Letter of Credit proceeds were property of the Debtors' estates, for turnover of all excess Letter of Credit proceeds, and other damages.

33.    As noted above, on or about September 16, 2016, the Parties entered into the Settlement Agreement, which purported to resolve all claims between the Parties.  Upon full consummation of the Settlement Agreement, on or about September 27, 2016, the Parties stipulated to dismiss the Adversary Proceeding, which was closed by the Clerk on February 15, 2017.

34.    Pursuant to the Settlement Agreement, the Fund paid the Trustee the sum of $5,350,000 from the Letter of Credit proceeds it held, and kept the remaining proceeds to satisfy its continuing obligations on the Debtors' outstanding California workers' compensation claims. In so doing, the Fund estimated its remaining exposure to the best of its abilities at the time, and agreed that it held at least an excess of the settlement amount.

35.    Additionally, the Settlement Agreement releases all Parties and beneficiaries of Parties from any and all claims, demands for payment, and any obligations of any nature, whether now known or unknown, and whether or not such claim is liquidated, or contingent . . . relating to or in connection with the Proofs of Claim, the Letter of Credit, the return of Letter of Credit proceeds, the Adversary Proceeding, or "arising out of the Parties' relationship in any way, shape or form whatsoever."  Settlement Agreement, ¶ E.

36. The Settlement Agreement release is only restricted as follows:

> The release does not apply to any known or unknown claims the Director may have regarding other unrelated claims, including but not limited to claims involving the Director's regulatory authority over wage and hour and health and safety laws.

*Id.*

37. Despite the Fund's Proofs of Claim and the Trustee's initial complaint, among other things, having explicitly contemplated the existence of excess insurance coverage on the Debtors' workers' compensation claims, the Settlement Agreement release does not carve-out the right of the Fund to seek reimbursement from any of the Debtors' excess insurance carriers, such as ORIC.

C. **Fund Demands on ORIC**

38. In or around January 2018, the Trustee became aware that ORIC is keeping reserves of the ORIC Letters of Credit on the basis that, among other things, it believed it had continued exposure on California workers' compensation claims. The Trustee then discovered that the Fund had been issuing demands for reimbursement to ORIC on account of open California workers' compensation claims—the same claims that were known to the Fund during the pendency of the Adversary Proceeding and settlement negotiations.

39. To date, the Trustee is informed and believes, and based thereon alleges, that ORIC has paid the Fund no less $19,778.23 in Improper Reimbursements, that the Fund has submitted another demand for reimbursement in the amount of $4,257.94, and that the Fund will continue to seek reimbursements from ORIC in the future.

40. ORIC paid the Improper Reimbursements from ORIC Letter of Credit proceeds that the Trustee would otherwise be entitled to, had they not been improperly paid to the Fund.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief

41. The Trustee realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 40 as though fully set forth herein.

42. An actual controversy exists between the Trustee, on the one hand, and the Fund and Director, on the other hand, regarding the Fund's right to seek reimbursements from ORIC on California workers' compensation claims.

43. The Trustee asserts that the resolution of all disputes between the Trustee and the Fund in the Settlement Agreement encompassed the totality of the Debtors' workers compensation liabilities for California claims, including those that might implicate excess coverage. In other words, the Fund settled <u>all</u> liability regarding the Debtors' outstanding California workers compensation claims and did not reserve the right to seek reimbursement from the Debtors' excess insurance carriers, such as ORIC.

44. Had the Fund intended to reserve such a right, the Settlement Agreement should have so stated. The Settlement Agreement does not contain any carve-out or express right for the Fund to continue seeking reimbursements from excess carriers.

45. Because ORIC's reimbursement obligations are triggered upon amounts actually paid by the Debtors as self-insurers, ORIC's obligation to reimburse the Fund is extinguished because the Settlement Agreement broadly released the Parties and their beneficiaries from all

11

claims or demands for payment "arising out of the Parties' relationship in any way, shape or form whatsoever." Settlement Agreement ¶ II.E.

46. ORIC's reimbursement obligation on California workers' compensation claims arises out of the Parties' relationship; as such, the obligation was released in the Settlement Agreement.

47. ORIC is an unnamed "beneficiary" of the Settlement Agreement because, by virtue of the Settlement Agreement, ORIC's obligations with respect to outstanding California workers' compensation claims terminated.

48. The Trustee is informed and believes, and based thereon alleges, that the Fund disputes the Trustee's position on these issues, and asserts that the Fund has a direct right to recover reimbursements from ORIC, and that the e right was not contemplated or released by virtue of the Settlement Agreement.

49. Accordingly, the Trustee seeks a judgment declaring the rights of the Parties with respect to the Improper Reimbursements, and specifically declaring that, by entering into the Settlement Agreement, the Fund released its right to seek reimbursement from ORIC on any of the Debtors' California workers' compensation claims, and the Fund is prevented from seeking further reimbursements from ORIC on account of the Debtors' California workers' compensation claims.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

50. The Trustee realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 49 as though fully set forth herein.

51. By seeking the Improper Reimbursements from ORIC, the Debtors' excess worker's compensation insurance carrier, the Fund is breaching the release provision contained in the Settlement Agreement.

52. ORIC paid the Improper Reimbursements from ORIC Letter of Credit proceeds that the Trustee would otherwise be entitled to, had they not been improperly paid to the Fund.

53. The Settlement Agreement has been fully consummated, and the Trustee has performed all conditions, covenants and promises required to be performed under the Settlement Agreement.

54. As a direct result of the Fund's breach of the Settlement Agreement, the Trust has been damaged in an amount equal to the amount of Improper Reimbursements paid by ORIC to the Fund, in an amount according to proof at trial, but no less than $19,778.23.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests and prays for judgment as follows:

1. On the First Claim for Relief, for a judgment declaring that, by entering into the Settlement Agreement, the Fund released its right to seek reimbursement from ORIC on any of the Debtors' California workers' compensation claims, and the Fund is prevented from seeking further reimbursements from ORIC on account of the Debtors' California workers' compensation claims;

2. On the Second Claim for Relief, damages equaling the amount of Improper Reimbursements paid by ORIC to the Fund, in an amount according to proof at trial, but no less than $19,778.23;

3. On All Claims for Relief, for:

      a)    Prejudgment interest at the legally allowed applicable rate,

      b)    Costs and expenses of suit incurred herein, and

      c)    Such other and further relief as the Court deems just and proper under the circumstances.

DATED: MAY 8, 2018

By:   */s/ Lynn L. Tavenner*
Lynn L. Tavenner, Esq. (VSB No. 30083)
Paula S. Beran, Esq, (VSB 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: (804) 783-8300

-and-

Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910

*Counsel to Plaintiff, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

-and-

Steven T. Gubner, Esq.
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: (818) 827-9000

*Special Litigation Counsel to Plaintiff*

14

# EXHIBIT 1

To Be Filed Upon Entry of Order on Liquidating Trustee's Motion to File Settlement Agreement Under Seal

15