Steven T. Gubner, Esq.
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099

*Special Litigation Counsel for Alfred H. Siegel, Liquidating Trustee*

Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI, STANG, ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Lynn L. Tavenner, Esq. (VA Bar No. 30083)
Paula S. Beran, Esq. (VA Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Facsimile: (804) 783-0178

*Counsel for the Trustee of the Circuit City Stores, Inc. Liquidating Trust*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| *In re* | Case No. 08-35653 (KRH) |
| CIRCUIT CITY STORES, INC., *et al.,* | Chapter 11 |
| Debtors. | (Jointly Administered) |
| ALFRED H. SIEGEL, solely as Trustee of the Circuit City Stores, Inc. Liquidating Trust, and not in any individual or other capacity, | Adv. No. 19-_____ |
| Plaintiff, | |
| v. | |
| OLD REPUBLIC INSURANCE COMPANY, | |
| Defendant. | |

## LIQUIDATING TRUSTEE'S COMPLAINT AGAINST OLD REPUBLIC INSURANCE COMPANY FOR DECLARATORY RELIEF AND TURNOVER

Alfred H. Siegel, the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Trustee"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), solely in his capacity as Trustee, and not in any individual or other capacity, files this complaint against Old Republic Insurance Company ("ORIC"), and alleges as follows:

### NATURE OF THE ACTION

1.  Despite the fact that the Debtors have not incurred any new workers' compensation liability in over ten years and have not paid any monies on account of closed claims since 2012, ORIC, the Debtors' excess insurance carrier for workers' compensation obligations, insists on unreasonably retaining millions of dollars in excess letter of credit proceeds allocated for potential future medical exposure on closed claims—claims that have minimal, if any, potential future exposure.

2.  By this action, the Trustee seeks a judicial determination and a finding that, of the $17,474,099 currently held by ORIC for purposes of its Open and Closed Claim Reserves (defined below), only a small fraction is reasonable and necessary for ORIC to retain on account of the four remaining open claims and, further, that it is not reasonable and necessary for ORIC to retain any amount on account of closed claims. Accordingly, the Trustee seeks a determination of the reasonable and necessary reserve to be retained by ORIC and a ruling that all amounts in excess thereof be returned to the Trustee to be administered for the benefit of creditors of the Debtors.

## PARTIES

3. The Trustee is the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust ("Trust"), successor in interest to the Debtors. Pursuant to Articles II and III of the Trust, the Trustee has the sole authority to pursue claims transferred to the Trust by the Debtors through the Plan and to seek any and all related relief.

4. The Trustee is informed and believes, and based thereon alleges, that ORIC is a corporation organized under the laws of the State of Pennsylvania.

## JURISDICTION AND VENUE

5. This Court (as defined below) has jurisdiction to consider the above-captioned adversary proceeding (the "Adversary Proceeding") under 28 U.S.C. §§ 157 and 1334.

6. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(E) and (O).

7. Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409, as the Debtors' underlying bankruptcy cases are pending before this Court.

8. The statutory and legal predicates for the relief requested in this Complaint are sections 105 and 542 of Title 11 of the United States Code ("Bankruptcy Code") and 28 U.S.C. § 2201.

9. The Trustee consents to entry of final orders and judgment by this Court (defined below) in this Adversary Proceeding.

## GENERAL ALLEGATIONS

A. **The Bankruptcy Case**

10. On November 10, 2008 ("Petition Date"), Circuit City Stores, Inc. ("Circuit City") and its related entities (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court.").

11. Prior to the commencement of their chapter 11 cases, the Debtors were "self-insured" employers for purposes of their workers' compensation obligations.

12. In addition to self-insuring their workers' compensation obligations, the Debtors acquired workers' compensation excess liability insurance policies with ORIC, to whom the Debtors were obligated to pay premiums and to reimburse ORIC for payments on claims up to the deductible / retention level for each occurrence, among other things. Under these policies, self-insured retention (SIR) levels ranged from $300,000 to $2,000,000 per claim, meaning that excess insurance coverage became available once the SIR level had been reached and only for the amounts on a per claim basis that exceeded the SIR.

13. Pursuant to state requirements applicable to self-insurers of potential workers' compensation liability, the Debtors posted letters of credit totaling $36,020,048. Following the filing of the Debtors' petitions, ORIC drew down on the entirety of these letters of credit (the "ORIC Letters of Credit") to secure its obligations as the Debtors' excess insurance carrier, continued to cover the Debtors' excess insurance liability in various states and used the Debtors' posted letters of credit to satisfy those obligations.

3

14. The Debtors primarily operated out of retail locations, the vast majority of workers' compensation claims involved minor injuries. The average and median amounts paid to the Debtors' employees on workers' compensation claims was just under $8,000 per claim. Of the 5,813 claims reported within ten years prior to the Petition Date, 5,654 (or 97%) were closed as of October 31, 2008.

15. A few weeks after the Petition Date, the Court authorized the Debtors to, among other things, enter into sales of assets, discontinue all remaining operations, and conduct "going out of business" sales at the Debtors' remaining stores (the "Final Store Closing Sales").

16. The Final Store Closing Sales ran from January 17, 2009 to March 8, 2009, the approximate date on which the last remaining Circuit City Store closed and virtually all of Debtors' employees were terminated (other than executive administrative personnel).

17. As set forth in the Final Store Closing Agreement, the liquidators conducting the Final Store Closing Sales assumed any workers' compensation claims that arose during the Final Store Closing Sales. Thus, the universe of potential (and existing) workers' compensation claims for which the Debtors might possibly be responsible was effectively closed as of January 17, 2009 (the "Transition Date").

18. Since the Transition Date, ORIC has paid a total of $20,422,355 on account of claims exceeding the Debtors' self-insured retention, and currently retains $17,474,099, the balance remaining on the ORIC Letters of Credit.

**B.    Trustee's Attempts to Recover Excess Collateral from ORIC**

19.    A dispute has arisen between ORIC and the Trustee as to the Trust's right to recover the remaining balance of the ORIC Letters of Credit, the potential future exposure for ORIC on certain medical claims, and the amount of any reasonable reserve for the potential future exposure.

20.    As noted above, ORIC currently holds $17,474,099 as the balance remaining on the ORIC Letters of Credit.[1] Of that sum, ORIC has allocated $1,383,409 for potential exposure on the four remaining open claims (the "Open Claims Reserve").[2] The parties agree that ORIC is entitled to retain a reserve for purposes of satisfying ongoing liability related to the open claims and do not have a material dispute as to the current amount of the proposed Open Claims Reserve.

21.    As to the remaining balance of the ORIC Letters of Credit, however, there is a substantial dispute. The Trustee believes that ORIC should return to the Trust all remaining collateral after subtraction of the Open Claims Reserve, or approximately $16,090,690.

22.    ORIC, however, alleges that there are closed claims that are, on an actuarial basis, likely to reopen and create additional liability, and has advised the Trustee that ORIC intends to withhold a substantial amount of the ORIC Letter of Credit on account of closed claims (the "Closed Claim Reserve").

23.    The Trustee has performed extensive analysis of the Debtors' closed claims and determined that very few have any actual potential of future medical exposure. The vast majority of closed claims were incident only or medical only in nature, and others settled with a full release

---

[1] This amount is as of September 26, 2018, the final amount of which will be according to proof at trial.

[2] This amount is as of December 4, 2018, the final amount of which will be according to proof at trial.

5

or otherwise foreclosed the possibility of payment for further medical treatment. Of the claims for which the resolution did not foreclose future medical exposure[3], most were last treated prior to 2009. None were treated after 2012. From 2012 through the present, ORIC has made no payments on account of claims for which it seeks to withhold a substantial Closed Claim Reserve.

24.  Based upon the factual basis for the original closure of the closed claims and the history of payment on these claims, the Trustee believes that the likelihood of any future exposure is remote, and that the potential exposure, if any, is de minimis. Accordingly, ORIC's stated intention to create a substantial Closed Claim Reserve and withhold these monies from the Trust is unreasonable under the circumstances.

25.  ORIC's professed justification for retaining the Closed Claim Reserve is entirely actuarial, not based on any actual analysis of the Debtors' claim history, the specific underlying claims, or the circumstances surrounding the Debtors' business and closure of operations. ORIC claims that its position is reasonable because such actuarial analyses are "traditional" in the insurance industry.

26.  The Trustee has demanded that ORIC return the entire collateral balance, less the Open Claims Reserve (a net amount of $16,090,690), but ORIC has refused to do so.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief

27.  The Trustee realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 26, as though fully set forth herein.

---

[3] Almost all of these can be explained because a small number of states preclude settlement releases that foreclose further medical treatment, rather than the parties' concern for the possibility of future medical treatment.

6

28. An actual controversy exists between the Trustee, on the one hand, and ORIC, on the other hand, regarding the amount of the remaining collateral that ORIC has withheld from the Trust based on speculative and remote potential future exposure on closed claims.

29. ORIC contends that there is a reasonable likelihood of future medical exposure on the closed claims and seeks to retain many millions of dollars from the ORIC Letters of Credit.

30. Based upon the Trust's detailed analysis of the closed claims, the Trustee contends that ORIC's Closed Claims Reserve is clearly unreasonable, and that potential future medical exposure on the closed claims is de minimis and not commensurate with the collateral amounts that ORIC insists on retaining.

31. On information and belief, ORIC knows that it has grossly overestimated its exposure on potential future obligations for closed claims, yet refuses to turn over the balance to the Trustee for the benefit of the Trust and creditors of the Debtors.

32. Accordingly, the Trustee seeks a judicial determination and a finding that no more than $1,383,409, or the Open Claims Reserve, is reasonable and necessary for ORIC to retain for purposes of potential claim reserves, and further, that any amounts in excess of that reserve be returned to the Trustee.

## SECOND CLAIM FOR RELIEF

### Turnover – 11 U.S.C. § 542

33. The Trustee realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 32, as though fully set forth herein.

34. ORIC is holding the Closed Claim Reserve, which sum is property of the bankruptcy estate pursuant to 11 U.S.C. § 541 because such sum is in excess of what is reasonable and necessary for ORIC to retain for potential future exposure on the closed claims.

35. Despite demand therefor by the Trustee, ORIC has refused to turn over the Closed Claim Reserve.

36. Accordingly, the Trustee is entitled to a judgment requiring ORIC to turnover the balance of the ORIC Letters of Credit other than the Open Claims Reserve.

### **PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully requests and prays for judgment as follows:

1. On the First Claim for Relief, for a judgment determining that ORIC is entitled to retain no more than $1,383,409 of the ORIC Letters of Credit, and that the remaining balance of funds, or $16,090,690, be returned to the Trustee for the benefit of the Trust;

2. On the Second Claim for Relief, for a judgment requiring ORIC to turn over $16,090,690 of the ORIC Letters of Credit, the excess of the amount deemed necessary for the Open Claims Reserve;

3. On All Claims for Relief, for:

    a) Prejudgment interest at the legally allowed applicable rate,

    b) Costs and expenses of suit incurred herein, and

    c) Such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 21, 2019

By: */s/ Lynn L. Tavenner*
Lynn L. Tavenner, Esq. (VSB No. 30083)
Paula S. Beran, Esq, (VSB 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA  23219
Telephone: (804) 783-8300

-and-

Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910

*Counsel to Plaintiff, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

-and-

Steven T. Gubner, Esq.
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: (818) 827-9000

*Special Litigation Counsel to Plaintiff*

9