Richard M. Pachulski, Esq.  
Andrew W. Caine, Esq.  
(admitted *pro hac vice*)  
PACHULSKI STANG ZIEHL & JONES LLP  
10100 Santa Monica Boulevard, 13th Floor  
Los Angeles, California 90067-4100  
Telephone: (310) 277-6910  
Telecopy: (310) 201-0760  

Lynn L. Tavenner, Esq. (VA Bar No. 30083)  
Paula S. Beran, Esq. (VA Bar No. 34679)  
David N. Tabakin, Esq. (VA Bar No. 82709)  
TAVENNER & BERAN, PLC  
20 North Eighth Street, 2nd Floor  
Richmond, Virginia 23219  
Telephone: (804) 783-8300  
Telecopy: (804) 783-0178  

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT  
FOR THE EASTERN DISTRICT OF VIRGINIA  
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al.,[1] | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**MOTION OF THE LIQUIDATING TRUSTEE TO  
DETERMINE EXTENT OF LIABILITY FOR POST-CONFIRMATION  
QUARTERLY FEES PAYABLE TO THE UNITED STATES TRUSTEE  
PURSUANT TO 28 U.S.C. § 1930(a)(6) AND MEMORANDUM IN SUPPORT**

Alfred H. Siegel, as Trustee (the "Trustee") of the Circuit City Stores, Inc. Liquidating Trust (the "Trust") created under the *Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Unsecured Creditors Holding General Unsecured Claims* [Docket No. 8555, Exhibit A] (the "Plan"), hereby files this Motion of the Liquidating Trustee to Determine Extent of

---

[1] The Debtors in these chapter 11 cases (collectively, the "Case"), along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512

1

Liability for Post-Confirmation Quarterly Fees Payable to United States Trustee Pursuant to 28 U.S.C. § 1930(a)(6) and Memorandum in Support (the "Motion") and in support thereof states as follows:

**I.**

**PRELIMINARY STATEMENT**

1. On September 14, 2010, this Court confirmed the Plan, pursuant to the *Findings of Fact, Conclusions of Law and Order Confirming Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims* (the "Confirmation Order") [Docket No. 8555].

2. As provided and in furtherance of Article V of the Plan and Paragraph 11 of the Confirmation Order, the Court approved the formation of the Trust and the Circuit City Stores Inc. Liquidating Trust Agreement (the "Liquidating Trust Agreement"), the executed copy of which was filed on the docket on November 1, 2010 [Docket No. 8864]. Pursuant to the Liquidating Trust Agreement, the Trust received the Debtors' assets, including but not limited to any and all recovery actions, with the goal of the Trustee administering said assets in accordance with the Plan.

3. As provided in Paragraph 41 of the Confirmation Order and Article XI of the Plan, this Court has retained exclusive jurisdiction to hear and determine any matters arising out of, under or related to the Case, the Plan or the Liquidating Trust Agreement to the fullest extent permitted by law.

4. In accordance with the Plan and the Liquidating Trust Agreement, the Trustee has performed, and continues to perform, his duties with fervor and, in furtherance thereof, already has distributed a 53.5 percent recovery to holders of allowed general unsecured claims.

5. The Trustee, his staff, and professionals continue their efforts to recover additional sums through litigation and otherwise in order to make material additional distributions to the holders of allowed claims.

6. Further, in accordance with Article XII.D. of the Plan, the Trustee was required to continue to remit to the Office of the United States Trustee (the "UST") statutory quarterly fees ("UST Fees") until Case closure (or entry of a final decree). The relevant portion of Article XII.D. of the Plan provides:

> All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtors. All such fees that become due and payable thereafter by a Debtor shall be paid by the Liquidating Trustee. The Liquidating Trustee shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees. The Debtors, through the Liquidating Trust, shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.

7. In accordance with Article XII.D. of the Plan and in furtherance of his duties under the Liquidation Trust Agreement, the Trustee has continued to timely file requisite quarterly operating reports. Importantly, the Trustee also has continued to timely remit the UST Fees as calculated and invoiced by the UST pursuant to 28 U.S.C. § 1930. As further delineated herein, the Trustee now seeks, as contemplated and prescribed by the Plan and the Confirmation Order, a determination from this Court with respect to the amount of fees actually due and payable pursuant to 28 U.S.C. § 1930.

8. Several key dates in the Case are pertinent to the Court's analysis of this issue. Specifically, the Case was filed on November 10, 2008. Beginning in mid-January 2009, the Debtors began a process to effectuate store closings and complete liquidation, and thereafter, worked in conjunction with the Official Committee of Unsecured Creditors toward the drafting a confirmable plan of liquidation. Such efforts culminated in the entry of the Confirmation Order on September 14, 2010.

9. On October 26, 2017, more than <u>seven</u> years after the entry of the Confirmation Order, the United States Congress amended Title 28, Section 1930 to increase substantially the formula for UST fee calculations. Effective October 26, 2017, this statute was amended to provide for an 833 percent increase in the maximum post-confirmation quarterly fees payable in the cases of certain chapter 11 debtors, from $30,000 per quarter to $250,000 per quarter. *See* Pub. L. 115-72, Div. B, § 1004(c), 131 Stat. 1232 (Oct. 26, 2017). The increases in the quarterly fee payment structure became effective on January 1, 2018 and were applied by the UST across the board to all Chapter 11 cases, including those pending prior to effective date of the amendment, as well as all cases filed thereafter.

10. Initially upon amendment, however, the increases only applied to quarterly fees paid within the United States Trustee system. Specifically, such fee increases initially were not applied in the Bankruptcy Administrator ("<u>BA</u>") system utilized in the states of North Carolina and Alabama. *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1535 (9th Cir. 1994), *superseded by statute*, Balanced Budget Downpayment Act, I, Pub. L. No. 104-99, 110 Stat. 26, 37-38 (1996), *as stated in In re Pettibone Corp.*, 244 B.R. 906, 919 (Bankr. N.D. Ill. 2000).

11. The relevant portion of this amended section provides:

4

> During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

28 U.S.C. § 1930(a)(6)(B).[2]

12. As a result of such structural statutory changes delineating a new fee structure under Section 1930 and based upon the timely filed Quarterly Operating Reports [Docket Nos. 14190, 14181, and 14166] for the first three quarters of the 2018 calendar year, the Trust has paid the UST $632,542. As the exponential statutory increase was imposed many years after confirmation of the Plan, none of the relevant parties or the Court was (or could have been) aware of future material fee change during the Plan confirmation process. Absent the increase, the UST fee that would have otherwise been due and paid would have been $56,400, a $576,142 difference (the "Unconstitutional Difference")![3]

13. The Trust anticipates additional, substantial payment requests will be received from the UST pursuant to Section 1930 until final distributions are completed.

## II.

## JURISDICTION

14. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper

---

[2] The balance in the Fund was less than $15 million at the end of fiscal year 2017. *See Chapter 11 Quarterly Fees*, https://www.justice.gov/ust/chapter-11-quarterly-fees (last visited March 27, 2019). Absent the 2017 enactment of subparagraph (B), the United States Trustee System Fund (the "Fund") was predicted to have a negative balance in fiscal year 2018. *See* U.S. Dep't Justice, *United States Trustee Program FY 2018 Performance Budget Congressional Submission*, at 9, https://www.justice.gov/file/968761/download.

[3] The Quarterly Operating Report for the fourth quarter 2018 recently was filed [Docket No. 14195] but no fees have been calculated or invoices submitted with respect to the same. The magnitude of the difference in amounts due resulting from the amendments will be in the similar range of those already assessed in 2018. Prospective fees will continue to accrue until the final distributions are made pursuant to the Plan.

pursuant to 28 U.S.C. §§ 1408 and 1409 as well as Paragraph 41 of the Confirmation Order and Article XI of the Plan.

## III.

## RELIEF REQUESTED

15. In accordance with the jurisdiction specifically retained in the Confirmation Order, the Trust respectfully requests that the Court determine (a) the amount of UST Fees due and payable by the Trust as required by the Plan and this Court's Confirmation Order, (b) that Section 1930 is unconstitutional due to its violation of the Uniformity Clause as applied to this Case, and (c) that the amendment cannot be retroactively applied at all to this Case. The Trust respectfully requests the Court also determine that all prospective UST fees due likewise shall be calculated based upon the payment and fee structure in place pursuant to Section 1930 when the Case was filed. Finally, the Trust reserves its rights, following the ruling of the Court on this Motion, to seek recovery of all excess amounts previously remitted pursuant to the United States Trustee based on the application of the Section 1930 amendment to the Case, including but not limited to the Unconstitutional Difference.

**A.    The Amendment to Section 1930(a)(6) Creates Non-Uniform Law.**

16. The Uniformity Clause of the Constitution states "Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and Excises shall be *uniform throughout the United States*." U.S. Const. art. I § 8, cl. 1 (emphasis added). Moreover, the Bankruptcy Clause of the Constitution similarly mandates that Congress enact only "uniform Laws on the subject of Bankruptcies throughout the United States." *Id.* art. I § 8, cl. 4; *see, e.g.*,

*Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 468 & 472 (1982). As applied to the Trust and this Case, Section 1930 is unconstitutionally non-uniform given that when first applied to the Trust, the Bankruptcy Administrator ("BA") program utilized in North Carolina and Alabama was not subject to the Section 1930 fee increase amendment approved by Congress in 2017. *See St. Angelo*, 38 F.3d at 1535.

17. Prior circuit-level law made clear that the mere extension of the existence of the BA program in North Carolina and Alabama with all the UST programs in other states was nevertheless unconstitutionally non-uniform due to the fees being different. *Id.*

18. Indeed, while the Bankruptcy Judgeship Act of 2017 revised subsection 1930(a)(6) to increase the UST quarterly fees by 833 percent beginning in the first quarter of 2018, this increase did not immediately also apply to the BA districts. In fact, the Judicial Conference of the United States ("JCUS") only authorized such increase to begin applying to BA districts in October 2018, nine months after the effective date in UST districts. *See* Report of the Judicial Conference, at 11-12 (Sept. 2018), https://www.uscourts.gov/sites/default/files/st09-2018_0.pdf. As a result, the Section 1930 amendment violates the Uniformity Clause for this Case. *See In re Buffets, LLC*, Case No. 16-50557-RBK, 2019 Bankr. LEXIS 396 (Bankr. W.D. Tex. Feb. 8, 2019), *appeal docketed*, Civ. Act. No. 5:19-cv-00173 (W.D. Tex. Feb. 22, 2019).

19. While *In re Buffets, LLC* suggests that the JCUS's decision to apply the fees to BA districts likely addresses the amendment's violation of the Uniformity Clause for future cases, the uniformity gap between the timing of the fee increases for two programs nevertheless nullifies the application of the increased fees for such disparate period. "The Bankruptcy Judgeship Act of 2017 violated the Constitution when it increased quarterly fees only in the UST program. 'Under any

7

standard of review, when Congress provides no justification for enacting a non-uniform law, its decision can only be considered to be irrational and arbitrary.'" *Buffets, LLC*, 2019 Bankr. LEXIS 396, at *12 (quoting *St. Angelo*, 38 F.3d at 1535). As a result, while the quarterly fees apply in BA districts beginning in October 1, 2018, the increased fees charged the Trust during the first three quarters of 2018 violate the Uniformity Clause. Therefore, the Trust is not required to pay the higher fees for the first three quarters of 2018, but instead is entitled to have the uniform quarterly fees capped at $30,000, consisting with the amounts that would be payable in respect of cases pending in the BA districts.

**B.      The Amendment To Section 1930(a)(6) Should Have No Retroactive Application.**

20.     In addition to the non-uniformity defect, the higher fees cannot be imposed upon the Trust for any time period because the amendment would be retroactively applied to the Trust and the Case. This is improper because there is a legal presumption against retroactively applying statutes, including those affecting rights in bankruptcy cases. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286 (1994); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79-82 (1982); *Holt v. Henley*, 232 U.S. 637, 639-40 (1914); *Auffm'ordt v. Rasin*, 102 U.S. (12 Otto) 620, 622-23 (1881). For example, in *Landgraf*, the Supreme Court set out a detailed analysis of the presumption. *Id.* Such analysis "is founded upon sound considerations of general policy and practice, and accords with long held and widely shared expectations about the usual operation of legislation." *Id.* Additionally, the logic of the presumption against retroactivity pervades the reasoning in many other constitutional aspects, including the Ex Post Facto Clause, the Obligation of Contracts Clause, the Fifth Amendment Takings Clause, the prohibition of Bills of Attainder, and the Due Process Clause. *Id.* at 266. Put simply,

8

> [t]he presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise satisfied.

*United States Fid. & Guar. Co. v. United States*, 209 U.S. 306, 314 (1908).

21. As in this instance, when Congress has not expressly prescribed the statute's proper reach, this Court must apply the rules of construction to determine the reach intended by Congress in the statute. *Lindh v. Murphy*, 521 U.S. 320, 323-26 (1997). The text of the statute begins "[d]uring each of fiscal years 2018 through 2022," but this language does not evince a clear intent by Congress to ***retroactively*** apply the fees to any already-pending cases. 28 U.S.C. § 1930(a)(6)(B). "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf*, 511 U.S. at 257. Moreover, the legislative history to Section 1930 provides no instruction on the matter, let alone an explicit command for the amendment to have some retroactive effect. *See* H.R. Rep. No. 764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5234-35. Instead, the Judiciary Committee Report, when proposing the amendment, briefly mentioned that the UST program is funded by fees collected in bankruptcy cases. It further reported that in the past there had been a surplus in the UST fund, but a more recent trend downward in nationwide filings had decreased the amount of funds available. *See id.* Such brief mention of a downward trend of case filings certainly cannot serve as a legislative directive for retroactive application of the amendment.

22. If unable to determine the statute's reach, then this Court "must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when [it] acted, increase a party's liability for past conduct, or impose new duties with respect to

transactions already completed." *Landgraf*, 511 U.S. at 280. If the statute is retroactive, "then it does not govern absent clear congressional intent favoring such a result." *Id.* Very recently, Chief Bankruptcy Judge Ronald King of the Western District of Texas utilized these specific principles in *Buffets, LLC* to analyze this Section 1930 fee increase language. Pointing to the *Landgraf* instruction that "absent clear congressional intent, the court is not to read a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment," *id.*, Bankruptcy Judge King declined to apply the fee increase retroactively. *Buffets, LLC*, 2019 Bankr. LEXIS 396, at *16.

23. Consistent with the Chapter 11 policy of maximizing payments to creditors espoused in *Bank of Am. Nat'l Tr. and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) and numerous other authorities, it is not surprising that nothing in the statute or legislative history indicates that Congress intended the UST fee amendment to apply retroactively. While the increase applies only to disbursements made on or after January 1, 2018, it does not specify its application to any cases pending before such date. Consistent with established principles of statutory interpretation and in accord with Bankruptcy Judge King's application and reasoning, the new UST fee of $250,000 per quarter must not be applied to any open cases having a confirmed plan when the statute became effective on October 26, 2017, and the fees became effective in the first quarter of 2018.

24. As expressed by the Supreme Court, "[t]he *extent* of a party's liability, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored." *Landgraf*, 511 U.S. at 283-84. Absent clear congressional intent, the Court is not to read "a statute substantially increasing the monetary liability of a private party to apply to conduct occurring

10

before the statute's enactment." *Id.* at 284. Yet that is precisely what the UST's purported application of the amendment to Section 1930 has done in the Case.

25. The amendment imposes new duties and liabilities on the Trust that were not contemplated at the time the Plan was confirmed and certainly not when the Case was filed. This increase in financial liability negatively impacts the Trust and all its beneficiaries, in that fewer assets will be available for distribution to the beneficiaries. An increase in UST fees to $250,000 per quarter ($1 million per year) requires the Trust to pay 833 percent more in UST fees than were required at the time of confirmation of the Plan. This certainly was never contemplated by any of the constituents or the Court when assessing the Plan terms. And there is nothing to indicate it was contemplated by Congress either.

26. Finally, as also addressed in *Buffets, LLC*, the amendment's possible retroactive application would be violative of the Due Process Clause, provision that "No person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend V. The Supreme Court has made clear that "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Landgraf*, 511 U.S. at 266 (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976)). The Plan proponents or other constituents certainly had no notice of the increased fees prior to filing chapter 11 or confirmation of the Plan.

27. Section 1141 of the Bankruptcy Code describes the effect of confirmation of a plan as creating a contract that vests substantive property rights and is binding on all parties and constituents regardless of whether such constituents voted in favor of such plan. *See, e.g.*, *Buffets,*

11

*LLC*, 2019 Bankr. LEXIS 396, at *17-18 (citing *In re Burk Dev. Co.*, 205 B.R. 778, 796-97 (Bankr. M.D. La. 1997) (citing *Holywell Corp v. Smith*, 503 U.S. 47, 56-59 (1992); *Eubanks, M.D. v. FDIC*, 977 F.2d 166 (5th Cir. 1992); *Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114 (5th Cir. 1992))).

28.    Certainly any notice that might have been given could not have occurred until after the Plan was confirmed and the Trust had been created. Notice provided by the UST in December of 2017[4] after the amendment cannot constitute adequate due process given that, at the time of such notice, the Plan had been confirmed for over seven years and the Trustee had made multiple, substantial distributions. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf*, 511 U.S. at 265.

29.    Unlike future potential debtors who, with the advance knowledge of the increased fee structure, may make informed choices regarding the viability of a Chapter 11 filing versus other restructuring options outside of bankruptcy to avoid the quarterly fees, the Trust and all of the Plan parties had no such opportunity. *See Buffets, LLC*, 2019 Bankr. LEXIS 396, at *18.

30.    Additionally, the equities regarding the amount of fees contrasted to an important reason articulated for the same should not be overlooked. When assessing the imposition of UST fees upon distributions calculated on direct rollover payments, the Bankruptcy Court in *In re Cranberry Growers Coop.*, 592 B.R. 325 (Bankr. W.D. Wis. 2018), *direct appeal granted*, No. 18-3289 (7th Cir. Dec. 10, 2018), noted that such assessment would not further the underlying

---

[4] The Trust, upon inquiry, received information that a written communication of such increase was disseminated in December 2017; however, the specific communication has not been identified to date.

purposes of Section 1930(a)(6)—to impose a tax on those who use the UST system so that system self-funds. In that context the Court noted that the debtor and its creditors are adequately represented, and as a result there is a very limited need for UST involvement. As in *Cranberry Growers*, the UST fees at issue here are post-confirmation, and other than quarterly reports, there is nothing for the UST to do in this Case. Indeed, the huge new fees bear no reasonable relationship or proportionality to the amount of work performed, which makes the purported retroactivity and nonuniformity even more problematic. *See, e.g.*, *Cranberry Growers Coop.*, 592 B.R. at 334.

31. Accordingly, the Trust should not be required to comply with the new fee structure. Instead, the Trust should continue to follow the fee structure in place prior to the amendment. Such modified payment structure is required in order to avoid constitutional violations and an unintended retroactive application of the statute in contravention of what was intended at the time that this Court entered the Confirmation Order.

**IV.**

**NOTICE**

Notice of this Motion is being provided to the UST, the United States Attorney General, and parties-in-interest in accordance with the Case Management Order and Rule 9005.1 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Trust respectfully submits that no further notice is necessary.

**V.**

**NO PRIOR REQUEST**

32. No previous request for the relief sought herein has been made to this Court or any other court.

33. Pursuant to Rule 9013-1(G) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia, and because applicable authority has been set forth in the Motion, the Trust respectfully requests that the requirement that all motions be accompanied by a separate written memorandum of law be waived.

34. The Trust reserves all rights to present additional bases for the requested relief as appropriate.

## VI.

## CONCLUSION

For the reasons articulated herein, the Trust respectfully requests this Court to rule and order as follows: (i) the amendment to 28 U.S.C. § 1930(a)(6)(B) is unconstitutional as applied to this Case due to its lack of uniformity for the first three quarters of 2018, (ii) the amendment also cannot be retroactively applied to the Trust for any relevant years, (iii) the actual amount of UST Fees due since January 1, 2018 should be determined based on the statutory rates in effect as of the Petition Date in this Case, (iv) the Trust's rights to seek recovery of any excess amounts previously remitted consistent with the Court's ruling on this Motion, including but not limited to the Unconstitutional Difference, are preserved, and (v) such other relief as is just and appropriate under the circumstances.

March 28, 2019

                                    TAVENNER & BERAN, P.L.C.

                                    */s/ Paula S. Beran*
                                    Lynn L. Tavenner (VA Bar No. 30083)
                                    Paula S. Beran (VA Bar No. 34679)
                                    David N. Tabakin (VA Bar No. 82709)

20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: 804-783-8300
Facsimile: 804-783-0178
Email: ltavenner@tb-lawfirm.com
   pberan@tb-lawfirm.com
   dtabakin@tb-lawfirm.com

-and-

Richard M. Pachulski
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310-277-6910
Facsimile: 310-201-0760
E-mail:rpachulski@pszjlaw.com
   acaine@pszjlaw.com

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all ECF registrants in this Case and specifically including the following:

Robert K. Coulter on behalf of United States of America
robert.coulter@usdoj.gov; USAVAE.ALX.ECF.BANK@usdoj.gov

Robert P. McIntosh on behalf of United States of America
Robert.McIntosh@usdoj.gov; USAVAE.RIC.ECF.CIVIL@usdoj.gov;
Heidi.E.Bokor@usdoj.gov; HBokor@usa.doj.gov

USTPRegion04.NO.ECF@usdoj.gov; USTPRegion04.RH.ECF@usdoj.gov;
Robert.B.Van.Arsdale@usdoj.gov on behalf of John P. Fitzgerald III, Acting United States Trustee

I further certify that the foregoing was served upon the Attorney General of the United States of America by mailing a copy of this Notice to the addresses indicated below by certified mail:

John P. Fitzgerald III, Acting United States Trustee
Office of the U.S. Trustee - Region 4 -R
701 E. Broad Street, Suite 4304
Richmond, VA 23219

John P. Fitzgerald III, Acting United States Trustee
Office of The United States Trustee
5 Post Office Square, Suite 1000
Boston, MA 02109-3934

United States of America
c/o Lee J. Lofthus
Assistant A.G. for Administration

950 Pennsylvania Ave., NW, Rm. 1111
Washington, DC 20530

United States of America
c/o William P. Barr
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

United States of America
c/o G. Zachary Terwilliger, Esquire
2100 Jamieson Avenue
Alexandria, VA 22314

I further certify that the same will be served upon the Core and 2002 service lists for this Case and a supplemental proof of service regarding the same will be filed with the Court.

/s/ *Paula S. Beran*
Paula S. Beran (VA Bar No. 34679)

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

16