| | |
|---|---|
| Jeffrey N. Pomerantz, Esq.<br>Andrew W. Caine, Esq.<br>(admitted *pro hac vice*)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, California 90067-4100<br>Telephone: (310) 277-6910<br>Telecopy:  (310) 201-0760 | Lynn L. Tavenner, Esq. (VA Bar No. 30083)<br>Paula S. Beran, Esq. (VA Bar No. 34679)<br>TAVENNER & BERAN, PLC<br>20 North Eighth Street, 2nd Floor<br>Richmond, Virginia 23219<br>Telephone: (804) 783-8300<br>Telecopy:   (804) 783-0178 |
| *Counsel to the Circuit City Stores, Inc.*<br> *Liquidating Trust* | *Counsel to the Circuit City Stores, Inc.*<br> *Liquidating Trust* |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT BETWEEN THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST AND OLD REPUBLIC INSURANCE COMPANY

Alfred H. Siegel (the "Trustee"), the duly appointed trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Trust"), pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), hereby moves (the "Motion") the Court for entry of an order, substantially in the form attached hereto as **Exhibit A**, approving the Agreement (the "Settlement Agreement")[1], dated June 17, 2019, between the Trust, on the one hand, and Old Republic Insurance Company("ORIC"), on the other hand, and attached hereto as **Exhibit B**. Pursuant to the Agreement, ORIC will make payment s to the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings given to them in the Agreement.

Trust as described in Exhibit B to settle the Trust's claims against ORIC. In support of the Motion, the Trust respectfully states as follows:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for the relief requested herein is Section 105 of chapter 11 of title 11 of the United Sates Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

*General Background*

5. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code, and until the effective date of the Plan, continued to operate as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").

7. On January 16, 2009, the Court authorized the Debtors to, among other things, conduct going out of business sales at all of the Debtors' retail locations. On January 17, 2009,

commenced going out of business sales commenced at all of the Debtors' retail locations, and were completed as of March 8, 2009.

8. On August 9, 2010, the Debtors and the Creditors' Committee filed the Plan, which provides for the liquidation of the Debtors' assets and distribution of the proceeds thereof under chapter 11 of the Bankruptcy Code. On September 10, 2010, the United States Bankruptcy Court, Eastern District of Virginia, signed an Order confirming the Plan (the "Confirmation Order"). The Plan became effective on November 1, 2010 (the "Effective Date").

9. Pursuant to the Liquidating Trust Agreement approved by the Confirmation Order, potential settlements of Causes of Action with damage claims over $10,000,000 require approval of the Oversight Committee (as defined in the Liquidating Trust Agreement) and the Court.

### *The Litigation between the Trust and ORIC*

10. For the policy periods from October 1, 2003 to April 1, 2009, ORIC issued certain workers' compensation and employers' liability, business automobile liability and commercial general liability insurance policies to the Debtors (collectively, the "Policies"), which Policies were subject to deductibles or retentions which varied in amount depending on policy type and policy period. ORIC and Circuit City Stores, Inc. ("CCSI") are parties to a Program Agreement dated October 1, 2003 that governs, among other things, CCSI's payment obligations to ORIC under the Policies (the "Program Agreement").

11. Prior to the Petition Date, CCSI caused a letter of credit in the amount of $36,020,048.00 to be posted for the benefit of ORIC (the "LOC") to secure the Debtors' payment obligations to ORIC under the Policies and Program Agreement to ORIC. The LOC remained in effect as of the Petition Date. On or about April 1, 2009, ORIC drew on the entire amount of

3

the LOC, and has used the proceeds of the draw on the LOC to meet the Debtors' payment obligations to it. As of April 30, 2019, the remaining proceeds of the draw on the LOC, plus interest earned thereon, totaled $17,505,495.52.

12. On February 21, 2019, the Trust filed an adversary proceeding against ORIC. Adversary Proceeding No. 19-03024-KRH (the "Adversary Proceeding") seeking the return of a portion of the proceeds of the draw on the LOC. In the Adversary Proceeding, the Trustee asserted that ORIC should only be allowed to retain $1,348,227 of the proceeds of the draw on the LOC, an amount equal to the case reserves on the claims asserted under the Policies which are still open. ORIC asserted that it needs to retain $8,258,299 of the proceeds to cover its exposure for open claims and for closed claims that are, on an actuarial basis, likely to reopen and create additional liability.

13. The Trust's dispute with ORIC boils down to one of differences regarding the appropriate and reasonable methodology to determine where the risk lies and how to fairly compensate the parties for that risk. At trial of the action, both parties would present expert testimony on the issue, and the outcome of the litigation is uncertain.

14. To avoid the uncertainties and expense associated with further litigation, the Parties have engaged, with the assistance of counsel, in good faith, arm's length settlement negotiations, and after a careful investigation of the facts and circumstances and consideration of applicable law, the Parties have agreed to a fair, reasonable, and good faith settlement, the terms of which are set forth in Exhibit B hereto. The Parties reached the principal terms of the settlement during a mediation with the Honorable Raymond Lyons, retired United States Bankruptcy for the District of New Jersey and Eleanor Vaida Gerhards, both of whom are with Fox Rothschild.

3532218
DOCS_LA:322568.1 12304/003

**Relief Requested**

15. By this Motion, the Trust seeks entry of an order authorizing it, pursuant to Bankruptcy Rule 9019(a), to enter into the Settlement Agreement with ORIC that is attached hereto as Exhibit B. Pursuant to the requirements of the Liquidating Trust Agreement, the Oversight Committee established pursuant to the Plan has approved the terms of the Settlement Agreement.

**Applicable Authority**

A. *The Motion Should be Approved as a Compromise and Settlement Under the Standards Provided for by Bankruptcy Rule 9019(a)*

16. Courts within this Circuit look to the following factors in assessing the reasonableness of proposed settlements:

> (1) the probability of success in litigation;
>
> (2) the difficulties associated with collection;
>
> (3) the complexity of the litigation, and the attendant expense, inconvenience and delay; and
>
> (4) the paramount interests of the creditors.

*See*, *e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *United States ex. rel. Rahman v. Oncology Assoc., P.C.*, 269 B.R. 139, 152 (D. Md. 2001); *In re Frye*, 216 B.R. 166, 174 (E.D. Va. 1997).

17. The central factor in evaluating a proposed settlement is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *See In re Bond*, No. 93-1410, 1994 WL 20107 at *3 (4th Cir. Jan. 26, 1994) ("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'").

3532218
DOCS_LA:322568.1 12304/003

18. A settlement need not be the best that the debtor could have achieved to be approved, but need only fall "within the reasonable range of litigation possibilities." *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994).

19. Here, approval of the Settlement Agreement is warranted because the Settlement Agreement represents a compromise that is fair and equitable, falls well within the range of reasonableness, and satisfies the standards for approval under applicable law. The Agreement is the product of extensive negotiations between the Trust and ORIC.

20. The Trust submits that the Settlement Agreement meets the above criteria. The Trust and its counsel, aided by insurance industry experts, have evaluated the relative merits of the case and all other factors which concern the evaluation of the settlement.

21. As described above, the risks in litigating are real ones. The Trust has assessed the potential litigation risks in light of the potential advantages of both litigation and settlement in reaching the proposed settlement.

22. This leads to the next consideration supporting the Settlement Agreement, *i.e.*, that litigation would be very fact-intensive and accordingly protracted and expensive. Each side could easily expend a significant sum – particularly when the very high cost of experts is included. Meanwhile, at a potential trial, both parties would incur extensive costs in preparing numerous witnesses and experts and conducting an evidentiary trial. The resolution contemplated by the Settlement Agreement will avoid lengthy and expensive litigation between the Trust and ORIC. Approval of the settlement avoids the incurrence of these expenses.

23. In considering the factors discussed in the case law described above, it is respectfully submitted that the Settlement Agreement satisfies the relevant factors:

    a. In light of the risk of taking the matter to trial, the Trust submits that the benefits of the settlement outweigh the risk, expense and delay of trial;

6

    b.    In the event the settlement is not approved, there is a prospect of a complex and protracted litigation;

    c.    The Oversight Committee representing the beneficiaries of the Trust has approved the settlement;

    d.    The Trust submits that the proposed benefit to be received through the ORIC settlement payments represents a material benefit to the Trust;

    e.    The nature and breadth of the release contemplated in the Settlement Agreement is reasonable and consistent with settlements of this type.

    f.    All parties to the settlement are represented by competent and experienced counsel.

24. The Settlement Agreement was the result of protracted arms-length bargaining, and was not the product of any fraud or collusion. *See Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-425 (1968).

25. For the foregoing reasons, the Trust respectfully submits that the Settlement Agreement represents a fair and equitable compromise, a sound exercise by the Trustee of his business judgment and a decision that is in the best interest of the beneficiaries of the Trust. Certainly, the Settlement Agreement is well above the lowest point on the range of reasonableness. Accordingly, the Trust respectfully submits that the Court should approve the compromise of claims as embodied in the Settlement Agreement pursuant to Bankruptcy Rule 9019(a).

## **NOTICE**

26. Notice of this Motion is being provided to parties-in-interest in accordance with the Case Management Order. In light of the nature of the relief requested, the Trust respectfully submits that no further notice is necessary.

3532218
DOCS_LA:322568.1 12304/003

## NO PRIOR REQUEST

27. No previous request for the relief sought herein has been made to this Court or any other court.

28. Pursuant to Rule 9013-1(G) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia, and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Trust respectfully requests that the requirement that all motions be accompanied by a separate written memorandum of law be waived.

**WHEREFORE**, for the reasons set forth herein, the Trust respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, approving the Settlement Agreements and granting such other and further relief as is just and proper.

Dated: Richmond, Virginia
       June 20, 2019

By:    */s/ Lynn L. Tavenner*
Lynn L. Tavenner, Esq. (VSB No. 30083)
Paula S. Beran, Esq. (VSB No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: (804) 783-8300

-and-

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910

*Counsel to the Circuit City Stores, Inc. Liquidating Trust*

| | |
|---|---|
| Jeffrey N. Pomerantz, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard, 13th Floor | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy: (804) 783-0178 |
| Telecopy: (310) 201-0760 | |
| *Counsel to the Circuit City Stores, Inc.* *Liquidating Trust* | *Counsel to the Circuit City Stores, Inc.* *Liquidating Trust* |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**ORDER APPROVING COMPROMISE**

This matter having come before the Court on the Trustee's *Motion for Entry of an Order Approving Settlement Between the Circuit City Stores, Inc. Liquidating Trust and Old Republic Insurance Company* (the "Motion"[1]) with Old Republic Insurance Company ("ORIC"); the Court having reviewed the Motion and having considered the statements of counsel for the Trust and ORIC with respect to the Motion at a hearing before the Court (the "Hearing"); the Court having found that (a) and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the*

---

[1] Unless stated otherwise, capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

1

*Eastern District of Virginia*, dated August 15, 1984; (b) and this Court may enter a final order consistent with Article III of the United States Constitution; (c) and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court further finds that (a) notice of the Motion and Hearing was sufficient under the circumstances, and (b) the Settlement represents (i) a sound exercise of the Trustee's business judgment, (ii) falls within the range of reasonableness, (iii) is fair and equitable, and (iv) is in the best interest of creditors of the Trust; and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

1. The Trustee and ORIC have engaged in substantial settlement discussions regarding the adversary proceeding against ORIC, Adversary Proceeding No. 19-03024-KRH, brought by the Trust, and have reached an agreement, which is set forth in the Settlement Agreement, by and between the Trustee and ORIC (the "**Settlement Agreement**").

2. In exercising their business judgment, the Trustee has concluded the terms of the Settlement Agreement are fair and equitable and in the best interests of creditors of the Trust.

3. "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). In determining whether to approve a compromise, the Court must look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable to the creditors of the estate. *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997). These factors include: (a) the probability of success in litigation; (b) the potential difficulties, if any, in collection; (c) the complexity of the litigation involved and the expense, inconveniences

2

and delays necessarily attending it; and (d) the paramount interest of the creditors. *Id.* (citations omitted). These factors help the Court determine whether it should approve the proposed compromise as fair and equitable to the creditors of the estate. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986); *Drexel, Burnham, Lambert, Inc. v. Flight Transportation Corp. (In re Flight Transportation Corp. Securities Litigation)*, 730 F.2d 1128 (8th Cir. 1984); *In re Jackson Brewing Co.*, 624 F.2d 605 (5th Cir. 1980); *see also In re Austin*, 186 B.R. 397 (Bankr. E.D. Va. 1995) (discussing factors to approve settlements).

4. The Trustee conducted a cost-benefit analysis regarding this matter, including the costs associated with further litigation and the implications of his success, and has concluded the compromise is fair, reasonable and serves the best interests of the Trust's creditors. In consideration of the probability of success in litigation, the complexity of the litigation and the attending expense, inconveniences and delays, and the paramount interest of the creditors, the Court finds that the compromise is fair and reasonable. The Court adopts and approves of the Trustee's business judgment to enter into the compromise.

5. Notice of the Motion was properly served on all parties in interest pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED and the Settlement is APPROVED.

2. The Trustee is authorized to take all necessary actions and execute all required documents to consummate the terms of the Settlement including but not limited to executing the Settlement Agreement.

3

3. The Court retains jurisdiction to resolve any issues arising in connection with the Settlement Agreement.

4. All necessary parties shall receive a copy of this Order via the Court's ECF system.

ENTERED: _____    _____
                      UNITED STATES BANKRUPTCY COURT JUDGE

We ask for this:

_____
Lynn L. Tavenner, Esq. (VSB No. 30083)
Paula S. Beran, Esq. (VSB No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: (804) 783-8300
       -and-

Jeffrey N. Pomerantz, Esq.
Andrew W. Caine, Esq.
(admitted pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
*Counsel to the Circuit City Stores, Inc. Liquidating Trust*
       -and-

Steven T. Gubner, Esq.
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
*Special Litigation Counsel for Alfred H. Siegel, Liquidating Trustee*

4

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 17th day of June, 2019, by and between Old Republic Insurance Company ("ORIC"), and Alfred H. Siegel, in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust and not in any individual capacity (the "Trustee") of the Circuit City Stores Inc. Liquidating Trust (the "Trust" and, together with ORIC, the "Parties" or each individually, a "Party").

## RECITALS

WHEREAS, on November 10, 2008 (the "Petition Date") , Circuit City Stores, Inc. and certain of its affiliates (the "Debtors"), filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), jointly administered under case no. 08-35653--KRH (the "Bankruptcy Case");

WHEREAS, the Trust is the successor in interest to the Debtors pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), which Plan was confirmed by the Bankruptcy Court on September 14, 2010 and became effective on November 1, 2010;

WHEREAS, for the policy periods from October 1, 2003 to April 1, 2009, ORIC issued certain workers' compensation and employers' liability, business automobile liability and commercial general liability insurance policies to the Debtors (collectively, the "Policies"), which Policies were subject to deductibles or retentions which varied in amount depending on policy type and policy period;

WHEREAS, ORIC and Circuit City Stores, Inc. ("CCSI") are parties to a Program Agreement dated October 1, 2003 that governs, among other things, CCSI's payment obligations to ORIC under the Policies (the "Program Agreement");

WHEREAS, prior to the Petition Date, CCSI caused a letter of credit in the amount of $36,020,048.00 to be posted for the benefit of ORIC (the "LOC") to secure the Debtors' payment obligations to ORIC under the Policies and the Program Agreement, which LOC remained in effect as of the Petition Date;

WHEREAS, on or about April 1, 2009, ORIC drew on the entire amount of the LOC, and has used the proceeds of the draw on the LOC to meet the Debtors' payment obligations to it;

WHEREAS as of April 30, 2019, the remaining proceeds of the draw on the LOC, plus interest earned thereon, totaled $17,505,495.52;

WHEREAS, on February 21, 2019, the Trust filed an adversary proceeding against ORIC. Adversary Proceeding No. 19-03024-KRH (the "Adversary Proceeding") seeking the return of a portion of the proceeds of the draw on the LOC;

WHEREAS, on March 27, 2019, ORIC filed an answer in the Adversary Proceeding;

WHEREAS, the Trust filed an adversary proceeding against the California Self-Insurers Security Fund (the "California Fund"), Adversary Proceeding No. 18-3040--KRH (the "Fund Litigation") seeking, among other things, a determination that the California Fund was not entitled to any payments from ORIC under the excess workers' compensation policies issued by ORIC to the Debtors, because the California Fund had previously released such;

WHEREAS, on August 27, 2018, the Bankruptcy Court granted summary judgment in favor of the Trustee in the Fund Litigation, which ruling has been appealed to the United States

2

District Court for the District of Virginia, and is currently pending there as case no. 18-cv-00629 MHL; and

WHEREAS, on May 22, 2019, Raymond T. Lyons and Eleanor Vaida Gerhards successfully mediated the dispute between ORIC and the Trust regarding among other things, the amount payable by ORIC to the Trust under the Policies and/or the Program Agreements.

NOW THEREFORE, in consideration of the mutual covenants, promises, conditions and agreements set forth herein and other good and valuable consideration, the sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. <u>Recitals</u>. The foregoing recitals are true and correct and are a material part of this Agreement.

2. <u>ORIC Payments</u>. ORIC shall transfer $11,542,181 (the "First ORIC Payment") to the Trust within five (5) business days after the Effective Date (as hereinafter defined). Within ten (10) business days after (i) the entry of a Final Order (as hereinafter defined) in the Fund Litigation holding that the California Fund has no rights against ORIC or under the Policies, or (ii) the California Fund's release of any claims it may have against ORIC relating to the Policies or the Debtors, ORIC shall pay $957,819, plus interest at the rate of 2% per annum from the Effective Date (the "Second ORIC Payment") to the Trust. If a Final Order is entered in the Fund Litigation holding that the California Fund can assert claims against ORIC under the Policies, ORIC, in addition to all of its other rights under this Agreement, shall have no obligation to make the Second ORIC Payment to the Trust. The payment(s) to be made by ORIC hereunder shall be made by wire transfer pursuant to instructions provided by the Trust to ORIC.

3. <u>The Trust's Release of ORIC</u>. Effective upon the Effective Date, the Trust and its Trustee, officers, directors, stockholders, attorneys, agents, servants, representatives, employees,

3549157 v3 - 03701 / 032

parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns, hereby completely release and forever discharge ORIC and its officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns (collectively, the "ORIC Released Parties") from all claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation or monetary relief of any nature whatsoever, known or unknown, whether based on a tort, contract, statute, equity, agency, control, instrumentality, or any other theory of recovery, which the Trust or the Debtor's estate had, has or may have against the ORIC Released Parties arising out of or in any way related to the Policies, the Program Agreements, the LOC, the Debtor or the Bankruptcy Case, including those arising from or related to the administration of, and the reserving, pricing, billing or calculation and collection of premiums and other changes under the Policies; provided, however, that ORIC will continue to defend and pay all claims insured under the Policies in accordance with the terms of the Policies and applicable law; and provided, further, that this section shall not release ORIC from any obligations or liabilities created by this Agreement.

4. **ORICs Release of the Trust.** Upon the Effective Date, ORIC and its officers, directors, stockholders, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns, hereby completely release and forever discharge the Trust, the Debtors, and their officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns (collectively, the "Trust Released Parties") from all claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation or

4

monetary relief of any nature whatsoever, known or unknown, whether based on a tort, contract, statute, equity, agency, control, instrumentality, or any other theory of recovery, which ORIC had, has or may have against the Trust Released Parties arising out of or in any way related to the Policies, the Program Agreements, the Debtor or the Bankruptcy Case; <u>provided</u>, that this section shall not release the Trust from any obligations or liabilities created by this Agreement.

5. <u>Dismissal of Adversary.</u> Within ten (10) business days after the Effective Date, the Trust and ORIC will file a joint motion to dismiss the Adversary Proceeding, with prejudice and without costs.

6. <u>Bankruptcy Court Approval</u>. This Agreement is subject to the entry of an order by the Bankruptcy Court in the Bankruptcy Case (the "<u>Approval Order</u>") and shall become effective on the date (the "<u>Effective Date</u>") when the Approval Order becomes a Final Order. For purposes of this Agreement, orders shall be deemed to be Final Orders if they are no longer subject to appeal or certiorari proceedings, and no appeal or certiorari proceedings are pending. Within five (5) business days following execution of this Agreement by the Parties, the Trust shall file a Motion in the Bankruptcy Case pursuant to Fed. R. Bankr. P. 9019 and shall diligently prosecute the same to conclusion to obtain entry of the Approval Order.

7. <u>No Admission of Liability</u>. Nothing herein shall be deemed or construed as an admission of liability by any Party to this Agreement, except for liabilities under this Agreement.

8. <u>Authorization</u>. Each of the undersigned represents that he or she has the authority to execute this Agreement on behalf of the Party for whom it is executed.

9. <u>Governing Law</u>. This Agreement shall be interpreted and governed by the laws of the State of Illinois, without regard to conflict of law principles.

10. <u>Construction of Agreement</u>. Wherever used herein, the disjunctive "or" shall be deemed to include the conjunctive "and", the conjunctive "and" shall be deemed to include the

5

disjunctive "or", and each of the functional words "each", "every", "any", and "all" shall be deemed to include each of the other functional words.

11. <u>Entire Agreement</u>. This Agreement constitutes a single, integrated, written contract expressing the entire understanding and the entire agreement between the Parties concerning the matters set forth herein, supersedes any and all prior agreements between them concerning the matters set forth herein and merges herein all prior statements and actions. The terms of this Agreement are contractual and not merely recitals.

12. <u>Miscellaneous</u>. This Agreement may be executed in counterparts, each of which shall constitute one and the same instrument. The Parties agree that signatures contained in a copy of the Agreement transmitted by facsimile or as a pdf document attached to an email will be treated in all manner and respects as a binding and original document, and the signature of any Party shall be considered for these purposes as an original signature.

13. <u>Amendments</u>. This Agreement may not be modified or amended except by a writing signed by each of the Parties hereto.

14. <u>Severability</u>. The provisions of this Agreement are severable. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable or void for any reason whatsoever, each such portion, provision or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions or parts.

15. <u>Ownership of Claims</u>. The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title and interest in and to every claim or property and other matter which each releases in this Agreement or transfers as consideration and that they have not previously assigned or transferred, or purported to do so, to any person or other entity

any right, title or interest in any such claim or other matter. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

16. <u>Voluntary Agreement</u>. The Parties acknowledge that this Agreement is executed voluntarily by each of them, without duress or undue influence on the part of, or on behalf of any of them. The Parties further acknowledge that they have or had the opportunity for representation in the negotiation for, and in the performance of, this Agreement by counsel of their choice and that they have read this Agreement, and have had it fully explained to them by their counsel and that they are fully aware of the contents of this Agreement and its legal affect.

17. <u>Headings</u>. The headings of the Paragraphs of this Agreement are inserted for convenience only and shall not control or affect the meaning, construction, or effect of this Agreement, or any provisions hereof.

18. <u>Venue</u>. The venue of any legal proceeding under this Agreement or breach of or default hereunder, shall be brought and heard in the Bankruptcy Court as long as the Bankruptcy Case is open. If the Bankruptcy Case has been closed, any disputes shall be heard by a court of competent jurisdiction, located within the Northern District of Illinois.

[Signature Page Follows]

3549157 v3 - 03701 / 032

IN WITNESS WHEREOF, the Parties hereby have executed this Agreement as of the day and year first above written.

**CIRCUIT CITY STORES, INC. LIQUIDATING TRUST:**

By: _____
Name: Alfred H. Siegel, in capacity as Trustee of the
Circuit City Stores, Inc. Liquidating Trust and not
in any individual capacity

**OLD REPUBLIC INSURANCE COMPANY**

By: *Linda Johnson*

Its: *Vice President*