SETTLEMENT AGREEMENT AS EXHIBIT B

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 17th day of June, 2019, by and between Old Republic Insurance Company ("ORIC"), and Alfred H. Siegel, in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust and not in any individual capacity (the "Trustee") of the Circuit City Stores Inc. Liquidating Trust (the "Trust" and, together with ORIC, the "Parties" or each individually, a "Party").

## RECITALS

WHEREAS, on November 10, 2008 (the "Petition Date"), Circuit City Stores, Inc. and certain of its affiliates (the "Debtors"), filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), jointly administered under case no. 08-35653--KRH (the "Bankruptcy Case");

WHEREAS, the Trust is the successor in interest to the Debtors pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and its Official Committee of Creditors Holding General Unsecured Claims (the "Plan"), which Plan was confirmed by the Bankruptcy Court on September 14, 2010 and became effective on November 1, 2010;

WHEREAS, for the policy periods from October 1, 2003 to April 1, 2009, ORIC issued certain workers' compensation and employers' liability, business automobile liability and commercial general liability insurance policies to the Debtors (collectively, the "Policies"), which Policies were subject to deductibles or retentions which varied in amount depending on policy type and policy period;

3549157 v3 - 03701 / 032

WHEREAS, ORIC and Circuit City Stores, Inc. ("CCSI") are parties to a Program Agreement dated October 1, 2003 that governs, among other things, CCSI's payment obligations to ORIC under the Policies (the "Program Agreement");

WHEREAS, prior to the Petition Date, CCSI caused a letter of credit in the amount of $36,020,048.00 to be posted for the benefit of ORIC (the "LOC") to secure the Debtors' payment obligations to ORIC under the Policies and the Program Agreement, which LOC remained in effect as of the Petition Date;

WHEREAS, on or about April 1, 2009, ORIC drew on the entire amount of the LOC, and has used the proceeds of the draw on the LOC to meet the Debtors' payment obligations to it;

WHEREAS as of April 30, 2019, the remaining proceeds of the draw on the LOC, plus interest earned thereon, totaled $17,505,495.52;

WHEREAS, on February 21, 2019, the Trust filed an adversary proceeding against ORIC. Adversary Proceeding No. 19-03024-KRH (the "Adversary Proceeding") seeking the return of a portion of the proceeds of the draw on the LOC;

WHEREAS, on March 27, 2019, ORIC filed an answer in the Adversary Proceeding;

WHEREAS, the Trust filed an adversary proceeding against the California Self-Insurers Security Fund (the "California Fund"), Adversary Proceeding No. 18-3040--KRH (the "Fund Litigation") seeking, among other things, a determination that the California Fund was not entitled to any payments from ORIC under the excess workers' compensation policies issued by ORIC to the Debtors, because the California Fund had previously released such;

WHEREAS, on August 27, 2018, the Bankruptcy Court granted summary judgment in favor of the Trustee in the Fund Litigation, which ruling has been appealed to the United States

2

District Court for the District of Virginia, and is currently pending there as case no. 18-cv-00629 MHL; and

WHEREAS, on May 22, 2019, Raymond T. Lyons and Eleanor Vaida Gerhards successfully mediated the dispute between ORIC and the Trust regarding among other things, the amount payable by ORIC to the Trust under the Policies and/or the Program Agreements.

NOW THEREFORE, in consideration of the mutual covenants, promises, conditions and agreements set forth herein and other good and valuable consideration, the sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. <u>Recitals</u>. The foregoing recitals are true and correct and are a material part of this Agreement.

2. <u>ORIC Payments</u>. ORIC shall transfer $11,542,181 (the "First ORIC Payment") to the Trust within five (5) business days after the Effective Date (as hereinafter defined). Within ten (10) business days after (i) the entry of a Final Order (as hereinafter defined) in the Fund Litigation holding that the California Fund has no rights against ORIC or under the Policies, or (ii) the California Fund's release of any claims it may have against ORIC relating to the Policies or the Debtors, ORIC shall pay $957,819, plus interest at the rate of 2% per annum from the Effective Date (the "Second ORIC Payment") to the Trust. If a Final Order is entered in the Fund Litigation holding that the California Fund can assert claims against ORIC under the Policies, ORIC, in addition to all of its other rights under this Agreement, shall have no obligation to make the Second ORIC Payment to the Trust. The payment(s) to be made by ORIC hereunder shall be made by wire transfer pursuant to instructions provided by the Trust to ORIC.

3. <u>The Trust's Release of ORIC</u>. Effective upon the Effective Date, the Trust and its Trustee, officers, directors, stockholders, attorneys, agents, servants, representatives, employees,

3

parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns, hereby completely release and forever discharge ORIC and its officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns (collectively, the "ORIC Released Parties") from all claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation or monetary relief of any nature whatsoever, known or unknown, whether based on a tort, contract, statute, equity, agency, control, instrumentality, or any other theory of recovery, which the Trust or the Debtor's estate had, has or may have against the ORIC Released Parties arising out of or in any way related to the Policies, the Program Agreements, the LOC, the Debtor or the Bankruptcy Case, including those arising from or related to the administration of, and the reserving, pricing, billing or calculation and collection of premiums and other changes under the Policies; provided, however, that ORIC will continue to defend and pay all claims insured under the Policies in accordance with the terms of the Policies and applicable law; and provided, further, that this section shall not release ORIC from any obligations or liabilities created by this Agreement.

4.      ORICs Release of the Trust.  Upon the Effective Date, ORIC and its officers, directors, stockholders, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns, hereby completely release and forever discharge the Trust, the Debtors, and their officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns (collectively, the "Trust Released Parties") from all claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation or

4

monetary relief of any nature whatsoever, known or unknown, whether based on a tort, contract, statute, equity, agency, control, instrumentality, or any other theory of recovery, which ORIC had, has or may have against the Trust Released Parties arising out of or in any way related to the Policies, the Program Agreements, the Debtor or the Bankruptcy Case; provided, that this section shall not release the Trust from any obligations or liabilities created by this Agreement.

5. Dismissal of Adversary. Within ten (10) business days after the Effective Date, the Trust and ORIC will file a joint motion to dismiss the Adversary Proceeding, with prejudice and without costs.

6. Bankruptcy Court Approval. This Agreement is subject to the entry of an order by the Bankruptcy Court in the Bankruptcy Case (the "Approval Order") and shall become effective on the date (the "Effective Date") when the Approval Order becomes a Final Order. For purposes of this Agreement, orders shall be deemed to be Final Orders if they are no longer subject to appeal or certiorari proceedings, and no appeal or certiorari proceedings are pending. Within five (5) business days following execution of this Agreement by the Parties, the Trust shall file a Motion in the Bankruptcy Case pursuant to Fed. R. Bankr. P. 9019 and shall diligently prosecute the same to conclusion to obtain entry of the Approval Order.

7. No Admission of Liability. Nothing herein shall be deemed or construed as an admission of liability by any Party to this Agreement, except for liabilities under this Agreement.

8. Authorization. Each of the undersigned represents that he or she has the authority to execute this Agreement on behalf of the Party for whom it is executed.

9. Governing Law. This Agreement shall be interpreted and governed by the laws of the State of Illinois, without regard to conflict of law principles.

10. Construction of Agreement. Wherever used herein, the disjunctive "or" shall be deemed to include the conjunctive "and", the conjunctive "and" shall be deemed to include the

disjunctive "or", and each of the functional words "each", "every", "any", and "all" shall be deemed to include each of the other functional words.

11. <u>Entire Agreement</u>. This Agreement constitutes a single, integrated, written contract expressing the entire understanding and the entire agreement between the Parties concerning the matters set forth herein, supersedes any and all prior agreements between them concerning the matters set forth herein and merges herein all prior statements and actions. The terms of this Agreement are contractual and not merely recitals.

12. <u>Miscellaneous</u>. This Agreement may be executed in counterparts, each of which shall constitute one and the same instrument. The Parties agree that signatures contained in a copy of the Agreement transmitted by facsimile or as a pdf document attached to an email will be treated in all manner and respects as a binding and original document, and the signature of any Party shall be considered for these purposes as an original signature.

13. <u>Amendments</u>. This Agreement may not be modified or amended except by a writing signed by each of the Parties hereto.

14. <u>Severability</u>. The provisions of this Agreement are severable. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable or void for any reason whatsoever, each such portion, provision or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions or parts.

15. <u>Ownership of Claims</u>. The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title and interest in and to every claim or property and other matter which each releases in this Agreement or transfers as consideration and that they have not previously assigned or transferred, or purported to do so, to any person or other entity

3549157 v3 - 03701 / 032

any right, title or interest in any such claim or other matter. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

16.     <u>Voluntary Agreement</u>. The Parties acknowledge that this Agreement is executed voluntarily by each of them, without duress or undue influence on the part of, or on behalf of any of them. The Parties further acknowledge that they have or had the opportunity for representation in the negotiation for, and in the performance of, this Agreement by counsel of their choice and that they have read this Agreement, and have had it fully explained to them by their counsel and that they are fully aware of the contents of this Agreement and its legal affect.

17.     <u>Headings</u>. The headings of the Paragraphs of this Agreement are inserted for convenience only and shall not control or affect the meaning, construction, or effect of this Agreement, or any provisions hereof.

18.     <u>Venue</u>. The venue of any legal proceeding under this Agreement or breach of or default hereunder, shall be brought and heard in the Bankruptcy Court as long as the Bankruptcy Case is open. If the Bankruptcy Case has been closed, any disputes shall be heard by a court of competent jurisdiction, located within the Northern District of Illinois.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties hereby have executed this Agreement as of the day and year first above written.

**CIRCUIT CITY STORES, INC. LIQUIDATING TRUST:**

By: _____
Name: Alfred H. Siegel, in capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust and not in any individual capacity

**OLD REPUBLIC INSURANCE COMPANY**

By: _Linda Johnson_____

Its: _Vice President_____