UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:

CIRCUIT CITY STORES, INC., *et al.*,

Debtors.

Case No. 08-35653-KRH
Chapter 11
(Jointly Administered)

## MEMORANDUM OPINION

This matter comes before the Court upon the *Motion of the Liquidating Trustee to Determine Extent of Liability for Post-Confirmation Quarterly Fees Payable to the United States Trustee Pursuant to 28 U.S.C. § 1930(a)(6) and Memorandum in Support* [ECF No. 14197] (the "Motion to Determine") filed by Alfred H. Siegel (the "Liquidating Trustee"), Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust") and upon the *United States Trustee's Motion for Summary Judgment on the Motion of the Liquidating Trustee to Determine Extent of Liability for Post-Confirmation Quarterly Fees Payable to the United States Trustee Pursuant to 28 U.S.C. § 1930(a)(6) and Memorandum in Support* [ECF No. 14202] (the "Motion for Summary Judgment") filed by the Office of the United States Trustee (the "U.S. Trustee" and, together with the Liquidating Trustee, the "Parties"). At issue is the proper amount of quarterly fees assessable against the Liquidating Trust due to the recent amendment of section 1930 of title 28 of the United States Code. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. After considering the applicable statutory authority, the case law,

the pleadings, and the arguments of counsel, the Court denies the relief requested in Motion for Summary Judgment and grants the relief requested in the Motion to Determine for the reasons set forth below.[1]

On November 10, 2008 (the "Petition Date"), Circuit City Stores, Inc. ("Circuit City") and certain affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On September 14, 2010, the Court confirmed the Debtors' *Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims* [ECF No. 8555, Ex. A] (the "Liquidating Plan").[2] The Liquidating Plan provided for the formation of the Liquidating Trust, overseen by the Liquidating Trustee, to collect, administer, distribute, and liquidate all of the Debtors' remaining assets.[3] Under the terms of the Liquidating Plan,

> [a]ll fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtors.  All such fees that become due and payable thereafter by a Debtor shall be paid by the Liquidating Trustee.  The Liquidating Trustee shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees.[4]

At the time the Liquidating Plan was confirmed in 2010, section 1930 of title 28 provided that the payment of quarterly fees to the U.S. Trustee would range between $6,500 and $30,000.[5]  In

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[2] Finds. Fact, Concls. Law & Order Confirming Mod. Second Am. Joint Plan Liquid., ECF No. 8555.

[3] *Id.* Ex. A, at 1.

[4] *Id.* Ex. A, at 46.

[5] The statute provided:

2

no event would the quarterly fee ever exceed $30,000 regardless of the amount of the disbursements for any given calendar quarter.

In October 2017, Congress amended section 1930 of title 28 of the United States Code to provide:

> During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, § 1004, 131 Stat. 1224, 1232 (codified as amended at 28 U.S.C. § 1930(a)(6)(B) (2018)) (the "Bankruptcy Judgeship Act").[6] The amendment increased the amount of the quarterly fees payable to the U.S. Trustee System from a minimum of $10,000 to a maximum of $250,000 for quarters where disbursements met or exceeded $1 million. *Id.* From January 1, 2018, onward, the U.S. Trustee program has assessed and continues to assess fees based upon the increased fee schedule for all pending chapter 11 cases.[7]

---

> $6,500 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $9,750 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $10,400 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $13,000 for each quarter in which disbursements total $5,000,000 or more but less than $15,000,000; $20,000 for each quarter in which disbursements total $15,000,000 or more but less than $30,000,000; $30,000 for each quarter in which disbursements total more than $30,000,000.

28 U.S.C. § 1930 (2008) (amended 2018).

[6] The balance of the U.S. Trustee System Fund is less than $200,000,000.

[7] *Chapter 11 Quarterly Fees*, U.S. Dep't Justice, https://www.justice.gov/ust/chapter-11-quarterly-fees (last visited July 11, 2019) (making no distinction between cases pending before and cases filed after the amendment's effective date).

3

But the increase in quarterly fees does not apply to all debtors in all chapter 11 cases throughout the country. Unlike chapter 11 debtors in areas that are part of the U.S. Trustee program, chapter 11 debtors in the six federal judicial districts in Alabama and North Carolina that operate under the Bankruptcy Administrator Program (the "BA Districts") may only now be subject to the increased fees, but only under certain circumstances.[8] The statute governing quarterly fees provides that "the Judicial Conference of the United States *may require* the debtor in a case under chapter 11 of title 11 [in the BA Districts] to pay fees equal to those imposed by paragraph (6) of this subsection." 28 U.S.C. § 1930(a)(7) (emphasis added). In 2001, the Judicial Conference of the United States (the "JCUS"), acting according to this statutory authorization, approved a recommendation from its Bankruptcy Committee that quarterly fees be imposed in BA districts in the amounts specified in section 1930(a)(6).[9] But after Congress amended section 1930(a)(6) in October 2017, the BA Districts did not simultaneously increase the quarterly fees payable under section 1930(a)(7).[10] It was not until almost a year after Congress amended section 1930(a)(6), on September 13, 2018, that the JCUS Executive Committee approved imposing the increased quarterly fees in BA Districts "in the amounts specified in 28 U.S.C. § 1930(a)(6)(B) for cases filed on or after October 1, 2018."[11] The resulting increase in quarterly fees payable in BA Districts "does not have retroactive application

---

[8] While the U.S. Trustee program is part of the executive branch, the Bankruptcy Administrator ("BA") program is part of the judicial branch and is overseen by the Administrative Office of the United States. *In re Buffets, LLC*, 597 B.R. 588, 592-93 (Bankr. W.D. Tex. 2019). Although Congress initially intended the U.S. Trustee program to operate nationwide, the BA Districts continue to function separately within the BA program. *Id.* at 593.

[9] Sept./Oct. 2001 Jud. Conf. U.S. Rep. 45-46, http://www.uscourts.gov/sites/default/files/2001-09_0.pdf.

[10] *In re Buffets*, 597 B.R. at 594; *see also* Obj. U.S. Tr. to Mot. Determ. ¶ 68, ECF No. 14203 (the "Response").

[11] Sept. 2018 Jud. Conf. U.S. Rep. 11-12, http://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf [hereinafter 2018 JCUS Report].

4

to pending cases."[12] Debtors that filed chapter 11 petitions prior to October 2018 do not have to pay the increased amount of the quarterly fees.

The Liquidating Trust's quarterly disbursements exceeded $1 million for every quarter of 2018. The U.S. Trustee program assessed and the Liquidating Trust paid the increased amount of the quarterly fees for each of those quarters in accordance with section 1930(a)(6)(B).[13] On March 28, 2019, the Liquidating Trustee filed the Motion to Determine, asking the Court to order "the actual amount of UST Fees due since January 1, 2018 . . . be determined based on the statutory rates in effect as of the Petition Date in this Case."[14] The Motion to Determine advanced two primary arguments in support of its contention: (i) section 1930(a)(6)(B) "is unconstitutional as applied to this Case due to its lack of uniformity for the first three quarters of 2018"; and (ii) section 1930(a)(6)(B) "cannot be retroactively applied to the Trust for any relevant years."[15] On May 9, 2019, the U.S. Trustee filed the Motion for Summary Judgment and its Response. The Motion for Summary Judgment asked the Court to dismiss the Motion to Determine because "the Motion [to Determine] seeks relief that can only be sought through an adversary complaint under Rule 7001" of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[16] On June 5, 2019, the Liquidating Trustee filed the *Liquidating Trust's Response to United States Trustee's Motion for Summary Judgment* [ECF No. 14209]. On June

---

[12] Bankr. Adm'r N. Dist. Ala., *Chap. 11 Quarterly Fee Forms – with Instrs.* 1 n.1, http://www.alnba.uscourts.gov/sites/alnba/files/forms/webqtrfees2019.pdf (last updated Jan. 30, 2019) [hereinafter *N.D. Ala. Fee Notice*]; *see also* Bankr. Adm'r W. Dist. N.C., *Notice Incr. Chap. 11 Quarterly Fees* 1, http://www.ncwba.uscourts.gov/sites/ncwba/files/Notice%20of%20Increased%20Chapter%2011%20Quarterly%20Fees%20effective%20for%20cases%20filed%20on%20or%20after%20October%201.pdf (Sept. 20, 2018) [hereinafter *W.D.N.C. Fee Notice*].

[13] *See* Resp. ¶¶ 11-12.

[14] Mot. Determine 14.

[15] *Id.*

[16] Mot. Summ. J. 2.

5

12, 2019, the Court conducted a hearing (the "Hearing") on the foregoing matters, at which time the Court denied the relief requested in the Motion for Summary Judgment and took the Motion to Determine under advisement.[17]

The Motion for Summary Judgment arguing for dismissal of the Motion to Determine on the grounds that it seeks "relief that can only be pursued through an adversary proceeding" exalts form over substance. Mot. Summ. J. ¶ 16. Bankruptcy Rule 2020, which provides for a proceeding against the U.S. Trustee to be brought as a contested matter, most likely applies to the Motion to Determine.[18] Furthermore, Bankruptcy Rule 9014, which governs contested matters, makes most of the procedural rules included in Part VII of the Bankruptcy Rules, which governs adversary proceedings, applicable to contested matters. Fed. R. Bankr. P. 9014(c). That list is not exhaustive. The Court is authorized to "direct that one or more of the other rules in Part VII shall apply" in any particular contested matter. *Id.* No lack of formality need be suffered by any party in any contested matter.

On the other hand, the Motion to Determine does seek the type of relief included in Bankruptcy Rule 7001, which must ordinarily be brought by complaint. The Motion to Determine requests a determination about the amount of quarterly fees due, a holding that section 1930(a)(6)(B) is unconstitutionally non-uniform, and a holding that section

---

[17] The Parties, without leave of the Court, submitted post-Hearing briefs. *See* Suppl. Resp. Mot. Determine [ECF No. 14213]; Liquid. Tr. Resp. to Suppl. Resp. Mot. Determine [ECF No. 14217]. The Court has fully considered the arguments and authorities set forth in the supplemental pleadings.

[18] Bankruptcy Rule 2020 states that "[a] proceeding to contest any act or failure to act by the United States trustee is governed by Rule 9014." Fed. R. Bankr. P. 2020. As Bankruptcy Rule 2020 specifically provides that any such proceeding against the U.S. Trustee is a contested matter, it would control over the more general provisions of Bankruptcy Rule 7001. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general." (alteration in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992))); *Standard Indus., Inc. v. Aquila, Inc.* (*In re C.W. Mining Co.*), 431 B.R. 307, 2009 WL 4894278, at *5 (B.A.P. 10th Cir. 2009) (unpublished table decision) ("[W]hen the plain language of one bankruptcy rule specifically authorizes a party to proceed on motion, the general language of another rule should not be interpreted so broadly as to negate the more specific." (citing *State Bank of S. Utah v. Gledhill* (*In re Gledhill*), 76 F.3d 1070, 1078 (10th Cir. 1996))), *aff'd*, 625 F.3d 1240 (10th Cir. 2010).

6

1930(a)(6)(B) cannot not be retroactively applied to these cases. Mot. Summ. J. ¶¶ 1-2. The first form of relief is an attempt to "determine the validity of the government's 'interest in property,'" which falls within the gambit of Bankruptcy Rule 7001(2). Mot. Summ. J. ¶ 15 (quoting Fed. R. Bankr. P. 7001(2)). The two other two requests seek "declaratory relief relating to [the Liquidating Trustee's] upcoming proceeding to 'recover money or property'" and are covered by Bankruptcy Rules 7001(1) and 7001(9). *Id.* ¶ 14 (quoting Fed. R. Bankr. P. 7001(1)).

But notwithstanding the U.S. Trustee's assertions to the contrary, this procedural conundrum does not warrant dismissal of the Motion to Determine in any event. Rather, the Court can simply convert the contested matter to an adversary proceeding. *See Phillips v. Lehman Bros. Holdings, Inc.* (*In re Fas Mart Convenience Stores, Inc.*), 318 B.R. 370 (Bankr. E.D. Va. 2004) (denying motion to dismiss and ordering underlying motion converted to a complaint). Section 105(a) of the Bankruptcy Code permits the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see also Arrowsmith v. Lemberg Law, LLC* (*In re Health Diagnostics Lab., Inc.*), 571 B.R. 182, 192 (Bankr. E.D. Va. 2017) (stating that section 105(a) is a "broad grant of power" (quoting *Caesars Entm't Operating Co. v. BOKF, N.A.* (*In re Caesars Entm't Operating Co.*), 808 F.3d 1186, 1188 (7th Cir. 2015))). This grant of power is broad enough to permit a court to "convert a contested matter to an adversary proceeding on its own motion." *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 401 B.R. 872, 892 (Bankr. S.D. Tex. 2009) (citing *Costa v. Marotta, Gund, Budd & Dzera, LLC*, 281 F. App'x 5, 6 (1st Cir. 2008) (per curiam); *Johnson v. Stemple* (*In re Stemple*), 361 B.R. 778, 784 (Bankr. E.D. Va. 2007)). Accordingly, the Court will deny the relief requested in the Motion for Summary

7

Judgment seeking dismissal of Motion to Determine, and it will instead convert this contested matter to an adversary proceeding.[19]

The Court turns next to the merits of the Motion to Determine and to the constitutionality of section 1930(a)(6)(B).  The Liquidating Trustee first challenges the constitutionality of the amendment to section 1930(a)(6) on account of its retroactive application to cases pending prior to enactment.  Without question, the amendment to section 1930(a)(6) dramatically increased the quarterly fees payable by the Liquidating Trust.[20]  In the seven years between entry of the order confirming the Liquidating Plan[21] and the effective date of section 1930(a)(6)(B), the Liquidating Trust paid approximately $833,000 in quarterly fees.  Hr'g Tr. 13:1-9, June 12, 2019, ECF No. 14214.  In the first three quarters of 2018 alone, the Liquidating Trust paid approximately $632,000.  *Id.*  The Liquidating Trustee complains that this "exponential statutory increase" was not something he could have anticipated when the Liquidating Plan was confirmed over eight years ago.  Mot. Determine. ¶ 12.  If the Liquidating Trustee had been able to anticipate such a significant step-up in quarterly fees at the time of plan confirmation, "there might have been different decisions made in confirmation and how the case was going to proceed thereafter."  Hr'g Tr. 13:24-14:5, June 12, 2019, ECF No. 14214.  The Liquidating Plan fixed the rights of the Liquidating Trustee, the rights of the creditors, and the rights of all other

---

[19] Hr'g Tr. 10:14, June 12, 2019, ECF No. 14214.  Neither of the Parties opposed conversion at the Hearing. *Id.* at 8:7-8, 10:12-13.  Furthermore, both Parties requested that the Court proceed at the Hearing to hear argument pertaining to the merits of the Motion to Determine and the Response thereto (collectively, the "Pleadings"). *Id.* at 8:3-4; 10:9-10.  As the Parties represented that there were no material facts in dispute and that the matters raised in the Pleadings were purely dispositive questions of law, the Court entertained the Pleadings as cross-motions for summary judgment under Bankruptcy Rule 7056 and proceeded thereon. *Id.* at 8:22-9:14; 10:5-25.

[20] The U.S. Trustee states that "the fees [paid by the Liquidating Trustee since the enactment of section 1930(a)(6)(B)] ranged from $30,777 in the fourth quarter of 2018 to $232,843 in the first quarter of 2018." Resp. ¶ 12.  The Liquidating Trustee confirms that the Liquidating Trust paid $632,542 in quarterly fees through the first three quarters of the 2018 calendar year, "a $576,142 difference" between the $56,400 it would have paid absent the enactment of section 1930(a)(6)(B).  Mot. Determine ¶ 12.

[21] *See supra* note 2.

8

parties, and the substantial increase in quarterly fees harms the holders of allowed general unsecured claims because "fewer assets will be available for distribution to the [Liquidating Trust's] beneficiaries." Mot. Determine ¶ 25.

Congress may give a law retroactive effect by "expressly prescrib[ing] the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). When Congress does so, "this is the end of the analysis." *Appiah v. INS*, 202 F.3d 704, 708 (4th Cir. 2000). If Congress does not define a statute's temporal reach, "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280 (emphasis in original). Making this determination "is not always a simple or mechanical task." *Id.* at 268. The decision "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270.

The Court's analysis is controlled by a prior decision of this Court in *In re AH. Robins Co.*, 219 B.R. 145 (Bankr. E.D. Va. 1998). In that case, the Bankruptcy Court and the District Court, sitting together, examined whether a 1996 amendment to section 1930(a)(6), which required chapter 11 debtors to pay quarterly fees post-confirmation, operated retroactively. *Id.* at 146. Prior to enactment of the 1996 amendment, chapter 11 debtors only paid quarterly fees up until the time of plan confirmation. *Id.* at 146-47. The 1996 amendment provided that quarterly fees would continue to accrue post-confirmation. *Id.* Initially, it was not clear whether the 1996 amendment only applied to cases filed after the amendment's effective date or whether it applied to all cases pending on the amendment's effective date. *Id.* To deal with the "staggering amount

9

of litigation" and "widespread disparity among the courts in their attempts to apply" the 1996 amendment, Congress intervened. *Id.* at 147. "[T]hrough clarifying legislation [adopted on September 30, 1996, Congress] . . . made it known that the Amendment [was] to apply to *all* cases." *Id.* (emphasis in original).

Similar to the case at bar, the debtors in *In re A.H. Robins Co.* had been operating under a confirmed plan for many years at the time of the 1996 amendment and challenged the amendment's constitutionality based on its retroactive application. Judge Shelley of this Court, with Judge Merhige of the District Court concurring, determined that the 1996 amendment was supported by a rational legislative purpose and was "substantively prospective in nature," in that it "only require[d] the payment of fees from the date of the Amendment forward."[22] *Id.* at 148. The Court compared post-confirmation quarterly fees to "taxes arising post confirmation, or any similar post-confirmation expenses." *Id.* (citing *In re Maruko, Inc.*, 206 B.R. 225, 229 (Bankr. S.D. Cal. 1997)). The quarterly fee was no more than an "administrative expense attendant to an open case." *Id.* (quoting *In re McLean Square Assocs.*, 201 B.R. 436, 441 (Bankr. E.D. Va. 1996)).

Like the 1996 amendment, the 2018 amendment to section 1930(a)(6) imposed an increase in the quarterly fees to be paid in chapter 11 cases. The Court finds that Congress did not expressly prescribe the reach of the 2018 amendment to section 1930(a)(6), nor did it indicate its intent for the 2018 amendment to section 1930(a)(6) to apply retroactively through other means. Accordingly, it is left to the Court to determine whether the statute's application to cases pending on its effective date is impermissibly retroactive. The holding in *In re A.H.*

---

[22] The debtor's plan, confirmed eight years prior to the 1996 amendment, was silent on quarterly fees, but the amendment "d[id] not impermissibly modify the Plan in the case at bar . . . since such fees are attendant to [the debtor's] still-pending bankruptcy case." *Id.*

10

*Robins Co.* mandates it is not. A mere increase in the quarterly U.S. Trustee fee is not substantively retroactive. It is more akin to "taxes arising post confirmation, or any similar post-confirmation expenses." *Id.* (citing *In re Maruko*, 206 B.R. at 229)); *see also Landgraf*, 511 U.S. at 269 n.24 ("Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property . . . ."). Based upon its prior precedent, the Court holds that section 1930(a)(6)(B) does not violate the antiretroactivity principle as the law is substantively prospective.

The Court turns next to whether the amendment to section 1930(a)(6) is unconstitutional based on non-uniformity. The fees assessed under section 1930(a)(6)(B) may be classified either as a tax or as a user fee for chapter 11 of the Bankruptcy Code. Under either form of classification, the quarterly fees must be applied uniformly.

As a tax, Congress may "lay and collect Taxes, Duties, Imposts and Excises . . . but all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. The proviso to this constitutional grant of authority to Congress is known as the "Uniformity Clause." The Uniformity Clause was intended to prevent the federal government from "us[ing] its power over commerce to the disadvantage of particular States" and engaging in "the regionalism that had marked the Confederation." *United States v. Ptasynski*, 462 U.S. 74, 81 (1983). The Supreme Court has developed a two-part test when any law is challenged under the Uniformity Clause. Where Congress elects to define the subject of a tax or duty in non-geographic terms, "the Uniformity Clause is satisfied," but where Congress frames its tax or duty in geographic terms, a court must "examine the classification closely to see if there is actual geographic discrimination." *Id.* at 84-85.

The Bankruptcy Clause of the Constitution endows Congress with the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. Accordingly, if the quarterly fee is characterized as a user fee attendant to chapter 11 of the Bankruptcy Code, it must still be applied uniformly under the Bankruptcy Clause. The uniformity mandated by the Bankruptcy Clause "is geographical, and not personal." *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 188 (1902). While the Bankruptcy Clause "is not an Equal Protection Clause for bankrupts," "[t]o survive scrutiny under the Bankruptcy Clause, a law must at least apply uniformly to a defined class of debtors." *Ry. Labor Execs.' Ass'n v. Gibbons*, 455 U.S. 457, 470 n.11, 473 (1982).

For the first three quarters of 2018, newly adopted section 1930(a)(6)(B) increased quarterly fees assessed against chapter 11 debtors in only 88 of the 94 federal judicial districts throughout the country. It was not until October 1, 2018, that the JCUS approved the imposition of quarterly fees on chapter 11 debtors in the BA Districts "in the amounts specified in 28 U.S.C. § 1930(a)(6)(B)." 2018 JCUS Report, *supra* note 11, at 11-12. The Bankruptcy Judgeship Act offered no justification for excluding the BA Districts from the fee step-up. "Under any standard of review, when Congress provides no justification for enacting a non-uniform law, its decision can only be considered to be irrational and arbitrary." *In re Buffets*, 597 B.R. at 595 (quoting *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1532 (9th Cir. 1994), *amended by* 46 F.3d 969 (9th Cir. 1995)). Section 1930(a)(6)(B) contravened the Uniformity Clause through "actual geographic discrimination" for the first three quarters of 2018. *Ptasynski*, 462 U.S. at 85.

Although the increased fees are now uniformly charged nationwide for debtors filing chapter 11 cases on or after October 1, 2018, debtors in pending cases filed before October 1, 2018 are still experiencing geographic discrimination without a discernable explanation. JCUS

12

determined that "the quarterly fee calculation changes in 28 U.S.C. § 1930(a)(6)(B) should apply in BA districts beginning in the first quarter of the fiscal year 2019 (that is, for any chapter 11 case filed on or after October 1, 2018, and *not for cases then pending*)." Resp. Ex. C, at 20 (emphasis added). The fee increase "does not have retroactive application to pending cases" in BA Districts. *N.D. Ala. Fee Notice*, *supra* note 12, 1 n.1.[23]

The geographic discrimination that remains ongoing is particularly apparent in the case at bar. Had the Debtors filed their chapter 11 bankruptcy petitions a mere 140 miles south in Raleigh, North Carolina,[24] the Debtors would be paying substantially lower quarterly fees than they are paying now. This is the type of "regionalism" the Uniformity Clause was intended to prevent. *Ptasynski*, 462 U.S. at 81. As the BA Districts do not apply section 1930(a)(6)(B)'s fee increase to pending cases, the fee increase cannot constitutionally be applied to pending cases outside of the BA Districts. The Court holds that section 1930(a)(6)(B) remains unconstitutionally non-uniform as applied to pending cases.

The court in *In re Buffets* confined its analysis to whether section 1930(a)(6)(B) violated the Constitution's Uniformity Clause. This Court holds that section 1930(a)(6)(B) also violates the Constitution's Bankruptcy Clause. The Bankruptcy Clause requires bankruptcy laws to be geographically uniform. *Moyses*, 186 U.S. at 188. Section 1930(a)(6)(B) is not geographically uniform because qualifying chapter 11 debtors with cases pending prior to October of 2018 have been and continue to be assessed lower quarterly fees in two regions of the country (Alabama and North Carolina) than have similarly situated debtors throughout the rest of the country.

---

[23] *See also W.D.N.C. Fee Notice*, *supra* note 12, at 1; Hr'g Tr. 17:17-24, June 12, 2019, ECF No. 14214 ("If you file a case now in Northern District of Alabama or Western District of North Carolina, you are subject to the new fee schedule, but if you filed a case prior to October 1, 2018, you're on the old schedule. So it is not uniform . . . .").

[24] Both North Carolina and Virginia lie within the Fourth Circuit. But unlike Virginia, North Carolina is a BA District.

13

Although the Bankruptcy Clause "is not an Equal Protection Clause," *Gibbons*, 455 U.S. at 470 n.11, it does require bankruptcy laws to "at least apply uniformly to a defined class of debtors," *id.* at 473. As the amendment to section 1930(a)(6) does not apply uniformly both to chapter 11 debtors with pending cases in BA districts and to chapter 11 debtors with pending cases in U.S. Trustee districts, it is unconstitutional under the Bankruptcy Clause.

Regardless of whether the quarterly fees are classified as a tax or as a user fee for bankruptcy, the amendment to section 1930(a)(6) is unconstitutional. If the quarterly fees are treated as a tax, the amendment violates the Uniformity Clause. If the quarterly fees are considered as a bankruptcy user fee, the amendment violates the Bankruptcy Clause. The cost of a given bankruptcy proceeding for similarly situated debtors must be consistent in every judicial district throughout the country. Therefore, the Court will grant the Motion to Determine. The quarterly fees due and payable by the Liquidating Trust since January 1, 2018, must be determined based on the prior version of the statute.[25] The Court makes no finding as to the Liquidating Trustee's ability to recover any overpayments based upon the Courts ruling but acknowledges that rights and defenses of both Parties are reserved.

**Conclusion**

For the foregoing reasons, the amendment to section 1930(a)(6), while prospective in nature, is unconstitutional as applied to this case due to its lack of uniformity with respect to chapter 11 bankruptcy cases pending prior to October of 2018. The Court will issue a separate order denying the Motion for Summary Judgment, converting this contested matter to an adversary proceeding, and granting the Motion to Determine.

DATED:    July 15, 2019                    /s/ Kevin R. Huennekens
                                            UNITED STATES BANKRUPTCY JUDGE

---

[25] *See* 28 U.S.C. § 1930(a)(6) (2008).

14

ENTERED ON DOCKET:
 July 15 2019