IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA (RICHMOND)

| | | |
|---|---|---|
| In Re: | ) | Case No. 08-35653-KRH |
| | ) | Richmond, Virginia |
| CIRCUIT CITY STORES, INC., et al., | ) | |
| | ) | |
| | ) | December 12, 2019 |
| Debtors. | ) | 9:34 a.m. |
| | ) | |
| ------------------------------- | ) | |

TRANSCRIPT OF HEARING ON
MOTION FOR CONTEMPT FILED BY CIRCUIT CITY STORES, INC.
LIQUIDATING TRUST

MOTION TO EXPEDITE HEARING FILED BY CIRCUIT CITY STORES, INC.
LIQUIDATING TRUST) FILED BY LYNN L. TAVENNER OF TAVENNER &
BERAN, PLC ON BEHALF OF CIRCUIT CITY STORES, INC. LIQUIDATING
TRUST.

BEFORE THE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

```
 1    APPEARANCES:

 2    For the Debtors:              LYNN L. TAVENNER, ESQ.
 3                                  PAULA STEINHILBER BERAN, ESQ.
                                    TAVENNER & BERAN, PLC
 4                                  20 North Eighth Street
                                    Second Floor
 5                                  Richmond, VA 23219

 6    For Mr. McDonald             VERNON E. INGE, JR., ESQ.
      and Ms. Bradshaw:           WHITEFORD TAYLOR PRESTON LLP
 7                                 Two James Center
                                   1021 E. Cary Street
 8                                 Suite 1700
                                   Richmond, VA 23219
 9
      For David Fose:             MICHAEL SCOTT EWING, ESQ.
10                                STILES EWING POWERS, PC
                                  3957 Westerre Parkway
11                                Suite 400
                                  Henrico, VA 2323320
12
      ALSO PRESENT:               KATIE W. BRADSHAW, CPA
13                                JEFFREY MCDONALD, TAX OFFICER
                                  Circuit City Stores, Inc.
14                                Liquidating Trust

15

16

17

18

19

20

21   Transcription Services:        eScribers, LLC
                                     7227 North 16th Street
22                                   Suite #207
                                     Phoenix, AZ 85020
23                                   (973) 406-2250

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

1          THE CLERK:  All rise.  The United States Bankruptcy

2    Court for the Eastern District of Virginia is now in session,

3    the Honorable Kevin R. Huennekens presiding.  Please be seated

4    and come to order.

5          THE COURT OFFICER:  Circuit City Stores, motion for

6    contempt and motion to expedite hearing.

7          MS. TAVENNER:  Good afternoon, Your -- good morning,

8    Your Honor.  It feels like afternoon already.  I apologize.

9          THE COURT:  Time flies, huh?

10         MS. TAVENNER:  It certainly does.

11         THE COURT:  Okay.

12         MS. TAVENNER:  For the record, Lynn Tavenner of the

13   law form of Tavenner & Beran.  Together with me today is my law

14   partner, Paula Beran, at counsel table, as well as Katie

15   Bradshaw, who you've seen many times.  Also in the courtroom is

16   Mr. Jeff McDonald as well as Mr. -- both of whom are employees

17   of the trust, as you know -- as well as Mr. Vern Inge who has

18   been retained to serve as personal counsel for the two of them

19   if needed.

20         THE COURT:  All right.  Thank you.

21         MR. INGE:  Good morning, Your Honor.

22         MS. TAVENNER:  And Your Honor, we thank you very much

23   for giving us time this morning to appear before you.  As

24   outlined in our motion, time is of the essence because a

25   subpoena was issued and attempted to be served for a deposition

1  on barely six days' notice, and it's supposed to occur this

2  coming Monday.

3      So while you know, Your Honor, that we do want to note

4  for the record that we don't take lightly filing pleadings

5  asking for sanctions against fellow lawyers and their firms.

6  In fact, we've even used the Batzli firm as a referral source,

7  and one of the Tavenner & Beran members has even personally

8  utilized the firm in connection with personal services.

9      So we didn't file this lightly.  We tried to -- we had

10  wanted to do anything possible but be before you this morning.

11  We understand that Mr. Fose and his team are not happy with the

12  quick hearing on the motion.  You know, they complain about

13  what we have done in little than twenty-six hours when they've

14  had over fifteen months, Your Honor, to take appropriate action

15  in this Court, and they didn't do it.

16      Actually, Your Honor, when you look at everything that

17  the trust was able to do to get to this point, since the

18  subpoena was served or provided to Ms. Bradshaw about one

19  o'clock on Tuesday, it's quite remarkable that we were able to

20  get to the motion on file as quickly as we did.

21      When the subpoena was served on Tuesday afternoon,

22  both members of Tavenner & Beran were actually at Varina High

23  School with several other members of our bar, speaking to

24  multiple classes on financial literacy.  But in between

25  presentations we were able to speak by cell phone to Ms.

1  Bradshaw, reviewed the subpoena.  We spoke with her again on

2  the way back from Varina, in the afternoon.

3          Upon return to our offices late in the day, we spent

4  time learning about the topics that had occurred in Mr.

5  McDonald's deposition that we had not been completely familiar

6  with and discovered the expanses of nature of the questioning

7  with regard to that deposition that had previously occurred.

8  We then also had discussions with the trustee, who as Your

9  Honor knows, is on the west coast.

10         After determining a game plan with our client, we then

11  began making calls to see if we could locate individual counsel

12  for Ms. Bradshaw and Mr. McDonald, provided conflict

13  information; we had additional conversations with both of them

14  into the late evening.

15         Yesterday morning we began drafting the motion.  We

16  immediately reached out to the Court to ascertain an available

17  hearing date that could occur in advance of the time of the

18  scheduled deposition.  We received this morning as the

19  available time.  So upon securing the same, we coordinated and

20  discussed with personal counsel who cleared conflicts about the

21  various issues in play.  We had --

22         THE COURT:  I only had one hour between today and

23  Monday.

24         MS. TAVENNER:  We appreciate that, Your Honor.  We are

25  just trying to explain that, to the extent that others have

1  issues with the time frame, we wanted to advise Your Honor that

2  we worked very hard to get it before you as quickly as we

3  could, given your court scheduling.

4          So we appreciate you allowing us to get before you.

5  We didn't have much time ourselves, even though they've had

6  over fifteen months to come before Your Honor and address

7  things with you because -- or even notify the trust and its

8  counsel as to what they were doing.

9          Instead, it appears that Mr. Fose and his team have

10  chosen to pretend that they were just taking a deposition of

11  trust staff on an individual basis only, even though they knew

12  full well that the information that they were seeking of Ms.

13  Bradshaw is information specifically pertaining to trust

14  matters.

15          This is indeed astonishing, given the prior history

16  with respect to this matter.  And this is why we needed to file

17  the motion, to get before you today to protect the integrity of

18  this Court, its jurisdiction, and to seek enforcement of your

19  confirmation order and protection from the foreign subpoenas

20  that were issued which, we believe, under false pretenses, Your

21  Honor.

22          And while we're here on an expedited motion, the

23  underlying facts and issues are not new at all.  But even

24  though the subpoenas at issue purport to be of Bradshaw and

25  McDonald individually, it's undisputed at this point that the

1    testimony sought in the upcoming deposition of Ms. Bradshaw and

2    the trial testimony specifically regards information pertaining

3    to the operations of the trust.

4          It's also undisputed, Your Honor, that Mr. Fose and

5    his team were put on notice of the jurisdiction of this Court

6    in September of 2018.  It's undisputed, Your Honor, that Mr.

7    Fose and his team were again put on notice of the jurisdiction

8    of this Court in March of 2019.

9          Now some fifteen months later, Your Honor, they

10   continue to ignore the jurisdiction of this Court and attempt

11   to do an end run around the same by first noticing up a

12   deposition of Mr. McDonald, in his personal capacity,

13   continuing to conduct that deposition in the same proceeding,

14   in clear violation of this Court's confirmation order, and

15   making inquiry regarding trust matters while they were on

16   notice that that was improper.

17         Such questioning on trust matters is undisputed, but

18   Mr. Fose and his team didn't stop there.  After they had done

19   that, undaunted, they did then notice up the deposition of Ms.

20   Bradshaw, notice of trial subpoenas for Ms. Bradshaw and Mr.

21   McDonald.  The deposition is to take place on Monday, Your

22   Honor.

23         And while the trust initially feared that Mr. Fose and

24   his team might once again attempt to delve into trust

25   inquiries, it's now undisputed that such inquiry is indeed the

1    focus of that deposition.

2           Mr. Ewing has plainly admitted the same.  That is his

3    purpose, Your Honor.  Such inquiry must fail, for multiple

4    reasons, at this point, as being in violation of your

5    confirmation order and the trust agreement.  And attempts to

6    blatantly disregard this Court's jurisdiction without first

7    coming in here and seeking relief from the same, after being on

8    notice for more than fifteen months, must be sanctioned, Your

9    Honor.

10          We seek sanctions today against Mr. Fose; against Ms.

11   Barton, the counsel that issued the original subpoena -- first

12   two subpoenas; Mr. Ewing, who's now issuing subpoenas; and his

13   law firm, for such action, and ask for fees incurred to address

14   each and every one of those infractions, going back to the

15   first subpoena issued in September of 2018.

16          We've tried to be consensual, we tried to provide

17   information, and it didn't work, Your Honor.  So unfortunately,

18   we are where we are today.  We're prepared to present testimony

19   in support of our motion for contempt.

20          THE COURT:  All right.  Thank you.

21          MR. EWING:  Good morning, Your Honor.

22          THE COURT:  Good morning.

23          MR. EWING:  Mike Ewing.  I represent David Fose in a

24   divorce case that's pending in Hanover County.  I'm not a

25   bankruptcy attorney, I don't appear before this Court.  I

1  received these motions last night after 5 o'clock.  Counsel has

2  stated that they did everything they could to work this out.

3  They didn't do the most basic thing, and that was simply pick

4  up the phone and call me.  And I would have done whatever

5  necessary to try to work this out.

6        Obviously I read the motions last night, I was

7  concerned, and maybe I had issued a subpoena wrong.  I don't

8  know.  I don't know.  But I immediately contacted counsel by

9  email and agreed that I would take -- or continue the

10  deposition for Monday until, one, I could consult with a

11  bankruptcy attorney, and two, try to work with counsel to try

12  to obtain the information that I needed.  We did have

13  communication with counsel last night, but we didn't work out

14  anything that would allow us to not appear today.

15        I have subpoenaed a witness to trial.  There is a

16  deposition on Monday.  There is a trial on January the 2nd.

17  Ms. Fose -- Mrs. Fose, who is the former employee of the trust,

18  her attorney has also subpoenaed trust employees for the trial

19  on January the 2nd.

20        The issue in this case is very limited.  Ms. Fose

21  signed a one-year contract with the trust.  Six months of that

22  contract was during the marriage; six months was after the

23  parties separated.  She was supposed to receive two bonuses,

24  one at the six-month date, one at the twelve-month date.

25        Those bonuses total about 375,000 dollars, a

1   significant issue in the divorce case.  Those bonuses that have

2   been paid, they're paid on the dates that they were due.  But

3   what happened was an addendum was executed before the parties

4   separated, and that addendum changed the bonus terms.  It

5   didn't change the amount of the bonus, it didn't change the due

6   dates; it changed the wording about when that bonus would be

7   earned.

8         Obviously they tried to change it so that it was

9   earned in the last six months of the agreement, not the first

10  six months.  That would make the bonus separate property

11  instead of marital property.  That's what this is about.  It's

12  my understanding that no other employees of the trust signed an

13  addendum like that, just the employee that just happened to be

14  going through a divorce at that time.

15        My questions are very simple and would probably take

16  fifteen minutes of testimony:  why was the addendum signed, and

17  did the wife ask for that addendum.  I mean, that's the

18  questions that I need answered.

19        What I'm asking the Court to do today is maybe

20  continue this matter even until next week.  And If it has to go

21  later, then it does, then I'll just have to continue the

22  divorce case in Hanover to a later date.  I need this

23  information.  It's a critical issue.  If I have not jumped

24  through all of the hoops that are necessary, I apologize, and I

25  will do that.  And I will do what is necessary to obtain this

1  information.

2          Again, I have not had an opportunity to prepare for

3  this motion today.  I didn't receive it until last night.  I

4  have not had the opportunity to talk to bankruptcy counsel.

5          THE COURT:  All right.  Thank you.

6          MS. BERAN:  Your Honor, for the reasons articulate --

7  I apologize, Your Honor.  For the record, Paula Beran of the

8  law firm of Tavenner & Beran.

9          For the reasons articulated by Ms. Tavenner, we

10 believe we've done everything we possibly could to try and work

11 it out today.  I mean, I think it's undisputed that we

12 previously provided to Mr. Fose's counsel and his entire team a

13 copy of Your Honor's opinion in Toshiba fifteen months ago.  We

14 again provided a copy of Your Honor's opinion in the Circuit

15 City/Toshiba matter back in March of 2019.  In each instance,

16 it was in response to a subpoena.

17         In connection with that, Your Honor, notwithstanding

18 that we informed them that their subpoenas were null and void,

19 because they did not first receive leave of this Court, we

20 nonetheless, knowing that Your Honor would want us to work it

21 out, we tried to find a solution and ultimately actually

22 provided the documents that they requested.

23         And these documents that Mr. Ewing is referencing,

24 it's undisputed, they have had these documents for fifteen

25 months, Your Honor.  The evidence will establish that.

Colloquy                                                                    12

1       So we respectfully request that we go forward today.

2   We are prepared to put on evidence to demonstrate that all of

3   these facts are undisputed and that, notwithstanding knowing

4   about Your Honor's jurisdiction for over fifteen months,

5   actually receiving a copy of Your Honor's opinion in the

6   Circuit City/Toshiba matter twice, fifteen months ago, and then

7   again in March of 2019, they have had blatant disregard for the

8   jurisdiction of this Court and have marched forward, and

9   they're the one that have put this in an emergency situation.

10      They noticed this up on less than six days' notice.

11  They served Ms. Bradshaw and Mr. McDonald Tuesday afternoon,

12  and unfortunately, Your Honor, by continuing it sometime next

13  week, there's not availability, from Tavenner & Beran's

14  perspective, to come back in before this Court and/or in

15  connection with Your Honor's availability.  And so we need to

16  have this matter resolved.

17      We did try to.  I can provide to Your Honor a slew of

18  emails between myself and Mr. Ewing to try and work it out

19  under the time constraints that Tavenner & Beran was under,

20  this Court's availability, and the scheduled trial on January

21  2nd, and we were unable to.  We respectfully request, based on

22  the same, that we go forward.  And I am prepared today to put

23  on evidence to demonstrate the undisputed facts.

24      THE COURT:  Well, I have not looked at my schedule for

25  next week.  I do know that with the holidays coming things are

Colloquy                                                         13

1   pretty slammed right now with the Court because everybody wants

2   to get in beforehand.  But you've checked, and we can't do

3   that --

4            MS. BERAN:  Your Honor --

5            THE COURT:  -- based on yours and mine?

6            MS. BERAN:  Correct, Your Honor.  Based on your

7   schedule and my sentence -- Ms. Tavenner and my schedule, we

8   are -- there was nothing that worked next week.

9            THE COURT:  All right.

10           MR. EWING:  Your Honor, I respectfully ask that --

11           THE COURT:  Mr. Ewing, we need you to come --

12           MR. EWING:  Oh, sorry.

13           THE COURT:  -- because we're recording all of this

14   digitally, and so we need to have you over here.  Thank you,

15   sir.

16           MR. EWING:  Understood.  Then I respectfully ask that

17   the matter be continued out into January, and I'll have to move

18   my trial date in the Hanover circuit court to a later date.

19   But I mean, this is a critical issue.

20           And it was raised that I've had these documents for a

21   long time.  It is true, I've had these contracts for a long

22   time.  Simply looking at it, I just -- I could not see the

23   issue because it looked legitimate when I first saw it.  It

24   wasn't until I took the deposition of someone else that I

25   realized that not everybody signed this addendum.  And that's

1  when it became clear that this was something that was being

2  pulled over on me or on my client.  And so again, yes, I had

3  the employment contract and I had the addendum for a long time.

4  I just didn't see the issue as clearly as I see it now.

5          THE COURT:  But what about the Toshiba opinion that I

6  wrote that said that the procedure that has to be followed is

7  to come to this Court first and request permission to proceed

8  in a state court or get the relief in this Court?

9          MR. EWING:  I understand, and that's what should have

10  been done, and it wasn't.  We had issued subpoenas directly to

11  the trust before, and here we were sending a subpoena for local

12  individuals to appear at a local court.  And if I didn't handle

13  that correctly, I apologize.

14          THE COURT:  All right.

15          MS. BERAN:  Your Honor, we would respectfully request

16  to put on evidence.  Because what Mr. Ewing just testified --

17          THE COURT:  Okay.  I'm going to let you proceed.  I'm

18  going to grant the --

19          MS. BERAN:  Thank you.

20          THE COURT:  I'm going to grant the -- we're all here.

21  I'll grant the motion to expedite.  We can proceed on the

22  underlying motion.

23          MS. BERAN:  Thank you.  Your Honor, first and

24  foremost, I'd like to call Mr. Ewing to the stand.

25          THE COURT:  Okay.  Mr. Ewing, please come forward and

1  be sworn.

2      (Witness sworn)

3  DIRECT EXAMINATION

4  BY MS. BERAN:

5  Q.  Good morning, Mr. Ewing.  Could you please state your name

6  and address for the record?

7  A.  Michael Scott Ewing, 3957 Westerre Parkway, Suite 400,

8  Henrico, Virginia 23233.

9  Q.  Who are you currently employed by?

10  A.  Stiles Ewing Powers, PC.

11  Q.  And what, if any, relationship does Stiles Ewing Powers, PC

12  have to Batzli Stiles Butler PC?

13  A.  That was a former name of the firm before the partners

14  retired.

15  Q.  And what, if any, role does Stiles Ewing Powers, and

16  formerly, Batzli Stiles Butler, play in the case of Fose v.

17  Fose currently pending in the circuit court of Hanover County?

18  A.  We represent David Fose.

19  Q.  Is Ms. Mollie Barton employed by or an equity member of

20  SEP?

21  A.  She's my partner.

22  Q.  Is Ms. Andrea Stiles employed by or an equity member of

23  SEP?

24  A.  She's my partner.

25          MS. BERAN:  And Your Honor, may I approach?

1          THE COURT:  All right.  Please hand the document to

2    the court security officer.

3          THE COURT:  Thank you, sir.

4    Q.  Mr. Ewing, do you recognize the document that's been handed

5    to you?

6    A.  It appears to be a subpoena duces tecum that was issued by

7    my office, but is not a document that I signed.  It appears to

8    be signed by my partner, Mollie Barton.

9    Q.  And is it in the matter of Fose v. Fose?

10   A.  It is.

11   Q.  Do you have any reason to contest the foundation of this

12   document?

13   A.  No.

14   Q.  Do you have any reason to contest the validity of this

15   document?

16   A.  No.

17          MS. BERAN:  Your Honor, at this point in time, I'd

18   like to introduce into evidence the document, the subpoena

19   duces tecum.

20          THE COURT:  And now, Mr. Ewing, in your capacity as

21   attorney, do you have any objection to the validity of this

22   document?

23          MR. EWING:  I don't, Your Honor.

24          THE COURT:  Okay.  Thank you.

25          All right.  It'll be marked as Exhibit 1.

1      (Subpoena duces tecum was hereby received into evidence as

2  Debtors' Exhibit 1, as of this date)

3          THE COURT:  Thank you.

4  Q.  Mr. Ewing, in connection with your representation of Mr.

5  Fose, do you have the opportunity to review the file that is

6  maintained in connection with that representation?

7  A.  I have the opportunity to -- to review it, yes.

8  Q.  To the best of your knowledge, is this email contained in

9  that file?

10  A.  I don't know.  I haven't reviewed that email before.

11  Q.  Okay.  So sitting here today, you've never seen this email?

12  A.  I have not.

13  Q.  Okay.  Is it in reference to Fose v. Fose?

14  A.  It appears to be, yes.

15  Q.  And who is it sent to?

16  A.  It appears to be from you to Mollie Barton, my partner.

17  Q.  And so Mollie Barton was your partner at -- were you

18  previously with Mollie Barton in September of '18?

19  A.  Yes.

20  Q.  And were you working on this matter in September of '18?

21  A.  No, I was not.

22  Q.  Is Ms. Barton still working on this matter?

23  A.  She was not.  She went out on maternity leave, and I took

24  the case over.  When she came back, I kept the case.

25  Q.  Okay.  Do you have any reason to dispute that this email

1  was sent to Ms. Barton and Ms. Stiles?

2  A.  I don't.

3         MS. BERAN:  Your Honor, at this point in time, I'd

4  like to introduce this as Exhibit 2.

5         MR. EWING:  I have no objection.

6         THE COURT:  No objection?  It'll be admitted without

7  objection.

8     (Email from Ms. Beran to Ms. Barton was hereby received

9  into evidence as Debtors' Exhibit 2, as of this date)

10 Q.  Mr. Ewing, do you have any knowledge as to how Ms. Stiles

11 knows me?

12 A.  No.

13 Q.  Would it surprise you that Ms. Stiles represented me ten

14 years ago in connection with my divorce?

15 A.  No.

16 Q.  Mr. Ewing, do recognize the document that's been handed to

17 you?

18 A.  I don't recognize it.  I mean, meaning, that I have not

19 reviewed this document.

20 Q.  Do you have any reason to dispute that it was a document

21 sent to Ms. Mollie Barton?

22 A.  I don't have any reason to dispute that.

23 Q.  And Ms. Mollie Barton, at that point in time, was with the

24 firm of Batzli Stiles Butler?

25 A.  Yes.

1  Q.  Turning your attention then to Exhibit B, as in boy, do you

2  see an opinion in connection with Exhibit B, as in boy, from

3  this Court, in connection with the Circuit City Stores, Inc., a

4  memorandum opinion in the matter of Toshiba?

5  A.  I see it.

6  Q.  Have you ever had the opportunity to review this opinion?

7  A.  I have not.

8  Q.  Was your firm on notice of this opinion?

9  A.  I don't know.

10  Q.  Are you disputing that this letter was sent to Ms. Barton?

11  A.  I told you, I'm not disputing it; I'm just saying I've

12  never seen it, never reviewed it.

13  Q.  Is it undisputed that it's an attachment to this exhibit --

14  I mean, to this letter?

15  A.  I -- I see that it is attached to the letter.

16      MS. BERAN:  Your Honor, at this point in time, I'd like to

17  introduce this letter in as Exhibit 3.

18          THE COURT:  Any objection?

19          MR. EWING:  I don't object.

20          THE COURT:  It will be admitted as Exhibit 3.

21      (Circuit City/Toshiba court opinion in connection with

22  Exhibit B was hereby received into evidence as Debtors' Exhibit

23  3, as of this date)

24  Q.  In connection with the letter, back at Exhibit 3, what, if

25  any, documents were received relating to the request that's the

1  purported subpoena?

2  A.  I don't know what documents were received in connection

3  with the subpoena.  I had reviewed documents.  I reviewed the

4  employment contract and the addendum that I had referred to.  I

5  don't know, as I sit here, whether that was received from the

6  trust or received directly from Ms. Fose.  I don't know that.

7  Q.  Would it surprise you, sitting here today, that those

8  documents were provided to your firm on September of 2018?

9  A.  If you're asking me if I'm surprised by that, no, I'm not.

10  Q.  Mr. Ewing, do you recognize the document that's now been

11  handed you that purports to be a subpoena duces tecum of March

12  22nd, 2019?

13  A.  I see that it is, and I see that it's signed by my partner

14  Mollie Barton.

15          MS. BERAN:  Your Honor, at this point in time, I'd

16  like to introduce that into evidence.

17          MR. EWING:  No objection.

18          THE COURT:  All right.  Thank you.  It'll be marked as

19  Exhibit 4.

20     (March 22nd, 2019 subpoena duces tecum was hereby received

21  into evidence as Debtors' Exhibit 4, as of this date)

22  Q.  Do you know, to the best of your knowledge, did SEP obtain

23  leave of this Court before issuing said subpoena?

24  A.  I don't know.

25  Q.  Mr. Ewing, do you recognize the document that's been handed

1  to you right now with the date of March 13th, 2019?

2  A.  I have not reviewed that document.

3  Q.  Do you know who it's written to?

4  A.  It appears to be written to my partner, Mollie Barton.

5  Q.  And who is it from?

6  A.  From your office.

7  Q.  Do you have any reason to doubt that this document is in

8  the file of the Fose matter?

9  A.  I don't know whether it is or not, but if you're saying you

10 sent it, then I'm assuming you did.

11       MS. BERAN:  Your Honor, at this point in time, I'd

12 like to introduce it as Exhibit 5.

13       MR. EWING:  No objection.

14       THE COURT:  All right.  It's being admitted as Exhibit

15 5.

16    (March 13th, 2019 email from Tavenner & Beran to Mollie

17 Barton was hereby received into evidence as Debtors' Exhibit 5,

18 as of this date)

19 Q.  Mr. Ewing, sitting here today, are you aware of what, if

20 any, documents SEP received in connection with that letter?

21 A.  I am not.  I don't want to be evasive.  I know I have

22 contracts that Ms. Fose signed.  I know I have some document

23 about a payment history, I believe.  She's no longer employed

24 there, and there was an issue in the case about whether she was

25 voluntarily unemployed or underemployed.  And I believe those

Michael Scott Ewing - Direct                                22

1    documents were relevant to that issue.  I don't know that

2    that's still an issue in the case.  I haven't reviewed those

3    payment records at any time recently.  I did review the

4    contracts that I mentioned earlier in my opening statement.

5    Again, I don't know whether those contracts were obtained from

6    your office or obtained from Mrs. Fose personally or both.

7    Q.   Thank you.   Mr. Ewing, did you have the opportunity to

8    depose Mr. Jeff McDonald on November 21st, 2019?

9    A.   I did.

10   Q.   Was his attendance at said deposition subject to a

11   subpoena?

12   A.   It was.

13   Q.   Did you obtain leave of this bankruptcy court before

14   issuing said subpoena?

15   A.   I did not.

16   Q.   Did you provide a courtesy copy of said subpoena to any

17   member of Tavenner & Beran?

18   A.   I did not.

19   Q.   Is --

20   A.   I did not know that that witness was represented by

21   counsel.  He voluntarily appeared to receive service of the

22   subpoena, and he voluntarily came -- he was very cooperative

23   and he came to the deposition, and he didn't indicate that he

24   was represented by counsel.

25   Q.   At any part of that subpoena, did you indicate that you

1    were seeking to depose him as a representative of the trust?

2    A.   I think it was just a standard witness subpoena to appear

3    for the deposition.

4    Q.   So isn't it true that, at said deposition, you questioned

5    Mr. McDonald about documents contained in Ms. Fose's personnel

6    file with the Circuit City Liquidating Trust?

7    A.   I don't know what's in her personnel file, but I did -- I

8    did show him a copy of the contract that she signed, dated

9    November 1st, 2017, the addendum that she signed, dated

10   December 1st, 2017, a letter that was written to her by the

11   trustee, dated March -- I mean, April 30th, 2018, and I believe

12   a letter that was written to her by the trustee, dated October

13   30th, 2018.   Those were the dates where she received her

14   bonuses.

15   Q.   Mr. Ewing, isn't it true that, at said deposition, you were

16   really questioning Mr. McDonald as a representative of the

17   Circuit City Liquidating Trust?

18   A.   I questioned him about his relationship with Mrs. Fose.

19   They had a personal relationship.   And there were issues in the

20   case involving my client's relationship with her daughter and

21   whether he was a good father to that -- I said daughter; I

22   meant son -- whether he was a good father to that son.   And

23   she'd made claims that he was not supportive, and that sort of

24   thing.   And I questioned Mr. McDonald about conversations he

25   had with Mrs. Fose about those issues.   I don't think that had

1  anything to do with his employment at the trust, although some

2  of those conversations, I think, took place at work.

3       I then asked him about those contracts that I mentioned

4  and whether he had signed similar contracts.  He said that he

5  had.  And I asked him whether he had signed an addendum like

6  that, and he said he had not, and he had also not received a

7  letter similar to the one given to Mrs. Fose, all of which

8  tending to indicate that her bonus was earned after the date of

9  separation and not before.  That was basically the substance of

10  the entire deposition.

11  Q.  Would it be accurate to state that the large percentage of

12  that deposition involved matters relating to the Circuit City

13  Liquidating Trust?

14  A.  I don't think so.  I think more it had to do with the

15  personal matters.  Mr. McDonald was very deliberate, took a lot

16  of time in his testimony, which was fine.  But the deposition

17  probably lasted maybe 20 minutes when it was probably ten

18  minutes worth of questions.  But I do think the majority of the

19  time took -- was taken with him talking about his personal

20  relationship with Mrs. Fose.  But I'm not denying that I asked

21  about those contracts that I just mentioned earlier.

22  Q.  Mr. Ewing, do you recognize the document that's been handed

23  to you that has the title of "Notice to take deposition"?

24  A.  That is the notice to take deposition that I had prepared.

25  I signed it.  It looks like I certified it on December the 9th,

1    2019.

2    Q.  Did you obtain leave of this bankruptcy court before

3    issuing said subpoena?

4    A.  I only testified to the notice to take deposition.

5    Q.  No, I apologize.

6    A.  But there does appear to be a subpoena that's attached to

7    this exhibit.  It is another document that I signed.  And to

8    answer your question, no, I did not obtain the leave of the

9    Court to issue that subpoena.

10   Q.  Did you provide a courtesy copy of said subpoena to any

11   member of Tavenner & Beran?

12   A.  No, I did not know that Ms. Bradshaw was represented by

13   counsel.

14   Q.  Did you and/or your firm know that the Circuit City

15   Liquidating Trust was represented by counsel?

16   A.  I -- I don't know how to answer that.  I didn't think about

17   that, so I don't -- I don't know that I knew or didn't know.

18   Just something I did not consider.

19   Q.  I mean, isn't it true that the notice to take the

20   deposition and the --

21          MS. BERAN:  Strike that; I apologize.

22   Q.  Do you know when this notice to take deposition and

23   subpoena was actually served on Ms. Bradshaw?

24   A.  It was earlier this week, and it's my understanding that

25   they called the private -- "they" being Ms. Bradshaw and Mr.

Michael Scott Ewing - Direct                              26

1   McDonald, contacted the private processor and scheduled a time

2   for him to come and serve that.  I'm not sure what day that

3   was, whether it was Monday or Tuesday.

4   Q.  Would it surprise you that it was Tuesday afternoon?

5   A.  It would not.

6            THE COURT:  I didn't hear your last question.

7            MS. BERAN:  Would it surprise you that it was Tuesday

8   afternoon?

9            THE COURT:  Okay.  Thank you.

10           MS. BERAN:  Your Honor, at this point in time, I'd

11  like to introduce this into evidence as Exhibit 6.

12           MR. EWING:  No objection.

13           THE COURT:  All right.  It'll be introduced as Exhibit

14  6.

15      (Notice to take deposition was hereby received into

16  evidence as Debtors' Exhibit 6, as of this date)

17  Q.  And I apologize.  In connection with -- and put that aside

18  for one moment.  In connection with your desire to depose Ms.

19  Bradshaw, isn't it true that you intend to question Ms.

20  Bradshaw about an addendum to Mrs. Fose's employment agreement

21  dated December 1st, 2017?

22  A.  Yes.

23  Q.  And isn't it your intention to question Ms. Bradshaw about

24  why the addendum was executed?

25  A.  Yes.

1  Q.  And whether Mrs. Fose requested it?

2  A.  Yes.

3  Q.  Is that substantially all you seek to solicit from Ms.

4  Bradshaw's testimony at the deposition?

5  A.  The sole purpose of deposing or questioning Ms. Bradshaw is

6  about that addendum, why it was executed, who requested it.

7  That's -- that's correct.  And in sum, in general, that's it.

8  Q.  So notwithstanding that the subpoena doesn't specifically

9  provide that you seek to depose Ms. Bradshaw as a

10  representative of the trust, you are really seeking to depose

11  her as a trust representative, correct?

12  A.  I don't know.  I don't know what that means.  I intended to

13  talk to her about her personal conversations with Ms. Fose

14  because I think this addendum is unusual and unique to one

15  employee.  That's what I want to ask her about.

16  Q.  So you're disputing that the point of the deposition is to

17  ask Ms. Bradshaw about the addendum to Ms. Fose's employment

18  agreement dated December --

19  A.  That's -- I'm not disputing that.  That is the purpose.

20  Q.  And now turning your attention to the document that's been

21  handed to you that says "subpoena for witness, date for trial

22  on 1/2/20"; do you recognize that document?

23  A.  Yes, that's a witness subpoena that I signed and issued on

24  December the 5th, 2019 to Katie Bradshaw --

25  Q.  And --

Michael Scott Ewing - Direct                                  28

1    A.  to appear at -- in the Hanover Circuit Court on January

2    2nd, 2020.

3    Q.  And do you know when this document was served on Ms.

4    Bradshaw?

5    A.  I believe it was the same time as the other document, as

6    the other subpoena.

7    Q.  So would it surprise you that it was served on the

8    afternoon of Tuesday, December 10th?

9    A.  No.

10          MS. BERAN:  Your Honor, at this point in time, I'd

11   like to introduce it into evidence.

12          MR. EWING:  No objection.

13          THE COURT:  All right.  It'll be -- this will be

14   number 7.

15      (Subpoena for witness for trial on 1/2/20 was hereby

16   received into evidence as Debtors' Exhibit 7, as of this date)

17   Q.  And once again, isn't it true that what you intend to

18   solicit from Ms. Bradshaw at the trial is related to Ms. Fose's

19   employment agreement, dated December 1, 2007 (sic), and related

20   addendums?

21   A.  The employment agreement is dated November 1, 2017; the

22   addendum is December 1st, 2017.  And yes, that's what I intend

23   to ask her about.

24   Q.  So notwithstanding that the subpoena doesn't specifically

25   provide that you seek to depose -- I mean, seek to have Ms.

1   Bradshaw appear at trial as a representative of the trust,

2   aren't you really seeking to have her appear as a

3   representative of the trust?

4   A.  I didn't think of it that way, but -- that's your

5   conclusion; I didn't think of it that way.  And to question her

6   about her personal interaction with Katie -- with Mrs. Fose and

7   discussions that they had about this addendum and whether Mrs.

8   Fose requested that an addendum like this be executed so that

9   she could protect these bonuses in her divorce case.

10          MS. BERAN:  Your Honor, I apologize.  I think we

11  introduced that as Exhibit 7, did we?

12          THE COURT:  Yes, we did.

13  Q.  Mr. Ewing, do you recognize what's been handed to you as of

14  right now?

15  A.  Yes, it's an email exchange that you and I had last night

16  at -- well, it's an email I sent to you at 5:38 p.m. yesterday

17  from my cell phone.

18  Q.  And in said email, don't you concede that:  "I'm sure

19  you're already aware of the issues with the restructuring of

20  Mrs. Fose's bonus in 2018"?

21  A.  Yes, I was telling you that that is the issue in the case.

22          MS. BERAN:  Your Honor, at this point in time, I'd

23  like to introduce that as Exhibit number 8.

24          MR. EWING:  No objection.

25          THE COURT:  All right.  It'll be admitted as Exhibit

1    8.

2        (Email dated 12/11/19, 5:38 p.m., from Mr. Ewing to Ms.

3    Beran was hereby received into evidence as Debtors' Exhibit 8,

4    as of this date)

5    Q.  Do you recognize the document that's now been handed to

6    you?

7    A.  It's the same email exchange; it's you replying back to me

8    at 5:55 p.m. yesterday.

9            MS. BERAN:  Your Honor, at this point in time, I'd

10   like to introduce into evidence that as Exhibit number 9.

11           MR. EWING:  No objection.

12           THE COURT:  All right.  It'll be admitted as Exhibit

13   9.

14       (Email response, dated 12/11/19, 5:55 p.m., from Ms. Beran

15   to Mr. Ewing was hereby received into evidence as Debtors'

16   Exhibit 9, as of this date)

17   Q.  Mr. Ewing, do you recognize the document that's been handed

18   to you?

19   A.  This is me replying back to you, in the same series of

20   emails, yesterday, 6:16 p.m., in which I proposed to continue

21   the deposition on Monday, postpone the hearing, and try to work

22   out this matter.  Yes, I sent that email to you.

23   Q.  And above, don't you indicate that what you intend to

24   address is the addendum to Mrs. Fose's employment agreement

25   dated December 1st, 2017?

1  A.  Yes.

2          MS. BERAN:  Your Honor, if I haven't already, I'd like

3  to introduce this document as Exhibit 10.

4          THE COURT:  Okay.  It'll be admitted as 10.

5      (Email dated 12/11/19, 6:16 p.m., from Mr. Ewing to Ms.

6  Beran was hereby received into evidence as Debtors' Exhibit 10,

7  as of this date)

8  Q.  Mr. Ewing, do you recognize the document that's been handed

9  to you now?

10  A.  Same series of emails from last night.  You replied back to

11  me at 6:0 -- I mean, at 7:06 p.m., stating that you would talk

12  to your client and get back in touch with me.

13  Q.  And I also explained the reason for the delay in my

14  response, and that I was driving?

15  A.  You did.  And I was driving too.  In fact, I was sitting in

16  a restaurant parking lot.

17          MS. BERAN:  Your Honor, at this point in time, we'd

18  like to introduce this into evidence as Exhibit 11.

19          THE COURT:  Any objection?

20          THE COURT:  No obligation.

21      (Email dated 12/11/19, 7:06 p.m., from Ms. Beran to Mr.

22  Ewing was hereby received into evidence as Debtors' Exhibit 11,

23  as of this date)

24  Q.  Mr. Ewing, do you recognize the document that's now been

25  handed to you?

1  A.  I do recognize this, and it is an email from me to you last

2  night at 9:40 p.m.

3  Q.  And going a little bit further down in the chain, is there

4  also an email --

5  A.  I haven't finished my answer.

6  Q.  I'm sorry.

7  A.  This email is in response to an email that you sent me that

8  you have not introduced, and in that email you made proposals

9  on how I could obtain this information, through very limited

10  means, asking three limited questions and stipulating

11  testimony.

12       And I indicated in this email that, at almost 10 o'clock

13  at night, I could not agree to that.  One, I didn't have

14  authority from my client.  And two, it was asking me to

15  stipulate testimony of a witness that had also been subpoenaed

16  by Ed Barnes, Mrs. Fose's attorney.  I obviously could not

17  agree to a stipulation without Mr. Barnes being involved.  I

18  couldn't agree to a stipulation of anything without an

19  agreement from Mr. Barnes that I could introduce it in the

20  Hanover circuit court.  So I could not agree to that at 9:40

21  p.m. last night.

22  Q.  Mr. Ewing, can you go down a little bit further in that

23  document, where I do include in this document the email of my

24  email to you at 9:16, wherein as I said, "I have now had the

25  opportunity to discuss with my client representative, and after

1   the same am authorized to agree as follow.  And can you turn to

2   point number --

3   A.  I didn't notice that this had a -- that this was printed on

4   the back of a page too.  I thought you had cut off the whole

5   email.

6   Q.  Can you turn your attention to paragraph number 6 that

7   reads:  "On or before December 20th, the parties shall try to

8   agree as to the logistics and limited nature of the testimony

9   of Mr. McDonald at the trial.  If no such resolution is

10  reached, the motion will be heard on a date in December as

11  provided by the bankruptcy court."

12  A.  That's what you said.

13  Q.  Does that contradict your previous testimony about I was

14  trying to make you stipulate to Mr. McDonald's trial testimony

15  last night?

16  A.  Well, you were trying to get me to stipulate to three

17  questions to Ms. Bradshaw.  And again, I could not do that at

18  9:40 p.m. the night before --

19  Q.  Yeah, but didn't I --

20  A.  -- without Mr. Barnes being --

21  Q.  -- offer to answer your questions through the form of three

22  questions to Ms. Bradshaw?

23  A.  You did, and that's not sufficient, and I could not agree

24  to that without my client -- talking to my client and talking

25  to Ms. Barnes.

1      You answering my questions does not allow me to introduce

2   that in the Hanover circuit court.

3   Q.  But then, earlier in the conversation, you indicated that

4   your questions were pretty straightforward and were very

5   limited nature.

6   Q.  I believe they are.

7          MS. BERAN:  Your Honor, at this point in time, I'd

8   like to introduce that into evidence as Exhibit 12.

9          THE COURT:  Any objection?

10          MR. EWING:  No objection, Your Honor.

11          THE COURT:  Thanks.  It'll be admitted as 12.

12      (Email dated 12/11/19, 9:40 p.m., from Mr. Ewing to Ms.

13   Beran was hereby received into evidence as Debtors' Exhibit 12,

14   as of this date)

15   Q.  Do you recognize the document that has been handed to you?

16   A.  This is a witness subpoena that I signed on December 5th,

17   2019, subpoenaing Jeff McDonald to the trial in this matter on

18   January 2nd, 2020.  There's also a subpoena like this for Mr.

19   Barnes, being the same witness to the same trial.

20   Q.  Did you issue this subpoena --

21          MS. BERAN:  Strike that.  I apologize.

22   Q.  Did you obtain leave of court before you issued this

23   subpoena?

24   A.  I did not.

25          MS. BERAN:  Your Honor, at this point in time, I'd

1  like to introduce it as Exhibit 13.

2            THE COURT:  Any objection?

3            MR. EWING:  No, Your Honor.

4       (Subpoena of Mr. McDonald was hereby received into evidence

5  as Debtors' Exhibit 13, as of this date)

6  Q.  Sitting here today, Mr. Ewing, do you have any evidence to

7  demonstrate that Mr. Barnes seeks to have Mr. McDonald testify

8  to trust matters?

9  A.  I don't know what he intends to talk to him about.

10  Q.  And if his trial testimony was solely for the purposes of

11  personal relationships, do you believe that you would need to

12  obtain leave of court from this Court?

13  A.  I have no idea.

14  Q.  Would it surprise you that we were in contact with Mr.

15  Barnes to see the nature of that testimony?

16  A.  I have no idea.

17  Q.  To the best of your knowledge, has Mr. Barnes tried to

18  depose Mr. McDonald in connection with any representations in

19  connection with his employment at the trust?

20  A.  As I sit here right now, I cannot remember whether Mr.

21  Barnes asked Mr. McDonald questions at his deposition.  I just

22  can't remember.

23  Q.  Mr. Ewing, isn't it true that your law firm have had the

24  documents at issue for over fifteen months but did nothing

25  until this Tuesday to seek information about the same from the

1  trust?

2  A.  I don't know how long we've had these documents.  We have

3  had them, as I've represented to the Court earlier.  The

4  significance of these documents did not become clear to me

5  until recently.  They seemed legitimate to me at first.  Now

6  they do not.

7  Q.  Isn't it true that your law firm has known, for over

8  fifteen months, of the need to seek leave of this Court for

9  permission to issue subpoenas but has never done so?

10  A.  I don't know the answer to that.

11  Q.  Isn't it true that SEP, that notwithstanding that it has

12  known for over fifteen months of the need to seek leave of this

13  Court for permission to seek for subpoenas but has never done

14  so, it has nonetheless attempted to issue at least four, if not

15  six,7 subpoenas directed at the trust or its representatives?

16  A.  I've issued the subpoenas that have been introduced.

17  Q.  Thank you.

18         MS. BERAN:  Your Honor, if I may beg the Court's

19  indulgence for a moment?

20         THE COURT:  You may.

21         MS. BERAN:  Mr. Ewing, I have no additional questions.

22  Please answer any questions that the Court may have.

23         THE COURT:  I don't have any questions, but what I am

24  going to do, if you want to make any kind of statement that you

25  want as part of the evidence of this proceeding, you can do

1  that in lieu of the ability to cross-examine yourself.

2  CROSS-EXAMINATION

3  BY PROFFER:

4         MR. EWING:  Okay.  Thank you, Your Honor.  I took this

5  case over, I think back last -- this past summer from Ms.

6  Barton who was handling it.  She went out on maternity leave,

7  so I took it over, and I have kept it since then because the

8  trial was scheduled on January 2nd.

9         I believe that there was some interaction between the

10  trust and subpoenas that were issued directly to the trust.  I

11  am sure that they produced some limited documents.  I don't

12  know what those documents are right now.  I have reviewed the

13  documents that I had testified to earlier.  I did issue the

14  subpoenas that -- that I had issued in this case.  I've

15  explained why I issued them.

16         As far as this hearing and all of this stuff that's

17  going on today, someone could have picked up the telephone and

18  called me and talked to me about this, and this would not have

19  been necessary.  And I would have dealt with the deposition on

20  Monday, as I tried to deal with it last night, sitting in my

21  car in a parking lot.

22         I don't believe any of this is necessary.  I've read

23  in the pleadings that there's concerns about the cost of the

24  trust and that type of thing and the cost to the trust of this

25  hearing.  Not one telephone call to me that could have resolved

1    that.

2           I'm not saying -- I don't know whether issuing the

3    subpoenas as I did violated this Court's order.  I don't know

4    that, as I'm sitting here.  Should I know that?  Probably so.

5    But I don't.  I don't know it.  And I haven't had an

6    opportunity to consult with an attorney about that.  I'm just

7    telling you, truthfully, what I did.  And there obviously were

8    things that could have been done to avoid this and avoid all of

9    this cost.

10          And the information that I'm trying to obtain from

11   these witnesses actually has nothing to do with the operation

12   of the trust.  It has nothing to do with the trust finances.

13   It has nothing to do with any matters, in my opinion, that

14   would be pending before this Court because the trust paid the

15   money that it agreed to pay, and it paid it on the dates that

16   it agreed to pay it.  They simply executed an addendum that

17   changed some language to help out an employee in her divorce

18   case.  Again, there's no creditor that has been defrauded in

19   that, no money has been transferred to her that would have gone

20   to someone else.  They simply changed some language in a

21   document.

22          That's what happened.  That's the facts.  I don't know

23   what else to say but that.  And I apologize to the Court if I

24   have done something inappropriate.

25          THE COURT:  All right.  Thank you, sir.

 1          MS. BERAN:  Your Honor, I do have --

 2          THE COURT:  May this witness step down?

 3          MS. BERAN:  No, I do have some redirect based on

 4  something he just said.

 5          THE COURT:  All right.

 6  REDIRECT EXAMINATION

 7  BY MS. BERAN:

 8  Q.  Mr. Ewing, what evidence do you have today to support your

 9  statement that the Circuit City Liquidating Trust changed

10  documents to benefit Mrs. Fose in her divorce?

11  A.  You said "change" the document, and I probably said

12  "changed" the document.  They amended her contract.  They

13  amended it to say that after she received a bonus on April

14  30th, if she was terminated for any reason after that, she

15  would have to pay that bonus back.  Well, that's a much worse

16  employment agreement term for her.  And why would she sign

17  that?  What consideration was there possibly for her to sign a

18  I don't understand it.  I don't see how

19  it -- how it helped Circuit City.  They paid the same money on

20  the same dates.  I don't see how -- except for the divorce

21  case --

22  Q.  Again, what evidence do you have, sir, to support your

23  position that Circuit City Liquidating Trust did something to

24  benefit Mrs. Fose in connection with the divorce?  What

25  evidence?

1   A.  I have -- I have --

2   Q.  Not your opinion; what evidence?

3   A.  I have the documents that show that that was done.  They

4   speak for themselves.  They don't make sense.  And I also had

5   taken the deposition of Mr. McDonald, who is an employee that

6   was similarly situated to Mrs. Fose, and he didn't sign an

7   addendum like that, and his contract was not changed.  And so

8   that doesn't make sense to me.

9   Q.  Would it surprise you, Mr. Ewing, that those documents

10  arose from a dispute with another Circuit City Liquidating

11  Trustee employee as she was leaving?

12  A.  Maybe.  May -- that might have happened.  Someone could

13  tell me that very easily, if someone would talk to me about it.

14  Q.  I'm sorry; in fifteen months, have you ever picked up the

15  phone and asked to speak with a representative of the Circuit

16  City Liquidating Trust?

17  A.  As I said, I became aware -- this problem became clearer to

18  me in the last few weeks then it was before, because it looked

19  legitimate to me before, because the trust was winding down, I

20  thought that they might have been adjusting their payment

21  compensation plan because of that, because the trust might end

22  in the middle of her employment contract.  So it seemed

23  legitimate to me.  And then as it went on I started to realize

24  that it wasn't legitimate, at least in my opinion.

25  Q.  In the last several weeks, did you pick up the phone to try

Michael Scott Ewing - Redirect                    41

1  and talk to any representative of Circuit City Litigation

2  Trust?

3  A.  I did not.  I did not.  I issued the subpoena.

4  Q.  Would it surprise you that those employment contracts were

5  actually revised, in connection with that dispute, by a

6  separately retained employment lawyer?

7  A.  I don't have any idea.  I just know that Mr. McDonald's

8  contract was not revised because he said so.

9  Q.  Would it surprise you that every employee at Circuit City

10  Liquidating Trust, as a term of their employment going forward,

11  actually did sign the revised contract?

12  A.  I just know that Mr. McDonald said he didn't.  There's

13  only, like, four employees in the trust, and one, who is

14  similarly-situated to her, did not sign it.  That caused me to

15  be concerned about it, and that caused me to issue the -- the

16  second set of subpoenas that I did.

17          MS. BERAN:  I have no additional questions.  Thank

18  you.

19          THE COURT:  All right.  Unless you have something

20  else, you may step down.

21          All right.  Thank you for your testimony, Mr. Ewing.

22          MS. BERAN:  Your Honor, at this point in time, I'd

23  like to call Ms. Bradshaw to the stand.

24          THE COURT:  All right.  We're running out of time, so

25  hurry it up.

1       (Witness sworn)

2    DIRECT EXAMINATION

3    BY MS. BERAN:

4    Q.  Good morning, Ms. Bradshaw.  Could you please state your

5    name and address for the record?

6    A.  Katie Bradshaw, 200 Westgate Parkway, Suite 100, Richmond,

7    Virginia 23233.

8    Q.  And what position do you currently have at the Circuit City

9    Liquidating Trust?

10   A.  I'm the senior trust officer.

11   Q.  And how long have you been with the Circuit City

12   Liquidating Trust?

13   A.  Since the beginning, November 1st, 2010.

14           MS. BERAN:  Your Honor, I apologize.  Do you have the

15   witness exhibits?  Are they up there?

16           THE COURT:  Do we have one back here?  This is the --

17   have you provided copies of all of these documents to Mr.

18   Ewing?

19           MS. BERAN:  Your Honor, I have not.  Substantially all

20   of them were attached to the motion yesterday, with the

21   exception of the emails from last night.

22           But Your Honor, if I may approach and just give

23   Exhibit 1 to Ms. Bradshaw?

24           THE COURT:  Has Mr. Ewing seen that document?

25           MS. BERAN:  Yes, Your Honor.

1          THE COURT:  I don't know what you're --

2          MS. BERAN:  It's the same ones I asked him about.

3          THE COURT:  Oh, okay.

4          MS. BERAN:  It's already been introduced into

5   evidence.

6          THE COURT:  Very good.  If you want these copies, you

7   can have them.

8          You may hand the documents to Ms. Bradshaw.

9          MS. BERAN:  Your Honor, I'm just trying to see the

10  order for my presentation.  I apologize.

11  BY MS. BERAN:

12  Q.  Ms. Bradshaw, I think if you start that way and flip.

13  A.  Yes.

14  Q.  Ms. Bradshaw, do you recognize the document that is a

15  subpoena dated September 26th, 2018?

16  A.  I do.

17  Q.  And did you receive a copy of that document?

18  A.  Yes.

19  Q.  And what did you do upon receipt?

20  A.  I called Tavenner & Beran to determine the best way to move

21  forward to answer it or respond.

22  Q.  Can you turn to the -- I think it's the third document

23  there in that stack.  Have you ever seen this letter dated

24  September 14th, 2018?

25          THE COURT:  What number is this?

1          MS. BERAN:  This is Exhibit number 3.

2          THE COURT:  Okay.  Thank you.

3   Q.  It should be in the stack.

4   A.  It's the email?

5   Q.  No, the next document.

6   A.  Next --

7   Q.  Exhibit number 3?

8   A.  Okay.  Yes.  Sorry.

9   Q.  Ms. Bradshaw, have you ever seen this letter?

10  A.  Yes.

11  Q.  And in connection with that, did you authorize the sending

12  of this -- did you review this letter before it was sent?

13  A.  Yes.

14  Q.  And in connection with it, are you cc'd on this letter?

15  A.  Yes.

16  Q.  And turning your attention to page 2 of this document, did

17  you provide that information to me --

18  A.  Yes.

19  Q.  -- as it relates to the answers?

20  A.  I did.

21  Q.  And to the best of your knowledge, were the documents at

22  issue included in connection with the response to this letter?

23  A.  Yes.

24  Q.  So you believe, sitting here today, that the documents were

25  provided to Mr. Fose and his counsel back in September of '18?

1    A.  Yes.

2    Q.  Ms. Bradshaw, if you could flip to the subpoena that's

3    dated March 22nd, 2019?

4    A.  Yeah.

5    Q.  Ms. Bradshaw, do you recognize that document?

6    A.  Yes.

7    Q.  Upon receipt, what did you do?

8    A.  I called Tavenner & Beran to determine how to respond.

9    Q.  Turning your attention then to a letter that's dated March

10   13th, 2019, do you recognize that document?

11   A.  Yes.

12   Q.  Did you authorize Tavenner & Beran to send that before it

13   was sent?

14   A.  I did.

15   Q.  And to the best of your knowledge, were additional

16   documents provided in March of 2019 --

17   A.  Yes.

18   Q.  -- consistent with the request?

19   A.  Um-hum.

20   Q.  Ms. Bradshaw, if you could turn your attention then to

21   Exhibit number -- well, your notice to take deposition; it's

22   Exhibit number 6.

23   A.  Yes.

24   Q.  Do you recognize that document?

25   A.  Yes.

 1   Q.   And when did you receive a copy of Exhibit number 6?

 2   A.   I received it the afternoon of December 10th.

 3   Q.   And upon receipt, what did you do?

 4   A.   I talked to Tavenner & Beran, and I scanned an email to

 5   them to review and determine a course forward.

 6   Q.   And did you have to have discussions with Mr. Siegel in

 7   connection with the trust's response to the same?

 8   A.   Yes.

 9   Q.   And did you seek independent counsel to represent you and

10   Mr. McDonald as well?

11   A.   We did.

12   Q.   And was counsel able to, relatively quickly, clear

13   conflicts?

14   A.   Yes, absolutely.

15   Q.   And sitting here today, are you represented individually

16   now by counsel?

17   A.   Yes.

18   Q.   And who is that counsel?

19   A.   Vern Inge.

20   Q.   Okay.  Ms. Bradshaw, if you can flip to the document that

21   is a subpoena for witness dated for a trial on 1/2/20?

22   A.   Yes.

23   Q.   Ms. Bradshaw, when did you receive a copy of that?

24   A.   I received it the same time as the one for the deposition,

25   so Tuesday afternoon, December 10th.

1  Q.  And Ms. Bradshaw, did you take the exact same steps in

2  connection with the deposition subpoenas and notice?

3  A.  Yes, I scanned both together and forwarded them on.

4  Q.  Okay.  Similarly, Ms. Bradshaw, did you do all the steps as

5  it relates to speaking with the trustee as to how to handle and

6  address these matters?

7  A.  Yes.

8  Q.  Ms. Bradshaw, do you feel like the Circuit City Liquidating

9  Trust has tried to accommodate every request that Mr. Fose has

10  made?

11  A.  I do.  You know, the first two we received, and we sent the

12  letters that, you know, have been referenced here, and provided

13  all of the information that was requested, and contract copies

14  from Ms. Fose's personnel file that have been referred to.

15  Q.  Okay.  Ms. Bradshaw, will you be in the Commonwealth of

16  Virginia on January 2nd, 2020?

17  A.  No, I will not be.

18  Q.  And Ms. Bradshaw, where will you be?

19  A.  Disney World.

20  Q.  And Ms. Bradshaw, how long have you known that you would be

21  at Disney World?

22  A.  Since about this time last year.

23  Q.  Ms. Bradshaw, did there come a point in time where there

24  was a dispute about the meaning of the Circuit City Liquidating

25  Trust employment agreements?

1  A.  Yes.

2  Q.  And about when was that dispute?

3  A.  That was in the fall of 2017.

4  Q.  And was Ms. Fose involved in that dispute?

5  A.  No.

6  Q.  Did Circuit City Liquidating Trust employ employment

7  counsel to address the dispute?

8  A.  We did, David Nagle.

9  Q.  And to the best of your knowledge, what was the result of

10 said dispute?

11 A.  There was a settlement agreement reached between the

12 employee that it involved and the trust that was confidential

13 and resolved it.

14 Q.  Who at the Circuit City Liquidating Trust had interfaced

15 with Mr. Nagle?

16 A.  Just myself.

17 Q.  To the best of your knowledge, did Mr. Nagle ever have any

18 discussions with Ms. Fose?

19 A.  Not to my knowledge, no.

20 Q.  To the best of your knowledge, did Mr. Nagle ever even know

21 that Ms. Fose was having marital difficulties?

22 A.  No, I don't know how he could have possibly known.

23 Q.  Did you sign the employment contract at issue?

24 A.  Yes.

25 Q.  And to the best of your knowledge, did every employee of

1   Circuit City Liquidating Trust execute the revised employment

2   agreement?

3   A.  Yes.

4   Q.  And do you know why that employment agreement was revised?

5   A.  Well, at the time, the dispute with the other employee was

6   pretty -- a hot topic, I'll say, and Ms. Fose definitely took

7   exception with the way the contract was being interpreted.  And

8   so she had a very strong relationship with our trustee and had

9   conversations with him.  And I believe that it was issued to

10  clarify the contracts that we had at -- you know, the new

11  revised one, once the matter was resolved with the other

12  employee that had left.

13  Q.  And what, if any, feelings were there about lawyer

14  interference?

15  A.  Well, I think that some at the trust believed that we had a

16  certain view of how to interpret the bonus payments in the

17  contract, and the attorneys had a different interpretation of

18  that, which caused conflict.

19  Q.  So sitting here today, are you aware of any instance where

20  the Circuit City Liquidating Trust, or any representative of

21  the Circuit City Liquidating Trust, changed any document in

22  connection with or to benefit Ms. Fose in connection with her

23  divorce proceedings?

24  A.  No, I first saw that amendment once it was signed and given

25  to me to place in her personnel file.

1          MS. BERAN:  Okay.  Thank you, Ms. Bradshaw.  I have no

2     additional questions.  Please answer any questions that may be

3     asked of you by Mr. Ewing.

4          THE COURT:  Mr. Ewing, do you have any questions?

5          MR. EWING:  Yes, Your Honor.

6     CROSS-EXAMINATION

7     BY MR. EWING:

8     Q.  Was Mrs. Fose required to sign the addendum?

9     A.  I really don't know the answer to that.  Like I said, I

10    received it once it was signed by her and our trustee, and

11    didn't ask any questions about it.

12    Q.  You signed the same addendum?

13    A.  I did not.

14    Q.  You said all of the employees signed the same addendum.

15    A.  We signed the same employment agreement, which our

16    employment agreements were revised as a result of the matter

17    that we talked about with the former employee.  And Mr. Nagle,

18    who we had hired to represent us in this employment matter, the

19    trust, revised those agreements to align with the attorneys'

20    interpretation of that bonus payout.  And we all signed that

21    same employment agreement with the same language.

22    Q.  That was a subsequent agreement to the one that you signed

23    on November 1st, 2017, correct?

24    A.  Well, that was the next one, because we were renewing them,

25    you know, as the old ones expired.

1   Q.  You're saying that you had a contract that was November 1,

2   2017 that went through October 30th, 2018, correct?

3   A.  That's right.

4   Q.  And then the one that you signed after that is the one that

5   you're saying was revised, based upon this lawyer's

6   interpretation of the terms, correct, the new contract?

7   A.  Well, that one that we signed on November 1st, 2017, was

8   the revised language.

9   Q.  Okay.  So your contract on November 1st 2017, through

10  October 30th 2018, that remained in place, correct, you never

11  signed an addendum to that contract?

12  A.  That's right.

13  Q.  And so the addendum that Ms. Fose signed on December 1st,

14  2017, that was unique to her; she's the only that signed that;

15  is that correct?

16  A.  As far as I know.

17  Q.  And that was based upon conversations between her and the

18  trustee, because she had a good relationship with him, correct?

19  A.  That's correct.

20          MR. EWING:  That's all the questions I have.

21          THE COURT:  All right.  Thank you.

22          May this witness step down?

23          MS. BERAN:  Yes, Your Honor.

24          THE COURT:  All right.  Thank you for your testimony,

25  Ms. Bradshaw.

Colloquy                                                    52

1          MS. BERAN:  Your Honor, at this point we have no

2     additional evidence.

3          THE COURT:  All right.  Do you have any more evidence?

4          MR. EWING:  No, Your Honor.

5          THE COURT:  Okay.  So Ms. Tavenner?

6          MS. TAVENNER:  For the record again, Your Honor, Lynn

7     Tavenner of the law firm of Tavenner & Beran.  I recognize that

8     you have a limited amount of time this morning, and I will not

9     go in full through the argument that I had prepared.

10         Your Honor, the evidence is clear.  Your Honor has

11    jurisdiction under the confirmation order and the trust

12    document.  Opposing counsel has been aware of this for over

13    fifteen months with respect to that jurisdiction.  I'm sorry

14    that there has been some type of change in leadership with

15    regard to the file, with respect to Mr. Fose's representation,

16    but the information has been there for that lengthy amount of

17    time.

18         Mr. Fose's actions are egregious, and they're

19    especially egregious when you consider that the trust has

20    already provided all of the available information with respect

21    to Ms. Fose's employee file on two separate occasions.

22         To try and now extrapolate some type of legal theory,

23    based on what is or is not in someone else's personal and

24    confidential file, goes way beyond the bounds of the law and is

25    completely contrary to Your Honor's prior Toshiba ruling, and

1    especially when they just ignored this Court, the Barton

2    doctrine, the trust and its professionals.

3          But we have bent over backwards for the past fifteen

4    months.  And Your Honor, all of this is just an unjustified

5    scavenger hunt.  They have the employee information; they just

6    don't like the information.  Now they're trying to ascribe

7    something nefarious to the fact that there was a change in the

8    employment terms around November/December 2017.  This is

9    exactly why, Your Honor, jurisdiction was stayed with this

10   Court.  This nefarious tale did not occur.  Your Honor is well

11   aware that the trust during that time was downsizing.

12   Employees were starting to see the end of their jobs, and some

13   were questioning the specific import of their agreements that

14   they had with the trust.  They thought they may have said

15   something different than it did.

16         Indeed, one former employee went to the degree of

17   hiring counsel.  And while those issues were resolved

18   consensually and confidentially, with the assistance of the

19   trust hiring additional employment counsel, Mr. David Nagle,

20   the trust, during that time frame, did have to rely on the

21   advice of employment counsel.  And once that was resolved, it

22   sought from that employment counsel to assist in the drafting

23   of future agreements that were offered to these remaining

24   employees.

25         So yes, the language was tweaked by the trust, going

 1  forward, in an effort to present contracts to the ongoing

 2  staff.  Individual employees, in their individual capacity,

 3  would not necessarily know the reason for that.  They would not

 4  be able to speak to that reason.  They would not be able to

 5  speak to anybody else's contracts.

 6          And really, Your Honor, as you have heard, it had

 7  nothing to do with whatever domestic dispute may have been

 8  ongoing or may have been about to occur -- I don't even know

 9  the time frame -- with regard to the former employee, Ms. Fose.

10          The agreements that were in the file are the

11  agreements.  There's nothing more to add.  They have the

12  information.  They now are doing nothing more than distracting

13  our current staff from focusing on their duties ascribed to

14  them to assist in completing the tasks that have been described

15  to them by you in your confirmation order and the trust

16  agreement.

17          Your Honor knows that the trust is trying to wrap up.

18  There is limited staff to do a lot in a very limited time

19  period that you are well aware of where we are.  They do

20  deserve to have their well-earned vacation that's been planned

21  for a long time.  But then they need to be able to focus on the

22  real tasks at hand, and trying to assist in some legal theories

23  that just -- are just conjured up, is not something that ever

24  was expected of them to have to do.

25          This type of state court action should not be

Colloquy                                                          55

1  countenanced, Your Honor.  We respectfully ask that you put a

2  stop to it, that you award damages.  We take great issue

3  regarding the legitimacy of the trust documents that's been put

4  into speculation today, and are extremely concerned about that.

5          And one other point, Your Honor, the issue with regard

6  to the Mr. Barnes subpoena that was raised, Mr. Barnes, I

7  believe, is counsel for Ms. Fose, the former employee.  The

8  trust's understanding with respect to that subpoena that's been

9  issued to Mr. McDonald in conjunction with trial is that that

10 subpoena is to elicit testimony only with regard to personal

11 relationships that existed between Mr. McDonald and Mr. Fose

12 and do not impact the trust at all.

13         But I can assure Your Honor, we will follow up again.

14 And if we determine that that is not the case, then we will be

15 back before you with regard to that specific subpoena as well.

16 So that really is a red herring with respect to today's

17 matters.

18         For today, Your Honor, we do respectfully request that

19 you enter an order enforcing your confirmation order and the

20 plan, the trust document, barring Mr. Ewing, his firm, Mr.

21 Fose, from any further attempts to commandeer the trust

22 resources by the subpoenas or otherwise.

23         We also ask that you should sanction all of them and

24 hold them jointly and severally liable for all of the damages

25 that have been incurred.  We have expended a lot of time and

1  effort, going back for fifteen months, with respect to this

2  matter, and respectfully ask that you put it to an end.

3          THE COURT:  All right.  Thank you.

4          Mr. Ewing?

5          MR. EWING:  First, Your Honor, counsel obviously

6  prepared her closing remarks before she listened to Ms.

7  Bradshaw's testimony.  In about three minutes of questioning by

8  me, she admitted exactly what I thought had happened, that

9  there's only one addendum, it's only this one employee, no one

10  else signed it, there was no reason for this employee to sign

11  it, and it happened because of a private conversation between

12  her and the trustee.  That proved exactly what I've been

13  talking about, okay?

14          THE COURT:  So we'll put that aside, whatever that is.

15  You're aware of my Toshiba opinion and the fact that you have

16  to get leave from this Court in order for any other court,

17  whether it can be to have jurisdiction, subject-matter

18  jurisdiction over the trust or the trust employees in their

19  official capacities.  And that wasn't done here.  And so

20  obviously it appears to me that your subpoena is void, just as

21  I said in Toshiba.

22          Now, you've also said to me that you're willing to

23  work something out and to talk and to figure it out, and even

24  extend your trial date, which I will leave to you.  But you

25  realize you can't just keep sending subpoenas now, right?

Colloquy                                                             57

1            MR. EWING:  I understand that, Your Honor.  I didn't

2    do it to intentionally violate the orders of this Court.  And

3    if there's any sanction that the Court is going to levy, it

4    should be on me, not anyone else.  I'm the one that signed it.

5    I did not know about your order, but obviously I should have.

6            THE COURT:  Okay.  I'm not going to enter any sanction

7    today; I just want to put you on notice of that because of the

8    very short notice of this hearing.  I don't think that that's

9    fair to anybody.

10           But what I am going to do is ask you to not issue more

11   subpoenas in the meantime, you know, and that if you need to

12   get something from the trust, this is the place you need to

13   come and seek it.  And you do understand that now, right?

14           MR. EWING:  I do, Your Honor.

15           THE COURT:  Okay.  Very good.

16           Ms. Tavenner, if you could come back to the podium.

17           MS. TAVENNER:  Yes, Your Honor.

18           THE COURT:  I will enter an order consistent with the

19   order I entered previously in this case in the Toshiba matter,

20   you know, on jurisdiction of the subpoenas so that the

21   subpoenas cannot be enforced against the trust or Ms. Bradshaw

22   so that we don't have that issue.

23           You know, of course, that they can come back here and

24   ask for relief.

25           MS. TAVENNER:  We understand.

Colloquy                                                                    58

1        THE COURT:  You do understand that?  With regard to

2   the sanctions issue, I realize you have a prayer for sanctions,

3   you asked for me to issue a show cause.  I am not going to have

4   that hearing today.  I'm not doing that.  I don't think that

5   Mr. Ewing or his firm had enough notice to be able to even

6   respond to it.

7        I am sensitive to the expense and such that the trust

8   has obviously been going through in order to resolve this

9   matter.  I mean, I understand what Mr. Ewing is saying, with

10  his partner being out and unavailable to him.  But I imagine

11  that you can talk with him further, and if there's a need to

12  bring this on the sanctions part of this, that you will, and

13  give appropriate notice so that everybody can be prepared and

14  be here, and then we can go through that if necessary.

15       But Mr. Ewing has said he's willing to resolve this,

16  and I know you are -- I know from your record that you are too.

17  So I hope it may be something that can be resolved, and I'll

18  leave that to the very good lawyering that would be in this

19  room right now.

20       So Ms. Bradshaw need not appear on Monday for the

21  deposition.  And the trial subpoena's unenforceable.  And

22  that's without prejudice to Mr. Ewing to be able to come back

23  to this Court.

24       MS. TAVENNER:  Thank you, Your Honor.

25       THE COURT:  Any questions?

1          MS. TAVENNER:  No, Your Honor.  We will tender an

2    appropriate order.

3          THE COURT:  Okay.  Thank you.

4          Mr. Ewing, do you have any questions?

5          MR. EWING:  No.

6          THE COURT:  Okay.  Thank you, sir.

7          All right.  Thank you for your presentation this

8    morning, and I'll look forward to getting that order from you.

9          MS. TAVENNER:  Thank you, Your Honor.

10          THE CLERK:  All rise.  Court's now adjourned.

11       (Whereupon these proceedings were concluded at 10:50 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                                                    VOIR
   WITNESSES:              DIRECT  CROSS  REDIRECT  RECROSS  DIRE
3
   FOR THE DEBTOR:
4
   Michael Scott Ewing       15     37       39
5
   Katie Bradshaw            41     50
6

7
   EXHIBITS: DESCRIPTION                       MARK    ADMIT
8
   FOR THE DEBTORS:
9
   1            Subpoena duces tecum                   17
10
   2            Email from Ms. Beran to Ms.            18
11                Barton

12  3            Circuit City/Toshiba court            19
                  opinion in connection with
13                Exhibit B

14  4            March 22nd, 2019 subpoena             20
                  duces tecum
15
   5            March 13th, 2019 email from            21
16                Tavenner & Beran to Mollie
                  Barton
17
   6            Notice to take deposition              26
18
   7            Subpoena for witness for trial         28
19                on 1/2/20

20  8            Email dated 12/11/19, 5:38 p.m.,      30
                  from Mr. Ewing to Ms. Beran
21
   9            Email response, dated 12/11/19,        30
22                5:55 p.m., from Ms. Beran to
                  Mr. Ewing
23
   10           Email dated 12/11/19, 6:16 p.m.,       31
24                from Mr. Ewing to Ms. Beran

25

1
                        I N D E X  (Contd.)
2
   EXHIBITS: DESCRIPTION                    MARK    ADMIT
3
   FOR THE DEBTOR:
4

5  11        Email dated 12/11/19 at 7:06          31
             p.m. from Ms. Beran to Mr.
6            Ewing

7  12        Email dated 12/11/19, 9:40           34
             p.m., from Mr. Ewing to Ms.
8            Beran

9  13        Subpoena of Mr. McDonald             35

10

11 RULINGS:                                 PAGE   LINE

12 Motion to expedite hearing granted.       14     21

13 Order entered reinforcing this Court's    57     18
   jurisdiction regarding subpoenas.
14

15

16

17

18

19

20

21

22

23

24

25

1

2                    **C E R T I F I C A T I O N**

3

4          I, Sharona Shapiro, the court-approved transcriber, do

5    hereby certify the foregoing is a true and correct transcript

6    from the official electronic sound recording of the proceedings

7    in the above-entitled matter.

8

9    *Sharona Shapiro*

10                                       December 16, 2019

11   _____     _____

12   SHARONA SHAPIRO                      DATE

13   AAERT Certified Electronic Transcriber CET-492

14

15

16

17

18

19

20

21

22

23

24

25

Case 08-35653-KRH    Doc 14246    Filed 12/16/19    Entered 12/16/19 11:42:54    Desc
Main Document    Page 63 of 72

CIRCUIT CITY STORES, INC., et al.
Case No. 08-35653-KRH                                                    December 12, 2019

## A

**ability (1)**
37:1
**able (9)**
4:17,19,25;46:12;
54:4,4,21;58:5,22
**above (1)**
30:23
**absolutely (1)**
46:14
**accommodate (1)**
47:9
**accurate (1)**
24:11
**action (3)**
4:14;8:13;54:25
**actions (1)**
52:18
**Actually (8)**
4:16,22;11:21;
12:5;25:23;38:11;
41:5,11
**add (1)**
54:11
**addendum (27)**
10:3,4,13,16,17;
13:25;14:3;20:4;
23:9;24:5;26:20,24;
27:6,14,17;28:22;
29:7,8;30:24;38:16;
40:7;50:8,12,14;
51:11,13;56:9
**addendums (1)**
28:20
**additional (7)**
5:13;36:21;41:17;
45:15;50:2;52:2;
53:19
**address (7)**
6:6;8:13;15:6;
30:24;42:5;47:6;
48:7
**adjourned (1)**
59:10
**adjusting (1)**
40:20
**admitted (9)**
8:2;18:6;19:20;
21:14;29:25;30:12;
31:4;34:11;56:8
**advance (1)**
5:17
**advice (1)**
53:21
**advise (1)**
6:1
**afternoon (10)**
3:7,8;4:21;5:2;
12:11;26:4,8;28:8;
46:2,25
**again (14)**

**5:1;7:7,24;11:2,
14;12:7;14:2;22:5;
28:17;33:17;38:18;
39:22;52:6;55:13**
**against (4)**
4:5;8:10,10;57:21
**ago (3)**
11:13;12:6;18:14
**agree (7)**
32:13,17,18,20;
33:1,8,23
**agreed (3)**
9:9;38:15,16
**agreement (16)**
8:5;10:9;26:20;
27:18;28:19,21;
30:24;32:19;39:16;
48:11;49:2,4;50:15,
21,22;54:16
**agreements (7)**
47:25;50:16,19;
53:13,23;54:10,11
**align (1)**
50:19
**allow (2)**
9:14;34:1
**allowing (1)**
6:4
**almost (1)**
32:12
**although (1)**
24:1
**amended (2)**
39:12,13
**amendment (1)**
49:24
**amount (3)**
10:5;52:8,16
**and/or (2)**
12:14;25:14
**Andrea (1)**
15:22
**answered (1)**
10:18
**apologize (12)**
3:8;10:24;11:7;
14:13;25:5,21;
26:17;29:10;34:21;
38:23;42:14;43:10
**appear (10)**
3:23;8:25;9:14;
14:12;23:2;25:6;
28:1;29:1,2;58:20
**appeared (1)**
22:21
**appears (7)**
6:9;16:6,7;17:14,
16;21:4;56:20
**appreciate (2)**
5:24;6:4
**approach (2)**
15:25;42:22
**appropriate (3)**

**4:14;58:13;59:2**
**April (2)**
23:11;39:13
**argument (1)**
52:9
**arose (1)**
40:10
**around (2)**
7:11;53:8
**articulate (1)**
11:6
**articulated (1)**
11:9
**ascertain (1)**
5:16
**ascribe (1)**
53:6
**ascribed (1)**
54:13
**aside (2)**
26:17;56:14
**assist (3)**
53:22;54:14,22
**assistance (1)**
53:18
**assuming (1)**
21:10
**assure (1)**
55:13
**astonishing (1)**
6:15
**attached (3)**
19:15;25:6;42:20
**attachment (1)**
19:13
**attempt (2)**
7:10,24
**attempted (2)**
3:25;36:14
**attempts (2)**
8:5;55:21
**attendance (1)**
22:10
**attention (6)**
19:1;27:20;33:6;
44:16;45:9,20
**attorney (6)**
8:25;9:11,18;
16:21;32:16;38:6
**attorneys (1)**
49:17
**attorneys' (1)**
50:19
**authority (1)**
32:14
**authorize (2)**
44:11;45:12
**authorized (1)**
33:1
**availability (3)**
12:13,15,20
**available (3)**
5:16,19;52:20

**avoid (2)**
38:8,8
**award (1)**
55:2
**aware (8)**
21:19;29:19;
40:17;49:19;52:12;
53:11;54:19;56:15

## B

**back (20)**
5:2;8:14;11:15;
12:14;17:24;19:24;
30:7,19;31:10,12;
33:4;37:5;39:15;
42:16;44:25;55:15;
56:1;57:16,23;58:22
**backwards (1)**
53:3
**Bankruptcy (7)**
3:1;8:25;9:11;
11:4;22:13;25:2;
33:11
**bar (1)**
4:23
**barely (1)**
4:1
**Barnes (12)**
32:16,17,19;33:20,
25;34:19;35:7,15,17,
21;55:6,6
**barring (1)**
55:20
**Barton (17)**
8:11;15:19;16:8;
17:16,17,18,22;18:1,
8,21,23;19:10;20:14;
21:4,17;37:6;53:1
**based (7)**
12:21;13:5,6;39:3;
51:5,17;52:23
**basic (1)**
9:3
**basically (1)**
24:9
**basis (1)**
6:11
**Batzli (4)**
4:6;15:12,16;
18:24
**became (3)**
14:1;40:17,17
**become (1)**
36:4
**beforehand (1)**
13:2
**beg (1)**
36:18
**began (2)**
5:11,15
**beginning (1)**
42:13

**benefit (3)**
39:10,24;49:22
**bent (1)**
53:3
**Beran (65)**
3:13,14;4:7,22;
11:6,7,8;12:19;13:4,
6;14:15,19,23;15:4,
25;16:17;18:3,8;
19:16;20:15;21:11,
16;22:17;25:11,21;
26:7,10;28:10;29:10,
22;30:3,9,14;31:2,6,
17,21;34:7,13,21,25;
36:18,21;39:1,3,7;
41:17,22;42:3,14,19,
25;43:2,4,9,11,20;
44:1;45:8,12;46:4;
50:1;51:23;52:1,7
**Beran's (1)**
12:13
**best (10)**
17:8;20:22;35:17;
43:20;44:21;45:15;
48:9,17,20,25
**beyond (1)**
52:24
**bit (2)**
32:3,22
**blatant (1)**
12:7
**blatantly (1)**
8:6
**bonus (10)**
10:4,5,6,10;24:8;
29:20;39:13,15;
49:16;50:20
**bonuses (5)**
9:23,25;10:1;
23:14;29:9
**both (3)**
3:16;4:22;5:13;
22:6;47:3
**bounds (1)**
52:24
**boy (2)**
19:1,2
**Bradshaw (49)**
3:15;4:18;5:1,12;
6:13,24;7:1,20,20;
12:11;25:12,23,25;
26:19,20,23;27:5,9,
17,24;28:4,18;29:1;
33:17,22;41:23;42:4,
6,23;43:8,12,14;
44:9;45:2,5,20;
46:20,23;47:1,4,8,
15,18,20,23;50:1;
51:25;57:21;58:20
**Bradshaw's (2)**
27:4;56:7
**bring (1)**
58:12

**Butler (3)**
15:12,16;18:24

**C**

**call (4)**
9:4;14:24;37:25;
41:23
**called (4)**
25:25;37:18;
43:20;45:8
**calls (1)**
5:11
**came (3)**
17:24;22:22,23
**can (16)**
12:17;14:21;
32:22;33:1,6;36:25;
43:7,22;46:20;
55:13;56:17;57:23;
58:11,13,14,17
**capacities (1)**
56:19
**capacity (3)**
7:12;16:20;54:2
**car (1)**
37:21
**case (18)**
8:24;9:20;10:1,22;
15:16;17:24,24;
21:24;22:2;23:20;
29:9,21;37:5,14;
38:18;39:21;55:14;
57:19
**cause (1)**
58:3
**caused (3)**
41:14,15;49:18
**cc'd (1)**
44:14
**cell (2)**
4:25;29:17
**certain (1)**
49:16
**certainly (1)**
3:10
**certified (1)**
24:25
**chain (1)**
32:3
**change (6)**
10:5,5,8;39:11;
52:14;53:7
**changed (8)**
10:4,6;38:17,20;
39:9,12;40:7;49:21
**checked (1)**
13:2
**chosen (1)**
6:10
**Circuit (30)**
3:5;11:14;12:6;
13:18;15:17;19:3,

21;23:6,17;24:12;
25:14;28:1;32:20;
34:2;39:9,19,23;
40:10,15;41:1,9;
42:8,11;47:8,24;
48:6,14;49:1,20,21
**City (22)**
3:5;19:3;23:6,17;
24:12;25:14;39:9,19,
23;40:10,16;41:1,9;
42:8,11;47:8,24;
48:6,14;49:1,20,21
**City/Toshiba (3)**
11:15;12:6;19:21
**claims (1)**
23:23
**clarify (1)**
49:10
**classes (1)**
4:24
**clear (5)**
7:14;14:1;36:4;
46:12;52:10
**cleared (1)**
5:20
**clearer (1)**
40:17
**clearly (1)**
14:4
**CLERK (2)**
3:1;59:10
**client (7)**
5:10;14:2;31:12;
32:14,25;33:24,24
**client's (1)**
23:20
**closing (1)**
56:6
**coast (1)**
5:9
**coming (3)**
4:2;8:7;12:25
**commandeer (1)**
55:21
**Commonwealth (1)**
47:15
**communication (1)**
9:13
**compensation (1)**
40:21
**complain (1)**
4:12
**completely (2)**
5:5;52:25
**completing (1)**
54:14
**concede (1)**
29:18
**concerned (3)**
9:7;41:15;55:4
**concerns (1)**
37:23
**concluded (1)**

59:11
**conclusion (1)**
29:5
**conduct (1)**
7:13
**confidential (2)**
48:12;52:24
**confidentially (1)**
53:18
**confirmation (6)**
6:19;7:14;8:5;
52:11;54:15;55:19
**conflict (2)**
5:12;49:18
**conflicts (2)**
5:20;46:13
**conjunction (1)**
55:9
**conjured (1)**
54:23
**connection (25)**
4:8;11:17;12:15;
17:4,6;18:14;19:2,3,
21,24;20:2;21:20;
26:17,18;35:18,19;
39:24;41:5;44:11,14,
22;46:7;47:2;49:22,
22
**consensual (1)**
8:16
**consensually (1)**
53:18
**consider (2)**
25:18;52:19
**consideration (1)**
39:17
**consistent (2)**
45:18;57:18
**constraints (1)**
12:19
**consult (2)**
9:10;38:6
**contact (1)**
35:14
**contacted (2)**
9:8;26:1
**contained (1)**
17:8;23:5
**contempt (2)**
3:6;8:19
**contest (2)**
16:11,14
**continue (5)**
7:10;9:9;10:20,21;
30:20
**continued (1)**
13:17
**continuing (2)**
7:13;12:12
**contract (18)**
9:21,22;14:3;20:4;
23:8;39:12;40:7,22;
41:8,11;47:13;

48:23;49:7,17;51:1,
6,9,11
**contracts (11)**
13:21;21:22;22:4,
5;24:3,4,21;41:4;
49:10;54:1,5
**contradict (1)**
33:13
**contrary (1)**
52:25
**conversation (2)**
34:3;56:11
**conversations (6)**
5:13;23:24;24:2;
27:13;49:9;51:17
**cooperative (1)**
22:22
**coordinated (1)**
5:19
**copies (3)**
42:17;43:6;47:13
**copy (9)**
11:13,14;12:5;
22:16;23:8;25:10;
43:17;46:1,23
**correctly (1)**
14:13
**cost (3)**
37:23,24;38:9
**counsel (29)**
3:14,18;5:11,20;
6:8;8:11;9:1,8,11,13;
11:4,12;22:21,24;
25:13,15;44:25;46:9,
12,16,18;48:7;52:12;
53:17,19,21,22;55:7;
56:5
**countenanced (1)**
55:1
**County (2)**
8:24;15:17
**course (2)**
46:5;57:23
**Court (117)**
3:2,5,9,11,20;4:15;
5:16,22;6:3,18;7:5,8,
10;8:20,22,25;10:19;
11:5,19;12:8,14,24;
13:1,5,9,11,13,18;
14:5,7,8,8,12,14,17,
20,25;15:17;16:1,2,
3,20,24;17:3;18:6;
19:3,18,20,21;20:18,
23;21:14;22:13;
25:2,9;26:6,9,13;
28:1,13;29:12,25;
30:12;31:4,19,20;
32:20;33:11;34:2,9,
11,22;35:2,12,12;
36:3,8,13,20,22,23;
38:14,23,25;39:2,5;
41:19,24;42:16,24;
43:1,3,6,25;44:2;

48:23;49:7,17;51:1,
6,9,11
**courtesy (2)**
22:16;25:10
**courtroom (1)**
3:15
**Court's (6)**
7:14;8:6;12:20;
36:18;38:3;59:10
**creditor (1)**
38:18
**critical (2)**
10:23;13:19
**CROSS-EXAMINATION (2)**
37:2;50:6
**cross-examine (1)**
37:1
**current (1)**
54:13
**currently (3)**
15:9,17;42:8
**cut (1)**
33:4

**D**

**damages (2)**
55:2,24
**date (24)**
5:17;9:24,24;
10:22;13:18,18;
17:2;18:9;19:23;
20:21;21:1,18;24:8;
26:16;27:21;28:16;
30:4,16;31:7,23;
33:10;34:14;35:5;
56:24
**dated (19)**
23:8,9,11,12;
26:21;27:18;28:19,
21;30:2,14,25;31:5,
21;34:12;43:15,23;
45:3,9;46:21
**dates (5)**
10:2,6;23:13;
38:15;39:20
**daughter (2)**
23:20,21
**David (4)**
8:23;15:18;48:8;
53:19
**day (2)**
5:3;26:2
**days' (2)**
4:1;12:10
**deal (1)**
37:20
**dealt (1)**
37:19
**Debtors' (13)**

50:4;51:21,24;52:3,
5;53:1,10;54:25;
56:3,14,16,16;57:2,
3,6,15,18;58:1,23,
25;59:3,6

17:2;18:9;19:22;
20:21;21:17;26:16;
28:16;30:3,15;31:6,
22;34:13;35:5
**December (15)**
23:10;24:25;
26:21;27:18,24;28:8,
19,22;30:25;33:7,10;
34:16;46:2,25;51:13
**definitely (1)**
49:6
**defrauded (1)**
38:18
**degree (1)**
53:16
**delay (1)**
31:13
**deliberate (1)**
24:15
**delve (1)**
7:24
**demonstrate (3)**
12:2,23;35:7
**denying (1)**
24:20
**depose (7)**
22:8;23:1;26:18;
27:9,10;28:25;35:18
**deposing (1)**
27:5
**deposition (38)**
3:25;5:5,7,18;
6:10;7:1,12,13,19,
21;8:1;9:10,16;
13:24;22:10,23;23:3,
4,15;24:10,12,16,23,
24;25:4,20,22;26:15;
27:4,16;30:21;
35:21;37:19;40:5;
45:21;46:24;47:2;
58:21
**described (1)**
54:14
**deserve (1)**
54:20
**desire (1)**
26:18
**determine (4)**
43:20;45:8;46:5;
55:14
**determining (1)**
5:10
**different (2)**
49:17;53:15
**difficulties (1)**
48:21
**digitally (1)**
13:14
**DIRECT (2)**
15:3;42:2
**directed (1)**
36:15
**directly (3)**

14:10;20:6;37:10
**discovered (1)**
5:6
**discuss (1)**
32:25
**discussed (1)**
5:20
**discussions (4)**
5:8;29:7;46:6;
48:18
**Disney (2)**
47:19,21
**dispute (12)**
17:25;18:20,22;
40:10;41:5;47:24;
48:2,4,7,10;49:5;
54:7
**disputing (4)**
19:10,11;27:16,19
**disregard (2)**
8:6;12:7
**distracting (1)**
54:12
**District (1)**
3:2
**divorce (11)**
8:24;10:1,14,22;
18:14;29:9;38:17;
39:10,20,24;49:23
**doctrine (1)**
53:2
**document (45)**
16:1,4,7,12,15,18,
22;18:16,19,20;
20:10,25;21:2,7,22;
24:22;25:7;27:20,
22;28:3,5;30:5,17;
31:3,8,24;32:23,23;
34:15;38:21;39:11,
12;42:24;43:14,17,
22;44:5,16;45:5,10,
24;46:20;49:21;
52:12;55:20
**documents (26)**
11:22,23,24;
13:20;19:25;20:2,3,
8;21:20;22:1;23:5;
35:24;36:2,4;37:11,
12,13;39:10;40:3,9;
42:17;43:8;44:21,
24;45:16;55:3
**dollars (1)**
9:25
**domestic (1)**
54:7
**done (11)**
4:13;7:18;9:4;
11:10;14:10;36:9,
13;38:8,24;40:3;
56:19
**doubt (1)**
21:7
**down (6)**

32:3,22;39:2;
40:19;41:20;51:22
**downsizing (1)**
53:11
**drafting (2)**
5:15;53:22
**driving (2)**
31:14,15
**duces (5)**
16:6,19;17:1;
20:11,20
**due (2)**
10:2,5
**during (3)**
9:22;53:11,20
**duties (1)**
54:13

# E

**earlier (6)**
22:4;24:21;25:24;
34:3;36:3;37:13
**earned (3)**
10:7,9;24:8
**easily (1)**
40:13
**Eastern (1)**
3:2
**Ed (1)**
32:16
**effort (2)**
54:1;56:1
**egregious (2)**
52:18,19
**elicit (1)**
55:10
**else (6)**
13:24;38:20,23;
41:20;56:10;57:4
**else's (2)**
52:23;54:5
**email (28)**
9:9;17:8,10,11,25;
18:8;21:16;29:15,16,
18;30:2,7,14,22;
31:5,21;32:1,4,7,7,8,
12,23,24;33:5;34:12;
44:4;46:4
**emails (4)**
12:18;30:20;
31:10;42:21
**emergency (1)**
12:9
**employ (1)**
48:6
**employed (4)**
15:9,19,22;21:23
**employee (19)**
9:17;10:13;27:15;
38:17;40:5,11;41:9;
48:12,25;49:5,12;
50:17;52:21;53:5,

16;54:9;55:7;56:9,
10
**employees (9)**
3:16;9:18;10:12;
41:13;50:14;53:12,
24;54:2;56:18
**employment (27)**
14:3;20:4;24:1;
26:20;27:17;28:19,
21;30:24;35:19;
39:16;40:22;41:4,6,
10;47:25;48:6,23;
49:1,4;50:15,16,18,
21;53:8,19,21,22
**end (4)**
7:11;40:21;53:12;
56:2
**enforced (1)**
57:21
**enforcement (1)**
6:18
**enforcing (1)**
55:19
**enough (1)**
58:5
**enter (3)**
55:19;57:6,18
**entered (1)**
57:19
**entire (2)**
11:12;24:10
**equity (2)**
15:19,22
**especially (2)**
52:19;53:1
**essence (1)**
3:24
**establish (1)**
11:25
**evasive (1)**
21:21
**even (11)**
4:6,7;6:5,7,11,23;
10:20;48:20;54:8;
56:23;58:5
**evening (1)**
5:14
**everybody (3)**
13:1,25;58:13
**evidence (34)**
11:25;12:2,23;
14:16;16:18;17:1;
18:9;19:22;20:16,
21;21:17;26:11,16;
28:11,16;30:3,10,15;
31:6,18,22;34:8,13;
35:4,6;36:25;39:8,
22,25;40:2;43:5;
52:2,3,10
**Ewing (78)**
8:2,12,21,23,23;
11:23;12:18;13:10,
11,12,16;14:9,16,24,

16;54:9;55:7;56:9,
10

25;15:5,7,10,11,15;
16:4,20,23;17:4;
18:5,10,16;19:19;
20:10,17,25;21:13,
19;22:7;23:15;
24:22;26:12;28:12;
29:13,24;30:2,11,15,
17;31:5,8,22,24;
32:22;34:10,12;35:3,
6,23;36:21;37:4;
39:8;40:9;41:21;
42:18,24;50:3,4,5,7;
51:20;52:4;55:20;
56:4,5;57:1,14;58:5,
9,15,22;59:4,5
**exact (1)**
47:1
**exactly (1)**
53:9;56:8,12
**EXAMINATION (3)**
15:3;39:6;42:2
**except (1)**
39:20
**exception (2)**
42:21;49:7
**exchange (2)**
29:15;30:7
**execute (1)**
49:1
**executed (5)**
10:3;26:24;27:6;
29:8;38:16
**Exhibit (43)**
16:25;17:2;18:4,9;
19:1,2,13,17,20,22,
22,24;20:19,21;
21:12,14,17;25:7;
26:11,13,16;28:16;
29:11,23,25;30:3,10,
12,16;31:3,6,18,22;
34:8,13;35:1,5;
42:23;44:1,7;45:21,
22;46:1
**exhibits (1)**
42:15
**existed (1)**
55:11
**expanses (1)**
5:6
**expected (1)**
54:24
**expedite (2)**
3:6;14:21
**expedited (1)**
6:22
**expended (1)**
55:25
**expense (1)**
58:7
**expired (1)**
50:25
**explain (1)**
5:25

Case 08-35653-KRH   Doc 14246   Filed 12/16/19   Entered 12/16/19 11:42:54   Desc
Main Document   Page 66 of 72

CIRCUIT CITY STORES, INC., et al.
Case No. 08-35653-KRH

December 12, 2019

**explained (2)**
31:13;37:15
**extend (1)**
56:24
**extent (1)**
5:25
**extrapolate (1)**
52:22
**extremely (1)**
55:4

**F**

**fact (4)**
4:6;31:15;53:7;
56:15
**facts (4)**
6:23;12:3,23;
38:22
**fail (1)**
8:3
**fair (1)**
57:9
**fall (1)**
48:3
**false (1)**
6:20
**familiar (1)**
5:5
**far (2)**
37:16;51:16
**father (2)**
23:21,22
**feared (1)**
7:23
**feel (1)**
47:8
**feelings (1)**
49:13
**feels (1)**
3:8
**fees (1)**
8:13
**fellow (1)**
4:5
**few (1)**
40:18
**fifteen (16)**
4:14;6:6;7:9;8:8;
10:16;11:13,24;12:4,
6;35:24;36:8,12;
40:14;52:13;53:3;
56:1
**figure (1)**
56:23
**file (14)**
4:9,20;6:16;17:5,
9;21:8;23:6,7;47:14;
49:25;52:15,21,24;
54:10
**filing (1)**
4:4
**finances (1)**

**38:12**
**financial (1)**
4:24
**find (1)**
11:21
**fine (1)**
24:16
**finished (1)**
32:5
**firm (14)**
4:6,8;8:13;11:8;
15:13;18:24;19:8;
20:8;25:14;35:23;
36:7;52:7;55:20;
58:5
**firms (1)**
4:5
**first (13)**
7:11;8:6,11,15;
10:9;11:19;13:23;
14:7,23;36:5;47:11;
49:24;56:5
**flies (1)**
3:9
**flip (3)**
43:12;45:2;46:20
**focus (2)**
8:1;54:21
**focusing (1)**
54:13
**follow (2)**
33:1;55:13
**followed (1)**
14:6
**foreign (1)**
6:19
**foremost (1)**
14:24
**form (2)**
3:13;33:21
**former (6)**
9:17;15:13;50:17;
53:16;54:9;55:7
**formerly (1)**
15:16
**forward (9)**
12:1,8,22;14:25;
41:10;43:21;46:5;
54:1;59:8
**forwarded (1)**
47:3
**Fose (47)**
4:11;6:9;7:4,7,18,
23;8:10,23;9:17,17,
20;15:16,17,18;16:9,
9;17:5,13,13;20:6;
21:8,22;22:6;23:18,
25;24:7,20;27:1,13;
29:6,8;39:10,24;
40:6;44:25;47:9;
48:4,18,21;49:6,22;
50:8;51:13;54:9;
55:7,11,21

**Fose's (12)**
11:12;23:5;26:20;
27:17;28:18;29:20;
30:24;32:16;47:14;
52:15,18,21
**foundation (1)**
16:11
**four (2)**
36:14;41:13
**frame (3)**
6:1;53:20;54:9
**full (2)**
6:12;52:9
**further (4)**
32:3,22;55:21;
58:11
**future (1)**
53:23

**G**

**game (1)**
5:10
**general (1)**
27:7
**given (4)**
6:3,15;24:7;49:24
**giving (1)**
3:23
**goes (1)**
52:24
**Good (13)**
3:7,7,21;8:21,22;
15:5;23:21,22;42:4;
43:6;51:18;57:15;
58:18
**grant (3)**
14:18,20,21
**great (1)**
55:2

**H**

**hand (3)**
16:1;43:8;54:22
**handed (12)**
16:4;18:16;20:11,
25;24:22;27:21;
29:13;30:5,17;31:8,
25;34:15
**handle (2)**
14:12;47:5
**handling (1)**
37:6
**Hanover (7)**
8:24;10:22;13:18;
15:17;28:1;32:20;
34:2
**happened (6)**
10:3,13;38:22;
40:12;56:8,11
**happy (1)**
4:11

**hard (1)**
6:2
**hear (1)**
26:6
**heard (2)**
33:10;54:6
**hearing (8)**
3:6;4:12;5:17;
30:21;37:16,25;
57:8;58:4
**help (1)**
38:17
**helped (1)**
39:19
**Henrico (1)**
15:8
**hereby (13)**
17:1;18:8;19:22;
20:20;21:17;26:15;
28:15;30:3,15;31:6,
22;34:13;35:4
**herring (1)**
55:16
**High (1)**
4:22
**hired (1)**
50:18
**hiring (2)**
53:17,19
**history (2)**
6:15;21:23
**hold (1)**
55:24
**holidays (1)**
12:25
**Honor (81)**
3:8,21,22;4:3,14,
16;5:9,24;6:1,6,21;
7:4,6,9,22;8:3,9,17,
21;11:6,7,17,20,25;
12:12,17;13:4,6,10;
14:15,23;15:25;
16:17,23;18:3;
19:16;20:15;21:11;
26:10;28:10;29:10,
22;30:9;31:2,17;
34:7,10,25;35:3;
36:18;37:4;39:1;
41:22;42:14,19,22,
25;43:9;50:5;51:23;
52:1,4,6,10,10;53:4,
9,10;54:6,17;55:1,5,
13,18;56:5;57:1,14,
17;58:24;59:1,9
**Honorable (1)**
3:3
**Honor's (6)**
11:13,14;12:4,5,
15;52:25
**hoops (1)**
10:24
**hope (1)**
58:17

**hot (1)**
49:6
**hour (1)**
5:22
**hours (1)**
4:13
**Huennekens (1)**
3:3
**huh (1)**
3:9
**hunt (1)**
53:5
**hurry (1)**
41:25

**I**

**idea (3)**
35:13,16;41:7
**ignore (1)**
7:10
**ignored (1)**
53:1
**imagine (1)**
58:10
**immediately (2)**
5:16;9:8
**impact (1)**
55:12
**import (1)**
53:13
**improper (1)**
7:16
**inappropriate (1)**
38:24
**Inc (1)**
19:3
**include (1)**
32:23
**included (1)**
44:22
**incurred (2)**
8:13;55:25
**indeed (3)**
6:15;7:25;53:16
**independent (1)**
46:9
**indicate (4)**
22:23,25;24:8;
30:23
**indicated (2)**
32:12;34:3
**individual (4)**
5:11;6:11;54:2,2
**individually (2)**
6:25;46:15
**individuals (1)**
14:12
**indulgence (1)**
36:19
**information (18)**
5:13;6:12,13;7:2;
8:17;9:12;10:23;

11:1;32:9;35:25;
38:10;44:17;47:13;
52:16,20;53:5,6;
54:12
**informed (1)**
11:18
**infractions (1)**
8:14
**Inge (3)**
3:17,21;46:19
**initially (1)**
7:23
**inquiries (1)**
7:25
**inquiry (3)**
7:15,25;8:3
**instance (2)**
11:15;49:19
**Instead (2)**
6:9;10:11
**integrity (1)**
6:17
**intend (3)**
26:19;28:17,22;
30:23
**intended (1)**
27:12
**intends (1)**
35:9
**intention (1)**
26:23
**intentionally (1)**
57:2
**interaction (2)**
29:6;37:9
**interfaced (1)**
48:14
**interference (1)**
49:14
**interpret (1)**
49:16
**interpretation (3)**
49:17;50:20;51:6
**interpreted (1)**
49:7
**into (25)**
5:14;7:24;13:17;
16:18;17:1;18:9;
19:22;20:16,21;
21:17;26:11,15;
28:11,16;30:3,10,15;
31:6,18,22;34:8,13;
35:4;43:4;55:4
**introduce (15)**
16:18;18:4;19:17;
20:16;21:12;26:11;
28:11;29:23;30:10;
31:3,18;32:19;34:1,
8;35:1
**introduced (5)**
26:13;29:11;32:8;
36:16;43:4
**involved (4)**

24:12;32:17;48:4,
12
**involving (1)**
23:20
**issue (26)**
6:24;9:20;10:1,23;
13:19,23;14:4;
21:24;22:1,2;25:9;
29:21;34:20;35:24;
36:9,14;37:13;
41:15;44:22;48:23;
55:2,5;57:10,22;
58:2,3
**issued (16)**
3:25;6:20;8:11,15;
9:7;14:10;16:6;
27:23;34:22;36:16;
37:10,14,15;41:3;
49:9;55:9
**issues (7)**
5:21;6:1,23;23:19,
25;29:19;53:17
**issuing (5)**
8:12;20:23;22:14;
25:3;38:2

## J

**January (8)**
9:16,19;12:20;
13:17;28:1;34:18;
37:8;47:16
**Jeff (3)**
3:16;22:8;34:17
**jobs (1)**
53:12
**jointly (1)**
55:24
**jumped (1)**
10:23
**jurisdiction (13)**
6:18;7:5,7,10;8:6;
12:4,8;52:11,13;
53:9;56:17,18;57:20

## K

**Katie (4)**
3:14;27:24;29:6;
42:6
**keep (1)**
56:25
**kept (2)**
17:24;37:7
**Kevin (1)**
3:3
**kind (1)**
36:24
**knew (2)**
6:11;25:17
**knowing (2)**
11:20;12:3
**knowledge (11)**

17:8;18:10;20:22;
35:17;44:21;45:15;
48:9,17,19,20,25
**known (4)**
36:7,12;47:20;
48:22
**knows (3)**
5:9;18:11;54:17

## L

**language (5)**
38:17,20;50:21;
51:8;53:25
**large (1)**
24:11
**last (17)**
9:1,6,13;10:9;
11:3;26:6;29:15;
31:10;32:1,21;
33:15;37:5,20;40:18,
25;42:21;47:22
**lasted (1)**
24:17
**late (2)**
5:3,14
**later (4)**
7:9;10:21,22;
13:18
**law (8)**
3:13,13;8:13;11:8;
35:23;36:7;52:7,24
**lawyer (2)**
41:6;49:13
**lawyering (1)**
58:18
**lawyers (1)**
4:5
**lawyer's (1)**
51:5
**leadership (1)**
52:14
**learning (1)**
5:4
**least (2)**
36:14;40:24
**leave (14)**
11:19;17:23;
20:23;22:13;25:2,8;
34:22;35:12;36:8,
12;37:6;56:16,24;
58:18
**leaving (1)**
40:11
**left (1)**
49:12
**legal (2)**
52:22;54:22
**legitimacy (1)**
55:3
**legitimate (5)**
13:23;36:5;40:19,
23,24

17:8;18:10;20:22;
35:17;44:21;45:15;
48:9,17,19,20,25
**lengthy (1)**
52:16
**less (1)**
12:10
**letter (15)**
19:10,14,15,17,24;
21:20;23:10,12;
24:7;43:23;44:9,12,
14,22;45:9
**letters (1)**
47:12
**levy (1)**
57:3
**liable (1)**
55:24
**lieu (1)**
37:1
**lightly (2)**
4:4,9
**limited (9)**
9:20;32:9,10;33:8;
34:5;37:11;52:8;
54:18,18
**Liquidating (18)**
23:6,17;24:13;
25:15;39:9,23;40:10,
16;41:10;42:9,12;
47:8,24;48:6,14;
49:1,20,21
**listened (1)**
56:6
**literacy (1)**
4:24
**Litigation (1)**
41:1
**little (3)**
4:13;32:3,22
**local (2)**
14:11,12
**locate (1)**
5:11
**logistics (1)**
33:8
**long (7)**
13:21,21;14:3;
36:2;42:11;47:20;
54:21
**longer (1)**
21:23
**look (2)**
4:16;59:8
**looked (3)**
12:24;13:23;40:18
**looking (1)**
13:22
**looks (1)**
24:25
**lot (5)**
24:15;31:16;
37:21;54:18;55:25
**Lynn (2)**
3:12;52:6

## M

**maintained (1)**
17:6
**majority (1)**
24:18
**making (2)**
5:11;7:15
**many (1)**
3:15
**March (11)**
7:8;11:15;12:7;
20:11,20;21:1,16;
23:11;45:3,9,16
**marched (1)**
12:8
**marital (2)**
10:11;48:21
**marked (2)**
16:25;20:18
**marriage (1)**
9:22
**maternity (2)**
17:23;37:6
**matter (19)**
6:16;10:20;11:15;
12:6,16;13:17;16:9;
17:20,22;19:4;21:8;
30:22;34:17;49:11;
50:16,18;56:2;
57:19;58:9
**matters (9)**
6:14;7:15,17;
24:12,15;35:8;
38:13;47:6;55:17
**may (15)**
15:25;36:18,20,
22;39:2;40:12;
41:20;42:22;43:8;
50:2;51:22;53:14;
54:7,8;58:17
**maybe (4)**
9:7;10:19;24:17;
40:12
**McDonald (23)**
3:16;5:12;6:25;
7:12,21;12:11;22:8;
23:5,16,24;24:15;
26:1;33:9;34:17;
35:4,7,18,21;40:5;
41:12;46:10;55:9,11
**McDonald's (3)**
5:5;33:14;41:7
**mean (10)**
10:17;11:11;
13:19;18:18;19:14;
23:11;25:19;28:25;
31:11;58:9
**meaning (2)**
18:18;47:24
**means (2)**
27:12;32:10

**meant (1)**
23:22
**meantime (1)**
57:11
**member (4)**
15:19,22;22:17;
25:11
**members (3)**
4:7,22,23
**memorandum (1)**
19:4
**mentioned (3)**
22:4;24:3,21
**Michael (1)**
15:7
**middle (1)**
40:22
**might (4)**
7:24;40:12,20,21
**Mike (1)**
8:23
**mine (1)**
13:5
**minutes (4)**
10:16;24:17,18;
56:7
**Mollie (10)**
15:19;16:8;17:16,
17,18;18:21,23;
20:14;21:4,16
**moment (2)**
26:18;36:19
**Monday (9)**
4:2;5:23;7:21;
9:10,16;26:3;30:21;
37:20;58:20
**money (3)**
38:15,19;39:19
**months (19)**
4:14;6:6;7:9;8:8;
9:21,22;10:9,10;
11:13,25;12:4,6;
35:24;36:8,12;
40:14;52:13;53:4;
56:1
**more (6)**
8:8;24:14;52:3;
54:11,12;57:10
**morning (12)**
3:7,21,23;4:10;
5:15,18;8:21,22;
15:5;42:4;52:8;59:8
**most (1)**
9:3
**motion (14)**
3:5,6,24;4:12,20;
5:15;6:17,22;8:19;
11:3;14:21,22;
33:10;42:20
**motions (2)**
9:1,6
**move (2)**
13:17;43:20

**Mrs (17)**
9:17;22:6;23:18,
25;24:7,20;26:20;
27:1;29:6,7,20;
30:24;32:16;39:10,
24;40:6;50:8
**much (3)**
3:22;6:5;39:15
**multiple (2)**
4:24;8:3
**must (2)**
8:3,8
**myself (2)**
12:18;48:16

**N**

**Nagle (6)**
48:8,15,17,20;
50:17;53:19
**name (1)**
15:5,13;42:5
**nature (4)**
5:6;33:8;34:5;
35:15
**necessarily (1)**
54:3
**necessary (6)**
9:5;10:24,25;
37:19,22;58:14
**need (13)**
10:18,22;12:15;
13:11,14;35:11;36:8,
12;54:21;57:11,12;
58:11,20
**needed (3)**
3:19;6:16;9:12
**nefarious (2)**
53:7,10
**new (3)**
6:23;49:10;51:6
**next (7)**
10:20;12:12,25;
13:8;44:5,6;50:24
**night (13)**
9:1,6,13;11:3;
29:15;31:10;32:2,13,
21;33:15,18;37:20;
42:21
**nonetheless (2)**
11:20;36:14
**note (1)**
4:3
**notice (22)**
4:1;7:5,7,16,19,20;
8:8;12:10;19:8;
24:23,24;25:4,19,22;
26:15;33:3;45:21;
47:2;57:7,8;58:5,13
**noticed (1)**
12:10
**noticing (1)**
7:11

**notify (1)**
6:7
**notwithstanding (5)**
11:17;12:3;27:8;
28:24;36:11
**November (8)**
22:8;23:9;28:21;
42:13;50:23;51:1,7,9
**November/December (1)**
53:8
**null (1)**
11:18
**number (11)**
28:14;29:23;
30:10;33:2,6;43:25;
44:1,7;45:21,22;46:1

**O**

**object (1)**
19:19
**objection (15)**
16:21;18:5,6,7;
19:18;20:17;21:13;
26:12;28:12;29:24;
30:11;31:19;34:9,
10;35:2
**obligation (1)**
31:20
**obtain (10)**
9:12;10:25;20:22;
22:13;25:2,8;32:9;
34:22;35:12;38:10
**obtained (2)**
22:5,6
**Obviously (8)**
9:6;10:8;32:16;
38:7;56:5,20;57:5;
58:8
**occasions (1)**
52:21
**occur (4)**
4:1;5:17;53:10;
54:8
**occurred (2)**
5:4,7
**o'clock (3)**
4:19;9:1;32:12
**October (3)**
23:12;51:2,10
**off (1)**
33:4
**offer (1)**
33:21
**offered (1)**
53:23
**office (3)**
16:7;21:6;22:6
**OFFICER (3)**
3:5;16:2;42:10
**offices (1)**
5:3
**official (1)**

**56:19**
**old (1)**
50:25
**once (6)**
7:24;28:17;49:11,
24;50:10;53:21
**one (28)**
4:7,18;5:22;8:14;
9:10,24,24;12:9;
24:7;26:18;27:14;
32:13;37:25;41:13;
42:16;46:24;49:11;
50:22,24;51:4,4,7;
53:16;55:5;56:9,9,9;
57:4
**ones (2)**
43:2;50:25
**one-year (1)**
9:21
**ongoing (2)**
54:1,8
**only (8)**
5:22;6:11;25:4;
41:13;51:14;55:10;
56:9,9
**opening (1)**
22:4
**operation (1)**
38:11
**operations (1)**
7:3
**opinion (13)**
11:13,14;12:5;
14:5;19:2,4,6,8,21;
38:13;40:2,24;56:15
**opportunity (8)**
11:2,4;17:5,7;
19:6;22:7;32:25;
38:6
**Opposing (1)**
52:12
**order (17)**
3:4;6:19;7:14;8:5;
38:3;43:10;52:11;
54:15;55:19,19;
56:16;57:5,18,19;
58:8;59:2,8
**orders (1)**
57:2
**original (1)**
8:11
**others (1)**
5:25
**otherwise (1)**
55:22
**ourselves (1)**
6:5
**out (16)**
5:16;9:2,5,13;
11:11,21;12:18;
13:17;17:23;30:22;
37:6;38:17;41:24;
56:23,23;58:10

**outlined (1)**
3:24
**over (14)**
4:14;6:6;12:4;
13:14;14:2;17:24;
35:24;36:7,12;37:5,
7;52:12;53:3;56:18

**P**

**page (2)**
33:4;44:16
**paid (5)**
10:2,2;38:14,15;
39:19
**paragraph (1)**
33:6
**parking (2)**
31:16;37:21
**Parkway (2)**
15:7;42:6
**part (3)**
22:25;36:25;58:12
**parties (3)**
9:23;10:3;33:7
**partner (9)**
3:14;15:21,24;
16:8;17:16,17;
20:13;21:4;58:10
**partners (1)**
15:13
**past (2)**
37:5;53:3
**Paula (2)**
3:14;11:7
**pay (3)**
38:15,16;39:15
**payment (3)**
21:23;22:3;40:20
**payments (1)**
49:16
**payout (1)**
50:20
**PC (3)**
15:10,11,12
**pending (3)**
8:24;15:17;38:14
**percentage (1)**
24:11
**period (1)**
54:19
**permission (3)**
14:7;36:9,13
**personal (12)**
3:18;4:8;5:20;
7:12;23:19;24:15,
19;27:13;29:6;
35:11;52:23;55:10
**personally (2)**
4:7;22:6
**personnel (4)**
23:5,7;47:14;
49:25

**perspective (1)**
12:14
**pertaining (2)**
6:13;7:2
**phone (5)**
4:25;9:4;29:17;
40:15,25
**pick (2)**
9:3;40:25
**picked (2)**
37:17;40:14
**place (5)**
7:21;24:2;49:25;
51:10;57:12
**plainly (1)**
8:2
**plan (3)**
5:10;40:21;55:20
**planned (1)**
54:20
**play (2)**
5:21;15:16
**pleadings (2)**
4:4;37:23
**Please (7)**
3:3;14:25;15:5;
16:1;36:22;42:4;
50:2
**pm (12)**
29:16;30:2,8,14,
20;31:5,11,21;32:2,
21;33:18;34:12
**podium (1)**
57:16
**point (22)**
4:17;6:25;8:4;
16:17;18:3,23;
19:16;20:15;21:11;
26:10;27:16;28:10;
29:22;30:9;31:17;
33:2;34:7,25;41:22;
47:23;52:1;55:5
**position (2)**
39:23;42:8
**possible (1)**
4:10
**possibly (3)**
11:10;39:17;48:22
**postpone (1)**
30:21
**Powers (3)**
15:10,11,15
**prayer (1)**
58:2
**prejudice (1)**
58:22
**prepare (1)**
11:2
**prepared (7)**
8:18;12:2,22;
24:24;52:9;56:6;
58:13
**present (2)**

8:18;54:1
**presentation (2)**
43:10;59:7
**presentations (1)**
4:25
**presiding (1)**
3:3
**pretend (1)**
6:10
**pretenses (1)**
6:20
**pretty (3)**
13:1;34:4;49:6
**previous (1)**
33:13
**previously (4)**
5:7;11:12;17:18;
57:19
**printed (1)**
33:3
**prior (2)**
6:15;52:25
**private (3)**
25:25;26:1;56:11
**probably (5)**
10:15;24:17,17;
38:4;39:11
**problem (1)**
40:17
**procedure (1)**
14:6
**proceed (3)**
14:7,17,21
**proceeding (2)**
7:13;36:25
**proceedings (2)**
49:23;59:11
**processor (1)**
26:1
**produced (1)**
37:11
**professionals (1)**
53:2
**PROFFER (1)**
37:3
**property (2)**
10:10,11
**proposals (1)**
32:8
**proposed (1)**
30:20
**protect (2)**
6:17;29:9
**protection (1)**
6:19
**proved (1)**
56:12
**provide (7)**
8:16;12:17;22:16;
25:10;27:9;28:25;
44:17
**provided (12)**
4:18;5:12;11:12,

14,22;20:8;33:11;
42:17;44:25;45:16;
47:12;52:20
**pulled (1)**
14:2
**purport (1)**
6:24
**purported (1)**
20:1
**purports (1)**
20:11
**purpose (3)**
8:3;27:5,19
**purposes (1)**
35:10
**put (12)**
7:5,7;12:2,9,22;
14:16;26:17;55:1,3;
56:2,14;57:7

## Q

**quick (1)**
4:12
**quickly (3)**
4:20;6:2;46:12
**quite (1)**
4:19

## R

**raised (2)**
13:20;55:6
**reached (1)**
5:16;33:10;48:11
**read (2)**
9:6;37:22
**reads (1)**
33:7
**real (1)**
54:22
**realize (3)**
40:23;56:25;58:2
**realized (1)**
13:25
**really (6)**
23:16;27:10;29:2;
50:9;54:6;55:16
**reason (11)**
16:11,14;17:25;
18:20,22;21:7;
31:13;39:14;54:3,4;
56:10
**reasons (3)**
8:4;11:6,9
**receipt (3)**
43:19;45:7;46:3
**receive (7)**
9:23;11:3,19;
22:21;43:17;46:1,23
**received (27)**
5:18;9:1;17:1;
18:8;19:22,25;20:2,

5,6,20;21:17,20;
23:13;24:6;26:15;
28:16;30:3,15;31:6,
22;34:13;35:4;
39:13;46:2,24;
47:11;50:10
**receiving (1)**
12:5
**recently (2)**
22:3;36:5
**recognize (19)**
16:4;18:16,18;
20:10,25;24:22;
27:22;29:13;30:5,
17;31:8,24;32:1;
34:15;43:14;45:5,10,
24;52:7
**record (7)**
3:12;4:4;11:7;
15:6;42:5;52:6;
58:16
**recording (1)**
13:13
**records (1)**
22:3
**red (1)**
55:16
**redirect (2)**
39:3,6
**reference (1)**
17:13
**referenced (1)**
47:12
**referencing (1)**
11:23
**referral (1)**
4:6
**referred (2)**
20:4;47:14
**regard (7)**
5:7;52:15;54:9;
55:5,10,15;58:1
**regarding (2)**
7:15;55:3
**regards (1)**
7:2
**related (2)**
28:18,19
**relates (2)**
44:19;47:5
**relating (2)**
19:25;24:12
**relationship (7)**
15:11;23:18,19,
20;24:20;49:8;51:18
**relationships (2)**
35:11;55:11
**relatively (1)**
46:12
**relevant (1)**
22:1
**relief (3)**
8:7;14:8;57:24

**rely (1)**
53:20
**remained (1)**
51:10
**remaining (1)**
53:23
**remarkable (1)**
4:19
**remarks (1)**
56:6
**remember (2)**
35:20,22
**renewing (1)**
50:24
**replied (1)**
31:10
**replying (2)**
30:7,19
**represent (4)**
8:23;15:18;46:9;
50:18
**representation (3)**
17:4,6;52:15
**representations (1)**
35:18
**representative (10)**
23:1,16;27:10,11;
29:1,3;32:25;40:15;
41:1;49:20
**representatives (1)**
36:15
**represented (7)**
18:13;22:20,24;
25:12,15;36:3;46:15
**request (8)**
12:1,21;14:7,15;
19:25;45:18;47:9;
55:18
**requested (5)**
11:22;27:1,6;29:8;
47:13
**required (1)**
50:8
**resolution (1)**
33:9
**resolve (2)**
58:8,15
**resolved (5)**
12:16;37:25;
48:13;49:11;53:17,
21;58:17
**resources (1)**
55:22
**respect (7)**
6:16;52:13,15,20;
55:8,16;56:1
**respectfully (8)**
12:1,21;13:10,16;
14:15;55:1,18;56:2
**respond (3)**
43:21;45:8;58:6
**response (6)**
11:16;30:14;

sanctions (5)
    4:5;8:10;58:2,2,12
saw (2)
    13:23;49:24
saying (6)
    19:11;21:9;38:2;
    51:1,5;58:9
scanned (2)
    46:4;47:3
scavenger (1)
    53:5
schedule (3)
    12:24;13:7,7
scheduled (4)
    5:18;12:20;26:1;
    37:8
scheduling (1)
    6:3
School (1)
    4:23
Scott (1)
    15:7
seated (1)
    3:3
second (1)
    41:16
securing (1)
    5:19
security (1)
    16:2
seek (12)
    6:18;8:10;27:3,9;
    28:25,25;35:25;36:8,
    12,13;46:9;57:13
seeking (5)
    6:12;8:7;23:1;
    27:10;29:2
seeks (1)
    35:7
seemed (2)
    36:5;40:22
send (1)
    45:12
sending (3)
    14:11;44:11;56:25
senior (1)
    42:10
sense (2)
    40:4,8
sensitive (1)
    58:7
sent (11)
    17:15;18:1,21;
    19:10;21:10;29:16;
    30:22;32:7;44:12;
    45:13;47:11
sentence (1)
    13:7
SEP (5)
    15:20,23;20:22;
    21:20;36:11
separate (2)
    10:10;52:21

separated (2)
    9:23;10:4
separately (1)
    41:6
separation (1)
    24:9
September (8)
    7:6;8:15;17:18,20;
    20:8;43:15,24;44:25
series (2)
    30:19;31:10
serve (2)
    3:18;26:2
served (7)
    3:25;4:18,21;
    12:11;25:23;28:3,7
service (1)
    22:21
services (1)
    4:8
session (1)
    3:2
set (1)
    41:16
settlement (1)
    48:11
several (2)
    4:23;40:25
severally (1)
    55:24
shall (1)
    33:7
short (1)
    57:8
show (3)
    23:8;40:3;58:3
sic (1)
    28:19
Siegel (1)
    46:6
sign (8)
    39:16,17;40:6;
    41:11,14;48:23;
    50:8;56:10
signed (30)
    9:21;10:12,16;
    13:25;16:7,8;20:13;
    21:22;23:8,9;24:4,5,
    25;25:7;27:23;
    34:16;49:24;50:10,
    12,14,15,20,22;51:4,
    7,11,13,14;56:10;
    57:4
significance (1)
    36:4
significant (1)
    10:1
similar (2)
    24:4,7
similarly (2)
    40:6;47:4
similarly-situated (1)
    41:14

simple (1)
    10:15
simply (4)
    9:3;13:22;38:16,
    20
sit (2)
    20:5;35:20
sitting (10)
    17:11;20:7;21:19;
    31:15;35:6;37:20;
    38:4;44:24;46:15;
    49:19
situated (1)
    40:6
situation (1)
    12:9
six (6)
    4:1;9:21,22;10:9,
    10;12:10
six7 (1)
    36:15
six-month (1)
    9:24
slammed (1)
    13:1
slew (1)
    12:17
sole (1)
    27:5
solely (1)
    35:10
solicit (2)
    27:3;28:18
solution (1)
    11:21
someone (6)
    13:24;37:17;
    38:20;40:12,13;
    52:23
sometime (1)
    12:12
son (2)
    23:22,22
sorry (5)
    13:12;32:6;40:14;
    44:8;52:13
sort (2)
    23:23
sought (2)
    7:1;53:22
source (1)
    4:6
speak (5)
    4:25;40:4,15;54:4,
    5
speaking (2)
    4:23;47:5
specific (2)
    53:13;55:15
specifically (4)
    6:13;7:2;27:8;
    28:24
speculation (1)

simple (1)

55:4
spent (1)
    5:3
spoke (1)
    5:1
stack (2)
    43:23;44:3
staff (4)
    6:11;54:2,13,18
stand (2)
    14:24;41:23
standard (1)
    23:2
start (1)
    43:12
started (1)
    40:23
starting (1)
    53:12
state (5)
    14:8;15:5;24:11;
    42:4;54:25
stated (1)
    9:2
statement (3)
    22:4;36:24;39:9
States (1)
    3:1
stating (1)
    31:11
stayed (1)
    53:9
step (3)
    39:2;41:20;51:22
steps (2)
    47:1,4
Stiles (10)
    15:10,11,12,15,16,
    22;18:1,10,13,24
still (2)
    17:22;22:2
stipulate (3)
    32:15;33:14,16
stipulating (1)
    32:10
stipulation (2)
    32:17,18
stop (2)
    7:18;55:2
Stores (2)
    3:5;19:3
straightforward (1)
    34:4
Strike (2)
    25:21;34:21
strong (1)
    49:8
stuff (1)
    37:16
subject (1)
    22:10
subject-matter (1)
    56:17

**S**

same (25)
    5:19;7:11,13;8:2,
    7;12:22;28:5;30:7,
    19;31:10;33:1;
    34:19,19;35:25;
    39:19,20;43:2;46:7,
    24;47:1;50:12,14,15,
    21,21
sanction (3)
    55:23;57:3,6
sanctioned (1)
    8:8

restaurant (1)
    31:16
restructuring (1)
    29:19
result (2)
    48:9;50:16
retained (2)
    3:18;41:6
retired (1)
    15:14
return (1)
    5:3
review (6)
    17:5,7;19:6;22:3;
    44:12;46:5
reviewed (9)
    5:1;17:10;18:19;
    19:12;20:3,3;21:2;
    22:2;37:12
revised (10)
    41:5,8,11;49:1,4,
    11;50:16,19;51:5,8
Richmond (1)
    42:6
right (33)
    3:20;8:20;11:5;
    13:1,9;14:14;16:1,
    25;20:18;21:1,14;
    26:13;28:13;29:14,
    25;30:12;35:20;
    37:12;38:25;39:5;
    41:19,21,24;51:3,12,
    21,24;52:3;56:3,25;
    57:13;58:19;59:7
rise (2)
    3:1;59:10
role (1)
    15:15
room (1)
    58:19
ruling (1)
    52:25
run (1)
    7:11
running (1)
    41:24

31:14;32:7;44:22;
    46:7

**subpoena (48)**
3:25;4:18,21;5:1;
8:11,15;9:7;11:16;
14:11;16:6,18;17:1;
20:1,3,11,20,23;
22:11,14,16,22,25;
23:2;25:3,6,9,10,23;
27:8,21,23;28:6,15,
24;34:16,18,20,23;
35:4;41:3;43:15;
45:2;46:21;55:6,8,
10,15;56:20
**subpoenaed (3)**
9:15,18;32:15
**subpoenaing (1)**
34:17
**subpoenas (21)**
6:19,24;7:20;8:12,
12;11:18;14:10;
36:9,13,15,16;37:10,
14;38:3;41:16;47:2;
55:22;56:25;57:11,
20,21
**subpoena's (1)**
58:21
**subsequent (1)**
50:22
**substance (1)**
24:9
**substantially (2)**
27:3;42:19
**sufficient (1)**
33:23
**Suite (2)**
15:7;42:6
**sum (1)**
27:7
**summer (1)**
37:5
**support (3)**
8:19;39:8,22
**supportive (1)**
23:23
**supposed (2)**
4:1;9:23
**sure (3)**
26:2;29:18;37:11
**surprise (9)**
18:13;20:7;26:4,7;
28:7;35:14;40:9;
41:4,9
**surprised (1)**
20:9
**sworn (3)**
15:1,2;42:1

**T**

**table (1)**
3:14
**tale (1)**
53:10
**talk (8)**

11:4;27:13;31:11;
35:9;40:13;41:1;
56:23;58:11
**talked (3)**
37:18;46:4;50:17
**talking (4)**
24:19;33:24,24;
56:13
**tasks (2)**
54:14,22
**TAVENNER (31)**
3:7,10,12,12,13,
22;4:7,22;5:24;11:8,
9;12:13,19;13:7;
21:16;22:17;25:11;
43:20;45:8,12;46:4;
52:5,6,7,7;57:16,17,
25;58:24;59:1,9
**team (7)**
4:11;6:9;7:5,7,18,
24;11:12
**tecum (5)**
16:6,19;17:1;
20:11,20
**telephone (2)**
37:17,25
**telling (1)**
29:21;38:7
**ten (2)**
18:13;24:17
**tender (1)**
59:1
**tending (1)**
24:8
**term (2)**
39:16;41:10
**terminated (1)**
39:14
**terms (3)**
10:4;51:6;53:8
**testified (3)**
14:16;25:4;37:13
**testify (1)**
35:7
**testimony (17)**
7:1,2;8:18;10:16;
24:16;27:4;32:11,
15;33:8,13,14;35:10,
15;41:21;51:24;
55:10;56:7
**Thanks (1)**
34:11
**theories (1)**
54:22
**theory (1)**
52:22
**third (1)**
43:22
**though (3)**
6:5,11,24
**thought (4)**
33:4;40:20;53:14;
56:8

**three (4)**
32:10;33:16,21;
56:7
**times (1)**
3:15
**title (1)**
24:23
**today (24)**
3:13;5:22;6:17;
8:10,18;9:14;10:19;
11:3,11;12:1,22;
17:11;20:7;21:19;
35:6;37:17;39:8;
44:24;46:15;49:19;
55:4,18;57:7;58:4
**today's (1)**
55:16
**Together (2)**
3:13;47:3
**told (1)**
19:11
**took (8)**
13:24;17:23;24:2,
15,19;37:4,7;49:6
**topic (1)**
49:6
**topics (1)**
5:4
**Toshiba (7)**
11:13;14:5;19:4;
52:25;56:15,21;
57:19
**total (1)**
9:25
**touch (1)**
31:12
**transferred (1)**
38:19
**trial (21)**
7:2,20;9:15,16,18;
12:20;13:18;27:21;
28:15,18;29:1;33:9,
14;34:17,19;35:10;
37:8;46:21;55:9;
56:24;58:21
**tried (8)**
4:9;8:16,16;10:8;
11:21;35:17;37:20;
47:9
**true (9)**
13:21;23:4,15;
25:19;26:19;28:17;
35:23;36:7,11
**trust (78)**
3:17;4:17;6:7,11,
13;7:3,15,17,23,24;
8:5;9:17,18,21;
10:12;14:11;20:6;
23:1,6,17;24:1,13;
25:15;27:10,11;29:1,
3;35:8,19;36:1,15;
37:10,10,24,24;
38:12,12,14;39:9,23;

40:16,19,21;41:2,10,
13;42:9,10,12;47:9,
25;48:6,12,14;49:1,
15,20,21;50:19;
52:11,19;53:2,11,14,
19,20,25;54:15,17;
55:3,12,20,21;56:18,
18;57:12,21;58:7
**trustee (9)**
5:8;23:11,12;
40:11;47:5;49:8;
50:10;51:18;56:12
**trust's (2)**
46:7;55:8
**truthfully (1)**
38:7
**try (10)**
9:5,11,11;11:10;
12:17,18;30:21;
33:7;40:25;52:22
**trying (8)**
5:25;33:14,16;
38:10;43:9;53:6;
54:17,22
**Tuesday (9)**
4:19,21;12:11;
26:3,4,7;28:8;35:25;
46:25
**turn (4)**
33:1,6;43:22;
45:20
**Turning (4)**
19:1;27:20;44:16;
45:9
**tweaked (1)**
53:25
**twelve-month (1)**
9:24
**twenty-six (1)**
4:13
**twice (1)**
12:6
**two (7)**
3:18;8:12;9:11,23;
32:14;47:11;52:21
**type (4)**
37:24;52:14,22;
54:25

**U**

**ultimately (1)**
11:21
**Um-hum (1)**
45:19
**unable (1)**
12:21
**unavailable (1)**
58:10
**undaunted (1)**
7:19
**under (4)**
6:20;12:19,19;

52:11
**underemployed (1)**
21:25
**underlying (2)**
6:23;14:22
**Understood (1)**
13:16
**undisputed (10)**
6:25;7:4,6,17,25;
11:11,24;12:3,23;
19:13
**unemployed (1)**
21:25
**unenforceable (1)**
58:21
**unfortunately (2)**
8:17;12:12
**unique (1)**
27:14;51:14
**United (1)**
3:1
**unjustified (1)**
53:4
**Unless (1)**
41:19
**unusual (1)**
27:14
**up (12)**
7:11,19;9:4;12:10;
37:17;40:14,25;
41:25;42:15;54:17,
23;55:13
**upcoming (1)**
7:1
**Upon (7)**
5:3,19;43:19;45:7;
46:3;51:5,17
**used (1)**
4:6
**utilized (1)**
4:8

**V**

**vacation (1)**
54:20
**validity (2)**
16:14,21
**Varina (2)**
4:22;5:2
**various (1)**
5:21
**Vern (2)**
3:17;46:19
**view (1)**
49:16
**violate (1)**
57:2
**violated (1)**
38:3
**violation (2)**
7:14;8:4
**Virginia (4)**

Case 08-35653-KRH    Doc 14246    Filed 12/16/19    Entered 12/16/19 11:42:54    Desc
Main Document    Page 72 of 72

CIRCUIT CITY STORES, INC., et al.
Case No. 08-35653-KRH                                                                December 12, 2019

3:2;15:8;42:7;
47:16
**void (2)**
11:18;56:20
**voluntarily (3)**
21:25;22:21,22

## W

**wants (1)**
13:1
**way (7)**
5:2;29:4,5;43:12,
20;49:7;52:24
**week (5)**
10:20;12:13,25;
13:8;25:24
**weeks (2)**
40:18,25
**well-earned (1)**
54:20
**west (1)**
5:9
**Westerre (1)**
15:7
**Westgate (1)**
42:6
**what's (2)**
23:7;29:13
**wherein (1)**
32:24
**Whereupon (1)**
59:11
**whole (1)**
33:4
**who's (1)**
8:12
**wife (1)**
10:17
**willing (2)**
56:22;58:15
**winding (1)**
40:19
**without (7)**
8:6;18:6;32:17,18;
33:20,24;58:22
**witness (15)**
9:15;15:2;22:20;
23:2;27:21,23;
28:15;32:15;34:16,
19;39:2;42:1,15;
46:21;51:22
**witnesses (1)**
38:11
**wording (1)**
10:6
**work (11)**
8:17;9:2,5,11,13;
11:10,20;12:18;
24:2;30:21;56:23
**worked (2)**
6:2;13:8
**working (2)**

17:20,22
**World (2)**
47:19,21
**worse (1)**
39:15
**worth (1)**
24:18
**wrap (1)**
54:17
**written (4)**
21:3,4;23:10,12
**wrong (1)**
9:7
**wrote (1)**
14:6

## Y

**year (1)**
47:22
**years (1)**
18:14
**Yesterday (5)**
5:15;29:16;30:8,
20;42:20

## 1

**1 (6)**
16:25;17:2;28:19,
21;42:23;51:1
**1/2/20 (3)**
27:22;28:15;46:21
**10 (4)**
31:3,4,6;32:12
**10:50 (1)**
59:11
**100 (1)**
42:6
**10th (3)**
28:8;46:2,25
**11 (2)**
31:18,22
**12 (3)**
34:8,11,13
**12/11/19 (5)**
30:2,14;31:5,21;
34:12
**13 (2)**
35:1,5
**13th (3)**
21:1,16;45:10
**14th (1)**
43:24
**18 (3)**
17:18,20;44:25
**1st (10)**
23:9,10;26:21;
28:22;30:25;42:13;
50:23;51:7,9,13

## 2

**2 (3)**
18:4,9;44:16
**20 (1)**
24:17
**200 (1)**
42:6
**2007 (1)**
28:19
**2010 (1)**
42:13
**2017 (13)**
23:9,10;26:21;
28:21,22;30:25;
48:3;50:23;51:2,7,9,
14;53:8
**2018 (10)**
7:6;8:15;20:8;
23:11,13;29:20;
43:15,24;51:2,10
**2019 (14)**
7:8;11:15;12:7;
20:12,20;21:1,16;
22:8;25:1;27:24;
34:17;45:3,10,16
**2020 (3)**
28:2;34:18;47:16
**20th (1)**
33:7
**21st (1)**
22:8
**22nd (3)**
20:12,20;45:3
**23233 (2)**
15:8;42:7
**26th (1)**
43:15
**2nd (7)**
9:16,19;12:21;
28:2;34:18;37:8;
47:16

## 3

**3 (6)**
19:17,20,23,24;
44:1,7
**30th (5)**
23:11,13;39:14;
51:2,10
**375,000 (1)**
9:25
**3957 (1)**
15:7

## 4

**4 (2)**
20:19,21
**400 (1)**
15:7

## 5

**5 (4)**
9:1;21:12,15,17
**5:38 (2)**
29:16;30:2
**5:55 (2)**
30:8,14
**5th (2)**
27:24;34:16

## 6

**6 (6)**
26:11,14,16;33:6;
45:22;46:1
**6:0 (1)**
31:11
**6:16 (2)**
30:20;31:5

## 7

**7 (3)**
28:14,16;29:11
**7:06 (2)**
31:11,21

## 8

**8 (3)**
29:23;30:1,3

## 9

**9 (3)**
30:10,13,16
**9:16 (1)**
32:24
**9:40 (4)**
32:2,20;33:18;
34:12
**9th (1)**
24:25