| | |
|---|---|
| Richard. M. Pachulski, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard, 13th Floor | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy: (804) 783-0178 |
| Telecopy: (310) 201-0760 | |

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., <u>et al.</u>,[1] | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**MOTION OF THE LIQUIDATING TRUSTEE FOR
ENTRY OF AN ORDER GRANTING THE TRUSTEE
<u>CERTAIN AUTHORITY RELATED TO DISTRIBUTION CHECKS</u>**

Alfred H. Siegel, as Trustee (the "**Trustee**") of the Circuit City Stores, Inc. Liquidating Trust (the "**Trust**") created under the *Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Unsecured Creditors Holding General Unsecured Claims* [Docket No. 8252, Exhibit A] (the "**Plan**"), hereby moves (the "**Motion**"), out of an abundance of caution, the Court for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

entry of an order authorizing the Trustee to (a) stop payment on any outstanding checks within ninety-one days of issuance, (b) reincorporate those funds into the Trust corpus, (c) terminate any reserves related to the same and (d) cease efforts to pay related creditors/beneficiaries.

## I.

## PRELIMINARY STATEMENT

1.      Under the Plan, the Trust was established with a five-year term through October 31, 2015. In July 2015, the Court entered an order, on the Trustee's motion, extending the term of the Trust through November 1, 2017. Thereafter, the Court has further extended the term of the Trust through and including June 30, 2020. On March 26, 2020, the Trustee, by counsel, filed his *Motion of the Liquidating Trustee for Entry of an Order Further Extending Term of the Liquidating Trust*, ECF No. 14259, requesting a further extension of the Trust through and including December 31, 2020.

2.      To date, the Trust has distributed 55 percent to holders of allowed general unsecured claims. Within the past year the Trust has completed most affirmative recovery efforts, concluded all claims disputes, and reduced its staff and expenses of administration. The Trustee, his staff, and professionals continue efforts to satisfactorily conclude outstanding litigation to provide for additional distributions and to prepare for wind-up of the Trust's administrative matters. These efforts include two settled class action matters for which the only remaining issue is the amount of the Trust's claim and payment thereon, one adversary proceeding filed in this Court and a related matter upon which the Trust prevailed in this Court and which has been certified for direct appeal by the Fourth Circuit Court of Appeals, where briefing has not yet

concluded and no oral argument has been set. As to all of these matters, the timetable for resolution is outside of the Trust's influence or control.

3. The Trustee believes it prudent to continue to position the cases for closure. Addressing matters (a) related to uncashed checks and (b) instances where the Trust has never received a Form W-9 or other satisfactory tax certification from the claimants would better position the cases for closure. Accordingly, the purpose of this Motion is to seek authority, out of an abundance of caution,[2] for the Trustee to (a) stop payment on any checks not cashed within ninety-one days of issuance, (b) reincorporate those funds into the Trust corpus, (c) terminate any reserves related to the same, and (d) cease efforts to pay related creditors/beneficiaries.

## II.

## JURISDICTION

4. The United States Bankruptcy Court for the Eastern District of Virginia (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Article XI of the Plan, and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. Venue of these chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. Additional predicates for the relief sought herein are Article VI.C.2 of the Plan and Article 4.4 of the Circuit City Stores, Inc. Liquidating Trust Agreement (the "**Liquidating Trust Agreement**" and/or "**Trust Agreement**"), section 1142 of the Bankruptcy Code, Article XI of the

---

[2] As further explained in Section VI herein, the relief sought here in may not be necessary given Article VI.C.2. of the Plan and Article 4.4 of the Trust Agreement.

3

Plan, and this Court's *Findings of Fact, Conclusions of Law and Order Confirming Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Creditors Holding General Unsecured Claims* [Docket No. 8555] (the "**Confirmation Order**").

### III.

### BACKGROUND

#### A. General Case Milestones

8.  On November 10, 2008, the above-captioned debtors (the "**Debtors**") filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code. The Debtors' wholly owned subsidiary, InterTAN Canada, Ltd. (which operated as The Source by Circuit City) and Tourmalet Corporation (a non-operating holding company) filed under the *Companies' Creditors Arrangement Act* in Canada.

9.  On November 12, 2008, pursuant to sections 1102(a) and 1102(b)(1) of the Bankruptcy Code, the Office of the United States Trustee for the Eastern District of Virginia appointed an official committee of unsecured creditors (the "**Creditors Committee**").

10. The Debtors and Creditors Committee, as co-plan proponents, filed the Plan and the *Supplemental Disclosure Statement* [Docket No. 8253] supporting the Plan. Following a hearing on approval of the Plan, on September 14, 2010, the Court entered the Confirmation Order approving and confirming the Plan.

11. The effective date under the Plan for the Debtors other than Ventoux International, Inc. and InterTAN Canada occurred on November 1, 2010 (the "**Effective Date**"). [Docket No. 8865].[3]

### B. The Liquidating Trust and Appointment of Trustee and Oversight Committee

12. Pursuant to Article V.F. of the Plan and paragraphs 11-16 of the Confirmation Order, the Trust was established to effectuate the Plan by, among other things, collecting, administering, distributing, and liquidating the assets of the Debtors' estates that were transferred to the Liquidating Trust on the Effective Date. The terms of the Liquidating Trust are governed by the Liquidating Trust Agreement.

13. Under the Plan, Alfred H. Siegel was appointed as Trustee of the Trust. *See* Plan § 1.112; *Memorandum of Law in Support of Confirmation of the Plan* [Docket No. 8462] at 22 and 44-45. The Trustee has continued to administer the Trust with the advice and consent of the Oversight Committee as provided for in the Liquidating Trust Agreement.

14. As indicated above the Court has extended the term of the Trust through and including June 30, 2020, and the Trustee, by counsel, has requested a further extension of the Trust through and including December 31, 2020.

### C. The Liquidating Trust's Distributions

15. As indicated above, to date the Trust has distributed (the "**Distributions**" and each a "**Distribution**") fifty-five percent of the value of allowed general unsecured claims to holders thereof. Pending the outcome of certain ongoing litigation in addition to certain funds on reserve,

---

[3] The effective date for Debtor Ventoux International, Inc. was October 22, 2015, and for InterTAN Canada was October 26, 2015.

5

the Trust may be able to distribute additional amounts to holders of allowed general unsecured claims.

16.  The Trust has a record of certain allowed claims for which it has been unable to make distributions or able to make only partial distributions. A reserve has been established for the payment of these claims. As of the most recent Distribution, the Trust had identified two primary categories of claimants for whom Distributions were not effectuated; specifically, where checks were never issued due to receipt of no W-9 or where checks were issued but were never cashed and became stale.

(a)  **No W-9**

17.  "No W-9" claims are allowed claims for which the Trust has never received a Form W-9 or other satisfactory tax certification from the claimant ("**No W-9**"), which is required under Article VI. G. of the Plan. Allowed Claims for which No W-9 has been obtained are to be treated as "Undeliverable Distributions" pursuant to Article VI.C.2. of the Plan. The W-9 is a required certification by the claimant to satisfy the Trust that the correct tax identification number and tax withholding status are on record. The receipt of a valid, signed W-9 or other similar tax certification ensures that the Trust has the necessary information to satisfy its obligations with respect to tax withholding and distribution information reporting required by law.

18.  Trust personnel have put forth considerable effort to obtain a valid Form W-9 or similar tax certification from each claimant. Trust personnel believe that, in all No W-9 instances, the cause is a faulty address or a liquidated or dissolved claimant rather than, for example, the refusal of a claimant to provide the requested information. Trust personnel have made diligent efforts over the years to locate claimants for whom a valid tax identification has never been

received in satisfaction of the requirements of Article VI.G. of the Plan. After multiple attempts to contact the claimant at the current claims register address that the Trust has on file, the Trust personnel has employed a variety of techniques in order to locate the claimants to obtain the necessary information required by the Plan including:

- Review of all change of address notifications provided to the Trust;
- Attempts to locate attorneys or law firms that may have been associated with filing the claims;
- Internet based search engines to locate the claimant or the successor to the claimant in the event of a merger or acquisition;
- Social media databases including "LinkedIn"; and
- A fee-based internet search engine named "Intellius" to locate individuals similar to "skip-trace" tools.

19. Notwithstanding this exhaustive effort to locate all remaining claimants for whom Trust records revealed no tax identification number has ever been received by the Trust, Trust personnel were successful in locating only several of the 142 claims for which no tax Identification number was received. Approximately 55% of those 142 claims were scheduled claims.

20. The remaining undistributed portion of the No W-9 claims is $1,021,477.01. Of that figure, there are 91 general unsecured claims totaling $1,395,007.60 – 55 percent of which is reserved at $767,254.18. There are an additional 51 administrative and/or priority claims totaling $254,222.83 which is 100 percent reserved at $254,222.83.

(b) **Stale Pay and Other Outstanding Checks**

21. Claims for which partial Distributions or no distributions have been made are referred to as "Stale Pay." In the case of the partial Distributions, the Trust had made initial distributions to the claimant at the Claims Register address of record and the checks were cashed.

7

The Trust did not receive any updated address information from the claimant. At some point, subsequent Distribution checks were returned as undeliverable or were never cashed.

22. Trust personnel attempted to contact the claimant using information at their disposal including letters sent to the last known address, telephone calls to the last known phone number, and e-mails sent to the last known e-mail address. In addition, the following techniques were utilized:

- Review of all change of address notifications provided to the Trust;
- Attempts to locate attorneys or law firms that may have been associated with filing the claims;
- Internet based search engines to locate the claimant or the successor to the claimant in the event of a merger or acquisition;
- Social media databases including "LinkedIn"; and
- A fee-based internet search engine named "Intellius" to locate individuals similar to "skip-trace" tools.

23. While the Trust was successful in locating many of these Stale Pay claimants[4], there remains another group that Trust personnel have never successfully located. The remaining undistributed portion of the Stale Pay claims is $345,365.38. Of that figure, there are 76 general unsecured claims totaling $7,687,774.33 – 55.0 percent of undistributed portion is reserved at $337,678.41. There are an additional 10 administrative and/or priority claims totaling $7,686.97.

24. Similar to partial Distributions of Stale Pay, there are certain checks that have been issued but remain outstanding or uncashed, as having never been cashed in any form by the claimant. As of May 31, 2019, this group was comprised of 781 checks totaling $1,617,531.01.

---

[4] For example, in June, 2019 Trust personnel started with 1,560 outstanding checks dating as far back as July 24, 2014 totaling $1,599,207. Trust personnel were successful in locating and re-issuing checks representing 423 of the uncashed checks totaling $1,409,848 representing approximately 88% of all of the uncashed claim payment checks issued prior to June, 2019. Since that time the Trust has made additional distributions.

25. Since June 1, 2019, the Trust has initiated the same efforts described above in paragraphs 18 and 22 to locate the claimants represented by these checks. Upon contacting the claimant or receipt of updated address and/or payee information, Trust personnel enter the updated information into the claims register. The Trust then issues a replacement check to the claimant. Since June 1, 2019, the Trust has re-issued 296 replacement checks accounting for $1,420,560.14 of the total outstanding checks.

26. Additional "Stale Pay" instances will likely result from the additional distributions in 2019 and 2020. Checks that remain outstanding and for which Trust personnel are unable to contact or locate the claimant will be considered "Undeliverable and Unclaimed distributions" pursuant to Article VI.C.2. of the Plan.

**IV.**

**THE REQUESTED AUTHORITY SHOULD BE GRANTED**

27. Trust personnel are making a final attempt to contact the claimant in No W-9 and Stale Pay cases. If successful contact is made, the Trust will update the claims register and disburse "catch up" distributions. After this final attempt to contact the claimant, the Trustee seeks approval to proceed as provided pursuant to Article VI.C.2. of the Plan, deeming the holders of these claims to have forfeited their claims and releasing the amount of any cash reserves that had been established for payment of these claims to be distributed in accordance with the terms of the Plan.

28. Article 4.4 of the Trust Agreement provides: "Undeliverable Distributions. If a distribution is returned to the Trustee as undeliverable, such undeliverable distributions shall be governed by Article VI of the Plan." Article VI.C.2 of the Plan in turn provides:

> 2. Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to the Disbursing Agents as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the applicable Disbursing Agent is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Disbursing Agents shall be returned to the applicable Disbursing Agent until such Distributions are claimed. The Liquidating Trustee shall, with respect to Cash, maintain in the applicable Reserve Cash on account of undeliverable and unclaimed Distributions until such time as a Distribution becomes deliverable, is claimed or is forfeited.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the last Periodic Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors and their Estates, the Liquidating Trustee, the Liquidating Trust, the Disbursing Agents, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become the property of the Liquidating Trust, Ventoux, or InterTAN, as applicable, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement. Nothing contained in this Plan or the Liquidating Trust Agreement shall require the Debtors, or the Disbursing Agents to attempt to locate any Holder of an Allowed Claim; provided, however, that in his sole discretion, the Disbursing Agents may periodically publish notice of unclaimed Distributions.

29.     Given the language contained in the Plan, the Trustee believes that he is authorized to take the action suggested in this Motion without further Court intervention. The Trustee has filed this Motion, however, in abundance of caution, as another possible interpretation of the Plan language is that the Trustee would have to hold the distribution accounts open for six months after the final distribution and then would have to continue the never ending cycle of sending checks to people that have not cashed prior checks. Given the late stage of the Cases, the interpretation is neither practical nor warranted.

30. Based on these facts, the Trustee submits that is in the best interest of creditors/beneficiaries to specifically authorize the Trust to (a) stop payment on any checks not cashed within ninety-one days of issuance, (b) reincorporate those funds into the Trust corpus, (c) terminate any reserves related to the same, and (d) cease efforts to pay related creditors/beneficiaries unclaimed, and/or stale checks, and not send new checks to those recipients.

## NOTICE

31. Notice of this Motion is being provided to (i) the Office of the United States Trustee and (ii) those parties that have requested notice in these Cases. In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

## NO PRIOR REQUEST

32. No previous request for this further extension of the Trust term has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form annexed hereto as Exhibit A, authorizing the Trust to reincorporate into the Trust corpus all uncashed, unclaimed, and/or stale checks and not send new checks to those recipients, and order such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: April 2, 2020 | **Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust** |

*/s/ Lynn L. Tavenner*
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: 804-783-8300
Facsimile: 804-783-0178

-and-

Richard M. Pachulski
Andrew W. Caine (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310-277-6910
Facsimile: 310-201-0760

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

**EXHIBIT A**

**(Proposed Order)**

| | |
|---|---|
| Richard M. Pachulski, Esq. | Lynn L. Tavenner, Esq. (VA Bar No. 30083) |
| Andrew W. Caine, Esq. | Paula S. Beran, Esq. (VA Bar No. 34679) |
| (admitted *pro hac vice*) | TAVENNER & BERAN, PLC |
| PACHULSKI STANG ZIEHL & JONES LLP | 20 North Eighth Street, 2nd Floor |
| 10100 Santa Monica Boulevard, 13th Floor | Richmond, Virginia 23219 |
| Los Angeles, California 90067-4100 | Telephone: (804) 783-8300 |
| Telephone: (310) 277-6910 | Telecopy: (804) 783-0178 |
| Telecopy: (310) 201-0760 | |

*Counsel to Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-35653 (KRH) |
| | ) |
| CIRCUIT CITY STORES, INC., et al.,[1] | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**ORDER GRANTING THE LIQUIDATING TRUSTEE CERTAIN AUTHORITY
RELATED TO DISTRIBUTION CHECKS**

Upon the Motion (the "**Motion**")[2] of the Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "**Trust**") created under the *Modified Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and its Affiliated Debtors and Debtors in Possession and its Official Committee of Unsecured Creditors Holding General Unsecured Claims* [Docket No. 8252, Exhibit A] (the "**Plan**"), for the entry of an order authorizing the Trust to reincorporate into the Trust

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identifications numbers, are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).

[2] Capitalized terms not otherwise defined herein shall have the meanings and definitions ascribed to such terms in the Motion.

corpus all uncashed, unclaimed, and/or stale checks and not send new checks to those recipients, all as set forth in greater detail in the Motion; and the Court having reviewed the Motion, and the Court having determined that the relief requested in the Motion is reasonable and warranted under the circumstances; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. The Motion is GRANTED.

2. The Trust is further authorized to stop payment on all uncashed checks within ninety-one days of issuance, reincorporate into the Trust corpus all uncashed, unclaimed, and/or stale checks, and not send new checks to those recipients

**3.** Allowed Claims for which No W-9 has been obtained are to be treated as "Undeliverable Distributions" pursuant to Article VI.C.2. of the Plan**.**

4. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____           _____
    Richmond, Virginia                              The Honorable Kevin R. Huennekens
                                                    United States Bankruptcy Judge

WE ASK FOR THIS:

/s/ _____
Lynn L. Tavenner (VA Bar No. 30083)
Paula S. Beran (VA Bar No. 34679)
TAVENNER & BERAN PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Telephone: 804-783-8300
Facsimile: 804-783-0178

2

-and-

Richard M. Pachulski (CA Bar No. 90073)
Andrew W. Caine (CA Bar No. 110345)
(admitted *pro hace vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd. 13th Floor
Los Angeles, California 90067-4100
Telephone: 310-227-6910
Facsimile: 310-201-0760

*Counsel to Alfred H. Siegel, as Trustee of the
Circuit City Stores, Inc. Liquidating Trust*

**SEEN AND NO OBJECTION:**

_____
Shannon F. Pecoraro
Trial Attorney
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
(804) 771-2310
(804) 771-2330 (Facsimile)

## **CERTIFICATION**

I hereby certify that the foregoing proposed Order has been either served on or endorsed by all necessary parties.

_____
Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Tavenner & Beran, PLC
1015 East Main Street, First Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

3