The Honorable Kevin R. Huennekens
United States Bankruptcy Court, Eastern District of Virginia
Richmond Division 701 East Broad Street, Suite 4000
Richmond, VA 23219

RICHMOND DIVISION
FILED APR 04 2025
CLERK U.S. BANKRUPTCY COURT

Ref: Case 08-35653-KRH

March 31, 2025

**Dear Honorable Judge Huennekens,**

My name is Andrew Huang. I own a significant number of shares in Circuit City Stores Inc. and represent a group of shareholders who collectively own over 5% of this Chapter 11 bankrupt company.

We are asking for your assistance in obtaining what we believe we are entitled to. According to 11 U.S. Code § 1129(b), we understand that equity holders are entitled to a distribution of cash or assets only after all higher-priority claims, such as those of secured creditors, unsecured creditors, and administrative expenses, have been fully satisfied, provided that there are remaining cash or assets.

It is our understanding, based on published sources, that a significant amount of money was recovered for the bankrupt estate. As you are aware, the bankruptcy trust was initially funded in 2009 through the proceeds from the Circuit City store liquidation sale[1]. According to numerous quarterly and annual financial reports, the actual amount initially transferred to the liquidation trust was $810.1 million. From this fund, Mr. Alfred Siegel, the trustee for the liquidation trust, disbursed the cash and satisfied the higher-priority claims. He reported to the Court in the "Final Report" that:

1. Administrative claims were paid in full.
2. United States Trustee fees were paid in full.
3. Tax claims were paid in full: The Liquidating Trust has paid 100% of all allowed claims as per the plan.
4. Miscellaneous secured claims were paid in full: The Liquidating Trust has paid 100% of all allowed claims as per the plan.
5. Non-tax priority claims were paid in full: The Liquidating Trust has paid 100% of all allowed claims.
6. Convenience claims were paid in full: The Liquidating Trust has paid 100% of all allowed claims.
7. General unsecured claims: The Liquidating Trust has paid 55% of all allowed claims as per the plan.

|  | Total Anticipated Payments Under Plan | Paid Cumulative | Allowed Claims | % Paid of Allowed Claims |
|---|---|---|---|---|
| a. Administrative claims | $85,887,146 | $85,887,146 | $85,887,146 | 100% |
| b. Secured claims | $2,626,960 | $2,626,960 | $2,626,960 | 100% |
| c. Priority claims | $8,620,795 | $8,620,795 | $8,620,795 | 100% |
| d. General unsecured claims | $219,405,857 | $689,561,265 | $1,253,747,754 | 55% |
| e. Equity interests | $0 | $0 | $0 | |
| | Total Paid = | $786,696,166 | | |

**Total Paid:** $786,696,166

As shown, all higher-priority claims have been fully satisfied through the disbursement of the initial cash, which came from the store liquidation sale ($810 million vs. $786.7 million). It is our belief that the general unsecured claims were primarily landlord claims. These landlord claims were 100% satisfied through negotiated rejections/cures or assumptions/reassignments of leases. The rejected and cured leases would have received cash settlements, which are reflected in the table above as 55%. The leases that were assumed and reassigned would have paid the landlord in full and may have generated revenue after paying rent for the debtor estate.

Besides using the trust fund to legally renegotiate leases, Mr. Siegel also used a significant amount of money to pursue antitrust litigation against vendors and banks. These lawsuits are well known to the Court. Mr. Siegel described them in numerous annual financial reports, and in motions to extend the terms of the liquidation trust, he referred to these ongoing litigations as one of the reasons to extend the trust's term.

Mr. Siegel used liquidation trust funds to pursue these causes of action. However, he has never reported the financial outcome from the renegotiated leases (reassigned leases) or the revenue received from the antitrust litigations; and the sale of the Canadian stores. All recovered funds belong to the debtor estate and should have been reported.

From public sources, the table below summarizes the antitrust litigation settlements and sales money recovered by Circuit City. Mr. Siegel has not accounted for these in any of his financial reports:

| **Antitrust Litigation** | **Settlement Amount** | **Amount Received** |
|---|---|---|
| Optical Disc Drive [2] | $180m | Pro rata of Settlement |
| Cathode Ray Tube [3] | $576m | Pro rata of Settlement |
| Lithium-ion Rechargeable Battery [4] | | $64m |
| TFT-LCD (Flat Panel) [5] | $1.1 billion | Pro rata of Settlement |
| Payment card Interchange Fee [6] | $5.54 billion | Pro rata of Settlement |
| Sales of Canadian stores to Bell Canada [7] | | $135m |

Page | 2

Based on the possible income from reassigned leases, the known antitrust litigation settlements, and the sales of the Canadian stores, we believe a significant amount of funds remain after satisfying all higher-priority claims. This remaining fund may have been dispersed to Ventoux via Tourmalet and InterTAN, as per the Reorganization Plan's treatment of Class 8A through 8C—Interests, specifically Articles III.B(a)-(c) of the Plan.

Ventoux, Tourmalet, and InterTAN are all wholly owned subsidiaries of Circuit City Stores Inc. Ultimately. Therefore, this remaining fund should be distributed pro rata to the equity holders of Circuit City Stores Inc. As of March 31, 2025 (three and a half months after the Final Decree), the Circuit City Stores Inc. equity holders have yet to receive their distribution.

From the above facts, Mr. Siegel did not provide a transparent and complete financial report before seeking the final decree. As a result, equity holders remain in the dark regarding their entitlement. Once the creditors have been paid, according to 11 U.S.C. § 1106(a)(7), Mr. Siegel also has a fiduciary duty to the equity holders.

Honorable Judge Huennekens, kindly look into this matter on our behalf.
Thank you for your consideration.

I can be reached at:
28442 Lomo Drive
Rancho Palos Verdes, CA 90275
or
Email: comelordjc@yahoo.com
Phone: (310) 347-7347


Sincerely,

*Andrew B Huang*

Andrew B. Huang

References:

(1) Time Article on Circuit City Liquidation
https://time.com/archive/6905196/how-liquidators-profit-from-circuit-citys-loss/?utm_source=chatgpt.com

(2) Optical Disk Drive Indirect Purchaser Class Action Settlement
https://topclassactions.com/lawsuit-settlements/closed-settlements/optical-disk-drive-indirect-purchaser-class-action-settlement/?utm_source=chatgpt.com

(3) CRT Antitrust Lawsuit
https://bergermontague.com/cases/crt-antitrust-lawsuit/?utm_source=chatgpt.com

(4) Lithium-ion Battery Price Fixing Settlement
https://topclassactions.com/lawsuit-settlements/lawsuit-news/sony-will-settle-for-19m-and-leave-lithium-battery-price-fixing-mdl/?utm_source=chatgpt.com

(5) Circuit City Wraps Up LCD Price Fixing Settlement
https://www.law360.com/articles/660242/circuit-city-wraps-up-lcd-price-fixing-settlement-with-auo?utm_source=chatgpt.com

(6) Payment Card Interchange Fee Litigation
https://en.wikipedia.org/wiki/Payment_card_interchange_fee_and_merchant_discount_antitrust_litigation?utm_source=chatgpt.com

(7) WSJ Article on Circuit City
https://www.wsj.com/articles/DJFDBR0020090323e53n0008d